IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | 1:15-cv-322 |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock | : | |
| Plaintiffs | : | Judge Kane |
| v. | : | |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | Jury Trial Demanded |

**Brief in Support of
Motion to Dismiss Federal Claims
And to Stay or Remand State Claims**

Lavery Law

*s/ Frank J. Lavery*
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

March 6, 2015

# TABLE OF CONTENTS

I.     Procedural History: ....................................................................................1

II.    Facts: ........................................................................................................2

III.   Question Presented: ...................................................................................3

IV.    Argument: ..................................................................................................3

   A.  Harrisburg's longstanding ordinances do not infringe on the right to bear
       arms. ........................................................................................................3

       1.  Unsupervised children have no right to carry guns in public. ................5

       2.  The discharge ordinance does not prevent self-defense. ........................6

       3.  Plaintiffs have no right to bring guns to government parks and
           playgrounds. ........................................................................................7

       4.  The emergency ban is discretionary, temporary, and reasonable. ...........9

       5.  The reporting ordinance has nothing to do with self-defense. ..............10

   B.  Plaintiffs cannot bring overbreadth claims. ...................................................11

   C.  Plaintiffs lack standing. .............................................................................11

   D.  A PAC cannot file a lawsuit unrelated to elections. ..........................................12

   E.  This Court should stay the preemption claims. ................................................12

   F.  Act 192 violates Pennsylvania's Constitution. ................................................13

   G.  The UFA does not preempt the ordinances. ....................................................15

       1.  Discharge: ...........................................................................................15

       2.  Children: .............................................................................................15

       3.  Reporting: ...........................................................................................16

       4.  Parks: .................................................................................................17

       5.  Emergencies: .......................................................................................20

   H.  The Mayor and Chief have not harmed Plaintiffs. .............................................20

   I.   The Mayor and Chief violated no clear federal law. ..........................................20

   J.   The Mayor and Chief possess high official immunity. .......................................21

   K.  The official capacity claims are redundant. .....................................................22

   L.  Pennsylvania's Constitution does not provide claims for damages. .............22

V.     Conclusion: .............................................................................................22

Certification of Counsel ..................................................................................23

Certificate of Service .....................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Application of Biester*, 409 A.2d 848 (Pa. 1979).....................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................3

*Baez v. Lancaster County*, 487 Fed.App'x. 30 (3d Cir. 2012) ................................22

*Carroll v. Carman*, 135 S. Ct. 348 (2014) ................................................................21

*City of Phila. v. Com,* 838 A.2d 566 (Pa. 2003) ......................................................13

*City of Tucson v. Rineer*, 971 P.2d 207 (Ariz.App. 1998)........................................9

*Clapper v. Amnesty Int'l*, 133 S. Ct. 1138 (2013)....................................................11

*Com. v. Neiman,* 84 A.3d 603 (Pa. 2013) .................................................................13

*D.C. v. Heller*, 554 U.S. 570 (2008) ............................................................... 3, 6, 8

*DeWeese v. Weaver,* 880 A.2d 54 (Pa. Commw. 2005) ...........................................14

*Dillon v. City of Erie*, 83 A.3d 467 (Pa. Commw. 2014) ........................... 11, 17, 18

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) ........................................................4, 5

*Durham v. McElynn*, 772 A.2d 68 (Pa. 2001) .........................................................21

*Embody v. Ward*, 695 F.3d 577 (6th Cir. 2012)........................................................9

*English v. State*, 35 Tex. 473 (1872).......................................................................4, 8

*Feldman v. Hoffman*, 2014 WL 7212601 (Pa. Commw. Dec. 19, 2014) ...............21

*Glenn v. State*, 72 S.E. 927 (Ga.App. 1911) .............................................................6

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)..........................12

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534,
    116 L. Ed. 2d 589 (1991).................................................................................21

*Hunters United for Sunday Hunting v. Pa. Game Comm'n*, 28 F.Supp.3d 340
    (M.D.Pa. 2014) ..................................................................................................3

*Jones v. City of Phila.*, 890 A.2d 1188 (Pa.Commw. 2006)....................................22

*Jury Comm'rs v. Com.,* 64 A.3d 611 (Pa. 2013) ......................................................13

*Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012).........................4, 10

*Kelly v. Riley, 733* S.E.2d 194 (N.C.App. 2012) ......................................................4

*Lane v. Franks*, 134 S. Ct. 2369 (2014)..............................................................21

*Leach v. Com.*, 585 MD 2014 ...........................................................................1

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................................14

*Marcavage v. Rendell,* 888 A.2d 940 (Pa. Commw. 2005)...................................14

*Marcavage v. Rendell,* 936 A.2d 940 (Pa. Commw. 2005),..................................14

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .............................................3

*Minich v. Cnty. of Jefferson*, 869 A.2d 1141 (Pa. Commw. 2005) .......................16

*Minich v. Cnty. of Jefferson*, 919 A.2d 356 (Pa. Commw. 2007) .....................3, 19

*Norman v. State*, -- So.3d --, 2015 WL 669582 (Fla.App. Feb. 18, 2015)...............4

*NRA v. ATF*, 700 F.3d 185 (5th Cir.2012) .........................................................5, 6

*NRA v. City of Phila.*, 977 A.2d 78 (Pa. Commw. 2009) ................................. 11, 16

*NRA v. City of Pittsburgh*, 999 A.2d 1256 (Pa. Commw. 2010) ..................... 10, 12

*NRA v. McCraw*, 719 F.3d 3389 (5th Cir. 2013) ...................................................6

*Ortiz v. Com.*, 681 A.2d 152 (1996) ..................................................................16

*Pa. State Ass'n of Jury Comm'rs v. Commw.,* 64 A.3d 611 (Pa. 2013) .................13

*People v. Fields*, 2014 Ill.App.1st 130209 (Dec. 31, 2014) ...................................6

*People v. Flores*, 169 Cal.App.4th 568 (2008);...................................................4

*People v. Yarbrough*, 86 Cal.Rptr.3d 674 (Cal.App. 2008) ...................................9

*Perry v. State Civil Serv. Comm'n*, 38 A.3d 942 (Pa.Commw. 2011).....................3

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013)...........................................4

*Robertson v. Baldwin*, 165 U.S. 275 (1897) ........................................................4

*Saucier v. Katz*, 533 U.S. 194 (2001) ...............................................................20

*Schall v. Martin*, 467 U.S. 253 (1984)................................................................5

*State v. Callicutt*, 69 Tenn. 714 (1878)................................................................6

*State v. Knight*, 218 P.3d 1177 (Kan. 2009) .........................................................4

*U.S. Law Shield v. Harrisburg*, CV-2015-255 .....................................................1

*U.S. v. Dorosan*, 350 F.App'x 874 (5th Cir. 2009) ....................................9

*U.S. v. Rene E.*, 583 F.3d 8 (1st Cir. 2009)........................................6

*US v. Barton*, 633 F.3d 168 (3d Cir. 2011).................................5, 11

*US v. Emerson*, 270 F.3d 203 (5th Cir.2001) ............................6

*US v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ........................4

*US v. Skoien*, 614 F.3d 638 (7th Cir.2010) ...............................5

*Warden v. Nickels*, 697 F. Supp. 2d 1221 (W.D.Wash. 2010) ................8

*Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168,

   346 A.2d 269 (1975)...........................................................14

*Younger v. Harris*, 401 U.S. 37 (1971)...................................11

## Statutes

16 P.S. § 509(c).....................................................................19

17 Pa.Code § 11.215 .............................................................19

17 Pa.Code §11.215 .............................................................2, 8

18 Pa.C.S. § 6107 ...................................................................20

18 Pa.C.S. § 6120(a) ........................................................ 15, 17

18 Pa.C.S. § 913(e) ...............................................................19

18 Pa.C.S. §505......................................................................7

18 Pa.C.S. §6107....................................................................2

18 Pa.C.S. §6110.1.............................................................5, 15

18 Pa.C.S. §6120....................................................................2

18 U.S.C. §922(x)(2)(A) ..........................................................5

25 Pa.C.S. §3254.1................................................................12

53 Pa.C.S §3703......................................................................2

53 Pa.C.S. § 3703..................................................................15

53 Pa.C.S. § 37423 ........................................................ 15, 17

53 Pa.C.S. §36203(e)(3)(iv) ..................................................................2, 20

53 Pa.C.S. §37402.1(a) ...........................................................................18

53 Pa.C.S. §37423 .....................................................................................2

53 Pa.C.S. §37435 ....................................................................................19

**Treatises**

*Treatise on Constitutional Limitations* 740 n. 4 (5th ed. 1883) ................................6

## I.    Procedural History:

Plaintiffs sued in state court alleging violations of their federal and state constitutional rights to bear arms and preemption under Pennsylvania's Uniform Firearms Act. Harrisburg, Mayor Papenfuse, and Chief Carter removed this case to federal court because of the Section 1983 claim.[1]

Act 192 of 2014 amended the Uniform Firearms Act to add attorney fees, automatic standing, and actual damages. The NRA has sued Philadelphia, Pittsburgh, and Lancaster. Those municipalities joined certain Pennsylvania legislators to challenge Act 192 before the Commonwealth Court. *Leach v. Com.*, 585 MD 2014.[2] Harrisburg is subject to another lawsuit. *U.S. Law Shield v. Harrisburg*, CV-2015-255.

The cities—Harrisburg included—sought stays until the Commonwealth Court rules. Pittsburgh's motion was granted, Lancaster's was denied, and Philadelphia's is outstanding. Exs. 1-2. Judge Dowling entered a preliminary injunction against three of Harrisburg's five gun ordinances. Ex. 3.

---

[1] Defense counsel made a clerical error in prior filings by inadvertently leaving Plaintiff Howard Bullock off the caption. Plaintiffs have obtained a default judgment in state court in clear violation of §1446. As will be explained in opposition to remand, this caption error can be remedied by amendment.
[2] https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=585+MD+2014

## II.    Facts:

In 1921, Pennsylvania authorized cities to ban unnecessary discharge of weapons. 53 Pa.C.S §3703. In 1931, the Third Class City Code expanded authority for cities like Harrisburg to prevent discharge or concealed carrying. 53 Pa.C.S. §37423. The Code further provides the Mayor discretion, during declared emergencies, to prohibit any activities dangerous to the public peace. 53 Pa.C.S. §36203(e)(3)(iv),(vi). In 2014, the General Assembly re-enacted the Code. In the meantime, Harrisburg banned unsupervised children from carrying guns outside the home in 1951, gave the mayor discretion to ban guns in public during declared emergencies in 1969, banned discharge in 1971, banned guns in parks in 1991, and required reporting of lost or stolen guns in 2009.

At the center of this litigation, in 1974, Pennsylvania amended the Uniform Firearms Act to prevent municipalities from regulating lawful gun ownership. 18 Pa.C.S. §6120. The UFA also bans public carrying during emergencies and unsupervised children from carrying guns. 18 Pa.C.S. §6107, §6110.1. A Pennsylvania Department of Conservation and Natural Resources regulation also bans guns in parks. 17 Pa.Code §11.215.[3]

---

[3] Although not something that this Court can consider at this time, Harrisburg notes that its parks received state funds that comes with strings attached, including a requirement that local parks comply with DCNR regulations.

2

### III.   Question Presented:

Have Harrisburg's ordinances limited Plaintiffs' right to self-defense in any way over the last sixty-four years? No.

### IV.   Argument:

#### A. Harrisburg's longstanding ordinances do not infringe on the right to bear arms.[4]

Plaintiffs' Second Amendment claim is not "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs do not "show" that Harrisburg limits their right to self-defense, and thus they are not "entitled to relief." *Id.* at 679.

Under both the U.S. and Pennsylvania Constitutions, "the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (quoting *D.C. v. Heller*, 554 U.S. 570, 626 (2008)). *See Perry v. State Civil Serv. Comm'n*, 38 A.3d 942, 955 (Pa.Commw. 2011)(public employer can ban guns); *Minich v. Cnty. of Jefferson*, 919 A.2d 356, 361 (Pa. Commw. 2007)(*en banc*)(*Minich II*)(courthouse can ban guns).

*Heller* held that longstanding gun regulations are presumptively lawful, such as gun bans for felons and the mentally ill. 554 U.S. at 626 & n.26. The Court

---

[4] Plaintiffs have no constitutional right to hunt. *Hunters United for Sunday Hunting v. Pa. Game Comm'n*, 28 F.Supp.3d 340, 346 (M.D.Pa. 2014). Regardless, Harrisburg does not apply the ordinances to restrict lawful duck hunting, which is the only lawful hunting in Harrisburg.

noted that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* at 626. *See Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897)("[T]he right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons…"); *Peterson v. Martinez*, 707 F.3d 1197, 1211 (10th Cir. 2013); *Kelly v. Riley, 733* S.E.2d 194, 198 (N.C.App. 2012); *State v. Knight*, 218 P.3d 1177, 1190 (Kan. 2009); *People v. Flores*, 169 Cal.App.4th 568, 575 (2008); *English v. State*, 35 Tex. 473, 479 (1872)("[A]lmost, if not every one of the states of this Union have a similar law upon their statute books…").

Such longstanding gun laws are "exceptions to the Second Amendment guarantee." *US v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010). The Third Circuit has recognized that the Second Amendment might not apply outside the home *at all* and that, historically, many states banned public carrying—whether *open* or concealed. *Drake v. Filko*, 724 F.3d 426, 432 (3d Cir. 2013). As the Court in *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 90, 95 & n.21 (2d Cir. 2012), noted, during the 1800s, "[m]ost states enacted laws banning the carrying of concealed weapons," and four banned the open and concealed carrying of pistols. *See Norman v. State*, -- So.3d --, 2015 WL 669582, at *16 (Fla.App. Feb. 18, 2015)(upholding open carry ban).

4

Harrisburg's restrictions do not come close to a complete ban and survive any level of scrutiny. "The legitimate and compelling state interest in protecting the community from crime cannot be doubted." *Schall v. Martin*, 467 U.S. 253, 264 (1984). Harrisburg "has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety." *Drake*, 724 F.3d at 437.

### 1.  Unsupervised children have no right to carry guns in public.

Plaintiffs can obtain no relief because both state and federal law contain child gun bans. 18 U.S.C. §922(x)(2)(A); 18 Pa.C.S. §6110.1. An injunction against Harrisburg's ordinance can't help them.

There can be no doubt child gun bans are longstanding. Harrisburg enacted its child gun ban sixty-four years ago. "[A] firearms regulation may be 'longstanding' and 'presumptively lawful' even if it was only first enacted in the 20th century." *Drake*, 724 F.3d at 458 n. 11(citing *US v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011)(1961 felon gun ban), *NRA v. ATF*, 700 F.3d 185, 196–97 (5th Cir. 2012)(1968 ban on sale to minors); *US v. Skoien*, 614 F.3d 638, 640–41 (7th Cir. 2010)(1968 gun ban for mentally ill)).

The Third Circuit found New Jersey's requirement "longstanding" that gun owners show a justifiable need to carry in public, whether open or concealed. *Drake*, 724 F.3d at 422. New Jersey adopted the requirement in 1924 for concealed carry, but did not impose the "need" requirement on open carry as well until 1966.

*Id.* Harrisburg's 1951 child gun ban predates all of the longstanding gun laws referenced in *Heller* and *Drake*.

Because of the immense reasonableness behind such laws, the founders would have supported child gun bans. *NRA v. ATF*, 700 F.3d at 200-02. Courts have long held child gun bans "not only constitutional as tending to prevent crime but wise and salutary…" *State v. Callicutt*, 69 Tenn. 714, 716 (1878). *See* Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n. 4 (5th ed. 1883)("the State may prohibit the sale of arms to minors").

Several courts have gone further to hold that no one under 21 has gun rights outside the home. *NRA v. McCraw*, 719 F.3d 338, 347-49 (5th Cir. 2013); *ATF*, 700 F.3d at 200-04; *U.S. v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009); *US v. Emerson*, 270 F.3d 203, 261 (5th Cir.2001)("it is clear that felons, *infants* and those of unsound mind may be prohibited from possessing firearms"(emphasis added)); *People v. Fields*, 2014 Ill.App.1st 130209, ¶64 (Dec. 31, 2014). "Unquestionably, the possession of a pistol or revolver by a minor constitutes a menace to the peace of the public, and to the safety of the individuals constituting the public." *Glenn v. State*, 72 S.E. 927, 929 (Ga.App. 1911).

## 2.  The discharge ordinance does not prevent self-defense.

This forty-four year old ordinance has roots in similar founding era laws, which *Heller* defended:

6

> All of them punished the discharge (or loading) of guns
> with a small fine and forfeiture of the weapon (or in a
> few cases a very brief stay in the local jail), not with
> significant criminal penalties. They are akin to modern
> penalties for minor public-safety infractions like
> speeding or jaywalking. And although such public-safety
> laws may not contain exceptions for self-defense, it is
> inconceivable that the threat of a jaywalking ticket would
> deter someone from disregarding a "Do Not Walk" sign
> in order to flee an attacker, or that the Government would
> enforce those laws under such circumstances. Likewise,
> we do not think that a law imposing a 5–shilling fine and
> forfeiture of the gun would have prevented a person in
> the founding era from using a gun to protect himself or
> his family from violence, or that if he did so the law
> would be enforced against him.

554 U.S. at 633-34. Plaintiffs do not show that Harrisburg would ever enforce this

ordinance against a person acting in self-defense.[5] Even if someone acting in self-

defense were cited, the person could raise self-defense under the federal and state

Constitutions or 18 Pa.C.S. §505.

### 3.  Plaintiffs have no right to bring guns to government parks and playgrounds

Gun bans in parks are longstanding. Yellowstone National Park banned guns

in parks in 1897, followed by nearly every other national park,[6] and the National

---

[5] Harrisburg notoriously did not charge State Representative Marty Flynn last year.
[6] http://www.nps.gov/policy/Firearmsregs.pdf

Park Service banned firearms in all national parks in 1936.[7] This Commonwealth banned guns in parks by at least 1971. 17 Pa.Code §11.215.

*Heller* noted that there is no right to bear arms in "sensitive places" like schools or government buildings. 554 U.S. at 626-27 & n. 26. So too in public parks and playgrounds. *See English*, 35 Tex. at 478-79("We confess it appears to us little short of ridiculous, that any one should claim the right to carry upon his person any of the mischievous devices inhibited by the statute, into a peaceable public assembly, as, for instance into a church, a lecture room, a ball room, *or any other place where ladies and gentlemen are congregated together*.")(emphasis added).

Such restrictions are abundantly reasonable:

> [T]he Court sees no logical distinction between a school on the one hand and a community center where educational and recreational programming for children is also provided on the other. Just as the Federal Courts do not want civilians entering into courthouses with weapons, the City does not want those with firearms entering certain parks where children and youth are likely present. The Park Rule is thus a perfectly acceptable prohibition on gun possession in a sensitive place and it passes state constitutional scrutiny.

*Warden v. Nickels*, 697 F. Supp. 2d 1221, 1229 (W.D.Wash. 2010).

---

[7] http://www.nps.gov/policy/1936Regulations.pdf(fed.reg. June 27, 1936) p. 674, rule 8. Federal parks recently lifted the gun ban. 36 C.F.R. §2.4(2009 amendment); 16 U.S.C.A. §1a-7b(2010). This policy shift does not alter the lengthy history of gun bans in parks.

Park-specific bans do not trample on gun rights:

> A city park is a place where Tucson residents gather and
> their children play. It requires no leap of logic to deduce
> that keeping dangerous weapons out of a public park
> directly reduces the possibility of armed conflict as well
> as accidents therein and substantially advances the safety
> of all who go there…
>
> Moreover, his assertion that the city's action strips him of
> his ability to defend himself is severely undercut by the
> fact that he can readily avoid the burden of the city's
> location-specific prohibition by simply walking around
> the park with his firearm, instead of through it.

*City of Tucson v. Rineer*, 971 P.2d 207, 213-14 (Ariz.App. 1998).

"No court has held that the Second Amendment encompasses a right to bear

arms within state parks." *Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012).

Courts have upheld bans in similar public areas. *See U.S. v. Dorosan*, 350 F.App'x

874, 875 (5th Cir. 2009)(post office parking lot); *People v. Yarbrough*, 86

Cal.Rptr.3d 674, 687 (Cal.App. 2008)(driveway).

### 4. The emergency ban is discretionary, temporary, and reasonable.

This ordinance, now approaching a half century in age, is longstanding. It is

further a reasonable restriction that is temporary in duration, used sparingly, and

protects the public from looting during emergencies.

Public gun bans at certain occasions and locations date back to our founding:

> There is a longstanding tradition of states regulating
> firearm possession and use in public because of the
> dangers posed to public safety. *See* Saul Cornell &

9

> Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FordhamL.Rev. 487, 502–16 (2004). During the Founding Era, for instance, many states prohibited the use of firearms on certain occasions and in certain locations. Other states went even further. North Carolina prohibited going armed at night or day "in fairs, markets, nor in the presence of the King's Justices, or other ministers, nor in no part elsewhere." *See* Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev.St. L.Rev. 1, 31–32 (2012). Massachusetts and Virginia enacted similar laws. *Id.*

*Kachalsky,* 701 F.3d at 94-95. *See also id.* at n. 20(similar 1328 English law).

Limited public carry restrictions have strong historical foundations. Harrisburg clearly has an interest in allowing brief restriction during an emergency to protect the public from looting (or worse).

### 5.  The reporting ordinance has nothing to do with self-defense.

The reporting requirement does not restrict self-defense. In *NRA v. City of Pittsburgh*, 999 A.2d 1256, 1260 (Pa. Commw. 2010), the Commonwealth Court rejected "the proposition that the right to bear arms precludes a legal responsibility to report stolen firearms."[8] There is no possible way that this ordinance restricts the right to defend yourself.

---

[8] Harrisburg's ordinance does not require owners to conduct inventories: "[T]he ordinance only requires reporting within [forty-eight] hours of the *discovery* of the loss, not the loss itself, creating no affirmative duty to inventory firearms." *Id.*

10

### B. **Plaintiffs cannot bring overbreadth claims.**

The Third Circuit "do[es] not recognize an overbreadth doctrine outside the limited context of the First Amendment…" *Barton*, 633 F.3d at 172.

### C. **Plaintiffs lack standing.**

Plaintiffs do not have any expectation of loss or theft of a gun or an imminent emergency. Further, Plaintiffs must follow the state gun ban in parks and the state emergency gun ban, and any child members must follow state and federal gun bans.

Under Article III's case or controversy requirement, Plaintiffs do not show an injury that is "concrete," "particularized," "fairly traceable to" Harrisburg's ordinances, and "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147 (2013). Plaintiffs' "theory of *future* injury is too speculative" and not "certainly impending." *Id.* at 1143. Their "fears of state prosecution… are imaginary or speculative." *Younger v. Harris*, 401 U.S. 37, 42 (1971).

Plaintiffs likewise lack traditional standing under state law, which mirrors the federal standard. *NRA v. City of Phila.*, 977 A.2d 78, 81-82 (Pa. Commw. 2009)(*en banc*) (no standing to challenge reporting requirement); *Dillon v. City of Erie*, 83 A.3d 467, 475 (Pa. Commw. 2014) (*en banc*) (same). In *NRA v. City of Pittsburgh*, the Court explained:

> [T]he Individual Appellants have pled that they live in
> areas where residential burglaries are common, and one
> has pled that a gun of his was stolen in the past…
>
> One of the Individual Appellants in this case would not
> be fined under the ordinance unless he had a gun stolen
> or lost, failed to report it, and was prosecuted for that
> failure. Because, …the possibility of harm is remote and
> speculative, Appellants lack standing.

999 A.2d at 1259.

No Plaintiff has suffered injury at Harrisburg's hands. Most or all of the

activities Plaintiffs wish to engage in are illegal under state law. Plaintiffs simply

have automatic standing under Act 192, which Harrisburg contests. Plaintiffs must

know this, which explains why they waited until after Act 192's 2015 effective

date to challenge ordinances enacted in 1951, 1969, 1971, 1991, and 2009.

### D. **A PAC cannot file a lawsuit unrelated to elections.**

FOAC lacks standing because its members do. In addition, FOAC, a

political action committee, cannot spend funds on anything not election related. 25

Pa.C.S. §3254.1, §3241(d). FOAC must show that "the interests it seeks to protect

are germane to the organization's purpose…" *Hunt v. Wash. State Apple Adver.*

*Comm'n*, 432 U.S. 333, 343 (1977). FOAC's purpose is elections, and it cannot

lawfully expend any funds on anything else, even a filing fee.

### E. **This Court should stay the preemption claims.**

Given the importance of Act 192, prudence dictates that this Court not rule

on the preemption claim until the Commonwealth Court resolves the constitutional

challenge to Act 192—a question that the Court scheduled for expedited review. Plaintiffs waited a long time before challenging these ordinances—nearly all of which have existed for decades and most of which pre-date the fall of Saigon. Given the fact that Plaintiffs waited to file suit for anywhere from five years to sixty-four years, a stay will not prejudice them.

### F.  **Act 192 violates Pennsylvania's Constitution.**

Act 192 violates the single subject and original purpose rules in Article III, Sections 1 and 3, of Pennsylvania's Constitution. Legislators tacked these standing and attorney fee provisions onto a bill about mental health records (HB 1243), which died in committee. At the tail-end of the legislative session, legislators took that bill and attached it *verbatim* to a bill about theft of copper wire (HB 80). After changing the original purposes of both HB 80 and 1243, the final bill has at least three subjects: firearms, mental health records, and theft of copper wire.

Let there be no mistake. The Pennsylvania Supreme Court is enforcing these constitutional demands. *See Com. v. Neiman,* 84 A.3d 603 (Pa. 2013) (rejecting broad subjects of judicial code, civil remedies, and judicial remedies, and striking down deficiency judgment bill amended to alter Megan's Law); *Jury Comm'rs v. Com.,* 64 A.3d 611 (Pa. 2013)(rejecting subject of powers of county commissioners and striking down statute on farm equipment regulation and eliminating certain jury commissioners); *City of Phila. v. Com,* 838 A.2d 566 (Pa.

2003)(rejecting broad subject of municipalities and striking down bill regarding citizenship requirements for certain municipal board members amended to reorganize convention center).

The Commonwealth Court is following suit. *Marcavage v. Rendell,* 936 A.2d 940 (Pa.Commw. 2005), *aff'd*,951 A.2d 345 (Pa. 2008)(rejecting broad subject of crimes and striking down bill about crop destruction amended to define ethnic intimidation); *DeWeese v. Weaver,* 880 A.2d 54 (Pa. Commw. 2005) (rejecting broad subject of judicial procedure and striking down bill requiring certain sex offenders to provide DNA amended to limit negligence recovery).

In addition, Act 192 stretches standing beyond its breaking point. Pennsylvania's Constitution provides that "every man *for an injury done him…* shall have remedy by due course of law…" Art. I, §11(emphasis added). While the legislature can expand the scope of injury, the legislature cannot define injury as "not injured." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992).

"The purpose of the requirement of standing is to protect against improper plaintiffs." *Application of Biester*, 409 A.2d 848, 851 (Pa. 1979). A verdict for uninjured plaintiffs violates the very essence of standing. This is even worse when the lawsuits are against municipalities, and, in turn, the taxpayers. Act 192 allows unaffected gun owners to sue municipalities they have never even entered and never will enter. This directly contradicts the general requirement that plaintiffs

14

prove liability and *harm*.

### G. **The UFA does not preempt the ordinances.**

#### 1. **Discharge:**

The Third Class City Code gives Harrisburg explicit authority to prevent

discharge and concealed carry:

> To the extent permitted by Federal and other State law,
> council may regulate, prohibit and prevent the discharge
> of guns and prevent the carrying of concealed deadly
> weapons.

53 Pa.C.S. §37423. *See* 53 Pa.C.S. §3703. The legislature just reenacted the Code

just last year.[9]

#### 2. **Children:**

The UFA does not preempt this ordinance because the UFA also prohibits

unsupervised children from having guns in public. 18 Pa.C.S. §6110.1. The UFA

only preempts ordinances that regulate the *lawful* possession of firearms:

> No county, municipality or township may in any manner
> regulate the *lawful* ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition
> components when carried or transported *for purposes not
> prohibited by the laws of this Commonwealth*.

18 Pa.C.S. § 6120(a). Because it is illegal for unsupervised children to carry guns

in public areas, the ordinance is not preempted.

---

[9] The state court agreed in the related case of *U.S. Law Shield* that Harrisburg can
ban discharge. Ex. 3 p. 9-10.

15

The statute is clear:

> [T]he County may not enact an ordinance which
> regulates firearm possession *if* the ordinance would make
> the otherwise lawful possession of a firearm *unlawful*.
> Thus, if the County's ordinance pertains only to the
> unlawful possession of firearms, i.e., possession
> "prohibited by the laws of this Commonwealth," then
> section 6120(a) of the Crimes Code does not preempt the
> County's ordinance.

*Minich v. Cnty. of Jefferson*, 869 A.2d 1141, 1143 (Pa.Commw. 2005)(emphasis in

original)(*Minich I*).[10] Harrisburg's ordinance does not restrict lawful gun

possession because of the state child gun ban.[11]

### 3. Reporting:

The requirement that persons report a lost or stolen targets the *unlawful*

transfer of firearms (theft and straw purchases). Accordingly, the UFA does not

apply. The UFA has two elements:

> No county, municipality or township may in any manner
> regulate
>
> [1] the lawful ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition

---

[10] Oddly, the Commonwealth Court reached the opposite interpretation in
*NRA v. Philadelphia*, 977 A.2d at 82. The Commonwealth Court felt bound by the
decision in *Ortiz v. Com.*, 681 A.2d 152 (1996), but the statutory language is clear
and *Ortiz* did not even address whether municipalities can restrict *unlawful*
possession.

[11] The state court disagreed because of the UFA's hunting exception. Ex. 3 p. 6.
Plaintiffs do not demonstrate that Harrisburg enforces the ordinance in a way to
restrict hunting. Further, Harrisburg's statutory authority to prohibit discharge
gives it authority to prohibit hunting as well and negate the exception.

components

[2] *when carried or transported for purposes not prohibited by the laws of this Commonwealth.*

18 Pa.C.S. §6120(a). A person who loses a firearm clearly does not possess it any longer. So whoever has the gun now, it is not "carried or transported for purposes not prohibited by the laws of this Commonwealth."[12]

### 4. Parks:

As explained above, the Third Class City Code permits Harrisburg to "*prevent* discharge" and "*prevent* the carrying of concealed deadly weapons." 53 Pa.C.S. §37423. The only question left is whether Harrisburg can also ban *openly* carry in parks. The open carry ban works to *prevent* discharge, the Code authorizes Harrisburg to regulate all conduct in its property and parks, and DCNR bans guns in parks.

*Dillon* provides support even though the Court held that the UFA preempts Erie's park ban. The Court noted two valid issues that Erie did not raise:

> Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and regulations

---

[12] The state court disagreed with this analysis although it ultimately did not resolve whether the UFA preempts the ordinance. Ex. 3 p. 7-9. The second prong of the statute compels a different result—requiring proof that the gun is (*present tense*) "carried or transported for purposes not prohibited by the laws of this Commonwealth."

> concerning the use and occupation of [its] parks and playgrounds by the public generally...." It could be argued that the City may be empowered under that grant of power from the State to regulate the possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted pursuant to its general police powers. Similarly, Section 11.215 of the regulations of the Commonwealth's Department of Conservation and Natural Resources, 17 Pa.Code § 11.215, generally prohibits "[p]ossessing an uncased device, or uncasing a device, including a firearm, ... that is capable of discharging or propelling a projectile ..." in state parks, subject to a number of enumerated exceptions.

83 A.3d at n.9.

As *Dillon* notes, Harrisburg has authority to regulate guns on city property *and* state regulations ban guns in parks anyway. Harrisburg's statutory authority to regulate its property has at least two sources:

> In exercising its discretion to make decisions that further the public interest under terms it deems most beneficial to the city, council shall have the power and authority, subject to any restrictions, limitations or exceptions as set forth in this act, to do any of the following:
>
> (1) …manage real and personal property.

53 Pa.C.S. §37402.1(a).

> The council of each city shall have power to enact, make, adopt, alter, modify, repeal and enforce in accordance with this act ordinances, resolutions, rules and regulations, not inconsistent with or restrained by the Constitution of Pennsylvania and laws of this Commonwealth, that are either of the following:

> (1) …necessary for the proper management, care and
> control of the city… and the maintenance of the peace,
> good government, safety and welfare of the city…

53 Pa.C.S. §37435.

The *Minich II* Court upheld courthouse gun bans due to similar grants of

authority:

> Section 509(a) of the County Code allows county
> commissioners to adopt ordinances regulating the affairs
> of a county. Section 509(c) of the County Code allows
> county commissioners to prescribe fines and penalties for
> violations of a "public safety" ordinance. 16 P.S. §
> 509(c). Here, the County ordinance regulates the affairs
> of the County, specifically the safety of members of the
> public who enter the Jefferson County Court House.
>
> Moreover, section 913(e) of the Crimes Code requires
> that each county make lockers available at a building
> containing a court facility for the temporary checking of
> firearms by persons legally carrying the firearms. 18
> Pa.C.S. § 913(e). The County ordinance simply
> implements this provision.

919 A.2d at 361. The Third Class City Code explicitly authorizes Harrisburg's

concealed carry ban. The open carry ban manages city property, and cares for and

maintains the peace, safety, and welfare. Finally, the open carry park ban only

restricts *unlawful* conduct due to the DCNR gun ban. 17 Pa.Code § 11.215.[13][14]

---

[13] Harrisburg mentions for the Court's benefit that the state funds for Harrisburg's
parks come with a legal duty to comply with DCNR regulations.

[14] The state court found that the UFA preempts this ordinance. Ex. 3 p. 5. The
DCNR park regulation and Third Class City Code compel a different result.

### 5. Emergencies:

Because the Third Class City Code authorizes Harrisburg to *prevent* discharge and concealed carry, the only question whether Harrisburg can ban open carry during emergencies. During emergencies, the Code specifically allows the Mayor during an emergency to prohibit "any other activities as the mayor reasonably believes would cause a clear and present danger to the preservation of life, health, property or the public peace." 53 Pa.C.S. §36203(e)(3)(iv),(vi). The emergency ordinance implements this grants of authority, allowing the Mayor to determine whether open carry during an emergency endangers the public.  Further, Harrisburg only regulates unlawful conduct because the UFA bans carrying guns during declared emergencies. 18 Pa.C.S. §6107.[15]

### H. **The Mayor and Chief have not harmed Plaintiffs.**

Plaintiffs have not demonstrated that the Mayor or Chief have harmed them or will. Both took office after enactment of every single ordinance, and neither has authority to repeal the ordinances.

### I. **The Mayor and Chief violated no clear federal law.**

The Mayor and Chief are protected from suit unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

---

[15] The state court found that the UFA preempts this ordinance based upon the UFA's concealed carry exception. Ex. 3 p. 5-6. However, Harrisburg's explicit authorization to ban concealed carry gives it authority to negate the exception.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

To defeat qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*per curiam*) (unanimous) (prior Third Circuit decision did not make violation clear). *See Lane v. Franks*, 134 S. Ct. 2369, 2383 (2014) (unanimous) (Eleventh Circuit decisions not sufficiently clear). Plaintiffs cannot show that the Third Circuit, which still questions whether the Second Amendment applies outside the home *at all*, bars Harrisburg's reasonable time, place, and manner restrictions on public carrying.

## J.  <u>The Mayor and Chief possess high official immunity.</u>

Under state law, the Mayor and Chief have high official immunity for "all statements made *and acts*..." *Feldman v. Hoffman*, 2014 WL 7212601, at *3 (Pa.Commw. Dec. 19, 2014)(emphasis added). The Mayor and Chief are clearly high officials as courts have given high official immunity to a state police captain and a municipal mayor, coroner, deputy commissioner, revenue commissioner, comptroller, architect, attorney, and parole superintendent. *Id.* at *4 (collecting cases). *See Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001)(unanimous)(assistant district attorney).

### K. **The official capacity claims are redundant.**

The official capacity claims are redundant with the claim against Harrisburg.

*Baez v. Lancaster County*, 487 Fed.App'x. 30, 32 (3d Cir. 2012).

### L. **Pennsylvania's Constitution does not provide claims for damages.**

Plaintiffs cannot recover damages for the Pennsylvania Constitution claim.

*Jones v. City of Phila.*, 890 A.2d 1188, 1208 & n.33 (Pa.Commw. 2006).

## V. **Conclusion:**

This Court should dismiss the federal claims and stay the state law

preemption claims or, in the alternative, retain supplemental jurisdiction.

Respectfully submitted,

Lavery Law

*s/ Frank J. Lavery*
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

March 6, 2015

## **Certification of Counsel**

I certify that this brief complies with the word limit in Local Rule 7.8. The brief contains 5,000 words, including footnotes. I use the word count feature in Microsoft Word to obtain this number.

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire

Dated: March 6, 2015

## **Certificate of Service**

I certify that on this date, I served a true and correct copy of this filing through this Court's ECF to the following:

Joshua Prince, Esquire
*joshua@princelaw.com*

*s/ Amyra W. Wagner*
Amyra W. Wagner
Legal Secretary to Josh Autry

Dated: March 6, 2015