## **Exhibit List – Amended Notice of Removal**

A.      Complaint

B.      Returns of Service

C.      Entries of Appearance

D.      Praecipe to Substitute Verifications

E.      Notice of Removal

F.      Transfer Notice

G.      10 Day Notices

H.      Defendants' Motion to Strike 10 Day Notices

I.      Praecipe for Default

J.      Default Judgment

K.      Scheduling Order

L.      Howard Bullock's Motion to Strike

M.      Defendants' Petition to Open or Strike Default

# EXHIBIT "A"

Neil A. Grover
Acting City Solicitor
Email: ngrover@cityofhbg.com



City Government Center
10 North Second Street Suite 402
Harrisburg, PA 17101
Phone:      (717) 255-3065
Facsimile: (717) 255-3056

# City of Harrisburg
## Office of the City Solicitor

DATE: __1/20/15__

NO. OF PAGES (INCLUDING THIS PAGE): __113__

TO:  NAME: _____

COMPANY/FIRM:  _GALLAGHON / BASSETT_

ADDRESS: _____

FAX NO.:  _800-748-6159_

FROM:  _MICHAEL BROWNLUGON_

RE:  _2015-CV-354-EQ_

SENDER
COMMENTS:  _FIREARM OWNERS AGAINST CRIME_
_v_
_City OF HBG, ET AL._

CONFIDENTIALITY NOTE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (717) 255-3065, and return the original message to us at the address listed above via the U.S. Postal Service. Thank you.

01-20-'15 10:55 FROM- T-088 P0002/0111 F-122

RECEIVED
OFFICE OF
PROTHONOTARY

2015 JAN 16 PM 12: 57

DAUPHIN COUNTY
PENNA

Joshua Prince, Esquire
Attorney ID: 306521
646 Lenape Road
Bechtelsville, PA 19505-9135
1-610-845-3803

Attorney for Plaintiff

IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA

Firearm Owners Against Crime, et al. :
                  PLAINTIFFS :

VS:         : NO. 2015- CV- 354- EQ
             : CIVIL ACTION - LAW

City Of Harrisburg, et al. :
         DEFENDANTS :

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court wihtout further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

## AVISO

Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las pa?ginas siguientes, usted debe tomar accio?n en el plazo de veinte (20) di?as a partir de la fecha en que se le hizo entrega de la demanda y la notificacio?n, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podri?a dictarse un fallo por el juez en contra suya sin notificacio?n adicional y podri?a ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.

SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 NORTH FRONT STREET
HARRISBURG, PA 17101
1-717-232-7536

Joshua Prince, Esq.
Attorney ID # 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

RECEIVED
OFFICE OF
PROTHONOTARY

2015 JAN 16  PM 12: 57

DAUPHIN COUNTY
PENNA

Attorney for Plaintiffs

## IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST           :
CRIME;                           :
                                 :
KIM STOLFER;                     :     Jury Trial Demanded
                                 :
JOSHUA FIRST; and                :
                                 :
HOWARD BULLOCK,                  :
                                 :
         Plaintiffs,             :     Civil Action
                                 :
         vs.                     :
                                 :
CITY OF HARRISBURG;              :     No. 2015-CV-354-EQ
                                 :
MAYOR ERIC PAPENFUSE; and        :
                                 :
POLICE CHIEF THOMAS CARTER       :
                                 :
         Defendant.              :

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE
## RELIEF FROM THE CITY OF HARRISBURG'S ILLEGAL,
## UNENFORCEABLE AND UNCONSTITUTIONAL ORDINANCES

Plaintiffs, Firearm Owners Against Crime, Kim Stolfer, Joshua First, and Howard

Bullock, as well on behalf of all similarly situated individuals to which Ordinances 3-

345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-

345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 -

Hunting, firearms and fishing, will be enforced against or aggrieved by, by and through

their attorneys, Joshua Prince, Esq. and Prince Law Offices, P.C., hereby file this

Complaint for declaratory and injunctive relief against Defendants, Mayor Eric

Papenfuse, Police Chief Thomas Carter, and the City of Harrisburg, and its officials,

agents and employees, for violating Article 1, Section 21 of the Pennsylvania

Constitution, 18 PA.C.S. § 6120, and the Second Amendments to the U.S. Constitution

and in support thereof state the following:

### JURISDICTION

1. This court has jurisdiction under 42 Pa.C.S.A. §§ 931, 7532, 7533, and 7536 of
   the Declaratory Judgments Act and 42 U.S.C. § 1983, pursuant to the Supremacy
   Clause of Article VI of the U.S. Constitution, as the acts of all Defendants related
   to this Complaint occurred in Dauphin County, Pennsylvania.

2. Venue is proper pursuant to 42 Pa.C.S. § 931 and Pa.R.C.P. No. 1006, as the acts
   of all Defendants related to this Complaint occurred in Dauphin County,
   Pennsylvania.

### PARTIES

3. Plaintiff Firearm Owners Against Crime (hereinafter "FOAC") is a statewide,
   non-partisan Political Action Committee ["PAC"] and membership organization
   with 1,649 members, which actively works to defend, preserve, and protect the
   constitutional and statutory rights of lawful firearm owners, through, *inter alia,*
   Article 1, Section 21 of the Pennsylvania Constitution and the 2nd Amendment of
   the U.S. Constitution.  FOAC was formed in 1993, formally becoming a statewide
   PAC in 1994, and has members who legally possess firearms under Federal and

2

State law throughout the Commonwealth, including in Dauphin County. FOAC
represents those members in this action.

4. Plaintiff Kim Stolfer (hereinafter "Mr. Stolfer") is an adult resident of the
Borough of McDonald, Allegheny County, Pennsylvania, as well as, the President
of FOAC, who lawfully possesses firearms under State and Federal law. He
frequents the City of Harrisburg, Dauphin County, for political purposes both as
an individual and in his capacity as President of FOAC.

5. Plaintiff Joshua First (hereinafter "Mr. First") is an adult resident of the City of
Harrisburg, Dauphin County, Pennsylvania, who lawfully possesses firearms
under state and Federal law, and is a member of FOAC.

6. Plaintiff Howard Bullock (hereinafter "Mr. Bullock") is an adult resident of
Lower Paxton Township, Dauphin County, Pennsylvania, who works in the City
of Harrisburg, lawfully possesses firearms under State and Federal law, and is a
member of FOAC.

7. Defendant City of Harrisburg (hereinafter, "Harrisburg" or "City") is a municipal
corporation duly organized, existing and operating under and pursuant to the
applicable laws of the Commonwealth of Pennsylvania, currently a City of the
Third Class, pursuant to 53 P.S. § 35101, *et seq.*, located within the County of
Dauphin, Pennsylvania, and at all relevant times owns, manages, operates, directs
and controls the Harrisburg Police Department, Harrisburg Department of Parks,
Harrisburg Department of Arts, Culture, and Tourism, and all City officials,
agents, and employees. Defendant City is a "person" under 42 U.S.C. § 1983 and
at all times relevant to this case acted under color of law.

3

8. Defendant Mayor Eric Papenfuse (hereinafter "Mayor Papenfuse") is an adult,
who at all times relevant was the Mayor of the City of Harrisburg. At all relevant
times, Mayor Papenfuse was a policymaker with decision-making authority and
was responsible for implementing and enforcing policies, regulations and
ordinances of the City of Harrisburg, including implementation and enforcement
of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging
weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-355.2 - Emergency
measures, and 10-301.13 - Hunting, firearms and fishing. At all relevant times,
Mayor Papenfuse was acting under color of state law. He is being sued in both
his official and individual capacities and is a "person" under 42 U.S.C. § 1983.

9. Defendant Police Chief Thomas Carter (hereinafter "Chief Carter") is an adult,
who at all times relevant was the Police Chief of the City of Harrisburg and
responsible for hiring, training and supervision of the police officers of the City of
Harrisburg, as well as, directing the enforcement of Ordinances 3-345.1 -
Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-
345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 -
Hunting, firearms and fishing. At all relevant times, Chief Carter was acting under
color of state law. He is being sued in both his official and individual capacities
and is a "person" under 42 U.S.C. § 1983.

## THE PENNSYLVANIA UNIFORM FIREARMS ACT

10. Pennsylvania's Uniform Firearms Act (hereinafter, "UFA") can be found at 18
PA.C.S. § 6101, et seq.

4

11. Pennsylvania's UFA provides for "Limitation on the regulation of firearms and ammunition" in 18 PA.C.S. § 6120(a), which declares: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth."

12. Section 6120(a.2) declares, "A person adversely affected by an ordinance, a resolution, regulation, rule, practice or any other action promulgated or enforced by a county, municipality or township prohibited under subsection (a) or 53 Pa.C.S. § 2962(g) (relating to limitation on municipal powers) may seek declaratory or injunctive relief and actual damages in an appropriate court."

13. Section 6120(a.3) goes on to declare, "A court shall award reasonable expenses to a person adversely affected in an action under subsection (a.2) for any of the following: (1) A final determination by the court is granted in favor of the person adversely affected. (2) The regulation in question is rescinded, repealed or otherwise abrogated after suit has been filed under subsection (a.2) but before the final determination by the court."

14. Section 6120(b) defines a "person adversely affected" as any of the following: "(1) A resident of this Commonwealth who may legally possess a firearm under Federal and State law. (2) A person who otherwise has standing under the laws of this Commonwealth to bring an action under subsection (a.2). (3) A membership organization, in which a member is a person described under paragraph (1) or (2).

5

. 15. Additionally, 18 PA.C.S. § 6119 provides that a violation of Pennsylvania's UFA,

including for Section 6120, constitutes a misdemeanor of the first degree.

### ATTORNEY GENERAL'S DETERMINATION

16. On August 24, 2009, then-Attorney General Tom Corbett issued a letter to the

Adams County Office of the District Attorney regarding the issue of Section

6120's preemption, informing District Attorney Wagner that local municipalities

are precluded from enacting ordinances regarding the possession of firearms. A

copy of that letter is attached hereto and incorporated herein as Exhibit A.

### OFFICIAL OPPRESSION

17. 18 PA.C.S. § 5301 provides, "A person acting or purporting to act in an official

capacity or taking advantage of such actual or purported capacity commits a

misdemeanor of the second degree if, knowing that his conduct is illegal, he:

> (1) subjects another to arrest, detention, search, seizure, mistreatment,
>
> dispossession, assessment, lien or other infringement of personal or
>
> property rights; or
>
> (2) denies or impedes another in the exercise or enjoyment of any right,
>
> privilege, power or immunity.

### ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSITUTION

18. Section 21. Right to Bear Arms: "The right of the citizens to bear arms in

defense of themselves and the State shall not be questioned."

6

## ARTICLE I, SECTION 25 OF THE PENNSYLVANIA CONSITUTION

19. Section 25. Reservation of Powers in People: "To guard against transgressions

of the high powers which we have delegated, we declare that everything in this

article is excepted out of the general powers of government and shall forever

remain inviolate."

## THE SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION

20. Amendment II to the United States Constitution: "A well regulated militia,

being necessary to the security of a free state, the right of the people to keep and

bear arms, shall not be infringed."

## CASE LAW

### Pennsylvania

21. The Pennsylvania Supreme Court in Ortiz v. Commonwealth, 681 A.2d 152, 156

(Pa. 1996), finding that both Article I, Section 21 of the Pennsylvania

Constitution and 18 Pa.C.S. § 6120 preempted *any* regulation of firearms or

ammunition, declared,

> Because the ownership of firearms is constitutionally protected, its
> regulation is a matter of statewide concern. The constitution does not
> provide that the right to bear arms shall not be questioned in any part of
> the commonwealth except Philadelphia and Pittsburgh, where it may be
> abridged at will, but that it shall not be questioned in any part of the
> commonwealth. Thus, regulation of firearms is a matter of concern in all
> of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the
> General Assembly, not city councils, is the proper forum for the
> imposition of such regulation. (Emphasis added).

22. In finding that the Pennsylvania Supreme Court's holding in Ortiz was "crystal clear," the Pennsylvania Commonwealth Court held that even regulation by a municipality *consistent with* the UFA was preempted. *See*, National Rifle Ass'n v. City of Philadelphia, 977 A.2d 78, 82 (Pa. Cmwlth. 2009).

23. In Clarke v. House of Representatives, 957 A.2d 361 (Pa. Cmwlth. Ct. 2008), the Commonwealth Court dealt with seven ordinances enacted by the City of Philadelphia and found *all* of them to be preempted by Section 6120. The ordinances included: (1) limit of one handgun per month and prohibition on straw purchaser sales; (2) reporting of lost or stolen firearms; (3) requiring a license to acquire a firearm in Philadelphia or bring a firearm into Philadelphia; (4) requiring annual renewal of a gun license; (5) permitting confiscation of firearms from someone posing a risk of harm; (6) prohibiting the possession or transfer of assault rifles; and (7) requiring any person selling ammunition to report the purchase and purchase to the police department.

24. In Dillon v. City of Erie, 83 A.3d 467, 473 (Pa. Cmwlth. 2014), the Commonwealth Court found that the City of Erie's ordinance precluding firearms in city parks, *which was identical to Defendant City's Ordinance 10-301.13,* violated Article 1, Section 21 and Section 6120.

### United States

25. The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense"

is unconstitutional and that the "nonexistence of a self-defense exception" in a

statute is violative of the Second Amendment.

26. Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person

or in the clothing or in a pocket, for the purpose ... of being armed and ready for

offensive or defensive action in a case of conflict with another person." Id. at 584.

27. In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court

would declare that the Second Amendment applies to the States through the

Fourteenth Amendment of the U.S. Constitution.


## CITY ORDINANCES AT ISSUE

### Pursuant to Chapter 3-345: Weapons and Explosives

28. 3-345.1 - Possession of firearms by minors, provides:

It shall be unlawful for any minor under the age of 18 years to have in his or her
possession, except in his or her place of residence, any firearm, flobert rifle, air
gun, spring gun or any implement which impels with force a metal pellet of any
kind, unless said minor is accompanied by an adult.

29. 3-345.2 - Discharging weapons or firearms, provides:

No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any
kind within the City, except at supervised firing ranges in bona fide educational
institutions accredited by the Pennsylvania Department of Education and with the
approval of the Mayor or Chief of Police, or at a firing range operated by the
Bureau of Police.

30. 3-345.4 - Lost and stolen firearms, provides:

A.  Any person who is the owner of a firearm that is lost or stolen shall report the
loss or theft of that firearm to an appropriate local law enforcement official
within 48 hours after discovery of the loss or theft

B.  For the purpose of this section, the term "firearm" shall be defined as any
pistol or revolver with a barrel length less than 15 inches, any shotgun with a
barrel length less than 18 inches or any rifle with a barrel length less than 16

inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt, or cylinder, whichever is applicable.

31. 3-345.99 - Penalty, provides:

Any person who violates the provisions of this chapter shall be subject to Chapter 3-399, Penalty, of these Codified Ordinances.

32. 3-399 - Penalty, provides:

A. Whoever violates any provision of Part 3, General Offenses, of Title 3 shall, upon conviction thereof, be guilty of a summary offense for each separate violation respectively and, where no specific penalty or fine is provided therefor, subject to a fine of not less than $50 nor more than $1,000 plus costs or imprisonment in the Dauphin County prison for not more than 90 days for each separate violation, or both. Further, any personal property, including a motor vehicle, used in connection with activity that violates any provision of Part 3, General Offenses, of Title 3 may be seized at the time of arrest and permanently forfeited upon conviction for such violation as part of the penalty for such violation or pursuant to other provisions of City or state law.

B. The application of the above penalty shall not prevent the City from pursuing any other remedy available at law or equity for enforcement of Part 3, General Offenses, of Title 3. Prosecution for violation of a provision of Part 3, General Offenses, of Title 3 shall not exclude prosecution for violation of any other applicable City, state or federal law but rather shall be in addition thereto.

C. Upon conviction for a violation of any provision of Part 3, General Offenses, of Title 3 pursuant to Subsection A, in addition to any fines, fees or penalties levied in accordance with Subsection A, an additional neighborhood mitigation penalty shall be levied in the amount of $25. All such penalties levied and collected by any division of the Unified Judicial System existing under Section 1 of Article V of the Constitution of Pennsylvania and 42 Pa.C.S.A. § 301 shall be remitted to the City for deposit into the Neighborhood Mitigation Fund to finance additional community and neighborhood policing programs and operations throughout the City. If the fine is paid in installments, the proportionate amount of the neighborhood mitigation penalty shall be remitted on each installment.

## Pursuant to Chapter 3-355: State of Emergency

33. 3-355.2 – Emergency measures, provides:

10

A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

    (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.

    (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

    (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

    (1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

    (2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

    (3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

    (4) The closing of places of public assemblage with designated exceptions.

    (5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

    (6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

11

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

(8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

34. 3-355.99 – Penalty, provides:

Any person who violates the provisions of this chapter shall be subject to Chapter 3-399, Penalty, of these Codified Ordinances.

## Pursuant to Chapter 10-301: Parks

35. 10-301.13 – Hunting, firearms and fishing, provides:

A. No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

B. No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

D. No person shall fish in Italian Lake.

36. 10-301.99 – Penalty, provides:

A. For the purposes of enforcing the provisions of this chapter, any warning or notice of a violation shall be given by park rangers, police officers, Department of Parks, Recreation and Enrichment officials or any other person authorized to enforce ordinances. Whenever a park ranger or any other official authorized to enforce this chapter observes or by information becomes aware of a violation, that person is hereby authorized to issue a citation pursuant to Rule 51 of the Pennsylvania Rules of Criminal Procedure.

B.  Any person who violates the provisions of this chapter shall be subject to the general code penalty, § 1-301.99 of these Codified Ordinances.

37. 1-301.99 – General penalty, provides:

Whenever in the Codified Ordinances or in any ordinance of the City any act is prohibited or is made or declared to be unlawful or an offense, or whenever in the Codified Ordinances or in any ordinance the doing of any act is required or the failure to do any act is declared to be unlawful, where no specific penalty or fine is provided therefor, the violator of any such provision or any ordinance pertaining to building, housing, property maintenance, health, fire or public safety shall be fined not more than $1,000, plus all costs, or imprisoned for not more than 90 days, or both. The violator of water, air and noise pollution or any other ordinance or provision or part thereof shall be fined no more than $600, plus all costs, or imprisoned for not more than 90 days, or both. Each day that a violation continues shall be deemed a separate offense. This penalty shall in no way be construed to negate or preclude any additional liability, punishment, enforcement action, or remedy and shall apply in addition to any other fines or penalties.

38. All the above-specified Ordinances, including penalties, are hereinafter collectively referred to as "Ordinances."

## STATEMENT OF FACTS

### Facts Related to Defendant Harrisburg

39. The foregoing paragraphs are incorporated herein as if set forth in full.

40. Defendant City is a municipal corporation duly organized, existing and operating under and pursuant to the applicable laws of the Commonwealth of Pennsylvania, currently a City of the Third Class, pursuant to 53 P.S. § 35101, *et seq.*, located within the County of Dauphin, Pennsylvania.

41. Defendant City is a municipality as defined by 18 Pa.C.S. § 6120.

42. At all relevant times, Defendant City owns, manages, operates, directs and controls the Harrisburg Police Department, Harrisburg Department of Parks,

13

Harrisburg Department of Arts, Culture, and Tourism, and all City officials, agents, and employees.

43. Defendant City is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

## Facts Related to Defendant Mayor Papenfuse

44. The foregoing paragraphs are incorporated herein as if set forth in full.

45. Defendant Mayor Papenfuse is an adult, who at all times relevant was the Mayor of the City of Harrisburg.

46. At all relevant times, Mayor Papenfuse was a policymaker with decision-making authority and was responsible for implementing and enforcing policies, regulations and ordinances of the City of Harrisburg, including, but not limited to, implementation and enforcement of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and fishing.

47. At all relevant times, Mayor Papenfuse was acting under color of state law.

48. Defendant Mayor Papenfuse is a "person" under 42 U.S.C. § 1983.

## Facts Related to Defendant Chief Carter

49. Defendant Police Chief Thomas Carter is an adult, who at all times relevant was the Police Chief of the City of Harrisburg.

14

50. Defendant Chief Carter, at all relevant times, was responsible for hiring, training and supervision of the police officers of the City of Harrisburg, as well as, directing the enforcement of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and fishing.

51. At all relevant times, Chief Carter was acting under color of state law.

52. Defendant Chief Carter is a "person" under 42 U.S.C. § 1983.

## Facts Related to FOAC

53. The foregoing paragraphs are incorporated herein as if set forth in full.

54. FOAC is a statewide, non-partisan PAC, which actively works to defend, preserve, and protect constitutional and statutory rights of lawful firearm owners, including through Article 1, Section 21 of the Pennsylvania Constitution and the Second Amendment to the U.S. Constitution.

55. FOAC actively educates and informs its members, the General Assembly, and the public on all issues pertaining to firearms, firearm safety, constitutional provisions, statutes, case law and all other issues related to or intersecting with Article 1, Section 21 of the Pennsylvania Constitution, the Second Amendment of the U.S. Constitution, and firearms and ammunition in general.

56. FOAC was formed in 1993, formally becoming a statewide PAC in 1994, as a result of the City of Pittsburgh's illegal firearm and ammunition ban.

57. Plaintiff Mr. Stolfer is the current President of FOAC.

15

58. FOAC has 1,649 members within the Commonwealth, including in Dauphin County, who, under information and belief, may legally possess firearms under Federal and State law.

59. FOAC has over a half-dozen members, under the age of 18, who, under information and belief, may legally possess firearms under Federal and State law.

60. FOAC has a member, under the age of 18, from the City of Harrisburg, Dauphin County, who legally possesses firearms under Federal and State law.

61. Plaintiffs Mr. Stolfer, Mr. First and Mr. Bullock are members of FOAC and at all times can and lawfully do possess firearms under Federal and State law.

62. FOAC's members have raised concern over the threat of prosecution by Defendants.

63. FOAC fears that the Defendants, pursuant to the Ordinances, will unlawfully prosecute its members, based on the statements made by the Defendants that they will enforce the Ordinances.  See ¶¶ 87-94, infra.

## Facts Related to Kim Stolfer

64. The foregoing paragraphs are incorporated herein as if set forth in full.

65. Mr. Stolfer is a member and the President of FOAC.

66. Mr. Stolfer may and lawfully does possess firearms under State and Federal law.

67. Mr. Stolfer owns rifles, shotguns and handguns.

68. Mr. Stolfer frequents, at least on an average bi-weekly basis, the City of Harrisburg, Dauphin County, for political purposes both as an individual and in his capacity as President of FOAC.

69. Mr. Stolfer fears prosecution by Defendants pursuant to the Ordinances, as the Defendants have stated that they will enforce the Ordinances.

### Facts Related to Joshua First

70. The foregoing paragraphs are incorporated herein as if set forth in full.

71. Mr. First is a resident of the City of Harrisburg, Dauphin County, and a member of FOAC.

72. Mr. First may and lawfully does possess firearms under State and Federal law.

73. Mr. First owns rifles, shotguns and handguns.

74. Mr. First fears prosecution by Defendants pursuant to the Ordinances, as the Defendants have stated that they will enforce the Ordinances.

### Statement of Facts of Howard Bullock

75. The foregoing paragraphs are incorporated herein as if set forth in full.

76. Mr. Bullock is a resident of the Lower Paxton, Dauphin County, and a member of FOAC.

77. Mr. Bullock may and lawfully does possess firearms under State and Federal law.

78. Mr. Bullock owns rifles, shotguns and handguns.

79. Mr. Bullock works, and therefore commutes daily, into the City of Harrisburg.

80. Mr. Bullock fears prosecution by Defendants pursuant to the Ordinances, as the Defendants have stated that they will enforce the Ordinances.

### Statement of Facts of All Plaintiffs

81. The foregoing paragraphs are incorporated herein as if set forth in full.

82. The City is a municipality against which 18 Pa.C.S. § 6120 applies.

83. FOAC, Mr. Stolfer, Mr. First and Mr. Bullock (hereinafter collectively
    "Plaintiffs") own, possess, use, and bear firearms for all lawful purposes,
    including, but not limited to, self-defense, hunting, firearms training/education,
    and target shooting.

84. All legal firearms owners are permitted to openly carry firearms, absent a license
    to carry firearms, throughout the Commonwealth of Pennsylvania, with the sole
    exception being the City of Philadelphia.[1]

85. Plaintiffs are licensed to carry concealed firearms within the Commonwealth of
    Pennsylvania.

86. Plaintiffs bring this action as a result of the City's illegal Ordinances, which in
    addition to violating Section 6120, deprive them of their rights pursuant to the
    Pennsylvania and U.S. Constitutions.

87. Accordingly, Plaintiffs are "person[s] adversely affected" by the Defendants
    illegal Ordinances.

88. In an egregious and direct violation of Section 6120, the City of Harrisburg,
    Mayor Papenfuse and Chief Carter (hereinafter collectively "Defendants"), acting
    under color of state law, have promulgated, enacted, enforced, and seek to
    continue enforcement of Ordinances 3-345.1 - Possession of firearms by minors,
    3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-

---

[1] See, 18 Pa.C.S. § 6108.

355.2 – Emergency measures, and 10-301.13 – Hunting, firearms and fishing, and their associated penalties.

89. Although the undersigned counsel informed the Defendants of their violations of state law and afforded them an opportunity, prior to filing this action, to repeal the unlawful Ordinances, on December 29, 2014, Mayor Papenfuse stated publicly that he intends to continue to enforce the Ordinances and that he will not repeal them.

90. Specifically, Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." A copy of the article is attached hereto and incorporated herein as Exhibit B.

91. In that same article, Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." *See*, Exhibit B.

92. Several days later, Mayor Papenfuse stated to ABC 27 News reporter Dave Marcheskie: "Police do cite people for [the discharge ordinance] on a regular basis. That is a sensible measure." A copy of the article is attached hereto and incorporated herein as Exhibit C.

93. Each of these Ordinances regulate firearms and ammunition and are patently unenforceable, unconstitutional, illegal, violate statewide preemption and clearly established precedent of the Supreme Courts of the United States and Pennsylvania. *See*, Heller and Ortiz.

94. In defiance of clearly established rights of the citizens, acting under color of state law, the Defendants have promulgated, enacted, ratified, condoned and enforced these gun control ordinances knowing that they have no authority to pass such ordinances, and knowing that such are violating the U.S. and Pennsylvania Constitutions, statutory law and the established precedent of the Commonwealth Courts, specifically the Supreme and Commonwealth Courts, which have issued binding precedent on the Courts of this Commonwealth that the City of Harrisburg has no authority or power to regulate firearms or ammunition.

95. Plaintiffs assert that their rights under Article 1, Section 21 of the Pennsylvania Constitution and under the Second Amendment to the United States Constitution are now unconstitutionally rendered illegal, curtailed and burdened by the passage and enforcement, or threat thereof, of these Ordinances, which has resulted in a chilling effect upon their rights.

96. Plaintiffs are likely to face criminal charging, prosecution and penalties, for violating the City's unlawful Ordinances.

### COUNT I: DECLARATORY RELIEF -- 18 PA.C.S. § 6120 -- ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
#### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

97. The foregoing paragraphs are incorporated herein as if set forth in full.

98. For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

99. For purposes of this Count, "Defendants" refers to all named Defendants.

100.     Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

101.     3-345.1 - Possession of firearms by minors, provides:

It shall be unlawful for any minor under the age of 18 years to have in his or her possession, except in his or her place of residence, any firearm, flobert rifle, air gun, spring gun or any implement which impels with force a metal pellet of any kind, unless said minor is accompanied by an adult.

102.     Ordinance 3-345.1 was promulgated, enacted, enforced and continues to be enforced by Defendants.

103.     Ordinance 3-345.1 is not limited to residents of, or individuals within, the City; rather, it encompasses all minors throughout the Commonwealth and even the United States.[2]

104.     Ordinance 3-345.1 is overbroad, as it applies to any minor in the Commonwealth and even the United States.

105.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." See, Exhibit B.

106.     Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

107.     A present controversy exists,[3] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

---

[2] See, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.
[3] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

21

108.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania

Constitution, 18 Pa.C.S. § 6120 and the binding precedent.[4]

109.     Pursuant to 18 Pa.C.S. § 6110.1, the General Assembly has only precluded

minors, with several exceptions, from possessing and transporting, generally,

handguns.[5]

110.     Even if the General Assembly had prohibited minors from possessing and

transporting rifles and shotguns, which it has not, Defendants are prohibited from

promulgating, enacting, or enforcing any ordinance *consistent* with such law,

pursuant to Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. §

6120, and the Commonwealth Court's holdings in NRA v. City of Philadelphia

and Clarke v. House of Representatives, *supra*.

111.     Members of FOAC under the age of 18, who lawfully possess firearms

pursuant to State and Federal law, including one living in the City of Harrisburg,

have raised concern with FOAC over their possible charging and prosecution,

because of the Defendants' statements that they will enforce Ordinance 3-345.1,

which applies to individuals across the Commonwealth.

---

[4] The federal courts have analyzed Second Amendment issues under a First Amendment analysis. See United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010); Piszczatoski v. Filko, 840 F.Supp.2d 813, 834 (D.N.J. 2012).
[5] In Section 6110.1, the statutory language uses the term "firearm," which is defined by 18 Pa.C.S. § 6102 as "Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches."

01-20-'15 10:59 FROM-                                                    T-066   P0026/0111   F-122

112.     Members of FOAC, who have children under the age of 18, and whose children lawfully possess firearms pursuant to State and Federal law, including one living in the City of Harrisburg, have raised concern with FOAC over their children's possible charging and prosecution, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

113.     FOAC fears prosecution of its members, especially those under the age of 18, within the Commonwealth, who lawfully possess firearms, pursuant to State and Federal law, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

114.     Plaintiffs, pursuant to 18 Pa.C.S. § 6120, are "person[s] adversely affected.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.   Finding that Ordinance 3-345.1 violates 18 Pa.C.S. § 6120;

b.   Declaring that Ordinance 3-345.1 is unlawful;

c.   Enjoining Defendants from enforcing Ordinance 3-345.1;

d.   Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

e.   Such other relief as the Court deems just and equitable.

## COUNT II: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 –
## ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

115.    The foregoing paragraphs are incorporated herein as if set forth in full.

116.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

117.    For purposes of this Count, "Defendants" refers to all named Defendants.

118.    Plaintiffs' injuries are imminent and immediate and will not be adequately
redressed through money damages.

119.    Plaintiffs have a well-grounded fear of imminent prosecution for violation
of Ordinance 3-345.1, as the City, by and through its representatives, Mayor
Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will
continue to be enforced.

120.    Violations of constitutional and statutory rights are *per se* injuries, which,
in this case, result in criminal liability of the City and its officials, agents and
employees.

121.    Enforcement of these ordinances will have a chilling effect on the
otherwise lawful right to sell, transfer and possess lawful firearms.

122.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs
will face criminal charging and prosecution, whereby Plaintiffs will be deprived
of their constitutional and statutory rights, in violation of Article 1, Section 21 of
the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

123.    If the injunction is granted, Plaintiffs and Defendants will remain in the
position they were prior to the wrongful conduct of the City enacting Ordinance
3-345.1.

124.    An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

125.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 3-345.1;

    b.  Requiring that Defendants repeal Ordinance 3-345.1;

    c.  Directing that Defendants pay reasonable expenses, including attorney

       fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

    d.  Such other relief as the Court deems just and equitable.

## COUNT III: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

126.    The foregoing paragraphs are incorporated herein as if set forth in full.

127.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

128.    For purposes of this Count, "Defendants" refers to all named Defendants.

129.    Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

130.    **3-345.1 - Possession of firearms by minors, provides:**

It shall be unlawful for any minor under the age of 18 years to have in his or her possession, except in his or her place of residence, any firearm, flobert rifle, air gun, spring gun or any implement which impels with force a metal pellet of any kind, unless said minor is accompanied by an adult.

131.     Ordinance 3-345.1 was promulgated, enacted, enforced and continues to be enforced by Defendants.

132.     Ordinance 3-345.1 is not limited to residents of, or individuals within, the City, but rather encompasses all minors throughout the Commonwealth and even the United States.[6]

133.     Ordinance 3-345.1 is overbroad, as it applies to any minor in the Commonwealth and even the United States.

134.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

135.     Chief Carter declared that: "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

136.     A present controversy exists,[7] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

---

[6] *See*, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.
[7] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

137.     The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

138.     Pursuant to 18 Pa.C.S. § 6110.1, the General Assembly has only precluded minors, with several exceptions, from possessing and transporting, generally, handguns.[8]

139.     Even if the General Assembly had prohibited minors from possessing and transporting rifles and shotguns, which it has not, Defendants are prohibited from promulgating, enacting, or enforcing any ordinance *consistent* with such law, pursuant to Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120, and the Commonwealth Court's holdings in NRA v. City of Philadelphia and Clarke v. House of Representatives, *supra*.

140.     Members of FOAC, under the age of 18 and who lawfully possess firearms pursuant to State and Federal law, including one living in the City of Harrisburg, have raised concern with FOAC over their possible charging and prosecution, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

141.     Members of FOAC, who have children under the age of 18 and whose children lawfully possess firearms pursuant to State and Federal law, including

---

[8] In Section 6110.1, the statutory language uses the term "firearm," which is defined by 18 Pa.C.S. § 6102 as "Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches."

27

one living in the City of Harrisburg, have raised concern with FOAC over their children's possible charging and prosecution, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

142.    FOAC fears prosecution of its members, especially those under the age of 18, within the Commonwealth, who lawfully possess firearms, pursuant to State and Federal law, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

      a.  Finding that Ordinance 3-345.1 violates Article 1, Section 21 of the Pennsylvania Constitution;

      b.  Declaring that Ordinance 3-345.1 is unlawful;

      c.  Enjoining Defendants from enforcing Ordinance 3-345.1;

      d.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

      e.  Such other relief as the Court deems just and equitable.

## COUNT IV: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

143.    The foregoing paragraphs are incorporated herein as if set forth in full.

144.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

145.     For purposes of this Count, "Defendants" refers to all named Defendants.

146.     Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

147.     Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.1, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

148.     Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

149.     Enforcement of these ordinances will have a chilling effect on the otherwise lawful right to sell, transfer and possess lawful firearms.

150.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

151.     If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 3-345.1.

152.     An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

01-20-'15 11:00 FROM-                                                          T-066  P0033/0111 F-122

153.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 3-345.1;

    b.  Requiring that Defendants repeal Ordinance 3-345.1;

    c.  Directing that Defendants pay reasonable expenses, including attorney

        fees and costs; and

    d.  Such other relief as the Court deems just and equitable.

## COUNT V: DECLARATORY RELIEF – SECOND AMENDMENT TO THE
### UNITED STATES CONSTITUTION –
## ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
### (FOAC V. ALL DEFENDANTS)

154.    The foregoing paragraphs are incorporated herein as if set forth in full.

155.    For purposes of this Count, "Plaintiff" refers to FOAC.

156.    For purposes of this Count, "Defendants" refers to all named Defendants.

157.    3-345.1 - Possession of firearms by minors, provides:

It shall be unlawful for any minor under the age of 18 years to have in his or her
possession, except in his or her place of residence, any firearm, flobert rifle, air
gun, spring gun or any implement which impels with force a metal pellet of any
kind, unless said minor is accompanied by an adult.

158.    42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

159.   State courts, pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, have authority hear Section 1983 causes of action. Felder v. Casey, 487 U.S. 131 (1988).

160.   The U.S. Supreme Court has held that membership organizations may bring a claim, in the absence of injury to itself, on behalf of its members, where at least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490, 510-11 (1975).

161.   The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute is violative of the Second Amendment.

162.   Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." Id. at 584.

163.    In <u>McDonald v. City of Chicago</u>, 561 U.S. 742 (2010), the U.S. Supreme Court declared that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

164.    Ordinance 3-345.1 was promulgated, enacted, enforced and continues to be enforced by Defendants.

165.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

166.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." <u>Id.</u>

167.    A present controversy exists,[9] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

168.    Ordinance 3-345.1 is not limited to a resident of, or individuals within the City, but rather encompasses all minors throughout the Commonwealth and even the United States.[10]

169.    Ordinance 3-345.1 is overbroad, as it applies to any minor in the Commonwealth and even the United States.

---

[9] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

[10] *See*, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.

32

170.    The current enforcement of this Ordinance has a chilling effect on the Plaintiff's, and its members', otherwise lawful and constitutionally protected right to keep and bear arms, including the right to self-defense.

171.    Members of FOAC, under the age of 18, who lawfully possess firearms pursuant to State and Federal law, including one living in the City of Harrisburg, have raised concern with FOAC over their possible charging and prosecution, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

172.    Members of FOAC, who have children under the age of 18, whose children lawfully possess firearms pursuant to State and Federal law, including one living in the City of Harrisburg, have raised concern with FOAC over their children's possible charging and prosecution, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

173.    FOAC fears prosecution of its members, especially those under the age of 18, within the Commonwealth, who lawfully possess firearms, pursuant to State and Federal law, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Finding that Ordinance 3-345.1 violates the Second Amendment of the U.S. Constitution;

33

b.  Declaring that Ordinance 3-345.1 is unlawful;

c.  Enjoining Defendants from enforcing Ordinance 3-345.1;

d.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

§ 1988, including attorney fees and costs; and

e.  Such other relief as the Court deems just and equitable.

## COUNT VI: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
### (FOAC V. ALL DEFENDANTS)

174.  The foregoing paragraphs are incorporated herein as if set forth in full.

175.  For purposes of this Count, "Plaintiff" refers to FOAC.

176.  For purposes of this Count, "Defendants" refers to all named Defendants.

177.  Plaintiff's members' injuries are imminent and immediate and will not be adequately redressed through money damages.

178.  Plaintiff's members' have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.1, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

179.  Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

180.  The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful and constitutionally protected right to self-defense and to hunt.

181.    Ordinance 3-345.1 is overbroad, as it applies to any minor in the Commonwealth and even the United States.

182.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiff's members will face criminal charging and prosecution, whereby Plaintiff's members will be deprived of their constitutional rights, pursuant to the Second Amendment of the U.S. Constitution.

183.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 3-345.1.

184.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

185.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.    Enjoining the Defendants from enforcing Ordinance 3-345.1;

b.    Requiring that Defendants repeal Ordinance 3-345.1;

c.    Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C. § 1988, including attorney fees and costs; and

d.    Such other relief as the Court deems just and equitable

## COUNT VII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

186.     The foregoing paragraphs are incorporated herein as if set forth in full.

187.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

188.     For purposes of this Count, "Defendants" refers to all named Defendants.

189.     Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

190.     3-345.2 - Discharging weapons or firearms, provides:

No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any kind within the City, except at supervised firing ranges in bona fide educational institutions accredited by the Pennsylvania Department of Education and with the approval of the Mayor or Chief of Police, or at a firing range operated by the Bureau of Police.

191.     Ordinance 3-345.2 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

192.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." *See*, Exhibit B.

193.     Chief Carter declared that: "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

194.    A present controversy exists,[11] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

195.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as, their constitutionally protected rights to self-defense and to hunt.

196.    Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for self-defense or hunting.

197.    Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for private or commercially owned firing ranges.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Finding that Ordinance 3-345.2 violates 18 Pa.C.S. § 6120;

    b.  Declaring that Ordinance 3-345.2 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 3-345.2;

    d.  Directing that Defendants pay reasonable expenses, pursuant to 18 Pa.C.S. § 6120(a.3), including attorney fees and costs; and

    e.  Such other relief as the Court deems just and equitable.

---

[11] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

## COUNT VIII: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

198.     The foregoing paragraphs are incorporated herein as if set forth in full.

199.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

200.     For purposes of this Count, "Defendants" refers to all named Defendants.

201.     Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

202.     Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

203.     Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

204.     The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

205.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

01-20-'15 11:02 FROM-                                                     T-668   P0042/0111  F-122

206.    If the injunction is granted, Plaintiffs and Defendants will remain in the

position they were prior to the wrongful conduct of the City enacting Ordinance

3-345.2.

207.    An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

208.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

   a.   Enjoining the Defendants from enforcing Ordinance 3-345.2;

   b.   Requiring that Defendants repeal Ordinance 3-345.2;

   c.   Directing that Defendants pay reasonable expenses, including attorney

fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

   d.   Such other relief as the Court deems just and equitable.

<u>COUNT IX: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE
PENNSYLVANIA CONSTITUTION –
ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS</u>
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

209.    The foregoing paragraphs are incorporated herein as if set forth in full.

210.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

211.    For purposes of this Count, "Defendants" refers to all named Defendants.

212.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

213.    3-345.2 - Discharging weapons or firearms, provides:

> No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any kind within the City, except at supervised firing ranges in bona fide educational institutions accredited by the Pennsylvania Department of Education and with the approval of the Mayor or Chief of Police, or at a firing range operated by the Bureau of Police.

214.    Ordinance 3-345.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

215.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

216.    Chief Carter declared that: "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

217.    A present controversy exists,[12] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

218.    The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

---

[12] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

219.     Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for self-defense or hunting.

220.     Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for private or commercially owned firing ranges.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Finding that Ordinance 3-345.2 violates Article 1, Section 21 of the Pennsylvania Constitution;

    b.  Declaring that Ordinance 3-345.2 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 3-345.2;

    d.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

    e.  Such other relief as the Court deems just and equitable.

## COUNT X: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

221.     The foregoing paragraphs are incorporated herein as if set forth in full.

222.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

223.     For purposes of this Count, "Defendants" refers to all named Defendants.

224. Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

225. Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

226. Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

227. The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

228. Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

229. If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 3-345.2.

230. An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

42

231.     An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 3-345.2;

    b.  Requiring that Defendants repeal Ordinance 3-345.2;

    c.  Directing that Defendants pay reasonable expenses, including attorney

       fees and costs; and

    d.  Such other relief as the Court deems just and equitable.

## COUNT XI: DECLARATORY RELIEF – SECOND AMENDMENT OF THE UNITED STATES CONSTITUTION – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS (ALL PLAINTIFFS V. ALL DEFENDANTS)

232.     The foregoing paragraphs are incorporated herein as if set forth in full.

233.     For purposes of this Count, Plaintiffs refers to all named Plaintiffs.

234.     For purposes of this Count, Defendants refers to all named Defendants.

235.     3-345.2 - Discharging weapons or firearms, provides:

No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any kind within the City, except at supervised firing ranges in bona fide educational institutions accredited by the Pennsylvania Department of Education and with the approval of the Mayor or Chief of Police, or at a firing range operated by the Bureau of Police.

236.     The Second Amendment to the United States Constitution protects an

individual's right to keep and bear arms, especially for the purpose of self-

43

defense. *See*, District of Columbia v. Heller; McDonald v. City of Chicago, *supra*.

237.    Thus, any statute or ordinance that "defeats the core lawful purpose of self defense . . . is hence unconstitutional." Heller, 128 S.Ct. at 629.

238.    Ordinance 3-345.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

239.    There is no self-defense exception within Ordinance 3-345.2.

240.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

241.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

242.    A present controversy exists,[13] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

243.    42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

---

[13] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

44

be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

244. State courts, pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, have authority hear Section 1983 causes of action. Felder v. Casey, 487 U.S. 131 (1988).

245. The U.S. Supreme Court has held that membership organizations may bring a claim, in the absence of injury to itself, on behalf of its members, where at least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490, 510-11 (1975).

246. The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute in violative of the Second Amendment.

247. Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." Id. at 584.

248. In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court would declare that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

249. Plaintiffs are licensed to carry concealed firearms within the Commonwealth of Pennsylvania.

250.    All legal firearms owners are permitted to openly carry firearms, absent a
license to carry firearms, throughout the Commonwealth of Pennsylvania, with
the sole exception being the City of Philadelphia.[14]

251.    The current enforcement of this Ordinance has a chilling effect on the
Plaintiffs' otherwise lawful and constitutionally protected right to self-defense
and to hunt.

252.    Ordinance 3-345.2 deprives Plaintiffs of "the core lawful purpose" of the
Second Amendment.

253.    Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for
Plaintiffs' constitutionally protected right to self-defense or hunting.

254.    Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for
private or commercially owned firing ranges.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order
granting relief as follows:

   a.   Finding that Ordinance 3-345.2 violates the Second Amendment of the
        U.S. Constitution;

   b.   Declaring that Ordinance 3-345.2 is unlawful;

   c.   Enjoining Defendants from enforcing Ordinance 3-345.2;

   d.   Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.
        § 1988, including attorney fees and costs; and

   e.   Such other relief as the Court deems just and equitable

---

[14] *See*, 18 Pa.C.S. § 6108.

## COUNT XII: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE
## UNITED STATES CONSTITUTION –
## ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
### (ALL PLAINTIFFS V. ALL DEFENDANTS)

255.    The foregoing paragraphs are incorporated herein as if set forth in full.

256.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

257.    For purposes of this Count, "Defendants" refers to all named Defendants.

258.    Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

259.    Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 3-345.2, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will

continue to be enforced.

260.    Violations of constitutional and statutory rights are *per se* injuries and

which, in this case, result in criminal liability of the City and its officials, agents

and employees.

261.    The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful and constitutionally protected right to self-defense

and to hunt.

262.    Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

Plaintiffs' constitutionally protected right to self-defense or hunting, thus

depriving Plaintiffs of "the core lawful purpose" of the Second Amendment.

263.    Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

private or commercially owned firing ranges.

47

01-20-'15 11:03 FROM-                                                    T-068  P0051/0111  F-122

264.      Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs

will face criminal charging and prosecution; whereby, Plaintiffs will be deprived

of their constitutional rights, pursuant to the Second Amendment to the U.S.

Constitution.

265.      If the injunction is granted, Plaintiffs and Defendants will remain in the

position they were prior to the wrongful conduct of the City enacting Ordinance

3-345.2.

266.      An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

267.      An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.   Enjoining the Defendants from enforcing Ordinance 3-345.2;

    b.   Requiring that Defendants repeal Ordinance 3-345.2;

    c.   Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

         § 1988, including attorney fees and costs; and

    d.   Such other relief as the Court deems just and equitable.


### COUNT XIII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

268.      The foregoing paragraphs are incorporated herein as if set forth in full.

269.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

270.    For purposes of this Count, "Defendants" refers to all named

271.    Plaintiffs may "have determined any question of . . . validity arising under

   . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

   legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

272.    3-345.4 - Lost and stolen firearms, provides:

   A.  Any person who is the owner of a firearm that is lost or stolen shall
       report the loss or theft of that firearm to an appropriate local law
       enforcement official within 48 hours after discovery of the loss or
       theft.

   B.  For the purpose of this section, the term "firearm" shall be defined as
       any pistol or revolver with a barrel length less than 15 inches, any
       shotgun with a barrel length less than 18 inches or any rifle with a
       barrel length less than 16 inches, or any pistol, revolver, rifle or
       shotgun with an overall length of less than 26 inches. The barrel length
       of a firearm shall be determined by measuring from the muzzle of the
       barrel to the face of the closed action, bolt, or cylinder, whichever is
       applicable

273.    In Clarke, 957 A.2d 361 (Pa. Cmwlth. Ct. 2008), the Commonwealth

   Court already held that the City of Philadelphia's Lost and Stolen Firearm

   ordinance violated Section 6120.

274.    Ordinance 3-345.4 was promulgated, enacted, enforced and continues to

   be enforced by Defendants.

275.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

   city's not going to repeal its ordinances, because our police department feels that

   they are in the public interest, and I do too." See, Exhibit B.

276.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

277.    A present controversy exists,[15] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

278.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article I, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

279.    Ordinance 3-345.4 is not limited to a resident of or individuals within the City, but rather encompasses all individuals throughout the Commonwealth and even the United States.[16]

280.    Ordinance 3-345.4 is overbroad, as it applies to any individual in the Commonwealth and even the United States.

281.    Plaintiffs fear prosecution if one of their firearms are lost and stolen based on the statements of the Defendants.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

---

[15] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

[16] See, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.

a.  Finding that Ordinance 3-345.4 violates 18 Pa.C.S. § 6120;

b.  Declaring that Ordinance 3-345.4 is unlawful;

c.  Enjoining Defendants from enforcing Ordinance 3-345.4;

d.  Directing that Defendants pay reasonable expenses, pursuant to 18 Pa.C.S.
    § 6120, including attorney fees and costs; and

e.  Such other relief as the Court deems just and equitable.

## COUNT XIV: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

282.    The foregoing paragraphs are incorporated herein as if set forth in full.

283.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

284.    For purposes of this Count, "Defendants" refers to all named Defendants.

285.    Plaintiffs' injuries are imminent and immediate and will not be adequately
redressed through money damages.

286.    Plaintiffs have a well-grounded fear of imminent prosecution for violation
of Ordinance 3-345.4, as the City, by and through its representatives, Mayor
Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will
continue to be enforced.

287.    Violations of constitutional and statutory rights are *per se* injuries and
which, in this case, result in criminal liability of the City and its officials, agents
and employees.

288.    Enforcement of this Ordinance will have a chilling effect on the otherwise
lawful right to sell, transfer and possess lawful firearms.

51

289.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs

will face criminal charging and prosecution, whereby Plaintiffs will be deprived

of their constitutional and statutory rights, in violation of Article 1, Section 21 of

the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

290.    If the injunction is granted, Plaintiffs and Defendants will remain in the

position they were prior to the wrongful conduct of the City enacting Ordinance

3-345.4.

291.    An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

292.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.


**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 3-345.4;

    b.  Requiring that Defendants repeal Ordinance 3-345.4;

    c.  Directing that Defendants pay reasonable expenses, including attorney

       fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

    d.  Such other relief as the Court deems just and equitable.

## COUNT XV: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

293.    The foregoing paragraphs are incorporated herein as if set forth in full.

294.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

295.    For purposes of this Count, "Defendants" refers to all named Defendants.

296.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

297.    3-345.4 – Lost and stolen firearms, provides:

    A.  Any person who is the owner of a firearm that is lost or stolen shall report the loss or theft of that firearm to an appropriate local law enforcement official within 48 hours after discovery of the loss or theft.

    B.  For the purpose of this section, the term "firearm" shall be defined as any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt, or cylinder, whichever is applicable

298.    Ordinance 3-345.4 was promulgated, enacted, enforced and continues to be enforced by Defendants.

299.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

53

300.   Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

301.   A present controversy exists,[17] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

302.   The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

303.   Ordinance 3-345.4 is not limited to residents of, or individuals within, the City, but rather encompasses all individuals throughout the Commonwealth and even the United States.[18]

304.   Ordinance 3-345.4 is overbroad, as it applies to any individual in the Commonwealth and even the United States.

305.   Plaintiffs fear prosecution if one of their firearms are lost and stolen based on the statements of the Defendants.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

---

[17] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

[18] See, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.

a. Finding that Ordinance 3-345.4 violates Article 1, Section 21 of the Pennsylvania Constitution;

b. Declaring that Ordinance 3-345.4 is unlawful;

c. Enjoining Defendants from enforcing Ordinance 3-345.4;

d. Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

e. Such other relief as the Court deems just and equitable.

## COUNT XVI: INJUNCTIVE RELIEF -- ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION -- ORDINANCE 3-345.4 -- LOST AND STOLEN FIREARMS
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

306.     The foregoing paragraphs are incorporated herein as if set forth in full.

307.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

308.     For purposes of this Count, "Defendants" refers to all named Defendants.

309.     Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

310.     Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.4, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

311.     Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

312.    Enforcement of this Ordinance will have a chilling effect on the otherwise lawful right to sell, transfer and possess lawful firearms.

313.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

314.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 3-345.4.

315.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

316.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.   Enjoining the Defendants from enforcing Ordinance 3-345.4;

    b.   Requiring that Defendants repeal Ordinance 3-345.4;

    c.   Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

    d.   Such other relief as the Court deems just and equitable.

## COUNT XVII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 –
## ORDINANCE 3-355.2 – EMERGENCY MEASURES
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

317.    The foregoing paragraphs are incorporated herein as if set forth in full.

318.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

319.    For purposes of this Count, "Defendants" refers to all named Defendants.

320.    Plaintiffs may "have determined any question of . . . validity arising under
. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other
legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

321.    3-355.2 – Emergency measures, provides:

A.    Whenever the Mayor declares that a state of emergency exists, the
following emergency prohibitions shall thereupon be in effect during
the period of said emergency and throughout the City:

(1) The sale or transfer of possession, with or without
consideration, the offering to sell or so transfer and the
purchase of any ammunition, guns or other firearms of any size
or description.

(2) The displaying by or in any store or shop of any ammunition,
guns or other firearms of any size or description.

(3) The possession in a public place of a rifle or shotgun by a
person, except a duly authorized law enforcement officer or
person in military service acting in an official performance of
his or her duty.

B.    The Mayor may order and promulgate all or any of the following
emergency measures, in whole or in part, with such limitations and
conditions as he or she may determine appropriate; any such
emergency measures so ordered and promulgated shall thereupon be in
effect during the period of said emergency and in the area or areas for
which the emergency has been declared:

(1) The establishment of curfews, including but not limited to the
prohibition of or restrictions on pedestrian and vehicular
movement, standing and parked, except for the provision of
designated essential services such as fire, police and hospital

57

services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

(2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

(3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

(4) The closing of places of public assemblage with designated exceptions.

(5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

(6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

(8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

322.     Ordinance 3-355.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

323.     Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

324. Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

325. Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

326. A present controversy exists,[19] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

327. The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

328. Pursuant to 18 Pa.C.S. § 6107, the General Assembly has already addressed the limitations on the carrying of firearms upon the public streets during an emergency proclaimed by a State or municipal governmental executive, and that statutory provision includes exceptions for self-defense and for individuals with a license to carry firearms.

329. Even if Ordinance 3-355.2 was not more restrictive than 18 Pa.C.S. § 6107, which it is, Defendants are prohibited from promulgating, enacting, or enforcing any ordinance *consistent* with such law, pursuant to Article 1, Section

---

[19] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

01-20-'15 11:05 FROM-                                        T-068   P0063/0111   F-122

21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120, and the Commonwealth
Court's holdings in NRA v. City of Philadelphia and Clarke v. House of
Representatives.

330.     Based on the statements of the Defendants, Plaintiffs fear prosecution for
carrying their firearm if an emergency were to be declared by the Mayor.

331.     Plaintiffs, pursuant to 18 Pa.C.S. § 6120, are "person[s] adversely
affected.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order
granting relief as follows:

    a.   Finding that Ordinance 3-355.2 violates 18 Pa.C.S. § 6120;

    b.   Declaring that Ordinance 3-355.21 is unlawful;

    c.   Enjoining Defendants from enforcing Ordinance 3-355.2;

    d.   Directing that Defendants pay reasonable expenses, including attorney
       fees and costs, pursuant to 18 Pa.C.S. § 6120; and

    e.   Such other relief as the Court deems just and equitable.

### COUNT XVIII: INJUNCTIVE RELIEF -- 18 PA.C.S. § 6120 -- ORDINANCE 3-355.2 -- EMERGENCY MEASURES
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

332.     The foregoing paragraphs are incorporated herein as if set forth in full.

333.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

334.     For purposes of this Count, "Defendants" refers to all named Defendants.

335.    Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

336.    Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-355.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

337.    Violations of constitutional and statutory rights are *per se* injuries and which, in this case, result in criminal liability of the City and its officials, agents and employees.

338.    Enforcement of these ordinances will have a chilling effect on the otherwise lawful right to sell, transfer and possess lawful firearms.

339.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

340.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 3-355.2.

341.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

342.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a. Enjoining the Defendants from enforcing Ordinance 3-355.2;

    b. Requiring that Defendants repeal Ordinance 3-355.2;

    c. Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

    d. Such other relief as the Court deems just and equitable.

## COUNT XIX: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-355.2 – EMERGENCY MEASURES
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

343.    The foregoing paragraphs are incorporated herein as if set forth in full.

344.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

345.    For purposes of this Count, "Defendants" refers to all named Defendants.

346.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

347.    3-355.2 – Emergency measures, provides:

    A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

        (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.

        (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

    (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

    (1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

    (2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

    (3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

    (4) The closing of places of public assemblage with designated exceptions.

    (5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

    (6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

    (7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

> (8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

348.  Ordinances 3-355.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

349.  Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

350.  Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

351.  Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

352.  A present controversy exists,[20] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

353.  The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

354.  Pursuant to 18 Pa.C.S. § 6107, the General Assembly has already addressed the limitations on the carrying of firearms upon the public streets

---

[20] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

during an emergency proclaimed by a State or municipal governmental executive, and that statutory provision includes exceptions for self-defense and for individuals with a license to carry firearms.

355.    Even if Ordinance 3-355.2 was not more restrictive than 18 Pa.C.S. § 6107, which it is, Defendants are prohibited from promulgating, enacting, or enforcing any ordinance *consistent* with such law, pursuant to Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120, and the Commonwealth Court's holdings in NRA v. City of Philadelphia and Clarke v. House of Representatives, *supra.*

356.    Based on the statements of the Defendants, Plaintiffs fear prosecution for carrying their firearm if an emergency were to be declared by the Mayor.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.  Finding that Ordinance 3-355.2 violates Article 1, Section 21 of the Pennsylvania Constitution;

b.  Declaring that Ordinance 3-355.2 is unlawful;

c.  Enjoining Defendants from enforcing Ordinance 3-355.2;

d.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

e.  Such other relief as the Court deems just and equitable.

## COUNT XX: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-355.2 – EMERGENCY MEASURES
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

357.    The foregoing paragraphs are incorporated herein as if set forth in full.

358.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

359.    For purposes of this Count, "Defendants" refers to all named Defendants.

360.    Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

361.    Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-355.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

362.    Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

363.    Enforcement of these ordinances will have a chilling effect on the otherwise lawful right to sell, transfer and possess lawful firearms.

364.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution; whereby, Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

365.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 3-345.1.

366. An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

367. An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a. Enjoining the Defendants from enforcing Ordinance 3-355.2;

    b. Requiring that Defendants repeal Ordinance 3-355.2;

    c. Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

    d. Such other relief as the Court deems just and equitable.

## COUNT XXI: DECLARATORY RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 3-355.2 – EMERGENCY MEASURES
### (ALL PLAINTIFFS V. ALL DEFENDANTS)

368. The foregoing paragraphs are incorporated herein as if set forth in full.

369. For purposes of this Count, "Plaintiff" refers to all named Plaintiffs.

370. For purposes of this Count, "Defendants" refers to all named Defendants.

371. 3-355.2 – Emergency measures, provides:

    A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

> (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.
>
> (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.
>
> (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

> (1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.
>
> (2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.
>
> (3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.
>
> (4) The closing of places of public assemblage with designated exceptions.
>
> (5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.
>
> (6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

(8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind

372.    42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

373.    State courts, pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, have authority hear Section 1983 causes of action. Felder v. Casey, 487 U.S. 131 (1988).

374.    The U.S. Supreme Court has held that membership organizations may bring a claim, in the absence of injury to itself, on behalf of its members, where at least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490, 510-11 (1975).

375.    The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the

Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute in violative of the Second Amendment.

376. Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." Id. at 584.

377. In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court would declare that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

378. Ordinances 3-355.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

379. Mayor Papenfuse declared to Penn Live reporter Christine Vendel, "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." See, Exhibit B.

380. Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

381. A present controversy exists,[21] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

---

[21] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

382.    Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

383.    Any statute or ordinance that "defeats the core lawful purpose of self

defense . . . is hence unconstitutional." Heller, 128 S.Ct. at 629.

384.    The current enforcement of this Ordinance has a chilling effect on the

Plaintiff's, and its members, otherwise lawful and constitutionally protected right

to keep and bear arms, including the right to self-defense.

385.    Based on the statements of the Defendants, Plaintiffs fear prosecution for

carrying their firearm if an emergency were to be declared by the Mayor.


WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

a.   Finding that Ordinance 3-355.2 violates the Second Amendment of the

U.S. Constitution;

b.   Declaring that Ordinance 3-355.2 is unlawful;

c.   Enjoining Defendants from enforcing Ordinance 3-355.2;

d.   Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

§ 1988, including attorney fees and costs; and

e.   Such other relief as the Court deems just and equitable.


## COUNT XXII: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 3-355.2 – EMERGENCY MEASURES
### (ALL PLAINTIFFS V. ALL DEFENDANTS)

386.    The foregoing paragraphs are incorporated herein as if set forth in full.

387.    For purposes of this Count, "Plaintiff" refers to all named Defendants.


71

388.    For purposes of this Count, "Defendants" refers to all named Defendants.

389.    Plaintiff's members' injuries are imminent and immediate and will not be adequately redressed through money damages.

390.    Plaintiff's members' have a well-grounded fear of imminent prosecution for violation of Ordinance 3-355.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

391.    Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

392.    The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful and constitutionally protected right to keep and bear arms, including the right to self-defense.

393.    Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

394.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiff's members will face criminal charging and prosecution, whereby Plaintiff's members will be deprived of their constitutional rights, pursuant to the Second Amendment of the U.S. Constitution.

395.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 3-355.2.

396.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

397.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.  Enjoining the Defendants from enforcing Ordinance 3-355.2;

b.  Requiring that Defendants repeal Ordinance 3-355.2;

c.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C. § 1988, including attorney fees and costs; and

d.  Such other relief as the Court deems just and equitable.

### COUNT XXIII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

398.    The foregoing paragraphs are incorporated herein as if set forth in full.

399.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

400.    For purposes of this Count, "Defendants" refers to all named Defendants.

401.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

402.    10-301.13 – Hunting, firearms and fishing, provides:

A.  No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

73.

B. No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

D. No person shall fish in Italian Lake.

403.    In Dillon, 83 A.3d 467 (Pa. Cmwlth. 2014), the Commonwealth Court *already held* that an identical ordinance of the City of Erie violated Article I, Section 21 of the Pennsylvania Constitution and Section 6120.

404.    Ordinance 10-301.13 was promulgated, enacted, enforced and continues to be enforced by Defendants.

405.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

406.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

407.    A present controversy exists,[22] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

408.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

---

[22] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

409.     Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for self-defense or hunting.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.  Finding that Ordinance 10-301.13 violates 18 Pa.C.S. § 6120;

b.  Declaring that Ordinance 10-301.13 is unlawful;

c.  Enjoining Defendants from enforcing Ordinance 10-301.13;

d.  Directing that Defendants pay reasonable expenses, pursuant to 18 Pa.C.S. § 6120(a.3), including attorney fees and costs; and

e.  Such other relief as the Court deems just and equitable.

## COUNT XXIV: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

410.     The foregoing paragraphs are incorporated herein as if set forth in full.

411.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

412.     For purposes of this Count, "Defendants" refers to all named Defendants.

413.     Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

414.     Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 10-301.13, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

415.    Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

416.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

417.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

418.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 10-301.13.

419.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

420.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 10-301.13;

    b.  Requiring that Defendants repeal Ordinance 10-301.13;

    c.  Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120; and

    d.  Such other relief as the Court deems just and equitable.

## COUNT XXVI: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

421.    The foregoing paragraphs are incorporated herein as if set forth in full.

422.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

423.    For purposes of this Count, "Defendants" refers to all named Defendants.

424.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

425.    10-301.13 – Hunting, firearms and fishing, provides:

    A.  No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

    B.  No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

    C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

    D. No person shall fish in Italian Lake.

426.      In Dillon, 83 A.3d 467 (Pa. Cmwlth. 2014), the Commonwealth Court *already held* that an identical ordinance of the City of Erie violated Article 1, Section 21 of the Pennsylvania Constitution and Section 6120.

427.      Ordinance 10-301.13 was promulgated, enacted, enforced and continues to be enforced by Defendants.

428.      Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

429.      Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

430.      A present controversy exists,[23] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

431.      The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

---

[23] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

432. Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for self-defense or hunting.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

     a. Finding that Ordinance 10-301.13 violates Article 1, Section 21 of the Pennsylvania Constitution;

     b. Declaring that Ordinance 10-301.13 is unlawful;

     c. Enjoining Defendants from enforcing Ordinance 10-301.13;

     d. Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

     e. Such other relief as the Court deems just and equitable.

## COUNT XXVII: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

433. The foregoing paragraphs are incorporated herein as if set forth in full.

434. For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

435. For purposes of this Count, "Defendants" refers to all named Defendants.

436. Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

437. Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 10-301.13, as the City, by and through its representatives, Mayor

01-20-'15 11:07 FROM-         T-068  P0083/0111  F-122

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

438.   Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

439.   The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

440.   Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

441.   If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 10-301.13.

442.   An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

443.   An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 10-301.13;

    b.  Requiring that Defendants repeal Ordinance 10-301.13;

    c.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

    d.  Such other relief as the Court deems just and equitable.

## COUNT XXVIII: DECLARATORY RELIEF – SECOND AMENDMENT OF THE UNITED STATES CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
### (ALL PLAINTIFFS V. ALL DEFENDANTS)

444.    The foregoing paragraphs are incorporated herein as if set forth in full.

445.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

446.    For purposes of this Count, "Defendants" refers to all named Defendants.

447.    10-301.13 – Hunting, firearms and fishing, provides:

    A.  No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

    B.  No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

    C.  No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

    D.  No person shall fish in Italian Lake.

448.   Ordinance 10-301.13 was promulgated, enacted, enforced and continues to be enforced by Defendants.

449.   Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

450.   Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

451.   A present controversy exists,[24] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

452.   42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

453.   State courts, pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, have authority hear Section 1983 causes of action. Felder v. Casey, 487 U.S. 131 (1988).

---

[24] *See*, Fn 2.

82

454.     The U.S. Supreme Court has held that membership organizations may bring a claim, in the absence of injury to itself, on behalf of its members, where at least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490, 510-11 (1975).

455.     The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute in violative of the Second Amendment.

456.     Thus, any statute or ordinance that "defeats the core lawful purpose of self defense . . . is hence unconstitutional." Heller, 128 S.Ct. at 629.

457.     Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." Id. at 584.

458.     In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court would declare that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

459.     The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

460.     Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for Plaintiffs' constitutionally protected right to self-defense or hunting.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

   a.  Finding that Ordinance 10-301.13 violates the Second Amendment of the U.S. Constitution;

   b.  Declaring that Ordinance 10-301.13 is unlawful;

   c.  Enjoining Defendants from enforcing Ordinance 10-301.13;

   d.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C. § 1988, including attorney fees and costs; and

   e.  Such other relief as the Court deems just and equitable

## COUNT XXIX: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
### (ALL PLAINTIFFS V. ALL DEFENDANTS)

461.     The foregoing paragraphs are incorporated herein as if set forth in full.

462.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

463.     For purposes of this Count, "Defendants" refers to all named Defendants.

464.     Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

465.     Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 10-301.13; as the City, by and through its representatives, Mayor

d.  Permanently enjoining Defendants, including all officials, agents and

    employees, and their successors, as follows:

    i.   Enjoining Defendants from enforcing the Ordinances in any way;

    ii.  Requiring Defendants repeal the Ordinances; and

    iii. Enjoining Defendant from implementing any other ordinance, law,

         or rule that regulates the legal use, possession, or transfer of

         firearms;

e.  Awarding Plaintiffs reasonable expenses, including attorney fees and

    costs, pursuant to 18 PA.C.S. § 6120 and 42 U.S.C. § 1988; and

f.  Awarding Plaintiffs any additional or further relief this court finds

    appropriate, equitable, or just.


Respectfully Submitted,


Joshua Prince, Esq..
Attorney ID No. 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

### Verification

I, Kim Stolfer, President of Firearm Owners Against Crime verify that I am authorized to make this Verification on behalf of Firearm Owners Against Crime and that all the information contained in the foregoing is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.


January 15, 2015
Date

Kim Stolfer, President
Firearm Owners Against Crime

01-20-'15 11:08 FROM-                                        T-058   P0090/0111   F-122

## Verification

I, Kim Stolfer, verify that I am the Petitioner named in the foregoing and that all the information contained therein is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

January 15, 2015

Date                                        Kim Stolfer

## Verification

I, Joshua Prince, am Counsel for the Plaintiffs, Firearm Owners Against Crime, Kim Stolfer, Joshua First, and Howard A. Bullock. The signatures of Joshua First and Howard A. Bullock were not available for filing of this Complaint. I verified all statement verbally with Joshua First and Howard A. Bullock. I verify that the statements made in this Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.


1/15/15
Date

Joshua Prince, Esq.

# Exhibit A

01-20-'15 11:09 FROM-        T-868  P0093/0111  F-122

COMMONWEALTH OF PENNSYLVANIA
**OFFICE OF ATTORNEY GENERAL**
HARRISBURG, PA 17120

TOM CORBETT
ATTORNEY GENERAL

16TH FLOOR
STRAWBERRY SQUARE
HARRISBURG, PA 11120
(717) 787-3391

August 24, 2009

The Honorable Shawn C. Wagner
Adams County Office of the District Attorney
Adams County Courthouse
111-117 Baltimore Street
Gettysburg, PA 17325

Re    *Local Ordinances Concerning Firearms*

Dear District Attorney Wagner:

Recently, my office has received a number of inquiries about the enactment of local ordinances pertaining to the use, possession or acquisition of firearms. These inquiries have chiefly concerned the authority of a political subdivision to legislate in this regard, and the related question of whether an adopted ordinance is legally enforceable. I am writing to share the position that my office has taken because your office, too, may be confronted with these issues and may find this information helpful.

Any review of this issue must, of course, begin with an examination of the Commonwealth's statutory law to determine what, if anything, it provides with respect to a political subdivision's ability to legislate on this subject. Our General Assembly has addressed this matter by enacting, as part of the Crimes Code, the provisions found in 18 Pa.C.S. § 6120 (Limitation on the regulation of firearms and ammunition), which contain this express prohibition: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." § 6120(a). As used in this statute, "firearms" has, with one exception, the same meaning as in 18 Pa.C.S. § 5515 (Prohibiting of paramilitary training): "Any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon."[1]

In the more than thirty-five years since the enactment of § 6120(a), Pennsylvania's courts, including its Supreme Court, have uniformly interpreted its provisions to preempt local governments from legislating with respect to the ownership, use, possession or transportation of firearms. *See, e.g., Schneck v. City of Philadelphia*, 383 A.2d 227 (Pa. Cmwlth. 1978)(striking down a Philadelphia ordinance that regulated the acquisition and transfer of firearms). In

---

[1] Air rifles are not "firearms" for purposes of § 6120(a). *See* § 6120(b)(incorporating definition found in 18 Pa.C.S. § 6304). An "air rifle" is: "Any air gun, air pistol, spring gun, spring pistol, B-B gun or any implement that is not a firearm which impels a pellet of any kind with a force that can reasonably be expected to cause bodily harm." It does not include paintball guns or markers. § 6304(g).

The Honorable Shawn C. Wagner August 24, 2009
Page 2 of 4

*Schneck*, the Commonwealth Court, sitting en *banc*, held that §6120(a) "clearly preempts local governments from regulating the lawful ownership, possession and transportation of firearms .. .." It declared the ordinance to be invalid and unenforceable.

Nearly two decades later, in *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), our Supreme Court provided further guidance when it considered ordinances banning certain types of assault weapons passed by the cities of Philadelphia and Pittsburgh. Although both cities are home rule municipalities, and as such, each "may exercise any power or perform any function not denied by [the Pennsylvania] Constitution, by its home rule charter or by the General Assembly at any time," PA. CONST. art. IX, § 2, the court explained that, in the area of firearms, the General Assembly has, by enacting §6120(a), acted affirmatively to prohibit local regulation of the ownership, possession, use or transfer of firearms, thus denying all municipalities, including those which operate under a home rule charter, the authority to legislate in this regard. 681 A.2d at 155. The court *in Ortiz* also stressed that "[b]ecause the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern ... Thus, regulation of firearms is a matter of concern in all of Pennsylvania ... and the General Assembly, not city councils, is the proper forum for the imposition of such regulation." *Id.* at 156.

Given this straightforward explication of Pennsylvania law by its highest court, it is, and continues to be, my understanding that any effort by a municipality to legislate in a way that affects the ownership, use, possession, transfer or transportation of a firearm is not legitimate. On those occasions when my office's input has been sought, we have communicated this. Rulings to date in ongoing cases involving this issue support that conclusion.

The issue of firearms-related preemption is currently being litigated in three cases pending in the state appellate courts. All of the cases arise from the enactment of ordinances in Philadelphia. In *Clarke, et al. v. House of Representatives, et al.*, 957 A.2d 361 (Pa. Cmwlth. 2008) ("Clarke I"), two members of Philadelphia City Council filed suit in the Commonwealth Court against both houses of the General Assembly seeking a declaratory judgment that seven ordinances, dealing with firearms passed by Philadelphia City Council and signed by the Mayor in May of 2007, were legal and enforceable.[2] In an *en banc* ruling, Commonwealth Court

---

[2] The seven ordinances provided as follows:

Bill 040117-A limits handgun purchases to one per month and prohibits straw purchases and sales. Bill 060700 mandates the reporting of lost or stolen firearms. Bill 040136-A requires a license in order to acquire a firearm within Philadelphia or bring a firearm into Philadelphia. Bill 040137 requires the annual renewal of a gun license. Bill 040312 states that a firearm can be confiscated from someone posing a risk of harm. Bill 040315 prohibits the possession or transfer of assault weapons. Bill 040118-A requires that any person selling ammunition report the purchase and the purchaser to the Police Department.

957 A.2d at 362 (emphasis added).

The Honorable Shawn C. Wagner August 24, 2009
Page 3 of 4

sustained preliminary objections to the petition for review and dismissed the action on the basis it did not state a claim as to which relief could be granted. The court concluded that the ordinances were "not materially different from those presented in *Schneck* and *Ortis*," and were therefore likewise preempted by §6120(a). The Council members have appealed to the Pennsylvania Supreme Court. Disposition of that appeal, which is docketed at No. 74 MAP 2008, is pending.

   Commonwealth Court has addressed the preemption question even more recently in *National Rifle Association, et al. v. City of Philadelphia, et al. ("NRA ")*, ___A.2d___ 2009 WL 1692390 (Pa. Cmwlth. 06-18-09). That case involved a challenge to five ordinances passed by Philadelphia City Council in April of 2008.[3] The court of common pleas determined, as a threshold matter, that the plaintiffs did not have standing to challenge three of the ordinances, specifically, the "imminent danger," "protection from abuse" and "lost or stolen gun" ordinances.[4] The remaining two, the "straw purchaser" and "assault weapons" ordinances, it concluded, were preempted by §6120(a) and permanently enjoined city officials from enforcing them. The city appealed that ruling to Commonwealth Court which, in *an en banc* decision issued June 18, 2009, affirmed the lower court's ruling in all respects. A petition for allowance of appeal seeking review of Commonwealth Court's ruling was filed in the Pennsylvania Supreme Court on July 17, 2009. The case is docketed in that court at No. 399 EAL 2009.

   The petitioners in *Clarke I* filed another suit in Commonwealth Court against the Commonwealth of Pennsylvania also challenging the 2008 ordinances. In that action, *Clarke, et al. v. Commonwealth of Pennsylvania*, No. 284 M.D. 2008 (Pa. Cmwlth.)("Clarke Ii"), my

---

[3] These five ordinances, the court said,

> can be summarized as follows: Bill No. 080017, "Imminent Danger Ordinance," authorizes the temporary removal of firearms from persons found by the court, upon affidavit of two police officers or a district attorney, to pose a risk of imminent harm to themselves or others; Bill No. 080018-A, "Protection From Abuse Ordinance," prohibits persons subject to an active protection from abuse order from acquiring or possessing firearms when such order provides for confiscation of the firearms; Bill No. 080032-A, "Lost or Stolen Gun Ordinance," requires gun owners to report their lost or stolen firearms to law enforcement officials within twenty-four hours after discovery of the loss or theft; Bill No. 080033, "Assault Weapons Ordinance," prohibits the possession, sale and transfer of certain offensive weapons, including assault weapons, as well as certain contraband accessories or ammunition; and finally, Bill No. 080035-A, "Straw Purchaser Ordinance," prohibits any person when purchasing a handgun from acting as a straw purchaser and prohibits the purchase of more than one handgun within any thirty-day period, except for any person who is not a straw purchaser.

2009 WL 1692390, *1 (emphasis added).

[4] In its decision, the court of common pleas noted that although these three ordinances were not technically at issue in the case because of the lack of standing, it nevertheless felt the same reasoning would apply. In some media accounts of this decision and Commonwealth Court's affirmance, it was reported that these three ordinances had been "approved" by the courts. That is incorrect. Because of the lack of standing, the courts have never had jurisdiction to rule on these issues. If anything, the court of common pleas' remarks suggest a contrary outcome.

The Honorable Shawn C. Wagner August 24, 2009
Page 4 of 4

office, which represents the Commonwealth, filed preliminary objections seeking to dismiss the case on several grounds, including preemption. On December 3, 2008, Commonwealth Court sustained those objections and dismissed the case, based on its ruling in *Clarke I*. An appeal to the Pennsylvania Supreme Court, where is it docketed at No. 92 MAP 2008, is pending.

Obviously, the Supreme Court's forthcoming decisions in *Clarke I and II*, and any decision it might issue in *NRA, if it* chooses to hear the case, will furnish further guidance on this subject. In our view, the existing body of law, and its consistent application of the principles of preemption, at very minimum, counsels great caution in dealing with locally-enacted ordinances which affect firearm use, ownership, possession and transportation. Given what the courts have said, we believe it would be appropriate to treat such enactments as invalid.

I hope that this discussion of this issue will be helpful to you. Please contact Amy Zapp, Deputy Attorney General, Special Litigation Section, at (717) 705-4487, if my office can be of further assistance.

Sincerely,

TOM CORBETT Attorney General

# Exhibit B

Harrisburg stands firm on gun regulations despite threat of lawsuit          http://blog.pennlive.com/midstate_impact/print.html?entry=/20...



## Harrisburg stands firm on gun regulations despite threat of lawsuit

stolen guns.jpg

Harrisburg Police Chief Tom Carter last month displayed two of the 35 guns Harrisburg police recovered after a home burglary in Allison Hill where thieves stole 50 guns. The gun in the foreground is a .50-caliber. The other is a .357 Magnum.

**Christine Vendel | cvendel@pennlive.com By Christine Vendel | cvendel@pennlive.com**
**Email the author | Follow on Twitter**
on December 29, 2014 at 9:15 AM, updated January 13, 2015 at 2:43 PM

4 UPDATE: Harrisburg faces first legal challenge to gun ordinances

A showdown over firearms ordinances in the city of Harrisburg has begun.

Four Pennsylvania gun owner groups have notified Harrisburg they plan to sue the cash-strapped capital city under a controversial new state law that gives them standing to challenge the existence of local gun ordinances.

The law, which the National Rifle Association has called "the strongest firearms preemption statute in the country," also allows successful plaintiffs to force municipalities to pay their legal fees, expert witness fees, all court costs and any compensation for lost income.

The law takes effect Jan. 5 and expands a longstanding general rule in the statutes that the state is responsible for gun regulations.

A four-page, double-sided letter from attorney Joshua Prince to Harrisburg's city solicitor dated Dec. 14 asks city officials to rescind five "unlawful" ordinances pertaining to firearms before the law's effective date or face legal action.

Specifically, the ordinances forbid possession of guns by minors and discharging of guns in the city and in parks; mandate reporting of lost or stolen guns; and prohibit the sale or display of guns while the city is under a state of emergency.

The groups that retained Prince are the American Gun Owners Alliance, Concerned Gun Owners of Pennsylvania, Firearm Owners Against Crime and Pennsylvanians for Self Protection. Prince noted that other

groups could also take legal action, and Harrisburg could be on the hook for their legal fees, too.

"It seems clear that there will be litigation over your enacted firearms regulations, which will result in substantial additional burdens on taxpayers," Prince wrote.

City officials are still researching their options, but Mayor Eric Papenfuse said the city doesn't plan to rescind its ordinances.

"The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too," Papenfuse said. "What responsible gun owner believes guns should be recklessly discharged within the city limits?"

Proponents of ordinances that require gun owners to report lost or stolen guns, for example, say its helpful to know and can help prevent illegal gun trafficking by identifying owners who repeatedly have guns "stolen" or repeatedly fail to report "stolen" guns.

Police Chief Tom Carter said officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms. But he could not recall an instance where anyone was cited under the lost/stolen ordinance.

Defending or losing a case under the expanded law, known as Act 192, could cause serious financial damage to Harrisburg, which is trying to claw its way out of near bankruptcy. Still, Papenfuse said the city will not cave to the demands of the gun owner groups.

"I support the responsible use of firearms," he said. "I actually see middle ground here. I feel there's a distinction between law-abiding gun owners and anyone that would want to sue the municipality about a reckless discharge ordinance, especially given the violence we have in the city. I think it's completely irresponsible."

Prince said the specific ordinances or their perceived value are "immaterial" because the "entire area of firearms law is pre-empted by the Legislature."

Allowing municipalities to create firearm ordinances results in a "patchwork" of ordinances that are difficult or impossible to track for lawful gun owners who might travel, Prince said.

He also said such ordinances are ineffective and duplicative since state laws exist to cover the same actions, he said.

Although Prince said the law is "crystal clear" on the state's pre-eminence, city officials disagreed, saying dozens of municipalities across the state have enacted ordinances over the past four decades because they

believed they were legal in doing so.

In fact, Prince said his law firm has contacted about 90 municipalities that have enacted firearms ordinances. His law firm is based in Bechtelsville, in Berks County.

Some other Pennsylvania municipalities have already rescinded their gun ordinances, including Doylestown, or are considering doing so under pressure from their insurance carriers to avoid risk.

Harrisburg is self-insured.

Meanwhile, the law's constitutionality has already been called into question in a lawsuit filed last month by a group of legislators and the cities of Philadelphia, Lancaster and Pittsburgh. The plaintiffs take issue with the fact that the gun ordinance provisions were tacked onto a bill about metal thefts.

The Attorney General has already said her office won't defend the law.

Papenfuse said Dauphin County's decision recently to grant $63,750 in hotel tax tourism money to the National Rifle Association, because they run the annual Great American Outdoor Show, was particularly "irresponsible" given that the NRA pushed for the controversial new law that is now being used against Harrisburg.

"Why do they need subsidized," Papenfuse said of the NRA. "It's another example of irresponsible use of county hotel tax money. Within the context of the public safety crisis we have in this city, it's exactly what we don't need."

Dauphin County Commissioner Jeff Haste said the grant has historically been paid to the organizer of the event, for busing and transportation.

Haste said the Great American Outdoor Show in its first year generated more than $70 million in economic impact to the region and more than $200,000 in amusement taxes for the city.

"When the previous show producer canceled in 2013, our local economy -- hotels, restaurants, small businesses -- took a huge hit," Haste said. "The grant to attract and retain one of the country's biggest outdoor shows is money well spent."

The NRA Foundation recently donated $50,000 to Harrisburg to buy a new police car, which the city accepted. But no city officials appeared at the official check presentation, said Papenfuse, who was initially asked to attend.

"I said I only would come if they understood that I'd be speaking out against Act 192," he said. "I was not

01-20-'15 11:10 FROM-                                    T-066  P0101/0111 F-122

Invited."

**UPDATE:** *This article was updated to include that the attorney's four-page letter to Harrisburg was double-sided; to provide a response from Jeff Haste; and to add comments from Police Chief Tom Carter*

© 2015 PennLive.com. All rights reserved.

**Exhibit C**



# Harrisburg mayor fires back against gun ordinance legal threat

By Dave Marcheskie
Published: January 5, 2015, 5:13 pm

A new law took effect today and it could trigger a lawsuit against the City of Harrisburg over its gun ordinances.

Mayor Eric Papenfuse said he was not surprised when a detailed letter landed on his desk from Attorney Joshua Prince. The notice, on behalf of four Pennsylvania pro-gun groups, demanded Harrisburg rescind five of its gun-related city ordinances or else face a lawsuit.

Papenfuse was quick on the draw to defend the City, "These are simply regulations, which the city has had for years, which have helped people, not harmed people," he said.

Monday was the first day where gun advocate groups or individuals could challenge

municipalities on ordinances believed to be restricting gun rights. The law also states, that if a challenging party would win a legal battle, the municipality could be on the hook to pay courts costs and legal fees on both sides.

Abc27 laid out the arguments of Prince last week: http://abc27.com/2014/12/30/harrisburg-gun-laws-may-trigger-lawsuit/ (http://abc27.com/2014/12/30/harrisburg-gun-laws-may-trigger-lawsuit/)

So, when the cash-strapped capital city received such an ultimatum, the mayor quickly noted any legal fight could come at a hefty price. "It's a terrible law, the legislature shouldn't have passed it."

Papenfuse said he tried to reason with Prince and asked for an explanation why an ordinance that bans people from recklessly firing in city limits infringes upon a person's civil rights. "It says you can't walk out in the middle of the street and just start firing your gun," Papenfuse said. "Police do cite people for that on a regular basis. That is a sensible measure."

The mayor said the ordinance that mandates registered gun owners to report lost or stolen guns had a recent success story. A man reported nearly four dozen guns were stolen from his safe. Police reported they were able to track down nearly every single gun based upon the descriptions and serial numbers listed. Papenfuse said that is an example how the ordinance protects the public.

Although the group has the official go ahead to sue, Prince has yet to file a lawsuit. He told abc27 last week there was no strict deadline, but it would happen if municipalities did not comply.

The mayor said with bigger push backs coming from Pittsburgh and Philadelphia, he believes a judge may halt the new law. If not, he implored and challenged leadership at the National Rifle Association to tell other organizations to lower their legal weapons.

Papenfuse pointed to the recent donation from the NRA in December, when they gave $50,000 to purchase a new police cruiser. The mayor said he felt it was a conflict of interest given the threat of a lawsuit.

He said he believes in the right to legal gun ownership and self defense. But, he said there has to be a way where urban areas battling gun problems can protect its citizens without restricting rights. Papenfuse said Harrisburg's ordinances do just that.

"We're not looking for a battle, clearly it's the NRA looking for a battle," he said. "But, we're not simply going to repeal something that we feel is protecting public safety."

Harrisburg mayor fires back against gun ordinance legal threat      http://abc27.com/2015/01/05/harrisburg-mayor-fires-back-again...

**17 Comments**     ABC27.com        🌐 Login ˅

Sort by Best ˅           Share 🔗 Favorite ☆

    Join the discussion...



**BryanS** · 8 days ago

If the mayor signed this into law, HE is a criminal. Its in the existing, and old, state law... no one but the duly elected legislature may make laws that relate to firearms.

If he thinks it is so great, why not pass laws against assault, battery, robbery, and murder? Oh... wait.. those are illegal and peple still do them. Usually, those who plead away gun charges.

Stop making laws that apply to the non-violent people who obey the law, and start cracking down on those that do evil deeds.

14 ˄ ˅ · Reply · Share ›



**Leon Baker** · 8 days ago

I'm sure the gentleman only reported the theft of four dozen guns because of the city ordinance. Give me a break! Don't be whining Mr. Mayor when you are costing your city a bunch of money because of your ego...

12 ˄ ˅ · Reply · Share ›



**Jay Silla** · 8 days ago

That's a real stretch by the mayor, claiming that a theft was reported only because of the local ordinance. MOST gun owners will report thefts promptly, if for no other reason than the hope of recovering their property.

12 ˄ ˅ · Reply · Share ›



**TJ** · 8 days ago

If the mayor feels his ordinances are needed, then he should talk to his state representative to create them on a state level. That's what the new law is all about.

8 ˄ ˅ · Reply · Share ›



**MadAsHellYankee** ⚡ TJ · 8 days ago

It gives pre-emption teeth. The UFA already states that gun laws and regulations are done at the state level ONLY.

7 ˄ ˅ · Reply · Share ›

Harrisburg mayor fires back against gun ordinance legal threat          http://abc27.com/2015/01/05/harrisburg-mayor-fires-back-again...

ABC27.com

© Copyright 2000 - 2015 Media General Communications Holdings, LLC. A Media General
Company.

Powered by WordPress.com VIP (http://vip.wordpress.com/)

1/13/15, 3:08 PM

IN THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST
CRIME;                                    :

KIM STOLFER;                              :        Jury Trial Demanded

JOSHUA FIRST; and                         :

HOWARD BULLOCK,                           :

            Plaintiffs,                   :        Civil Action

                vs.                       :

CITY OF HARRISBURG;                       :        No. 2015- CV· 354-EQ

MAYOR ERIC PAPENFUSE; and                 :

POLICE CHIEF THOMAS CARTER                :

            Defendant.                    :

### ORDER

AND NOW, this _____ day of _____, 2015, upon consideration of

Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief from the City of

Harrisburg's Illegal, Unenforceable and Unconstitutional Ordinances, it is hereby

ORDERED and DECREED that Court FINDS:

1. The Pennsylvania General Assembly shall be the sole legislative body
   authorized to enact legislation regulating the use, possession, sale, transfer,
   transportation, discharge, and/or ownership of firearms;

2. The Pennsylvania General Assembly shall be the sole legislative body
   authorized to enact legislation requiring the reporting of lost or stolen firearms
   to any authority or police department within this Commonwealth;

01-20-'15 11:11 FROM-                                              T-066  P0108/0111  F-122

3. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13 are, therefore, preempted by State law;

4. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13, violate 18 PA.C.S. § 6120 and are therefore null and void;

5. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13, violate Article I, Section 21 of the Pennsylvania Constitution, and are therefore null and void;

6. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13, violate the Second Amendment to the United States Constitution, and are therefore null and void;

7. The City of Harrisburg, its officials, agents, employees and successors are ENJOINED from enforcing Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13;

8. The City of Harrisburg, its officials, agents, employees and successors are ENJOINED from enacting any future ordinances regulating firearms in any manner; and

9. Plaintiff's counsel is directed to file a quantum meruit request with the Court for attorney fees and costs, so that reasonable attorney fees and costs may be awarded pursuant to 18 Pa.C.S.A § 6120(a.3) and 42 U.S.C. § 1988.

BY THE COURT:

_____
J.

## IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST          :
CRIME;                          :
                                :
KIM STOLFER;                    :          Jury Trial Demanded
                                :
JOSHUA FIRST; and               :
                                :
HOWARD BULLOCK,                 :
                                :
        Plaintiffs,             :          Civil Action
                                :
            vs.                 :
                                :
CITY OF HARRISBURG;             :          No. 2015-CV-354-EQ
                                :
MAYOR ERIC PAPENFUSE; and       :
                                :
POLICE CHIEF THOMAS CARTER      :
                                :
        Defendant.              :

## PROOF OF SERVICE

I, Joshua Prince, Esq., hereby certify that I provided the Dauphin County Sheriff with true and correct copies of Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief From the City of Harrisburg's Illegal, Unenforceable and Unconstitutional Ordinances, to serve upon the following persons, on January 16, 2015:

City of Harrisburg
c/o Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Chief Thomas Carter
123 Walnut Street
PS-211
Harrisburg, PA 17101

Respectfully Submitted,
Prince Law Offices, P.C.

Joshua Prince, Esq.
Attorney for Petitioner
Attorney ID # 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
610-845-3803 ext 81114
Joshua@PrinceLaw.com

DATED: January 16, 2015

RECEIVED

2015 JAN 16 · PM 1: 16

DAUPHIN COUNTY
SHERIFF'S OFFICE
HARRISBURG, PA 17101

TRUE COPY ATTESTED

SHERIFF OF DAUPHIN CO., PA

# EXHIBIT "B"



IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST CRIME;   :
KIM STOLFER:                    :
JOSHUA FIRST; and               :          Jury Trial Demanded
        Plaintiffs              :
   v.                           :          Civil Action
                     :
CITY OF HARRISBURG;             :          Docket No. 2015-CV-354-EQ
MAYOR ERIC PAPENFUSE; and       :
POLICE CHIEF THOMAS CARTER      :
        Defendants              :

## ENTRY OF APPEARANCE

Please enter the appearance of Frank J. Lavery, Jr., Esquire on behalf of Defendants, The City of

Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter relative to the above-docketed matter.

Respectfully submitted,

Lavery Faherty

By: _____
(For)   Frank J. Lavery, Jr., Esquire
      225 Market Street, Suite 304
      P.O. Box 1245
DATE: ___1 - 28 - 15___         Harrisburg, PA 17108-1245
      (717) 233-6633 (telephone)
      (717) 233-7003 (facsimile)
      Atty No. PA42370
      flavery@laverylaw.com
      Atty for Defendants

CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm of Lavery Faherty, do hereby certify that on this 28th day of January, 2015, I served a true and correct copy of the foregoing Entry of Appearance via U.S.  First Class mail, postage prepaid, addressed as follows:

Joshua Prince, Esquire
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505

Aimee L. Paukovits
Legal Secretary to Frank J. Lavery, Jr., Esquire



IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST CRIME; :
KIM STOLFER:                      :
JOSHUA FIRST; and                 :         Jury Trial Demanded
      Plaintiffs          :
    v.                          :         Civil Action
                                    :
CITY OF HARRISBURG;               :         Docket No. 2015-CV-354-EQ
MAYOR ERIC PAPENFUSE; and         :
POLICE CHIEF THOMAS CARTER        :
      Defendants          :

## ENTRY OF APPEARANCE

Please enter the appearance of Joshua M. Autry, Esquire on behalf of Defendants, The City of

Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter relative to the above-docketed matter.

Respectfully submitted,

Lavery Faherty

By: _____
(for)   Joshua M. Autry, Esquire
      225 Market Street, Suite 304
      P.O. Box 1245
DATE: _1-28-15_____      Harrisburg, PA 17108-1245
      (717) 233-6633 (telephone)
      (717) 233-7003 (facsimile)
      Atty No. PA208459
      jautry@laverylaw.com
      Atty for Defendants

CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm of Lavery Faherty, do hereby certify that on this 28th day of January, 2015, I served a true and correct copy of the foregoing Entry of Appearance via U.S. First Class mail, postage prepaid, addressed as follows:

Joshua Prince, Esquire
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505

Aimee L. Paukovits
Legal Secretary to Joshua M. Autry, Esquire



IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST CRIME;      :
KIM STOLFER:                                          :
JOSHUA FIRST; and                               :          Jury Trial Demanded
           Plaintiffs                              :
     v.                                                 :          Civil Action
                            :
CITY OF HARRISBURG;                          :          Docket No. 2015-CV-354-EQ
MAYOR ERIC PAPENFUSE; and            :
POLICE CHIEF THOMAS CARTER          :
           Defendants                           :

## ENTRY OF APPEARANCE

Please enter the appearance of Jessica S. Hosenpud, Esquire on behalf of Defendants, The City of

Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter relative to the above-docketed matter.

Respectfully submitted,

                                   Lavery Faherty

                               By: _____

                                  Jessica S. Hosenpud, Esquire
                                  225 Market Street, Suite 304
                                  P.O. Box 1245
DATE: 1-28-15 _____        Harrisburg, PA 17108-1245
                                  (717) 233-6633 (telephone)
                                  (717) 233-7003 (facsimile)
                                  Atty No. PA307656
                                  jhosenpud@laverylaw.com
                                  Atty for Defendants

2015 JAN 28   PM 4: 00
DAUPHIN COUNTY
PENNA

CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm of Lavery Faherty, do hereby certify that on this 28th day of January, 2015, I served a true and correct copy of the foregoing Entry of Appearance via U.S.  First Class mail, postage prepaid, addressed as follows:

Joshua Prince, Esquire
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505

Aimee L. Paukovits
Legal Secretary to Jessica S. Hosenpud, Esquire

# EXHIBIT
## "C"

# Office of the Sheriff



Shelley Ruhl
Real Estate Deputy

Matthew L. Owens
Solicitor

Jack Duignan
Chief Deputy

Michael W. Rinehart
Assistant Chief Deputy

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

Jack Lotwick
Sheriff

| Commonwealth of Pennsylvania | : | FIREARM OWNERS AGAINST CRIME, KIM STOLFER, JOSHUA FIRST & HOWARD BULLOCK |
|---|---|---|
| | | VS |
| County of Dauphin | : | CITY OF HARRISBURG |

Sheriff's Return
No. 2015-CV-00354-EQ

And now: JANUARY 20, 2015 at 9:15:00 AM served the within COMPLAINT upon POLICE

CHIEF THOMAS CARTER by personally handing to MICHAEL BROWNSWEIGER 1 true

attested copy of the original COMPLAINT and making known to him/her the contents thereof at CITY

GOVERNMENT CENTER

10 NORTH SECOND STREET HBG PA 17101

PARA-LEGAL WHO ACCEPTED AS ADULT PERSON IN CHARGE FOR THE DEFENDANT,
POLICE CHIEF THOMAS CARTER AT TIME OF SERVICE.

So Answers,

*J R Lotwick*

Sheriff of Dauphin County, Pa.

Deputy: JOSHUA FRUHWIRTH
Plaintiff: FIREARM OWNERS AGAINST CRIME, KIM STOLFER, JOSHUA FIRST & HOWARD
BULLOCK
Sheriff's Costs: $92 1/16/2015
Out Of County Cost:

# Office of the Sheriff



**Shelley Ruhl**
Real Estate Deputy

**Matthew L. Owens**
Solicitor

**Jack Duignan**
Chief Deputy

**Michael W. Rinehart**
Assistant Chief Deputy

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

**Jack Lotwick**
Sheriff

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania** | : | FIREARM OWNERS AGAINST CRIME, KIM STOLFER, JOSHUA FIRST & HOWARD BULLOCK |
| | | VS |
| **County of Dauphin** | : | CITY OF HARRISBURG |

Sheriff's Return
No. 2015-CV-00354-EQ

And now: JANUARY 20, 2015  at 9:15:00 AM served the within COMPLAINT upon CITY OF

HARRISBURG by personally handing to MICHAEL BROWNSWEIGER  1 true attested copy of the

original  COMPLAINT  and making known to him/her the contents thereof at CITY GOVERNMENT

CENTER

10 NORTH SECOND STREET HBG PA 17101

PARA-LEGAL WHO ACCEPTED AS ADULT PERSON IN CHARGE FOR THE DEFENDANT,
CITY OF HARRISBURG AT TIME OF SERVICE.

So Answers,

_____
Sheriff of Dauphin County, Pa.

Deputy: JOSHUA FRUHWIRTH
Plaintiff: FIREARM OWNERS AGAINST CRIME, KIM STOLFER, JOSHUA FIRST & HOWARD
BULLOCK
Sheriff's Costs: $92 1/16/2015
Out Of County Cost:

# Office of the Sheriff



| | |
|---|---|
| **Shelley Ruhl**<br>Real Estate Deputy | **Jack Duignan**<br>Chief Deputy |
| **Matthew L. Owens**<br>Solicitor | **Michael W. Rinehart**<br>Assistant Chief Deputy |

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

**Jack Lotwick**
Sheriff

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania** | : | FIREARM OWNERS AGAINST CRIME, KIM STOLFER, JOSHUA FIRST & HOWARD BULLOCK |
| | | VS |
| **County of Dauphin** | : | CITY OF HARRISBURG |

Sheriff's Return
No. 2015-CV-00354-EQ

And now: JANUARY 20, 2015  at 9:15:00 AM served the within COMPLAINT upon MAYOR ERIC PAPENFUSE by personally handing to MICHAEL BROWNSWEIGER  1 true attested copy of the original  COMPLAINT  and making known to him/her the contents thereof at CITY GOVERNMENT CENTER

10 NORTH SECOND STREET HBG PA 17101

PARA-LEGAL WHO ACCEPTED AS ADULT PERSON IN CHARGE FOR THE DEFENDANT, MAYOR ERIC PAPENFUSE AT TIME OF SERVICE.

So Answers,

_____
Sheriff of Dauphin County, Pa.

Deputy: JOSHUA FRUHWIRTH
Plaintiff: FIREARM OWNERS AGAINST CRIME, KIM STOLFER, JOSHUA FIRST & HOWARD BULLOCK
Sheriff's Costs: $92 1/16/2015
Out Of County Cost:

# EXHIBIT "D"

# PRINCE LAW OFFICES



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Allen R. Thompson
David J. Cohen
Stanley J. Kuter
Jeffrey Franklin
Adam Jeremy Kraut

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

January 24, 2015

Dauphin County Prothonotary
Room 101
101 Market Street
Harrisburg, PA  17101

RE:   Firearm Owners Against Crime, et al. vs. City Of Harrisburg, et al.
       Docket Number: 2015-CV-354-EQ

## PRAECIPE TO SUBSTITUTE VERIFICATIONS

PROTHONOTARY,

   Enclosed please find one original and one copy of the verifications of Joshua First and
Howard Bullock, two of the Plaintiffs in the above-captioned matter. If you could kindly
substitute the original enclosed verifications of Joshua First and Howard Bullock for the attorney
verification that was submitted on their behalf with the original Complaint and return a
date-stamped copy to me in the enclosed return envelope, I would greatly appreciate it.

   By way of this letter, I am serving the City of Harrisburg, Mayor Papenfuse and Chief Carter.

   Thanking you for your time and assistance in this matter, I am

                                        Yours truly,
                                        Prince Law Offices, P.C.

jp/web
Matter No. 34862
Enclosure
cc:   w/enc: Mr. Thomas  Carter by mail
       City Of Harrisburg by mail          Joshua  Prince
       The Honorable Eric  Papenfuse by mail    joshua@princelaw.com
                                        Extension:  81114

### **Verification**

I, Howard Bullock, verify that I am the Petitioner named in the foregoing and that all the information contained therein is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.


1/16/2015
_____
Date

_____
Howard Bullock

## **Verification**

I, Joshua First, verify that I am the Petitioner named in the foregoing and that all the information contained therein is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

_____
Date

_____
Joshua First

## IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **FIREARM OWNERS AGAINST CRIME, et al.,** | : | **Jury Trial Demanded** |
| Plaintiffs, | : | |
| | : | |
| | : | Civil Action |
| vs. | : | |
| | : | |
| **CITY OF HARRISBURG, et al.,** | : | No. 2015-CV-354-EQ |
| Defendant. | : | |

## PROOF OF SERVICE

I, Joshua Prince, Esq., hereby certify that I served a true and correct copy of Plaintiff's Praecipe to Substitute Verifications upon the following persons in the manner indicated below, on January 24, 2015:

City of Harrisburg
c/o Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Chief Thomas Carter
123 Walnut Street
PS-211
Harrisburg, PA 17101

Respectfully Submitted,
Prince Law Offices, P.C.

Joshua Prince, Esq.
Attorney for Petitioner
Attorney ID # 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
610-845-3803 ext 81114
Joshua@PrinceLaw.com

DATED: January 24, 2015

# EXHIBIT "E"

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, and Joshua First, | : | |
| Plaintiffs | : | |
| v. | : | Civil Action |
| City of Harrisburg, | : | 2015-CV-354-EQ |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | |

### Notice of Removal

Pursuant to 28 U.S.C. § 1446(d), please take notice that on this date, February 13, 2015,

Defendants filed a Notice of Removal in the United States District Court for the Middle District

of Pennsylvania. A copy of the Notice of Removal is attached. The state court shall proceed no

further.

Respectfully submitted,

Lavery Faherty

_____

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | No. _____ |
| Kim Stolfer, and Joshua First, | : | |
| Plaintiffs | : | |
| v. | : | |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | Jury Trial Demanded |

## Notice of Removal

All Defendants hereby remove this case from the Dauphin County Court of Common Pleas, Pennsylvania, to this Court:

1.    On January 20, 2015, Defendants were all served with a copy of the Complaint (exhibit A).

2.    Removal is appropriate because Plaintiffs raise a federal question.

3.    Specifically, Plaintiffs bring a claim under 42 U.S.C. § 1983, asserting violations of their rights under the U.S. Constitution.

4.    Federal courts have jurisdiction over claims that arise under federal laws generally, 28 U.S.C. § 1331, and more specifically over claims asserting violations of the U.S. Constitution. *See* 28 U.S.C. § 1343.

5.    Accordingly, this Court has removal jurisdiction because Plaintiffs raise a federal question generally, 28 U.S.C. § 1441(a), and civil rights questions more specifically. 28 U.S.C. § 1443.

6.     Pursuant to 28 U.S.C. § 1446(d), Defendants will contemporaneously serve a copy of this Notice of Removal on Plaintiffs and file this Notice of Removal with the Dauphin County Court of Common Pleas.

7.     All Defendants join in the removal of this action.

8.     Venue is proper because the Defendants reside in this District and the events giving rise to this action took place within this District. 28 U.S.C.A. § 1391(b).

Respectfully submitted,

Lavery Faherty

*/s/ Joshua M. Autry*
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

2

## Certificate of Service

I certify that on February 13, 2015, I served a true and correct copy of the

foregoing Notice of Removal via the ECF System and also addressed as follows:

Joshua Prince, Esquire
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505

/s/ *Aimee L. Paukovits*
Aimee L. Paukovits
Legal Secretary to Frank Lavery, Esquire

*This document has also been electronically filed and is available for viewing and downloading from the ECF system.*

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
Dauphin _____ County

| For Prothonotary Use Only: | PROTHONOTARY |
|---|---|
| Docket No: **2015CV-354 EQ** | 2015 JAN 16 PM 12: 57 |
| | DAUPHIN COUNTY |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Firearm Owners Against Crime | City of Harrisburg |

**Are money damages requested?** ☒ Yes  ☐ No

Dollar Amount Requested: (check one)  ☐ within arbitration limits  ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: Joshua Prince, Esq.

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☒ Other:
  18 Pa.C.S. 6120

*Updated 1/1/2011*

Joshua Prince, Esquire
Attorney ID: 306521
646 Lenape Road
Bechtelsville, PA 19505-9135
1-610-845-3803

2015 JAN 16 PM 12: 57

DAUPHIN COUNTY
PENNA

_____
Attorney for Plaintiff

## IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA

Firearm Owners Against Crime, et al.       :
                          PLAINTIFFS :
                                            :
            VS.                             : NO. 2015- CV- 354-EQ
                                            : CIVIL ACTION - LAW
City Of Harrisburg, et al.                  :
                          DEFENDANTS :

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court wihtout further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THISPAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

### AVISO

Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las pa?ginas siguientes, usted debe tomar accio?n en el plazo de veinte (20) di?as a partir de la fecha en que se le hizo entrega de la demanda y la notificacio?n, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podri?a dictarse un fallo por el juez en contra suya sin notificacio?n adicional y podri?a ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO
TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR
TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE
INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.

SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA
OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE
PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA
REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE<br>
213 NORTH FRONT STREET<br>
HARRISBURG, PA 17101<br>
1-717-232-7536

Joshua Prince, Esq.
Attorney ID # 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

2015 JAN 16  PM 12: 57

DAUPHIN COUNTY
PENNA

Attorney for Plaintiffs

## IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **FIREARM OWNERS AGAINST CRIME;** | : | |
| | : | |
| **KIM STOLFER;** | : | **Jury Trial Demanded** |
| | : | |
| **JOSHUA FIRST**; and | : | |
| | : | |
| **HOWARD BULLOCK,** | : | |
| | : | |
| Plaintiffs, | : | Civil Action |
| | : | |
| vs. | : | |
| | : | |
| **CITY OF HARRISBURG;** | : | No. 2015-CV-354-EQ |
| | : | |
| **MAYOR ERIC PAPENFUSE**; and | : | |
| | : | |
| **POLICE CHIEF THOMAS CARTER** | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FROM THE CITY OF HARRISBURG'S ILLEGAL, UNENFORCEABLE AND UNCONSTITUTIONAL ORDINANCES

Plaintiffs, Firearm Owners Against Crime, Kim Stolfer, Joshua First, and Howard

Bullock, as well as on behalf of all similarly situated individuals to which Ordinances 3-

345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-

345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 -

Hunting, firearms and fishing, will be enforced against or aggrieved by, by and through

their attorneys, Joshua Prince, Esq. and Prince Law Offices, P.C., hereby file this

Complaint for declaratory and injunctive relief against Defendants, Mayor Eric

Papenfuse, Police Chief Thomas Carter, and the City of Harrisburg, and its officials,

agents and employees, for violating Article 1, Section 21 of the Pennsylvania

Constitution, 18 PA.C.S. § 6120, and the Second Amendments to the U.S. Constitution

and in support thereof state the following:

## JURISDICTION

1. This court has jurisdiction under 42 Pa.C.S.A. §§ 931, 7532, 7533, and 7536 of

   the Declaratory Judgments Act and 42 U.S.C. § 1983, pursuant to the Supremacy

   Clause of Article VI of the U.S. Constitution, as the acts of all Defendants related

   to this Complaint occurred in Dauphin County, Pennsylvania.

2. Venue is proper pursuant to 42 Pa.C.S. § 931 and Pa.R.C.P. No. 1006, as the acts

   of all Defendants related to this Complaint occurred in Dauphin County,

   Pennsylvania.

## PARTIES

3. Plaintiff Firearm Owners Against Crime (hereinafter "FOAC") is a statewide,

   non-partisan Political Action Committee ["PAC"] and membership organization

   with 1,649 members, which actively works to defend, preserve, and protect the

   constitutional and statutory rights of lawful firearm owners, through, *inter alia,*

   Article 1, Section 21 of the Pennsylvania Constitution and the 2nd Amendment of

   the U.S. Constitution. FOAC was formed in 1993, formally becoming a statewide

   PAC in 1994, and has members who legally possess firearms under Federal and

2

State law throughout the Commonwealth, including in Dauphin County. FOAC
represents those members in this action.

4. Plaintiff Kim Stolfer (hereinafter "Mr. Stolfer") is an adult resident of the
Borough of McDonald, Allegheny County, Pennsylvania, as well as, the President
of FOAC, who lawfully possesses firearms under State and Federal law. He
frequents the City of Harrisburg, Dauphin County, for political purposes both as
an individual and in his capacity as President of FOAC.

5. Plaintiff Joshua First (hereinafter "Mr. First") is an adult resident of the City of
Harrisburg, Dauphin County, Pennsylvania, who lawfully possesses firearms
under state and Federal law, and is a member of FOAC.

6. Plaintiff Howard Bullock (hereinafter "Mr. Bullock") is an adult resident of
Lower Paxton Township, Dauphin County, Pennsylvania, who works in the City
of Harrisburg, lawfully possesses firearms under State and Federal law, and is a
member of FOAC.

7. Defendant City of Harrisburg (hereinafter, "Harrisburg" or "City") is a municipal
corporation duly organized, existing and operating under and pursuant to the
applicable laws of the Commonwealth of Pennsylvania, currently a City of the
Third Class, pursuant to 53 P.S. § 35101, *et seq.*, located within the County of
Dauphin, Pennsylvania, and at all relevant times owns, manages, operates, directs
and controls the Harrisburg Police Department, Harrisburg Department of Parks,
Harrisburg Department of Arts, Culture, and Tourism, and all City officials,
agents, and employees. Defendant City is a "person" under 42 U.S.C. § 1983 and
at all times relevant to this case acted under color of law.

3

8. Defendant Mayor Eric Papenfuse (hereinafter "Mayor Papenfuse") is an adult, who at all times relevant was the Mayor of the City of Harrisburg. At all relevant times, Mayor Papenfuse was a policymaker with decision-making authority and was responsible for implementing and enforcing policies, regulations and ordinances of the City of Harrisburg, including implementation and enforcement of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and fishing.  At all relevant times, Mayor Papenfuse was acting under color of state law.  He is being sued in both his official and individual capacities and is a "person" under 42 U.S.C. § 1983.

9. Defendant Police Chief Thomas Carter (hereinafter "Chief Carter") is an adult, who at all times relevant was the Police Chief of the City of Harrisburg and responsible for hiring, training and supervision of the police officers of the City of Harrisburg, as well as, directing the enforcement of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and fishing. At all relevant times, Chief Carter was acting under color of state law. He is being sued in both his official and individual capacities and is a "person" under 42 U.S.C. § 1983.

## THE PENNSYLVANIA UNIFORM FIREARMS ACT

10. Pennsylvania's Uniform Firearms Act (hereinafter, "UFA") can be found at 18 PA.C.S. § 6101, et seq.

4

11. Pennsylvania's UFA provides for "Limitation on the regulation of firearms and ammunition" in 18 PA.C.S. § 6120(a), which declares: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth."

12. Section 6120(a.2) declares, "A person adversely affected by an ordinance, a resolution, regulation, rule, practice or any other action promulgated or enforced by a county, municipality or township prohibited under subsection (a) or 53 Pa.C.S. § 2962(g) (relating to limitation on municipal powers) may seek declaratory or injunctive relief and actual damages in an appropriate court."

13. Section 6120(a.3) goes on to declare, "A court shall award reasonable expenses to a person adversely affected in an action under subsection (a.2) for any of the following: (1) A final determination by the court is granted in favor of the person adversely affected. (2) The regulation in question is rescinded, repealed or otherwise abrogated after suit has been filed under subsection (a.2) but before the final determination by the court."

14. Section 6120(b) defines a "person adversely affected" as any of the following: "(1) A resident of this Commonwealth who may legally possess a firearm under Federal and State law. (2) A person who otherwise has standing under the laws of this Commonwealth to bring an action under subsection (a.2). (3) A membership organization, in which a member is a person described under paragraph (1) or (2).

5

15. Additionally, 18 PA.C.S. § 6119 provides that a violation of Pennsylvania's UFA, including for Section 6120, constitutes a misdemeanor of the first degree.

## ATTORNEY GENERAL'S DETERMINATION

16. On August 24, 2009, then-Attorney General Tom Corbett issued a letter to the Adams County Office of the District Attorney regarding the issue of Section 6120's preemption, informing District Attorney Wagner that local municipalities are precluded from enacting ordinances regarding the possession of firearms. A copy of that letter is attached hereto and incorporated herein as Exhibit A.

## OFFICIAL OPPRESSION

17. 18 PA.C.S. § 5301 provides, "A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

> (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

## ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSITUTION

18. **Section 21. Right to Bear Arms**: "The right of the citizens to bear arms in defense of themselves and the State shall not be questioned."

6

## ARTICLE 1, SECTION 25 OF THE PENNSYLVANIA CONSITUTION

19. **Section 25. Reservation of Powers in People**: "To guard against transgressions

of the high powers which we have delegated, we declare that everything in this

article is excepted out of the general powers of government and shall forever

remain inviolate."

## THE SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION

20. **Amendment II to the United States Constitution**: "A well regulated militia,

being necessary to the security of a free state, the right of the people to keep and

bear arms, shall not be infringed."

## CASE LAW

### Pennsylvania

21. The Pennsylvania Supreme Court in <u>Ortiz v. Commonwealth</u>, 681 A.2d 152, 156

(Pa. 1996), finding that both Article 1, Section 21 of the Pennsylvania

Constitution and 18 Pa.C.S. § 6120 preempted *any* regulation of firearms or

ammunition, declared,

> Because the ownership of firearms is <u>constitutionally protected</u>, its
> regulation is a matter of statewide concern. The constitution does not
> provide that the right to bear arms shall not be questioned in any part of
> the commonwealth except Philadelphia and Pittsburgh, where it may be
> abridged at will, but that it shall not be questioned in any part of the
> commonwealth. Thus, regulation of firearms is a matter of concern in all
> of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the
> General Assembly, not city councils, is the proper forum for the
> imposition of such regulation. (Emphasis added).

7

22. In finding that the Pennsylvania Supreme Court's holding in Ortiz was "crystal clear," the Pennsylvania Commonwealth Court held that even regulation by a municipality *consistent with* the UFA was preempted. *See,* National Rifle Ass'n v. City of Philadelphia, 977 A.2d 78, 82 (Pa. Cmwlth. 2009).

23. In Clarke v. House of Representatives, 957 A.2d 361 (Pa. Cmwlth. Ct. 2008), the Commonwealth Court dealt with seven ordinances enacted by the City of Philadelphia and found *all* of them to be preempted by Section 6120. The ordinances included: (1) limit of one handgun per month and prohibition on straw purchaser sales; (2) reporting of lost or stolen firearms; (3) requiring a license to acquire a firearm in Philadelphia or bring a firearm into Philadelphia; (4) requiring annual renewal of a gun license; (5) permitting confiscation of firearms from someone posing a risk of harm; (6) prohibiting the possession or transfer of assault rifles; and (7) requiring any person selling ammunition to report the purchase and purchase to the police department.

24. In Dillon v. City of Erie, 83 A.3d 467, 473 (Pa. Cmwlth. 2014), the Commonwealth Court found that the City of Erie's ordinance precluding firearms in city parks, *which was identical to Defendant City's Ordinance 10-301.13,* violated Article 1, Section 21 and Section 6120.

**United States**

25. The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense"

is unconstitutional and that the "nonexistence of a self-defense exception" in a

statute is violative of the Second Amendment.

26. Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person

or in the clothing or in a pocket, for the purpose ... of being armed and ready for

offensive or defensive action in a case of conflict with another person." Id. at 584.

27. In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court

would declare that the Second Amendment applies to the States through the

Fourteenth Amendment of the U.S. Constitution.


## CITY ORDINANCES AT ISSUE

### Pursuant to Chapter 3-345: Weapons and Explosives

28. **3-345.1 - Possession of firearms by minors**, provides:

> It shall be unlawful for any minor under the age of 18 years to have in his or her
> possession, except in his or her place of residence, any firearm, flobert rifle, air
> gun, spring gun or any implement which impels with force a metal pellet of any
> kind, unless said minor is accompanied by an adult.

29. **3-345.2 - Discharging weapons or firearms**, provides:

> No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any
> kind within the City, except at supervised firing ranges in bona fide educational
> institutions accredited by the Pennsylvania Department of Education and with the
> approval of the Mayor or Chief of Police, or at a firing range operated by the
> Bureau of Police.

30. **3-345.4 - Lost and stolen firearms**, provides:

> A. Any person who is the owner of a firearm that is lost or stolen shall report the
> loss or theft of that firearm to an appropriate local law enforcement official
> within 48 hours after discovery of the loss or theft
>
> B. For the purpose of this section, the term "firearm" shall be defined as any
> pistol or revolver with a barrel length less than 15 inches, any shotgun with a
> barrel length less than 18 inches or any rifle with a barrel length less than 16

9

inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt, or cylinder, whichever is applicable.

31. **3-345.99 - Penalty**, provides:

Any person who violates the provisions of this chapter shall be subject to Chapter 3-399, Penalty, of these Codified Ordinances.

32. **3-399 - Penalty**, provides:

A. Whoever violates any provision of Part 3, General Offenses, of Title 3 shall, upon conviction thereof, be guilty of a summary offense for each separate violation respectively and, where no specific penalty or fine is provided therefor, subject to a fine of not less than $50 nor more than $1,000 plus costs or imprisonment in the Dauphin County prison for not more than 90 days for each separate violation, or both. Further, any personal property, including a motor vehicle, used in connection with activity that violates any provision of Part 3, General Offenses, of Title 3 may be seized at the time of arrest and permanently forfeited upon conviction for such violation as part of the penalty for such violation or pursuant to other provisions of City or state law.

B. The application of the above penalty shall not prevent the City from pursuing any other remedy available at law or equity for enforcement of Part 3, General Offenses, of Title 3. Prosecution for violation of a provision of Part 3, General Offenses, of Title 3 shall not exclude prosecution for violation of any other applicable City, state or federal law but rather shall be in addition thereto.

C. Upon conviction for a violation of any provision of Part 3, General Offenses, of Title 3 pursuant to Subsection A, in addition to any fines, fees or penalties levied in accordance with Subsection A, an additional neighborhood mitigation penalty shall be levied in the amount of $25. All such penalties levied and collected by any division of the Unified Judicial System existing under Section 1 of Article V of the Constitution of Pennsylvania and 42 Pa.C.S.A. § 301 shall be remitted to the City for deposit into the Neighborhood Mitigation Fund to finance additional community and neighborhood policing programs and operations throughout the City. If the fine is paid in installments, the proportionate amount of the neighborhood mitigation penalty shall be remitted on each installment.

## Pursuant to Chapter 3-355: State of Emergency

33. **3-355.2 – Emergency measures**, provides:

10

A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

   (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.

   (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

   (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

   (1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

   (2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

   (3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

   (4) The closing of places of public assemblage with designated exceptions.

   (5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

   (6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

11

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

(8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

34. **3-355.99 – Penalty**, provides:

Any person who violates the provisions of this chapter shall be subject to Chapter 3-399, Penalty, of these Codified Ordinances.

### Pursuant to Chapter 10-301: Parks

35. **10-301.13 – Hunting, firearms and fishing**, provides:

A. No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

B. No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

D. No person shall fish in Italian Lake.

36. **10-301.99 – Penalty**, provides:

A. For the purposes of enforcing the provisions of this chapter, any warning or notice of a violation shall be given by park rangers, police officers, Department of Parks, Recreation and Enrichment officials or any other person authorized to enforce ordinances. Whenever a park ranger or any other official authorized to enforce this chapter observes or by information becomes aware of a violation, that person is hereby authorized to issue a citation pursuant to Rule 51 of the Pennsylvania Rules of Criminal Procedure.

12

B. Any person who violates the provisions of this chapter shall be subject to the general code penalty, § 1-301.99 of these Codified Ordinances.

37. **1-301.99 – General penalty**, provides:

Whenever in the Codified Ordinances or in any ordinance of the City any act is prohibited or is made or declared to be unlawful or an offense, or whenever in the Codified Ordinances or in any ordinance the doing of any act is required or the failure to do any act is declared to be unlawful, where no specific penalty or fine is provided therefor, the violator of any such provision or any ordinance pertaining to building, housing, property maintenance, health, fire or public safety shall be fined not more than $1,000, plus all costs, or imprisoned for not more than 90 days, or both. The violator of water, air and noise pollution or any other ordinance or provision or part thereof shall be fined no more than $600, plus all costs, or imprisoned for not more than 90 days, or both. Each day that a violation continues shall be deemed a separate offense. This penalty shall in no way be construed to negate or preclude any additional liability, punishment, enforcement action, or remedy and shall apply in addition to any other fines or penalties.

38. All the above-specified Ordinances, including penalties, are hereinafter

collectively referred to as "Ordinances."

## STATEMENT OF FACTS

### Facts Related to Defendant Harrisburg

39. The foregoing paragraphs are incorporated herein as if set forth in full.

40. Defendant City is a municipal corporation duly organized, existing and operating

under and pursuant to the applicable laws of the Commonwealth of Pennsylvania,

currently a City of the Third Class, pursuant to 53 P.S. § 35101, *et seq.*, located

within the County of Dauphin, Pennsylvania.

41. Defendant City is a municipality as defined by 18 Pa.C.S. § 6120.

42. At all relevant times, Defendant City owns, manages, operates, directs and

controls the Harrisburg Police Department, Harrisburg Department of Parks,

Harrisburg Department of Arts, Culture, and Tourism, and all City officials,

agents, and employees.

43. Defendant City is a "person" under 42 U.S.C. § 1983 and at all times relevant to

this case acted under color of law.

### Facts Related to Defendant Mayor Papenfuse

44. The foregoing paragraphs are incorporated herein as if set forth in full.

45. Defendant Mayor Papenfuse is an adult, who at all times relevant was the Mayor

of the City of Harrisburg.

46. At all relevant times, Mayor Papenfuse was a policymaker with decision-making

authority and was responsible for implementing and enforcing policies,

regulations and ordinances of the City of Harrisburg, including, but not limited to,

implementation and enforcement of Ordinances 3-345.1 - Possession of firearms

by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen

firearms, 3-355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and

fishing.

47. At all relevant times, Mayor Papenfuse was acting under color of state law.

48. Defendant Mayor Papenfuse is a "person" under 42 U.S.C. § 1983.

### Facts Related to Defendant Chief Carter

49. Defendant Police Chief Thomas Carter is an adult, who at all times relevant was

the Police Chief of the City of Harrisburg.

14

50. Defendant Chief Carter, at all relevant times, was responsible for hiring, training and supervision of the police officers of the City of Harrisburg, as well as, directing the enforcement of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and fishing.

51. At all relevant times, Chief Carter was acting under color of state law.

52. Defendant Chief Carter is a "person" under 42 U.S.C. § 1983.

### Facts Related to FOAC

53. The foregoing paragraphs are incorporated herein as if set forth in full.

54. FOAC is a statewide, non-partisan PAC, which actively works to defend, preserve, and protect constitutional and statutory rights of lawful firearm owners, including through Article 1, Section 21 of the Pennsylvania Constitution and the Second Amendment to the U.S. Constitution.

55. FOAC actively educates and informs its members, the General Assembly, and the public on all issues pertaining to firearms, firearm safety, constitutional provisions, statutes, case law and all other issues related to or intersecting with Article 1, Section 21 of the Pennsylvania Constitution, the Second Amendment of the U.S. Constitution, and firearms and ammunition in general.

56. FOAC was formed in 1993, formally becoming a statewide PAC in 1994, as a result of the City of Pittsburgh's illegal firearm and ammunition ban.

57. Plaintiff Mr. Stolfer is the current President of FOAC.

15

58. FOAC has 1,649 members within the Commonwealth, including in Dauphin County, who, under information and belief, may legally possess firearms under Federal and State law.

59. FOAC has over a half-dozen members, under the age of 18, who, under information and belief, may legally possess firearms under Federal and State law.

60. FOAC has a member, under the age of 18, from the City of Harrisburg, Dauphin County, who legally possesses firearms under Federal and State law.

61. Plaintiffs Mr. Stolfer, Mr. First and Mr. Bullock are members of FOAC and at all times can and lawfully do possess firearms under Federal and State law.

62. FOAC's members have raised concern over the threat of prosecution by Defendants.

63. FOAC fears that the Defendants, pursuant to the Ordinances, will unlawfully prosecute its members, based on the statements made by the Defendants that they will enforce the Ordinances. See ¶¶ 87-94, infra.

### Facts Related to Kim Stolfer

64. The foregoing paragraphs are incorporated herein as if set forth in full.

65. Mr. Stolfer is a member and the President of FOAC.

66. Mr. Stolfer may and lawfully does possess firearms under State and Federal law.

67. Mr. Stolfer owns rifles, shotguns and handguns.

68. Mr. Stolfer frequents, at least on an average bi-weekly basis, the City of Harrisburg, Dauphin County, for political purposes both as an individual and in his capacity as President of FOAC.

69. Mr. Stolfer fears prosecution by Defendants pursuant to the Ordinances, as the Defendants have stated that they will enforce the Ordinances.

### Facts Related to Joshua First

70. The foregoing paragraphs are incorporated herein as if set forth in full.

71. Mr. First is a resident of the City of Harrisburg, Dauphin County, and a member of FOAC.

72. Mr. First may and lawfully does possess firearms under State and Federal law.

73. Mr. First owns rifles, shotguns and handguns.

74. Mr. First fears prosecution by Defendants pursuant to the Ordinances, as the Defendants have stated that they will enforce the Ordinances.

### Statement of Facts of Howard Bullock

75. The foregoing paragraphs are incorporated herein as if set forth in full.

76. Mr. Bullock is a resident of the Lower Paxton, Dauphin County, and a member of FOAC.

77. Mr. Bullock may and lawfully does possess firearms under State and Federal law.

78. Mr. Bullock owns rifles, shotguns and handguns.

79. Mr. Bullock works, and therefore commutes daily, into the City of Harrisburg.

80. Mr. Bullock fears prosecution by Defendants pursuant to the Ordinances, as the Defendants have stated that they will enforce the Ordinances.

17

## Statement of Facts of All Plaintiffs

81. The foregoing paragraphs are incorporated herein as if set forth in full.

82. The City is a municipality against which 18 Pa.C.S. § 6120 applies.

83. FOAC, Mr. Stolfer, Mr. First and Mr. Bullock (hereinafter collectively "Plaintiffs") own, possess, use, and bear firearms for all lawful purposes, including, but not limited to, self-defense, hunting, firearms training/education, and target shooting.

84. All legal firearms owners are permitted to openly carry firearms, absent a license to carry firearms, throughout the Commonwealth of Pennsylvania, with the sole exception being the City of Philadelphia.[1]

85. Plaintiffs are licensed to carry concealed firearms within the Commonwealth of Pennsylvania.

86. Plaintiffs bring this action as a result of the City's illegal Ordinances, which in addition to violating Section 6120, deprive them of their rights pursuant to the Pennsylvania and U.S. Constitutions.

87. Accordingly, Plaintiffs are "person[s] adversely affected" by the Defendants illegal Ordinances.

88. In an egregious and direct violation of Section 6120, the City of Harrisburg, Mayor Papenfuse and Chief Carter (hereinafter collectively "Defendants"), acting under color of state law, have promulgated, enacted, enforced, and seek to continue enforcement of Ordinances 3-345.1 - Possession of firearms by minors, 3-345.2 - Discharging weapons or firearms, 3-345.4 - Lost and stolen firearms, 3-

---

[1] *See,* 18 Pa.C.S. § 6108.

355.2 - Emergency measures, and 10-301.13 - Hunting, firearms and fishing, and their associated penalties.

89. Although the undersigned counsel informed the Defendants of their violations of state law and afforded them an opportunity, prior to filing this action, to repeal the unlawful Ordinances, on December 29, 2014, Mayor Papenfuse stated publicly that he intends to continue to enforce the Ordinances and that he will not repeal them.

90. Specifically, Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." A copy of the article is attached hereto and incorporated herein as Exhibit B.

91. In that same article, Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." *See*, Exhibit B.

92. Several days later, Mayor Papenfuse stated to ABC 27 News reporter Dave Marcheskie: "Police do cite people for [the discharge ordinance] on a regular basis. That is a sensible measure." A copy of the article is attached hereto and incorporated herein as Exhibit C.

93. Each of these Ordinances regulate firearms and ammunition and are patently unenforceable, unconstitutional, illegal, violate statewide preemption and clearly established precedent of the Supreme Courts of the United States and Pennsylvania. *See*, Heller and Ortiz.

19

94. In defiance of clearly established rights of the citizens, acting under color of state law, the Defendants have promulgated, enacted, ratified, condoned and enforced these gun control ordinances knowing that they have no authority to pass such ordinances, and knowing that such are violating the U.S. and Pennsylvania Constitutions, statutory law and the established precedent of the Commonwealth Courts, specifically the Supreme and Commonwealth Courts, which have issued binding precedent on the Courts of this Commonwealth that the City of Harrisburg has no authority or power to regulate firearms or ammunition.

95. Plaintiffs assert that their rights under Article 1, Section 21 of the Pennsylvania Constitution and under the Second Amendment to the United States Constitution are now unconstitutionally rendered illegal, curtailed and burdened by the passage and enforcement, or threat thereof, of these Ordinances, which has resulted in a chilling effect upon their rights.

96. Plaintiffs are likely to face criminal charging, prosecution and penalties, for violating the City's unlawful Ordinances.

### COUNT I: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

97. The foregoing paragraphs are incorporated herein as if set forth in full.

98. For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

99. For purposes of this Count, "Defendants" refers to all named Defendants.

100.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

20

101.    **3-345.1 - Possession of firearms by minors,** provides:

It shall be unlawful for any minor under the age of 18 years to have in his or her possession, except in his or her place of residence, any firearm, flobert rifle, air gun, spring gun or any implement which impels with force a metal pellet of any kind, unless said minor is accompanied by an adult.

102.    Ordinance 3-345.1 was promulgated, enacted, enforced and continues to be enforced by Defendants.

103.    Ordinance 3-345.1 is not limited to residents of, or individuals within, the City; rather, it encompasses all minors throughout the Commonwealth and even the United States.[2]

104.    Ordinance 3-345.1 is overbroad, as it applies to any minor in the Commonwealth and even the United States.

105.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See,* Exhibit B.

106.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

107.    A present controversy exists,[3] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

_____

[2] *See,* Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.

[3] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

108.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania

Constitution, 18 Pa.C.S. § 6120 and the binding precedent.[4]

109.     Pursuant to 18 Pa.C.S. § 6110.1, the General Assembly has only precluded

minors, with several exceptions, from possessing and transporting, generally,

handguns.[5]

110.     Even if the General Assembly had prohibited minors from possessing and

transporting rifles and shotguns, which it has not, Defendants are prohibited from

promulgating, enacting, or enforcing any ordinance *consistent* with such law,

pursuant to Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. §

6120, and the Commonwealth Court's holdings in NRA v. City of Philadelphia

and Clarke v. House of Representatives, *supra*.

111.     Members of FOAC under the age of 18, who lawfully possess firearms

pursuant to State and Federal law, including one living in the City of Harrisburg,

have raised concern with FOAC over their possible charging and prosecution,

because of the Defendants' statements that they will enforce Ordinance 3-345.1,

which applies to individuals across the Commonwealth.

---

[4] The federal courts have analyzed Second Amendment issues under a First Amendment
analysis.  See United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010); Piszczatoski
v. Filko, 840 F.Supp.2d 813, 834 (D.N.J. 2012).

[5] In Section 6110.1, the statutory language uses the term "firearm," which is defined by
18 Pa.C.S. § 6102 as "Any pistol or revolver with a barrel length less than 15 inches, any
shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than
16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26
inches."

112.    Members of FOAC, who have children under the age of 18, and whose children lawfully possess firearms pursuant to State and Federal law, including one living in the City of Harrisburg, have raised concern with FOAC over their children's possible charging and prosecution, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

113.    FOAC fears prosecution of its members, especially those under the age of 18, within the Commonwealth, who lawfully possess firearms, pursuant to State and Federal law, because of the Defendants statements that they will enforce Ordinance 3-345.1, which applies to individuals across the Commonwealth.

114.    Plaintiffs, pursuant to 18 Pa.C.S. § 6120, are "person[s] adversely affected.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Finding that Ordinance 3-345.1 violates 18 Pa.C.S. § 6120;

    b.  Declaring that Ordinance 3-345.1 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 3-345.1;

    d.  Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

    e.  Such other relief as the Court deems just and equitable.

<u>COUNT II: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 –</u>
<u>ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS</u>
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

115.  The foregoing paragraphs are incorporated herein as if set forth in full.

116.  For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

117.  For purposes of this Count, "Defendants" refers to all named Defendants.

118.  Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

119.  Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 3-345.1, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will

continue to be enforced.

120.  Violations of constitutional and statutory rights are *per se* injuries, which,

in this case, result in criminal liability of the City and its officials, agents and

employees.

121.  Enforcement of these ordinances will have a chilling effect on the

otherwise lawful right to sell, transfer and possess lawful firearms.

122.  Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs

will face criminal charging and prosecution, whereby Plaintiffs will be deprived

of their constitutional and statutory rights, in violation of Article 1, Section 21 of

the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

123.  If the injunction is granted, Plaintiffs and Defendants will remain in the

position they were prior to the wrongful conduct of the City enacting Ordinance

3-345.1.

24

124.    An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

125.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

     a.  Enjoining the Defendants from enforcing Ordinance 3-345.1;

     b.  Requiring that Defendants repeal Ordinance 3-345.1;

     c.  Directing that Defendants pay reasonable expenses, including attorney

        fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

     d.  Such other relief as the Court deems just and equitable.

### COUNT III: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

126.    The foregoing paragraphs are incorporated herein as if set forth in full.

127.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

128.    For purposes of this Count, "Defendants" refers to all named Defendants.

129.    Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

130.    **3-345.1 - Possession of firearms by minors,** provides:

> It shall be unlawful for any minor under the age of 18 years to have in his or her
> possession, except in his or her place of residence, any firearm, flobert rifle, air
> gun, spring gun or any implement which impels with force a metal pellet of any
> kind, unless said minor is accompanied by an adult.

131.     Ordinance 3-345.1 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

132.     Ordinance 3-345.1 is not limited to residents of, or individuals within, the

City, but rather encompasses all minors throughout the Commonwealth and even

the United States.[6]

133.     Ordinance 3-345.1 is overbroad, as it applies to any minor in the

Commonwealth and even the United States.

134.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." *See*, Exhibit B.

135.     Chief Carter declared that: "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

136.     A present controversy exists,[7] as Defendants have publicly stated both

their intention to enforce the ordinance and their current prosecution of

individuals pursuant to the ordinance.

---

[6] *See*, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly,
if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was
aware of how to draft such language.
[7] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General
Assembly has conferred standing where a municipality either promulgates or enforces
"an ordinance, resolution, regulation, rule, practice or any other action."

137.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania

Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

138.     Pursuant to 18 Pa.C.S. § 6110.1, the General Assembly has only precluded

minors, with several exceptions, from possessing and transporting, generally,

handguns.[8]

139.     Even if the General Assembly had prohibited minors from possessing and

transporting rifles and shotguns, which it has not, Defendants are prohibited from

promulgating, enacting, or enforcing any ordinance *consistent* with such law,

pursuant to Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. §

6120, and the Commonwealth Court's holdings in NRA v. City of Philadelphia

and Clarke v. House of Representatives, *supra*.

140.     Members of FOAC, under the age of 18 and who lawfully possess

firearms pursuant to State and Federal law, including one living in the City of

Harrisburg, have raised concern with FOAC over their possible charging and

prosecution, because of the Defendants statements that they will enforce

Ordinance 3-345.1, which applies to individuals across the Commonwealth.

141.     Members of FOAC, who have children under the age of 18 and whose

children lawfully possess firearms pursuant to State and Federal law, including

---

[8] In Section 6110.1, the statutory language uses the term "firearm," which is defined by
18 Pa.C.S. § 6102 as "Any pistol or revolver with a barrel length less than 15 inches, any
shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than
16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26
inches."

one living in the City of Harrisburg, have raised concern with FOAC over their

children's possible charging and prosecution, because of the Defendants

statements that they will enforce Ordinance 3-345.1, which applies to individuals

across the Commonwealth.

142.     FOAC fears prosecution of its members, especially those under the age of

18, within the Commonwealth, who lawfully possess firearms, pursuant to State

and Federal law, because of the Defendants statements that they will enforce

Ordinance 3-345.1, which applies to individuals across the Commonwealth.


**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a. Finding that Ordinance 3-345.1 violates Article 1, Section 21 of the

       Pennsylvania Constitution;

    b. Declaring that Ordinance 3-345.1 is unlawful;

    c. Enjoining Defendants from enforcing Ordinance 3-345.1;

    d. Directing that Defendants pay reasonable expenses, including attorney

       fees and costs; and

    e. Such other relief as the Court deems just and equitable.


### COUNT IV: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

143.     The foregoing paragraphs are incorporated herein as if set forth in full.

144.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

145.   For purposes of this Count, "Defendants" refers to all named Defendants.

146.   Plaintiffs' injuries are imminent and immediate and will not be adequately
redressed through money damages.

147.   Plaintiffs have a well-grounded fear of imminent prosecution for violation
of Ordinance 3-345.1, as the City, by and through its representatives, Mayor
Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will
continue to be enforced.

148.   Violations of constitutional and statutory rights are *per se* injuries and, in
this case, result in criminal liability of the City and its officials, agents and
employees.

149.   Enforcement of these ordinances will have a chilling effect on the
otherwise lawful right to sell, transfer and possess lawful firearms.

150.   Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs
will face criminal charging and prosecution, whereby Plaintiffs will be deprived
of their constitutional and statutory rights, in violation of Article 1, Section 21 of
the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

151.   If the injunction is granted, Plaintiffs and Defendants will remain in the
position they were prior to the wrongful conduct of the City enacting Ordinance
3-345.1.

152.   An injunction is the appropriate method to stay the enforcement of a law
enacted in contravention of state law and is the minimum action necessary.

153.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

　　　　a.　Enjoining the Defendants from enforcing Ordinance 3-345.1;

　　　　b.　Requiring that Defendants repeal Ordinance 3-345.1;

　　　　c.　Directing that Defendants pay reasonable expenses, including attorney

　　　　　　fees and costs; and

　　　　d.　Such other relief as the Court deems just and equitable.


## COUNT V: DECLARATORY RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
### (FOAC V. ALL DEFENDANTS)

154.    The foregoing paragraphs are incorporated herein as if set forth in full.

155.    For purposes of this Count, "Plaintiff" refers to FOAC.

156.    For purposes of this Count, "Defendants" refers to all named Defendants.

157.    **3-345.1 - Possession of firearms by minors**, provides:

It shall be unlawful for any minor under the age of 18 years to have in his or her possession, except in his or her place of residence, any firearm, flobert rifle, air gun, spring gun or any implement which impels with force a metal pellet of any kind, unless said minor is accompanied by an adult.

158.    42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

159.    State courts, pursuant to the Supremacy Clause of Article VI of the U.S.

Constitution, have authority hear Section 1983 causes of action. Felder v. Casey,

487 U.S. 131 (1988).

160.    The U.S. Supreme Court has held that membership organizations may

bring a claim, in the absence of injury to itself, on behalf of its members, where at

least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490,

510-11 (1975).

161.    The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570,

628-30 (2008) declared, "the inherent right of self-defense has been central to the

Second Amendment right," that a prohibition on the "core lawful purpose of self-

defense" is unconstitutional and that the "nonexistence of a self-defense

exception" in a statute is violative of the Second Amendment.

162.    Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the

person or in the clothing or in a pocket, for the purpose ... of being armed and

ready for offensive or defensive action in a case of conflict with another person."

Id. at 584.

163.    In <u>McDonald v. City of Chicago</u>, 561 U.S. 742 (2010), the U.S. Supreme

Court declared that the Second Amendment applies to the States through the

Fourteenth Amendment of the U.S. Constitution.

164.    Ordinance 3-345.1 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

165.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." See, Exhibit B.

166.    Chief Carter declared that "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

167.    A present controversy exists,[9] as Defendants have publicly stated both

their intention to enforce the ordinance and their current prosecution of

individuals pursuant to the ordinance.

168.    Ordinance 3-345.1 is not limited to a resident of, or individuals within the

City, but rather encompasses all minors throughout the Commonwealth and even

the United States.[10]

169.    Ordinance 3-345.1 is overbroad, as it applies to any minor in the

Commonwealth and even the United States.

---

[9] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General
Assembly has conferred standing where a municipality either promulgates or enforces
"an ordinance, resolution, regulation, rule, practice or any other action."
[10] See, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly,
if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was
aware of how to draft such language.

170.      The current enforcement of this Ordinance has a chilling effect on the

Plaintiff's, and its members', otherwise lawful and constitutionally protected right

to keep and bear arms, including the right to self-defense.

171.      Members of FOAC, under the age of 18, who lawfully possess firearms

pursuant to State and Federal law, including one living in the City of Harrisburg,

have raised concern with FOAC over their possible charging and prosecution,

because of the Defendants statements that they will enforce Ordinance 3-345.1,

which applies to individuals across the Commonwealth.

172.      Members of FOAC, who have children under the age of 18, whose

children lawfully possess firearms pursuant to State and Federal law, including

one living in the City of Harrisburg, have raised concern with FOAC over their

children's possible charging and prosecution, because of the Defendants

statements that they will enforce Ordinance 3-345.1, which applies to individuals

across the Commonwealth.

173.      FOAC fears prosecution of its members, especially those under the age of

18, within the Commonwealth, who lawfully possess firearms, pursuant to State

and Federal law, because of the Defendants statements that they will enforce

Ordinance 3-345.1, which applies to individuals across the Commonwealth.


**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a. Finding that Ordinance 3-345.1 violates the Second Amendment of the

       U.S. Constitution;

    b.  Declaring that Ordinance 3-345.1 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 3-345.1;

    d.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

       § 1988, including attorney fees and costs; and

    e.  Such other relief as the Court deems just and equitable.

## COUNT VI: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 3-345.1 – POSSESSION OF FIREARMS BY MINORS
(FOAC V. ALL DEFENDANTS)

174.     The foregoing paragraphs are incorporated herein as if set forth in full.

175.     For purposes of this Count, "Plaintiff" refers to FOAC.

176.     For purposes of this Count, "Defendants" refers to all named Defendants.

177.     Plaintiff's members' injuries are imminent and immediate and will not be

adequately redressed through money damages.

178.     Plaintiff's members' have a well-grounded fear of imminent prosecution

for violation of Ordinance 3-345.1, as the City, by and through its representatives,

Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being

and will continue to be enforced.

179.     Violations of constitutional and statutory rights are *per se* injuries and, in

this case, result in criminal liability of the City and its officials, agents and

employees.

180.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful and constitutionally protected right to self-defense

and to hunt.

181.    Ordinance 3-345.1 is overbroad, as it applies to any minor in the Commonwealth and even the United States.

182.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiff's members will face criminal charging and prosecution, whereby Plaintiff's members will be deprived of their constitutional rights, pursuant to the Second Amendment of the U.S. Constitution.

183.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 3-345.1.

184.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

185.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.    Enjoining the Defendants from enforcing Ordinance 3-345.1;

b.    Requiring that Defendants repeal Ordinance 3-345.1;

c.    Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C. § 1988, including attorney fees and costs; and

d.    Such other relief as the Court deems just and equitable

**COUNT VII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 –
ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS**
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

186.    The foregoing paragraphs are incorporated herein as if set forth in full.

187.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

188.    For purposes of this Count, "Defendants" refers to all named Defendants.

189.    Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

190.    **3-345.2 - Discharging weapons or firearms**, provides:

No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of
any kind within the City, except at supervised firing ranges in bona fide
educational institutions accredited by the Pennsylvania Department of
Education and with the approval of the Mayor or Chief of Police, or at a
firing range operated by the Bureau of Police.

191.    Ordinance 3-345.2 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

192.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." *See*, Exhibit B.

193.    Chief Carter declared that: "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

194.     A present controversy exists,[11] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

195.     The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as, their constitutionally protected rights to self-defense and to hunt.

196.     Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for self-defense or hunting.

197.     Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for private or commercially owned firing ranges.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a.  Finding that Ordinance 3-345.2 violates 18 Pa.C.S. § 6120;

    b.  Declaring that Ordinance 3-345.2 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 3-345.2;

    d.  Directing that Defendants pay reasonable expenses, pursuant to 18 Pa.C.S. § 6120(a.3), including attorney fees and costs; and

    e.  Such other relief as the Court deems just and equitable.

---

[11] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

## COUNT VIII: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

198.     The foregoing paragraphs are incorporated herein as if set forth in full.

199.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

200.     For purposes of this Count, "Defendants" refers to all named Defendants.

201.     Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

202.     Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 3-345.2, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will

continue to be enforced.

203.     Violations of constitutional and statutory rights are *per se* injuries and, in

this case, result in criminal liability of the City and its officials, agents and

employees.

204.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their

constitutionally protected rights to self-defense and to hunt.

205.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs

will face criminal charging and prosecution, whereby Plaintiffs will be deprived

of their constitutional and statutory rights, in violation of Article 1, Section 21 of

the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

38

206.     If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 3-345.2.

207.     An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

208.     An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.   Enjoining the Defendants from enforcing Ordinance 3-345.2;

b.   Requiring that Defendants repeal Ordinance 3-345.2;

c.   Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

d.   Such other relief as the Court deems just and equitable.

### COUNT IX: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

209.     The foregoing paragraphs are incorporated herein as if set forth in full.

210.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

211.     For purposes of this Count, "Defendants" refers to all named Defendants.

39

212.     Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

213.     **3-345.2 - Discharging weapons or firearms**, provides:

> No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of
> any kind within the City, except at supervised firing ranges in bona fide
> educational institutions accredited by the Pennsylvania Department of
> Education and with the approval of the Mayor or Chief of Police, or at a
> firing range operated by the Bureau of Police.

214.     Ordinance 3-345.2 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

215.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." *See,* Exhibit B.

216.     Chief Carter declared that: "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

217.     A present controversy exists,[12] as Defendants have publicly *stated both*

*their intention to enforce the ordinance* and their current prosecution of

individuals pursuant to the ordinance.

218.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

---

[12] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General
Assembly has conferred standing where a municipality either promulgates or enforces
"an ordinance, resolution, regulation, rule, practice or any other action."

and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their

constitutionally protected rights to self-defense and to hunt.

219. Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

self-defense or hunting.

220. Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

private or commercially owned firing ranges.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a. Finding that Ordinance 3-345.2 violates Article 1, Section 21 of the

       Pennsylvania Constitution;

    b. Declaring that Ordinance 3-345.2 is unlawful;

    c. Enjoining Defendants from enforcing Ordinance 3-345.2;

    d. Directing that Defendants pay reasonable expenses, including attorney

       fees and costs; and

    e. Such other relief as the Court deems just and equitable.

### COUNT X: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

221. The foregoing paragraphs are incorporated herein as if set forth in full.

222. For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

223. For purposes of this Count, "Defendants" refers to all named Defendants.

224.    Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

225.    Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

226.    Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

227.    The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

228.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived *of their constitutional and statutory rights*, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

229.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 3-345.2.

230.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

231.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

   a.  Enjoining the Defendants from enforcing Ordinance 3-345.2;

   b.  Requiring that Defendants repeal Ordinance 3-345.2;

   c.  Directing that Defendants pay reasonable expenses, including attorney

       fees and costs; and

   d.  Such other relief as the Court deems just and equitable.


## COUNT XI: DECLARATORY RELIEF – SECOND AMENDMENT OF THE UNITED STATES CONSTITUTION – ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS
### (ALL PLAINTIFFS V. ALL DEFENDANTS)

232.    The foregoing paragraphs are incorporated herein as if set forth in full.

233.    For purposes of this Count, Plaintiffs refers to all named Plaintiffs.

234.    For purposes of this Count, Defendants refers to all named Defendants.

235.    **3-345.2 - Discharging weapons or firearms,** provides:

   No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of
   any kind within the City, except at supervised firing ranges in bona fide
   educational institutions accredited by the Pennsylvania Department of
   Education and with the approval of the Mayor or Chief of Police, or at a
   firing range operated by the Bureau of Police.

236.    The Second Amendment to the United States Constitution protects an

individual's right to keep and bear arms, especially for the purpose of self-

43

defense. *See*, <u>District of Columbia v. Heller</u>; <u>McDonald v. City of Chicago</u>, *supra*.

237.     Thus, any statute or ordinance that "defeats the core lawful purpose of self defense . . . is hence unconstitutional." <u>Heller</u>, 128 S.Ct. at 629.

238.     Ordinance 3-345.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

239.     There is no self-defense exception within Ordinance 3-345.2.

240.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

241.     Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." <u>Id.</u>

242.     A present controversy exists,[13] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

243.     42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

---

[13] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

244. State courts, pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, have authority hear Section 1983 causes of action. Felder v. Casey, 487 U.S. 131 (1988).

245. The U.S. Supreme Court has held that membership organizations may bring a claim, in the absence of injury to itself, on behalf of its members, where at least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490, 510-11 (1975).

246. The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute in violative of the Second Amendment.

247. Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." Id. at 584.

248. In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court would declare that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

249. Plaintiffs are licensed to carry concealed firearms within the Commonwealth of Pennsylvania.

45

250.     All legal firearms owners are permitted to openly carry firearms, absent a

license to carry firearms, throughout the Commonwealth of Pennsylvania, with

the sole exception being the City of Philadelphia.[14]

251.     The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful and constitutionally protected right to self-defense

and to hunt.

252.     Ordinance 3-345.2 deprives Plaintiffs of "the core lawful purpose" of the

Second Amendment.

253.     Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

Plaintiffs' constitutionally protected right to self-defense or hunting.

254.     Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

private or commercially owned firing ranges.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Finding that Ordinance 3-345.2 violates the Second Amendment of the

       U.S. Constitution;

    b.  Declaring that Ordinance 3-345.2 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 3-345.2;

    d.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

       § 1988, including attorney fees and costs; and

    e.  Such other relief as the Court deems just and equitable

---

[14] *See,* 18 Pa.C.S. § 6108.

**COUNT XII: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE
UNITED STATES CONSTITUTION –
ORDINANCE 3-345.2 – DISCHARGING WEAPONS OR FIREARMS**
(ALL PLAINTIFFS V. ALL DEFENDANTS)

255.   The foregoing paragraphs are incorporated herein as if set forth in full.

256.   For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

257.   For purposes of this Count, "Defendants" refers to all named Defendants.

258.   Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

259.   Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 3-345.2, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will

continue to be enforced.

260.   Violations of constitutional and statutory rights are *per se* injuries and

which, in this case, result in criminal liability of the City and its officials, agents

and employees.

261.   The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful and constitutionally protected right to self-defense

and to hunt.

262.   Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

Plaintiffs' constitutionally protected right to self-defense or hunting, thus

depriving Plaintiffs of "the core lawful purpose" of the Second Amendment.

263.   Ordinance 3-345.2 is overbroad, as it fails to provide any exceptions for

private or commercially owned firing ranges.

47

264.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs

will face criminal charging and prosecution; whereby, Plaintiffs will be deprived

of their constitutional rights, pursuant to the Second Amendment to the U.S.

Constitution.

265.     If the injunction is granted, Plaintiffs and Defendants will remain in the

position they were prior to the wrongful conduct of the City enacting Ordinance

3-345.2.

266.     An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

267.     An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

a.   Enjoining the Defendants from enforcing Ordinance 3-345.2;

b.   Requiring that Defendants repeal Ordinance 3-345.2;

c.   Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

§ 1988, including attorney fees and costs; and

d.   Such other relief as the Court deems just and equitable.


### COUNT XIII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

268.     The foregoing paragraphs are incorporated herein as if set forth in full.

48

269.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

270.     For purposes of this Count, "Defendants" refers to all named

271.     Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

272.     **3-345.4 - Lost and stolen firearms**, provides:

A.  Any person who is the owner of a firearm that is lost or stolen shall
report the loss or theft of that firearm to an appropriate local law
enforcement official within 48 hours after discovery of the loss or
theft.

B.  For the purpose of this section, the term "firearm" shall be defined as
any pistol or revolver with a barrel length less than 15 inches, any
shotgun with a barrel length less than 18 inches or any rifle with a
barrel length less than 16 inches, or any pistol, revolver, rifle or
shotgun with an overall length of less than 26 inches. The barrel length
of a firearm shall be determined by measuring from the muzzle of the
barrel to the face of the closed action, bolt, or cylinder, whichever is
applicable

273.     In Clarke, 957 A.2d 361 (Pa. Cmwlth. Ct. 2008), the Commonwealth

Court *already held* that the City of Philadelphia's Lost and Stolen Firearm

ordinance violated Section 6120.

274.     Ordinance 3-345.4 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

275.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." *See*, Exhibit B.

276.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

277.    A present controversy exists,[15] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

278.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

279.    Ordinance 3-345.4 is not limited to a resident of or individuals within the City, but rather encompasses all individuals throughout the Commonwealth and even the United States.[16]

280.    Ordinance 3-345.4 is overbroad, as it applies to any individual in the Commonwealth and even the United States.

281.    Plaintiffs fear prosecution if one of their firearms are lost and stolen based on the statements of the Defendants.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

---

[15] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

[16] *See,* Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly, if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was aware of how to draft such language.

a.  Finding that Ordinance 3-345.4 violates 18 Pa.C.S. § 6120;

b.  Declaring that Ordinance 3-345.4 is unlawful;

c.  Enjoining Defendants from enforcing Ordinance 3-345.4;

d.  Directing that Defendants pay reasonable expenses, pursuant to 18 Pa.C.S. § 6120, including attorney fees and costs; and

e.  Such other relief as the Court deems just and equitable.

## COUNT XIV: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

282.  *The foregoing paragraphs are incorporated herein as if set forth in full.*

283.  For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

284.  For purposes of this Count, "Defendants" refers to all named Defendants.

285.  Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

286.  Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.4, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

287.  Violations of constitutional and statutory rights are *per se* injuries and which, in this case, result in criminal liability of the City and its officials, agents and employees.

288.  Enforcement of this Ordinance will have a chilling effect on the otherwise lawful right to sell, transfer and possess lawful firearms.

51

289.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs
will face criminal charging and prosecution, whereby Plaintiffs will be deprived
of their constitutional and statutory rights, in violation of Article 1, Section 21 of
the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

290.    If the injunction is granted, Plaintiffs and Defendants will remain in the
position they were prior to the wrongful conduct of the City enacting Ordinance
3-345.4.

291.    An injunction is the appropriate method to stay the enforcement of a law
enacted in contravention of state law and is the minimum action necessary.

292.    An injunction will not be adverse to the public interest, as it will enjoin
Defendant from enforcing a law enacted in contravention of Pennsylvania
Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order
granting relief as follows:

a.   Enjoining the Defendants from enforcing Ordinance 3-345.4;

b.   Requiring that Defendants repeal Ordinance 3-345.4;

c.   Directing that Defendants pay reasonable expenses, including attorney
fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

d.   Such other relief as the Court deems just and equitable.

## COUNT XV: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

293.    The foregoing paragraphs are incorporated herein as if set forth in full.

294.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

295.    For purposes of this Count, "Defendants" refers to all named Defendants.

296.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

297.    **3-345.4 - Lost and stolen firearms**, provides:

    A. Any person who is the owner of a firearm that is lost or stolen shall report the loss or theft of that firearm to an appropriate local law enforcement official within 48 hours after discovery of the loss or theft.

    B. For the purpose of this section, the term "firearm" shall be defined as any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt, or cylinder, whichever is applicable

298.    Ordinance 3-345.4 was promulgated, enacted, enforced and continues to be enforced by Defendants.

299.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

300.    Chief Carter declared that "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

301.    A present controversy exists,[17] as Defendants have publicly stated both

their intention to enforce the ordinance and their current prosecution of

individuals pursuant to the ordinance.

302.    The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania

Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

303.    Ordinance 3-345.4 is not limited to residents of, or individuals within, the

City, but rather encompasses all individuals throughout the Commonwealth and

even the United States.[18]

304.    Ordinance 3-345.4 is overbroad, as it applies to any individual in the

Commonwealth and even the United States.

305.    Plaintiffs fear prosecution if one of their firearms are lost and stolen based

on the statements of the Defendants.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

---

[17] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General
Assembly has conferred standing where a municipality either promulgates or enforces
"an ordinance, resolution, regulation, rule, practice or any other action."
[18] See, Ordinance 3-345.2 limiting the prohibited conduct to within the City. Accordingly,
if the City sought to limit Ordinance 3-345.1 to only occurrences within the City, it was
aware of how to draft such language.

54

a. Finding that Ordinance 3-345.4 violates Article 1, Section 21 of the Pennsylvania Constitution;

b. Declaring that Ordinance 3-345.4 is unlawful;

c. Enjoining Defendants from enforcing Ordinance 3-345.4;

d. Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

e. Such other relief as the Court deems just and equitable.

### COUNT XVI: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-345.4 – LOST AND STOLEN FIREARMS
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

306. The foregoing paragraphs are incorporated herein as if set forth in full.

307. For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

308. For purposes of this Count, "Defendants" refers to all named Defendants.

309. Plaintiffs' injuries are imminent and immediate and will not be adequately redressed through money damages.

310. Plaintiffs have a well-grounded fear of imminent prosecution for violation of Ordinance 3-345.4, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

311. Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

312.     Enforcement of this Ordinance will have a chilling effect on the otherwise lawful right to sell, transfer and possess lawful firearms.

313.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

314.     If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 3-345.4.

315.     An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

316.     An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.  Enjoining the Defendants from enforcing Ordinance 3-345.4;

b.  Requiring that Defendants repeal Ordinance 3-345.4;

c.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

d.  Such other relief as the Court deems just and equitable.

## COUNT XVII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-355.2 – EMERGENCY MEASURES
### (ALL PLAINTIFFS VS. ALL DEFENDANTS)

317.    The foregoing paragraphs are incorporated herein as if set forth in full.

318.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

319.    For purposes of this Count, "Defendants" refers to all named Defendants.

320.    Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

321.    **3-355.2 – Emergency measures**, provides:

A.  Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

(1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.

(2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

(3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B.  The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

(1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital

57

services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

(2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

(3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

(4) The closing of places of public assemblage with designated exceptions.

(5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

(6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

(8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

322.    Ordinance 3-355.2 was promulgated, enacted, enforced and continues to

be enforced by Defendants.

323.    Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

324.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The

city's not going to repeal its ordinances, because our police department feels that

they are in the public interest, and I do too." *See*, Exhibit B.

325.    Chief Carter declared that "officers regularly cite violators for reckless

discharge of guns in the city and when minors are caught in possession of

firearms." Id.

326.    A present controversy exists,[19] as Defendants have publicly stated both

their intention to enforce the ordinance and their current prosecution of

individuals pursuant to the ordinance.

327.    The current enforcement of this Ordinance has a chilling effect on the

Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania

Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

328.    Pursuant to 18 Pa.C.S. § 6107, the General Assembly has already

addressed the limitations on the carrying of firearms upon the public streets

during an emergency proclaimed by a State or municipal governmental executive,

and that statutory provision includes exceptions for self-defense and for

individuals with a license to carry firearms.

329.    Even if Ordinance 3-355.2 was not more restrictive than 18 Pa.C.S. §

6107, which it is, Defendants are prohibited from promulgating, enacting, or

enforcing any ordinance *consistent* with such law, pursuant to Article 1, Section

---

[19] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General
Assembly has conferred standing where a municipality either promulgates or enforces
"an ordinance, resolution, regulation, rule, practice or any other action."

21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120, and the Commonwealth

Court's holdings in <u>NRA v. City of Philadelphia</u> and <u>Clarke v. House of

Representatives</u>.

330.       Based on the statements of the Defendants, Plaintiffs fear prosecution for

carrying their firearm if an emergency were to be declared by the Mayor.

331.       Plaintiffs, pursuant to 18 Pa.C.S. § 6120, are "person[s] adversely

affected.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Finding that Ordinance 3-355.2 violates 18 Pa.C.S. § 6120;

    b.  Declaring that Ordinance 3-355.21 is unlawful;.

    c.  Enjoining Defendants from enforcing Ordinance 3-355.2;

    d.  Directing that Defendants pay reasonable expenses, including attorney

       fees and costs, pursuant to 18 Pa.C.S. § 6120; and

    e.  Such other relief as the Court deems just and equitable.

### COUNT XVIII: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 3-355.2 – EMERGENCY MEASURES
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

332.       The foregoing paragraphs are incorporated herein as if set forth in full.

333.       For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

334.       For purposes of this Count, "Defendants" refers to all named Defendants.

335.     Plaintiffs' injuries are imminent and immediate and will not be adequately
redressed through money damages.

336.     Plaintiffs have a well-grounded fear of imminent prosecution for violation
of Ordinance 3-355.2, as the City, by and through its representatives, Mayor
Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will
continue to be enforced.

337.     Violations of constitutional and statutory rights are *per se* injuries and
which, in this case, result in criminal liability of the City and its officials, agents
and employees.

338.     Enforcement of these ordinances will have a chilling effect on the
otherwise lawful right to sell, transfer and possess lawful firearms.

339.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs
will face criminal charging and prosecution, whereby Plaintiffs will be deprived
of their constitutional and statutory rights, in violation of Article 1, Section 21 of
the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

340.     If the injunction is granted, Plaintiffs and Defendants will remain in the
position they were in prior to the wrongful conduct of the City enacting
Ordinance 3-355.2.

341.     An injunction is the appropriate method to stay the enforcement of a law
enacted in contravention of state law and is the minimum action necessary.

342.     An injunction will not be adverse to the public interest, as it will enjoin
Defendant from enforcing a law enacted in contravention of Pennsylvania
Constitution and state law.

61

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a. Enjoining the Defendants from enforcing Ordinance 3-355.2;

    b. Requiring that Defendants repeal Ordinance 3-355.2;

    c. Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120(a.3); and

    d. Such other relief as the Court deems just and equitable.

## COUNT XIX: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 3-355.2 – EMERGENCY MEASURES
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

343.    The foregoing paragraphs are incorporated herein as if set forth in full.

344.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

345.    For purposes of this Count, "Defendants" refers to all named Defendants.

346.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

347.    **3-355.2 – Emergency measures**, provides:

    A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

        (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.

        (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

(3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

(1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

(2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

(3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

(4) The closing of places of public assemblage with designated exceptions.

(5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

(6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

63

(8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

348. Ordinances 3-355.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

349. Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

350. Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

351. Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

352. A present controversy exists,[20] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

353. The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120 and the binding precedent.

354. Pursuant to 18 Pa.C.S. § 6107, the General Assembly has already addressed the limitations on the carrying of firearms upon the public streets

---

[20] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

during an emergency proclaimed by a State or municipal governmental executive, and that statutory provision includes exceptions for self-defense and for individuals with a license to carry firearms.

355.    Even if Ordinance 3-355.2 was not more restrictive than 18 Pa.C.S. § 6107, which it is, Defendants are prohibited from promulgating, enacting, or enforcing any ordinance *consistent* with such law, pursuant to Article 1, Section 21 of the Pennsylvania Constitution, 18 Pa.C.S. § 6120, and the Commonwealth Court's holdings in NRA v. City of Philadelphia and Clarke v. House of Representatives, *supra.*

356.    Based on the statements of the Defendants, Plaintiffs fear prosecution for carrying their firearm if an emergency were to be declared by the Mayor.


**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

   a.  Finding that Ordinance 3-355.2 violates Article 1, Section 21 of the Pennsylvania Constitution;

   b.  Declaring that Ordinance 3-355.2 is unlawful;

   c.  Enjoining Defendants from enforcing Ordinance 3-355.2;

   d.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

   e.  Such other relief as the Court deems just and equitable.

65

**COUNT XX: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE
PENNSYLVANIA CONSTITUTION –
ORDINANCE 3-355.2 – EMERGENCY MEASURES**
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

357.     The foregoing paragraphs are incorporated herein as if set forth in full.

358.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

359.     For purposes of this Count, "Defendants" refers to all named Defendants.

360.     Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

361.     Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 3-355.2, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will

continue to be enforced.

362.     Violations of constitutional and statutory rights are *per se* injuries and, in

this case, result in criminal liability of the City and its officials, agents and

employees.

363.     Enforcement of these ordinances will have a chilling effect on the

otherwise lawful right to sell, transfer and possess lawful firearms.

364.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs

will face criminal charging and prosecution; whereby, Plaintiffs will be deprived

of their constitutional and statutory rights, in violation of Article 1, Section 21 of

the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

365.     If the injunction is granted, Plaintiffs and Defendants will remain in the

position they were in prior to the wrongful conduct of the City enacting

Ordinance 3-345.1.

366.    An injunction is the appropriate method to stay the enforcement of a law

enacted in contravention of state law and is the minimum action necessary.

367.    An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.


**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

      a.  Enjoining the Defendants from enforcing Ordinance 3-355.2;

      b.  Requiring that Defendants repeal Ordinance 3-355.2;

      c.  Directing that Defendants pay reasonable expenses, including attorney

         fees and costs; and

      d.  Such other relief as the Court deems just and equitable.


### COUNT XXI: DECLARATORY RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 3-355.2 – EMERGENCY MEASURES
*(ALL PLAINTIFFS V. ALL DEFENDANTS)*

368.    The foregoing paragraphs are incorporated herein as if set forth in full.

369.    For purposes of this Count, "Plaintiff" refers to all named Plaintiffs.

370.    For purposes of this Count, "Defendants" refers to all named Defendants.

371.    **3-355.2 – Emergency measures**, provides:

    A.  Whenever the Mayor declares that a state of emergency exists, the
       following emergency prohibitions shall thereupon be in effect during
       the period of said emergency and throughout the City:

(1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.

(2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

(3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

(1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

(2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

(3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

(4) The closing of places of public assemblage with designated exceptions.

(5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

(6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

68

(7) The prohibition or limitation of the number of persons who
may gather or congregate upon the public highways or public
sidewalks or in any other public place, except only persons
who are awaiting transportation, engaging in recreational
activities at a usual and customary place or peaceably entering
or leaving buildings.

(8) The prohibition of the possession in a public place or park of
weapons, including but not limited to firearms, bows and
arrows, air rifles, slingshots, knives, razors, blackjacks, billy
clubs, or missiles of any kind

372.     42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for
redress, except that in any action brought against a judicial officer for an act
or omission taken in such officer's judicial capacity, injunctive relief shall not
be granted unless a declaratory decree was violated or declaratory relief was
unavailable. For the purposes of this section, any Act of Congress applicable
exclusively to the District of Columbia shall be considered to be a statute of
the District of Columbia.

373.     State courts, pursuant to the Supremacy Clause of Article VI of the U.S.

Constitution, have authority hear Section 1983 causes of action. Felder v. Casey,

487 U.S. 131 (1988).

374.     The U.S. Supreme Court has held that membership organizations may

bring a claim, in the absence of injury to itself, on behalf of its members, where at

least one member has been threatened with injury. Warth v. Seldin, 422 U.S. 490,

510-11 (1975).

375.     The U.S. Supreme Court in District of Columbia v. Heller, 554 U.S. 570,

628-30 (2008) declared, "the inherent right of self-defense has been central to the

Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute in violative of the Second Amendment.

376.   Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." Id. at 584.

377.   In McDonald v. City of Chicago, 561 U.S. 742 (2010), the U.S. Supreme Court would declare that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

378.   Ordinances 3-355.2 was promulgated, enacted, enforced and continues to be enforced by Defendants.

379.   Mayor Papenfuse declared to Penn Live reporter Christine Vendel, "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." See, Exhibit B.

380.   Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

381.   A present controversy exists,[21] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

---

[21] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

382.    Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

383.    Any statute or ordinance that "defeats the core lawful purpose of self

defense . . . is hence unconstitutional." Heller, 128 S.Ct. at 629.

384.    The current enforcement of this Ordinance has a chilling effect on the

Plaintiff's, and its members, otherwise lawful and constitutionally protected right

to keep and bear arms, including the right to self-defense.

385.    Based on the statements of the Defendants, Plaintiffs fear prosecution for

carrying their firearm if an emergency were to be declared by the Mayor.


**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

a.  Finding that Ordinance 3-355.2 violates the Second Amendment of the

U.S. Constitution;

b.  Declaring that Ordinance 3-355.2 is unlawful;

c.  Enjoining Defendants from enforcing Ordinance 3-355.2;

d.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

§ 1988, including attorney fees and costs; and

e.  Such other relief as the Court deems just and equitable.


**COUNT XXII: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE
UNITED STATES CONSTITUTION –
ORDINANCE 3-355.2 – EMERGENCY MEASURES**
*(ALL PLAINTIFFS V. ALL DEFENDANTS)*

386.    The foregoing paragraphs are incorporated herein as if set forth in full.

387.    For purposes of this Count, "Plaintiff" refers to all named Defendants.

71

388.    For purposes of this Count, "Defendants" refers to all named Defendants.

389.    Plaintiff's members' injuries are imminent and immediate and will not be adequately redressed through money damages.

390.    Plaintiff's members' have a well-grounded fear of imminent prosecution for violation of Ordinance 3-355.2, as the City, by and through its representatives, Mayor Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

391.    Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

392.    The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful and constitutionally protected right to keep and bear arms, including the right to self-defense.

393.    Ordinance 3-355.2 is overbroad, as it applies to any individual in the City.

394.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiff's members will face criminal charging and prosecution, whereby Plaintiff's members will be deprived of their constitutional rights, pursuant to the Second Amendment of the U.S. Constitution.

395.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 3-355.2.

396.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

397.     An injunction will not be adverse to the public interest, as it will enjoin

Defendant from enforcing a law enacted in contravention of Pennsylvania

Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.  Enjoining the Defendants from enforcing Ordinance 3-355.2;

    b.  Requiring that Defendants repeal Ordinance 3-355.2;

    c.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

       § 1988, including attorney fees and costs; and

    d.  Such other relief as the Court deems just and equitable.

### COUNT XXIII: DECLARATORY RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

398.     The foregoing paragraphs are incorporated herein as if set forth in full.

399.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

400.     For purposes of this Count, "Defendants" refers to all named Defendants.

401.     Plaintiffs may "have determined any question of . . . validity arising under

. . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other

legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

402.     **10-301.13 – Hunting, firearms and fishing**, provides:

    A.  No person shall hunt, trap or pursue wildlife in any park at any time,
       except in connection with bona fide recreational activities and with the
       approval of the Director by general or special order or rules or regulations.

73

B. No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

D. No person shall fish in Italian Lake.

403.   In Dillon, 83 A.3d 467 (Pa. Cmwlth. 2014), the Commonwealth Court *already held* that an identical ordinance of the City of Erie violated Article 1, Section 21 of the Pennsylvania Constitution and Section 6120.

404.   Ordinance 10-301.13 was promulgated, enacted, enforced and continues to be enforced by Defendants.

405.   Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

406.   Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

407.   A present controversy exists,[22] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

408.   The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer

---

[22] Pursuant to Section 6120(a.2), an actual controversy need not exist, *as the General Assembly has conferred standing where a municipality either promulgates or enforces* "an ordinance, resolution, regulation, rule, practice or any other action."

and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their

constitutionally protected rights to self-defense and to hunt.

409.    Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for

self-defense or hunting.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

   a.  Finding that Ordinance 10-301.13 violates 18 Pa.C.S. § 6120;

   b.  Declaring that Ordinance 10-301.13 is unlawful;

   c.  Enjoining Defendants from enforcing Ordinance 10-301.13;

   d.  Directing that Defendants pay reasonable expenses, pursuant to 18 Pa.C.S.

       § 6120(a.3), including attorney fees and costs; and

   e.  Such other relief as the Court deems just and equitable.

## COUNT XXIV: INJUNCTIVE RELIEF – 18 PA.C.S. § 6120 – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
*(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

410.    The foregoing paragraphs are incorporated herein as if set forth in full.

411.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

412.    For purposes of this Count, "Defendants" refers to all named Defendants.

413.    Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

414.    Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 10-301.13, as the City, by and through its representatives, Mayor

75

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

415.     Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

416.     The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

417.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

418.     If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 10-301.13.

419.     An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

420.     An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

76

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

    a. Enjoining the Defendants from enforcing Ordinance 10-301.13;

    b. Requiring that Defendants repeal Ordinance 10-301.13;

    c. Directing that Defendants pay reasonable expenses, including attorney fees and costs, pursuant to 18 Pa.C.S. § 6120; and

    d. Such other relief as the Court deems just and equitable.

## COUNT XXVI: DECLARATORY RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

421.    The foregoing paragraphs are incorporated herein as if set forth in full.

422.    For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

423.    For purposes of this Count, "Defendants" refers to all named Defendants.

424.    Plaintiffs may "have determined any question of . . . validity arising under . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder" in accordance with 42 Pa.C.S.A. § 7533.

425.    **10-301.13 – Hunting, firearms and fishing**, provides:

    A. No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

    B. No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

   C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

   D. No person shall fish in Italian Lake.

426.    In Dillon, 83 A.3d 467 (Pa. Cmwlth. 2014), the Commonwealth Court *already held* that an identical ordinance of the City of Erie violated Article 1, Section 21 of the Pennsylvania Constitution and Section 6120.

427.    Ordinance 10-301.13 was promulgated, enacted, enforced and continues to be enforced by Defendants.

428.    Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

429.    Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

430.    A present controversy exists,[23] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

431.    The current enforcement of this Ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

---

[23] Pursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces "an ordinance, resolution, regulation, rule, practice or any other action."

432.     Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for

self-defense or hunting.

**WHEREFORE**, *Plaintiffs respectfully request that this Honorable Court issue an Order*

granting relief as follows:

    a.  Finding that Ordinance 10-301.13 violates Article 1, Section 21 of the

       Pennsylvania Constitution;

    b.  Declaring that Ordinance 10-301.13 is unlawful;

    c.  Enjoining Defendants from enforcing Ordinance 10-301.13;

    d.  Directing that Defendants pay reasonable expenses, including attorney

       fees and costs; and

    e.  Such other relief as the Court deems just and equitable.

## COUNT XXVII: INJUNCTIVE RELIEF – ARTICLE 1, SECTION 21 OF THE PENNSYLVANIA CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
### *(ALL PLAINTIFFS VS. ALL DEFENDANTS)*

433.     The foregoing paragraphs are incorporated herein as if set forth in full.

434.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

435.     For purposes of this Count, "Defendants" refers to all named Defendants.

436.     Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

437.     *Plaintiffs have a well-grounded fear of imminent prosecution for violation*

of Ordinance 10-301.13, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

438.     Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

439.     *The current enforcement of this ordinance has a chilling effect on the* Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

440.     Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional and statutory rights, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Sections 5301 and 6120 of the Crimes Code.

441.     If the injunction is granted, Plaintiffs and Defendants will remain in the position they were prior to the wrongful conduct of the City enacting Ordinance 10-301.13.

442.     An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

443.     An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

  a.  Enjoining the Defendants from enforcing Ordinance 10-301.13;

  b.  Requiring that Defendants repeal Ordinance 10-301.13;

  c.  Directing that Defendants pay reasonable expenses, including attorney fees and costs; and

  d.  Such other relief as the Court deems just and equitable.

## COUNT XXVIII: DECLARATORY RELIEF – SECOND AMENDMENT OF THE UNITED STATES CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
*(ALL PLAINTIFFS V. ALL DEFENDANTS)*

444.   The foregoing paragraphs are incorporated herein as if set forth in full.

445.   For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

446.   For purposes of this Count, "Defendants" refers to all named Defendants.

447.   **10-301.13 – Hunting, firearms and fishing**, provides:

  A.  No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

  B.  No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

  C.  No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

  D.  No person shall fish in Italian Lake.

448.     Ordinance 10-301.13 was promulgated, enacted, enforced and continues to be enforced by Defendants.

449.     Mayor Papenfuse declared to Penn Live reporter Christine Vendel: "The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too." *See*, Exhibit B.

450.     Chief Carter declared that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." Id.

451.     A present controversy exists,[24] as Defendants have publicly stated both their intention to enforce the ordinance and their current prosecution of individuals pursuant to the ordinance.

452.     42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

453.     State courts, pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, have authority hear Section 1983 causes of action. Felder v. Casey, 487 U.S. 131 (1988).

---

[24] *See*, Fn 2.

454.    The U.S. Supreme Court has held that membership organizations may bring a claim, in the absence of injury to itself, on behalf of its members, where at least one member has been threatened with injury. _Warth v. Seldin_, 422 U.S. 490, 510-11 (1975).

455.    The U.S. Supreme Court in _District of Columbia v. Heller_, 554 U.S. 570, 628-30 (2008) declared, "the inherent right of self-defense has been central to the Second Amendment right," that a prohibition on the "core lawful purpose of self-defense" is unconstitutional and that the "nonexistence of a self-defense exception" in a statute in violative of the Second Amendment.

456.    Thus, any statute or ordinance that "defeats the core lawful purpose of self defense . . . is hence unconstitutional." _Heller_, 128 S.Ct. at 629.

457.    Further, the Court defined "bear arms" as "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." _Id._ at 584.

458.    In _McDonald v. City of Chicago_, 561 U.S. 742 (2010), the U.S. Supreme Court would declare that the Second Amendment applies to the States through the Fourteenth Amendment of the U.S. Constitution.

459.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

460.     Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for

Plaintiffs' constitutionally protected right to self-defense or hunting.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue an Order

granting relief as follows:

    a.   Finding that Ordinance 10-301.13 violates the Second Amendment of the

      U.S. Constitution;

    b.   Declaring that Ordinance 10-301.13 is unlawful;

    c.   Enjoining Defendants from enforcing Ordinance 10-301.13;

    d.   Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C.

      § 1988, including attorney fees and costs; and

    e.   Such other relief as the Court deems just and equitable

## COUNT XXIX: INJUNCTIVE RELIEF – SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION – ORDINANCE 10-301.13 – HUNTING, FIREARMS AND FISHING
(ALL PLAINTIFFS V. ALL DEFENDANTS)

461.     The foregoing paragraphs are incorporated herein as if set forth in full.

462.     For purposes of this Count, "Plaintiffs" refers to all named Plaintiffs.

463.     For purposes of this Count, "Defendants" refers to all named Defendants.

464.     Plaintiffs' injuries are imminent and immediate and will not be adequately

redressed through money damages.

465.     Plaintiffs have a well-grounded fear of imminent prosecution for violation

of Ordinance 10-301.13, as the City, by and through its representatives, Mayor

Papenfuse and Chief Carter, has publicly stated that Ordinance is being and will continue to be enforced.

466.    Violations of constitutional and statutory rights are *per se* injuries and, in this case, result in criminal liability of the City and its officials, agents and employees.

467.    The current enforcement of this ordinance has a chilling effect on the Plaintiffs' otherwise lawful, and constitutionally protected, right to sell, transfer and possess firearms, in violation of 18 Pa.C.S. § 6120, as well as their constitutionally protected rights to self-defense and to hunt.

468.    Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for Plaintiffs' constitutionally protected right to self-defense or hunting.

469.    Ordinance 10-301.13 is overbroad, as it fails to provide any exceptions for private or commercially owned firing ranges.

470.    Greater injury would result to Plaintiffs than to Defendants, as Plaintiffs will face criminal charging and prosecution, whereby Plaintiffs will be deprived of their constitutional rights, pursuant to the Second Amendment of the U.S. Constitution.

471.    If the injunction is granted, Plaintiffs and Defendants will remain in the position they were in prior to the wrongful conduct of the City enacting Ordinance 10-301.13.

472.    An injunction is the appropriate method to stay the enforcement of a law enacted in contravention of state law and is the minimum action necessary.

473.    An injunction will not be adverse to the public interest, as it will enjoin Defendant from enforcing a law enacted in contravention of Pennsylvania Constitution and state law.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue an Order granting relief as follows:

a.  Enjoining the Defendants from enforcing Ordinance 10-301.13;

b.  Requiring that Defendants repeal Ordinance 10-301.13;

c.  Directing that Defendants pay reasonable expenses, pursuant to 42 U.S.C. § 1988, including attorney fees and costs; and

d.  Such other relief as the Court deems just and equitable.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that judgment be entered against the Defendants as follows:

a.  Declaring that Defendant's actions in promulgating, enacting and enforcing the Ordinances were contrary to Article 1, Section 21 of the Pennsylvania Constitution and 18 Pa.C.S. § 6120 and thus are null and void;

b.  Declaring that Ordinances violate the Second Amendment of the US Constitution;

c.  Award damages to Plaintiffs pursuant to 18 Pa.C.S. § 6120 and 42 U.S.C. § 1983.

86

d.   Permanently enjoining Defendants, including all officials, agents and

employees, and their successors, as follows:

i.    Enjoining Defendants from enforcing the Ordinances in any way;

ii.    Requiring Defendants repeal the Ordinances; and

iii.    Enjoining Defendant from implementing any other ordinance, law,

or rule that regulates the legal use, possession, or transfer of

firearms;

e.   Awarding Plaintiffs reasonable expenses, including attorney fees and

costs, pursuant to 18 PA.C.S. § 6120 and 42 U.S.C. § 1988; and

f.   Awarding Plaintiffs any additional or further relief this court finds

appropriate, equitable, or just.

Respectfully Submitted,

Joshua Prince, Esq.
Attorney ID No. 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

## Verification

I, Kim Stolfer, President of Firearm Owners Against Crime verify that I am authorized to make this Verification on behalf of Firearm Owners Against Crime and that all the information contained in the foregoing is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.


January 15, 2015
_____                     _____
Date                                             Kim Stolfer, President
                                                 Firearm Owners Against Crime

## Verification

I, Kim Stolfer, verify that I am the Petitioner named in the foregoing and that all the information contained therein is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

January 15, 2015

Date

Kim Stolfer

## Verification

I, Joshua Prince, am Counsel for the Plaintiffs, Firearm Owners Against Crime, Kim
Stolfer, Joshua First, and Howard A. Bullock. The signatures of Joshua First and Howard
A. Bullock were not available for filing of this Complaint. I verified all statement
verbally with Joshua First and Howard A. Bullock. I verify that the statements made in
this Complaint are true and correct. I understand that false statements herein are made
subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to
authorities.


____1/15/15____
Date

_____
Joshua Prince, Esq.

# Exhibit A

COMMONWEALTH OF PENNSYLVANIA
**OFFICE OF ATTORNEY GENERAL**
HARRISBURG, PA 17120

TOM CORBETT
ATTORNEY GENERAL

16TH FLOOR
STRAWBERRY SQUARE
HARRISBURG, PA 11120
(717) 787-3381

August 24, 2009

The Honorable Shawn C. Wagner
Adams County Office of the District Attorney
Adams County Courthouse
111-117 Baltimore Street
Gettysburg, PA 17325

    *Re*    *Local Ordinances Concerning Firearms*

Dear District Attorney Wagner:

    Recently, my office has received a number of inquiries about the enactment of local ordinances pertaining to the use, possession or acquisition of firearms. These inquiries have chiefly concerned the authority of a political subdivision to legislate in this regard, and the related question of whether an adopted ordinance is legally enforceable. I am writing to share the position that my office has taken because your office, too, may be confronted with these issues and may find this information helpful.

    Any review of this issue must, of course, begin with an examination of the Commonwealth's statutory law to determine what, if anything, it provides with respect to a political subdivision's ability to legislate on this subject. Our General Assembly has addressed this matter by enacting, as part of the Crimes Code, the provisions found in 18 Pa.C.S. § 6120 (Limitation on the regulation of firearms and ammunition), which contain this express prohibition: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." § 6120(a). As used in this statute, "firearms" has, with one exception, the same meaning as in 18 Pa.C.S. § 5515 (Prohibiting of paramilitary training): "Any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon."[1]

    In the more than thirty-five years since the enactment of § 6120(a), Pennsylvania's courts, including its Supreme Court, have uniformly interpreted its provisions to preempt local governments from legislating with respect to the ownership, use, possession or transportation of firearms. *See, e.g., Schneck v. City of Philadelphia*, 383 A.2d 227 (Pa. Cmwlth. 1978)(striking down a Philadelphia ordinance that regulated the acquisition and transfer of firearms). In

---

[1] Air rifles are not "firearms" for purposes of § 6120(a). *See* § 6120(b)(incorporating definition found in 18 Pa.C.S. § 6304). An "air rifle" is: "Any air gun, air pistol, spring gun, spring pistol, B-B gun or any implement that is not a firearm which impels a pellet of any kind with a force that can reasonably be expected to cause bodily harm." It does not include paintball guns or markers. § 6304(g).

The Honorable Shawn C. Wagner August 24, 2009
Page 2 of 4

*Schneck,* the Commonwealth Court, sitting en *banc,* held that §6120(a) "clearly preempts local governments from regulating the lawful ownership, possession and transportation of firearms ...." It declared the ordinance to be invalid and unenforceable.

Nearly two decades later, in *Ortiz v. Commonwealth,* 681 A.2d 152 (Pa. 1996), our Supreme Court provided further guidance when it considered ordinances banning certain types of assault weapons passed by the cities of Philadelphia and Pittsburgh. Although both cities are home rule municipalities, and as such, each "may exercise any power or perform any function not denied by [the Pennsylvania] Constitution, by its home rule charter or by the General Assembly at any time," PA. CONST. art. IX, § 2, the court explained that, in the area of firearms, the General Assembly has, by enacting §6120(a), acted affirmatively to prohibit local regulation of the ownership, possession, use or transfer of firearms, thus denying all municipalities, including those which operate under a home rule charter, the authority to legislate in this regard. 681 A.2d at 155. The court *in Ortiz* also stressed that "[b]ecause the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern ... Thus, regulation of firearms is a matter of concern in all of Pennsylvania ... and the General Assembly, not city councils, is the proper forum for the imposition of such regulation." *Id.* at 156.

Given this straightforward explication of Pennsylvania law by its highest court, it is, and continues to be, my understanding that any effort by a municipality to legislate in a way that affects the ownership, use, possession, transfer or transportation of a firearm is not legitimate. On those occasions when my office's input has been sought, we have communicated this. Rulings to date in ongoing cases involving this issue support that conclusion.

The issue of firearms-related preemption is currently being litigated in three cases pending in the state appellate courts. All of the cases arise from the enactment of ordinances in Philadelphia. In *Clarke, et al. v. House of Representatives, et al.,* 957 A.2d 361 (Pa. Cmwlth. 2008) ("*Clarke I*"), two members of Philadelphia City Council filed suit in the Commonwealth Court against both houses of the General Assembly seeking a declaratory judgment that seven ordinances, dealing with firearms passed by Philadelphia City Council and signed by the Mayor in May of 2007, were legal and enforceable.[2] In an en banc ruling, Commonwealth Court

---

2 The seven ordinances provided as follows:

**Bill 040117-A** limits handgun purchases to one per month and prohibits straw purchases and sales. **Bill 060700** mandates the reporting of lost or stolen firearms. **Bill 040136-A** requires a license in order to acquire a firearm within Philadelphia or bring a firearm into Philadelphia. **Bill 040137** requires the annual renewal of a gun license. **Bill 040312** states that a firearm can be confiscated from someone posing a risk of harm. **Bill 040315** prohibits the possession or transfer of assault weapons. **Bill 040118-A** requires that any person selling ammunition report the purchase and the purchaser to the Police Department.

957 A.2d at 362 (emphasis added).

The Honorable Shawn C. Wagner August 24, 2009
Page 3 of 4

sustained preliminary objections to the petition for review and dismissed the action on the basis it did not state a claim as to which relief could be granted. The court concluded that the ordinances were "not materially different from those presented in *Schneck* and *Ortiz,*" and were therefore likewise preempted by §6120(a). The Council members have appealed to the Pennsylvania Supreme Court. Disposition of that appeal, which is docketed at No. 74 MAP 2008, is pending.

Commonwealth Court has addressed the preemption question even more recently in *National Rifle Association, et al. v. City of Philadelphia, et al.* ("NRA"),____A.2d____2009   WL 1692390 (Pa. Cmwlth. 06-18-09). That case involved a challenge to five ordinances passed by Philadelphia City Council in April of 2008.[3] The court of common pleas determined, as a threshold matter, that the plaintiffs did not have standing to challenge three of the ordinances, specifically, the "imminent danger," "protection from abuse" and "lost or stolen gun" ordinances.[4] The remaining two, the "straw purchaser" and "assault weapons" ordinances, it concluded, were preempted by §6120(a) and permanently enjoined city officials from enforcing them. The city appealed that ruling to Commonwealth Court which, in *an en banc* decision issued June 18, 2009, affirmed the lower court's ruling in all respects. A petition for allowance of appeal seeking review of Commonwealth Court's ruling was filed in the Pennsylvania Supreme Court on July 17, 2009. The case is docketed in that court at No. 399 EAL 2009.

The petitioners in *Clarke I* filed another suit in Commonwealth Court against the Commonwealth of Pennsylvania also challenging the 2008 ordinances. In that action, *Clarke, et al. v. Commonwealth of Pennsylvania,* No. 284 M.D. 2008 (Pa. Cmwlth.)("Clarke Ii"), my

---

[3] These five ordinances, the court said,

> can be summarized as follows: **Bill No. 080017, "Imminent Danger Ordinance,"** authorizes the temporary removal of firearms from persons found by the court, upon affidavit of two police officers or a district attorney, to pose a risk of imminent harm to themselves or others; **Bill No. 080018-A, "Protection From Abuse Ordinance,"** prohibits persons subject to an active protection from abuse order from acquiring or possessing firearms when such order provides for confiscation of the firearms; **Bill No. 080032-A, "Lost or Stolen Gun Ordinance,"** requires gun owners to report their lost or stolen firearms to law enforcement officials within twenty-four hours after discovery of the loss or theft; **Bill No. 080033, "Assault Weapons Ordinance,"** prohibits the possession, sale and transfer of certain offensive weapons, including assault weapons, as well as certain contraband accessories or ammunition; and finally, **Bill No. 080035-A, "Straw Purchaser Ordinance,"** prohibits any person when purchasing a handgun from acting as a straw purchaser and prohibits the purchase of more than one handgun within any thirty-day period, except for any person who is not a straw purchaser.

2009 WL 1692390, *1 (emphasis added).

[4] In its decision, the court of common pleas noted that although these three ordinances were not technically at issue in the case because of the lack of standing, it nevertheless felt the same reasoning would apply. In some media accounts of this decision and Commonwealth Court's affirmance, it was reported that these three ordinances had been "approved" by the courts. That is incorrect. Because of the lack of standing, the courts have never had jurisdiction to rule on these issues. If anything, the court of common pleas' remarks suggest a contrary outcome.

The Honorable Shawn C. Wagner August 24, 2009
Page 4 of 4

office, which represents the Commonwealth, filed preliminary objections seeking to dismiss the case on several grounds, including preemption. On December 3, 2008, Commonwealth Court sustained those objections and dismissed the case, based on its ruling in *Clarke 1*. An appeal to the Pennsylvania Supreme Court, where is it docketed at No. 92 MAP 2008, is pending.

Obviously, the Supreme Court's forthcoming decisions in *Clarke I and II*, and any decision it might issue in *NRA*, *if it* chooses to hear the case, will furnish further guidance on this subject. In our view, the existing body of law, and its consistent application of the principles of preemption, at very minimum, counsels great caution in dealing with locally-enacted ordinances which affect firearm use, ownership, possession and transportation. Given what the courts have said, we believe it would be appropriate to treat such enactments as invalid.

I hope that this discussion of this issue will be helpful to you. Please contact Amy Zapp, Deputy Attorney General, Special Litigation Section, at (717) 705-4487, if my office can be of further assistance.

Sincerely,

TOM CORBETT Attorney General

**Exhibit B**

Case 1:15-cv-00322-YK   Document 12-5   Filed 03/12/15   Page 237 of 406
Case 3:02-at-06000-UN   Document 171-1   Filed 02/13/15   Page 100 of 112

Harrisburg stands firm on gun regulations despite threat of lawsuit             http://blog.pennlive.com/midstate_impact/print.html?entry=/20...



# Harrisburg stands firm on gun regulations despite threat of lawsuit

stolen guns.jpg
Harrisburg Police Chief Tom Carter last month displayed two of the 35 guns Harrisburg police recovered after a home burglary in Allison Hill where thieves stole 50 guns. The gun in the foreground is a .50-caliber. The other is a .357 Magnum.

**Christine Vendel | cvendel@pennlive.com By Christine Vendel | cvendel@pennlive.com
Email the author | Follow on Twitter**
on December 29, 2014 at 9:15 AM, updated January 13, 2015 at 2:43 PM

● **UPDATE: Harrisburg faces first legal challenge to gun ordinances**

A showdown over firearms ordinances in the city of Harrisburg has begun.

Four Pennsylvania gun owner groups have notified Harrisburg they plan to sue the cash-strapped capital city under a controversial new state law that gives them standing to challenge the existence of local gun ordinances.

The law, which the National Rifle Association has called "the strongest firearms preemption statute in the country," also allows successful plaintiffs to force municipalities to pay their legal fees, expert witness fees, all court costs and any compensation for lost income.

The law takes effect Jan. 5 and expands a longstanding general rule in the statutes that the state is responsible for gun regulations.

A four-page, double-sided letter from attorney Joshua Prince to Harrisburg's city solicitor dated Dec. 14 asks city officials to rescind five "unlawful" ordinances pertaining to firearms before the law's effective date or face legal action.

Specifically, the ordinances **forbid possession of guns by minors and discharging of guns in the city and in parks; mandate reporting of lost or stolen guns; and prohibit the sale or display of guns while the city is under a state of emergency**.

The groups that retained Prince are the American Gun Owners Alliance, Concerned Gun Owners of Pennsylvania, Firearm Owners Against Crime and Pennsylvanians for Self Protection. Prince noted that other

groups could also take legal action, and Harrisburg could be on the hook for their legal fees, too.

"It seems clear that there will be litigation over your enacted firearms regulations, which will result in substantial additional burdens on taxpayers," Prince wrote.

City officials are still researching their options, but Mayor Eric Papenfuse said the city doesn't plan to rescind its ordinances.

"The city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do too," Papenfuse said. "What responsible gun owner believes guns should be recklessly discharged within the city limits?"

Proponents of ordinances that require gun owners to report lost or stolen guns, for example, say its helpful to know and can help prevent illegal gun trafficking by identifying owners who repeatedly have guns "stolen" or repeatedly fail to report "stolen" guns.

Police Chief Tom Carter said officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms. But he could not recall an instance where anyone was cited under the lost/stolen ordinance.

Defending or losing a case under the expanded law, **known as Act 192**, could cause serious financial damage to Harrisburg, which is trying to claw its way out of near bankruptcy. Still, Papenfuse said the city will not cave to the demands of the gun owner groups.

"I support the responsible use of firearms," he said. "I actually see middle ground here. I feel there's a distinction between law-abiding gun owners and anyone that would want to sue the municipality about a reckless discharge ordinance, especially given the violence we have in the city. I think it's completely irresponsible."

Prince said the specific ordinances or their perceived value are "immaterial" because the "entire area of firearms law is pre-empted by the Legislature."

Allowing municipalities to create firearm ordinances results in a "patchwork" of ordinances that are difficult or impossible to track for lawful gun owners who might travel, Prince said.

He also said such ordinances are ineffective and duplicative since state laws exist to cover the same actions, he said.

Although Prince said the law is "crystal clear" on the state's pre-eminence, city officials disagreed, saying dozens of municipalities across the state have enacted ordinances over the past four decades because they

Harrisburg stands firm on gun regulations despite threat of lawsuit      http://blog.pennlive.com/midstate_impact/print.html?entry=/20...

believed they were legal in doing so.

In fact, Prince said his law firm has contacted about 90 municipalities that have enacted firearms ordinances. His law firm is based in Bechtelsville, in Berks County.

Some other Pennsylvania municipalities have already rescinded their gun ordinances, including Doylestown, or are considering doing so under pressure from their insurance carriers to avoid risk.

Harrisburg is self-insured.

Meanwhile, **the law's constitutionality has already been called into question in a lawsuit** filed last month by a group of legislators and the cities of Philadelphia, Lancaster and Pittsburgh. The plaintiffs take issue with the fact that the gun ordinance provisions were tacked onto a bill about metal thefts.

**The Attorney General has already said her office won't defend the law.**

Papenfuse said **Dauphin County's decision recently to grant $63,750 in hotel tax tourism money to the National Rifle Association,** because they run the annual Great American Outdoor Show, was particularly "irresponsible" given that the NRA pushed for the controversial new law that is now being used against Harrisburg.

"Why do they need subsidized," Papenfuse said of the NRA. "It's another example of irresponsible use of county hotel tax money. Within the context of the public safety crisis we have in this city, it's exactly what we don't need."

Dauphin County Commissioner Jeff Haste said the grant has historically been paid to the organizer of the event, for busing and transportation.

Haste said the Great American Outdoor Show in its first year generated more than $70 million in economic impact to the region and more than $200,000 in amusement taxes for the city.

"When the previous show producer canceled in 2013, our local economy -- hotels, restaurants, small businesses -- took a huge hit," Haste said. "The grant to attract and retain one of the country's biggest outdoor shows is money well spent."

**The NRA Foundation recently donated $50,000 to Harrisburg to buy a new police car,** which the city accepted. But no city officials appeared at the official check presentation, said Papenfuse, who was initially asked to attend.

"I said I only would come if they understood that I'd be speaking out against Act 192," he said. "I was not

Harrisburg stands firm on gun regulations despite threat of lawsuit          http://blog.pennlive.com/midstate_impact/print.html?entry=/20...

invited."

**UPDATE:** *This article was updated to include that the attorney's four-page letter to Harrisburg was double-sided; to provide a response from Jeff Haste; and to add comments from Police Chief Tom Carter*

© 2015 PennLive.com. All rights reserved.

# Exhibit C

Harrisburg mayor fires back against gun ordinance legal threat                    http://abc27.com/2015/01/05/harrisburg-mayor-fires-back-again...



# Harrisburg mayor fires back against gun ordinance legal threat

**By Dave Marcheskie**
Published: January 5, 2015, 5:13 pm

A new law took effect today and it could trigger a lawsuit against the City of Harrisburg over its gun ordinances.

Mayor Eric Papenfuse said he was not surprised when a detailed letter landed on his desk from Attorney Joshua Prince. The notice, on behalf of four Pennsylvania pro-gun groups, demanded Harrisburg rescind five of its gun-related city ordinances or else face a lawsuit.

Papenfuse was quick on the draw to defend the City. "These are simply regulations, which the city has had for years, which have helped people, not harmed people," he said.

Monday was the first day where gun advocate groups or individuals could challenge

Case 1:15-cv-00322-YK   Document 12-5   Filed 03/12/15   Page 243 of 406
Case 3:02-at-06000-UN   Document 171-1   Filed 02/13/15   Page 106 of 112

Harrisburg mayor fires back against gun ordinance legal threat       http://abc27.com/2015/01/05/harrisburg-mayor-fires-back-again...

municipalities on ordinances believed to be restricting gun rights. The law also states, that if a challenging party would win a legal battle, the municipality could be on the hook to pay courts costs and legal fees on both sides.

Abc27 laid out the arguments of Prince last week: http://abc27.com/2014/12/30/harrisburg-gun-laws-may-trigger-lawsuit/ (http://abc27.com/2014/12/30/harrisburg-gun-laws-may-trigger-lawsuit/)

So, when the cash-strapped capital city received such an ultimatum, the mayor quickly noted any legal fight could come at a hefty price. "It's a terrible law, the legislature shouldn't have passed it."

Papenfuse said he tried to reason with Prince and asked for an explanation why an ordinance that bans people from recklessly firing in city limits infringes upon a person's civil rights. "It says you can't walk out in the middle of the street and just start firing your gun," Papenfuse said. "Police do cite people for that on a regular basis. That is a sensible measure."

The mayor said the ordinance that mandates registered gun owners to report lost or stolen guns had a recent success story. A man reported nearly four dozen guns were stolen from his safe. Police reported they were able to track down nearly every single gun based upon the descriptions and serial numbers listed. Papenfuse said that is an example how the ordinance protects the public.

Although the group has the official go ahead to sue, Prince has yet to file a lawsuit. He told abc27 last week there was no strict deadline, but it would happen if municipalities did not comply.

The mayor said with bigger push backs coming from Pittsburgh and Philadelphia, he believes a judge may halt the new law. If not, he implored and challenged leadership at the National Rifle Association to tell other organizations to lower their legal weapons.

Papenfuse pointed to the recent donation from the NRA in December, when they gave $50,000 to purchase a new police cruiser. The mayor said he felt it was a conflict of interest given the threat of a lawsuit.

He said he believes in the right to legal gun ownership and self defense. But, he said there has to be a way where urban areas battling gun problems can protect its citizens without restricting rights. Papenfuse said Harrisburg's ordinances do just that.

"We're not looking for a battle, clearly it's the NRA looking for a battle," he said. "But, we're not simply going to repeal something that we feel is protecting public safety."

Harrisburg mayor fires back against gun ordinance legal threat          http://abc27.com/2015/01/05/harrisburg-mayor-fires-back-again...

**17 Comments     ABC27.com**                                        🌐 **Login** ˅

Sort by Best ˅                                          Share 📤  Favorite ★

 Join the discussion...

 **BryanS** · 8 days ago
If the mayor signed this into law, HE is a criminal. Its in the existing, and old, state law... no one but the duly elected legislature may make laws that relate to firearms.

If he thinks it is so great, why not pass laws against assault, battery, robbery, and murder? Oh... wait.. those are illegal and peple still do them. Usually, those who plead away gun charges.

Stop making laws that apply to the non-violent people who obey the law, and start cracking down on those that do evil deeds.

14 ˄ ˅ · Reply · Share ›

 **Leon Baker** · 8 days ago
I'm sure the gentleman only reported the theft of four dozen guns because of the city ordinance. Give me a break! Don't be whining Mr. Mayor when you are costing your city a bunch of money because of your ego...

12 ˄ ˅ · Reply · Share ›

 **Jay Silla** · 8 days ago
That's a real stretch by the mayor, claiming that a theft was reported only because of the local ordinance. MOST gun owners will report thefts promptly, if for no other reason than the hope of recovering their property.

12 ˄ ˅ · Reply · Share ›

 **TJ** · 8 days ago
If the mayor feels his ordinances are needed, then he should talk to his state representative to create them on a state level. That's what the new law is all about.

8 ˄ ˅ · Reply · Share ›

 **MadAsHellYankee** ↱ TJ · 8 days ago
It gives pre-emption teeth. The UFA already states that gun laws and regulations are done at the state level ONLY.

7 ˄ ˅ · Reply · Share ›

**ABC27.com**

© Copyright 2000 - 2015 Media General Communications Holdings, LLC. A Media General Company.

Powered by WordPress.com VIP (http://vip.wordpress.com/)

**IN THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | |
| KIM STOLFER; | : | **Jury Trial Demanded** |
| JOSHUA FIRST; and | : | |
| HOWARD BULLOCK, | : | |
| Plaintiffs, | : | Civil Action |
| vs. | : | |
| CITY OF HARRISBURG; | : | No. |
| MAYOR ERIC PAPENFUSE; and | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendant. | : | |

## PROOF OF SERVICE

I, Joshua Prince, Esq., hereby certify that I provided the Dauphin County Sheriff with true and correct copies of Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief From the City of Harrisburg's Illegal, Unenforceable and Unconstitutional Ordinances, to serve upon the following persons, on January 16, 2015:

City of Harrisburg
c/o Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Chief Thomas Carter
123 Walnut Street
PS-211
Harrisburg, PA 17101

Respectfully Submitted,
Prince Law Offices, P.C.

Joshua Prince, Esq.
Attorney for Petitioner
Attorney ID # 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
610-845-3803 ext 81114
Joshua@PrinceLaw.com

DATED: January 16, 2015

O

## IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | |
| KIM STOLFER; | : | **Jury Trial Demanded** |
| JOSHUA FIRST; and | : | |
| HOWARD BULLOCK, | : | |
| Plaintiffs, | : | Civil Action |
| vs. | : | |
| CITY OF HARRISBURG; | : | No. 2015-CV-354EQ |
| MAYOR ERIC PAPENFUSE; and | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendant. | : | |

## ORDER

AND NOW, this _____ day of _____, 2015, upon consideration of

Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief from the City of

Harrisburg's Illegal, Unenforceable and Unconstitutional Ordinances, it is hereby

**ORDERED** and **DECREED** that Court **FINDS**:

1.  The Pennsylvania General Assembly shall be the sole legislative body

    authorized to enact legislation regulating the use, possession, sale, transfer,

    transportation, discharge, and/or ownership of firearms;

2.  The Pennsylvania General Assembly shall be the sole legislative body

    authorized to enact legislation requiring the reporting of lost or stolen firearms

    to any authority or police department within this Commonwealth;

3. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13 are, therefore, preempted by State law;

4. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13, violate 18 PA.C.S. § 6120 and are therefore null and void;

5. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13, violate Article I, Section 21 of the Pennsylvania Constitution, and are therefore null and void;

6. Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13, violate the Second Amendment to the United States Constitution, and are therefore null and void;

7. The City of Harrisburg, its officials, agents, employees and successors are **ENJOINED** from enforcing Ordinances 3-345.1; 3-345.2; 3-345.4; 3-355.2; and 10-301.13;

8. The City of Harrisburg, its officials, agents, employees and successors are **ENJOINED** from enacting any future ordinances regulating firearms in any manner; and

9. Plaintiff's counsel is directed to file a quantum meruit request with the Court for attorney fees and costs, so that reasonable attorney fees and costs may be awarded pursuant to 18 Pa.C.S.A § 6120(a.3) and 42 U.S.C. § 1988.

BY THE COURT:

_____
                                                    J.

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Firearm Owners Against Crime, Kim Stolfer, and Joshua First

## DEFENDANTS
City of Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter

(b) County of Residence of First Listed Plaintiff    Dauphin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dauphin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Joshua Prince, Esquire - Prince Law Offices, P.C.
646 Lenape Rd., Bechtelsville, PA 19505
(610) 845-3803

Attorneys *(If Known)*
Joshua M. Autry, Esquire - Lavery Faherty
225 Market St., Ste. 304, PO Box 1245, Harrisburg, PA 17108
(717) 233-6633

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | | | |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983
Brief description of cause:
Second Amendment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE        DOCKET NUMBER

DATE
02/13/2015

SIGNATURE OF ATTORNEY OF RECORD
S/Joshua M. Autry, Esquire

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

**Certificate of Service**

I certify that on February 13, 2015, I served a true and correct copy of this filing

addressed as follows:

Joshua Prince, Esquire
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505

Aimee L. Paukovits
Legal Secretary to Frank Lavery, Esquire

# EXHIBIT

# "F"



# PROTHONOTARY

**Stephen E. Farina**
Prothonotary

Front & Market Streets
Harrisburg, PA  17101

(717) 780-6520



FILED
HARRISBURG, PA

FEB 20 2015

### County of Dauphin

February 20, 2015

MARY E. D'ANDREA
Clerk of Middle District Court
Room 1060
228 Walnut St
Harrisburg Pa  17101

PLEASE
RECEIPT
AND RETURN

Re Firearm Owners Against Crime, etal Vs. City of
Harrisburg, etal
NO. 2015 CV 354 EQ
Middle District  NO. 1:15-CV-322

Pursuant to the Petition for Removal of Civil Action
Filed in this office on February 13, 2015 to the United States
District Court for the Middle District of Pennsylvania.

I am, accordingly, sending you all the original papers
Herewith.
I will appreciate the return of the attached receipt
Addressed to the attention of Ms. Lisandra Garcia.

Very truly yours,

*Stephen E Farina*
Prothonotary

# EXHIBIT
# "G"

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | Jury Trial Demanded |
| KIM STOLFER; | : | |
| JOSHUA FIRST; AND | : | |
| HOWARD BULLOCK | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| CITY OF HARRISBURG; | : | |
| MAYOR PAPENFUSE; AND | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendants. | : | Docket No. 2015-CV-354-EQ |

To:     Chief Thomas Carter
        123 Walnut Street
        PS-211
        Harrisburg, PA 17101 (Defendant)

        AND

        Attorney Jessica Hosenpud
        225 Market Street, Suite 304
        Harrisburg, PA 17108

Date: February 19, 2015

### IMPORTANT NOTICE

**YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILE IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO
PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER
LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 NORTH FRONT STREET
HARRISBURG, PA 17101
717-232-7536

Joshua Prince, Esq.
Attorney ID: 306521
Prince Law Offices, P.C.
Attorney for the Plaintiffs
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

IN THE COURT OF COMMON PLEAS OF
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | Jury Trial Demanded |
| KIM STOLFER; | : | |
| JOSHUA FIRST; AND | : | |
| HOWARD BULLOCK | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| CITY OF HARRISBURG; | : | |
| MAYOR PAPENFUSE; AND | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendants. | : | Docket No. 2015-CV-354-EQ |

To:   City of Harrisburg
      c/o Mayor Eric Papenfuse
      The Rev. Martin Luther King, Jr. City Government Center
      Ten North Second Street
      Harrisburg, PA 17101 (Defendant)

      AND

      Attorney Jessica Hosenpud
      225 Market Street, Suite 304
      Harrisburg, PA 17108

Date: February 19, 2015

**IMPORTANT NOTICE**

**YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN
APPEARANCE PERSONALLY OR BY ATTORNEY AND FILE IN WRITING WITH
THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH
AGAINST YOU. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS
NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING
AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT
HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.
THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A
LAWYER.**

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 NORTH FRONT STREET
HARRISBURG, PA 17101
717-232-7536

Joshua Prince, Esq.
Attorney ID: 306521
Prince Law Offices, P.C.
Attorney for the Plaintiffs
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

FIREARM OWNERS AGAINST CRIME; :  Jury Trial Demanded
KIM STOLFER; :
JOSHUA FIRST; AND :
HOWARD BULLOCK :
     Plaintiffs, :
       :
       :
    v.    :   Civil Action
       :
CITY OF HARRISBURG; :
MAYOR PAPENFUSE; AND :
POLICE CHIEF THOMAS CARTER :
     Defendants. :  Docket No. 2015-CV-354-EQ

To: Mayor Eric Papenfuse
  The Rev. Martin Luther King, Jr. City Government Center
  Ten North Second Street
  Harrisburg, PA 17101 (Defendant)

  AND

  Attorney Jessica Hosenpud
  225 Market Street, Suite 304
  Harrisburg, PA 17108

Date: February 19, 2015

## IMPORTANT NOTICE

**YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN
APPEARANCE PERSONALLY OR BY ATTORNEY AND FILE IN WRITING WITH
THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH
AGAINST YOU. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS
NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING
AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT
HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.
THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A
LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**DAUPHIN COUNTY LAWYER REFERRAL SERVICE**
**213 NORTH FRONT STREET**
**HARRISBURG, PA 17101**
**717-232-7536**

Joshua Prince, Esq.
Attorney ID: 306521
Prince Law Offices, P.C.
Attorney for the Plaintiffs
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | Jury Trial Demanded |
| KIM STOLFER; | : | |
| JOSHUA FIRST; AND | : | |
| HOWARD BULLOCK | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| CITY OF HARRISBURG; | : | |
| MAYOR PAPENFUSE; AND | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendants. | : | Docket No. 2015-CV-354-EQ |

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on February 19, 2015, a true and correct copy of Plaintiffs' Notice of Praecipe to Enter Judgment by Default, pursuant to Pa.R.C.P. 237.5, was served via US Mail on the following, including an additional copy of each being served on Attorney Hosenpud, counsel of record:

Attorney Jessica Hosenpud
225 Market Street, Suite 304
Harrisburg, PA 17108

City of Harrisburg
c/o Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Mayor Eric Papenfuse
The Rev. Martin Luther King, Jr. City Government Center
Ten North Second Street
Harrisburg, PA 17101

Chief Thomas Carter
123 Walnut Street
PS-211
Harrisburg, PA 171011

Respectfully Submitted,

Joshua Prince, Esq.
Attorney ID: 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

Dated February 18, 2015

# EXHIBIT "H"



Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

2015 FEB 27  PM 4: 21

DAUPHIN COUNTY
PROTH.A

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | |
|     Plaintiffs | : | |
|       v. | : | Civil Action |
| City of Harrisburg, | : | 2015-CV-354-EQ |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
|     Defendants | : | |

### Defendants' Motion to Strike
### 10 Day Default Notices

All Defendants ask this Court to strike the 10 day notice issued after removal to federal court:

1.    Because Plaintiffs raise a Section 1983 claim asserting a violation of their constitutional rights, all Defendants removed this case to federal court on February 13, 2015.

2.    Plaintiffs thereafter served Defendants with a 10 day notice, dated February 19, 2015.

3.    This Court has already transferred the case and lacks jurisdiction.

4.    The federal removal statute prohibits this Court from taking further action:

> Promptly after the filing of such notice of removal of a
> civil action the defendant or defendants shall give written
> notice thereof to all adverse parties and shall file a copy of
> the notice with the clerk of such State court, which shall
> effect the removal and the State court shall proceed no
> further unless and until the case is remanded.

28 U.S.C. § 1446(d).

5.    Defendants immediately gave notice to Joshua Prince, Esquire, the attorney for all Plaintiffs, of removal, and Defendants filed a copy of the notice of removal with this Court. Accordingly, this Court "shall proceed no further."

6.    Plaintiffs argue in federal court in a motion to remand that removal was improper. Plaintiffs rely on a typographical error in the notice, in which Defendants failed to list Plaintiff Howard Bullock in the caption of the notice.

7.    Plaintiffs' argument falls flat. The notice of removal operates to remove the *entire* action. There is no such thing as a partial notice of removal.

8.    Further, the Defendants did not need to list any Plaintiffs other than Firearm Owners Against Crime, in that Defendants could have used "et al." for the rest.

9.    More importantly, this Court lacks jurisdiction to resolve Plaintiffs' arguments. If removal is improper (which Defendants deny), then the federal court will remand the case.

2

10.     Defendants do not believe that oral argument or an evidentiary hearing are necessary, but defer to this Court as to whether this Court would like testimony or oral argument on the matter.

11.     Discovery is not necessary for the resolution of this motion.

For these reasons, Defendants respectfully request this Honorable Court strike the 10 day notices.

Respectfully submitted,

Lavery Faherty

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

Dated: February 27, 2015

<u>Certification of Counsel</u>

Due to these time constraints, Defendants have e-mailed the text of the

motions to Plaintiffs' counsel today, but cannot wait for concurrence. Accordingly,

Defendants certify that they believe that Plaintiffs will oppose this motion.

Respectfully submitted,

Lavery Faherty

_____

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

Dated: February 27, 2015

4

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | |
| Plaintiffs | : | |
| v. | : | Civil Action |
| City of Harrisburg, | : | 2015-CV-354-EQ |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | |

## Order

AND NOW, this _____ day of _____, 2015, upon consideration of

the within Defendants' Motion to Strike 10 Day Default Notices, IT IS HEREBY

ORDERED AND DECREED THAT the Motion is GRANTED and that the 10 Day

Default Notices are hereby stricken.

By the Court:

_____

Dated: February ___, 2015

Distribution:

Joshua Prince, Esquire (Joshua@PrinceLaw.com)
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505)

Frank J. Lavery, Esquire (flavery@laverylaw.com)
Joshua M. Autry, Esquire (jautry@laverylaw.com)
225 Market Street, Suite 304, P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone); (717) 233-7003 (fax)

# EXHIBIT

# "I"

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | Jury Trial Demanded |
| KIM STOLFER; | : | |
| JOSHUA FIRST; AND | : | |
| HOWARD BULLOCK | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| CITY OF HARRISBURG; | : | |
| MAYOR ERIC PAPENFUSE; AND | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendants. | : | Docket No. 2015-CV-354-EQ |

### PRAECIPE FOR JUDGMENT

To the Prothonotary:

Please enter Judgment in the favor of Plaintiff Howard Bullock and against Defendants City of Harrisburg, Mayor Eric Papenfuse and Police Chief Thomas Carter in the above-captioned matter, as Defendants have failed to plead or otherwise defend in relation to Plaintiff Howard Bullock's claims.

Pursuant to Pa.R.Civ.P. 1037(b)(1), Plaintiff's current attorney fees are in the amount of $21,140.00, for which Plaintiff is entitled to judgment against Defendants.

Pursuant to Pa.R.Civ.P. 1037(b)(1), except for the current attorney fees, as the sum of the Plaintiff's damages are not a sum certain, those damages are to be assessed at trial, plus any additional attorney fees incurred.

Pursuant to Pa.R.Civ.P. 237.1, I certify that written notice of the intention to file this Praecipe was mailed to each of Defendants and Defendants' attorney of record, Jessica Hosenpud, on February 19, 2015, as evidenced by the attached Certificate of Service.

Pursuant to Pa.R.Civ.P. 237, I certify that a copy of this Praecipe has been provided to the Dauphin County Prothonotary, along with an US First Class, postage prepaid, envelope for service on Defendants' attorney of record, Jessica Hosenpud.

DATE: March 3, 2015

Joshua Prince, Esq.

Attorney ID: 306521
Prince Law Offices, P.C.
Attorney for the Plaintiffs
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

**AND NOW**, on this 3rd day of March, 2015, JUDGMENT IS ENTERED AS ABOVE.

_____

Dauphin County Prothonotary, Steve Farina

By: _____

Deputy

# EXHIBIT

# "J"

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | Jury Trial Demanded |
| KIM STOLFER; | : | |
| JOSHUA FIRST; AND | : | |
| HOWARD BULLOCK | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | Civil Action |
|  | : | |
| CITY OF HARRISBURG; | : | |
| MAYOR ERIC PAPENFUSE; AND | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendants. | : | Docket No. 2015-CV-354-EQ |

To: City of Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter, Defendants

You are hereby notified that on ___MAR 0 3 2015___, 2015, the following Judgment has been entered against you in the above-captioned case in relation to Plaintiff Howard Bullock.

*in the amount of $21,140.00 plus such additional sums as may be assessed at trial.*

DATE: __MAR 0 3 2015__                           _Stephen J. Harina_
                                                                   Prothonotary

I hereby certify that the name and address of the attorney of record to receive this notice is:

Attorney Jessica Hosenpud
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245

A City of Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter, Defendidos

Por este medio se le esta notificando que el ___MAR 0 3 2015___ de ___ del 2015, el/la siguiente Fallo ha sudo anotado en contra suya en el caso mencionado en el epigrafe.

FECHA: __MAR 0 3 2015__                           _Stephen J. Harina_
                                                                   Protonotario

Certifico que la siguiente direccion es la del defendida segun indicada en el certifcado de residencia:

Attorney Jessica Hosenpud
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245

# EXHIBIT
# "K"

3/4/15

FIREARM OWNERS AGAINST CRIME; KIM
STOLFER; JOSHUA FIRST AND HOWARD
BULLOCK,
               Plaintiffs
                  v.

CITY OF HARRISBURG, MAYOR ERIC
PAPENFUSE; AND POLICE CHIEF THOMAS
CARTER,
             Defendants

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
: NO.  2015 CV 00354 EQ
:
:
:
: CIVIL ACTION – LAW
:
:

## <u>SCHEDULING ORDER</u>

**AND NOW, March 3, 2015,** upon consideration of Defendant's Motion to Strike 10 Day

Default Notice and Plaintiff's response filed thereto,

IT IS HEREBY ORDERED that a status conference on the above matter is scheduled for

<u>**WITH THE ATTORNEYS ONLY**</u> for **March 17, 2015 at 2:00 P.M.** before the undersigned judge

**sitting in chambers, 3rd Floor**, Dauphin County Courthouse, 101 Market Street, Harrisburg, PA

17101.

                                   BY THE COURT:

                                   _____
                                   Andrew H. Dowling, Judge

Distribution on following page:

- 1 -

Distribution:
Joshua Prince, Esquire, PRINCE LAW OFFICES, P.C., 646 Lenape Road, Bechtelsville, PA 19505, (Counsel for Plaintiffs)
Frank Lavery, Jr., Esquire, Joshua M. Autry, Esquire, LAVERY FAHERTY PATTERSON, 225 Market Street, Suite 304, P.O. BOX 1245, Harrisburg, PA 17108-1245 (Counsel for Defendants)
Lili  Hagenbuch, Esquire, Deputy Court Administrator (Civil)

# EXHIBIT "L"

Joshua Prince, Esq.
Atty ID: 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville PA, 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

NOTICE TO PLEAD

You are hereby notified to file a
written response to the within Motion
to Strike within twenty (20) days from
service hereof or a judgment may be
entered against you.

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime; | : | Jury Trial Demanded |
| Kim Stolfer; | : | |
| Joshua First; AND | : | |
| Howard Bullock | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| City of Harrisburg; | : | |
| Mayor Eric Papenfuse; AND | : | |
| Police Chief Thomas Carter | : | |
| | : | Docket No. 2015-CV-354-EQ |
| | : | |
| Defendants | : | |

## MOTION TO STRIKE DEFENDANTS' MOTION TO STRIKE
## 10 DAY DEFAULT NOTICES

Plaintiff Howard Bullock, by and through his counsel, Joshua Prince, Esq., and

Prince Law Offices, P.C., respectfully requests that this Honorable Court strike

Defendants' Motion to Strike Plaintiff's 10 Day Default Notices, and in support thereof,

avers the following:

1. Defendants removed the claims of Plaintiffs Firearm Owners Against Crime

   ["FOAC"], Kim Stolfer ["Mr. Stolfer"], and Joshua First ["Mr. First"] to the

United States District Court for the Middle District of Pennsylvania on February 13, 2015.

2. Defendants did not, however, remove Plaintiff Howard Bullock.

3. Defendants expressly enumerated the Plaintiffs whose claims they desired to remove to Federal Court.

4. Defendants state in their Motion to Strike Plaintiffs' 10 Day Default Notice, at ¶¶ 6-8, that the failure to name Howard Bullock in the removal filings was a "typographical error" and that Defendants were not required to name all of the Plaintiffs, as "the *entire* action" is removed. (Emphasis in original).

5. Defendants' error was not, however, "typographical" as Plaintiff Howard Bullock was not specified in the Notice of Removal or on the Middle District Civil Cover Sheet. A copy of the Civil Cover Sheet is attached hereto and incorporated herein as Exhibit A.

6. Further, even the Clerk of Court for the Middle District of Pennsylvania acknowledges that the only Plaintiffs involved in the removal were FOAC, Mr. Stolfer and Mr. First. A copy of the Civil Docket is attached hereto and incorporated herein as Exhibit B.

7. Additionally, on February 26, 2015, Dauphin County Prothonotary Steve Farina informed the undersigned that Plaintiff Howard Bullock's claims remain before the Dauphin County Court of Common Pleas.

8. Even if the Court were to consider, *arguendo*, Defendants' claim that it was a "typographical error", such does not constitute "good cause"; but rather,

constitutes a basis for Defendants to potentially file a malpractice claim against their counsel for any damages incurred due to such "typographical error."

9.  Furthermore, Defendants have never notified Plaintiff Howard Bullock that they sought to remove his claims, until their Motion to Strike, and he has continued to prosecute his claims in this Court.

10. Defendants are now precluded from removing Howard Bullock and his claims, pursuant to 28 U.S.C. § 1446.

11. Because his claims were not removed and are now barred from removal, this Honorable Court retains jurisdiction over his claims.

12. In addition, Defendants' move to strike a notice, rather than a pleading, which has no basis in the law.

13. Therefore, there is nothing to strike; Plaintiffs are merely providing the required notice of their intention to move for a default judgment.

14. If Defendants wish to challenge a default judgment in this matter, they must challenge an actual judgment or pleading, to the extent permitted by the Pennsylvania Rules of Civil Procedure, rather than the notice to file for default judgment.

15. Furthermore, Defendants' Motion to Strike lacks the requisite Notice to Plead, pursuant to Pa.R.Civ.P. 1026 and 1361.

16. Counsel for Plaintiff certifies that he contacted Attorney Joshua Autry for the Defendants regarding this Motion and Defendants contest

17. Due to the issues involved and the multiple pending motions, Plaintiff believes a hearing for argument on this Motion is necessary.

18. Discovery is unnecessary to resolve this Motion.

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court strike Defendants' Motion to Strike 10 Day Default Notices.

Respectfully submitted,

PRINCE LAW OFFICES, P.C.

Joshua Prince, Esq.
*Attorney for Plaintiff*

# EXHIBIT A

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Firearm Owners Against Crime, Kim Stolfer, and Joshua First | City of Harrisburg, Mayor Eric Papenfuse, and Police Chief Thomas Carter |

**(b)** County of Residence of First Listed Plaintiff    **Dauphin**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    **Dauphin**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joshua Prince, Esquire - Prince Law Offices, P.C.
646 Lenape Rd., Bechtelsville, PA 19505
(610) 845-3803

Attorneys *(If Known)*
Joshua M. Autry, Esquire - Lavery Faherty
225 Market St., Ste. 304, PO Box 1245, Harrisburg, PA 17108
(717) 233-6633

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | |    Corrupt Organizations |
|    Student Loans | ☐ 340 Marine |    Injury Product | | | ☐ 480 Consumer Credit |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |    Product Liability |    Leave Act | |    Act |
| |    Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |    Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |    or Defendant) |    Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |    Sentence | |    26 USC 7609 |    State Statutes |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other | ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983

Brief description of cause:
Second Amendment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/13/2015 | S/Joshua M. Autry, Esquire |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# EXHIBIT B

HBG

# United States District Court
## Middle District of Pennsylvania (Harrisburg)
### CIVIL DOCKET FOR CASE #: 1:15-cv-00322-YK

| | |
|---|---|
| Firearm Owners Against Crime et al v. City of Harrisburg et al | Date Filed: 02/13/2015 |
| Assigned to: Honorable Yvette Kane | Jury Demand: Plaintiff |
| Case in other court: Dauphin County Court of Common Pleas, 2015-CV-354 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Firearm Owners Against Crime**              represented by **Joshua G. Prince**
                                                              Prince Law Offices PC
                                                              646 Lenape Road
                                                              Bectelsville, PA 19505
                                                              610-845-3803
                                                              Email: joshua@princelaw.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kim Stolfer**                               represented by **Joshua G. Prince**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joshua First**                             represented by **Joshua G. Prince**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Harrisburg**                       represented by **Frank J. Lavery , Jr.**
                                                              Lavery Faherty
                                                              P.O. Box 1245
                                                              225 Market Street
                                                              Suite 304

Harrisburg, PA 17108-1245
717-233-6633
Fax: 17172337003
Email: flavery@laverylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua M. Autry**
Lavery Faherty
225 Market Street
Suite 304
Harrisburg, PA 17101
717-233-6633
Fax: 717-2337003
Email: jautry@laverylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mayor Eric Papenfuse**                     represented by   **Frank J. Lavery , Jr.**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Joshua M. Autry**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Police Chief Thomas Carter**               represented by   **Frank J. Lavery , Jr.**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Joshua M. Autry**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/13/2015 | 1 | NOTICE OF REMOVAL by Eric Papenfuse, Thomas Carter, City of Harrisburg from Dauphin County Court of Common Pleas, case number 2015. (Filing fee $ |

| | |
|---|---|
| | 400 receipt number -CV-354) filed by Eric Papenfuse, Thomas Carter, City of Harrisburg. (Attachments: # 1 Exhibit(s), # 2 Civil Cover Sheet)(pjr) (Entered: 02/13/2015) |

## PACER Service Center

### Transaction Receipt

02/20/2015 09:28:40

| PACER Login: | pr2639:3247884:0 | Client Code: | 34862 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:15-cv-00322-YK |
| Billable Pages: | 2 | Cost: | 0.20 |

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime; | : | Jury Trial Demanded |
| Kim Stolfer; | : | |
| Joshua First; AND | : | |
| Howard Bullock | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| City of Harrisburg; | : | |
| Mayor Eric Papenfuse; AND | : | |
| Police Chief Thomas Carter | : | |
| | : | Docket No. 2015-CV-354-EQ |
| Defendants | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2015, upon consideration of Defendants' Motion to Strike 10 Days Default Notice and Plaintiff's Motion to Strike Defendants' Motion to Strike 10 Days Default Notice, it is hereby **ORDERED AND DECREED** that Plaintiff's Motion to Strike is **GRANTED** and Defendants' Motion to Strike is **DENIED**.

By the Court:

_____

Distribution:

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Joshua@PrinceLaw.com

Frank J. Lavery, Esq.
Joshua M. Autry, Esq.
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
FLavery@LaveryLaw.com
JAutry@LaveryLaw.com

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; | : | Jury Trial Demanded |
| KIM STOLFER; | : | |
| JOSHUA FIRST; AND | : | |
| HOWARD BULLOCK | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| CITY OF HARRISBURG; | : | |
| MAYOR ERIC PAPENFUSE; AND | : | |
| POLICE CHIEF THOMAS CARTER | : | |
| Defendants. | : | Docket No. 2015-CV-354-EQ |

### CERTIFICATE OF SERVICE

I, Joshua Prince, Esq., hereby certify that I served a true and correct copy of Plaintiff's *Motion to Strike Defendants' Motion to Strike 10 Day Notices* upon the following persons in the manner indicated below, on March 3, 2015:

Attorney Jessica Hosenpud
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108

Respectfully Submitted,

Joshua Prince, Esq.
Attorney ID: 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

Dated March 3, 2015

# EXHIBIT "M"

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | |
| Plaintiffs | : | |
| v. | : | Civil Action |
| City of Harrisburg, | : | 2015-CV-354-EQ |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | |

<u>Order</u>

This Court hereby opens the default judgment.

By the Court:

_____

Judge Andrew H. Dowling

Dated: _____ ___, 2015

Distribution:

Joshua Prince, Esquire (<u>Joshua@PrinceLaw.com</u>)
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505
(610) 845-3803 (phone); (610) 845-3903 (fax)

Frank J. Lavery, Esquire (<u>flavery@laverylaw.com</u>)
Joshua M. Autry, Esquire (<u>jautry@laverylaw.com</u>)
225 Market Street, Suite 304, P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone); (717) 233-7003 (fax)

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

Firearm Owners Against Crime,    :    Jury Trial Demanded
Kim Stolfer, Joshua First, and    :
Howard Bullock,    :
        Plaintiffs    :
      v.    :    Civil Action
City of Harrisburg,    :    2015-CV-354-EQ
Mayor Eric Papenfuse, and    :
Police Chief Thomas Carter,    :
        Defendants    :

## Order

This Court hereby strikes the default judgment.

By the Court:

_____
Judge Andrew H. Dowling

Dated: _____ ___, 2015

Distribution:

Joshua Prince, Esquire (Joshua@PrinceLaw.com)
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505
(610) 845-3803 (phone); (610) 845-3903 (fax)

Frank J. Lavery, Esquire (flavery@laverylaw.com)
Joshua M. Autry, Esquire (jautry@laverylaw.com)
225 Market Street, Suite 304, P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone); (717) 233-7003 (fax)

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | |
| Plaintiffs | : | |
| v. | : | Civil Action |
| City of Harrisburg, | : | 2015-CV-354-EQ |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | |

<u>Order</u>

This Court hereby dismisses the Complaint.

By the Court:

_____

Judge Andrew H. Dowling

Dated: _____ ___, 2015

Distribution:

Joshua Prince, Esquire (<u>Joshua@PrinceLaw.com</u>)
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505
(610) 845-3803 (phone); (610) 845-3903 (fax)

Frank J. Lavery, Esquire (<u>flavery@laverylaw.com</u>)
Joshua M. Autry, Esquire (<u>jautry@laverylaw.com</u>)
225 Market Street, Suite 304, P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone); (717) 233-7003 (fax)

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | Judge Andrew H. Dowling |
|       Plaintiffs | : | |
|     v. | : | Civil Action |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | 2015-CV-354-EQ |
| Police Chief Thomas Carter, | : | |
|       Defendants | : | |

### Defendants' Petition to Open or Strike Default Judgment

All Defendants ask this Court to open or strike the default judgment:

1.    This Court should strike or open the default improperly entered by

Plaintiff Howard Bullock because it is void as a matter of law. 28 U.S.C. §1446 "has

been held to render post-removal proceedings in state court in the removed case

void *ab initio.*" *Polyplastics v. Transconex*, 713 F.2d 875, 880 (1st Cir. 1983) (citing

*E.D. Systems v. Southwestern Bell*, 674 F.2d 453, 458 (5th Cir.1982); *Arango v.*

*Guzman Travel Advisers*, 621 F.2d 1371, 1374, 1375 (5th Cir.1980); 1A J. Moore,

*Moore's Federal Practice* ¶ 0.168[3.–8—4] at 632 & n. 10). *See also Sweeney v.*

*Resolution Trust*, 16 F.3d 1, 6 (1st Cir. 1994); *Fischman v. Fischman*, 470 F. Supp.

980, 984 (E.D. Pa. 1979).

2.    Ignoring the established federal law that removal brings an entire

*action* to federal court, not merely certain claims or parties, Howard Bullock

obtained a default from the Prothonotary before this Court could rule on

Defendants' outstanding motion to strike the 10 day notices.

3.    The Prothonotary lacked jurisdiction to mark upon the record a default

on a case already removed and transferred to federal court.

<u>Procedural History</u>

4.    Plaintiffs filed suit in this Court on January 16th against Harrisburg,

Mayor Papenfuse, and Chief Carter.

5.    Kim Stolfer and Plaintiffs' attorney Joshua Prince verified the

Complaint, but Howard Bullock and Joshua First did not.

6.    The Complaint was served on the Defendants on January 20th.

7.    The notices of service contain an incomplete caption and do not list

Mayor Papenfuse or Chief Carter as defendants.

8.    On January 28th, defense counsel entered their appearance for

Defendants, but inadvertently left Howard Bullock off the caption.

9.    On January 29th, Bullock and First submitted verifications, which they

mailed to Defendants directly but not to defense counsel.

10.    Defendants timely filed a notice of removal to the U.S. District Court

for the Middle District of Pennsylvania with the Complaint attached on February

13th, and promptly served notice on this Court that same day with the notice of removal and Complaint attached.

11.    Defendants served Plaintiffs' counsel by mail and through the District Court's electronic filing system.

12.    As with the entries of appearance, defense counsel mistakenly left Bullock out of the caption of these documents and the civil cover sheet.

13.    Defendants timely moved to dismiss the case in the District Court on February 20th, accidentally without mentioning Bullock as with the prior filings.

14.    This Court transferred the case that same day.

15.    Defense counsel did not learn of this error until Plaintiffs filed their motion to remand on February 22nd in federal court, arguing that Bullock's claims—identical to the other individual Plaintiffs—remain in this Court due to defense counsel's clerical error.

16.    As the District Court Clerk's direction, Plaintiffs refiled the brief in support of remand as a separate entry the following day.

17.    Defense counsel received 10 day notices of Bullock's intent to seek a default in this Court on February 24th.

18.    On February 27th, Defendants filed a motion to strike the 10 day notices, arguing that the entire case was removed in spite of counsel's error and that this Court lacks jurisdiction.

19.    That night, Plaintiffs filed a motion for default in the District Court.

3

20.    At the District Court Clerk's direction, Plaintiffs filed a proposed order on March 2nd.

21.    On March 3rd, Bullock filed a praecipe for default in this Court, and the Prothonotary entered a judgment against Defendants as a pure ministerial act.

22.    That day, Bullock also filed a motion to strike Defendants' motion to strike.[1]

23.    This Court has scheduled a conference on the matter for March 17th.

24.    On March 6th, Defendants filed a brief in the District Court in support of their motion to dismiss.

25.    On March 9th, Defendants filed a brief in the District Court in opposition to Plaintiffs' motion to remand.

---

[1] Bullock erroneously argues that a motion to strike requires a "notice to plead." A motion is not a *pleading. See* Pa.R.C.P. 1017(a) (defining pleading as complaint, answer, reply, counter-reply, and preliminary objection). "If the Rules of Civil Procedure had intended such a result, it could have been drafted into the Rules by those responsible for such an implementation. This has not occurred." *McCormick v. Allegheny Gen. Hosp.*, 527 A.2d 1028, 1032 (Pa. Super. 1987).

The Superior Court rejected any requirement that non-pleadings contain a notice to plead:

> Equibank argues, however, that a petition is not a pleading as defined in Pa.R.C.P. 1017(a), so that Rule 1026(a), which applies only to pleadings, does not require that a petition to fix the value of real estate be endorsed with a notice to plead. Equibank is correct, of course. A petition is not included in the pleadings listed in Rule 1017(a), and the courts have consistently held that papers not listed in Rule 1017 are not "pleadings" within the meaning of the Pennsylvania Rules of Civil Procedure. Thus, Rule 1026(a) does not require a petition to be endorsed with a notice to plead, as the rule applies only to "pleadings."

*Equibank v. Duboy*, 532 A.2d 889, 890 (Pa. Super. 1987) (citations omitted).

4

## Default is not appropriate.

26.    "[D]efault judgments are generally not favored." *City of Phila. v. David J. Lane Adver.*, 33 A.3d 674, 677 (Pa. Commw. 2011).

27.    "The purpose of allowing defaults to be taken is to prevent a dilatory defendant from impeding the plaintiff in establishing his claim; it is not intended as a means for a plaintiff to quickly obtain judgment without the difficulties of litigation." *Attix v. Lehman*, 925 A.2d 864, 867 (Pa. Super. 2007).

28.    Courts "are reluctant to let stand a default judgment where a litigant has taken steps that he reasonably believes will result in the protection of his interests." *Sprouse v. Kline-Styer-McCann*, 352 A.2d 134, 136 (Pa. Super. 1975).

29.    In this case, default makes little sense.

30.    Defendants have acted to preserve their rights at every step.

31.    Our Supreme Court prohibits defaults in cases like this:

> Form must not be exalted over substance, and procedural errors must not be dispositive where there has been substantial compliance with the rules and no prejudice has resulted from purely technical error....
>
> The Rules of Civil Procedure are not ends in themselves, but are designed to insure the fair, orderly and expeditious administration of justice; pleading is not intended to be a game of skill in which "one misstep by counsel may be decisive to the outcome."

*In re Tax Claim Bureau*, 436 A.2d 144, 146 (Pa. 1981). The court has also written:

> It has been our policy to overlook such procedural errors when a party has substantially complied with the requirements of the rule and no prejudice would result. "Procedural rules are not ends in themselves, but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of

> substantive objectives." ... The niceties of procedure and
> pleading make fine intelligence games for lawyers but
> should never be used to deny ultimate justice. This is the
> reason for our modern approach to rules of civil
> procedure.

*Pomerantz v. Goldstein*, 387 A.2d 1280, 1281 (Pa. 1978).

32.   Under these precedents, it is clear that the default cannot stand.

33.   The Commonwealth Court has explained the difference between

opening and striking a default:

> To obtain relief from the entry of a default judgment, the
> law provides two distinct remedies. An aggrieved party
> may file a petition to strike a default judgment or a
> petition to open a default judgment, but the remedies are
> not interchangeable. *Cintas Corp. v. Lee's Cleaning Serv.,
> Inc.*, 549 Pa. 84, 700 A.2d 915 (1997). A petition to strike
> operates as a demurrer to the record and does not involve
> the discretion of the court. *Id.* As such, the court may only
> look to the facts of record at the time the judgment was
> entered to decide if the record supports the judgment. *Id.*
> A petition to strike can only be granted if a fatal defect
> appears on the face of the record. *Id.*
>
> In contrast, a petition to open judgment is an appeal to
> the court's equitable powers. *Id.* ... To be successful, a
> petition to open a judgment must meet the following test:
> the petition must be promptly filed; the failure to appear
> or file a timely answer must be excused; and, the party
> seeking relief must show a meritorious defense. *Id.* A
> party seeking to challenge the factual averments in the
> record at the time the judgment was entered must file a
> petition to open the judgment. *Id.*

*City of Phila. Water Revenue Bureau v. Towanda Properties*, 976 A.2d 1244, 1247

(Pa. Commw. 2009).

34.   Our appellate courts have elaborated on the standard for striking a

judgment: "A petition to strike a judgment is a common law proceeding which

6

operates as a demurrer to the record." *Wells Fargo Bank v. Lupori*, 8 A.3d 919, 921

(Pa. Super. 2010). "Our Courts have held that if the complaint fails to state a cause

of action, the default judgment entered thereon should be stricken." *Calesnick v.*

*Redevelopment Auth. of City of Phila.*, 529 A.2d 528, 530 (Pa. Super. 1987). "Even

though a judgment is entered, as here, if the face of the record shows the same to be

baseless, the court should strike it off." *Dept. of Envtl. Resources v. Allias*, 341 A.2d

226, 228 (Pa. Commw. 1975) (citing *Constable v. Andrews*, 146 A. 899 (Pa. 1929)).

    35.    On the other hand, to open a judgment, the party need only show *merit*

to the defense. "In order to state a meritorious defense, a petitioner need only allege

a defense that entitles him to a judgment in his favor, if proven at trial." *Boatin v.*

*Miller*, 955 A.2d 424, 429 (Pa. Super. 2008).

    36.    In this case, this Court can either strike or open the judgment

    37.    This Court can also strike or open the judgment because the Complaint

fails to state a cause of action or open the judgment because (1) Defendants raise

meritorious defenses, and (2) any error in their response was excusable.

    38.    Defendants raise these defenses in the attached Preliminary

Objections (Ex. 1).

    39.    This Court can also strike or open the judgment due to technical

failures by Bullock.

    40.    Finally, this Court can strike or open the judgment because this Court

lacks jurisdiction over a removed case.

7

Strike Judgment:
Demurrer No. 1: U.S. and Pennsylvania Constitution

41.     As explained below, this Court lacks any jurisdiction to reach the

merits on this case because Defendants have removed this case to federal court.

This demurrer is raised purely in the alternative of the jurisdictional arguments, in

case this Court reached the merits over Defendants' objection.

42.     As explained in the attached brief in support of Defendants' motion to

dismiss (Ex. 2), none of the ordinances infringe on Defendants' right to bear arms

under either the U.S. or Pennsylvania Constitution.

43.     Notably, Bullock does not challenge the minors ordinance under either

Constitution as he lacks standing to do so.

44.     In any event, both state and federal law contain child gun bans. 18

U.S.C. §922(x)(2)(A); 18 Pa.C.S. §6110.1.

45.     There can be no doubt child gun bans are longstanding. Harrisburg

enacted its child gun ban sixty-four years ago.

46.     As to the discharge ordinance, it does not prevent self-defense in any

way and the U.S. Supreme Court even defended such ordinances in *D.C. v. Heller*,

554 U.S. 570, 633-34 (2008).

47.     Likewise, gun bans in parks are longstanding dating back to at least

1897 when Yellowstone National Park banned guns in parks, 1936 when the

8

National Park Service banned guns,[2] and 1971 when the Department of Conservation and Natural Resources banned guns in parks (17 Pa.Code §11.215).

48.    In addition, the emergency ordinance is temporary, discretionary, used sparingly, and longstanding—approaching a half century in age.

49.    It is a reasonable restriction that protects the public from looting during emergencies.

50.    Finally, the reporting requirement does not restrict self-defense in any way.

## Strike Judgment - Demurrer No. 2: Standing

51.    As explained below, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This demurrer is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

52.    As explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), Plaintiffs cannot bring overbreadth challenges: they must demonstrate that the ordinances have or will imminently limit *their* rights.

53.    Plaintiffs cannot do so.

54.    They do not have any expectation of loss or theft of a gun or an imminent emergency.

---

[2] While the federal government lifted the park gun ban in 2010, the policy shift does not alter the historical support for park gun bans that existed without controversy until political opposition in the modern era.

9

55.     Plaintiffs must follow the state gun ban in parks and the state emergency gun ban, and any child members must follow state and federal gun bans.

56.     FOAC, a political action committee, suffers an additional problem: a PAC cannot spend funds on anything not election related, 25 Pa.C.S. §3254.1, §3241(d), including this lawsuit.

57.     Plaintiffs' claims of automatic standing under Act 192 of 2014 do not apply to their claims under the U.S. and Pennsylvania Constitutions.

58.     As to the preemption claim, Plaintiffs simply claim automatic standing under Act 192, which Harrisburg contests.

59.     Plaintiffs must know this, which explains why they waited until after Act 192's 2015 effective date to challenge ordinances enacted in 1951, 1969, 1971, 1991, and 2009.

60.     As to the preemption claim, Plaintiffs simply claim automatic standing under Act 192, which Harrisburg contests.

61.     Plaintiffs must know this, which explains why they waited until after Act 192's 2015 effective date to challenge ordinances enacted in 1951, 1969, 1971, 1991, and 2009.

62.     As explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), Act 192 violates the single subject and original purpose rules in Article III, Sections 1 and 3, of Pennsylvania's Constitution.

63.     Legislators tacked these standing and attorney fee provisions onto a bill about mental health records (HB 1243), which died in committee.

10

64. At the tail-end of the legislative session, legislators took that bill and attached it *verbatim* to a bill about theft of copper wire (HB 80).

65. After changing the original purposes of both HB 80 and 1243, the final bill has at least three subjects: firearms, mental health records, and theft of copper wire.

66. In addition, Act 192 stretches standing beyond its breaking point.

67. A verdict for uninjured plaintiffs violates the very essence of standings.

68. This is even worse when the lawsuits are against municipalities, and, in turn, the taxpayers.

69. Act 192 allows unaffected gun owners to sue municipalities they have never even entered and never will enter.

70. This directly contradicts the general requirement that plaintiffs prove liability and *harm*.

### Strike Judgment -
### Demurrer No. 3: Preemption

71. As explained below, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This demurrer is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

72. As explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), the Uniform Firearms Act does not preempt the ordinances.

73. The Third Class City Code gives Harrisburg explicit authority to prevent discharge and concealed carry:

11

> To the extent permitted by Federal and other State law,
> council may regulate, prohibit and prevent the discharge
> of guns and prevent the carrying of concealed deadly
> weapons.

53 Pa.C.S. §37423. *See* 53 Pa.C.S. §3703.

74. The legislature just reenacted the Code just last year.[3]

75. Further, the UFA does not preempt this ordinance because the UFA

also prohibits unsupervised children from having guns in public. 18 Pa.C.S.

§6110.1.

76. The UFA only preempts ordinances that regulate the *lawful* possession

of firearms:

> No county, municipality or township may in any manner
> regulate the *lawful* ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition
> components when carried or transported *for purposes not
> prohibited by the laws of this Commonwealth.*

18 Pa.C.S. § 6120(a).

77. Because it is illegal for unsupervised children to carry guns in public

areas, the ordinance is not preempted.

78. The statute is clear:

> [T]he County may not enact an ordinance which regulates
> firearm possession *if* the ordinance would make the
> otherwise lawful possession of a firearm *unlawful.* Thus,
> if the County's ordinance pertains only to the unlawful
> possession of firearms, i.e., possession "prohibited by the
> laws of this Commonwealth," then section 6120(a) of the
> Crimes Code does not preempt the County's ordinance.

*Minich v. Cnty. of Jefferson*, 869 A.2d 1141, 1143 (Pa.Commw. 2005)(emphasis in

---

[3] This Court agreed in the related case of *U.S. Law Shield* that Harrisburg can ban
discharge.

12

original)(*Minich I*).[4]

79.    Because it is illegal for unsupervised children to carry guns in public

areas, the ordinance is not preempted.[5]

80.    The requirement that persons report a lost or stolen also targets the

*unlawful* transfer of firearms (theft and straw purchases).

81.    Accordingly, the UFA does not apply. The UFA has two elements:

> No county, municipality or township may in any manner
> regulate
>
> [1] the lawful ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition
> components
>
> [2] *when carried or transported for purposes not
> prohibited by the laws of this Commonwealth.*

18 Pa.C.S. §6120(a).

82.    A person who loses a firearm clearly does not possess it any longer. So

whoever has the gun now, it is not "carried or transported for purposes not

prohibited by the laws of this Commonwealth."[6]

---

[4] Oddly, the Commonwealth Court reached the opposite interpretation in
*NRA v. City of Phila.*, 977 A.2d 78, 82 (Pa. Commw. 2009)(*en banc*). The
Commonwealth Court felt bound by the decision in *Ortiz v. Com.*, 681 A.2d 152
(1996), but the statutory language is clear and *Ortiz* did not even address whether
municipalities can restrict *unlawful* possession.

[5] This Court disagreed in *U.S. Law Shield* because of the UFA's hunting exception.
Plaintiffs do not demonstrate that Harrisburg enforces the ordinance in a way to
restrict hunting. Further, Harrisburg respectfully submits that it's statutory
authority to prohibit discharge gives it authority to prohibit hunting as well and
negate the exception.

[6] This Court disagreed with this analysis in *U.S. Law Shield* although this Court
ultimately did not resolve whether the UFA preempts the ordinance. Harrisburg
respectfully submits that the second prong of the statute compels a different

13

83.   Regarding the park and emergency ordinances, as mentioned, the Third Class City Code permits Harrisburg to "*prevent* discharge" and "*prevent* the carrying of concealed deadly weapons." 53 Pa.C.S. §37423.

84.   The only question left is whether Harrisburg can also ban *open* carry in parks or during emergencies.

85.   The open carry bans works to *prevent* discharge.

86.   Further, as to parks, the Third Class City Code authorizes Harrisburg to regulate all conduct in its property and parks, and DCNR bans guns in parks.

87.   *Dillon* provides support even though the Court held that the UFA preempts Erie's park ban.

88.   The Court noted two valid issues that Erie did not raise:

> Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of [its] parks and playgrounds by the public generally...." It could be argued that the City may be empowered under that grant of power from the State to regulate the possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted pursuant to its general police powers. Similarly, Section 11.215 of the regulations of the Commonwealth's Department of Conservation and Natural Resources, 17 Pa.Code § 11.215, generally prohibits "[p]ossessing an uncased device, or uncasing a device, including a firearm, ... that is capable of discharging or propelling a projectile ..." in state parks, subject to a number of enumerated

result—requiring proof that the gun is (*present tense*) "carried or transported for purposes not prohibited by the laws of this Commonwealth."

exceptions.

*Dillon v. City of Erie*, 83 A.3d 467, at n.9 (Pa. Commw. 2014) (*en banc*).

89.     As *Dillon* notes, Harrisburg has authority to regulate guns on city

property *and* state regulations ban guns in parks anyway.

90.     Harrisburg's statutory authority to regulate its property has at least

two sources:

> In exercising its discretion to make decisions that further
> the public interest under terms it deems most beneficial
> to the city, council shall have the power and authority,
> subject to any restrictions, limitations or exceptions as set
> forth in this act, to do any of the following:
>
> (1) ...manage real and personal property.

53 Pa.C.S. §37402.1(a).

> The council of each city shall have power to enact, make,
> adopt, alter, modify, repeal and enforce in accordance
> with this act ordinances, resolutions, rules and
> regulations, not inconsistent with or restrained by the
> Constitution of Pennsylvania and laws of this
> Commonwealth, that are either of the following:
>
> (1) ...necessary for the proper management, care and
> control of the city... and the maintenance of the peace,
> good government, safety and welfare of the city...

53 Pa.C.S. §37435.

91.     The *Minich II* Court upheld courthouse gun bans due to similar grants

of authority:

> Section 509(a) of the County Code allows county
> commissioners to adopt ordinances regulating the affairs
> of a county. Section 509(c) of the County Code allows
> county commissioners to prescribe fines and penalties for
> violations of a "public safety" ordinance. 16 P.S. § 509(c).
> Here, the County ordinance regulates the affairs of the

> County, specifically the safety of members of the public
> who enter the Jefferson County Court House.
>
> Moreover, section 913(e) of the Crimes Code requires that
> each county make lockers available at a building
> containing a court facility for the temporary checking of
> firearms by persons legally carrying the firearms. 18
> Pa.C.S. § 913(e). The County ordinance simply
> implements this provision.

*Minich v. Cnty. of Jefferson*, 919 A.2d 356, 361 (Pa. Commw. 2007)(*en banc*)(*Minich II*).

92.    The Third Class City Code explicitly authorizes Harrisburg's concealed carry ban.

93.    The open carry ban manages city property, and cares for and maintains the peace, safety, and welfare.

94.    Finally, the open carry park ban only restricts *unlawful* conduct due to the DCNR gun ban. 17 Pa.Code § 11.215.[7]

95.    In addition, the state funds for Harrisburg's parks come with a legal duty to comply with DCNR regulations.

96.    Turning to the emergency ordinance, the Third Class City Code specifically allows the Mayor during an emergency to prohibit "any other activities as the mayor reasonably believes would cause a clear and present danger to the preservation of life, health, property or the public peace." 53 Pa.C.S. §36203(e)(3)(iv),(vi).

97.    The emergency ordinance implements this grants of authority,

---

[7] This Court in *U.S. Law Shield* found that the UFA preempts this ordinance. It is respectfully submitted that the DCNR park regulation and Third Class City Code compel a different result.

allowing the Mayor to determine whether open carry during an emergency endangers the public.

98.     Further, Harrisburg only regulates unlawful conduct because the UFA bans carrying guns during declared emergencies. 18 Pa.C.S. §6107.[8]

Strike Judgment -
Demurrer No. 4: Individual Liability

99.     As explained below, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This demurrer is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

100.    Plaintiffs have not demonstrated that the Mayor or Chief have harmed them or will.

101.    Both took office after enactment of every single ordinance, and neither has authority to repeal the ordinances.

102.    In addition, as explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), the Mayor and Chief are entitled to immunity under federal and state law.

103.    Under federal law, the Mayor and Chief are entitled to qualified immunity because the law is not clearly established.

104.    Under state law, they receive absolute immunity as high officials.

---

[8] This Court in *U.S. Law Shield* found that the UFA preempts this ordinance based upon the UFA's concealed carry exception. It is respectfully submitted that Harrisburg's explicit authorization to ban concealed carry gives it authority to negate the exception.

## Strike Judgment -
### Demurrer No. 5: Damages

105.   As explained below, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This demurrer is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

106.   Plaintiffs cannot recover damages for the Pennsylvania Constitution claim. *Jones v. City of Phila.*, 890 A.2d 1188, 1208 & n.33 (Pa.Commw. 2006).

## Strike Judgment -
### Technical Defect No. 1: Jurisdiction

107.   The Prothonotary lacked jurisdiction to enter judgment.

108.   A claim under 42 U.S.C. §1983 clearly asserts a federal question, which gives the U.S. District Court original jurisdiction. 28 U.S.C. §1331 and §1441(a).

109.   Further, Section 1343(a)(3) and (4) give original jurisdiction to the U.S. District Court over civil rights actions specifically.

110.   The District Court has supplemental jurisdiction over related state law claims. 28 U.S.C.A. §1367(a).

111.   As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), the inclusion of non-removable claims or parties does not defeat removal; rather, the District Court determines whether to remand non-removable claims or parties. 28 U.S.C. §1367(c) and §1441(c).

112.   Defendants removed the entire case.

18

113.   Plaintiffs claim that Bullock's lawsuit is still before this Court.

114.   Plaintiffs cite no authority for their claim that a defendant can *partially* remove a case.

115.   As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), removal brought the entire case to federal court. It is for the U.S. District Court, not this Court, to determine whether removal was proper and whether complete or partial remand should occur.

116.   Section 1441(a) speaks of removing "any civil action," not claims or parties. Section 1441(c)(2) permits the District Court to sever off and remand any non-removable "claims." But event Subsection (c) is clear that, where an action contains non-removable "claims," removal still operates to bring "the entire action" to federal court unless and until the District Court severs and remands non-removable claims.

117.   Defendants notified Plaintiffs and this Court.

118.   Section 1446 requires that Defendants file a notice of removal with the District Court and promptly notify this Court and Plaintiffs.

119.   Defendants notified Plaintiffs' counsel and this Court the very day of removal, and this Court transferred the entire case on February 20th.

120.   The alleged defect does not remove federal jurisdiction.

121.   As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), procedural defects in a notice of removal do not deprive the District Court of jurisdiction.

122.   Further, Plaintiffs have suffered no prejudice.

123.   They received notice the very day of removal.

124.   Defendants, on the other hand, will suffer if deprived of a federal forum due to a clerical error by their counsel.

125.   The federal removal notice clearly informed Plaintiffs of the intent to remove the entire action.

126.   The opening indicates that "Defendants hereby remove this case."

127.   The notice refers to "Plaintiffs" collectively and to "a federal question," "a claim under 42 U.S.C. §1983," and "this action."

128.   The removal notice attaches the entire Complaint as Exhibit A.

129.   At no point does the removal notice express any intent to bifurcate this case into two.

130.   Further, the notice to this Court directs, "The state court shall proceed no further."

131.   The District Court can excuse the caption and cover sheet errors.

132.   As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), no federal rule of procedure requires a notice of removal, which is not a pleading, to contain an accurate caption. *See* FRCP 10(a) (requiring *complaints* to name all the parties and requiring other *pleadings* to at least use *et. al.* or similar group references).

133.   Nor does any federal rule of procedure require a cover sheet.

134. In fact, as explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), the cover sheet instructions only direct their use for *complaints* and further state that the information on a cover sheet has no effect in law.

135. For the same reason, information on the federal docket—purely administrative information pulled from the cover sheet—does not have any force or effect in law.

136. Finally, Defendants will seek leave to amend the caption and cover sheet before the U.S. District Court.[9]

Strike Judgment -
Technical Defect No. 2: Defendants' Response

137. As explained above, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This defect is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

---

[9]    Defendants note that Plaintiffs did not seek concurrence as required by Middle District Local Rule 7.1 before filing their motion to remand. While ordinarily defense counsel would not bring such matters to the Court's attention, Plaintiffs' failure prejudiced Defendants. Notice of the caption error would have given Defendants an opportunity to cure the defect.

In fact, on Wednesday, February 18th, Attorney Autry spoke to Attorney Prince seeking concurrence in Defendants' motion to dismiss (filed Friday, February 20th). On that call, Attorney Prince did not mention Plaintiffs' then-forthcoming motion to remand (filed Sunday, February 22nd). If he had done so, Defendants could have amended the notice of removal without leave of court as the 30 day deadline to remove was Thursday, February 19th.

138.   As explained, This Court can strike the judgment because the Complaint fails to state a claim. This Court can also strike the judgment for technical defects.

139.   Default was improper because Defendants filed entries of appearance, a notice of removal, a motion to dismiss in the District Court, and a motion to strike the 10 day notices in this Court. *Kearney v. Hibner*, 2013 U.S. Dist. LEXIS 169775, at *4 (M.D. Pa. Dec. 2, 2013) (motion to dismiss is proper response).

140.   Because Bullock never demonstrated that Defendants failed to appear or respond, default is improper.

141.   Bullock cites no authority for his position that a defendants must appear *as to each plaintiff.*

142.   A defendant can file preliminary objections to a single claim by a single plaintiff.

143.   So too with a motion to dismiss in federal court.

144.   Further, Defendants filed a motion to dismiss as to all claims and there are no claims unique to Bullock.

145.   Plaintiffs argue that the notice was ineffective because of the caption error.

146.   However, the only pleading that must set forth the names of all parties is the *complaint.* Pa.R.C.P. 1018.

147.   Further, because a notice of removal is not a pleading, Rule 1018 does not require a caption at all. *Id.*

22

148. This Court can simply ignore the technical defect in the removal notice:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. 126.

149. Rule 128(a) further creates a presumption that "the Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable..."

150. In addition, this Court could also permit amendment: "A party, ... by leave of court, may at any time ... add a person as a party, correct the name of a party, or otherwise amend the pleading." Pa.R.C.P. 1033.

151. Accordingly, if this Court deems amendment necessary, it can simply open or strike the judgment and grant leave to amend. *See Com. ex rel. Specter v. Bauer*, 261 A.2d 573, 575 n.2 (Pa. 1970) ("As to captioning, even assuming the City Solicitor's contention is correct, such a trivial detail, easily correctable by amendment, hardly constitutes a reason to dismiss a complaint outright.").

### Strike Judgment -
### Technical Defect No. 3: Verification

152. As explained above, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This defect is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

23

153. Bullock did not verify the complaint originally as required by Pa.R.C.P. 1024(a).

154. The exception permitting a person to verify for a plaintiff only exists for plaintiffs outside this Court's jurisdiction. *See* 1024(c).

155. But the Complaint alleged that Bullock is a Dauphin County resident, rendering this exception unavailable.

156. Bullock's attempts to cure the Complaint's defect and to seek a default come with additional rule violations.

157. Bullock never served his praecipe to substitute verification on defense counsel.

158. Bullock's praecipe to substitute verification and praecipe to enter judgment do not leave three inches of space at the top, in violation of Pennsylvania Rule of Civil Procedure 204.1(3).[10]

159. Both praecipes are single-spaced, in violation of Pennsylvania Rule 204.1(4).

160. And Bullock's praecipes do not contain any contact information on the top left-hand corner in violation of Dauphin County Local Rule 205.2(a)(1)(j).

---

[10] Bullock's motion to strike Defendant's motion to strike the ten day notices suffers the same flaw. Bullock's motion to strike also lacks a proposed order as required by Dauphin County Local Rule 205.2(a)(3), and Bullock did not provide a *verbatim* copy of the motion to Defendants prior to filing as required by Local Rule 208.2(d).

### Strike Judgment -
### Technical Defect No. 4: Praecipe for Judgment

161.    As explained above, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This defect is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

162.    As explained, Bullock's praecipe for judgment suffers numerous flaws.

### Strike Judgment -
### Technical Defect No. 5: Attorney Information

163.    As explained above, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This defect is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

164.    The Complaint does not list Attorney Prince's e-mail address in the top left as required by Dauphin County Local Rule 205.2(a)(1)(j).

### Strike Judgment -
### Technical Defect No. 6: Returns of Service

165.    As explained above, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. This defect is raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

166.    The returns of service contain an inaccurate caption, listing the City of Harrisburg as the only defendant without "*et al.*" or other designation of additional defendants.

## Open Judgment -
### Promptness

167.   As explained above, this Court can open the judgment if Defendants promptly filed this petition, show excuse for their error, and raise meritorious defenses.

168.   Bullock obtained a default on March 3rd.

169.   Three days later (March 6th), Defendants' motion to dismiss brief was due in the District Court.

170.   Three days after that (March 9th), Defendants' brief in opposition to remand was due.

171.   Defense counsel has worked nights and over the weekend to prepare this petition as soon as possible.

172.   This petition, filed the week after default, is promptly filed.

## Open Judgment -
### Reasonable Excuse No. 1: Lack of Jurisdiction

173.   Defendants' actions are reasonably excused because they *did* respond.

174.   They removed the *entire* case to federal court, and the entire case *went* to federal court—Plaintiffs' Complaint and all.

175.   It was reasonable for Defendants to believe that this Court lacked jurisdiction after removal, even given Bullock's arguments that the caption error left his claims in this Court.

176.   It is for the District Court—not this Court—to decide whether this removal was proper.

## Open Judgment -
### Reasonable Excuse No. 2: Attorney Error

177.   The Pennsylvania Supreme Court has long held that attorney error should not justify a default judgment: "It seems a shame to impose a large liability upon the defendant because of the inexcusable neglect of his attorney, especially when plaintiff will not be prejudiced if he has a meritorious claim." *Stephens v. Bartholomew*, 220 A.2d 617, 618 (Pa. 1966).

178.   In such cases, "It is well settled that the power to open a default judgment entered as a result of mistake or oversight of counsel is frequently exercised where the petition is promptly filed and a reasonable excuse for the delay is presented." *Moyer v. Americana Mobile Homes*, 368 A.2d 802, 804 (Pa. Super. 1976). *See Dep't of Transp. v. Nemeth*, 442 A.2d 689, 691 (Pa. 1982) (law firm split up and attorney wrongly believed that another attorney would respond); *Johnson v. Yellow Cab*, 307 A.2d 423, 424 (Pa. Super. 1973) (new counsel wrongly assumed that responsive pleading had been filed); *Stephens*, 220 A.2d at 618 (counsel failed to read complaint in time to answer due to other business commitments); *Balk v. Ford Motor*, 285 A.2d 128 (1971) (insurance carrier lost court papers); *Fox v. Mellon*, 264 A.2d 623 (Pa. 1970) (claims manager wrongly assumed there was more time to respond).

179.   Defendants are entitled to rely on their attorneys. *Versak v. Washington*, 519 A.2d 438, 441 (Pa. Super. 1986).

180.   "Errors indicating an oversight by counsel are sufficient to explain entry of default judgment." *Id.* at 449.

27

181. As our Pennsylvania Supreme Court explained in setting aside a *non pros* based upon an attorney's error, "This is not a case where the Appellants engaged in dilatory tactics. There was in existence a live ongoing controversy as opposed to some dead issue merely cluttering up the dockets." *Jung v. St. Paul's Parish*, 560 A.2d 1356, 1359-60 (Pa. 1989).

182. Here, defense counsel—in all filings until Plaintiffs pointed out the error in their motion to remand—inadvertently left Bullock out of the caption.

183. Defendants should not be punished for this error of counsel.

### Open Judgment - Reasonable Excuse No. 3: Technical Defects

184. Defendants had reasonable excuse for not responding due to the technical deficiencies explained above by Plaintiffs as well as in the returns of service.

### Open Judgment - Meritorious Defenses

185. All of the defenses supported in support of striking the judgment for demurrer also support opening the judgment due to meritorious defenses.

186. As explained above, this Court lacks any jurisdiction to reach the merits on this case because Defendants have removed this case to federal court. All arguments for opening or striking the judgment other than jurisdiction are raised purely in the alternative of the jurisdictional arguments, in case this Court reached the merits over Defendants' objection.

28

## Conclusion

187.   By removing this case, the entire Complaint went to federal court, in which all Plaintiffs detail all claims and all parties. Bullock's argument that his claims remain in this Court is not supported by law.

188.   Defendants do not believe that oral argument or an evidentiary hearing are necessary, but defer to this Court as to whether this Court would like testimony or oral argument on the matter.

189.   Discovery is not necessary for the resolution of this petition.

190.   A request to open or strike a judgment is treated as a "petition." Pa.R.C.P. 206.1(a)(1).

For these reasons, Defendants respectfully request this Honorable Court open or strike the default judgment.

Respectfully submitted,

Lavery Law

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

Dated: March 12, 2015

29

# EXHIBIT 1

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Defendants

IN THE COURT OF COMMON PLEAS OF THE 12TH JUDICIAL DISTRICT
DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | Jury Trial Demanded |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | Judge Andrew H. Dowling |
| Plaintiffs | : | |
| v. | : | Civil Action |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | 2015-CV-354-EQ |
| Police Chief Thomas Carter, | : | |
| Defendants | : | |

<u>Proposed Defendants' Preliminary Objections</u>

All Defendants object to the Complaint as follows:

1.     For the reasons explained herein, Plaintiffs fail to set forth any sufficient claim for relief as required by Rule of Civil Procedure 1028(a)(4).

Procedural History

2.     Plaintiffs filed suit in this Court on January 16th against Harrisburg, Mayor Papenfuse, and Chief Carter.

3.     Kim Stolfer and Plaintiffs' attorney Joshua Prince verified the Complaint, but Howard Bullock and Joshua First did not.

4.     The Complaint was served on the Defendants on January 20th.

5.    The notices of service contain an incomplete caption and do not list Mayor Papenfuse or Chief Carter as defendants.

6.    On January 28th, defense counsel entered their appearance for Defendants, but inadvertently left Howard Bullock off the caption.

7.    On January 29th, Bullock and First submitted verifications, which they mailed to Defendants directly but not to defense counsel.

8.    Defendants timely filed a notice of removal to the U.S. District Court for the Middle District of Pennsylvania with the Complaint attached on February 13th, and promptly served notice on this Court that same day with the notice of removal and Complaint attached.

9.    Defendants served Plaintiffs' counsel by mail and through the District Court's electronic filing system.

10.    As with the entries of appearance, defense counsel mistakenly left Bullock out of the caption of these documents and the civil cover sheet.

11.    Defendants timely moved to dismiss the case in the District Court on February 20th, accidentally without mentioning Bullock as with the prior filings.

12.    This Court transferred the case that same day.

13.    Defense counsel did not learn of this error until Plaintiffs filed their motion to remand on February 22nd in federal court, arguing that Bullock's claims—identical to the other individual Plaintiffs—remain in this Court due to defense counsel's clerical error.

14.    As the District Court Clerk's direction, Plaintiffs refiled the brief in support of remand as a separate entry the following day.

15.    Defense counsel received 10 day notices of Bullock's intent to seek a default in this Court on February 24th.

16.    On February 27th, Defendants filed a motion to strike the 10 day notices, arguing that the entire case was removed in spite of counsel's error and that this Court lacks jurisdiction.

17.    That night, Plaintiffs filed a motion for default in the District Court without the requisite proposed order as required by the Middle District Local Rules.

18.    At the District Court Clerk's direction, Plaintiffs filed a proposed order on March 2nd.

19.    On March 3rd, Bullock filed a praecipe for default in this Court, and the Prothonotary entered a judgment against Defendants as a pure ministerial act.

20.    That day, Bullock also filed a motion to strike Defendants' motion to strike.[1]

---

[1] Bullock erroneously argues that a motion to strike requires a "notice to plead." A motion is not a *pleading*. *See* Pa.R.C.P. 1017(a) (defining pleading as complaint, answer, reply, counter-reply, and preliminary objection). "If the Rules of Civil Procedure had intended such a result, it could have been drafted into the Rules by those responsible for such an implementation. This has not occurred." *McCormick v. Allegheny Gen. Hosp.*, 527 A.2d 1028, 1032 (Pa. Super. 1987).

The Superior Court rejected any requirement that non-pleadings contain a notice to plead:

> Equibank argues, however, that a petition is not a pleading as defined in Pa.R.C.P. 1017(a), so that Rule 1026(a), which applies only to pleadings, does not require that a petition to fix the value of real estate be endorsed with a notice to plead. Equibank is correct, of course. A

21.     This Court has scheduled a conference on the matter for March 17th.

22.     On March 6th, Defendants filed a brief in the District Court in support of their motion to dismiss.

23.     On March 9th, Defendants filed a brief in the District Court in opposition to Plaintiffs' motion to remand.

**Demurrer under Rule 1028(a)(4)**
**No. 1: U.S. and Pennsylvania Constitution**

24.     As explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), none of the ordinances infringe on Defendants' right to bear arms under either the U.S. or Pennsylvania Constitution.[2]

25.     Notably, Bullock does not challenge the minors ordinance under either Constitution as he lacks standing to do so.

26.     In any event, both state and federal law contain child gun bans. 18 U.S.C. §922(x)(2)(A); 18 Pa.C.S. §6110.1.

27.     There can be no doubt child gun bans are longstanding. Harrisburg enacted its child gun ban sixty-four years ago.

---

petition is not included in the pleadings listed in Rule 1017(a), and the courts have consistently held that papers not listed in Rule 1017 are not "pleadings" within the meaning of the Pennsylvania Rules of Civil Procedure. Thus, Rule 1026(a) does not require a petition to be endorsed with a notice to plead, as the rule applies only to "pleadings."

*Equibank v. Duboy*, 532 A.2d 889, 890 (Pa. Super. 1987) (citations omitted).
[2] Because Defendants attach the Preliminary Objections attached as Exhibit 1 to the petition to open or strike the default judgment and the exhibits are identical, Defendants use the same exhibit numbers for both filings.

4

28.     As to the discharge ordinance, it does not prevent self-defense in any way and the U.S. Supreme Court even defended such ordinances in *D.C. v. Heller*, 554 U.S. 570, 633-34 (2008).

29.     Likewise, gun bans in parks are longstanding dating back to at least 1897 when Yellowstone National Park banned guns in parks, 1936 when the National Park Service banned guns,[3] and 1971 when the Department of Conservation and Natural Resources banned guns in parks (17 Pa.Code §11.215).

30.     In addition, the emergency ordinance is temporary, discretionary, used sparingly, and longstanding—approaching a half century in age.

31.     Emergency powers to local officials are part of a complex scheme of federal, state, and local law, varying with the nature and impact on the geographic area.

32.     The emergency ordinance is a reasonable restriction that protects the public from an escalation of a state of disorder or unrest.

33.     The Plaintiffs' proposed limitations on emergency powers run contrary to federal, state, and local emergency management schemes that are ubiquitous throughout Pennsylvania.

34.     Finally, the reporting requirement does not restrict self-defense in any way.

---

[3] While the federal government lifted the park gun ban in 2010, the policy shift does not alter the historical support for park gun bans that existed without controversy until political opposition in the modern era.

### Demurrer under Rule 1028(a)(4) and (5)
### No. 2: Standing to Sue

35.     This Court can grant the preliminary objection for their lack of standing under either Rule 1028(a)(4), which requires Plaintiffs to state a sufficient claim for relief, or 1028(a)(5), which requires Plaintiffs to sufficiently state their capacity to sue.

36.     As explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), Plaintiffs cannot bring overbreadth challenges: they must demonstrate that the ordinances have or will imminently limit *their* rights.

37.     Plaintiffs cannot do so.

38.     They do not have any expectation of loss or theft of a gun or an imminent emergency.

39.     Plaintiffs must follow the state gun ban in parks and the state emergency gun ban, and any child members must follow state and federal gun bans.

40.     FOAC, a political action committee, suffers an additional problem: a PAC cannot spend funds on anything not election related, 25 Pa.C.S. §3254.1, §3241(d), including this lawsuit.

41.     Plaintiffs' claims of automatic standing under Act 192 of 2014 do not apply to their claims under the U.S. and Pennsylvania Constitutions.

42.     As to the preemption claim, Plaintiffs simply claim automatic standing under Act 192, which Harrisburg contests.

6

43.    Plaintiffs must know this, which explains why they waited until after Act 192's 2015 effective date to challenge ordinances enacted in 1951, 1969, 1971, 1991, and 2009.

44.    As explained in the attached brief in support of Defendants' motion to dismiss (Ex. 2), Act 192 violates the single subject and original purpose rules in Article III, Sections 1 and 3, of Pennsylvania's Constitution.

45.    Legislators tacked these standing and attorney fee provisions onto a bill about mental health records (HB 1243), which died in committee.

46.    At the tail-end of the legislative session, legislators took that bill and attached it *verbatim* to a bill about theft of copper wire (HB 80).

47.    After changing the original purposes of both HB 80 and 1243, the final bill has at least three subjects: firearms, mental health records, and theft of copper wire.

48.    In addition, Act 192 stretches standing beyond its breaking point.

49.    A verdict for uninjured plaintiffs violates the very essence of standings.

50.    This is even worse when the lawsuits are against municipalities, and, in turn, the taxpayers.

51.    Act 192 allows unaffected gun owners to sue municipalities they have never even entered and never will enter.

52.    This directly contradicts the general requirement that plaintiffs prove liability and *harm*.

7

Demurrer under Rule 1028(a)(4)
No. 3: Preemption

53.　　As explained in the attached brief in support of Defendants' motion to

dismiss (Ex. 2), the Uniform Firearms Act does not preempt the ordinances.

54.　　The Third Class City Code gives Harrisburg explicit authority to

prevent discharge and concealed carry:

> To the extent permitted by Federal and other State law,
> council may regulate, prohibit and prevent the discharge
> of guns and prevent the carrying of concealed deadly
> weapons.

53 Pa.C.S. §37423. *See* 53 Pa.C.S. §3703.

55.　　The legislature just reenacted the Code just last year.[4]

56.　　Further, the UFA does not preempt this ordinance because the UFA

also prohibits unsupervised children from having guns in public. 18 Pa.C.S.

§6110.1.

57.　　The UFA only preempts ordinances that regulate the *lawful* possession

of firearms:

> No county, municipality or township may in any manner
> regulate the *lawful* ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition
> components when carried or transported *for purposes not
> prohibited by the laws of this Commonwealth.*

18 Pa.C.S. § 6120(a).

58.　　Because it is illegal for unsupervised children to carry guns in public

areas, the ordinance is not preempted.

---

[4] This Court agreed in the related case of *U.S. Law Shield* that Harrisburg can ban
discharge.

59.   The statute is clear:

> [T]he County may not enact an ordinance which regulates
> firearm possession *if* the ordinance would make the
> otherwise lawful possession of a firearm *unlawful*. Thus,
> if the County's ordinance pertains only to the unlawful
> possession of firearms, i.e., possession "prohibited by the
> laws of this Commonwealth," then section 6120(a) of the
> Crimes Code does not preempt the County's ordinance.

*Minich v. Cnty. of Jefferson*, 869 A.2d 1141, 1143 (Pa.Commw. 2005)(emphasis in

original)(*Minich I*).[5]

60.   Because it is illegal for unsupervised children to carry guns in public

areas, the ordinance is not preempted.[6]

61.   The requirement that persons report a lost or stolen also targets the

*unlawful* transfer of firearms (theft and straw purchases).

62.   Accordingly, the UFA does not apply. The UFA has two elements:

> No county, municipality or township may in any manner
> regulate
>
> [1] the lawful ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition
> components
>
> [2] *when carried or transported for purposes not*
> *prohibited by the laws of this Commonwealth.*

---

[5] Oddly, the Commonwealth Court reached the opposite interpretation in
*NRA v. City of Phila.*, 977 A.2d 78, 82 (Pa. Commw. 2009)(*en banc*). The
Commonwealth Court felt bound by the decision in *Ortiz v. Com.*, 681 A.2d 152
(1996), but the statutory language is clear and *Ortiz* did not even address whether
municipalities can restrict *unlawful* possession.
[6] This Court disagreed in *U.S. Law Shield* because of the UFA's hunting exception.
Plaintiffs do not demonstrate that Harrisburg enforces the ordinance in a way to
restrict hunting. Further, Harrisburg respectfully submits that it's statutory
authority to prohibit discharge gives it authority to prohibit hunting as well and
negate the exception.

9

18 Pa.C.S. §6120(a).

63.     A person who loses a firearm clearly does not possess it any longer. So whoever has the gun now, it is not "carried or transported for purposes not prohibited by the laws of this Commonwealth."[7]

64.     Regarding the park and emergency ordinances, as mentioned, the Third Class City Code permits Harrisburg to "*prevent* discharge" and "*prevent* the carrying of concealed deadly weapons." 53 Pa.C.S. §37423.

65.     The carry bans works to *prevent* discharge.

66.     Further, as to parks, the Third Class City Code authorizes Harrisburg to regulate all conduct in its property and parks, and DCNR bans guns in parks.

67.     *Dillon* provides support even though the Court held that the UFA preempts Erie's park ban.

68.     The Court noted two valid issues that Erie did not raise:

> Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of [its] parks and playgrounds by the public generally...." It could be argued that the City may be empowered under that grant of power from the State to regulate the possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted

---

[7] This Court disagreed with this analysis in *U.S. Law Shield* although this Court ultimately did not resolve whether the UFA preempts the ordinance. Harrisburg respectfully submits that the second prong of the statute compels a different result—requiring proof that the gun is (*present tense*) "carried or transported for purposes not prohibited by the laws of this Commonwealth."

> pursuant to its general police powers. Similarly, Section
> 11.215 of the regulations of the Commonwealth's
> Department of Conservation and Natural Resources, 17
> Pa.Code § 11.215, generally prohibits "[p]ossessing an
> uncased device, or uncasing a device, including a firearm,
> ... that is capable of discharging or propelling a projectile
> ..." in state parks, subject to a number of enumerated
> exceptions.

*Dillon v. City of Erie*, 83 A.3d 467, at n.9 (Pa. Commw. 2014) (*en banc*).

69.     As *Dillon* notes, Harrisburg has authority to regulate guns on city

property *and* state regulations ban guns in parks anyway.

70.     Harrisburg's statutory authority to regulate its property has at least

two sources:

> In exercising its discretion to make decisions that further
> the public interest under terms it deems most beneficial
> to the city, council shall have the power and authority,
> subject to any restrictions, limitations or exceptions as set
> forth in this act, to do any of the following:
>
> (1) ...manage real and personal property.

53 Pa.C.S. §37402.1(a).

> The council of each city shall have power to enact, make,
> adopt, alter, modify, repeal and enforce in accordance
> with this act ordinances, resolutions, rules and
> regulations, not inconsistent with or restrained by the
> Constitution of Pennsylvania and laws of this
> Commonwealth, that are either of the following:
>
> (1) ...necessary for the proper management, care and
> control of the city... and the maintenance of the peace,
> good government, safety and welfare of the city...

53 Pa.C.S. §37435.

71.     The *Minich II* Court upheld courthouse gun bans due to similar grants

of authority:

11

> Section 509(a) of the County Code allows county
> commissioners to adopt ordinances regulating the affairs
> of a county. Section 509(c) of the County Code allows
> county commissioners to prescribe fines and penalties for
> violations of a "public safety" ordinance. 16 P.S. § 509(c).
> Here, the County ordinance regulates the affairs of the
> County, specifically the safety of members of the public
> who enter the Jefferson County Court House.
>
> Moreover, section 913(e) of the Crimes Code requires that
> each county make lockers available at a building
> containing a court facility for the temporary checking of
> firearms by persons legally carrying the firearms. 18
> Pa.C.S. § 913(e). The County ordinance simply
> implements this provision.

*Minich v. Cnty. of Jefferson*, 919 A.2d 356, 361 (Pa. Commw. 2007)(*en banc*)(*Minich II*).

72.     The Third Class City Code explicitly authorizes Harrisburg's concealed carry ban.

73.     The open carry ban manages city property, and cares for and maintains the peace, safety, and welfare.

74.     Finally, the open carry park ban only restricts *unlawful* conduct due to the DCNR gun ban. 17 Pa.Code §11.215.[8]

75.     In addition, the state conservation grant funding for Harrisburg's parks come with a perpetual legal duty to comply with DCNR regulations.

76.     Turning to the emergency ordinance, the Third Class City Code specifically allows the Mayor during an emergency to prohibit "any other activities as the mayor reasonably believes would cause a clear and present danger to the

---

[8] This Court in *U.S. Law Shield* found that the UFA preempts this ordinance. It is respectfully submitted that the DCNR park regulation and Third Class City Code compel a different result.

preservation of life, health, property or the public peace." 53 Pa.C.S.

§36203(e)(3)(iv),(vi).

77.    The emergency ordinance implements this grant of authority, allowing

the Mayor to determine whether open carry during an emergency endangers the

public.

78.    Further, Harrisburg only regulates unlawful conduct because the UFA

bans carrying guns during declared emergencies. 18 Pa.C.S. §6107.[9]

**Demurrer under Rule 1028(a)(4)**
**No. 4: Individual Liability**

79.    Plaintiffs have not demonstrated that the Mayor or Chief have harmed

them or will.

80.    Both took office after enactment of every single ordinance, and neither

has authority to repeal the ordinances.

81.    In addition, as explained in the attached brief in support of

Defendants' motion to dismiss (Ex. 2), the Mayor and Chief are entitled to immunity

under federal and state law.

82.    Under federal law, the Mayor and Chief are entitled to qualified

immunity because the law is not clearly established.

83.    Under state law, they receive absolute immunity as high officials.

---

[9] This Court in *U.S. Law Shield* found that the UFA preempts this ordinance based
upon the UFA's concealed carry exception. It is respectfully submitted that
Harrisburg's explicit authorization to ban concealed carry gives it authority to
negate the exception.

### Demurrer under Rule 1028(a)(4)
### No. 5: Damages

84.     Plaintiffs cannot recover damages for the Pennsylvania Constitution claim. *Jones v. City of Phila.*, 890 A.2d 1188, 1208 & n.33 (Pa.Commw. 2006).

### Objection to Jurisdiction under Rule 1028(a)(1)

85.     This Court can dismiss the Complaint under Rule 1028(a)(1) for " lack of jurisdiction over the subject matter of the action ... or improper form or service of a writ of summons or a complaint..."

86.     A claim under 42 U.S.C. §1983 clearly asserts a federal question, which gives the U.S. District Court original jurisdiction. 28 U.S.C. §1331 and §1441(a).

87.     Further, Section 1343(a)(3) and (4) give original jurisdiction to the U.S. District Court over civil rights actions specifically.

88.     The District Court has supplemental jurisdiction over related state law claims. 28 U.S.C.A. §1367(a).

89.     As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), the inclusion of non-removable claims or parties does not defeat removal; rather, the District Court determines whether to remand non-removable claims or parties. 28 U.S.C. §1367(c) and §1441(c).

90.     **Defendants removed the entire case.**

91.     Plaintiffs claim that Bullock's lawsuit is still before this Court.

92.     Plaintiffs cite no authority for their claim that a defendant can *partially* remove a case.

14

93.     As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), removal brought the entire case to federal court. It is for the U.S. District Court, not this Court, to determine whether removal was proper and whether complete or partial remand should occur.

94.     Section 1441(a) speaks of removing "any civil action," not claims or parties. Section 1441(c)(2) permits the District Court to sever off and remand any non-removable "claims." But even Subsection (c) is clear that, where an action contains non-removable "claims," removal still operates to bring "the entire action" to federal court unless and until the District Court severs and remands non-removable claims.

95.     Defendants timely notified Plaintiffs and this Court.

96.     Section 1446 requires that Defendants file a notice of removal with the District Court and promptly notify this Court and Plaintiffs.

97.     Defendants notified Plaintiffs' counsel and this Court the very day of removal, and this Court transferred the entire case on February 20th.

98.     The alleged defect does not remove federal jurisdiction.

99.     As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), procedural defects in a notice of removal do not deprive the District Court of jurisdiction.

100.    Further, Plaintiffs have suffered no prejudice.

101.    Defendants, on the other hand, will suffer if deprived of a federal forum due to a clerical error by their counsel.

102. The federal removal notice clearly informed Plaintiffs of the intent to remove the entire action.

103. The opening indicates that "Defendants hereby remove this case."

104. The notice refers to "Plaintiffs" collectively and to "a federal question," "a claim under 42 U.S.C. §1983," and "this action."

105. The removal notice attaches the entire Complaint as Exhibit A.

106. At no point does the removal notice express any intent to bifurcate this case into two.

107. Further, the notice to this Court directs, "The state court shall proceed no further."

108. The District Court can excuse the caption and cover sheet errors.

109. As explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), no federal rule of procedure requires a notice of removal, which is not a pleading, to contain an accurate caption. *See* FRCP 10(a) (requiring *complaints* to name all the parties and requiring other *pleadings* to at least use *et. al.* or similar group references).

110. Nor does any federal rule of procedure require a cover sheet.

111. In fact, as explained in the attached brief in opposition (Ex. 3) to remand (filed with the District Court), the cover sheet instructions only direct their use for *complaints* and further state that the information on a cover sheet has no effect in law.

112.   For the same reason, information on the federal docket—purely administrative information pulled from the cover sheet—does not have any force or effect in law.

113.   Finally, Defendants will seek leave to amend the caption and cover sheet before the U.S. District Court.[10]

### Failure to Conform to Law or Rule under Rule 1028(a)(2)

114.   Under Rule 1028(a)(2), this Court can grant an objection for "failure of a pleading to conform to law or rule of court ..."

115.   Bullock did not verify the complaint originally as required by Pa.R.C.P. 1024(a).

116.   The exception permitting a person to verify for a plaintiff only exists for plaintiffs outside this Court's jurisdiction. *See* 1024(c).

117.   But the Complaint alleged that Bullock is a Dauphin County resident, rendering this exception unavailable.

118.   Bullock's attempts to cure the Complaint's defect and to seek a default come with additional rule violations.

---

[10]   Defendants note that Plaintiffs did not seek concurrence as required by Middle District Local Rule 7.1 before filing their motion to remand. While ordinarily defense counsel would not bring such matters to the Court's attention, Plaintiffs' failure prejudiced Defendants. Notice of the caption error would have given Defendants an opportunity to cure the defect.

In fact, on Wednesday, February 18th, Attorney Autry spoke to Attorney Prince seeking concurrence in Defendants' motion to dismiss (filed Friday, February 20th). On that call, Attorney Prince did not mention Plaintiffs' then-forthcoming motion to remand (filed Sunday, February 22nd). If he had done so, Defendants could have amended the notice of removal without leave of court as the 30 day deadline to remove was Thursday, February 19th.

17

119.   Bullock never served his praecipe to substitute verification on defense counsel.

120.   Bullock's praecipe to substitute verification and praecipe to enter judgment do not leave three inches of space at the top, in violation of Pennsylvania Rule of Civil Procedure 204.1(3).[11]

121.   Both praecipes are single-spaced, in violation of Pennsylvania Rule 204.1(4).

122.   And Bullock's praecipes do not contain any contact information on the top left-hand corner in violation of Dauphin County Local Rule 205.2(a)(1)(j).

123.   The Complaint also does not list Attorney Prince's e-mail address in the top left as required by Dauphin County Local Rule 205.2(a)(1)(j).

### Objection to Returns of Service under Rule 1028(a)(1)

124.   Under Rule 1028(a)(1), this Court can grant an objection due to improper service.

125.   The returns of service contain an inaccurate caption, listing the City of Harrisburg as the only defendant without "*et al.*" or other designation of additional defendants.

126.   Defendants do not believe that oral argument or an evidentiary hearing are necessary, but defer to this Court as to whether this Court would like testimony or oral argument on the matter.

---

[11] Bullock's motion to strike Defendant's motion to strike the ten day notices suffers the same flaw. Bullock's motion to strike also lacks a proposed order as required by Dauphin County Local Rule 205.2(a)(3), and Bullock did not provide a *verbatim* copy of the motion to Defendants prior to filing as required by Local Rule 208.2(d).

127.   Discovery is not necessary for the resolution of the Preliminary

Objections.

For these reasons, Defendants respectfully request this Honorable Court

dismiss the Complaint.

Respectfully submitted,

Lavery Law

Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

Dated: March 12, 2015

<u>Verification of Preliminary Objections</u>

The averments are true upon my personal knowledge or information and belief. This statement is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Frank J. Lavery, Esquire

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Firearm Owners Against Crime,    :    1:15-cv-322
Kim Stolfer, Joshua First, and    :
Howard Bullock    :
        Plaintiffs    :    Judge Kane
        v.    :
City of Harrisburg,    :
Mayor Eric Papenfuse, and    :
Police Chief Thomas Carter,    :
        Defendants    :    Jury Trial Demanded

**Brief in Support of**
**Motion to Dismiss Federal Claims**
**And to Stay or Remand State Claims**

Lavery Law

*s/ Frank J. Lavery*
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

March 6, 2015

# **TABLE OF CONTENTS**

I.      Procedural History:..........................................................................................1

II.     Facts:...............................................................................................................2

III.    Question Presented: .........................................................................................3

IV.     Argument: .......................................................................................................3

   A.  Harrisburg's longstanding ordinances do not infringe on the right to bear
      arms..............................................................................................................3

       1.   Unsupervised children have no right to carry guns in public. .................5

       2.   The discharge ordinance does not prevent self-defense. .........................6

       3.   Plaintiffs have no right to bring guns to government parks and
          playgrounds.............................................................................................7

       4.   The emergency ban is discretionary, temporary, and reasonable...........9

       5.   The reporting ordinance has nothing to do with self-defense. ..............10

   B.  Plaintiffs cannot bring overbreadth claims.....................................................11

   C.  Plaintiffs lack standing. .................................................................................11

   D.  A PAC cannot file a lawsuit unrelated to elections........................................12

   E.  This Court should stay the preemption claims. ...............................................12

   F.  Act 192 violates Pennsylvania's Constitution.................................................13

   G.  The UFA does not preempt the ordinances. ....................................................15

       1.   Discharge: ..............................................................................................15

       2.   Children:.................................................................................................15

       3.   Reporting:...............................................................................................16

       4.   Parks:......................................................................................................17

       5.   Emergencies:..........................................................................................20

   H.  The Mayor and Chief have not harmed Plaintiffs. ..........................................20

   I.  The Mayor and Chief violated no clear federal law........................................20

   J.  The Mayor and Chief possess high official immunity. ....................................21

   K.  The official capacity claims are redundant......................................................22

   L.  Pennsylvania's Constitution does not provide claims for damages. ...............22

V.      Conclusion: .....................................................................................................22

Certification of Counsel .............................................................................................23

Certificate of Service .................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Application of Biester*, 409 A.2d 848 (Pa. 1979)......................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................3

*Baez v. Lancaster County*, 487 Fed.App'x. 30 (3d Cir. 2012) .................................22

*Carroll v. Carman*, 135 S. Ct. 348 (2014)..............................................................21

*City of Phila. v. Com,* 838 A.2d 566 (Pa. 2003) .....................................................13

*City of Tucson v. Rineer*, 971 P.2d 207 (Ariz.App. 1998).........................................9

*Clapper v. Amnesty Int'l*, 133 S. Ct. 1138 (2013)...................................................11

*Com. v. Neiman,* 84 A.3d 603 (Pa. 2013) ...............................................................13

*D.C. v. Heller*, 554 U.S. 570 (2008) ........................................................... 3, 6, 8

*DeWeese v. Weaver,* 880 A.2d 54 (Pa. Commw. 2005) ..........................................14

*Dillon v. City of Erie*, 83 A.3d 467 (Pa. Commw. 2014) ........................... 11, 17, 18

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) .........................................................4, 5

*Durham v. McElynn*, 772 A.2d 68 (Pa. 2001) .........................................................21

*Embody v. Ward*, 695 F.3d 577 (6th Cir. 2012).........................................................9

*English v. State*, 35 Tex. 473 (1872).....................................................................4, 8

*Feldman v. Hoffman*, 2014 WL 7212601 (Pa. Commw. Dec. 19, 2014) ................21

*Glenn v. State*, 72 S.E. 927 (Ga.App. 1911) .............................................................6

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)..........................12

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534,

    116 L. Ed. 2d 589 (1991)................................................................................21

*Hunters United for Sunday Hunting v. Pa. Game Comm'n*, 28 F.Supp.3d 340

    (M.D.Pa. 2014) ................................................................................................3

*Jones v. City of Phila.*, 890 A.2d 1188 (Pa.Commw. 2006)....................................22

*Jury Comm'rs v. Com.,* 64 A.3d 611 (Pa. 2013) .....................................................13

*Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012)..........................4, 10

ii

*Kelly v. Riley,* 733 S.E.2d 194 (N.C.App. 2012) ..........................................4

*Lane v. Franks,* 134 S. Ct. 2369 (2014)..............................................21

*Leach v. Com.,* 585 MD 2014 ..................................................1

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ...............................14

*Marcavage v. Rendell,* 888 A.2d 940 (Pa. Commw. 2005)...............................14

*Marcavage v. Rendell,* 936 A.2d 940 (Pa. Commw. 2005),...............................14

*McDonald v. City of Chicago,* 561 U.S. 742 (2010) .....................................3

*Minich v. Cnty. of Jefferson,* 869 A.2d 1141 (Pa. Commw. 2005) ...................16

*Minich v. Cnty. of Jefferson,* 919 A.2d 356 (Pa. Commw. 2007) ................3, 19

*Norman v. State,* -- So.3d --, 2015 WL 669582 (Fla.App. Feb. 18, 2015)...........4

*NRA v. ATF,* 700 F.3d 185 (5th Cir.2012) ...........................................5, 6

*NRA v. City of Phila.,* 977 A.2d 78 (Pa. Commw. 2009) ...........................11, 16

*NRA v. City of Pittsburgh,* 999 A.2d 1256 (Pa. Commw. 2010) ....................10, 12

*NRA v. McCraw,* 719 F.3d 3389 (5th Cir. 2013) .......................................6

*Ortiz v. Com.,* 681 A.2d 152 (1996) .................................................16

*Pa. State Ass'n of Jury Comm'rs v. Commw.,* 64 A.3d 611 (Pa. 2013) ................13

*People v. Fields,* 2014 Ill.App.1st 130209 (Dec. 31, 2014) ...........................6

*People v. Flores,* 169 Cal.App.4th 568 (2008);........................................4

*People v. Yarbrough,* 86 Cal.Rptr.3d 674 (Cal.App. 2008) ...........................9

*Perry v. State Civil Serv. Comm'n,* 38 A.3d 942 (Pa.Commw. 2011).....................3

*Peterson v. Martinez,* 707 F.3d 1197 (10th Cir. 2013)...............................4

*Robertson v. Baldwin,* 165 U.S. 275 (1897) ..........................................4

*Saucier v. Katz,* 533 U.S. 194 (2001) ..............................................20

*Schall v. Martin,* 467 U.S. 253 (1984)...............................................5

*State v. Callicutt,* 69 Tenn. 714 (1878)..............................................6

*State v. Knight,* 218 P.3d 1177 (Kan. 2009) ..........................................4

*U.S. Law Shield v. Harrisburg,* CV-2015-255 ..........................................1

*U.S. v. Dorosan*, 350 F.App'x 874 (5th Cir. 2009) ....................................................9

*U.S. v. Rene E.*, 583 F.3d 8 (1st Cir. 2009)..................................................6

*US v. Barton*, 633 F.3d 168 (3d Cir. 2011)...........................................................5, 11

*US v. Emerson*, 270 F.3d 203 (5th Cir.2001) ...........................................6

*US v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ........................................4

*US v. Skoien*, 614 F.3d 638 (7th Cir.2010) ................................................5

*Warden v. Nickels*, 697 F. Supp. 2d 1221 (W.D.Wash. 2010) .................................8

*Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168,

    346 A.2d 269 (1975)...................................................................................14

*Younger v. Harris*, 401 U.S. 37 (1971)....................................................11

**Statutes**

16 P.S. § 509(c) ...................................................................................19

17 Pa.Code § 11.215 ..........................................................................19

17 Pa.Code §11.215 ........................................................................2, 8

18 Pa.C.S. § 6107 .............................................................................20

18 Pa.C.S. § 6120(a) ..................................................................... 15, 17

18 Pa.C.S. § 913(e) ............................................................................19

18 Pa.C.S. §505...................................................................................7

18 Pa.C.S. §6107 .................................................................................2

18 Pa.C.S. §6110.1 .........................................................................5, 15

18 Pa.C.S. §6120 .................................................................................2

18 U.S.C. §922(x)(2)(A) .....................................................................5

25 Pa.C.S. §3254.1 ............................................................................12

53 Pa.C.S §3703.................................................................................2

53 Pa.C.S. § 3703 .............................................................................15

53 Pa.C.S. § 37423 ...................................................................... 15, 17

53 Pa.C.S. §36203(e)(3)(iv) .................................................................2, 20

53 Pa.C.S. §37402.1(a) ...........................................................................18

53 Pa.C.S. §37423 ....................................................................................2

53 Pa.C.S. §37435 ..................................................................................19

**Treatises**

*Treatise on Constitutional Limitations* 740 n. 4 (5th ed. 1883) ................................6

## I.    Procedural History:

Plaintiffs sued in state court alleging violations of their federal and state constitutional rights to bear arms and preemption under Pennsylvania's Uniform Firearms Act. Harrisburg, Mayor Papenfuse, and Chief Carter removed this case to federal court because of the Section 1983 claim.[1]

Act 192 of 2014 amended the Uniform Firearms Act to add attorney fees, automatic standing, and actual damages. The NRA has sued Philadelphia, Pittsburgh, and Lancaster. Those municipalities joined certain Pennsylvania legislators to challenge Act 192 before the Commonwealth Court. *Leach v. Com.,* 585 MD 2014.[2] Harrisburg is subject to another lawsuit. *U.S. Law Shield v. Harrisburg,* CV-2015-255.

The cities—Harrisburg included—sought stays until the Commonwealth Court rules. Pittsburgh's motion was granted, Lancaster's was denied, and Philadelphia's is outstanding. Exs. 1-2. Judge Dowling entered a preliminary injunction against three of Harrisburg's five gun ordinances. Ex. 3.

---

[1] Defense counsel made a clerical error in prior filings by inadvertently leaving Plaintiff Howard Bullock off the caption. Plaintiffs have obtained a default judgment in state court in clear violation of §1446. As will be explained in opposition to remand, this caption error can be remedied by amendment.

[2] https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=585+MD+2014

## II.   Facts:

In 1921, Pennsylvania authorized cities to ban unnecessary discharge of weapons. 53 Pa.C.S §3703. In 1931, the Third Class City Code expanded authority for cities like Harrisburg to prevent discharge or concealed carrying. 53 Pa.C.S. §37423. The Code further provides the Mayor discretion, during declared emergencies, to prohibit any activities dangerous to the public peace. 53 Pa.C.S. §36203(e)(3)(iv),(vi). In 2014, the General Assembly re-enacted the Code. In the meantime, Harrisburg banned unsupervised children from carrying guns outside the home in 1951, gave the mayor discretion to ban guns in public during declared emergencies in 1969, banned discharge in 1971, banned guns in parks in 1991, and required reporting of lost or stolen guns in 2009.

At the center of this litigation, in 1974, Pennsylvania amended the Uniform Firearms Act to prevent municipalities from regulating lawful gun ownership. 18 Pa.C.S. §6120. The UFA also bans public carrying during emergencies and unsupervised children from carrying guns. 18 Pa.C.S. §6107, §6110.1. A Pennsylvania Department of Conservation and Natural Resources regulation also bans guns in parks. 17 Pa.Code §11.215.[3]

---

[3] Although not something that this Court can consider at this time, Harrisburg notes that its parks received state funds that comes with strings attached, including a requirement that local parks comply with DCNR regulations.

2

## III. Question Presented:

Have Harrisburg's ordinances limited Plaintiffs' right to self-defense in any way over the last sixty-four years? No.

## IV. Argument:

### A. Harrisburg's longstanding ordinances do not infringe on the right to bear arms.[4]

Plaintiffs' Second Amendment claim is not "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs do not "show" that Harrisburg limits their right to self-defense, and thus they are not "entitled to relief." *Id.* at 679.

Under both the U.S. and Pennsylvania Constitutions, "the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (quoting *D.C. v. Heller*, 554 U.S. 570, 626 (2008)). *See Perry v. State Civil Serv. Comm'n*, 38 A.3d 942, 955 (Pa.Commw. 2011)(public employer can ban guns); *Minich v. Cnty. of Jefferson*, 919 A.2d 356, 361 (Pa. Commw. 2007)(*en banc*)(*Minich II*)(courthouse can ban guns).

*Heller* held that longstanding gun regulations are presumptively lawful, such as gun bans for felons and the mentally ill. 554 U.S. at 626 & n.26. The Court

---

[4] Plaintiffs have no constitutional right to hunt. *Hunters United for Sunday Hunting v. Pa. Game Comm'n*, 28 F.Supp.3d 340, 346 (M.D.Pa. 2014). Regardless, Harrisburg does not apply the ordinances to restrict lawful duck hunting, which is the only lawful hunting in Harrisburg.

3

noted that "the majority of the 19[th]-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* at 626. *See Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897)("[T]he right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons…"); *Peterson v. Martinez*, 707 F.3d 1197, 1211 (10th Cir. 2013); *Kelly v. Riley,* 733 S.E.2d 194, 198 (N.C.App. 2012); *State v. Knight*, 218 P.3d 1177, 1190 (Kan. 2009); *People v. Flores*, 169 Cal.App.4th 568, 575 (2008); *English v. State*, 35 Tex. 473, 479 (1872)("[A]lmost, if not every one of the states of this Union have a similar law upon their statute books…").

Such longstanding gun laws are "exceptions to the Second Amendment guarantee." *US v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010). The Third Circuit has recognized that the Second Amendment might not apply outside the home *at all* and that, historically, many states banned public carrying—whether *open* or concealed. *Drake v. Filko*, 724 F.3d 426, 432 (3d Cir. 2013). As the Court in *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 90, 95 & n.21 (2d Cir. 2012), noted, during the 1800s, "[m]ost states enacted laws banning the carrying of concealed weapons," and four banned the open and concealed carrying of pistols. *See Norman v. State*, -- So.3d --, 2015 WL 669582, at *16 (Fla.App. Feb. 18, 2015)(upholding open carry ban).

4

Harrisburg's restrictions do not come close to a complete ban and survive any level of scrutiny. "The legitimate and compelling state interest in protecting the community from crime cannot be doubted." *Schall v. Martin*, 467 U.S. 253, 264 (1984). Harrisburg "has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety." *Drake*, 724 F.3d at 437.

### 1. Unsupervised children have no right to carry guns in public.

Plaintiffs can obtain no relief because both state and federal law contain child gun bans. 18 U.S.C. §922(x)(2)(A); 18 Pa.C.S. §6110.1. An injunction against Harrisburg's ordinance can't help them.

There can be no doubt child gun bans are longstanding. Harrisburg enacted its child gun ban sixty-four years ago. "[A] firearms regulation may be 'longstanding' and 'presumptively lawful' even if it was only first enacted in the 20th century." *Drake*, 724 F.3d at 458 n. 11(citing *US v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011)(1961 felon gun ban), *NRA v. ATF*, 700 F.3d 185, 196–97 (5th Cir. 2012)(1968 ban on sale to minors); *US v. Skoien*, 614 F.3d 638, 640–41 (7th Cir. 2010)(1968 gun ban for mentally ill)).

The Third Circuit found New Jersey's requirement "longstanding" that gun owners show a justifiable need to carry in public, whether open or concealed. *Drake*, 724 F.3d at 422. New Jersey adopted the requirement in 1924 for concealed carry, but did not impose the "need" requirement on open carry as well until 1966.

5

*Id.* Harrisburg's 1951 child gun ban predates all of the longstanding gun laws referenced in *Heller* and *Drake.*

Because of the immense reasonableness behind such laws, the founders would have supported child gun bans. *NRA v. ATF*, 700 F.3d at 200-02. Courts have long held child gun bans "not only constitutional as tending to prevent crime but wise and salutary..." *State v. Callicutt*, 69 Tenn. 714, 716 (1878). *See* Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n. 4 (5th ed. 1883)("the State may prohibit the sale of arms to minors").

Several courts have gone further to hold that no one under 21 has gun rights outside the home. *NRA v. McCraw*, 719 F.3d 338, 347-49 (5th Cir. 2013); *ATF*, 700 F.3d at 200-04; *U.S. v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009); *US v. Emerson*, 270 F.3d 203, 261 (5th Cir.2001)("it is clear that felons, *infants* and those of unsound mind may be prohibited from possessing firearms"(emphasis added)); *People v. Fields*, 2014 Ill.App.1st 130209, ¶64 (Dec. 31, 2014). "Unquestionably, the possession of a pistol or revolver by a minor constitutes a menace to the peace of the public, and to the safety of the individuals constituting the public." *Glenn v. State*, 72 S.E. 927, 929 (Ga.App. 1911).

### 2. The discharge ordinance does not prevent self-defense.

This forty-four year old ordinance has roots in similar founding era laws, which *Heller* defended:

> All of them punished the discharge (or loading) of guns
> with a small fine and forfeiture of the weapon (or in a
> few cases a very brief stay in the local jail), not with
> significant criminal penalties. They are akin to modern
> penalties for minor public-safety infractions like
> speeding or jaywalking. And although such public-safety
> laws may not contain exceptions for self-defense, it is
> inconceivable that the threat of a jaywalking ticket would
> deter someone from disregarding a "Do Not Walk" sign
> in order to flee an attacker, or that the Government would
> enforce those laws under such circumstances. Likewise,
> we do not think that a law imposing a 5–shilling fine and
> forfeiture of the gun would have prevented a person in
> the founding era from using a gun to protect himself or
> his family from violence, or that if he did so the law
> would be enforced against him.

554 U.S. at 633-34. Plaintiffs do not show that Harrisburg would ever enforce this

ordinance against a person acting in self-defense.[5] Even if someone acting in self-

defense were cited, the person could raise self-defense under the federal and state

Constitutions or 18 Pa.C.S. §505.

### 3. Plaintiffs have no right to bring guns to government parks and playgrounds

Gun bans in parks are longstanding. Yellowstone National Park banned guns

in parks in 1897, followed by nearly every other national park,[6] and the National

---

[5] Harrisburg notoriously did not charge State Representative Marty Flynn last year.

[6] http://www.nps.gov/policy/Firearmsregs.pdf

7

Park Service banned firearms in all national parks in 1936.[7] This Commonwealth banned guns in parks by at least 1971. 17 Pa.Code §11.215.

*Heller* noted that there is no right to bear arms in "sensitive places" like schools or government buildings. 554 U.S. at 626-27 & n. 26. So too in public parks and playgrounds. *See English*, 35 Tex. at 478-79("We confess it appears to us little short of ridiculous, that any one should claim the right to carry upon his person any of the mischievous devices inhibited by the statute, into a peaceable public assembly, as, for instance into a church, a lecture room, a ball room, *or any other place where ladies and gentlemen are congregated together*.")(emphasis added).

Such restrictions are abundantly reasonable:

> [T]he Court sees no logical distinction between a school on the one hand and a community center where educational and recreational programming for children is also provided on the other. Just as the Federal Courts do not want civilians entering into courthouses with weapons, the City does not want those with firearms entering certain parks where children and youth are likely present. The Park Rule is thus a perfectly acceptable prohibition on gun possession in a sensitive place and it passes state constitutional scrutiny.

*Warden v. Nickels*, 697 F. Supp. 2d 1221, 1229 (W.D.Wash. 2010).

---

[7] http://www.nps.gov/policy/1936Regulations.pdf(fed.reg. June 27, 1936) p. 674, rule 8. Federal parks recently lifted the gun ban. 36 C.F.R. §2.4(2009 amendment); 16 U.S.C.A. §1a-7b(2010). This policy shift does not alter the lengthy history of gun bans in parks.

8

Park-specific bans do not trample on gun rights:

> A city park is a place where Tucson residents gather and
> their children play. It requires no leap of logic to deduce
> that keeping dangerous weapons out of a public park
> directly reduces the possibility of armed conflict as well
> as accidents therein and substantially advances the safety
> of all who go there…
>
> Moreover, his assertion that the city's action strips him of
> his ability to defend himself is severely undercut by the
> fact that he can readily avoid the burden of the city's
> location-specific prohibition by simply walking around
> the park with his firearm, instead of through it.

*City of Tucson v. Rineer*, 971 P.2d 207, 213-14 (Ariz.App. 1998).

"No court has held that the Second Amendment encompasses a right to bear
arms within state parks." *Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012).
Courts have upheld bans in similar public areas. *See U.S. v. Dorosan*, 350 F.App'x
874, 875 (5th Cir. 2009)(post office parking lot); *People v. Yarbrough*, 86
Cal.Rptr.3d 674, 687 (Cal.App. 2008)(driveway).

### 4.  The emergency ban is discretionary, temporary, and reasonable.

This ordinance, now approaching a half century in age, is longstanding. It is
further a reasonable restriction that is temporary in duration, used sparingly, and
protects the public from looting during emergencies.

Public gun bans at certain occasions and locations date back to our founding:

> There is a longstanding tradition of states regulating
> firearm possession and use in public because of the
> dangers posed to public safety. *See* Saul Cornell &

9

> Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FordhamL.Rev. 487, 502–16 (2004). During the Founding Era, for instance, many states prohibited the use of firearms on certain occasions and in certain locations. Other states went even further. North Carolina prohibited going armed at night or day "in fairs, markets, nor in the presence of the King's Justices, or other ministers, nor in no part elsewhere." *See* Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev.St. L.Rev. 1, 31–32 (2012). Massachusetts and Virginia enacted similar laws. *Id.*

*Kachalsky*, 701 F.3d at 94-95. *See also id.* at n. 20(similar 1328 English law).

Limited public carry restrictions have strong historical foundations. Harrisburg clearly has an interest in allowing brief restriction during an emergency to protect the public from looting (or worse).

### 5. The reporting ordinance has nothing to do with self-defense.

The reporting requirement does not restrict self-defense. In *NRA v. City of Pittsburgh*, 999 A.2d 1256, 1260 (Pa. Commw. 2010), the Commonwealth Court rejected "the proposition that the right to bear arms precludes a legal responsibility to report stolen firearms."[8] There is no possible way that this ordinance restricts the right to defend yourself.

---

[8] Harrisburg's ordinance does not require owners to conduct inventories: "[T]he ordinance only requires reporting within [forty-eight] hours of the *discovery* of the loss, not the loss itself, creating no affirmative duty to inventory firearms." *Id.*

10

**B. Plaintiffs cannot bring overbreadth claims.**

The Third Circuit "do[es] not recognize an overbreadth doctrine outside the limited context of the First Amendment..." *Barton*, 633 F.3d at 172.

**C. Plaintiffs lack standing.**

Plaintiffs do not have any expectation of loss or theft of a gun or an imminent emergency. Further, Plaintiffs must follow the state gun ban in parks and the state emergency gun ban, and any child members must follow state and federal gun bans.

Under Article III's case or controversy requirement, Plaintiffs do not show an injury that is "concrete," "particularized," "fairly traceable to" Harrisburg's ordinances, and "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147 (2013). Plaintiffs' "theory of *future* injury is too speculative" and not "certainly impending." *Id.* at 1143. Their "fears of state prosecution... are imaginary or speculative." *Younger v. Harris*, 401 U.S. 37, 42 (1971).

Plaintiffs likewise lack traditional standing under state law, which mirrors the federal standard. *NRA v. City of Phila.*, 977 A.2d 78, 81-82 (Pa. Commw. 2009)(*en banc*) (no standing to challenge reporting requirement); *Dillon v. City of Erie*, 83 A.3d 467, 475 (Pa. Commw. 2014) (*en banc*) (same). In *NRA v. City of Pittsburgh*, the Court explained:

> [T]he Individual Appellants have pled that they live in
> areas where residential burglaries are common, and one
> has pled that a gun of his was stolen in the past...
>
> One of the Individual Appellants in this case would not
> be fined under the ordinance unless he had a gun stolen
> or lost, failed to report it, and was prosecuted for that
> failure. Because, ...the possibility of harm is remote and
> speculative, Appellants lack standing.

999 A.2d at 1259.

No Plaintiff has suffered injury at Harrisburg's hands. Most or all of the

activities Plaintiffs wish to engage in are illegal under state law. Plaintiffs simply

have automatic standing under Act 192, which Harrisburg contests. Plaintiffs must

know this, which explains why they waited until after Act 192's 2015 effective

date to challenge ordinances enacted in 1951, 1969, 1971, 1991, and 2009.

### D. A PAC cannot file a lawsuit unrelated to elections.

FOAC lacks standing because its members do. In addition, FOAC, a

political action committee, cannot spend funds on anything not election related. 25

Pa.C.S. §3254.1, §3241(d). FOAC must show that "the interests it seeks to protect

are germane to the organization's purpose..." *Hunt v. Wash. State Apple Adver.*

*Comm'n*, 432 U.S. 333, 343 (1977). FOAC's purpose is elections, and it cannot

lawfully expend any funds on anything else, even a filing fee.

### E. This Court should stay the preemption claims.

Given the importance of Act 192, prudence dictates that this Court not rule

on the preemption claim until the Commonwealth Court resolves the constitutional

12

challenge to Act 192—a question that the Court scheduled for expedited review.

Plaintiffs waited a long time before challenging these ordinances—nearly all of

which have existed for decades and most of which pre-date the fall of Saigon.

Given the fact that Plaintiffs waited to file suit for anywhere from five years to

sixty-four years, a stay will not prejudice them.

**F. Act 192 violates Pennsylvania's Constitution.**

Act 192 violates the single subject and original purpose rules in Article III,

Sections 1 and 3, of Pennsylvania's Constitution. Legislators tacked these standing

and attorney fee provisions onto a bill about mental health records (HB 1243),

which died in committee. At the tail-end of the legislative session, legislators took

that bill and attached it *verbatim* to a bill about theft of copper wire (HB 80). After

changing the original purposes of both HB 80 and 1243, the final bill has at least

three subjects: firearms, mental health records, and theft of copper wire.

Let there be no mistake. The Pennsylvania Supreme Court is enforcing these

constitutional demands. *See Com. v. Neiman,* 84 A.3d 603 (Pa. 2013) (rejecting

broad subjects of judicial code, civil remedies, and judicial remedies, and striking

down deficiency judgment bill amended to alter Megan's Law); *Jury Comm'rs v.

Com.,* 64 A.3d 611 (Pa. 2013)(rejecting subject of powers of county

commissioners and striking down statute on farm equipment regulation and

eliminating certain jury commissioners); *City of Phila. v. Com,* 838 A.2d 566 (Pa.

2003)(rejecting broad subject of municipalities and striking down bill regarding

citizenship requirements for certain municipal board members amended to

reorganize convention center).

The Commonwealth Court is following suit. *Marcavage v. Rendell,* 936

A.2d 940 (Pa.Commw. 2005), *aff'd,*951 A.2d 345 (Pa. 2008)(rejecting broad

subject of crimes and striking down bill about crop destruction amended to define

ethnic intimidation); *DeWeese v. Weaver,* 880 A.2d 54 (Pa. Commw. 2005)

(rejecting broad subject of judicial procedure and striking down bill requiring

certain sex offenders to provide DNA amended to limit negligence recovery).

In addition, Act 192 stretches standing beyond its breaking point.

Pennsylvania's Constitution provides that "every man *for an injury done him...*

shall have remedy by due course of law..." Art. I, §11(emphasis added). While the

legislature can expand the scope of injury, the legislature cannot define injury as

"not injured." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578 (1992).

"The purpose of the requirement of standing is to protect against improper

plaintiffs." *Application of Biester,* 409 A.2d 848, 851 (Pa. 1979). A verdict for

uninjured plaintiffs violates the very essence of standing. This is even worse when

the lawsuits are against municipalities, and, in turn, the taxpayers. Act 192 allows

unaffected gun owners to sue municipalities they have never even entered and

never will enter. This directly contradicts the general requirement that plaintiffs

14

prove liability and *harm*.

### G. The UFA does not preempt the ordinances.

#### 1. Discharge:

The Third Class City Code gives Harrisburg explicit authority to prevent

discharge and concealed carry:

> To the extent permitted by Federal and other State law,
> council may regulate, prohibit and prevent the discharge
> of guns and prevent the carrying of concealed deadly
> weapons.

53 Pa.C.S. §37423. *See* 53 Pa.C.S. §3703. The legislature just reenacted the Code

just last year.[9]

#### 2. Children:

The UFA does not preempt this ordinance because the UFA also prohibits

unsupervised children from having guns in public. 18 Pa.C.S. §6110.1. The UFA

only preempts ordinances that regulate the *lawful* possession of firearms:

> No county, municipality or township may in any manner
> regulate the *lawful* ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition
> components when carried or transported *for purposes not
> prohibited by the laws of this Commonwealth.*

18 Pa.C.S. § 6120(a). Because it is illegal for unsupervised children to carry guns

in public areas, the ordinance is not preempted.

---

[9] The state court agreed in the related case of *U.S. Law Shield* that Harrisburg can
ban discharge. Ex. 3 p. 9-10.

15

The statute is clear:

> [T]he County may not enact an ordinance which
> regulates firearm possession *if* the ordinance would make
> the otherwise lawful possession of a firearm *unlawful*.
> Thus, if the County's ordinance pertains only to the
> unlawful possession of firearms, i.e., possession
> "prohibited by the laws of this Commonwealth," then
> section 6120(a) of the Crimes Code does not preempt the
> County's ordinance.

*Minich v. Cnty. of Jefferson*, 869 A.2d 1141, 1143 (Pa.Commw. 2005)(emphasis in

original)(*Minich I*).[10] Harrisburg's ordinance does not restrict lawful gun

possession because of the state child gun ban.[11]

### 3. Reporting:

The requirement that persons report a lost or stolen targets the *unlawful*

transfer of firearms (theft and straw purchases). Accordingly, the UFA does not

apply. The UFA has two elements:

> No county, municipality or township may in any manner
> regulate
>
> [1] the lawful ownership, possession, transfer or
> transportation of firearms, ammunition or ammunition

---

[10] Oddly, the Commonwealth Court reached the opposite interpretation in
*NRA v. Philadelphia*, 977 A.2d at 82. The Commonwealth Court felt bound by the
decision in *Ortiz v. Com.*, 681 A.2d 152 (1996), but the statutory language is clear
and *Ortiz* did not even address whether municipalities can restrict *unlawful*
possession.

[11] The state court disagreed because of the UFA's hunting exception. Ex. 3 p. 6.
Plaintiffs do not demonstrate that Harrisburg enforces the ordinance in a way to
restrict hunting. Further, Harrisburg's statutory authority to prohibit discharge
gives it authority to prohibit hunting as well and negate the exception.

16

components

> [2] *when carried or transported for purposes not prohibited by the laws of this Commonwealth.*

18 Pa.C.S. §6120(a). A person who loses a firearm clearly does not possess it any longer. So whoever has the gun now, it is not "carried or transported for purposes not prohibited by the laws of this Commonwealth."[12]

### 4. **Parks:**

As explained above, the Third Class City Code permits Harrisburg to "*prevent* discharge" and "*prevent* the carrying of concealed deadly weapons." 53 Pa.C.S. §37423. The only question left is whether Harrisburg can also ban *openly* carry in parks. The open carry ban works to *prevent* discharge, the Code authorizes Harrisburg to regulate all conduct in its property and parks, and DCNR bans guns in parks.

*Dillon* provides support even though the Court held that the UFA preempts Erie's park ban. The Court noted two valid issues that Erie did not raise:

> Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and regulations

---

[12] The state court disagreed with this analysis although it ultimately did not resolve whether the UFA preempts the ordinance. Ex. 3 p. 7-9. The second prong of the statute compels a different result—requiring proof that the gun is (*present tense*) "carried or transported for purposes not prohibited by the laws of this Commonwealth."

17

concerning the use and occupation of [its] parks and playgrounds by the public generally...." It could be argued that the City may be empowered under that grant of power from the State to regulate the possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted pursuant to its general police powers. Similarly, Section 11.215 of the regulations of the Commonwealth's Department of Conservation and Natural Resources, 17 Pa.Code § 11.215, generally prohibits "[p]ossessing an uncased device, or uncasing a device, including a firearm, ... that is capable of discharging or propelling a projectile ..." in state parks, subject to a number of enumerated exceptions.

83 A.3d at n.9.

As *Dillon* notes, Harrisburg has authority to regulate guns on city property *and* state regulations ban guns in parks anyway. Harrisburg's statutory authority to regulate its property has at least two sources:

In exercising its discretion to make decisions that further the public interest under terms it deems most beneficial to the city, council shall have the power and authority, subject to any restrictions, limitations or exceptions as set forth in this act, to do any of the following:

(1) ...manage real and personal property.

53 Pa.C.S. §37402.1(a).

The council of each city shall have power to enact, make, adopt, alter, modify, repeal and enforce in accordance with this act ordinances, resolutions, rules and regulations, not inconsistent with or restrained by the Constitution of Pennsylvania and laws of this Commonwealth, that are either of the following:

18

> (1) …necessary for the proper management, care and control of the city… and the maintenance of the peace, good government, safety and welfare of the city…

53 Pa.C.S. §37435.

The *Minich II* Court upheld courthouse gun bans due to similar grants of authority:

> Section 509(a) of the County Code allows county commissioners to adopt ordinances regulating the affairs of a county. Section 509(c) of the County Code allows county commissioners to prescribe fines and penalties for violations of a "public safety" ordinance. 16 P.S. § 509(c). Here, the County ordinance regulates the affairs of the County, specifically the safety of members of the public who enter the Jefferson County Court House.
>
> Moreover, section 913(e) of the Crimes Code requires that each county make lockers available at a building containing a court facility for the temporary checking of firearms by persons legally carrying the firearms. 18 Pa.C.S. § 913(e). The County ordinance simply implements this provision.

919 A.2d at 361. The Third Class City Code explicitly authorizes Harrisburg's concealed carry ban. The open carry ban manages city property, and cares for and maintains the peace, safety, and welfare. Finally, the open carry park ban only restricts *unlawful* conduct due to the DCNR gun ban. 17 Pa.Code § 11.215.[13][14]

---

[13] Harrisburg mentions for the Court's benefit that the state funds for Harrisburg's parks come with a legal duty to comply with DCNR regulations.
[14] The state court found that the UFA preempts this ordinance. Ex. 3 p. 5. The DCNR park regulation and Third Class City Code compel a different result.

19

**5. Emergencies:**

Because the Third Class City Code authorizes Harrisburg to *prevent* discharge and concealed carry, the only question whether Harrisburg can ban open carry during emergencies. During emergencies, the Code specifically allows the Mayor during an emergency to prohibit "any other activities as the mayor reasonably believes would cause a clear and present danger to the preservation of life, health, property or the public peace." 53 Pa.C.S. §36203(e)(3)(iv),(vi). The emergency ordinance implements this grants of authority, allowing the Mayor to determine whether open carry during an emergency endangers the public. Further, Harrisburg only regulates unlawful conduct because the UFA bans carrying guns during declared emergencies. 18 Pa.C.S. §6107.[15]

## H. The Mayor and Chief have not harmed Plaintiffs.

Plaintiffs have not demonstrated that the Mayor or Chief have harmed them or will. Both took office after enactment of every single ordinance, and neither has authority to repeal the ordinances.

## I. The Mayor and Chief violated no clear federal law.

The Mayor and Chief are protected from suit unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

---

[15] The state court found that the UFA preempts this ordinance based upon the UFA's concealed carry exception. Ex. 3 p. 5-6. However, Harrisburg's explicit authorization to ban concealed carry gives it authority to negate the exception.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

To defeat qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*per curiam*) (unanimous) (prior Third Circuit decision did not make violation clear). *See Lane v. Franks*, 134 S. Ct. 2369, 2383 (2014) (unanimous) (Eleventh Circuit decisions not sufficiently clear). Plaintiffs cannot show that the Third Circuit, which still questions whether the Second Amendment applies outside the home *at all*, bars Harrisburg's reasonable time, place, and manner restrictions on public carrying.

## J. The Mayor and Chief possess high official immunity.

Under state law, the Mayor and Chief have high official immunity for "all statements made *and acts*..." *Feldman v. Hoffman*, 2014 WL 7212601, at *3 (Pa.Commw. Dec. 19, 2014)(emphasis added). The Mayor and Chief are clearly high officials as courts have given high official immunity to a state police captain and a municipal mayor, coroner, deputy commissioner, revenue commissioner, comptroller, architect, attorney, and parole superintendent. *Id.* at *4 (collecting cases). *See Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001)(unanimous)(assistant district attorney).

21

### K. **The official capacity claims are redundant.**

The official capacity claims are redundant with the claim against Harrisburg.

*Baez v. Lancaster County*, 487 Fed.App'x. 30, 32 (3d Cir. 2012).

### L. **Pennsylvania's Constitution does not provide claims for damages.**

Plaintiffs cannot recover damages for the Pennsylvania Constitution claim.

*Jones v. City of Phila.*, 890 A.2d 1188, 1208 & n.33 (Pa.Commw. 2006).

## V.   Conclusion:

This Court should dismiss the federal claims and stay the state law

preemption claims or, in the alternative, retain supplemental jurisdiction.

Respectfully submitted,

Lavery Law

*s/ Frank J. Lavery*
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

March 6, 2015

## Certification of Counsel

I certify that this brief complies with the word limit in Local Rule 7.8. The brief contains 5,000 words, including footnotes. I use the word count feature in Microsoft Word to obtain this number.

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire

Dated: March 6, 2015

## Certificate of Service

I certify that on this date, I served a true and correct copy of this filing through this Court's ECF to the following:

Joshua Prince, Esquire
*joshua@princelaw.com*

> *s/ Amyra W. Wagner*
> Amyra W. Wagner
> Legal Secretary to Josh Autry

Dated: March 6, 2015

24

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | 1:15-cv-322 |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock | : | |
| Plaintiffs | : | (Judge Yvette Kane) |
| v. | : | |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | Jury Trial Demanded |

**Brief in Opposition to
<u>Motion to Remand</u>**

Lavery Law

<u>*s/ Frank J. Lavery*</u>
Frank J. Lavery, Esquire
Pennsylvania Bar No. 42370

<u>*s/ Joshua M. Autry*</u>
Joshua M. Autry, Esquire
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Attorneys for Harrisburg, Mayor Papenfuse,
and Chief Carter

March 9, 2015

## Table of Contents

I.  Procedural History:................................................................3

II.  Facts:...........................................................................5

III.  Question Presented:...........................................................5

IV.  Argument: .....................................................................6

   A.  This Court has jurisdiction over the Section 1983 claim. .............................6

   B.  This Court cannot decline jurisdiction over a federal claim. .........................7

   C.  This Court has supplemental jurisdiction over all state law claims. ...............9

   D.  The federal claims predominate. ................................................12

   E.  This Court should not abstain.....................................................14

   F.  Defendants removed the entire case. ...........................................15

   G.  Defendants notified Plaintiffs and the state court.........................17

   H.  This Court should not remand because of procedural defect. .......................17

   I.  This Court should excuse the caption error...................................20

   J.  This Court should excuse the cover sheet error..............................20

   K.  Plaintiffs did not seek concurrence.............................................23

V.  Conclusion:....................................................................25

## Table of Authorities

**Cases**

*Albert v. Bayerische Motorenwerke*, 45 F. App'x 170 (3d Cir. 2002)....................18

*Barney v. Latham*, 103 U.S. 205 (1880) ................................................................15

*Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 785 (3d Cir. 1995) ......... 5, 11, 13

*Bowman v. Weeks Marine*, 936 F. Supp. 329 (D.S.C. 1996)...................................15

*Boyce v. St. Paul Fire & Marine Ins.*, 1993 WL 21210 (E.D. Pa. Jan. 28, 1993)...19

*Busby v. Capital One*, 759 F.Supp.2d 81 (D.D.C.2011).........................................16

*Cain v. Hyatt*, 1989 WL 17551 (E.D. Pa. Mar. 1, 1989).........................................20

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 354 (1988) .....................................6

*Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997)................................. 5, 9, 14

*Cintron v. Union Pac. R.*, 813 F.2d 917 (9th Cir. 1987) ..........................................20

*Cosper v. Frederick*, 73 B.R. 636 (Bankr. N.D.Fla. 1986)......................................20

*Covington v. Indem. Ins.*, 251 F.2d 930 (5th Cir. 1958) ..........................................17

*Disher v. Citigroup Global Markets*, 487 F. Supp. 2d 1009 (S.D.Ill. 2007) ...........15

*Dri Mark Products, Inc. v. Meyercord*, 194 F. Supp. 536 (S.D.N.Y. 1961)...........19

*Early v. Bankers Life & Cas.*, 853 F. Supp. 268 (N.D.Ill. 1994) ............................21

*Efford v. Milam*, 368 F. Supp. 2d 380 (E.D. Pa. 2005) ...........................................18

*Evans v. Johns Hopkins Health Sys.*, 2000 WL 1670985 (D.Md. Oct. 16, 2000)...22

*Fetters v. Paragon Way*, 2010 WL 5174989 (M.D. Pa. Dec. 15, 2010) .................23

*Grecco v. Sanofi Winthrop Pharm.*, 1997 WL 68551 (N.D.Cal. Feb. 13, 1997) ....22

*Henderson v. Harrah's Marina Hotel Casino*, 110 F.R.D. 66 (E.D. Pa. 1986) ......21

*In re Horob*, 54 B.R. 693 (Bankr. D.N.D. 1985)....................................................20

*In re Soares*, 2014 WL 3397674 (Bankr. N.D.Cal. July 11, 2014) .........................20

*Khan v. Bank of Am.*, 2012 WL 1495592 (D.N.J. Apr. 27, 2012)............................16

*La Maina v. Brannon*, 804 F. Supp. 607 (D.N.J. 1992) ..........................................16

*Miller v. Lovett*, 879 F.2d 1066, 1072 (2d Cir.1989)...............................................12

*Miller v. Trometter*, 2012 WL 5933015 (M.D. Pa. Nov. 27, 2012) ........................19

*Mincy v. Staff Leasing*, 100 F. Supp. 2d 1050 (D.Ariz. 2000) .............................5, 8

*Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)...........................................8, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Const.*, 460 U.S. 1, 26 (1983).................14

*Paluch v. Rambo*, 453 F. App'x 129 (3d Cir. 2011) ................................................17

*Plumb v. C.I.R.*, 2005 WL 2249118 (S.D.Fla. Aug. 16, 2005)................................20

*Polyplastics v. Transconex*, 713 F.2d 875 (1st Cir. 1983).......................................15

*Quackenbush v. Allstate*, 517 U.S. 706, 721 (1996)................................................14

*Scheibler v. Highmark Blue Shield*, 243 F. App'x 691 (3d Cir. 2007) ....................17

*Scheibler v. Highmark Blue Shield*, 243 F. App'x 691, 694 (3d Cir. 2007) ..... 17, 21

*Schmidt v. Cnty. of Nevada*, 2011 WL 445836, at *4 (E.D.Cal. Feb. 8, 2011) 11, 14

*The Pers. Touch v. Lenox*, 122 F.R.D. 470 (E.D.Pa. 1988)....................................22

**Statutes**

28 U.S.C. §1331 ..............................................................................................5, 18
28 U.S.C. §1441 .......................................................................................................7
28 U.S.C.A. §1367 ...............................................................................................8, 9
42 U.S.C. §1983 .....................................................................................................19

**Treatise**

Wright & Miller, 14B Fed. Prac. & Proc. Juris. §3722.3 (4th ed.) ...........................8

3

## I.    Procedural History:

Plaintiffs filed suit in state court on January 16th against Harrisburg, Mayor Papenfuse, and Chief Carter. Kim Stolfer and Plaintiffs' attorney Joshua Prince verified the Complaint. Ex. 1. Howard Bullock and Joshua First did not.

The Complaint was served on the Defendants on January 20th. Ex. 2. On January 28th, defense counsel entered their appearance for Defendants. Ex. 3. Defense counsel inadvertently left Howard Bullock off the caption. On January 29th, Bullock and First submitted verifications. Ex. 4.

Defendants timely filed a notice of removal with the Complaint attached on February 13th, and promptly served notice on the state court that same day (Ex. 5) with the notice of removal and Complaint attached. Defendants served Plaintiffs' counsel by mail and through ECF. As with the entries of appearance, defense counsel mistakenly left Bullock out of the caption of these documents and the civil cover sheet.

Defendants timely moved to dismiss the case on February 20th, accidentally without mentioning Bullock as with the prior filings. The state court transferred the case that same day. (Ex. 6). Defense counsel did not learn of this error until Plaintiffs filed their motion to remand on February 22nd, arguing that Bullock's claims—identical to the other individual Plaintiffs—remain in state court due to

defense counsel's clerical error. As the Clerk's direction, Plaintiffs refiled the brief in support of remand as a separate entry the following day.

Defense counsel received 10 day notices of Bullock's intent to seek a default in state court on February 24th. Ex. 7. On February 27th, Defendants filed a motion in state court to strike the 10 day notices, arguing that the entire case was removed in spite of counsel's error and that the state court lacks jurisdiction. Ex. 8. That night, Plaintiffs filed a motion for default in this Court. At the Clerk's direction, Plaintiffs filed a proposed order on March 2nd.

On March 3rd, Bullock filed a praecipe for default in state court (Ex. 9), and the prothonotary entered a judgment against Defendants (Ex. 10), as a pure ministerial act. Judge Dowling has scheduled a conference on the matter for March 17th. (Ex. 11).

## II.   Facts:

Defense counsel failed to include Howard Bullock in the caption when they entered their appearances in January and when they removed the case in February.

## III.   Question Presented:

Does this Court have jurisdiction over the Section 1983 claim? Yes.

Does this Court have jurisdiction over the related state claims? Yes.

Should this Court remand the Section 1983 claim because of defense counsel's clerical error? No.

5

Should this Court remand because of related state claims? No.

IV.   **Argument:**

A. **This Court has jurisdiction over the Section 1983 claim.**

A claim under Section 1983 clearly asserts a federal question. *Borough of W.*

*Mifflin v. Lancaster*, 45 F.3d 780, 785 (3d Cir. 1995). This Court has original

jurisdiction over any claim arising under the federal Constitution or laws. 28

U.S.C. §1331. A claim under Section 1983 arises under both. Further, Section

1343(a)(3) and (4) give original jurisdiction over civil rights actions specifically.

Plaintiffs did not have to bring the federal claim, but made a conscious

decision to do so. Because of their choice, removal was proper. *See City of*

*Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997)("The District Court's

original jurisdiction derives from ICS' federal claims, not its state law claims.");

*Mincy v. Staff Leasing*, 100 F. Supp. 2d 1050, 1053 (D.Ariz. 2000)("Plaintiffs

chose to plead a federal cause of action under FLSA, thus subjecting themselves to

possible removal.").

Even where a case involves non-removable state claims, this Court still has

jurisdiction over federal claims. *Int'l Coll. of Surgeons*, 522 U.S. at 168 ("ICS'

view that the district courts lack jurisdiction even over the *federal* claims in its

actions stems from the mistaken idea... that the other, nonfederal claims somehow

take the complaints in their entirety (including the federal claims) out of the federal

6

courts' jurisdiction."). As explained below, this Court has jurisdiction over the state claims too.

### B. This Court cannot decline jurisdiction over a federal claim.

Section 1441(c) now makes clear that this Court cannot decline federal question jurisdiction in a removed case. Plaintiffs rely upon *Borough of W. Mifflin*, but that case was interpreting the 1990-version of Section 1441(c), which stated:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.[1]

In 2011, Congress amended Section 1441(c) to state:

> (1) If a civil action includes—

> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

> (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

---

[1] For the same reason, Plaintiffs' citation to *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 354 (1988), is not helpful. *Carnegie-Melon* relied on Congress's silence at the time. *Carnegie-Mellon* also involved discretion to remand or dismiss state claims *after dismissal of the federal claims* whereas Plaintiffs seek remand of the *federal* and state claims.

7

the entire action may be removed if the action would be
removable without the inclusion of the claim described in
subparagraph (B).

(2) Upon removal of an action described in paragraph
(1), the district court shall sever from the action all
claims described in paragraph (1)(B) and shall remand
the severed claims to the State court from which the
action was removed. ...

Subsection (c) by its terms does not apply here because all claims are

"within the original or supplemental jurisdiction of the district court..."

§1441(c)(1)(B). Even if it *did* apply, "the entire action may be removed..."

§1441(c)(1). Further, the remedy for removal of non-removable claims is not

complete remand, but only severance of non-removable claims and partial remand

of those claims. §1441(c)(2).

Wright and Miller explain that, where courts used to wrestle with

determinations of whether supplemental claims are removable, the analysis is

simple: all claims are initially removed and this Court thereafter severs and

remands any non-removable claims:

Section 1441(c) as amended in 2011 eliminates these
interpretive difficulties. It does so by focusing on two
sets of claims: federal question claims and claims within
supplemental jurisdiction, on the one hand, and claims
that fall within neither federal question nor supplemental
jurisdiction or that have been made not removable by
statute, on the other hand. The statute eliminates any
middle ground, and makes claims that fall within neither
federal question nor supplemental jurisdiction (and
claims that have been made not removable by statute)

8

> removable if but only if they are part of a civil action
> along with a federal question claim that falls within the
> jurisdiction of the federal courts under 28 U.S.C.A. §
> 1331.

14B Fed. Prac. & Proc. Juris. § 3722.3 (4th ed.). It is now clear that this Court

cannot decline jurisdiction over federal claims simply because a case also includes

non-removable claims. In this case, all claims are removable, rendering Section

1441(c)'s severance provision inapplicable.

### C. This Court has supplemental jurisdiction over all state law claims.

Under 28 U.S.C.A. §1367(a), this Court has "supplemental jurisdiction over

all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of

the United States Constitution." All claims here are based upon the same facts and

form the same case and controversy.

"Federal courts are reluctant to remand state claims, once they obtain

original jurisdiction based on federal question, where all the claims derive from the

same set of facts." *Mincy*, 100 F. Supp. 2d at 1053. The question is whether the

claims arise from a "common nucleus of operative fact." *United Mine Workers of*

*Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "But if, considered without regard to their

federal or state character, a plaintiff's claims are such that he would ordinarily be

expected to try them all in one judicial proceeding, then, assuming substantiality of

the federal issues, there is power in federal courts to hear the whole." *Id.*

9

The Supreme Court explained in *International College of Surgeons*:

> [O]nce the case was removed, the District Court had original jurisdiction over ICS' claims arising under federal law, and thus could exercise supplemental jurisdiction over the accompanying state law claims so long as those claims constitute "other claims that ... form part of the same case or controversy." § 1367(a). We think it clear that they do. The claims for review of the Commission's decisions are legal "claims," in the sense that that term is generally used in this context to denote a judicially cognizable cause of action. And the state and federal claims "derive from a common nucleus of operative fact," Gibbs, supra, at 725, 86 S.Ct., at 1138, namely, ICS' unsuccessful efforts to obtain demolition permits from the Chicago Landmarks Commission. That is all the statute requires to establish supplemental jurisdiction (barring an express statutory exception, see § 1367(a)).

*Int'l Coll. of Surgeons*, 522 U.S. at 165-66.

It is true that "district courts can decline to exercise jurisdiction over pendent claims..." *Id.* at 172. Those reasons are "if—

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. §1367(c). But this Court cannot decline jurisdiction over federal claims.

10

In *Borough of West Miflin*, the Court held that the following claims were part of the same case and controversy:

> (1) state law claims of malicious prosecution, malicious abuse of process, assault, and conspiracy against all defendants; (2) a negligence claim against the municipal defendants; (3) a negligence claim against the DeBartolo defendants; and (4) a federal claim under 42 U.S.C. § 1983 which alleged that the municipal defendants and the DeBartolo defendants conspired to deprive Lindsey and Coughanour of their civil rights through harassment, assault, false arrest, malicious prosecution, and abuse of process in violation of the 4th, 5th, and 14th amendments.

45 F.3d at 783-84, 787.

Under *Borough of West Mifflin,* this Court has clear supplemental jurisdiction over the pendant state constitutional claim and preemption claim. The preemption claim derives from the same nucleus of operative facts as the Second Amendment claim under Section 1983. Further, this Court will analyze the elements of Harrisburg's gun ordinances and the related Pennsylvania gun laws in deciding the Second Amendment claim anyway.

The state law preemption does involve different issues of standing under Act 192 of 2014, which is subject to the Commonwealth Court challenge. This Court should simply stay consideration of that claim until the Commonwealth Court resolves the matter. If Act 192 is struck down, then Plaintiffs will have to satisfy

the traditional standing requirement and the law on standing in federal and state courts both require proof of actual or imminent harm.

### D. The federal claims predominate.

Plaintiffs argue that the preemption claim predominates. As mentioned above, dismissal of the *federal* claim is not permissible on this basis under Section 1441(c). Nor is dismissal of the state claim.

"[W]hen a plaintiff alleges a violation of constitutional rights under 42 U.S.C. § 1983, it is highly unlikely that state law tort claims will substantially predominate." *Schmidt v. Cnty. of Nevada*, 2011 WL 445836, at *4 (E.D.Cal. Feb. 8, 2011). The Third Circuit has explained the narrowness of this exception:

> When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost. For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court. This will normally be the case only where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage," *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1140—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

*Borough of W. Mifflin*, 45 F.3d at 789.

In this case, "[i]t is true that the state claims here outnumber the federal claims. The 'substantially predominate' standard, however, is not satisfied simply

12

by a numerical count of the state and federal claims the plaintiff has chosen to

assert on the basis of the same set of facts." *Id.* at 789.

The Section 1983 claim is not a mere appendage to the Complaint. The

Complaint in reality has three claims for each ordinance: the ordinance violates the

federal right to bear arms, the state right to bear arms, and the preemption statute.

The right to bear arms claims are identical under federal and state law as

Pennsylvania courts have not held the state constitutional provision to be any

broader in scope that its federal counterpart. *Id.* at 790 (overlap between state and

federal standards supports federal jurisdiction). *Cf. Miller v. Lovett*, 879 F.2d 1066,

1072 (2d Cir.1989)(abuse of discretion to dismiss state claims for assault and

negligence even though Section 1983 involves higher standard for liability).

By ruling on the Second Amendment claims, this Court will rule on *two-*

*thirds* of the case. This is not a tail wagging the dog scenario. The Complaint

repeatedly refers to the federal right to bear arms and Section 1983 throughout,

even explaining recent U.S. Supreme Court case law. Plaintiffs argue that, if they

prevail on the preemption claims, then they do not need the right to bear arms

claims to obtain an injunction. Plaintiffs' arguments—if accepted—would apply in

every, single case seeking injunctive relief under federal and state law. As

explained below, abstention should be the exception, not the rule.

The Third Circuit has held that Plaintiffs' argument *favors* federal

jurisdiction:

> The remedy sought based on the state claims is the same
> remedy sought based on the federal claims—damages for
> the same set of injuries to the plaintiffs. …[T]he
> difficulty of avoiding duplicative recoveries is a factor
> tending to weigh against litigating related federal and
> state claims in different fora.

*Borough of W. Mifflin*, 45 F.3d at 789. Further, Plaintiffs' argument is incorrect.

The Section 1983 claim will not vanish if Plaintiffs receiving injunctive relief on

the preemption claim. Under Section 1983, Plaintiffs seek declaratory relief,

injunctive relief, attorney fees, and damages. These claims will remain until

judgment is entered on the claims.

This Court is best suited to consider the federal constitutional question. This

Court's early resolution of qualified immunity is essential, which protects the

Mayor and Chief *from* the burdens of litigation. As explained in the motion to

dismiss brief, qualified immunity hinges upon Third Circuit precedent. In addition,

if qualified immunity is denied by this Court, the Mayor and Chief have a right to

seek interlocutory appeal directly to the Third Circuit. For these reasons, this Court

has substantial reason to resolve the federal claim.

### E. **This Court should not abstain.**

The abstention doctrine does not permit abstention over the Section 1983

claim. "Although in some rare circumstances the presence of state-law issues may

weigh in favor of that surrender, the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Const.*, 460 U.S. 1, 26 (1983). Further, abstention does not permit remand of claims for damages. *Schmidt*, 2011 WL 445836, at *5(citing *Quackenbush v. Allstate*, 517 U.S. 706, 721 (1996))

Under the abstention doctrine, "district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies." *Int'l Coll. of Surgeons*, 522 U.S. at 174. Generally, the Supreme Court has approved abstention "only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether." *Quackenbush*, 517 U.S. at 719(collecting cases). Accordingly, abstention (even if appropriate) would only justify staying the preemption claim.

But courts should rarely grant abstention, and only in extraordinary and narrow circumstances. *Id.* at 728. For example, abstention is typically due to an interest in not disturbing complex administrative regimes in state court. *Id.* at 723-27. This case does not involve any extraordinary circumstances warranting abstention.

F. **Defendants removed the entire case.**

15

Plaintiffs claim that Bullock's lawsuit is still in state court. Plaintiffs cite no authority for their claim that a defendant can *partially* remove a case. As explained herein, removal brought the entire case to federal court. It is for this Court, not the state court, to determine whether removal was proper and whether complete or partial remand should occur.

A notice of removal, even if defective, operates to remove the entire action:

> Polyplastics' premise—that the claim against Rios remained in Humacao court—is simply incorrect. … Removal… extends to the "case" or "action"—i.e., to the whole case and all parties and claims. *See* 28 U.S.C. §§ 1441 (removal of "civil action"), 1446(a) ("civil action"), 1446(e) (state court to proceed no further when "civil action" is removed unless and until "case" is remanded).

*Polyplastics v. Transconex*, 713 F.2d 875, 877 (1st Cir. 1983). *See Disher v. Citigroup Global Markets*, 487 F. Supp. 2d 1009, 1017 n.5 (S.D.Ill. 2007)(state court lacks power to act after removal *even if removal was improper*); *Bowman v. Weeks Marine*, 936 F. Supp. 329, 331 n.1 (D.S.C. 1996) (same).

Section 1441(a) speaks of removing "any civil action," not claims or parties. Section 1441(c)(2) permits this Court to sever off and remand any non-removable "claims." But event Subsection (c) is clear that, where an action contains non-removable "claims," removal still operates to bring "the entire action" to federal court unless and until this Court severs and remands non-removable claims. *See Barney v. Latham*, 103 U.S. 205, 213 (1880)("…Congress determined that the

16

removal of the separable controversy to which the judicial power of the United States was, by the Constitution, expressly extended, should operate to transfer the whole suit to the federal court.").

### G. Defendants notified Plaintiffs and the state court.

Section 1446 requires that Defendants file a notice of removal with this Court and promptly notify the state court and Plaintiffs. Defendants notified Plaintiffs' counsel and the state court the very day of removal. Courts recognize that "a good faith effort to provide written notice to the plaintiff satisfies the requirement absent any prejudice to the plaintiff...." *Busby v. Capital One*, 759 F.Supp.2d 81, 86 (D.D.C.2011)(collecting cases). *See Khan v. Bank of Am.*, 2012 WL 1495592, at *3 (D.N.J. Apr. 27, 2012).

Plaintiffs cite *La Maina v. Brannon*, 804 F. Supp. 607, 613-14 (D.N.J. 1992), for the proposition that the state court retains jurisdiction until notified of removal. But here, the state court and Plaintiffs had immediate and full knowledge of removal, and the state court transferred the case on February 20th—well before the Prothonotary entered the March 3rd default.

### H. This Court should not remand because of procedural defect.

This Court has clear jurisdiction over the Section 1983 claim. This Court should not let Plaintiffs keep a federal question out of federal court by elevating form over substance.

Procedural defects in a notice of removal do not deprive this Court of jurisdiction. *Covington v. Indem. Ins.*, 251 F.2d 930, 933 (5th Cir. 1958). The Third Circuit has recognized that allegations of procedural defect in a notice of removal lack merit absent prejudice to the plaintiffs:

> We similarly find that Scheibler's arguments regarding lack of notice of removal and other so-called "procedural defects" are without merit. The Notice of Removal provided by the Defendants contains a Certificate of Service indicating that Scheibler's counsel was served with the Notice. Indeed, the record contains evidence that the District Court called Scheibler's attorney to inquire about the removal. In addition, Scheibler was in no way prejudiced by the Defendants' failure to file a Disclosure Statement under Federal Rule of Civil Procedure 7.1. Such statements are intended to provide judges with information to determine if any financial interests require the judge to disqualify him or herself from the case. There is no indication that the District Judge in this case had any financial stake in the Defendant corporations that would require recusal, and indeed the same District Judge was presiding over the ERISA action between these parties when the Notice of Removal was filed. As such, we conclude that there is no merit to any of the arguments advanced by the Appellant in this appeal.

*Scheibler v. Highmark Blue Shield*, 243 F. App'x 691, 694 (3d Cir. 2007).

More recently, in *Paluch v. Rambo*, 453 F. App'x 129 (3d Cir. 2011), this Court denied remand even though the notice of removal was filed about four months late. *Id.* at n.2. The Third Circuit held that this Court properly did so, because the matter was purely procedural, not jurisdictional:

> Critically, "§ 1446(b)'s thirty-day time limit for removal
> is a procedural provision, not a jurisdictional one." *Farina
> v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir.2010). Because
> the District Court properly exercised federal-question
> jurisdiction under 28 U.S.C. § 1331 throughout the
> proceedings below, any violation of § 1446(b) would be
> considered a procedural defect only. *See Parrino v. FHP,
> Inc.*, 146 F.3d 699, 703 (9th Cir.1998), *superseded by
> statute on other grounds; Huffman v. Saul Holdings Ltd.
> P'ship*, 194 F.3d 1072, 1076–77 (10th Cir.1999); *see also
> Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567,
> 574, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). Such
> procedural defects give way to concerns of judicial
> economy where the District Court's ultimate exercise of
> subject matter jurisdiction is proper and its resolution of
> the merits is correct. *See Caterpillar, Inc. v. Lewis*, 519
> U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)
> (rejecting party's argument that "an 'all's well that ends
> well' approach" is inappropriate in removal cases). This
> can be true even where the party opposing removal
> objects in a timely manner and the federal court
> incorrectly proceeds in spite of that objection. *See
> Caterpillar, Inc.*, 519 U.S. at 74–76, 117 S.Ct. 467;
> *Huffman*, 194 F.3d at 1079.

*Id.* at 132.[2]

Plaintiffs have suffered no prejudice. They received notice the very day of

removal. Defendants, on the other hand, will suffer if deprived of a federal forum

due to a clerical error by their counsel. Courts have found similar claims lacking in

merit. *See Efford v. Milam*, 368 F. Supp. 2d 380, 383 (E.D. Pa. 2005)("plaintiffs'

---

[2] *Albert v. Bayerische Motorenwerke*, 45 F. App'x 170, 171 (3d Cir. 2002), relied
upon by Plaintiffs, is inapposite as that case addresses whether remand for a
procedural defect is *appealable*.

19

procedural challenge to defendants' removal petition is without merit" because defendant cured defects); *Boyce v. St. Paul Fire & Marine Ins.*, 1993 WL 21210, at *3 (E.D. Pa. Jan. 28, 1993); *Dri Mark Products, Inc. v. Meyercord*, 194 F. Supp. 536, 538 (S.D.N.Y. 1961)(procedural defect "argument has not merit").

The federal removal notice clearly informed Plaintiffs of the intent to remove the entire action. The opening indicates that "Defendants hereby remove this case." The notice refers to "Plaintiffs" collectively and to "a federal question," "a claim under 42 U.S.C. §1983," and "this action." The removal notice attaches the entire Complaint as Exhibit A. At no point does the removal notice express an intent to bifurcate this case into two. Further, the state court notice directs, "The state court shall proceed no further."

### I. This Court should excuse the caption error.

The only Rule of Civil Procedure to address captions is Rule 10(a), which only requires a *complaint* to name all the parties. Other pleadings can use *et. al.* or some other designation. But a notice of removal is not even a pleading at all, meaning that it need not list *any* party under the rules. In any event, Defendants will seek leave to amend to cure the error. *See Miller v. Trometter*, 2012 WL 5933015, at *9 (M.D. Pa. Nov. 27, 2012) (granting leave to amend to add party to caption of complaint).

### J. This Court should excuse the cover sheet error.

"Form JS 44 is not a pleading." *Cain v. Hyatt*, 1989 WL 17551, at *1 (E.D. Pa. Mar. 1, 1989). No statute or rule of procedure requires a cover sheet. "There is no express code provision or rule requiring that a complaint be accompanied by a cover sheet and filing fee before the Clerk is allowed to accept it for filing." *Cosper v. Frederick*, 73 B.R. 636, 637 (Bankr. N.D.Fla. 1986). Rather, "a deficiency in a civil cover sheet is a lack of conformity with a form requirement..." *Plumb v. C.I.R.*, 2005 WL 2249118, at *2 (S.D.Fla. Aug. 16, 2005). Accordingly, courts do not punish plaintiffs on the merits for failing to file a cover sheet at all or for errors in the cover sheet. *Cintron v. Union Pac. R.*, 813 F.2d 917, 920 (9th Cir. 1987). *See In re Soares*, 2014 WL 3397674, at *2 (Bankr. N.D.Cal. July 11, 2014) (rejecting argument that claims not listed in cover sheet are not raised); *In re Horob*, 54 B.R. 693, 696 (Bankr. D.N.D. 1985) ("the failure to provide an adversary cover sheet should not operate to foreclose the Credit Union from proceeding to the merits of its claim").

The Third Circuit has held that a plaintiff's arguments regarding defects in a civil cover sheet on removal lack merit:

> We also find no merit to Scheibler's complaints regarding defects in the civil cover sheet the Defendants filed with the Notice of Removal. "The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers." *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir.1989).

*Scheibler*, 243 F. App'x at 694.

Indeed, the form, on top of both pages, indicates that it has no force in law:

> The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.

Doc. #1-2. Of particular note, the form does not even direct the use of a cover sheet

for notices of removal, only "for each civil complaint filed."

Highlighting the frivolity of a plaintiff's claim that his jury demand

designation on a cover sheet, reflected on the docket, constituted a valid jury

demand, one Court explained:

> It is axiomatic that a civil cover sheet notation reflecting a jury demand does not comply with the demand procedures specified under Fed.R.Civ.P. 38(b). Further, the administrative information, including jury demands, contained in the civil docket sheets are derived from the civil cover sheets. Thus, the court will not discuss this point any further.

*Early v. Bankers Life & Cas.*, 853 F. Supp. 268, 271 n. 4 (N.D.Ill. 1994)(collecting

cases). *See Henderson v. Harrah's Marina Hotel Casino*, 110 F.R.D. 66, 67 (E.D.

Pa. 1986)(defendant's mistakenly checking "Yes" for jury trial demand on cover

sheet not binding); *Evans v. Johns Hopkins Health Sys.*, 2000 WL 1670985, at *1 n.

7 (D.Md. Oct. 16, 2000)(claims mentioned in cover sheet not part of case).

Likewise, the docket sheet information, which comes from the cover sheets,

is purely for administrative purposes. "The civil docket sheet is merely an

administrative instrument utilized by the court to assist it in the management of its

cases." *The Pers. Touch v. Lenox*, 122 F.R.D. 470, 471 (E.D.Pa. 1988). In any event,

Defendants will seek leave to amend the cover sheet to sure the error on the cover

sheet and docket. *Grecco v. Sanofi Winthrop Pharm.*, 1997 WL 68551, at *2

(N.D.Cal. Feb. 13, 1997)(granting leave to amend cover sheet where defendant

mistakenly listed principal place of business as in California rather than New York).

### K. **Plaintiffs did not seek concurrence.**

Plaintiffs did not seek concurrence as required by Local Rule 7.1 before

filing their motion to remand. While ordinarily defense counsel would not bring

such matters to the Court's attention, Plaintiffs failure prejudiced Defendants.

Notice of the caption error would have given Defendants an opportunity to cure the

defect.

On Wednesday, February 18th, Attorney Autry spoke to Attorney Prince

seeking concurrence in Defendants' motion to dismiss (filed Friday, February

20th). On that call, Attorney Prince did not mention Plaintiffs' then-forthcoming

motion to remand (filed Sunday, February 22nd). If he had done so, Defendants

23

could have amended the notice of removal without leave of court as the 30 day deadline to remove was Thursday, February 19th. Because Plaintiffs' failure to seek concurrence prejudiced Defendants, this Court should deny remand. *See Fetters v. Paragon Way*, 2010 WL 5174989, at *4 n.5 (M.D. Pa. Dec. 15, 2010) ("The Court notes that Plaintiff's motion would also be rightly stricken for failure to include a certificate of non-concurrence in accordance with Local Rule 7.1.") (Judge Kane).

**V.    Conclusion:**

This Court should not remand this case.

                              Respectfully submitted,

                              Lavery Law

                              *s/ Frank J. Lavery*
                              Frank J. Lavery, Esquire
                              Pennsylvania Bar No. 42370

                              *s/ Joshua M. Autry*
                              Joshua M. Autry, Esquire
                              Pennsylvania Bar No. 208459
                              225 Market Street, Suite 304
                              P.O. Box 1245, Harrisburg, PA 17108-1245
                              (717) 233-6633 (phone)
                              (717) 233-7003 (fax)
                              flavery@laverylaw.com
                              jautry@laverylaw.com
                              Attorneys for Harrisburg, Mayor Papenfuse,
                              and Chief Carter

March 9, 2015

**Certification of Counsel**

I certify that this brief complies with the word limit in Local Rule 7.8. The brief contains 4,938 words, including footnotes. I use the word count feature in Microsoft Word to obtain this number.

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire

Dated: March 9, 2015

**Certificate of Service**

I certify that on this date, I served a true and correct copy of this filing through

this Court's ECF to the following:

Joshua Prince, Esquire
*joshua@princelaw.com*

*s/ Joshua M. Autry*
Joshua M. Autry, Esquire

Dated: March 9, 2015

## Verification of Petition to Open or Strike

The averments are true upon my personal knowledge or information and

belief.  This statement is made subject to the penalties of 18 Pa.C.S. § 4904 relating

to unsworn falsification to authorities.

Frank J. Lavery, Esquire

<u>Certificate of Service</u>

I certify that on this date, I served a true and correct copy of this filing via

U.S. First Class mail, postage prepaid as follows:

Joshua Prince, Esquire
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA  19505

Aimee L. Paukovits
Legal Secretary to Frank J. Lavery, Esquire

Dated: March 12, 2015

30