**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Firearm Owners Against Crime,** | : | |
| **Kim Stolfer, and Joshua First,** | : | **No. 1:15-cv-322** |
| **Plaintiffs** | ; | |
| | : | **Hon. Yvette Kane** |
| **v.** | : | |
| | : | **Jury Trial Demanded** |
| **City of Harrisburg, Mayor Eric** | ; | |
| **Papenfuse, and Police Chief** | : | |
| **Thomas Carter,** | : | |
| **Defendants** | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO**
**DISMISS FEDERAL CLAIMS AND TO STAY OR REMAND STATE CLAIMS**

March 26, 2015

*/s/ Joshua Prince*
Joshua Prince, Esq.
PA ID 306521

PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com
*Attorney for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . 1

III.  QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Defendants did not file a timely Motion to Dismiss, as no parties'
claims are mentioned . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. Pennsylvania law preempts local ordinances, *even if* they are
duplicative of Commonwealth statutes. . . . . . . . . . . . . . . . . . . . . . 6

    1.    *The entire field of firearms regulation has been
preempted, making any concurrent legislation preempted.* . . . 6

    2.    *The DCNR only applies to state parks* . . . . . . . . . . . . . 12

    3.    *The state that defendants rely on has been repealed.* . . . 14

C. Defendants misinterpret *Heller*'s "longstanding prohibitions"
language. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D. Defendants have offered no evidence that FOAC has expended any
funds or incurred liabilities in any attempt to influence elections. . 22

E. The Mayor and Police Chief may be held liable. . . . . . . . . . . . . . . 23

    1.    *Defendants Papenfuse and Carter have caused harm to
Plaintiffs.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    2.    *Defendants Papenfuse and Carter are not immune under
high official immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    3.    *Defendants Papenfuse and Carter violated a clearly
defined right* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

F. Plaintiffs do not allege a claim for damages under the Pennsylvania
Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**Cases**

<u>**Federal**</u>

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) . . . . . . . . . . . . . . . . . . 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Atlantic City Assoc., LLC v. Carter & Burgess Consultants, Inc.*, 453 Fed. Appx.
 174, 181 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*District of Columbia v. Heller*, 554 U.S. 570 (2008)  . . . . 17, 18, 19, 20, 21, 26, 27

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) . . . . . . . . . . . . . . . . 18, 27, 27 n.18, 28

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) . . . . . . . . . 19 n.12

*Muscarello v. United States*, 524 U.S. 125 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 27

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d. Cir. 2008) . . . . . . . . . . . . . . . 4

<u>**State**</u>

*Borough of Langhorne Manor v. Clayton*, 196 A.584 (Pa. Super. 1938) . . . . . . . 15

*City of Erie v. Nw. Pa. Food Council*, 322 A.2d 407 (Pa.Cmwlth. 1974) . . . . . . 24

*City of Philadelphia v. Bartell*, 11 A.2d 563 (Pa. Super. 1940) . . . . . . . . . . . . . 15

*Clarke v. House of Representatives*, 957 A.2d 361 (Pa.Cmwlth. 2008). 2, 7, 7n.6, 8

*Commonwealth v. Hawkins*, 692 A.2d 1068 (Pa. 1997) . . . . . . . . . . . . . . . . . . . 13

*Commonwealth v. Musau*, 69 A.3d 754 (Pa. Super. 2013) . . . . . . . . . . . 16, 17 n.10

*Commonwealth v. Sitkin's Junk Co.*, 194 A.2d 199 (Pa. 1963) . . . . . . . . . . . . . . 15

*Council of Middletown Twp., Del. County v. Benham*, 523 A.2d 311 (Pa. 1987) ... 6

*Commonwealth v. Schab*, 383 A.2d 819 (Pa. 1978) . . . . . . . . . . . . . . . . . . . . . . . 25

*Dillon v. City of Erie*, 83 A.467 (Pa.Cmwlth. 2013) . . . . . . 16 n.9 & 10, 24, 25, 26

*Durham v. McElynn*, 72 A.2d 68 (Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Everhart v. PMA Insurance Group*, 938 A.2d 301 (Pa. 2007) . . . . . . . . . . . . . . 15

*Fonner v. Shandon, Inc.*, 724 A.2d 903 (Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . 16

*James v. Southeastern Pa. Transp. Auth.*, 477 A.2d 1302 (Pa. 1984) . . . . . . . . . 21

*Jonnet v. Bodick*, 244 A.2d 751 (Pa. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Montgomery v. City of Philadelphia*, 140 A.2d 100 (Pa. 1958) . . . . . . . . . . . . . . 25

*National Rifle Association v. Philadelphia*, 977 A.2d 78

    (Pa. Cmwlth. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8, 9

*Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996) . . . . . . . . . . . . . . . . 1, 6, 7, 8, 13

*Schneck v. City of Philadelphia*, 383 A.2d 227 (Pa.Cmwlth. 1978) . . . . . . . . . 7, 8

*U.S. Law Shield v. Harrisburg*, No. 2015-cv-00255-EQ . . . . . . . . . . . . . . . . . . . . 2

**Constitutions**

U.S. Const. amend. II . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.5, 4 n.5, 19  n.12, 27 n.18

Pa. Const. art. I, § 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 23, 29

**Statutes**

42 U.S.C.A. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18 Pa.C.S.A. § 5301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 Pa.C.S.A. § 6107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 Pa.C.S.A. § 6109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 14

18 Pa.C.S.A. § 6110.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 Pa.C.S.A. § 6120 . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9, 10, 11, 17, 17 n.10, 29

18 Pa.C.S.A. § 2707.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

53 P.a.C.S.A § 2962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

53 Pa.C.S.A. § 37491.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

53 P.S. § 3710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

53 P.S. § 41411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

53 P.S. § 41413 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Regulations

17 Pa.Code § 11.202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

17 Pa.Code § 11.215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

71 Pa.Code § 1340.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Rule of Civil Procedure

Fed.R.Civ.P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22

## Ordinances

3-345.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2, 2

3-345.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2

3-345.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2

3-345.99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2

3-399 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2

3-355.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2, 2

10-301.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2, 2

10-301.99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2

1-301.99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.2

## Scholarly Journals

Stephen P. Halbrook, "The Right of the People or of the State: Bearing Arms, Arming Militias, and the Second Amendment," 26 *Valparaiso Law Review*, 131-207 (Fall 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.5, 4 n.5

## I.   <u>INTRODUCTION</u>

Plaintiffs Firearm Owners Against Crime, Kim Stolfer, and Joshua

First,[1] (collectively "Plaintiffs") by and through their counsel, Joshua Prince,

Esq. and Prince Law Offices, P.C., hereby file this Memorandum in

Opposition to Defendants' Motion to Dismiss.

## II.   **COUNTER-STATEMENT OF FACTS**

At the time this litigation began, Defendants had numerous

ordinances[2] restricting an individual's right to keep and bear arms. Article I,

Section 21 of the Pennsylvania Constitution, Title 18, Pa.C.S.A. § 6120, and

the relevant case law interpreting them, preempt local governments from

promulgating or adopting *any* ordinances that regulate the ownership,

possession, transfer, or transportation of firearms, in *any* manner. *See also*

*Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996); *Dillon v. City of Erie*, 83

---

[1] Currently before the Court is the issue of whether Plaintiff Howard Bullock was removed. Defendants have expressly acknowledged that they omitted Mr. Bullock's name from the notice of removal and civil cover sheet and filed a still-pending motion on which this Court has not yet acted. Defendants' caption now including Howard Bullock is incorrect, and should be stricken. *See* Plaintiff's Motion and Brief in Opposition to Remand.

[2] Harrisburg's ordinances challenged here are as follows: 3-345.1 (Possession of firearms by minors); 3-345.2 (Discharging weapons or firearms); 3-345.4 (Lost and stolen firearms); 3-345.99 (Providing for penalties); 3-399 (Providing for penalties); 3-355.2 (Emergency measures); 10-301.13 (Hunting, firearms and fishing in city parks); 10-301.99 (Providing for penalties); 1-301.99 (Providing for penalties) (collectively "Ordinances")

A.3d 467 (Pa.Cmwlth. 2013); *National Rifle Association v. Philadelphia*, 977 A.2d 78 (Pa. Cmwlth. 2009); *Clarke v. House of Representatives,* 957 A.2d 361 (Pa.Cmwlth. 2008).

Although Defendants claim that their ordinances do not violate the law (Doc 10, pp. 20-26), they fail to inform the Court that in a separate action, *U.S. Law Shield v. Harrisburg,* No. 2015-cv-00255-EQ, in which they are counsel for the Defendants, the Court of Common Pleas of Dauphin County recently enjoined the City of Harrisburg from enforcing Ordinances § 10-301.13(B) and (C) (Parks – Hunting, firearms and fishing); § 3-355.2(A)(1), (2), (3), and (B)(8) (Emergency Measures); and s 3-345.1 (Possession of firearms by minors), finding, *inter alia*, that Plaintiffs in that action are likely to prevail on the merits of the argument those ordinances are preempted by Pennsylvania's Uniform Firearms Act (hereinafter "UFA").[3]  *See* Exhibit A.

Prior to filing this lawsuit, counsel for Plaintiffs submitted a letter to Defendant City informing it of the violations of the Uniform Firearms Act. Defendant Papenfuse then stated to the media that Defendant City's "police

---

[3] The court's reliance on statutory preemption again emphasizes the point that the state law issues predominated such that this Court should remand the matter to the State court as requested in Plaintiffs' separate motion pending before this Court.

department feels that [the laws] are in the public interest, and I do, too." [4]

Likewise, Defendant Carter stated that Harrisburg police officers regularly cite violations of the discharge ordinance and minor law.  After Defendants refused to take action to repeal the ordinances, Plaintiffs filed suit.

---

[4] Defendant Papenfuse is quoted by PennLive's reporter Christine Vendel in "Harrisburg stands firm on gun regulations despite threat of lawsuit," January 13, 2015, available at
http://www.pennlive.com/midstate/index.ssf/2014/12/harrisburg_gun_regulations_law.html.

### III.   QUESTIONS PRESENTED

**1.**  Did Defendants file a timely Motion to Dismiss, where the

Motion only references claims by "Firearm Owners," which is

not a Party to this litigation.

*Suggested Answer: No*

**2.**   Do Defendants' ordinances restrict, in any way, Plaintiffs'

right to keep and bear arms for the purpose of self-defense and

for hunting?[5]

*Suggested Answer: Yes*

---

[5] Although Defendants do not raise the issue of hunting in their questions presented, they state in their Motion that Plaintiffs have no right to hunt. (Def. Mot. ¶ 2).  Stephen P. Halbrook, one of the foremost experts on Second Amendment jurisprudence and history, had argued extensively that (1) the exclusion of an enumerated right within the Bill of Rights does not, *ipso facto*, result in the negation of that right, and (2) that the influential voices in the Second Amendment debate at the time of the ratification of the federal Constitution – particularly Pennsylvanians – indicate that the right to hunt was considered an integral part of the right to bear arms.  *See generally*, Stephen P. Halbrook, "The Right of the People or of the State: Bearing Arms, Arming Militias, and the Second Amendment," 26 *Valparaiso Law Review*, 131-207 (Fall 1994).

As Defendants failed to include any argument regarding the Constitutional Right to Hunt, it should be deemed waived. In the event the Court will consider this issue, Plaintiffs respectfully request opportunity to fully brief it, including all case law that exists across the United States regarding the constitutional right to hunt, under the Second Amendment to the United States Constitution and other under state constitutions.

## IV.   STANDARD OF REVIEW

The Third Circuit, after reviewing the Supreme Court's decision in

*Bell Atl. Corp. v. Twombly***,** 550 U.S. 544 (2007), declared that the proper

standard for a motion to dismiss for failure to state a claim is for the court to

"accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." *Phillips v.*

*County of Allegheny*, 515 F.3d 224, 233 (3d. Cir. 2008).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court

explained that under Rule 8 of the Federal Rules of Civil Procedure, the

plaintiff is required to plead a *plausible* set of facts that would entitle the

plaintiff to relief but that the standard does not require the plaintiff to plead a

*probable* set of facts.

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to 'state a
> claim to relief that is plausible on its face.' A claim has
> facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a
> 'probability requirement,' but it asks for more than a
> sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. at 570,

556. (Citations omitted).

## V.   ARGUMENT

### A. Defendants did not file a timely Motion to Dismiss, as no parties' claims are mentioned

Defendants' Motion to Dismiss only references claims by "Firearm Owners."  It does not reference any claims by Firearm Owners Against Crime, Kim Stolfer, or Joshua First, or even the more broad term, "Plaintiffs." Because "Firearm Owners" is not the name of any party to this suit, Defendants have not timely moved to dismiss any claims.  Thus, there is nothing for this Court to consider.

Even if "Firearm Owners" is determined to be merely another oversight or mistake by Defendants and is deemed to relate to Firearm Owners Against Crime, they have still failed to ask this Court to dismiss any of Kim Stolfer's or Joshua First's claims.  Therefore, at a minimum, this Court should only determine whether Firearm Owners Against Crime has stated a valid claim.  As Defendants have not moved to dismiss the claims by Kim Stolfer or Joshua First, they are now precluded from raising any defense allowed by Fed.R.Civ.P. 12(b)(2) – (5).  Fed.R.Civ.P. 12(h).

**B. Pennsylvania law preempts local ordinances, *even if* they are duplicative of Commonwealth statutes.**

    **1. *The entire field of firearms regulation has been preempted, making any concurrent legislation preempted.***

"If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted." *Council of Middletown Twp., Delaware County v. Benham*, 523 A.2d 311, 313 (Pa. 1987). Notably, the courts have not said "local legislation *consistent* with state law is permitted;" rather, *all* local legislation is proscribed. To that end,

> Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. The constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia or Pittsburgh, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils is the proper forum for the imposition of such regulation. (Emphasis Added).

*Dillon v. City of Erie*, 83 A.3d 467, 472-73 (Pa.Cmwlth. 2013), *citing Ortiz v. Commonwealth*, 681 A.2d 152, 155 (Pa. 1996).

The Pennsylvania Commonwealth Court expressly held that while Section 6120's preemption may "appear[] to be limited to the *lawful* use of firearms by its very terms . . . the crystal clear holding of our Supreme Court

in *Ortiz . . .* precludes our acceptance" of that analysis. *National Rifle*

*Association v. Philadelphia*, 977 A.2d 78, 82-83 (Pa. Cmwlth. 2009). Thus,

in *Clarke v. House of Representatives*, the Pennsylvania Commonwealth

Court held that seven Philadelphia firearms ordinances[6] were preempted, as

"[e]ach one seeks to regulate firearms – an area that both Section 6120 and

binding precedent have made clear is an area of statewide concern over

which the General Assembly has assumed sole regulatory power." 957

A.2d 361, 364 (Pa.Cmwlth. 2008).

In *Clarke*, two members of the Philadelphia City Council argued that

Section 6120 only preempted ordinances that regulated the carrying or

transportation of firearms. *Clarke*, 957 A.2d at 364. The Commonwealth

Court rejected that argument, finding that "Section 6120 'clearly preempts

local governments from regulating the lawful ownership, possession and

transportation of a firearm.'" *Id*, *citing Schneck v. City of Philadelphia*, 383

A.2d 227, 229-30 (Pa.Cmwlth. 1978). That is, Pennsylvania state courts,

including the Pennsylvania Supreme Court, have made "crystal clear" that

---

[6] The ordinances prohibited straw purchases, limited purchases of firearms
to one per month, mandated the reporting of lost or stolen firearms, required
a license to acquire or transport a firearm into Philadelphia, required annual
renewal of firearms licenses, authorized confiscation of firearms from
persons deemed a risk of harm, prohibited transfer of "assault weapons," and
required any seller of ammunition to be reported to the Philadelphia Police
Department. *Clarke,* 957 A.2d at 362.

the legislature adopted *express* preemption of the field, rather than relying on *implicit* preemption due to consistency.  *See NRA v. Philadelphia*, 977 A.2d at 82-83.

Because the "General Assembly has assumed sole regulatory power," *Clarke*, 957 A.2d at 364, all local legislation relating to firearms is prohibited.  This includes legislation that is *consistent* with the state regulations.  *NRA v. Philadelphia*, 977 A.2d at 82-83.  Defendants argue that Defendant City's discharge and minor child ordinances do not regulate *lawful* activity; thus, they contend, the ordinances are lawful.  (Doc. 10, pp. 21).  Under Pennsylvania law, however, when the General Assembly has declared its intention to be the sole regulator of a particular issue, *no* local ordinances are permitted.  Because Defendant City's ordinances *do* regulate the possession, transportation, and transfer of firearms, they are preempted by state law and the Pennsylvania Supreme Court's holding in *Ortiz*. Additionally, state law already prohibits the possession of firearms by a minor (18 Pa.C.S.A. § 6110.1) and discharging a firearm into an occupied structure (18 Pa.C.S.A. § 2707.1).

Likewise, the lost or stolen firearms ordinance, according to Defendants, "targets the *unlawful* transfer of firearms."  (Doc. 10, p. 21) (Emphasis in original).  Because the ordinance regulates the transfer of

9

firearms, it, too, is preempted by Section 6120. *NRA v. Philadelphia*, 977 A.2d at 82-83. In addition, the lost and stolen ordinance penalizes the *victim* of a crime, if the crime is not reported. The person penalized here has no intent to transfer the firearm, or any ability to control the transfer at all.

Additionally, Defendants argue that the emergency provision is not preempted because the Third Class City Code allows the mayor to prohibit activities he believes to cause a clear and present danger. (Doc. 10, p. 26). Defendants admit, however, that "Harrisburg only regulates unlawful conduct because the UFA bans carrying guns during declared emergencies." *See also*, 18 Pa.C.S.A. § 6107. This is not entirely accurate, however. The UFA prohibits the carrying of a firearms "upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive *unless that person is: (1) Actively engaged in a defense of that person's life or property from peril or threat.*" 18 Pa.C.S.A. § 6107(a)(1). (Emphasis added). It also provides an exemption for carrying firearms, so long as the person is licensed, *even during a declared emergency*. 18 Pa.C.S.A. § 6107(a)(2). (Emphasis added). Thus, Defendant City's regulations proscribe firearms activity that is entirely legal under state statutes addressing the same issue. Thus, the discharge

ordinance is invalid due to both express preemption *and* implicitly due to the actual conflict with state law.

It is important to note that the *all* of the case law finding that Section 6120 of the Uniform Firearms Act preempted local firearms regulations occurred prior to the enactment of Act 192, as Defendants argue that the constitutionality of that Act will determine whether the regulations are preempted.  (Doc. 10, pp. 18-19).  In fact, Act 192 merely added the award of attorney fees as a remedy to those plaintiffs who successfully challenged an ordinance and defined who may initiate suit.  18 Pa.C.S.A.§ 6120(a.2) and (a.3).  Seeking to find some way to suggest Act 192 raises new issues, Defendants assert the Act "allows unaffected gun owners to sue municipalities they have never even entered and never will enter."  (Doc. 10, p. 20).[7]  Defendants fail, however, to identify any such provision in Act 192. Section 6120(a.2) provides that a "person adversely affected by an ordinance, a resolution, regulation, rule, practice or any other action promulgated or enforced by a county, municipality or township prohibited under [Section 6120] subsection (a) or 53 Pa.C.S.A. § 2962(g) . . . may seek declaratory or

---

[7] Lawful firearms owners outside the city *are*, in fact, affected by Defendants' ordinances.  An individual outside the limits of Harrisburg – the capitol of the Commonwealth, no less – is affected when he is informed that he will not be allowed to exercise rights protected by the state within the boundaries of the city.

injunctive relief and actual damages in an appropriate court."  Plaintiffs are still required to demonstrate that they are "adversely affected," contrary to Defendants' statement that the legislature has "define[d] injury as 'not injured.'" (Doc. 10, p. 20).

Indeed, under Section 6120, prior to its amendment by Act 192, Plaintiffs would have standing to bring suit.  In *Dillon*, the Commonwealth Court held that an individual is not required to be prosecuted prior to challenging an ordinance as unlawful.  83 A.2d at 747.  If the rule were otherwise, lawful firearm owners would be required to face prosecution and argue the invalidity of the ordinance as a defense.  Instead, Pennsylvania expressly permits a civil challenge, including injunctive relief, against the enforcement of unlawful ordinances.  *Id.*  Because the Plaintiffs here would have been forced to face prosecution in order to challenge Defendant City's unlawful ordinances, they would have had standing regardless of the passage of Act 192; thus, the constitutionality of the Act only bears on the remedy, rather than the actionability of the claim.

### 2.  *The DCNR only applies to state parks.*

Defendants argue that they are required to ban firearms in parks in order to follow the mandates of the Department of Conservation and Natural

Resources ["DCNR"], which prohibits firearms in state parks.  (Doc. 10, p. 24). Defendants cite to 17 Pa.Code § 11.215(4), which states that "[p]ossessing an uncased device, or uncasing a device, including a firearm" is "prohibited without written permission of the Department." Defendants fail to explain why a local ordinance would be required to implement a DCNR mandate.  Moreover, the Pennsylvania Code expressly states: "This chapter applies to State parks." 17 Pa.Code § 11.202(a).

Although Defendants claim that they must follow the DCNR regulations in order to continue receiving state funds for its own municipal parks,  (Doc 10, p. 8), Section 11.215 expressly applies only to state parks. 17 Pa.Code § 11.202(a).  Precisely how the mandate that firearms are proscribed in state parks concurrently obligates Defendants to prohibit firearms in municipal parks is not explained.  Prohibiting firearms in municipal parks does not, in any way, assist in keeping firearms out of state parks, pursuant to the DCNR.  Thus, Defendant City cannot argue that the prohibition on firearms in state parks is, in reality, a state prohibition on firearms in municipal parks.

In addition, 18 Pa.C.S.A § 6109(m.3)(2) precludes DCNR, a state agency, from regulating firearms "in any manner inconsistent with the provisions" of the Uniform Firearms Act ("UFA"), 18 Pa.C.S. 6101, et seq.

"Except in Philadelphia, firearms may be carried openly without a license."
*Commonwealth v. Hawkins*, 692 A.2d 1068, 1071 n.4 (Pa. 1997); *see also*
*Ortiz v. Commonwealth*, 681 A.2d 152, 155 (Pa. 1996).  Section 6109(a)
provides that an individual with a license to carry a firearm may carry a
concealed firearm "on or about one's person or in a vehicle throughout this
Commonwealth."  18 Pa.C.S.A. § 6109(a).

On August 5, 2014, Attorney General Kathleen Kane issued a legal
opinion concerning 18 Pa.C.S.A. § 6109(m.3)(2).  Attorney General Kane's
letter is attached hereto and incorporated herein as Exhibit B.  Attorney
General Kane found that Section 6109(m.3)(2) "prohibits a Commonwealth
Agency from regulating the possession of firearms in any manner
inconsistent with Title 18."  *Id.*  Because "Title 18 enumerates those specific
locations in which individuals are prohibited from possessing firearms," and
because licensed casinos were not enumerated, Attorney General Kane
advised that "the [Gaming Control] Board does not have the authority . . . to
limit the possession of firearms in the state's licensed casino facilities by
persons who possess a valid permit to carry a concealed firearm pursuant to
18 Pa.C.S. § 6109, et seq."  *Id.*

DCNR is a state agency.  71 P.S. § 1340.301.  Thus, DCNR lacks the
authority under state law to prohibit firearms in the state's parks and

Defendants' firearms ordinances do not apply to state parks – they apply to city property.  Defendants' make clear that they refer to city parks as they assert they may control their parks as a property owner, rather than as a government.  (Doc. 10, p. 24); *see infra,* §V(B)(3).  Defendants do not claim that they may control *state* parks and, indeed, they could not.  Likewise, a municipal ordinance applies only to the municipal parks, rather than to state parks.  Therefore, the DCNR obligations are not a concern to this litigation, as far as Defendants' power to promulgate, adopt, or enforce its own firearms regulations are concerned.

### 3.   *The statute that defendants rely on has been repealed*

Defendants cite to 53 P.S. § 3710, which provided that a Third Class City "shall at all times be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of [its] parks and playgrounds by the public generally."  Section 3710 was repealed when the Third Class City Code was re-enacted and amended on March 19, 2014, with an immediate effective date.  Third Class City Code, as amended, March 19, 2014, P.L. 52, No. 22, § 355 ("Section 3710 . . . of the act [is] repealed").[8]

---

[8] The effective portion of the Amended Third Class City Code is attached as Exhibit C.

Thus, regardless of whether Defendant City may have had the power under the Third Class City Code at the time it adopted the ordinances (or at the time *Dillon* was decided), it does not enjoy that power now.  *See Borough of Langhorne Manor v. Clayton*, 196 A. 584, 559 (Pa. Super. 1938) ("The repealed statute, in regard to its operative effect, is considered as if it had never existed except as to matters and prosecutions past and closed"); *see also City of Philadelphia v. Bartell*, 11 A.2d 563, 565 (Pa. Super. 1940) ("Only the legislature can by re-enactment save or continue what the legislature repeals. . . . City council cannot by enacting in an ordinance provisions of an act repealed by the legislature keep alive and continue what was thus repealed by the legislature").

Pennsylvania legislators are presumed to be aware of the decisions of the Pennsylvania appellate courts.  *See Everhart v. PMA Insurance Group*, 938 A.2d 301, 307 (Pa. 2007); *see Commonwealth v. Sitkin's Junk Co.*, 194 A.2d 199, 202 (Pa. 1963) (holding that "legislature presumably was fully aware of the construction" of language, such that the same language in a later statute enjoys presumption of prior interpretation).  Especially, where as here, the legislature made a significant number of amendments, it should be presumed that the legislature knew what it was doing in removing this grant of authority to cities of the third class.  *See Fonner v. Shandon, Inc.*,

16

724 A.2d 903, 906 (Pa. 1999).[9]  Thus, 53 P.S. § 3710 "is considered as if it

had never existed."  Because the statute relied upon by Defendants for the

authority to regulate parks as a property owner no longer exists, Defendant

City cannot claim to hold that power any longer.

None of the other statutes Defendants cite permit adoption or

enforcement of firearms ordinances.  Defendants point to 53 Pa.C.S.A. §

37491.1(a), which states, in relevant part, that

> the council of each city shall have power to enact . . . and enforce in accordance with this act ordinances . . . *not inconsistent with or restrained by the Constitution of Pennsylvania and laws of this Commonwealth*, that are .either of the following: (1) . . . necessary for the proper management, care and control of the city . . . and the maintenance of the peace, good government, safety and welfare of the city . . .[10]

---

[9] The statute was re-enacted with amendments *after* the *Dillon* decision, indicating that the General Assembly was aware that it was removing the power that Defendants claim they have.

[10] As the Pennsylvania Commonwealth noted in *Dillon*, it is *not* in the public's benefit to enact and enforce ordinances contrary to the laws of Pennsylvania; therefore, these laws would not constitute "good government." *See Dillon,* 83 A.3d 467, 474 (Pa.Cmwlth. 2014) ("The argument that a violation of law can be a benefit to the public is without merit.  When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public")(Internal marks omitted).  Moreover, the more specific prohibition of Section 6120 clearly governs, rather than the general language upon which Defendants rely.  *See Commonwealth v. Musau*, 69 A.3d 754, 758 (Pa. Super. 2013).

(emphasis added).  If Article I, Section 21 of the Pennsylvania Constitution and Section 6120 preempt the municipal ordinances, as every Pennsylvania court has held since the UFA was enacted in the 1970's, then Defendant City's ordinances are inconsistent with the laws of the Commonwealth. Thus, Section 37491.1(a) offers no additional authority to Defendant City to regulate firearms.

### C. Defendants misinterpret *Heller*'s "longstanding prohibitions" language.

As a preliminary matter, Plaintiffs note that the resolution of the state-law issues may well be dispositive, rendering the resolution of the federal issues unnecessary.[11]

Defendants assert: "[*District of Columbia v. Heller*, 554 U.S. 570, 626 & n.26 (2008)] held that longstanding gun regulations are presumptively lawful, such as bans for felons and the mentally ill."  (Def. Mem. at 3). Defendants then proceed to explain how Defendant City's ban on unsupervised minors possessing firearms is "longstanding," as it was adopted "sixty-four years ago."  *Id.* at 5.

---

[11] Due to the predominance of the state law issues, Plaintiffs have requested this Court to either (1) remand the entire matter to the state courts or (2) remand the state law issues, while retaining jurisdiction over the federal issues, holding the federal issues in abeyance under the abstention doctrine.

The full statement of the *Heller* Court from which Defendants selectively quote states: "Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places . . ." 554 U.S. at 626. This language clearly connects the term "longstanding" with "prohibitions on the possession of firearms by felons and the mentally ill." This is not a presumption that *all* longstanding prohibitions are lawful; only that the prohibitions on the possession of firearms by felons and mentally ill *happen to be* longstanding. The "longstanding" language was simply an adjective used by the Supreme Court to describe the felon and mentally ill ban, rather than a sweeping presumption of validity to all "longstanding" statutes regulating firearms.

Building upon this selective quotation, Defendants rely heavily on the fact that the City's Ordinances are "longstanding." They point to case law stating that "longstanding" applies to statutes enacted in the 20th Century, such as the 1966 amendment to New Jersey's concealed carry statute requiring "justifiable need," in *Drake v. Filko*, 724 F.3d 426, 432 (3d Cir. 2013). (Def. Mem. at 5). Their conclusion is that any laws relating to firearms that were enacted prior to 1966 are, therefore, presumptively lawful. *Id.,* at 5-6.

Likewise, Defendants note that the discharge ordinance is forty-four

years old.  (Doc 10, p. 12).  Continuing with this theme, Defendants' first

sentence in Argument Section IV(A)(3) is: "Gun bans in parks are

longstanding."  (Doc. 10, p. 13). They continue to note that Pennsylvania

"banned guns in parks by at least 1971."  *Id.*  The same argument holds true

with Defendants' defense of the emergency ban: "This ordinance, now

approaching a half century in age, is longstanding."  (Doc. 10, p. 15).[12]

Defendants' argument that their ordinances regulating firearms are

"longstanding" is not germane to the constitutional analysis under *Heller*.[13]

A firearms regulation may be unconstitutional whether it is longstanding, or

not.  As Justice Scalia wrote in the Court's opinion in *Heller*,

> It is demonstrably not true that . . . "for most of our
> history, the invalidity of Second-Amendment-
> based objections to firearms regulations has been

---

[12] Ironically, Defendants cite to a passage in *Kachalsky v. County of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012), which in turn cites to a North Carolina *colonial* prohibition of "going armed . . . in the presence of the King's Justices."  Of course, the Second Amendment was adopted after the passage of the U.S. Constitution in response to firearms regulations placed by the British monarchy during the colonial period, which casts considerable doubt on the applicability of these prohibitions to both the longstanding and Second Amendment analyses.

[13] Pursuant to 18 Pa.C.S.A. § 6119, regulation of firearms in this manner is a misdemeanor of the first degree and has been since 1974.  Under Defendants' analysis, the criminal sanctions that attach to such regulation are also "longstanding," and should be presumed to be valid.

> well settled and uncontroversial."  For most of our
> history the question did not present itself.

*Heller*, 554 U.S. at 626.  Thus, the United States Supreme Court's Second

Amendment jurisprudence has only recently begun, such that even

"longstanding" firearms regulations may be reviewed.  Indeed, the law

struck down in *Heller* was enacted in the mid-1970's, which places it in the

same time-frame as New Jersey's "justifiable need" law, which Defendants

consider "longstanding."

Defendants also claim "Harrisburg's restrictions do not come close to

a complete ban" on firearms and self-defense, and are reasonable because

the "legitimate and *compelling* state interest in protecting the community

from crime cannot be doubted." (Doc 10, p. 10).  (Emphasis added).

While Plaintiffs agree with Defendants that strict scrutiny should

apply here,[14] they disagree that the ordinances here survive that level of

judicial review.  In fact, many of Harrisburg's ordinances *do* constitute a

complete ban: the discharge ordinance prevents *any* discharge, whether in

self-defense or not; Defendants themselves refer to the "child gun ban" (Doc

------

[14] Not only do Defendants set forth the strict scrutiny standard (classifying
its interests as "compelling"), the question they present to the court is
whether "Harrisburg's ordinances limited Plaintiff's right to self-defense *in
any way* over the last sixty-four years" suggests that they view their
ordinances as narrowly tailored, to avoid *any* burden on the fundamental
right to self-defense.  (Doc 10, p. 9).  (Emphasis added).

10, p. 10); and the emergency and park ordinances completely ban the possession, transportation, and/or transfer of firearms inside parks.

While the interest in protecting the community and preventing crime is arguably compelling, a compelling interest does not authorize the government to regulate as it pleases; otherwise, *Heller* would have been decided differently. Because they burden the fundamental right to use a firearm in self-defense, the ordinances must have a narrowly tailored application that furthers the compelling interest, while also respecting the constitutional rights of the citizen. *See James v. Southeastern Pennsylvania Transportation Authority*, 477 A.2d 1302, 1306 ("[w]here a . . . fundamental right has been burdened, another standard of review is applied: that of strict scrutiny"); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) (Defining strict scrutiny as "narrowly tailored measures that further compelling governmental interests").

The effect of Defendant City's ordinances is that an individual may not carry[15] the preferred method of self-defense while in a public park, may not discharge that firearm *anywhere* in the City (including for purposes of self-defense), and may not even carry the firearm for self-defense in arguably the time it is most needed - during an emergency where even the

---

[15] *See infra* § V(E)(3) for discussion of the U.S. Supreme Court's definition of "carry" in regards to a firearm.

government is struggling to maintain the public order.  When the ordinances are reviewed *in toto*, it becomes evident that Defendants are eliminating the ability of law-abiding citizens to defend themselves, where the ordinances apply.

**D. Defendants have offered no evidence that FOAC has expended any funds or incurred liabilities in any attempt to influence elections**

Pursuant to the Federal Rules of Civil Procedure, "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19." Fed.R.Civ.P. 12(b).  Defendants' allegations that Plaintiff FOAC is improperly spending funds do not address any of the foregoing defenses and are therefore improperly brought in a Motion to Dismiss.

Additionally, there is nothing in the Complaint that addresses FOAC's expenditures.  Therefore, Defendants' argument rests entirely on speculation and is not properly before this Court in a Motion to Dismiss.

### E. **The Mayor and Police Chief may be held liable**

Defendants argue that Defendants Papenfuse and Carter cannot be held liable because (a) they did not cause harm to the Plaintiffs (Def. Mem. at 20); (b) they violated no clear federal law (*Id.* at 20-21); and (c) they enjoy high official immunity, (*Id.*, at 21).

### 1.   *Defendants Papenfuse and Carter have caused harm to Plaintiffs.*

Title 18, Pa.C.S.A. § 5301 provides that a person acting in his official capacity commits a second degree misdemeanor if he "denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity."  Article 1, Section 21 of the Pennsylvania Constitution provides that "[t]he right of the citizens to keep and bear arms *in defense of themselves* and the State shall not be questioned."  Strengthening this provision, Article 1, Section 25 expressly "declare[s] that everything in this article is excepted out of the general powers of government and shall forever remain inviolate."

As Mayor, Defendant Papenfuse is the chief executive of Defendant City.[16]  53 P.S. § 41411 ("The executive power of the city shall be exercised

---

[16] This applies to Cities of the Third Class organized under the Optional Mayor-Council Plan A.  According to the Harrisburg City Controller's

by the mayor").  As such, the "mayor shall enforce the charter and

ordinances of the city . . ."  53 P.S. § 41413.  Thus, it is the duty of

Defendant Papenfuse, mandated by Section 41413, to enforce the ordinances

of Defendant City.  Indeed, Defendant Papenfuse stated that "our police

department feels that [the laws] are in the public interest, and I do, too."[17]

Likewise, Defendant Carter stated that Harrisburg police officers regularly

cite violations of the discharge ordinance and minor law.

While none of the Plaintiffs here have been subjected to prosecution,

"Pennsylvania law does not require a person to be prosecuted to find that he

has suffered irreparable harm, and a litigant is relieved of demonstrating this

prerequisite where, as here, the only alternative available was

prosecution . . ."  *Dillon,* 83 A.3d at 474, *citing City of Erie v. Northwestern

Pennsylvania Food Council*, 322 A.2d 407, 412 (Pa.Cmwlth. 1974).  Both

Defendants Papenfuse and Carter have indicated their intentions to enforce

the ordinances.  Defendant Carter has additionally stated that Defendant City

already *has* prosecuted individuals under these ordinances.

---

website, Harrisburg is organized as a Mayor-Council Plan A.
http://harrisburgcitycontroller.com/?page_id=232
[17] Defendant Papenfuse is quoted by PennLive's reporter Christine Vendel
in "Harrisburg stands firm on gun regulations despite threat of lawsuit,"
January 13, 2015, available at
http://www.pennlive.com/midstate/index.ssf/2014/12/harrisburg_gun_regula
tions_law.html.

## 2. *Defendants Papenfuse and Carter are not immune under high official immunity*

High official immunity "exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice," so long as the statements were made within the course of official action. *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952), *overturned on other grounds by Commonwealth v. Schab*, 383 A.2d 819 (Pa. 1978)(overturning *Matson's* holding that the Attorney General could supersede a District Attorney on his own motion); *see also Lindner v. Mollan*, 677 A.2d 1194, 1199 (Pa. 1996)(holding that mayor was immune from defamation suit while acting in official capacity); *Montgomery v. City of Philadelphia*, 140 A.2d 100, 105 (Pa. 1958)(holding that a deputy commissioner was immune from defamation suit); *Jonnet v. Bodick*, 244 A.2d 751, 753 (Pa. 1968)(finding that township Supervisors were immune from defamation suit).

Moreover, under Pennsylvania law, the "pivotal" consideration of whether an official is to be granted immunity is "the public interest in seeing that the official not be impeded in the performance of important duties." *Durham v. McElynn*, 72 A.2d 68, 70 (Pa. 2001). The Commonwealth Court stated in *Dillon* that it is *not* in the public interest to enforce unenforceable

and unlawful ordinances.  *Dillon*, 83 A.2d at 474 ("Moreover, 'the argument that a violation of law can be a benefit to the public is without merit").  It can hardly be said that enforcing an unlawful ordinance is a benefit to the public.

Finally, high officials are immune only from suits for damages. *Lindner*, 677 A.2d at 1195.  This is not a suit for damages; rather, as stated in both the introduction to the Complaint and the Request for Relief, this is a suit for declaratory and injunctive relief.  Even if high official immunity were to apply to a suit for damages against Defendants Papenfuse and Carter, this is not such a case.  Thus, they are not immune under the high official immunity doctrine.

### 3. *Defendants Papenfuse and Carter violated a clearly defined right.*

Defendants claim that there is no clearly defined right to carry a firearm in public.  (Doc 10, p. 27).  Yet, the United States Supreme Court clearly held that one has a Second Amendment right to both keep *and* bear arms for the purpose of self-defense.  *See District of Columbia v. Heller,* 554 U.S. 570, 584-85 (2008).

The Supreme Court found that both the modern and founding-era term "bear arms" indicated "unambiguously" that it meant "the carrying of

weapons outside of an organized militia." *Id.* at 584.  The Court quoted its earlier precedent: "Surely a most familiar meaning is, as the Constitution's Second Amendment . . . indicates: 'wear, bear, or <u>carry . . . upon the person or in the clothing or in a pocket, for the purpose of . . . being armed and ready for offensive or defensive action in a case of conflict with another person.</u>" *Id.* at 584, *quoting Muscarello v. United States*, 524 U.S. 125, 143 (1998)(Emphasis Added).

After a lengthy and detailed discussion of the history of the right to bear arms for one's self-defense, the Supreme Court concluded that "[t]here seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Heller*, 554 U.S. at 595.  In fact, the "right to bear arms" was "a recognition of the natural right of self-defense of one's person or house – what [Justice James Wilson] called the law of self preservation." *Id.*, at 585.  (Internal marks omitted).

Defendants cite to *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013), as evidence that the right to carry a firearm for self-defense is not "clearly defined." (Def. Mem. at 21).[18]  Rather than holding that no right to bear

_____

[18] Defendants do not expressly cite to *Drake* here, but the language "Plaintiffs cannot show that the Third Circuit, which still questions whether the Second Amendment applies outside the home *at all*, bar Harrisburg's

arms existed outside the home, the Third Circuit held in *Drake* that New Jersey's firearms law requiring a justifiable need to obtain a permit to carry a concealed weapon for self-defense did not violate the Constitution. *Id.*, at 430. Thus, the Third Circuit *upheld* the core of the Second Amendment's guarantee – that of the right to bear arms for self-defense. While the Court wondered aloud just what the extent to the right was, *Id.*, at 431, there is no doubt that the ultimate decision in *Drake* allowed the carrying of firearms where an individual could demonstrate it was required *for self-defense.*

    In contrast to New Jersey's regulatory scheme at issue in *Drake*, Defendants' discharge and emergency ordinances provide *no* ability to demonstrate a justifiable need. Nor does Defendants' prohibition on firearms in parks allow for any firearm to be possessed within a park, *even if* for the sole purpose of self-defense. Likewise, Defendants' prohibition on minors' possession of firearms fails to include any ability of a minor to possess a firearm solely for self-defense.

    Because Defendant City's ordinances prohibit the carrying of firearms in self-defense (and the use of those firearms for self-defense), and because both the United States Supreme Court and Third Circuit have definitively

---

reasonable time, place, and manner restrictions on public carrying," seems to refer to *Drake*, which Defendants cite at page 4 of their Brief. (Emphasis in original).

held that a right to bear arms – defined by the Supreme Court as the right to wear or carry on one's person – exists, Defendants violated a clearly established law and limit Plaintiffs' right to self-defense.

### F.  Plaintiffs do not allege a claim for damages under the Pennsylvania Constitution

Plaintiffs seek relief pursuant to Article 1, Section 21 in the following Counts: Count III (declaratory), Count IV (injunctive), Count IX (declaratory), Count X (injunctive), Count XV (declaratory), Count XVI (injunctive), Count XIX (declaratory), Count XX (injunctive), Count XXVI (declaratory), and Count XXVII (injunctive).  In Plaintiffs' Request for Relief, they request a declaration that Defendants' actions violated Article 1, Section 21 of the Pennsylvania Constitution and an injunction against both future enforcement of the existing ordinances and implementation of other ordinances regulating firearms.  The only other relief requested is pursuant to 18 Pa.C.S.A. § 6120 and 42 U.S.C.A. § 1988.

Plaintiffs *do*, however, request payment of reasonable attorney fees and costs.  These fees and costs are not damages.  *Atlantic City Assoc., LLC v. Carter & Burgess Consultants, Inc.*, 453 Fed. Appx. 174, 181 (3d Cir. 2011)("[A]ttorneys' fees are not properly viewed as a form of consequential damages – or as damages at all").

30

Because Plaintiffs do not include any Counts or causes of action for monetary damages pursuant to the Pennsylvania Constitution, there are no claims to dismiss.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss.

Respectfully Submitted,

PRINCE LAW OFFICES, P.C.

DATED: March 26, 2015

Joshua Prince, Esq.
PA ID 306521
*Attorney for Plaintiffs*

PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

## **Certification of Counsel**

Plaintiffs' counsel certifies that this brief is 6,635 words, exclusive of Cover Page, Tables of Contents and Authorities, Certificate of Counsel and this section.

Joshua Prince, Esq.

Dated: March 26, 2015

**Certificate of Service**

I, Joshua Prince, Esq., hereby certify that on March 26, 2015, I served

a true and correct copy of Plaintiffs' *Memorandum in Opposition to*

*Defendants Motion to Dismiss* on the following parties via this Courts

electronic filing system:

Frank J. Lavery, Esq.
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
flavery@laverylaw.com

Joshua M. Autry, Esq.
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
jautry@laverylaw.com
*Attorneys for Defendants*

Respectfully Submitted,

Joshua Prince, Esq.
PA Attorney Id. No. 306521
*Attorney for Plaintiffs*
PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

33