**EXHIBIT C**

## THIRD CLASS CITY CODE - REENACTMENT AND AMENDMENT OF ACT

### Act of Mar. 19, 2014, P.L. 52, No. 22          Cl. 11
Session of 2014
No. 2014-22

SB 497

AN ACT

Reenacting and amending the act of June 23, 1931 (P.L.932,
No.317), entitled "An act relating to cities of the third
class; and amending, revising, and consolidating the law
relating thereto."

TABLE OF CONTENTS

ARTICLE I
PRELIMINARY PROVISIONS

Section 101.  Short Title.
Section 102.  Definitions.
Section 103.  Excluded Provisions.
Section 104.  Construction of Act Generally to Preserve Existing
               Situations.
Section 105.  Constitutional Construction.
Section 106.  Construction of References.
Section 107.  Cities to Which Act Applies.
Section 108.  Effective Date.
Section 109.  Publication of Notices.

ARTICLE II
PROCEDURES FOR INCORPORATION

Section 200.  Definitions.
Section 201.  Creation of Cities.
Section 203.1. Incorporating Resolution.
Section 204.  Resolution Certified to County Board of Election;
               Form of Question.
Section 204.1. Notice of Election.
Section 205.  Returns of Election.
Section 206.  Effect of Vote Against Incorporating as City.
Section 207.  Governor to Issue Letters Patent; Boundaries.
Section 208.  Property of Entities Vested in City.
Section 209.  Existing Governments Temporarily Preserved; City
               Organization.
Section 210.  Existing Liabilities, Debts and Claims Transferred
               to New City.

ARTICLE III
CHANGE OF CORPORATE TITLE

Section 301.  Resolution and Petition to Change Corporate Title.
Section 302.  Hearing; Decree.
Section 303.  Recording Decree.
Section 304.  Existing Rights and Liabilities Preserved.

## ARTICLE IV
## CREATION AND DIVISION OF WARDS

Section 401.  General Power of Council in Creation or Division of
              Wards.
Section 401.1. Petition of Registered Voters.
Section 402.  (Reserved).
Section 403.  Appointment of Commission.
Section 403.1. Expenses of Commissioners.
Section 403.2. Report.
Section 404.  Election.
Section 405.  Notice of Election; Review of Report.
Section 406.  Election Laws to Apply.
Section 407.  Computing Vote; Return; Resubmission of Question.
Section 408.  Change of Ward Lines by Council.
Section 409.  Pennsylvania Election Code.

## ARTICLE VI
## CITY BOUNDARIES

Section 601.  Navigable Stream Boundaries.
Section 602.  Court to Establish Disputed Boundaries.
Section 603.  Petition to Court; Commissioners; Report.
Section 604.  Exceptions and Procedure.
Section 605.  Pay and Expenses of Commissioners.
Section 606.  Boundary Monuments.

## ARTICLE VII
## ELECTED OFFICERS AND ELECTIONS

Section 701.  Elected Officers; Term; Eligible to Reelection;
              Vacancies Where Elected Officer Fails to Qualify.
Section 702.  First Elections in Newly Created Cities.
Section 703.  Nominations and Elections.
Section 704.  Certificates of Election.

## ARTICLE VIII
## VACANCIES IN OFFICE

Section 801.  Vacancies in Council and Office of Mayor.
Section 802.  Vacancy in Office of Controller or of Treasurer.

## ARTICLE IX
## GENERAL PROVISIONS RELATING TO CITY
## OFFICERS AND EMPLOYES

Section 901.  Appointment and Removal of Officers and Employes;
              Removal From Elective Office; Employes Not to Hold
              Elective Office.
Section 902.  Officers and Employes; Number; Duties; Compensation.
Section 903.  Changes in Salary, Compensation and Emoluments of
              Officers.
Section 904.  Offices to be Held until Qualification of
              Successors.

Section 905.  Oath of Office; Violation of Oath; Penalty.
Section 906.  Bond to be Given by Officers and Agents.
Section 907.  Surety Bonds; Insurance; Premiums.
Section 908.  Officers not to Become Surety on Bonds Given to
              City; Penalty.
Section 909.  Moneys and Accounts to be Delivered by Officer to
              Successor.
Section 916.  Pennsylvania Municipal League and Other Municipal
              Affairs Organizations.
Section 917.  Powers of Subpoena; Compelling Testimony.
Section 918.  Consolidation or Integration of Fire and Police
              Personnel Prohibited.

ARTICLE X
THE COUNCIL

(a)   General Provisions

Section 1001.  Qualifications of Council Members.
Section 1002.  Vesting of Legislative Power.
Section 1003.  Organization of Council.
Section 1004.  Oath of Council Members; Quorum; Rules.
Section 1005.  Meetings of Council; Notice; Participation by
               Telecommunication Device.
Section 1015.  Attendance of Witnesses and Production of Books
               Before Council or Committee of Council.
Section 1016.  Salaries.
Section 1016.1. Appointment of City Clerk.

(a.1)   Ordinances

Section 1018.1. Ordinances and resolutions.
Section 1018.2. Voting; no veto; vote necessary to enact
               ordinances or adopt resolutions.
Section 1018.3. Journal of proceedings; recording and withholding
               of vote.
Section 1018.4. Signing and attesting ordinances.
Section 1018.5. Proposed ordinances; titles.
Section 1018.6. Reading of proposed ordinances; final enactment.
Section 1018.7. Payments not authorized by law.
Section 1018.8. Time of taking effect of ordinances.
Section 1018.9. Publication of proposed ordinances.
Section 1018.10. Filing of proposed ordinances.
Section 1018.11. Records of ordinances maintained by city clerk.
Section 1018.12. Proof and evidence.
Section 1018.13. Standard or nationally recognized codes.
Section 1018.14. Maps, plans or drawings.
Section 1018.15. Codification of ordinances.
Section 1018.16. Enforcement of ordinances; recovery and payment
                of fines and penalties.
Section 1018.17. Penalty.

(b)   Initiating Ordinances by Electors

Section 1030.  Initiation of Proposed Ordinances by Petition;

Exceptions.
Section 1031.  Petition; Notice.
Section 1032.  Signing; Oath.
Section 1033.  Number of Signatures; Examination and Certificate
               by City Clerk.
Section 1034.  Submission to Council.
Section 1035.  Actions by Council; Notices.
Section 1036.  Form of Ballot on Submission to Vote.
Section 1037.  Effect of Majority Vote.
Section 1038.  No Repeal Within Two Years.
Section 1039.  Number of Proposed Ordinances to be Submitted;
               Elections Limited.
Section 1040.  Submission for Repeal by Council.
Section 1041.  Publication of Proposed Ordinance; Repeal or
               Amendment.


          (c)  Reconsidering Ordinances by Electors


Section 1050.  Time Ordinances Go Into Effect.
Section 1051.  Petition; Reconsideration of Ordinance.
Section 1052.  Preparation of Petition by City Clerk; Notice.
Section 1053.  Additional Petitions.
Section 1054.  Signatures; Oath; Time of Signing.
Section 1055.  Presentation of Petition to Council.
Section 1056.  Ascertainment of Number of Signers; Report.
Section 1059.  Effect of Petition; Submission to Voters.
Section 1060.  Certification to County Board of Elections; Ballots
               or Ballot Labels; Expense of Elections.
Section 1061.  Form of Ballot or Ballot Label.
Section 1062.  Computing and Filing Returns.
Section 1063.  Effect of the Vote.
Section 1064.  Publication of Ordinance Before Election.


                    ARTICLE XI
               THE EXECUTIVE DEPARTMENT


Section 1101.  Executive Departments.
Section 1102.  Determination of Powers and Duties of Departments.
Section 1103.  Designation of Department Directors; Changes.
Section 1104.  Department Directors Responsible for City Property
               and Supplies; Perpetual Inventory Reports.
Section 1105.  Quarterly Reports from Directors of Departments.


                    ARTICLE XII
                    THE MAYOR


Section 1201.  Qualifications.
Section 1202.  Chief Executive; Inauguration.
Section 1203.  Execution of Laws; Powers of Sheriff Conferred;
               Emergency Powers.
Section 1204.  Official Seal of Mayor.
Section 1205.  Supervision of Conduct of City Officers.
Section 1206.  Report of Mayor to Council; Information from
               Directors of Departments.
Section 1207.  Power to Take Acknowledgments and Oaths and to

                        Formalize Marriages.
Section 1208.   Salary.
Section 1209.   Acting Mayor; Powers and Duties.


                        ARTICLE XII-A
                CITY ADMINISTRATOR OR MANAGER

Section 1201-A.  Office of city administrator or manager.
Section 1202-A.  Appointment; selection; removal.
Section 1203-A.  Employment agreement.
Section 1204-A.  Residency and elective city office.
Section 1205-A.  Powers and duties.


                        ARTICLE XIV
                   THE CITY TREASURER

Section 1401.   Qualifications.
Section 1402.   Bond; Insurance; Salary.
Section 1402.1. City Treasurer to be Tax Collector.
Section 1402.2. Date of Delivery of Duplicate; Collection.
Section 1402.3. Tax Liens; Schedule of Uncollected Taxes;
                        Liability for False Return.
Section 1403.   Receipt and Payment of Moneys; Daily Transmittal of
                        Receipts; Duplicates.
Section 1404.   Method of Keeping Accounts.
Section 1405.   Moneys Appropriated Only to be Paid Out.
Section 1406.   Depositories of City Funds Entrusted to the
                        Treasurer by City Council.
Section 1407.   Delivery of City Property in Treasurer's Possession
                        to Successor.
Section 1408.   Appointment of Deputy Treasurer and Employes;
                        Powers; Responsibility.


                        ARTICLE XV
                    THE CITY ENGINEER

Section 1501.   Appointment of City Engineer.
Section 1502.   Control of Engineering Matters.
Section 1503.   Duties.
Section 1504.   Certifying Commencement and Completion of Municipal
                        Improvements.
Section 1505.   Surveys; Entering Upon the Lands of Others.


                        ARTICLE XVI
                    THE CITY SOLICITOR

Section 1601.   Appointment of City Solicitor.
Section 1602.   Direction of Legal Matters.
Section 1603.   Duties.
Section 1604.   Written Opinions to be Furnished.
Section 1607.   Satisfaction of Liens Due City.
Section 1609.   Assistant Solicitor.
Section 1610.   Special Counsel.


                        ARTICLE XVII

THE CITY CONTROLLER
AND INDEPENDENT AUDITOR

(a) City Controller

Section 1701.  Qualifications; Bond; Compensation.
Section 1704.  Powers and Duties.
Section 1704.1. Deputy Controller; Employes.
Section 1704.2. Temporary Deputy Controller.
Section 1704.3. Continuation of Office.

(b) Independent Auditor

Section 1704.11. Appointment of Independent Auditor.
Section 1704.12. Powers and Duties of Independent Auditor.
Section 1705.  Annual Report to Council; Filing Copy in Court and
               Appeal.

ARTICLE XVIII
ACCOUNTS AND FINANCES

Section 1801.  Fiscal Year.
Section 1802.  Chief Fiscal Officer; Bond; Administering Oaths.
Section 1803.  Deputy.
Section 1804.  Regulations Concerning Appropriation.
Section 1804.1. Investment of City Funds.
Section 1805.  Countersigning Documents; Money Available; Evidence
               Required.
Section 1806.  Record of Assets, Property, Trusts, Debts Due,
               Receipts and Expenditures.
Section 1807.  Supervision of Accounts of Departments.
Section 1808.  Suggestions for Improvement of City Finances.
Section 1809.  Annual Budget; Presentation to Council; Notice;
               Revision; Adoption.
Section 1810.  Amending Budget; Notice.
Section 1811.  Appropriations; Tax Rate; Limitations.
Section 1811.2. Borrowing in Anticipation of Current Revenue.
Section 1812.  Annual Reports; Publication; Filing Report with
               Department of Community and Economic Development;
               Penalty.
Section 1813.  Committee to Prepare Uniform Forms.
Section 1814.  Annual Reports to Council on Insurance and Bonds.

ARTICLE XIX
CONTRACTS

Section 1901.  Power to Make and Regulate Awarding of Contracts.
Section 1901.1. Contracts or Purchases in Excess of Base Amount of
               Eighteen Thousand Five Hundred Dollars.
Section 1901.2. Contracts or Purchases Not in Excess of Base
               Amount of Eighteen Thousand Five Hundred Dollars.
Section 1901.3. Determining Amount of Contract.
Section 1901.4. Contracts or Purchases Not Requiring Advertising
               or Bidding.
Section 1901.5. Receipt, Opening, Award or Rejection of Bids.

Section 1901.6. Bid, Performance and Payment Security.
Section 1901.7. Compliance With Other Laws.
Section 1901.8. Prohibitions.
Section 1901.9. Lowest Responsible Bidder.
Section 1902. Evasion of Advertising Requirements.
Section 1903.1. Adjustments to Base Amount Based on Consumer Price Index for All Urban Consumers.
Section 1906. Designation of Appropriations; Certification in Excess of Appropriation; Contracts for Governmental Services for More than One Year.
Section 1908.1. Purchase Contracts for Petroleum Products; Fire Company, Etc., Participation.
Section 1909. Separate Bids for Plumbing, Heating, Ventilating and Electrical Work, Elevators and Escalators.
Section 1910. Acceptance by Contractor of Workers' Compensation Act.
Section 1911. Contracts for Improvements; Assignment of Assessments.
Section 1912. Architects and Engineers in Employ of City; Prohibitions from Bidding on Public Works; Penalty.
Section 1916. Contracts with Passenger or Transportation Companies.

ARTICLE XX
POLICE FORCE

Section 2001. Appointment, Number, Rank, Compensation and Qualifications of Police Officers.
Section 2002. Designation of Chief.
Section 2003. Extra Police Officers; Compensation.
Section 2005. Powers of Police Officers to Arrest.
Section 2006. Service of Process; Fees; Payment into Treasury.
Section 2007. Supervision by Mayor.
Section 2008. Extra Compensation Prohibited; Exception; Penalty.
Section 2009. Compensation or Insurance for Volunteer Police Officer.
Section 2010. School Crossing Guards.

ARTICLE XXI
FIRE BUREAU

Section 2101. Organization of Fire Bureau; Maintenance; Apparatus.
Section 2101.1. Appointment and Demotion of Fire Chief.
Section 2102. Paid Bureau; Election of Officers and Companies.
Section 2103. Platoon System; Hours of Service.
Section 2104. Fire Marshal; Powers.
Section 2105. Obstructing Fire Marshal; Fine.
Section 2106. Investigation of Cause of Fire; Power of Mayor.
Section 2107. Fire Chief Ex-officio Fire Marshal.
Section 2108. Compensation Insurance for Injured Volunteer Firefighters or Special Fire Police.
Section 2109. Salary of Nonunion City Fire Officers.

ARTICLE XXII
SURVEYS AND SURFACE SUPPORT

IN COAL MINING AREAS

Section 2203.  Survey of Mines.
Section 2204.  Operators to Furnish Maps; Contents.
Section 2205.  Extensions to be Placed on Maps.
Section 2206.  Certain Surface Supports Not to be Removed.
Section 2207.  Penalty for Surface Support Violations.
Section 2209.  Enactment of Ordinances.

ARTICLE XXIII
PUBLIC HEALTH

(a)  Board of Health

Section 2301.  Board of Health.
Section 2302.  Members of Appointed Boards of Health.
Section 2303.  Oath of Office; Organization; Secretary.
Section 2304.  Duties of Secretary.
Section 2305.  Health Officer; Qualifications; Oath.
Section 2306.  Duties of Health Officer.
Section 2307.  Duties of Board of Health.
Section 2308.  Powers of Board of Health.
Section 2309.  Effect of Rules and Regulations.
Section 2310.  Fees and Penalties.
Section 2311.  Proceedings of Board to be Public.

(b)  Public Nuisances Detrimental
to Public Health

Section 2320.  Determination of Public Nuisances.
Section 2321.  Abatement of Public Nuisances by Designated
               Department.

(c)  Corporations Acting as Boards of Health

Section 2330.  Board of Directors of Corporation to be Appointed
               Members of Board of Health.
Section 2332.  Power of Board.
Section 2333.  Health Officer.
Section 2334.  Secretary.
Section 2335.  Filling of Vacancies.
Section 2337.  No Compensation for Members.
Section 2338.  Applicability of Subdivision.

(d)  Penalty

Section 2340.  Penalty.

ARTICLE XXIV
CORPORATE POWERS

Section 2402.  Powers of Cities.
Section 2402.1. City Property and Affairs.
Section 2403.  Payment of Debts and Expenses.

Section 2404.  Creation of Capital and Operating Reserve Funds.
Section 2405.  Hiring of Employes; Salaries.
Section 2406.  Creation of Necessary Offices or Boards.
Section 2407.  Lockups.
Section 2408.  Market Places.
Section 2409.  Accumulation of Ashes, Garbage, Solid Waste and
               Refuse Materials.
Section 2410.  Regulation of Pets and Feral Animals.
Section 2411.  Inspection and Regulation of Fireplaces, Chimneys,
               Et Cetera; Smoke Regulations.
Section 2412.  Fireworks and Inflammable Articles.
Section 2413.  Regulation of Division Fences, Party Walls,
               Foundations.
Section 2414.  Nuisances.
Section 2415.  Regulation of Encroachments.
Section 2416.  Shade Trees.
Section 2417.  Numbering of Buildings.
Section 2418.  Transportation Stands.
Section 2419.  Police Force.
Section 2420.  Police Regulations.
Section 2421.  Rewards.
Section 2422.  Prevent Riots.
Section 2423.  Regulate Discharge of Guns and Deadly Weapons.
Section 2424.  Racing; Dangerous Practices; Et Cetera.
Section 2425.  Bathing; Recreational Swimming Establishments; Boat
               Houses and Bath Houses.
Section 2426.  Musical Entertainment.
Section 2427.  Aid to Historical Societies.
Section 2428.  Establishment of Institutions to Collect
               Educational Collections.
Section 2429.  Ambulances and Rescue and Lifesaving Services.
Section 2430.  Insurance.
Section 2431.  Parking Lots.
Section 2432.  Disorderly Conduct.
Section 2433.  Official Expenses on City Business.
Section 2434.  Municipality Authorities; Cooperation with Other
               Political Subdivisions.
Section 2435.  Local Self-Government.
Section 2436.  Historical Property.
Section 2437.  Appropriations for Handling, Storage and
               Distribution of Surplus Foods.
Section 2438.  Junk Dealers and Junk Yards.
Section 2439.  Appropriations for Industrial Promotions.
Section 2440.  Non-debt Revenue Bonds.
Section 2441.  Appropriations for Urban Common Carrier Mass
               Transportation.
Section 2442.  Appropriation for Nonprofit Art Corporation.
Section 2443.  Ratification and Validation of Real Estate Sales.
Section 2444.  Maintenance and Validation of Certain Records.
Section 2445.  Rights Within Streets and Rights-of-Way.
Section 2446.  Emergency Services.
Section 2447.  Charitable Purposes.

ARTICLE XXV
TAXATION

(a)  Assessments of Property for Taxation

Section 2522.  Assessment Powers.

(b)  Levy and Collection

Section 2531.  Tax Levies.
Section 2531.1. Exemptions from Taxation.
Section 2531.2. Certification of Schedule.

(c)  Sales of Real Estate for Delinquent Taxes

Section 2542.1. Public Sale of Property to Satisfy Tax Claims.
Section 2543.  Certification of Schedules to Treasurer.
Section 2546.  Record of Sales; Purchase and Resale.
Section 2552.1. Conduct of Tax Sales.

ARTICLE XXVI
LICENSES AND LICENSE FEES

Section 2601.  Licensing and Regulatory Powers.
Section 2601.1. Registration of Businesses or Occupations.
Section 2602.  Regulation of Motor Vehicles.
Section 2603.  Licensing of Plumbers.
Section 2604.  Power to Regulate and License Transient Merchants.
Section 2605.  Regulation of Special Events.
Section 2650.  Regulation of Parking Lot and Parking Garage
               Operators.
Section 2651.  Farmers.
Section 2652.  Insurance Business.
Section 2653.  Persons Taking Orders by Samples.
Section 2654.  Commonwealth License Saved.

ARTICLE XXVII
REAL ESTATE REGISTRY

Section 2704.  Real Estate Registry.

ARTICLE XXVII-A
NUISANCE ABATEMENT

Section 2701-A.  Definitions.
Section 2702-A.  Report and investigation of public nuisance.
Section 2703-A.  Summary abatement.
Section 2704-A.  Prior notice of abatement.
Section 2705-A.  Abatement by owner.
Section 2706-A.  Appeal after notice; hearing.
Section 2707-A.  Abatement by city after notice; statement of
                 costs.
Section 2708-A.  Assistance in abatement.
Section 2709-A.  Salvage of material.
Section 2710-A.  Notice of assessment; appeal of charges.
Section 2711-A.  Personal liability of owner.
Section 2712-A.  Administrative fee and civil penalties.

ARTICLE XXVIII
EMINENT DOMAIN

Section 2801.    Exercise of Eminent Domain.
Section 2802.    Restrictions as to Certain Property.
Section 2803.    Title Acquired.
Section 2824.    Assessment Awards.


ARTICLE XXIX
STREETS

Section 2901.    Map of Streets.
Section 2902.    Laying Out Streets.
Section 2903.    Effect of Laying Out of Street.
Section 2904.    Improvements Within Laid-out Streets.
Section 2915.    Power to Open, Etc.
Section 2916.    Ordinances When No Petition is Presented.
Section 2917.    Erection of Improvements Restricted.
Section 2918.    Petition for Opening, Etc.
Section 2919.    Notice of Petition.
Section 2922.    Assessment of Damages and Benefits.
Section 2930.    Power to Grade, Pave, Macadamize, Et Cetera.
Section 2931.    Payment of Cost of Improvement.
Section 2938.    Preparation of Streets for Paving or Repairing.
Section 2939.    Highways in Cities.
Section 2950.    Grade Crossing; Pennsylvania Public Utility
                 Commission; Jurisdiction; Damages.
Section 2955.    Acquisition of Unobstructed Views.
Section 2960.    Use of Abutting Lands for Embankments, Slopes,
                 Fills, and Culverts.
Section 2970.    Appropriation for Connections with Highways.
Section 2975.    Street Closings; Detours.
Section 2985.    Maintenance of Streets Forming Boundaries.
Section 2986.    Streets, the Center Line of Which Is the Boundary
                 Between City and Another Municipal Corporation.
Section 2988.    Streets More Than Half of Whose Width is Within
                 City.
Section 2989.    Assessment for Improvements on Property Outside
                 Limits Where Street Entirely Within City.


ARTICLE XXX
SIDEWALKS

Section 3001.    Power to Lay Out and Grade Sidewalks; Compel
                 Construction of Sidewalks.
Section 3002.    Construction by Cities Upon Failure of Owner So to
                 Do; Collection of Cost.
Section 3002.1.  Ordinances.
Section 3003.    Emergency Repairs; Notice; Cost.


ARTICLE XXXI
BRIDGES

Section 3101.    Construction and Maintenance of Bridges.

Section 3102.  Ordinance for Location of Bridges; Procedure.
Section 3103.  Right to Appropriate Property; Assessment of
               Damages.
Section 3110.  Agreement for Joint Construction and Maintenance.
Section 3114.  Recording of Contract.
Section 3115.  Power to Construct Boundary Bridges.
Section 3135.  Acquisition of Existing Bridges.


                       ARTICLE XXXII
                      SANITARY SEWERS


Section 3201.  Construction of Sanitary Sewers; Cost; Eminent
               Domain.
Section 3201.1. Required Connection; Fees.
Section 3206.  Construction of Sanitary Sewage Treatment Works;
               Assessment of Cost.
Section 3213.1. Rental Fees or Charges.
Section 3222.1. Acquisition of Existing Sanitary Sewer Systems.
Section 3230.  Sewers Outside Cartway and Curb Lines.
Section 3240.  Building Joint Sewers.
Section 3241.  Approval of Department of Environmental Protection.
Section 3245.1. Municipal Corporation; Municipal Authority;
               Agreements for Connections; Appointment of Viewers.
Section 3250.  Sewers Extended Outside of City.


                       ARTICLE XXXIV
          WATERCOURSES, FLOOD PROTECTION PROJECTS
                  AND STORM WATER SYSTEMS


Section 3401.  Establishing and Changing Watercourses, Flood
               Protection Projects and Storm Water Systems;
               Removing Obstructions.
Section 3407.  Assessment of Benefits; Liens.
Section 3408.  Waters Excepted.


                        ARTICLE XXXV
                      UTILITY SERVICE


Section 3501.1. Right to Furnish Water, Lighting, Electric, Gas or
               Other Similar Utility Service.
Section 3540.1. Power to Furnish Utilities to Consumers Outside
               City.
Section 3585.  Payment of Cost of Extensions.
Section 3587.  Fixing Rates.
Section 3588.  Collection of Utility Charges.
Section 3590.  Disposition of Revenues.


                       ARTICLE XXXVI
                 PUBLIC BUILDINGS AND WORKS


Section 3601.  Public Buildings Generally.
Section 3603.  Payment of Cost of Erection and Maintenance.
Section 3605.  Donation of Land by City for Library Purposes;
               Contributions toward Maintenance.
Section 3606.  Rental of Public Auditoriums; Disposition of

Proceeds.
Section 3607. Long-Term Improvement Leases.

ARTICLE XXXVII
PARKS, PLAYGROUNDS, AND RECREATION CENTERS

Section 3703. Acquisition of Lands and Buildings.
Section 3703.1. Powers of Council; Delegation.
Section 3705. Creation and Composition of Recreation Board.
Section 3706. Organization of Board.
Section 3707. Joint Ownership and Maintenance.
Section 3708. Borrowing.
Section 3709. Maintenance and Tax Levy.
Section 3709.1. City Trusts.
Section 3718. Park Rangers.

ARTICLE XLI-A
UNIFORM CONSTRUCTION CODE, PROPERTY MAINTENANCE CODE
AND RESERVED POWERS

Section 4101-A. Primacy of certain codes.
Section 4102-A. Changes in Uniform Construction Code.
Section 4103-A. Public nuisance.
Section 4104-A. Property maintenance code.
Section 4105-A. Reserved powers.

ARTICLE XLII
AERONAUTICS

Section 4201. Power to Acquire Land for Aeronautical Purposes;
Maintenance of Municipal Airports.
Section 4203. Leasing of Land Acquired for Aeronautical Purposes.
Section 4204. Operation of Facilities Jointly.
Section 4205. Appropriation for Support of Air Navigation
Facilities.

ARTICLE XLIII
PENSIONS

(a) Police

Section 4301. Police Pension Fund.
Section 4302. Retirement; Final Discharge.
Section 4302.1. Limited Vested Benefit.
Section 4303. Allowances and Service Increments.
Section 4303.1. Increase of Allowances After Retirement.
Section 4303.2. Total Disability.
Section 4304. Inalienable Rights in Fund.
Section 4305. Payments to Police Pension Fund by City.
Section 4306. Management of Police Pension Fund.
Section 4307. Trusts for Benefit of Police Pension Fund.
Section 4308. Repayment Before Retirement.
Section 4309. Definitions.

(b) Firefighters

Section 4320.   Firefighters' Pension Fund; Management; Annuity
                Contracts.
Section 4320.1. Limited Vested Benefit for Firefighters.
Section 4321.   Retirement; Final Discharge.
Section 4322.   Pensions and Service Increments.
Section 4322.1. Increase of Allowances After Retirement.
Section 4323.   Causes for Forfeiture of Rights in Fund; Other
                Employments.
Section 4324.   Payments to Firefighters' Pension Fund by City.
Section 4325.   Transfers from Other Pension Funds.
Section 4326.   Trusts for Benefit of Firefighters' Pension Fund.
Section 4327.   Repayment Before Retirement.
Section 4328.   Definitions.

                (c)  Pension Funds for Employes Other Than
             Police Officers and City-Paid Firefighters

Section 4340.   Pension Funds for Employes other than Police or
                City-Paid Firefighters.
Section 4341.   Pension Board; Duties.
Section 4342.   Retirement Age.
Section 4343.   Retirement Allowance; Proof of Disability; Joint
                and Single Coverage Members Defined.
Section 4343.1. Retirement Allowances; Full Coverage; Payments.
Section 4343.2. Limited Vested Benefit.
Section 4344.   Amount of Payments into Fund; Repayment before
                Retirement.
Section 4344.1. Determination of Liability Upon Extension of
                Social Security.
Section 4345.   Payments by Laborers Optional.
Section 4346.   Heads of Departments to Certify List of Employes.
Section 4347.   Receipt, Investment and Payment of Funds.
Section 4348.   Appropriations and Contributions to Fund.
Section 4349.   Application.
Section 4350.   Computation of Time of Service.
Section 4351.   Funds Payable to be Free of Attachment.
Section 4352.   Definitions.
Section 4353.   Beneficiaries of Fund not to be Employed by City.

           (d)  Beneficiaries Serving in Elective Office

Section 4361.   Right to a Pension if Salary Refused.

ARTICLE XLIV
CIVIL SERVICE

Section 4401.   Examinations Required of All Appointees.
Section 4402.   Appointment of Examining Board.
Section 4402.1. Existing Civil Service Positions.
Section 4403.   Terms; Filling of Vacancies; Compensation; Quorum.
Section 4403.1. Alternate Board Members.
Section 4403.2. Investigations and Subpoenas.
Section 4404.   Rules and Regulations; Examinations.
Section 4404.1. Physical and Psychological Medical Examinations.

Section 4405.1. Veterans' Preference.
Section 4406.  Selection of Appointee from Certified List of
               Applicants.
Section 4406.1. Promotions.
Section 4407.  Tenure; Temporary Appointments.
Section 4408.  Suspension, Discharge and Discipline; Reduction of
               Employes; Appeals.
Section 4409.  Secretary; Compensation.
Section 4410.  Review of Eligibility Lists.

ARTICLE XLIV-A
VETERANS' AFFAIRS

(a)  Support of Veterans' Organizations

Section 4401-A.  Appropriation to post of veterans.
Section 4402-A.  Rooms for meetings of veterans.

(b)  Pennsylvania National Guard

Section 4411-A.  Support of Pennsylvania National Guard units.
Section 4412-A.  Assistance in erection of armories.
Section 4413-A.  Eminent domain for National Guard purposes.
Section 4414-A.  Lands for armory purposes.

(c)  Burials and Memorials

Section 4421-A.  Purchase of burial grounds for deceased service
                 persons.
Section 4422-A.  Care of memorials.
Section 4423-A.  Memorial trees.
Section 4424-A.  Penalty for injury to memorial trees.

ARTICLE XLV-A
ASSESSMENTS FOR PUBLIC IMPROVEMENTS

Section 4501-A.  Authority to assess.
Section 4502-A.  Method of assessment.
Section 4503-A.  Notice of assessment.
Section 4504-A.  Appeals to court.
Section 4505-A.  Benefits and damages.
Section 4506-A.  Return by city of assessments paid on property
                 unlawfully assessed.
Section 4507-A.  Payment of assessments in installments.
Section 4508-A.  Collection of assessments.

ARTICLE XLVI
COLLECTION OF MUNICIPAL CLAIMS BY SUIT AND
COMPROMISE OF CLAIMS

Section 4601.  Collection of Municipal Claims by Suit.
Section 4602.  Compromise of Municipal Claims.

ARTICLE XLVII

ACTS OF ASSEMBLY REPEALED; SAVING CLAUSE

Section 4701.  Repeals and Saving Clause.

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1.  Article I heading of the act of June 23, 1931 (P.L.932, No.317), known as The Third Class City Code, reenacted and amended June 28, 1951 (P.L.662, No.164), is reenacted to read:
ARTICLE I
PRELIMINARY PROVISIONS
Section 2.  Sections 101, 102, 103, 104, 105, 106, 107, 108 and 109 of the act are amended to read:
Section 101.  Short Title.--This act shall be known[,] and may be cited[,] as "The Third Class City Code."
Section 102.  Definitions.--The following words and terms, as used in this act, shall have the meanings herein assigned to them, unless the context clearly indicates otherwise:
["City," a city of the third class.
"Street," any street, avenue, boulevard, parkway, road, lane, court, alley, or public square within the city, and any highway within the city, as provided in section two thousand nine hundred thirty-nine of this act.
"Highway," a state highway of the Commonwealth of Pennsylvania.
"Bill," any] **"Bill."  Any** proposed ordinance introduced in council.
**"City."  A city of the third class.**
**"Highway."  A State highway of the Commonwealth.**
**"Home Rule Charter and Optional Plans Law."  The provisions of 53 Pa.C.S. Pt. III Subpt. E (relating to home rule and optional plan government) and, where applicable, the former act of April 13, 1972 (P.L.184, No.62), known as the "Home Rule Charter and Optional Plans Law."**
**"Municipal authority" or "municipality authority."  A body politic and corporate created under 53 Pa.C.S. Ch. 56 (relating to municipal authorities), under the former act of May 2, 1945 (P.L.382, No.164), known as the "Municipality Authorities Act of 1945," or under the former act of June 28, 1935 (P.L.463, No.191), known as the "Municipality Authorities Act of one thousand nine hundred and thirty-five."**
**"Municipal Claim and Tax Lien Law."  The act of May 16, 1923 (P.L.207, No.153), referred to as the Municipal Claim and Tax Lien Law.**
**"Municipal corporation."  A city, borough, incorporated town or township.**
**"Municipalities Planning Code."  The act of July 31, 1968 (P.L.805, No.247), known as the "Pennsylvania Municipalities Planning Code."**
**"Municipality."  A county, city, borough, incorporated town or township.**
**"Pennsylvania Construction Code Act."  The act of November 10, 1999 (P.L.491, No.45), known as the "Pennsylvania Construction Code Act."**
**"Pennsylvania Election Code."  The act of June 3, 1937 (P.L.1333, No.320), known as the "Pennsylvania Election Code."**

"Street."  Any street, avenue, boulevard, parkway, road, lane, court, alley or public square within the city, and any highway within the city to the extent that the city is legally responsible for it, pursuant to agreement or otherwise.

Section 103.  Excluded Provisions.--This act shall not be construed to repeal any acts relating to:

(a)  The collection of municipal and tax claims by liens;

(b)  The method of incurring and increasing [of] city indebtedness;

(c)  Conduct of elections;

(d)  Public schools, except the collection of school taxes by the city treasurer;

(e)  [Aldermen] **(Reserved);**

(f)  Constables;

(g)  The giving of municipal consent to public [service companies] **utilities;**

(h)  Weights and measures;

(i)  Validations of elections, bonds, ordinances, and acts of corporate officers;

(j)  Joint city and county buildings;

(k)  Libraries;

(l)  State highways;

(m)  The joint or several authorities or duties pertaining to cities as well as to other classes of political subdivisions by virtue of general acts of Assembly.

Section 104.  Construction of Act Generally to Preserve Existing Situations.--**(a)**  The provisions of this act, so far as they are the same as those of existing laws, are intended as a continuation of such laws and not as new enactments. The repeal by this act of any act of Assembly, or part thereof, shall not revive any act, or part thereof, heretofore repealed or superseded, nor affect the corporate existence of any city heretofore incorporated. The provisions of this act shall not affect any act done, liability incurred, or right accrued or vested, or affect any suit or prosecution pending or to be instituted to enforce any right or penalty or punish any offense under the authority of such repealed laws. All ordinances, resolutions, regulations and rules made pursuant to any act of Assembly repealed by this act[,] shall continue with the same force and effect as if such act had not been repealed. Any person holding office or position under or by virtue of any act of Assembly repealed by this act shall continue to hold such office or position until the expiration of the term thereof, subject to the conditions and tenure attached to such office or position prior to the passage of this act.

**(b)**  A city shall possess, and city council and other city officials may execute, the corporate powers and duties as provided in this act and in other laws to the extent that these powers and duties are not repealed by this act.

Section 105.  Constitutional Construction.--The provisions of this act shall be severable[, and, if]. **If** any of its provisions shall be held to be unconstitutional, the decision so holding shall not be construed to affect the validity of any of the remaining provisions of this act. It is hereby declared as the legislative intent that this act would have been adopted had such unconstitutional provisions not been included therein.

Section 106.  Construction of References.--Whenever in this act reference is made to any act by title or otherwise, [such] **the**

reference shall be construed to apply to and include any codification wherein the provisions of the act referred to are substantially reenacted.

Section 107.  Cities to Which Act Applies.--**(a)**  This act shall apply to [(a) all]:

**(1)**  **All** cities which have been incorporated under or which have accepted the provisions of the act of [Assembly, approved the twenty-third day of May, one thousand eight hundred and seventy-four (Pamphlet Laws 230)] **May 23, 1874 (P.L.230, No.152),** entitled "An act dividing cities of this State into three classes; regulating the passage of ordinances; providing for contracts for supplies and work for said cities; authorizing the increase of indebtedness, and the creation of a sinking fund to redeem the same; defining and punishing certain offenses in all of said cities; and providing for the incorporation and government of the cities of the third [class," and the amendments thereto; (b) all] **class."**

**(2)**  **All** cities which have been incorporated under the provisions of the act of May [twenty-third, one thousand eight hundred and eighty-nine (Pamphlet Laws 277)] **23, 1889 (P.L.277, No.247),** entitled "An act providing for the incorporation and government of cities of the third [class," and the amendments thereto; (c) all] **class."**

**(3)**  **All** cities which have been incorporated under the provisions of the act of [Assembly, approved June twenty-seventh, one thousand nine hundred and thirteen (Pamphlet Laws 568)] **June 27, 1913 (P.L.568, No.367),** entitled "An act providing for the incorporation, regulation, and government of cities of the third class; regulating nomination and election of municipal officers therein; and repealing, consolidating, and extending existing laws in relation [thereto," and the amendments thereto; (d) all] **thereto."**

**(4)**  **All** cities formed by the consolidation of boroughs having voted separately to become cities in accordance with the provisions of the act[, approved May twenty-fourth, one thousand nine hundred and seventeen (Pamphlet Laws 262)] **of May 24, 1917 (P.L.262, No.143),** entitled "An act to enable two or more boroughs that are contiguous or in close proximity to be united and to become one city, wherever each of said boroughs shall have heretofore voted or shall hereafter vote to become a city of the third class, under laws now enacted or which may hereafter be enacted; and wherever each of said boroughs has duly received or shall hereafter duly receive letters patent constituting it a city of the third class, but where sufficient time shall not have elapsed after the granting of such letters patent for the holding of a municipal election; providing for the consequences of such consolidation, the government of such consolidated city, the payment of the indebtedness of each of the united territories and the enforcement of debts and claims due to and from each, and fixing the jurisdiction over the said consolidated city in the courts of the county in which the majority of its inhabitants shall [reside"; and (e) all] **reside."**

**(5)**  **All** cities incorporated under the provisions of this act [as therein provided].

**(b)**  **This act shall not be construed as a limitation on the ability of a city to do any of the following:**

**(1)**  **To continue operating under the form of government**

previously selected and exercising powers previously acquired by
the city in accordance with the act of July 15, 1957 (P.L.901,
No.399), known as the "Optional Third Class City Charter Law."
    (2)  To adopt or continue utilizing a form of government and to
acquire or continue exercising powers pursuant to an optional plan
or a home rule charter which has been or may be adopted in
accordance with the Home Rule Charter and Optional Plans Law.
    Section 108.  Effective Date.--This act shall go into effect on
the first day of July, one thousand nine hundred and thirty-one.
[This reenactment, revision, amendment and consolidation of the
laws relating to cities of the third class shall become effective
on the first Monday of January, one thousand nine hundred
fifty-two.]
    Section 109.  Publication of Notices.--Whenever, under the
provisions of this act, advertisement, notice[,] or publication is
required to be published in [one] **a** newspaper, [such] **the**
publication shall be made **one time, unless the provision requiring
publication specifies otherwise**, in [a] **at least one** newspaper of
general circulation, as defined [by the Newspaper Advertising Act
of May sixteen, one thousand nine hundred and twenty-nine
(Pamphlet Laws 1784), printed] **in 45 Pa.C.S. § 101 (relating to
definitions), published** in the city, if there is such a newspaper,
and if not, then in a newspaper [circulating generally] **of general
circulation** in [such] **the** city. If such notice is required to be
published in more than one newspaper, it shall be published in at
least one newspaper of general circulation, defined as aforesaid,
[printed] **published**, if there be such a newspaper, or circulating
generally as above provided in the city. When [such] **the** notice
relates to any proceeding or matter in any court, or the holding
of an election for the increase of indebtedness, or the issue and
sale of bonds to be paid by taxation, [such] **the** notice shall also
be published in the legal newspaper, if any, designated by the
rules of court of the proper county for the publication of legal
notices and advertisements, unless such publication be dispensed
with by special order of court: Provided, however, That
ordinances, auditor's statements, summaries of auditor's
statements, advertisements inviting proposals for public contracts
and for bids for materials and supplies[,] or lists of delinquent
taxpayers[,] shall be published only in newspapers of general
circulation, defined as aforesaid.
    Section 3.  Article II heading of the act is amended to read:
                              ARTICLE II
                    **PROCEDURES FOR** INCORPORATION
    Section 4.  The act is amended by adding a section to read:
    **Section 200.  Definitions.--The following words and terms, as
used in this article, shall have the meanings assigned to them in
this section, unless the context clearly indicates otherwise:**
    **"Incorporation resolution."  A resolution to submit, at any
general or municipal election, a referendum question to the
registered voters of a municipal corporation.**
    **"Municipal corporation."  A borough, a township of the first
class, a township of the second class or an incorporated town.**
    **"Referendum question."  The question of whether a municipal
corporation shall become incorporated as a city of the third class
to be known as the "City of ........................"**
    Section 5.  Section 201 of the act is amended to read:
    Section 201.  Creation of Cities.--Cities of the third class

shall be chartered [whenever a majority of the electors of any town, township, or borough, or any two or more contiguous towns, townships, or boroughs, or any combination thereof, situate within the limits of the same county or situate in two or more contiguous counties, and having separately or together, as the case may be, a population of at least ten thousand according to the last preceding United States census, shall each separately vote at any general or municipal election in favor of the same.] **as follows:**

**(1)  A single municipal corporation having a population of at least ten thousand according to the last preceding United States census may be incorporated as a city in accordance with this article if a majority of the registered voters in the municipal corporation cast an affirmative vote in favor of the referendum question.**

**(2)  Two or more contiguous municipal corporations having together a population of at least ten thousand according to the last preceding United States census may be incorporated as a city by utilizing 53 Pa.C.S. Ch. 7 Subch. C (relating to consolidation and merger) and, in accordance therewith, determine whether the newly incorporated city shall be governed by this act and other general laws applicable to and governing cities.**

Section 6.  Sections 202 and 203 of the act are repealed:

[Section 202.  Resolution to Submit Question to Electors.--The corporate authorities of any town, township, or borough, or of any contiguous towns, townships, or boroughs, as the case may be, may, on their own motion, or, upon petition of two hundred or more qualified electors thereof, shall, by resolution duly passed and recorded among the minutes, submit the question whether such town, township, or borough, or whether any contiguous towns, townships, or boroughs, shall become a city of the third class, to the qualified electors thereof, to be known as the "City of
........................"

Section 203.  Notice of Election.--The said corporate authorities shall give notice by the publication of said resolution, once a week for four successive weeks prior to the next general or municipal election, in not more than two newspapers of general circulation published or circulating generally in said towns, townships, and boroughs, in accord with the provisions of section 109 of this act.]

Section 7.  The act is amended by adding a section to read:

**Section 203.1.  Incorporating Resolution.--(a)  The governing body of a municipal corporation may adopt an incorporation resolution.**

**(b)  If two hundred or more registered voters of the municipal corporation petition the governing body of the municipal corporation for the adoption of a petition resolution, the governing body shall adopt the same.**

Section 8.  Section 204 of the act is amended to read:

Section 204.  Resolution Certified to County Board of Election; Form of Question.--The [said corporate authorities shall certify said] **governing body of a municipal corporation that adopts an incorporation resolution shall certify the incorporation** resolution to the county board of elections of the proper county or counties[, who shall thereupon cause a proper question to be submitted to the qualified electors at the said general or municipal election in the said towns, townships, and boroughs, in the manner required by the Pennsylvania Election Code]. **The county**

**board of elections shall, at the general or municipal election, in the manner required by the Pennsylvania Election Code, submit a referendum question to the registered voters of the municipal corporation that has certified an incorporation resolution.**

Section 9.  The act is amended by adding a section to read:

**Section 204.1.  Notice of Election.--Notice of the election at which registered voters of a municipal corporation will be voting on a referendum question shall be given by the secretary or other person designated by the municipal corporation. The notice required by this section shall be published once a week for four successive weeks in a newspaper of general circulation in the municipal corporation in which the referendum question will be submitted to the registered voters.**

Section 10.  Section 205 of the act, amended October 5, 1967 (P.L.327, No.143), is amended to read:

Section 205.  Returns of Election.--[The county board of elections shall make return of the vote cast on the question submitted to the clerk of the court of the proper county or counties, and to the respective corporate authorities of the towns, townships and boroughs submitting such questions. If a majority of the votes cast in each such town, township and borough on the question shall be in favor of creating a city, then returns thereof shall also be made by the county board of elections to the Secretary of the Commonwealth and the Department of Community Affairs.] **(a)  In each county in which a referendum question is submitted to the registered voters of a municipal corporation, the county board of elections shall make return of the vote cast on the referendum question to the clerk of the court for that county and to the governing body of the municipal corporation in which registered voters voted on a referendum question.**

**(b)  The county board of elections also shall make returns of the vote cast on the referendum to the Secretary of the Commonwealth and the Department of Community and Economic Development if a majority of the votes cast by the registered voters of the municipal corporation are in favor of incorporating as a city.**

Section 11.  Sections 206, 207, 208, 209 and 210 of the act are amended to read:

Section 206.  Effect of Vote Against [City Charter.--Whenever by the returns of the election in any town, township, or borough, it shall appear that in any one there is a majority against the city charter] **Incorporating as City.--If the returns show that a majority of registered voters in a municipal corporation voted "no" on the referendum question,** no further proceeding shall be had, and it shall not be lawful to hold another election upon the **referendum** question in [such town, township, or borough] **the municipal corporation** until the third general or municipal election thereafter occurring.

Section 207.  Governor to Issue [Charter Where Vote for City Charter] **Letters Patent;** Boundaries.--If [it shall appear by the said returns that there is a majority of the votes cast on the question in each town, township, and borough, aforesaid, in favor of the city charter, the corporate authorities of all such towns, townships, and boroughs] **the returns show that a majority of registered voters in a municipal corporation voted "yes" on the referendum question, the governing body of the municipal corporation** shall, within sixty days after [such] **the** election,

furnish to the Secretary of the Commonwealth the necessary
information with respect to the boundaries of the new city, and
the Governor shall, as soon as may be, issue letters patent, under
the Great Seal of the Commonwealth, reciting the facts, defining
the boundaries of [said] **the** city, and constituting the same a
body corporate and politic by the name of the City
of.......................

    Section 208.  Property of Entities Vested in City.--All of the
property and estates whatsoever, real and personal, of the [towns,
townships, and boroughs,] **municipal corporations** which shall have
[thus] become a city **in accordance with this article** are hereby
severally and respectively vested in the corporation or body
politic of [said] **the** city[, by the name, style, and title given
thereto] for the use and benefit of the citizens thereof.

    Section 209.  Existing Governments [Preserved Temporarily;
Organization of City.--The governments of the said towns,
townships, and boroughs] **Temporarily Preserved; City
Organization.--(a)  The government of the municipal corporation**
shall continue in full force and operation[,] until the first
Monday of January next succeeding the municipal election provided
for in section 702 [of this act], at which time the officers of
[said] **the** city chosen at [said] **the** municipal election shall
enter upon their respective terms of service, and the city
government shall be duly organized under this act.

    **(b)**  Whenever, in the organization of the city government of
any newly incorporated city, any person is [elected] **appointed** by
council to any office for which this act provides a definite term
and fixes a definite time for the election of persons thereto, the
person so [elected] **appointed** shall serve only for such time as
intervenes between [his election] **the person's appointment** and the
day fixed by this act for the regular election **or appointment** of
such officer for a full term.

    Section 210.  Existing Liabilities, Debts and Claims
Transferred to New City.--[All suits, prosecutions, debts, and
claims, whatsoever, of the said towns, townships and boroughs,
shall thereupon become transferred to the said city, which in all
suits pending shall be substituted as a party, and be under the
management and control thereof. All valid claims and demands of
whatsoever nature, whether payable presently or in the future,
existing against the said towns, townships, and boroughs when the
said charter shall go into operation, shall be enforceable against
the said city. The bonds and floating indebtedness, and the
interest thereon, of each of said towns, townships and boroughs,
contracted prior to such consolidation, shall be paid by the said
city thus organized and chartered, so that the taxes shall be
uniform throughout the territorial limits of the whole city.] **If a
municipal corporation is incorporated as a city in accordance with
this article, the following shall apply:**

    **(1)  All suits, prosecutions, debts and claims, whatsoever,
shall become transferred to the newly incorporated city.**

    **(2)  All pending suits involving the municipal corporation
shall be under the management and control of the newly
incorporated city which shall be substituted as a party therein.**

    **(3)  All valid claims and demands of whatsoever nature, whether
payable presently or in the future, existing against the municipal
corporation shall be enforceable against the city.**

    **(4)  The bonds and floating indebtedness, and the interest**

thereon, existing at the time a municipal corporation became incorporated as a city in accordance with this article shall be paid by the newly incorporated city, so that the taxes shall be uniform throughout the territorial limits of the whole city.

Section 12.  Article II-A heading and sections 250, 251, 252, 253, 254 and 255 of the act, added September 17, 1959 (P.L.913, No.363), are repealed:

[ARTICLE II-A
ALTERNATIVE PROCEDURE FOR INCORPORATION

Section 250.  Appointment of Charter Commission.--The corporate authorities of any town, township, or borough or of any combination of contiguous towns, townships or boroughs may and, upon petition of two hundred or more qualified electors thereof, shall petition the court of quarter sessions of the county in which such towns, townships or boroughs are situate, for the appointment of a charter commission to study and make recommendations on the adoption of a form of city government for such towns, townships or boroughs. Whenever any such towns, townships or boroughs, or combination thereof, are situate in more than one county, the petition shall be brought to the court of quarter sessions of the county in which the larger percentage of the population thereof are resident.

The charter commission so appointed shall consist of not less than nine nor more than fifteen members who shall be qualified electors of the town, township or borough, and if the petition is brought on behalf of more than one town, township or borough, the charter commission shall be appointed from among qualified electors of each of such towns, townships or boroughs.

In every case, at least three members of the charter commission shall be appointed from among the members of the governing bodies of the towns, townships or boroughs bringing a petition, and when two or more towns, townships or boroughs are party to the petition, the court shall appoint at least one member of the charter commission from among the members of the governing bodies of each of such towns, townships or boroughs.

Section 251.  Powers and Duties of Charter Commission.--The charter commission shall organize and function in accordance with the provisions of the Optional Third Class City Charter Law, and in so far as the same are applicable, shall exercise the same powers and perform the same duties as are conferred or imposed upon charter commissions elected under the provisions of the Third Class City Charter Law.

Members of the charter commission shall serve without compensation, but shall be reimbursed by the towns, townships or boroughs for their necessary expenses incurred in the performance of their duties. The corporate authorities of the towns, townships or boroughs shall appropriate reasonable sums of money necessary for such purpose and for the work of the charter commission as provided in the Optional Third Class City Charter Law.

The charter commission shall report its recommendations at the time and in the manner provided in the Optional Third Class City Charter Law. In its report, the charter commission shall recommend adoption of either the "commission" form of city government as provided in this act, or one of the optional forms of city government provided in the Optional Third Class Charter Law.

Section 252.  Election on the Question.--Within five days after the charter commission reports its recommendations, the corporate

authorities of such towns, townships or boroughs shall certify a copy of the commission's report to the county board of elections, which shall cause the question of adoption or rejection to be placed upon the ballot or voting machines at such time as the commission shall in its report specify. The question shall be submitted to the electors in the manner and at the time provided in the Optional Third Class City Charter Law and shall be in the following form:

Shall the..........................be incorporated into a
..............name of towns, townships or boroughs
city of the third class to be known as the city of.............
with a......................form of government providing for
       name of form
..........................councilmen to be elected at large?
      number of councilmen

Section 253. Return of Election; Effect of Vote.--(a) The county board of elections shall make return of the vote cast on the question as provided by law. If it appears that a majority of the votes cast in each such town, township or borough on the question shall be in favor of creating a city, the city shall be incorporated as provided in this act.

(b) If, at such election, the electors have voted in favor of adopting the commission form of government provided in this act, the city officers shall be elected and the city shall be organized and governed under the provisions of this act, the same as though the election had been held under the provisions of article II. of this act.

(c) If, at such election, the electors have voted in favor of adopting one of the optional forms of government provided in the Optional Third Class City Charter Law, the city shall be governed under the applicable provisions of the Optional Third Class City Charter Law, but the first city officers shall be elected in accordance with the provisions of this subsection.

At the first municipal election occurring at least ninety days after the date of the letters patent issued by the Governor incorporating such city, the qualified electors of such city shall elect the city officers appropriate to such optional form of government. Except in the case of the first city council, such officers shall be elected for the terms provided in the Optional Third Class City Charter Law. The first councilmen elected in such city shall be divided into two groups. One group shall equal one more than one-half of all the councilmen and its members shall serve for terms of four years. The second group shall equal one less than one-half of all the councilmen and its members shall serve for terms of two years. The members of the first group shall be those councilmen receiving the greatest number of votes at their election, and the members of the second group shall be those councilmen receiving the next greatest number of votes at their election. If two or more councilmen received the same number of votes and one or more but not all of them will be included in the first group, they shall draw lots to determine which of them shall be included in the first group. Thereafter, all councilmen shall be elected for the terms provided in the Optional Third Class City Charter Law.

The governments of the towns, townships and boroughs, comprising a city which elects its first officers under the provisions of this subsection, shall continue in full force and

operation until the first Monday of January next succeeding such election, at which time the officers of such city shall enter upon their respective terms and the city government shall be duly organized under the Optional Third Class City Charter Law.

(d) Whenever by the returns of the election in any town, township or borough, it shall appear that in any one there is a majority against the city charter and the form of city government recommended by the charter commission, no further proceedings shall be had and it shall not be unlawful to hold another election upon the same question in such town, township or borough during the period of four years following such election, but the provisions of this subsection shall not affect any proceedings under article II. of this act nor any subsequent proceedings under the Optional Third Class City Charter Law.

Section 254. Proceedings are Additional.--The proceedings authorized by this article are in addition to, and not in substitution of, those proceedings authorized by article II. of this act, but it shall not be lawful to institute proceedings under either article while any proceedings under the other article are unconcluded.

Section 255. Abandonment of Optional Form of Government.-- Whenever, under the provisions of this article, the electors of any towns, townships or boroughs elect to incorporate a city with one of the optional forms of government provided in the Optional Third Class City Charter Law, and later, at an election held for that purpose under the Optional Third Class City Charter Law, elect to abandon such optional form of government, the city shall cease to be governed by the provisions of such charter plan and the Optional Third Class City Charter Law on the first Monday of January following the next succeeding municipal election, and shall thereafter be governed under the provisions of this act. The reversion to the form of government provided by this act shall take effect as provided in article VI. of the Optional Third Class City Charter Law for transition to an optional form of government in so far as applicable, and in addition any city offices which are elective under this act but are not elective under such optional form of government, shall be filled at such municipal election.]

Section 13. Article III heading of the act is reenacted to read:

ARTICLE III
CHANGE OF CORPORATE TITLE

Section 14. Sections 301, 302, 303 and 304 of the act are amended to read:

Section 301. Resolution and Petition to Change Corporate Title.--[Whenever the council of any city shall, by resolution, decide to change the corporate title of such city, it shall present its petition to the court of quarter sessions of the county having jurisdiction over the municipal affairs of the city, petitioning such court to change the corporate title thereof in accordance with the resolution, a certified copy of which shall be attached to such petition.] **City council may initiate proceedings to change the corporate title of a city by doing each of the following:**

**(1) Adopting a resolution proposing to make the change in the corporate title of a city.**

**(2) Presenting to the court of common pleas of the county in**

which the city is located a petition, along with a certified copy of the resolution, requesting the change in the corporate title of the city.

Section 302.  Hearing; Decree.--**(a)**  Upon the presentation **to the court** of [such] **the** petition **and resolution in accordance with section 301,** the [said] court shall fix a day for a hearing [thereof] **on the question of the change in the corporate title of the city** and shall direct that notice of [such] **the** hearing be published once a week for three weeks in [not more than two newspapers] **a newspaper** of general circulation.

**(b)**  At [such] **the** hearing, the court shall [hear the] **permit any resident of the city to give** testimony [and argument of persons both for and against] **either in support of or opposition to** the change of the corporate title of [such] **the** city [and, if the court is of the opinion that the corporate title of such city should be changed as prayed for in the petition of the council of said city, shall enter upon the proceedings its order and decree changing the corporate title of such city in accordance with the resolution of the council thereof; otherwise the petition shall be dismissed].

**(c)  After hearing testimony, the court shall either order and decree changing the corporate title of the city in accordance with the petition and resolution of council or dismiss the petition.**

Section 303.  Recording Decree.--[Upon the filing of a certified copy of the decree of the court, changing the corporate name of any city, in the office of the Secretary of the Commonwealth and the recording thereof in the office of the recorder of deeds of the county, the courts of which have jurisdiction over the municipal affairs of the city, the corporate title of said city shall thereafter be as set forth in said decree.] **A change in the corporate title of a city that is ordered and decreed in accordance with section 302(c) shall not become effective until a certified copy of the decree of court is filed in the office of the Secretary of the Commonwealth and is recorded in the office of the recorder of deeds of the county in which the city is located.**

Section 304.  Existing Rights and Liabilities Preserved.--No change in the corporate title of any city shall in any way affect any liabilities incurred, rights accrued or vested, obligations issued or contracted, or any suits or prosecutions pending or instituted to enforce any right or penalty accrued or punish any offense committed prior to [such] **the** change.

Section 15.  Article IV heading of the act is reenacted to read:

ARTICLE IV
CREATION AND DIVISION OF WARDS

Section 16.  Section 401 of the act is amended to read:

Section 401.  [Petition for Creation or Division of Wards.--New wards may be created in cities, or wards therein may be divided, by the court of quarter sessions, on application thereto for that purpose, by the petition of at least one hundred qualified electors of the district seeking to be created as a new ward, or of the ward to be divided, or by the petition of the council of the city. No new ward shall contain less than three hundred qualified electors according to the last preceding enumeration.] **General Power of Council in Creation or Division of Wards.--(a) In addition to reapportionment of wards pursuant to 53 Pa.C.S.**

Ch. 9 (relating to municipal reapportionment) and section 11 of Article IX of the Constitution of Pennsylvania, council may, with or without a petition as provided in section 401.1 and subject to approval by the registered voters as provided in section 407, create new wards, divide a ward or wards or detach part of a ward and attach to another ward, in accordance with this article.

(b)  No new ward shall contain less than three hundred registered voters according to the last general or municipal election.

(c)  All wards in the city shall be numbered and composed of compact and contiguous territory as nearly equal in population as practicable and as officially and finally reported in the most recent Federal census, decennial or special.

Section 17.  The act is amended by adding a section to read:
Section 401.1.  Petition of Registered Voters.--(a)  Registered voters may petition council to initiate proceedings under section 401 to create new wards, divide a ward or wards, or detach part of a ward and attach to another ward as follows:

(1)  One hundred registered voters may petition council to create or divide a ward if, in the case of a petition proposing to create a ward, the petitioners reside in the portion of the city which the petition proposes to create as a ward, or in the case of a petition to divide a ward, the petitioners reside in the ward which the petition proposes to divide.

(2)  Twenty-five registered voters may petition to detach part of one ward and attach the detached part to another ward if the petitioners reside in the part of the ward that is proposed to be detached.

(b)  Council shall, by motion approved by a majority of council and within ninety days of presentment of the petition, determine whether to initiate proceedings under section 401. If the motion is in favor of initiating proceedings, council shall appoint a commission in accordance with section 403.

(c)  In the event that council has not approved a motion within ninety days after the presentment of a petition under subsection (a), any ten registered voters may petition the court of common pleas and contest the existing apportionment as violating section 401. The proceedings before the court shall be conducted in accordance with 53 Pa.C.S. §§ 906 (relating to contest of reapportionment by governing body) and 907 (relating to costs and expenses of contest).

Section 18.  Sections 402 and 403 of the act are amended to read:
Section 402.  [Petition for Striking Territory from One Ward and Attaching to Another.--Any part or district of a ward in any city may be detached therefrom and attached to another ward by the court of quarter sessions of the proper county, on application thereto for that purpose, by the petition of at least twenty-five qualified electors of the district to be stricken off or attached, or by the petition of the council of the city] **(Reserved)**.

Section 403.  Appointment of Commission[; Report; Order of Court.--Upon the presentation of any such petition praying for the creation of a new ward out of parts of two or more wards, or the division of a ward, or for the detaching from a ward of a part or district thereof and attaching the same to another ward, the said court shall appoint five impartial qualified electors, residents of the city, but not of the wards to be affected thereby, as

commissioners to inquire into the propriety of granting the prayer
thereof: Provided, however, That in cities having not more than
three wards, said commissioners shall be selected from the city at
large, and may be residents of the ward or wards to be affected
thereby. The commissioners so appointed, or any four of them,
shall examine the premises and make a draft of the new ward or
wards proposed to be created, or of the ward or wards to be
divided, or of the wards affected, showing the division or change
thereof, or showing the lines as any separation and attachment
will affect them, as the case may be, and showing clearly the
number of qualified electors contained within the proposed new
ward. The commissioners shall make report to the said court at its
next term, together with their recommendation.].**--(a)  If council
initiates proceedings pursuant to section 401, whether on its own
volition or pursuant to the petition of registered voters, it
shall appoint five impartial registered voters who are residents
of the city as commissioners, to make a report and recommendation
concerning the necessity, desirability and feasibility of proposed
wards.**

**(b)  Except as provided in subsection (c), commissioners shall
not be residents of the wards to be affected by the petition.**

**(c)  In cities having not more than three wards, commissioners
appointed under subsection (a) shall be selected from the city at
large and may be residents of the ward or wards to be affected
thereby.**

Section 19.  The act is amended by adding sections to read:

**Section 403.1.  Expenses of Commissioners.--Council shall make
appropriations for the reasonable expenses of the commissioners
incurred for their services pursuant to this article. Each
commissioner shall submit to the city controller for approval an
itemized account of the commissioner's expenses to be paid under
the authority of this section.**

**Section 403.2.  Report.--(a)  Commissioners appointed by
council in accordance with section 403(a) shall examine the
premises and prepare a report which shall include a draft of all
wards affected by the proposed creation, division or detachment,
showing the division or change thereof, or showing the lines of
wards as any separation and attachment will affect them, as the
case may be, and showing clearly the population contained within
the affected wards using figures officially and finally reported
in the most recent Federal census, decennial or special. The
report, upon completion, shall be submitted to council and shall
include a recommendation reflecting the decision of a majority of
its members concerning the proposed creation, division or
detachment of a ward or wards.**

**(b)  Consistent with the standards applied in municipal
reapportionment pursuant to 53 Pa.C.S. § 903(b) (relating to
reapportionment by governing body), no report shall recommend the
creation, division or detachment of a ward or wards unless the
result of implementing the report and recommendation would be that
each ward in the city is composed of compact and contiguous
territory as nearly equal in population as practicable as
officially and finally reported in the most recent Federal census,
decennial or special.**

**(c)  Upon receipt of the report, council shall, by motion,
determine whether to submit the question of the proposed creation,
division or detachment of a ward or wards as provided in the**

report to the registered voters of the city in accordance with
**section 404.**

Section 20.  Sections 404, 405, 406, 407 and 408 of the act are
amended to read:

Section 404.  Election[; Form of Ballot.--If a majority of the
commissioners appointed report favorably to such creation or
division, or the detaching from a ward of a part or district
thereof and attaching the same to another ward, the court shall
order].**--(a)  If, based upon the report in section 403.2, council
decides to proceed, it shall certify to the county board of
elections** the question of the creation, [or] division **or
detachment** of [such] **the** ward[,] **or wards** to be submitted to the
[qualified electors] **registered voters** of the ward or wards
[affected, and in the case of the detachment of territory to the
electors of the ward from which the territory is to be stricken
off] **or parts thereof which are the subject of the report,** at the
general or municipal election occurring not less than ninety days
[thereafter] **after the report was approved by council.**

**(b)**  The [clerk of said court shall certify such order to the]
county board of elections [which] shall [thereupon] cause [a
proper] **the** question [to be submitted to the qualified electors at
such] **of approving the creation, division or detachment of a ward
or wards to be placed on the ballot in the ward or wards or parts
that will be affected thereby, at the appropriate** election in the
manner provided by the Pennsylvania Election Code.

Section 405.  Notice of Election**; Review of Report.**--[It shall
be the duty of the mayor of the said city to give at least fifteen
days' public notice, by advertisement in one or more newspapers,
of general circulation, that such an election will be held, and of
the time and place of holding the same.] **(a)  The city shall
publish a notice of election in a newspaper of general circulation
at least fifteen days prior to the date that the question of
approving the creation, division or detachment of a ward or wards
is to be presented at the specified general or municipal election.**

**(b)**  **The election notice shall contain a statement of the issue
to be submitted to the registered voters at the election,
including the ward, wards or parts thereof to be affected, and the
date upon which the election is to be held. The notice shall
reference the report and specify that it is available for review
and copying as a public record pursuant to the act of February 14,
2008 (P.L.6, No.3), known as the "Right-to-Know Law."**

Section 406.  Election Laws to Apply.--All [the electors,
judges, inspectors and clerks, voting at and in attendance upon
the election to be held under the provisions of this article,
shall be subject to the penalties imposed by] **matters relating to
the election at which the question of approving the creation,
division or detachment of a ward or wards is to be presented to
the voters shall be governed by the applicable provisions of** the
Pennsylvania Election Code.

Section 407.  Computing Vote; Return; [Order of Court;]
Resubmission of Question.--[The officers of such election shall
receive and count the votes in the manner prescribed by law, and
shall forthwith make out a return on forms furnished by the board
of elections, showing the number of votes for and against such new
ward, or for or against such division or detachment of a ward, as
the case may be, and shall deliver the same to the clerk of the
court of quarter sessions within three days. The said clerk shall

compute said return, and forthwith certify the result thereof to the court. If it appears that a majority of the votes so taken are for a new ward, or for a division or for the detachment of territory and its attachment to another ward, said court shall thereupon order and decree the creation of such new ward or wards, or such division, or such detachment and attachment agreeably to the lines marked out and returned by the commissioners] **(a) The county board of elections shall tabulate and publish the results of the referendum in a newspaper of general circulation within thirty days of the election. A certified copy of the results shall be placed on record among the minutes of council.**

**(b) If a majority voted in favor of creating or dividing a ward or wards, or the detachment of a part of a ward to be attached to another, council shall proceed to create or divide a ward or wards or detach a part of a ward to be attached to another, in accordance with the report,** and shall number the new wards when necessary[, and order a certified copy of the whole proceeding to be placed on record among the minutes of council].

**(c)** If a majority [of votes shall be] **voted** against [the new ward, or against division or against detachment] **creating or dividing a ward or wards, or the detachment of a part of a ward to be attached to another,** no further action shall be had upon [such proceeding] **the question,** nor shall any new [application for such new ward or such division or detachment and attachment be heard] **petition on the same question be resubmitted** until two years from the date of [such] **the** election.

Section 408. Change of Ward Lines by [Court] **Council.--** Whenever it shall appear to [the court of quarter sessions] **council** in proceedings for the division of any ward, or the creation of new wards, that any of the boundaries or divisions thereof are uncertain for any cause, [the said court shall make such order or decree as to] **council shall determine** the relocation of the line [as to it may appear proper, so that the same shall] **to** conform as nearly as possible to the boundary lines which may have been previously determined upon **so long as the result is that each ward in the city is composed of compact and contiguous territory as nearly equal in population as practicable as officially and finally reported in the most recent Federal census, decennial or special.**

Section 21. The act is amended by adding a section to read:

**Section 409. Pennsylvania Election Code.--Nothing in this article shall be construed as affecting the powers and duties of the court of common pleas or the county board of elections and restrictions on alteration of election districts as provided in Article V of the Pennsylvania Election Code.**

Section 22. Article V and subdivision (a) heading of the act are repealed:

[ARTICLE V
ANNEXATION OF TERRITORY


(a) Annexation of Boroughs, Townships and Parts
of Townships]

Section 23. Section 501 of the act, amended July 10, 1959 (P.L.519, No.138), is repealed:

[Section 501. Petition for Annexation of Boroughs or Townships and Parts of Townships.--Any borough having a population of less

than ten thousand inhabitants, or any township or part of a
township, contiguous to any city, whether wholly or partially
within the same or different counties, may become annexed to any
such city in the following manner:

(a)  In the case of a borough, the borough council may pass an
ordinance for such annexation, whenever three-fifths of the
taxable inhabitants of such borough shall present a petition,
accompanied with the written consent of a majority in number and
interest of property owners of the borough, asking for such
annexation.

(b)  In the case of a township, or part thereof, whenever
three-fifths of the taxable inhabitants of such township or part
thereof shall present a petition to the council of said city,
accompanied with the written consent of a majority in number and
interest of property owners of such township or part of a
township, asking for such annexation.

(c)  In case of part of a township, when there are no taxable
inhabitants residing therein, then whenever three-fifths of the
property owners in number and interest of property situated
therein shall present a petition to the council of said city
asking for such annexation.

In construing this section, a majority in interest of owners of
undivided interests in any piece of property shall be deemed and
treated as one person for the purpose of ascertaining the number
of petitioners.]

Section 24.  Section 502 of the act is repealed:

[Section 502.  Advertisement; Plots.--Before any such petition
is circulated or signed, notice thereof shall be given by
advertisement once a week for four weeks in two newspapers
published in or circulated throughout the territory to be annexed.
Such notice shall state the purpose of the petition and the date
it will be ready for signing. All such petitions shall be
accompanied by a plot or plots of the territory to be annexed,
showing all streets and highways, municipal or township
improvements and public buildings.]

Section 25.  Section 503 of the act, amended October 5, 1967
(P.L.327, No.143), is repealed:

[Section 503.  Ordinance of City; Filing Copy Thereof.--Upon
presentation to the council of such city of a certified copy of
the ordinance in case of a borough, or of the petition in the case
of a township or part thereof, together with the required plots in
any case, the council of said city may, by ordinance, annex such
borough, township, or part thereof to the said city. Certified
copies of the borough and city ordinances and the petition and the
plans shall be filed in the office of the clerk of the court of
quarter sessions of the county or counties involved, and like
copies shall be certified to the Department of Community Affairs
of the Commonwealth. Nothing contained in subdivision (a) of this
article shall be deemed to require any city to annex any borough,
township or part of any such township.]

Section 26.  Section 504 of the act is repealed:

[Section 504.  Conclusiveness of Ordinance; Referendum;
Appeal.--Thirty days after the filing of the said annexation
ordinance by the said city council, such ordinance and the action
of the said city council shall be finally conclusive, unless an
appeal therefrom is taken within the said thirty days, by petition
to the court of quarter sessions of the county in which the city

is located, or unless a referendum petition is filed as provided in this act.]

Section 27.  Section 505 of the act, repealed in part June 3, 1971 (P.L.118, No.6), is repealed:

[Section 505.  Hearing an Appeal; Notice; Appeal from Final Order.--Where an appeal is taken by any person aggrieved by such annexation ordinance of the city, the court shall fix a day for hearing the same. Notice shall be given to all parties interested in such manner as the court shall direct. From any such final order or decree, any party in interest, aggrieved by such order or decree, may have an appeal to the Supreme Court as in other cases. Upon final determination and approval of the annexation ordinance, the annexation shall take effect immediately.]

Section 28.  Section 506 of the act, added July 10, 1959 (P.L.519, No.138), is repealed:

[Section 506.  Petition for Annexation of Boroughs Having Ten Thousand or More Inhabitants.--Whenever electors, equal to at least ten per centum of the highest vote cast for any office in any borough having a population of ten thousand or more inhabitants contiguous to a city at the last preceding general election, or whenever ten per centum of the qualified electors, residing within any part of a borough having a population of ten thousand or more inhabitants contiguous to a city, shall petition the council of such city for the annexation of the borough, or part thereof, to the contiguous city, and for a referendum on the question of such annexation, the council shall cause a question to be submitted at the primary or general election occurring at least sixty days thereafter, by certifying a resolution, duly adopted, to the county board of elections of the county or counties in which any part of the city or borough is located, for submission of such question on the ballot or on voting machines at such election, both in such borough and in the city to which annexation is desired, in the manner provided by the election laws of this Commonwealth.

Such question shall be in the following form:

      Do you favor the annexation of the
      borough of ......................     Yes
      (or the part of the borough briefly
      described) to the city of ....... ?    No

If a majority of the persons voting on such question in the entire borough shall vote "yes," and a majority of the persons voting on such question in the city shall vote "yes," then the borough or part thereof, as the case may be, shall on the first Monday of January next following, be and become a part of the city.

If a majority of the persons voting on the question in the borough or in the city shall vote "no," no further proceeding shall be had, and it shall not be lawful to hold another election upon the question until the second general or municipal election thereafter occurring.

All petitions shall be accompanied by a plot or plots of the territory to be annexed, showing all streets and highways, municipal improvements and public buildings, and all petitions for the annexation of a part of a borough shall include a description of the part of the borough sought to be annexed.]

Section 29.  Article V subdivision (b) heading and section 515

of the act are repealed:

[(b)  Annexation of Outlying Lots in a Township
Section 515.  Annexation of Outlying Lots; Appointment of
Viewers.--Upon application by petition to the court of quarter
sessions signed by a majority or more of the taxable inhabitants,
accompanied by the written consent of a majority of the property
owners in number and interest of any outlots or sections of land
in a township containing not more than one hundred acres of land
contiguous to the city, and being part of the same county in which
the city is situated, stating that they desire the same to be
annexed to said city, the desirability therefor, and describing
the lots or land to be annexed, with a map or draft of the same,
which petition shall be sworn to by one or more of the
petitioners, and accompanied by the petition of the council of the
city praying for the annexation of such outlots or sections of
land and containing a copy of the resolution of the council of
said city approving the annexation, the said court shall thereupon
appoint three viewers, who shall be nonresidents of the city or of
the township whose territory is to be annexed, to inquire into and
investigate the allegations and facts stated in the said
petition.]
Section 30.  Section 516 of the act, amended October 5, 1967
(P.L.327, No.143), is repealed:
[Section 516.  Notice of View; Report; Decree.--Notice of the
first hearing of the said viewers shall be given to the city, and
to at least one of the petitioners as the court may direct. The
said viewers, or a majority of them, shall make report to said
court at its next session after their appointment. If they report
that they find the statements and facts of said petition to be
true, and recommend the annexation as prayed for, and if no appeal
is taken within thirty days therefrom, the said court shall
thereupon make an order or decree to carry the annexation into
effect. The city clerk shall forward a certified copy of said
decree to the Department of Community Affairs of the
Commonwealth.]
Section 31.  Section 517 of the act, amended October 5, 1967
(P.L.327, No.143) and repealed in part June 3, 1971 (P.L.118,
No.6), is repealed:
[Section 517.  Appeal; Hearing; Notice; Decree.--Within thirty
days after filing of such report, any person aggrieved thereby may
take an appeal, by petition to the court of quarter sessions,
setting forth his complaint, and thereupon the court shall fix a
day for hearing the same. Notice of such appeals shall be given to
all parties interested by publication once in one newspaper, in
accord with the provisions of section one hundred and nine of this
act. After such hearing, the court shall decide whether the
proceedings are in conformity with this act, and make an order or
decree either dismissing the appeal and approving such annexation
or sustaining the appeal and dismissing the annexation. When the
court of quarter sessions makes an order to carry such annexation
into effect, where no appeal is taken, and upon final
determination and approval of the annexation ordinance, where an
appeal has been taken, the said outlots or sections of land shall
at once and thereafter be a part of said city as fully as if the
same had been originally a part thereof. A certified copy of any
final decree or order approving such annexation shall be forwarded
by the city clerk to the Department of Community Affairs.]

Section 32.  Section 518, Article V subdivision (c) heading and section 525 of the act are repealed:
[Section 518.  Compensation of Viewers.--The viewers herein provided for shall be allowed five dollars per day for each and every day actually spent by them in the performance of their duties, together with their actual necessary expenses. The costs of the proceedings in all cases shall be paid by the city.
           (c)  Annexation of Part of a Borough
Section 525.  Petition for Annexation of Territory in a Borough; Ordinance of City.--Territory in a borough contiguous to a city or separated therefrom by a river or stream may be detached from the borough and annexed to the city in the following manner:
A petition signed by owners of the land in the territory proposed to be detached and annexed, and described in the petition, shall be presented to the borough authorities, who, if they find that the petition is signed by either a majority of freehold owners or by the owners of two-thirds of the area of the territory described, and that the assessed valuation of the territory described is not in excess of five per centum of the assessed valuation of the borough, may, by ordinance, detach the described territory, subject to the acceptance of the detached portion by the city of the third class, and upon notice from the council of the borough that it has ordained the detachment of the described territory of the borough for the purpose of having it annexed to the city, the city may, by ordinance, annex the portion of the borough so proposed to be detached.]
Section 33.  Section 526 of the act, amended October 5, 1967 (P.L.327, No.143), is repealed:
[Section 526.  Filing of Plans.--Upon such annexation by ordinance, a plan of the territory annexed shall be filed by the city council in the office of the county commissioners and with the clerk of the court of quarter sessions and thereupon the detachment and annexation shall be effective: Provided, however, That if there be no delay through litigation or causes beyond the control of the councils, the plan shall be filed, as herein required, within thirty days after the passage of the annexation ordinance by the city council, and, if the proceedings are not thus completed, they shall be void in their entirety and of no effect. A copy of the plan filed shall be likewise forwarded to the Department of Community Affairs of the Commonwealth.]
Section 34.  Article V subdivision (d) heading, sections 535 and 536 and subdivision (e) heading of the act are repealed:
         [(d)  Indebtedness and Public Property when Borough or
                    Township is Annexed
Section 535.  Apportionment of Indebtedness of Borough or Township; Taxes to be Uniform.--All the indebtedness of each borough or township annexed to a contiguous city under the provisions of this act, as well as the indebtedness of the city to which the same is annexed, shall be paid by the city as enlarged by such annexation; and all territory included within the limits of the same shall be liable for the payment of the floating and bonded indebtedness, and the interest thereon, of all the territory included within such enlarged city; and all taxes thereafter levied therefor shall be uniform throughout the territorial limits of such enlarged city.
Section 536.  Property of Annexed Territory to Become Property of City.--All of the public property owned by any such borough or

township annexed to any city shall become and remain the public
property of the said city.
    (e)  Apportionment of Indebtedness when Part of a Township
               or Outlying Lots are Annexed]
   Section 35.  Section 540 of the act, amended October 5, 1967
(P.L.327, No.143), is repealed:
   [Section 540.  Adjustment of Indebtedness when Part of Township
is Annexed.--Where any part of any township or outlying lots
thereof are annexed to any city, the township officers of that
part of the said township not annexed, and the city council of the
said city, shall make a just and proper adjustment and
apportionment of all public property owned by the said township at
the time of said annexation, both real and personal, including
funds as well as indebtedness, if any, to and between the said
township and the city. In making such adjustment and apportionment
of the property and indebtedness, the township and the city shall
be entitled respectively to share in a division of the property
and indebtedness in the proportion that the assessed valuation of
the land remaining in the township bears to the assessed valuation
of the land annexed: Provided, however, That where indebtedness
was incurred by the township for an improvement located wholly
within the annexed part of the township, the whole of such
indebtedness shall be assumed by the city, and where any part of
any such improvement is located within the annexed part of the
township, the part of such indebtedness representing the part of
the improvement located within the territory annexed, shall be
assumed by the city, and the adjustment and apportionment of any
remaining debt, and the public property of the township shall be
made as above provided. The adjustment and apportionment as made
shall be reduced to writing, and duly executed and acknowledged by
the proper officials, and filed in the office of the clerk of the
court of quarter sessions of the county in which said city is
located. A copy of such adjustment and apportionment shall be
forwarded by the city clerk to the Department of Community Affairs
of the Commonwealth.]
   Section 36.  Sections 541, 542 and 543 of the act are repealed:
   [Section 541.  Appointment of Commission; Contents of
Report.--In case the said council of the said city and the
township's authorities cannot make such amicable apportionment and
adjustment of their property and indebtedness within six months
after any such annexation, then, in that case, the said council or
any officer of said township may present a petition to the court
of quarter sessions of the county in which the said city is
located. Whereupon the said court shall appoint three
disinterested commissioners, residents and taxpayers of said
county not residing in the said city nor in the said township,
who, after hearing, due notice of which shall be given to the city
and township interested by publication once in one or more
newspapers, at least twenty days before said hearing, in accord
with the provisions of section one hundred and nine of this act,
shall make report to the court, making an apportionment and
adjustment according to the provisions of this act of all the
property as well as indebtedness, if any, to and between the said
city and the said township, said report to state the amount, if
any, that shall be due and payable from the city to the township,
or from the township to the city, as well as the amount of
indebtedness, if any, that shall be assumed by the city or

township, or both of them.

Section 542.  Notice of Filing of Report; Exceptions;
Confirmation.--The commissioners shall give the city and the
township at least five days' notice of the filing of their report.
Unless exceptions are filed thereto by the city or by the township
within thirty days after filing thereof, the same shall be
confirmed by the court absolutely. Any sum awarded by the report
to the city or to the township shall be a legal and valid claim in
its favor against the city or township charged therewith, and the
amount of debt, if any, apportioned to any city or township shall
be a legal and valid claim against such city or township charged
therewith. Any property, real or personal, given and adjudged to
the city or the township shall become and be the property of the
city or the township to whichever one the same is given and
adjudged. Upon such report being confirmed, such claim or
indebtedness charged against any city or township may be collected
in the same manner as a judgment is collected against any city or
township.

Section 543.  Compensation of Commissioners; Costs.--The
commissioners shall be allowed five dollars per day for each day
actually spent by them in the performance of their duties,
together with their actual necessary expenses. All costs and
expenses of such proceedings shall be apportioned by the court to
and between the said city and the said township as it shall deem
proper.]

Section 37.  Section 544 of the act, repealed in part June 1971
(P.L.118, No.6), is repealed:

[Section 544.  Disposition of Exceptions; Appeal.--In case
exceptions are filed to the report of the commissioners, the court
shall dispose of the same, taking testimony if deemed advisable,
and the decision of the court thereon shall be final and binding
on the several cities and townships, unless an appeal is taken.]

Section 38.  Section 545, Article V subdivision (f) heading,
sections 550 and 551 and subdivision (g) heading of the act are
repealed:

[Section 545.  Jurisdiction when Territory is in Two or More
Counties.--In cases where a city or township is situated in two or
more counties, the court of quarter sessions of the county in
which the city is located shall have exclusive jurisdiction over
the matter, but the same shall be heard by a judge, not a resident
of either of the judicial districts affected, who shall be called
to preside specially in the matter, and, in such cases, the court
shall appoint the commissioners hereinbefore provided for from
both or from three of such counties.

(f)  Apportionment of Indebtedness when Part of a
Borough is Annexed

Section 550.  Apportionment of Indebtedness; Decree of
Court.--The court of quarter sessions having jurisdiction of the
city, in cases where any part of a borough is annexed to a city,
upon a petition of the borough or city, may hear evidence and
consider the indebtedness and assessed valuation of the borough
and the city and the assessed valuation of the territory annexed,
and may enter a decree making such adjustment of the indebtedness
and the manner and time of the payment thereof as to the court may
seem meet and proper.

Section 551.  Collection of Taxes Assessed Prior to
Annexation.--Any taxes assessed prior to the going into effect of

the proceedings shall be paid to the borough, and the collection
and enforcement thereof shall be as though the land had not been
detached.

                    (g)  Wards]
    Section 39.  Section 560 of the act, amended October 5, 1967
(P.L.327, No.143), is repealed:
    [Section 560.  Distribution of Annexed Territory Among Wards;
New Wards; Ward Officers.--Within thirty days from the effective
date of any annexation, the city council shall cause a petition to
be presented to the court of quarter sessions of the county in
which the said city is located, praying for the distribution of
the annexed territory among the wards of the said city, or for the
creation of a new ward or wards out of the same, and to make such
order or decree as may be necessary to constitute such ward or
wards an election district or election districts, or add to or
create new election districts in a ward or wards to which such
territory is attached, and the said court shall, in case of the
creation of a new ward or wards, appoint the election and other
officers of the same, and name the place or places of holding the
first election in the said ward or wards for ward officers, and,
for that purpose, may order a special election, if said court
shall deem the same necessary, to be conducted in the manner
provided by the Pennsylvania Election Code. The officers elected
at such special election shall hold their respective offices until
their successors, elected at the next succeeding municipal
election, shall be duly qualified. Any decree of court creating a
new ward or wards shall be entered in full upon the records of
said court and certified copies thereof, under the seal of the
court, shall be delivered by the clerk of said court to and be
filed by the city clerk of the city and the secretary of the
school district in which said ward or wards become located. The
clerk of the court of quarter sessions shall likewise certify
copies thereof to the Secretary of the Commonwealth and to the
Department of Community Affairs.]
    Section 40.  Article V subdivision (h) heading of the act,
amended August 6, 1963 (P.L.511, No.268), is repealed:
        [(h)  Annexation of Property Owned by a City]
    Section 41.  Section 561 of the act, amended October 5, 1967
(P.L.327, No.143), is repealed:
    [Section 561.  If any city owns land contiguous to said city on
January 1, 1963, the city may annex said territory in the
following manner:
    A bill may be introduced in council to annex said land, setting
forth a description of the territory to be annexed and the courses
and distances of the boundaries of such territory. If said bill
becomes an ordinance by action of council, a copy thereof shall be
certified to the Department of Community Affairs.]
    Section 42.  Section 562 of the act, added May 27, 1957
(P.L.210, No.104), is repealed:
    [Section 562.  Upon such annexation by ordinance, a plan of the
territory annexed shall be filed by the city council in the office
of the county commissioners and with the clerk of the court of
quarter sessions, and thereupon the annexation shall become
effective.
    The annexation proceedings authorized by these sections are in
addition to, and not in substitution of, proceedings otherwise
provided by law for annexation of territory, and may be followed

without reference to or compliance with such other provisions.]
    Section 43.  Article V subdivision (i) heading, section 570,
subdivision (j) heading and section 580 of the act, added July 10,
1959 (P.L.521, No.139), are repealed:
            [(i)  Terms and Salaries of Officials and Employes
                          of Annexed Territory
    Section 570.  Annexation Officials and Employes.--In case of
annexation, all salaried public officials of territory annexed who
have theretofore been elected for a definite term shall continue
to receive during the term for which they were elected the same
salaries as they would have received except for such annexation,
and it shall be the duty of the mayor of such city to assign to
such public officials the performance of such suitable services
and duties as will be in the public interest of the city and
particularly of the annexed portion thereof. In case of
nonelective employes of such annexed borough or township, they
shall, so far as practicable, be employed at corresponding duties
by the city in accordance with rules and regulations to be
established by city ordinance. Tax collectors holding office at
the date of annexation shall continue to perform the duties and
receive the emoluments of office for the full term for which they
were elected, but upon the expiration of such term, the office
shall be abolished within such territory and the duties thereof
shall be merged with that of the collector of taxes of such city
of the third class.
                        (j)  Ordinances
    Section 580.  Annexation Ordinances.--In case of annexation,
all ordinances governing the annexed territory shall remain in
full force and effect over the annexed territory until appropriate
ordinances are passed by the Council of the city of the third
class integrating ordinances of the annexed territory with those
of the city of the third class.]
    Section 44.  Article VI heading of the act is reenacted to
read:
                          ARTICLE VI
                        CITY BOUNDARIES
    Section 45.  Sections 601, 602, 603, 604, 605 and 606 of the
act are amended to read:
    Section 601.  Navigable Stream Boundaries.--Whenever any city
is bounded by the nearest margin of a navigable stream, and an
opposite [township, borough, or city] **municipal corporation** is
also bounded by the nearest margin of the same stream, the
boundaries of [such] **the** city shall extend to the center line of
the stream. Nothing contained in this section shall be construed
to repeal any local or special law providing otherwise.
    Section 602.  Court to Establish Disputed Boundaries.--[The
court of quarter sessions, upon petition of any interested
political subdivision] **(a)  In any case in which a city or any
municipal corporation contiguous to the city disputes the boundary
between them, the court of common pleas, upon petition of the city
or the contiguous municipal corporation**, may ascertain and
establish **the** disputed [boundaries between any such parties.
Whenever the] **boundary.**
    **(b)  In any** dispute [involves] **involving** the boundaries of
counties, the provisions of [the County Code shall apply to that
extent.] **this article shall not supersede the application of the
relevant provisions of the act of August 9, 1955 (P.L.323,**

No.130), known as "The County Code," and the act of July 28, 1953 (P.L.723, No.230), known as the "Second Class County Code," or any other law applicable to the fixing of county boundaries.

Section 603. Petition to Court; Commissioners; Report.--Upon [such] petition **in accordance with section 602(a)**, the court shall appoint [as] **three impartial** commissioners [three impartial qualified electors], who shall have authority to employ a professional engineer or surveyor. After giving notice to **interested** parties [affected] by publication once in at least one newspaper **of general circulation**, in conformity with section [one hundred and nine of this act, they shall view the disputed boundaries] **109, or as directed by the court, the commissioners shall hold a hearing and view the disputed boundaries**. A majority of the commissioners shall make [a prompt] **its** report and recommendations to the court, [which report shall be] accompanied [with] **by** a plot **or draft** of the **lines and boundaries** proposed [boundary, if the same cannot be fully described] **to be ascertained and established if they cannot be fully designated** by natural lines[. The] **or boundaries. Upon the filing of the report, it shall be confirmed nisi, and the** court [shall] **may** make [such] **further** order [thereupon as to] **as** it shall [seem] **deem** just and reasonable.

Section 604. [Reviews;] Exceptions and [Issues.--Any person affected may petition the court for a review, or may except to the report of the commissioners. When matters of fact are in dispute, the court may frame an issue and certify the same for trial to the court of common pleas.] **Procedure.--Exceptions to the report may be filed by any interested person or municipal corporation within thirty days after the filing of the report, and the court shall set a day for the hearing of the exception. Notice of the hearing shall be given as the court may direct. After hearing, the court may sustain the exceptions or dismiss them and confirm the report or refer the report back to the same or new commissioners with authority to make another report. If no exceptions are filed within thirty days after the filing of the report, the court shall confirm the report absolutely. When any report is confirmed absolutely, the court shall enter a decree establishing the lines and boundaries as shown in the report.**

Section 605. Pay and Expenses of Commissioners.--The commissioners shall each receive [five dollars per day, for each day necessarily employed in the performance of their duties, as well as mileage at the rate of ten cents per mile for each mile necessarily traveled, and reasonable expenses incurred for surveying] **reasonable compensation as established by the court and reasonable expenses incurred for surveying** services, to be paid equally by the [political subdivisions interested] **city and any interested municipal corporation.**

Section 606. Boundary Monuments.--[Whenever a boundary is established pursuant to the preceding sections of] **If a boundary, ascertained and established pursuant to** this article, [the court shall cause such part of the same as] cannot be fully described by natural lines, **the court shall cause it** to be marked with permanent monuments, placed at intervals not exceeding fifteen hundred feet[,] and at the end of any course[, and the]. **The** expense of placing [the said] **these** monuments, [when] **as** approved by the court, shall be borne equally by the [political subdivisions interested, and the court shall compel payment of the

same according to law] **city and any interested municipal corporation.**

Section 46.  Article VII heading of the act is reenacted to read:

ARTICLE VII
ELECTED OFFICERS AND ELECTIONS

Section 47.  Sections 701, 702 and 704 of the act are amended and section 703 is carried without amendment to read:

Section 701.  Elected Officers; Term; Eligible to Reelection; Vacancies Where Elected Officer Fails to Qualify.--[The] **(a)  (1) Except as provided in subsection (c), the** elected officers of each city shall be a mayor, four [councilmen] **council members,** a controller[,] and a treasurer.

**(2)**  Except as provided in section [seven hundred and two of this act] **702** with respect to the first election of members of council, each [of such officers] **elected officer** shall serve for a term of four years from the first Monday of January next succeeding [his] **the officer's** election[,] until the first Monday of January in the fourth year thereafter.

**(3)**  Any such officer shall be eligible to reelection.

**(b)**  Any person elected to a city office who fails to qualify [within thirty days after the first Monday of January following his election] **in accordance with the provisions of sections 904 and 905 and, as applicable, section 1001, 1201, 1401 or 1701** shall be ineligible to qualify thereafter. A vacancy shall then exist in the [said] office and a person shall be appointed to fill [said] **the** vacancy in the manner provided by this act.

**(c)  In accordance with this subsection, two additional council members may be elected to form a seven-member council comprised of six council members and the mayor, or a city that has opted for a seven-member council may reestablish a five-member council comprised of four council members and the mayor, in accordance with the following:**

**(1)  Upon petition of at least five per centum of the registered voters of the city or pursuant to a resolution of council, and after approval by a majority of those voting at the next municipal or general election, there shall be elected two additional council members, so that the council shall be comprised of six council members and the mayor.**

**(2)  The referendum petition or resolution of the council certified by the city clerk shall be filed with the county board of elections not later than the thirteenth Tuesday before the next municipal or general election. The county board of elections shall place the question before the electors as provided by the Pennsylvania Election Code. The form of the question shall be as follows:**

**Should two additional council members be elected to serve in this city, so that council shall be comprised of six council members and the mayor?**

| Yes | No |

**(3)  The county board of elections shall tabulate and publish in a newspaper of general circulation the results of the referendum within thirty days of the election.**

**(4)  In no event shall the question of additional council members be voted on more than once in any three-year period.**

**(5)  Terms of newly elected council members shall be as follows:**

(i)  At the first municipal election following approval at a general election of the question providing for the election of two additional council members, one of the additional council members shall be elected for a term of four years and one for a term of two years, each to serve from the first Monday of January after the election.

(ii)  At the first general election following approval at a municipal election of the question providing for the election of two additional council members, one of the additional council members shall be elected for a term of three years and one for a term of one year, each to serve from the first Monday of January after the election.

(iii)  After that time, the additional council members shall be elected for terms of four years each to serve from the first Monday of January after the election.

(5.1)  In cities divided into wards, the two new council members elected in accordance with clause (5) shall represent the city at large. No sooner than four years after the election adding two additional council members, the city may change the representation of either or both of the two additional seats from at-large to ward representation in accordance with Article IV or any other law.

(6)  In cities in which the electorate has opted for a seven-member council, comprised of six council members and the mayor, the city shall return to a five-member council, including the mayor, upon petition of at least five per centum of the registered voters of the city or pursuant to a resolution of the council and after approval by a majority of electors voting at the next municipal or general election. The referendum petition or resolution shall be filed with the county board of elections not later than the thirteenth Tuesday before the next municipal or general election. The county board of elections shall place the question before the electors as provided under the Pennsylvania Election Code. The form of the question shall be as follows:

> Should this city return to a five-member council, comprised of four council members and the mayor?

> Yes                    No

(7)  The county board of elections shall tabulate and publish in a newspaper of general circulation the results of the referendum within thirty days of the election. In no event shall the question of reducing the seven-member council be voted on more than once in any five-year period.

(8)  At the first municipal election following approval of the question providing for the return to a five-member council, to be comprised of four council members and the mayor, four council members shall be elected to serve from the first Monday of January after the election, when the terms of the six council members serving on the seven-member council shall cease. The four candidates receiving the highest number of votes for the office of council member shall be elected. The two candidates receiving the first and second highest number of votes shall serve for a term of four years. The two candidates receiving the third and fourth highest number of votes shall serve for a term of two years. After that time, council members shall be elected as provided in subsection (a).

Section 702.  First Elections in Newly Created Cities.--**(a)**  At the first municipal election occurring at least ninety days after

the date of the letters patent issued by the Governor incorporating [and] **the** city, the [qualified electors of such] **registered voters of the** city shall elect [a mayor, a treasurer, and a controller] **city officials as set forth in section 701(a)(1)**. [At such election, the electors of such city shall also elect four councilmen.]

**(b)** The two candidates for [such office] **council** receiving respectively the highest number of votes at [such] **the** election shall serve for a term of four years from the first Monday of January next succeeding their election until the first Monday of January in the fourth year thereafter[, and the two candidates at such election].

**(c)** **The two candidates for council** receiving the next highest number of votes shall serve for a term of two years from the first Monday of January next succeeding their election until the first Monday of January in the second year thereafter.

Section 703.  Nominations and Elections.--All matters relating to nominations of candidates and election of city officers shall be governed by the applicable provisions of the Pennsylvania Election Code.

Section 704.  Certificates of Election.--[Whenever an election shall have been held for city officers, for regular terms of service] **Upon the election of city officers in accordance with this article**, it shall be the duty of the [officer-elect to procure from the] county board of elections **to issue, and of the officer-elect to procure**, a certificate of election [as issued by the board, according to law, and to lay the same before]. **The officer-elect shall present the certificate of election to** council on the date and time fixed by law for [their] **its** organization[; and the said]. **The** certificate shall be filed among the city archives, and its presentation shall be noted in the minutes.

Section 48.  Article VIII heading of the act is reenacted to read:

ARTICLE VIII<br>VACANCIES IN OFFICE

Section 49.  Section 801 of the act, amended August 21, 1953 (P.L.1292, No.364), is amended to read:

Section 801.  Vacancies in Council and Office of Mayor.--[If a vacancy exists in the city council, whether as to the office of mayor or one or more of the other members of council, the city council shall, by a majority of its remaining members, fill such vacancy, within thirty days thereafter, by electing a qualified person to serve until that first Monday of January when his successor who shall have been elected by the qualified electors at the next municipal election, occurring at least thirty days after such vacancy exists, is duly sworn into office for the remainder of the term of the person originally elected to said office.

In case vacancies should exist whereby the offices of three or four of the five members of the city council become vacant, the remaining one or two members shall fill such vacancies, one at a time, giving each new appointee such reasonable notice of his appointment as will enable him to meet and act with the then qualified member or members of the city council in making further appointments until three members of city council have been qualified, whereupon the said three members shall fill the remaining vacancies at a meeting attended by the said three members of said city council, such appointees to receive a

majority of the votes of the said three members present at any such meeting. The person or persons selected to fill such vacancy or vacancies shall hold their offices as herein provided.

If, by reason of a tie vote, or otherwise, such vacancy shall not have been filled by the remaining members of city council within the time as limited herein, the court of common pleas, upon the petition of ten or more qualified electors shall fill such vacancy by the appointment of a qualified person, for the portion of the unexpired term as above provided.

If at any time vacancies should occur or exist in the membership of all five members of city council, the court of common pleas shall appoint a city council, including a mayor, of persons properly qualified, who shall serve as herein provided.]

**(a)  Within thirty days of a vacancy in the office of mayor or other member of city council or if an elected mayor or council member has failed to qualify pursuant to section 701 prior to taking office, the council shall, by a majority of its remaining members, appoint a qualified person to fill the vacant office.**

**(b)  If council does not fill a vacancy within thirty days in accordance with subsection (a) or if vacancies should exist in the offices of a majority or more of the members of the city council, including the position of mayor, the president judge of the court of common pleas having jurisdiction within the city shall fill the vacancy or vacancies upon either the petition of ten or more qualified electors of the city or the petition of a majority of the remaining members of council.**

**(c)  A person appointed under subsection (a) or (b) shall serve for the lesser of the following periods:**

**(1)  The remainder of the unexpired term of the office to which the person is appointed.**

**(2)  Until the first Monday of January after the next municipal election occurring at least thirty days after the vacancy occurred.**

**(d)  If necessary to fill the unexpired term of the person originally elected to an office that has become vacant, a person shall be elected at the municipal election referred to in subsection (c) to serve from the first Monday of January after that election for the remainder of the unexpired term.**

Section 50.  Section 802 of the act, amended May 6, 1957 (P.L.104, No.45), is amended to read:

Section 802.  Vacancy in Office of Controller or of Treasurer.--[If a vacancy occurs in the office of city controller or in the office of city treasurer, the city council shall fill such vacancy, within thirty days thereafter, by choosing a city controller or a city treasurer, as the case may be, to serve until his successor is elected by the qualified electors at the next municipal election, occurring at least two hundred days after such vacancy occurs, and is duly sworn into office. The person so elected shall serve for the remainder of the term of the person originally elected to such office.

If by reason of a tie vote or otherwise, such vacancy shall not have been filled by the members of city council within the time as limited herein, the court of common pleas upon the petition of ten or more qualified electors shall fill such vacancy by the appointment of a qualified person for the portion of the unexpired term as above provided.] **(a)  Within thirty days after a vacancy occurs in the office of city controller or in the office of city**

treasurer or if an elected city controller or city treasurer has failed to qualify pursuant to section 701 prior to taking office, the council shall appoint a qualified person to fill the vacant office.

(b)  If council does not fill a vacancy within thirty days in accordance with subsection (a), the president judge of the court of common pleas having jurisdiction within the city shall fill the vacancy upon the petition of ten or more registered voters of the city.

(c)  A person appointed under subsection (a) or (b) shall serve for the lesser of the following periods:

(1)  For the remainder of the unexpired term of the controller or treasurer whose office has become vacant.

(2)  Until the first Monday of January after the next municipal election occurring at least two hundred days after such vacancy occurs.

(d)  If necessary to fill the unexpired term of the controller or treasurer whose office has become vacant, a person shall be elected at the municipal election referred to in subsection (c) to serve from the first Monday of January after that election for the remainder of the unexpired term.

(e)  In any case in which a person is elected or appointed to fill an office for which a bond is required and if, within fourteen days of the date that person is scheduled to take the oath of office at the organizational meeting of council, the person fails to post a bond, the office shall be deemed to be vacant and the resulting vacancy shall be filled in the manner provided by this act.

Section 51.  Article IX heading of the act is reenacted to read:

ARTICLE IX
GENERAL PROVISIONS RELATING TO CITY
OFFICERS AND EMPLOYES

Section 52.  Sections 901, 902, 903, 904, 905, 906, 907, 908 and 909 of the act are amended to read:

Section 901.  Appointment and Removal of Officers and Employes; **Removal from Elective Office; Employes Not to Hold Elective Office.**--**(a)**  Council shall have the power of appointment and dismissal of all city officers and employes, other than elected officers, and shall provide for the removal of officers of the city whose offices are established by ordinance, except where otherwise provided by this act.

**(b)  In the case of persons holding an elective city office, whether elected thereto or duly appointed to fill a vacancy in the elective office, the following shall apply:**

**(1)  They shall be removed from office in accordance with the Constitution of Pennsylvania, as follows:**

**(i)  by impeachment;**

**(ii)  by the Governor for reasonable cause after due notice and full hearing on the advice of two-thirds of the Senate; or**

**(iii)  upon conviction of misbehavior in office, or of any infamous crime.**

**(2)  Provisions of this act or other provisions of law requiring a forfeiture of office upon the conviction of a crime shall apply only if the court determines that the conviction is for misbehavior in office or for an infamous crime.**

**(3)  Nothing in this section shall prevent title to elected**

city offices from being tried by proceedings of quo warranto as
provided by law.

(c)   In the case of persons who are appointees to city offices
or positions, other than to elective offices, the following shall
apply:

(1)   They may be removed by the appointing power, except as
limited by law or the constitution.

(2)   They shall be removed on conviction of misbehavior in
office or of any infamous crime.

(d)   Except as otherwise provided by law, a person may not
concurrently hold elective city office and be an employe of the
same city.

Section 902.   Officers and Employes; Number; Duties;
Compensation.--[Council shall] (a)   Except as otherwise provided
by this act, council may prescribe, by ordinance, the number,
duties[,] and compensation of the officers and employes of the
city. [No payment of such compensation shall be made from the city
treasury or be in any way authorized, to any person except an
officer or employe elected or appointed in pursuance of law. No
ordinance shall be passed giving any extra compensation to any
officer, servant, employe or contractor, without previous
authority of law.]

(b)   With regard to compensation paid to any officer or employe
of the city, the following shall apply:

(1)   No payment shall be authorized from the city treasury to
any officer or employe of the city unless that officer or employe
has been elected or appointed in accordance with law.

(2)   Unless previously authorized by law, no ordinance shall
give extra compensation to any officer or employe of the city.

(c)   Any officer drawing or countersigning any [warrant]
document authorizing payment, or passing or paying any voucher
contrary to this section, [shall be guilty of] commits a
misdemeanor[,] and shall, upon conviction [thereof, shall forfeit
his office], be subject to forfeiting office in accordance with
section 901(b)(2) and [be] sentenced to pay a fine not exceeding
five thousand dollars, or to undergo imprisonment not exceeding
one year, or both, at the discretion of the court.

Section 903.   [Salaries of Officers not to be Increased After
Election] Changes in Salary, Compensation and Emoluments of
Officers.--(a)   No city shall increase or diminish the salary,
compensation, or emoluments of any elected officer after [his] the
officer's election. Any change in salary, compensation or
emoluments of the elected office shall become effective at the
beginning of the next term of the member of council or other
elected official.

(b)   Nothing in subsection (a) shall be construed to limit
retirement benefits applicable to all employes and officers.

Section 904.   Offices to be Held until Qualification of
Successors.--Any officer of any city, who has been elected or
appointed and has qualified, shall hold [said] office until [his]
the officer's successor is elected or appointed and [duly
qualifies.] takes the oath of office, provides any necessary bond
and takes any other necessary actions required by law to qualify
to assume office. Should any elected official fail to appear at
the organizational meeting of the city council to demonstrate the
official's qualifications for office and to take the oath of
office, the official shall fully qualify for office and shall take

the oath of office within fourteen days of the date of the
organizational meeting of the council or the office of that
elected official shall be deemed to be vacant and the vacancy
shall be filled in the manner provided by this act. When the terms
of office of more than one council at-large member expire and more
than one seated council member are to be replaced as the result of
an election, and only one of the newly elected council members
fails to qualify to assume office, those members whose terms have
expired and who are to be replaced shall draw lots to determine
which of them shall continue to serve on council until the
member's successor duly qualifies for and takes the oath of
office. No person continuing to hold office pursuant to this
section after the first Monday of January which would have marked
the end of the person's term shall participate in the
deliberations concerning or in any vote appointing the person's
successor.

Section 905.  Oath of Office; Violation of Oath; Penalty.--**(a)**
All officers of the city, whether elected or appointed, shall,
before entering upon their respective duties, take and subscribe
[the oath prescribed by section 1 of article VII of the
Constitution of this Commonwealth. Any person refusing to take
such oath shall forfeit his office. Any person guilty of a
violation of his oath shall be guilty of a misdemeanor, and, upon
conviction, shall forfeit his office, and be sentenced to pay a
fine not exceeding one thousand dollars, or to undergo an
imprisonment not exceeding one year, or both, at the discretion of
the court.] **an oath or affirmation of office pursuant to 53
Pa.C.S. § 1141 (relating to form of oaths of office).**

**(b)  Any person refusing to take the oath shall be deemed not
to have met the qualifications to hold office. Any person who
violates the person's oath commits a misdemeanor and shall, upon
conviction, be sentenced to pay a fine not exceeding one thousand
dollars or to undergo imprisonment not exceeding one year, or
both, at the discretion of the court, and shall be subject to
forfeiting office in accordance with section 901.**

Section 906.  Bond to be Given by Officers and Agents.--
[Council] **In addition to the requirements for bonding that may be
imposed by this act or any other law, council** may require from all
officers and agents of the city, elected or appointed, lawful
bonds with corporate sureties for the faithful performance of
their duties. No officer or agent required by law or ordinance to
give bond, as aforesaid, shall be sworn into office or enter upon
the duties thereof until such bond shall have been duly approved
by the proper authority.

Section 907.  Surety Bonds; [Premiums.--When any officer or
employe of any city is required to give a bond for the faithful
performance of this duties, such bond shall be endorsed by a
surety company, and the city shall pay the premium on such bond.
The bonds of city officers and employes hereafter given shall be
with corporate sureties and not with individual or personal
sureties.] **Insurance; Premiums.--(a)  Unless otherwise provided by
this act or any other provision of law, the following shall apply
when any elected or appointed officer or employe of any city is
required to give a bond:**

**(1)  The bond shall be for the faithful performance of the
duties of the elected or appointed officer or employe.**

**(2)  The bond shall be endorsed by a surety or other company**

authorized by law to act as a surety and that is qualified to do business in this Commonwealth.

(3)  The bonds of elected or appointed officers and employes shall be with corporate sureties and not with individual or personal sureties.

(4)  The city shall pay the premium on the bond, unless all or a portion of the premium on the bond is to be paid by the Commonwealth or political subdivisions other than the city, or unless provisions are otherwise made in law for payment of the premium on the bond, in which case the city shall pay the unpaid portion of the premium.

(5)  The bond shall be approved by the city solicitor.

(6)  In addition to any other conditions required by law, the bond shall be in such sum and with such conditions as council may direct.

(b)  Except as may be otherwise provided in section 1402, when any elected or appointed officer or employe of any city is required to give a bond for the faithful performance of the officer's or employe's duties, council may, in lieu of the bond, purchase one or more blanket bonds for elected or appointed officers or employes, or it may purchase insurance provided that the insurance covers the same events of loss and insures the city against the same misconduct as the bond in compliance with this act.

(c)  In addition to any bond required by this act for the faithful performance of official duties by any elected or appointed officer or employe of any city or any insurance in lieu of the bond, council may require city officers or employes who as part of their official duties handle money or have money in their possession at any time to be covered by adequate insurance which provides the types of protection against loss as may be designated by council, which may include, but need not be limited to, protection against loss through robbery, burglary or larceny. The cost of the insurance shall be paid by the city and the amount of the insurance shall be fixed by council.

Section 908.  Officers not to Become Surety on Bonds Given to City; Penalty.--No member of the council, or any other city officer, shall become surety [in] **on** any bond or obligation given to the city by any agent or contractor[,] for the faithful performance of any trust, agency, or contract. Any person violating any of the provisions of this section [shall be guilty of] **commits** a misdemeanor[,] and **shall,** upon conviction, [shall forfeit his] **be subject to forfeiting** office **in accordance with section 901** and [be] sentenced to pay a fine not exceeding one hundred dollars.

Section 909.  Moneys and Accounts to be Delivered by Officer to Successor.--Every officer of the city receiving or having in [his] **the officer's** possession any money, accounts, property, **documents** or effects belonging to the city shall, upon termination of [his] office, deliver the same to the city or to [his] **the officer's** qualified successor. Any person violating the provisions of this section shall[, upon summary conviction thereof before an alderman or justice of the peace, be sentenced to pay a fine of not less than one hundred dollars or more than three hundred dollars, and, in default of payment, undergo imprisonment not exceeding ninety days. Such failure to deliver shall, for each day thereof, be a separate and distinct offense.] **be subject to prosecution in**

**accordance with the applicable provisions of 18 Pa.C.S. (relating to crimes and offenses). Nothing set forth in this section may limit any other remedies at law or at equity available to the city.**

Section 53. Sections 910, 911, 912, 913, 914 and 915 of the act are repealed:

[Section 910. Receipt of Bribe by Officer or Employe of City; Penalty.--Any member of council, or other city officer or employe, who shall solicit, demand, or receive, or consent to receive, directly or indirectly, for himself or for another, from any company, corporation, or persons, any moneys, office, appointment, employment, testimonial, reward, thing of value or enjoyment or of personal advantage, or promise thereof, for his vote or official influence, or for withholding the same, or with an understanding, expressed or implied, that his vote or official action shall be in any way influenced thereby, or who shall solicit or demand such money or other advantage, matter, or thing, aforesaid, for another, as the consideration of his vote or official influence, or for withholding the same, or who shall give or withhold his vote or influence in consideration of the payment or promise of such money, advantage, or thing to another, shall be guilty of bribery, a felony, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding ten thousand dollars, and to undergo imprisonment for a period not exceeding five years, and shall be forever incapable of holding any place of profit or trust in this Commonwealth.

Section 911. Bribery of Officers or Employes; Penalty.--Any person who shall, directly or indirectly, offer, give, or promise any money or anything of value, testimonial, privilege, or personal advantage to any member of council or other city officer or employe, to influence him in the performance or nonperformance of any of his public or official duties, shall be guilty of bribery, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding ten thousand dollars, and to undergo imprisonment for a period not exceeding five years, and shall be forever incapable of holding any place of profit or trust in this Commonwealth.

Section 912. City Property not to be Used by Officers for Gain; Penalty.--No portion of the property of the city shall be used for private gain by any officer of the city, councilman, agent or employe of said city, or any department thereof; nor shall the same be wilfully used or injured, or be sold or disposed of in any manner by any officer, councilman, agent or employe, without the consent of the council. Any person violating any of the provisions of this section shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine not exceeding five hundred dollars, or to undergo imprisonment not exceeding one year, or both, at the discretion of the court. Upon such conviction, the party offending shall be forthwith removed from his office or employment, and shall not thereafter be eligible to election or appointment to any place of profit or trust under said city, or any department thereof.

Section 913. City not to Engage in Private Construction.--No official, officer, agent or employe of any city or of any department, office, institution or agency thereof, shall dispose of, or authorize or permit the disposal of, any services, materials, supplies or labor belonging to, or paid or contracted

for by, the city or any of its departments, offices, institutions or agencies, in any building, installing, laying or other work of construction of any manner of thing, whether gratuitously or for a consideration, for private rather than public benefit, within or without the city's boundaries, unless such disposal is expressly or by necessary implication authorized or required by law. This section is intended to prohibit encroachment of officials, officers, agents or employes of a city upon the markets of legitimate private enterprise engaged in all types of construction work. Any official, officer, agent or employe of a city or any department, office, institution or agency thereof, violating the provisions of this section, shall, upon summary conviction thereof, forfeit and pay to the city a fine of not less than one hundred nor more than three hundred dollars for each such offense, or in default thereof undergo imprisonment for not more than ninety days; and each day's violation shall constitute a separate and distinct offense.

Section 914.  Warrants or Claims not to be Purchased by Officers; Penalty.--No member of the council or other officer of such city, shall purchase any warrant, order, or claim for labor or supplies furnished to said city, nor be interested, directly or indirectly, in the purchase of the same for any sum less than the amount specified therein. Any such person violating any of the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall forfeit his office and be sentenced to pay a fine not exceeding one hundred dollars.

Section 915.  Imposition of Penalties.--Whenever any offense punishable under this article IX shall also be punishable under the Penal Code of 1939, the penalties imposed, other than forfeiture of office or right to hold office, shall be only those prescribed by said Penal Code.]

Section 54.  Section 916 of the act, amended September 26, 1951 (P.L.1515, No.379), is amended to read:

Section 916.  [City Leagues] **Pennsylvania Municipal League** and Other Municipal Affairs Organizations.--Any city may unite with other cities, or with the cities of two or more classes, **or with any other municipalities,** and may form and organize [leagues] **a league** of said cities[,] **and municipalities** and hold annual conventions for the study and consideration of such municipal affairs as concern and pertain to the cities **and municipalities** comprising the league. [Each] **A** city **that is a** member of [a] **the** league may send delegates thereto and pay the necessary expenses incident to their attending [said] **the annual** convention, [and] pay dues to the league, **appropriate moneys to join and participate in any of the various business and training programs of the league designed to address municipal needs in a cost-efficient manner** and provide a fund for the necessary costs and expenses of the league and league conventions and the work carried on by [said] **the** league. Each delegate shall submit to the city controller for approval an itemized account of [his] **the delegate's** expenses to be paid [him] under the authority of this section. Council is hereby authorized to appropriate [monies] **moneys** for like support of and participation in other organizations **at the national and State level** concerned with municipal affairs.

Section 55.  Section 917 of the act is amended to read:

Section 917.  Powers of Subpoena; Compelling Testimony.--[In any case where an official or officer of the city or any agency

thereof created or authorized by this act is specifically
empowered to conduct hearings and investigations, such officer,
official or agency] **(a) This section applies to any of the
following that are specifically empowered to conduct hearings and
investigations:**
  **(1) an officer or official of the city; or**
  **(2) a city agency created or authorized to be created by this
act.**
  **(b) The officer, official or city agency referred to in
subsection (a)** shall have authority, for the purposes of [such]
hearings or investigations, to issue subpoenas for the attendance
and giving of testimony of [such] witnesses as are subject to the
subpoenas of the courts of record of this Commonwealth, and to
issue subpoenas duces tecum as to [such] **the** witnesses.
  **(c)** In the case of [any] **a city** agency, [such] **the** subpoenas
shall [issue] **be issued** in the name of the city and of the agency
upon the signature of the presiding officer [thereof] **of the city**
and the official seal, if any, of the agency. [Any person refusing
to obey the orders of any such subpoena shall, upon summary
conviction thereof before an alderman of the city, be fined not
less than ten nor more than three hundred dollars, and in default
of payment thereof shall be imprisoned for a period not in excess
of thirty days. All such fines shall be paid to the city treasurer
for the use of the city.]
  **(d) Subpoenas shall be served by any adult person as directed
by the city or city agency, in accordance with the rules of civil
procedure, and return of service shall be filed in accordance with
law and applicable rules of court.**
  **(e) Subpoenas issued by any officer or official of the city or
any city agency shall be enforced in the same manner, and
violations of a subpoena shall be subject to the same penalties as
provided by general law for subpoenas of the courts of common
pleas of the Commonwealth.**
  Section 56. Section 918 of the act, added August 1, 1963
(P.L.459, No.244), is amended to read:
  Section 918. Consolidation or Integration of Fire and Police
Personnel Prohibited.--No city shall consolidate, integrate or in
any manner reorganize the paid members of the fire [bureau] **force**
and the paid members of the police [bureau] **force** into one bureau
or organization.
  Section 57. Article X and subdivision (a) headings of the act
are reenacted to read:
ARTICLE X
THE COUNCIL
(a) General Provisions
  Section 58. Section 1001 of the act, amended July 27, 1973
(P.L.230, No.60), is amended to read:
  Section 1001. Qualifications of [Councilmen.--The councilmen]
**Council Members.--(a) The council members** shall be at least
[twenty-one] **eighteen** years of age[,] and shall be elected by the
electors at large[. They shall have been residents of the city
wherein they shall be elected throughout one year next before
their election, and shall reside therein throughout their terms of
service.], **subject to the creation of wards pursuant to Article
IV.**
  **(b) Council members shall reside in the city from which
elected and shall have resided in the city continuously for at**

least one year before their election. **Prior to being sworn into office and as a condition to qualifying for office, each elected council member shall present a signed affidavit to the city clerk that states the person resides in the city, or, in the case of election to a ward office, the ward, from which elected and has resided in the city or ward continuously for at least one year preceding the person's election.**

**(c)** No officer of the United States or of the Commonwealth of Pennsylvania (except notaries public or officers of the militia), nor any county officer, nor any officer of any school district embraced in the territory of [said] **the** city, nor any officer or employe of [said] **the** city, or of any department [thereof, nor any member or employe of a municipality authority of which the city is a member] **of the city**, shall serve as a [councilman during his continuance or] **council member while continuing to hold the incompatible office or** employment, except as hereinafter provided.

Section 59.  Section 1002 of the act is amended to read:

Section 1002.  Vesting of Legislative Power.--The legislative power of every city shall be vested in a council composed of the mayor and [four councilmen] **council members.**

Section 60.  Section 1003 of the act, amended April 9, 1957 (P.L.53, No.27), is amended to read:

Section 1003.  Organization of Council.--[The] **On the first Monday of January following the regular municipal election, the** members of council shall assemble [in their] **at the usual** place of meeting[,] for the purpose of organizing[, at ten o'clock in the forenoon of the first Monday of January next succeeding the regular municipal election]. If the first Monday is a legal holiday, the meeting shall be held the first day following [at the time herein prescribed]. The mayor shall be the president of the council, and a member [thereof] **of the council,** and shall have the same rights and duties, including the introduction of bills and the making of motions, as pertain to [councilmen.] **other council members. Unless otherwise provided by ordinance in accordance with section 1101, the vice president of city council shall be the member of city council designated as the director of the department of accounts and finance or, if a member of city council is not the director of that department, the member of council appointed by the council as its vice president.**

Section 61.  Sections 1004 and 1005 of the act are amended to read:

Section 1004.  Oath of [Councilmen] **Council Members**; Quorum; Rules.--**(a)**  The members of council shall take the oath of office provided for [by this act, which oath may be administered by the city clerk or any other person authorized to administer oaths. Three] **in section 905.**

**(b)  A majority of the whole number of** members of council shall constitute a quorum, but a smaller number may compel the attendance of absent members, under penalties to be prescribed by ordinance. **Only members physically present at a meeting place within the city shall be counted in establishing a quorum.**

**(c)**  The council may, **consistent with law,** determine [its own rules] **and adopt rules for its procedure and conduct of business.**

Section 1005.  Meetings of Council; Notice; **Participation by Telecommunication Device.**--**(a)**  The council shall hold stated meetings at least once in each month, and at such other times as may be fixed by ordinance, and continue them so long as the

transaction of the public business demands. The mayor [may, and upon request of two councilmen must, call special meetings of council upon], **as president of council, may call special meetings of council. A special meeting of council shall be called by the mayor upon the request of two council members in the case of a five-member council or upon the request of three council members in the case of a seven-member council. In addition to any notice required by 65 Pa.C.S. Ch. 7 (relating to open meetings),** twenty-four hours' notice **of a special meeting shall be given** to each member[, which notice shall state whether such meeting is to be convened for special or general business. If called for special business, only such business shall be considered as is stated in the notice. Such notice may be waived by unanimous consent of council]. **A special meeting can be a special purpose meeting or a general purpose meeting, as advertised. Notice of a special meeting shall state the nature of the business to be conducted at the meeting.**

   **(b) Council may provide for the participation of council members in meetings of council by means of telecommunication devices, such as telephones or computer terminals, which permit, at a minimum, audio communication between locations, provided that:**

   **(1) A majority of the whole number of members of council are physically present at the advertised meeting place within the city and a quorum is established at the convening or reconvening of the meeting. If, after the convening or reconvening of the meeting, a member has been disqualified from voting as a matter of law but is still physically present, council members participating by telecommunication device in accordance with this section shall be counted to maintain a quorum.**

   **(2) The telecommunication device used permits the member or members of council not physically present at the meeting to:**

   **(i) speak to and hear the comments and votes, if any, of the members of council who are physically present as well as other members of council who may not be physically present and who are also using a telecommunication device to participate in the meeting; and**

   **(ii) speak to and hear the comments of the public who are physically present at the meeting.**

   **(3) The telecommunication device used permits members of council and the members of the public who are physically present at the meeting to speak to and hear the comments and vote, if any, of the member or members of council who are not physically present at the meeting.**

   **(4) Council may only authorize participation by telecommunication device for one or more of the following reasons for physical absence:**

   **(i) illness or disability of the member of council;**

   **(ii) care for the ill or newborn in the member's immediate family;**

   **(iii) emergency;**

   **(iv) family or business travel.**

   **(5) Nothing in this subsection may be construed to limit the protections and prohibitions contained in any law or regulation relating to the rights of the disabled.**

   (c) All meetings of council, whether regular or special, shall be open to the public. The council shall be a continuous body, and

it shall be lawful for any council to complete any unfinished business or legislation begun by the preceding council.

Section 62.  Sections 1006, 1007, 1008, 1009, 1010 and 1011 of the act are repealed:

[Section 1006.  Ordinances; Resolutions; Rules and Regulations; Imposition of Fines.--The council of every city shall pass ordinances, resolutions, rules and regulations in accordance with the provisions of this act, and not inconsistent therewith, as may be necessary to carry into effect the requirements thereof, and may impose fines and penalties for the violation of such ordinances, rules and regulations, recoverable in the manner hereinafter provided for the recovery of fines and penalties for the violation of city ordinances and subject to like limitations as to the amount thereof.

Section 1007.  Voting; No Veto; Vote Necessary to Pass Ordinance.--Each of the five members of council, shall vote on all questions coming before the council, except as hereafter provided. The mayor shall have no right of veto. Except as otherwise provided in this act, an affirmative vote of three members shall be necessary in order to pass any ordinance, resolution, rule or regulation.

Section 1008.  Journal of Proceedings; Recording and Withholding of Vote.--The council shall keep a journal of its proceedings, which shall be in the possession of the city clerk, and which shall at all times be open to public inspection. Upon every vote, the yeas and nays shall be called and recorded by the city clerk. Every motion, resolution, or ordinance shall be reduced to writing before the vote is taken thereon. No member in attendance shall withhold his vote on any measure, bill or question unless the council excuse him and enter the reason upon the journal.

Section 1009.  Disclosures of Interest by Councilman.--A member who has a personal or private interest in any question, measure or bill proposed or pending before the council shall disclose the fact to council, and shall not vote thereon, nor take any part in the discussion of the same. If such interested person shall vote without disclosing his interest in such question, measure or bill, he shall forfeit his office, and council may avoid the enactment or transaction or not, as it deems best.

Section 1010.  Ordinances and Resolutions; Signing by Mayor and City Clerk.--Every legislative act of the council shall be by resolution or ordinance, and every ordinance which shall have passed said council shall be signed by the mayor and attested by the city clerk.

Section 1011.  Bills; Titles.--All proposed ordinances shall be presented to council in written form as bills and shall be numbered serially for the calendar year. They shall not be so altered or amended on their passage through council as to change their original purpose. No ordinances, except general appropriation ordinances, shall be passed containing more than one subject, which shall be expressed in its title.]

Section 63.  Section 1012 of the act, amended July 30, 1975 (P.L.130, No.64), is repealed:

[Section 1012.  Reading of Bills; Final Passage.--The title of every bill shall be read when introduced and on final passage, except as to amendments or other changes which shall be read at length. A complete copy of every bill introduced shall be

available for public inspection at the clerk's office during
regular office hours. No bill shall be passed finally on the same
day on which it was introduced. At least three days shall
intervene between its introduction and its final passage. Upon
final passage, ordinances shall be numbered serially.]

Section 64.  Section 1013 of the act is repealed:

[Section 1013.  Payments not Authorized by Law.--No ordinance
shall be passed providing for the payment of any money by the city
without previous authority of law. Any officer drawing or
countersigning any warrant or passing any voucher for a payment
not authorized by law, or making such payment, shall be guilty of
a misdemeanor, and, upon conviction thereof, shall be sentenced to
pay a fine not exceeding five thousand dollars, and undergo
imprisonment not exceeding one year.]

Section 65.  Section 1014 of the act, amended December 1, 1977
(P.L.242, No.78), is repealed:

[Section 1014.  Time of Taking Effect of Ordinances;
Publication; Recording; Proof and Evidence; Notice of Building,
Housing, Fire Prevention, Electrical, Plumbing and Zoning
Ordinances and Other Standard or Nationally Recognized Codes, Maps
and Plans.--All ordinances shall, unless otherwise provided
therein or by law, take effect in ten days after their passage,
upon their being signed by the mayor and attested by the city
clerk. Every proposed ordinance, except as otherwise herein
provided, prescribing a penalty for the violation thereof shall be
forthwith published not more than sixty days nor less than seven
days prior to passage in at least one and not more than two
newspapers printed or circulated within the city, in the manner
provided by section one hundred and nine of this act. Publication
of any proposed ordinance shall include either the full text
thereof or the title and a brief summary prepared by the city
solicitor setting forth all the provisions in reasonable detail
and a reference to a place within the city where copies of the
proposed ordinance may be examined. If the full text is not
included a copy thereof shall be supplied to the same newspaper of
general circulation in the city at the time the public notice is
published. If the full text is not included an attested copy
thereof shall be filed in the county law library or other county
office designated by the county commissioners who may impose a fee
no greater than that necessary to cover the actual costs of
storing said ordinances. In the event substantial amendments are
made in the proposed ordinance or resolution, before voting upon
enactment, council shall within ten days readvertise in one
newspaper of general circulation in the city, a brief summary
setting forth all the provisions in reasonable detail together
with a summary of the amendments. All ordinances shall, within one
month after their passage, be certified and recorded by the city
clerk, in a book provided by the city for that purpose, which
shall be at all times open to the inspection of citizens. Any and
all city ordinances, or portions thereof, the text of which, prior
to the effective date of this amending act, shall have been
attached to the city ordinance book, shall be considered in force
just as if such ordinances, or portions thereof, had been recorded
directly upon the pages of such ordinance book: Provided, That all
other requirements of this act applicable to the enactment,
approval, advertising and recording of such ordinance, or portions
thereof, were complied with within the time prescribed by this

act. All ordinances, resolutions, motions or other proceedings of council may be proved by the certificate of the city clerk under the corporate seal, and when printed or published in book or pamphlet form by authority of the city, shall be read and received as evidence in all courts and elsewhere without further proof. At least one week and not more than three weeks prior to the first reading of any proposed building code, ordinance, housing code, ordinance, fire prevention code, ordinance, electrical code, ordinance, plumbing code, ordinance, or zoning ordinance, or any standard or nationally recognized code, ordinance, or any changes or variations of any standard or nationally recognized code, or parts thereof, by council, an informative notice of intention to consider such ordinance and a brief summary setting forth the principal provisions of the proposed ordinance in such reasonable detail as will give adequate notice of its contents, and a reference to the place or places within the city where copies of the proposed building code, housing code, fire prevention code, electrical code, plumbing code, or zoning ordinance or any standard or nationally recognized code may be examined or obtained, shall be published in the manner herein provided for the publication of ordinances. Such building code, ordinance, housing code, ordinance, fire prevention code, ordinance, electrical code, ordinance, plumbing code, ordinance, or zoning ordinance or any standard or nationally recognized code, ordinance, shall not be published after adoption, but not less than three copies thereof shall be made available for public inspection, and use during business hours for at least three months after adoption, and printed copies thereof shall be supplied upon demand, at cost. In any case in which maps, plans or drawings of any kind are to be adopted as part of an ordinance, council may, instead of publishing the same as part of the ordinance, refer, in publishing the ordinance or a summary thereof, to the place where such maps, plans or drawings are on file and may be examined.]

   Section 66.  Section 1014.1 of the act, added July 10, 1957 (P.L.631, No.340), is repealed:

   [Section 1014.1.  Codification of Ordinances.--(a)  When a city of the third class shall have caused to be prepared a consolidation, codification or revision, containing minor nonsubstantive changes of the general body of its ordinances, the city council may adopt the consolidation, codification or revision, containing minor nonsubstantive changes, as an ordinance, in the same manner that is now prescribed by law for the adoption of its ordinances except as hereinafter provided.

   (b)  A consolidation, codification or revision, containing minor nonsubstantive changes of city ordinances, to be enacted as a single ordinance, shall be introduced in the city council at least thirty days before its final enactment and, at least fifteen days before its final enactment, notice of the introduction thereof specifying its general nature and content shall be given by advertisement in a newspaper of general circulation in the city.

   (c)  When the consolidation, codification or revision, containing minor nonsubstantive changes, is enacted as an ordinance, it shall not be necessary to advertise the entire text thereof, but it shall be sufficient to publish or advertise the table of contents thereof in the manner provided by law for the advertising of ordinances, and to state in the advertisement if it

be the case that the consolidation, codification or revision, containing minor nonsubstantive changes, contains a penalty or penalties. The advertisement shall indicate a place within the city where a copy thereof may be examined.

(d)  The procedure set forth in this section for the consolidation, codification or revision, containing minor nonsubstantive changes of city ordinances as a single ordinance, may also be followed in enacting a complete group or body of ordinances repealing or amending existing ordinances as may be necessary in the course of preparing a consolidation, codification or revision containing minor nonsubstantive changes of the city ordinances.

(e)  The consolidation, codification or revision, containing minor nonsubstantive changes, may contain matter which, when it becomes effective as an ordinance, will operate to adopt by reference any building, fire prevention or other standard or model code or zoning ordinance and zoning map.]

Section 67.  Section 1015 of the act is amended to read:

Section 1015.  Attendance of Witnesses and Production of Books Before Council or Committee [Thereof] **of Council.--(a)**  The council of any city may compel the attendance of witnesses[,] and the production of books, papers[,] and other evidence[,] at any meeting of the body or any committee [thereof] **of the council.** For that purpose, subpoenas may [issue] **be issued,** signed by the mayor or the [chairman] **chairperson** of the committee, in any pending case of inquiry[,] **or** investigation, [or impeachment,] and the [same] **subpoenas** may be served and executed in any part of this Commonwealth. Any member of council and the city clerk shall have power to administer oaths to [such] **the** witnesses. If any witness shall refuse to testify as to any fact within [his] **the witness'** knowledge, or to produce any books or papers within [his] **the witness'** possession or under [his] **the witness'** control[,] required to be used as evidence in [any such] **the** case, the city clerk shall [forthwith] report the facts relating to [such] **the** refusal to the court of common pleas. All questions arising upon [such] **the** refusal, and also upon any new evidence[,] not included in [said] **the** clerk's report (which new evidence may be offered in behalf of or against such witness), shall at once be heard by [said] **the** court. If the court determines that the testimony or evidence required by [such] **the** witness is legal and properly competent[,] and ought to be given or produced by [him] **the witness**, then [said] **the** court shall make an order commanding [such] **the** witness to testify or produce books or papers, or both, as the case may be. If [such] **the** witness shall thereafter, in disobedience of [such] **the** order of the court, refuse to testify or to produce **the** books or papers[, as aforesaid], then the [said] court shall have power to order the commitment of [such] **the** witness for contempt.

**(b)**  Any person[,] so called as a witness[,] and examined under oath[,] shall be liable to indictment, conviction[,] and punishment for perjury[,] in the same manner and to the same extent as if the witness had been called and examined before any committee of the Legislature, or in any judicial proceeding before any of the courts of record, in accordance with existing laws. [No] **A** person outside of [such] **the** city, subpoenaed [as aforesaid] **under this section**, shall be [required to respond to the same until he has been furnished with] **entitled to be**

reimbursed for mileage to and from [said] the city[,] at the [rate of ten cents per mile] maximum mileage rate periodically established by the United States Internal Revenue Service, and a per diem allowance [of three dollars] as established by council for the person's time [his presence is desired] in [said] the city.

Section 68.  Section 1016 of the act, amended May 11, 1959 (P.L.307, No.54), is amended to read:

Section 1016.  Salaries.--[Councilmen] (a)  Council members shall receive for their services during their term of service annual salaries, to be fixed by ordinance, payable in [monthly or semi-monthly instalments] regular installments. Councils may, by the ordinance fixing [said] the salaries, provide for the assessment and retention [therefrom] from the salaries of reasonable fines for absence from regular or special meetings of council or [councilmanic] committees of the council.

(b)  As an alternative to the annual salary method for establishing the compensation payable to members of the city council, the council may provide that the members of council will receive compensation on a per-meeting-attended basis, provided that the compensation shall only be payable for duly advertised public meetings in which a council member participated. If council has provided that members of council will receive compensation on a per-meeting basis, council may provide for the forfeiture of up to one-twelfth of the annual compensation of any council member or impose another appropriate penalty for each unexcused absence from regularly scheduled legislative council sessions.

(c)  The salary paid to any [councilman] council member shall [not be less than two hundred and fifty dollars per year.] be in accordance with this subsection:

(1)  For the term of city [councilmen] council members in newly created cities, and until [thereafter] changed by ordinance, [the salary of] each [councilman shall be] council member may receive a salary as follows:

[In cities of fifteen thousand inhabitants or under by the last United States census, each councilman shall receive a salary of nine hundred dollars per annum; where said population is between fifteen thousand and thirty thousand, one thousand eight hundred dollars per annum; in cities having a population above thirty thousand, three thousand six hundred dollars per annum.]

(i)  not more than one thousand eight hundred seventy-five dollars per year in cities having a population of less than five thousand;

(ii)  not more than two thousand five hundred dollars per year in cities having a population of five thousand or more, but less than ten thousand;

(iii)  not more than three thousand two hundred fifty dollars per year in cities having a population of ten thousand or more, but less than fifteen thousand;

(iv)  not more than four thousand one hundred twenty-five dollars per year in cities having a population of fifteen thousand or more, but less than twenty-five thousand;

(v)  not more than four thousand three hundred seventy-five dollars per year in cities having a population of twenty-five thousand or more, but less than thirty-five thousand; and

(vi)  not more than five thousand dollars per year in cities having a population of thirty-five thousand or more.

**(2)** The compensation to be received by [councilmen shall not be increased or diminished after their election; but succeeding councils may change all compensation, said change to take effect as to councilmen taking office at least six months after the passage of the ordinance providing for such change.] **council members and elected officials in cities other than newly created cities shall be fixed by ordinance of council finally enacted at least two days prior to the last day fixed by law for candidates to withdraw their names from nominating petitions previous to the day of the municipal election.**

Section 69. The act is amended by adding a section to read:

**Section 1016.1. Appointment of City Clerk.--(a) The council of each city shall appoint a city clerk who shall be an at-will employe with no property interest in the city clerk's position and whose compensation shall be fixed by ordinance.**

**(b) Council may by ordinance or resolution prescribe duties of the city clerk in addition to those established by law. The city clerk shall have the power of a notary public to administer oaths in any matter pertaining to the business of the city or in any legal proceeding in which it is interested.**

**(c) The records of council shall be in the actual or constructive custody of the city clerk and shall be subject to inspection and copying in accordance with the act of February 14, 2008 (P.L.6, No.3), known as the "Right-to-Know Law."**

Section 70. Section 1017 of the act, repealed in part April 28, 1978 (P.L.202, No.53), is repealed:

[Section 1017. Enforcement of Ordinances; Recovery and Payment Over of Fines and Penalties.--All actions, prosecutions, complaints, and proceedings for the violation of the ordinances of the city, and for fines, penalties, and forfeitures imposed thereby, shall be instituted in the corporate name of the city, and be conducted in the manner prescribed by law.

No warrant shall be issued except upon complaint, upon oath or affirmation, specifying the ordinance for the violation of which the same is issued. All process shall be directed to and be served by any policeman or constable of the city, who shall execute the same as may be provided by law.

Warrants shall be returnable forthwith. Every summons shall be returnable in not less than five nor more than eight days from the date thereof. Upon such return, like proceedings shall be had in all cases as are directed by law for summary convictions, or proceedings for the recovery of penalties, before justices of the peace, with the same right of appeal from any final judgment entered.]

Section 71. Section 1018 of the act is repealed:

[Section 1018. Cost of Maintenance of Prisoners in County Jails.--When a prisoner shall be committed to any county jail or prison in this Commonwealth, either for the nonpayment of a fine or penalty imposed for the violation of any city ordinance, or while awaiting a hearing upon any charge for the violation of any city ordinance, the cost of proceedings and the expenses of maintaining such prisoner during his confinement by virtue of any such commitment, shall be paid by the city, whose ordinances were alleged to have been violated, or to which any such fines or penalties are payable. The county in which such city is located shall not be liable for any such maintenance, or to any officer, magistrate, alderman, or person for any costs of such

proceedings.]
     Section 72.  Article X of the act is amended by adding a
subdivision to read:
                         (a.1)  Ordinances
Section 1018.1.  Ordinances and resolutions.
     (a)  Ordinances.--With regard to ordinances, the following
shall apply:
          (1)  The council of every city shall enact ordinances, in
     accordance with the provisions of this act, as may be necessary
     to carry out the requirements of this act, and may impose fines
     and penalties for the violation of the ordinances, recoverable
     in the manner provided in this act for the recovery of fines
     and penalties for the violation of city ordinances and subject
     to limitations as to the amount of the fines and penalties.
          (2)  Every legislative act of the council shall be by
     ordinance, and the legislative acts shall include, but not be
     limited to, tax ordinances, general appropriation ordinances
     and all ordinances that exercise the police power of the city;
     regulate land use, development and subdivision; impose
     building, plumbing, electrical, property maintenance, housing
     and similar standards; and otherwise regulate the conduct of
     persons or entities within the city; and impose penalties for
     the violation of the ordinances.
          (3)  A proposed ordinance may be introduced by any council
     member, and council may require that the introduction of a
     proposed ordinance by a council member be by motion.
     (b)  Resolutions.--With regard to resolutions, the following
shall apply:
          (1)  The council of every city shall adopt resolutions in
     accordance with the provisions of this act.
          (2)  The purposes for which resolutions may be adopted
     shall include, but not be limited to, ceremonial or
     congratulatory expressions of the good will of the council,
     statements of public policy of the council, approval of formal
     agreements of the city, except when the agreements arise under
     a previously approved purchasing system of the city, approval
     of the acquisition, disposition and leasing of real property
     and the approval, when required, of administrative rules and
     regulations arising under State statutes or city ordinances.
          (3)  When eminent domain proceedings are instituted by
     resolution, notice of the resolution, including a description
     of the subject properties, shall be published once in one
     newspaper of general circulation not more than 60 days nor
     fewer than seven days prior to adoption.
Section 1018.2.  Voting; no veto; vote necessary to enact
                    ordinances or adopt resolutions.
     (a)  Voting generally.--Members of council present or
participating via a telecommunication device shall vote on all
questions coming before the council, except as may be required by
the provisions of any public official ethics law which may, from
time to time, be applicable to members of city council and except
as may be excused by a simple majority vote of the members of
council present at any meeting of the council for such cause as
they may determine to be appropriate and which cause shall be
entered upon the journal.
     (b)  Veto.--The mayor shall have no right of veto.
     (c)  Majority vote.--Except as otherwise provided in this act,

no ordinance may be enacted or resolution adopted by the council
without an affirmative vote of a majority of the whole number of
the members of council.
Section 1018.3.  Journal of proceedings; recording and withholding
                 of vote.
    The council shall keep a journal of its proceedings, which
shall be in the possession of the city clerk and which shall at
all times be open to public inspection. Upon every vote, the yeas
and nays shall be called and recorded by the city clerk. An
ordinance shall and a resolution may be reduced to writing before
the vote is taken on the ordinance or resolution. A member of
council shall not withhold the member's vote on any question
coming before the council, unless permitted to do so in accordance
with section 1018.2(a).
Section 1018.4.  Signing and attesting ordinances.
    Every legislative act of the council shall be by ordinance, and
every ordinance enacted by council shall be signed by the mayor
and attested by the city clerk.
Section 1018.5.  Proposed ordinances; titles.
    All proposed ordinances shall be presented to council in
written form as bills and shall be numbered serially for the
calendar year. No ordinances, except general appropriation
ordinances, may be enacted containing more than one subject, which
shall be reasonably identified in its title. No ordinance shall be
so altered or amended upon enactment by council as to change the
original purpose. The title of an ordinance shall not be
considered in the construction or interpretation of the ordinance
by a court of competent jurisdiction.
Section 1018.6.  Reading of proposed ordinances; final enactment.
    (a)  Reading.--The title of every proposed ordinance shall be
read at least twice, once when introduced and again before final
enactment by council. Amendments or other changes to the proposed
ordinance shall be read at length.
    (b)  Public availability.--A complete copy of every ordinance
introduced shall be available for public inspection at the clerk's
office during regular office hours.
    (c)  Time frame.--No ordinance shall be finally enacted by
council on the same day on which it was introduced, and at least
three days shall intervene between its introduction and its final
enactment by council.
    (d)  Numbering.--Upon enactment, ordinances shall be numbered
serially.
Section 1018.7.  Payments not authorized by law.
    No ordinance may be enacted nor resolution adopted providing
for the payment of any money by the city without previous
authority of law. Any officer executing a document authorizing
payment or passing a voucher for a payment not authorized by law,
or making the payment, commits a misdemeanor and shall, upon
conviction, be sentenced to pay a fine of not more than $5,000 and
to imprisonment for not more than one year.
Section 1018.8.  Time of taking effect of ordinances.
    All ordinances, except those pertaining to the subjects set
forth in section 1050(b), and unless otherwise provided by law,
shall take effect on the tenth day after enactment, upon being
signed by the mayor and attested by the city clerk.
Section 1018.9.  Publication of proposed ordinances.
    (a)  Publication required.--Every proposed ordinance, except as

otherwise provided in this act, shall be published in a newspaper of general circulation not more than 60 days nor fewer than seven days prior to enactment.

(b)   Contents.--Except as otherwise provided by law, the publication of a proposed ordinance shall include either the full text or the title and a summary of the ordinance setting forth the provisions in reasonable detail and a reference to a place within the city where copies of the proposed ordinance may be examined. If the full text is not published, the newspaper in which the proposed ordinance is published shall, upon request, be furnished a copy of the ordinance.

(c)   Readvertisement.--In the event substantial amendments are made in the proposed ordinance, before voting upon enactment, council shall within ten days readvertise in one newspaper of general circulation a brief summary setting forth all the provisions in reasonable detail together with a summary of the amendments.

Section 1018.10.   Filing of proposed ordinances.

(a)   Place of filing.--If the full text is not published, an attested copy of the proposed ordinance shall be filed when the summary of the ordinance is published in the county law library or other county office designated by the county commissioners who may impose a fee no greater than that necessary to cover the actual costs of storing the proposed ordinances. Filing with the county may be completed by the submission of an electronic copy of the ordinance through a method available, in the sole discretion of the county, to permit receipt by the office storing municipal ordinances. Upon request by the city, the county shall notify the city of the method by which electronic copies may be submitted. The county may store the ordinance electronically, provided that the public is able to access the electronically stored city ordinances during regular business hours at the office or at a remote location. The city shall retain a printed copy of the e-mail and ordinance as transmitted.

(b)   Date of filing.--The date of filing the proposed ordinance with the county shall not affect the effective date of the ordinance or the validity of the process of enactment of the ordinance.

Section 1018.11.   Records of ordinances maintained by city clerk.

(a)   Records.--All ordinances shall, within one month after their enactment, be certified and recorded by the city clerk in a book provided by the city for that purpose which shall be at all times open to the inspection of citizens. A standard or nationally recognized code or any portion of the standard or nationally recognized code enacted by reference need not be recorded in or attached to the ordinance book, but shall be deemed to have been legally recorded if the ordinance by which the code was enacted by reference is recorded, with an accompanying notation stating where the full text of the code is filed. A failure to record within the time provided shall not be deemed a defect in the process of the enactment or adoption of such ordinance.

(b)   Compilation or codification.--At the close of each year, with the advice and assistance of the city solicitor, the city clerk shall bind, compile or codify all the ordinances of the city, or true copies of the ordinances, which then remain in force and effect.

(c)   Indexing.--The city clerk shall also properly index the

record books, compilation or codification of ordinances.

(d)  Retention.--The retention of ordinances shall be in accordance with 53 Pa.C.S. Ch. 13 Subch. F (relating to records).

(e)  Attachment.--A city ordinance or portions of a city ordinance, the text of which prior to the effective date of this act is attached to the city ordinance book, shall be considered in force as if the ordinance or portions of the ordinance were recorded directly upon the pages of the ordinance book.

Section 1018.12.  Proof and evidence.

All ordinances, resolutions, motions or other proceedings of council may be proved by the certificate of the city clerk under the corporate seal and, when printed or published in book or pamphlet form by authority of the city, shall be read and received as evidence in all courts and elsewhere without further proof.

Section 1018.13.  Standard or nationally recognized codes.

(a)  Authority to enact.--In the same manner as other ordinances, and except as otherwise provided in this act or the Pennsylvania Construction Code Act, council may enact, by reference to a standard or nationally recognized code, all or any portion of the standard or nationally recognized code as an ordinance of the city. Three copies of the proposed standard or nationally recognized code, portion of the code or amendment to the code shall be filed in the office of the city clerk at least ten days before the city council considers the proposed ordinance and upon enactment shall be kept with the ordinance book and available for public use, inspection and examination.

(b)  Time frame.--

(1)  Except as otherwise provided by the Pennsylvania Construction Code Act, and regulations adopted pursuant to the act, an ordinance adopting by reference any standard or nationally recognized code shall be enacted within 60 days after its introduction and shall encompass subsequent changes in the code unless otherwise specified in the ordinance.

(2)  An ordinance which incorporates standard or nationally recognized code amendments by reference shall become effective after the same procedure and in the same manner as is specified in this section for original adoption of the code.

(c)  Technical regulations or code.--An ordinance that incorporates by reference standard technical regulations or code shall be subject to the provisions of the Pennsylvania Construction Code Act, if applicable.

Section 1018.14.  Maps, plans or drawings.

Except as may be otherwise provided under the Municipalities Planning Code, if maps, plans or drawings of any kind are to be adopted as part of an ordinance, the council may, instead of publishing the maps, plans or drawings as part of the ordinance, make reference in publishing the ordinance or a summary of the ordinance to the place where the maps, plans or drawings are on file and may be examined. Once enacted as part of an ordinance, a map, plan or drawing shall be amended by ordinance.

Section 1018.15.  Codification of ordinances.

(a)  Preparation authorized.--City council may prepare a consolidation or codification of the general body of city ordinances or the ordinances on a particular subject. City council may adopt the consolidation or codification as an ordinance of the city in the same manner prescribed for the adoption of its ordinances, except as follows:

(1) A consolidation or codification to be enacted as a single ordinance shall be introduced in the city council at least 30 days before its final enactment; and, at least 15 days before final enactment, notice of introduction of the consolidation or codification specifying its general nature and content shall be given by advertisement in a newspaper of general circulation.

(2) The required advertised notice of the proposed adoption of the consolidation or codification shall include a listing of its table of contents, and the advertisement shall indicate a place within the city where a copy of the proposed consolidation or codification may be examined.

(b) Additional procedure.--The procedure for the consolidation or codification of city ordinances as a single ordinance may also be followed in enacting a complete group or body of ordinances repealing or amending existing ordinances as may be necessary in the course of preparing a consolidation or codification of the city ordinances, except that the advertisement giving notice of the proposed adoption shall list, in lieu of a table of contents, the titles only of each of the ordinances in the complete group or body of ordinances.

(c) Adoption by reference.--The consolidation or codification may contain matter, which, when it becomes effective as an ordinance, will operate to adopt by reference any building, fire prevention or other standard or model code or zoning ordinance and zoning map in accordance with section 1018.13 and, if applicable, section 1018.14.

Section 1018.16. Enforcement of ordinances; recovery and payment of fines and penalties.

(a) Enforcement.--Actions, prosecutions, complaints and proceedings for the violation of the ordinances of the city and for fines, penalties and forfeitures imposed shall be instituted in the corporate name of the city and be conducted in the manner prescribed by law.

(b) Proceedings.--Unless otherwise provided by law, proceedings for the violation of the ordinances of the city shall be conducted as summary conviction proceedings, or proceedings for the recovery of penalties, before magisterial district judges with the same right of appeal from any final judgment entered.

Section 1018.17. Penalty.

A person who violates any ordinance enacted under the authority of this act for which no penalty is otherwise specified commits a summary offense and, upon conviction, shall be sentenced to pay a fine of not more than $1,000 or to imprisonment for not more than 90 days, or both, at the discretion of the court.

Section 73. Article X subdivision (b) heading of the act is amended to read:

(b) [Initiative] **Initiating Ordinances by Electors**

Section 74. Sections 1030, 1031, 1032, 1033, 1034, 1035, 1036, 1037, 1038, 1039, 1040 and 1041 of the act are amended to read:

Section 1030. Initiation of Proposed Ordinances by Petition; Exceptions.--[Any] **(a) Except as provided in subsection (b),** a proposed ordinance may be submitted to the council by a petition signed by the electors of any city[, as hereinafter provided, except:

(a) Proposed ordinances relating to any matter, subject or

thing, which is not the subject of a referendum vote as provided in subdivision (c) of this article; or

(b)  Proposed ordinances to repeal, amend, or modify any ordinance which has been subject to the provisions of the referendum as provided in subdivision (c) of this article.] **in accordance with this subdivision.**

**(b)   The following proposed ordinances may not be submitted to council by petition in accordance with this subdivision:**

**(1)   Proposed ordinances dealing with the subjects set forth in section 1050(b).**

**(2)   Proposed ordinances to repeal, amend or modify an ordinance which took effect after having been subject to the provisions of the referendum for reconsideration of the ordinance.**

Section 1031.   Petition; Notice.--[The city clerk, upon the written request of one hundred qualified electors of the city, directed to him, asking for the preparation of a petition for the submission of any proposed ordinance to the council of such city, and accompanied by a copy of the proposed ordinance, shall prepare such petition within ten days, and in the meantime notice shall be published, at least one time, in one newspaper, in the manner provided by section one hundred and nine of this act, that such petition will be ready for signing at the expiration of ten days from the presentation of said request. This notice shall state the purpose for which the petition is made, the place where and when it may be signed. Fifteen days shall be allowed for signatures.] **If the city clerk receives a written request for the preparation of a petition for the submission of a proposed ordinance to the city council by at least one hundred qualified electors of the city and the request is accompanied by a copy of the proposed ordinance, the city clerk shall, within ten days after receiving the request, do each of the following:**

**(1)   Prepare the requested petition.**

**(2)   Publish notice at least one time in a newspaper of general circulation that provides, at a minimum, the following information:**

**(i)   The date on which the request for the petition was received and that the petition will be ready for signing at the expiration of ten days from that date.**

**(ii)   The purpose for which the petition is made.**

**(iii)   The place at which and the dates and times during which the petition may be signed, with fifteen days, exclusive of Saturdays, Sundays and holidays, being allowed for signatures.**

Section 1032.   Signing; Oath.--[The signing] **A petition for the submission of a proposed ordinance** shall be [done] **signed** in the city clerk's office only. The petition shall be retained [there] **in the city clerk's office** at all times [during the] **for a** period of fifteen days. Each signer shall add to [his] **the signer's** signature [his] **the signer's** place of residence by street and number[,] and shall make oath before the city clerk that [he] **the signer** is a qualified elector of the city and resides at the address given. The city clerk shall keep [his] **the city clerk's** office open for the purpose of permitting voters to sign [such] **the** petition [from eight o'clock ante meridian to ten o'clock post meridian of each day except Sundays and holidays] **at least from nine o'clock ante meridian through seven o'clock post meridian, prevailing time, Monday through Friday, except holidays.** [He] **The city clerk** shall not permit any person to sign [such] petitions

after [ten o'clock post meridian] **seven o'clock post meridian, prevailing time**, on the last day for signing the same.

Section 1033. Number of Signatures; Examination and Certificate by City Clerk.--[At the expiration of the fifteen days aforesaid, and within ten days thereafter,] **Within ten days after the period of time for signing the petition has elapsed,** the city clerk shall examine [such] **the** petition[,] and, from the record of registered voters of the city, ascertain whether or not [said] **the** petition is signed by voters equal to twenty per centum of all votes cast for all candidates for mayor at the last preceding municipal election at which a mayor was elected. If necessary, the council [shall] **may** allow the city clerk extra help for [that] **the** purpose **of complying with this section.** The city clerk shall attach to [said] **the** petition [his] **the clerk's** certificate showing the result of [said] **the** examination. If less than the required twenty per centum is certified, the petition shall fail and shall be filed in the office of the city clerk.

Section 1034. Submission to Council.--If the petition [shall be] **is** certified to contain signatures equalling the required twenty per centum of said votes cast as aforesaid, the clerk shall submit the same to the council without delay.

Section 1035. Actions by Council; Notices.--If the petition accompanying the proposed ordinance [be] **is** signed by electors **equal** in number to twenty per centum of the votes cast for all candidates for mayor at the last preceding municipal election at which a mayor was elected, the council shall either:

(a) [Pass said] **enact the** proposed ordinance without alteration[,] within twenty days (except as otherwise provided herein)[,] after attachment of the clerk's certificate to the accompanying petition; or

(b) [Forthwith, after the clerk shall attach to the petition accompanying such ordinance his certificate of sufficiency, the council shall call a special election] **call for a referendum** to be held at the time of the next general, municipal or primary election occurring at least ninety days thereafter[;], and at [such] **which** election[, such] **the** proposed ordinance shall be submitted without alteration to the vote of the electors of the [said] city, **after attachment of the clerk's certificate to the accompanying petition.** Notice of [such] **the** election [shall be given as provided by the Pennsylvania Election Code.] **and the text of the question to be submitted to the electors shall be published in the same manner as publication is required in section 1201 of the Pennsylvania Election Code.**

Section 1036. Form of Ballot [or Ballot Label] on Submission to Vote.--[The ballots or ballot labels used when voting upon said ordinance shall be supplied by the county board of elections, and shall contain a question, stating the nature of the proposed ordinance, followed by the words "yes" and "no" and shall be as provided in the Pennsylvania Election Code. The votes shall be counted and returns thereof made and computed as provided in section ten hundred and sixty-two of this act.] **The question to be submitted to the electors on the proposed ordinance shall be framed to state the nature of the proposed ordinance, followed by the words "yes" and "no," and the question shall be placed on the ballots which shall be counted, returned and computed in accordance with section 1062 and the election laws of the Commonwealth.**

Section 1037. Effect of Majority Vote.--If the majority of the qualified electors voting on the proposed ordinance shall vote in favor [thereof, such] **of the ordinance, the** ordinance shall [thereupon] become a valid and binding ordinance of [said] **the** city.

Section 1038. No Repeal Within Two Years.--[Any] **An** ordinance so proposed by petition, whether [passed] **enacted** by council or adopted by a vote of the electors, [cannot] **shall not** be repealed or amended within two years of its effective date except by a vote of the electors.

Section 1039. Number of Proposed Ordinances to be Submitted; [Special] Elections Limited.--Any number of proposed ordinances may be voted upon at the same election, in accordance with the provisions of this subdivision[: Provided, That]. **Proposed ordinances on** the same subject matter shall not be submitted by petition [oftener] **more frequently** than once [in] **every** three years.

Section 1040. Submission for Repeal by Council.--The council may submit a proposition for the repeal or amendment of [any such] **an** ordinance to be voted upon at any succeeding municipal, general or primary election[,] occurring at least ninety days [thereafter] **after council's submission of the proposition.** Should [such] **the submitted** proposition[, so submitted,] receive a majority of the votes cast [thereon] **on the proposition** at [such] **the** election, [such] **the** ordinance shall [thereby] be repealed or amended accordingly.

Section 1041. Publication of Proposed Ordinance; Repeal or Amendment.--Whenever any proposed ordinance is to be submitted to the voters of the city at any election, or any ordinance is submitted by council for repeal or amendment, notice [thereof] **of the election and text of the question to be submitted to the electors** shall be published [as required by] **in the same manner as publication is required in section 1201 of** the Pennsylvania Election Code.

Section 75. Article X subdivision (c) heading of the act is amended to read:

(c) [Referendum] **Reconsidering Ordinances by Electors**

Section 76. Sections 1050, 1051, 1052, 1053, 1054, 1055 and 1056 of the act are amended to read:

Section 1050. [Referendum; Exceptions.--No] **Time Ordinances Go Into Effect.--(a) Except as provided in subsection (b), no** ordinance [passed] **enacted** by council shall go into effect before ten (10) days from the time of its final [passage, except] **enactment by council.**

**(b) Ordinances dealing with the following subjects may be made effective upon final enactment:**

[(a)] **(1)** Ordinances expressly required to be [passed] **enacted** by the general laws of the State or by the provisions of any act of Assembly, or the provisions of which and the matters to be carried out [thereunder] **under the ordinance** are subject to the approval of an officer or tribunal of the [State Government;] **Commonwealth.**

[(b)] **(2)** Ordinances providing for tax levies **or fees,** annual and other appropriations[,] and for the exercise of the right of eminent domain[;].

[(c)] **(3)** Ordinances for the preservation of the public peace, health, morals, safety[,] and in the exercise of the police powers

of the city government, and for the prevention and abatement of nuisances[;].

[(d)] **(4)** Any ordinance providing for an election to increase indebtedness, and any other ordinance which by law must be submitted to an election before it shall take effect[;].

[(e)] **(5)** Ordinances for the opening, paving, grading[,] or other improvement of streets or highways, when the improvement is petitioned for by a majority in number or interest of the abutting property owners[;].

[(f)] **(6)** Ordinances for the construction of sewers[,] and for the purpose of keeping the streets, highways[,] and sidewalks in good order and repair and in a safe and passable condition.

Section 1051. Petition; Reconsideration of Ordinance.--[If, during such period of ten days from the time of its final passage, a petition signed by electors of the city equal in number to at least twenty per centum of the entire vote cast for all candidates for mayor at the last preceding municipal election at which a mayor was elected, protesting against the passage of any ordinance other than those excepted from the provisions of this subdivision by the foregoing section, is presented to the council, said ordinance shall be suspended from going into operation, and council shall reconsider such ordinance.] **With the exception of ordinances dealing with the subjects set forth in section 1050(b), an ordinance shall be suspended from going into operation and shall be reconsidered by council if, within ten days after its final enactment, there is presented to council, in accordance with this subdivision, a petition protesting against enactment of the ordinance which shall be signed by electors of the city equal in number to at least twenty per centum of the entire vote cast for all candidates for mayor at the last preceding municipal election at which a mayor was elected.**

Section 1052. Preparation of Petition by City Clerk; Notice.--[Such] **A** petition **under section 1051** shall be prepared by the city clerk immediately upon receipt by [him] **the clerk** of **the** written request of one hundred qualified electors of the city asking that the [same] **petition** be prepared. Upon its preparation, [he] **the clerk** shall give notice by [one insertion in one of the daily newspapers, if one be published in the city, and, if not, then in a weekly or daily newspaper published in the county, that such] **publication in a newspaper of general circulation that the** petition is ready for signing and the purpose of the petition, giving the place where and time when it may be signed. The [said] signing shall be done only in the city clerk's office, where the petition shall be retained during the period of ten days after the [passage] **enactment** of the [said] ordinance.

Section 1053. Additional Petitions.--In order to facilitate the signing of [such] **the** petition, the city clerk shall cause to be made at least two additional similar petitions for signing by the qualified electors, and the signing of [such] **the additional similar** petitions shall have the same force and effect as the signing of the original petition. The city clerk is hereby authorized to employ at least two persons to take charge of [said] **the** additional petitions[; the]. **The** city clerk and [said] **the** persons **hired are** hereby empowered to administer the oath [hereinafter] required to be taken by the electors. This section **also** shall apply [as well] to petitions initiating ordinances **under subdivision (b)**.

Section 1054.  Signatures; Oath; Time of Signing.--Each signer **of a petition under section 1051** shall add to [his] **the signer's** signature [his] **the signer's** place of residence by street and number[,] and shall make **an** oath before the city clerk, or other person authorized [as aforesaid] **under section 1053**, that [he] **the signer** is a qualified elector of the city and resides at the address given. The city clerk shall keep [his] **the city clerk's** office open for the purpose of **receiving** signatures to the petitions [from eight o'clock ante meridian to ten o'clock post meridian of each day except Sundays and holidays. He] **at least from nine o'clock ante meridian through seven o'clock post meridian, prevailing time, Monday through Friday. The city clerk** shall not permit [any] **a** person to sign [any of the said petitions] **a petition** after [ten] **seven** o'clock post meridian, **prevailing time**, of the tenth day following the [passage] **enactment** of the ordinance on which the referendum vote is [prayed for] **requested**.

Section 1055.  Presentation of Petition to Council.--At the expiration of [said] ten days, the [said] petition shall be [deemed and taken to be] filed with and presented to the council, and [it shall be the duty of] the city clerk [to lay the same before] **shall present the petition to** the council at its first meeting [thereafter] **after expiration of the ten-day period.**

Section 1056.  Ascertainment of Number of Signers; Report.--After [its] presentation **of the petition to council**, the city clerk shall ascertain from the record of registered voters of the city whether or not [said] **the** referendum petition is signed by voters equal to twenty per centum of all the votes cast for mayor at the last preceding municipal election at which a mayor was elected. If necessary, the council [shall allow him] **may allow the clerk** extra help for that purpose, and, after [he] **the clerk** has made [said] **the** examination, [he] **the clerk** shall report the result [thereof] to council.

Section 77.  Sections 1057 and 1058 of the act are repealed:

[Section 1057.  Ordinances Granting Franchises.--No franchise or consent to occupy the public streets, highways, or other places in any city of the third class shall be given or granted to any person or persons, railroad, railway, gas, water, light, telephone or telegraph company, or to any public utility corporation, except by ordinance, and no ordinance for such purpose shall go into effect before thirty days after it has been filed with the Public Utility Commission.

Section 1058.  Petition against Ordinances; Suspension.--If, within said thirty days, a petition prepared, advertised, and perfected in all respects complying with the provisions of this subdivision (except that the petitioners shall have thirty days in which to prepare said petition), is addressed to the council, signed by registered electors of the city equal in number to at least twenty per centum of all the votes cast for mayor at the last preceding municipal election at which a mayor was elected, protesting against the passage of said ordinance, the latter shall be suspended, and it shall be the duty of the city clerk to examine said petition and ascertain, from the registry of voters, whether or not said petition is signed by the required number of electors. If necessary, the council shall allow the city clerk extra help for said purpose. Upon such examination he shall report the result to council.]

Section 78.  Sections 1059, 1060, 1061, 1062, 1063 and 1064 of the act are amended to read:

Section 1059.  Effect of Petition; Submission to Voters.--If[,] in any case[,] it shall appear that the [petitions] **petition** provided for in this subdivision [have] **has** not been signed by the requisite number of voters, no action shall be taken, but the [ordinances] **ordinance** shall be [deemed and] taken to be in full force from the time or times [they each] **it** would have gone into effect had there been no petition against the [same. But in case such petitions are] **ordinance. If the petition is** signed by electors equal to twenty per centum of all the votes cast for mayor as aforesaid, the council shall reconsider [such] **the** ordinance, and, if the [same] **ordinance** is not entirely repealed **by council on reconsideration**, the council shall call a [special election,] **referendum** to be held at the time of the next general [or], municipal or primary election occurring not less than sixty days [therefrom] **after the reconsideration.** At [such] **the** election, the [said] ordinance shall be submitted without alteration in accordance with the Pennsylvania Election Code.

Section 1060.  Certification [of] **to** County Board of Elections; Ballots or Ballot Labels; Expense of Elections.--The city clerk, **after consultation with the city solicitor,** shall certify to the county board of elections a copy of the ordinance and the proceedings of council directing the referendum vote, and the county board of elections shall cause the question to be printed for use in the election districts of the city. The preparation of ballots or ballot labels for and the holding of [special elections] **a referendum** shall be as provided in the Pennsylvania Election Code. Any number of ordinances may be referred and voted on at the same election.

Section 1061.  Form of Ballot or Ballot Label.--The ballot used when voting upon [such] **the** ordinance shall contain a question stating the nature of the referred ordinance followed by the words "yes" and "no" and shall be as provided in the Pennsylvania Election Code.

Section 1062.  Computing and Filing Returns.--The officers holding [said elections] **an election** shall keep tally sheets and make returns of votes **on the referendum question** in the same manner as tally sheets are kept and returns made in elections of officers and the submission of other questions as provided by the Pennsylvania Election Code. The returns shall be filed with the county board of elections which shall compute the returns and certify the results [thereof] to the city council. The returns and certifications of [all special elections] **a referendum question** shall be made as provided in the Pennsylvania Election Code.

Section 1063.  Effect of the Vote.--If it shall appear that more persons have voted for [said] **the** ordinance than against it, the ordinance shall take immediate and full effect [without more] from the date the results are certified to the city council. If the vote is against [said] **the** ordinance, [it] **the ordinance** shall be [lost] **nullified** and of no effect.

Section 1064.  Publication of Ordinance Before Election.-- Before any referendum [election] is held on any ordinance[, a copy] **in accordance with this subdivision, the city shall provide notice** of the ordinance which is to be submitted to the vote of the people [shall be published as required] by **publishing a copy of the ordinance in a newspaper of general circulation.**

**Publication in accordance with this section shall be in addition to publication requirements of** the Pennsylvania Election Code.

Section 79. Article XI heading of the act is reenacted to read:

ARTICLE XI
THE EXECUTIVE DEPARTMENT

Section 80. Sections 1101, 1102, 1103 and 1104 of the act are amended to read:

Section 1101. Executive Departments.--[The executive and administrative powers, authority, and duties in each city shall be distributed into and among five departments, as follows:

1. Department of Public Affairs.
2. Department of Accounts and Finance.
3. Department of Public Safety.
4. Department of Streets and Public Improvements.
5. Department of Parks and Public Property.] **The city may have a department of administration and other departments as council shall establish by ordinance. All of the administrative functions, powers and duties of the city shall be allocated and assigned within the departments established by council by ordinance or, in the absence of an ordinance making this allocation, among five departments, as follows:**

**(1) Department of Public Affairs.**
**(2) Department of Accounts and Finance.**
**(3) Department of Public Safety.**
**(4) Department of Streets and Public Improvements.**
**(5) Department of Parks and Public Property.**

Section 1102. Determination of Powers and Duties of Departments.--[The council shall determine] **Subject to the restrictions and limitations of this act and other laws, the council may, by ordinance, do all of the following:**

**(1) Determine** the powers and duties to be performed by[, and assign them to, the appropriate] **each** department[; shall prescribe].

**(2) Prescribe** the powers and duties of officers and employes[; may assign].

**(3) Assign** particular officers and employes, **including directors of departments**, to one or more of the departments[; may require].

**(4) Require** an officer or employe to perform duties in two or more departments[; and may make].

**(5) Make** such other rules and regulations as may be deemed necessary or proper for the efficient and economical conduct of the business of the city.

Section 1103. Designation of [Departments] **Department Directors**; Changes.--**(a)** The mayor shall be director of the department of public affairs and as such shall have supervision over the city police. **In the event that council does not create a department of public affairs, the mayor shall retain the powers of supervision over city police.**

[The] **(b) Unless otherwise provided by ordinance in accordance with sections 1101 and 1102, the** council shall, at [the biennial] **its** organization meeting, designate[, by majority vote, one councilman] **by resolution one council member** to be director of the department of accounts and finance, one to be director of the department of public safety, one to be director of the department of streets and public improvements[,] and one to be director of

the department of parks and public property. [Such] **The** designation may be changed at council's discretion.

    Section 1104.  Department Directors Responsible for City Property and Supplies; Perpetual Inventory Reports.--The director of each department shall be responsible for the personal property and supplies of the city within [his] **the director's** department[, and]. **Each department director** shall prepare and maintain a perpetual inventory of [such] **the personal** property and supplies[. He shall] **for which the director is responsible and, from time to time during the fiscal year,** file **the inventory** with the city clerk [a copy of such inventory from time to time during the fiscal year, and shall make available to the director of accounts and finance a copy of such inventory to assist him in the preparation of the proposed budget ordinance. He shall furnish a copy of such inventory to the council upon request.] **or other official designated by council. The city clerk or other designated official with whom the inventory is filed shall, upon request, furnish a copy of the inventory to the chief fiscal officer and to council.**

    Section 81.  The act is amended by adding a section to read:

    **Section 1105.  Quarterly Reports from Directors of Departments.--At the close of each quarter of the fiscal year, each department director shall prepare and submit to the director of the department of accounts and finance, if one exists, or to the business administrator or other official designated by council, a comprehensive and detailed report of all expenditures and operations of the director's department during the quarter. The person to whom the quarterly reports are submitted shall review and consolidate the quarterly reports and shall prepare and submit to council a consolidated report on the expenditures and operations of the entire city government, together with recommendations, not later than the second meeting of council after the close of each quarter.**

    Section 82.  Article XII heading of the act is reenacted to read:

ARTICLE XII
THE MAYOR

    Section 83.  Section 1201 of the act, amended July 27, 1973 (P.L.230, No.60), is amended to read:

    Section 1201.  Qualifications.--The mayor shall be at least [twenty-one] **eighteen** years of age[,] and shall be elected at large by the qualified electors of the city. [He] **The person** shall have been a resident of the city wherein [he shall be] elected for **at least** one year[, next before his election,] **before the person's election** and shall reside in the city throughout [his] **the person's** term of service. **Prior to being sworn into office and as a condition to qualifying for office, the elected mayor shall present a signed affidavit to the city clerk that states the person resides in the city from which elected and has resided in the city continuously for at least one year preceding the person's election.**

    Section 84.  Section 1202 of the act is amended to read:

    Section 1202.  Chief Executive; Inauguration.--The mayor shall be the chief executive of the city. [He shall be inaugurated and take the oath of office provided for by this act at ten o'clock in the forenoon of the first Monday of January next succeeding his election, or as soon thereafter as possible] **The mayor shall be**

inaugurated and take the oath of office in accordance with
sections 904 and 905 on the first Monday of January following the
regular municipal election. If the first Monday is a legal
holiday, the mayor shall be inaugurated and take the oath the
first day following or as soon after that day as possible.

Section 85. Section 1203 of the act, amended July 11, 1996
(P.L.647, No.109), is amended to read:

Section 1203. Execution of Laws; Powers of Sheriff Conferred;
Emergency Powers.--[(a) It shall be the duty of the mayor and the
chief executive of cities adopting the city manager form of
government to be vigilant and active in causing the ordinances of
the city, and the laws of the Commonwealth relating to the
government of the city, to be executed and enforced.

(b)] **(a)  In accordance with the powers granted in this act,
the mayor shall have the authority to cause the ordinances of the
city, and all general laws applicable to the ordinances, to be
executed and enforced.**

**(b)  The mayor shall annually report to the council and the
public on the work of the previous year and on the condition and
requirements of the city government and shall, from time to time,
make such recommendations for action by the council as the mayor
may deem in the public interest.**

(c)  In order to enable [him] **the mayor** effectually to preserve
the public peace within the city, all the powers which are
devolved by the laws of this Commonwealth upon sheriffs, to
prevent and suppress mobs, riots[,] and unlawful and tumultuous
assemblies, are hereby conferred upon [him] **the mayor.**

(d)  When the mayor [or chief executive] considers that a state
of emergency exists, [he] **the mayor** may issue [his] **a**
proclamation, which shall be in writing and copies of which shall
be made available to all news media[,] and to each member of city
council, declaring a state of emergency [for a period not to].

**(e)  Upon the issuance of a proclamation declaring a state of
emergency under subsection (d), the following shall apply:**

**(1)  The state of emergency shall not** exceed five days, unless
extended by action of council.

**(2)**  In the case of a declaration of a state of emergency by
the mayor [or chief executive] for either a citywide or
site-specific emergency, city agencies may temporarily implement
their emergency assignments without regard to procedures required
by other laws pertaining to the incurring of obligations and the
employment of temporary workers. [In his]

**(3)  The** proclamation [he] may prohibit, for all or any part of
the city in which there is a clear and present danger to life or
property through civil disorder[;]:

[(1) Any] **(i)  a** person being on the public streets[,] or in
the public parks or at any other public place during the hours
declared by [him] **the mayor** to be a period of curfew;

[(2)  The] **(ii)  the** assembling or gathering of a group of
people, in such numbers to be designated by [him] **the mayor,** upon
the public streets, parks or other public places;

[(3)  The] **(iii)  the** entry or departure of persons into or
from any restricted area;

[(4)  The] **(iv)  the** sale, purchase[,] or dispensing of any
commodities or goods[, as] designated by [him] **the mayor;**

[(5)  The] **(v)  the** transportation, possession or use of
gasoline, kerosene[,] or other combustible, flammable or explosive

liquids or materials, except in connection with the normal
operation of motor vehicles, normal home use[,] or legitimate
commercial use; **or**
    [(6) Any] **(vi) any** other [such] activities as [he] **the mayor**
reasonably believes [should be prohibited to help preserve] **would
cause a clear and present danger to the preservation of** life,
health, property or the public peace.
    [(c)] **(f)** The proclamation **of an emergency** shall describe any
restricted area with particularity and shall specify the hours
during which such restrictions are to be in effect.
    [(d)] **(g)** Any person violating [such] **a** proclamation of
emergency [shall be guilty of] **commits** a summary offense and
shall, upon conviction, be sentenced [to pay a fine not to exceed
three hundred dollars ($300) or to undergo imprisonment not to
exceed thirty days, or both] **as provided by law.**
    Section 86. Sections 1204 and 1205 of the act are amended to
read:
    Section 1204. Official Seal of Mayor.--Council shall provide
an official seal for the mayor [and prescribe the form thereof] **in
such form as the mayor may reasonably request, which shall not be
changed during the mayor's term of office.**
    Section 1205. Supervision of Conduct of City Officers.--The
mayor shall supervise the conduct of all city officers, examine
the grounds of all reasonable complaints against any of them[,]
and cause all of their violations or neglect of duty to be
promptly punished or reported [to the council] for correction **in
the manner council may direct.** For the purposes [aforesaid, he] **of
this section, the mayor** is hereby empowered to issue subpoenas and
compulsory processes, under [his] **the mayor's** official seal, for
the attendance of [such] persons and the production of [such]
books and papers as [he] **the mayor** may deem necessary[, and shall
have like enforcement of such subpoenas as is]. **A subpoena shall
be enforced in the manner** provided for council in section [one
thousand fifteen of this act] **1015.**
    Section 87. Section 1206 of the act, amended September 29,
1955 (P.L.653, No.177), is amended to read:
    Section 1206. [Quarterly Reports from Directors of
Department;] Report of Mayor to Council; Information from
Directors of Departments.--[The director of each department of the
city shall prepare and submit to the Director of the Department of
Accounts and Finance, at the close of each quarter of the fiscal
year, a comprehensive and detailed report of all expenditures and
operation of his department during the quarter. The Director of
the Department of Accounts and Finance shall review and
consolidate such quarterly reports and shall prepare and submit to
council a consolidated report on the expenditures and operations
of the entire city government, together with his recommendations,
not later than the second meeting of council after the close of
each quarter.] The mayor shall have the authority, at all times,
to call upon any official of the city or heads of departments for
any information as to the affairs under their control and
management as [he] **the mayor** may require. [He] **The mayor** may
likewise report upon any and all matters of city government as
frequently to council as [he] **the mayor** deems conducive to the
interest and welfare of the city.
    Section 88. Section 1207 of the act, amended August 21, 1953
(P.L.1292, No.364) and repealed in part April 28, 1978 (P.L.202,

No.53), is amended to read:

Section 1207. [Criminal and Civil Jurisdiction; Docket; Fees.--He] **Power to Take Acknowledgments and Oaths and to Formalize Marriages.--The mayor** shall be empowered to take acknowledgments of any instruments in writing[,] pertaining to the business of the city, solemnize marriages[,] and administer oaths and affirmations[,] as to city business[,] and shall attest all [his acts with his official seal] **the mayor's acts with the mayor's official seal, if any.**

Section 89. Section 1208 of the act, amended May 11, 1959 (P.L.307, No.54), is amended to read:

Section 1208. Salary.--**(a) (1)** The mayor of each city shall receive for [his] **the mayor's** services during the term of service an annual salary to be fixed by ordinance, payable in [such] equal [instalments] **installments** as council shall provide.

**(2)** The council shall, by ordinance, fix the amount of salary to be paid to the mayor for [his] **the mayor's** services[,] and may provide for the assessment and retention [therefrom] **from the salary** of reasonable fines for absence from regular or special meetings of council or [councilmanic] committees **of council.**

**(3)** The amount of **the mayor's** salary [in cities] shall not be less than **two thousand** five hundred dollars.

**(b)** Until changed by ordinance, the salary of mayors in newly created cities [shall] **may** be as follows: [In cities having a population of fifteen thousand or under, by the last United States census, one thousand two hundred dollars per annum; in cities having a population of over fifteen thousand, and less than thirty thousand inhabitants, two thousand four hundred dollars per annum; in cities having a population exceeding thirty thousand, four thousand eight hundred dollars per annum.

The amount of compensation for the mayor in any of the said cities shall not be increased or diminished after his election. Succeeding councils may change the amount of the mayor's compensation, but such change shall not affect the compensation of the mayor then in office or of any person taking office as mayor within six months of final passage of the ordinance providing for such change.]

**(1) in cities with a population of less than five thousand, a maximum of two thousand five hundred dollars a year;**

**(2) in cities with a population of five thousand or more but less than ten thousand, a maximum of five thousand dollars a year;**

**(3) in cities with a population of ten thousand or more but less than fifteen thousand, a maximum of seven thousand five hundred dollars a year; and**

**(4) in any city with a population in excess of fifteen thousand, the salary of the mayor shall not exceed five hundred dollars a year per thousand population or fraction of a thousand, the population to be determined by the latest official census figures.**

**(c) The compensation to be received by a mayor in cities other than newly created cities shall be fixed by ordinance of council enacted at least two days prior to the last day fixed by law for candidates to withdraw their names from nominating petitions previous to the day of the municipal election. The compensation to be received by the mayor shall not be increased or diminished after the mayor's election unless the increase or decrease was included in an ordinance enacted at least two days prior to the**

last day fixed by law for candidates to withdraw their names from
nominating petitions previous to the day of the municipal
election.
    (d)  (1)  Subject to clause (2) and notwithstanding any other
provisions of law, a mayor may receive an honorarium, fee or
reimbursement of expenses related to the performance of a marriage
ceremony in this Commonwealth, if the mayor first notifies council
in writing of the mayor's intention to perform marriage
ceremonies. A notification pursuant to this clause shall remain in
effect for the term of the mayor or until such time as the
notification is rescinded by the mayor.
    (2)  The honorarium or fee shall not exceed one hundred fifty
dollars for each ceremony performed. The mayor shall keep accurate
accounts of the fees received relating to the performance of
marriage ceremonies and provide council each quarter with a report
of moneys received for that period. The quarterly report shall
include the amount of money received, the names of persons from
whom money was received along with the date and the location of
the performed ceremony and shall be considered a public record.
    (3)  The receipt of a fee under this subsection shall not be
considered a violation of 65 Pa.C.S. Ch. 11 (relating to ethics
standards and financial disclosure) and shall not be considered
compensation under this act.
    Section 90.  Section 1209 of the act is amended to read:
    Section 1209.  Acting Mayor; Powers and Duties.--[The member of
city council who shall be designated as the director of the
department of accounts and finance shall be vice president of the
city council, and acting mayor of the city during the absence or
inability of the mayor to act; and, during such absence or
inability, he] **During the absence of the mayor or the inability of
the mayor to act, the vice president of city council shall be the
acting mayor who** shall exercise all the rights and powers of the
mayor. In the event of a vacancy in the office of the mayor by
reason of death, resignation[,] or otherwise, the vice president
of council shall, in like manner, act as the mayor and shall,
**while acting as mayor,** receive the compensation of mayor but not
[of director of accounts and finance or councilman during such
incumbency] **any compensation as a council member,** until the
successor of the mayor is duly [elected] **appointed** and qualified
[as hereinbefore provided] **in accordance with section 901.** In case
of the absence or inability of the [director of accounts and
finance to act] **vice president of council to act as mayor,** the
council shall designate **another** one of its members to act as
mayor.
    Section 91.  Article XII-A heading of the act, added July 7,
2011 (P.L.307, No.75), is reenacted to read:
ARTICLE XII-A<br>CITY ADMINISTRATOR OR MANAGER
    Section 92.  Sections 1201-A and 1202-A of the act, added July
7, 2011 (P.L.307, No.75), are reenacted to read:
Section 1201-A.  Office of city administrator or manager.
    City council may, at its discretion at any time, by ordinance,
enacted by a majority vote of all members elected to council,
create the office of city administrator or manager and may in like
manner abolish the same. The appointed office of city
administrator when referenced in this article may also be referred
to as city manager, and a reference to a city administrator shall

be deemed a reference to a city manager.
Section 1202-A.  Appointment; selection; removal.
    In a city in which the office of city administrator has been
created, council shall appoint a person to fill that office
initially, and thereafter, whenever a vacancy exists in the
office. The appointment of a person to fill the office of city
administrator shall be by an affirmative vote of a majority of all
the members of council. Council shall select a city administrator
on the basis of executive and administrative qualifications,
education and experience and may give special consideration to
applicants with training and experience in municipal government
operation. The city administrator shall serve at the pleasure of
council, subject to contractual rights that may arise under an
employment agreement that may be entered in accordance with
section 1203-A.
    Section 93.  Section 1203-A of the act, added July 7, 2011
(P.L.307, No.75), is amended to read:
Section 1203-A.  Employment agreement.
    Council may enter into an employment agreement with the city
administrator. The employment agreement may set forth the terms
and conditions of employment, and the agreement may provide that
it shall remain in effect for a specified period terminating no
later than two years after the effective date of the agreement or
the date of the [organization] **organizational** meeting of council
following the next municipal election, whichever shall first
occur. An employment agreement entered into pursuant to this
section may specify conditions under which a city administrator
would be entitled to severance compensation, but in no event shall
an employment agreement guarantee employment through the term of
the agreement or confer upon the city administrator any legal
remedy based on specific performance. **Any employment agreement
with a city administrator executed on or after a municipal
election but before the first meeting in January the year after
the municipal election shall be void.**
    Section 94.  Sections 1204-A and 1205-A of the act, added July
7, 2011 (P.L.307, No.75), are reenacted to read:
Section 1204-A.  Residency and elective city office.
    At the time a person is appointed to fill the office of city
administrator, the appointee need not be a resident of the city.
After appointment, the city administrator may reside outside the
city only with the approval of council. The city administrator
shall not hold any elective city office.
Section 1205-A.  Powers and duties.
    (a)  Powers and duties generally.--Council may, by ordinance,
vest in the city administrator powers and duties relating to the
general management of city business and to the enforcement of city
ordinances and regulations. The powers and duties conferred upon a
city administrator in accordance with this section shall not be
construed as diminishing powers granted to other city officers by
statute or ordinance.
    (b)  Specific powers.--The powers and duties that may be
conferred upon a city administrator by council may include, but
shall not be limited to, any or all of the following:
        (1)  To be the chief administrative officer of the city
    responsible to the city council as a whole for the proper and
    efficient administration of the affairs of the city.
        (2)  To direct and supervise the administration of all

departments and functions of the city, except as otherwise
provided by ordinance or law.

(3)  Except as otherwise provided by this act, to appoint
city employees on the basis of merit system principles and
suspend, remove or otherwise discipline employees, subject to
the following:

(i)  The city administrator may make recommendations to
council concerning appointments or removals at the
department head level.

(ii)  Prior to any action being taken with regard to
appointments or removals at the department head level, the
city administrator shall confer with council.

(iii)  Council must confirm appointments or removals at
the department head level.

(4)  To designate a qualified administrative officer of the
city to perform the city administrator's duties during the city
administrator's temporary absence or disability. In the event
the city administrator fails or is unable to make such
designation, or, if the absence or disability continues more
than 30 days, the council may, by resolution, appoint an
officer of the city to perform the duties of the city
administrator during the city administrator's absence or
disability until the city administrator is able to return to
work.

(5)  To negotiate contracts for the city, subject to the
approval of city council, make recommendations concerning the
nature and location of municipal improvements and execute
municipal improvements as determined by the city council.

(6)  To see that all terms and conditions imposed in favor
of the city or its inhabitants in any statute, franchise or
contract are faithfully kept and performed, and upon knowledge
of any violation, call the same to the attention of the city
council.

(7)  To attend all meetings of the city council with the
right to take part in the discussions, but without the right to
vote.

(8)  To recommend to the city council for adoption such
measures as the administrator may deem necessary or expedient,
keep the council advised of the financial condition of the city
and make reports to the council as requested by it.

(9)  To investigate at any time the affairs of any officer
or department of the city that is under the administrator's
jurisdiction.

(10)  To prepare and submit the annual city budget for
review and approval by the city council. The recommended budget
shall be submitted to city council for its review no later than
the last stated meeting in November. The budget so submitted
shall be accompanied by an enabling ordinance, together with
such explanatory comment or statement as the administrator may
deem desirable. The budget document shall be in such form as is
required by law for city budgets and shall contain such
additional documentation or explanation of the various items of
expenditure and revenue as may be required by council.

(11)  To perform such other duties as may be designated by
the city council in the enabling ordinance.

Section 95.  Article XIII heading of the act is repealed:

[ARTICLE XIII

CITY CLERK]
    Section 96.  Sections 1301, 1302 and 1303 of the act are
repealed:
    [Section 1301.  Appointment; Compensation; Removal.--The
council of each city shall appoint a city clerk on the first
Monday of May, one thousand nine hundred and fifty-two, and on the
first Monday of May every fourth year thereafter, and fix his
compensation by ordinance. He shall serve for a term of four years
and until his successor is duly appointed and qualified.
    Section 1302.  Power to Administer Oaths; Duties.--The city
clerk shall have the power of a notary public to administer oaths
in any matter pertaining to the business of said city, or in any
legal proceeding in which it is interested. He shall also perform
such other duties as shall be prescribed for his office by law,
ordinance or resolution of council.
    Section 1303.  Records Open to Inspection.--The records and
documents of city council of every city shall be kept in the
office of the city clerk and shall be open to the inspection of
any taxpayer thereof, his, her, or its agent, upon demand therefor
during office hours.]
    Section 97.  Article XIV heading of the act is reenacted to
read:

ARTICLE XIV
THE CITY TREASURER

    Section 98.  Section 1401 of the act, amended July 27, 1973
(P.L.229, No.59), is amended to read:
    Section 1401.  Qualifications.--The city treasurer shall be [a
competent] **an** accountant, at least twenty-one years of age[,] and
shall have been a resident of the city for at least one year [next
prior to his] **before the person's** election. [He] **The elected
treasurer** shall reside in the city throughout [his] **the
treasurer's** term of office. **Prior to being sworn into office and
as a condition to qualifying for office, the elected treasurer
shall present a signed affidavit to the city clerk that states the
person resides in the city from which elected and has resided in
the city continuously for at least one year preceding the person's
election.**
    Section 99.  Section 1402 of the act, amended July 2, 1953
(P.L.318, No.67), is amended to read:
    Section 1402.  Bond; Insurance; Salary.--[The city treasurer
shall give lawful fidelity bond to the Commonwealth, with a surety
company authorized by law to act as surety, to be approved by the
city council, in such sum as it may by ordinance direct,
conditioned for the accounting for and paying over all moneys
received by him in his capacity as city treasurer and the
safekeeping and payment over of all public moneys entrusted to his
care, and that as tax collector of city, county, institution
district, and school taxes he shall account for and pay over all
moneys received by him as taxes, penalties and interest. The city
treasurer shall in addition furnish adequate insurance protection
against any and all losses of said funds through fire, burglary,
larceny, theft, robbery or forgery. Such insurance shall be
approved by the city council in such sum as it may by ordinance
direct. The city treasurer and his surety shall be discharged from
further liability on any bond as tax collector, as soon as all tax
items contained in the duplicates delivered to him are either: (1)
collected and paid over, or (2) certified to the city council for

entry as liens in the office of the prothonotary, or as claims in
the tax claim bureau, as the case may be, or (3) returned to the
county treasurer or city treasurer for sale, or (4) in the case of
taxes, not levied upon real estate, a record of those which remain
uncollected is filed with the tax authority. The city treasurer
shall be required to give, in addition to insurance as aforesaid,
but one bond which shall include his duties as city treasurer and
collector of city, county, institution district, and school taxes,
and shall cover the full term of his office. Should any of the
taxing districts be of the opinion at any time that the bond and
insurance as aforesaid provided by the city treasurer is not
sufficient in amount as to the surety and insurance thereon, the
said taxing district may petition the court of quarter sessions
having jurisdiction in the city to have the city treasurer furnish
additional bond and insurance as aforesaid. Thereupon, the city
treasurer shall furnish such additional bond and insurance, if
any, as the said court may prescribe. The premium of the bond or
bonds and insurance shall be paid by the city or shared pro rata
by the taxing districts interested, as the case may be, according
to their respective tax interests. The treasurer shall not in any
event be required to provide bond or bonds and insurance in an
amount in excess of the taxes to be collected by him. The bond or
bonds and insurance provided by the city treasurer shall or be for
the use of the city and the taxing districts involved. He shall,
as city treasurer, receive a fixed annual salary, to be provided
by ordinance. His compensation as tax collector for the city,
county, institution district and school district shall be as
provided for in the Local Tax Collection Law.] **(a)  The city
treasurer shall give lawful fidelity bond, covering the full term
of office, for the faithful performance of official duties,
including duties as tax collector of city, county, institution
district and school taxes. In addition to being subject to such
other conditions as council may direct, the bond of the city
treasurer shall be conditioned upon the following:**
    **(1)  The accounting for and paying over of all moneys received
as city treasurer.**
    **(2)  The accounting for and paying over of all moneys received,
including taxes, penalties and interest, as tax collector of city,
county, institution district and school taxes.**
    **(3)  The safekeeping and payment over of all public moneys
entrusted to the treasurer's care.**
    **(b)  Council may require two bonds from the city treasurer:**
    **(1)  A bond for the faithful performance by the city treasurer
of official duties other than those of tax collector.**
    **(2)  A bond covering the duties of the city treasurer as
collector of city, county, institution district and school taxes.
In lieu of the bond required for the faithful performance by the
city treasurer of official duties other than those of tax
collector, council may purchase insurance, provided that the
insurance covers the same events of loss and insures the county
against the same misconduct as the bond in compliance with this
act.**
    **(c)  The city treasurer and the treasurer's surety shall be
discharged from further liability on any bond as tax collector, as
soon as each of the tax items contained in the duplicates
delivered to the city treasurer has been:**
    **(1)  collected and paid over;**

(2)   assigned to third party assignees;
(3)   certified to the city council for entry as liens in the office of the prothonotary or as claims in the tax claim bureau, as the case may be;
(4)   returned to the county treasurer or city treasurer for sale; or
(5)   in the case of taxes not levied upon real estate, a record of those which remain uncollected has been filed with the tax authority.

(d)   Council may require the city treasurer to be covered by insurance protection in accordance with section 907(c).

(e)   Should any of the taxing districts be of the opinion at any time that the bond or insurance provided by the city treasurer is not sufficient in amount, the taxing district may petition the court of common pleas having jurisdiction in the city to have the city treasurer furnish additional bond and insurance. Thereupon, the city treasurer shall furnish additional bond and insurance, if any, as the court may prescribe. The premium on the bond or on the bonds and insurance shall be shared pro rata by the taxing districts interested, as the case may be, according to their respective tax interests pursuant to the act of May 25, 1945 (P.L.1050, No.394), known as the "Local Tax Collection Law." The treasurer shall not in any event be required to provide bond or bonds and insurance in an amount in excess of the taxes to be collected by the treasurer. The bond or bonds and insurance provided by the city treasurer shall be for the use of the city and the taxing districts involved.

(f)   The city treasurer shall receive a fixed annual salary to be provided by ordinance. Compensation as tax collector for the city, county, institution district and school district shall be as provided for in the "Local Tax Collection Law."

Section 100.   The act is amended by adding sections to read:

Section 1402.1.   City Treasurer to be Tax Collector.--Except as otherwise provided by the act of December 31, 1965 (P.L.1257, No.511), known as "The Local Tax Enabling Act," the city treasurer, by virtue of the treasurer's office, shall be the collector of the city, county, school and institution district taxes assessed or levied in the city by the proper authorities therein. As tax collector, the city treasurer shall maintain and keep an office which may be the same as that of the city treasurer for the purpose of receiving taxes during regular business hours.

Section 1402.2.   Date of Delivery of Duplicate; Collection.--The council of each city and the county and county institution district authorities, now empowered or which may be hereafter empowered to levy taxes upon persons and property within the city, shall, within thirty days after the adoption of the budget or within thirty days after receipt of the assessment roll from the county, whichever is later, make out and deliver their respective duplicates of taxes assessed to the city treasurer to be collected. The proper school authorities shall make out and deliver the school duplicates of their respective taxes in such city at the time and in the manner provided by the school laws of this Commonwealth. All duplicates of taxes provided to or received by the treasurer shall at all times be open to proper inspection of the public and of the proper auditing and examining officers of the city, county or school district, as the case may be, and shall be delivered by the treasurer at the expiration of the treasurer's

term to the treasurer's successor.

**Section 1402.3. Tax Liens; Schedule of Uncollected Taxes; Liability for False Return.**--Upon the settlement of the duplicates of city, county, institution district and school taxes which by law are made a lien on real estate, the city treasurer as collector of taxes shall make out schedules of the city, county, school or institution district taxes uncollected upon the duplicates with a brief description of the properties against which the same are assessed, for the purpose of having the same entered for lien or sold according to law. The failure of the city treasurer to collect the taxes from personal property, when the same could have been collected, shall not impair the lien thereof or affect any sale made for the collection thereof. In case the city treasurer shall make any wilfully false return, the city treasurer shall be liable to any person or persons injured thereby.

Section 101. Sections 1403, 1404, 1405, 1406, 1407 and 1408 of the act are amended to read:

Section 1403. Receipt and Payment of Moneys; Daily Transmittal of Receipts; Duplicates.--The city treasurer shall demand and receive all moneys payable to the city from [whatever source, and shall issue a receipt in every case to the person making such payment, and shall pay all warrants duly countersigned by the director of accounts and finance and the city controller] **such sources as the city council may, from time to time, entrust to the city treasurer and shall issue a receipt when requested in every case to the person making such payment and shall pay all documents authorizing payment duly countersigned.** All receipts for money received on behalf of the city by the treasurer shall be numbered serially and made in duplicate at least, and all such duplicates shall daily, not later than the next succeeding business day, be transmitted by the city treasurer to the city controller.

Section 1404. Method of Keeping Accounts.--The accounts of the city treasurer shall be kept in such manner as to clearly exhibit all the items of receipts and expenditures of the city, [and] the sources from which the moneys are received and the objects for which the same are disbursed. [He] **The city treasurer** shall keep separate and distinct accounts of the receipts and expenditures of the city, **including, but not limited to,** the sinking fund, and [the water and lighting] **each** department[, respectively] **providing a utility service,** and also of every special fund [which may come into his hands].

Section 1405. Moneys Appropriated Only to be Paid Out.--No money shall be paid out of the city treasury unless the same shall have been previously **approved, duly authorized and** appropriated by council to the purpose for which it is to be drawn, which shall be explicitly mentioned in the [warrant therefor] **document authorizing payment.**

Section 1406. Depositories of City Funds **Entrusted to the Treasurer by City Council.**--The treasurer shall keep the public funds in [such] banks or financial depositories as council may direct, under [such] restrictions and safeguards as council may provide, and shall verify [his] **the treasurer's** accounts whenever required, to the satisfaction of council.

No treasurer complying with the provisions of this section and any ordinance of the city, nor [his] **the treasurer's** surety or sureties, shall be chargeable with losses of city funds caused by

the insolvency or negligence of any [such] city depositories.

Section 1407.  Delivery of City Property in [His] **Treasurer's** Possession to Successor.--The city treasurer shall, upon [the termination of his] **leaving** office, deliver to the city or to [his] **the treasurer's** duly qualified successor all moneys, accounts, property or effects in [his] **the treasurer's** possession belonging to the city.

Section 1408.  [Assistants and Employes.--] **Appointment of Deputy Treasurer and Employes; Powers; Responsibility.--(a)** The city treasurer [shall] **may** appoint [all] **the following:**

**(1)  A deputy treasurer who, in the case of the sickness, absence or inability of the city treasurer to act, shall have the same powers and shall perform the same duties as are imposed by law upon the city treasurer and such appointment shall be in compliance with the requirements of the act of May 25, 1945 (P.L.1050, No.394), known as the "Local Tax Collection Law."**

**(2)  All** the assistants and employes of [his] **the city treasurer's** office, whose number and compensation shall be fixed by council[,] and who, in all other respects, shall be considered as employes of the city.

**(b)  All persons appointed pursuant to this section shall be covered by a bond, blanket bond or insurance in accordance with section 907.**

Section 102.  Article XV heading of the act is reenacted to read:

ARTICLE XV

THE CITY ENGINEER

Section 103.  Article XV subdivision (a) heading of the act is repealed:

[(a)  General Provisions]

Section 104.  Sections 1501, 1502, 1503, 1504 and 1505 of the act are amended to read:

Section 1501.  [Election of the City Engineer; Term; Bond; Filling of Vacancies.--The council of each city shall, on the first Monday of May, one thousand nine hundred and fifty-two, and on the first Monday of May every fourth year thereafter, or as soon thereafter as practicable in each of said years, appoint a city engineer, who shall be a registered engineer in civil engineering. He shall serve for a term of four years from the said first Monday of May and until his successor is qualified. He shall receive a fixed annual salary to be provided by ordinance. He shall give lawful bond to the city, with a surety or other company authorized by law to act as surety, to be approved by council, in such sum as it shall by ordinance direct, conditioned for the faithful performance of his official duties. Vacancies in said office shall be filled by council for the unexpired term.] **Appointment of City Engineer.--Council shall provide for the manner of appointment and compensation of the city engineer, who shall be a registered professional engineer in this Commonwealth and shall serve at the pleasure of council. Nothing contained herein shall prohibit council from designating an engineering firm of registered professional engineers from performing the duties and functions of the city engineer.**

Section 1502.  Control of Engineering Matters.--The city engineer shall have the [superintendence, direction and control of the engineering matters of the city, and no department of the city shall employ or retain any additional engineer, except with the

previous assent of council. Assistants and employes in the office of the city engineer shall be appointed in accordance with the civil service provisions of this act. The provisions of this article shall not apply to any board of commissioners of water-works of any city wherein the title to the water-works therein located is in the name of the commissioners of water-works.] **supervision, direction and control of the engineering matters of the city, and no department of the city shall employ or retain any additional engineer, except with the previous assent of council.**

Section 1503. Duties[; Preparation of Plans.--The city engineer shall perform such duties as the council shall prescribe with reference to the construction, reconstruction, maintenance and repair of all streets, pavements, sewers, bridges, culverts and other engineering work. He shall prepare plans, specifications, and estimates for all such work undertaken by such city, and shall, whenever required, furnish council, the committees thereof, the mayor, public boards, or heads of departments, with reports, information or estimates on any city engineering work, or on questions submitted by any of them in their official capacity.].--**As authorized by council, engineering work undertaken by the city shall be performed or supervised by the city engineer or by another registered professional engineer employed by the city for a particular purpose. The duties of the city engineer may include, but need not be limited to, the following:**

**(1)  Preparing plans, specifications and estimates and undertaking other engineering work related to constructing, reconstructing, maintaining and repairing streets, pavements, sewers, bridges, culverts and other municipal improvements.**

**(2)  Making reports, giving estimates, supplying information and responding to questions concerning city engineering work to city officials and employes, provided that council may regulate the manner, number and method of making these requests.**

**(3)  Conducting, supervising or directing surveys relating to city property and improvements authorized by law or as directed by council.**

**(4)  Preparing a topographical survey of the city or a general plan of city streets, marking the lines of streets, both those already opened and those intended to be opened for public use, as council may deem necessary.**

**(5)  Surveying, making a draft or plan of and laying out new or proposed streets, as council may deem necessary.**

**(6)  Reporting a grade for any proposed or new streets, as council may deem necessary.**

**(7)  Making reports, from time to time, as deemed expedient by the city engineer or as council shall direct, of the surveys and plans of city streets in convenient sections without awaiting the completion of the entire survey.**

**(8)  Keeping and maintaining books and records, and providing for certified copies of the same, as may be directed or authorized by council or required by law.**

Section 1504. [Certificate of Commencement and of Completion of Municipal Improvements.--The city engineer shall immediately after the completion of any municipal improvement, the cost and expense of which, in whole or in part, is to be paid by the abutting property, make certificate in which he shall state the

day or time on which the particular improvement was completed, and shall file the same with the city clerk, who shall enter the said day or time of completion in a book to be kept by him for said purposes; and the said day or time mentioned in said certificate shall be conclusive on all parties as to the time the said work was completed. The time of completion of the work, referred to in this section and in other parts of this act, shall be taken to mean the time of the completion of the whole contract for the improvement. He shall also furnish to the city clerk a certificate showing the time on which any such particular improvement was commenced, and such certificate shall be conclusive evidence of the time when the said improvement was begun. An entry of such date shall be made by said clerk in the books aforesaid.]

**Certifying Commencement and Completion of Municipal Improvements.--Within a reasonable time after the completion of any municipal improvement, the cost and expense of which, in whole or in part, is to be paid by the abutting property owner or owners, the city engineer, or employes designated by the city engineer, shall certify the day or time on which the particular improvement was commenced and the day or time on which the particular improvement was completed, shall file the same with the city clerk who shall maintain a centralized book or listing of certificates of commencement and completion, and shall provide notice of the filing to the city solicitor. The day or time of completion of the work, referred to in this section and in other parts of this act, shall mean the time of the completion of the whole contract for the improvement. Information filed with the clerk certifying the day or time of the commencement and completion of the work shall be conclusive evidence of the day or time when the improvement was begun and completed.**

Section 1505. [Surveys.--The city engineer shall have the charge and direction of all surveys and regulations authorized by any act of Assembly, or ordinance of such city, and shall perform such other duties as council shall direct.] **Surveys; Entering Upon the Lands of Others.--For the purposes of carrying out authorized surveys, laying out streets or of other engineering work of the city, the city engineer or other persons engaged in city engineering work shall have full power and authority to enter upon the lands and premises of any person or persons within the city.**

Section 105. Article XV subdivision (b) heading, sections 1515, 1516, 1517, 1518, 1519, 1520 and 1521, subdivision (c) heading and sections 1530, 1531, 1532, 1533, 1534, 1535, 1536, 1537 and 1538 are repealed:

[(b) Real Estate Registry

Section 1515. Council to Provide for Registry of Real Estate.--For the purpose of procuring accurate information in reference to the ownership of all real estate, the council of each city shall provide, by ordinance, for a registry thereof in accordance with this subdivision.

Section 1516. Preparation of Books, Plans and Maps.--The city engineer of any city in which such registry shall be established shall cause to be made all such necessary books, maps and plans as will show the situation and dimensions of each property therein, which books, maps or plans shall be so prepared as to show the city number, and name of the owner or owners thereof, with blank spaces for the owner of each lot, with provision for the names of future owners, and dates of future transfer of title. For such

purpose, the city engineer shall have free access, without charge, to any of the public records wherein the necessary information may be obtainable therefor. He may also cause search to be made in any other place for any muniments or evidence of title, not reported to him as hereinafter provided, and requisite for the completion of said books, maps or plans.

Section 1517. Preservation of Records.--The said books, maps and plans shall be carefully preserved in the office of the engineer, and shall be so kept, by additions from time to time, or otherwise, as to show the ownership of every lot or piece of real estate, or subdivision thereof, within the city limits, with the successive transmissions of title, from the date of the commencement of such plans; but nothing herein or in this article shall invalidate any municipal or tax claim by reason of the fact that the same is not assessed or levied against the registered owner.

Section 1518. Certified Copies of Entries Admissible as Evidence.--Certified copies, signed by the city engineer, of any of the entries in said books, or upon said maps or plans, shall be received in evidence in the same manner as the books, maps and plans themselves might be admissible for such purposes; and may be also furnished to any person desiring the same, for such fee or compensation for the use of the city as may be fixed by ordinance.

Section 1519. Duties Imposed on Owners of Real Estate when Registry Established; Penalty.--All owners of unregistered real estate within the city limits, within thirty days from the date of the approval of the ordinance establishing such registry, and every subsequent purchaser, devisee, or person acquiring title by partition or otherwise, to any real estate therein, within thirty days after acquiring such title, shall furnish to the said engineer, at his office, descriptions of their respective properties, upon blanks to be furnished by the city, and, at the same time, present their conveyance to be stamped by said engineer, without charge, as evidence of the registration thereof. Any person or persons neglecting or refusing to comply with the provisions of this section, for a period of thirty days after public notice of the requirements thereof, shall be liable to a penalty of five dollars, to be recovered, with costs of suit, in the name and for the use of the city, as penalties for the violation of city ordinances are recoverable: Provided, however, That such registration may within said thirty day period be also effected by the recorder of deeds of the county, in accordance with existing law.

Section 1520. Registry of Properties Sold at Judicial Sales.--The sheriffs of the respective counties in which such cities are situated shall present for registry the deeds of all properties within the city limits sold by them at judicial sales, whether by execution, in partition, or otherwise.

Section 1521. Filing of Municipal Claims.--Each city's registry may be used as the lawful and proper source of property owners' or reputed owners' names for the purpose of filing municipal claims as liens or of reviving municipal liens.

(c)   Topographical Survey

Section 1530. Council May Authorize Topographical Survey.--Any city may, by ordinance, cause a topographical survey thereof, to be made by its city engineer, or by such other civil engineer and assistants as they may employ for that purpose.

Section 1531.  Plan of Streets and Highways; Surveys; Grades.--The city engineer, upon being duly authorized, shall procure and keep in his office such necessary plot or other books as shall be necessary for the purpose of entering or recording thereon all the streets and highways of the city, already opened or to be hereafter opened. He shall survey and mark the lines of all the streets and highways of the city, already opened or intended to be opened for public use, and survey and lay out new streets and highways, as council may deem necessary, for a regular and convenient city plan, and, if specially directed, he shall report a grade for any proposed new streets. For the said purposes, the city engineer and his assistants or any other person engaged in such engineering work for the city shall have full power and authority to enter upon the lands and premises of any person or persons within the said city.

Section 1532.  Return of Draft of Completed Survey to Council; Inspection.--When the survey shall be completed, the said engineer shall make or cause to be made a draft or plan thereof, with every provision and explanation necessary for a full understanding of the same, distinctly designated where new streets and highways are thereafter to be opened, and shall return the same to the council. It shall remain in the office of the city clerk, and open to inspection by those interested, until finally approved as hereinafter provided.

Section 1533.  Notice of Return; Objections; Alterations; Approval; Recording.--Council shall give at least thirty days' previous notice by publication once in at least two newspapers of general circulation, if there be that many, as required by section one hundred and nine of this act, and by posting at least ten handbills upon lands or territory contained in the map or plan returned for approval, that on a certain day or days, to be fixed by the said council, the said council will hear any objection that may be made to said draft or plans by any freeholder or citizen of said city, or interested person. The council at the time appointed, or at any subsequent time within three months, shall determine whether any and what alterations shall be made in the said plan or draft. When the same is finally approved, whether as returned or as altered and changed, said council may direct that the same be entered and recorded in the plot-book of street plans, in the office of the city engineer.

Section 1534.  Notation of Grades on Plans.--In case the city engineer is directed to report grades for said streets or highways, the same shall be noted on said draft or plan, and be returned with his surveys; and said grades shall be subject to alterations and changes by council, in the manner aforesaid; and when approved by the said council shall become part of the plans, and be entered and recorded as aforesaid.

Section 1535.  Effect of Recording.--Upon the recording of such plan or draft in the street plan book, and the passage of an ordinance approving said street drafts or plans and grades, or of either, as the case may be, therein designating the book and page, or pages, at or in which the said plan or plans are recorded, thereafter all the streets and highways, as designated upon said approved plan and recorded as aforesaid, shall be adjudged and taken to be laid out and located streets and highways.

Section 1536.  Deviation from Established Plans; Liability of City.--In case the council shall thereafter change or alter, or

should they by themselves or their officers deviate from the
regulations of the streets or highways, so as aforesaid
established, and damages thereby accrue to the property of any
person or persons in consequence thereof, the said city shall be
liable for the payment of such damages.

Section 1537.  Sectional Surveys.--Sectional surveys or drafts
may be returned to the council by said engineer at any time, and
be confirmed as aforesaid, and with like force and effect.

Section 1538.  Reports of Partial Surveys; Confirmation.--The
said engineer may, from time to time as he shall deem expedient
and the said council shall direct, make report of the surveys,
plans and regulations by him made, in convenient sections, without
awaiting the completion of the entire survey, and shall make
duplicate drafts and plans of said section in the manner
hereinbefore prescribed. The same proceedings shall be had for the
final confirmation of such partial or sectional drafts and plans
as is herein directed in relation to the confirmation of the
entire survey, and with like effect and force.]

Section 106.  Article XVI heading of the act is reenacted to
read:

ARTICLE XVI
THE CITY SOLICITOR

Section 107.  Sections 1601, 1602, 1603 and 1604 of the act are
amended to read:

Section 1601.  Appointment of City Solicitor[; Term;
Compensation; Bond; Filling of Vacancies.--The council of each
city shall, on the first Monday of May, one thousand nine hundred
and fifty-two, and on the first Monday of May every fourth year
thereafter, or as soon thereafter as practicable in each of said
years, appoint a city solicitor, who shall be learned in the law
and admitted to practice in the Supreme Court of the Commonwealth,
and shall maintain an office in the city. He shall serve for a
term of four years from the said first Monday of May and until his
successor is qualified. He shall receive a fixed annual salary to
be provided by ordinance. He shall give lawful bond to the city,
with a surety or other company authorized by law to act as surety,
to be approved by council, in such sum as they shall by ordinance
direct, conditioned for the faithful performance of his official
duties. Vacancies in said office shall be filled by council for
the unexpired term.].**--Council shall provide for the manner of
appointment and compensation of the city solicitor, which may be a
law firm.**

Section 1602.  Direction of [Law] **Legal** Matters.--The city
solicitor shall have the [superintendence,] direction[,] and
control of the [law] **legal** matters of the city. No department of
the city shall employ or retain any additional counsel in any
matter or cause, except with the [previous] **prior** assent of
council.

Section 1603.  Duties.--The city solicitor shall [prepare]
**oversee the preparation of** all bonds, obligations, contracts,
leases, conveyances[,] and assurances to which the city or any
department thereof may be party, as may be directed by resolution
or ordinance, and shall [commence and prosecute] **oversee the
commencement and prosecution of** all and every suit or suits,
action or actions, brought by the city, **and the filing of
municipal claims and liens**, for or on account of any of the
estates, rights, trusts, privileges, claims[,] or demands[,] of

the same, as well as [defend] **oversee the defense of** all actions
or suits against the [said] city or any officer thereof, wherein
or whereby any of the estates, rights, privileges, trusts,
ordinances, or acts of the city or any department thereof, may be
brought in question before any court. [He] **The city solicitor**
shall have like duties before any administrative agency or other
judicial or quasi-judicial body. [He] **The city solicitor** shall do
all and every professional act incident to the office which [he]
**the city solicitor** may be lawfully authorized and required to do
by the mayor, or by any ordinance or resolution of the council,
**and shall perform such other duties as council may direct.**

Section 1604.  Written Opinions to be Furnished.--[The city
solicitor shall, whenever required, furnish the council, the
mayor, or any elected city official, with his opinion, in writing,
upon any question of law which may be submitted by any of them in
their official capacities.] **(a)  Subject to regulation by council
in accordance with subsection (b), the city solicitor shall
furnish a written opinion on questions of law submitted, in their
official capacities, by any of the following:**

  **(1)  The council.**
  **(2)  The mayor.**
  **(3)  Any other elected city official.**
  **(4)  Any appointed city official designated by council as
authorized to request a written legal opinion.**
  **(b)  The city council may provide for the regulation of the
manner in which questions are presented to the city solicitor by
any elected or appointed city official and may limit the questions
submitted in such manner as the city council may direct.**

Section 108.  Sections 1605 and 1606 of the act are repealed:
[Section 1605.  City Lien Docket.--The city solicitor shall
keep in his office a city lien docket, which shall be open to
public inspection, and in which he shall cause to be entered all
claims for curbing, paving, or repaving sidewalks, assessments of
damages, contributions for opening streets, or parts thereof, for
grading, paving, and macadamizing the same, for water and lighting
frontage tax and water and lighting rates, sewerage, city taxes,
and other matters that may be the subject of claim on the part of
the city, which have or shall be returned to the solicitor as
remaining due and unpaid after the period prescribed by law or
ordinance for the payment of such claims. Nothing contained herein
shall be deemed to alter or replace the administration and effect
of the Real Estate Tax Sale Law in any city wherein said law is in
operation.

Section 1606.  Department Heads to Furnish Statements of
Claim.--It shall be the duty of the head of each department,
wherein any such claim shall originate, to furnish to the city
solicitor, within the period prescribed by law or ordinance, a
statement of all claims for curbing, paving, et cetera, which
remain due or unpaid, a certified copy of which the said heads of
departments shall at the same time furnish to the director of
accounts and finance.]

Section 109.  Section 1607 of the act is amended to read:
Section 1607.  Satisfaction of Liens Due City.--Upon the
payment of any lien or other debt of record due the city, to any
**city employe or city official or other** person authorized to
receive the [same] **payment**, that person shall [forthwith forward
to the city solicitor a satisfaction piece therein], **as soon as**

**practicable, notify the city solicitor**; and it shall be the duty of the city solicitor or [his assistant forthwith] **the solicitor's designee, as soon as practicable,** to cause satisfaction to be entered upon the proper record [thereof] **of the lien or debt of record.**

Section 110.  Section 1608 of the act is repealed:

[Section 1608.  Return and Payment of Money and Fees Received.--The city solicitor shall, at least once in every month, make a return to the director of accounts and finance, under oath or affirmation, of each item of moneys received by or through him, or his assistants, by virtue of his office, or on account of any matter connected therewith. Immediately upon making such return, he shall pay over the amount in his hands to the city treasurer. He shall, in like manner, pay into the city treasury all fees received by him in his official capacity, but this provision shall not be taken to include the judgment fee or commission allowed him in his capacity of attorney.]

Section 111.  Sections 1609 and 1610 of the act are amended to read:

Section 1609.  Assistant Solicitor.--[The council of each city may] **Council may, at its discretion,** appoint one or more assistant city solicitors[, whose term of office shall be concurrent with that of the city solicitor, and whose] **to assist the solicitor in the performance of all duties and shall provide for the** compensation [shall be fixed by resolution, and who shall assist the solicitor in the performance of all duties prescribed for him] **of assistant solicitors by resolution.**

Section 1610.  Special Counsel.--Council may, at its discretion, retain special counsel for particular proceedings or matters of the city and [fix his] **shall provide for the** compensation **of special counsel** by resolution.

Section 112.  Article XVII heading of the act is amended to read:

ARTICLE XVII
THE CITY CONTROLLER **AND INDEPENDENT AUDITOR**

Section 113.  Article XVII of the act is amended by adding a subdivision heading to read:

(a)  City Controller

Section 114.  Section 1701 of the act, amended July 27, 1973 (P.L.234, No.62), is amended to read:

Section 1701.  Qualifications; **Bond; Compensation.--(a)**  The city controller shall be [a competent] **an** accountant, at least twenty-one years of age, shall have been a resident of the city for at least one year [next before his election,] **before the person's election** and shall reside in the city throughout [his] **the person's** term of office. **Prior to being sworn into office and as a condition to qualifying for office, the elected city controller shall present a signed affidavit to the city clerk that states the person resides in the city from which elected and has resided in the city continuously for at least one year immediately before the person's election.**

**(b)**  **The city controller shall give bond in accordance with section 907 for the faithful performance of official duties as the city controller. The bond shall cover the full term of office and shall be conditioned upon the following:**

**(1)**  **The accounting for and paying over of all moneys received as city controller.**

**(2)  The safekeeping and payment over of all public moneys entrusted to the controller's care.**

**(c)  The city controller shall receive a fixed annual salary, to be set by ordinance, in an amount not less than the compensation paid to members of council.**

Section 115.  Sections 1702 and 1703 of the act are repealed:

[Section 1702.  Bond.--He shall give lawful bond to the city, with a surety or other company authorized by law to act as surety, to be approved by the council, in such sum as it may by ordinance direct, conditioned for the honest and faithful discharge of his official duties.

Section 1703.  Compensation.--He shall receive a fixed annual salary, to be provided by ordinance, which shall not be less than the compensation paid to members of council.]

Section 116.  Section 1704 of the act, amended May 6, 1957 (P.L.100, No.42) and December 14, 1967 (P.L.828, No.355), is amended to read:

Section 1704.  [Examination and Audit of Accounts.--(a)] **Powers and Duties.--(a)  The city controller shall countersign all documents authorizing the payment of moneys out of the city treasury when satisfied of the legality of the payment.**

**(b)  The city controller shall have the power to administer oaths or affirmations in relation to any matter touching the authentication of any account, claim or demand of or against the city, but shall not receive any fee therefor.**

**(c)**  The city controller shall **have the power to** examine[, audit and settle all] **the following accounts:**

**(1)  All** accounts whatsoever in which the city is concerned, either as debtor or creditor[, and shall also, annually or as often as he desires or is directed to do so by council, examine and audit the].

**(2)  The** accounts of all **city** bureaus, officers, and departments which collect, receive[,] and disburse public moneys[,] or who are charged with the management, control[,] or custody thereof[, and in every case he shall make report of such examination, audit and settlement to the council. He shall likewise audit and report upon the].

**(3)  The** accounts of [any such] **a city** officer upon the death, resignation, removal or expiration of the term of the [said officers] **officer.** [He shall likewise audit and report upon the]

**(4)  The** accounts of any library to which the city makes appropriations, [those of] any institution owned by the city, and [those of] **Pennsylvania** National Guard units to which the city makes appropriations.

[(b)  He shall likewise audit, or with the consent of council cause to be made by an accountant an annual audit of, all the accounts of any municipal officer in any department of the city government who may be charged with the duty, or who may perform the services, of receiving and disbursing the funds of any association, society, or organization of municipal employes or persons, directly or indirectly connected with the municipal government, for the benefit, relief, or pensioning of firemen, policemen, or other municipal employes or persons as aforesaid.

(c)  All such audits shall be made within as short a time as possible after the close of the fiscal year, and be annually reported to council at its first meeting in March, as other reports of the controller are made, and shall be filed with the

court of quarter sessions within ninety days of the close of the
fiscal year.

(d)   Council may provide for an audit of any or all accounts by
an independent certified public accountant.

(e)   Brief abstracts or summaries of the reports of such
accounts and financial statements or such other reports thereof as
council may require shall be published at least once a week for
two weeks in one newspaper, in accordance with the provisions of
section one hundred and nine of this act. The expense and cost of
such publication shall be paid out of the funds of the various
associations, organizations, or societies, as their other expenses
are paid.]

**(f)   In the same manner in which subpoenas may be issued and
enforced, in accordance with section 917, the city controller
shall have power to issue and pursue enforcement of subpoenas to
obtain the attendance both of officers whose accounts the
controller is authorized to examine and of any person or persons
whom it may be necessary to examine as witnesses.**

**(g)   The city controller may present council with annual or
periodic statements concerning the results of the controller's
examination of accounts, which shall be public records pursuant to
the act of February 14, 2008 (P.L.6, No.3), known as the "Right-
to-Know Law."**

Section 117.   The act is amended by adding sections to read:

**Section 1704.1.   Deputy Controller; Employes.--The controller
may appoint a deputy controller and may select individuals to
serve as assistants and employes in the controller's office. The
number of the assistants and employes permitted, if any, shall be
fixed by council. Assistants and employes in the controller's
office shall, in all other respects, be considered employes of the
city. A deputy controller, assistants and employes appointed under
this section shall be bonded, and their compensation shall be
fixed by council.**

**Section 1704.2.   Temporary Deputy Controller.--In case of the
sickness, absence or inability of a city controller, and when no
deputy shall have been appointed by the controller, the council
may appoint a temporary deputy controller to serve during the
sickness, absence or inability of the controller, or until the
controller shall appoint a deputy. A temporary deputy controller
shall be bonded and receive the compensation fixed by council.**

**Section 1704.3.   Continuation of Office.--The appointment of an
independent auditor in accordance with subdivision (b) shall not
abolish the office of controller. The elected controller shall
continue to exercise those powers retained for the controller in
this subdivision.**

Section 118.   Article XVII of the act is amended by adding a
subdivision heading to read:

**(b)   Independent Auditor**

Section 119.   The act is amended by adding sections to read:

**Section 1704.11.   Appointment of Independent Auditor.--The
council shall provide, by resolution, for the appointment of an
independent auditor. The independent auditor may be a certified
public accountant or a firm of certified public accountants.**

**Section 1704.12.   Powers and Duties of Independent
Auditor.--(a)   The independent auditor shall conduct an annual
audit of all accounts of city officers, departments and offices
which collect, receive and disburse public moneys and other funds**

or are charged with the management, control or custody thereof on which the independent auditor is required to report pursuant to this subdivision. The annual audit, as directed by council, shall also include any accounts subject to examination by the controller pursuant to subdivision (a).

(b)  The independent auditor shall have and possess the powers expressly provided in this subdivision and, in relation to accounts which the independent auditor is authorized to audit, shall have the same power as the city controller to issue subpoenas to obtain the attendance of officers and witnesses.

Section 120.  Section 1705 of the act, amended March 2, 1970 (P.L.71, No.31), is amended to read:

Section 1705.  Annual Report to Council; Filing Copy in Court and Appeal [Therefrom].--**(a)**  The [city controller] **independent auditor appointed in accordance with this subdivision** shall make **a** report to council, at [its] **council's** first meeting in March in each year, of the audits [which he shall have] made of the accounts of the officers having charge, custody, control or disbursement of such public moneys and other funds, showing the balance in their hands respectively, and, within ninety days of the close of the fiscal year, the [city controller] **independent auditor** shall file a copy of the [said] annual report to council with the clerk of the court or the prothonotary, as may be provided by local rules of court.

**(b)  The independent auditor shall also prepare, annually, an intelligible summary of the report or reports made pursuant to this section, showing the fiscal condition of the affairs of the city. Council may require advisory interim reports from the independent auditor. Reports prepared under this section and all summaries thereof shall be public pursuant to the act of February 14, 2008 (P.L.6, No.3), known as the "Right-to-Know Law."**

**(c)**  It shall be lawful for the city or any taxpayer thereof on its behalf or any officer whose account is settled or audited to appeal from the settlement or audit to the court of common pleas of the county within forty-five days after the [said] annual report to council has been filed. If the appellant is a taxpayer or any officer charged as aforesaid, he shall file a bond, with one or more sufficient sureties, conditioned to pay all costs thereafter accruing in case a decision shall not be obtained more favorable to the party on whose behalf the appeal shall be taken than that contained in the [said] report. [The city controller shall also prepare an intelligible summary of said reports, showing the fiscal condition of the affairs of the city, and post one copy of said summary in a conspicuous place in the city hall. Council may require advisory interim reports from the city controller.]

Section 121.  Sections 1706, 1707, 1708 and 1709 of the act are repealed:

[Section 1706.  Power to Administer Oaths; Countersigning of Warrants.--The city controller shall have the power to administer oaths or affirmations in relation to any matter touching the authentication of any account, claim, or demand of or against the city, but shall not receive any fee therefor, and shall countersign all warrants for the payment of moneys out of the city treasury when satisfied of the legality of such payment.

Section 1707.  Power to Subpoena City Officers.--The city controller shall have power to issue subpoenas to obtain the

attendance of officers whose accounts he is authorized to adjust, audit, and settle, and also to subpoena any person or persons whom it may be necessary to examine as witnesses, and in case any city officer or any witness refuses to appear upon being subpoenaed, he shall report such refusal to council, and the council is hereby empowered to enact ordinances to compel the attendance of city officers and witnesses before the said city controller and to impose penalties in case of refusal.

Section 1708.  Appointment of Deputy Controller; Powers; Responsibility.--The city controller may appoint a deputy controller, who in case of the sickness, absence, or inability of such controller to act, shall have the same powers and shall perform the same duties as are imposed by law upon the city controller. In the case of such appointment, the said controller shall be responsible and liable for the acts of such deputy.

Section 1709.  Appointment of Temporary Deputy by Council; Bond; Compensation.--In case of the sickness, absence, or inability of a city controller, and when no deputy shall have been appointed by him, the council of such city may appoint a deputy controller to serve during the sickness, absence, or inability of such controller, or until such controller shall appoint a deputy, as aforesaid, who shall furnish such bond, and receive such compensation, as shall be fixed by council.]

Section 122.  Article XVIII heading of the act is reenacted to read:

ARTICLE XVIII
ACCOUNTS AND FINANCES

Section 123.  Section 1801 of the act, amended April 27, 1965 (P.L.21, No.18), is amended to read:

Section 1801.  Fiscal Year.--The fiscal year of each city shall begin on the first day of January **and end on the last day of December.**

Section 124.  Sections 1802, 1803 and 1804 of the act are amended to read:

Section 1802.  [Director of Accounts and Finance] **Chief Fiscal Officer;** Bond; **Administering Oaths.**--[The director of accounts and finance shall be the head of the Department of Accounts and Finance. He shall furnish bond in such amount as shall be fixed by ordinance. He] **(a)  Council shall provide for a chief fiscal officer for the city. In filling the position of chief fiscal officer, council may appoint, but shall not be limited to appointing, the director of the department of accounts and finance, if one is appointed pursuant to Article XI or the city administrator, if one is appointed pursuant to Article XII-A.**

**(b)  Council shall require that the chief fiscal officer furnish a bond subject to section 907.**

**(c)  The chief fiscal officer** shall have authority to administer oaths and affirmations in relation to any matter touching the authentication of every account with or claim or demand of or against the city, but shall not be entitled to receive any fee therefor.

Section 1803.  Deputy.--[The director of accounts and finance may appoint a deputy, subject to the approval of council, which shall fix the salary of such deputy.] **Council may authorize the chief fiscal officer to appoint, subject to the approval of council, a deputy chief fiscal officer whose compensation shall be fixed by council.** The deputy shall have power to administer oaths

and affirmations in all matters relating to the affairs of [said] **the** office **and shall furnish a bond subject to section 907. If no deputy has been appointed, council may appoint a temporary deputy chief fiscal officer to serve during the chief fiscal officer's illness, absence or inability to serve. The temporary deputy chief fiscal officer may be required to furnish bond as required by council.** [The director of accounts and finance shall in all cases be responsible and liable for the actions and conduct of the said deputy.]

Section 1804.  Regulations Concerning Appropriation.--**(a)**  No debt shall be created by any department of the city[,] except in [pursuance of previous authority of law, ordinance, or resolution] **accordance with law.**

**(b)**  No money shall be paid out of the city treasury except upon appropriation made according to law[,] and [on warrant] **pursuant to a document authorizing payment** drawn by the proper officer **or officers** in pursuance thereof.

**(c)**  No work shall be hired to be done, no materials purchased, no contracts made[,] and no order issued for the payment of any moneys [in any amount which will cause the sums appropriated to specific purposes to be exceeded], **if doing so would result in the total expenditure of money for a specific purpose to exceed the amount appropriated for that purpose.**

**(d)**  In every case in which an appropriation shall be [exhausted] **entirely expended,** and the object of [which] **the appropriation** is not completed, the [director of accounts and finance] **chief fiscal officer** shall [immediately] **on or before the next regularly scheduled council meeting** report the fact to the city council and accompany [such] **the** report with a statement of the moneys which have been drawn on [such] **the** appropriation[,] and the particular purpose for which they were drawn.

**(e)**  The council may at any time by ordinance make supplemental appropriations for any lawful purpose from any funds on hand or estimated to be received within the fiscal year and not appropriated to any other purpose, including the proceeds of any borrowing now or hereafter authorized by law.

**(f)**  The council shall have the power to authorize the transfer of any unexpended balance, of any appropriation item, or any portion thereof, but [such action shall be taken only on the recommendation of a director of one of the departments] **council shall first seek comments from the director of the department negatively affected by the proposed transfer pursuant to this section.**

[When a transfer of over five per cent of an appropriation item is made within a department or when a transfer of over five per cent of the total appropriation is made from one department to another department, an affirmative vote of four members of the council shall be required.]

**(g)  Consistent with this section, council shall determine the manner and method of all intradepartmental and interdepartmental financial transfers.**

Section 125.  Section 1804.1 of the act, amended July 10, 1980 (P.L.478, No.103) and December 13, 1982 (P.L.1149, No.263), is amended to read:

Section 1804.1.  Investment of City Funds.--(a)  The council shall have power to **provide the following:**

(1)  [make] **The** investment of city sinking funds as authorized

by [the act of July 12, 1972 (P.L.781, No.185), known as the
"Local Government Unit Debt Act";] **53 Pa.C.S. Pt. VII Subpt. B
(relating to indebtedness and borrowing).**
    (2) [make] **The** investment of moneys in the general fund and in
special funds of the city other than the sinking funds as
authorized by this article[; and].
    (3) [liquidate] **The liquidation of** any [such] investment, in
whole or in part, by disposing of securities or withdrawing funds
on deposit. Any action taken to make or to liquidate any
investment shall be made by the officers designated by action of
the council.
    (b) The council shall invest city funds consistent with sound
business practice.
    (c) The council shall provide for an investment program
subject to restrictions contained in this act and in any other
applicable statute and any rules and regulations adopted by the
council.
    (d) Authorized types of investments for city funds shall be
**any of the following:**
    (1) United States Treasury bills.
    (2) Short-term obligations of the United States Government or
its agencies or instrumentalities.
    (3) Deposits in savings accounts or time deposits, other than
certificates of deposit, or share accounts of institutions insured
by the Federal Deposit Insurance Corporation [or the Federal
Savings and Loan Insurance Corporation] or the National Credit
Union Share Insurance Fund [or the Pennsylvania Deposit Insurance
Corporation or the Pennsylvania Savings Association Insurance
Corporation] to the extent that such accounts are so insured[,]
and, for any amounts above the insured maximum, provided that
approved collateral as provided by law therefore shall be pledged
by the depository.
    (4) Obligations of the United States of America or any of its
agencies or instrumentalities backed by the full faith and credit
of the United States of America, the Commonwealth of Pennsylvania
or any of its agencies or instrumentalities backed by the full
faith and credit of the Commonwealth, or of any political
subdivision of the Commonwealth of Pennsylvania or any of its
agencies or instrumentalities backed by the full faith and credit
of the political subdivision.
    (5) Shares of an investment company registered under the
Investment Company Act of 1940 **(54 Stat. 789, 15 U.S.C. § 80a-1 et
seq.),** whose shares are registered under the Securities Act of
1933 **(48 Stat. 74, 15 U.S.C. § 77a et seq.),** provided that the
only investments of that company are in the authorized investments
for city funds listed in clauses (1) through (4).
    (6) Certificates of deposit purchased from institutions
insured by the Federal Deposit Insurance Corporation [or the
Federal Savings and Loan Insurance Corporation] or the National
Credit Union Share Insurance Fund [or the Pennsylvania Deposit
Insurance Corporation or the Pennsylvania Savings Association
Insurance Corporation] to the extent that such accounts are so
insured. However, for any amounts above the insured maximum, such
certificates of deposit shall be collateralized by a pledge or
assignment of assets of the institution, and such collateral may
include loans (including interest in pools of loans) secured by
first mortgage liens on real property. Certificates of deposit

purchased from commercial banks shall be limited to an amount equal to twenty per centum of a bank's total capital and surplus. Certificates of deposit purchased from savings and loan associations or savings banks shall be limited to an amount equal to twenty per centum of an institution's assets minus liabilities.

(7)  Any investment authorized by 20 Pa.C.S. Ch. 73 (relating to [fiduciaries] **municipalities** investments) shall be an authorized investment for any pension or retirement fund.

**(8)  Repurchase agreements which are fully collateralized by obligations of the United States Government or its agencies or instrumentalities, which are free from other liens and backed by the full faith and credit of the United States or are rated in the highest category by a nationally recognized statistical rating organization.**

**(9)  Deposits in investment pools established by the State Treasurer or established by local governments pursuant to 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation) and related statutes, provided that the investment pools are rated in the highest category by a nationally recognized statistical rating organization.**

(e)  In making investments of city funds, the council shall have authority **to do any of the following:**

(1)  [To permit] **Permit** assets pledged as collateral under subsection (d)(3), to be pooled in accordance with the act of August 6, 1971 (P.L.281, No.72), relating to pledges of assets to secure deposits of public funds.

(2)  [To combine] **Combine** moneys from more than one fund under city control for the purchase of a single investment, provided that each of the funds combined for the purpose shall be accounted for separately in all respects and that the earnings from the investment are separately and individually computed and recorded, and credited to the accounts from which the investment was purchased.

(3)  [To join] **Join** with one or more other political subdivisions and municipal authorities in accordance with [the act of July 12, 1972 (P.L.762, No.180), referred to as the Intergovernmental Cooperation Law] **53 Pa.C.S. Ch. 23, Subch. A,** in the purchase of a single investment, provided that the requirements of clause (2) on separate accounting of individual funds and separate computation, recording and crediting of the earnings therefrom are adhered to.

Section 126.  Sections 1805, 1806, 1807 and 1808 of the act are amended to read:

Section 1805.  Countersigning [Warrants;] **Documents; Money Available;** Evidence Required.--**(a)**  The [director of the Department of Accounts and Finance] **chief fiscal officer** shall countersign all [warrants upon the city treasury, the form whereof shall be prescribed by council, and] **documents, in the form approved by council, authorizing payment from the city treasury.**

**(b)  In countersigning documents authorizing payment from the city treasury, the chief fiscal officer** shall not [suffer] **permit** any appropriation made by the council to be overdrawn[. No warrant shall be countersigned] **and shall not countersign** unless there is money in the treasury to pay the same.

**(c)**  Except in the case of [warrants for the payment of moneys] **documents authorizing payment** to volunteer fire companies, whenever a [warrant on the treasurer] **document authorizing payment**

**from the city treasury** shall be presented to the [director of accounts and finance] **chief fiscal officer** to be countersigned, the person presenting the same shall be[, by the said director,] required to produce evidence **of each of the following:**

(1) [That the] **The** amount expressed in the [warrant] **document authorizing payment** is due [to] the person in whose favor it is drawn.

(2) [That the] **The** supplies, services or other consideration for payment of which the [warrant] **document authorizing payment** is drawn have been furnished, performed or given according to law and the terms of the contract, if any.

Section 1806. Record of Assets, Property, Trusts, Debts Due, Receipts and Expenditures.--The [director of accounts and finance] **chief fiscal officer or other official or employe of the city designated by council** shall have charge and keep a record of accounts, under appropriate titles, to show separately and distinctly all of the assets and property whatsoever vested in the city, and all trusts in care of the same, debts owing by the city, and all of the receipts and expenditures of the various departments.

Section 1807. Supervision of Accounts of Departments.--The [director of accounts and finance] **chief fiscal officer** shall have the supervision and control of the accounts of all of the departments, and may require from them at any time a statement in writing of all money or property of the city in their hands.

Section 1808. Suggestions [by Director] for Improvement of City Finances.--The [director of accounts and finance] **chief fiscal officer** may, from time to time, and shall, when the council shall direct, suggest plans to the council for the management and improvement of the city finances.

Section 127. Sections 1809 and 1810 of the act, amended June 22, 2000 (P.L.321, No.33), are amended to read:

Section 1809. Annual Budget; Presentation to Council; Notice; Revision; Adoption.--[The director of accounts and finance] **(a) Each year, the chief fiscal officer** shall, on behalf of council, at the last stated meeting in November [in each year] present to council for [first reading] **introduction** a proposed budget ordinance for all funds showing the estimated receipts, expenditures[,] and liabilities of every kind[,] for the ensuing year, with the balance of unexpended appropriations[,] and all other information of value as a basis for fixing the levy and tax rate for the next fiscal year. Council shall, upon [passing] **introducing** the [said] proposed budget ordinance [on first reading], fix a date for adoption thereof, which shall be not later than the thirty-first day of December of [such] **that** year.

**(b)** The several departments of the city government shall, before the proposed budget ordinance is [presented] **introduced,** as [above] provided **in subsection (a),** furnish to the council an estimate of the probable receipts and expenditures and **an estimate** of the amount required by each of [said] **the** departments for the public service during the ensuing fiscal year as a basis for making the annual appropriations thereto.

**(c)** When the proposed budget ordinance is submitted to council and has [passed first reading] **been introduced,** the city clerk shall forthwith make the same available for public inspection at [his] **the city clerk's** office in the city hall[,] and shall thereupon publish a notice to that effect once in [at least one] **a**

newspaper **of general circulation** in accordance with the provisions of section [one hundred nine of this act. Such] **109. The** notice shall state the date fixed by council for [adoption] **enactment** of the proposed budget ordinance, and [such] notice shall be published at least twenty days prior to the time fixed by council for [adoption] **enactment** of the proposed budget ordinance. The proposed budget ordinance shall be available for public inspection at the city clerk's office for at least ten days after the aforesaid newspaper notice [thereof] is published.

 **(d)** The council shall, after making such changes and modifications therein as appear proper, [adopt] **enact** the budget and any appropriation measures required to put it into effect upon the date fixed for [adoption] **enactment** thereof[: Provided, That said], **provided, however, that the** budget shall reflect as nearly as possible the estimated revenues and expenditures of the city for the year for which the budget is prepared. [That should] **Should** it appear upon any revision of the budget that the estimated expenditures in the [adopted] **enacted** budget would be increased more than ten per cent in the aggregate or more than twenty-five per cent in any individual item over the proposed budget, [such] **the** budget shall not be [adopted] **enacted** with any [such] **of the** increases therein unless the same be again made available for public inspection [and for protest of such increases] for a period of at least ten days after notice to that effect is published as hereinbefore provided.

 Section 1810. Amending Budget; Notice.--**(a)** During the month of January [next following any municipal election] **following the expiration of a past fiscal year, in furthering its fiduciary responsibility,** the council of any city may amend the budget and the levy and tax rate to conform [with] **to** its amended budget ordinance. A period of ten days' public inspection at the office of the city clerk of the proposed amended budget ordinance, after notice by the city clerk to that effect is published [once] in a newspaper **of general circulation** as provided in section [one hundred nine of this act] **109**, shall intervene between council's [first reading] **introduction** of the proposed amended budget ordinance and the [adoption] **enactment** thereof. Any amended budget ordinance must be [adopted] **enacted** by council on or before the fifteenth day of February.

 [No such] **(b) After introduction, no** proposed amended budget ordinance shall [after first reading] be revised upward in excess of ten [percent] **per centum** in the aggregate thereof or as to an individual item in excess of twenty-five per [cent] **centum** of the amount of such individual item in the proposed amended budget ordinance.

 Section 128. Section 1811 of the act is amended to read:

 Section 1811. Appropriations; Tax Rate; **Limitations**.--**(a)** When all estimates for the receipts, liabilities[,] and expenditures for the ensuing year shall be made, council shall proceed to make the annual appropriations[,] and shall fix the tax rate at such figure as will, in combination with all other estimated receipts of the city, fully meet and cover the aggregate amount of such estimates of liabilities and expenditures for the ensuing year.

 **(b)** No appropriation, however, shall be made for any purpose until the interest accruing on the funded debt of the city and the principal of [such] **that** part of [said] **the** debt as may be coming

due in that fiscal year, the salaries of officers, and the
ordinary and necessary expenses of the city shall first be
provided for, and no appropriation shall be made for any purpose
in excess of the estimated receipts and revenues for the fiscal
year for which such appropriations are made.

Section 129.  Section 1811.2 of the act, amended October 5,
1967 (P.L.327, No.143) and repealed in part July 12, 1972
(P.L.781, No.185), is amended to read:

Section 1811.2.  Borrowing in Anticipation of Current
Revenue.--[Cities] **In accordance with 53 Pa.C.S. Pt. VII Subpt. B
(relating to indebtedness and borrowing), cities** may borrow money
in anticipation of current revenues to an amount not exceeding
[such] **the** anticipated current revenues, which shall be pledged
for the payment of [such] **the** loan or loans, and **may** issue notes
or other [form] **forms** of obligation[, executed by the director of
the Department of Accounts and Finance and attested by the mayor
under the seal of the city, securing such loans. Such notes or
other form of obligation shall mature and be payable during the
current fiscal year in which such money is borrowed. No such
borrowing shall constitute an increase of indebtedness within the
meaning of Article nine, section eight of the Constitution of
Pennsylvania, or of the "Municipal Borrowing Law" of June twenty-
fifth, one thousand nine hundred forty-one (Pamphlet Laws 159), or
of any of the provisions of this act, and shall not require the
approval of the Department of Community Affairs. Such notes shall
bear interest at a rate not exceeding six (6) per centum per
annum, payable at maturity or in advance, and may be sold at
either public or private sale for not less than par. If such loans
are not repaid in whole or in part during the fiscal year in which
they are made, they, or such amounts as remain unpaid, shall
become an obligation upon the following year's budget and shall be
included therein and paid not later than the thirty-first day of
December of such following year. The incurring of such obligations
shall receive the affirmative vote of not less than two-thirds of
the members of the city council] **in evidence of the debt.**

Section 130.  Sections 1812 and 1813 of the act, amended June
22, 2000 (P.L.321, No.33), are amended to read:

Section 1812.  Annual Reports; Publication; Filing Report with
Department of Community and Economic Development; Penalty.--(a)
 The [director of accounts and finance] **chief fiscal officer** shall
make a report, verified by oath or affirmation, to the council at
a stated meeting in April in each year of the public accounts of
the city and of the trusts in its care for the preceding fiscal
year, exhibiting all of the expenditures thereof, respectively,
and the sources from which the revenue and funds are derived and
in what measures the same have been disbursed. Each account shall
be accompanied by a statement in detail of the several
appropriations made by council, the amount drawn and encumbered on
each appropriation[,] and the unencumbered balance outstanding to
the debit or credit of such appropriation at the close of the
fiscal year.

(b)  [Such] **The** report, accompanied by a concise financial
statement setting forth the balance in the treasury at the
beginning of the fiscal year, all revenues received during the
fiscal year, by major classifications, all expenditures made
during the fiscal year, by major functions, and the current
resources and liabilities of the city at the end of the fiscal

year, the gross liability and the net debt of the city, the amount
of the assessed valuation of the taxable property in the city, the
assets of the city and the character and value thereof, the date
of the last maturity of the respective forms of funded debt, and
the assets in each sinking fund, shall be published [once in not
more than two newspapers printed or circulated in such city, as
required by section one hundred and nine of this act] **in a
newspaper of general circulation as required by section 109 at
least ten days prior to the April meeting scheduled pursuant to
subsection (a)**. Before [such] **the** report or statement is made or
published, [the same] **it** shall be approved by the [controller]
**independent auditor**, who may approve it subject to such exceptions
as [he] **the independent auditor** may have thereto[: Provided,
Council]; **provided, however, that council** may cause [such] **the**
statement to be printed in pamphlet form in addition to the
publications made as aforesaid.

(c)  The [director of accounts and finance] **chief fiscal
officer** shall also, annually, make report of the financial
condition of the city in the form above provided to the Department
of Community and Economic Development, within ninety days after
the close of the fiscal year, signed and duly verified by the oath
of the [director] **chief fiscal officer** and approved by the [city
controller] **independent auditor**, as above provided. Any [director
of accounts and finance] **chief fiscal officer appointed by the
city** refusing or wilfully neglecting to file such report shall,
upon conviction thereof[,] in a summary proceeding brought [at the
instance of] **by** the Department of Community and Economic
Development, be sentenced to pay a fine of five dollars for each
day's delay beyond [said] ninety days, and costs. All fines
recovered shall be for the use of the Commonwealth.

(d)  The report to the Department of Community and Economic
Development shall be presented in a form as provided for in
section [one thousand eight hundred and thirteen of this act]
**1813**.

Section 1813.  Committee to Prepare Uniform Forms.--**(a)**  The
uniform financial report forms, specified in the foregoing
sections of this act, shall be prepared by a committee consisting
of four representatives of the Pennsylvania **Municipal** League [of
Cities and Municipalities] and the Secretary of Community and
Economic Development, or [his] **the secretary's** agent **or designee**
who shall be a person trained in the field of municipal finance.

[Such] **(b)  The** representatives shall be appointed by the
president of [said] **the** organization within sixty days after the
effective date of this act. Such representatives shall be chosen
from among finance officers of third class cities or other
officers of such cities who have knowledge of their fiscal
procedures[. As], **and, as** far as possible, they shall be chosen to
represent cities in the various population groups within the range
of cities of the third class. The president of the Pennsylvania
**Municipal** League [of Cities and Municipalities] **and other
designated participants** shall supply to the Secretary of Community
and Economic Development the names and addresses of [such] **the**
representatives immediately upon their appointment.

[Said] **(c)  The** representatives shall serve without
compensation, but they shall be reimbursed by the Commonwealth for
all necessary expenses incurred in attending meetings of the
committee. The committee shall meet at the call of the Secretary

of Community and Economic Development, or [his] **the secretary's** agent **or designee**, who shall serve as [chairman] **chairperson** of the committee.

　　**(d)**　It shall be the duty of the Secretary of Community and Economic Development, or [his] **the secretary's** agent **or designee**, to see to it that the forms required by this act are prepared in cooperation with [said] **the** committee. In the event that [said] **the** committee should for any reason fail to furnish such cooperation, the Secretary of Community and Economic Development, or [his] **the secretary's** agent **or designee**, shall complete the preparation of the forms. After their preparation, [he] **the Secretary of Community and Economic Development, or the secretary's agent or designee**, shall issue [said] **the** forms and distribute them annually, as needed, to the designated officers of each city of the third class.

　　**(e)**　No change or alteration in the forms prescribed shall be made by the Secretary of Community and Economic Development or [his] **the secretary's** agent **or designee**, except by a majority approval of the committee, unless upon reasonable notice two or more representatives thereof fail to attend the committee meetings. In voting upon any change or alteration, each representative and the [chairman] **chairperson** of the committee shall have one vote.

　　Section 131.　Section 1814 of the act is amended to read:

　　Section 1814.　Annual Reports to Council on Insurance and Bonds.--The [director of accounts and finance] **chief fiscal officer** shall prepare or cause to be prepared and submit to council [at the first stated meeting in October of each year], **as council shall direct,** a complete and itemized report of all policies of insurance contracted for by the city[,] for the information and consideration of council. The [director of accounts and finance] **chief fiscal officer** shall make a like report [at the same time each year], **as council shall direct,** of all bonds given for the protection of the city in whole or in part.

　　Section 132.　Article XIX heading of the act is reenacted to read:

ARTICLE XIX
CONTRACTS

　　Section 133.　Section 1901 of the act, amended September 17, 1959 (P.L.906, No.359), October 4, 1978 (P.L.1045, No.239), July 1, 1981 (P.L.196, No.59), April 3, 1992 (P.L.53, No.17) and November 3, 2011 (P.L.377, No.91), is amended to read:

　　Section 1901.　[Power to Make Contracts; Regulations Concerning Contracts.--(a)　Each city may make contracts for carrying into execution the provisions of this act and the laws of the Commonwealth. The council shall, by ordinance, provide for and regulate the award of all contracts. All contracts or purchases not in excess of the base amount of eighteen thousand five hundred dollars, subject to adjustment under section one thousand nine hundred and three point one of this act, shall be by note or memorandum in writing, signed by the officer or employe making the purchase or contract.

　　(b)　All services and personal properties required by any city, or any department thereof, where the base amount exceeds the sum of eighteen thousand five hundred dollars, subject to adjustment under section one thousand nine hundred and three point one of

this act, shall be furnished and performed under written contract, and the contract shall be awarded and given to the lowest responsible bidder, after advertising two times, each publication on a different day, in not more than two newspapers, in accord with the provisions of section one hundred and nine of this act, and the bids shall not be opened until at least ten days have elapsed after the first advertisement. A notice of the advertisement for contracts or purchases shall also be posted at the city hall.

(c) The amount of the contract shall in all cases, whether of straight sale price, conditional sale, bailment lease, or otherwise, be the entire amount which the city pays to the successful bidder or his assigns in order to obtain the services or property or both, and shall not be construed to mean only the amount which is paid to acquire title or to receive any other particular benefit or benefits of the whole bargain.

(d) The contracts or purchases made by council involving an expenditure in excess of the base amount of eighteen thousand five hundred dollars, subject to adjustment under section one thousand nine hundred and three point one of this act, which shall not require advertising or bidding, as hereinbefore provided are as follows:

(1) Those for maintenance, repairs or replacements for water, electric light or other public works of the city, provided they do not constitute new additions, extensions or enlargements of existing facilities and equipment, but a bond may be required by council as in other cases of work done.

(2) Those made for improvements, repairs and maintenance of any kind made or provided by any city through its own employes: Provided, however, That this shall not apply to construction materials used in a street improvement.

(3) Those where particular types, models or pieces of new equipment, articles, apparatus, appliances, vehicles, or parts thereof, are desired by council, which are patented and manufactured or copyrighted products.

(4) Those involving any policies of insurance or surety company bonds; those made for public utility service under tariffs on file with the Pennsylvania Public Utility Commission; those made with another political subdivision or a county, the Commonwealth of Pennsylvania, the Federal government, any agency of the Commonwealth or the Federal government, or any municipal authority, including the sale, leasing or loan of any supplies or materials by the Commonwealth or the Federal government, or their agencies, but the price thereof shall not be in excess of that fixed by the Commonwealth, the Federal government, or their agencies.

(5) Those involving personal or professional services.

(6) Those made during a state of emergency declared by the mayor or chief executive in accord with section one thousand two hundred and three of this act.

(e) The acceptance of bids by advertising required herein shall be made by public announcement at the meeting at which bids are received by council or at a subsequent meeting, the time and place of which shall be publicly announced when bids are so received. If, for any reason, the award is not made at either of the above meetings, the same business may be transacted at a subsequent meeting, the time and place of which shall be announced

at the previous meeting held for such award. At such third meeting, the council shall either award the contract or shall reject all bids.

(f)  Council may require that any bids so advertised be accompanied by cash, by a certified or cashier's good faith check or other irrevocable letter of credit in a reasonable amount, or by a bond with corporate surety in a reasonable amount. Whenever it is required that a bid be accompanied by cash, certified check, cashier's good faith check or other irrevocable letter of credit, no bid shall be considered unless so accompanied. In the event any bidder shall, upon award of the contract to him, fail to comply with the requirements hereinafter stated as to a bond guaranteeing the performance of the contract the good faith deposit by cash, certified check, or bond, shall be forfeited to the city as liquidated damages.

(g)  Where advertising is required herein, the successful bidder shall be required to furnish a bond or irrevocable letter of credit in an amount sufficient to council with suitable reasonable requirements guaranteeing the performance of the contract within twenty days after the contract has been awarded, unless council prescribes a shorter period of not less than ten days, and failure to furnish such security within such time shall void the award. The provisions of this subsection requiring successful bidders to furnish security shall not be mandatory as to contracts for the purchase of motor vehicles or other pieces of equipment but only as to those contracts which involve furnishing of labor and materials. Council may in all cases of contracts or purchases require security for performance, delivery, or other terms.

(h)  Where the roadway of a street is to be paved originally and for the first time, or reconstructed by putting down a new base, or a sewer is to be constructed, or grading done, such work shall be done under written contract, after advertising as provided in section one hundred and nine of this act, and such contract shall be given to the lowest responsible bidder.

(i)  The council may, by ordinance, provide for and regulate the purchase of supplies and materials and the sale of personal property.

(j)  The council may also, by ordinance, provide a contingent fund or funds for necessary repairs and incidental expenses, not otherwise provided in the general appropriations, and such funds may be expended without advertising for bids.

(k)  Every contract for the construction, reconstruction, alteration, repair, improvement or maintenance of public works shall comply with the provisions of the act of March 3, 1978, (P.L.6, No.3), known as the "Steel Products Procurement Act."

(l)  No person, consultant, firm or corporation contracting with a city for purposes of rendering personal or professional services to the city shall share with any city officer or employe, and no city officer or employe shall accept, any portion of the compensation or fees paid by the city for the contracted services provided to the city except under the following terms or conditions:

(1)  Full disclosure of all relevant information regarding the sharing of the compensation or fees shall be made to the council of the city.

(2)  The council of the city must approve the sharing of any

fee or compensation for personal or professional services prior to the performance of said services.

(3)  No fee or compensation for personal or professional services may be shared except for work actually performed.

(4)  No shared fee or compensation for personal or professional services may be paid at a rate in excess of that commensurate for similar personal or professional services.] **Power to Make and Regulate Awarding of Contracts.--(a)  Each city may make contracts for carrying into execution the provisions of this act and the laws of this Commonwealth. In addition to and consistent with the requirements of this article, council shall, by ordinance, provide for and regulate the procedures for the award of all contracts, including the purchase of supplies and materials.**

**(b)  Contracts for the sale of real and personal property shall be conducted in conformance with section 2402.1.**

Section 134.  The act is amended by adding sections to read:

**Section 1901.1.  Contracts or Purchases in Excess of Base Amount of Eighteen Thousand Five Hundred Dollars.--(a)  Except as provided in section 1901.4(b), all contracts or purchases in excess of the base amount of eighteen thousand five hundred dollars, subject to adjustment under section 1903.1, shall be subject to advertising and competitive bidding as provided in this article.**

**(b)  All services and personal properties required by any city, or any department thereof, where the amount exceeds the base amount of eighteen thousand five hundred dollars, subject to adjustment under section 1903.1, shall be furnished and performed under written contract, and the contract shall be awarded and given to the lowest responsible bidder after advertising two times, each publication on a different day, in not more than two newspapers of general circulation, in accordance with the provisions of section 109, and the bids shall not be opened until at least ten days have elapsed after the advertisement. A copy of the advertisement for contracts or purchases shall be posted in the city office designated by council.**

**Section 1901.2.  Contracts or Purchases Not in Excess of Base Amount of Eighteen Thousand Five Hundred Dollars.--With regard to all contracts or purchases not in excess of the base amount of eighteen thousand five hundred dollars, subject to adjustment under section 1903.1, the following shall apply:**

**(1)  The purchases or contracts shall be evidenced by note or memorandum in writing, signed by the officer or employe making the purchase or contract.**

**(2)  Council, or the officer designated by council, shall approve all purchases or contracts, except council need not approve those purchases or contracts within the category of small or routine purchases or incidental expenses, as defined by ordinance.**

**Section 1901.3.  Determining Amount of Contract.--The amount of the contract shall in all cases, whether of straight sale price, conditional sale, bailment lease or otherwise, be the entire amount which the city pays to the successful bidder or the successful bidder's assigns in order to obtain the services or property, or both, and shall not be construed to mean only the amount which is paid to acquire title or to receive any other particular benefit or benefits of the whole bargain.**

**Section 1901.4.  Contracts or Purchases Not Requiring**

Advertising or Bidding.--(a)  City contracts or purchases, if not in excess of the base amount of eighteen thousand five hundred dollars, subject to adjustment under section 1903.1, shall not require advertising or bidding.

(b)  City contracts or purchases involving an expenditure over the base amount of eighteen thousand five hundred dollars, subject to adjustment under section 1903.1, which shall not require advertising or bidding are as follows:

(1)  Those for maintenance, repairs or replacements for water, electric light or other public works of the city, provided they do not constitute new additions, extensions or enlargements of existing facilities and equipment, but security may be required by council as in other cases of work done.

(2)  Those made for improvements, repairs and maintenance of any kind made or provided by any city through its own employes, except that this exception shall not apply to construction materials used in a street improvement.

(3)  Those where particular types, models or pieces of new equipment, articles, apparatus, appliances, vehicles or parts thereof desired by council are patented or copyrighted products.

(4)  Those involving any policies of insurance or surety company bonds.

(5)  Those made for public utility service and electricity, natural gas or telecommunication services, provided that, in the case of utilities not under tariff with the Pennsylvania Public Utility Commission, contracts made without advertising and bidding shall be made only after receiving written or telephonic price quotations from at least three qualified and responsible providers. In lieu of price quotations, a memorandum shall be kept on file showing that fewer than three qualified providers exist in the market area within which it is practicable to obtain quotations. A written record of telephonic price quotations shall be made and shall contain at least the date of the quotation, the name of the provider and the provider's representative, the type of service that was the subject of the quotation and the price. Written price quotations, written records of telephonic price quotations and memoranda shall be retained for a period of three years.

(6)  Those made with another political subdivision or a county, the Commonwealth of Pennsylvania, the Federal Government, any agency of the Commonwealth or the Federal Government or any municipal authority, including the sale, leasing or loan of any supplies or materials by the Commonwealth or the Federal Government, or their agencies, but the price thereof shall not be in excess of that fixed by the Commonwealth, the Federal Government or their agencies.

(7)  Those involving personal or professional services.

(8)  Those made during a state of emergency declared by the mayor in accordance with section 1203 or those made during a disaster emergency declared by the Governor or during a local emergency in accordance with 35 Pa.C.S. Pt. V (relating to emergency management services).

Section 1901.5.  Receipt, Opening, Award or Rejection of Bids.--(a)  In any case in which advertisement and bidding are required, the advertisement shall specify the time by which and place at which bids will be received and the time and place for the opening of bids.

(b)  Bids received pursuant to advertisement shall be opened publicly by council or its designated agent. The amount of each bid and any other relevant information as may be specified by council, together with the name of each bidder, shall be disclosed and recorded, and the record shall be open to public inspection.

(c)  At a public meeting of council, not more than sixty days after the receipt of bids, council shall either award the contract or shall reject all bids.

Section 1901.6.  Bid, Performance and Payment Security.--(a) The following shall apply to bid security:

(1)  Council may require that bids received pursuant to advertisement be accompanied by bid security, in a reasonable amount, which shall be in the form of a certified or bank check or a bond provided by a surety company authorized to do business in this Commonwealth or another form of security as specified in the advertisement for bids.

(2)  In the event the successful bidder shall, upon award of the contract, fail to comply with the requirements of subsection (b) as to performance security, the bid security shall be forfeited to the city as liquidated damages.

(b)  The following shall apply to performance security:

(1)  In the case of a contract that had been subject to advertising and bidding, the successful bidder shall be required to furnish performance security in the form of a bond or irrevocable letter of credit in an amount equal to one hundred per centum of the contract price with suitable reasonable requirements guaranteeing the performance of the contract. Performance security shall be provided within twenty days after the contract has been awarded, unless council prescribes a shorter period of not less than ten days. Failure to furnish such security within the required time period shall void the award.

(2)  The provisions of this subsection requiring successful bidders to furnish security shall not be mandatory as to contracts for the purchase of motor vehicles or other pieces of equipment but only as to those contracts which involve furnishing of labor and materials. Council may in all cases of contracts or purchases require security for performance, delivery or other terms.

(c)  In conformity with the act of December 20, 1967 (P.L.869, No.385), known as the "Public Works Contractors' Bond Law of 1967," it shall be the duty of every city to require any person, partnership, association or corporation entering into a contract with such city for the construction, erection, installation, completion, alteration, repair of or addition to any public work or improvement of any kind whatsoever, where the amount of the contract is in excess of ten thousand dollars, before commencing work under the contract, to provide payment security in a form acceptable to and approved by the city, which may include, but need not be limited to, a bond, Federal or Commonwealth-chartered lending institution irrevocable letters of credit and restrictive or escrow accounts in the lending institutions, equal to one hundred per centum of the contract amount. The payment security shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of the prime contractor's subcontractors, in the prosecution of the work provided for in the contract. The payment security shall be conditioned for the prompt payment of all material furnished or labor supplied or performed in the

prosecution of the work under the contract.

Section 1901.7. Compliance With Other Laws.--Every contract subject to this article shall comply, as applicable, with the provisions of the act of August 15, 1961 (P.L.987, No.442), known as the "Pennsylvania Prevailing Wage Act," the act of December 20, 1967 (P.L.869, No.385), known as the "Public Works Contractors' Bond Law of 1967," the act of January 23, 1974 (P.L.9, No.4), referred to as the Public Contract Bid Withdrawal Law, the act of March 3, 1978 (P.L.6, No.3), known as the "Steel Products Procurement Act," the act of February 17, 1994 (P.L.73, No.7), known as the "Contractor and Subcontractor Payment Act," 62 Pa.C.S. Chs. 37 Subch. B (relating to motor vehicles), 39 (relating to contracts for public works) and 45 (relating to antibid-rigging).

Section 1901.8. Prohibitions.--No person, consultant, firm or corporation contracting with a city for purposes of rendering personal or professional services to the city shall share with any city officer or employe, and no city officer or employe shall accept, any portion of the compensation or fees paid by the city for the contracted services provided to the city.

Section 1901.9. Lowest Responsible Bidder.--For purposes of this article, the lowest responsible bidder need not be the bidder submitting the lowest dollar amount bid. The city may also consider the quality of goods or services supplied, ease of repair, compatibility with other city equipment or services, responsiveness, past performance of the bidder and any other reasonable factors specified in the advertisement for bids.

Section 135. Section 1902 of the act, amended November 3, 2011 (P.L.377, No.91), is amended to read:

Section 1902. Evasion of Advertising Requirements.--No [member or members of council] **elected or appointed official or officials of any city** shall evade the provisions of [the preceding section as to] **this article requiring** advertising for bids by purchasing or contracting for services and personal properties piecemeal for the purpose of obtaining prices under the base amount of eighteen thousand five hundred dollars, subject to adjustment under section [one thousand nine hundred and three point one of this act] **1903.1**, upon transactions which should, in the exercise of reasonable discretion and prudence, be conducted as one transaction amounting to more than the base amount of eighteen thousand five hundred dollars, subject to adjustment under section [one thousand nine hundred and three point one of this act] **1903.1**. This provision is intended to make unlawful the practice of evading advertising requirements by making a series of purchases or contracts, each for less than the advertising requirement price, or by making several simultaneous purchases or contracts, each below said price, when, in either case, the transactions involved should have been made as one transaction for one price. Any [members of council who so vote] **elected or appointed official who acts** in violation of this provision [and who know], **knowing** that the transaction upon which [they so vote] **the elected or appointed official acts** is or ought to be a part of a larger transaction and that it is being divided in order to evade the requirements as to advertising for bids, shall be jointly and severally subject to surcharge for ten per centum of the full amount of the contract or purchase. Wherever it shall appear that [a member of council may have voted] **an elected or**

**appointed official may have acted** in violation of this section but the purchase or contract on which [he so voted was not approved by council] **the elected or appointed official acted was not executed**, this section shall be inapplicable.

Section 136.  Section 1903.1 of the act, added November 3, 2011 (P.L.377, No.91), is reenacted and amended to read:

Section 1903.1.  Adjustments to Base Amount Based on Consumer Price Index for All Urban Consumers.--

(a)  Adjustments to the base amounts specified under sections [1901] **1901.1**, 1902 and 1909 shall be made as follows:

(1)  The Department of Labor and Industry shall determine the percentage change in the Consumer Price Index for All Urban Consumers: All Items (CPI-U) for the United States City Average as published by the United States Department of Labor, Bureau of Labor Statistics, for the twelve-month period ending September 30, 2012, and for each successive twelve-month period thereafter.

(2)  If the department determines that there is no positive percentage change, then no adjustment to the base amounts shall occur for the relevant time period provided for in this section.

(3)  (i)  If the department determines that there is a positive percentage change in the first year that the determination is made under paragraph (1), the positive percentage change shall be multiplied by each base amount, and the products shall be added to the base amounts, respectively, and the sums shall be preliminary adjusted amounts.

(ii)  The preliminary adjusted amounts shall be rounded to the nearest one hundred dollars ($100) to determine the final adjusted base amounts for purposes of sections [1901] **1901.1** and 1902.

(4)  In each successive year in which there is a positive percentage change in the CPI-U for the United States City Average, the positive percentage change shall be multiplied by the most recent preliminary adjusted amounts, and the products shall be added to the preliminary adjusted amount of the prior year to calculate the preliminary adjusted amounts for the current year. The sums thereof shall be rounded to the nearest one hundred dollars ($100) to determine the new final adjusted base amounts for purposes of sections [1901] **1901.1** and 1902.

(5)  The determinations and adjustments required under this section shall be made in the period between October 1 and November 15 of the year following the effective date of this subsection and annually between October 1 and November 15 of each year thereafter.

(6)  The final adjusted base amounts and new final adjusted base amounts obtained under paragraphs (3) and (4) shall become effective January 1 for the calendar year following the year in which the determination required under paragraph (1) is made.

(7)  The department shall publish notice in the Pennsylvania Bulletin prior to January 1 of each calendar year of the annual percentage change determined under paragraph (1) and the unadjusted or final adjusted base amounts determined under paragraphs (3) and (4) at which competitive bidding is required under section [1901] **1901.1** and advertising is required under section 1902 or separate bids are required under section 1909 for the calendar year beginning the first day of January after publication of the notice. The notice shall include a written and illustrative explanation of the calculations performed by the department in establishing the unadjusted or final adjusted base

amounts under this section for the ensuing calendar year.

(8)  The annual increase in the preliminary adjusted base amounts obtained under paragraphs (3) and (4) shall not exceed three percent.

Section 137.  Sections 1904 and 1905 of the act are repealed:

[Section 1904.  Reference of Expenditures for Approval by Council.--Any expenditures or transactions, exclusive of compensation paid to city employes, in any department, office or bureau of the city, which may reasonably seem likely to exceed the sum of five hundred dollars over a period of sixty days, shall not be undertaken or proceeded upon except after reference thereof to council and approval by council by ordinance or resolution. Council may approve, revise, or refuse to approve any such referred expenditure or transaction. No official, agent or employe of the city shall knowingly violate the provisions of this section, and any person so violating shall forfeit and pay to the use of the city a penalty of one hundred dollars for each offense.

Section 1905.  Personal Interest in Contracts.--In any case where a city officer or official elected or appointed knows or by the exercise of reasonable diligence could know that he is interested to any appreciable degree, either directly or indirectly, in any contract for the sale or furnishing of any personal property for the use of the city, or for any services to be rendered for such city, involving the expenditure by the city of more than three hundred dollars in any year, he shall notify council thereof; and any such contract shall not be passed and approved by council except by an affirmative vote of at least four members thereof. In case the interested officer is a member of council, he shall refrain from voting upon said contract. The provisions of this section shall not apply to cases where such officer or official is an employe of the person, firm or corporation to which money is to be paid in a capacity with no possible influence on the transaction and in which he cannot possibly be benefited thereby, either financially or in any other material manner. Any officer or official who shall knowingly violate the provisions of this section shall be liable to the city upon his bond, if any, or personally, to the extent of the damage shown to be sustained thereby by the city, to ouster from office, and shall be guilty of a misdemeanor; and upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars, or imprisonment not exceeding one year, or both.]

Section 138.  Section 1906 of the act, amended August 21, 1953 (P.L.1292, No.364), is amended to read:

Section 1906.  Designation of Appropriations; Certification in Excess of Appropriation; Contracts for Governmental Services for More than One Year.--[Every contract involving an appropriation of money shall designate the item of appropriation on which it is founded, and the estimated amount of the expenditure thereunder shall be charged against such item, and so certified by the director of accounts and finance on the contract before it shall take effect as a contract. The payments required by such contract shall be made from the fund appropriated therefor. In any case where the lowest responsible bid is in excess of the item of appropriation on which the contract is to be founded, the item of appropriation may be increased by council in the amount necessary to cover the bid, and the contract may be awarded and certified without any additional advertising. If the director of accounts

and finance shall certify any contract in excess of the
appropriation made therefor, the city shall not be liable for such
excess, but the director of accounts and finance shall be liable
for the same, which may be recovered in an action at law by the
contracting party aggrieved. But nothing] **With regard to any
contract, council may direct the city administrator, chief fiscal
officer or other designated official or employe to furnish
information concerning the availability of appropriated funds to
satisfy required payments under the contract. Nothing** herein
contained shall prevent the making of contracts for governmental
services for a period exceeding one year, but any contract so made
shall be executory only for the amounts agreed to be paid for such
services to be rendered in succeeding fiscal years.

[It shall be the duty of the director of accounts and finance
to certify contracts for the payment of which sufficient
appropriations have been made.]

    Section 139.  Section 1907 of the act, amended April 3, 1992
(P.L.53, No.17), is repealed:

[Section 1907.  Security for the Protection of Labor and
Materialmen.--It shall be the duty of every city to require any
person, copartnership, association, or corporation, entering into
a contract with such city for the construction, erection,
installation, completion, alteration, repair of, or addition to,
any public work or improvement of any kind whatsoever, where the
amount of such contract is in excess of one thousand five hundred
dollars, before commencing work under such contract, to execute
and deliver to such city, in addition to any other security which
may now or hereafter be required by law to be given in connection
with such contract, an additional bond or irrevocable letter of
credit for the use of any and every person, copartnership,
association, or corporation interested, in a sum not less than
fifty per centum and not more than one hundred per centum of the
contract price, as such city may prescribe, conditioned for the
prompt payment of all material furnished and labor supplied or
performed in the prosecution of the work, whether or not the said
material or labor enter into and become component parts of the
work or improvement contemplated. Such additional security shall
be deposited with and held by the city for the use of any party
interested therein. Every such additional security shall provide
that every person, copartnership, association, or corporation who,
whether as subcontractor or otherwise, has furnished material or
supplied or performed labor in the prosecution of the work as
above provided, and who has not been paid therefor, may sue in
assumpsit on said additional security, in the name of the city,
for his, their, or its use and prosecute the same to final
judgment for such sum or sums as may be justly due him, them, or
it, and have execution thereof: Provided, however, That the city
shall not be liable for the payment of any costs or expense of any
suit. The surety or sureties on a bond under this section must be
authorized to do business in this Commonwealth.]

    Section 140.  Section 1908 of the act is repealed:

[Section 1908.  Purchasing Department.--Each city may, by
ordinance, provide for the establishment of a purchasing
department, which shall have supervision over the purchase and
distribution of all supplies purchased. The said department shall
be attached to the department of accounts and finance or such
other department as council may determine, and shall be operated

in accordance with rules and regulations to be adopted by council, the rules to include the manner in which quotations shall be secured on the supplies purchased. The said department shall assist council at all times in eliminating waste and extravagance in the purchase and distribution of the supplies of the city.]

Section 141.  Section 1908.1 of the act, added December 10, 1974 (P.L.815, No.270), is amended to read:

Section 1908.1.  Purchase Contracts for Petroleum Products; Fire Company, Etc., Participation.--The council of each city shall have power to permit, subject to [such] **any** terms and conditions as [it] **the city** may **impose**, [and as hereinafter specifically provided, shall, prescribe] any fire company, rescue company and ambulance company in the city to participate in purchase contracts for petroleum products entered into by the city. [Any such company desiring to participate in such purchase contracts shall file] **Fire company, rescue company and ambulance company participation in purchase contracts for petroleum products shall be subject to the condition that all prices shall be F.O.B. destination. If permitted by council, a fire company, rescue company or ambulance company may participate in designated petroleum product contracts entered into by the city, subject to the fire company, rescue company or ambulance company:**

**(1)  Having filed** with the city clerk a request that it be authorized to participate in contracts for the purchase of petroleum products of the city [and agreeing].

**(2)  Having agreed** that it will be bound by [such] **any** terms and conditions [as] **imposed by** the city [may, and as hereinafter specifically provided, shall, prescribe and].

**(3)  Having agreed** that it will be responsible for payment directly to the vendor under each purchase contract. [Among such terms and conditions, the city shall prescribe that all prices shall be F.O.B. destination.]

Section 142.  Section 1909 of the act, amended November 3, 2011 (P.L.377, No.91), is amended to read:

Section 1909.  Separate Bids for Plumbing, Heating, Ventilating and Electrical Work, Elevators and [Moving Stairs] **Escalators**.--In the preparation of specifications for the erection, construction[,] and alteration of any public building, when the entire cost of such work shall exceed the base amount of eighteen thousand five hundred dollars, subject to adjustment under section [one thousand nine hundred and three point one of this act] **1903.1**, the architect, engineer[,] or other person preparing such specifications[,] shall prepare only the following separate specifications[;]: (1) plumbing, (2) heating, (3) ventilating, (4) electrical work, (5) elevators and [moving stairs,] **escalators** and (6) one complete set of specifications for all the other work to be done in such erection, construction and alteration. The **project manager, construction manager or other** person or persons authorized **by council** to enter into contracts for the erection, construction[,] or alteration of such public buildings shall receive separate bids upon each of the [said] branches of work, and **the city council or the appropriate city officer shall** award the contract for the same to the lowest responsible bidder for each of [said] **the** branches, including the balance of the work, in addition to the plumbing, heating, ventilating and electrical work and elevators and [moving stairs] **escalators**. Where it is desired to install an air conditioning unit, the heating and ventilating

so involved may be regarded as one branch of work having only one set of specifications, and bids may be received and a contract awarded thereon as hereinbefore provided.

Section 143.  Sections 1910, 1911 and 1912 of the act are amended to read:

Section 1910.  Acceptance by Contractor of [Workmen's] **Workers'** Compensation Act.--[All contracts executed by any city, or any officer or bureau or board thereof, which involve the construction or doing of any work involving the employment of labor, shall contain a provision that the contractor shall accept, in so far as the work covered by any such contract is concerned, the provisions of the Workmen's Compensation Act and any reenactments, supplements or amendments thereto, and that the said contractor will insure his liability thereunder, or file with the city with whom the contract is made a certificate of exemption from insurance from the Department of Labor and Industry of this Commonwealth.

Every officer of any city, or bureau or department thereof, who shall sign, on behalf of the said city, any contract requiring in its performance the employment of labor, shall require, before the said contract shall be signed, proof that the said contractor with whom the contract is made shall have accepted the Workmen's Compensation Act and any reenactments, supplements or amendments thereto, and proof that the said contractor has insured his liability thereunder in accordance with the terms of the said act, or that the said contractor has had issued to him a certificate of exemption from insurance from the Department of Labor and Industry of this Commonwealth.

Any contract executed in violation of the provisions of this section shall be null and void.]

**(a)  All contracts executed by any city which involve the construction or performance of any work involving the employment of labor shall contain a provision that the contractor shall accept, and file with the city, proof of compliance with or exemption from, insofar as the work covered by the contract is concerned, the act of June 2, 1915 (P.L.736, No.338), known as the "Workers' Compensation Act."**

**(b)  A certificate of exemption from issuance may be issued on the basis of either individual self-insurance or group self-insurance.**

**(c)  A contractor shall file with the city any proof that the Department of Labor and Industry, with respect to certain employes, has accepted the application to be excepted from the provisions of the "Workers' Compensation Act" on religious grounds.**

**(d)  Any contract executed in violation of this section is void.**

Section 1911.  Contracts for Improvements; Assignment of Assessments.--Where the whole or any part of the cost of an improvement is to be paid by assessments upon the property abutting or benefited, the city may enter into an agreement with the contractor [that he], **pursuant to which the contractor** shall take an assignment of [such] **the** assessments in payment of the amount due [him] under the terms of [his] **the** contract, and, in such case, the city shall not be otherwise liable under such contract[, whether said assessments are collectible or not].

Section 1912.  Architects and Engineers in Employ of City;

Prohibitions from Bidding on Public Works; Penalty.--**(a)**  It shall be unlawful for any architect or engineer[,] in the employ of any city[,] to bid on any public work of the city.

  **(b)**  It shall be unlawful for the officers of any city, charged with the duty of letting any public work, to award a contract to any [such] architect or engineer[,] in the employ of the city.

  **(c)**  Any person or persons violating these provisions, or any of them, [shall be guilty of] **commits** a misdemeanor[,] and[, on] **shall, upon** conviction [thereof, shall forfeit his], **be subject to forfeiting** office, **in accordance with section 901,** and [be] sentenced to pay a fine not exceeding five hundred dollars, or to undergo imprisonment for not less than six months, or both, in the discretion of the court. Any contract made in violation of the provisions of this section shall be null and void.

  **(d)**  **The provisions of this section shall be in addition to any prohibition in 65 Pa.C.S. Ch. 11 (relating to ethics standards and financial disclosure).**

  Section 144.  Sections 1913, 1914 and 1915 of the act are repealed:

  [Section 1913.  Contracts With Transportation Companies.--Subject to the provisions of the Public Utility Law, any city, of the one part, and any person operating a public transportation service within the limits of such city, of the other part, may enter into contracts with each other affecting, fixing, and regulating the franchises, powers, duties, and liabilities of such companies, and the regulations and respective rights of the contracting parties. Such contracts may, inter alia, provide for payments by the companies to the city in lieu of the performance of certain duties or the payment of license fees or charges imposed in favor of such city, by the charters of the respective companies, or by any general law or ordinance, for the appointment by the city of a certain number of persons to act as directors of such company, in conjunction with the directors elected by the stockholders of such company, and, further, may provide for the ultimate acquisition by the city, upon terms mutually satisfactory, of the leaseholds, property, and franchises of the contracting companies.

  Section 1914.  Contracts for Relocation of Railroads.--Subject to the provisions of the Public Utility Law, any city may enter into contracts with any of the railroad companies, whose roads enter its limits, whereby the said railroad companies may relocate, change or elevate their railroads within said limits, in such manner as, in the judgment of the proper authorities of such city, may be best adapted to secure the safety of lives and property, and promote the interest of said city; and, for that purpose, may do all such acts as may be necessary and proper to effectually carry out such contracts. Any such contracts, made by any railroad company or companies as aforesaid with any city, are hereby fully ratified and confirmed. Nothing herein contained shall affect any contract made, or hereafter to be made, with any railroad company, from apportioning the expenses of altering and adjusting the grades of existing railroads and intersecting streets in any city so as to dispense with grade crossings.

  Section 1915.  Contracts with Street Railways for Exclusive Right to Lay Tracks.--In case any city shall deem it necessary for the public benefit and convenience to secure the removal of any street railway tracks already laid, or prevent the laying of such

tracks already authorized to be laid, or to change the route of
any street railway on any street or streets, or portion of a
street or streets, within its corporate limits, and such purpose
or purposes can be accomplished by agreement with the street
railway company or motor power company owning, leasing or
operating such tracks, the said parties may, subject to the
provisions of the Public Utility Law, enter into a contract, for a
period not exceeding fifty years, for such considerations and upon
such terms and conditions, and containing such stipulations,
reservations and covenants as may be agreed upon between the
respective parties thereto; and such contract may include a
covenant providing that, during the continuance thereof, municipal
consent shall not be granted to any other company to use or occupy
the street, streets, or portions of a street or streets, covered
by such contract, for street railway or passenger transportation
purposes; which covenants shall be enforceable by bill in equity
against such city, in case of attempted breach thereof; and such
contract may also provide for the laying or relaying of such
tracks upon such terms and under such contingencies and conditions
as may be agreed upon. When such contract shall have been made, it
shall form a part of the charter of the company, with like force
and effect as to all its terms, conditions, stipulations,
restrictions, covenants, and provisions as to change of routes as
if the same formed a part of the original charter of such company;
and no removal of tracks already laid, or postponement of or delay
in the time of beginning or completing the work of laying tracks
already authorized to be laid, and no change of route therein
provided for, shall operate or be construed to deprive or divest
any such company, entering into such contract, of any of the
rights, franchises, or privileges possessed by it at the time of
entering into such contract, so as to operate in favor of any
company subsequently formed and seeking to occupy, for street
railway purposes, the street, streets, or portions of a street or
streets, covered by such contract. Nothing in this section
contained, nor any contract made in pursuance thereof, shall be
construed to limit or affect in any way, or impose any additional
liability for the exercise of, the right of a railroad company to
lay its tracks, over, upon, under, and across such street or
streets, or portions thereof.]

Section 145.   The act is amended by adding a section to read:
**Section 1916.   Contracts with Passenger or Transportation
Companies.--Except as may be prohibited by 66 Pa.C.S. Pt. I
(relating to public utility code) or Federal or other state
regulation of transportation or commerce, a city may, as it deems
necessary for the public benefit and convenience, contract with a
person or persons owning a public transportation service, railroad
company, street railway, motor power company or passenger or
transportation company.**

Section 146.   Section 1917 of the act, amended June 28, 2011
(P.L.75, No.15), is repealed:

[Section 1917.   Sales of Personal Property.--No city personal
property shall be disposed of by sale or otherwise except upon
approval of council by ordinance or resolution. In cases where
council shall approve a sale of city personal property, it shall
estimate the sale value of the entire lot to be disposed of. If
council shall estimate such sale value to be less than one
thousand dollars, it shall require a notice of the proposed sale

to be posted for at least ten days on the bulletin board in the
city hall, describing and itemizing the property to be sold and
directing that bids may be made thereon at the office of the city
clerk. Thereafter, council may sell such property, in whole or in
part, for the best price or prices obtainable. If council shall
estimate the sale value to be one thousand dollars or more, the
entire lot shall be advertised for sale once in at least one
newspaper, in accordance with the provisions of section one
hundred nine of this act, and sale of the property so advertised
shall be made to the best responsible bidder; and the bids shall
not be opened until at least ten days after the said
advertisement. Council may sell any such property at auction, but
the provisions as to notice contained in this section shall be
likewise observed as to the holding of such auction sales. An
auction may be conducted by means of an online or electronic
auction sale. During an electronic auction sale, bids shall be
accepted electronically at the time and in the manner designated
in the advertisement. During the electronic auction, each bidder
shall have the capability to view the bidder's bid rank or the
high bid price. Bidders may increase their bid prices during the
electronic auction. The record of the electronic auction shall be
accessible for public inspection. The purchase price shall be paid
by the high bidder immediately or at a reasonable time after the
conclusion of the electronic auction as determined by council. In
the event that shipping costs are incurred, they shall be paid by
the high bidder. A city that has complied with the advertising
requirements of this section may provide additional public notice
of the sale by bids or auction in any manner deemed appropriate by
council. The advertisement for electronic auction sales authorized
in this section shall include the Internet address or means of
accessing the electronic auction and the date, time and duration
of the electronic auction. The provisions of this section shall
not be mandatory where city personal property is to be traded-in
or exchanged for new city personal property.]
    Section 147.  Section 1918 of the act, amended October 17, 1974
(P.L.755, No.254), is repealed:
    [Section 1918.  Street Construction and Improvement by City
Employes.--Whenever a city uses the work or services of its
employes in the construction or improvement, of any public street
within the territorial limits, it shall be subject to the
limitations and duties imposed by this article in the purchase of
any materials for such construction or improvement. The provisions
of this section shall not be construed to affect or limit the
provisions of Article XXIX of this act.]
    Section 148.  Section 1919 of the act, amended July 1, 1994
(P.L.373, No.55), is repealed:
    [Section 1919.  Sales of Real and Personal Property to Certain
Entities.--Any provision of this act requiring advertising for
bids and sale to the highest bidder shall not apply where city
real or personal property is to be sold to a county, city,
borough, town, township, home rule municipality, institution
district, school district, volunteer fire company, volunteer
ambulance service or volunteer rescue squad located within the
city, or municipal authority pursuant to the act of May 2, 1945
(P.L.382, No.164), known as the "Municipality Authorities Act of
1945," a housing authority pursuant to the act of May 28, 1937
(P.L.955, No.265), known as the "Housing Authorities Law," an

urban redevelopment authority pursuant to the act of May 24, 1945 (P.L.991, No.385), known as the "Urban Redevelopment Law," a parking authority pursuant to the act of June 5, 1947 (P.L.458, No.208), known as the "Parking Authority Law," a port authority pursuant to the act of December 6, 1972 (P.L.1392, No.298), known as the "Third Class City Port Authority Act," or a corporation not for profit engaged in community industrial development. Any provision of this act requiring advertising for bids and sale to the highest bidder shall not apply where real property is to be sold to a corporation not for profit organized as a public library for its exclusive use as a library, to a medical service corporation not for profit, or to a housing corporation not for profit, to the Commonwealth or to the Federal Government. When real property is to be sold to a corporation not for profit organized as a public library for its exclusive use as a library or to a medical service corporation not for profit or to a housing corporation not for profit, council may elect to accept a nominal consideration for the sale as it shall deem appropriate. Real property sold pursuant to this section shall be subject to the condition that when the property is not used for the purposes of the conveyance, the property shall revert to the city.]

    Section 149.  Article XX heading of the act is amended to read:

ARTICLE XX
POLICE [BUREAU] <strong>FORCE</strong>

    Section 150.  Sections 2001 and 2002 of the act, amended December 27, 1967 (P.L.893, No.403), are amended to read:

    Section 2001.  Appointment, Number, Rank, Compensation and Qualifications of [Policemen] **Police Officers.--(a)** The council shall fix, by ordinance, the number, grades and compensation of the members of the city police force, who shall, **except as provided in section 2002,** be appointed in accordance with the civil service provisions of this act[, and no].

    **(b)**  **No** member of the city police force having been promoted in conformity with the civil service provisions of this act shall be demoted in rank or discharged from the police force except upon proper cause shown as set forth under the civil service provisions of this act.

    **(c)**  No [policeman shall] **police officer**, after [his] **the police officer's** appointment and qualification, **shall** hold at the same time the office of constable.

    **(d)**  Council shall [prescribe all necessary] **promulgate** rules and regulations for the organization and government of the police force. [The minimum annual starting salary or compensation to be paid the members of the police force by any city shall be four thousand five hundred dollars ($4,500), with minimum annual increments of three hundred dollars ($300) for the first three years of such employment. If the annual salary or compensation of any policeman employed by the city on the effective date of this amending act is less than four thousand five hundred dollars ($4,500), such salary or compensation shall be increased to four thousand five hundred dollars ($4,500), and such policeman shall receive minimum annual increments of three hundred dollars ($300) for the next three years of such employment.]

    Section 2002.  Designation of Chief [and Other Officers].--The [mayor shall] designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified. The chief of police shall be

designated by the mayor and may be demoted without cause in the same manner, but not to any rank lower than the rank which he held at the time of his designation as chief of police.] **chief of police shall be designated by the mayor from within the ranks and may be demoted without cause in the same manner, but not to any rank lower than the rank which was held at the time of designation as chief of police. In the event that no qualified officer from within the ranks has applied for such designation, the chief of police shall be designated by the mayor from without the ranks. The officers, other than the chief of police, shall be designated in accordance with Article XLIV.**

Section 151.  Sections 2003, 2005, 2006, 2007, 2008 and 2009 of the act are amended to read:

Section 2003.  Extra [Policemen] **Police Officers;** Compensation.--[The mayor, whenever, in his judgment] **Whenever in the judgment of the mayor** it is necessary for the public safety or to preserve order, **the mayor** may appoint extra [policemen] **police officers** to serve for such period as the council may designate, not exceeding thirty days, whose compensation shall be fixed by council.

Section 2005.  Powers of [Policemen] **Police Officers** to Arrest.--[Policemen] **Police officers** shall be ex-officio constables of the city, and shall and may[, within the city or] **enforce the laws of this Commonwealth or otherwise perform the functions of their office in accordance with 42 Pa.C.S. §§ 8952 (relating to primary municipal police jurisdiction) and 8953 (relating to Statewide municipal police jurisdiction) and** upon property owned or controlled by the city or by a [municipality] **municipal** authority [of] **created by** the city [within the Commonwealth], without warrant and upon view, arrest and commit for hearing any and all persons guilty of breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or who may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or violating any of the ordinances of [said] **the** city for the violation of which a fine or penalty is imposed.

Section 2006.  Service of Process; Fees; Payment into Treasury.--[Policemen] **Police officers** shall have authority to serve and **to** execute [within the city or upon property owned or controlled by the city or by a municipality authority of the city within the Commonwealth all] criminal process or processes **issued** for the violation of city ordinances [which may be issued by the mayor or any alderman,] and shall charge the same fees and costs as pertain by law to the constables of the city for similar services, but the [said] fees and costs shall be [received and collected by the mayor or alderman, and by him] paid into the city treasury monthly as herein provided.

Section 2007.  Supervision by Mayor.--[Policemen] **The chief of police** shall obey the orders of the mayor and make report to [him] **the mayor,** which report shall be [laid by him before council monthly] **presented monthly by the mayor to council.** [The mayor shall exercise a constant supervision and control over their conduct.]

Section 2008.  Extra Compensation Prohibited; Exception; Penalty.--No [policeman] **police officer** shall ask, demand or receive any compensation or reward whatsoever for [his] **the police officer's** services other than that provided by ordinance, except

rewards offered for the arrest of persons accused of crime
committed outside of the city in which [they hold office, and
witness fees and mileage as provided by law for their appearance
in any court of record] **such officer is employed.** Any [policeman]
**police officer** violating any of the provisions of this section
[shall be guilty of] **commits** a misdemeanor [in office, and, upon
conviction, shall be sentenced to pay a fine not exceeding fifty
dollars, or undergo imprisonment not exceeding thirty days, or
both, at the discretion of the court,] **of the third degree and
shall, upon conviction, be sentenced to pay a fine or undergo
imprisonment, or both, at the discretion of the court,** to be
followed by dismissal from office.

    Section 2009.  Compensation or Insurance for Volunteer
[Policemen] **Police Officer.**--Each city may make necessary
appropriations to provide compensation or insurance for volunteer
[policemen] **police officers** injured or killed while engaged in the
performance of such duties as may be assigned to them in the city.

    Section 152.  Section 2010 of the act, amended April 6, 1998
(P.L.236, No.44), is amended to read:

    Section 2010.  School Crossing Guards.--(a)  Upon request of
the board of school directors of the school district in which a
city is located, the city council may appoint school crossing
guards who shall have the duty of controlling and directing
traffic at or near schools [and who shall be in suitable and
distinctive uniform. School crossing guards shall be authorized
only in the management of traffic and pedestrians in and around
areas identified by the city police department and the school
district superintendent]. They shall serve at the pleasure of the
city council, except as noted in subsection (b)[, and shall not
come within the civil service provisions of this act and shall not
be entitled to participate in any city pension plan or plans now
in effect or hereafter effective]. The compensation of the school
crossing guards, if any, shall be fixed by the city council and
shall be jointly paid by the city council and the board of school
directors, in a ratio to be determined by the city council and
board of school directors. If the city council and board of school
directors are unable to determine the ratio of compensation of the
school crossing guards to be paid by the council and the board,
each shall pay one-half of the compensation of [such police.
Auxiliary policemen, appointed as prescribed by general law, may
be designated to serve as school crossing guards] **the school
crossing guards.**

    (b)  A city council may [approve] **enact** an ordinance allowing a
board of school directors to assume the hiring and oversight of
the school crossing guards. Before city council may [approve]
**enact** such an ordinance, the board of directors of the school
district shall [approve] **adopt** a resolution requesting the
authority to assume the hiring and oversight of the school
crossing guards. The ordinance **enacted by council** shall outline
how the city police department will provide any necessary training
and assistance of the school crossing guards while on duty. [Such
school crossing guards will be authorized only in the management
of traffic and pedestrians in and around areas identified by the
city police department and the school district superintendent or
his or her designee. The school crossing guards shall not come
within the civil service provision of this act, nor shall they]
**School crossing guards shall not** fall under the bargaining unit of

the school district nor **be classified** as an employe as defined
under section 1101-A of the act of March 10, 1949 (P.L.30, No.14),
known as the "Public School Code of 1949," or under any benefits
as provided under the "Public School Code of 1949[.]." [or under
any plans hereafter effective. Once] **After** the ordinance
[receives] **is enacted by** city council [approval], the school
district shall assume the cost of compensation, including fixing
such compensation, if any, of the school crossing guards.
[Auxiliary policemen, appointed as prescribed by general law, may
be hired by the school district to serve as school crossing
guards.] The board of school directors shall notify the city
council, mayor and police chief or commissioner of those hired to
serve as school crossing guards and request the necessary training
or assistance be provided as outlined by the ordinance.

   **(c)  Whether the city council appoints school crossing guards
upon the request of the board of school directors or whether the
city council enacts an ordinance allowing a board of school
directors to assume the hiring and oversight of the school
crossing guards, the following shall apply to school crossing
guards:**

   **(1)  Their duties and authority shall be restricted to the
management of traffic and pedestrians in and around areas
identified by the city police force and the school district
superintendent or a designee.**

   **(2)  They shall be in suitable and distinctive uniform while
performing their duties as school crossing guards.**

   **(3)  They shall not come within the civil service provisions of
this act.**

   **(4)  They shall not be entitled to participate in any city or
school district pension or benefit plan or plans now in effect or
hereafter effective.**

   **(5)  Auxiliary police officers, appointed as prescribed by
general law, may be designated by city council or hired by the
school district, as applicable, to serve as school crossing
guards.**

   Section 153.  Article XXI heading of the act is reenacted to
read:

ARTICLE XXI
FIRE BUREAU

   Section 154.  Section 2101 of the act is amended to read:

   Section 2101.  Organization of Fire Bureau; Maintenance;
Apparatus.--[Each city may organize a fire bureau, with or without
pay, make] **With regard to a city fire bureau, council shall have
the authority to:**

   **(1)  by ordinance, establish and organize a fire bureau;**

   **(2)  make** appropriations for the maintenance of the same[,
prescribe]**;**

   **(3)  promulgate** rules and regulations for the government of the
officers and companies belonging thereto[,]**; and**

   **(4)** purchase equipment and apparatus for the extinguishment,
prevention and investigation of fires and for the public safety.

   Section 155.  Section 2101.1 of the act, added July 1, 1994
(P.L.373, No.55), is amended to read:

   Section 2101.1.  **Appointment and** Demotion of Fire Chief [and
Deputy Fire Chief].--The **mayor, by and with approval and consent
of council, shall appoint the** fire chief [and deputy fire chief]
**who** may be demoted without cause but not to any rank lower than

the rank which [he] **the fire chief** held **within the department** at the time of [his] designation as fire chief [or deputy fire chief]. **In the event that no qualified employe of the fire bureau has applied for such appointment, the fire chief shall be appointed by the mayor, by and with approval and consent of council, from without the ranks.**

Section 156.   Section 2102 of the act, amended November 9, 1965 (P.L.670, No.328), is amended to read:

Section 2102.   Paid Bureau; Election of Officers and Companies.--When a paid fire bureau is organized by any city, the council, **except as provided by section 2101.1,** may provide[,] by ordinance[,] for the election or appointment of the officers and companies belonging thereto, in accordance with civil service provisions where applicable. The minimum annual starting salary or compensation to be paid the officers and [firemen] **firefighters** by any city shall be [four thousand five hundred dollars ($4,500), with minimum annual increments of three hundred dollars ($300) for the first three years of such employment. If the annual salary or compensation of any fireman employed by the city on the effective date of this amending act is less than four thousand five hundred dollars ($4,500), such salary or compensation shall be increased to four thousand five hundred dollars ($4,500), and such fireman shall receive minimum annual increments of three hundred dollars ($300) for the next three years of such employment] **established by the city council.**

Section 157.   Section 2103 of the act, amended July 19, 1957 (P.L.1012, No.448), is amended to read:

Section 2103.   Platoon System; Hours of Service[; Vacation; Sick Leave].--**(a)**   The director of the department having charge of the fire bureau in [each city shall] **a city may** divide the officers and members of companies of the uniformed fire force in the employ of [such cities] **the city,** and any other [firemen] **firefighters** and drivers regularly employed and paid by the city, excepting the chief engineer and assistant chiefs, and those employed subject to call, into [two] **shifts,** bodies or platoons to perform service during such hours as the director shall fix[, except as herein otherwise provided. The hours of day service shall not exceed ten, commencing at eight o'clock in the morning; the hours of night service shall not exceed fourteen, commencing at six o'clock in the afternoon; and the hours of day service shall not exceed fifty hours in any one calendar week, and the hours of night service shall not exceed seventy hours in any one calendar week, unless the hours of day and night service shall be equalized, in which case neither the hours of day or night service shall exceed fifty-six in any one calendar week: Provided, That for the duration of any war in which the United States is engaged, and six months thereafter, the hours of service may exceed the number hereinbefore provided as the maximum number of hours of service, and in such cases, council shall provide for the payment of extra compensation for any hours of service, at the same rate as paid for regular service in excess of such maximum hours of service. The employes of such fire forces shall be allowed to have at least twenty-four consecutive hours of rest in every calendar week, to have an annual vacation of not less than fourteen working days, and shall be entitled to twenty-one days sick leave annually without diminution of the salary or compensation fixed by ordinance. In those instances in which sick leave exceeds four

days at any one time, it shall be necessary for the employe to
present evidence satisfactory to the director of the department
showing either injury, hospitalization, or illness attended to by
a physician]. In cases of riot, serious conflagration, times of
war, public celebrations, or other such emergency, the [chief
engineer of the bureau of fire, or the assistant chief deputy, or
chief] **fire chief or** officer in charge at any fire shall have the
power to assign all the members of the fire force to continuous
duty[,] or to continue any member thereof on duty, if necessary.
[No member of any of said shifts, bodies or platoons shall be
required to perform continuous day service or continuous night
service for a longer consecutive period than two weeks, nor be
kept on duty continuously longer than ten hours in the day shifts,
bodies or platoons or fourteen hours in the night shifts, bodies
or platoons, excepting as may be necessary to equalize the hours
of duty and service, and also excepting in cases of emergency, as
above provided.]

    **(b)  Except as provided in subsection (c), no schedule shall
require a member of any shift, body or platoon to perform
continuous service for a consecutive period of twenty-four hours,
except in cases of emergency or as otherwise agreed through
collective bargaining or an award pursuant to the act of June 24,
1968 (P.L.237, No.111), referred to as the Policemen and Firemen
Collective Bargaining Act. The provisions of this subsection shall
not be deemed to alter or affect any schedules in existence prior
to the effective date of this subsection.**

    **(c)  In a city where the work schedule in existence prior to
the effective date of this subsection required a work shift of
less than twenty-four hours, no schedule shall require a member of
any shift, body or platoon to perform continuous service for a
consecutive period of twenty-four hours, except in cases of
emergency or as otherwise voluntarily agreed through collective
bargaining. Once so modified, no further work schedule may contain
provisions reinstituting a restriction on duty of less than
twenty-four hours of continuous service.**

    Section 158.  Sections 2104, 2105, 2106, 2107 and 2108 of the
act are amended to read:

    Section 2104.  Fire Marshal; Powers.--Every city may, by
ordinance, provide for the creation of the office of fire marshal
who shall be appointed by the mayor, by and with the approval and
consent of council, biennially. The fire marshal and [his] **any
authorized** assistants[, if council shall provide for such
assistants,] shall inspect all constructions or buildings within
the city or upon property owned or controlled by the city or a
[municipality] **municipal** authority of the city within the
Commonwealth[, whether public, private, or business,] and shall
enforce all laws of the Commonwealth and ordinances of the city
relating to such constructions or buildings, for the prevention,
containment, or investigation of fire and fire hazards, both as to
the constructions or buildings and as to the contents or
occupancies thereof. The fire marshal or [his] **the fire marshal's**
assistants shall report to the director of public safety or to
council **or other designated official,** as council shall by
ordinance provide, any faulty or dangerous construction or
building or like condition in any building[,] that may constitute
a fire hazard[,] or any proposed use or occupation of any
construction, building or premises[,] which would create or

increase a hazard of fire. [He] **The fire marshal** shall investigate
and keep a permanent record of the cause, origin and circumstances
of every fire and the damage resulting therefrom occurring within
[his] **the fire marshal's** jurisdiction immediately after the
occurrence of [such] **the** fire. The [said] records of the fire
marshal shall be open to public inspection[.] **except as exempted
in accordance with the act of February 14, 2008 (P.L.6, No.3),
known as the "Right-to-Know Law."** The fire marshal shall submit to
council an annual report consolidating the information contained
in [said records at the first stated meeting in March of each
year] **the records as directed by council.** [He shall request the
mayor or any alderman of the city to investigate, under the act,
approved the seventeenth day of April, one thousand eight hundred
sixty-nine (Pamphlet Laws 74), the origin of any fire he deems
suspicious; and shall be equally subject to appointment and
removal and to all the powers and duties under the act, approved
the twenty-seventh day of April, one thousand nine hundred
twenty-seven (Pamphlet Laws 450, Number 291), as amended, as is
the chief of the fire department] **If a fire is deemed suspicious,
the fire marshal shall have the authority to investigate the same.**
    Section 2105.  Obstructing Fire Marshal; Fine.--It shall be
unlawful for any person to obstruct or prevent or attempt to
obstruct or prevent the fire marshal in the discharge of [his] **the
fire marshal's** duties. Council may, by ordinance, establish the
types or grades of such criminal conduct[,] and may establish
fines[,] or imprisonment [in default of payment thereof], **or both,**
for such violations. No fine so ordained shall exceed [three
hundred] **one thousand** dollars for any single violation, and no
imprisonment [in default of payment of such a fine] shall exceed
ninety days.
    Section 2106.  Investigation of Cause of Fire; Power of
Mayor.--The mayor of any city may, whenever in [his] **the mayor's**
judgment the occasion demands it, issue a subpoena, in the name of
the Commonwealth of Pennsylvania, to any person or persons
requiring [them to attend] **the attendance of the person or persons**
before [him] **the mayor** or the fire marshal at [such] **the** time and
place as may be named in [said] **the** subpoena, then and there to
testify, under oath or affirmation, which the fire marshal in the
absence of the mayor is hereby empowered to administer, as to the
origin of any fire occurring within the bounds of such city[,] and
also as to any facts or circumstances that may be deemed important
to secure the detection and conviction of any party or parties
guilty of the offense of arson or attempted arson.
    Section 2107.  Fire Chief Ex-officio Fire Marshal.--The fire
chief of any city shall be ex-officio fire marshal thereof in any
city wherein the office is not separately filled [by council]
**pursuant to ordinance,** and in [such] **that** case all the powers and
duties herein given to or imposed upon [such] **the** fire marshal
shall be enjoyed and exercised by [such] **the fire** chief [of the
fire department].
    Section 2108.  Compensation Insurance for Injured Volunteer
[Firemen] **Firefighters** or Special Fire Police.--Each city may make
[such] appropriations as may be necessary to secure insurance or
compensation for volunteer [firemen] **firefighters** killed or
injured while engaged in the performance of their duties or as
special fire police.
    Section 159.  Section 2109 of the act, added June 16, 1993

(P.L.97, No.21), is amended to read:

Section 2109. Salary of Nonunion City Fire Officers.--[Any] **A** fire chief or head of a fire department of a city who has been removed from bargaining units under the act of June 24, 1968 (P.L.237, No.111), referred to as the Policemen and Firemen Collective Bargaining Act, by rulings of the Pennsylvania Labor Relations Board shall receive not less than the same dollar increase, including fringe benefits but excluding overtime and festive holiday pay, as received by the highest-ranking fire officer participating in the bargaining unit.

Section 160. Article XXII heading of the act is amended to read:

ARTICLE XXII
[BUREAU OF MINE INSPECTION AND]
**SURVEYS AND** SURFACE SUPPORT
**IN COAL MINING AREAS**

Section 161. Sections 2201 and 2202 of the act are repealed:

[Section 2201. Ordinance Creating.--Any city within the limits of the anthracite or of the bituminous coal regions of the Commonwealth may, by ordinance, create a bureau of mine inspection and surface support.

Section 2202. Bureau, How Constituted.--The bureau shall consist of one practical mining engineer, to be appointed by the mayor, with consent of the council, and such assistants, clerks, and employes as the council may provide. The officers and employes of the bureau shall receive such compensation as may be prescribed by council.]

Section 162. Sections 2203, 2204, 2205, 2206 and 2207 of the act are amended to read:

Section 2203. [Inspection of Mines] **Survey of Mines.**--[Members of the bureau may enter, inspect, examine] **For the purpose of conducting a survey as may be required by council, the city engineer or other registered professional engineer employed by the city may enter** and survey any mine or colliery, within the limits of the city, in whole or in part, at all reasonable times, either by day or night, but not so as to impede nor obstruct the workings of the mine or colliery; and may take with them [such] other persons [as may be] necessary for the purpose of making [an examination or] **a** survey. The owner, operator[,] or superintendent of such mine or colliery shall furnish the means necessary for [such] **the** entry, [inspection, examination,] survey and exit.

Section 2204. Operators to Furnish Maps; Contents.--The owner, operator[,] or superintendent of every coal mine or colliery within the limits of the city, in whole or in part, [within three months after the passage of an ordinance by any city creating such bureau,] shall, **at the request of council,** make or cause to be made and furnished to [such bureau] **the city engineer** an accurate map or plan of the workings or excavations of [such] **each** coal mine or colliery, **or parts thereof,** within the limits of [said] **the** city[, on a scale of one hundred feet to the inch. The map or plan shall exhibit the workings or excavations in every seam of coal on a separate sheet, and the tunnels and passages connecting with such workings or excavations. It shall show in degrees the general inclination of the strata, with any material deflection therein in the workings or excavations, and shall also show the tidal elevations of the bottom of every shaft, slope, tunnel, and gangway, and of any other point in the mine or on the surface

where such elevation shall be deemed necessary by the bureau. The map or plan shall show the number of the last survey station and date of each survey on the gangways or the most advanced workings].

Section 2205.  Extensions to be Placed on Maps.--[Every mine owner, operator, or superintendent shall place or cause to be placed upon the map of the bureau, at least] **Not less than** once in every three months, **a map that has been provided to a city, at the request of council, pursuant to section 2204, shall be updated at the direction of the mine owner, operator or superintendent. The updated map shall show** all the extensions made in any mine, **wholly or partially** within the limits of [such] **the** city, and not already so placed upon the map, except those made within thirty days immediately preceding the time of placing [such] **the** extensions upon the [said] map.

Section 2206.  Certain Surface Supports Not to be Removed.--It shall be unlawful for any person, [copartnership] **partnership**, association, or corporation to dig, mine, remove, or carry away the coal, rock, earth, or other minerals or materials forming the natural support of the surface beneath the streets and places of any city[, in the anthracite region or in the bituminous region,] to such an extent and in such a manner as to thereby remove the necessary support of the surface, without having first placed or constructed an artificial permanent support sufficient to uphold and preserve the stability of the surfaces of such streets and places.

Section 2207.  Penalty for Surface Support Violations.--Any person, corporation or association[, being the owner, lessee or operator of any coal mine, and] violating the provisions of this article concerning surface support of streets and places within the city [shall be guilty of] **commits** a misdemeanor[,] and **shall**, upon conviction [thereof shall], be sentenced for such offense to pay a fine not exceeding one thousand dollars, or [to undergo] imprisonment [in the county jail] for a period not exceeding ninety days, or both, and each [five day continuance in any] **day in which** such violation **continues** shall constitute an additional and separate offense [and be likewise punishable upon conviction thereof].

Section 163.  Section 2208 of the act is repealed:

[Section 2208.  General Penalties.--Any owner, operator or superintendent of any coal mine or colliery who shall violate any of the provisions of this article, except those requiring surface support of streets and places within the city, shall, upon summary conviction thereof before a justice of the peace or an alderman of the city, be fined not less than fifty dollars nor more than three hundred dollars, and in default of payment thereof, shall be imprisoned for not more then ninety days for each such violation. Each five day continuance in any such violation shall constitute an additional and separate offense and be likewise punishable upon summary conviction thereof. All fines imposed under this section shall be paid into the treasury of the city.]

Section 164.  Section 2209 of the act is reenacted to read:

Section 2209.  Enactment of Ordinances.--Council may enact such ordinances as may be necessary for the enforcement of the provisions of this article and provide penalties for the violation thereof.

Section 165.  Article XXIII and subdivision (a) headings of the

act are reenacted to read:

ARTICLE XXIII
PUBLIC HEALTH
(a)  Board of Health
   Section 166.  Section 2301 of the act is amended to read:
   Section 2301.  Board of Health[; Incompatibility].--Each city
shall **have a board of health. Council may,** by ordinance, create a
board of health [as herein provided], or, in lieu thereof, council
shall be the board of health. [The board of health shall have five
members appointed by council, who shall serve without
compensation. Except as otherwise herein provided, membership on
the board of health shall be incompatible with every other city
office.] **If council is the board of health, members of council
shall receive no additional compensation for serving on the board.**
   Section 167.  Section 2302 of the act, amended June 16, 1993
(P.L.97, No.21), is amended to read:
   Section 2302.  [Qualifications; Term; Removal.--The] **Members of
Appointed Boards of Health.--(a)  Council shall appoint five
members to a board of health created by ordinance. Appointed
members shall serve without compensation. Except in the case of an
appointed member who is a licensed or certified health care
professional that has a principal office in the city,** members of
the **appointed** board of health shall be residents of the city. [At
least one, and whenever possible two,]
   **(b)  Two members of the board** shall be [currently] licensed or
certified **health care professionals unless council cannot identify
two such professionals who are willing to serve, in which case,
one member shall be a licensed or certified health care
professional. If no licensed or certified health care professional
can be identified to serve on the board, council may, in lieu
thereof, appoint any individual who has experience or is
knowledgeable of public health issues.**
   **(c)  Health care professionals pursuant to this section must be
licensed or certified** by the State Board of Medicine, the State
Board of Examiners of Nursing Home Administrators, the State Board
of Podiatry, the State Board of Veterinary Medicine, the State
Board of Occupational Therapy Education and Licensure, the State
Board of Osteopathic Medicine, the State Board of Pharmacy, the
State Board of Physical Therapy [or], the State Board of Nursing
[to be engaged in a medical, medically related or health care
profession or business and shall be a resident or have an office
in the city. If a licensed or certified medical or health care
professional cannot be identified to serve on the board, council
may appoint any individual who has experience or is knowledgeable
of public health issues], **the State Board of Social Workers,
Marriage and Family Therapists and Professional Counselors, the
State Board of Chiropractic, the State Board of Dentistry, the
State Board of Optometry, the State Board of Psychology or the
State Board of Examiners in Speech-Language and Hearing.**
   [Upon] **(d)  After** the creation of the board, **by ordinance,**
council shall designate [for] one appointee **for** a term of one
year, [for] another **for** a term of two years, and so on up to five;
thereafter, one member of the board shall be appointed annually to
serve for a term of five years from the first Monday of [April]
**January** succeeding [his] **the member's** appointment.
   **(e)**  Council may remove **appointed** members of the board for
official misconduct or neglect of duty.

**(f)** All vacancies **on appointed boards** shall be filled **by council appointing a qualified person to membership on the board** for the unexpired term **of the person whose membership had been vacated.**

Section 168.  Sections 2303, 2304, 2305, 2306, 2307, 2308, 2309, 2310 and 2311 of the act are amended to read:

Section 2303.  Oath of Office; Organization; Secretary.--**(a)** Each member of the board of health shall take the oath of office prescribed in section [nine hundred and five of this act] **905.**

**(b)**  The board **of health** shall organize annually on the first Monday of January[. The board] **and** shall elect a president annually from among [the] **its** members. [and]

**(c)  Council** shall appoint a secretary **of the board of health** who is not a **member of the board of health.** [board member. The secretary shall take the aforesaid oath and shall give a fidelity bond with corporate surety to the city in such amount as council requires.] The secretary shall receive [such] **a** salary as **approved by** council [shall approve].

Section 2304.  Duties of Secretary.--The secretary of the board shall **have the power and the secretary's duty shall be as follows:**

**(1)  To** keep the minutes of the proceedings of the board[, shall keep] **and** accurate accounts of the expenditures of the board.

**(2)  To** [, shall] draw all requisitions for the payment of moneys on account of the board of health from appropriations made by the council to the board and shall present the same to the president of the board for [his] **the president's** approval.

**(3)  To** [, shall] render statements of the expenditures to the board at each stated meeting or as frequently as the board may require.

**(4)  To** [, shall] prepare, under the directions of the board, the annual report to council, together with the estimate of appropriations needed for the ensuing year.

**(5)  To** [He shall] make such reports to the State Department of Health as are required by law or by rule or regulation of the [Department] **department.**

**(6)  To** [, and shall] make such other reports and perform such other duties as are required [of him] by law or by the board of health.

Section 2305.  Health Officer; Qualifications; Oath [and Bond.--The board shall appoint as].--**(a)  Council shall, by ordinance, determine the manner and method of selection of** a health officer **who shall be** a person with [some] experience or training in public health work [in accordance with rules and regulations of the Advisory Health Board of] **and who shall be or, within six months of taking the oath of office, shall become certified for the office of health officer by** the State Department of Health[, and who shall not enter upon his duties until he has been certified for the office of health officer by the State Department of Health]. The health officer shall take the oath required of members of the board. [, and shall give bond with corporate surety approved by council to the city for the faithful performance of his duties. The amount of the bond shall be fixed by council.] The health officer shall be the agent of the board of health **but shall not serve as a member of the board of health.**

**(b)  City council may appoint, as the principal health officer of the city, the manager or chief administrator employed and**

compensated by a nonprofit corporation which may be appointed as a board of health in accordance with subdivision (c). The manager or chief administrator, to be eligible for appointment, must be a reputable physician with at least five years' experience in the practice of the physician's profession or in public health work. The principal health officer, appointed pursuant to this subsection, shall have all the powers and authority and duties now or hereafter to be conferred or prescribed by law upon principal health officers.

Section 2306.   Duties of Health Officer.--**(a)   The duties of the health officer shall include the following:**

**(1)** [It shall be the duty of the health officer to] **To** attend all [stated] **regular** and special meetings of the board of health [and to].

**(2)   To** be available for the prompt performance of [his] **the health officer's** official duties [at all times. He shall].

**(3)   To** quarantine places of communicable diseases in accordance with law and with the rules and regulations of the State Department of Health or of the **city** board of health.

**(4)** [He shall] **To** execute all laws and rules or regulations for the disinfection of quarantined places.

**(5)** [He shall] **To** serve written notice on teachers and persons in charge of public, parochial, Sunday and other schools[,] requiring the exclusion from school of children who are suffering from, or who reside with persons who are suffering from, communicable diseases[, and shall].

**(6)   To** make sanitary inspections[, and shall] **subject to constitutional standards in a similar manner as provided in section 2308.**

**(7)   To** execute the orders of the board of health and all other laws, rules and regulations and orders pertaining to [his] **the health officer's** office.

**(b)   The health officer** [He] shall[, in the performance of his duties, have the power and authority of a policeman of the city] **to the extent the health officer's duties have the power to issue citations for the violation of applicable laws or ordinances.**

Section 2307.   Duties of Board of Health.--[The board of health shall enforce the laws of the Commonwealth and the rules, regulations and orders of the State Department of Health.] **(a)** The board **of health** shall undertake to prevent or diminish the introduction or further spread of infectious or contagious diseases[,] and otherwise to protect and increase the public health by regulating communication with places of infection or contagion, by isolating carriers of infection or contagion or persons who have been exposed to any infectious or contagious disease, by abating or removing all nuisances which the board shall deem prejudicial to the public health, and by enforcing the vaccination laws; and the board shall make all such rules and regulations as to it appear proper for the preservation or improvement of the public health, consistent with this article and the laws of the Commonwealth.

**(b)   In carrying out its duties under this act, the board of health shall, if authorized, enforce the laws of the Commonwealth that are relevant to and relate to its duties.**

**(c)** The board **of health** shall transmit to the State Department of Health all of its reports and publications and such other information regarding public health in the city as may be

requested **or required** by the [Department] **department.**

Section 2308.  Powers of Board of Health.--The board of health shall have authority:

(1)  [To employ] **If authorized by council, to employ** agents and employes **at rates of compensation approved by council.** [at such rates or salaries as council shall approve.

(2)  To establish and staff emergency hospitals, with the consent of council, in case of the prevalance or threat of any contagious or infectious disease or other serious peril to public health, and to provide for and regulate the management of such hospitals.

(3)] **(2)**  To enter upon any premises whatsoever within the city as a body or by committee or by its agents or employes, which premises are suspected of infectious or contagious disease or of any other nuisance prejudicial to the public health, or of the danger of them, for the purpose of examining the premises or of preventing, confining or abating public nuisances. **The following apply:**

**(i)  In the event that entry upon any premises is refused by an owner, an agent of an owner, or tenant, the board of health shall obtain an administrative search warrant from any magisterial district judge within the judicial district wherein lies the premises to be inspected.**

**(ii)  It shall be sufficient to support the issuance of a warrant for the board of health to provide to the magisterial district judge evidence of any of the following:**

**(A)  Reasonable standards and an administrative plan for conducting inspections.**

**(B)  The condition of the premises or general area and the passage of time since the last inspection.**

**(C)  Facts, supported by an oath or affirmation, alleging that probable cause exists that a law, regulation or ordinance subject to enforcement by the board of health has been violated.**

[(4)] **(3)**  To conduct investigations and to hold public hearings in the performance of its duties and powers, wherein the president and secretary of the board shall have full power to administer oaths and affirmations but shall receive no fee therefor. For such purposes, the board of health may require the attendance of witnesses and their books and papers **in accordance with section 917.**

[(5)  To establish a force of sanitary police for the enforcement of its rules and regulations, whenever in the opinion of the board the public health of the city requires. To fix the number of such police and the duration of their service and to have the exclusive control and direction of them. The mayor shall detail police from the regular police force or make new appointments in order to provide a sanitary police force, and upon the expiration of the need for such a force the members thereof shall be returned to duty as regular policemen, or, if newly appointed, be dismissed as the mayor may direct, but no permanent increase of the police force shall be made thereby unless council so ordains.

(6)] **(4)**  To publish and enforce its rules and regulations **as approved by council.**

[(7)  To] **(5)  If approved by council, to** provide for or cooperate in providing for general and gratuitous vaccination, disinfection and other public health control programs, and

likewise to make available medical relief in such ways as in its opinion will benefit the public health.

[(8)  To certify to council expenditures in excess of council's appropriations therefor, necessarily incurred by the board by reason of an epidemic, or upon approval of council, for any other immediate and serious peril to public health. Council shall thereupon appropriate sufficient money to meet such additional expenditures.

(9)]  **(6)**  To [prevent, abate or remove] **provide, in accordance with subdivision (b), for the prevention, abatement and removal of** conditions found by it to be detrimental to the public health as public, **not private,** nuisances[,] or to declare and certify to council [such] **the** conditions and the premises or ways or places harboring [them] **the condition** to be public, **not private,** nuisances.

[(10)  To prescribe regulations for the erection or operation of bone boiling establishments or of repositories of dead animals in the city, and in accordance therewith, to permit or refuse to permit such erections or operations within the city. Any person who shall erect or operate any such establishment or repository in the city without the permission of the board of health, or in violation of its regulations pertaining thereto, shall forfeit and pay to the city the sum of three hundred dollars for every such offense, and the like amount for each month's continuance thereof, to be collected by an action before an alderman of the city, and shall also be subject to indictment for the common law offense of creating and maintaining a nuisance. Nothing herein shall limit the remedies of injunction or abatement as to any such establishment.

(11)  To determine whether or not the keeping or slaughtering of stock animals or fowls in or about any dwelling or part thereof, or in the yard, lot or adjoining property of any such building within the city or parts thereof, is or may become detrimental to the public health. Council may prohibit any such keeping or slaughtering which the board certifies to it as detrimental, or the board may issue permits in accordance with regulations adopted by it for the keeping of such animals or fowls within the city or parts thereof. No such permit shall extend beyond the calendar year within which it was issued, and the fee for each permit shall be one dollar.]

Section 2309.  Effect of Rules and Regulations.--[The rules and regulations of the board of health may be approved by council, and when printed and advertised by council as required by this act in the case of ordinances, shall have the force of ordinances of the city; and all penalties, fines or imprisonment prescribed therein for violations thereof, together with the expenses necessarily incurred in carrying the rules and regulations into effect and the costs of proceedings incident thereto, shall be recoverable for the use of the city, as provided for in the case of other city ordinances.] **Rules and regulations adopted by the board of health shall be presented to city council for its approval. City council shall have the authority to approve, by ordinance, the rules and regulations submitted by the board of health. Upon approval by council, the rules and regulations of the board of health shall have the force and effect of ordinances of the city. The ordinance approving the rules and regulations may incorporate them by reference. Council shall provide a place for the public to view**

the rules and regulations. **The ordinance approving the rules and regulations shall prescribe the penalties, fines or imprisonment for violations thereof.**

Section 2310.  Fees and Penalties.--All fees and penalties collected or received by the board or any officer thereof [in his] **acting in an** official capacity shall be paid [monthly] **as received** to the city treasurer for the use of the city.

Section 2311.  Proceedings of Board to be Public.--The proceedings of the board shall be public and its journal of proceedings shall be open to [the] **public** inspection [of any taxpayer].

Section 169.  Article XXIII subdivision (b) heading of the act is amended to read:

(b) [Abatement of] Public Nuisances **Detrimental to Public Health**

Section 170.  Sections 2320 and 2321 of the act are amended to read:

Section 2320.  [Definition.--] **Determination of Public Nuisances.--(a)**  Any condition or usage whatsoever in or about the buildings, structures or land, or the streets or private ways and places, or elsewhere, within the city, whether public or private, [which] **if determined by** the board of health [shall find] to be detrimental to the public health [is hereby declared to be] **shall constitute** a public nuisance. Whenever in this subdivision the words "public nuisance" or "nuisance" are used, they shall be deemed to mean a nuisance detrimental to the public health, unless a different meaning is specified.

**(b)**  The powers of investigation and entering upon premises vested in the board of health and its agents and employes pursuant to its orders shall be available for the determination of public nuisances.

Section 2321.  [Procedure for the] Abatement of Public Nuisances **by Designated Department.**--[Whenever the board of health shall determine, after such examination, investigation or hearing as shall suffice to inform its judgment, that a public nuisance exists or is about to exist, it may order the nuisance to be removed, abated, suspended, altered, or otherwise prevented or avoided. Notice of such order, bearing the official title of the board and the number of days for compliance therewith and the alternative remedy of the board in case of non-compliance, shall be served upon the person, if any, whom the board deems responsible therefor or concerned therein, and upon the owner or abutting owner of the land, premises or other places whereon such a nuisance is or is about to be, if any. In case no such party or parties can be discovered by the board, the order shall be served by posting a copy or copies thereof conspicuously upon the premises for a period of at least ten days.] **(a)  If, in accordance with this subdivision, the board of health determines that a public nuisance exists, it shall report its determination, along with any request for summary abatement, to the department designated by council in section 2702-A, relating to the report and investigation of a public nuisance.**

**(b)  Notwithstanding any other provision of Article XXVII-A, the department designated to abate public nuisances shall proceed as follows:**

**(1)  The report to the designated department that the board of health has determined that a public nuisance exists shall be**

deemed a determination by the designated department that a public nuisance exists as required by section 2702-A(d)(1).

**(2)  Summary abatement, if requested by the board of health, shall be pursued if the designated department finds that the criteria set forth in section 2702-A(d)(2) exists.**

**(3)  If summary abatement is not pursued, the designated department shall proceed with abatement with prior notice in accordance with Article XXVII-A.**

Section 171.  Sections 2322, 2323 and 2324 of the act are repealed:

[Section 2322.  Contents of Notice.--The notice of the board's order shall clearly specify:

1.  The place and manner of the nuisance or anticipated nuisance as determined by the board;

2.  The nature or condition thereof;

3.  The board's order with respect to the nuisance or anticipated nuisance;

4.  The names of the persons found by the board to be responsible therefor or concerned therewith and the name of the owner, if any, of the land or premises involved;

5.  The date of the board's order and the number of days therefrom allowed for compliance with it;

6.  The alternative remedy of the board in case of non-compliance;

7.  Notice that the persons affected thereby may apply, within the time set for compliance with the order, to the board for a hearing, and may request such stay of execution or modification or rescission of the said order as they shall believe just and proper;

8.  The signature of the president of the board, attested by the secretary.

Section 2323.  Hearing; Disposition.--If any person affected thereby shall apply for a hearing within the time provided, the board shall promptly notify all interested parties of the time and place of the hearing. The board shall enter upon its minutes such facts and proofs as it may receive, and its proceedings on such hearing and thereafter may rescind, modify or reaffirm its order and require execution of the original or of a new or modified order, as it shall determine and direct. The persons affected shall be notified of the board's final order, and within ten days from the mailing of such notice may appeal therefrom to the court of quarter sessions, which appeal may operate as a supersedeas if the court, upon proper cause shown, so orders, and provided the appellants post bond, approved by the court, for the use of the city, with sufficient surety to cover all the expense and costs of executing the board's order.

Section 2324.  Abatement of Public Nuisances by Board of Health or City.--In any case where the persons ordered by the board of health to abate or prevent a public nuisance or anticipated public nuisance refuse or neglect to do so within the time specified in the original or any subsequent order of the board, then, unless the said order shall have been suspended by appeal to the court and proper bond posted, the board may direct its health officer and employes to execute the said order; or if the execution of the said order requires the grading, paving or repaving of private alleys or any similar work upon any property whatsoever within the city or any other work or service that may best be performed or

contracted for by the agencies and employes of the city itself,
then the board shall certify its order to the city council and
council shall thereupon proceed to cause the execution of the
order. In any case where the board of health or the council thus
abates or prevents or causes the abatement or prevention of a
public nuisance, the cost and expense of such work, services and
materials shall be charged to the persons affected in their proper
proportions; and upon non-payment of such charges, the city may
file a lien therefor upon the affected premises in the name of and
for the use of the city, as provided by law for municipal claims,
in addition to the other remedies available for the collection of
debts due the city. The lien shall attach as of the time the work
was commenced, which shall be fixed by the certificate of the
health officer or of the city engineer filed with the city clerk.]

Section 172.  Article XXIII subdivision (c) heading of the act
is reenacted to read:

(c)  Corporations Acting as Boards of Health

Section 173.  Section 2330 of the act is amended to read:

Section 2330.  Board of Directors of Corporation to be
Appointed Members of Board of Health.--[Whenever any corporation
not for profit has been or shall hereafter be chartered, whose
principal corporate purpose is or shall be substantially to
preserve and promote the health of the public of any city, and the
control and elimination of disease, and such corporation, in the
opinion of the council of such city and the State Department of
Health, shall have at its disposal sufficient means to render its
assistance of value to the city in the administration of its
public health affairs, and is properly organized and managed, said
council may, by ordinance, appoint the members of the board of
directors for such corporation as the board of health of such city
for a term of five years. The said board of directors shall not be
more than nine or less than five in number, and at least two of
the members shall be reputable physicians with not less than five
years' experience in the practice of their profession. When, by
limitation in the charter or by-laws of such corporation, the
office of any member of the board of directors shall terminate,
such person's membership in the board of health shall also
terminate and a vacancy in such membership exist, to be filled as
hereinafter provided. Whenever the number of directors of such
corporation shall be increased, subject, however, to the aforesaid
maximum limitation of nine, the council of said city may appoint
any person added to the corporation's board of directors as an
additional member of the board of health for a term equal to the
unexpired term of the other members, subject, also, to termination
resulting from limitations in the corporation's charter or by-laws
as aforesaid.] **(a)  City council may, by ordinance, appoint the**
**members of a board of directors of a nonprofit corporation as the**
**board of health for the city for a term of five years provided**
**that the nonprofit corporation:**

**(1)  Has as its principal purpose to substantially preserve and**
**promote the health of the public of the city and to control and**
**eliminate disease.**

**(2)  Has sufficient means to render valuable assistance to the**
**city's public health affairs in the opinion of city council and**
**the State Department of Health.**

**(3)  Is properly organized and managed.**

**(4)  Has no fewer than five and no more than nine members on**

the board of directors.
        (5)   Has at least two reputable physicians on the board with
each having no less than five years' experience in the practice of
the physician's profession.
        (b)   When the office of any member of the board of directors
terminates pursuant to the nonprofit corporation's charter or
bylaws, the office of the member of the board of health shall also
terminate with the resulting vacancy to be filled as hereinafter
provided.
        (c)   If the number of the board of directors of the nonprofit
corporation increases, subject to the limitation of a maximum of
nine members, city council may appoint any person added to the
corporation's board of directors as an additional member of the
board of health for a term equal to the unexpired term of the
other members. This additional appointment shall be subject to any
subsequent termination resulting from a limitation in the
corporation's charter and bylaws.
        Section 174.   Section 2331 of the act is repealed:
        [Section 2331.   Councilmen and School Directors Eligible for
Appointment.--Members of council of such city, not more than two
in number, and one member of the board of directors of the school
district of such city, if they are also members of the board of
directors of said corporation, shall be eligible to appointment as
members of the board of health of said city.]
        Section 175.   Sections 2332, 2333, 2334 and 2335 of the act are
amended to read:
        Section 2332.   Power of Board.--The board of health [so
appointed] **under this subdivision** shall have all the power and
authority and perform the duties now or hereafter conferred and
prescribed by law upon boards of health of cities.
        Section 2333.   Health Officer.--[If the board of directors of
such corporation shall employe as manager or chief administrator
of the activities and operations of the corporation a reputable
physician of five years' experience in the practice of his
profession, or in public health work, for a compensation to be
paid out of the corporation's funds, it shall be lawful for such
council to appoint such manager or chief administrator as the
principal health officer of such city, with all the powers and
authority and duties now or hereafter to be conferred or
prescribed by law upon principal health officers.] **Pursuant to
section 2305(b), city council may appoint the manager or chief
administrator of a nonprofit corporation as the principal health
officer of the city.**
        Section 2334.   Secretary.--The secretary of the board of
directors of [such] **the nonprofit** corporation **under this
subdivision** may serve as secretary of [such] **the** board of health.
        Section 2335.   Filling of Vacancies.--[As the five year terms
of members of such board of health expire, and as vacancies
therein occur, the council of such city may appoint successors to
those whose terms shall have so expired for further terms of five
years, and appoint persons to fill vacancies in both cases by
selection of the then members of such board of directors,
including, in the case of vacancies, the persons in the said board
of directors who may be selected to fill the vacancies therein.
Such appointment in the case of a vacancy shall be for the
unexpired portion of the five year term.] **City council may appoint
successors for vacancies on the board of health that occur as**

five-year terms of board members expire. The successors shall
serve for five-year terms. City council may also appoint
successors to vacancies on the board of health that occur for any
other reason, but in such case the appointment shall be for the
unexpired portion of the five-year term. Successors, whether
appointed for a five-year term or the unexpired portion of a
five-year term, shall be selected from the members of the
nonprofit corporation's board of directors.

Section 176.  Section 2336 of the act is repealed:
[Section 2336.  Appointment and Removal of Health
Employes.--The council of such city shall, in all cases where
possible, follow the recommendations of said board of health as to
appointment and removal of all persons having to do with the
administration of the public health affairs of the city. Such
appointees shall be required to pass any civil service examination
required by any civil service commission lawfully established in
such city.]

Section 177.  Section 2337 of the act is amended to read:
Section 2337.  No Compensation for Members.--The members of
[such] **the** board of health **under this subdivision** shall serve
without compensation from the city.
[This subdivision (c) shall be effective only under the
circumstances set forth in section two thousand three hundred and
thirty.]

Section 178.  The act is amended by adding a section to read:
**Section 2338.  Applicability of Subdivision.--This subdivision
shall be effective only under the circumstances set forth in
section 2330.**

Section 179.  Article XXIII subdivision (d) heading of the act
is amended to read:
                    (d)  [Penalties] **Penalty**

Section 180.  Section 2340 of the act is amended to read:
Section 2340.  **Penalty.--**Any person violating any provision of
this article or any order **or regulation** of the board of health
made under the authority of this article, or of any law, **or
regulation** or ordinance therein referred to or authorized, or who
shall obstruct or interfere with any person in the execution of
any order **or regulation** of [said] **the** board, or wilfully and
illegally omit to obey any [such] order[, shall be guilty of] **or
regulation of the board commits** a [misdemeanor, and, upon
conviction, shall be sentenced to pay a fine not exceeding one
hundred dollars, or undergo imprisonment not exceeding ninety
days, or both, at the discretion of the court] **summary offense
punishable in accordance with sections 1018.16 and 1018.17.**

Section 181.  Article XXIV heading of the act is reenacted to
read:
                        ARTICLE XXIV
                      CORPORATE POWERS

Section 182.  Section 2401 of the act is repealed:
[Section 2401.  Existing Powers Saved.--The corporate powers
and the duties of the officers of cities, now in existence by
virtue of the laws of the Commonwealth, and not repealed by this
act, shall be and remain as now provided by law.]

Section 183.  Section 2402 of the act is amended to read:
Section 2402.  Powers of [City] **Cities.--(a)**  Each city is
hereby declared to be a body corporate and politic, and shall have
perpetual succession, and may:

1. Sue and be sued[;].
[2. Purchase and hold real and personal property for the use of the city;
3. Lease, sell and convey any real or personal property owned by the city, and make such order respecting the same as may be conducive to the interests of the city;
4. Make all contracts, and do all other acts in relation to the property and affairs of the city necessary to the exercise of its corporate or administrative powers;
5] **2.** Have and use a corporate seal, and alter the same at pleasure. Every such seal shall have upon it the word "Pennsylvania," the name of the city, and the year of its original incorporation[;].
[6] **3.** Display the flag of **the United States,** the Commonwealth or of any county, city, borough or other municipality in the Commonwealth on the public buildings of the city.
[7. To appropriate] **4. Appropriate** money for the exercise of powers expressed or implied in this act or any other applicable law, and for like uses to accept gifts or grants of money, other property or services from public or private sources.
**(b)** The powers [hereby] granted **in this act** shall be exercised [by the mayor and councilmen] in the manner herein provided.
Section 184. Section 2402.1 of the act, added September 21, 1959 (P.L.922, No.370), is amended to read:
Section 2402.1. [Sale of Real Estate.--The title to real estate sold by any city after June 28, 1947, if the sale was authorized by an ordinance or resolution of the city council of said city, and not attacked in any proceeding instituted within six years of the effective date of this amendment and the title to real estate sold after the effective date of this amendment, if the sale was authorized by an ordinance or resolution of the city council of said city and is not attached in any proceeding instituted within six years after date of such sale, is hereby declared to be good and valid and free and clear of any defects and any such person who is grantee thereunder, and his heirs, successors and assigns, shall hold and may convey such real estate and all conveyances made after June 28, 1947, are hereby ratified and confirmed. Nothing in this section shall be construed to apply to property which the city acquired other than by purchase.] **City Property and Affairs.--(a) In exercising its discretion to make decisions that further the public interest under terms it deems most beneficial to the city, council shall have the power and authority, subject to any restrictions, limitations or exceptions as set forth in this act, to do any of the following:**
**(1) Purchase, hold, use and manage real and personal property.**
**(2) Exchange personal property.**
**(3) Lease, sell and convey real and personal property owned by the city.**
**(4) Make contracts and do all other acts respecting city property and affairs as council may deem conducive to the public interest and necessary to the exercise of the city's corporate and administrative powers.**
**(b) No real estate owned by the city may be sold except upon approval of council by resolution. Additionally, no real estate owned by the city shall be sold for a consideration in excess of one thousand five hundred dollars, except to the highest bidder after due notice by advertisement for bids or advertisement of a**

public auction in one newspaper of general circulation in the
city. The advertisement shall be published once not less than ten
days prior to the date fixed for the opening of bids or public
auction, and the date for opening bids or public auction shall be
announced in the advertisement. The award of contracts shall be
made only by public announcement at a regular or special meeting
of council or at the public auction. All bids shall be accepted on
the condition that payment of the purchase price in full shall be
made within sixty days of the acceptance of bids. The city council
shall have the authority to reject all bids which it deems to be
less than the fair market value of the real property. In the case
of a public auction, the city council may establish a minimum bid
based on the fair market value of the real property. If no
compliant bids are received after advertisement, the applicable
procedures in the act of October 27, 1979 (P.L.241, No.78),
entitled "An act authorizing political subdivisions, municipality
authorities and transportation authorities to enter into contracts
for the purchase of goods and the sale of real and personal
property where no bids are received," shall be followed. Real
estate owned by a city may be sold at a consideration of one
thousand five hundred dollars or less without advertisement or
competitive bidding only after council estimates the value thereof
upon receipt of an appraisal by a qualified real estate appraiser.
This section shall not apply if council is exercising its
authority to exchange city real property for real property of
equal or greater value, provided that the property being acquired
by the city is to be used for municipal purposes. If council
chooses to exercise its power of real property exchange pursuant
to this section, it shall be by resolution adopted by council.
Notice of the resolution, including a description of the
properties to be exchanged, shall be published once in one
newspaper of general circulation not more than sixty days nor
fewer than seven days prior to adoption.

(c)  No city personal property shall be disposed of, by sale or
otherwise, except upon approval of council by resolution. Council
shall estimate the sale value of the entire lot to be disposed of.
If council shall estimate the sale value to be less than one
thousand dollars, council may sell the property, in whole or in
part, for the best price or prices obtainable. If council shall
estimate the sale value to be one thousand dollars or more, the
entire lot shall be advertised for sale in at least one newspaper
of general circulation in accordance with the provisions of
section 109, and sale of the property advertised shall be made to
the best responsible bidder. The bids shall not be opened until at
least ten days after the newspaper advertisement. The provisions
of this subsection shall not be mandatory where city personal
property is to be traded in or exchanged for other personal
property. Council may sell any personal property at auction
pursuant to subsection (d), but shall observe the same notice
requirements as contained in this subsection.

(d)  In regards to the sale of personal property of the city,
an auction may be conducted by means of an online or electronic
auction sale. During an electronic auction sale, bids shall be
accepted electronically at the time and in the manner designated
in the advertisement pursuant to the notice requirements in
subsection (c). During the electronic auction, each bidder shall
have the capability to view the bidder's bid rank or the high bid

price. Bidders may increase their bid prices during the electronic auction. The record of the electronic auction shall be accessible for public inspection. The purchase price shall be paid by the high bidder immediately or at a reasonable time after the conclusion of the electronic auction as determined by council. In the event that shipping costs are incurred, they shall be paid by the high bidder. A city that has complied with the advertising requirements of subsection (c) may provide additional public notice of the sale by bids or auction in any manner deemed appropriate by council. The newspaper advertisement for electronic auction sales authorized in this section shall include the Internet address or means of accessing the electronic auction and the date, time and duration of the electronic auction.

(e)  Any requirement for advertising for bids and sale to the highest bidder imposed by this act or by a city pursuant to this section shall not apply where city real or personal property is sold to the following, provided that, when any real property is no longer used for the purpose of the conveyance, the real property shall revert to the city:

(1)  The Federal Government, the Commonwealth, a municipality, home rule municipality, institution district or school district.

(2)  A volunteer fire company, volunteer ambulance service or volunteer rescue squad located within the city or providing emergency services in the city.

(3)  A municipal authority, a housing authority created pursuant to the act of May 28, 1937 (P.L.955, No.265), known as the "Housing Authorities Law," an urban redevelopment authority created pursuant to the act of May 24, 1945 (P.L.991, No.385), known as the "Urban Redevelopment Law," a parking authority created under 53 Pa.C.S. Ch. 55 (relating to parking authorities) or under the former act of June 5, 1947 (P.L.458, No.208), known as the "Parking Authority Law," or a port authority created pursuant to the act of December 6, 1972 (P.L.1392, No.298), known as the "Third Class City Port Authority Act."

(4)  A nonprofit corporation engaged in community industrial development.

(5)  A nonprofit corporation organized as a public library.

(6)  A nonprofit medical service corporation.

(7)  A nonprofit housing corporation.

(8)  A nonprofit museum or historical organization.

(f)  When real or personal property is sold pursuant to subsection (e)(5), (6) or (7), the city may accept such nominal consideration as it shall deem appropriate.

Section 185.  Section 2402.2 of the act, amended July 31, 1968 (P.L.943, No.290), is repealed:

[Section 2402.2.  Typewritten, Printed, Photostated and Microfilmed Records Valid; Recording or Transcribing Records.--All city records, required to be recorded or transcribed, shall be deemed valid if typewritten, printed, photostated or microfilmed, and where recording in a specified book of record is required, except minutes of the proceedings of the council, such records may be recorded or transcribed in a mechanical or key-operated post binder book, or bound book with pages being consecutively numbered by transcribing directly upon the pages of such book of record or may be attached to such book of record by stapling or by glue or any other adhesive substance or material, and all records heretofore recorded or transcribed in any manner authorized by

this section are validated. The minutes of proceedings of the council shall, in the manner prescribed by this section for other records, be recorded in a bound book. When any record shall be recorded or transcribed after the effective date of this amendment by attaching such record or a copy thereof to the book of record as hereinabove provided, the city seal shall be impressed upon each page to which such record is attached, each impression thereof covering both a portion of the attached record and a portion of the page of the book of record to which such record is attached.]

Section 186.  Section 2403 of the act, amended August 24, 1953 (P.L.1337, No.380), May 20, 1957 (P.L.178, No.86), June 20, 1957 (P.L.346, No.188), June 24, 1959 (P.L.482, No.108), June 30, 1959 (P.L.496, No.121), May 23, 1961 (P.L.216, No.116), June 14, 1961 (P.L.370, No.204), June 8, 1965 (P.L.104, No.72), December 16, 1965 (P.L.1120, No.434), November 24, 1967 (P.L.618, No.280), February 24, 1970 (P.L.63, No.27), March 25, 1970 (P.L.225, No.92), July 29, 1971 (P.L.250, No.61), October 4, 1978 (P.L.950, No.188), October 5, 1979 (P.L.195, No.64), November 1, 1979 (P.L.455, No.92), December 21, 1998 (P.L.1013, No.135) and June 27, 2008 (P.L.196, No.31) and repealed in part November 26, 1978 (P.L.1399, No.330), is amended to read:

Section 2403.  [Specific Powers.--In addition to other powers granted by this act, the council of each city shall have power, by ordinance:

1.]  Payment of Debts and Expenses.--[To] **Council may** provide for the payment of the debts and expenses of the city, and to appropriate money therefor.

[1.1.  Creation of Capital Reserve Fund for Anticipated Capital Expenditures.--To create and maintain a separate capital reserve fund for any anticipated legal capital expenditures, which fund shall be designated for a specific purpose or purposes at the time of its creation. The money in the fund shall be used, from time to time, for the construction, purchase or replacement of or addition to municipal buildings, equipment, machinery, motor vehicles or other capital assets of the city as specified at the time of the creation of the fund and for no other purpose: Provided, That it may be used for capital expenditure other than the purpose or purposes specified at the time it was created, if city council by a four-fifths vote shall declare that the original purpose or purposes have become impracticable, inadvisable or impossible, or that conditions have arisen in the city which make other capital expenditures more urgent than those for which the fund was created.

The council may appropriate moneys from the general city funds to be paid into the capital reserve fund, or place in the fund any moneys received from the sale, lease or other disposition of any city property or from any other source unless received or acquired for a particular purpose. The fund shall be controlled, invested, reinvested and administered and the moneys therein and income from such moneys expended for the specific purpose or purposes for which the fund is created in such manner as may be determined by the council. The money in the fund, when invested, shall be invested in securities designated by law as legal investments for sinking funds of municipalities.

2.  Hiring of Employes; Salaries.--To provide for and regulate the manner of hiring and discharging employes and laborers, and

the fixing of their salaries or compensation.

3. Creation of Necessary Offices, Boards or Departments.--To create any office, public board, or department which it may deem necessary for the good government and interests of the city, and, unless otherwise provided by this act, appoint the members of any board, bureau or commission; to prescribe the powers thereof, and to regulate and prescribe the terms, duties and compensation of all such officers, and of all officers who are members of any public board or any department so created, but no ordinance shall be passed increasing or diminishing the salary or compensation of any officer, or of any member of any board, bureau or commission, after his or their appointment. The provisions of this clause as to the creation of any public board, bureau or commission, and prescribing the duties thereof, shall not apply to the creation of any board of commissioners of water-works of any city wherein the title to the water-works therein located is in the name of the commissioners of water-works.

4. Lock-ups and Police Stations.--To provide for the erection, lease or purchase of lock-ups and police stations for the detention and confinement of persons arrested for any cause, or of persons convicted under city ordinances and sentenced for periods not in excess of ten days.

5. Market Houses and Milk Depots.--To purchase, lease and own ground for, and to erect, maintain, and establish, market houses, milk depots, and market places, for which latter purpose parts of any streets, sidewalks or city property may be temporarily used; to provide and enforce suitable general market regulations; to contract with any person or persons or association of persons, companies, or corporations, for the erection and regulation of market houses, milk depots, and market places, on such terms and conditions and in such manner as the council may prescribe; to raise all necessary revenue therefor as herein provided; and to levy and collect a license tax from every person or persons who may be authorized by council to occupy any portion of the streets, sidewalks or city property for temporary market purposes.

6. Collection and Removal of Garbage.--To provide for and regulate the collection, removal and disposal of garbage, ashes and other waste or refuse material, either by contract or by municipal conduct of such services, and to impose and collect, by lien or otherwise, reasonable fees and charges therefor, and to prescribe fines and penalties for the violation of ordinances regulating such matters.

7. Comfort and Waiting Stations and Drinking Fountains; Waiting Rooms in Court Houses.--To take, purchase or acquire, property for the purpose of erecting, providing, maintaining, and operating thereon comfort stations, waiting stations and drinking fountains; and to construct and maintain such stations and fountains on such property or in any of the streets or public places within its corporate limits; to provide and equip and maintain in the court house, in cooperation with the county commissioners of the county wherein the city is situated, whenever such city is the county seat, rest or waiting rooms and provide attendants therefor. The cost of providing such waiting and rest rooms, and of maintaining the same, including salaries and all incidental expenses, shall be paid by the county, and by the city, in such proportion as may be agreed upon.

8. Running at Large of Animals, Et Cetera.--To provide for the

erection of all needful pens, pounds, and other means of confinement, within or without the city limits; to appoint keepers thereof; and to regulate or prohibit the running or being at large of stock and domestic animals, and fowls; and to cause such as may be at large to be impounded and sold to discharge the costs and penalties provided for the violations of such prohibitions and the expenses of impounding and of keeping the same and of such sale. To regulate the maintaining and care of dogs within the city. To regulate or prohibit the keeping of bee hives within the city.

9.  Destruction of Dogs.--To destroy dogs found at large contrary to the laws of the Commonwealth, or to prohibit or regulate, by its own ordinance, the running at large of dogs, cats or other animals, and, in the enforcement of such regulations, to direct the killing of dogs, cats or other animals, or their seizure and detention, including reasonable charges therefor, or to provide for their sale for the benefit of the city. The powers herein expressed shall be exercised in conformity with the Dog Law of 1921.

10.  Inspection and Regulation of Fireplaces, Chimneys, Et Cetera; Smoke Regulations.--To regulate the construction and inspection of fireplaces, chimneys, stoves, stovepipes, ovens, boilers, kettles, forges, or any apparatus used in any building, manufactory, or business, and to order the suppression or cleaning thereof when deemed necessary; to regulate and control the production and emission of unnecessary smoke or fly-ash from any chimney or other source, except railroad locomotives.

11.  Manufacture, Sale, Storage and Transportation of Explosives; Offensive Business.--To regulate or prohibit the manufacture, sale, storage, or transportation of inflammable or explosive substances within the city, and to regulate or prohibit dangerous, obnoxious, or offensive business with the city.

12.  Regulation of Division Fences, Party Walls, Foundations.--To provide regulations for party walls and division fences and for the foundations of buildings, to enter upon the land or lands, lot or lots, of any person or persons, within the city, at all reasonable hours, by its duly appointed city engineer, or building inspectors, in order to enforce such regulations and set out foundations; and to prescribe reasonable fees for the service of city officers in the inspection and regulation of party walls, division fences and foundations, and to enforce the payment of the same. To provide fines or penalties for violations of such regulations. In setting out foundations and regulating party walls as to breadth and thickness, the city shall cause the foundations to be laid equally upon the lands of the persons between whom the party wall is to be made, and the builder thereof or his successor in interest shall be reimbursed one moiety of the charge of said wall or for so much thereof as the next builder shall have occasion to make use of before such next builder shall or may use or break into said wall.

13.  Public Wells, Cisterns, Aqueducts, and Reservoirs.--To establish, make, and regulate public wells, cisterns, aqueducts, and reservoirs, and to provide for filling the same.

14.  Construction of Levees and Ferries; Deepening of Channels.--Subject to the provisions of State law, to provide for the construction and maintenance of levees and ferries within the jurisdiction of the city and within the limits thereof; to erect wharves on navigable waters adjacent to the city, regulate the use

thereof, collect wharfage, and establish wharf and dock lines; to provide for protection against floods; to construct and maintain docks, retaining walls, dams, or embankments; and to remove obstructions from, deepen and widen the channels of rivers and streams flowing through or adjacent to the city.

15. Railroad Crossing; Flagmen; Speed of Locomotives.--Subject to the provisions of the Public Utility Law, to provide for and require the construction and maintenance of bridges or other crossings over or under railroad tracks; and to enter into contracts with railroad companies for the construction and maintenance of the same; to require the erection of safety-gates and the placing of flagmen or warning devices at the intersection of railroads with streets; to forbid the obstruction of the said crossings by locomotives or railroad cars; and to regulate the rate of speed at which locomotives, cars or trains shall pass upon or across the streets within the built-up portions of the city.

15.1. Railroad Companies; Conveyances and Grants of Rights of Way.--Subject to the provisions of the Public Utility Law, to lease, license or grant rights of way to railroad companies through tunnels or over bridges and viaducts, to enter into agreements with railroad companies for the maintenance of any such tunnels, bridges or viaducts, and to convey such tunnels, bridges or viaducts to railroad companies that have paid in part for their construction, where legal title to said tunnels, bridges or viaducts is not vested in the city but will vest in the city by operation of law or under the terms of any contract.

16. Nuisances and Obstructions.--To prohibit nuisances, including, but not limited to, accumulations of garbage and rubbish and the storage of abandoned or junked automobiles or other vehicles on private or public property, and the carrying on of any offensive manufacture or business, and to require the removal of any nuisance or dangerous structure from public or private places upon notice to the owner, and, upon his default, to cause such removal and collect the cost thereof, together with a penalty of ten per centum of such cost, from the owner, by an action in assumpsit. The cost of removal and the penalty may be entered as a lien against such property in accordance with existing provisions of law. In the exercise of the powers herein conferred, the city may institute proceedings in courts of equity.

17. Regulation of Signs, Porches, Et Cetera.--To regulate, by uniform rules and regulations, porches, porticoes, benches, doorsteps, railings, bulk, bay or jut windows, areas, cellar doors and cellar windows, signs and sign posts, boards, poles or frames, awnings, awning posts, or other devices or things, projecting over, under, into or otherwise occupying the sidewalks or other portion of any of the streets, the building of cellars and basement ways and other excavations through or under the sidewalks, and boxes, bales, barrels, hogsheads, crates, or articles of merchandise, lumber, coal, wood, ashes, building materials, or any other article or thing whatsoever, placed in or upon any of the said sidewalks or other portion of said streets; and also to prevent and require or cause the removal of, upon notice, all encroachments thereon. In the exercise of the powers herein conferred, the city shall have the same remedies, penalties and procedures as are expressed in clause 16 of this article.

18. Trees.--To regulate the planting, trimming, care and protection of shade trees in or extending over the streets.

19. Numbering of Buildings.--To require and regulate the numbering of buildings and lots.

20. Cab-stands.--To establish stands for coaches, cabs, omnibuses, carriages, wagons, automobiles, and other vehicles for hire, and to enforce the observance and use thereof.

21. Police Force.--To establish and maintain a police force, and define the duties of the same.

22. Police Protection, Et Cetera, Parks, Et Cetera; Commitment of Professional Thieves.--To establish and enforce suitable police regulations for the protection of persons and property at public squares, parks, depots, depot grounds, and other places of public resort, owned, controlled or managed by the city or an agency or bureau thereof, whether within or without the city, in whole or in part, and for the arrest and commitment of professional thieves, and suspicious persons found in any part of the city who can give no reasonable account of themselves. The mayor or any alderman of the city shall have jurisdiction to hear and determine violations of such ordinances and to impose any judgment or penalty therefor as provided in such ordinances.

23. Rewards for Apprehension of Certain Criminals.--To offer rewards for the arrest and conviction of persons guilty of capital or other crimes within the city.

24. Gaming, Prostitution, Et Cetera.--To restrain, prohibit, and suppress houses of prostitution, gambling houses, gaming, cock or dog fighting, and other disorderly or unlawful establishments or practices, desecration of the Sabbath day, commonly called Sunday, and all kinds of public indecencies.

25. Prevent Riots.--To prevent and restrain riots, noises, disturbances, or disorderly assemblies in any street, house, or place in the city.

26. Regulate Guns, Et Cetera.--To regulate, prohibit, and prevent the discharge of guns, rockets, powder, or any other dangerous instrument or combustible material within the city, and to prevent the carrying of concealed deadly weapons.

27. Sale and Use of Fireworks.--To regulate or prohibit and prevent the sale, use and discharge of fireworks, firecrackers, sparklers, and other pyrotechnics.

28. Arrest of Vagrants.--To arrest, fine, or set at work on the streets, or elsewhere, all vagrants found in said city.

29. Racing; Dangerous Practices; Et Cetera.--To prevent the racing of horses, cars and other vehicles, fast driving or riding in the streets or public places in the city, and all games, practices, or amusements, therein likely to result in danger or damages to any person or property.

30. Riding or Driving on Sidewalks.--To prevent or regulate the riding or driving of animals, or the passage of any vehicle over, along and across sidewalks, and to regulate the passing of the same through the streets.

31. Regulations of Skating-Rinks, Theatres, Et Cetera.--Subject to the provisions of general laws of the Commonwealth regarding the same, to regulate all skating-rinks, operas, theatres, concerts, shows, circuses, menageries, and all kinds of public exhibitions for pay (except those for religious, educational or charitable purposes); and to restrain and prohibit, under fines or penalties, all exhibitions of indecent or immoral character.

32. Bathing; Boat Houses and Bath Houses.--To regulate the

time and place of bathing in rivers and other public water in and adjoining the said city, and to construct, maintain and manage municipal boat houses and bath houses.

33. Prohibition of Fire Producing Devices in Certain Retail Stores.--To prohibit the smoking or carrying of lighted cigarettes, cigars, pipes or matches, and the use of matches or fire producing devices, in retail stores arranged to accommodate one hundred persons or more, or which employ ten or more employes: Provided, That any such ordinance passed under this provision shall not prohibit smoking in any restaurant room, rest room, beauty parlor, executive office, or any room designated for smoking in such store. To provide penalties for the violation of such ordinances.

34. Appropriations to Post of Veterans.--To appropriate annually to each camp of the United States War Veterans in the city, and to each post of the American Legion, and to each post of the Veterans of Foreign Wars, and to each post of the Veterans of World War I of the U. S. A., Inc., and to each post of the American Veterans of World War II (AMVETS), to each post of the Catholic War Veterans, Inc., and to each detachment of the Marine Corps League, and to each Naval Association, and to each post of the Grand Army of the Republic, and to each post of the Disabled American Veterans of the World War, and to each chapter of the Military Order of the Purple Heart, and to each post of the Jewish War Veterans, and to each organization of American Gold Star Mothers, and to each post of the Italian American War Veterans of the United States, Incorporated, and to any other such organization of ex-service persons in the city, incorporated under the laws of the Commonwealth, a sum not to exceed three hundred dollars, to aid in defraying the expenses of Memorial Day and Armistice Day. Where the Grand Army of the Republic has ceased to exist or to function, such appropriation may be made to the Sons of Union Veterans of the Civil War, or, in the absence of such order, to a duly constituted organization which conducts the decorating of the graves of Union veterans of the Civil War. Such payments shall be made to defray actual expenses only. Before any payment is made, the organization receiving the same shall submit verified accounts of their expenditures.

35. Support of National Guard Units.--To appropriate annually a sum not exceeding seven hundred and fifty dollars for the support and maintenance, discipline and training of any dismounted company or similar unit of the National Guard, and a sum not to exceed fifteen hundred dollars for the support and maintenance of any mounted or motorized troop or similar unit of the National Guard. Where such units are organized as a battalion, regiment or similar organization, the total amount due may be paid to the commanding officer of the battalion, regiment or similar organization. Any moneys so appropriated shall be paid by warrant drawn to the order of the commanding officer of such company, battalion, regiment or similar organization, only when it shall be certified to the city, by the Adjutant General of the Commonwealth, that the said company or companies have satisfactorily passed the annual inspection provided by law. The moneys so appropriated shall be used and expended solely and exclusively for the support and maintenance, discipline and training of the said company, battalion, regiment, or similar organization; and the commanding officer shall account, by proper

vouchers to the said city each year, for the expenditure of the money so appropriated, and no appropriation shall be made for any subsequent year until the expenditure of the previous year is duly and satisfactorily accounted for.

The accounts of such expenditures shall be subject to the inspection of the Department of Military Affairs, and shall be audited by the city controller in the manner provided by this act for the audit of accounts of city moneys.

36. Appropriation of Money, Et Cetera, to Assist in Erection of Armories.--To appropriate money or convey land, either independently or in conjunction with any other political subdivision, to the Commonwealth, for the purpose of assisting the Armory Board of the State of Pennsylvania in the erection of armories for the use of the National Guard, and to furnish water, sewer services, light, or fuel free of cost to the Commonwealth for use in any armory of the National Guard; and to do all things necessary to accomplish the purpose of this clause.

37. Eminent Domain for National Guard Purposes.--To take, by right of eminent domain, for the purpose of appropriating to itself for the use of the National Guard of Pennsylvania, such public lands, easments, and public property as may be in its possession or control and used or held by it for any other purpose. Such right, however, shall not be exercised as to any street or wharf.

38. Lands for Armory Purposes.--To acquire, by purchase or by gift, or by the right of eminent domain, any land for the use of the National Guard of Pennsylvania; and to convey such lands so acquired to the Commonwealth in order to assist the Armory Board in the erection of armories. The power conferred by this clause shall not be exercised to take any church property, grave-yard, or cemetery. Lands within three miles outside the limits of the city may be acquired in like manner for the use of the National Guard.

39. Purchase of Burial Grounds for Deceased Service Persons.--To appropriate money for and purchase plots of ground in any cemetery or burial ground, within their respective limits, for the interment of such deceased service persons as shall hereafter die within such city, or shall die beyond such city and shall have a legal residence within such city at the time of their death, and whose bodies are entitled to be buried by the county under the provisions of existing laws.

40. Payment of Rent for Veterans' Organizations.--By a two-third vote of the council, to appropriate money to any incorporated organization of veterans of any war in which the United States was engaged, to be used in the payment of the rent of any building or rooms in which such organization has its regular meetings.

41. Rooms for Meetings of Veterans.--To furnish, upon application, to each organization composed of veterans of the Civil War, veterans of the Spanish American War, veterans of the World War or World War II, veterans of any foreign war, and children of veterans, a room or rooms in any public building of such city, sufficient for the meeting of each of such organizations at least once each month.

42. Care of Memorials.--To take charge of, care for, maintain, and keep in good order and repair, at the expense of the city, any soldiers' monument, gun or carriage, or similar memorial, situate in the city, and not in the charge or care of any person, body, or

organization, and not put up or placed by the Government of the United States, the Commonwealth of Pennsylvania, the commissioners of the county, or by the direction or authority of any other state of the Union, and to receive from any person or organization any moneys or funds which can be used for the benefit of such memorials, and to expend the same.

43. Manufacture and Sale of Ice.--To manufacture ice, and to sell the same to the inhabitants of the city at such rates as shall be fixed by ordinance, and to erect, equip, and maintain such buildings and other structures, and purchase or hire and maintain such vehicles, as may be deemed necessary for such purpose.

44. Inspection of Milk.--To provide for the inspection of milk sold or consumed within the city and milk depots, and dairies which offer milk or milk products for retail sale within the city, under such rules and regulations as will protect the people from adulteration and dilution of the same.

45. Municipal Music.--To appropriate money to defray the expenses of musical entertainments held under the auspices of the city, and for the purpose of having music in any public park or place.

46. Regulation and Licensing of Auction Sales.--To regulate and license sales of merchandise at public auction, other than judicial sales, sales by executors or administrators, or sales by or in behalf of licensed pawnbrokers of unredeemed pledges in the manner provided by law.

47. Aid to Historical Societies.--To make annual appropriations not exceeding one thousand dollars for the support and maintenance of the principal historical society located therein, which shall be incorporated under the laws of the Commonwealth, shall maintain permanent quarters and shall keep the same open to the public, shall have a membership of at least one hundred persons who have paid into the treasury of the society a membership fee of at least two dollars for the support of the society, shall hold, annually, at least two regular meetings that shall be open to the public, and shall at all times maintain facilities for the free storage, deposit, and inspection of official documents and records of the city, and other proper public or historical archives and records.

48. Establishment of Institutions to Collect Educational Collections.--To establish institutions authorized to collect and hold certain scientific, educational and economic collections, the object of each being the instruction of the public concerning commerce, manufacturing, mining, and agriculture; said institutions to have power to purchase or accept by gift any real estate, money, or personal property necessary for their use and promotion, and power to use, convey, or transfer the same, as if they were bodies corporate, to be governed by boards of trustees, nominated, appointed, and confirmed in such manner as council may determine.

49. Sprinkling of Streets.--To cause any street, or part thereof, not less than one block, to be sprinkled with water or, if such street is paved, to be cleaned during such time as it may be necessary, at the expense of the owners of property abutting upon the same. Upon the petition of the owners of such property, who shall represent a majority of the feet front on the street or part thereof, it shall be the duty of council to cause such

sprinkling or cleaning to be done at the expense of the owners of property abutting thereon. Council may cause such sprinkling to be done with the water of the city, when water works are owned or operated by the city, and the sprinkling carts and apparatus owned by the city, or may contract for the use of said carts and apparatus with the lowest responsible bidder.

50. Electric Wires may be Placed Underground in Certain Districts.--To define a reasonable district within which all electric light wires, telephone and telegraph wires shall be placed under ground in conduits owned and constructed either by the municipality or by corporations owning such wires, or by corporations organized for the purpose of laying such conduits and renting space therein. In all cases in which such conduits are owned by any private corporation, partnership, or individual, there shall be reserved to the city, whether expressed in the ordinance or not, the right to regulate, by ordinance, the manner in which such conduit shall be used, and the terms and conditions of such use, and also the right to take such conduits, either by purchase, upon agreement of the owners thereof and the city, or by condemnation proceedings; in which latter case the proceedings for the assessment of damages shall be the same as provided in this act for property taken, injured or destroyed.

The court of quarter sessions upon the appeal of any person may review any ordinance passed in pursuance of this clause, and may annul such ordinance if deemed unreasonable, capricious or arbitrary, such appeal to be taken within thirty days from the approval of such ordinance.

51. Ambulances and Service; Maintenance.--To acquire, by purchase, gift or bequest, or to operate and maintain ambulances or ambulance service for the purposes of conveying sick and injured persons in the city and the vicinity to and from hospitals, or in lieu thereof, to hire a private ambulance service, and, for such purposes, to appropriate and expend moneys of the city; or to appropriate money annually toward a nonprofit community ambulance service. All appropriations of money heretofore made and contracts for hire of private ambulance service heretofore entered into by any city are hereby validated and confirmed.

52. Weighing and Measuring of Commodities.--To regulate the weighing and measuring of every commodity sold in the city, in all cases not otherwise provided for by law, including the measuring of gas, water, and electric currents; to provide for and regulate the inspection and weighing of hay, grain, and coal, and the measuring of wood, bark, and fuel, to be used in the city, and to designate the place or places of inspecting and weighing the same; to regulate and prescribe the place or places for exposing for sale hay, coal, bark and wood; to demand and receive reasonable fees for such inspection, weighing and measuring; for the regulation and stamping of weights and measures; and the regulation and inspection of meters, except as otherwise provided by law.

53. Insurance.--To make contracts of insurance with any mutual or other fire insurance company, association or exchange, duly authorized by law to transact insurance business in the Commonwealth of Pennsylvania, on any building or property owned by the city.

To make contracts of insurance with any insurance company, or

nonprofit hospitalization corporation, or nonprofit medical
service corporation, authorized to transact insurance business
within the Commonwealth, insuring its elected or appointed
officers, officials and employes, or any class or classes thereof,
or their dependents, under a policy or policies of group insurance
covering life, health, hospitalization, medical service, or
accident insurance, and to contract with any such company granting
annuities or pensions for the pensioning of such persons; and, for
such purposes, to agree to pay part or all of the premiums or
charges for carrying such contracts, and to appropriate out of its
treasury any money necessary to pay such premiums or charges, or
portions thereof. All contracts procured hereunder shall conform
and be subject to all the provisions of any existing or future
laws concerning group insurance and group annuity contracts. The
proper officer, agency, board or commission of the city having
authority to enter into such contracts of insurance is hereby
authorized, enabled and permitted to deduct from the officer's or
employe's pay, salary or compensation, such part of the premium as
is payable by the officer or employe and as may be so authorized
by the officer or employe in writing.
    54.  Parking Lots.--To acquire by lease, purchase, or
condemnation proceedings, any land which in the judgment of city
council may be necessary and desirable for the purpose of
establishing and maintaining lots for the parking of motor
vehicles, and for no other use or purpose, and to regulate the use
thereof and to establish or designate, at the discretion of
council, areas exclusively reserved for parking by handicapped
individuals and to post signs regulating such areas.
    55.  Disorderly Conduct.--To define disorderly conduct within
the limits of the city and to provide for the imposition of
penalties for such conduct in such amounts, without limitation
except as in this act provided, as council shall establish, and
notwithstanding any statutes of the Commonwealth upon disorderly
conduct and the penalties therefor.
    56.  Official Expenses on City Business.--To make
appropriations for the reasonable expenses of city officials
actually incurred in the conduct of city business.
    57.  Insurance Against Burglary, Etc.--To insure against
burglary or theft of city property, or against fire and other
calamities, and against public liability.
    58.  To Provide Against Hazards of War.--To build or establish
bomb shelters or assist in so doing to provide against all hazards
of war and their consequences; and for all such purposes, to have
the power of eminent domain, to cooperate with any other unit and
agency of government, Federal, State, or local, in every lawful
way, for purposes of defense and against the hazards of war.
    59.  Municipality Authorities; Cooperation with Other Political
Subdivisions.--To form municipality authorities as authorized by
law. To cooperate with other political subdivisions in the conduct
of city affairs as authorized by law.
    60.  Local Self-Government.--In addition to the powers and
authority vested in each city by the provisions of this act, to
make and adopt all such ordinances, by-laws, rules and
regulations, not inconsistent with or restrained by the
Constitution and laws of this Commonwealth, as may be expedient or
necessary for the proper management, care and control of the city
and its finances, and the maintenance of the peace, good

government, safety and welfare of the city, and its trade, commerce and manufactures; and also all such ordinances, by-laws, rules and regulations as may be necessary in and to the exercise of the powers and authority of local self-government in all municipal affairs; and the said ordinances, by-laws, rules and regulations to alter, modify, and repeal at pleasure; and to enforce all ordinances inflicting penalties upon inhabitants or other persons for violations thereof, and impose penalties in accordance with section 4131.1: Provided, however, That no ordinance, by-law, rule or regulation shall be made or passed which contravenes or violates any of the provisions of the Constitution of the United States or of this Commonwealth, or of any act of Assembly heretofore or that may be hereafter passed and in force in said city.

61.  Historical Property.--To acquire by purchase or by gift, and to repair, supervise, operate and maintain ancient landmarks and other property of historical or antiquarian interest, which is either listed in the Catalogue of Historical Sites and Buildings in Pennsylvania issued by the Joint State Government Commission, or approved for acquisition by the Pennsylvania Historical and Museum Commission as having historical significance.

62.  Appropriations for Handling, Storage and Distribution of Surplus Foods.--The council of any city to which this act applies may appropriate from city funds moneys for the handling, storage and distribution of surplus foods obtained either through a local, State or Federal agency.

All appropriations of moneys heretofore made by the council of any city for the handling, storage and distribution of surplus foods obtained, either through a local, State or Federal agency, are hereby validated.

63.  Junk Dealers and Junk Yards.--To regulate and license junk dealers and the establishment and maintenance of junk yards and scrap yards including, but not limited to, automobile junk or grave yards.

64.  Appropriations for Industrial Promotions.--To make appropriations to an industrial development agency as defined in section 3, act of May 31, 1956 (P.L.1911), known as the "Industrial Development Assistance Law," when the city is located within the area for which the agency has been authorized to make application to and receive grants from the Department of Commerce for the purposes specified in the "Industrial Development Assistance Law."

65.  Non-debt Revenue Bonds.--To issue non-debt revenue bonds pursuant to provisions of the act of June 25, 1941 (P.L.159), known as the "Municipal Borrowing Law," and its amendments, to provide sufficient moneys for and toward the acquisition, construction, reconstruction, extension or improvement of municipal facilities, including water systems or facilities, sewers, sewer systems and sewage disposal systems or facilities, systems for the treatment or disposal of garbage and refuse, buildings, machinery and apparatus for manufacturing and distributing electric, gas or light, aeronautical facilities including but not limited to airports, terminals and hangars, park and recreational facilities, parking lots and public auditoriums to be secured solely by the pledge of the whole or part of the rent, toll or charge for the use or services of such facilities. Included in the cost of the issue may be any costs and expenses

incident to constructing and financing the facilities and selling and distributing the bonds.

66. Appropriations for Urban Common Carrier Mass Transportation.--To appropriate funds for urban common carrier mass transportation purposes from current revenues and to make annual contributions to county departments of transportation or to urban common carrier mass transportation authorities to assist the departments or the authorities to meet costs of operation, maintenance, capital improvements, and debt service, and to enter into long-term agreements providing for the payment of the said contributions.

67. Adoption and Amendment of Codes by Reference.--To incorporate by reference the provisions of any code or portions of any code, or any amendment thereof, properly identified as to date and source, without setting forth in full the provisions to be adopted: Provided, however, That no portion of any code which limits the work to be performed to any type of construction contractor, or labor or mechanic classification shall be adopted. Not less than three copies of such code, portion, or amendment which is incorporated or adopted by reference, shall be filed with the clerk of the city and kept with the city ordinance book, and available for public use, inspection and examination. The filing requirements herein prescribed shall not be deemed to be complied with unless the required copies of such codes, portion, or amendment or public record are filed with the clerk of such city at least ten days before council considers the proposed ordinance.

Any ordinance adopted by reference to any code shall be enacted within sixty days after it is filed with the clerk of the city, and shall only encompass the provisions of the code effective as of the code date stated in the ordinance. Any subsequent changes in the code shall be adopted by the city before they may become effective as an ordinance of the city.

Any city that has adopted any code by reference may adopt subsequent ordinances which incorporate by reference any subsequent changes thereof, properly identified as to date and source, as may be adopted by the agency or association which promulgated the code.

Any ordinances which incorporate code amendments by reference shall become effective after the same procedure and in the same manner as is herein specified for original adoption of any such code.

68. Appropriation for Nonprofit Art Corporation.--To appropriate moneys annually, not exceeding an amount equal to one mill of the real estate tax to any nonprofit art corporation for the conduct of its artistic and cultural activities. For the purposes of this section nonprofit art corporation shall mean a local arts council, commission or coordinating agency, or any other nonprofit corporation engaged in the production or display of works of art, including the visual, written or performing arts. Artistic and cultural activities shall include the display or production of theater, music, dance, painting, architecture, sculpture, arts and crafts, photography, film, graphic arts and design and creative writing.

69. Emergency Services.--(a) The city shall be responsible for ensuring that fire and emergency medical services are provided within the city by the means and to the extent determined by the city, including the appropriate financial and administrative

assistance for these services.
     (b)  The city shall consult with fire and emergency medical
services providers to discuss the emergency services needs of the
city.
     (c)  The city shall require any emergency services
organizations receiving city funds to provide to the city an
annual itemized listing of all expenditures of these funds before
the city may consider budgeting additional funding to the
organization.]
     Section 187.  The act is amended by adding sections to read:
     **Section 2404.  Creation of Capital and Operating Reserve
Funds.--(a)  Council may create and maintain a separate capital
reserve fund for any anticipated capital expenses, which fund
shall be designated for a specific purpose or purposes when
created. The moneys in the fund shall be used for no other purpose
unless the council declares that conditions in the city make other
expenses more urgent than those for which the fund was created.
Council may appropriate moneys from the general city funds to be
paid into the capital reserve fund or place in the fund any moneys
received from the sale, lease or other disposition of any city
property or from any other source.**
     **(b)  With regard to an operating reserve fund, the following
shall apply:**
     **(1)  Council shall have the power to create and maintain a
separate operating reserve fund in order to:**
     **(i)  minimize future revenue shortfalls and deficits;**
     **(ii)  provide greater continuity and predictability in the
funding of vital government services;**
     **(iii)  minimize the need to increase taxes to balance the
budget in times of fiscal distress; and**
     **(iv)  provide the capacity to undertake long-range financial
planning and to develop fiscal resources to meet long-term needs.**
     **(2)  Council may annually make appropriations from the general
city fund to the operating reserve fund, but no appropriation
shall be made to the operating reserve fund if the effect of the
appropriation would cause the fund to exceed twenty-five per
centum of the estimated revenues of the city's general fund in the
current fiscal year.**
     **(3)  Council may, at any time by resolution, make
appropriations from the operating reserve fund for the following
purposes only:**
     **(i)  to meet emergencies involving the health, safety or
welfare of the residents of the city;**
     **(ii)  to counterbalance potential budget deficits resulting
from shortfalls in anticipated revenues or program receipts from
whatever source;**
     **(iii)  to counterbalance potential budget deficits resulting
from increases in anticipated costs for goods or services; or**
     **(iv)  to provide for anticipated operating expenditures related
either to the planned growth of existing projects or programs or
to the establishment of new projects or programs if, for each such
project or program, appropriations have been made and allocated to
a separate restricted account established within the operating
reserve fund.**
     **(c)  The operating reserve fund shall be invested, reinvested
and administered in a manner consistent with the provisions of
this act relating to the investment of city funds generally.**

Section 2405.  Hiring of Employes; Salaries.--Council may
provide for and regulate the manner of hiring and discharging
employes and the fixing of their salaries or compensation,
consistent with applicable Federal and State law.
Section 2406.  Creation of Necessary Offices or Boards.--In
addition to the city departments established in accordance with
Article XI, council may create any city office, or public board,
bureau or commission, which it may deem necessary for the good of
government and interests of the city, and, with regard to an
office or membership on a board, bureau or commission, unless
otherwise provided by this act, council may make appointments
thereto and regulate and prescribe the terms, duties and
compensation thereof.
Section 2407.  Lockups.--(a)  Council may provide for lockup
facilities as deemed necessary for the detention and confinement
of persons.
(b)  No city shall erect or construct a city jail or lockup, or
use any existing building or lockup for the first time that will
be or is located within five hundred feet of any public school
building.
Section 2408.  Market Places.--Council may:
(1)  Purchase, lease and own ground for market places.
(2)  Erect, maintain and establish market places.
(3)  Provide for and enforce suitable general market
regulations.
(4)  Contract with any person or persons or association of
persons, companies or corporations for the erection and regulation
of market places, on such terms and conditions and in such manner
as council may prescribe.
(5)  Levy and collect a license fee from every person or
persons who may be authorized by council to occupy any portion of
the streets, sidewalks or city property for temporary market
purposes.
Section 2409.  Accumulation of Ashes, Garbage, Solid Waste and
Refuse Materials.--(a)  Council in the manner authorized by the
act of July 7, 1980 (P.L.380, No.97), known as the "Solid Waste
Management Act," and the act of July 28, 1988 (P.L.556, No.101),
known as the "Municipal Waste Planning, Recycling and Waste
Reduction Act," may prohibit accumulations of ashes, garbage,
solid waste and other refuse materials upon private property,
including the imposition and collection of reasonable fees and
charges for the collection, removal and disposal thereof.
(b)  Council may collect and remove, by contract or otherwise,
ashes, garbage, solid waste and other refuse materials and
recyclables and prescribe penalties for the enforcement thereof.
Any contract with refuse haulers may be made for an initial period
not exceeding five years with optional renewal periods of up to
five years. This limitation does not apply to contracts with any
other county or municipal corporation.
(c)  Council may dispose of, by contract or otherwise, ashes,
garbage, solid waste or other refuse materials. Any contract with
the owner of a private facility for the disposal or incineration
of ashes, garbage, solid waste or other refuse materials may be
made for a period not exceeding twenty years. This limitation does
not apply to contracts with any county or municipal corporation.
(d)  Council may acquire any real property and erect, maintain,
improve, operate and lease, either as lessor or lessee, facilities

for incineration, landfill or other methods of disposal, either inside or outside the limits of the city, including equipment, either separately or jointly, with any county or municipal corporation in order to provide for the destruction, collection, removal and disposal of ashes, garbage, solid waste or other refuse materials, for the collection and storage of recyclable materials or for the composting of leaf and yard waste. Council may provide for the payment of the cost thereof out of the funds of the city. Council may acquire land for landfill purposes, either amicably or by exercising the power of eminent domain, and maintain lands and places for the dumping of ashes, garbage, solid waste or other refuse materials. If council acquires land outside the limits of the city by exercising the power of eminent domain, the taking shall be subject to the limitations in 26 Pa.C.S. § 206 (relating to extraterritorial takings).

(e)  Council may establish, alter, charge and collect rates and other charges for the collection, removal and disposal of ashes, garbage, solid waste, other refuse materials and recyclable materials, and the cost of including the payment of any indebtedness incurred for the construction, purchase, improvement, repair, maintenance and operation of any facilities therefore, and the amount due under any contract with any county or municipal corporation furnishing the services or facilities. The rates and other charges shall be collected pursuant to the Municipal Claim and Tax Lien Law, or by an action in assumpsit.

(f)  Council may make appropriations to any county or municipal corporation for the construction, purchase, improvement, repair, maintenance and operation of any facilities for the collection, removal, disposal or marketing of ashes, garbage, solid waste, other refuse materials, recyclable materials or composted leaf and yard waste.

(g)  A city shall not be subject to requirements otherwise imposed by law for the sale of personal property owned by the city when selling recyclable materials or materials separated, collected, recovered or created by recycling, as provided in the act of April 9, 1992 (P.L.70, No.21), entitled "An act excluding the sale of recyclable material from political subdivision personal property sale restrictions relating to advertising and bidding."

Section 2410.  Regulation of Pets and Feral Animals.--Council may, by ordinance, prohibit and regulate the running at large of dogs, cats, other pets and feral animals.

Section 2411.  Inspection and Regulation of Fireplaces, Chimneys, Et Cetera; Smoke Regulations.--In conformity with Federal and State laws and regulations, council may regulate and inspect fireplaces, chimneys and other sources of smoke and fly-ash to control the production and emission of unnecessary smoke and fly-ash.

Section 2412.  Fireworks and Inflammable Articles.--In conformity with Federal and State laws and regulations, council may:

(1)  Regulate and prohibit the manufacture of fireworks or inflammable or dangerous articles.

(2)  Grant permits for supervised public displays of fireworks and adopt rules and regulations governing the displays.

(3)  Adopt rules and regulations not inconsistent with State regulations relating to the storage of inflammable articles.

(4)  Impose other safeguards concerning inflammable articles as may be necessary.

Section 2413.  Regulation of Division Fences, Party Walls, Foundations.--(a)  Subject to the provisions of and regulations adopted pursuant to the Pennsylvania Construction Code Act and other applicable law, council may provide regulations for party walls and division fences and for the foundations of buildings, and for entering upon the land or lands, lot or lots, of any person or persons, within the city, at all reasonable hours, by its duly appointed city engineer, or building inspectors, in order to enforce the regulations and set out foundations. Council may also prescribe reasonable fees for the service of city officers in the inspection and regulation of party walls, division fences and foundations and may enforce the payment of the same. Council may provide fines or penalties for violations of an ordinance enacted pursuant to this section.

(b)  In setting out foundations and regulating party walls as to breadth and thickness, the city shall cause the foundations to be laid equally upon the lands of the persons between whom the party wall is to be made. The cost of the foundation and party wall shall be divided proportionately among the property owners sharing the same. The property owners shall either share the expense when the foundation is laid and the party wall is erected or when the subsequent building is erected if all buildings are not erected at the same time.

Section 2414.  Nuisances.--Council may prohibit and abate public nuisances in accordance with Article XXVII-A.

Section 2415.  Regulation of Encroachments.--In compliance with applicable State laws and city ordinances, council may provide for the regulation of all encroachments in, under or upon any of the sidewalks or other portion of the streets of the city.

Section 2416.  Shade Trees.--(a)  Council may, by ordinance, regulate the manner and method, if any, for the planting, trimming, removing, maintaining and protection of shade trees in, on and along or extending over the public streets, sidewalks and rights-of-way of the city and provide for penalties for violations thereof. The cost of such activities may, at council's discretion, be assessed against the owners of the properties abutting the street, sidewalk or right-of-way upon which any tree is located pursuant to Article XLV-A, except that the cost and expense of caring for trees after they have been planted shall be paid by the city.

(b)  Council may, by ordinance, provide for the creation of a shade tree commission, its composition, powers and duties and delegate council's authority for regulating shade trees to the commission. Alternatively, council may delegate its regulatory powers for shade trees to an existing department. If a shade tree commission is established, its meeting shall be subject to the provisions of 65 Pa.C.S. Ch. 7 (relating to open meetings).

Section 2417.  Numbering of Buildings.--Council may require and regulate the numbering of buildings and lots.

Section 2418.  Transportation Stands.--Council may establish stands for taxis, buses, automobiles and other vehicles for hire and enforce the observance and use thereof.

Section 2419.  Police Force.--(a)  Council shall have the power to establish and maintain a police force and define the duties of the same in accordance with Article XX.

   (b)   Subject to the requirements of 53 Pa.C.S. Ch. 23 Subch. A
(relating to intergovernmental cooperation), council shall have
the power to provide for police services to be performed by
municipal police officers by contract or by purchase of the police
services or by joining or developing a consolidated regional
police service.
   Section 2420.   Police Regulations.--Council may establish and
enforce suitable police regulations for the protection of persons
and property.
   Section 2421.   Rewards.--Council may offer rewards for the
arrest and conviction of persons guilty of capital or other crimes
within the city.
   Section 2422.   Prevent Riots.--Council may prevent and restrain
riots, noises, disturbances or disorderly assemblies in any
street, house or place in the city.
   Section 2423.   Regulate Discharge of Guns and Deadly
Weapons.--To the extent permitted by Federal and other State law,
council may regulate, prohibit and prevent the discharge of guns
and prevent the carrying of concealed deadly weapons.
   Section 2424.   Racing; Dangerous Practices; Et Cetera.--With
regard to streets and public places in the city, council may
regulate or prohibit racing or fast driving of vehicles and all
games, practices or amusements likely to result in danger or
damage to any person or property.
   Section 2425.   Bathing; Recreational Swimming Establishments;
Boat Houses and Bath Houses.--To the extent permitted by the act
of June 23, 1931 (P.L.899, No.299), known as the "Public Bathing
Law," council may regulate the time and place of bathing in rivers
and other public water in and adjoining the city and may
construct, maintain and manage municipal boat houses, bath houses
and recreational swimming establishments.
   Section 2426.   Musical Entertainment.--Council may appropriate
money to defray the expenses of musical entertainments held under
the auspices of the city and for the purpose of having music in
any public park or place.
   Section 2427.   Aid to Historical Societies.--Council may make
annual appropriations for the support and maintenance of the
principal historical society located in the city, which shall be
incorporated under the laws of the Commonwealth, shall maintain
permanent quarters and shall keep the same open to the public.
   Section 2428.   Establishment of Institutions to Collect
Educational Collections.--Council may establish institutions
authorized to collect and hold certain scientific, educational and
economic collections, the object of each being the instruction of
the public concerning commerce, manufacturing, mining and
agriculture. The institutions may purchase or accept by gift any
real estate, money or personal property necessary for their use
and promotion. The institutions may use, convey, or transfer the
same as if they were bodies corporate, and these institutions
shall be governed by boards of trustees, nominated, appointed and
confirmed in the manner council may determine.
   Section 2429.   Ambulances and Rescue and Lifesaving Services.--
Council may acquire, operate and maintain motor vehicles for the
purposes of conveying sick and injured persons to and from
hospitals, and it may appropriate moneys toward ambulance and
rescue and lifesaving services and make contracts relating
thereto.

Section 2430.  Insurance.--(a)  Council, in its discretion or as required by law or a collective bargaining agreement, may make contracts of insurance and contracts for annuities or pensions, including, but not limited to, the following:

(1)  Contracts of insurance with any mutual or other fire insurance company, association or exchange, duly authorized by law to transact insurance business in this Commonwealth, on any building or property owned by the city and contracts to insure against burglary or theft of city property, or against fire and other calamities, and against public liability.

(2)  Contracts of insurance with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical service corporation, authorized to transact insurance business within this Commonwealth, insuring elected or appointed officers, officials and employes of the city, or any class or classes thereof, or their dependents, under a policy or policies of group insurance covering life, health, hospitalization, medical service or accident insurance.

(3)  Contracts to purchase annuities or pensions for elected or appointed officers, officials and employes, or any class or classes thereof.

(b)  In the case of contracts for the benefit of elected or appointed officers, officials and employes of the city, or any class or classes thereof, or their dependents, the city may, as determined by council or as required by law or a collective bargaining agreement, pay part or all of the premiums or charges for the contracts.

Section 2431.  Parking Lots.--Council may acquire by lease, purchase or condemnation proceedings, land which in its judgment may be necessary and desirable for the purpose of establishing and maintaining lots for the sole purpose of parking motor vehicles. Council may regulate the use of the land, including the posting of signs, and may establish or designate areas exclusively reserved for parking by persons with disabilities. Such regulation of parking lots shall be consistent with 75 Pa.C.S. (relating to vehicles) and the act of October 27, 1955 (P.L.744, No.222), known as the "Pennsylvania Human Relations Act."

Section 2432.  Disorderly Conduct.--Council may, by ordinance, prohibit disorderly conduct within the limits of the city and provide for the imposition of penalties in accordance with this act. If an ordinance is enacted, it shall define disorderly conduct in a manner substantially similar to the provisions of 18 Pa.C.S. § 5503 (relating to disorderly conduct).

Section 2433.  Official Expenses on City Business.--Council may make appropriations for the reasonable expenses of city officials actually incurred in the conduct of city business.

Section 2434.  Municipality Authorities; Cooperation with Other Political Subdivisions.--(a)  The council may, by ordinance, individually or in cooperation with other municipalities or school districts, form municipal authorities as authorized by 53 Pa.C.S. Ch. 56 (relating to municipal authorities).

(b)  The council may, by ordinance, make cooperative agreements with regard to the performance of a city's powers, duties and functions in accordance with the provisions of 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation).

Section 2435.  Local Self-Government.--The council of each city shall have power to enact, make, adopt, alter, modify, repeal and

enforce in accordance with this act ordinances, resolutions, rules and regulations, not inconsistent with or restrained by the Constitution of Pennsylvania and laws of this Commonwealth, that are either of the following:

(1) Expedient or necessary for the proper management, care and control of the city and its finances and the maintenance of the peace, good government, safety and welfare of the city and its trade, commerce and manufactures.

(2) Necessary to the exercise of the powers and authority of local self-government in all municipal affairs.

Section 2436. Historical Property.--Council may acquire by purchase or by gift and may repair, supervise, operate and maintain landmarks and other historical properties which are either eligible for listing or listed in the National Register of Historic Places or certified by the Pennsylvania Historical and Museum Commission as having historical significance.

Section 2437. Appropriations for Handling, Storage and Distribution of Surplus Foods.--(a) Council may appropriate from city funds moneys for the handling, storage and distribution of surplus foods obtained through a Federal, State or local agency.

(b) All appropriations of moneys previously made by the council of any city for the handling, storage and distribution of surplus foods obtained, through a Federal, State or local agency, are hereby validated.

Section 2438. Junk Dealers and Junk Yards.--Council may regulate and license junk dealers and the establishment and maintenance of junk yards and scrap yards, including, but not limited to, automobile junk or grave yards.

Section 2439. Appropriations for Industrial Promotions.-- Council may make appropriations to an industrial development organization as defined in section 2301 of the act of June 29, 1996 (P.L.434, No.67), known as the "Job Enhancement Act," when the city is located within the area for which the industrial development organization has been authorized to make application to and receive grants from the Department of Community and Economic Development for the purposes specified in Chapter 23 of the "Job Enhancement Act."

Section 2440. Non-debt Revenue Bonds.--Consistent with and without limitation of any power conferred or duty imposed by 53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and borrowing), council may issue non-debt revenue bonds pursuant to provisions of 53 Pa.C.S. Pt. VII Subpt. B.

Section 2441. Appropriations for Urban Common Carrier Mass Transportation.--Council may appropriate funds for urban common carrier mass transportation purposes from current revenues and make annual contributions to county departments of transportation or to urban common carrier mass transportation authorities to assist the departments or the authorities to meet costs of operation, maintenance, capital improvements and debt service, and to enter into long-term agreements providing for the payment of the contributions.

Section 2442. Appropriation for Nonprofit Art Corporation.-- Council may appropriate moneys annually, not exceeding an amount equal to one mill of the real estate tax to any nonprofit art corporation for the conduct of its artistic and cultural activities. For the purposes of this section, "nonprofit art corporation" shall mean a local arts council, commission or

coordinating agency, or any other nonprofit corporation engaged in the production or display of works of art, including the visual, written or performing arts. Artistic and cultural activities shall include the display or production of theater, music, dance, painting, architecture, sculpture, arts and crafts, photography, film, graphic arts and design and creative writing.

Section 2443. Ratification and Validation of Real Estate Sales.--All deeds conveying title to real estate or interests therein from any city to any other party which are executed and delivered pursuant to an ordinance or resolution of the city council and which are not contested by an action filed in the court of common pleas of the county in which the city is located within six years of the date such deeds are recorded are hereby declared to be valid and to have fully and effectively conveyed the property and interests described therein in accordance with the terms thereof. No such deed shall thereafter be subject to attack in any court, agency or proceeding.

Section 2444. Maintenance and Validation of Certain Records.-- Except as otherwise may be required by any law governing the recording of documents with the recorder of deeds, all city records that are required to be recorded or copied shall be deemed valid if recorded or transcribed by any digital, photostatic, photographic, microphotographic, microfilm, microcard, miniature photographic, optical, electronic or other process which accurately reproduces the original and forms a durable medium for recording, storing and reproducing the original in accordance with standards, policies and procedures for the creation, maintenance, transmission or reproduction of images of records approved by the county or local government records committees, as applicable, and as otherwise provided by law. No city shall be required to retain original or paper copies of any documents after the documents are archived by any of the methods stated in this section or as otherwise provided by law. Where recording in a specific book is required, except for minutes or the proceedings of council, such records may be recorded, transcribed or otherwise assembled in an appropriate book, disk or other medium approved by resolution of council, and all records heretofore recorded and assembled in any manner are hereby validated.

Section 2445. Rights Within Streets and Rights-of-Way.--(a) The power granted to a city in subsection (b) shall be exercised in compliance with Federal and State law and shall be subject to the power of the Pennsylvania Public Utility Commission under 66 Pa.C.S. Pt. I (relating to public utility code) to regulate the business, facilities and service of public utilities, including determining the location and installation of utility facilities.

(b) Council may consent to a public or private corporation or any other person using city streets and other properties, whether such use is within, on or over the streets or public property in question, for transportation purposes or for the purpose of installing and maintaining pipes, wires, fibers, cables or any other utility or service medium. Council may define a reasonable district or reasonable districts within which all electric or telephone wires, cables or any other utility or service medium are to be placed underground. A city shall pay just compensation to any property owner whose land has been acquired by the city for use as a right-of-way for purposes of this section. Just compensation shall be determined pursuant to 26 Pa.C.S. (relating

to eminent domain).

Section 2446.  Emergency Services.--(a)  The city shall be responsible for ensuring that fire and emergency medical services are provided within the city by the means and to the extent determined by the city, including the appropriate financial and administrative assistance for these services.

(b)  The city shall consult with fire and emergency medical services providers to discuss the emergency services needs of the city.

(c)  The city shall require any emergency services organizations receiving city funds to provide to the city an annual itemized listing of all expenditures of these funds before the city may consider budgeting additional funding to the organization.

Section 2447.  Charitable Purposes.--(a)  Council may, by ordinance, create a city bureau or agency which bureau or agency may receive in trust, and city council may control for the purposes of the trust, all estate, moneys, assets and property, real and personal, which may have been or shall be bestowed upon it by donation, gift, legacy, endowment, bequest, devise, conveyance or other means, for charitable purposes.

(b)  Council may make appropriations to the agency or bureau for charitable purposes except as limited by the Constitution of Pennsylvania and laws of this Commonwealth.

(c)  As used in this section, "charitable purposes" shall mean the relief of poverty, the advancement of education, the promotion of health, governmental or municipal purposes and other purposes the accomplishment of which is beneficial to the community.

Section 188.  Article XXV heading of the act is reenacted to read:

ARTICLE XXV
TAXATION

Section 189.  Article XXV subdivision (a) heading of the act is amended to read:

(a)  Assessments [and Revisions] **of Property for Taxation**

Section 190.  Sections 2501, 2502 and 2503 of the act are repealed:

[Section 2501.  Election of Assessor; Term; Removal; Qualifications.--The council of each city on the first Monday of January, one thousand nine hundred and fifty-two, and on the first Monday of January in every fourth year thereafter, or as soon thereafter as may be conveniently done, shall elect one person, resident of the city for at least five years previous to his election, a qualified elector thereof, and owner of real estate therein, at the time of his election and during the entire term of service, of the assessed value of at least five hundred dollars, as city assessor, to serve for the term of four years from the first Monday of January in the year in which he is elected. Any assessor may be removed from office by council and the vacancy thus occasioned may be filled in the manner hereinafter provided. Council shall not permit any person elected assessor to enter upon the duties of said office, nor continue in office, when he does not have and possess all of the qualifications aforesaid. For this purpose council shall have power, by a majority vote of all the members elected thereto, to declare the said office of assessor vacant at any time any person has not or ceases to have the qualifications aforesaid for the said office. They may thereupon

fill the vacancy thus occasioned, in the manner hereinafter
provided for the filling of vacancies.
    Section 2502.  Oath of Assessor; Filling of Vacancies.--The
said assessor shall, before entering upon his duties, take and
subscribe the oath prescribed for municipal officers, and file the
same with the city clerk. Any vacancy happening in said office
shall be filled by appointment by council, for the unexpired term.
    Section 2503.  Assistant Assessors; Compensation of Assessors
and Assistants.--The council may, during each triennial year and
in the intervening years, appoint such assistant assessors, to
serve for such length of time as council may authorize, direct, or
appoint by ordinance. Such assistant assessors shall be removable
at the pleasure of council. The compensation or salary of the city
assessor, and of the assistant assessors, if any, shall be fixed
by ordinance.]
    Section 191.  Sections 2503.1 and 2504 of the act, amended or
added December 13, 1982 (P.L.1192, No.273), are repealed:
    [Section 2503.1.  Definitions.--The following words and phrases
when used in this act shall have, unless the context clearly
indicates otherwise, the meanings given to them in this section:
    "Base year," the year upon which real property market values
are based for the most recently citywide revision of assessment of
real property or other prior year upon which the market value of
all real property of the city is based. Real property market
values shall be equalized within the city and any changes by the
board of revision of taxes and appeals shall be expressed in terms
of such base year values.
    "Board," the board of revision of taxes and appeals in cities
of the third class.
    "Common level ratio," the ratio of assessed value to current
market value used generally in the county as last determined by
the State Tax Equalization Board pursuant to the act of June 27,
1947 (P.L.1046, No.447), referred to as the State Tax Equalization
Board Law.
    "Established predetermined ratio," the ratio of assessed value
to market value established by the city council and uniformly
applied in determining assessed value in any year.
    Section 2504.  Assessment of Property; Duties of Assessor.--(a)
 The assessor shall make, or cause to be made, during the year one
thousand nine hundred fifty-four, and every third year thereafter,
a full, just, equal, and impartial assessment of all property,
taxable according to the laws of this Commonwealth for county
purposes, and all matters and things within the city subject by
law to taxation for city purposes, and a just and perfect list of
all property exempt by law from taxation, with a just valuation of
the same. But nothing hereinbefore contained shall be construed as
making taxable for city purposes the classes of personal property
which by law are made taxable exclusively for county purposes at
the rate of four mills. With his assessment he shall return such
dimension, description, or quality of each lot or parcel of land
as will be sufficient to identify the same, together with the
number and kind of improvements. At the triennial assessment, the
assessor shall, if council so directs by ordinance, classify all
real estate in the city, in such manner and upon such testimony as
may be adduced before him, so as to distinguish between the
buildings on land and the land exclusive of the buildings, and he
shall certify to the council the aggregate valuation of all real

estate subject to taxation for city purposes within each such classification. At the next triennial assessment following the effective date of this amending act, the assessor shall, if council by ordinance so directs, classify all real estate in such city in such manner and upon such testimony as may be adduced before him so as to distinguish between the buildings on land and the land exclusive of the buildings, and he shall certify to the council the aggregate valuations of all real estate subject to taxation for city purposes within each such classification.

(b)   In all cases he shall value, or cause to be valued, the property at the actual value thereof. In arriving at actual value the city may utilize the current market value or it may adopt a base year market value. In arriving at such value the price for which any property would separately bona fide sell, or the price at which any property may bona fide actually have been sold, either in the base year or the current taxable year, shall be considered, but shall not be controlling. Instead such selling price, estimated or actual, shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the taxing district. It shall be the further duty of the assessor to return annually a list of all the inhabitants over eighteen years of age.

(c)   The board shall assess real property at a value based upon an established predetermined ratio which may not exceed one hundred per centum of actual value. Such ratio shall be established and determined by the city council after proper notice has been given.

(d)   In arriving at the actual value, all three methods, namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence) comparable sales and income approaches, must be considered in conjunction with one another.

(e)   The board shall apply the established predetermined ratio to the actual value of all real property to formulate assessment roll.]

Section 192.  Section 2504.1 of the act, added July 29, 1970 (P.L.640, No.215), is repealed:

[Section 2504.1.   Temporary Tax Exemption for Residential Construction.--(a)   As used in this section, the word "dwellings" means buildings or portions thereof intended for permanent use as homes or residences.

(b)   New single and multiple dwellings constructed for residential purposes and improvements to existing unoccupied dwellings or improvements to existing structures for purposes of conversion to dwellings, shall not be valued or assessed for purposes of real property taxes until (1) occupied, (2) conveyed to a bona fide purchaser, or (3) one year from the first day of the month in which falls the sixtieth day after which the building permit was issued or, if no building permit or other notification of improvement was required, then from the date construction commenced. The assessment of any multiple dwelling because of occupancy shall be upon such proportion which the value of the occupied portion bears to the value of the entire multiple dwelling.]

Section 193.  Section 2505 of the act, amended October 4, 1978 (P.L.950, No.188), is repealed:

[Section 2505.  Manner of Assessments.--The assessor may assess

real estate in the name or names of the registered owner, actual owner (legal or equitable), reputed owner, owner of the life estate, occupier, vendor, vendees, or any person who has or has had any connection with the legal title thereof, or an interest in the premises, or has charge or control thereof; partnership property, in the name of the partnership or in the name of the partners, or any of them; trust property, in the name of the trustee or trustees, or any of them, or in the name of the cestui que trust; property of a minor, in the name of the minor or his guardian; property of a lunatic, in the name of the lunatic or his guardian or committee; and property formerly belonging to a person, since deceased, may be assessed in the name of the decedent, or in the name of the estate of said decedent, or of his administrator or administrators, executor or executors, or his heirs generally, or in the name of any administrator, executor, or heir; and in assessing the same in the names of the executors, administrators or heirs, it shall not be necessary to designate them by their christian or surnames; and other property not herein provided for may be assessed in the manner the same is assessed for county taxation. This provision shall not prevent the collection, under existing laws, of any tax assessed against property by a sufficient designation or description, where the same has been assessed in the name of any person or persons who are not the owners thereof. Where lands of owners are part within and part without the city limits, they shall be assessed in the same manner and within the same jurisdiction as if the same were being assessed for county purposes.]

Section 194. Sections 2506, 2508, 2509, 2510, 2511, 2512, 2513, 2514, 2515 and 2516 of the act are repealed:

[Section 2506. Duties of Assessors in Other Than Triennial Years.--In the years between triennial assessments, the said assessor shall perform the following duties with reference to the assessment of property and other matters and subjects of taxation, namely: He shall,

(a) Assess any property which has been omitted, and correct any errors of law, fact or judgment which may have been made in making the triennial assessment;

(b) Add to the assessment any property which has ceased to be exempt and any property acquired since the triennial assessment;

(c) Add to the value of any real estate the value of any new building or other new improvements;

(d) Deduct from the value of any property any loss caused by destruction, injury, or otherwise, howsoever;

(e) Where tracts as assessed at the triennial assessment have been subdivided, equalize and apportion the assessment of the lands thus subdivided upon the basis of the value as fixed at the triennial assessments upon the whole lot or tracts;

(f) Where any borough, township, part of a borough or township, or any tract or tracts of land, have been added to the city, since the last triennial assessment, make a full and impartial assessment of the property in the annexed district, and return the same in a like manner as if it were a triennial assessment;

(g) When any property has been transferred or disposed of, make the proper changes, deductions or transfers upon the proper assessment books and duplicates;

(h) Perform such other duties, as may be prescribed by

ordinance, necessary to the making of proper assessments or valuations.

Section 2508.  Omitted Property to be Assessed; Liability of Owner for Back Taxes.--When the said assessor ascertains that any property is omitted, he shall assess the same for the omitted years, but not back further than and including the last year of the preceding triennial assessment. The person or party owning said omitted property shall be liable for the tax against the property for the omitted year or years, at the tax rate levied during the omitted year or years, and the proper authorities shall make out the proper tax and place the amount thereof in the hands of the city treasurer for collection.

Section 2509.  Clerks; Power to Administer Oaths; Inventories.--The assessor shall have the right to procure such books, maps, et cetera, as may be necessary to the performance of his duties, and, when authorized by council, may employ clerks for the purpose of transcribing and making duplicate and assessment books. He, and each of them, shall have power to administer oaths, and to require, under oath, of every taxable or person in charge or control of any property, an inventory of his taxable property, with his estimate of the just, full, fair, and impartial value thereof, and which, in his judgment, the same would bring at a fair public sale thereof. Such estimate shall not be conclusive, but shall be subject to revision by increase, decrease or equalization with other property.

Section 2510.  Information from Real Estate Registry Office; Sufficiency of Descriptions.--Where any city has established a registry of real estate by law, the assessor shall have the right to obtain from the official in charge of said registry such information as to the registered owners of real estate as said department is able to furnish, and under such rules and regulations as shall be established by ordinance of council. It shall be a sufficient description of any real estate in any assessment books or duplicates to designate the same by such city lot number, other number or designation, as is used on the registry.

Section 2511.  Time of Completion of Assessments.--The assessor shall complete his triennial assessment, and the annual assessments in intervening years, on or before the first day of September in each year, or as soon thereafter as practicable. He may, with the approval of the board of revision and appeals, add to the duplicates in the hands of the city treasurer any subject of taxation omitted therefrom, and rectify any and all errors and mistakes made therein.

Section 2512.  Liability for Neglect.--Any assessor or assessors who shall wilfully omit, neglect, or refuse to assess any property liable to taxation shall be held responsible to the city for any loss or damage caused thereby.

Section 2513.  Ordinances to Regulate Assessments, Transfers, Appeals, Et Cetera.--The council of each city may pass such ordinances as it may deem proper and necessary, providing for and regulating the manner of making the assessments, valuations, and transfers, and the taking of appeals to the board of revision and appeal, and regulating proceedings before said board on any and all matters not specifically provided for in this act.

Section 2514.  Board of Revision of Taxes and Appeals.--The council of each city shall constitute the board of revision of

taxes and appeals, and the city clerk shall serve as clerk thereof.

Section 2515.  New Assessments.--The council, in any years other than a triennial year, if it shall deem a new assessment necessary, may, on or before the first day of May, issue its precept to the city assessor and by ordinance or resolution require him to make out and return a full, just, and equal assessment of property within the city, or such parts thereof as may be deemed advisable.

Section 2516.  Revision of Assessments.--The said board of revision of taxes and appeals shall take and receive the triennial and yearly assessment as returned by the city assessor, and may revise, equalize, and alter such assessments, in any and every year, by increasing or reducing the valuation either in individual cases or by wards, or parts of wards; rectify all errors, and add to the assessment book, and to the duplicate thereof in the hands of the city treasurer, any property or person subject to taxation omitted therefrom, and any real estate in such city which has been exempt from taxation, and has ceased to be occupied and used for the purpose or purposes which entitled it to such exemption, as taxable for the portion of the year commencing at the time when the right to exemption ceases. Such property shall thereupon become subject to taxation, at the rate fixed for the year, for the proportionate part of the year during which it is not entitled to exemption.]

Section 195.  Section 2516.1 of the act, amended July 29, 1970 (P.L.640, No.215), is repealed:

[Section 2516.1.  Additions and Revisions to Duplicates.-- Whenever in any city there is any construction of a building or buildings not otherwise exempt as a dwelling after the city council has prepared a duplicate of the assessment of city taxes and the building is not included in the tax duplicate of the city, the authority responsible for assessments in the city shall, upon the request of the city council, direct the assessor in the city to inspect and reassess, subject to the right of appeal and adjustment provided by the act of Assembly under which assessments are made, all taxable property in the city to which major improvements have been made after the original duplicates were prepared and to give notice of such reassessments within ten days to the authority responsible for assessments, the city and the property owner. The property shall then be added to the duplicate and shall be taxable for city purposes at the reassessed valuation for that proportionate part of the fiscal year of the city remaining after the property was improved. Any improvement made during the month shall be computed as having been made on the first of the month. A certified copy of the additions or revisions to the duplicate shall be furnished by the city council to the city treasurer, together with their warrant for collection of the same, and within ten days thereafter the city treasurer shall notify the owner of the property of the taxes due the city.]

Section 196.  Section 2517 of the act is repealed:

[Section 2517.  Hearing of Appeals.--The board of revision of taxes and appeals may require the attendance of the assessor and assistant assessors, or any of them, or other citizens, before them for examination on oath or affirmation. It shall hear and determine all appeals by taxpayers from the assessments made by the city assessor, at such time and place as it may prescribe,

conformably with law as to notice to the taxable and his filing of
notice of intention to appeal.]
    Section 197.  Section 2518 of the act, amended December 13,
1982 (P.L.1192, No.273), is repealed:
    [Section 2518.  Notice to Taxables of Assessments;
Appeals.--(a)  The assessor shall give, or cause to be given,
printed or written notice to each taxable of the city, whose
property is newly assessed, or whose last previous assessment has
been changed, of the amount of the present assessment, valuation
and ratio and the new assessment, valuation and ratio. The said
notice shall not be required to be given to any taxable whose
property assessment was not changed as a result of any triennial
assessment. The said notice shall also inform the taxable of the
requirements of this section as to appealing from any assessment.
Such notice may be served personally or by posting on the premises
or by mailing the same to the last known address of the taxable.
    (b)  Notice similar to that provided for in subsection (a)
shall be given when the city changes the established predetermined
ratio.
    (c)  Any person dissatisfied or aggrieved by any assessment, or
any change thereof, made by the assessor, may appeal to the said
board of revision of taxes and appeals, by filing with the board a
statement in writing of intention to appeal, setting forth:
    (1)  The assessment or assessments by which such person feels
aggrieved;
    (2)  The address to which the board shall mail notice of when
and where to appear for hearing.
    (d)  The statement of intention to appeal shall be filed with
the said board not later than thirty days after the notice of
assessment has been mailed to the taxable at his last known
address, or has been served upon him personally, or has been
posted upon the premises. No appeal shall be permitted except upon
such a statement of intention as herein required, nor may any
taxable appeal as to an assessment not designated in his statement
of intention to appeal. The board shall fix the time and place of
hearing appeals and shall give at least five days notice to the
taxable.
    (e)  Any triennial assessment made prior to the effective date
of this amending act, which did not change a property assessment,
is hereby validated irrespective of whether or not written or
printed notice of such assessment was given to the taxable.]
    Section 198.  Section 2519 of the act is repealed:
    [Section 2519.  Power of Assessor to Administer Oaths.--For the
purposes of all hearings, and for all other purposes necessary to
the discharge of his duties, the assessor shall have authority to
administer oaths and affirmations touching any matter relating
thereto.]
    Section 199.  Sections 2520 and 2521 of the act, amended
December 13, 1982 (P.L.1192, No.273), are repealed:
    [Section 2520.  Custody of Assessment Books; Completion of Work
of Board.--(a)  The board of revision of taxes and appeals shall
procure and have the custody and control of all books relating to
assessment of city taxes, and keep them arranged according to
wards and dates, and shall furnish the city assessor the necessary
books for making the assessment, which, on the completion of such
assessment, shall be returned to such board of revision of taxes
and appeals. The board shall complete its labors, and the hearing

and determination of all appeals, on or before the first day of December of each year, or as soon thereafter as practicable, after which the assessment shall be copied, by wards, into a tax duplicate or duplicates for the use of the city. The assessment, so corrected and copied, shall be and remain a lawful assessment for the purpose of city taxation until altered as provided in this article. The board shall give notice in writing within five days after its disposition of each appeal, advising the taxable of its decision.

(b)  In any appeal of an assessment the board shall make the following determinations:

(1)  The current market value for the tax year in question.

(2)  The common level ratio.

(c)  The board, after determining the current market value of the property for the tax year in question, shall then apply the established predetermined ratio to such value unless the common level ratio varies by more than fifteen per centum from the established predetermined ratio, in which case the board shall apply the common level ratio to the current market value of the property for the tax year in question.

(d)  Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.

Section 2521.  Appeals from Decisions of Board; Costs.--(a) Any owner of taxable property who may feel aggrieved by the decision of the board of revision of taxes and appeals as to the assessment or valuation of his taxable property may appeal from the decision of the board of revision of taxes and appeals to the court of common pleas of the county within which such property is situated, and, for that purpose, may present to said court, or file in the prothonotary's office, within sixty days after mailing notice to him that the board of revision of taxes and appeals have held the appeals provided for by law and acted on the said assessments and valuations, a petition signed by him, his agent, or attorney, setting forth the facts of the case. The court shall thereupon, after notice to the said board of revision of taxes and appeals, hear the said appeal and the proofs in the case, and make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable, having due regard to the valuation and assessment made of other property in such city. The costs of the appeal and hearing shall be apportioned or paid as the court may direct. The said appeals shall not, however, prevent the collection of the taxes complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same.

(b)  In any appeal of an assessment the court shall make the following determinations:

(1)  The current market value for the tax year in question.

(2)  The common level ratio.

(c)  The court, after determining the current market value of the property for the tax year in question, shall then apply the established predetermined ratio to such value unless the common level ratio varies by more than fifteen per centum from the established predetermined ratio, in which case the court shall apply the common level ratio to the current market value of the property for the tax year in question.

(d)  Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.]

Section 200.  The act is amended by adding a section to read:
Section 2522.  Assessment Powers.--(a)  With regard to the
valuing and assessing of property for taxation within a city, the
following shall apply:
(1)  If, on the effective date of this section, a city is
utilizing the county assessment office for the valuation and
assessment of property, the city shall continue to utilize the
county assessment office for this purpose.
(2)  If clause (1) does not apply, council may appoint and
employ persons to value and assess property for taxation within a
city, following the procedures and methodologies set forth in the
assessment law or laws applicable in the county in which the city
is located, provided that the act of April 16, 1992 (P.L.155,
No.28), known as the "Assessors Certification Act," shall apply to
persons hired pursuant to this clause.
(3)  If clause (2) applies, a city may subsequently elect to
utilize the county assessment office to value and assess property.
(4)  (i)  A city, conducting its own assessments as authorized
by clause (2), or utilizing the county assessment office pursuant
to clause (1) or (3), may, by ordinance, adopt an established
predetermined ratio different from that used by the county. The
city shall apply the ratio selected to the actual valuation
supplied by the county to determine assessed value for tax
purposes. The established predetermined ratio selected by the city
may not exceed one hundred per centum of actual value.
(ii)  As used in this clause, "established predetermined ratio"
shall mean the ratio of assessed value to market value established
by the city council and uniformly applied in determining assessed
value in any year.
(5)  A city that is utilizing the county assessment office in
accordance with clause (1) or which elects to utilize the county
assessment office in accordance with clause (3) may not thereafter
appoint and employ persons to value and assess property in
accordance with clause (2).
(b)  In any case in which a city appoints persons to value and
assess property, the following shall apply:
(1)  If the property being assessed is not wholly within the
city limits, it shall be assessed in the same manner and within
the same jurisdiction as if the same were being assessed for
county purposes.
(2)  If a city has established a registry of real estate, it
may obtain for purposes of assessment, from the official in charge
of the registry, available information as to the registered owners
of real estate, under rules and regulations as may be established
by ordinance. It shall be a sufficient description of any real
estate in any assessment books or duplicates to designate the same
by such city lot number, other number or designation, as is used
on the registry.
(3)  For purposes of assessment appeals, council shall
constitute the board of revision of taxes and appeals and the city
clerk shall serve as clerk thereof.
(4)  Except as authorized in this section, the city shall not
exercise powers contrary to or in limitation or enlargement of
powers granted by statutes that provide the substantive rules
governing the making of assessments and valuations of property
which are applicable to the assessment of property for taxation
purposes under the county assessment law or laws applicable in the

county in which the city is located.

(5)  A city conducting its own assessments pursuant to subsection (a)(2) shall establish and follow procedures that are consistent with similar procedures provided in the assessment law or laws applicable in the county in which the city is located, including, but not limited to, providing notice of an opportunity to appeal assessments, for taking appeals to and from the board of appeals and for the conduct of proceedings before the board.

(c)  A temporary tax exemption for residential construction shall be subject to the following:

(1)  New single and multiple dwellings constructed for residential purposes and improvements to existing unoccupied dwellings or improvements to existing structures for purposes of conversion to dwellings shall not be valued or assessed for purposes of real property taxes until:

(i)  occupied;

(ii)  conveyed to a bona fide purchaser; or

(iii)  one year from the first day of the month in which falls the sixtieth day after which the building permit was issued or, if no building permit or other notification of improvement was required, then from the date construction commenced.

(2)  The assessment of any multiple dwelling because of occupancy shall be upon such proportion which the value of the occupied portion bears to the value of the entire multiple dwelling.

(3)  As used in this subsection, the word "dwelling" means a building or portion thereof intended for permanent use as a home or residence.

Section 201.  The heading of subdivision (b) of Article XXV of the act is reenacted to read:

(b)  Levy and Collection

Section 202.  Section 2531 of the act, amended November 19, 1959 (P.L.1519, No.534), August 3, 1967 (P.L.199, No.63), June 16, 1972 (P.L.443, No.135) and May 22, 1981 (P.L.71, No.20), is amended to read:

Section 2531.  Tax Levies.--**(a)**  Council may, by ordinance, levy and, **in accordance with this act,** provide for the collection of [the following taxes:

1.  A tax for general revenue purposes on all persons and property taxable according to the laws of the Commonwealth for county purposes: the valuation of such property to be assessed as hereinbefore provided.

2.  An annual tax sufficient to pay interest and principal on any indebtedness incurred pursuant to the act of July 12, 1972 (P.L.781, No.185), known as the "Local Government Unit Debt Act," or any prior or subsequent act governing the incurrence of indebtedness of the city.

3.  A residence tax for general revenue purposes, not exceeding five dollars annually, on all inhabitants above the age of eighteen years. Any ordinance of council fixing the rate of taxation for any year at a mill rate shall also include a statement expressing the rate of taxation in dollars and cents on each one hundred dollars of assessed valuation of taxable property.

4.  The council of any city may, by ordinance, in any year levy separate and different rates of taxation for city purposes on all real estate classified as land, exclusive of the buildings

thereon, and on all real estate classified as buildings on land. When real estate tax rates are so levied, (i) the rates shall be determined by the requirements of the city budget as approved by council, (ii) higher rates may be levied on land if the respective rates on lands and buildings are so fixed so as not to constitute a greater levy in the aggregate than a rate of twenty-five mills on both land and buildings, and (iii) they shall be uniform as to all real estate within such classification.

5. Where the city council by a majority action shall, upon due cause shown, petition the court of quarter sessions for the right to levy additional millage, the court, after such public notice as it may direct and after hearing, may order a greater rate than twenty-five mills but not exceeding five additional mills to be levied.] **taxes on all property within the city that is made taxable for city purposes and subject to valuation and assessment by the county assessment office or the city, as provided in subdivision (a), as follows:**

**(1) A tax for general revenue purposes not exceeding thirty mills.**

**(2) An annual tax sufficient to pay interest and principal on any indebtedness incurred pursuant to 53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and borrowing) or any prior or subsequent act governing the incurrence of indebtedness of the city.**

**(3) An annual tax, not to exceed five mills, to light the highways, roads and other public places in the city.**

**(4) An annual tax for the purpose of maintaining and operating recreation places and programs.**

**(5) An annual tax, not to exceed the sum of one-tenth of one mill, for the purpose of defraying the cost and expense of caring for shade trees and the administrative expenses connected therewith, or council may provide for such expenses by appropriation from the General Fund.**

**(b) Council may, by ordinance, levy and, in accordance with this act, provide for the collection of a residence tax for general revenue purposes, not exceeding five dollars annually, on all inhabitants who are eighteen years of age or older.**

**(c) With regard to the taxes authorized in subsection (a), the following shall apply:**

**(1) Special purpose levies authorized in this section shall not be included in calculating the thirty-mill limit imposed by subsection (a).**

**(2) Any ordinance fixing the rate of taxation for any year at a millage rate shall also include a statement expressing the rate of taxation in dollars and cents on each hundred dollars of assessed valuation of taxable property.**

**(3) The council of any city may, by ordinance, in any year levy separate and different rates of taxation for city purposes on all real estate classified as land, exclusive of the buildings thereon, and on all real estate classified as buildings on land. When real estate tax rates are so levied:**

**(i) The rates shall be determined by the requirements of the city budget as approved by council.**

**(ii) The respective rates levied on land and buildings do not have to be equal but must be so fixed so as not to constitute a greater levy in the aggregate than a rate of thirty mills on both land and buildings.**

(iii)  The rates shall be uniform as to all real estate within such classification.

(4)  Where the city council by a majority action shall, upon due cause shown, petition the court of common pleas for the right to levy additional millage for general revenue purposes, the court, after such public notice as it may direct and after hearing, may order a greater rate than thirty mills but not exceeding five additional mills to be levied.

(5)  (i)  Notwithstanding council's power to authorize the transfer of an unexpended balance of an appropriation item pursuant to section 1804, when any moneys are collected for any special purpose, no city treasurer or council member may apply those moneys to any purpose other than that for which they were collected.

(ii)  Any city treasurer or council member who violates subclause (i) commits a misdemeanor of the third degree, and, in addition to the fine or penalty which may be imposed upon conviction, shall be required to pay restitution in the amount of moneys improperly spent.

Section 203.  Section 2531.1 of the act, amended November 26, 1982 (P.L.759, No.214), is amended to read:

Section 2531.1.  Exemptions from Taxation.--The council of any city may, by ordinance or resolution, exempt any person whose total income from all sources is less than [five] **twelve** thousand dollars [($5,000)] **($12,000)** per annum from any per capita or [resident's] **residence** tax levied under this act. This exemption shall not apply to real property taxes.

Section 204.  The act is amended by adding a section to read:

**Section 2531.2.  Certification of Schedule.--For the purpose of delinquent tax collection and the filing of liens on property upon which the taxes, assessed and levied, have not been paid and have become delinquent, the treasurer shall certify schedules of unpaid taxes. The certification shall be made to the person designated by each taxing district for which the treasurer collects taxes.**

Section 205.  Sections 2532, 2533 and 2534 of the act are repealed:

[Section 2532.  City Treasurer to Be Tax Collector.--The city treasurer, by virtue of his office, shall be the collector of the city, county, school, and institution district taxes, assessed or levied in the city by the proper authorities therein.

Section 2533.  Oath of City Treasurer as Collector of Taxes.--At the time the city treasurer enters upon his duties, he shall take and subscribe his oath of office as collector of city, county, school, and institution district taxes, which oath shall be filed with the city clerk.

Section 2534.  Office for Receipt of Taxes; Supplies.--The city treasurer, as collector of taxes, shall keep his office in the same place occupied by him as city treasurer, which shall be kept open for the receipt of taxes at all times during business hours. All printing and stationery supplies shall be furnished by the proper authorities, respectively.]

Section 206.  Section 2535 of the act, amended December 14, 1967 (P.L.828, No.355), is repealed:

[Section 2535.  Date of Delivery of Duplicate; Collection.--The council of each city and the county and county institution district authorities, now empowered or which may be hereafter empowered to levy taxes upon persons and property within the city,

shall, within thirty days after the adoption of the budget or within thirty days after receipt of the assessment roll from the county whichever is later, make out and deliver their respective duplicates of taxes assessed to the city treasurer, as the collector of the said taxes, which shall be collected by the city treasurer, by virtue of his office as aforesaid. The proper school authorities shall make out and deliver the school duplicates of their respective taxes in such city at the time and in the manner provided by the school laws of the Commonwealth. All duplicates of taxes placed in the hands of said treasurer shall at all times be open to proper inspection of the taxpayers and of the proper auditing and examining officers of said city, county or school district, as the case may be, and shall be delivered by said treasurer at the expiration of his term to his successor in office.]

Section 207.  Sections 2536, 2537 and 2538 of the act are repealed:

[Section 2536.  Deposits.--The city treasurer as collector of taxes shall pay over to himself as city treasurer, in accordance with the provisions of the Local Tax Collection Law, all the city taxes collected by him. He shall at the same time deposit all the city taxes so paid over to him into a bank or financial institution, which shall be a city depository named by the city council. All such deposits shall be made in the name of the city treasurer as such, or in the name of the city, as council may provide.

Section 2537.  Tax Liens; Schedule of Uncollected Taxes; Liability for False Return.--Upon the settlement of the duplicates of city, county, institution district, and school taxes which by law are made a lien on real estate, the city treasurer, as collector of said taxes, shall make out schedules of said city, county, school, or institution district taxes uncollected upon his duplicates, or those delivered to him by his predecessor, with a brief description of the properties against which the same are assessed, for the purpose of having the same entered for lien or sold, according to law. The failure of the said collector to collect the said taxes from personal property, when the same could have been collected shall not impair the lien thereof or affect any sale made for the collection thereof. In case any such collector shall make any wilfully false return, he shall be liable therefor to any person or persons injured thereby.

Section 2538.  Certification of Schedule.--The schedule of unpaid city taxes shall be certified by the city treasurer, as collector of taxes, to the city solicitor for filing in court, with the like force and effect as if certified by the city treasurer under existing laws. The schedule of unpaid school and institution district taxes shall be certified to such officer or person as is now, or shall hereafter be, designated to receive the same for filing as a lien in court; and where no such person is designated, the said schedule may be certified to the solicitor of the authority levying the tax, who may cause the said taxes to be registered as a lien in court, under existing laws, and the certifying of the said schedules by the city treasurer, as a collector, shall in all cases have the like effect as if the same had been certified by the city treasurer, as aforesaid.]

Section 208.  Article XXV subdivision (c) heading of the act is reenacted to read:

(c)   Sales of Real Estate for Delinquent Taxes

Section 209.   Section 2541 of the act, amended April 29, 1998
(P.L.294, No.47), is repealed:

[Section 2541.   Public Sale of Property to Satisfy Tax
Claims.--(a)   In addition to other remedies provided for the
collection of delinquent city taxes, the city treasurer may sell
at public sale, in the manner hereinanfter provided, any property
upon which the taxes, assessed and levied, have not been paid and
have become delinquent, unless such property has already been
purchased and is held for the benefit of all the tax levying
authorities concerned.

(b)   For purposes of this section, taxes shall be considered
delinquent thirty days after the final deadline for payment of
such taxes for the current tax year.]

Section 210.   Section 2542 of the act is repealed:

[Section 2542.   Time of Holding Sales.--Such sales shall be
made on the first Monday in June, in the year succeeding the year
in which the respective taxes are assessed and levied, or on any
day to which such sale may be adjourned, or on any first Monday of
June in any succeeding year.]

Section 211.   The act is amended by adding a section to read:

**Section 2542.1.   Public Sale of Property to Satisfy Tax
Claims.--(a)   Property upon which city real estate taxes have not
been paid and have become delinquent may become subject to public
sale in accordance with one of the following:**

**(1)   The act of July 7, 1947 (P.L.1368, No.542), known as the
"Real Estate Tax Sale Law."**

**(2)   The Municipal Claim and Tax Lien Law.**

**(b)   The remedies authorized in this section shall be in
addition to other remedies provided for the collection of
delinquent city taxes, including an action in assumpsit.**

**(c)   Unless otherwise provided in the statutes referred to in
subsection (a), taxes shall become delinquent thirty days after
the final deadline for payment of such taxes for the current tax
year.**

Section 212.   Section 2543 of the act is amended to read:

Section 2543.   Certification of Schedules [of Taxes.--Where the
treasurer has not already in his hands the duplicates of said
taxes, or certificates or schedules thereof, any receiver or
collector of taxes, or other person having such delinquent taxes
in his hands, shall certify to the city treasurer schedules of all
unpaid taxes, with descriptions of the property assessed.] **to
Treasurer.--At the request of the treasurer, any person acting on
behalf of the city who possesses a schedule of unpaid city taxes
shall certify the schedule to the treasurer along with the
description of property against which the unpaid taxes were
assessed.**

Section 213.   Section 2544 of the act is repealed:

[Section 2544.   Advertisement of Sales.--The city treasurer
shall advertise for sale any of the property upon which it appears
the taxes have not been paid, as shown by the duplicates in his
hands, or by the returns or schedules certified to him, as
aforesaid. Said advertisement shall be made, once a week for three
successive weeks prior to the day of sale, in at least two
newspapers of general circulation, printed and published in the
city, and, in case two newspapers are not published in said city,
then publication shall be made in two newspapers printed and

published in the county in which the city is situate. The city
treasurer shall also cause to be posted or tacked, in a
conspicuous place on each parcel or lot of land advertised for
sale, at least ten days prior to the day of sale, a notice stating
that said property will be sold by said treasurer, for delinquent
taxes, on a certain day and time, and at a certain place within
the city, for which posting of notice he shall receive and tax as
costs twenty-five cents for each notice. No sale shall be valid
where the taxes have been paid prior to said advertisement, or
where the taxes and costs have been paid after advertisement and
before sale.]

Section 214.  Section 2546 of the act is amended to read:

Section 2546.  Record of Sales [to be Kept; City May]; Purchase
[Lands at Sale.--] **and Resale.--(a)**  The treasurer shall keep in
[his] **the treasurer's** office, **or in such other place as council
may direct,** a [book, in which he shall enter] **record of** all the
sales made [by him, giving a description of each property sold,
the name of the person as the owner thereof as the same appears
upon the duplicate, or has been returned to him, the time of sale
and the price at which sold, together with the cost. The] **pursuant
to section 2542.1.**

**(b)  Notwithstanding any other provision of law, the** city shall
have the right to bid[, at any such sale, the amount of taxes and
costs, and, if necessary, purchase such lands] **on and purchase
properties sold pursuant to section 2542.1.**

**(c)  Properties purchased by the city under subsection (b) may
be sold in accordance with section 2402.1(b).**

Section 215.  Sections 2547 and 2548 of the act are repealed:

[Section 2547.  Payment of Purchase Price by Purchaser; Resale
for Default.--Any purchaser or purchasers at said treasurer's
sale, except the city, as soon as the property is struck down,
shall pay the amount of the purchase money, or such part thereof
as may be necessary to pay all the taxes and costs, as also one
dollar and fifty cents for the use of the prothonotary, for
entering the report of the treasurer, filing surplus bond, and
acknowledgment of the treasurer's deed, as hereinafter mentioned.
In case said amount is not forthwith paid, after the property is
struck down, the sale may be avoided and the property put up again
by the city treasurer, at said sale or at any subsequent sale.

Section 2548.  Return of Sale.--The city treasurer shall
promptly make a report and return to the court of common pleas,
wherein he shall set forth, (a) a brief description of each parcel
of real estate sold; (b) the name of the person (where known), in
which the same is assessed; (c) the amount of tax, and the year
for which the same was assessed; (d) the time when and the names
of the newspapers in which the advertisement for sale was made,
with a copy of said advertisement; (e) the time of sale; (f) the
name of the purchaser; and (g) the price for which each respective
property was sold.]

Section 216.  Section 2549 of the act, repealed in part June 3,
1971 (P.L.118, No.6), is repealed:

[Section 2549.  Confirmation of Sale; Disposition of
Objections.--Upon the presentation of said report or return, if it
shall appear to said court that such sale has been regularly
conducted, under the provisions of this subdivision (c) of this
article, the said report and sales so made shall be confirmed
nisi; in case no objections or exceptions are filed to any such

sale in the office of the prothonotary within ninety days from the date of such confirmation, a decree of absolute confirmation shall be entered, as of course, by the prothonotary. Any objections or exceptions to such a sale may raise the legality of the taxes for nonpayment of which the real estate was sold or the return thereof, or the validity of the sale for the reason that the tax was actually paid, or question the regularity or legality of the proceedings of the treasurer in any respect. In case any objections or exceptions are filed, they shall be disposed of according to the practice of the court, and, when the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court. If such objections or exceptions are sustained and the court deems the defect not amendable, it shall, by its order or decree, invalidate the sale. If no objections or exceptions are filed as herein provided, or if such objections or exceptions are finally overruled and the sale confirmed absolutely, the validity of the assessment of the tax and the validity of the proceedings of the treasurer, with respect to such sale, shall not thereafter be inquired into judicially in equity or by civil proceedings by the person or persons in whose name such property was sold, his, her or their heirs, or his, her or their grantees or assigns, subsequent to the date of the assessment of the taxes for which such sale was made, and such sale, after the period of redemption shall be terminated, shall be deemed to pass a good and valid title to the purchaser as against the person or persons in whose name such property was sold, provided the purchaser has filed the bond for surplus moneys as hereinafter provided.]

Section 217. Section 2550 of the act is repealed:

[Section 2550. Filing of Surplus Bond.--After any sale of property or lands for delinquent taxes has been confirmed by the court, as aforesaid, the purchaser or purchasers, where the bid exceeds the taxes and costs as aforesaid, shall make and execute to the said treasurer for the use of the persons entitled, a bond for the surplus money that may remain after satisfying and paying all the taxes and costs, as aforesaid, with warrant of attorney to confess judgment annexed thereto. The treasurer shall forthwith file said bond in the office of the prothonotary of the proper county, at the number and term where said report and return is filed. The surplus bond, filed as aforesaid, from the time of the date of the deed for property thus sold, shall bind as effectually, and in like manner as judgments, the land by said treasurer sold, into whose hands or possession they may come. The owners of said lands at the time of sale, their heirs or assigns or other legal representatives, may, at any time within five years after such sale, cause judgment to be entered in said court upon said bond, in the name of said treasurer, for the use of said owners, their heirs, assigns or legal representatives, as the case may be. In case the moneys mentioned in said bonds, with legal interest thereon from the time it is demanded, be not paid within three months after such entry, execution may forthwith issue for the recovery thereof.]

Section 218. Section 2551 of the act, amended August 17, 1951 (P.L.1262, No.299), is repealed:

[Section 2551. Acknowledgment and Delivery of Deeds.--When the purchaser has paid the amount of his bid, or such portion thereof as he is required to pay under this subdivision, and has given the

surplus bond as above required, the city treasurer shall make the said purchasers, his or their heirs or assigns, a deed in fee simple for the lands sold, as aforesaid, and the said deed or deeds duly acknowledge in the court of common pleas. Such acknowledgment shall be duly entered and recorded by the prothonotary of said court in the treasurer's deed book. For such service and the entry of the report of the city treasurer, and filing surplus bond, the prothonotary shall receive the sum of one dollar and fifty cents for each property sold.]

Section 219.   Section 2552 of the act is repealed:

[Section 2552.   Acknowledgment of Receipt of Redemption Money.--Where the owner or other person interested in the land thus sold shall redeem the same, and pay the satisfaction fee, the city treasurer shall acknowledge the receipt of the redemption moneys upon the margin of the acknowledgment of the treasurer's deed, as the same is entered and recorded in the prothonotary's office. Thereafter said deed shall be void and of no effect. Thereupon such owner or persons interested shall be entitled to have the treasurer's deed delivered up to him, her or them by the purchaser for cancellation. The city treasurer shall pay to said purchaser all the moneys he had paid at the time of sale, together with the twenty-five per centum penalty thereon; and shall enter upon the book of sales kept by him, as hereinbefore provided, an acknowledgment or receipt showing that the owner or party interested redeemed the same, giving date of redemption and amount of money received.]

Section 219.1.   The act is amended by adding a section to read:

**Section 2552.1.   Conduct of Tax Sales.--The procedures and requirements relating to the sale of property for delinquent taxes, including, but not limited to, the advertisement for and the time and conduct of the sale, the payment of the purchase price and the distribution of proceeds, making the return and confirmation of sale and the delivery of deed shall be governed by the act of July 7, 1947 (P.L.1368, No.542), known as the "Real Estate Tax Sale Law," or the Municipal Claim and Tax Lien Law as utilized by the city in accordance with section 2542.1, and by any applicable rules of court governing procedures for tax sales.**

Section 220.   Article XXV subdivision (d) heading and section 2560 of the act are repealed:

[(d)   City Sales of Real Estate Purchased from Tax Claim Bureau

Section 2560.   Real Estate Purchased from Tax Claim Bureau.--Any city may, by ordinance, sell in the manner hereinafter provided, any real estate owned by the city which has been acquired by the city by purchase from a tax claim bureau at public sales held by said bureau pursuant to the provisions of the Real Estate Tax Sale Law, its amendments and supplements, upon which real estate the city held at the time of such sale a lien or liens for municipal improvements.]

Section 221.   Section 2561 of the act, amended April 6, 1998 (P.L.236, No.44), is repealed:

[Section 2561.   Sale Procedure.--(a)   After an ordinance has been passed authorizing and directing the sale of real estate as provided for in section two thousand five hundred sixty, the city treasurer shall advertise such proposed sale once a week for three successive weeks in at least one newspaper of general circulation in the city. The advertisement shall give a brief description of the property to be sold sufficient to identify it as to location

and character, and the terms and conditions of sale shall ask for
sealed bids for the purchase thereof, direct all bids to be sent
to the city clerk on or before a certain date, and give any other
information relating to such bids as may be necessary; shall
announce that the bids shall be opened and read at a public
meeting of council to be held at a time fixed, and that council
shall have the right to reject any and all bids. In lieu of the
above contents of the advertisement, the advertisement may give a
brief description of the property to be sold, sufficient to
identify it as to location and character, and provide for a public
sale of the property to the highest responsible bidder, at such
time and place as shall be designated by council, with the right
reserved to council to reject any and all bids.

(b)  A city that elects to sell property to a nonprofit
corporation for community development or reuse may waive the
advertising and bidding requirements of subsection (a) only upon
entering into a written agreement with the nonprofit corporation
that requires the property to be used for industrial, commercial
or affordable housing purposes. This exemption shall not apply to
property on which existing governmental functions are conducted.]

Section 222.  Section 2562 of the act is repealed:
[Section 2562.  Delivery of Deed.--If council accepts the
highest responsible bid for such property, the city treasurer
shall, within twenty days after such acceptance and upon the
receipt of the purchase money, deliver to the successful bidder,
his heirs or assigns, a deed in fee-simple for the property sold
as aforesaid, which shall be acknowledged by the mayor and
attested by the city clerk.]

Section 223.  (Reserved).
Section 224.  Article XXVI heading of the act is reenacted to
read:

ARTICLE XXVI
LICENSES AND LICENSE FEES

Section 225.  Article XXVI subdivision (a) heading of the act
is repealed:

[(a)  General Powers to License]

Section 226.  Section 2601 of the act, amended October 4, 1978
(P.L.950, No.188), is amended to read:

Section 2601.  [License Taxes for Revenue Purposes.--Council
may, by ordinance, levy and collect a license tax for general
revenue purposes, not exceeding one hundred dollars each,
annually, on all photographers, auctioneers, contractors,
druggists, hawkers, peddlers, produce or merchandise vendors,
bankers, brokers, other than real estate brokers, undertakers,
pawnbrokers, trading stamp or premium companies or dealers,
warehouses or storage houses or places, parking lot operators,
merchants of all kinds, persons selling or leasing goods upon
installments, grocers, confectioners, butchers, wholesale meat
dealers, restaurants, billiard parlors, bowling alleys, billiard
tables, pool tables, and other gaming tables and devices; all
motor buses and motor omnibuses, trackless trolley omnibuses and
street railway cars transporting passengers for pay or hire within
the limits of the city, or from such city only to points within a
radius of ten miles of the city's boundaries; all skating rinks,
operas, theatres, shows, circuses, menageries, and all kinds of
public exhibitions for pay, except those for religious,
educational or charitable purposes; all lumber dealers, persons

who work on commission and all persons who make a business of buying lumber for sale at wholesale or retail; all furniture dealers, saddle or harness dealers, stationers, jewelers, livery or automobile or boarding-stable keepers; all market-house companies and owners of market-houses, garage companies, and owners of other than private garages, express companies or agencies; and all persons operating vehicles upon the streets of the city as carriers for hire or compensation, which persons regularly pick up or deliver or otherwise transport wholly within or to or from the city property at an annual rate not in excess of ten dollars per vehicle so used, but not to exceed one hundred dollars per annum from any person so operating: Provided, however, That in lieu thereof, the city may levy an annual license tax not in excess of one hundred dollars upon any such person having a place of business located within the city; and, where no other license tax is imposed, on telegraph, telephone, steam-heating, gas, natural gas, water, electric light or power companies, or agencies or individuals furnishing communication, light, heat or power, by any of the means enumerated, and to regulate the collection of the same. If any person, firm or corporation conducts a business at more than one location in a city, the business conducted at each location shall be considered and assessed as a separate and independent business, and shall be subject to a license tax: Provided, That the word "business," as used in this sentence, shall not be construed to mean or include any place of business at which the principal business conducted is that of selling, storing or distributing products manufactured by the firm, person or corporation operating the business. The taxes assessed under this section shall be in addition to all other taxes levied and collected by the city, county, or Commonwealth.]

**Licensing and Regulatory Powers.--In addition to all other powers granted by this act and other laws, each city shall have the specific licensing and regulatory authority provided by this article.**

Section 227.  The act is amended by adding a section to read:

**Section 2601.1.  Registration of Businesses or Occupations.--(a)  Council may, by ordinance, designate the types or kinds of businesses or occupations located or carried out within the city that are subject to annual registration with the city.**

**(b)  Unless otherwise provided in this article, an ordinance requiring registration in accordance with this section may provide for an annual fee on businesses and occupations in an amount reasonably related to the administration of the registration program, not to exceed one hundred dollars.**

Section 228.  Sections 2602 and 2603 of the act are amended to read:

Section 2602.  Regulation of Motor Vehicles.--[Each city may regulate the transportation by motor vehicles not operated on tracks of passengers or property, for pay, within the limits of the city, or from points in the city to points beyond the limits of the city. In such regulation, the city may impose reasonable license fees, make regulations for the operation of vehicles, and may designate certain streets upon which such vehicles may only be operated.] **(a)  Subject to subsection (b), a city may regulate transportation by motor vehicle.**

**(b)  A city shall have no authority to and shall not regulate**

transportation by motor vehicle in a manner that is preempted by or is inconsistent with applicable Federal and State laws and regulations, policies or orders of Federal and State regulatory agencies.

(c)  The following words and phrases when used in this section shall have the meanings given to them in this subsection unless the context clearly indicates otherwise:

"Regulate."  Licensing and making regulations for transportation by motor vehicle, including the designation of streets for transportation by motor vehicle.

"Transportation by motor vehicle."  The transportation for pay of passengers and property, within the limits of the city or from points in the city to points beyond the limits of the city, by a motor vehicle which is not operated on tracks.

Section 2603.  Licensing of Plumbers.--Council may license and provide for the collection of a license fee from all persons, [copartnerships] **partnerships**, associations, or corporations engaged or engaging in the business or work of plumbing or house drainage, who shall have been certified as being qualified to engage in such business, in such manner as may be provided by ordinance or the laws of the Commonwealth.

Section 229.  The act is amended by adding sections to read:

**Section 2604.  Power to Regulate and License Transient Merchants.--(a)  With regard to transient merchants, a city shall have power, by ordinance, to regulate and license the transient merchant, including, but not limited to, requiring that a license be procured prior to commencement of transient merchant activity.**

(b)  An ordinance adopted pursuant to subsection (a) may impose a penalty not exceeding five hundred dollars for a violation of its provisions and may provide for other means of enforcement.

(c)  The amount of a transient merchant license shall not exceed two hundred fifty dollars for each month, or fractional part thereof, during which any sale or solicitation is continued.

(d)  (1)  The term "transient merchant" as used in this section shall include all of the following:

(i)  Transient wholesale and transient retail businesses for the sale of goods, wares or merchandise within the city.

(ii)  Transient charitable solicitors for the solicitation of charitable contributions within the city.

(2)  The term shall not include any of the following:

(i)  Farmers selling their own produce.

(ii)  Persons selling donated goods, wares and merchandise if the proceeds of the sale are to be applied to any charitable or philanthropic purpose.

(iii)  A person selling bakery products, meat and meat products or milk and milk products, if that person is the manufacturer or producer of the products sold.

Section 2605.  Regulation of Special Events.--(a)  In addition to other licensing and regulatory powers authorized in this article, council shall have the authority, by ordinance, to require a permit for and to reasonably regulate the conduct of a special event, which may include, but is not limited to, a music festival, concert, dance, circus, carnival, arts and craft show, parade, public assembly, demonstration, performance, exhibition, community event or block party.

(b)  Regulation of a special event pursuant to this section shall be for the purpose of protecting and preserving city and

public property or for the purpose of promoting or protecting the public health, safety or welfare.

(c)  Pursuant to this section, a city may reasonably regulate and require a permit for any of the following:

(1)  A special event that will result in the obstruction of a city street or sidewalk or that would compromise the ability of the city to respond to a public safety emergency.

(2)  A special event on any property wholly or partially owned or maintained by the city.

(3)  A special event on private property, if, in connection with the event, the city will be providing city services, including those relating to public safety, fire and sanitary facilities, to a degree over and above that which the city routinely provides.

Section 230.  Article XXVI subdivision (b) heading, sections 2610, 2611 and 2612, subdivision (c) heading, sections 2620, 2621 and 2622, subdivision (d) heading, sections 2630, 2631, 2632, 2633, 2634, 2635, 2636, 2637, 2638, 2639 and 2640 and subdivision (e) heading of the act are repealed:

[(b)  Restrictions

Section 2610.  Farmers.--No city shall levy or collect any license fee from any farmer upon his sales of his own produce in or about the streets of the city, but this provision shall not be deemed to restrict in any other way a city's power to regulate the conduct of such business.

Section 2611.  Insurance Business.--No city shall levy or collect any license fee upon insurance companies or their agents, or insurance brokers, authorized to transact business under the laws of the Commonwealth.

Section 2612.  Persons Taking Orders by Samples.--No city shall levy or collect any license fee or mercantile tax upon persons taking orders for merchandise by sample, from dealers or merchants for individuals or companies who pay a license or mercantile tax at their chief places of business. Nothing in this section shall authorize any person to sell by retail to others than dealers or merchants.

(c)  Transient Retail Merchants

Section 2620.  Power to Regulate and License.--Every city shall have power, by ordinance, to regulate and license each and every transient wholesale and retail business within such city for the sale of goods, wares, or merchandise, and to prohibit the commencement or doing of any such business until or unless the license required by such ordinance has been procured from the proper authorities by the person, firm or corporation desiring to commence such transient wholesale and retail business, and to enforce such ordinances by penalties not exceeding three hundred dollars and by other appropriate means. The amount of such license shall not exceed two hundred dollars for each month, or fractional part thereof, during which any such sale is continued.

Section 2621.  Exceptions.--Nothing contained in this subdivision (c) shall be construed to apply (1) to farmers selling their own produce, (2) to the sale of goods, wares, and merchandise, donated by the owners thereof, the proceeds whereof are to be applied to any charitable or philanthropic purpose, or (3) to any manufacturer or producer in the sale of bread and bakery products, meat and meat products, or milk and milk products.

Section 2622.  Commonwealth License Saved.--Nothing contained in this subdivision (c) shall be construed to relieve any person, partnership, or corporation from the duty of taking out a license, or from the payment of any license tax imposed or authorized by any other statute of this Commonwealth.

(d)  Public Dances and Dance Halls

Section 2630.  Definitions.--The term "public dance" or "public ball," as used in this subdivision (d), shall be taken to include any dance or ball conducted in connection with instruction in dancing for hire, and any dance or ball to which admission may be had by the payment of a fee or by the purchase, possession, or presentation of a ticket or token, or in connection with which a charge is made for caring for clothing or other property, and any dance or ball to which the public generally may gain admission with or without the payment of a fee.

The term "dance hall" or "ball room," as used in this subdivision, shall be taken to include any room, place, or space in which a public dance or public ball, as herein defined, shall be held, and any room, hall, or academy in which classes in dancing are held and instruction in dancing is given for hire.

Section 2631.  Permits for Dances; Fees.--No person, persons, society, club, or corporation shall hold a public dance or public ball, within the limits of any city, without having first obtained a permit therefor from the mayor thereof, except for dances held and conducted by regularly established instructors in dancing in connection with such instruction.

The fee for such permit, which shall be paid at the time of the issuing thereof, shall be one dollar for each public dance or ball.

Section 2632.  Dance Halls, Ball Rooms, and Academies to be Licensed; Fees.--It shall be unlawful to hold or conduct any public dance or public ball, or to hold or conduct classes in dancing, or to give instructions in dancing for hire, in any hall, ball room, or academy, within the limits of any city, unless the dance hall or ball room or academy, in which the same may be held, shall have been duly licensed for such purpose.

Application for such license shall be made by the proprietor of such dance hall or ball room or academy to the mayor, who is hereby authorized to issue the same.

The fee payable for each such license granted hereunder shall be as follows:

In the case of dance halls maintained and conducted in connection with regularly established instruction in dancing, and exclusively used in such connection, the annual license fee shall be ten dollars.

In the case of all other dance halls and ball rooms, the annual license fee shall be fifteen dollars.

Each license granted hereunder shall expire on the first day of June of each year.

The fee payable for each license granted hereunder shall be for the whole or any portion of a calendar year, and all moneys received by way of license fees hereunder shall be paid into the general fund of the city.

Every licensed public dance hall or ball room or academy shall post its license in a conspicuous place within the hall where the dance is held.

Section 2633.  Mayor to Investigate Applications.--It shall be

the duty of the mayor to cause an investigation of all applications for public dance hall or ball room licenses to determine whether or not the dance hall, ball room, or academy, sought to be licensed, complies with the rules, regulations, ordinances, and laws applicable thereto, and, in making such investigation he shall, when desired, have the assistance of any department of the government of the city.

Section 2634.  Safe and Proper Places only to be Licensed.--No license for a public dance hall or ball room or academy shall be issued until it shall be ascertained that the place for which it is issued complies with and conforms to all laws, ordinances, health and fire regulations, applicable thereto, and is a safe and proper place for the purpose for which it shall be used, properly ventilated, and supplied with sufficient toilet conveniences.

Section 2635.  Revocation of Licenses.--The license of any public dance hall or ball room or academy may be forfeited or revoked by the mayor for disorderly or immoral conduct on the premises, or upon proof that the dance hall, ball room, or academy was frequented by disorderly or immoral persons, or for the violation of any of the rules, regulations, ordinances, and laws governing or applying to public dance halls, ball rooms, or academies, or public dances. If at any time the license of a public dance hall, ball room, or academy shall be forfeited or revoked, at least three months shall elapse before another license or permit shall be granted for dancing on the same premises.

Section 2636.  Licensed Places to be Kept Clean.--All public dance halls or ball rooms or academies shall be kept at all times in a clean, healthful, and sanitary condition, and all stairways and other passages and all rooms connected with public dance hall, ball room, or academy shall be kept open and well lighted.

Section 2637.  Inspection of Licensed Places; Power of Police to Vacate.--All public dance halls, ball rooms, and academies shall be subject to inspection by the police department of the city at all reasonable times and whenever they are open for dancing, instruction in dancing, or for any other purpose.

Any police officer shall have the power to cause the place, hall, or room where any public dance or ball is given to be vacated whenever any provision of any law or ordinance with regard to public dances and public balls is being violated, or whenever any indecent act shall be committed, or when any disorder of a gross, violent or vulgar character shall take place therein.

Section 2638.  Persons Under Sixteen to be Excluded after Nine O'clock Post Meridian.--It shall be unlawful, after nine o'clock post meridian, to permit any person to attend or take part in any public dance who has not reached the age of sixteen years.

Section 2639.  Halls to be Closed at One O'clock Ante Meridian.--All public dances shall be discontinued, and all public dance halls shall be closed, on or before the hour of one o'clock ante meridian: Provided, however, That upon the application of a bona fide organization or society, and upon an investigation by the proper authority, the mayor may grant such organization or society a permit to continue a dance until two o'clock ante meridian.

Section 2640.  Penalties.--Any person, persons, society, club, or corporation who shall violate any of the provisions of this subdivision (d), shall be subject to a penalty of twenty-five dollars, to be recovered with costs in a summary proceeding.

(e)  Parking Lots for Profit]

Section 231.  Section 2650 of the act, amended October 5, 1979 (P.L.195, No.64), is amended to read:

Section 2650.  Regulation[; Revenue; Bonding] **of Parking Lot and Parking Garage** Operators.--**(a)**  For the purposes of protecting the public [and of raising revenue], each city may enact suitable ordinances regulating the business of operating [for profit] **for-profit** parking lots **and for-profit parking garages** within the city [and may require such lots to reserve areas exclusively for parking by handicapped individuals. License or permit fees may be charged and collected from the operators of such parking lots]. **Ordinances shall be consistent with 75 Pa.C.S. (relating to vehicles). Each city may require for-profit parking lots and for-profit parking garages to reserve areas exclusively for parking by handicapped individuals. Nothing in this section shall be construed to limit the protections and prohibitions contained in section 202 of the Americans with Disabilities Act of 1990 (Public Law 101-336, 104 Stat. 327), the act of October 27, 1955 (P.L.744, No.222), known as the "Pennsylvania Human Relations Act," and the Federal and State rules and regulations adopted in implementation of those acts. License and permit requirements may be imposed on for-profit parking lots and for-profit parking garages, and license or permit fees may be charged and collected from the operators thereof.**

**(b)**  Any city adopting [such] a regulatory plan [shall require from each operator a bond to be approved by council for the protection of the public from loss of or damage to the vehicles parked, stored or placed under the jurisdiction of such parking lot operator.] **applicable to for-profit parking lots and for-profit parking garages shall have the authority to require that each operator maintain insurance, from an insurer legally authorized to conduct business in this Commonwealth, in amounts not less than that which is prescribed by council for the protection of the public from loss of or damage to the vehicles parked, stored or placed under the jurisdiction of the operator and against liability arising out of the ownership or use of the parking lot or parking garage.**

Section 232.  The act is amended by adding sections to read:

Section 2651.  Farmers.--No city shall levy or collect any license fee from any farmer upon sales of the farmer's own produce in or about the streets of the city. This section shall not restrict in any other way a city's power to regulate the conduct of a farmer's business.

Section 2652.  Insurance Business.--No city shall levy or collect any license fee upon insurance companies or their agents, or insurance brokers, authorized to transact business under the laws of this Commonwealth.

Section 2653.  Persons Taking Orders by Samples.--No city shall levy or collect any license fee or mercantile tax upon persons taking orders for merchandise by sample, from dealers or merchants for individuals or companies who pay a license or mercantile tax at their chief places of business. Nothing in this section shall authorize a person to sell by retail to persons other than dealers or merchants without payment of a license or permit fee.

Section 2654.  Commonwealth License Saved.--Nothing contained in this article shall be construed to relieve any person, partnership or corporation from the duty of taking out a license

or from the payment of any license tax or fee imposed or authorized by any other statute, nor shall any Commonwealth license tax or fee preempt the registration, license or regulatory powers of a city in accordance with this article, unless the preemption is expressly authorized.

Section 233.  Article XXVII heading of the act is amended to read:

ARTICLE XXVII
[INDEBTEDNESS] **REAL ESTATE REGISTRY**

Section 234.  Sections 2701 and 2703 of the act are repealed:

[Section 2701.  No Unauthorized Debt to be Created.--No city and no municipal department thereof shall create any debt, except in pursuance of previous authority of law or ordinance.

Section 2703.  Liability in Bond Transfers.--All certificates of loans, issued by a city, shall be transferable by the legal owners thereof without any liability on the part of the transfer agents of the city to recognize or see to the execution of any trust, whether expressed or implied, or constructive, to which such loans may be subject, unless such transfer agents of the city shall have previously received notice, in writing, signed by or on behalf of the person for whom such loans appear by the certificate thereof to be held in trust, that the proposed transfer would be a violation of such trust.]

Section 235.  The act is amended by adding a section to read:

**Section 2704.  Real Estate Registry.--(a)  For the purpose of procuring accurate information in reference to the ownership of all real estate, the council of each city may provide, by ordinance, for a real estate registry in accordance with the act of October 9, 2008 (P.L.1400, No.110), known as the "Uniform Municipal Deed Registration Act." If required by the ordinance, every owner, subsequent purchaser, devisee or person acquiring title by partition or otherwise to any real estate in the city shall furnish, at the designated city office, descriptions of their respective properties upon blanks to be furnished by the city and, at the same time, present their conveyance to be stamped by the designated city official or employe, without charge, as evidence of its registration. A person who fails to register real estate as required by this article shall be liable for a penalty established by ordinance to be recovered, with costs of suit, in the name and for the use of the city, as penalties for the violation of city ordinances are recoverable.**

**(b)  A registry established in accordance with this article shall be in the form provided by council and may include books, maps and plans. The registry shall show the location and dimensions of each property in the city, as well as the street number of and the name of the owner or owners of the properties, and shall allow for the inclusion of the names of future owners and dates of future transfer of title.**

**(c)  A city official or employe charged with acquiring information necessary to establish and maintain the registry shall have free access, without charge, to any of the public records wherein the information may be obtained. The official or employe may also cause search to be made in any other place for any documentary or other evidence of title, not reported to the city official or employe pursuant to this article, if it is necessary for the completion of the registry.**

**(d)  The registry shall be preserved in the manner council**

shall designate in accordance with 53 Pa.C.S. Ch. 13 Subch. F (relating to records).

    (e)  The official or employe charged with the duty of maintaining the registry shall provide certified copies of any of the entries thereto, and the copies shall be received in evidence in the same manner as the original registry would be admissible. Certified copies also shall be furnished to any person for a reasonable fee.

    (f)  The sheriff of the county in which the city is situated shall present for registry the deeds of all properties within the city limits sold by the sheriff at judicial sales, whether by execution, in partition or otherwise.

    (g)  Each city's registry may be used as the lawful and proper source of property owners' or reputed owners' names for all lawful purposes, including the filing of municipal claims.

    (h)  Nothing in this section shall invalidate any municipal or tax claim by reason of the fact that the same is not assessed or levied against the registered owner.

    Section 236.  The act is amended by adding an article to read:

ARTICLE XXVII-A
NUISANCE ABATEMENT

Section 2701-A.  Definitions.

    The following words and phrases when used in this article shall have the meanings given to them in this section unless the context clearly indicates otherwise:

    "Abatement."  The removal, stoppage or destruction by any reasonable means of that which causes or constitutes a public nuisance.

    "Department."  The department designated by the city council to determine the existence of and to abate a public nuisance in accordance with this article.

    "Owner."  With regard to the property on which the alleged public nuisance exists, the owner of record based upon the city's real estate registry if the city maintains a registry, or, if the city does not maintain a real estate registry, on the tax assessment records of the city, if any, or of the county in which the city is located. The term may include any person in whom is vested all or any part of the legal or equitable title to the property or who has charge, care or control of the property as agent, executor, administrator, assignee, receiver, trustee, guardian, lessee or mortgagee in possession.

    "Property."  Any personal property or any real property and any improvements thereto.

    "Public nuisance."

        (1)  Any conduct or any property, or condition or use of property, defined or declared to be a public nuisance under any provision of this act or other law.

        (2)  Conduct or property, or the condition or use of property, if the department determines that it endangers the health or safety of, or causes any hurt, harm, inconvenience, discomfort, damage or injury to, any person or property in the city, by reason of the conduct or property, or the condition or use of the property, being any of the following:

            (i)  A menace, threat or hazard to the general health and safety of the community.

            (ii)  A fire hazard.

            (iii)  A building or structure that is unsafe for

occupancy or use.
        (iv)   Property that is so inadequately or
insufficiently maintained that it diminishes or depreciates
the enjoyment and use of other property in its immediate
vicinity to such an extent that it is harmful to the
community in which the property is situated.
    (3)   Unauthorized accumulations of garbage and rubbish and
the unauthorized storage of abandoned or junked automobiles or
other vehicles on private or public property, and the carrying
on of any offensive manufacture or business.
"Summary abatement."  Abatement of a public nuisance by the
city without prior notice to the owner of the property in
accordance with this article.
Section 2702-A.   Report and investigation of public nuisance.
    (a)   Designation of department.--Council shall designate the
department to which reports of the existence of a possible public
nuisance shall be made.
    (b)   Criteria for investigating reports.--The designated
department shall establish criteria for investigating reports made
to it to determine the existence of a public nuisance. The reports
may be submitted by any member of the public, any city employee or
elected or appointed city official or result from inspections made
by the department.
    (c)   Notification.--If the department, either as a result of a
report made to it or an investigation made by it, reasonably
believes the reported property involves a building which appears
to be structurally unsafe, it shall notify the city's building
inspector or other appropriate official who shall cause the
property to be inspected, subject to constitutional standards in a
similar manner as provided in section 2308, and submit a written
report to the department.
    (d)   Determination.--Upon completing its investigation and
receiving any written reports required by subsection (c), the
department shall determine all of the following:
    (1)   If a public nuisance exists.
    (2)   If the public nuisance is of such a severe and
substantial nature that it presents a clear, immediate and
substantial danger to public health or safety or to the health
or safety of any occupant of a property on which a public
nuisance exists or of any property in the vicinity of the
public nuisance, that it is sufficient to justify extraordinary
and immediate action without prior notice to the owner of the
property to avoid personal injury, death or substantial loss of
property.
    (e)   Retention of records.--Following an investigation, the
department shall retain a copy of its findings including any
reports made to it and any photographs of the property or
condition investigated, pursuant to 53 Pa.C.S. Ch. 13 Subch. F
(relating to records).
Section 2703-A.   Summary abatement.
    (a)   General rule.--A city shall have the power to utilize
summary abatement in accordance with this section.
    (b)   Conditions.--In the case of a reported public nuisance,
the department shall have authority to utilize summary abatement
if all of the following occur:
    (1)   The department determines the existence of the
criteria in section 2702-A(d)(1) and (2).

(2)   The mayor or the mayor's designee provides express authorization to utilize summary abatement.

(c)   Notice not required.--If summary abatement is implemented pursuant to subsection (b), the department shall have the authority to enter upon the property for the purpose of abatement without prior notice to the owner of the property or to the holders of liens thereon.

(d)   Procedure.--The following shall apply:

(1)   Within ten days following a summary abatement, the department shall post on the property upon which the abatement has occurred a notice describing the action taken to abate the nuisance.

(2)   Within 20 days following a summary abatement, the department shall determine the identity of the owner of the property by reference to the city's real estate registry if the city maintains a registry, or, in the absence of a registry, by reference to county assessment records, and the identity of the holders of all liens upon the property which are properly indexed among the records of the county and provide to the owner and to all lienholders written notice, by first class mail or hand delivery, of the action taken to abate the nuisance.

(3)   Within 30 days following a summary abatement, the department shall file with the city treasurer or other financial officer of the city designated by council a statement of costs of the abatement, which shall include the administrative fee and civil penalty provided by this article. After filing with the city treasurer, notice of the statement of costs shall be provided to the owner and lienholders in accordance with section 2704-A(b).

Section 2704-A.   Prior notice of abatement.

(a)   Abatement authority.--The department shall have the authority to abate a public nuisance with prior notice as provided by this section if, after inspecting the property or condition reported to be a public nuisance, subject to constitutional standards in a similar manner as provided in section 2308, the department determines, as provided for in section 2702-A(d)(1), that the public nuisance exists.

(b)   Method of notice.--

(1)   If the department proceeds with abatement pursuant to this section, it shall identify the owner of the property by reference to the city's real estate registry if the city maintains a registry, or, in the absence of a registry, by reference to county assessment records, and shall immediately serve a written notice on the owner by any of the following methods:

(i)   Personal service.

(ii)   Leaving a copy of the notice at the usual place of residence or business of the owner or the address of the owner shown in the city's real estate registry or in the records in the office of the recorder of deeds.

(iii)   Mailing a copy by United States certified mail, return receipt requested, to the owner at the owner's current address shown in the city's real estate registry or in the records in the office of the recorder of deeds.

(2)   If service of the written notice is unable to be perfected by any of the methods under paragraph (1), the

department shall publish a copy of the notice in a newspaper of
general circulation once a week for two consecutive weeks and
shall provide a copy of the notice to the individual in
possession of the property on which the department has
determined that the public nuisance exists, or, if there is no
individual in possession of the property, the department shall
post a copy of the notice at the structure, location or
premises.

    (3)  The department shall determine from the records in the
offices of the recorder of deeds the identities of all
lienholders of the property and serve a written notice on all
lienholders by United States certified mail, return receipt
requested.

    (c)  Contents of notice.--The notice to the owner and
lienholders shall state clearly and concisely the findings and
determination of the department with respect to the existence of a
public nuisance. The notice shall further state that the public
nuisance shall be abated by the city at the expense of the owner
unless it is otherwise abated within 30 days of the notice or
within any extension of that period granted by the department.

    (d)  Liability.--A person who is the owner of the premises,
location or structure at the time a notice to abate a public
nuisance is issued and served upon the person shall be responsible
for complying with the notice and shall be liable for any costs
incurred by the city in connection with the notice,
notwithstanding if the person conveyed the person's interest in
the property to another after the notice was issued and served.

    (e)  Defense.--It shall not be a defense to the determination
that a public nuisance exists that the property is boarded up or
otherwise enclosed.

Section 2705-A.  Abatement by owner.

    (a)  Duty of owner.--Within 30 days after written notice has
been provided pursuant to section 2704-A(b)(1) or (2), the owner
shall remove and abate the nuisance.

    (b)  Extension.--The department, upon written application by
the owner within the 30-day period referred to in subsection (a),
may grant additional time for the owner to effect the abatement of
the public nuisance, if the extension is limited to a specific
time period.

Section 2706-A.  Appeal after notice; hearing.

    (a)  Hearing.--A city shall, by ordinance, provide a procedure
pursuant to which an owner of the property who has been served
with a notice pursuant to section 2704-A(b)(1) or (2) may request
and have a timely hearing on the question of whether a public
nuisance in fact exists.

    (b)  Appeal board.--Council, or a committee of three council
members appointed by council, shall constitute the public nuisance
appeals board which, if an appeal is taken, shall conduct the
hearing on the question of whether a public nuisance in fact
exists. The appeals board may uphold, amend or modify the
determination of the department or extend the time for compliance
with the department's order if the extension is limited to a
specific time period.

    (c)  Time limitations.--An appeal under this section shall toll
the running of the period of time within which the nuisance is to
be abated until a decision is rendered by the appeals board.

Section 2707-A.  Abatement by city after notice; statement of

costs.

If a public nuisance has not been abated at the expiration of 30 days after notice has been provided or within the additional time as the department or appeals board may grant, taking into consideration the provisions of section 2706-A(c), the department shall have the authority to enter upon the property for the purpose of abatement. Upon abatement in accordance with this section, the department shall file with the city treasurer or other financial officer of the city designated by council a statement of costs of the abatement, which shall include the administrative fee and civil penalty provided by this article.

Section 2708-A.  Assistance in abatement.

In abating a public nuisance, the department may call upon any of the city departments or divisions for whatever assistance shall be deemed necessary or may abate the public nuisance by private contract.

Section 2709-A.  Salvage of material.

If deemed practicable by the department, the department may salvage and sell at private or public sale any material derived from an abatement of a public nuisance. Pursuant to ordinance, all of the following shall apply to the proceeds obtained from the sale of any material salvaged as a result of an abatement:

(1)  The proceeds shall be deposited as directed by ordinance.

(2)  The proceeds may be applied against the amount of the costs, fees and penalties relating to the abatement.

(3)  If the amount of the proceeds exceeds the amount of the costs, fees and penalties, any excess shall be paid to the owner.

Section 2710-A.  Notice of assessment; appeal of charges.

(a)  Notice of assessment.--Upon receipt of the statement of costs from the department, either for a summary abatement pursuant to section 2703-A or for an abatement with notice pursuant to section 2704-A, the treasurer or other financial officer of the city designated by council shall, in accordance with section 2704-A(b), give notice of the amount set forth in the statement of costs to the owner and lienholders of the property upon which the public nuisance has been abated. The notice shall state that the city proposes to assess against the property the amount set forth in the notice and that objections to the proposed assessment must be made in writing and received by the designated officer within 20 days from the date of mailing the notice.

(b)  Lien.--Upon the expiration of the 20-day period, if no written objections have been received by the officer, the total amount of costs, fees and penalties specified in the statement of costs may be entered as a lien against the property on which the nuisance was abated and shall be collected in the manner provided for the collection of municipal claims and liens, subject to rights of appeal provided in this section.

(c)  Administrative review.--If objections of the owner or a lienholder are received by the designated officer prior to the expiration of the 20-day period, the officer shall refer the matter to the department for administrative review.

(d)  Procedure.--The city shall, by ordinance, provide a procedure by which the department shall make a determination regarding any timely filed objection and by which an appeal of the department's determination may be made to the appeals board

referred to in section 2706-A(b).
    (e)  Final administrative decision.--The determination of the appeals board shall be a final administrative decision within the city.
    (f)  Reduction or cancellation of assessment.--The department, in administrative review, or the appeals board, on appeal, may reduce or cancel a proposed assessment if it is determined that any of the following did not conform to the provisions of this article:
        (1)  The notice to remove the nuisance.
        (2)  The work performed in abating the nuisance.
        (3)  The computation of charges.
    (g)  Elimination of civil penalty.--The department, in administrative review, or the appeals board, on appeal, may reduce a proposed assessment by eliminating the civil penalty portion of the statement of costs if any of the following applies:
        (1)  The current owner did not own the property at the time the notice required in section 2703-A was posted.
        (2)  The owner did not receive the notice to remove the nuisance, did not have knowledge of the nuisance and could not, with the exercise of reasonable diligence, have had knowledge of the nuisance.
Section 2711-A.  Personal liability of owner.
    Notwithstanding the right of the city to utilize in rem proceedings to pursue collection of the costs, fees and penalties in the statement of costs as a municipal claim, the person who is the owner of the property at the time of a summary abatement at which the notice required is given, or, in the case of an abatement pursuant to section 2704-A, the person who was the owner of the property at the time notice of the existence of the public nuisance was given, shall be personally liable for the amount of the assessment, including all interest, other charges and, except as provided in section 2710-A(g), civil penalties.
Section 2712-A.  Administrative fee and civil penalties.
    Whenever a public nuisance is abated by the city, the statement of the costs of the public nuisance shall include the city's actual cost of abatement, plus an administrative fee, not to exceed 10%, and a civil penalty. For the first abatement of a nuisance upon any owner's property within the city in any two-year period, the civil penalty shall be $250. For second and subsequent abatements, upon any properties of any owner within the city during any two-year period, the civil penalty shall be $500. The increased civil penalty shall be imposed and collected regardless of whether the second and subsequent nuisances upon property or properties of an owner involve the same property or are of the same or different characters.
    Section 237.  Article XXVIII heading of the act is amended to read:

ARTICLE XXVIII<br>[PROCEDURE FOR THE EXERCISE OF EMINENT DOMAIN AND THE ASSESSMENT OF DAMAGES AND BENEFITS BY VIEWERS]<br><b>EMINENT DOMAIN</b>

    Section 238.  Sections 2801 and 2802 of the act are amended to read:
    Section 2801.  Exercise of Eminent Domain.--[In the] **(a)  In** addition to all other purposes for which a city may exercise the power of eminent domain as authorized by this act or by other laws

of the Commonwealth, and subject to the duty to provide just
compensation, a city may acquire property by eminent domain,
including entering upon, appropriating, taking, using and
occupying private lands and property for any of the following
public purposes:

(1)  **The** laying out, opening, widening, extending, vacating,
grading[,] or changing the grades or lines[,] of streets[, the].

(2)  **The** construction of bridges, and the piers, abutments and
approaches therefor[, the].

(3)  **The** construction of slopes, embankments and **storm water**
sewers, including storm water drains[, the].

(4)  **The** erection and extension of [water-works] **waterworks**,
wharves and docks, public buildings, public works, filtration
plants, sewage systems, sewage treatment works, [garbage] **waste**
disposal plants, [lands and places for the disposal of ashes and
other refuse materials] **including disposal of garbage, ashes and
other refuse materials and transfer facilities**, gas plants,
electric power and light plants, [houses of detention, workhouses,
poor farms, poor houses,] fire [engine] houses, hospitals, public
auditoriums, memorial buildings, **public transportation facilities**,
comfort stations, **homeless shelters**, waiting stations,
**communications facilities**, drinking fountains, [and] libraries[,
the] **and other public buildings and public works.**

(5)  **The** establishing of recreation places[, and].

(6)  **The** changing of watercourses[, the].

(7)  **The** acquisition of lands, **easements and property** for use
of **the Pennsylvania** National Guard[, and for all other purposes
authorized by this act and the laws of the Commonwealth, a city
may enter upon, appropriate, take, use, occupy, injure, or
destroy, private lands, property, toll bridges, or material. All
such action by the city shall be provided for by ordinance. A copy
of each such ordinance shall be recorded within thirty days after
its enactment in the office of the recorder of deeds in and for
the county or counties wherein such property is situate, and shall
be indexed in the name of the property owner affected thereby. A
copy of the ordinance shall be sent by registered mail to each
such property owner at his last known address.] **in accordance with
sections 4413-A and 4414-A.**

(b)  **Eminent domain proceedings shall be subject to and conform
with the provisions of 26 Pa.C.S. (relating to eminent domain).**

Section 2802.  Restrictions as to Certain Property.--In
addition to the restrictions made by other provisions of this act
in particular cases **or by any other provision of law,** no city
shall exercise the right of eminent domain as against land now
occupied by any building which was used during the Colonial or
Revolutionary period as a place of Assembly by the Council of the
Colony of Pennsylvania, the Supreme Executive Council of the
Commonwealth of Pennsylvania[,] or the Congress of the United
States; or as against the land occupied by any fort, redoubt[,] or
blockhouse[,] erected during the Colonial or Revolutionary
period[,] or any building used as headquarters by the Commander-
in-Chief of the Continental Army, or as against the site of any
building, fort, redoubt, blockhouse[,] or headquarters, which are
preserved for their historic associations and not for private
profit. The Colonial and Revolutionary period shall be [taken as]
**deemed to have** ended on the third day of September, one thousand
seven hundred and eighty-three.

Section 239.  The act is amended by adding a section to read:
**Section 2803.  Title Acquired.--Except as otherwise provided in law, if land or other real or personal property is acquired by a city in eminent domain proceedings or is acquired by gift, purchase or otherwise, the title obtained by the city shall be in fee simple absolute or like absolute ownership unless the parties agree otherwise in writing and the agreement expressly appears in a recorded deed affecting any real property acquired by the city or in the notice of condemnation.**
Section 240.  Sections 2809 and 2823 of the act are repealed:
[Section 2809.  Value of Land or Property not to be Assessed as Benefits; Exception.--In all cases of the appropriation of land or property for public use, other than for streets, it shall not be lawful to assess any portion of the damage done to or value of the land or property so appropriated, against the other property adjoining or in the vicinity of the land or property so appropriated.
Section 2823.  Assessment of Damages and Benefits.--The damages may be paid, in whole or in part, by the city, or may be assessed, in whole or in part, upon the land or property benefited. In the latter case, the viewers having first determined the damages apart from the benefits shall assess the total cost of the improvement, or so much thereof as may be just and reasonable, upon the lands or properties peculiarly benefited, including in the assessment all parties for which damages have been allowed, and shall report the same to the court. The total assessments for benefits shall not exceed the total damages awarded or agreed upon.]
Section 241.  Section 2824 of the act is reenacted to read:
Section 2824.  Assessment Awards.--In proceedings to assess damages and benefits, if the land or property is both benefited and damaged by such improvements, the excess of damages over benefits, or the excess of benefits over damages, or nothing in case the benefits and damages are equal, shall be awarded to or assessed against the owner of land and property affected thereby.
Section 242.  Section 2850 of the act is repealed:
[Section 2850.  Title Acquired.--In all cases where land or property is acquired by the city in eminent domain proceedings other than for street purposes, or is acquired by gift, purchase or otherwise, the title obtained by the city shall be in fee simple or like absolute ownership: Provided, That in particular instances a different title may by agreement or consent be acquired.]
Section 243.  Article XXIX heading of the act is reenacted to read:

ARTICLE XXIX
STREETS
Section 244.  Article XXIX subdivision (a) heading of the act is repealed:

[(a)  Plans and Location]
Section 245.  The act is amended by adding sections to read:
**Section 2901.  Map of Streets.--Council may authorize and approve a comprehensive map of city streets which may, but need not, be a part of an official map adopted in accordance with the Municipalities Planning Code. If a comprehensive map of city streets is adopted, any street subsequently laid out in accordance with this act shall be deemed an amendment to the comprehensive map.**

Section 2902.  Laying Out Streets.--(a)  A city shall have the power to and may lay out streets by any of the following means:

(1)  By identifying the street on a comprehensive map of city streets, in an amendment to the comprehensive map or in a recorded subdivision or land development plan.

(2)  By an ordinance laying out any area for future opening as a public street.

(b)  If, at the time of the enactment of an ordinance in accordance with subsection (a)(2), the lines of the laid-out street include property not subject to use as a public passageway, the ordinance shall be filed with the recorder of deeds of the county where the city is located. The recorder of deeds shall index the ordinance by name of city, the name of the property owner and, if applicable, the parcel number of the property through which the proposed street is laid out.

Section 2903.  Effect of Laying Out of Street.--With regard to land not previously used by the city as a passageway for public travel, the laying out and locating of a street in accordance with this article shall not, in and of itself, do any of the following:

(1)  Authorize the entry upon or the appropriation of any property.

(2)  Constitute the opening of any street or the taking or acceptance of any land.

(3)  Obligate the city to improve or maintain the street or land.

Section 2904.  Improvements Within Laid-out Streets.--No permit shall be issued for any building within the lines of any street laid out pursuant to this article. No person shall recover any damages for the taking for public use of any building or improvements constructed within the lines of any street after the same shall have been included in the general plan or official map, and any building or improvement shall be removed at the expense of the owner.

Section 246. Article XXIX subdivision (b) heading of the act is repealed:

[(b)  Opening, Widening, Extending, Straightening and Vacating]

Section 247.  Section 2915 of the act is amended to read:

Section 2915.  Power to Open, Etc.--[Cities] (a)  **With regard to any street or any part of a street within city limits, a city may**, with or without any petition of property owners, [may] **do any of the following:**

(1)  [open] **Open**, widen, straighten, alter, extend and improve[, and may].

(2)  [establish] **Establish** or reestablish the grades [of, and].

(3)  [keep] **Keep** in order and repair and in safe passable condition[, any street, or any part thereof, within the city limits, or may].

(4)  [vacate] **Vacate** and discontinue [the same] whenever deemed expedient for the public good[,].

(5)  **With the approval of the Department of Transportation, vacate highways laid out by the Commonwealth within the city limits which have remained unopened for thirty years.**

(b)  [and] **A city may** provide for the payment of the cost [thereof,] **for any of the actions authorized in subsection (a),** either in whole or in part, from the general revenues of the city. [Cities may vacate highways laid out by the Commonwealth within their limits, which highways have remained unopened for thirty

years.]
    Section 248.  Section 2916 of the act, amended June 14, 1961
(P.L.362, No.197), is amended to read:
    Section 2916.  Ordinances [when no] **When No** Petition is
Presented.--[Any ordinance for] **(a)  An ordinance shall be enacted
for** the opening, widening, straightening, extending or vacating of
any street, without petition of property owners, [shall be
adopted] by the affirmative vote of [at least four members of any
five member council, and under the mayor-council plan A of
government adopted pursuant to the Optional Third Class City
Charter Law, by the affirmative vote of at least five members of a
seven member council and by the affirmative vote of at least seven
members of a nine member council] **a majority of the whole number
of members of the council plus one.**
    **(b)**  [No such ordinance shall be finally adopted] **An ordinance
pursuant to subsection (a) shall not be finally enacted** until the
expiration of twenty-eight days from the date of its introduction
and, in the meantime, copies thereof shall be published in [one or
more of the newspapers of the city,] **a newspaper of general
circulation in the city** once a week for three consecutive weeks,
immediately following the introduction thereof, and, in case no
newspaper is published in the city, then in the same manner in one
newspaper published in the county **as required by section 109.**
    Section 249.  Sections 2917, 2918 and 2919 of the act are
amended to read:
    Section 2917.  Erection of Improvements Restricted.--Any
ordinance widening or straightening any street, or part thereof,
shall fix the new line or lines and may require that thereafter no
owner or builder shall erect any new building or rebuild or alter
the front of any building already erected without making it
conform to the new lines[. In]**, in** which case the land owner's
right of action shall accrue only when the city actually enters on
and occupies the land within the [said lines, or the said] **lines
or the** building is located or relocated to conform to [said] **the** lines.
    Section 2918.  Petition for Opening, Etc.--**(a)**  A petition **may
be presented** to council for the opening, widening, straightening,
altering, extending, vacating[,] or [for the] establishing or
reestablishing of the grade of any street[,].
    **(b)  A petition made pursuant to this section** shall be signed
by a majority, in number and interest, of the owners of property
abutting on the line of the proposed improvement or vacation as
fixed at the time of presentation of the petition[,] and shall be
verified by the affidavit of one or more of the petitioners. The
majority in interest of owners of undivided interests in any piece
of property shall be deemed as one person for the purposes of the
petition.
    Section 2919.  Notice of [Ordinance and] Petition[;
Appeal].--[Upon the approval of] **After the presentation of the
petition presented in accordance with section 2918 and council's
determination of the adequacy of the petition, but before final
enactment of** any ordinance [passed] **enacted** pursuant to [said] **the**
petition, notice shall be [given, once a week in one] **published in
a** newspaper **of general circulation once a week for three
consecutive weeks as required by section 109,** [as required by
section one hundred and nine of this act,] and [by], handbills
**shall be** posted in conspicuous places along the line of the

proposed improvement. The notice **and handbills** shall state the fact [of the passage of the ordinance, and the date thereof,] that the petition for the improvement was signed by a majority in interest and number of the owners of property abutting the line of the proposed improvement[,] and that any person interested may [appeal to the court of common pleas of the county within thirty days after the passage of the said ordinance.] **provide comments at a public hearing to be held at a date, time and place as stated in the published notice and handbills. If, after the hearing, council determines to proceed with the consideration of an ordinance pursuant to the petition, it shall publish notice of the ordinance and incorporate reference to any maps or drawing, in accordance with subdivision (a.1) of Article X.**

Section 250. Section 2920 of the act is repealed:

[Section 2920. Appeal from Ordinance.--Any person interested may, within thirty days from the passage of the ordinance, appeal from the validity of the ordinance to the court of common pleas questioning the legality of the petition for improvement or of the said ordinance or of both. If said court shall find the petition or ordinance materially defective under the law, it shall declare the ordinance void, otherwise it shall approve the same.]

Section 251. Section 2921 of the act, repealed in part June 3, 1971 (P.L.118, No.6), is repealed:

[Section 2921. Effect of Failure to Appeal.--The parties interested shall not question the legality of the petition and ordinance in any manner or matter or at any time whatever, except as provided in section two thousand nine hundred and twenty of this act.]

Section 252. Section 2922 of the act is amended to read:

Section 2922. Assessment of Damages and Benefits.--[In any proceedings under this subdivision of this article,] **If necessary, in any proceedings to exercise one of the powers given in section 2915,** viewers shall be appointed, damages awarded[,] and benefits assessed **as provided in 26 Pa.C.S. (relating to eminent domain) or** as provided in this act for [such proceedings] **the assessment of benefits.**

Section 253. Article XXIX subdivision (c) heading of the act is repealed:

[(c) Grading, Paving, Macadamizing, Et Cetera]

Section 254. Sections 2930 and 2931 of the act are amended to read:

Section 2930. Power to Grade, Pave, Macadamize, Et Cetera.--**(a)** Every city may grade, pave, macadamize or otherwise[,] improve any street, or part thereof, and the sidewalks thereof when included as a part of the improvement, have the same set with curbstone[,] and provide for the drainage thereof.

**(b)** Every city may also provide for the improvement of any [highway, or] street, or any sections or parts thereof, in length, in the space between the curb, gutter[,] or [actual carriage-way line] **cartway** and the property line, either by an original work or improvement thereon, or by a change, repair, renewal[,] or alteration in the [said] street or curb, or in parking spaces, or shade trees, or by changing, altering, renewing, replanting, pruning[,] or otherwise [improving the same, in any or all of said particulars] **making improvements therein.**

Section 2931. Payment of Cost of Improvement.--The costs and

expenses of [things] **the improvements** done under [section two thousand nine hundred and thirty of this act] **section 2930** shall be paid, in whole or in part, by the city, or by the owners of real estate bounding and abutting thereon, which cost and expense upon the abutting real estate shall be assessed [according to the foot-front rule, or according to the benefits, as council shall, by ordinance, determine, except that in case of grading only, the said costs and expense shall be assessed according to benefits] **in accordance with Article XLV-A.**

Section 255.  Sections 2932, 2933 and 2934 of the act are repealed:

[Section 2932.  Assessment of Cost by Foot-Front Rule.--When the costs and expenses, or any part thereof, are to be paid for by the foot-front rule, the council shall assess or cause to be assessed the said cost and expenses upon the real estate bounding or abutting on the line of the improvement, by an equal assessment on said property in proportion to the number of feet the same fronts on the respective street, or part thereof, to be improved. The council may provide for an equitable reduction from the frontage of lots at all street, railroad, or like intersections, or where, from the peculiar or pointed shape of the lots, an assessment for the full frontage would be inequitable.

Section 2933.  Assessment of Costs According to Benefits.--When the cost and expenses, or any part thereof, of any grading, paving, macadamizing, or other improvement of any street, or part thereof, is to be paid for by the owners of real estate abutting or bounding thereon as aforesaid, according to benefits, the same shall be assessed by viewers appointed by the court of common pleas, as provided in this act for the assessment of benefits by viewers.

Section 2934.  Ordinance for Improvement at Expense of Property Owners upon Petition.--Council may, by ordinance, provide for the paving, macadamizing, grading, or other improvement of any street, or part thereof, at the cost and expense of the abutting property owners in whole or in part, upon the petition therefor of a majority in number or interest of the owners of property abutting or bounding on the line of the proposed improvement, to be verified by the affidavit of one or more of the petitioners. A majority in interest of owners of undivided interests in any piece of property shall be deemed and treated as one person for the purpose of said petition.]

Section 256.  Section 2935 of the act, amended June 14, 1961 (P.L.362, No.197), is repealed:

[Section 2935.  Ordinance for Improvement at Expense of Property Owners without Petition.--Council may, by ordinance, provide for the paving, macadamizing, grading or other improvement of any street, or part thereof, at the cost and expense of the abutting property owners, in whole or in part, without petition therefor of abutting property owners if the ordinance for such improvement has been passed by the affirmative vote of four members of any five member council, and under the mayor-council plan A of government adopted pursuant to the Optional Third Class City Charter Law, by the affirmative vote of at least five members of a seven member council and by the affirmative vote of at least seven members of a nine member council. Such ordinance shall not be passed in a less period than twenty-eight days from the date of its introduction; and, in the meantime, copies of such ordinance

shall be published, in one or more newspapers, once a week for three weeks, in the manner required by section one hundred and nine of this act. The requirements for such publication shall not, however, preclude the amendment of any paving ordinance as to the kind of pavement with which any street, or part thereof, or sidewalk, is proposed to be paved.]

Section 257.  Sections 2936 and 2937 of the act are repealed:

[Section 2936.  Appeal from Ordinance.--Any person affected may appeal from said ordinance in the manner and time and with the effect provided for in sections two thousand nine hundred twenty and twenty-one of this act.

Section 2937.  Assessment of Damages and Benefits.--In any proceedings under this subdivision of this article where the cost and expense of the improvement is not assessed by the foot-front rule, viewers shall be appointed, damages awarded, and benefits assessed as provided in this act, for such proceedings.]

Section 258.  Section 2938 of the act is amended to read:

Section 2938.  Preparation of Streets for Paving or Repairing.--**(a)**  Council may provide, by ordinance, for the laying, renewing[,] and repairing of all gas, water, steam[,] or other pipes[,] or conduits[,] in any street, before the paving, repaving[,] or repairing of the same[,] and for making the necessary [house] connections with [said] **the** pipes[, and also for].

**(b)**  **With regard to main or lateral sewers, council may provide for** the necessary [house] connections and branches [with and] leading into main or lateral sewers[: Provided, That in no case, except as a sanitary measure, of which council shall be the judge, shall council require such house connections to be extended further from such sewers, or from such gas, water, steam, or other pipes, or conduits, than to the inner line of the curbstone of such street. Council may,].

**(c)**  **With regard to connections requiring extensions from sewers or from gas, water, steam or other pipes or conduits, council may not require private utility companies to make extensions beyond the inner line of the curbstone of the street unless it determines that it is necessary to do so as a sanitary measure.**

**(d)**  **If**, after notice to all companies, corporations, persons[,] and owners affected[, and in default of compliance therewith, cause said pipes to be laid, renewed, or repaired, and said connection made,] **of the necessity for the laying, renewing and repairing of gas, water, steam or other pipes or conduits in a street and the necessity of making necessary connections, prior to the proposed paving, repaving or repairing of the street, there is a failure to comply, council may perform work** and **may** collect the cost of paving[, and repairing all pipes and pipe connections, from the companies, corporations, or persons owning or operating the said gas, water, steam, and other pipes or conduits,] **or repaving, or repairing of the pipes or conduits,** with interest[; and the], **from the companies, corporations, persons and owners affected. The** cost of the sewer connections shall be a first lien against the land for whose benefit [such] **the** connections are made. A separate lien may be filed therefor, or [such] **the** sewer connection cost may be included in any lien filed for the cost of [such] **the** street improvement, and the lien and the proceedings thereon shall be as in the case of other municipal liens.

Section 259.   Section 2939 of the act, amended September 26, 1951 (P.L.1515, No.379), is amended to read:

Section 2939.   Highways in Cities.--Wherever in this act a city is given powers, rights and duties as to its streets or sections thereof, the same shall extend as well to highways or sections thereof which are also streets of the city, to the extent that the city is legally responsible for them, **pursuant to agreement or otherwise,** excepting damages to abutting property owners for acts of the Commonwealth unless the city shall assume them, under this act or the [State Highway Law.] **act of June 1, 1945 (P.L.1242, No.428), known as the "State Highway Law."** The use of the word "street" in this act shall to that extent include highways.

Section 260.   Article XXIX subdivision (d) heading of the act is repealed:

[(d)   Grade Crossings]

Section 261.   Section 2950 of the act is amended to read:

Section 2950.   [Consent of Public Utility Commission] **Grade Crossing; Pennsylvania Public Utility Commission; Jurisdiction; Damages.--(a)**   Every city constructing a street across a railroad shall construct the same above or below the grade thereof, unless permitted by the **Pennsylvania** Public Utility Commission to construct the same at grade.

**(b)   Any new construction of a street crossing a railroad, or any vacation of any street crossing a railroad, shall be constructed or vacated only in a manner consistent with the rules and regulations and under the jurisdiction of the Pennsylvania Public Utility Commission. The compensation for damages to the owners of adjacent property taken, injured or destroyed by the construction of a street crossing a railroad or any vacation of any street crossing a railroad shall be ascertained, fixed and paid in a manner consistent with 66 Pa.C.S. Pt. I (relating to public utility code).**

Section 262.   Section 2951 and Article XXIX subdivision (e) heading of the act are repealed:

[Section 2951.   Public Utility Commission; Jurisdiction; Damages.--Any such crossings of a railroad by a street, or any vacation of any street crossing a railroad, shall be constructed or vacated only in the manner prescribed by, and under the jurisdiction of, the Public Utility Commission. The compensation for damages to the owners of adjacent property taken, injured or destroyed shall be ascertained, fixed, and paid in the manner prescribed in the Public Utility Law.

(e)   Acquisition of Unobstructed View Across Lands]

Section 263.   Section 2955 of the act is amended to read:

Section 2955.   Acquisition of Unobstructed Views.--Any city may acquire, by purchase or by the right of eminent domain, a free and unobstructed view down and across lands located at or near intersections **or curves** of streets, railroads or railways, [or curves of any of them, as may be necessary,] to assure a free and unobstructed view in all directions at [such places,] **the intersections or curves** and to prevent the use of [such] **the** lands **over and across which the view was acquired** for any purpose or in any manner which may interfere with or obstruct the vision of any person or persons traveling upon any [such] street within the city. [Upon any such condemnation, the city having instituted the condemnation proceedings shall file with the recorder of deeds a plan, showing the property condemned and such other detailed

information as may be deemed necessary and, after the same is filed, said city may, from time to time, abate or remove, or cause to be abated or removed, any obstruction to such view over and across such lands.

The proceedings for the condemnation of such view over and across such lands, and for the assessment of damages for property taken, injured or destroyed, shall be in the manner provided in this act for property taken, injured or destroyed.

Upon the condemnation of a view over and across any lands for the purposes aforesaid, the owner of such lands may make every such use thereof as will not interfere with a free and unobstructed view at such intersection or curve. Unless specially provided for in such condemnation proceedings, such condemnation shall not be construed to prevent the owner thereof from using such land for pasture or the growing of grass, oats, wheat, or other crops which will not obstruct the vision more than wheat.]

Section 264.  Article XXIX subdivision (f) heading of the act is repealed:

[(f)  Use of Abutting Lands]

Section 265.  Section 2960 of the act is amended to read:

Section 2960.  Use of Abutting Lands for Embankments, Slopes, Fills, and Culverts.--In the grading of any street, or any part thereof, cities are hereby authorized and empowered to use so much of the lots and lands abutting on the [same] **street** for the construction of embankments, slopes, fills and culverts, as may be necessary [and proper] for the completion of the improvement. [The assessment of] **Compensation for** damages, costs[,] and expenses, resulting [thereby, shall be regarded as other assessments of damages, costs, and expenses, caused by the grading of streets, in cities and shall be assessed and paid as is provided by this act in such cases] **from the use of lots and lands abutting on the street for the construction of embankments, slopes, fills and culverts shall be made in the same manner as compensation for using and occupying private lands for the grading of streets in accordance with section 2801.**

Section 266.  Article XXIX subdivision (g) heading, section 2963, subdivision (h) heading, section 2965 and subdivision (i) heading of the act are repealed:

[(g)  Abandoned Turnpikes]

Section 2963.  Maintenance and Improvement of Condemned and Abandoned Turnpikes.--When any turnpike, or part thereof, situate in the same or more than one county, shall be condemned for public use, free of tolls, and the assessment of damages therefor shall have been paid by the county, or when any turnpike company or association has abandoned its turnpike, or any part thereof, or when any turnpike company or association has been dissolved, such turnpike, or part thereof, located within the limits of any city shall be maintained and improved in the same manner as other streets of the city.

(h)  Unlawful Assessments

Section 2965.  Repayment of Assessments Paid to City by Owners of Property Unlawfully Assessed.--Any city receiving money in payment of an assessment levied under any provision of this article shall repay the same or so much thereof as shall be ordered to any parties bringing the action, within two years of such payment or payments, upon the final determination of a proper court in a proper issue that the assessment levied was not such as

the owner of the property so assessed was liable to pay at the time council ordered the work to be done for which the assessment was made, or within the said period of two years, the city may repay such money voluntarily upon a showing that the same was paid inadvertently, or such assessment or part thereof was made erroneously.

     (i)  Streets or Roads Connecting City with Highways]

  Section 267.  Section 2970 of the act is amended to read:

  Section 2970.  Appropriation for Connections with Highways.-- Cities may, singly or jointly, with other political subdivisions, appropriate and expend moneys for the improvement of streets or roads beyond the limits of [such] **the** cities[,] for the purpose of connecting improved streets in [such] **the** cities with a highway [whenever that part of the connecting street or road to be improved outside the city limits shall be less than one mile in length].

  Section 268.  Article XXIX subdivision (j) heading of the act is repealed:

                [(j)  Detours]

  Section 269.  Section 2975 of the act is amended to read:

  Section 2975.  [Streets not to be Closed to Vehicular Traffic; Exceptions.--]**Street Closings; Detours.--(a)  The following shall apply to the closing of a street to vehicular traffic:**

    **(1)**  No street shall be closed to vehicular traffic, except upon order of the Department of Streets and Public Improvements, [or, by order of the mayor] **or other department of the city having jurisdiction over public streets or, in cases of emergency where immediate action is necessary to protect public safety, by order of the mayor,** the police or the fire marshal[, in cases of emergency, wherein the safety of the public would be endangered, nor shall any such].

    **(2)**  **A** street [be] **may not remain** closed for a longer period than is necessary for the purpose for which [such] **the** order [is] **to close was** issued.

    **(3)**  **Except in cases of emergency, where immediate action is necessary to protect public safety, no street shall be closed to vehicular traffic when the same has been designated as a detour by the Department of Transportation, unless the written consent of the Secretary of Transportation has first been obtained or unless council shall, by resolution duly recorded on its minutes, declare the closing necessary for the safety of the public.**

    **(4)**  **When any street which forms a part or section of a State highway, or has been designated as a detour by the Department of Transportation, is closed to vehicular traffic, the city shall at once notify the Department of Transportation of the creation of a detour, as hereinafter provided. When the detour is removed, the Department of Transportation shall also be notified at once of the removal.**

    **(5)**  **When any street is to be closed, it shall be the duty of the official or department that authorized the closing to designate a detour.**

    **(6)**  **While the detour is in use, legible signs shall be erected and maintained at reasonable intervals, indicating the proper direction, and the detour shall be maintained in safe and passable condition.**

    **(7)**  **When the street that had been closed is opened for traffic, all detour signs shall be removed.**

(b)  A city may enter into agreement with the owners of private lands covering the acquisition of right-of-way privileges for a detour over private property for the period when a street shall be closed to traffic. In case no agreement satisfactory to the parties can be reached, the city may proceed with the construction of the detour, with the owner of the property taken for the detour entitled to seek damages, if any, in the same manner as damages are now ascertained for the opening of streets in the city.

(c)  In the exercise of the rights conferred by this section relating to detours, council is hereby empowered to pay for the necessary maintenance, subsequent repair and land rental out of funds available for the construction and maintenance of city streets.

(d)  Any person who shall wilfully remove, deface, destroy or disregard any barricade, light, danger sign, detour sign, signal or warning of any other character whatsoever so legally erected or placed or who shall drive on, over or across any street which has been closed by proper authority commits a summary offense punishable upon conviction thereof in accordance with section 1018.16, but with a mandatory fine of not less than five hundred dollars ($500) or more than the maximum fine authorized in section 1018.17 for the second or any subsequent offense and shall pay the costs of prosecution together with the value of the property so removed, defaced or destroyed, except that persons who have no outlet due to the closing of a street may drive on, over or across the street, subject to reasonable conditions as may be prescribed by the city without being subject to the penalties imposed by this section.

(e)  All fines collected under the provisions of this section shall be paid over to the treasurer of the city.

(f)  In addition to the penalties provided in subsection (d), the city, its agents or contractors may, in an action at law, recover damages from any person or persons who have damaged a street when it is closed to vehicular traffic.

Section 270.  Sections 2976, 2977 and 2978 of the act are repealed:

[Section 2976.  Closing of Streets Designated as Detours by State.--No street shall be closed to vehicular traffic when the same has been designated as a detour by the Department of Highways of the Commonwealth, unless the written consent of the Secretary of Highways has first been obtained, or unless council shall, by resolution duly recorded on its minutes, declare such closing necessary for the safety of the public.

Section 2977.  Notice of Detour on Streets Forming Part of Highway.--When any street which forms a part or section of a highway, is closed to vehicular traffic, the city shall at once notify the Department of Highways of the Commonwealth of the creation of a detour, as hereinafter provided. When such detour is removed, the Department of Highways shall also be notified at once of the removal.

Section 2978.  Detours to be Provided when Streets Closed.--When any street shall be closed, as hereinbefore provided, it shall be the duty of the city authorities authorizing the closing to immediately designate or lay out a detour, on which they shall erect, or cause to be erected and maintained while such detour is in use, legible signs at each intersection throughout its entire length, indicating the proper direction. During the

period when such detour is in use, it shall be the duty of such authorities closing the street to maintain such detour in safe and passable condition. It shall also be the duty of the authorities closing the street and maintaining the detour to immediately remove all detour signs when the street originally closed is opened for traffic. Whenever necessary in the creation of a detour, as aforesaid, the city authorities responsible for laying out the detour may enter into agreement with the owners of private lands, covering the acquisition of right of way privileges over private property for the period when the street shall be closed to traffic. In case no agreement satisfactory to the parties can be reached, the authorities responsible for the laying out of the detour may proceed with the construction of the same, and either such authorities or the owner of the property occupied may petition the court for the appointment of viewers to ascertain the damages, if any, in the same manner as damages are now ascertained for the opening of streets in such city. In the exercise of the rights conferred by this section, council is hereby empowered to pay for the necessary maintenance, subsequent repair, and land rental out of such funds as are available for the construction and maintenance of the streets in their charge.]

Section 271.  Section 2979 of the act, amended March 25, 1988 (P.L.260, No.29), is repealed:

[Section 2979.  Penalties.--Any person who shall wilfully remove, deface, destroy or disregard any barricade, light, danger sign, detour sign, or signal, or warning of any other character whatsoever so legally erected or placed, or who shall drive on, over or across any street which has been closed by proper authority, shall, upon conviction thereof in a summary proceeding before a magistrate, alderman, or justice of the peace, be sentenced to pay a fine of not less than two hundred dollars nor more than five hundred dollars for the first offense, and a mandatory fine of five hundred dollars for the second or any subsequent offense, and the costs of prosecution together with the value of the sign so removed, defaced or destroyed, and, in default of the payment thereof, shall be sentenced to imprisonment of not more than ten days: Provided, however, That persons who have no outlet due to the closing of a street may drive on, over or across such street, with the consent in writing of, and subject to such conditions as may be prescribed by, the authorities responsible for the closing or their agents or contractors, without being subject to the penalties imposed by this section.

In addition to the penalties herein provided, the authorities responsible for the maintenance of a street which has been closed to vehicular traffic, or their agents or contractors, may, in an action at law, recover damages from any person or persons who have damaged a street when it is closed to vehicular traffic. All fines collected under the provisions of this section shall be paid by the officer receiving the same to the treasurer of the city.]

Section 272.  Article XXIX subdivision (k) heading of the act is repealed:

[(k)  Boundary Streets]

Section 273.  Sections 2985 and 2986 of the act are amended to read:

Section 2985.  Maintenance of Streets Forming Boundaries.-- Whenever any street is on the boundary line between any city and [a township, such] **any other municipal corporation, the** street

shall be maintained jointly by the city and the [township] **other municipal corporation.** For the purpose of maintaining any such street, the [authorities] **officers** of any city are hereby directed to enter into agreements with the [authorities of any township] **other municipal corporation** providing the manner in which the same shall be maintained[,] and providing for the division of the cost of maintenance between the city and [township] **other municipal corporation.** If any [such city or township] **other municipal corporation** shall fail or refuse to enter into any such contract, [any taxpayer thereof or the corporate authorities of the city or township] **the city or any taxpayer of the other municipal corporation** may present a petition to the court of [quarter sessions] **common pleas** of the county, setting forth the facts. The court, after hearing, of which [such] notice shall be given to all parties interested as the court may direct, shall make an order directing the manner of such maintenance and the division of the cost of maintenance between the city and the [township] **other municipal corporation.**

Section 2986.  Streets, the Center Line of Which Is the Boundary [between Municipalities in the Same County] **Between City and Another Municipal Corporation.**--Whenever [the center line of] any street constitutes the dividing line between [any city and a township located in the same county, the city may enter into a contract with the commissioners of the county and the commissioners or road supervisors of the township, as the case may be, providing for the grading, curbing, and macadamizing or paving, of the street; the cost of such improvement, to be borne one-half by the city, and one-half by the county and township, in equal portions.

The alteration or improvement shall be constructed, and subsequent repairs shall be made, under the supervision of the proper authorities of the city, in compliance with existing laws governing the construction of such alterations or improvements in said city, and in further compliance with plans and specifications to be agreed upon, in writing, between said city and the commissioners of the county and commissioners or road supervisors of the said township. The cost of repairs shall be borne one-half by the city, and one-half by the township, or by the county and township, in equal portions, or such other proportions as may be agreed upon by the county and township] **a city and another municipal corporation, the city may enter into a contract with the other municipal corporation to provide for the grading, curbing, draining, paving and macadamizing of the street. The alterations and improvements shall be made under the supervision of the city or other municipal corporation, or by contract let by the city or the other municipal corporation, as may be provided for in the contract between the city and the other municipal corporation.**

Section 274.  Section 2987 of the act is repealed:

[Section 2987.  Street, the Center Line of Which is the Boundary between Municipalities in Different Counties.--Whenever the center line of any street constitutes a dividing line between a city and a township located in an adjacent county, the city may enter into a contract with the commissioners of the county and the commissioners or township supervisors of such township, as the case may be, providing for the grading, curbing, macadamizing, or paving of the street, the cost thereof to be borne one-half by the city, and one-half by the township and the county in which such

township shall be situated, in equal portions.

Such alteration or improvement shall be constructed, and subsequent repairs shall be made, under the supervision of the proper authorities of the city, in compliance with the provisions of this act governing such construction or improvement by the city, and in further compliance with plans and specifications to be agreed upon in writing between such city and the commissioners of the county and the commissioners or township supervisors of the township. The cost of repairs shall be borne one-half by the city, and one-half by the township or by the county and township in equal portions or such other proportion as may be agreed upon by the county and township.

In all cases in which it shall be found impossible to enter into such contract or agreement, either the city or the county or township or any taxpayer thereof may present a petition to the court of common pleas of either county, setting forth the facts and circumstances, including the condition of the street from which the necessity or desirability for the grading, curbing, macadamizing, or paving appears, and the estimated cost thereof, and that the said city or county or the township have failed to agree upon terms of the said contract. Such court may, after hearing all the parties concerned, make its order or decree, defining the nature and character of the improvement reasonably necessary or desirable to be made to the street, and requiring the parties hereinabove specified to enter into a contract or contracts for the making and constructing of the same as herein provided for.

A copy of the said petition, duly certified, shall be served upon the city, the county and the township concerned, other than the petitioner, with notice of such day as may be fixed by the court for the hearing. Thereupon, any or all of the parties served with such notice shall be entitled, on or before such date, to file in the said court its answers to the said petition, setting forth its version of the facts or such other matters in relation thereto as may be deemed necessary or proper by it. The court, upon the date so fixed or at such other time as it may appoint, shall hear the evidence of the parties, or it may refer the matter to a master, who shall hear the testimony of the parties and report his findings, in the same manner and under the same procedure as provided by the rules in equity in similar cases.

The court may reject, confirm, or modify the report of the master and may make its decree or order directing the making of such alterations or improvements to the street as may be deemed reasonably necessary or desirable and providing for the sharing of the cost of such improvements, one-half by the city, and one-half by the county and township in equal portions. The said order or decree may further provide that the repairs to such alterations and improvements subsequently required shall be borne one-half by the city, and one-half by the county or township in equal portions, or such other proportions as between the county and the township as such court may find to be legal and proper. Thereupon the said grading, curbing, macadamizing, or paving of the street shall proceed in accordance with the decree or order of the said court in the same manner as if the contract or agreement provided for in this section had been entered into and duly executed.]

Section 275.  Sections 2988 and 2989 of the act are amended to read:

Section 2988.  Streets More Than Half of Whose Width is Within City.--**(a)**  Whenever any street, more than one-half the width of which is within the limits of any city shall divide the [said] city from any other [municipality or township located within the same county, such] **municipal corporation, the** street may be improved by the city in the same manner as if the [said] street were entirely located within the limits of [said] **the** city.

**(b)**  The property [abutting on the side of said street which is located outside the limits of the city making such], **within and without the city, that abuts the street and benefits from the** improvements [shall] **may**, for a depth of one hundred and fifty feet plus one-half the width of [said] **the** street, the total measured from its center line, be assessed for any and all municipal improvements to or on the [said] street in the same manner as [such] **the** property would be assessed under the provisions of this act if it were entirely located within the limits of [such] **the** city.

Section 2989.  Assessment **for Improvements** on Property Outside Limits Where Street Entirely Within City.--Whenever any street, entirely within the limits of any city, shall divide the [said] city from any other [municipality or township located in the same county] **municipal corporation**, the property on the side of [said] **the** street, [opposite the present line of said city, shall] **within and without the city, that abuts the street and benefits from the improvement may**, for a depth of one hundred and fifty feet from said line, be assessed for any and all municipal improvements to or on the streets on which the [said] property [shall abut] **abuts**, in the [manner provided by this act for such proceedings, as if the said property] **same manner as the property would be assessed under the provisions of this act if it** were entirely located within the limits of [said] **the** city.

Section 276.  Section 2990 of the act is repealed:

[Section 2990.  Street the Center Line of Which is the Dividing Line Between a City and Borough or Township of the First Class; Assessments.--Whenever the center line of any street constitutes the dividing line between a city and a borough, or a city and a township of the first class, located in the same county, the council of such city may, where such improvement is through built up property or properties duly plotted and laid out in lots for building purposes, and where two-thirds of the combined frontage of the two sides petition for the improvement, enter into a contract with the borough or township providing for the grading, curbing, draining, paving and macadamizing of such street. Such alterations and improvements shall be made under the supervision of the proper authorities of such city, borough, or township, or by contract let by such city, borough, or township, as may be provided for in the contract between the city and borough or township.

No ordinance or ordinances authorizing any such improvement, where the whole or any part of the cost of the improvement is to be assessed against abutting property, shall be finally adopted until the expiration of thirty days from the date of its introduction, and, in the meantime, copies thereof shall be published, once a week for two weeks, in one newspaper circulating in such city, borough, and township immediately following the introduction thereof, and at least five copies thereof shall be posted along the line of the proposed improvement.

The whole cost of such alterations and improvements, or any part thereof, as may be agreed upon in the contract between the city, borough, and township, may be collected from the owners of property within the city, borough, and within the township, abutting along the line of the improvement, by an equal assessment on the foot front. Any portion of such cost not assessed against abutting property shall be paid one-half by each of the municipal divisions joining in the improvement.

Thirty days' notice of assessments of the whole cost or part of the cost of any such improvement shall be given to each party assessed, either by service on the owner or his agent, or posted on the premises by the clerk or secretary of the city, borough, or township making the improvement. If any assessment made by the city shall remain unpaid at the expiration of the notice, it shall be the duty of the city solicitor to collect the same, with interest from the time of the completion of the improvement, by action of assumpsit, or by a lien to be filed and collected in the same manner as municipal claims. When an owner has two or more lots against which there is an assessment for the same improvement, all of such lots shall be embraced in one claim.]

Section 277. Article XXX heading of the act is reenacted to read:

ARTICLE XXX
SIDEWALKS

Section 278. Sections 3001 and 3002 of the act are amended to read:

Section 3001. Power to Lay Out and Grade Sidewalks; Compel Construction of Sidewalks.--Any city may lay out, ordain and establish sidewalks, curbs, gutters and drains along any street, and may, with or without petition, require owners of property abutting on any street to construct, pave, curb, repave and recurb the sidewalks, and keep the same in good repair along [such] **their** property, at such grades[,] and under such regulations and specifications as council may provide. **The written consent of the Department of Transportation shall first be obtained if the highway is a State highway.**

Section 3002. Construction by Cities Upon Failure of Owner So to Do; Collection of Cost.--**(a)** Upon failure of any owner **of property abutting on any street** to construct, pave, curb, repave, recurb or maintain any sidewalk [after notice so to do, the same may be done or caused to be done by the city, and the cost thereof], **in accordance with the notice required in subsection (d), the city, itself or by contract, may complete the construction, paving, curbing, repaving, recurbing or maintenance.**

**(b)** Costs incurred by the city pursuant to subsection (a) may be levied **against** and collected from [such] **the** owner **who failed to complete the construction, paving, curbing, repaving, recurbing or maintenance of the sidewalk pursuant to notice to do so,** together with a penalty of ten per centum of [such] **the** costs and all charges and expenses[, which amount].

**(c)** The costs, penalties, charges and expenses provided for in **subsection (b)** shall be a lien upon [such premises] **the property for which the notice to construct, pave, curb, repave, recurb or maintain the sidewalk was given. The lien shall exist** from the time of the completion of the work, which [date shall be fixed by certificate of the city engineer, filed with the clerk, and may be collected by action in assumpsit, or such] **shall be certified in**

accordance with section 1504. **The** lien may be filed and proceeded in as provided by law in the case of municipal liens[, or the] **or may be collected from the owner by action in assumpsit. Alternatively, the** cost may be borne by the city in whole or in part[;] **and,** if in part, the rest to be collected [from the owner] as provided [herein] **by this section.**

**(d)** The notice required [herein] **by this section** shall be served upon the owner **of property to construct, pave, curb, repave, recurb or maintain a sidewalk,** if that can be done within the county; [when it cannot be done so] **if this cannot be done,** then the notice may be served upon the owner's agent or the party in possession; and if this cannot be done, then the notice may be served by posting conspicuously upon the premises. Council may, by ordinance, [establish the period of such notice after service after which the owner shall be deemed to have failed to comply therewith. Such period shall not be less than ten days] **provide that, upon service or posting of notice in accordance with this section, an owner shall be deemed to have failed to comply if the work is not completed within a specified period, which may be more but shall not be less than forty-five days after the service or posting.**

Section 279. Section 3002.1 of the act, added August 11, 1967 (P.L.206, No.70), is amended to read:

Section 3002.1. Ordinances.--All reconstruction, repaving, and recurbing of sidewalks may be provided for in the ordinance providing for the original construction, paving and curbing of sidewalks without the necessity for adopting a new ordinance providing for [such] **the** reconstruction, repaving and recurbing.

Section 280. Section 3003 of the act is amended to read:

Section 3003. Emergency Repairs; Notice; **Cost.--(a)** Any city may make emergency repairs to sidewalks, within **its** corporate limits[, when, in the opinion of the officer or head of the department lawfully having charge of sidewalk repairs, a dangerous condition exists that can be repaired by an expenditure of not more than fifty dollars, upon failure of the owner of the property to make such repair within forty-eight hours after the service of notice upon such owner so to do. The notice shall be served as provided in this article for constructing and maintaining sidewalks and curbs. It shall expressly state that emergency repairs are required.] **if the officer or designated individual representing the department in charge of repairs to sidewalks, upon inspection, determines that a substantial and immediate danger exists to the public health, safety and welfare, in which case the officer or individual shall prepare a written report of those conditions which shall be conclusive evidence of the existence of the emergency justifying the repair.**

**(a.1)** This section is intended to provide an additional remedy for cities in connection with emergency repairs [where the actual cost of doing the work does not exceed fifty dollars. The certificate of the officer or head of the department in charge of repairs to sidewalks shall be conclusive evidence of the existence of the emergency justifying such repair] **of sidewalks.**

**(b) A copy of the written report shall be served upon the abutting property owner, along with a notice to make emergency repairs to the sidewalk within forty-eight hours of service of the notice and report. The notice and copy of the report shall be served as provided in this article for constructing and**

maintaining sidewalks and curbs. It shall expressly state that
emergency repairs are required. If the owner fails to make the
emergency repairs within the prescribed time, the city may make
the emergency repairs to the sidewalk.
   **(c)  Upon the completion of any emergency repairs, the cost
thereof shall be a charge against the owner of the abutting
property and shall be a lien, until paid, upon the abutting
property, provided a claim is filed therefor in accordance with
the law providing for the filing and collection of municipal
claims. The amount of the claim against the owner of the abutting
property may also be collected from the owner by an action in
assumpsit.**
   Section 281.  Section 3004 of the act is repealed:
   [Section 3004.  Cost of Emergency Repairs to be a Lien.--Upon
the completion of any emergency repairs, the cost thereof shall be
a charge against the owner of the property, and shall be a lien,
until paid, upon the abutting property, provided a claim is filed
therefor in accordance with the law providing for the filing and
collection of municipal claims. Any such charge may also be
collected from the owner by an action in assumpsit.]
   Section 282.  Article XXXI heading of the act is amended to
read:
                        ARTICLE XXXI
                     BRIDGES [AND VIADUCTS]
   Section 283.  Article XXXI subdivision (a) heading of the act
is repealed:
             [(a)  Construction and Maintenance]
   Section 284.  Sections 3101, 3102 and 3103 of the act are
amended to read:
   Section 3101.  Construction and Maintenance of Bridges [and
Viaducts].--**(a)**  Cities may locate, build and maintain bridges [or
viaducts and], **wholly or partially within the city limits, along
with** the piers, abutments and approaches [therefor] **appurtenant to
the bridges**, to be used as public streets[, over rivers, creeks,
streams, railroads and private property, or over and across any of
them, whether the said viaducts or bridges be wholly within, or
partly without and partly within, the city limits].
   **(b)  As used in this article, a bridge shall mean a structure
built to span and provide passage over a valley, road, railroad
track, private property, river, creek, stream or any other body of
water or physical obstacle and shall include viaducts constructed
from a series of spans or arches.**
   Section 3102.  Ordinance for Location of Bridges; Procedure.--
Cities may enact ordinances fixing the location and providing for
the laying-out and opening of the routes or locations for [said]
bridges [and viaducts], which shall be public streets; and the
proceedings for the laying-out and opening thereof[,] shall be the
same as is provided by this act for the laying-out and opening of
streets.
   Section 3103.  Right to Appropriate Property; Assessment of
Damages.--In case the city has not agreed with the owner or owners
for the damages done, or likely to be done, by the erection of
[said] **the** bridge [or viaduct], the city may take and appropriate
the lands and property necessary, over and across which to erect
[said] **the** bridge [or viaduct], and the **measure of** damages [and
benefits caused by such] **for the** taking and appropriation shall be
assessed in the same manner and with like proceedings as provided

[by this act for property taken, injured or destroyed] **for property taken, injured or destroyed under 26 Pa.C.S. (relating to eminent domain).**

Section 285. Article XXXI subdivision (b) heading of the act is repealed:

[(b) Joint Construction and Maintenance]

Section 286. Section 3110 of the act is amended to read:

Section 3110. [Contract] **Agreement** for Joint Construction and Maintenance.--**(a)** The city may [contract] **enter into an agreement** with any political subdivision or other public agency whatsoever or public utility or any other person interested and by law authorized thereto, or with any or all of them, for the laying out, construction, improvement and maintenance of any bridge [or viaduct], or for certain parts thereof, and for the payment of any damages caused thereby.

**(b) An agreement as authorized in subsection (a) shall provide for the respective duties, obligations and responsibilities of the parties thereto, including, but not limited to, construction and maintenance of the bridge, or for certain parts thereof, and for payments relating thereto and damages caused thereby.**

**(c) After an agreement, as authorized in subsection (a), has been entered into, the city, in conjunction with the other parties thereto, shall have the authority to have prepared plans or specifications of the entire work, and thereafter advertise for bids in the manner required by law, and award the contract to the lowest responsible bidder. The city shall be liable to the contractor for only such part of the contract price as it has agreed to pay by the agreement, as authorized in subsection (a), but it shall, in addition, be liable to the contractor for any moneys actually paid into the city treasury by the other parties pursuant to the terms of the agreement.**

Section 287. Sections 3111, 3112 and 3113 of the act are repealed:

[Section 3111. Stipulations of Joint Contract; Maintenance.--The contracts provided for in the preceding section may stipulate that the city shall pay a certain part of the whole contract price or cost of the work, including damages; or may stipulate that the city shall construct, or pay for the construction of, a certain part of the work, and may otherwise provide for the payment of the damages. When any railroad company, street railway, or other persons interested, agrees to pay a certain part of the cost of the entire work, it shall pay such part into the proper city treasury. Upon said payment, the city treasurer shall be liable therefor, and he shall pay the same over to the contractor, as may be provided in the contract. The said agreements may also provide for the maintenance of the said bridges and viaducts after their erection.

Section 3112. Plans; Bids; Awarding of Contract.--After any joint contract has been entered into, the city in conjunction with the other parties thereto may have prepared plans or specifications of the entire work, and thereafter advertise for bids, and award the contract to the lowest responsible bidder. The city shall be liable to the contractor for only such part of the contract price as it has agreed to pay by the joint contract, but it shall, in addition, be liable to the contractor for any moneys actually paid into the city treasury by the other parties to the joint agreement.

Section 3113.  Subsequent Contract With Railroad Which has not Contributed toward Cost.--No railroad, which has not contributed to the payment of the cost of construction of said viaduct or bridge, shall be permitted to run its line or lines of tracks under said bridge or viaduct, unless it shall enter into a contract with the city to thereafter pay a reasonable amount, part or portion toward the keeping-up and maintaining of the said structure, which amount shall be at the same rate, on the same basis, as is paid by the other railroad companies.]

Section 288.  Section 3114 of the act is reenacted to read:

Section 3114.  Recording of Contract.--Any of the contracts hereinabove provided for may be recorded in the office of the recorder of deeds in the proper county. Such record shall be notice to all persons who might be affected thereby.

Section 289.  Section 3115 of the act is amended to read:

Section 3115.  Power to Construct Boundary Bridges.--Whenever a creek, over which a bridge may be necessary, shall be on the division line of a city [and **another**] municipality [or township], the city [shall unite] **may enter into an intergovernmental agreement pursuant to 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation)** with [such] **the** municipality [or township in] **for** the construction and maintenance of a bridge[,] and [pay an equal share of the expenses incident thereto] **for apportionment of the costs.**

Section 290.  Article XXXI subdivision (c) heading, section 3120, subdivision (d) heading and sections 3130, 3133 and 3134 of the act are repealed:

[(c)  Acquisition of Existing Bridges

Section 3120.  Power to Acquire Existing Bridge.--Any city which is divided or separated in any of its territorial sections or parts by intervening rivers or streams of water may purchase, enter upon, take, use, hold and appropriate such bridge or bridges, together with the approaches and appurtenances thereto, lying within its corporate limits as shall have been erected and are now in use over such rivers or streams of water so dividing and separating the sections or parts aforesaid.

(d)  Acquisition of Toll-Bridges

Section 3130.  Power to Acquire Toll-Bridges.--Any city may purchase, condemn, maintain, and use any public toll-bridge crossing any river or stream within the limits of such municipality, together with the approaches and appurtenances thereto; and may enter into contracts, as hereinafter provided, with the county commissioners of the proper county, whereby said county shall pay a portion of the cost thereof.

Section 3133.  Contract with County for Purchase.--The city may enter into and unite in a contract with the county commissioners of the county in which said bridge is located upon such terms and conditions as may be agreed upon for the purchase, appropriation, or condemnation of said bridge. The contract may stipulate that the city and county shall pay a certain part or portion of the whole purchase price or damages allowed by condemnation proceedings. The amounts to be paid by the county shall be paid into the city treasury, and, upon said payment, the city treasurer shall be liable therefor, and it shall be held and applied solely for the said purpose or purposes. The said contracts may also provide for and include provisions for the maintenance, repair, and rebuilding of the said bridge, after its purchase or

condemnation by the said city.
    Section 3134.  To Become a Public Bridge; Rentals for Other
than Foot and Vehicle Travel.--Whenever any toll-bridge shall be
so purchased or condemned, the city shall control, maintain, and
use the said bridge as a public bridge, but may charge tolls or
rentals for the use thereof, from railway, telephone, and
telegraph companies, and other persons making a use thereof for
other than ordinary public foot and vehicle travel. Where
contracts existed between such companies and persons and the
owners of the bridge at the time of such purchase or condemnation,
such contracts shall be preserved for the benefit of the city and
shall be assigned thereto.]
    Section 291.  The act is amended by adding a section to read:
    **Section 3135.  Acquisition of Existing Bridges.--Any city may
purchase, condemn, maintain and use any public toll-bridge
crossing any river or stream within the limits of the
municipality, together with the approaches and appurtenances
thereto, and may enter into contracts with the county
commissioners or the legislative body in a county that has adopted
a home rule charter of the proper county whereby the county shall
pay a portion of the cost thereof.**
    Section 292.  Article XXXII heading of the act is amended to
read:
                          ARTICLE XXXII
                       **SANITARY** SEWERS
    Section 293.  Article XXXII subdivision (a) heading of the act
is repealed:
                      [(a)  Construction]
    Section 294.  Section 3201 of the act, amended August 6, 1963
(P.L.525, No.280), is amended to read:
    Section 3201.  Construction of **Sanitary** Sewers; Cost; **Eminent
Domain.--(a)**  Any city [may]  **shall have the power to** construct and
reconstruct, or cause to be constructed **or reconstructed, in its
streets, and over and across public and private lands or property,**
sanitary sewers of all kinds, **main or local, with extensions
thereof, and with lateral and branch sewers therefrom,** including
house connections to the curb[, in its streets, and over and
across public and private lands or property, and pay the].
    **(b)  The** cost and expense [thereof] **of construction and
reconstruction in accordance with subsection (a) may be paid** out
of the general revenues or special funds raised for said purpose,
or assess the same, in whole or in part, upon property benefited,
improved or accommodated, as [hereinafter] **provided for in Article
XLV-A.**
    [For such purposes, the] **(c)  The** city shall have the right of
eminent domain **to effectuate the purposes of this section.** The
damages for property taken, injured or destroyed shall be
ascertained and paid as provided in [this act for such
proceedings] **26 Pa.C.S. (relating to eminent domain).**
    Section 295.  The act is amended by adding a section to read:
    **Section 3201.1.  Required Connection; Fees.--In addition to
paying for the cost and expense of construction or reconstruction
in accordance with section 3201(b), a city may, by ordinance,
require connection to a sanitary sewer system provided by the city
or a municipal authority serving the city, and impose and charge
to property owners who desire to or are required to connect to the
sanitary sewer system a connection fee, a customer facilities fee,**

a tapping fee and other similar fees, as enumerated and defined by 53 Pa.C.S. § 5607(d)(24) (relating to purposes and powers) as a condition of connection to a city-owned sewer collection, treatment or disposal facility.

Section 296.  Section 3202 of the act is repealed:

[Section 3202.  Fee for Tapping Where Sewer is Paid For by City.--Where the cost of constructing any sewer is paid for wholly or partially from city funds, the city may charge a reasonable fee for tapping or connecting with said sewer.]

Section 297.  Section 3203 of the act, amended August 6, 1963 (P.L.525, No.280), is repealed:

[Section 3203.  Assessment of Cost of Local Part of Main Sewers.--In the case of the construction of main sanitary sewers, or of any sanitary sewer which can be used in part for main sanitary sewerage purposes, and in part as a local sanitary sewer, the city may provide for assessing the property benefited, improved or accommodated with the local sanitary sewerage part thereof, according to the foot-front, or the assessed valuation of the said property for city purposes, or according to benefits.]

Section 298.  Section 3204 of the act is repealed:

[Section 3204.  Costs of Main Sewers.--The cost of all main sewers, or of any sewers used in part for main sewerage purposes, over and above the amount thereof assessed for local sewerage, shall be paid for from the city funds.]

Section 299.  Section 3205 of the act, amended August 6, 1963 (P.L.525, No.280), is repealed:

[Section 3205.  Assessment of Cost of Local Sewers.--Council may also provide that the cost and expenses of local, lateral, branch, including house connections to the curbs, and other sanitary sewers may be assessed against the property benefited, improved or accommodated according to the foot-front, or according to the assessed valuation thereof for city purposes, or according to benefits.]

Section 300.  Section 3206 of the act is amended to read:

Section 3206.  Construction of [Sewerage System and] **Sanitary** Sewage Treatment Works; Assessment of Cost.--[Any city may construct, or cause to be constructed, a sewerage system of sewers in streets, with extensions thereof, and with lateral and branch sewers therefrom to and in other streets, and in public or private lands, at the same time as part of the same improvement and under the same contract, and the cost and expense thereof may be assessed as provided in this article.] **(a)**  Any city may construct or cause to be constructed **sanitary** sewage treatment works, and the same may likewise be a part of the same improvement and under the same contract **as sanitary sewers.**

**(b)**  Sewage treatment works may be erected within or without the limits of the city. The city shall have authority to acquire, by eminent domain or otherwise, property within or, **subject to the limitations in 26 Pa.C.S. § 206 (relating to extraterritorial takings)**, without the limits of the city deemed necessary for such treatment works and the sewers leading thereto.

Section 301.  Sections 3207 and 3208 of the act, amended August 6, 1963 (P.L.525, No.280), are repealed:

[Section 3207.  Reductions in Assessments for Corner or Irregular Shaped Lots.--Where council determines to construct local, lateral, and other sanitary sewers, and to assess the cost and expenses thereof according to the foot-front rule, they shall

provide for a reduction of an equitable part from the frontage of the longest side of all corner lots, and at other places, where, from the peculiar or pointed shape of the lots, an assessment for the full frontage would be inequitable. If the owner of the property benefited, improved or accommodated by the sanitary sewers is not satisfied with the allowance or reduction, or refuses to accept the same, he shall have the right to appeal to the court of common pleas; and the proceedings shall be as provided in this act for the assessment of damages and benefits by viewers or by such other lawful procedure as the court may determine.

Section 3208.  Assessment of Cost by Viewers Appointed by Council.--Where the council determines to construct main, local, lateral, or branch sanitary sewers, and to assess the cost and expense thereof according to benefits, in addition to the remedies which now or may hereafter exist for the assessment of the said cost and expense by viewers appointed by court, council may appoint three disinterested freeholders as viewers, who, or a majority of whom, shall assess the costs and expenses of said sanitary sewers upon the lands benefited, improved or accommodated thereby in proportion, as nearly as may be, to the benefits which may result to each lot or parcel of land. Said viewers, or a majority thereof, shall report their assessment to the council, in the manner hereinafter set forth, and council shall act thereon as hereinafter provided.]

Section 302.  Sections 3209, 3210, 3211 and 3212 of the act are repealed:

[Section 3209.  Report of Council's Viewers; Notice; Objections; Hearing.--Said viewers, or a majority of them, shall make report in writing, specifying the amount assessed by them upon each lot or parcel of land for main or local sewerage separately, and file the same with the city clerk within such time as the council shall direct. After the report is filed, council shall cause not less than ten days' public notice to be given, by publication once in two newspapers of the city, as required by section one hundred and nine of this act, of the object of such assessments, and that the same will come for confirmation at a time to be specified in said notice. Objections to the assessment shall be in writing and be filed with the city clerk, and may be heard before the city council at the time specified in the notice. Council may, after hearing objections, modify, set aside, or confirm said assessments. If council sets aside the first or any other assessment, they may appoint other viewers, of the same qualifications as hereinbefore provided, and cause new assessments to be made, and the proceedings shall be the same as provided for the first assessment.

Section 3210.  Certification of Assessments for Collection; Liens.--After making assessments for sewers, council may direct that they be certified to the city treasurer, or to such party as said assessments may be assigned to for collection. If such assessments are not paid within such time as council may by ordinance prescribe, it shall be lawful to file liens therefor in the prothonotary's office of the proper county, as provided by law. Said liens shall bear interest from the time the assessments were payable, at the rate of six per centum, per annum, until paid.

Section 3211.  Rental Charge for Use of Sewers.--Cities may

provide by ordinance for the imposition and the collection of an
annual rental, rate or charge for the use of sewers, sewer
systems, or sewage treatment works as authorized by law.
    Section 3212.  Limitation of Amount of Sewer Rental
Charge.--Such annual rental, rate or charge shall not exceed the
amount authorized by law.]
    Section 303.  Section 3213 of the act, amended December 18,
1992 (P.L.1424, No.175), is repealed:
    [Section 3213.  Collection of Sewer Rentals.--(a)  Council
shall provide for the collection of such annual rentals, rates or
charges.
    (b)  In the case of a city which has agreed to provide sewer
service to a residential dwelling unit in which the owner does not
reside, the city shall notify the owner and the tenant within
thirty days after the tenant's bill for that service first becomes
overdue. Such notification shall be provided by first class mail
to the address of the owner provided to the city by the owner and
to the billing address of the tenant, respectively. Nothing herein
shall be construed to relieve the owner of liability for such
service unless the city fails to provide the notice required
herein.]
    Section 304.  The act is amended by adding a section to read:
    **Section 3213.1.  Rental Fees or Charges.--(a)  All persons
whose property is connected to a sanitary sewer system shall pay
to the city, in addition to the cost of making the connection, a
monthly, quarterly, semiannual or annual charge. The charges shall
be imposed by the city in accordance with procedures approved by
council. Until paid, a charge shall constitute a lien against the
property connected to the sanitary sewer system, and the amount
thereof may be recovered by due process of law through an action
in assumpsit in the name of the city against the owner of the
property charged or by a lien filed in the nature of a municipal
lien. All water utilities supplying water to users within the
boundaries of any city shall at the request of the council furnish
to the city, at reasonable times agreed to by the city and water
utilities, a list of all water meter readings and flat-rate water
bills, and the basis for each flat-rate water charge, so that the
data may be used in calculating sewer rental fees. The city may
pay to the utilities clerical and other expenses incurred in the
preparation of the lists.
    (b)  Nothing in this section shall be construed to repeal or
modify any of the provisions of 66 Pa.C.S. (relating to public
utilities).
    (c)  Subject to subsection (d), all sanitary sewer rentals
received shall be deposited in a special fund to be used only for
the payment of the cost of administration, construction,
reconstruction, repair, operation and maintenance of the sanitary
sewer system.
    (d)  Notwithstanding the provisions of the act of July 18, 1935
(P.L.1286, No.402), entitled "An act empowering counties, cities,
boroughs, incorporated towns, and townships to charge and collect
from owners of and water users in property served thereby, annual
rentals, rates or charges for the use of certain sewers, sewerage
systems and sewage treatment works, including charges for
operation, inspection, maintenance, repair, depreciation, and the
amortization of indebtedness and interest thereon; empowering
counties, cities, boroughs, incorporated towns and townships to**

contract with authorities organized by cities of the second class,
by cities of the second class A, by counties or by cities of the
third class for sewer, sewerage and sewage treatment services; to
grant, convey, lease, transfer, encumber, mortgage and pledge to
such authorities, their sewers, sewerage systems and sewage
treatment works; to assign and pledge to such authorities rentals,
rates and charges charged and collected by them for the use
thereof, and to assign to such authorities their power to charge
and collect the same; and validating all such contracts, grants,
conveyances, leases, transfers, assignments, encumbrances,
mortgages and pledges heretofore made," or any other law, city
council may transfer part of the sanitary sewer rentals in the
special fund to the general fund to meet immediate general
financial obligations or to ensure adequate cash flow for city
operations, provided, however, that money transferred from the
special fund to the general fund shall be repaid to the special
fund prior to the end of the fiscal year or at a date specific as
council may determine.

(e)  In the case of a city which has agreed to provide sanitary
sewer service to a residential dwelling unit in which the owner
does not reside, the city shall notify the owner and the tenant
within thirty days after the tenant's bill for that service first
becomes overdue. The notification shall be provided by first class
mail to the address of the owner provided to the city by the owner
and to the billing address of the tenant, respectively. Nothing in
this subsection shall be construed to relieve the owner of
liability for such service unless the city fails to provide the
notice required herein.

Section 305.  Section 3214 of the act is repealed:
[Section 3214.  Collection of Sewer Rentals.--Such annual sewer
rentals or charges shall be a lien on the properties charged with
the payment thereof from the date set in the ordinance, and, if
not paid after thirty days' notice, may be collected by an action
in assumpsit in the name of the city against the owner of the
property charged or by distress of personal property on the
premises or by a lien filed in the nature of a municipal lien.]

Section 306.  Section 3215 of the act, added August 6, 1963
(P.L.525, No.280), is repealed:
[Section 3215.  Tapping Fees.--Each city may provide by
ordinance for charging a tapping fee whenever the owner of any
property connects such property with a sewer system constructed or
acquired by the city, which fee shall be in addition to any
charges assessed and collected against such property in the
construction or acquisition of such sanitary sewer by the city, or
any rental charges assessed by the city. In any case where the
property connected or to be connected with the sanitary sewer
system of the city is not equipped with a water meter, the city
may install such a meter at its own cost and expense. If the
property is supplied with water from the facilities of a public
water supply agency, the city shall not install such meter without
the consent and approval of the public water supply agency.]

Section 307.  Article XXXII subdivision (b) heading and
sections 3220, 3221 and 3222 of the act are repealed:
[(b)  Acquisition of Existing Sewers
Section 3220.  Purchase of Existing Sewers.--Any city, in which
any corporation created and existing under and by virtue of the
laws of this Commonwealth, or any person or persons or

unincorporated associations, have constructed and are maintaining or may hereafter construct and maintain sewers, culverts, conduits, and pipes, with the necessary inlets and appliances, for surface, under-surface and sewage drainage, may become the owner of such sewers, culverts, conduits, and pipes, with the necessary inlets and appliances, for surface, under-surface, and sewage drainage, and the property of such company, person or persons, or unincorporated associations, by paying therefor the actual value of the same at the time of taking by the city.

Section 3221.  Ascertainment of Price in Case of Disagreement.--In case of disagreement as to the amount to be paid, the same shall be ascertained in the manner provided by this act in case of property taken, injured or destroyed.

Section 3222.  Appointment of Viewers.--Whenever the amount to be paid by any city to any corporation, person or persons, or unincorporated association, for the acquisition of such sewers, culverts, conduits, and pipes, with the necessary inlets and appliances, shall have been ascertained in the manner provided in the preceding section, the court of common pleas of the proper county, or any law judge thereof in vacation, on application thereto by petition by said city or any person interested, shall appoint viewers who shall assess the costs and expenses of the sewers, culverts, conduits, and pipes, with the necessary inlets and appliances, acquired by said city, upon the property benefited according to benefits, if sufficient can be found, but if not, then the deficiency, when finally ascertained, shall be paid by the city; and the proceedings of said viewers, and the proceedings on their report, shall be as provided in this act for the assessment of damages and benefits.]

Section 308.  The act is amended by adding a section to read:

**Section 3222.1.  Acquisition of Existing Sanitary Sewer Systems.--(a)  A city may, by ordinance, acquire all or part of an existing sanitary sewer system or community subsurface sanitary sewage collection and treatment system.**

**(b)  Acquisition may be by any of the following means:**

**(1)  By purchase, when the city and the owner can agree on a price not exceeding the actual value of the sanitary sewer system or part thereof to be transferred.**

**(2)  By deed of dedication to the city by the owner of the sanitary sewer system or part thereof.**

**(3)  If the facilities are within the city, by the exercise of eminent domain.**

**(c)  If any sanitary sewer system or community subsurface sanitary disposal collection and treatment system is acquired by purchase or eminent domain under this section, the cost of acquisition may be distributed or assessed under this act as when a sanitary sewer system is constructed by the city.**

**(d)  The rights, powers and duties of the city with respect to acquired sanitary sewer systems are the same as exist with respect to sanitary sewer systems constructed by the city.**

Section 309.  Article XXXII subdivision (c) heading of the act is repealed:

[(c)  Construction of Sewers Outside Cartway and Curb Lines]

Section 310.  Section 3230 of the act, amended August 6, 1963 (P.L.525, No.280), is amended to read:

Section 3230.  [Power to Construct] **Sewers Outside Cartway and Curb Lines.--(a)**  Cities may require and permit sanitary sewers

and sewer pipes to be laid and constructed outside the cartway and
the curb lines thereof in any street or highway.
     The [said] sanitary sewers shall be for the service and use of
the property on the side of the street or highway in which they
are laid.
     **(b)  The costs and expenses of any sanitary sewer laid and
constructed in accordance with subsection (a) may be assessed
against the property benefited, improved and accommodated by the
sanitary sewer.**
     Section 311.  Section 3231 of the act, amended August 6, 1963
(P.L.525, No.280), is repealed:
     [Section 3231.  Collection of Costs and Expenses.--The costs
and expenses of any sanitary sewer laid and constructed as
aforesaid may be assessed against the property benefited, improved
and accommodated by the sanitary sewer and such costs and
expenses, when so assessed, shall be assessed and collected in the
same way and manner as the cost and expenses of other sanitary
sewers are assessed and collected in the respective city in which
the same are laid.]
     Section 312.  Article XXXII subdivision (d) heading of the act
is repealed:
                         [(d)  Joint Sewers]
     Section 313.  Section 3240 of the act, amended August 6, 1963
(P.L.525, No.280), is amended to read:
     Section 3240.  Building Joint Sewers.--(a)  Cities may jointly
with other municipalities or [townships or both] **municipal
authorities** build and construct sanitary sewers, including
trunk-line sewers or drains and sewage treatment works, and may
connect into such system existing sanitary sewers, and may assess
their respective portions of the cost thereof, or so much thereof
as may be legally assessable, upon property benefited, improved
and accommodated by the improvement [either by viewers as is
provided in the case of cities by sections three thousand two
hundred and eight, three thousand two hundred and nine, and three
thousand two hundred and ten of this act or by the foot-front rule
or assessed valuation, as provided in section three thousand two
hundred and three of this act] **pursuant to Article XLV-A.** Any
portion of the cost of [such] an improvement not assessed or not
assessable shall be paid [by the respective cities, boroughs, and
townships joining as may be agreed upon] **as agreed upon by the
respective cities and other municipalities or municipal
authorities.**
     (b)  The cities[, boroughs, and townships] **and other
municipalities or municipal authorities** joining or contemplating
joining in any such improvement, in order to facilitate the
securing of preliminary surveys and estimates and the building of
[such] **the** improvement, may, by ordinance or resolution, provide
for the appointment of a joint sewer board composed of one
representative from each of the cities[, boroughs, and townships]
**and other municipalities or municipal authorities** joining which
shall act generally as the advisory and administrative agency in
securing [such] surveys and estimates and in the construction of
[such] **the** improvement, and its subsequent operation and
maintenance. The members of [such] **the** board shall serve for terms
of six years each from the dates of their respective appointments,
and until their successors are appointed. The joint sewer board
shall organize by the election of [chairman, vice-chairman] **a**

**chair, vice-chair,** secretary, and treasurer. The several cities[, boroughs, and townships] **and other municipalities or municipal authorities** may, in the ordinances and resolutions creating the joint sewer board, authorize the board to appoint an engineer, a solicitor[,] and [such] other assistants as are deemed necessary; and agree to the share of the compensation of [such] **the** persons each city[, borough, and township] **and other municipalities or municipal authorities** is to pay. The members of the joint sewer board shall receive [such] compensation for attending meetings of the board, as shall be fixed in the budget prepared by the board for submission to and adoption by the several cities[, boroughs, and townships] **and other municipalities or municipal authorities** as hereinafter provided[, and the]. **The** budget item providing for the compensation to members for attending meetings shall not exceed a total of two hundred and fifty dollars per year, and no member shall be paid unless [he] **the member** actually attends, and the fee for each [such] attendance shall be stipulated, and the members, in addition thereto, shall be entitled to actual expenses to be paid by the respective cities[, boroughs, and townships] **and other municipalities or municipal authorities** which [such] **the** members represent.

   (c)  The joint sewer board shall have power to adopt rules and regulations to govern its proceedings, and shall prepare and suggest any practical measures and plans by means of which the joint improvement may be carried to successful completion[;], and the future development of the system, so as to conform to a general plan, assured and safeguarded. [It] **The joint sewer board** shall have power to prepare a joint agreement or agreements for submission to and adoption by the several cities[, boroughs, and townships] **and other municipalities or municipal authorities** defining the advisory and administrative powers of the board; setting forth the consents of the several cities[, boroughs, and townships] **and other municipalities or municipal authorities** to the proposed improvement; the manner in which preliminary and final plans, specifications[,] and estimates for the proposed improvement shall be prepared and adopted; how proposals for bids shall be advertised[,] and contracts let; the manner in which the costs of the improvement and other incidental and preliminary expenses in connection therewith, and the future cost of operation and maintenance shall be equitably shared, apportioned[,] and paid; and all such other matters including the preparation and submission of annual and other budgets as may be deemed necessary or required by law to carry the proposed improvement to completion and to assure future maintenance and operation thereof. [But nothing herein] **Nothing** contained **herein** shall authorize the board to make any improvement or expend any public moneys which has not first been authorized by all of the cities[, boroughs, and townships] **and other municipalities or municipal authorities** proceeding with the improvement.

   (d)  In any case where it shall be necessary to acquire, appropriate, injure[,] or destroy private property of any kind to build any [such] joint sewer improvement, and the same cannot be acquired by purchase or gift, the right of eminent domain shall vest in the city[, borough, or township] or **other municipalities or municipal authorities** where [such] **the** property is located. In any case where it shall be necessary to acquire, injure[,] or destroy property of any kind in any territory not within the

limits of any of the cities[, boroughs, or townships] **and other municipalities or municipal authorities** joining in the improvement[;] then, **subject to the limitations in 26 Pa.C.S. § 206 (relating to extraterritorial takings),** the right of eminent domain shall be vested in any city[, borough, or township adjacent to such territory where such property is located] **and other municipalities or municipal authorities joining in the sewer improvement.** Damages for any property taken, injured[,] or destroyed shall be assessed as provided by the general laws relating to the cities[, boroughs, and townships] **and other municipalities or municipal authorities** exercising the right of eminent domain[;] and, **pursuant to the procedures of 26 Pa.C.S. (relating to eminent domain) if applicable,** shall be paid by the several cities[, boroughs, and townships] **and other municipalities or municipal authorities** joining in the same proportion as other costs of the improvement.

(e)  Each of the cities joining in [any such improvement] **an improvement authorized by this section** shall have power to incur or increase its indebtedness[, not exceeding the constitutional limits, for the purpose of paying its share or portion of the costs of such improvement in the manner provided by law for the incurring of indebtedness] **in accordance with 53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and borrowing), for the purpose of paying its share or portion of the costs of the improvement.**

Section 314.  Section 3241 of the act is amended to read:

Section 3241.  Approval of [Sanitary Water Board] **Department of Environmental Protection.**--No [such] sewer or plant shall be constructed until plans and specifications have been submitted to the [Sanitary Water Board,] **Department of Environmental Protection** and approved in accordance with provisions of [the act of assembly providing for such approval] **applicable law.**

Section 315.  Sections 3242, 3243 and 3244 of the act are repealed:

[Section 3242.  Connections with Sewers of Adjacent Municipalities.--Any city may connect with an existing sewer, owned by any adjacent municipality, for sewage purposes, in the manner prescribed in the following sections of this subdivision of this article.

Section 3243.  Applications to Court.--Whenever any city desires to connect with the existing sewer of any adjacent municipality, and no agreement has been reached between such city and the adjacent municipality, an application shall be made by council to the court of quarter sessions of the county, setting forth that fact.

Section 3244.  Appointment of Viewers.--If the court shall be of the opinion that such connection can be made without impairing the usefulness of the existing sewer, it shall appoint three viewers, who shall view the premises and investigate the facts of the case, and shall assess the proportionate part of the expense of building the original sewer upon such city, and shall fix the proportion of the expense for repairs which each municipality shall thereafter bear, and determine all other questions liable to arise in connection therewith.]

Section 316.  Section 3245 of the act, repealed in part June 3, 1971 (P.L.118, No.6), is repealed:

[Section 3245.  Report of Viewers; Appeals to Court.--The viewers shall report to the court the result of their

investigation, which report shall be confirmed within thirty days, unless exceptions thereto be filed. After confirmation of such report, or the disposal of any exceptions, any party interested may appeal from the decision of the court of quarter sessions.]
    Section 317.  The act is amended by adding a section to read:
    **Section 3245.1.  Municipal Corporation; Municipal Authority; Agreements for Connections; Appointment of Viewers.--(a)  Any city may by agreement connect with an existing sanitary sewer owned by any municipal corporation or municipal authority for either sanitary sewage collection or treatment purposes.**
    **(b)  When any city desires to connect with the existing sewer of any municipal corporation or municipal authority and no agreement has been reached between the city and the municipal corporation or municipal authority, city council shall present a petition to the court of common pleas setting forth those facts. The court shall fix a day for a hearing and notify all interested parties thereof. If, after the hearing, the court determines that the connection can be made without impairing the usefulness of the existing sanitary sewer system, the court shall appoint three viewers to view the premises, investigate the facts of the case, assess the necessary costs and expenses of making the connection and assess the proportionate part of the expense of building the original sanitary sewer system upon the city. The court shall determine the proportion of the expense for repairs which each municipal corporation, municipal authority and the city shall bear and shall determine all other questions liable to arise in connection therewith.**
    **(c)  The viewers shall report to the court the result of their investigation, which report shall be confirmed within thirty days, unless exceptions thereto are filed. After confirmation of the report or the disposal of any exceptions, any party interested may appeal from the decision of the court of common pleas.**
    Section 318.  Article XXXII subdivision (e) heading of the act is repealed:
    [(e)  Power to Furnish Sewerage Facilities Outside of City]
    Section 319.  Section 3250 of the act is amended to read:
    Section 3250.  Sewers Extended Outside of City.--[All cities, wherein the title to the sewerage system therein located, is, or shall hereafter be in the name of the city,] **A city with a sanitary sewer system** may extend [such] **the** system and construct sewers beyond the [bounds of the cities wherein they are located into the county and municipalities of the county in the vicinity of such cities,] **city's boundaries into adjoining municipalities in the county where the city is located** and furnish sewer facilities to, and permit the tapping and the connection therewith by any and all corporations, institutions, persons and municipalities in the [counties in which said cities are] **county where the city is** located in accordance with law and the rules and regulations of the **Pennsylvania** Public Utility Commission. This section does not authorize a city to extend a sewerage system or construct sewers in territory outside the boundaries of such cities in which sewerage facilities are furnished by a private company or by a municipality authority.
    Section 320.  Article XXXIII and subdivision (a) headings, sections 3301 and 3302, subdivision (b) heading and sections 3310, 3311, 3312, 3313, 3314 and 3315 of the act are repealed:
                        [ARTICLE XXXIII

## COLLECTION BY INSTALMENT OF THE COST OF STREET
## AND SEWER IMPROVEMENTS
### (a)  Street and Sewer Improvements

Section 3301.  Payment of Assessments in Instalments.--Whenever any ordinance is passed providing for the grading, paving or other improvement of any street, or part thereof, or for the construction of any sewer, the expense whereof is to be defrayed by local assessments, it may be prescribed in such ordinance that the assessments may be paid in not more than ten equal instalments, payable at such times as may be fixed by ordinance, the last thereof not to be more than ten years after the completion of the work on the improvement for which it is assessed. The instalments shall bear interest at the rate of not more than six per centum per annum, commencing at such time as may be fixed by ordinance. If any of said instalments shall remain unpaid for two months after the same shall become due and payable, the whole of the assessment remaining unpaid shall be due and payable. Any person upon whom such assessment has been made may pay all or as many as he chooses of such instalments before the same are due.

Section 3302.  Collection of Assessments.--All assessments made in pursuance hereof shall be collected in the same manner and with the same penalties as provided by law for the collection of municipal claims.

### (b)  Street Improvements

Section 3310.  Issue of Bonds for Payment of Cost of Improvement.--In order to provide for the payment of the cost and expense of the permanent paving and improvement of any street, or part thereof, cities may in addition to other methods provided, from time to time, issue their bonds in such sums as may be required, in all to an amount not exceeding the cost and expense of such improvement and interest thereon.

Said bonds shall bear the name of the street to be improved. They shall bear interest at a rate not exceeding six per centum per annum, payable semi-annually, on the first day of July and January, and their maturity shall be fixed in accordance with the Municipal Borrowing Law.

Section 3311.  Disposition of Proceeds of Sale of Bonds; Assessment on Properties.--Said bonds shall be negotiated at not less than par as other bonds of said cities are negotiated, and the proceeds thereof applied solely to the payment of the cost of said improvement. The contract price of the same, and interest thereon to the first day, when interest thereon is payable, shall be taken as the cost of said improvement, to be assessed on the property benefited, according to the provisions of this act.

Section 3312.  Entering of Assessments as Liens.--Such assessments shall be entered in the proper municipal lien and judgment docket in the prothonotary's office, and shall, if filed within six months from the completion of the improvements, without the issuing of a scire facias to revive, remain a first lien upon the property assessed until fully paid, having precedence of all other liens, except taxes, and shall not be diverted by any judicial sale, unless the payment of the same is provided for from the proceeds of such sale.

The assessment shall state the name of the city claimant, the name of the owner or reputed owner, a reasonable description of the property, the amount claimed to be due, for what improvement

the claim is made, and the time when the assessment was finally confirmed or made.

Section 3313.  Instalment Payment of Assessments.--Such assessment shall be payable at the city treasurer's office in equal semi-annual instalments, with interest, at the rate provided in said bonds, from the date to which interest was computed on the amount of the assessments, or so much as remains unpaid from time to time, until all said assessments and interest are fully paid. The money so received by the city treasurer shall be applied to the sinking fund.

Section 3314.  Collection of Unpaid Instalments.--In case of default in the payment of any semi-annual instalment of said assessment and interest for a period of sixty days after the same shall become due and payable, the entire assessment and accrued interest shall become due and payable, and the city solicitor shall proceed to collect the same under the provisions of laws creating and regulating municipal liens and proceedings thereon.

Section 3315.  Payment in Advance; Discharge of Lien as Part of Property.--Any owner of property against whom an assessment shall have been made for such improvement shall have the right to pay the same, or any part remaining unpaid, in full with interest thereon to the next semiannual payment due on said assessment, and such payment shall discharge the lien. If any owner shall subdivide any property after such lien attaches, he, in like manner, may discharge the same upon any subdivided portion thereof by paying the amount for which said part would be liable.]

Section 321.  Article XXXIV heading of the act is amended to read:

ARTICLE XXXIV
[WATER-COURSES]
**WATERCOURSES, FLOOD PROTECTION PROJECTS
AND STORM WATER SYSTEMS**

Section 322.  Section 3401 of the act is amended to read:

Section 3401.  [Changing of Water-Courses] **Establishing and Changing Watercourses, Flood Protection Projects and Storm Water Systems;** Removing Obstructions [Therefrom.--Cities].**--(a)  Subject to obtaining, if required, the authorization of the Department of Environmental Protection and of the Federal Government, a city** may, by ordinance, [after the consent of the Water and Power Resources Board and of the Federal government, where required, has first been obtained, establish the lines, change and] **do any of the following:**

**(1)  Realign, change or** vacate the channels, beds[,] and mouths of [water-courses] **watercourses** through lands, marshes or waters in or adjacent to the city[; crib, wall, confine]**, subject to the limitations in the act of August 7, 1936 (1st Sp.Sess., P.L.106, No.46), referred to as the Flood Control Law, the act of June 22, 1937 (P.L.1987, No.394), known as "The Clean Streams Law," the act of November 26, 1978 (P.L.1375, No.325), known as the "Dam Safety and Encroachments Act," and 26 Pa.C.S. § 206 (relating to extraterritorial takings).**

**(2)  Confine,** pave or completely [inclose, and prevent] **enclose watercourses within the city.**

**(3)  Prevent** and remove obstructions [therefrom at the expense of those causing the same; and, for such purposes, may enter upon and condemn such property and materials as may be necessary. Cities may construct] **and encroachments from watercourses and the**

banks of streams that threaten or do injure the city or property
therein, at the expense of those that caused the obstruction or
encroachment through proceedings at law or equity.

(4)   **Construct** and maintain dams [as hereinafter provided.
Cities may also, by ordinance, establish the lines of banks of
streams of water which pass through or along the boundary of such
cities, and by proceedings at law or equity prevent and remove all
such encroachments on the banks of streams and water-courses as
threaten to or do injure the city or the property therein.] **in a
watercourse flowing through the city, or partly within and partly
outside its corporate limits, for the purpose of improving the
public health, safety and welfare in the city.**

(5)   **Plan and provide for projects, infrastructure and
improvements as a means of managing and controlling storm water,
which may include, but need not be limited to, the transport,
storage and the infiltration of storm water and other innovative
techniques identified in the county-prepared watershed plans
pursuant to the act of October 4, 1978 (P.L.864, No.167), known as
the "Storm Water Management Act."**

(6)   **Plan and provide for projects, infrastructure and
improvements as a means of providing flood protection pursuant to
the Flood Control Law.**

(b)   **A city may, for any of the purposes in this section,
purchase, acquire, enter upon, take, use and appropriate private
property and materials as necessary. Condemnation proceedings
shall be pursuant to the procedures in 26 Pa.C.S. (relating to
eminent domain), and any takings of property outside the limits of
the city shall be subject to the limitations in 26 Pa.C.S. § 206.**

Section 323.  Sections 3402, 3403, 3404, 3405 and 3406 of the
act are repealed:

[Section 3402.  Notice.--No ordinance for the establishment of
lines or the vacation or alteration of the course or channel of
any water-course shall be passed, until notice thereof has been
given, by publication of the proposed ordinance, at least once a
week for three consecutive weeks, in one newspaper in accordance
with the provisions of section one hundred nine of this act.

Section 3403.  Viewers to Assess Damages.--The city may, at any
time after the passage of the ordinance, present a petition to the
court of common pleas, setting forth the lines established and the
nature of the vacation or alteration proposed in the course or
channel of such water-course, together with a description of the
proposed improvements, and praying the court to appoint three
viewers to ascertain the damages, costs, and expenses resulting
therefrom, and to assess the damages, costs, and expenses, for so
much thereof as the viewers may deem reasonable, upon the property
benefited.

Section 3404.  Appointment of Viewers.--The court, or any law
judge thereof in vacation, shall appoint three viewers from the
county board of viewers, and appoint a time, not less than twenty
nor more than thirty days thereafter, when the viewers shall meet
upon the line of the improvement and view the same and the
premises affected.

Section 3405.  Proceedings to Assess Damages.--The proceedings
before such viewers for the allowances of damages for property
taken, injured or destroyed, and for the assessment of benefits
upon property benefited, shall be as provided in this act for the
assessment of damages and benefits in eminent domain proceedings.

Section 3406.  Discontinuance of Proceedings.--If any city shall repeal any ordinance passed, or discontinue any proceeding taken, providing for any such improvements, prior to the entry upon, appropriation, or injury to any property or materials, the city shall not be liable to pay any damages, but all costs upon any such proceeding, together with any actual damage or injury sustained by reason of such proceeding, shall be paid by the city.]

Section 324.  Sections 3407 and 3408 of the act are amended to read:

Section 3407.  [Liens.--When the court has entered its final decree confirming the report or fixing the assessments, the] **Assessment of Benefits; Liens.--With regard to improvements made pursuant to section 3401(a), a city may, if feasible, assess the benefits upon property benefited by the improvements pursuant to Article XLV-A. The** assessments of benefits shall become liens upon the property assessed. Claims therefor may be collected in the same manner as municipal claims are collected, or they may be collected by action of assumpsit, the lien of the judgment, however, to be limited to the property assessed.

Section 3408.  Waters Excepted.--Nothing contained in the preceding sections of this article shall apply to any [water-course] **watercourse** used by any municipality or water company as a source of supply, unless [such] **the** municipality or water company shall consent to [such] **the** vacation or alteration.

Section 325.  Section 3409 of the act is repealed:

[Section 3409.  Construction of Dams.--Whenever the consent of the Water and Power Resources Board and of the Federal government, whenever necessary, has been granted to any city to construct and maintain a dam, in a public navigable river or stream flowing through, or partly within and partly without its corporate limits, for the purpose of improving the sanitary conditions thereof, such city may purchase, acquire, enter upon, take, use and appropriate private property, either within or without its territorial limits, for that purpose. If the city cannot agree with the owner or lessee of such private property upon the compensation for the property appropriated or the damages done, or when, by reason of the absence or legal incapacity of any such owner or lessee, no such compensation can be agreed upon, the court of common pleas of the county in which such property may be situate, or any judge thereof in vacation, on application thereto by petition by said city or such owner, lessee, or any person affected, shall appoint viewers to view and ascertain the damages done by reason thereof, and the proceedings thereupon shall be as provided in this act in the case of property taken, injured or destroyed.]

Section 326.  Article XXXV heading of the act is amended to read:

ARTICLE XXXV
[PUBLIC] **UTILITY** SERVICE

Section 327.  Article XXXV subdivision (a) and subheading (1) headings and section 3501 of the act are repealed:

[(a)  Water Supply
(1)  General Provisions

Section 3501.  Exclusive Right to Furnish Water to City; Frontage Tax.--Each city shall have the exclusive right, at all times, to supply the city with water, and such persons, partnerships, and corporations therein as may desire the same, at

such prices, as may be agreed upon; and for that purpose to have, at all times, the unrestricted right, by ordinance, subject to the provisions of existing laws, to make, erect, and maintain all proper works, machinery, buildings, cisterns, reservoirs, pipes, conduits, for the raising, reception, conveyances, and distribution of water; or, in territory not supplied with water, to make contracts with and authorize any person, company, or association so to do and to give such person, company, or association the privilege of furnishing water, as aforesaid, for any length of time not exceeding ten years. Whenever an extension of a supply of water to portions of the city not previously supplied shall be made, it shall be lawful to charge all owners of houses, lots, and buildings on each side of the street a frontage tax for the local water supply part thereof according to the foot front or the assessed valuation of the property for city purposes or according to benefits. This tax shall be collected and recovered in the manner provided by law for the recovery of municipal claims. The legal title to all waterworks heretofore vested in any city by equitable title shall, after the effective date of this act, be vested in such city. Said waterworks shall be operated, maintained, and managed in the same manner and subject to the same provisions as any waterworks, owned or acquired by cities.]
    Section 328.  The act is amended by adding a section to read:
    **Section 3501.1.  Right to Furnish Water, Lighting, Electric, Gas or Other Similar Utility Service.--(a)  A city may supply water, lighting, electric, gas or other similar utility service for public and private uses within the city. For these purposes, a city shall have the power to install, maintain and operate all necessary facilities and to acquire property and make improvements as needed. In carrying out the authority granted by this section, a city may exercise all powers granted to it under this act or any other law deemed necessary to carry out the purposes of this section, including the power to acquire, by eminent domain or otherwise, and the power to temporarily use or lease property.**
    **(b)  A city supplying water, lighting, electric, gas or other similar utility service shall have the authority to fix the rates and charges applicable thereto in accordance with section 3587.**
    **(c)  For the purposes of this section, a city shall have the authority to incur debt in accordance with 53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and borrowing).**
    Section 329.  Article XXXV subheading (2) heading, sections 3505, 3506 and 3507, subheading (3) heading, sections 3515, 3516, 3517, 3518, 3519, 3520 and 3521, subheading (4) heading, sections 3530, 3531 and 3532, subheading (5) heading and section 3540 of the act are repealed:
                [(2)  Acquisition by Eminent Domain
    Section 3505.  Appropriation of Lands and Waters.--Any city desiring to erect water-works, or to improve its water supply, may appropriate springs, streams, rivers, or creeks, and lands, easements, and rights of way, within or without its limits; and, for the purpose of conducting water obtained outside the limits of the city, may lay pipes under and over any lands, rivers, streams, bridges, highways, and under railroads. No water appropriated under the provisions of this section shall be used in such manner as to deprive riparian owners thereon of the free use and enjoyment of the same for domestic or farm purposes.

Section 3506.  Agreements as to Damages; Bonds.--Prior to any such appropriation, the city shall attempt to agree with the owner as to the damage done, or likely to be done. If the parties cannot agree, or the owner cannot be found, or is under legal incapacity, the city shall petition the court of common pleas to fix the amount of its bond, with or without surety, as the court may direct, conditioned for the payment to the owner of the property of the damages for the taking thereof, when the same shall have been ascertained, and shall file said bond, as approved, in the said court.

Section 3507.  Appointment of Viewers; Proceedings.--Upon petition of either the property owner or city, the court shall appoint three viewers from the county board of viewers, who shall assess the damages for the property or rights appropriated, and shall fix a time for their meeting, of which notice shall be given to all parties interested by newspaper publication, at least once in at least one newspaper, ten days prior to such meeting, as required by section one hundred and nine of this act, and the posting of hand bills along the line of said improvement. The proceedings for the assessment of damages shall be as provided in this act in case of property taken, injured or destroyed.

(3)  Acquisition by Purchase after Appraisement

Section 3515.  Petition to Court Expressing Desire to Acquire Water-Works.--Whenever any person, firm, or corporation shall own any water-works or system which furnishes water within the city, such city may present its petition to the court of common pleas of the county, setting forth that the city is desirous of owning and operating such water-works or system, and that it will be necessary to issue bonds, to be secured by such water-works or system, and that a value should be placed upon such water-works or system, including all property, real and personal, used in connection therewith. A city may acquire, by agreement with the owner thereof, any water-works or system which furnishes water within the city, or a part thereof, and within nearby municipal subdivisions, or parts thereof.

Section 3516.  Appointment of Engineers as Appraisers to Make Valuation.--The court shall thereupon appoint three registered engineers, in civil engineering, as appraisers, to value and appraise such water-works or system, and the property used in connection therewith, and the contracts or agreements with municipalities or townships, who shall file their report in the court within three months after their appointment, unless such time be extended by the court.

Section 3517.  Powers of Appraisers.--The appraisers shall have access to the books and records of the person, firm, or corporation, owning such water-works or system, to inform themselves as to the income and value thereof. They shall have power to administer oaths and are authorized to take the testimony of witnesses. Their report shall be final if not appealed from.

Section 3518.  Appeal from Appraisement.--Within ten days after notice of the filing of any report, either party may appeal from such appraisement, alleging an undervaluation or overvaluation of the property, and praying for a hearing before the court. The court shall thereupon fix a time when such appeal may be heard, of which time at least ten days' notice shall be given to the parties, and, upon such hearing, the court shall have power to modify such report, and either party may appeal from the final

confirmation of such report to the Superior or Supreme Court.

Section 3519.  Effect of Failure of Owner of Works to Accept Price Fixed.--After the value is finally determined, the city may buy such water-works or system at the valuation so fixed; and the person, firm, or corporation owning the same shall, within ten days after notice, file in court its consent to sell and convey its water-works or system and property to the city at the valuation fixed. And, in default thereof, such person, firm, or corporation shall cease to have any exclusive privilege of supplying the city, or the citizens thereof, with water, and the city may install such water-works or system as may be necessary for the accommodation of the public.

Section 3520.  Issue of Bonds.--For the purpose of any purchase authorized by this article, the city may issue general obligation bonds or utility bonds or non-debt revenue bonds issued as provided by the Municipal Borrowing Law.

Section 3521.  Limit of Bond Issue.--Such bonds shall not exceed in amount the value fixed by the appraisers or the court. The proceeds of the sale of such bonds shall be used exclusively for the purpose of paying for the property acquired.

(4)  Acquisition of Competing Water Companies by Cities

Section 3530.  Power to Acquire Companies Operating in Same Territory.--Any city owning, operating, or controlling a system of water-works for the supplying of water to persons, partnerships, and corporations residing therein, and for municipal purposes, whether the title to the said water-works be in the name of commissioners of water-works or in the city itself or otherwise, may acquire all the water-works, including water pipes, mains, service attachments, fire hydrants, and improvements of any water corporation or private individual operating partly within and partly without the limits of the said city, both so much as is included within the limits of the said city, and so much as is without the limits of the said city, serving the territory adjacent thereto, and acquire and exercise all of the franchises and powers of said prior owner both within and without the city limits.

No such municipal acquisition shall be valid until, upon application filed by the city and formally joined in by the proposed vendor water company, the Public Utility Commission shall have found and determined, after public hearing, that the granting of such application and the service contemplated by the city is necessary or proper for the service, accommodation, and convenience of the public. In any such proceeding, the entire matter shall be before the commission, and no further specific approvals of the said commission, which might otherwise be required, shall be necessary.

Section 3531.  Service Outside Limits Subject to Control of Public Utility Commission.--The service of water by any such city in the territory outside of the limits of the city shall be subject to regulation and control by the Public Utility Commission as to character of service, extensions, and rates, with the same force and in like manner as though the city serving in such territory were in fact a water corporation and with respect to such territory outside of the limits of the city, and shall have all the powers and be subject to all the duties of a water corporation.

Section 3532.  Different Rates Within and Without City.--

Inasmuch as the city may be serving its inhabitants at less than the actual cost of service, including capital charges and depreciation, because the plant may have been or may be built and operated in part out of the funds raised by municipal taxation, no rate, classification, rule, regulation, or practice, put in operation by the city in the portion of its territory supplied, located beyond the city limits shall be considered as unjustly discriminatory solely by reason of the fact that a different rate, classification, rule, regulation, or practice is in operation within the boundaries of the municipalities with respect to a similar service rendered.

 (5) Power to Furnish Water to Consumers outside City
 Section 3540. All cities wherein the title to the water-works therein located is or shall hereafter be in the name of the city may extend the water-pipes and improvements of any such water-works, beyond the bounds of the cities wherein they are located, into the county and municipalities of the county in the vicinity of such cities; and furnish water to any and all corporations, institutions, persons, and municipal subdivisions in the counties in which said cities are located, in accordance with law and the rules and regulations of the Public Utility Commission. This section does not authorize a city to extend water-pipes or supply water in territory, outside the boundaries of such cities, which territory is being supplied with water by a private company.]
 Section 330. The act is amended by adding a section to read:
 **Section 3540.1. Power to Furnish Utilities to Consumers Outside City.--A city that provides utility service in accordance with section 3501.1 may provide utility service in surrounding municipalities, or portions thereof, which are not provided with such services by those surrounding municipalities, local or regional public authorities or private companies, subject to and in accordance with applicable law and the rules and regulations of the Pennsylvania Public Utility Commission with regard to the character of service, extensions and rates.**
 Section 331. Article XXXV subheading (6) heading, sections 3550, 3551, 3552 and 3553, subheading (7) heading, sections 3560, 3561, 3562, 3563 and 3564, subheading (8) heading and sections 3570 and 3571 of the act are repealed:
    [(6) Power to Lease Water-Works
 Section 3550. Lease of Water-Works.--The council of any city may, on behalf of such city, enter into a contract with any private individual, copartnership, association, or corporation, for the leasing of any water supply, works, systems, and property, or both, of such private individual, copartnership, association, or corporation.
 Section 3551. Terms of Lease; Rental.--The said leasing may be for such term of years and at such rental, as shall be agreed upon by the city and the private individual, copartnership, association, or corporation.
 Section 3552. Operation of Property.--The property, so acquired, shall be operated in the same manner as if the same had been acquired by such city by purchase or condemnation proceedings.
 Section 3553. Rates.--The council of the city, subject to the Public Utility Law, shall fix the rates to be charged for the water furnished without the limits of such city to individuals, copartnerships, associations, or corporations.

 

### (7)  Condemnation of Lands for Road Purposes and to Prevent Contamination

Section 3560.  Overflowing Roads; Acquisition of Lands to Reconstruct Roads.--Whenever any city, in supplying water to the public, shall find it necessary, in storing water, to occupy and overflow with water portions of any turnpike or public road, or whenever any public road leads into or crosses over any reservoir used for the storage of water, the city shall cause such turnpike or road to be reconstructed, at its own expense, on a favorable location and in as perfect manner as the original road, and, for such purposes, is authorized to condemn land whenever an agreement as to the price cannot be had with the owners.

Section 3561.  Filing Maps and Plans.--After such change is made, the city shall file in the court of quarter sessions of the county a map or plan showing such change of road, and shall furnish to the supervisors or other authorities of the township, or municipal corporation, a copy of such map.

Section 3562.  Condemnation of Lands to Prevent Contamination.--Cities may acquire, by purchase or condemnation, such lands along and contiguous to the streams of water or reservoirs from which water is taken for public use, as may be necessary to preserve the same from contamination.

Section 3563.  Security for Payment of Damages.--No land shall be taken, injured or destroyed for the uses mentioned in this subdivision of this article until compensation therefor shall have been paid, or secured, before such taking, injury or destruction.

Section 3564.  Condemnation Proceedings.--The damages incurred in changing the location of any such turnpike or public road, and in condemning land to preserve water from contamination, shall be ascertained in the manner provided in this act in case of property taken, injured or destroyed.

### (8)  Miscellaneous Provisions

Section 3570.  Power of City to Patrol Through Private Lands.--Any city owning and operating a water-works system is hereby authorized and empowered to enter, by any of its employes, upon private lands through which may pass any stream or streams of water supplying such city, for the purpose of patrolling the drainage area of such stream or streams, and making investigations or inquiries pertaining to the condition of the stream or streams, sanitary or otherwise. Any injury or damage done to the property, so entered upon, shall be paid by such city.

Section 3571.  Leasing of Part of Water-Works for Yacht Harbor.--The council, or the commission of water-works, or other body of any city having charge and control of the water-works property of any such city, may, subject to the approval of the State Department of Health, and subject to proper restrictions, lease, for a period of years, any portion of the real property, not exceeding three acres, and any water area, under its control, and not necessary or essential for the operation and maintenance of such water-works, for the purpose of establishing and maintaining a harbor for yachts and for the erection of proper and suitable buildings in connection therewith, whenever the occupation of the grounds and water areas so leased shall not interfere with the operation of such water-works or in any manner affect the sanitary conditions of any public water supply.

Any such lease, before the same is executed, shall be submitted to and be approved by the Department of Health.]

Section 332. Section 3572 of the act, added August 19, 1953 (P.L.1100, No.297), is repealed:

[Section 3572. Accumulation of Funds; Repair and Replacement of Water Supply Systems.--Any city, which now has or may hereafter acquire title to any water-works, shall create a special fund and accumulate therein money to be expended exclusively for the repairing and replacing of its water supply system. The city shall annually place into the fund the difference between ten (10) per cent of the net receipts collected by it incidental to the supplying of water and water service and the amount, if any, expended in repairing or replacing its water supply system. The total amount in the special fund shall not exceed in the aggregate ten (10) per cent of the net receipts for any three years.

The provisions of this section shall not be construed to limit the powers of the city to use receipts from water or water services for purposes of repairing or replacing its water supply system.]

Section 333. Article XXXV subdivision (b) heading, sections 3575 and 3576, subdivision (c) heading and sections 3580, 3581, 3582, 3583 and 3584 of the act are repealed:

[(b) Power and Light

Section 3575. Power to Furnish Light.--Cities shall have the exclusive right, at all times, to supply the city with electric, gas or other light, and such persons, partnerships, and corporations therein as may desire the same, at such prices as may be agreed upon; and shall have at all times, the unrestricted right to make, erect, and maintain the necessary buildings, machinery, and apparatus for manufacturing and distributing the same, or, in territory not supplied with light, to make contracts with and to authorize any person, company, or association so to do, and to give such person, company, or association the privilege of supplying gas or other light, as aforesaid, for any length of time not exceeding ten years.

Section 3576. Street Lighting; Ornamental Lighting Systems.--Cities may, by ordinance, provide for and regulate the lighting of streets with gas or electric light, or light by other means, and, upon petition of the majority of the property owners in number or interest abutting on any street or section thereof, may install ornamental lighting systems and assess the costs of installation, maintenance, or operation entirely upon the city, or entirely upon the abutting property owners, or partly upon the abutting property owners and partly on the city.

(c) Water and Lighting Commission

Section 3580. Creation of Water and Lighting Department.--Any city which now has or which may hereafter have the title to any water, gas, or electric light works, by conveyance to the same or by operation of law in its corporate name, or which may hereafter erect or purchase water, gas, or electric light works, under the provisions of this act, may create a department to be called the water and lighting department, and, for the organization and government of the same, the council may divide the city into three districts for the election of a board of commissioners, which districts shall be numbered one, two, and three; one commissioner to be chosen from each respective district, of which he shall be a resident at the time of his election, and no member of council or person holding any city office shall be eligible as a member of said board.

Section 3581.  Election of Members of Commission.--The council of such city creating such department, as aforesaid, may, on the second Monday of April, or within thirty days thereafter, elect one person from each of said districts as a member of the board of commissioners of the water and lighting department; and at the first election each member of council shall vote for but two commissioners, and the three persons, being one from each of said districts, having the highest number of votes shall be declared elected. The commissioners so elected shall serve for the term of one, two, and three years, respectively, to be computed from the date of election, and until their successors are duly elected and qualified. The term of each shall be determined by lot at the first meeting of the board, and thereafter on the second Monday of April of each year, or within thirty days thereafter, the council shall elect one commissioner to serve for the term of three years.

Section 3582.  Compensation of Commissioners; Oath; Removal; Filling of Vacancies.--The members of the board of commissioners, created as aforesaid, shall receive such compensation for their services as may be provided by ordinance. Before entering upon their respective duties, they shall take and subscribe the oath prescribed by this act for city officers, and they shall be removable by council for misdemeanor in office or neglect of duty. All vacancies occurring in the board shall be filled by council for the unexpired term.

Section 3583.  Duties of Board.--The board shall take charge of the water and lighting department so created, and shall employ and dismiss at pleasure a superintendent and a clerk, who shall be secretary of the board, whose compensation shall be fixed by council. The board shall employ such laborers, mechanics and workmen as they may deem necessary for the economical and efficient administration of said department. They shall purchase such materials and supplies as may be required for keeping the works in good repair, and have charge and control of all constructions, repairs, enlargements and extensions of the works, and shall conduct and manage the affairs and business of the department in accordance with law and the directions of council.

Section 3584.  Estimates of New Work to be Furnished Council.--The said board of commissioners shall, whenever called upon by council, make and submit to them full estimates of the cost, charges and expenses of any new work, enlargement, extension of water or lighting supply, or alteration which council may contemplate making relative to said works; and may, at any time, submit to council any suggestions and estimates they may see proper to make touching the improvement, extension, or enlargement of said works, but no new construction, reconstruction, extension, supply of water or light, or enlargement of said works shall be undertaken by said commissioner so created, or materials or supplies be purchased therefor, without the previous consent and direction of council.]

Section 334.  Section 3585 of the act is amended to read:

Section 3585.  Payment of Cost of [Extensions by Property Owners; Frontage Tax] **Extensions.**--Whenever an extension of [a supply of] **pipes, wires or conduits is made to permit a city to supply** water or light, **electric, gas or other similar utility service** to portions of the city not previously supplied [shall be made by the said commissioners, they shall make out a full statement of the number of feet of main pipes laid or extended

through any of the streets of the city in which main pipes were not laid before the said extension, and shall file the same in the department; and it shall be the duty of the clerk of said department, forthwith, on receipt of said statement to make out a list of all owners of houses, lots and buildings on each side of the street through which said pipes are extended, and to charge said owners, and each of them, for each and every house, lot or building so situated in said streets, at such rate per foot as council may by ordinance fix, for said mains extending along the front of their respective houses, lots and buildings. Nothing herein contained shall be construed to prevent council from providing for the payment of water and gas pipes by the city] **with such service, an assessment of the costs thereof may be made in accordance with Article XLV-A.**

Section 335.  Section 3586 of the act is repealed:

[Section 3586.  Collection of Frontage Tax; Assessment of Cost.--Said charge shall be called the frontage water tax, or lighting tax, as the case may be, and shall be collected and recovered in the manner provided by law for the recovery of municipal claims. Whenever any pipes for the conveyance of water or light shall be laid in any of the streets or highways within such city, the owners of the ground in front of which the same shall be laid shall pay for the expense thereof such sum for each foot of the front of their ground upon such street as council may, by ordinance, direct: Provided, That in all corner lots an allowance shall be made of one-third the length of their front, but such allowance shall be always and only on the street having the longest front and in case both fronts are of equal dimensions, the allowance shall be made in the street in which the pipes shall be last laid, but in no case shall the allowance exceed sixty feet on any corner lot: And provided further, That when a corner lot shall have erected upon it two or more separate tenements, there shall only be an allowance made equal to one-third of the depth of the corner tenement and the yard adjoining. The provisions of this and the foregoing section shall not apply to any lot or piece of ground in such city upon which there may be a supply of water or gas obtained from any other source whatever, but if at any time the owner of such lot or piece of ground shall desire to obtain a supply of water or gas from the works of such city, then and in that case the provisions of this section shall first be complied with.]

Section 336.  Section 3587 of the act is amended to read:

Section 3587.  Fixing Rates.--[The board of commissioners may] **Council shall fix, or may delegate to a city department the power to fix**, with the approval of council, [fix the water and lighting rates, and the quantity to be used, and for that purpose they shall, on the first Monday of March in each year, establish the rates for the succeeding year, which rates shall be submitted by them to council for its approval, and, when approved, such rates shall not be changed for and during the year, but if not approved, the existing rates shall continue until modified by the commissioners, with the approval of council] **rates for the use of water or light, electric, gas or other similar utility service, and, in the case of consumers outside the city, the fixing of rates shall be subject to and in accordance with applicable law and the rules and regulations of the Pennsylvania Public Utility Commission.**

Section 337.  Section 3588 of the act, amended December 18, 1992 (P.L.1424, No.175), is amended to read:

Section 3588.  Collection of [Lighting and Water] **Utility** Charges.--(a)  Council shall provide, for the collection of [all the lighting and water] charges **for the use of water or light, electric, gas or other similar utility service** that may accrue, from time to time, to the city [for use of the water or light], fixing the time when [such] **the** charges shall be payable, and the penalties for nonpayment thereof[; and such]. **The** charges shall be assessed to the respective owners of the real estate on which [such water or light] **the utility service** is used, and, if the same shall not be paid in accordance with the provisions of [such] **the** ordinance, claims for the amounts due [shall be registered in the city lien docket in the same manner as provided by law in the case of unpaid city taxes on real estate, with the like force and effect as to the lien thereof.] **may be filed as a lien and collected in accordance with the Municipal Claim and Tax Lien Law.**

(b)  In the case of a city which has agreed to provide water service through a separate meter and separate service line to a residential dwelling unit in which the owner does not reside, the owner shall be liable to pay the tenant's bill for service rendered to the tenant by the city only if the city notifies the owner and the tenant within thirty days after the bill first becomes overdue. Such notification shall be provided by first class mail to the address of the owner provided to the city by the owner and to the billing address of the tenant, respectively. Nothing herein shall be construed to require a city to terminate service to a tenant, provided that the owner shall not be liable for any service which the city provides to the tenant ninety or more days after the tenant's bill first becomes due unless the city has been prevented by court order from terminating service to that tenant.

Section 338.  Section 3589 of the act is repealed:

[Section 3589.  Report to Council; Accounts of City Treasurer; Disposition of Surplus.--The board of commissioners shall, annually at a stated meeting of council in the month of January, report to said council a full statement of all the repairs, alterations, reconstructions, new constructions, expenditures, and everything relating to the management and cost to the city of maintaining each of the said works. The city treasurer shall keep his accounts in such manner as to show in his monthly report, distinctly and separately, the entire amount of revenue realized during each month from the water and lighting departments of said city, respectively; and the revenues derived from the said water and lighting departments shall be applied exclusively to the purposes of said departments, respectively; and the surplus, if any, to the reduction of the debt thereof. Any surplus revenues from said water and lighting departments, after the payment of all the debts of said respective departments, shall be applied as follows: The surplus from the water revenues, to the reduction of the bonded indebtedness which has been created by the city for the erection and construction of its water-works; and the surplus from the lighting revenues, to the reduction of any bonded indebtedness which has been created by the city for the erection and construction of its lighting plant.]

Section 339.  The act is amended by adding a section to read:

Section 3590.  Disposition of Revenues.--The revenues derived from the city's furnishing of water, light, electric, gas or other similar utility service shall be applied as follows:

(1)  to the purposes of the respective departments under the direction of which the utility service is provided;

(2)  for the reduction of debt related to the provision of that service; and

(3)  to any other city department that provides labor or materials for the maintenance and repair of property or facilities relating to the city's provision of a utility service.

Section 340.  Article XXXVI heading is reenacted to read:

ARTICLE XXXVI

PUBLIC BUILDINGS AND WORKS

Section 341.  Section 3601 of the act is amended to read:

Section 3601.  [Hospitals, Jails, Poor Farms, Et Cetera.--Each city may, by ordinance, erect] **Public Buildings Generally.--(a) With regard to public buildings, each city may, by ordinance, do any of the following:**

**(1)  Erect,** purchase, establish or maintain [hospitals, jails, workhouses, or houses of correction for juvenile or other offenders and prescribe regulations for the government thereof; and erect] all public buildings. [necessary for the use of the city, or of any department thereof; purchase, take, use, or occupy, private lands upon which to erect any of the said buildings; purchase, take, use, or occupy, within or without the limits of the respective city, whether within the county wherein is located the city, or within a county adjacent thereto, or within both, private lands and buildings; establish and maintain a general hospital, or hospitals, for the cure and treatment of the sick and injured, or a hospital or hospitals for the treatment and separation of persons suffering with contagious or infectious diseases, and prescribe rules and regulations for the government, management, and maintenance thereof; purchase, take, use, or occupy, within the limits of the county of such city or within a county adjacent thereto, or within both, private lands upon which to establish and maintain a poor farm, with all necessary and convenient buildings and appliances, where the city may support and maintain such poor persons as such city is by law required to support and maintain; acquire, by purchase, or in other lawful manners, within or without the city, but within the county or counties in which the city is located, sufficient real estate for present and future use upon which to erect workhouses or houses of detention, poor houses, garbage and incinerating furnaces. The proceedings for the assessment of damages for any property taken, occupied or used for any such purpose shall be the same as provided in this act for property taken, injured or destroyed.]

**(2)  Purchase, take, use, occupy or acquire, by any lawful means, including eminent domain, private lands, buildings and property in order to erect, establish or maintain public buildings.**

**(b)  For purposes of this article, public buildings shall include not only those buildings or structures which council deems necessary for the use of the city, but also other buildings and structures which are to be used for a public purpose, including public auditoriums, public libraries, public memorial buildings and monuments.**

Section 342.  Section 3602 of the act is repealed:

[Section 3602.  Public Auditoriums, Libraries, Memorials and Monuments.--Cities may take, purchase, or acquire, by any lawful means, or through condemnation proceedings, property for the purpose of erecting thereon public auditoriums, public libraries, public memorial buildings, and monuments.]

Section 343.  Section 3603 of the act is amended to read:

Section 3603.  Payment of Cost of Erection and Maintenance.--Cities may appropriate money [or issue bonds for the erection, on said property purchased or acquired through condemnation proceedings, public auditoriums, public libraries, public memorial buildings, and monuments] **and incur debt in accordance with 53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and borrowing) for the purchase or acquisition through eminent domain of private lands, buildings and property in order to erect or establish public buildings.** Cities may also appropriate moneys for the operation and maintenance of [such public auditoriums, public libraries, memorial buildings, and monuments] **public buildings.**

Section 344.  Section 3604 of the act is repealed:

[Section 3604.  Proceedings for Assessment of Damages.--All proceedings for the assessment of damages for property taken for auditoriums, libraries, memorials and monuments shall be had in the manner provided by this act for property taken, injured or destroyed.]

Section 345.  Sections 3605, 3606 and 3607 of the act are amended to read:

Section 3605.  Donation of Land by City for Library Purposes; Contributions [toward Maintenance.--Cities may donate ground thus acquired for a public library to any library association provided said association will furnish the funds for the erection of the library building, the plans of which are approved by the city, but only in such cases where the said library association is by its by-laws and charter compelled to put back into the property and surplus earnings from the operation of said library. Cities may make appropriations towards the operating expense of such library.] **toward Maintenance.--In addition to the power to make appropriations, donations and gifts for library purposes in accordance with 24 Pa.C.S. Ch. 93 (relating to public library code), a city may acquire and donate land for library purposes to a local library as defined in 23 Pa.C.S. § 9302 (relating to definitions).**

Section 3606.  Rental of Public Auditoriums; Disposition of Proceeds.--Cities, in the case of public auditoriums, may, by order of council, charge a rental for the use of [said] **the public** auditorium. All moneys derived from rental of [said] **the public** auditoriums shall be paid into the general fund of the city.

Section 3607.  [Leasing of City Property as Memorials.--Each city may lease real estate, the property of said city,] **Long-Term Improvement Leases.--(a)  A city may lease city real estate** on [long term] **long-term** improvement leases, at a nominal rental or otherwise, to a [corporation of the first class] **nonprofit corporation,** for the purpose of providing an auditorium for dramatic, musical, artistic, literary, scientific or patriotic societies or events, or for such other purposes as may be approved, from time to time, by council.

**(b)  A long-term improvement lease shall be for a term of not more than ninety-nine years, and may provide for a right of renewal for a like term, and shall contain provision for the**

improvement of the real estate by the lessee by the erection of a
suitable building or buildings of dignified and appropriate
architecture, absolute ownership of which building or buildings
shall revert to the city, free of any claim or charge, at the end
of the term of the lease or any renewal thereof.

(c)  The building or buildings erected pursuant to a long-term
improvement lease may be used for any one or more of the following
purposes, which are hereby declared, in respect of this subject
matter, to be used for public purposes: As an auditorium for
dramatic, musical, artistic, literary or scientific events,
including provision for the accommodation of patriotic societies
or groups, or such other accommodations and features as may be
approved, from time to time, by the city.

(d)  The title to property subject to a long-term improvement
lease shall remain in the city, and, for purposes of local
taxation, the property which is subject to a long-term improvement
lease and the leasehold estate created thereby shall be deemed to
be devoted to a public purpose and public use.

(e)  The lessees under a long-term improvement lease shall be
exclusively liable for the maintenance and upkeep of the demised
premises and shall be solely responsible for the maintenance and
operation thereof.

(f)  Any long-term improvement lease may provide that the
lessor shall be entitled to receive a sum equal to the net income
of the demised premises after reasonable reserves and proper
amortization charges.

Section 346.  Sections 3608, 3609, 3610, 3611 and 3612 of the
act are repealed:

[Section 3608.  Term of Lease; Renewals; Improvements to be
Erected.--Every such lease shall be for a term of not more than
ninety-nine years, and may provide for a right of renewal for a
like term, and shall contain provision for the improvement of the
real estate by the erection of a suitable building or buildings of
dignified and appropriate architecture, absolute ownership of
which building or buildings shall revert to the city, free of any
claim or charge, at the end of the term of the said lease or any
renewal thereof.

Section 3609.  Use of Buildings.--The building or buildings, so
erected, may be used for any one or more of the following
purposes, which are hereby declared, in respect of this subject
matter, to be used for public purposes: As an auditorium for
dramatic, musical, artistic, literary, or scientific events,
including provision for the accommodation of patriotic societies
or groups, or such other accommodations and features as may be
approved, from time to time, by the city.

Section 3610.  Title in City; Exemption from Taxation;
Maintenance.--The title to the said property, as so improved,
shall remain in the city, and neither the said real estate, nor
the leasehold estate created by such lease, shall be subject to
local or other taxation.

The lessees shall be exclusively liable for the maintenance and
upkeep of the demised premises, and shall be solely responsible
for the maintenance and operation thereof.

Section 3611.  Rental.--Any such lease may provide that the
lessor shall be entitled to receive a sum equal to the net income
of said demised premises after reasonable reserves and proper
amortization charges.

Section 3612.  Location of City Jails Restricted.--No city shall erect or construct a city jail or lock-up, or use any existing building or lock-up for the first time, which will be or is located within five hundred feet of any public school building.]

Section 347.  Article XXXVII heading of the act is reenacted to read:

ARTICLE XXXVII
PARKS, PLAYGROUNDS, AND RECREATION CENTERS

Section 348.  Section 3703 of the act, amended September 26, 1951 (P.L.1515, No.379), is amended to read:

Section 3703.  Acquisition of Lands and Buildings.--Cities may enter upon, take, use, purchase and acquire, by gift or by the right of eminent domain, lands, property and buildings[,] for the purpose of making, extending, enlarging[,] and maintaining recreation places which shall consist of public parks, parkways, playgrounds, playfields, gymnasiums, public baths, swimming pools[,] or indoor recreation centers, [may] levy and collect such special taxes as may be necessary to pay for the same, and make appropriations for the improvement, maintenance, care, regulation[,] and government of the same. Cities may designate and set apart for use for any of the purposes specified in this section lands and buildings owned by such cities and not dedicated or devoted to other public use. Cities may also lease lands and buildings in such cities for temporary use for [such] **these** purposes. Lands, property and buildings outside the limits of the city may be [acquired in like manner] **purchased or acquired** for the recreation places[, and such lands may be annexed to the city, in the manner provided by this act for the annexation of territory to a city.] **with the consent of the governing body of the municipal corporation in which the lands, property or buildings are situated.**

Section 349.  The act is amended by adding a section to read:

**Section 3703.1.  Powers of Council; Delegation.--(a)  Council shall have the power to equip, operate, supervise and maintain recreation places and to employ recreation directors or any other officers or employes deemed necessary in order to carry out the provisions of this article.**

**(b)  In any case in which more than one-half the full costs of the supervision and maintenance of the recreation places, including the compensation of all the officers and employes hired to carryout the provisions of this article, are borne by the city, council shall have the authority to fix the compensation of these officers and employes.**

**(c)  Council may delegate all or part of its power under subsection (a) to an existing body or board or to a recreation board, as council shall determine.**

Section 350.  Section 3704 of the act, amended January 14, 1952 (1951 P.L.2032, No.570), is repealed:

[Section 3704.  Creation of Recreation Board.--The authority to supervise and maintain recreation places may be vested in any existing body or board, or in a recreation board, as council shall determine. Council may equip, operate, and maintain the recreation places, as authorized by this act. Such authorities may, for the purpose of carrying out the provisions of this article, employ play leaders, recreation directors, supervisors, superintendents, or any other officers or employes, as they deem proper. Where more

than one-half the full costs of the supervision and maintenance of the recreation places, including the compensation of all the officers and employes, are borne by the city, the compensation of such officers and employes shall be fixed by council: Provided, however, That in such cases, council may delegate this power to the recreation commission.]

Section 351.  Section 3705 of the act, amended October 4, 1978 (P.L.950, No.188), is amended to read:

Section 3705.  [Composition of Board.--(a)  If council shall determine that the power to equip, operate, and maintain recreation places, shall be exercised by a recreation board, they may establish in said city such recreation board, which shall possess all the powers, and be subject to all the responsibilities of council under this article. Such] **Creation and Composition of Recreation Board.--Council may establish in the city a recreation board, which shall possess the powers and the responsibilities delegated to it by council in accordance with section 3703.1(c). The recreation** board, when established, shall consist of [a minimum of five and a maximum of nine persons, two of whom shall be members of and appointed by the school board.] **five or seven persons.** The city members of the board shall be appointed by the mayor with the approval of council and shall serve for terms no longer than five years, and the terms of the members shall be staggered in such a manner that at least one expires annually. Members of [such] **the recreation** board shall serve without pay. Vacancies in [such] **the** board, occurring otherwise than by expiration of term, shall be for the unexpired term and shall be filled in the same manner as original appointments.

[(b)  In addition to the establishment of a city recreation board, the council may appoint persons to serve as members of a school district recreation board established by the school district wherein the city is located.]

Section 352.  Sections 3706, 3707 and 3708 of the act are amended to read:

Section 3706.  [Organization of Board; Employes] **Organization of Board.**--The members of a recreation board, established pursuant to this article, shall elect their own [chairman] **chair** and secretary and select all other necessary officers, to serve for a period of one year[, and may employ such persons as may be needed, as authorized by this article. Such]. **The** board shall have power to adopt rules and regulations for the conduct of all business within its jurisdiction. **Meetings of the board shall be subject to the provisions of 65 Pa.C.S. Ch. 7 (relating to open meetings).**

Section 3707.  Joint Ownership and Maintenance.--[Any] **A** city may, jointly with any [other cities, boroughs, or townships, or any of them] **one or more other municipalities,** acquire property for, and operate and maintain, any recreation [places] **place.** Any city may join with any school district[,] in equipping, operating[,] and maintaining recreation places[,] and may appropriate money therefor.

Section 3708.  [Issue of Bonds.--The city council may issue general obligation bonds] **Borrowing.--The city council may borrow money and incur debt in accordance with 53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and borrowing)** for the purpose of acquiring lands or buildings for recreation places[,] and for the equipment therefor.

Section 353.  Section 3709 of the act, amended August 10, 1965

(P.L.318, No.168), is amended to read:

Section 3709. Maintenance and Tax Levy.--[All expenses incurred in the operation of such] **Expenses incurred in the maintenance and operation of** recreation places, established as herein provided, [shall be payable] **including the operation of recreation programs therein, may be paid** from the treasury of the city. Council may annually appropriate, and cause to be raised by taxation[, such tax for the purpose of maintaining and operating recreation places. In lieu thereof, council may annually appropriate moneys to any existing body or board, or to a recreation board or commission, for the maintenance and operation of recreation places.] **in accordance with section 2531(a)(4), a tax for this purpose. The funds may be appropriated, for the purposes of this section, to any existing body or board, or to a recreation board or commission.**

Section 354. The act is amended by adding a section to read:

**Section 3709.1. City Trusts.--(a) In addition to all other powers conferred by law, a city may receive in trust, and city council may control for the purposes of the trust, all estate, moneys, assets and property, real and personal, which may have been or shall be bestowed upon it by donation, gift, legacy, endowment, bequest, devise, conveyance or other means, for the purpose of establishing or maintaining a public park or other public purpose for the use and benefit of the citizens of the city.**

**(b) In the event that a city trust has been or is created as a result of any property or estate, whatsoever, having been conveyed, bequeathed or devised or otherwise given or donated to any city, in trust, for the purpose of establishing or maintaining a public park or other public purpose for the use and benefit of citizens of the city, control of the trust shall be transferred to city council, and, if necessary to carry out the intention of this section, the court of common pleas in the county in which a city is located may, upon petition of council, transfer control of the trust to city council. City council may delegate the supervision and operation of recreation places subject to the trust to a recreation board in accordance with section 3703.1. Nothing in this section shall limit any power of the court to terminate or reform a trust under existing law.**

Section 355. Sections 3710, 3711, 3712, 3713, 3714, 3715, 3716 and 3717 of the act are repealed:

[Section 3710. Leasing by City of its Parks or Playgrounds.--Cities may enter into contracts and agreements with any incorporated association, acting within its corporate powers, for the use by the latter of any park or playground, owned, leased, or occupied by said cities, for such period and upon such terms as to maintenance, upkeep and improvement of such ground as may be mutually agreed upon. No such contract or agreement, however, shall permanently exclude the public of said cities from the use and enjoyment of said parks and playgrounds. The said cities shall at all times be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of said parks and playgrounds by the public generally, and by such incorporated associations specially.

Section 3711. Sale of Coal Under Parks or Commons.--Council may sell and lease, at the best price obtainable, and subject to such conditions as it may deem necessary to impose for the

protection of the surface, the coal under any park or common owned by and situate within the corporate limits of the city. When any park, or common shall front on a river or other public stream, such portion of the amount realized from the sale or lease of such coal may be used for the erection of retaining walls, as council shall deem necessary for the purpose. Before any such coal shall be sold or leased, the proposed sale shall be advertised, in accord with the provisions of section one hundred and nine of this act, at least once a week in three daily papers published in the city in which said coal is situate, if there be so many, and in any other publication, as council may determine; and sealed bids shall be received, and the person, copartnership, association or corporation offering the highest and best price shall be the purchaser, but council shall have the right to reject all bids.

Section 3712.  Use of Proceeds of Sale or Lease of Coal Under Parks.--Whenever any city shall have sold or leased the coal underlying any public park or common within the limits of said city, the proceeds of said sale or lease, except as hereinbefore otherwise provided, shall be applied only as follows: First. To the improvement, policing, and lighting of the said park or common, or the redemption of bonds issued for the improvement of said park or common; Second. Any surplus of the said proceeds may then be applied and used for the purchase and improvement of other lands, within the limits of the city or immediately adjacent thereto, for use as recreation places, or for the building of bridges and construction of drains and sewers, or for such other purposes as council may determine: Provided, That no land shall be purchased for such use with said funds unless the ordinance authorizing the purchase shall have been passed by the affirmative vote of four members of council.

Section 3713.  Application of Coal Rentals to Payment of Costs of Improvements; Issue of Bonds.--Whenever hereafter any such city shall have leased the coal under any public park or common for a rental or royalty payable in periodical instalments, in order to provide for the payment of the cost of any such improvements authorized in the preceding sections, the said city may, from time to time, issue general obligation bonds. The issuance of any such bonds shall be in accordance with the Municipal Borrowing Law.

Section 3714.  Appointment of Directors of City Trusts.-- Whenever any property or estate, whatsoever, has been conveyed, bequeathed or devised to any city, in trust, for the purpose of establishing or maintaining a public park or other public purpose for the use and benefit of citizens of such city, the court of common pleas of the county in which such city is located, on petition of council of said city, shall appoint five persons as directors of city trusts, all of whom shall be citizens of such city, and none of whom shall hold any office or employment thereunder, who shall exercise and discharge all the duties and powers of said city, however acquired, concerning such property, conveyed, bequeathed or devised to such charitable use, to the extent that the same has been or hereafter may be, by statute or otherwise, vested in or delegated to the said city or the officers thereof. The directors of city trusts may delegate the supervision and operation of such city trusts as are recreation places to the authority determined by council for recreation places of the city in accordance with section three thousand seven hundred four of this act.

Section 3715.  Term of Service; Removal; Vacancies.--The persons so appointed shall serve as members of the board of directors of city trusts during good behavior, subject, however, to removal by the court of common pleas for dereliction or neglect of duty, or for any other cause deemed by the said court to be important for the conservation or administration of the said trust thus imposed upon them.

All vacancies shall be, from time to time, filled by the said court, on petition of the council, of said city, or any of its citizens.

Section 3716.  Duties of Directors.--The said directors of trust shall carefully invest and preserve the trust funds; make such rules and by-laws for the proper regulation of their business not inconsistent with the terms annexed to any conveyance, bequest or devise in any deed or last will and testament of any decedent; appoint and employ as many agents and employes as, in their judgment, shall be necessary for the proper discharge of the said trust or trusts; and, in the name and in accordance with the conditions of said trusts, do any and all things requisite for the proper administration and management of the property under their control.

Section 3717.  Directors to be Agents of City; to Have no Interest in Contracts.--The said directors, in the discharge of their duties and within the scope of their powers, shall be considered agents or officers of the city, but no compensation or emolument whatever shall be received by them for any services performed relating to the said trusts, nor shall any of them have or acquire any personal interests in any contract whatever made through them or their agents or employes.]

Section 356.  Section 3718 of the act is amended to read:

Section 3718.  [Appointment of Park Guards.--] **Park Rangers.--(a)**  The council of every city shall have power, under the provisions of this article, to provide, by ordinance, for the selection and employment of such number of persons as [they deem necessary to act as park guards] **are deemed necessary to act as park rangers,** fix their compensation and duties[,] and provide for their [uniforming] **uniforms.**

**(b)  To the extent authorized by 53 Pa.C.S. Ch. 21 Subch. D (relating to municipal police education and training), persons appointed as park rangers, under any ordinance passed pursuant to the provisions of subsection (a), shall have, in the parks and playgrounds and other public places in the cities, and beyond the limits of the cities when the cities have acquired lands, properties and buildings for park and playground or other public purposes, the same power, in preserving the peace, maintaining order and making arrests, as police officers have in the cities.**

**(c)  For purposes of the act of June 28, 1935 (P.L.477, No.193), referred to as the Enforcement Officer Disability Benefits Law (Heart and Lung Act), the term "park ranger," as used herein, shall mean a park guard.**

**(d)  Park rangers shall be under the supervision, control and direction of the director of the Department of Parks and Public Property, or, if none exists, any other department as council directs.**

Section 357.  Sections 3719, 3720 and 3721, Article XXXVIII and subdivision (a) headings and section 3801 of the act are repealed:

[Section 3719.  Powers of Park Guards.--Persons appointed as

park guards, under any ordinance passed pursuant to the provisions of the preceding section, shall have, in the parks and playgrounds and other public places in such cities, and beyond the limits of such cities when such cities have acquired such lands, properties and buildings for park and playground or other public purposes, the same power, in preserving the peace, maintaining order, and making arrests, as policemen have in such cities.

Section 3720.  Control of Park Guards.--Such park guards shall be under the supervision, control, and direction of the director of the Department of Parks and Public Property.

Section 3721.  Sale of Unused and Unnecessary Land and Buildings.--The council of each city is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings that have been dedicated to park purposes by public auction, upon sealed bids, or at private sale with approval of the court of common pleas; Provided, nevertheless, That before any such sale is made council shall advertise said proposed sale twice in at least one newspaper in accordance with section one hundred and nine of this act.

ARTICLE XXXVIII
SHADE TREES AND FORESTS
(a)  Shade Trees

Section 3801.  Shade Tree Commission.--Any city may, by ordinance, create a commission to be known as the Shade Tree Commission of such city; but in cities where the council of said city shall not elect to create by ordinance such Shade Tree Commission, the said council may exercise all the rights and perform the duties and obligations imposed by this article upon the Shade Tree Commission.]

Section 358.  Section 3802 of the act, amended November 26, 1975 (P.L.459, No.128), is repealed:

[Section 3802.  Composition of Commission.--The commission, if ordained, shall be composed of not less than three nor more than seven residents of the city, who shall be appointed by the mayor, and shall serve without compensation.

One commissioner shall serve for a term of three years, one for a term of four years, and one for a term of five years on commissions of only three residents. Where the commission consists of more than three members, the time sequence provided for a three member commission shall be repeated.

On the expiration of the term of any commissioner, a successor shall be appointed by the mayor to serve for a term of five years.

Vacancies in the office of commissioner shall be filled by the mayor for the unexpired term.

Should the governing body determine to increase the membership of an already existing commission, the additional members shall be appointed as provided in this section. If, at any time, after increasing the membership of the commission the governing body should determine to reduce the number of members on the commission, such reduction shall be effectuated by allowing the terms to expire and by making no new appointments to fill the vacancy. Any increase or reduction in members shall be by ordinance.]

Section 359.  Sections 3803, 3804, 3805 and 3806 of the act are repealed:

[Section 3803.  Powers May Be Vested in Park Commission.-- Whenever in any city there exists a commission for the care of

public parks, the council may also, by ordinance, provide that the park commission shall have all the powers and be subject to all the duties prescribed by this article for the Shade Tree Commission.

Section 3804.  Powers of Commission.--The commission shall have exclusive custody and control of the shade trees of the city, and may plant, remove, maintain, and protect shade trees on the streets and sidewalks in the city. The commission may require the planting and replanting of shade trees along the streets and sidewalks of the city, as council may direct. The kind of tree and the alignment and locations of the trees shall be determined by the commission or as council may direct, but shall not prevent necessary or reasonable use of streets, sidewalks, abutting property, or the conduct of business.

The commission may, with the approval of council, either employ and pay superintendents, engineers, foresters, tree-wardens, or other assistants, or may contract for personal and professional services, for the proper performance of the duties devolving upon it, and may make, publish, and enforce regulations for the care and protection of the shade trees of the city. No such regulation shall be in force until it has been approved by the council, and until it has been published at least twice in not more than two newspapers of the city.

Section 3805.  Report of Commission.--The shade tree commission shall annually report in full to the council, at council's first stated meeting in October, of its transactions and expenses for the last fiscal year of the city. The park commission in cities wherein the park commission is authorized to act as the shade tree commission, may incorporate such transactions and expenses as a separate part of its regular report to council.

Section 3806.  Notices by Commission.--Whenever any shade tree commission, or park commission, acting as a shade tree commission, proposes to plant, transplant, or remove shade trees on any street or sidewalk, notice of the time and place of the meeting at which such work is to be considered shall be given in not more than two newspapers published in the city, once a week for two weeks immediately preceding the time of the meeting, in accord with the provisions of section one hundred and nine of this act. The notice shall specify in detail the streets or sidewalks or portions thereof upon which trees are proposed to be so planted, replanted, or removed.]

Section 360.  Section 3807 of the act, amended August 21, 1953 (P.L.1292, No.364), is repealed:

[Section 3807.  Payment by Owners.--The cost of furnishing, planting, transplanting, or removing any shade trees in or along the streets of the city, of the necessary and suitable guards, curbing, or grading for the protection thereof, and of the replacing of any pavement or sidewalk necessarily disturbed in the execution of such work, shall be paid by the owner of the real estate in front of whose property the work is done, except that part of such cost may be certified by the commission to council and to the city treasurer as a charge to be paid by the city.

The amount each owner is to pay shall be ascertained and certified by the commission to council and to the city treasurer.]

Section 361.  Sections 3808, 3809 and 3810, Article XXXVIII subdivision (b) heading, sections 3820 and 3821, subdivision (c) heading and sections 3830, 3831, 3832, 3833, 3834, 3835 and 3836

of the act are repealed:

[Section 3808.  Assessments; Liens.--Upon the filing of the certificate with the council, the city clerk shall cause thirty days' written notice to be given by mail to the persons against whose property an assessment has been made. The notice shall state the amount of the assessment, and the time and place of payment, and shall be accompanied with a copy of the certificate. The expense of the notice shall be paid by the city.

The amount assessed against the real estate shall be a lien from the time of the filing of the certificate with the council, and, if not paid within the time designated in the notice, a claim may be filed and collected in the same manner as municipal claims are filed and collected.

Section 3809.  Maintenance by City; Tax Levy.--The cost and expenses of caring for such trees after they have been planted shall be paid by the city.

The needed amount shall each year be certified by the commissioners to council in time for inclusion in the proposed budget ordinance, and the funds provided by council shall be drawn against, as required by the commission, in the same manner as money appropriated for city purposes.

The city council may levy a special tax, not to exceed the sum of one-tenth of one mill on the dollar on the assessed valuation of the property in said city, for the purpose of defraying the cost and expenses of caring for such shade trees and the administrative expenses connected therewith, or it may provide for such expenses by appropriations.

Section 3810.  Penalties.--The commission, to the extent as may be provided by ordinance of council, may assess penalties for the violation of its regulations and of this article so far as it relates to shade trees. Any penalty so assessed shall be a lien upon the real estate of the offender and may be collected as municipal claims are collected.

All penalties or assessments imposed under this article shall be paid to the city treasurer, to be placed to the credit of the commission, subject to be drawn upon by the commission for the purposes authorized in this article.

(b)  Memorial Trees

Section 3820.  Memorial Trees.--Council may provide for or authorize provision for memorial trees for residents of the city who died while in the military service of the United States or in consequence thereof. Council may make appropriations or accept contributions for this purpose. Such trees shall bear some permanent indication of their purpose.

Section 3821.  Penalty for Injury to Memorial Trees.--Any person wilfully, maliciously, or negligently destroying or injuring any trees planted pursuant to the provisions of this subdivision (b) shall be guilty of a misdemeanor, and upon conviction, shall be liable to a fine not exceeding five hundred dollars, or imprisonment not exceeding three months, or both, in the discretion of the court.

(c)  Forests

Section 3830.  Acquisition of Land for Forest Purposes.--Cities may acquire, by purchase, gift, or lease, and hold tracts of land covered with forest or tree growth or suitable for the growth of trees, and administer the same, under the direction of the Department of Forests and Waters, in accordance with the practices

and principles of scientific forestry, for the benefit of the
city. Such tracts may be of any size suitable for the purpose and
may be located within or without the city limits.

Section 3831. Approval of Department of Forests and Waters.--
Before the passage of any ordinance for the acquisition of land to
be used as municipal forests, the mayor shall submit to the
Department of Forests and Waters and secure its approval of the
area and location of such land.

Section 3832. Ordinance Declaring Intention.--Whenever the
council deems it expedient to acquire any lands for the purposes
of municipal forests, it shall so declare in an ordinance wherein
shall be set forth all facts and conditions relating to the
proposed action.

Section 3833. Appropriations of Money.--All money necessary
for the purchase of such tracts shall be appropriated in the same
manner as appropriations for city purposes, and such funds may be
provided from the current revenue or by the proceeds of a sale of
general obligation bonds in accordance with the Municipal
Borrowing Law.

Section 3834. Rules and Regulations.--Upon the acquisition of
any municipal forests or lands suitable for such, the council
shall notify the Department of Forests and Waters, which shall
make such rules for the government and proper administration of
the same as may be necessary. The council shall publish such
rules, declare the uses of the forest in accordance with the
intent of this subdivision (c) of this article, and make such
provisions for its administration, maintenance, protection and
development as shall be deemed necessary or expedient. The rules
governing the administration of such forests shall have for their
main purpose the producing of a continuing city revenue by the
sale of forest products.

Section 3835. Appropriations and Revenues.--All moneys
necessary to be expended for the administration, maintenance,
protection, and development of such forests shall be appropriated
and applied as is now done for city purposes. All revenue and
emoluments arising from such forests shall be paid into the city
treasury to be used for general city purposes.

Section 3836. Use of Forests.--Municipal forests may be used
by the public as general outing or recreation grounds subject to
the rules governing their administration as municipal forests.]

Section 362. Section 3837 of the act, amended May 21, 1956
(1955 P.L.1639, No.548), is repealed:

[Section 3837. Ordinance of Sale; Exceptions.--Whenever the
council deems it expedient to sell any municipal forest, or part
thereof, it shall so declare in an ordinance wherein shall be set
forth all the facts and conditions relating to the proposed
action, which proposed ordinance shall be advertised once a week
for three weeks prior to its passage. No ordinance shall be
effective in legalizing such sale until it has been approved by a
majority vote of the people at the next ensuing general, municipal
or primary election: Provided, however, That the provisions of
this section shall apply only to lands acquired for municipal
forests as such, and shall not limit the power of cities or water
authorities to acquire, sell, exchange, lease, transfer, manage or
maintain lands required for the conservation, development,
utilization and disposal of water or watersheds: And provided
further, That cities or water authorities may enter into

agreements with the Department of Forests and Waters providing for such conservation, development, utilization and disposal of water or watersheds.]

Section 363. Section 3838, Article XXXIX heading and section 3901 of the act are repealed:

[Section 3838. Appropriation for Forest Work.--Cities may appropriate moneys to any forest protection association cooperating in forest work with the State Department of Forests and Waters, or to be expended in direct cooperation with said department in forest work.

ARTICLE XXXIX
WHARVES AND DOCKS

Section 3901. Power to Erect and Maintain Wharves; Regulation; Charges.--Cities may erect and maintain wharves in navigable waters within or adjacent to the city, regulate the use thereof, fix and collect wharfage, for all public wharves, and docks within their limits in accordance with a regular schedule of charges, establish wharf and dock lines, and construct and maintain docks, retaining walls, dams and embankments. They may regulate the anchoring of all manners of vessels within their limits and the depositing of freight on public wharves and docks. Cities may, pursuant to ordinance, purchase or condemn such land or other property as they may need for the purposes of wharves and docks.]

Section 364. Section 3902 of the act, amended July 1, 1959 (P.L.501, No.127), is repealed:

[Section 3902. Erection of Market-Houses and Railway Tracks on Wharves; Charges; Licenses.--Cities may erect and maintain market-houses and terminal sheds or stations on their wharves, for the receipt and distribution of freight, express, and cargo; construct railroad and street railway tracks or other facilities on said wharves to provide for the convenient handling of such freight or express or cargo; and collect rents, tolls, or charges for the use of such market-houses, terminal stations, tracks, wharves and other facilities. Cities may enter into contracts and agreements with any person for the use by such person of any tracks, terminal stations, wharves or other facilities, for such period and upon such terms as to maintenance, upkeep and improvements, as may be mutually agreed upon. Such cities shall, at all times, be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of the tracks, terminal stations, wharves or other facilities, by such persons and by the public. No such contract or agreement shall permanently exclude the public of said cities from the use and enjoyment of said tracks, terminal stations, wharves or other facilities, nor shall any exclusive lease be granted for a term exceeding twenty-five years.

No structure so erected, and no right granted under the powers herein conferred, shall interfere with the general public use of wharves for water-borne commerce.]

Section 365. Sections 3903, 3904 and 3905 and Article XL heading of the act are repealed:

[Section 3903. Use of Unnecessary Wharves or Landings for Other Municipal Purposes.--Whenever any city, by ordinance, declares that any public landing, or public wharf, or part thereof, fronting on any navigable water and lying within its limits, has become unnecessary for use for public landing or public wharf purposes, the city make take, enter upon, and occupy

for use for any other public purposes whatsoever, the public landing, or public wharf, or part thereof, so found unnecessary for such purposes, any limitation of use thereof by the municipality arising from donation, dedication, appropriation, statute, or otherwise, to the contrary notwithstanding.

Section 3904.  Appropriation of Wharves and Landings for General Purposes.--Cities are vested with the right of eminent domain for the purpose of appropriating, for such general public uses, all such public landings or public wharves, or parts thereof, so found unnecessary for such purposes, together with any easements, property and property rights connected therewith.

Section 3905.  Assessment of Damages.--All damages arising from the exercise of the power of eminent domain hereunder shall be ascertained and awarded in the manner provided by this act for property taken, injured or destroyed.

ARTICLE XL<br>CITY PLANNING]

Section 366.  Article XLI heading of the act, amended July 29, 1971 (P.L.250, No.61), is repealed:

[ARTICLE XLI<br>ZONING, BUILDING, HOUSING, FIRE PREVENTION, PLUMBING<br>AND ELECTRICAL ORDINANCES, AND PUBLIC NUISANCES]

Section 367.  Article XLI subdivision (a), (b) and (c) headings of the act are repealed:

[(a)  The Zoning Ordinances<br>(b)  Procedure for Adoption of Zoning Ordinance<br>(c)  Board of Adjustment]

Section 368.  Article XLI subdivision (d) heading and sections 4130, 4131, 4131.1, 4132 and 4133 of the act, amended or added December 21, 1998 (P.L.1013, No.135), are repealed:

[(d)  Building, Housing, Property Maintenance,<br>Fire Prevention, Plumbing and Electrical Ordinances

Section 4130.  Building Ordinance, Housing Ordinance, Property Maintenance Ordinance, Fire Prevention Ordinance, Electrical Ordinance and Plumbing Ordinance.--Each city may enact a building ordinance, a housing ordinance, a property maintenance ordinance, a fire prevention ordinance, an electrical ordinance, and a plumbing ordinance, which may provide for the following matters:

(a)  A system of specifications and regulations to insure the structural safety and the incombustibility of buildings and housing constructed, reconstructed, altered, enlarged, repaired or maintained within the city.

(b)  A system of specifications and regulations for the setting out, construction, alteration, repair, maintenance, occupation, sanitation, ventilation, lighting, electric wiring, water supply, toilet facilities, drainage, plumbing, use and inspection of all buildings and housing or parts of buildings and housing, and the walls and foundations thereof, constructed, erected, altered, designated, or used, in whole or in part, for human habitation, and for the sanitation and inspection of land appurtenant thereto.

Section 4131.  Form of Building Ordinance, Housing Ordinance, Property Maintenance Ordinance, Fire Prevention Ordinance, and Plumbing Ordinance; Passage.--The building ordinance, the housing ordinance, the property maintenance ordinance, the fire prevention ordinance, the electrical ordinance and the plumbing ordinance may adopt any standard or nationally recognized building code, any standard or nationally recognized housing code, any standard or

nationally recognized property maintenance code, any standard or nationally recognized fire prevention code, any standard or nationally recognized electrical code, or any standard or nationally recognized plumbing code, or any variations or changes or parts thereof, published and printed in book form, covering any or all of the above items, without incorporating such code in the ordinance, or any city may enact any such building code, housing code, property maintenance code, fire prevention code, electrical code, or plumbing code, or any changes or variations or parts thereof, as its building ordinance, as its housing ordinance, as its property maintenance ordinance, as its fire prevention code, as its electrical code or as its plumbing code. In either event, the building ordinance or code, the housing ordinance or code, the property maintenance ordinance or code, the fire prevention ordinance or code, the electrical ordinance or code, and the plumbing ordinance or code, or any changes or variations or parts thereof, need not be advertised after passage, but notice of its consideration, in reasonable detail shall be published as required by section one thousand fourteen of this act. Not less than three copies of the building ordinance, the housing ordinance, the property maintenance ordinance, the fire prevention ordinance, the electrical ordinance or the plumbing ordinance adopted by council shall be made available to public inspection and use during business hours for at least three months after its adoption. The procedure herein set forth relating to the adoption of such building ordinances, housing ordinances, property maintenance ordinances, fire prevention ordinances, electrical ordinances and plumbing ordinances may likewise be adopted in amending, supplementing or repealing any of the provisions of such ordinances.

Section 4131.1.  Penalties.--(a)  Except as provided for in subsection (b), the building ordinance, the housing ordinance, the property maintenance ordinance, the fire prevention ordinance, the electrical ordinance and the plumbing ordinance may provide penalties of fine not exceeding one per month on a property and limited to no more than one thousand dollars for the first two continual and uncorrected violations of the same subsection of such ordinance on the same property and not exceeding five thousand dollars for the third and any subsequent continual and uncorrected violation of the same subsection of such ordinance on the same property.

(b)  If a violation of the building ordinance, the housing ordinance, the property maintenance ordinance, the fire prevention ordinance, the electrical ordinance or the plumbing ordinance is found to pose a threat to the public's health, safety or property, then penalties of fine may be provided for as follows:

(i)  not exceeding one citation per five calendar days for a continual and uncorrected violation of the same subsection of such ordinance on the same property;

(ii)  limited to no less than five hundred dollars and no more than one thousand dollars for the first two continual and uncorrected violations of the same subsection of such ordinance on the same property and no less than one thousand dollars and not exceeding ten thousand dollars for the third and any subsequent continual and uncorrected violation of the same subsection of such ordinance on the same property, or imprisonment for any term not exceeding ninety days, or both.

(c)  For violations of any ordinance not specified in subsection (a) or (b), a penalty may be imposed on any person who violated such ordinance which shall include a fine of not more than one thousand dollars, or a term of imprisonment of not more than ninety days, or both.

Section 4132.  Building Inspectors, Housing Inspectors, Property Maintenance Inspectors, Fire Prevention Inspectors, Electrical Inspectors, and Plumbing Inspectors.--Council may appoint building inspectors, housing inspectors, property maintenance inspectors, fire prevention inspectors, electrical inspectors and plumbing inspectors and fix their compensation. Such inspectors shall have the right to enter upon and inspect any and all premises at all reasonable hours for the administration and enforcement of the building ordinance, the housing ordinance, the property maintenance ordinance, the fire prevention ordinance, the electrical ordinance and the plumbing ordinance. Any fees payable to them under the building ordinance, the housing ordinance, the property maintenance ordinance, the fire prevention ordinance, the electrical ordinance and the plumbing ordinance shall be paid by them to the city treasurer for the use of the city as promptly as may be.

Section 4133.  Actions to Restrain Violations.--The city may, in addition to the penalties provided by its building ordinance, its housing ordinance, its property maintenance ordinance, its fire prevention ordinance, its electrical ordinance and its plumbing ordinance, bring actions at law or in equity to prevent or restrain, correct or abate any violations of its building ordinance, its housing ordinance, its property maintenance ordinance, its fire prevention ordinance, its electrical ordinance and its plumbing ordinance.]

Section 369.  Article XLI subdivision (e) heading and sections 4140, 4141, 4142 and 4143 of the act are repealed:
[(e)  Abatement of Public Nuisances]

Section 4140.  Petition for Removal of Public Nuisances; Viewers; Vacating Public Alleys, Lanes or Passageways, Declared Public Nuisances by Board of Health.--The council of any city may, by resolution, authorize and empower the mayor of such city to present a petition to the court of common pleas, setting forth that any property, building, premises, business or occupation, specifying the same fully and describing the same accurately, located within said city has become a public nuisance, injurious or dangerous to the community and to the public health. Upon the presentation and hearing of such petition, if the nuisance complained of be not a public nuisance, per se, then the court may appoint three viewers, from the county board of viewers, to go upon the premises where said nuisance is alleged to exist--at a time to be fixed in the order appointing the same, of which time due notice shall be given to all persons affected, which shall be not less than twenty nor more than thirty days from the date of the order making such appointment--and shall thereupon, being first duly sworn, view the property, premises, building, business or occupation, shall hear the parties, their witnesses and counsel, and shall make due report thereof to the court appointing them. In any case where the board of health shall have declared any public alley, lane or passageway or a part thereof to be a public nuisance, any two or more owners of property adjacent or abutting thereof may petition council that such public alley, lane

or passageway or part thereof be vacated in accordance with the procedure provided in this subdivision for the abatement of public nuisances; except that the viewers shall not question the finding of the board of health, but shall determine whether or not the said alley, lane or passageway or part thereof should be vacated. Council may, with or without the aforesaid petition, proceed for the vacating of any such public alley, lane or passageway or part thereof, except that in no case shall any such alley, lane or passageway be vacated in such a way or to such an extent as to deprive any lot abutting thereon of its sole means of ingress and egress; nor shall any alley, lane or passageway created by grant or contract and not therefore accepted by the public be vacated.

Section 4141. Power to Viewers.--The viewers, appointed as aforesaid, may:

First. Determine whether or not the property, premises, building, business or occupation is a public nuisance, and, if they shall find it is such a nuisance, shall so return in their award; and

Second. Find what, if any, compensation shall be paid by the said city to the owner or owners of said property, premises, building, business or occupation for the abatement of the same, and if the findings of the said viewers be in favor of the said city and direct the abatement of said nuisance, then judgment shall be entered upon their award within thirty days after the same is filed, unless the said award be appealed from or exceptions thereto be filed within thirty days. No execution or other process for the collection of any sum of money awarded to any person or persons, corporation or corporations, as compensation for the abatement of any such nuisance, shall issue until the said nuisance has been fully and completely abated, and return thereof made to the court.

Section 4142. Appeals.--Any of the parties interested in any proceedings provided by the preceding two sections may appeal to the court of common pleas within thirty days from the date of filing an award; such appeal to be in the same form as now governs appeals from the awards of viewers appointed pursuant to this act to assess damages for property taken, injured or destroyed, the party appealing to pay the costs incurred and to give bond, with one surety, for the payment of all costs which may thereafter be incurred. Upon such appeal being perfected, the court shall frame an issue, which issue shall be placed at the head of the next trial list then open, and shall be tried by the court and jury in the same manner as feigned issues are now tried. Upon such trial the jury shall have power to find the same facts as are provided may be found by the viewers. If the jury shall find in favor of the city and award any compensation to the owner or owners of said property, premises, buildings, business or occupation, judgment shall be entered upon the verdict. No execution or other process for the collection of such judgment shall issue until the nuisance complained of shall have been fully and completely abated, and return thereof made to the court; upon which the court shall have the power to award execution or other process necessary to enforce the collection of the judgment.

Section 4143. Abatement of Public Nuisance after Award of Viewers.--Whenever the award of viewers, or the verdict of a jury, shall find that a public nuisance exists, and the owner or owners of any property, premises, building, business or occupation

causing the same shall fail to abate the same within sixty days from the date of the judgment, the authorities of said city shall have full power and authority to enter upon said property, premises or building where said nuisance exists and abate the same, and shall not be liable in any form of action for so doing. The cost and expense of abating the same shall be deducted from any compensation awarded in said proceedings.]

Section 370.  The act is amended by adding an article to read:

### ARTICLE XLI-A
### UNIFORM CONSTRUCTION CODE, PROPERTY MAINTENANCE CODE
### AND RESERVED POWERS

Section 4101-A.  Primacy of certain codes.

(a)  Applicability.--The Pennsylvania Construction Code Act and the Uniform Construction Code adopted under section 301 of the Pennsylvania Construction Code Act shall apply to the construction, alteration, repair and occupancy of all buildings and structures within a city.

(b)  Construction.--This article and any ordinance, rule or regulation adopted pursuant to this article shall not supersede or abrogate the Pennsylvania Construction Code Act or the Uniform Construction Code and shall be construed and read in pari materia with them.

Section 4102-A.  Changes in Uniform Construction Code.

A city may propose and enact an ordinance to equal or exceed the minimum requirements of the Uniform Construction Code in accordance with and subject to the requirements of section 503 of the Pennsylvania Construction Code Act. Any ordinance exceeding the provisions of the Uniform Construction Code shall be required to meet the standards provided in section 503(j)(2) of the Pennsylvania Construction Code Act.

Section 4103-A.  Public nuisance.

Any building, housing or property, or part thereof erected, altered, extended, reconstructed, removed or maintained, contrary to any of the provisions of any ordinance enacted for any of the purposes specified in this article may be reported, in accordance with Article XXVII-A, to the department designated to determine whether a public nuisance exists, and, if a public nuisance is determined to exist, it may be abated in accordance with that article, provided, however, that a violation of the Uniform Construction Code or any ordinance that equals or exceeds the Uniform Construction Code shall be subject to the provisions of the Pennsylvania Construction Code Act and the regulations adopted thereunder by the Department of Labor and Industry relating to enforcement for noncompliance.

Section 4104-A.  Property maintenance code.

(a)  Enactment.--Notwithstanding the primacy of the Uniform Construction Code, a city may enact a property maintenance ordinance, including any standard or nationally recognized property maintenance code or any changes or variations or parts thereof, and it may, by reference, in accordance with section 1018.13, incorporate any standard or nationally recognized property maintenance code, or any variations or changes or parts thereof, published and printed in book form, without setting forth the text of the code in the ordinance.

(b)  Public availability.--The full text of the property maintenance code need not be published, but, in accordance with section 1018.9, it shall be sufficient to publish a summary

setting forth the provisions of the ordinance in reasonable detail
and a reference to a place within the city where copies of the
proposed ordinance may be examined. Not fewer than three copies of
the proposed property maintenance code, or portion thereof or
amendment thereto, shall be made available to public inspection
and use during business hours. Copies shall also be made available
to any interested party in accordance with the act of February 14,
2008 (P.L.6, No.3), known as the Right-to-Know Law, or may be
furnished or loaned without charge.

(c)   Violations.--A property maintenance code ordinance may
provide for fines and penalties not exceeding $1,000 or
imprisonment for any term not exceeding 90 days, or both, for
violations thereof. The procedure set forth under this article
relating to the enactment of such ordinances may likewise be
utilized in amending, supplementing or repealing any of the
provisions of such ordinances.

(d)   Inspectors.--Council may appoint property maintenance
inspectors who shall have the right to, subject to constitutional
standards in a similar manner as provided in section 2308, enter
upon and inspect any and all premises at all reasonable hours for
the administration and enforcement of the city's property
maintenance code or ordinance incorporating a standard or
nationally recognized property maintenance code. Any fees payable
to a property maintenance inspector under the ordinance shall be
paid by the property maintenance inspector to the city treasurer
for the use of the city as promptly as may be.

(e)   Additional remedies.--In addition to the penalties
provided by the property maintenance ordinance, the city may
institute appropriate actions or proceedings at law or in equity
to prevent or restrain property maintenance violations.

(f)   Relation to other acts.--The powers of a city as provided
in this section shall be in addition to, but not limited to, the
powers provided in the act of November 26, 2008 (P.L.1672,
No.135), known as the Abandoned and Blighted Property
Conservatorship Act, 53 Pa.C.S. Ch. 61 (relating to neighborhood
blight reclamation and revitalization) and 68 Pa.C.S. Ch. 21
(relating to land banks).

Section 4105-A.   Reserved powers.

If, as a result of legislative action or final order of court,
for which the time for appeal has expired and no appeal has been
taken or from which there is no pending appeal, the Uniform
Construction Code or any replacement code is no longer applicable
in cities, a city may:

(1)   Enact and enforce ordinances to govern and regulate
the construction, reconstruction, alteration, extension,
repair, conversion, maintenance, occupation, sanitation,
ventilation, heating, egress, lighting, electric wiring, water
supply, toilet facilities, drainage, plumbing, fire prevention,
fireproofing, including prescribing limitations wherein only
buildings of noncombustible material and fireproofed roofs are
used in construction, erection or substantial reconstruction,
use and inspection of all buildings and housing or parts of
buildings and housing, and the roofs, walls and foundations
thereof, and all facilities and services in or about the
buildings or housing constructed, erected, altered, designed or
used, in whole or in part, for any use or occupancy, and the
sanitation and inspection of land appurtenant thereto. The

codes may be combined or separately enacted or combined with
the property maintenance code.
    (2)  Require that, before any work of construction,
reconstruction, alteration, extension, repair or conversion of
any building is begun, approval of the plans and specifications
be secured.
    (3)  Incorporate any standard or nationally recognized
code, or any variations or changes or parts thereof, published
and printed in book form, without incorporating the text of the
code as provided in subdivision (a.1) of Article X. The
ordinances may provide for fines and penalties not exceeding
$1,000 or imprisonment for any term not exceeding 90 days, or
both, for violations thereof. The procedure set forth under
this article relating to the enactment of the ordinances may
likewise be utilized in amending, supplementing or repealing
any of the provisions of ordinances that incorporate any
standard or nationally recognized code, or any variations or
changes or parts thereof.
    (4)  Appoint building inspectors, housing inspectors,
property maintenance inspectors, fire prevention inspectors,
electrical inspectors and plumbing inspectors and fix their
compensation. The inspectors shall have the right to, subject
to constitutional standards in a similar manner as provided in
section 2308, enter upon and inspect any and all premises at
all reasonable hours for the administration and enforcement of
the city's enacted codes or ordinances incorporating standard
or nationally recognized codes. Any fees payable to an
inspector under the ordinances shall be paid by the inspector
to the city treasurer for the use of the city as promptly as
may be.
    (5)  In addition to the penalties provided by ordinances,
the city may institute appropriate actions or proceedings at
law or in equity to prevent or restrain the unlawful
construction, reconstruction, alteration, extension, repair,
conversion, maintenance or use or occupation of property
located within the city, to restrain, correct or abate the
violation and to prevent the use or occupancy of the building,
housing or structure.
Section 371.  Article XLII heading of the act is reenacted to
read:
                       ARTICLE XLII
                       AERONAUTICS
    Section 372.  Section 4201 of the act is amended to read:
    Section 4201.  Power to Acquire Land for Aeronautical Purposes;
Maintenance of Municipal Airports[, Etc.--With the approval of the
Pennsylvania Aeronautics Commission, a].--A city may **establish and
maintain a municipal airport and may** acquire, by lease, purchase
or condemnation proceedings, **subject to the limitations in 26
Pa.C.S. § 206 (relating to extraterritorial takings),** any land
lying either within or without the territorial limits of the city,
and within or without the territorial limits of the county in
which [such] **the** city is located, which, in the judgment of
council, may be necessary and desirable for the purpose of
establishing and maintaining municipal airports, landing fields,
**aviation easements** or intermediate landing fields and other air
navigation facilities.
    Section 373.  Section 4202 of the act is repealed:

[Section 4202.  Proceedings for Condemnation.--The proceedings for the condemnation of lands under the provisions of this article, and for the assessment of damages for property taken, injured or destroyed, shall be conducted in the manner provided by this act in the case of property taken, injured or destroyed. The title acquired by the city exercising the power to condemnation shall be a title in fee-simple.]

Section 374.  Sections 4203, 4204 and 4205 of the act are amended to read:

Section 4203.  Leasing of Land Acquired for Aeronautical Purposes.--Any city acquiring land for any aeronautical purposes may lease the same, or part thereof to any individual or corporation desiring to use the same for [the purpose of taking off or landing an aeroplane, or for other aeronautical purposes, on such terms and subject to such conditions and regulations as may be provided. Any such city may enter into a contract, in the form of a lease, providing for the use of said land, or any part thereof, by the Government of the United States for air mail delivery, or other aeronautical purposes, upon nominal rental or without consideration] **aeronautical purposes**.

Section 4204.  Operation of Facilities Jointly.--Any city may operate and maintain municipal airports, landing fields or intermediate landing fields and other air navigation facilities jointly **in accordance** with [any other political subdivision or with the Pennsylvania Aeronautics Commission, upon such terms and conditions as may be agreed upon between the council and the corporate authorities of the other contracting party or parties] **53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation).**

Section 4205.  Appropriation for Support of Air Navigation Facilities.--A city which does not own, lease[,] or operate municipal airports, landing fields or intermediate landing fields or other air navigation facilities[,] may appropriate money for the support and maintenance of any such facilities, situate either within or without the boundaries of the city, or of the county or counties in which [such] **the** city is located.

Section 375.  Article XLIII and subdivision (a) headings of the act are reenacted to read:

ARTICLE XLIII
PENSIONS
(a)  Police

Section 376.  Section 4301 of the act, amended December 12, 1994 (P.L.1033, No.140), is amended to read:

Section 4301.  Police Pension Fund[; Direction of].--**(a)** Cities shall establish, by ordinance, a police pension fund[, to be].

**(b)  The following shall apply to a police pension fund established pursuant to this section:**

**(1)  The fund shall be** maintained by an equal and proportionate monthly charge against each member of the police force, which shall not exceed annually four per centum of the pay of [such] **the** member and an additional amount not to exceed one per centum of the pay of [such] **the** member to be paid by [such] **the** member or the municipal corporation to provide sufficient funds for payments required by subsection [(d) of section 4303] **(f) of section 4303** to surviving spouses even if they remarry, or if no spouse survives or if such person survives and subsequently dies, then to

the child or children under the age of eighteen years, of members of the police force or of members retired on pension or who die in service[; which].

**(2)** **The** fund shall at all times be under the direction and control of council but may be committed to the custody and management of such officers of the city or [citizens thereof, or corporations located therein] **to such other persons or entities,** as may be designated by council[, and] **by ordinance.**

**(3)** **The fund shall be** applied, under such regulations as council may, by ordinance, prescribe, for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age or disability, surviving spouses even if they remarry, or if no spouse survives or if such person survives and subsequently dies, then to the child or children under the age of eighteen years, of members of the police force or of members retired on pension[; but such allowances as shall be].

**(4)** **Allowances** made to those who are retired by reason of the disabilities of age shall be in conformity with a uniform scale, together with service increments as hereinafter provided.

**(5)** Any compensation paid to a corporate custodian of the police pension fund shall be paid from the general fund of the city.

Section 377. Section 4302 of the act, amended November 25, 1970 (P.L.754, No.246), is amended to read:

Section 4302. Retirement; Final Discharge.--[Such ordinance shall prescribe a] **(a)** **With regard to continuous service and minimum retirement age requirements, the ordinance establishing the police pension fund shall prescribe as follows:**

**(1)** **A** minimum period of continuous service[,] **of** not less than twenty years[, and, when].

**(2)** **If** any minimum **retirement** age is prescribed, a minimum age of fifty years[, after which members of the force may retire from active duty, and such members as are retired].

**(b)** **Retired members, if not unfit by reason of age, disability or otherwise,** shall be subject to service[, from time to time,] as a police reserve [until unfitted for such service, when they may be finally retired by reason of age or disability] **under terms and conditions as may be established by council.**

**(c)** With the approval of council, any member of the police pension fund who is a contributor and who served in the armed forces of the United States subsequent to September 1, 1940, and who was not a member of the police pension fund prior to such military service, shall be entitled to have full credit for each year or fraction thereof, not to exceed five years of such service upon [his] **the member's** payment to the police pension fund of an amount equal to that which [he] **the member** would have paid had [he] **the member** been a member during the period for which [he desires] credit **is desired,** and [his] **the member's** payment to [such] **the** fund of an additional amount as the equivalent of the contributions of the city on account of such military service.

Section 378. Section 4302.1 of the act, added December 17, 1990 (P.L.715, No.178), is amended to read:

Section 4302.1. Limited Vested Benefit.--(a) The ordinance **establishing a police pension fund** may provide for a limited vested benefit if such would conform to section 305 of the act of December 18, 1984 (P.L.1005, No.205), known as the "Municipal Pension Plan Funding Standard and Recovery Act."

**(b)** Under [the provisions of the benefit, should] **a limited vested benefit,** a member of the police pension fund, [before completing] **who has not completed** the minimum [age and minimum] period of continuous service [requirements but after being] **requirement and satisfied any applicable minimum age requirement, but who has** completed twelve years of full-time service, [the member] shall be entitled to vest [his or her] **the member's** retirement benefits subject to **each of** the following conditions:

(1) [the] **The** member must file with the management board of the police pension fund a written notice of [his or her] **the member's** intention to vest[;].

(2) [the] **The** member must include in the notice, the date the member intends to terminate [his or her] **the member's** service as a full-time police officer[;].

(3) [the] **The** termination date shall be at least thirty days later than the date of notice to vest[;].

(4) [the] **The** member must be in good standing with the police department on the date of notice to vest[; and].

(5) [the] **The** board shall indicate on the notice to vest the rate of the monthly pay of the member as of the date of [said] **the** notice to vest or the highest average annual salary which the member received during any five years of service preceding said date, whichever is the higher.

[(b)] **(c)** Upon reaching the date which would have been the member's retirement date had the member continued [his or her] **the member's** full-time employment with the police department, the member shall notify the board, in writing, that the member desires to collect [his or her] **the member's** pension. The amount of retirement benefits the member is entitled to receive under this section shall be computed as follows:

(1) [the] **The** initial determination of the member's base retirement benefits shall be computed on the salary indicated on the notice to vest[; and].

(2) [the] **The** portion of the base retirement benefits due the member shall be determined by applying to the base amount the percentage that [his or her] **the member's** years of service actually rendered bears to the years of service which would have been rendered had the member continued to be employed by the department until [his or her] **the member's** minimum retirement date.

Section 379.  Section 4303 of the act, amended January 18, 1952 (1951 P.L.2105, No.596), October 22, 1955 (P.L.723, No.207), November 25, 1970 (P.L.754, No.246), October 4, 1978 (P.L.950, No.188), December 17, 1990 (P.L.715, No.178), December 12, 1994 (P.L.1033, No.140) and June 19, 2002 (P.L.442, No.65), is amended to read:

Section 4303.  Allowances and Service Increments.--(a) Payments for allowances shall [not] **only** be a charge **on the police pension fund and shall not be a charge** on any other fund **under the control, or** in the treasury, of the city [or under its control save the police pension fund herein provided for].

**(b)**  The basis of the apportionment of the pension shall be determined by the rate of the monthly pay of the member at the date of injury, death, honorable discharge, vesting under section 4302.1 or retirement, or the highest average annual salary which the member received during any five years of service preceding injury, death, honorable discharge, vesting under section 4302.1

or retirement, whichever is the higher, and, except as to service increments provided for in subsection [(b) of this section] **(d)**, shall not in any case exceed in any year one-half the annual pay of [such] **the** member computed at [such] **the** monthly or average annual rate, whichever is the higher.

[(a.1)] **(c)** The provisions of subsection [(a)] **(b)** providing that the apportionment of the pension shall not in any case exceed in any year one-half the annual pay of [such] **the** member computed at [such] **the** monthly or average annual rate, whichever is the higher, shall not apply to a city of the third class whether operating under an optional charter adopted in accordance with the act of July 15, 1957 (P.L.901, No.399), known as the "Optional Third Class City Charter Law," or under a home rule charter adopted in accordance with 53 Pa.C.S. Pt. III Subpt. E (relating to home rule and optional plan government), which had in effect pension plans prior to the effective date of this subsection that provided pensions in an amount greater than fifty per centum of salary.

[(b)] **(d)** In addition to the retirement allowance which is authorized to be paid from the police pension fund by this act, and notwithstanding the limitations therein placed upon such retirement allowances and upon contributions, every contributor who shall become entitled to the retirement allowance shall also be entitled to the payment of a "service increment" in accordance with and subject to the conditions hereinafter set forth.

(1) Service increment shall be the sum obtained by computing the number of whole years after having served the minimum required by this act during which a contributor has been employed by [such] **the** city and paid out of the city treasury, including credit for military service as provided in section 4302, and multiplying the said number of years so computed by an amount equal to one-fortieth of the retirement allowance which has become payable to [such] **the** contributor in accordance with the provisions of this act. In computing the service increment, no employment after the contributor has reached the age of sixty-five years shall be included, and no service increment shall be paid in excess of one hundred dollars ($100.00) per month.

(2) Each contributor, from and after [the effective date of this amendment] **January 1, 1952,** shall pay into the retirement fund a monthly sum in addition to [his or her] **the contributor's** retirement contribution, which shall be equal to one-half of one per centum of [his or her] **the contributor's** salary[: Provided, That such], **provided, however, that the** payment shall not exceed the sum of one dollar ($1.00) per month[: And provided, That such], **and further provided that the** service increment contribution shall not be paid after a contributor has reached the age of sixty-five years.

(3) Persons who are contributors on [the effective date of this amendment] **January 1, 1952,** who have already reached the age of sixty-five years shall have [his or her] **the contributor's** service increment computed on the years of employment prior to the date of reaching [his or her] **the contributor's** sixty-fifth birthday.

(4) Service increment contributions shall be paid at the same time and in the same manner as retirement contributions, and may be withdrawn in full, without interest, by persons who leave the employment of [such] **the** city, subject to the same conditions by

which retirement contributions may be withdrawn, or by persons who
retire before becoming entitled to any service increment.
   (5)   All members of the police force who are now contributors
to the retirement fund and all those employed by the city after
[the effective date of this amendment] **January 1, 1952,** if
required to become contributors to the retirement fund, shall be
subject to the provisions of this act.
   (6)   After [the effective date of this clause] **June 19, 2002,** a
city may agree to make service increment payments in excess of one
hundred dollars ($100) per month as long as [such] **the** payments do
not exceed five hundred dollars ($500) per month, and, in
computing such service increments, no employment after the
contributor has reached the age of sixty-five years shall be
included[: Provided, That], **provided that** any agreement to provide
an increase in service increment payments shall include a
proportionate increase in the amount each contributor shall pay
into the retirement fund under clause (2), not to exceed five
dollars ($5) per month.
   [(c)] **(e)**   The spouse of a member of the police force or a
member who retires on pension who dies or if no spouse survives or
if such person survives and subsequently dies or remarries, then
the child or children under the age of eighteen years of a member
of the police force or a member who retires on pension who dies on
or after [the effective date of this amendment] **August 1, 1963,**
shall, during the lifetime of the surviving spouse, even if the
surviving spouse remarries, or until reaching the age of eighteen
years in the case of a child or children, be entitled to receive a
pension calculated at the rate of fifty per centum of the pension
the member was receiving or would have been receiving had [he] **the**
**member** been retired at the time of [his] **the member's** death and
may receive the pension the member was receiving or would have
been receiving had [he] **the member** been retired at the time of
[his] **the member's** death.
   [(d)] **(f)**   Any police officer who has less than ten years of
service and who dies or is totally disabled due to injuries or
mental incapacities not in line of duty and is unable to perform
the duties of a police officer[,] may be entitled to a pension of
twenty-five per centum of [his] **the police officer's** annual
compensation. For death or injuries received after ten years of
service the compensation may be fifty per centum of [his] **the**
**police officer's** annual compensation.
   **(g)**   The disability pension may be payable to the police
officer during [his] **the police officer's** lifetime and if [he
shall die] **the police officer dies,** the pension payment that [he]
**the police officer** was receiving may be continued to be paid to
[his] **the police officer's** spouse if [such person] **the spouse**
survives or if [such person] **the spouse** subsequently dies or
remarries, then the child or children under the age of eighteen
years of the police officer.
   Section 380.   Section 4303.1 of the act, amended June 30, 1969
(P.L.98, No.36), is amended to read:
   Section 4303.1.   Increase of Allowances After Retirement.--**(a)**
 Any city may, at any time, at its discretion, upon the
recommendation of the persons having custody and management of the
police pension fund, increase the allowances of persons receiving
allowances of any kind from the police pension fund by reason of
and after the termination of the services of any member of said

fund. [Such increases]

(b) **Increases made pursuant to this section** shall be in conformity with a uniform scale, which may be based on the cost of living, but the total of any such allowances shall not at any time exceed one-half of the current salary being paid [patrolmen] **patrol persons** of the highest pay grade.

Section 381. Section 4303.2 of the act, added October 3, 1988 (P.L.735, No.104), is amended to read:

Section 4303.2. Total Disability.--(a) Notwithstanding any provision of this act, any police officer who becomes totally disabled due to injuries sustained in the line of duty shall be deemed to be fully vested in the police pension fund, regardless of the actual number of years of credited service, and shall be eligible for immediate retirement benefits.

(b) Claims under this section shall be decided by the governing body of the city. Proof of disability shall be by competent medical evidence provided by the claimant. The governing body of the city may at any time have the claimant examined by its own physician.

(c) Claims under this section may be brought as the regulations of the city council prescribe. Hearings and appeals shall be as provided in [Title 2 of the Pennsylvania Consolidated Statutes] **2 Pa.C.S.** (relating to administrative law and procedure).

(d) The pension fund shall be subrogated to the right of the claimant to the extent of any payments made under the act of June 2, 1915 (P.L.736, No.338), known as ["The Pennsylvania Workmen's Compensation Act,"] **the "Workers' Compensation Act,"** or the act of June 28, 1935 (P.L.477, No.193), referred to as the Enforcement Officer Disability Benefits Law.

(e) Definition.--As used in this section, "total disability" shall mean permanent mental or physical impairment which renders the police officer unable to perform [his] **the officer's** duties.

Section 382. Section 4304 of the act is amended to read:

Section 4304. Inalienable Rights in Fund.--Whenever any person shall become entitled to receive an allowance from the police pension fund, and shall have been admitted to participate therein, [he] **the person** shall not be deprived of [his] **the person's** right to an equal and proportionate participation therein [upon] **on** the basis upon which [he] **the person** first became entitled thereto.

Section 383. Section 4305 of the act, amended October 4, 1978 (P.L.950, No.188), is amended to read:

Section 4305. Payments to **Police** Pension [Funds by City.--There] **Fund by City.--Unless otherwise required by the act of December 18, 1984 (P.L.1005, No.205), known as the "Municipal Pension Plan Funding Standard and Recovery Act," or by any other provision of law, this section shall govern the payment to the police pension fund of moneys raised by taxes levied by the city:**

(1) **A city** shall [be paid] **pay** annually to the [organization or association, constituting and having in charge the distribution of police pension funds in every city,] **police pension fund** a sum of money sufficient to meet the requirements of and to maintain [such police pension] **the** fund which sum in no year shall be less than one-half of one per centum nor more than three per centum of all city taxes levied by the city, other than taxes levied to pay interest on or extinguish the debt of the city [or any part thereof].

**(2)**  Council may exceed the limitations imposed by this section
if an additional amount is deemed necessary to provide sufficient
funds for payments to surviving spouses of members retired on
pension or killed or who die in the service[: Provided, however,
That], **provided, however, that** the city may annually pay into
[said] **the** fund not less than one-half of one per centum of all
city taxes levied by the city, other than taxes levied to pay
interest on or extinguish the debt of the city [or any part
thereof].

Section 384.  Sections 4306 and 4307 of the act are amended to
read:

Section 4306.  [Designation of Organization to Manage Pension
Fund.--The organization, having in charge the distribution of
police pension funds, herein mentioned, shall consist only of such
as is by ordinance designated as the official and authorized
organization or association to hold, receive, and distribute the
funds of moneys for the purpose of pensioning the police officers
of the city.] **Management of Police Pension Fund.--Only the persons
designated, in accordance with section 4301(b)(2), shall be
authorized to make decisions to hold, receive and distribute the
moneys of the police pension fund.**

Section 4307.  Trusts for Benefit of Police Pension Fund.--Any
city may take, by gift, grant, devise or bequest, any money or
property, real, personal or mixed, in trust for the benefit of
[such] **the** pension fund, and the care, management, investment and
disposal of [such] **the** trust funds or property shall be vested in
such officer or officers of the city, for the time being, as the
council may designate, and [such] **the** care, management and
disposal shall likewise be directed by ordinance and the [said]
trust funds shall be governed thereby, subject to such directions,
not inconsistent therewith, as the donors of [such] **the** funds and
property may prescribe.

Section 385.  Section 4308 of the act, amended October 4, 1978
(P.L.950, No.188), is amended to read:

Section 4308.  Repayment Before Retirement.--[If for any cause
any] **(a)  If a contributing** member of the police [force
contributing to the] pension fund shall cease to be a member of
the **police** force before [he becomes] **becoming** entitled to a
pension, the total amount of the contributions paid into the
pension fund by [such] **the** member shall be refunded to [him] **the
member** in full, without interest.

**(b)**  If [any such] **a** member shall have returned to [him] **the
member** the amount contributed[,] and shall afterward again become
a member of the police force, [he] **the member** shall not be
entitled to the pension designated until twenty years after [his]
**the member's** reemployment, unless [he shall return] **the member
returns** to the pension fund the amount withdrawn, in which event
the period of twenty years shall be computed from the time the
member first became a member of the police force, excluding
therefrom any period of time during which the member was not
employed by the police force.

**(c)**  In the event of the death of a member of the police force
not in the line of service before the member becomes entitled to
[the pension aforesaid and such] **a pension and if the** member is
not survived by a spouse or family entitled to payments as
[hereinbefore] provided **in this subdivision,** the total amount of
contributions paid into the pension fund by the member shall be

paid over to [his] **the member's** estate.
    Section 386.  Section 4309 of the act, added December 17, 1990
(P.L.715, No.178), is reenacted to read:
    Section 4309.  Definitions.--As used in this subdivision, the
term "salary" is defined as the fixed amount of compensation paid
at regular, periodic intervals by the city to the member and from
which pension contributions have been deducted.
    Section 387.  Article XLIII subdivision (b) heading of the act
is amended to read:
                     (b)   [Firemen] **Firefighters**
    Section 388.  Section 4320 of the act, amended October 4, 1978
(P.L.950, No.188), is amended to read:
    Section 4320.   [Firemen's] **Firefighters'** Pension Fund;
Management; Annuity Contracts.--**(a)**  Except as hereinafter
provided, cities shall provide annuity contracts or establish, by
ordinance, a [firemen's] **firefighters'** pension fund[, to].
    **(b)**  **The annuity contracts or pension fund shall** be maintained
in part by an equal and proportionate monthly charge against each
member of the fire department, which shall not exceed annually
four per centum of the pay of such member, and an additional
amount not to exceed one per centum if deemed necessary by the
council to provide sufficient funds for payments to surviving
spouses of members retired on pension or killed or who die in the
service.
    **(c)**  In any case [where] **in which** there is an existing
organization or association for the benefit of fully paid
[firemen] **firefighters**, constituting and having in charge the
distribution of [firemen's] **firefighters'** pension funds, no
annuity contract shall be provided, nor shall any [firemen's]
**firefighters'** pension funds be established under the provisions of
this section unless and until the members of such organization or
association, by a two-thirds vote, elect to transfer said existing
fund into the pension fund required to be established by this
section.
    **(d)**  All pension funds established under the provisions of this
section shall be under the direction and control of a board of
managers [consisting of the mayor], **which shall consist of the
following:**
    **(1)**  **Ex officio members as follows:**
    **(i)**  **the mayor;**
    **(ii)**  the director of accounts and finance[,];
    **(iii)**  the director of the department having charge of the fire
department, or in cities where the mayor is also the director of
the department having charge[,] of the fire department, then the
director of public safety[,];
    **(iv)**  the city controller; and
    **(v)**  the chief of the bureau of fire[, ex officio, and two].
    **(2)**  **Two** members of the fire department to be chosen by the
members of the fire department.
    **(e)**  **If a city does not establish a department whose director
is named as an ex officio member of the board of managers, the
director of another department or such officers of the city as may
be designated by council shall be substituted on the board of
managers.**
    **(f)**  Of the first [managers] **members** so chosen by the members
of the fire department **to the board of managers,** one shall be
chosen for a term of two years and one for a term of four years.

Biennially thereafter, one [manager] **fire department member** shall
be chosen for a term of four years to take the place of the one
whose term expires. In case of vacancy among the managers chosen
by the fire department, a successor shall be chosen for the
unexpired term.

**(g)**  The fund shall be applied, under [such] regulations [as]
**prescribed by** the board of managers [shall prescribe], for the
benefit of such members of the fire department [as shall] **who**
receive honorable discharge therefrom by reason of service or age
or disability, surviving spouses of retired members and the
families of [such as may be] **members who are** killed or who die in
the service. All [such] pensions [as shall be allowed] to those
who are retired by reason of [the disabilities or of] **disability
or** service or age shall be in conformity with a uniform scale,
together with service increments as hereinafter provided. Benefits
[allowed] from [such] **the** fund to families of [such as] **members
who** are killed or who die in service shall take into consideration
the member's surviving spouse and [his] **the member's** minor
children under eighteen years of age, if any survive.

Section 389.  Section 4320.1 of the act, added June 16, 1993
(P.L.97, No.21), is amended to read:

Section 4320.1.  Limited Vested Benefit for Firefighters.--(a)
 The ordinance **establishing a firefighters' pension fund** may
provide for a limited vested benefit if [such] **it** would conform to
section 305 of the act of December 18, 1984 (P.L.1005, No.205),
known as the "Municipal Pension Plan Funding Standard and Recovery
Act."

**(a.1)**  Under [the provisions of the] **a limited vested** benefit,
[should] **if** a member of the firefighters' pension fund [before
completing the minimum age and] **has not completed the** minimum
period of continuous service [requirements but after having] **and
any applicable minimum age requirement but has** completed twelve
years of full-time service, **and if,** for any reason, **shall** cease to
be employed as a full-time firefighter, the member shall be
entitled to vest [his or her] **the member's** retirement benefits
subject to the following conditions:

(1)  [the] **The** member must file with the management board of
the firefighters' pension fund a written notice of [his or her]
**the member's** intention to vest[;].

(2)  [the] **The** member must include in the notice the date the
member intends to terminate [his or her] service as a full-time
firefighter[;].

(3)  [the] **The** termination date shall be at least thirty days
later than the date of notice to vest[;].

(4)  [the] **The** member must be in good standing with the fire
department on the date of notice to vest[; and].

(5)  [the] **The** board shall indicate on the notice to vest the
rate of the monthly pay of the member as of the date of the notice
to vest or the highest average annual salary which the member
received during any five years of service preceding the date,
whichever is the higher.

(b)  Upon reaching the date which would have been the member's
retirement date had the member continued [his or her] full-time
employment with the fire department, the member shall notify the
board in writing that the member desires to collect [his or her]
**the member's** pension. The amount of retirement benefits the member
is entitled to receive under this section shall be computed as

follows:
    (1)  [the] **The** initial determination of the member's base retirement benefits shall be computed on the salary indicated on the notice to vest[; and].
    (2)  [the] **The** portion of the base retirement benefits due the member shall be determined by applying to the base amount the percentage that [his or her] **the member's** years of service actually rendered bears to the years of service which would have been rendered had the member continued to be employed by the department until [his or her] **the member's** minimum retirement date.
    Section 390.  Section 4321 of the act, amended July 1, 1992 (P.L.347, No.74), is amended to read:
    Section 4321.  Retirement; Final Discharge.--[Such regulations shall prescribe a] **(a)  With regard to continuous service and minimum age requirements, the ordinance establishing or regulations governing the firefighters' pension fund shall prescribe as follows:**
    **(1)  A** minimum period of continuous service[,] **of** not less than twenty years [and, when].
    **(2)  If** any minimum age is prescribed, a minimum age of fifty years[, after which members of the department may retire on pension from active duty, and such members as are retired].
    **(b)  Retired members, if not unfit by reason of age, disability or otherwise** shall be subject to service, from time to time, as a [firemen's] **firefighters'** reserve in cases of emergency [until unfitted for such service, when they may be finally discharged by reason of age or disability], **under terms and conditions as my be established by council.**
    **(c)**  With the approval of council, all members of the [firemen's] **firefighters'** pension fund who are contributors and who served in the armed forces of the United States subsequent to September 1, 1940, and who were not members of the [firemen's] **firefighters'** pension fund prior to such military service[,] shall be entitled to have full credit for each year or fraction thereof, not to exceed five years of such service upon their payment to the [firemen's] **firefighters'** pension fund of an amount equal to that which they would have paid had they been members during the period for which they desire credit, and their payment to such fund of an additional amount as the equivalent of the contributions of the city plus any interest the city would have been required to pay on the contributions on account of such military service. Upon the death of a member who retires on pension or is killed in the service on or after January 1, 1960, or who dies in the service on or after January 1, 1968, payments as hereinafter provided shall be made to the member's surviving spouse during the life of the spouse.
    Section 391.  Section 4322 of the act, amended October 4, 1978 (P.L.950, No.188), June 16, 1993 (P.L.97, No.21) and June 19, 2002 (P.L.442, No.65), is amended to read:
    Section 4322.  Pensions and Service Increments.--(a)  **The following apply:**
    **(1)**  Payments of pensions shall [not] **only** be a charge on [any fund in the] **the firefighters' pension fund and shall not be a charge on any other fund under the control, or in the** treasury, of the city [or under its control save the firemen's pension fund herein provided for].

**(2)** The basis of the pension of a member shall be determined by the monthly salary of the member at the date of vesting under section 4320.1 or retirement, or the highest average annual salary which [he] **the member** received during any five years of service preceding retirement, whichever is the higher, whether for disability, or by reason of age or service, and except as to service increments provided for in subsection (b) of this section, shall be one-half the annual salary of [such] **the** member at the time of vesting under section 4320.1 or retirement computed at [such] **the** monthly or average annual rate, whichever is the higher.

**(3)** In the case of the payment of pensions to members for permanent injury incurred in service, and to families of members killed or who die in service, the amount and commencement of the payment of pensions shall be fixed by regulations of the board. [Such] **These** regulations shall not take into consideration the amount and duration of [workmen's] **workers'** compensation allowed by law. Payments to surviving spouses of members retired on pension or killed in the service on or after January 1, 1960, or who die in the service on or after January 1, 1968, shall be the amount payable to the member or which should have been payable had [he] **the member** been retired at the time of [his] **the member's** death.

(a.1) The provisions of subsection (a) providing that the basis of the pension shall be one-half the annual salary of [such] **the** member at the time of vesting under section 4320.1 or retirement computed at [such] **the** monthly or average annual rate, whichever is the higher, shall not apply to a city of the third class whether operating under an optional charter adopted in accordance with the act of July 15, 1957 (P.L.901, No.399), known as the "Optional Third Class City Charter Law," or under a home rule charter adopted in accordance with 53 Pa.C.S. Pt. III Subpt. E (relating to home rule and optional plan government), which had in effect pension plans prior to the effective date of this subsection that provided pensions in an amount greater than fifty per centum of salary.

(b) In addition to the pension which is authorized to be paid from the [firemen's] **firefighters'** pension fund by this act and notwithstanding the limitations therein placed upon such pensions and upon contributions, every contributor who shall become entitled to the pension shall also be entitled to the payment of a "service increment" in accordance with and subject to the conditions hereinafter set forth.

(1) Service increment shall be the sum obtained by computing the number of whole years after having served the minimum required by this act during which a contributor has been employed by [such] **the** city and paid out of the city treasury, including credit for military service as provided in section 4321, and multiplying the said number of years so computed by an amount equal to one-fortieth of the retirement allowance which has become payable to such contributor in accordance with the provisions of this act. In computing the service increment, no employment after the contributor has reached the age of sixty-five years shall be included, and no service increment shall be paid in excess of one hundred dollars ($100) per month.

(2) Each contributor, from and after [the effective date of this amendment] **September 18, 1968,** shall pay into the pension

fund a monthly sum in addition to [his] **the contributor's** pension
contribution, which shall not exceed the sum of one dollar ($1)
per month[: And provided, That such]**, provided that the** service
increment contribution shall not be paid after a contributor has
reached the age of sixty-five years.

(3)  Any person who is a member of the department on [the
effective date of this amendment] **September 18, 1968,** who has
already reached the age of sixty-five years shall have [his] **the
person's** service increment computed on the years of employment
prior to the date of reaching [his] **the person's** sixty-fifth
birthday.

(4)  Service increment contributions shall be paid at the same
time and in the same manner as pensions, and may be withdrawn in
full, without interest, by persons who leave the employment of
[such] **the** city, subject to the same conditions by which
retirement contributions may be withdrawn, or by persons who
retire before becoming entitled to any service increment.

(5)  All members of the fire department who are now
contributors to the pension fund and all those employed by the
city after [the effective date of this amendment] **September 18,
1968,** if required to become contributors to the pension fund,
shall be subject to the provisions of this act.

(6)  After the effective date of this clause, a city may agree
to make service increment payments in excess of one hundred
dollars ($100) per month as long as such payments do not exceed
five hundred dollars ($500) per month, and, in computing such
service increments, no employment after the contributor has
reached the age of sixty-five years shall be included[: Provided,
That]**, provided that** any agreement to provide an increase in
service increment payments shall include a proportionate increase
in the amount each contributor shall pay into the retirement fund
under clause (2), not to exceed five dollars ($5) per month.

Section 392.  Section 4322.1 of the act, amended June 30, 1969
(P.L.98, No.36), is amended to read:

Section 4322.1.  Increase of Allowances After Retirement.--**(a)**
Any city may, at any time, at its discretion, upon the
recommendation of the persons having custody and management of the
[firemen's] **firefighters'** pension fund, increase the allowances of
persons receiving allowances of any kind from the fund by reason
of and after the termination of the services of any member of the
fund.

[Such increases] **(b)  Increases made pursuant to this section**
shall be in conformity with a uniform scale, which may be based on
the cost of living, but the total of any such allowances shall not
at any time exceed one-half of the current salary being paid
[firemen] **firefighters** of the highest pay grade.

Section 393.  Section 4323 of the act, amended August 14, 1959
(P.L.709, No.246), is amended to read:

Section 4323.  Causes for Forfeiture of Rights in Fund; Other
Employments.--**(a)**  Whenever any person shall become entitled to
receive a pension from the [firemen's] **firefighters'** pension fund,
and shall have been admitted to participate therein, [he] **the
person** shall not thereafter be deprived of [his] **the person's**
right to participation therein [upon] **on** the basis upon which [he]
**the person** first became entitled thereto, [except for one or more
of the following causes, that is to say:

Conviction of a felony or misdemeanor, becoming an habitual

drunkard, or failing to comply with some general regulation
relating to the management of said fund which may be made by the
managers, and which may provide that a failure to comply therewith
shall terminate the right to participate in the pension fund.]
**unless otherwise required by the act of July 8, 1978 (P.L.752,
No.140), known as the "Public Employee Pension Forfeiture Act."**
    **(b)**  Any termination of a pension shall be only after [such]
due notice and hearing as shall be prescribed by regulation of the
managers.
    Section 394.  Section 4324 of the act, amended October 4, 1978
(P.L.950, No.188), is amended to read:
    Section 4324.  Payments to [Firemen's] **Firefighters'** Pension
[Funds] **Fund** by City.--[There] **Unless otherwise required by the
act of December 18, 1984 (P.L.1005, No.205), known as the
"Municipal Pension Plan Funding Standard and Recovery Act," or by
any other provision of law, this section shall govern the payment
to the firefighters' pension fund of money raised by taxes levied
by the city:**
    **(1)**  **A city** shall [be paid] **pay** to the [firemen's]
**firefighters'** pension [funds by every city] **fund** annually [the] **a**
sum of money not less than one-half of one per centum nor more
than three per centum of all city taxes levied by the city, other
than taxes levied to pay interest on or extinguish the debt of the
city [or any part thereof].
    **(2)**  Council may exceed the limitations imposed by this section
if an additional amount is deemed necessary to provide sufficient
funds for payments to surviving spouses of members retired on
pension or killed or who die in the service[: Provided, however,
That]**, provided, however, that** the city shall annually pay into
said fund not less than one-half of one per centum of all city
taxes levied by the city, other than taxes levied to pay interest
on or extinguish the debt of the city [or any part thereof].
    Section 395.  Sections 4325 and 4326 of the act are amended to
read:
    Section 4325.  [Transfer of Funds] **Transfers** from Other Pension
Funds.--**(a)**  In any city wherein the members of the fire
department are members of a pension fund not established solely
for the purpose of pensioning members of the fire department,
there shall be transferred from such other pension fund into the
[firemen's] **firefighters'** pension fund required to be established
by this act, the moneys contributed thereto by members of the fire
department who have not been retired, and a just and equitable
proportion of the moneys contributed by the city to such other
pension fund for the future retirement of members of the fire
department. [Such] **The** transfers may be made by the transfer of
securities. The amounts to be transferred shall be amicably
adjusted by the managers of the [firemen's] **firefighters'** pension
fund and the pension board having the charge of such other pension
fund. In case of disagreement as to the amount [so] to be
transferred, the disagreement shall be resolved by the city
council, whose action thereon shall be final.
    **(b)**  Nothing contained in this section shall be construed to
relieve any existing pension fund of its liability to continue the
payment of pensions to retired members of the fire department in
accordance with the laws and regulations under which such members
were retired.
    Section 4326.  Trusts for Benefit of [Firemen's] **Firefighters'**

Pension Fund.--Any [such] city may take, by gift, grant, devise or bequest, any money or property, real, personal or mixed, in trust for the benefit of [such] **the** pension fund[, and the]. **The** care, management, investment and disposal of [such] **the** trust funds or property shall be vested in [such] **the** officer or officers of [such] **the** city, for the time being, as the [said] city may designate[, and such]. **The** care, management and disposal shall likewise be directed by ordinance and the [said] trust funds shall be governed thereby, subject to [such] directions, not inconsistent therewith, as the donors of [such] **the** funds and property may prescribe.

Section 396.  Section 4327 of the act, amended July 20, 1968 (P.L.434, No.204), is amended to read:

Section 4327.  Repayment Before Retirement.--**(a)**  If [for any cause any] **a contributing** member of the [fire department contributing to the] **firefighters'** pension fund shall cease to be a member of the fire department before [he] **the member** becomes entitled to a pension, the total amount of the contributions paid into the pension fund by [such] **the** member shall be refunded [to him] in full without interest.

**(b)**  If [any such] **a** member shall have returned to [him] **the member** the amount contributed, and shall afterward again become a member of the fire department, [he] **the member** shall not be entitled to the pension designated until twenty years after [his] **the member's** reemployment, unless [he shall return] **the member returns** to the pension fund the amount withdrawn, in which event the period of twenty years shall be computed from the time the member first became a member of the fire department, excluding therefrom any period of time during which the member was not employed by the fire department.

**(c)**  In the event of the death of a member of the fire department not in the line of service before the member becomes entitled to [the] **a** pension [aforesaid] and [such] **if the** member [is not survived by a widow] **has no surviving spouse** or family entitled to payments as [hereinbefore] provided **in this subdivision**, the total amount of contributions paid into the pension fund by the member shall be paid over to [his] **the member's** estate.

Section 397.  Section 4328 of the act, added June 16, 1993 (P.L.97, No.21), is reenacted to read:

Section 4328.  Definitions.--As used in this subdivision, the term "salary" is defined as the fixed amount of compensation paid at regular, periodic intervals by the city to the member and from which pension contributions have been deducted.

Section 398.  Article XLIII subdivision (c) heading of the act, amended August 17, 1951 (P.L.1251, No.292), is amended to read:

(c)  Pension Funds for Employes Other Than [Policemen] **Police Officers** and City-Paid [Firemen] **Firefighters**

Section 399.  Section 4340 of the act, amended October 4, 1978 (P.L.950, No.188), is amended to read:

Section 4340.  Pension Funds for Employes other than Police or City-Paid [Firemen] **Firefighters**.--**(a)**  Cities may create a pension fund for the pensioning of employes [of said cities] who are not members of the police force or city-paid fire department [thereof], surviving spouses of retired members if council so elects and the families of [such] **employes** as may be injured or killed in the service, in the manner, under the conditions and

subject to the qualifications [following] **set forth in this subdivision.**

**(b)**  As used in this subdivision "employes" includes officers and officials of the city, whether elected or appointed.

Section 400.  Section 4341 of the act, amended June 21, 1984 (P.L.428, No.87), is amended to read:

Section 4341.  Pension Board; Duties.--**(a)**  In any city which creates [such] **a** pension fund **in accordance with this subdivision**, there shall be created a board to be known as the pension board, consisting of the mayor, the city controller, the superintendent of finance, two employes to be chosen by the employes contributing to the pension fund and, if members of council participate in the pension fund and are members of the fund, a member of council[,] chosen by council.

**(b)**  It shall be the duty of [said] **the** board to register all persons employed by the [said] city, and to administer the collections and distribution of the **pension** fund [herein provided for], and make such reasonable rules [in the premises] as [such] **the** board may deem necessary [to carry into effect the provisions of this act].

Section 401.  Section 4342 of the act is amended to read:

Section 4342.  Retirement Age.--[Every person, now or hereafter employed by any] **In a** city which has created [such] **a** pension fund and pension board [as hereinbefore provided,] **in accordance with this subdivision, an employe** of the age of sixty years, and upwards, who shall have been [so] employed for a period of twenty years or more, shall, upon application to the board of pensions [herein created,] be retired from service and shall, **subject to qualifications provided in this subdivision** during the remainder of [his or her] **the employe's** life, receive the pension or compensation fixed by this [act, subject to such qualifications as are herein contained] **subdivision.**

Section 402.  Section 4343 of the act, amended October 4, 1978 (P.L.950, No.188), is amended to read:

Section 4343.  Retirement Allowance; Proof of Disability; Joint and Single Coverage Members Defined.--**(a)**  During the lifetime of any person in the employment of any city creating [such] **the** pension fund and pension board [as hereinbefore provided, he or she] **in accordance with this subdivision, the person** shall be entitled to receive as a pension annually, from the fund set aside for the purpose, fifty per centum of the amount which would constitute the average annual salary or wages which [he or she] **the person** received during the last or any five years of [his or her] **the person's** employment by the [said] city, whichever is the higher, [said] **the** pension to be paid in semi-monthly payments. Should any persons so employed, after twenty years of service, be dismissed, voluntarily retired, or be in any manner deprived of [his or her] **the person's** position or employment, before attaining the age of sixty years, upon continuing a monthly payment to the fund equal to the last amount due and paid monthly while in active service, [said] **the** person shall be entitled to the pension above-mentioned, notwithstanding [he or she] **that the person** has not attained the age of sixty years at the time of [his or her] **the person's** separation from the service of [such] **the** city, but [said] **the** pension shall not commence until [he or she] **the person** has attained the age of sixty years. Should any employe, however, become totally and permanently disabled, after ten years of

service and before attaining the age of sixty years, [he or she] **the person** shall be entitled to the [said] pension. Proof of total and permanent disability shall consist of the sworn statement of three practicing physicians, designated by the board, that the employe is in a permanent condition of health which would permanently disable [him or her] **the person** from performing the duties of [his or her] **the person's** position or office.

    **(b)**  For the purpose of this article on pensions, the following words shall have the meaning herein assigned to them:

    **(1)**  "Joint Coverage Member" of the retirement system shall mean a city employe who shall have become a member of the retirement system subsequent to the last date permitted by [such] **the** city for statement or preference concerning social security coverage, or who, having become a member on or before [such] **that** date, shall have filed with the Retirement Board a written statement that [he or she] **the member** elects social security coverage under an agreement with the [Federal] Secretary of Health[, Education and Welfare] **and Human Services** entered into by the Commonwealth.

    **(2)**  "Single Coverage Member" of the retirement system shall mean a city employe who shall have become a member of the retirement system on or before the last date permitted by [such] **the** city for statement of preference concerning social security coverage and who either shall have filed with the Retirement Board a written statement that [he or she] **the member** does not elect social security coverage under any agreement with the [Federal] Secretary of Health[, Education and Welfare] **and Human Services** entered into by the Commonwealth, or shall not have filed with the Retirement Board any written statement.

    **(c)**  Where a city has entered into an agreement with the Commonwealth to place certain employes under the Federal Social Security Act, the pension to be paid joint coverage members according to the provisions of this section payable after the age and upon that portion of annual compensation on which social security benefits are payable, shall be reduced by an amount equal to forty (40) per centum of the primary insurance amount of social security paid or payable to the member. [Such] **The** reduction shall be subject to the following provisions:

    (1)  Upon attainment of the age at which social security benefits are payable by a beneficiary receiving a pension or upon retirement of a contributor after attaining that age, [his] **the person's** eligibility to the old age insurance benefit and the primary insurance amount of social security upon which the reduction in the pension shall be based[,] shall be computed by the board in the manner specified in the Federal Social Security Act, except that, in determining such eligibility and such amount, only wages or compensation for services performed in the employ of the city shall be included.

    (2)  The reduction shall not apply to a pension for total and permanent disability payable under this section.

    (3)  Whenever the amount of the reduction from the pension shall have been once determined, it shall remain fixed for the duration of the pension, except that any decrease in the primary insurance amount under the Social Security Act shall result in a corresponding decrease in the amount of the reduction from the pension.

    (4)  The total sum, including social security benefits, to be

received upon retirement by an employe who is a member of the
system at the time of the agreement shall not be less than the
allowance that would be paid by the retirement system in the
absence of the agreement.
   **(d)**  If council elects, by ordinance, to make such payments,
the surviving spouse of an employe who retired on pension or is
killed in the service on or after January 1, 1960, shall, during
[his] **the surviving spouse's** lifetime or so long as [he] **the
surviving spouse** does not remarry, be entitled to receive a
pension calculated at the rate of fifty per centum of the pension
the member was receiving or would have been entitled to had [he]
**the member** been retired at the time of [his] **the member's** death.
   Section 403.  Section 4343.1 of the act, amended June 11, 1968
(P.L.160, No.90), is amended to read:
   Section 4343.1.  Retirement Allowances; Full Coverage;
Payments.--**(a)**  Where a city has entered into an agreement with
the Commonwealth to place certain employes under the Federal
Social Security Act, the pension board may authorize any joint
coverage member of the retirement system to elect according to the
provisions of this section to receive compensation without the
reduction provided for in section 4343, provided [he] **the member**
shall make a lump-sum payment to the pension board, or installment
payments as may be approved by the board, equal to the difference
between the amount of the accumulated fund to [his] **the member's**
credit in the fund as of the last date for which salary or wages
was paid and the amount which would have been to [his] **the
member's** credit in [such] **the** fund if contributions had been made
on that portion of [his] **the member's** salary or wages on which
social security allowances are payable, at the same rate as made
on that portion of [his] **the member's** salary or wages in excess
thereof, from the time that [such] **the** salary or wages became
subject to social security coverage. Such election shall be made,
in writing, in the form prescribed by the pension board, and shall
be accompanied by the lump-sum payment or an agreement as to
installment payments herein required.
   **(b)**  The pension board may authorize any such member to make
the election herein provided at any time, and, if made prior to
retirement, [such] **the** member shall, in addition to any lump-sum
or installment payments required, pay to the board contributions
on [his] **the member's** entire salary or wages thereafter received
at the rate provided in this act for monthly salary or wages in
excess of that on which social security allowances are payable.
   Section 404.  Section 4343.2 of the act, added July 11, 1996
(P.L.647, No.109), is amended to read:
   Section 4343.2.  Limited Vested Benefit.--(a)  The ordinance
**creating a pension fund in accordance with this subdivision** may
provide for a limited vested benefit if [such] **it** would conform to
section 305 of the act of December 18, 1984 (P.L.1005, No.205),
known as the "Municipal Pension Plan Funding Standard and Recovery
Act."
   **(a.1)**  Under [the provisions of the benefit, should a member of
the pension fund terminate] **a limited vested benefit, if a member
of the pension fund terminates** employment before reaching the date
which would have been the member's earliest retirement date had
the member continued employment by meeting the minimum age and
minimum period of continuous service requirements but after having
completed twelve years of full-time service, the member shall be

entitled to vest [his or her] **the member's** retirement benefits
subject to the following conditions:
(1) [the] **The** member must file with the management board of
the pension fund a written notice of [his or her] **the member's**
intention to vest[;].
(2) [the] **The** member must include in the notice the date the
member intends to terminate [his or her] **the member's** service as
an employe[;].
(3) [the] **The** termination date shall be at least thirty days
later than the date of notice to vest[;].
(4) [the] **The** member must be in good standing with the city on
the date of notice to vest[; and].
(5) [the] **The** board shall indicate on the notice to vest the
rate of monthly pay of the member as of the date of [said] **the**
notice to vest or the highest average annual salary which the
member received during any five years of service preceding [said]
**the** date, whichever is the higher.
(b) Upon reaching the date which would have been the member's
earliest retirement date had the member continued [his or her] **the**
**member's** employment with the city, the member shall notify the
board, in writing, that the member desires to collect [his or her]
**the member's** pension. The amount of retirement benefits the member
is entitled to receive under this section shall be computed as
follows:
(1) [the] **The** initial determination of the member's base
retirement benefits shall be computed on the salary indicated on
the notice to vest[; and].
(2) [the] **The** portion of the base retirement benefits due the
member shall be determined by applying to the base amount the
percentage that [his or her] **the member's** years of service
actually rendered bears to the years of service which would have
been rendered had the member continued to be employed by the city
until[ his or her] **the member's** earliest retirement date.
Section 405. Section 4344 of the act, amended October 4, 1978
(P.L.950, No.188), is amended to read:
Section 4344. Amount of Payments into Fund; Repayment before
Retirement.--The employes of any city, creating [such] **a** pension
fund and pension board **in accordance with this subdivision**, shall
pay into the board of pensions monthly an amount equal to two per
centum of their monthly salaries or wages, and, if council elects,
by ordinance, to make [such] payments, an additional amount not to
exceed one per centum if deemed necessary by council to provide
sufficient funds for payments to the surviving spouses of members
who were retired on pension or killed in the service, which shall
be applied to the purposes of the fund. Payment of the monthly
amount or contribution herein mentioned shall cease and be
discontinued at the time the beneficiary receives the pension
herein provided. If for any cause any employe contributing to the
pension fund shall cease to be an employe of the city before the
[said] employe becomes entitled to a pension, the total amount of
the contributions paid into the pension fund by [such] **the** employe
shall be refunded to [him or her] **the employe** in full, without
interest. If any [such] employe shall have returned to [him or
her] **the employe** the amount contributed as aforesaid, and shall
afterward reenter the employ of the city, [said] **the** employe shall
not be entitled to the pension designated until twenty years after
[said] reemployment, unless [he or she] **the employe** shall return

to the pension fund the amount withdrawn, in which event that period of twenty years shall be computed from the time [said] **the** employe first enters the service of the city. In the event of the death of any [such] employe, before the [said] employe becomes entitled to the pension aforesaid, the [said] total amount of contributions paid into the pension fund by [said] **the** employe shall be paid over to the estate of [said] **the** deceased employe.

Section 406.  Section 4344.1 of the act, amended July 21, 1959 (P.L.553, No.169), is amended to read:

Section 4344.1.  Determination of Liability Upon Extension of Social Security.--**(a)**  Where a city has entered into an agreement with the Commonwealth to place its employes under the Federal Social Security Act, the pension board shall appoint an actuary[,] and may fix [his] **the employe's** compensation. The actuary shall determine the present value of the liability on account of pensions payable under the provisions of section 4343 [of this act] to employes who are members of the system on the effective date of the agreement[,] and shall offset the value of any assets in the pension fund to determine the unfunded liability. The city may make [such] **the** payments as it desires toward the unfunded liability until the accumulated reserve equals the present value of the liability. The actuary shall also determine the amount which shall be contributed, annually, into the fund on account of service of all new and original members subsequent to the effective date of the agreement.

**(b)**  Employes shall pay into the board of pensions, monthly, an amount equal to three and one-half per centum of that portion of monthly compensation on which social security allowances are payable and five per centum of any monthly compensation in excess of that on which social security allowances are payable. The remainder of the needed annual contribution for service subsequent to the date of the agreement, as determined by the actuary, shall become the obligation of the city, and shall be paid by it to the board of pensions by annual appropriations. The provisions of this section shall, in all applicable cases, supersede the provisions relating to contributions in section 4344 and section 4348 [of this act].

Section 407.  Section 4345 of the act is amended to read:

Section 4345.  Payments by Laborers Optional.--Any person holding a position in any [such] city as a laborer, at a per diem wage, shall not be compelled to pay or contribute toward the pension fund herein provided for, but shall have the option or choice of so doing and, in that event only, of becoming entitled to the pension provided by this act.

Section 408.  Section 4346 of the act, amended August 17, 1951 (P.L.1251, No.292), is amended to read:

Section 4346.  Heads of Departments to Certify List of Employes.--The head of every department and office employing persons entitled to receive a pension shall certify to the board of pensions all persons so employed and the amount of salary or wages which is paid to [said] employes, together with dismissals, resignations[,] or terminations of service and, from the records of their office or department, shall furnish [such] other relevant information as the board of pensions shall require. In the case of a volunteer [fireman] **firefighter**, "head of department or office" shall mean the president or secretary of the board of trustees of the volunteer fire company involved.

Section 409.  Section 4347 of the act is amended to read:
Section 4347.  Receipt, Investment and Payment of Funds.--It shall be the duty of the board of pensions to receive and retain and, when deemed advisable, to invest the funds payable in accordance with the provisions of this subdivision [of this article], and to pay over by warrant or check the amount due to [said] employes.
Section 410.  Sections 4348 and 4349 of the act, amended August 17, 1951 (P.L.1251, No.292), are amended to read:
Section 4348.  Appropriations and Contributions to Fund.--The council may annually set aside, apportion[,] and appropriate, out of all taxes and income of [such] **the** city, unto the board of pensions, a sum sufficient to maintain the pensions or compensations due hereunder on account of the city contributions for all employes except volunteer [firemen] **firefighters**. On account of volunteer [firemen] **firefighters** who become members of the pension fund, the board of trustees of the volunteer fire company employing and paying them shall annually contribute to the board of pensions a sum equal to the same percentage of its participating payroll as the amount contributed by the city for the same year bears to its participating payroll.
Section 4349.  Application.--**(a)**  The benefits conferred by this subdivision [of this article] shall apply to all persons employed in any capacity by, or holding positions in, or, in the case of a volunteer [fireman] **firefighter**, rendering services recognized and accepted by, the cities creating a pension fund and pension board in accordance with its provisions, but this subdivision shall not apply to employes of [such] departments, bureaus, or offices as are otherwise protected by pension authorized by this act.
**(b)**  Any volunteer [fireman] **firefighter** may become a member of [such] a pension fund, as of the date of [his] **the volunteer firefighter's** original employment or of the inception of the pension fund, whichever is later, upon [his] **the volunteer firefighter** making back contributions, and if the volunteer fire company or board of trustees thereof employing and paying [him] **the volunteer firefighter** agrees to contribute and contributes to the pension fund, from time to time, the sums hereinbefore required.
Section 411.  Sections 4350 and 4351 of the act are reenacted to read:
Section 4350.  Computation of Time of Service.--The time of service herein specified, namely, twenty years, shall be computed from the time of the first or original employments, said employment to consist of service to the city and need not be continuous.
Section 4351.  Funds Payable to be Free of Attachment.--The compensation or pension herein mentioned shall not be subject to attachment or execution, and shall be payable only to the beneficiary designated, and shall not be subject to assignment or transfer.
Section 412.  Section 4352 of the act, amended August 17, 1951 (P.L.1251, No.292), is amended to read:
Section 4352.  Definitions.--The term or phrase "employe," "employed," "employed by the city," or "in the employment of any city," as used in this subdivision, is meant to include all persons in the service of cities creating a pension fund and a

pension board in accordance with the provisions thereof, who are
not now otherwise protected by pensions authorized by this act,
and any volunteer [fireman] **firefighter** who becomes a member of
the pension fund.

"Volunteer [fireman] **firefighter**" shall mean a driver of
fire-fighting apparatus or ambulances, regularly employed and paid
by a volunteer fire company, rendering services recognized and
accepted by a city.

Section 413.  Section 4353 of the act, amended July 5, 2005
(P.L.70, No.28), is reenacted to read:

Section 4353.  Beneficiaries of Fund not to be Employed by
City.--No person or persons who shall have become a beneficiary
shall be employed by the said city in any capacity. Subject to the
provisions of section 4361, nothing herein shall be construed as
prohibiting a person or persons who shall have become a
beneficiary from serving in an elective city office.

Section 414.  Article XLIII subdivision (d) heading of the act,
added July 5, 2005 (P.L.70, No.28), is reenacted to read:

(d)  Beneficiaries Serving in Elective Office

Section 415.  Section 4361 of the act, added July 5, 2005
(P.L.70, No.28), is reenacted and amended to read:

Section 4361.  Right to a Pension if Salary Refused.--In any
city governed by the provisions of this act, the act of July 15,
1957 (P.L.901, No.399), known as the "Optional Third Class City
Charter Law," or 53 Pa.C.S. Pt. III Subpt. E (relating to home
rule and optional plan government), a beneficiary serving in an
elective city office shall not be prohibited from receiving a
pension for any month in which [he or she] **the beneficiary** does
not accept a salary from serving in the elective office.

Section 416.  Article XLIV heading of the act is reenacted to
read:

ARTICLE XLIV
CIVIL SERVICE

Section 417.  Section 4401 of the act is amended to read:

Section 4401.  Examinations Required of All Appointees.--No
person or persons may be appointed to any [position whatever in
the police department, or in the engineering department or
electrical department, except as otherwise provided by law, or in
the position of building inspector, or as health officers other
than registered physicians, or as sanitary policemen or inspectors
of the health department] **uniformed position in the police or fire
departments, excluding chiefs**, without having first passed all the
examinations hereinafter provided for[,] and **without** having been
appointed in the manner and according to the terms and provisions
and conditions of this article.

Section 418.  Section 4402 of the act, amended April 18, 1978
(P.L.37, No.19), is amended to read:

Section 4402.  Appointment of Examining [Boards] **Board.**--There
shall be [the following civil service boards in each city: (a)  A
board for] **a civil service board in each city that shall provide
for and oversee** the examination of applicants for appointment to
**and promotion to** any position in the police [department; (b) a
board for the examination of applicants for appointment as health
officers other than registered physicians, or as sanitary
policemen or inspectors of the health department; (c) a board for
the examination of applicants for appointment to any position in
the engineering or electrical departments, except as otherwise

provided for by law, or to the position of building inspectors.
   Each of said boards shall consist of three citizens, who shall
be elected] **or fire departments. The board shall consist of three
citizens who shall be appointed** by council for terms of four years
or until their successors are [elected and qualified] **appointed
and qualified except for the initial appointment of board members
as provided for in section 4403.** Any person who is a registered
elector of the city may be appointed to [one or more of said
boards] **the board.** No city officer, official or employe shall be
eligible for appointment to [any] **the** civil service board.
   Section 419.  The act is amended by adding a section to read:
   **Section 4402.1.  Existing Civil Service Positions.--All
nonuniformed employes in city positions that were subject to civil
service regulation immediately prior to the effective date of this
section shall continue to be subject to civil service regulation
otherwise provided in this article for uniformed employes with
regard to the nonuniformed positions.**
   Section 420.  Section 4403 of the act is amended to read:
   Section 4403.  Terms; Filling of Vacancies; Compensation;
Quorum.--[At the first election in newly created cities, council
shall elect to each of said boards] **In a city in which the civil
service board is first established, terms of members of the board
shall be staggered. Council shall initially appoint to the board**
one person to serve for two years, one person to serve for three
years, and one person to serve for four years. Upon the expiration
of the term of any member [of any of said boards, in any city, one
person shall be elected] **a successor shall be appointed** by the
city council to serve upon [said] **the** board for [the] **a** term of
four years. If any vacancies occur, they shall be filled by the
city council for the unexpired term. Each of [said] **the** members,
before entering upon the duties of [his] office, shall take and
subscribe to the oath of office prescribed by [this act] **53
Pa.C.S. § 1141 (relating to form of oaths of office)** and file the
same, duly certified by the officer administering it, with the
[controller of the city] **city administrator or, in cities without
a city administrator, the city clerk.** No salary or other
compensation shall be paid to any member of the [said boards]
**board.** Two members of the board shall constitute a quorum
necessary for the transaction of business of that board. [Said
boards] **The board** shall organize for the purpose of transacting
all business immediately after [their first appointment and, from
time to time,] **the first appointments and** thereafter as new
appointments to [such] **the** board are made. **After organizing, the
board shall elect one of its members as chairperson and one as
secretary.**
   Section 421.  The act is amended by adding sections to read:
   **Section 4403.1.  Alternate Board Members.--Council may appoint
no more than three qualified electors of the city to serve as
alternate members of the civil service board. The term of office
of the alternate members shall be four years. If, by reason of
absence or disqualification of a member, a quorum is not reached,
the chairperson shall designate as many alternate members of the
board to sit on the board as may be needed to provide a quorum.
When seated pursuant to this section, an alternate shall be
entitled to participate in all proceedings and discussions of the
board to the extent as provided by law for board members,
including specifically the right to cast a vote as a voting member**

during the proceedings, and shall have all the powers and duties set forth in this act and as otherwise provided by law. Any alternate member of the board shall continue to serve on the board in all proceedings involving the matter or case for which the alternate was initially designated until the board has made a final determination of the matter or case. Designation of an alternate pursuant to this section shall be made on a case-by-case basis in rotation according to declining seniority among all alternates. Alternates shall hold no other office in the city. Any alternate may participate in any proceeding or discussion of the board but shall not be entitled to vote as a member of the board unless designated as a voting alternate member pursuant to this section.

Section 4403.2.  Investigations and Subpoenas.--(a)  The board shall have the power to make investigations concerning all matters relating to the administration and enforcement of its rules and regulations. The chairperson shall be authorized to administer oaths and affirmations for witnesses testifying in matters before the board.

(b)  The board shall have the power to issue subpoenas over the signature of the chairperson or designee and to require the attendance of witnesses and the production of records and papers pertaining to matters before the board, including any background investigation conducted pursuant to any applicable rules and regulations.

Section 422.  Section 4404 of the act is amended to read:

Section 4404.  Rules and Regulations; Examinations.--[Each of said boards shall prepare and adopt such rules and regulations to cover the selection and appointment of all persons as hereinbefore provided, to be hereafter employed or appointed in said cities, as in the judgment of said boards shall be best adapted to securing the best service for the public. Such rules and regulations] (a) **The board shall have the power and its duty shall be to prepare and adopt rules and regulations, subject to approval by council, which, in the board's discretion, are best adapted to securing and maintaining the best service for the public for the selection, appointment and promotion of persons who are qualified to perform the work which is the subject of the civil service examination as provided in this article, and who are to be employed, appointed or promoted by the city. The rules and regulations adopted by the board** shall provide for ascertaining and determining, so far as possible, [the physical qualifications, habits, reputation, standing, experience and education of all applicants for such positions, respectively; and they] **the knowledge, skills, aptitude, mental and physical abilities, experience, education and character of all applicants as these criteria would reasonably apply to the respective positions; and the rules and regulations** shall provide for examinations upon any and all subjects deemed proper or necessary by [said boards] **the board** for the purpose of determining [their qualifications for the position sought and applied for] **the qualifications of applicants for the respective positions sought and for which application is made.**

(b)  The civil service board shall, in accordance with this act, adopt rules and regulations concerning the following matters that may include:

(1)  minutes of proceedings;

(2)  rules of procedure;

(3)   records of examinations;
(4)   annual report to council;
(5)   notice of the rules and regulations and any amendments or repeals to the rules and regulations;
(6)   application forms;
(7)   further provisions concerning the duties of the chairperson and secretary;
(8)   appointment of examiners; and
(9)   other administrative matters.

Section 423.   Section 4404.1 of the act, added October 19, 2010 (P.L.533, No.77), is amended to read:

Section 4404.1.   Physical and Psychological Medical Examinations.--(a)   [A] **The** board may require that an applicant conditionally appointed in accordance with section 4406 [of this act] undergo a physical or psychological medical examination as a condition of permanent appointment. Physical medical examinations, if required, shall be under the direction of a physician or other qualified medical professional. Psychological medical examinations, if required, shall be under the direction of a psychiatrist or psychologist.

(b)   A physician, other qualified medical professional, psychiatrist or psychologist shall be appointed by council and shall render an opinion as to whether the conditional appointee has a physical or mental condition which calls into question the individual's ability to perform all of the essential functions of the position for which the individual was conditionally appointed.

(c)   If the opinion rendered by the physician, other qualified medical professional, psychiatrist or psychologist calls into question the conditional appointee's ability to perform all essential functions of a position, the director of the department within which the position is to be filled shall meet with the conditional appointee for the purpose of having one or more interactive discussions on whether the conditional appointee can, with or without reasonable accommodation, perform all the essential functions of the position.

(d)   If, at the conclusion of the interactive discussion under subsection (c), the department director determines that the conditional appointee is not qualified, the department director shall give written notice to the conditional appointee and the board.

(e)   Nothing in this act shall be construed to authorize physical or psychological medical examinations prior to conditional appointment in accordance with section 4406 of this act.

(f)   As used in this section, the following definitions shall apply:

"Medical examination" shall mean any examination, procedure, inquiry or test designed to obtain information about medical history or a physical or mental condition which might disqualify an applicant if it would prevent the applicant from performing, with or without reasonable accommodation, all of the essential functions of the position.

"Physician" shall have the meaning given to it in 1 Pa.C.S. § 1991 (relating to definitions).

"Qualified medical professional" shall mean an individual, in collaboration with or under the supervision or direction of a physician, as may be required by law, who is licensed:

(1)  as a physician assistant pursuant to the act of December 20, 1985 (P.L.457, No.112), known as the "Medical Practice Act of 1985," or the act of October 5, 1978 (P.L.1109, No.261), known as the "Osteopathic Medical Practice Act"; or

(2)  as a certified registered nurse practitioner pursuant to the act of May 22, 1951 (P.L.317, No.69), known as "The Professional Nursing Law."

Section 424.  Section 4405 of the act, amended October 19, 2010 (P.L.533, No.77), is repealed:

[Section 4405.  Grading for Discharged Servicemen.--When any person who was engaged in the military service of the United States during any military engagement in which the United States participated, and has an honorable discharge therefrom, shall take any examination for appointment, the examination shall be marked or graded in the same manner as provided for all other examinations. When the examination of the discharged individual is completed and graded, if the grade is passing, the grading or percentage as the examination merits shall be increased by fifteen per centum, and the total mark or grade shall represent the final grade or classification of the discharged individual and shall determine the individual's order of standing on the eligibility list. For the purpose of this article:

(1)  "Military service" means the army, navy, marines, air force, coast guard, and any branch or unit thereof.

(2)  "Servicemen" means members of the military service, including women.

(3)  "Military engagement" includes land, naval and air engagements.]

Section 425.  The act is amended by adding a section to read:

**Section 4405.1.  Veterans' Preference.--In accordance with 51 Pa.C.S. Ch. 71 (relating to veterans' preference), the following shall apply to the appointment of a uniformed civil service position:**

**(1)  A veteran who meets the qualifications for and conditions of the position under uniform eligibility rules, which include successful passage of an examination, shall receive an additional ten points on the examination pursuant to 51 Pa.C.S. § 7103(a) (relating to additional points in grading civil service examinations).**

**(2)  If, after the additional ten points are granted, a veteran is on the list of three eligible applicants, the veteran shall receive a preference in hiring over nonveterans on that list.**

**(3)  The preference provided by this section shall constitute the only preference with regard to a uniformed civil service position to which a veteran is entitled under this act.**

Section 426.  Section 4406 of the act, amended October 19, 2010 (P.L.533, No.77), is amended to read:

Section 4406.  Selection of Appointee from Certified List of Applicants.--[The boards] **The following shall apply to civil service selection, conditional appointments and appointments and shall be incorporated by reference in the rules and regulations of the board:**

**(1)  The civil service board** shall make and keep, in numerical order, a list containing the names of all applicants for civil service positions in the city who [may] pass the required examinations, including any required physical fitness or agility examinations that are job-related and consistent with business

necessity. [Where]

**(2)  Physical fitness or agility examinations shall be conducted on a pass-fail basis.**

**(3)  Written and oral examinations used to establish an eligibility list shall offer the opportunity to achieve one hundred points.**

**(4)  If both written and oral examination methods are used in conjunction with each other, the board, prior to initiating testing, shall establish what constitutes a passing score on each portion of the examination. If only a written examination method is used, the board shall establish the passing score before the examination is conducted.**

**(5)  When** more than one person takes examinations for any position at the same time, the names of all those successfully passing the examination shall be entered upon the eligibility list in the order of their respective [percentages] **point totals,** the highest coming first.

**(6)**  The board shall furnish to council a certified copy of all lists so prepared and kept. [Wherever any vacancy shall occur in any civil service position in the city, the city council] **Such lists shall be maintained for a period of two years or until a new list is certified to council, whichever occurs first and are public records.**

**(7)  Whenever council shall determine an initial appointment is to be made to a civil service position in the city, the director of the department in which the appointment is to be made** shall make written application to the [president of the proper] **chair of the** board, who shall forthwith certify to the city council, in writing, the three names on the eligibility list **of applicants** for the position having the highest [percentage, but if there be] **number of points, unless there are** less than three eligible names on the list, **in which event** the board shall certify the names. The director of the department in which the appointment is to be made shall nominate to the city council a person from the eligibility list submitted to fill the vacancy.

**(8)**  If the city council approves the nomination, the person nominated shall be conditionally appointed by council to fill the vacancy, and shall be assigned for service in the department, subject to any **required** physical or psychological medical examinations that may be required by the [appropriate examining] board as a condition of permanent appointment in accordance with section 4404.1 [of this act].

**(9)**  If the council does not approve the nomination, or if the appointee is determined by the medical examination process to be unqualified, then the director of the department in which the appointment is to be made shall submit another nomination for the position from the remaining names, if any[, and if]. **If** the nomination is not approved by the council, or if the appointee is determined by the medical examination process to be unqualified, the director shall submit the third name, if any.

**(10)**  The person whose nomination by the director is approved by the city council shall be appointed to fill the [position in the department or as building inspector] **civil service position under consideration.**

**(11)**  The name of the person so appointed shall be immediately stricken from the [eligibility] **certified** list of the board, and, **except as otherwise provided in this clause,** the names of the

[rejected] **nonappointed** persons shall immediately be restored to their proper place on the [eligibility list: Provided, however, That if] **certified list. If** the name of any applicant has been submitted to the council and been rejected three times or the [appointee] **council and the conditional applicant has not been appointed for three such times or the conditional applicant** has been determined by the medical examination process to be unqualified, then the name shall be stricken from the [eligibility] **certified** list.

(12)  Examinations for promotions for civil service positions in the city shall be pursuant to section 4406.1 [of this act].

(13)  As used in this section, the term "medical examination" shall have the meaning given it in section 4404.1 [of this act].

Section 427.  Section 4406.1 of the act, amended November 9, 2011 (P.L.408, No.99), is amended to read:

Section 4406.1.  Promotions.--(a)  The [civil service boards may recommend those in the employ of a department for promotion if the recommended] person recommended is competent for the higher position. If an examination is required, the] city council shall notify the [applicable] civil service board of a civil service vacancy in the city which is to be filled by promotion and shall request the certification of an eligibility list as provided in this article. The board shall certify for each vacancy the names of three persons on the eligibility list who have received the highest average in the last preceding promotional examination held within the period of two years preceding the date of the request for the eligibility list. If three names are not available, the board shall certify the names remaining on the list. The city council shall make an appointment from the names certified, based solely on the merits and fitness of the candidates, unless the city council makes objections to the board regarding one or more of the persons on the eligibility list. The city council shall have power to determine in each instance whether an increase in salary shall constitute a promotion.

(b)  Notwithstanding subsection (a), the mayor or other elected or appointed official of a city that has adopted one of the following shall retain the power to promote a candidate pursuant to that law:

(1)  An optional charter pursuant to the act of July 15, 1957 (P.L.901, No.399), known as the "Optional Third Class City Charter Law."

(2)  An optional plan pursuant to 53 Pa.C.S. Chs. 30 (relating to types of optional plans of government) and 31 (relating to general provisions common to optional plans).

(3)  Any other law authorizing or permitting the mayor or other elected or appointed official to promote a candidate.

(c)  **The provisions of this section shall not apply to the mayor's designation or appointment of the chief of police pursuant to section 2002 or the mayor's designation or appointment of a fire chief pursuant to section 2101.1.**

Section 428.  Section 4407 of the act is amended to read:

Section 4407.  [Tenure; Preference in Appointment to Discharged Serviceman; Temporary Appointments.--] **Tenure; Temporary Appointments.--(a)**  All appointments made pursuant to the provisions of this article shall be for and during good behavior, and no employe **hired pursuant to the provisions of this article** shall be removed or transferred for any political reasons

whatever. [Among those persons possessing qualifications and
eligibility for appointment, preference in appointment shall be
given to honorably discharged servicemen and their spouses and
surviving spouses as provided by law.

All persons holding appointments in said several departments or
as building inspectors of said cities, at the time this act goes
into effect, shall retain their positions without being required
to pass examination, and be removed only in accordance with the
provisions of this article.]

**(b)**  In case of riot or emergency, temporary appointments to
positions in the civil service may be made without complying with
the provisions of this article.

Section 429.  Section 4408 of the act, amended October 4, 1978
(P.L.950, No.188), is amended to read:

Section 4408.  [Suspension and Discharge] **Suspension, Discharge
and Discipline**; Reduction of Employes; Appeals.--**(a)**  All employes
subject to civil service shall be subject to suspension, **discharge
and discipline** by the director of the department **in which the
employe works** for misconduct[,] or violation of any law of this
Commonwealth, [any] ordinance of the city[,] or regulation of the
department.[, pending action by the city council upon the charges
made against any of such employes. On hearing before the city
council, where they may be represented by counsel, they may be
fined or suspended for a period not exceeding thirty days with or
without pay, or they may be discharged by city council, if found
guilty of the charges made against them. The director of each such
department may, for misconduct or violation as aforesaid, suspend
any employe of such department for a period of ten days, with or
without pay, without preferring charges and without a hearing of
council; but no employe shall be suspended more than one time for
the identical or same violation or act of misconduct.] If it
should become necessary to reduce the number of employes in said
department for purposes of economy, seniority rights shall
prevail, and any and all removals for such cause or causes shall
be from the members last appointed, and the member or members
serving the shortest time shall be removed first; but members with
longer times of service may be discharged for cause. **Any employe
aggrieved by the suspension, discharge or discipline imposed by a
department director more serious than a suspension of three days
without pay may request a hearing before the city council, or by
the civil service board if designated by ordinance. At the
hearing, the employe may be represented by counsel.**

**(a.1)**  Any civil service employe aggrieved by the [action]
**decision** of the council [in fining, suspending or discharging him
shall have the right to appeal by petition to the court of common
pleas within thirty days after the suspension or after receipt of
written notice of such action by council which it shall be the
duty of the council to give and the court shall hear the charges
made against him de novo] **or the civil service board shall have
the right to appeal in accordance with 2 Pa.C.S. Ch. 7 Subch. B
(relating to judicial review of local agency action). This review
shall be exclusive. Where no such appeal is taken within the time
prescribed by law, the decision by the city council or the civil
service board shall become final in accordance with the law.** The
issue before the court shall be whether the action of the council
**or the civil service board** shall be affirmed or be modified in any
respect or whether the charges should be dismissed or whether the

suspension **or demotion** made by the director shall be affirmed or
rescinded. Where any [such] employe has been suspended and the
charges are dismissed or the suspension rescinded on appeal, [he]
**the employe** shall receive full compensation for the entire period
of suspension.
   **(b)   In any case in which a police officer or firefighter who
is a member of a bargaining unit is subject to suspension,
discharge or discipline, the police officer or firefighter shall
have the option of challenging the suspension, discharge or
discipline imposed by using the procedures provided in subsection
(a) or by a proceeding in grievance arbitration. A choice to
proceed either by subsection (a) or by grievance arbitration shall
foreclose the opportunity to proceed in the alternative method.**
   Section 430.   Sections 4409 and 4410 of the act are amended to
read:
   Section 4409.   [Secretaries of Boards; Compensation.--Each of
said civil service boards may] **Secretary; Compensation.--The civil
service board shall** appoint a secretary and prescribe [his duties.
He] **the secretary's duties and shall have the power to change
these duties. The secretary** shall be subject to removal at any
time by the board [appointing him, and such board shall have power
to change his duties. The compensation to be paid said secretaries
and all necessary stationery and supplies for said boards shall be
such as council shall by ordinance direct]. **Council shall
establish the compensation to be paid to the secretary, and all
necessary stationery and supplies for the use of the board shall
be supplied by the city.**
   Section 4410.   Review of Eligibility Lists.--The lists of
eligible names kept by [each] **the** civil service board shall be
annually examined by the board for the purpose of deleting
therefrom persons who are permanently unavailable for or
disqualified for the position or positions involved, either by
death, permanent removal from the area, written desire to be
removed therefrom, or by other permanent cause[,] in conformity
with the board's rules and regulations adopted pursuant to section
[four thousand four hundred four] **4404.**
   Section 431.   The act is amended by adding an article to read:
                       **ARTICLE XLIV-A**
                       **VETERANS' AFFAIRS**
             **(a)   Support of Veterans' Organizations**
**Section 4401-A.   Appropriation to post of veterans.**
   **Council may appropriate annually to organizations of veterans
of the United States Armed Services or veterans' parents to aid in
defraying the expenses of Memorial Day and Veterans Day, or other
expenses such as payment of rent of any building or rooms where
the organization has its regular meetings. Payments shall be made
to defray actual expenses only. Before any payment is made, the
organization receiving the same shall submit verified accounts of
their expenditures.**
**Section 4402-A.   Rooms for meetings of veterans.**
   **Council may provide, upon application, to an organization
composed of veterans of the United States Armed Services, a
facility in any public building of the city, sufficient for the
periodic meeting of each of the organizations.**
             **(b)   Pennsylvania National Guard**
**Section 4411-A.   Support of Pennsylvania National Guard units.**
   **Council may appropriate annually a sum for the support and**

maintenance, discipline and training of any troop, company or similar unit of the Pennsylvania National Guard. If the units are organized as a battalion, regiment or similar organization, the total amount due may be paid to the commanding officer of the battalion, regiment or similar organization. Any money appropriated shall be paid by warrant drawn to the order of the commanding officer of the company, battalion, regiment or similar organization, only when it shall be certified to the city, by the Adjutant General of the Commonwealth, that the company has satisfactorily passed the annual inspection provided by law. The money appropriated shall be used and expended solely and exclusively for the support and maintenance, discipline and training of the company, battalion, regiment or similar organization; and the commanding officer shall account, by proper vouchers to the city each year, for the expenditure of the money appropriated. No appropriation shall be made for any subsequent year until the expenditure of the previous year is duly and satisfactorily accounted for. The accounts of the expenditures shall be subject to the inspection of the Department of Military and Veterans Affairs and shall be audited by the city controller in the manner provided by this act for the audit of accounts of city money.

Section 4412-A.  Assistance in erection of armories.

Council may appropriate money or convey land, either independently or in conjunction with any other political subdivision, to the Commonwealth, for the purpose of assisting the State Armory Board in the erection of armories for the use of the Pennsylvania National Guard, and to furnish water, sewer services, light or fuel free of cost to the Commonwealth for use in any armory of the Pennsylvania National Guard. Council may do all things necessary to accomplish the purpose of this section.

Section 4413-A.  Eminent domain for National Guard purposes.

Council may take, by right of eminent domain, for the purpose of appropriating to itself for the use of the Pennsylvania National Guard public lands, easements and public property in its possession or control and used or held by it for any other purpose. Such right, however, shall not be exercised as to any street or wharf.

Section 4414-A.  Lands for armory purposes.

Council may acquire, by purchase or by gift, or by the right of eminent domain, any land for the use of the Pennsylvania National Guard and may convey lands so acquired to the Commonwealth in order to assist the State Armory Board in the erection of armories. The power conferred by this section shall not be exercised to take any church property, graveyard or cemetery. Lands within three miles outside the limits of the city may be acquired in like manner for the use of the Pennsylvania National Guard, provided that, if the land is acquired by eminent domain that the taking shall be subject to the limitations in 26 Pa.C.S. § 206 (relating to extraterritorial takings).

(c)  Burials and Memorials

Section 4421-A.  Purchase of burial grounds for deceased service persons.

Council may appropriate money for and purchase plots of ground in any cemetery or burial ground, within its respective city limits, for the interment of deceased service persons who die within the city, or die beyond the city but have a legal residence

within the city at the time of their deaths, and whose bodies are entitled to be buried by the county under the provisions of existing laws.
Section 4422-A.  Care of memorials.
Council may take charge of, care for, maintain and keep in good order and repair, at the expense of the city, any soldier's monument, gun or carriage or similar memorial, situate in the city which is not in the charge or care of any person, body or organization and which is not put up or placed by the Government of the United States, the Commonwealth or the commissioners of the county or by the direction or authority of any other state. Council may receive from any person or organization any money or funds which can be used for the benefit of the memorials and expend the money.
Section 4423-A.  Memorial trees.
Council may provide for or authorize provision for memorial trees for residents of the city who died while in the military service of the United States or in consequence thereof. Council may make appropriations or accept contributions for this purpose. Such trees shall bear some permanent indication of their purpose.
Section 4424-A.  Penalty for injury to memorial trees.
Any person willfully, maliciously or negligently destroying or injuring any trees planted pursuant to the provisions of section 4423-A commits a misdemeanor and shall, upon conviction, be liable to a fine not exceeding $500, or imprisonment not exceeding three months, or both, in the discretion of the court.
Section 432.  Article XLV heading and sections 4501, 4502, 4503, 4504 and 4505 of the act are repealed:
[ARTICLE XLV
CHARITIES AND WELFARE
Section 4501.  Creation of Department of Charity.--Council, by ordinance, may create a bureau for the purpose of administering charity and for support of the poor, create any office which may be deemed necessary for the proper government, support, and management of said bureau, and regulate and prescribe the powers, duties, and compensation of all such officers. Such bureau shall have the care, management, administration, and supervision of the charities, almshouses, poorhouses, and the relief of the poor of the city, subject, however, to the control of the council.
Section 4502.  Power to Levy Special Tax.--Council may levy a tax annually, not exceeding ten mills on the dollar, on all persons and property taxable by the city for city purposes, for the support of said bureau.
Section 4503.  Hospitals; Appropriations; Free Treatment for Poor.--Any city may acquire, by gift, devise, or bequest, lands, chattels, securities and funds for the establishment and maintenance of a hospital, for the purposes of caring for the sick and injured residents of such city and the vicinity thereof, and, for such purposes, to appropriate and expend money of the city: Provided, That the poor residents of such city shall receive free treatment to the extent that it is possible to provide for same with the means available. Such hospital, or any ward therein, may be named in accord with the wishes of any person making a substantial donation thereto by will or otherwise.
Section 4504.  Appointment of Trustees for Gifts; Powers.--Such gifts, devises, bequests and appropriated funds shall be under the supervision of a board of trustees, to be appointed by council,

consisting of at least nine trustees, three of whom shall be
members of council, three of whom shall be licensed and practicing
physicians in such city and the vicinity thereof, and the
remainder of which board shall consist of residents of such city
and vicinity thereof. Said appointments shall at all times be made
subject to the approval of the orphans' court of the county in
which said city is situated. Said board of trustees shall at all
times be subject to the resolutions of council and the
jurisdiction of said court, which shall have power to remove any
of them upon petition of such city. Any vacancy in such board may
be filled by a new appointment in manner aforesaid. Said board of
trustees shall make reasonable rules for the management of such
hospital, and appoint and remove the physicians, surgeons, nurses,
and other employes necessary for the conduct thereof.

    Section 4505.  Appropriations or Other Assistance for
Hospitals.--Council may make appropriations for the support or
assistance of hospitals within or near the city or, in lieu
thereof, council may provide for services to such hospitals at the
city's expense and with materials or equipment of the city.]

    Section 433.  The act is amended by adding an article to read:

## ARTICLE XLV-A
### ASSESSMENTS FOR PUBLIC IMPROVEMENTS

**Section 4501-A.  Authority to assess.**

    **(a)  Authority.--In cases in which one or more properties are
benefited from a public improvement, unless otherwise provided for
in this act, a city shall be authorized to assess, as provided in
this article, all or any portion of the costs of the public
improvement, including any related administrative fees, against
those properties that are benefited by the public improvement.**

    **(b)  Payment of costs.--Unless otherwise provided in this act,
in addition to the authority to assess the cost of public
improvements against properties benefited, a city shall have the
power to pay for the cost of public improvements, in whole or in
part, from general city funds or, if authorized, from a special
city fund dedicated to that purpose.**

    **(c)  Indebtedness.--If a city incurs indebtedness pursuant to
53 Pa.C.S. Pt. VII Subpt. B (relating to indebtedness and
borrowing) for the purposes of funding the cost and expense of
making public improvements for which assessments can be made in
accordance with this article, and assessments are made, payments
made on the assessments must be applied to pay the debt service
for the indebtedness incurred for funding the cost and expense of
making the public improvements.**

    **(d)  Definition.--As used in this article, unless the context
clearly indicates otherwise, the term "public improvement" may
include, but shall not be limited to, the building, paving,
grading, rebuilding, repaving and regrading of streets, sidewalks,
curbs and gutters; the creation, extension and renovation of water
and sewerage collection, transmission, treatment and disposal
systems; the creation, extension and renovation of storm, surface
and subsurface drainage systems; the construction, reconstruction
and repair of wharves and docks; the installation of pipes, wires
and conduits relating to city-supplied utility services; the
installation, maintenance or operation of lighting that services
the streets and sidewalks within the city; or the planting,
maintaining, trimming, transplanting, removal and protection of
shade trees.**

Section 4502-A.  Method of assessment.
    (a)   Ordinance.--In any case in which council elects to
exercise the power to make assessments for a given public
improvement as authorized in section 4501-A, it shall, by
ordinance and in conformity with this article, establish the
method and procedure pursuant to which assessments shall be made.
    (b)   Allocation of costs and expenses.--Council may, by
ordinance, determine to make the assessment by any means that
results in fairly allocating all or a portion of the costs and
expenses of the public improvement among all properties benefited
thereby in reasonable proportion to the benefits conferred upon
each property. The methods that may be used to make assessments in
accordance with this subsection may include, but shall not be
limited to, an equal assessment per front foot, lot, parcel,
dwelling unit or square foot or by an assessment made by viewers.
    (c)   Front foot method.--If the front foot method is used:
        (1)   The cost to be collected shall be divided by the total
    number of linear feet of street frontage of all properties
    benefited.
        (2)   The assessment against each property shall be that
    portion of the cost which is determined by multiplying the
    dividend under paragraph (1) by the number of linear feet for
    street frontage of that property.
        (3)   Council shall have the power and its duty shall be, in
    the case of corner or irregularly shaped lots or where special
    conditions exist, to provide for an equitable adjustment, as
    necessary, to prevent an unjust or excessive assessment.
    (d)   Assessment based on report of viewers.--In order to pay
for all or a portion of the cost or expenses of a public
improvement, council may determine to assess properties benefited
based upon a report of viewers. Three disinterested persons shall
be appointed by council as viewers. A majority of the viewers
shall assess the cost against each property benefited in
reasonable proportion to the benefits conferred upon each
property. The viewers, or a majority of them, shall make a report
in writing which shall specify the amount assessed upon each
property and shall present the report directly to council or file
it with the city clerk, as council directs.
Section 4503-A.  Notice of assessment.
    (a)   Personal notice.--After the amounts to be assessed against
the properties to be benefited by the public improvement have been
calculated pursuant to the method and procedures as prescribed by
ordinance, the city shall give personal notice of the assessment
to the owner of each property that is being assessed. The notice
shall also state that the owner has 30 days from receipt of the
notice to appeal the assessment.
    (b)   Assessment effective.--An assessment made pursuant to this
article shall become effective 30 days after personal notice is
given by any of the following means:
        (1)   Personal service on the owner.
        (2)   Certified mail, addressee only, return receipt
    requested, to the owner at the owner's last known address.
        (3)   Posting notice at or upon the property, after
    reasonable attempts to give personal notice pursuant to
    paragraphs (1) and (2) have failed.
Section 4504-A.  Appeals to court.
    Within 30 days after receipt of the notice of assessment, an

owner of property shall have the right to appeal the assessment to the court of common pleas in the county in which the assessed property is located. On appeal, unless the court finds fraud, mistake or illegality, the court shall be restricted to determining the questions of whether the property assessed received any special benefits from the improvement and whether the assessment made exceeds the special benefits received.

Section 4505-A.  Benefits and damages.

In any proceeding in which damages to property are being sought as a result of a public improvement for which an assessment of benefits has been made, the excess of damages over benefits, or the excess of benefits over damages, or nothing in case the benefits and damages are equal, shall be awarded to or assessed against the owner of land and property affected by the public improvement.

Section 4506-A.  Return by city of assessments paid on property unlawfully assessed.

The following shall apply with regard to the return of payments made on an unlawful assessment:

    (1)  If, after a timely appeal, a court makes a final determination that a property was unlawfully assessed or that the amount assessed exceeded, to a substantial amount, the benefits received by the property assessed from the public improvement, a city that received money in payment of the assessment shall repay the money in an amount as ordered by the court.

    (2)  Within two years of receiving payment of an assessment, the city may repay such money voluntarily if the city determines that the assessment or part thereof was made erroneously.

    (3)  Repayments to property owners pursuant to paragraph (1) or (2) shall include interest from the date of payment of the unlawful or erroneous assessment at the rate of interest that is provided for in 53 Pa.C.S. § 8426 (relating to interest on overpayment).

Section 4507-A.  Payment of assessments in installments.

    (a)  Authorization.--An ordinance providing for a public improvement the expense of which is to be defrayed by an assessment against properties benefited by the public improvement may authorize the payment of the assessments in installments. The ordinance shall set a time when the installment payments shall commence and shall specify the length of time over which the installments may be extended and whether payments are to be made by equal annual or more frequent installments. The period during which installments may be paid shall not exceed the lesser of ten years or the number of years equal to the period of maturity of the bonds issued to fund the public improvement.

    (b)  Interest rate.--The ordinance shall set forth the rate of interest for the installments, which shall not be more than 10% per year unless a bond is issued for the improvement, in which case the maximum interest rate on the installment payments shall be pursuant to section 9 of the Municipal Claim and Tax Lien Law.

    (c)  Written agreement.--The city shall enter into a written installment agreement with each property owner that will pay the assessment in installments, subject to the requirements of the ordinance pertaining to such agreements and this article.

    (d)  Installments not paid.--If any of the installments shall

remain unpaid for 60 days after the same has become due and payable, the entire unpaid assessment plus unpaid accrued interest and any costs shall be due and payable, and the city may proceed to collect them by filing a lien in the same manner as municipal claims are filed or by action in assumpsit.

(e)  Advance payments.--Any property owner upon whom an assessment has been made may pay all or as many of the installments before they are due, with interest and costs to the due date of the next installment.

Section 4508-A.  Collection of assessments.

(a)  Authority.--Council shall have the power to authorize the city treasurer or other city official to collect assessments.

(b)  Procedure.--The following shall apply to the collection of assessments:

(1)  A city may collect an assessment that remains unpaid for 60 days after personal notice was given pursuant to section 4503-A, unless an installment agreement has been entered into pursuant to section 4507-A.

(2)  An assessment made pursuant to this article may be collected in the same manner as municipal claims in the Municipal Claim and Tax Lien Law or by an action of assumpsit against the owner of the property benefited.

(3)  Interest on an unpaid assessment shall begin to accrue from the time of completion of the improvement at a rate of 10% per year unless a bond is issued for the improvement, in which case the maximum interest rate shall be pursuant to section 9 of the Municipal Claim and Tax Lien Law.

(4)  If a property owner has two or more lots against which there is an assessment for the same improvement, all of the lots may be embraced in one claim.

(5)  Assessments, whether paid one time or by installments, shall be payable at the office of the city treasurer or any other place designated by ordinance.

Section 434.  Article XLVI heading of the act is reenacted to read:

ARTICLE XLVI
COLLECTION OF MUNICIPAL CLAIMS BY SUIT AND
COMPROMISE OF CLAIMS

Section 435.  Section 4601 of the act, amended July 25, 1963 (P.L.283, No.153), is amended to read:

Section 4601.  Collection of Municipal Claims by Suit.--In addition to the remedies provided by **this act or any other** law for the filing of liens for the collection of municipal claims, **including, but not limited to, water rates, sewer rates and the removal of nuisances,** all cities may proceed for the recovery and collection of municipal claims by action of assumpsit against the person or persons who were the owner or owners of the property at the time of the completion of the improvement, **or at the time the water or sewer rates or the cost of the removal of nuisances first became payable,** notwithstanding the fact that there was a failure on the part of [any such] **the** city, or its agents, to enter [any such] **the** municipal claim as a lien against the property assessed for the improvement **or for the furnishing of water or sewer services or for the removal of nuisances,** and for the recovery of which the action of assumpsit was brought. [Any such] **The** action in assumpsit shall be commenced **either** within six years after the completion of the improvement from which [said] **the** claim arises

**or within six years after the water or sewer rates or the cost of abating a nuisance first became payable.**

This section shall extend to all municipal claims [where the improvement was] **for improvements** heretofore made, where the action of assumpsit has been instituted under the provisions of prior acts of Assembly, and where the claim was not barred by the statute of limitations affecting actions of assumpsit.

Section 436.  Section 4602 of the act is amended to read:

Section 4602.  Compromise of Municipal Claims[; Court Approval.--Whenever].--**(a)  If** any city has any municipal claim entered in the office of the prothonotary as a lien against real estate[, which said] **and if the** claim has existed for ten years or more, council may[, with the approval of the court of common pleas,] agree with the owner of [such] **the** real estate to accept, in compromise or reduction of the amount of the claim and the interest charges, expenses and fees added thereto and due thereon, any sum less than the whole of such amount so due.

**(b)  Upon receipt of the compromise amount as agreed upon, the city shall cause the lien to be properly satisfied on the record, which satisfaction shall be as effective as if the whole amount of the claim, interest, charges, expenses and fees had been paid, and the claim shall no longer be a lien against the real estate or a claim against the owner thereof.**

**(c)  The provisions of this section permitting compromise of municipal claims shall not apply to or in any manner affect any claims, the assessments for which are the sole basis of improvement bonds issued by any political subdivision and which are the security for the payment thereof, or any claims, the assessments for which have heretofore been assigned by any political subdivision to any contractor in payment of the amount due the contractor under terms of the contract for the improvement for which the assessment was levied.**

Section 437.  Sections 4603 and 4604 of the act are repealed:

[Section 4603.  Satisfaction.--Upon receipt of the compromise amount so agreed upon and approved, the city shall cause the lien to be properly satisfied on the record, which satisfaction shall be as effective as if the whole amount of the claim, interest, charges, expenses and fees had been paid, and such claim shall no longer be a lien against the real estate or a claim against the said owner thereof.

Section 4604.  Certain Claims Excluded.--The provisions of sections four thousand six hundred two and four thousand six hundred three shall not apply to or in any manner affect any claims, the assessments for which are the sole basis of improvement bonds issued by any political subdivision and which are the security for the payment thereof, or any claims, the assessments for which have heretofore been assigned by any political subdivision to any contractor in payment of the amount due him under terms of the contract for the improvement for which the assessment was levied.]

Section 438.  Article XLVII heading of the act is reenacted to read:

ARTICLE XLVII
ACTS OF ASSEMBLY REPEALED; SAVING CLAUSE

Section 439.  Section 4701 of the act is amended to read:

Section 4701.  Repeals and Saving Clause.--**(a)  Nothing contained in this act revives any act, or part of any act,**

**repealed by the act reenacted, amended or revised by this act.**

**(b)**   The following acts and parts of acts of Assembly are hereby repealed as particularly set forth:

The act, approved the twenty-fifth day of March, one thousand eight hundred seventy-eight (Pamphlet Laws 8), entitled "An act authorizing cities of the third class to levy and collect taxes for park purposes, and curing any defects in previous levies," absolutely.

The act, approved the thirty-first day of May, one thousand nine hundred nineteen (Pamphlet Laws 358, Number 172), "An act to amend section three, article five of the act, approved the twenty-seventh day of June, one thousand nine hundred thirteen (Pamphlet Laws 568), entitled 'An act providing for the incorporation, regulation, and government of cities of the third class; regulating nomination and election of municipal officers therein; and repealing, consolidating, and extending existing laws in relation thereto,' by adding thereto clause forty-nine relative to the collection and disposal of garbage, ashes, and other waste and refuse matter," absolutely.

The act, approved the fourth day of June, one thousand nine hundred nineteen (Pamphlet Laws 373), entitled "An act to amend section three, article five of the act, approved the twenty-seventh day of June, one thousand nine hundred thirteen (Pamphlet Laws, five hundred and sixty-eight), entitled 'An act providing for the incorporation, regulation, and government of cities of the third class; regulating nomination and election of municipal officers therein; and repealing, consolidating, and extending existing laws in relation thereto,' by adding thereto clause forty-nine, relative to appropriations for municipal music," absolutely.

The act, approved the tenth day of March, one thousand nine hundred twenty-one (Pamphlet Laws 29, Number 10), entitled "An act for the relief of certain county treasurers and county tax collectors, in the settlement of county, poor, and State taxes, in cities of the third class," absolutely.

The act, approved the twenty-second day of April, one thousand nine hundred twenty-seven (Pamphlet Laws 358), entitled "An act authorizing and empowering cities of the third class to recognize the moral obligation of the city to pay just claims against the city, although under existing laws no legal recovery could be had against the city," absolutely.

Section seven hundred twenty-three of the act, approved the first day of May, one thousand nine hundred twenty-nine (Pamphlet Laws 905), entitled "An act for the protection of the public safety; regulating the use of highways, and the operation of vehicles, tractors, street cars, trackless trolley omnibuses, bicycles, pedestrians, and the riding of animals upon the highways of this Commonwealth; providing for the titling, including liens, encumbrances, and legal claims; registration of certain vehicles and licensing the operators thereof, upon payment of prescribed fees; prescribing and limiting the powers of local authorities to deal with the subject matter of this act; conferring powers and imposing duties upon the Department of Revenue, the Department of Highways, peace officers, mayors, burgesses, magistrates, aldermen, justices of the peace, the courts and the clerks thereof, owners of vehicles, and garage keepers; providing that records are admissible as evidence; imposing upon owners,

counties, cities, boroughs, incorporated towns, townships, within the Commonwealth, liability for damages caused by the negligent operation of their motor vehicles; imposing penalties; imposing certain costs upon counties; providing for the disposition of fines, forfeitures, fees, and miscellaneous receipts; making an appropriation and providing for refunds," in so far as inconsistent with the provisions of this act.

The act, approved the seventeenth day of May, one thousand nine hundred twenty-nine (Pamphlet Laws 1801), entitled "An act authorizing cities of the third class to provide, by ordinance, for the payment for public work or improvements heretofore made for or furnished to the city, and accepted and used by the city, where no legal or valid contract was entered into as required by law," absolutely.

The act, approved the twenty-second day of May, one thousand nine hundred thirty-three (Pamphlet Laws 923), entitled "An act to authorize cities of the third class to sue out writs of scire facias on certain municipal claims, where more than five years have elapsed since said claims were filed, and to reduce such claims to judgment; and providing for the revival and collection of such judgments," absolutely.

**The act, approved the thirty-first day of May, one thousand nine hundred thirty-three (Pamphlet Laws 1108, Number 272), entitled "An act providing for the appointment, promotion, reduction, removal and reinstatement of paid officers, firemen and employes of fire departments and of fire alarm operators and fire box inspectors in the bureaus of electricity in cities of the third class; defining the powers and duties of civil service commissions for such purposes; and fixing penalties," absolutely.**

The act, approved the sixteenth day of May, one thousand nine hundred thirty-five (Pamphlet Laws 176, Number 82), entitled "An act requiring cities of the second and third class to allow members of the police departments, twenty-four consecutive hours of rest each week, and fourteen days vacation each year, except in emergency cases," so far as it relates to cities of the third class.

The act, approved the first day of May, one thousand nine hundred thirty-nine (Pamphlet Laws 40), entitled "An act to amend the title and the act, approved the sixteenth day of May, one thousand nine hundred thirty-five (Pamphlet Laws, one hundred seventy-six), entitled 'An act requiring cities of the second and third class to allow members of the police departments, twenty-four consecutive hours of rest each week, and fourteen days vacation each year, except in emergency cases,' extending the provisions of said act to cities of the second class A," so far as it relates to cities of the third class.

Sections six hundred eighty-two and six hundred ninety of the act, approved the twenty-fourth day of June, one thousand nine hundred thirty-nine (Pamphlet Laws 872), entitled "An act to consolidate, amend and revise the penal laws of the Commonwealth," so far as they relate to cities of the third class and are inconsistent with the provisions of this act.

The act, approved the twenty-third day of May, one thousand nine hundred forty-five (Pamphlet Laws 907), entitled "An act authorizing cities of the third class, with the approval of the court of common pleas, to accept less than the full amount of certain municipal claims filed as a lien against real estate in

compromise settlements thereof," absolutely.

The act, approved the second day of May, one thousand nine hundred forty-seven (Pamphlet Laws 149), entitled "An act authorizing cities to enact ordinances prohibiting smoking or the carrying of lighted cigarettes, cigars, pipes or matches or using matches or other fire producing devices in certain retail stores within such cities and to provide penalties therefor," so far as it relates to cities of the third class.

**(c)** All other acts or parts of acts of Assembly supplied by or inconsistent with the provisions of this act are hereby repealed. It is the intention that this act shall furnish a complete and exclusive system for the government and regulation of cities of the third class, except as to the several matters enumerated in section [one hundred and three of this act] **103.**

[But nothing] **(d) Nothing** contained in this act shall be construed to repeal any local or special laws; or to repeal the provisions of **66 Pa.C.S. Pt. I, known as** the Public Utility [Law] **Code**; or any law relating to the Board of Commissioners of Navigation for the River Delaware and its navigable tributaries; or the provisions of any law, the enforcement of which is vested in the Department of Health or the [Sanitary Water Board] **Department of Environmental Protection**; or the provisions of any law, the enforcement of which is vested in the Department of [Forests and Waters] **Conservation and Natural Resources** [or the Water and Power Resources Board]; or the provisions of **74 Pa.C.S. Ch. 59 Subch. B, known as** the Airport Zoning Act; [or any of the provisions of the act, approved the thirty-first day of May, one thousand nine hundred thirty-three (Pamphlet Laws 1108); or any of the provisions of the act, approved the thirteenth day of May, one thousand nine hundred thirty-seven (Pamphlet Laws 620); or any of the provisions of the act, approved the second day of July, one thousand nine hundred thirty-seven (Pamphlet Laws 2803),] or any of the provisions of the act, approved [the twenty-third day of May, one thousand nine hundred forty-five (Pamphlet Laws 903)] **May 23, 1945 (P.L.903, No.362)**; or any amendments or supplements of them; or any laws or parts of laws pertaining to civil defense.

**(e) Nothing in this act shall be construed to repeal any provision in or the act of February 14, 2008 (P.L.6, No.3), known as the "Right-to-Know Law," any provision of 45 Pa.C.S. (relating to legal notices) or any provision of 65 Pa.C.S. (relating to public officers).**

Section 440. Civil service boards shall be terminated and continued as follows:

(1) All civil service boards created prior to the effective date of this section, and pursuant to the act, whether for uniformed or nonuniformed employees, or pursuant to the act of May 31, 1933 (P.L.1108, No.272), entitled "Providing for the appointment, promotion, reduction, removal and reinstatement of paid officers, firemen and employes of fire departments and of fire alarm operators and fire box inspectors in the bureaus of electricity in cities of the third class; defining the powers and duties of civil service commissions for such purposes; and fixing penalties," shall be abolished except as provided in paragraph (2).

(2) No civil service board before which proceedings under section 4408 of the act or under section 10 of the act of May 31, 1933 (P.L.1108, No.272), have been initiated or are pending

as of the effective date of this section may be abolished until
the conclusion of those proceedings before the respective
board.
    (3)  Any civil service proceedings initiated after the
effective date of this section shall be before the new civil
service board created in accordance with Article XLIV of the
act.
    Section 441.  The term "base amount" as used in sections
1901.1, 1901.2, 1901.4, 1902 and 1909 of the act refers to the
base amount as adjusted by the Department of Labor and Industry
and reported in the Pennsylvania Bulletin for use in the year of
the effective date of this act.
    Section 442.  This act shall take effect in 60 days.

APPROVED--The 19th day of March, A.D. 2014.

TOM CORBETT