**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| Firearm Owners Against Crime, | : | |
| Kim Stolfer, and Joshua First, | : | No. 1:15-cv -322 |
| Plaintiffs | : | |
| | : | Honorable Yvette Kane |
| v. | : | |
| | : | |
| City of Harrisburg, Mayor Eric | : | |
| Papenfuse, and Police Chief Thomas | : | Jury Trial Demanded |
| Carter, | : | |
| Defendants | : | |

**PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE
STATE DEFAULT JUDGMENT AND ENJOIN STATE COURT**

Respectfully Submitted,

PRINCE LAW OFFICES, P.C.

DATED: March 26, 2015

Joshua Prince, Esq.
PA ID 306521
*Attorney for Plaintiffs*

PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   COUNTERSTATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

III.  QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A. *This Court Should Not Vacate the State Court Judgment* . . . . 6

        1. *Defendants Have Failed to Demonstrate that this Court*

           *May Vacate the State Court's Judgment* . . . . . . . . . . 6

        2. *The Defendants Fail to Apply the Correct Legal*

           *Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3. *This Court Should Not Vacate the State Court's*

           *Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B. *This Court Should Not Enjoin the State Court* . . . . . . . . . . . 13

        1. *The Anti-Injunction Act* . . . . . . . . . . . . . . . . . . . . . . . 13

        2. *Younger Abstention* . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3. *Additional Equitable Considerations* . . . . . . . . . . . . .17

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,*

    398 U.S. 281 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Budget Blinds, Inc. v. White*, 536 F.3d 244

    (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 8, 8 n.11, 11 n.13, 12 n.14

*DeFillipis v. Dell Financial Services*, 2014 WL 3921271

    (M.D.Pa. Aug 11, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 7 n.8 & 9

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462

    (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Dukes v. South Carolina Ins. Co.*, 770 F.2d 545 (5th Cir. 1985) . . . . . . . . . 10

*Feliciano v. Reliant Tooling Co.*, 691 F.2d 653 (3d Cir. 1982) . . . . . . . . . . 9

*Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 120-21

    (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hicks v. Miranda*, 422 U.S. 332 (1975) . . . . . . . . . . . . . . . . . . . . . . . 15 n.15

*Hritz v. Wona Corp.*, 732 F.2d 1178 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . 9

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) . . . . . . . . . . . . . . . . . . . . . 15

*Juidice v. Vail*, 430 U.S. 327 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kearney v. Hibner*, 2013 WL 6231366 (M.D. Pa. Dec. 2, 2013) . . . . . . . . . 9

*Kizer v. Sherwood*, 311 F. Supp. 809 (M.D.Pa. 1970) . . . . . . . . . 6, 7, 8 n.10

*Kugler v. Helfant*, 421 U.S. 117 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619,

  625-27 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 n.15

*Pennsylvania v. Sixty Eight Thousand Nine Hundred Fifty Dollars in U.S.*

  *Currency*, 2014 WL 26054 (W.D. Pa. June 10, 2014) . . . . . . . . . . . 8

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) . . . . . . . . . . . . . . . . . . . . 16

*Rooker v. Fidelity Trust Co.*, 263 U.S. 419 (1923) . . . . . . . . . . . . . . . . . 6, 8

*Samuels v. Mackell*, 401 U.S. 66 (1971) . . . . . . . . . . . . . . . . . . . . . . . 15 n.15

*Swisher v. Brady*, 438 U.S. 204 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomas v. Miner*, 317 Fed. Appx. 113, 114 (3d Cir. 2008) . . . . . . . . . . . . 8

*Trainor v. Hernandez*, 431 U.S. 434 (1977) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192

  (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. Law Shield v. Harrisburg*, No. 2015-cv-00255-EQ

  (Feb. 28, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 n.17, 18

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977) . . . . . . . . . . . . . . . 13

*Younger v. Harris*, 401 U.S. 37

  (1971) . . . . . . . . . . . . . . . . . . 14, 15, 15 n.15, 16, 16 n.16, 17, 17 n.18

## Statutes

28 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

28 U.S.C. § 2679 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 n.10

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

## Rules of Procedure

Fed.R.Civ.P. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11 n.13, 12 n.14

Pa.R.C.P. 237.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.5 & 6

Pa.R.C.P. 1037 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.7

Plaintiffs Firearm Owners Against Crime ("FOAC"), Kim Stolfer, and

Joshua First[1] (collectively "Plaintiffs"), by and through their counsel, Joshua

Prince, Esq. and Prince Law Offices, P.C., hereby file this Memorandum in

Opposition to Defendants' Motion to Vacate State Default Judgment and Enjoin

State Court (Doc. 14).

## I.   **PROCEDURAL HISTORY**

Four distinct plaintiffs (the three captioned here plus Howard Bullock)

brought suit in State court challenging certain local ordinances against three

defendants (captioned above and referenced herein collectively as "Defendants")

who adopted or are responsible for enforcing those ordinances.  The Complaint

(Doc. 1-1) alleged causes of action under State law and under 42 U.S.C. section

1983 for violation of the Second Amendment.  All Defendants joined in a timely

Notice of Removal with respect to the above-captioned Plaintiffs but omitting

Bullock.  With no indication that Bullock's claims against the Defendants had been

---

[1]  Despite acknowledging that they omitted Plaintiff Howard Bullock's name from
the Notice of Removal (Doc. 1) and related papers and having filed a still-pending
motion to amend the Notice (Doc. 12) on which this Court has not yet acted,
Defendants unilaterally added Bullock's name to the caption in their Brief in
Support of Motion to Vacate State Default Judgment and Enjoin State Court (Doc.
15).  Defendants thus assume the resolution of an important question before the
Court:  whether Bullock's claim was ever properly removed.  Resolution of that
issue has bearing directly on the subject of this Motion.

removed to this Court and no timely response by the Defendants, the State court
entered default judgment in favor of Bullock and against the Defendants.

In the motion at issue here, Defendants now request that this Court vacate
the State court default judgment and enjoin the State court from further
proceedings.[2]  This Court also has pending before it Plaintiff's Motion to Remand
(Doc. 5) which is now fully briefed (Docs. 6, 11, 21).  There are ample
independent grounds for granting that motion and, if this Court were to do so, it
would likely render this current motion moot.


## II.   <u>COUNTERSTATEMENT OF FACTS</u>

The Plaintiffs and Bullock filed their case in the Court of Common Pleas of
Dauphin County on January 16, 2015 (Doc. 11-2).[3]  The sheriff's return of service
of process upon each Defendant was filed with the State court on January 20.

On Saturday, January 24, 2015, the Plaintiffs and Bullock filed a Praecipe to
Substitute Verifications, which the State court docketed on January 29.  The
accompanying certificate of service indicates that copies were served by first class
mail on all Defendants.  That Praecipe is attached hereto as Exhibit 1.  Meanwhile,

---

[2]  Proceeding on a parallel track, Defendants also petitioned the State court itself to
open or strike the default judgment.  That issue was addressed at the State court's
March 17 status conference and briefing of that matter is underway (Doc. 19).
[3]  A cursory examination of that filing submitted to this Court as an Exhibit by the
Defendants themselves belies any suggestion (Doc. 15, p. 6 n.1) that it omitted the
e-mail address of Plaintiffs' counsel.  *See* Doc. 11-2, p. 4.

Lavery Faherty first entered an appearance in the State court matter on January 28, 2015,[4] serving by mail the attorney who represented Bullock and all the Plaintiffs. That appearance is attached hereto as Exhibit 2.

On February 13, 2015, Defendants filed their Notice of Removal (Doc. 1), which expressly listed each of the above-captioned Plaintiffs but omitted Bullock. Bullock was also not named in any of the related papers or the Civil Cover Sheet filed by Defendants.

On February 19, 2015, Bullock served "ten day notices" on each Defendant as well as their counsel,[5] advising that absent the filing of a responsive pleading or preliminary objections, Bullock could seek entry of default judgment ten days later.  Bullock took the added step of filing those notices with the State court to further ensure ample advance notice.[6]

---

[4]  Defendants' observation (Doc. 15, p. 2) that defense counsel was not served with the Praecipe mailed on January 24 is thus fully explained by the fact that defense counsel did not enter an appearance until January 28.  The suggestion that it was insufficient to serve the Praecipe by mail is answered by the fact that initial service of process had already been completed upon all Defendants by the sheriff and PA.R.C.P. 440(a)(2)(i) specifically addresses service of legal papers other than original process on a defendant, where no attorney has entered his appearance.

[5]  Under the rules applicable in State court, service of these notices is required to be made on both the adverse parties *and* their counsel of record.  Pa.R.C.P. 237.1(a)(2).

[6]  Under the rules applicable in State court, there is no requirement to file these notices in advance of requesting entry of default judgment.  Pa.R.C.P. 237.1(a)(2).

On February 20, 2015, the State court transferred its file to this Court (Doc. 2). That same day, Defendants requested that this Court dismiss the federal law cause of action for failure to state a claim and to remand the remaining causes of action to State court (Doc. 4). Defendants yet again failed to mention Bullock.

On February 22, 2015, Plaintiffs filed their Motion to Remand or, Alternatively, to Sever and Remand State Law Claims and Hold Federal Claims in Abeyance (Doc. 5). At that time, the Clerk of Court for this Court still listed in the Civil Docket only the captioned Plaintiffs and not Bullock. As one of several grounds for their Motion, Plaintiffs observed that Bullock's claim apparently remained pending in State court.

On February 26, 2015, the Prothonotary informed counsel for Plaintiffs and Bullock that Bullock's claim remained before the State court, and the "ten day notices" would be accepted for filing in the record. Rather than file either an Answer or preliminary objections in State court, on February 27, Defendants filed their Motion to Strike 10 Day Default Notices contending that Bullock's claim had been removed and that the State court lacked jurisdiction to act. That motion constituted the first indication that Defendants did not plan to litigate Bullock's claim in State court.

On March 3, 2015, with Defendants still not having filed either an Answer or preliminary objections, Bullock filed a Praecipe for Judgment, and the State

court entered default judgment for Bullock against the Defendants.  The relief granted constituted an award of Bullock's attorneys' fees with the requested injunctive relief awaiting trial.[7]  Out of an abundance of caution, Bullock also filed a Motion to Strike the Defendants' motion attacking the "ten day notices".

On March 10, 2015, Defendants filed with the State court a Petition to Open or Strike Default Judgment together with proposed preliminary objections.  On March 17, the State court held a status conference with regard to the pending motions.

Meanwhile, on March 12, 2015, Defendants filed with this Court a Motion to Amend Notice of Removal and Civil Cover Sheet (Doc. 12), proposing to add Bullock to the removal papers.  The opposition to that Motion is being drafted and filed contemporaneously with the opposition to this Motion.

## III.   QUESTIONS PRESENTED

1.   Should this Court vacate the State court judgment in favor of Bullock and against these Defendants?  *No.*

2.   Should this Court enjoin the State court from proceeding with a trial to determine whether to issue equitable relief in favor of Bullock and against these Defendants?  *No.*

---

[7]  Under the rules applicable in State court, although the Prothonotary may enter default judgment only the court may issue equitable relief.  Pa.R.C.P. 1037(b), (d).

## IV.   ARGUMENT

### A.   *This Court Should Not Vacate the State Court Judgment*

Judicial federalism and concerns of comity do not permit a lower federal court to freely review the decisions of a State court.  Outside the realm of *habeas corpus* review, the availability of the U.S. Supreme Court to correct mistakes in the final determinations of a State court system generally precludes lower federal courts from reviewing State court decisions.  *See, e.g., Rooker v. Fidelity Trust Co.,* 263 U.S. 419 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1986).

#### 1.   *Defendants Have Failed to Demonstrate that this Court May Vacate the State Court's Judgment*

Defendants make the sweeping assertion that this federal Court has authority to vacate the judgment of the State court relying exclusively upon two cases for that proposition:  the unpublished opinion in *DeFillipis v. Dell Financial Services,* 2014 WL 3921371 (M.D. Pa. Aug. 11, 2014) (attached hereto as Exhibit 3), and the case it quoted, *Kizer v. Sherwood,* 311 F. Supp. 809 (M.D. Pa. 1970).  Neither case involves a situation remotely like the case at bar and neither supports Defendants' broad assertion.

In *DeFillipis,* the federal court determined that the State court never established personal jurisdiction over the defendants due to multiple defects in the service of process and that the defendants never received notice in advance of the

6

entry of default judgment.  Because a judgment in which a court never establish jurisdiction in the first place is void, the federal court had little difficulty stating that proposition:  "A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void," Exhibit 3, p. 2.  The case did not turn in any way on whether a State court that had established jurisdiction in the first place and rendered a judgment, was subject to having its judgment vacated due to the removal of the case to federal court.  Rather, "service was improper and default judgment was void *ab initio*" so that "this impropriety alone is enough to justify setting aside the default judgment." *Id.,* p. 3.[8]  Ignoring that key distinction, Defendants cite *dicta* from the court's digression to "briefly discuss" the fact that the case had been removed, *id.,* p. 2, while declining to address whether the removal process was proper in light of the plaintiff's failure to timely file a motion to remand, *id.,* p. 5.[9]

In *Kizer,* the federal court similarly "conclude[d] that the original State Court action was not properly instituted." 311 F. Supp. at 811.  In that case, the plaintiff sued the wrong defendant in State court when federal law established that the *exclusive* remedy was a suit against the United States.  *Id.*  As with *DeFillipis,*

---

[8]  The *DeFillipis* court additionally observed that the default judgment did not comply with the procedural requirement to provide at least ten days advance notice, *see* Exhibit 3, pp. 3-4, as well as other defects.

[9]  For similar reasons, *DeFillipis* represents weak authority for the proposition (Doc. 15, p. 3) that federal courts disfavor default judgments.

the fact that the case was never properly before the State court in the first instance

serves to distinguish it from Bullock's case.[10]

Where a case has been properly filed in *State* court, as is the situation here,

there is authority – consistent with the *Rooker-Feldman* doctrine – that a federal

court should not act to vacate that judgment.  *See Thomas v. Miner,* 317 Fed.

Appx. 113, 114 (2008); *Pennsylvania v. Sixty Eight Thousand Nine Hundred Fifty*

*Dollars in U.S. Currency,* 2014 WL 26054 (W.D. Pa. June 10, 2014) (attached

hereto as Exhibit 4) (declining to extend Rule 60(b) relief to decisions of a state

court).  Rather, as the Third Circuit has indicated, relief from the judgment of even

a different federal court should "generally be raised in the rendering court."

*Budget Blinds, Inc. v. White*, 536 F.3d 244, 254 (3d Cir. 2008).[11]  Indeed,

Defendants here already filed with the State court a Petition to Open or Strike

---

[10]   *Kizer* also involved removal under 28 U.S.C. § 2679(d) on the basis that the
defendant was a federal official engaged in his official duties.  In that context,
different federal interests have produced broader statutory authority for removal.
*E.g.,* 311 F. Supp. at 811 (observing removal is permitted under § 2679(d) any time
before trial, not simply within thirty days of commencement of the action).

[11] In *Budget Blinds,* the Third Circuit reviewed the precedents from other circuits
and, except in the context of challenges to the validity of the judgment premised on
a colorable claim of lack of personal jurisdiction – where an appearance to have
the rendering court consider the issue could in and of itself provide the basis for
personal jurisdiction – it favored recourse to the rendering court.  536 F.3d at 251-
55.  The Third Circuit noted that "comity" favored such a result even when the
rendering court was another federal court.  *Id.* at  255.

Default Judgment.[12]   There is no reason to believe the State court will not carefully

consider their arguments.

2.    *The Defendants Fail to Apply the Correct Legal Standard*

Even if this Court were to determine that it should consider Defendants'

request to vacate the judgment of a State court issued in a case that was properly

filed in that court and as to which the State court undoubtedly had personal

jurisdiction over the defendants, that only raises the question as to the appropriate

standard to grant such relief.  The only authorities Defendants identify with respect

to the applicable standard relate to direct appellate review of a lower federal court's

decision whether to vacate or set aside a default judgment entered by that very

same federal court, *see United States v. $55,518.05 in U.S. Currency,* 728 F.2d

192, 193-94 (3d Cir. 1984); *Hritz v. Wona Corp.,* 732 F.2d 1178, 1180 (3d Cir.

1984); *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 120-21 (3d Cir.

1983); *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 654-57 (3d Cir. 1982), or a

federal court's decision whether to enter default judgment in the first instance, *see*

*Kearney v. Hibner,* 2013 WL 6231366 (M.D. Pa. Dec. 2, 2013) (attached hereto as

---

[12] If Defendants really want a court to consider whether the margin and line-spacing requirements of praecipe conform to practice in the State court or any of their similar suggestions regarding the State court's local rules (Doc. 15, p. n.1), that is all the more reason for the *rendering* court – which oversees such minutia – to decide whether there is adequate basis to vacate the default judgment. Defendants' more serious suggestions are directly addressed above in footnotes 3 through 6.

Exhibit 5), or a lone case in which the plaintiffs never objected to any claimed

defect in the removal for more than a year while pursuing a default judgment in

State court without notice to the defendant and then did not advise the federal court

of the State court judgment before the federal court itself had entered judgment on

the merits, *see Dukes v. South Carolina Ins. Co.,* 770 F.2d 545, 546-48 (5th Cir.

1985).

Unlike the situation in *Dukes,* Bullock (and the captioned-Plaintiffs)

promptly advised this Court of his omission from the Notice of Removal and other

defects in removal procedure within the statutory thirty-day period of 28 U.S.C.

section 1447(c).  And unlike the situation in Dukes, the default judgment entered

by the State court has been brought to this Court's attention prior to any action by

this Court on the merits of the case.

### 3.    *This Court Should Not Vacate the State Court's Judgment*

Despite the Defendants' failure to identify any pertinent authority

establishing the standard under which this Court should evaluate whether to vacate

the State court's judgment, even assuming the authority to do so, it is clear that the

standard would be no less than it is when a federal appellate court reviews a federal

trial court's decision whether to vacate a default judgment it had entered.

Defendants acknowledge (Doc. 15, p. 4) that factors to be considered in that

context include whether they present a meritorious defense, whether their default

was willful, and whether there would be prejudice to the party benefitting from the default judgment.[13]

In light of the "crystal clear" State law that would be dispositive of the claims of Bullock (and the captioned-Plaintiffs), it should be evident that Defendants cannot in good faith demonstrate a meritorious defense. That point alone should be dispositive. The only defense they even attempt to put forward (Doc. 15, p. 6) relates only to the federal cause of action and is not even applicable in that context as Bullock (and the captioned-Plaintiffs) seek only declaratory and equitable relief, not an award of damages. *See* Doc. 21, pp. 10 n.7, 12.

It is also clear that Defendants made a tactical decision not to file any response in State court based on their assumption that their own error in omitting Bullock from the Notice of Removal and other papers would be excused.

The prejudice to Bullock is that he would be required to litigate in this Court on issues unlikely to be dispositive of his claim. This prejudice can be illustrated by considering the flip-side of the balance of hardships: Where is the prejudice to Defendants in requiring them to seek relief from the default judgment in the

---

[13]  Defendants take a "shotgun" approach (Doc. 15, p. 4) purporting to invoke five different subdivisions under Federal Rule of Civil Procedure 60 (b). The standard for relief varies among the subdivisions and Defendants make no effort to distinguish the grounds applicable to each. Notably, they have omitted additional criteria applicable under certain of those provisions such as the need for "extraordinary circumstances". *See Budget Blinds,* 536 F.3d at 255-56.

rendering court?[14]  They already have a pending motion before that court to do so.

The only harm they can identify is the cost of piecemeal litigation by having

Bullock's claim adjudicated in State court, while the captioned-Plaintiffs move

forward in this Court.  But the problem of piecemeal litigation is due to

Defendants' own admitted error in not including Bullock's name together with the

captioned-Plaintiffs when filing the Notice of Remand and related papers.  And,

more fundamentally, Defendants seem content to engage in piecemeal litigation.

They asked this Court (Doc. 4; 11, pp. 11-12) to remand the State law causes of

action to State court but only after addressing the federal constitutional issue here.

　　　But a ruling by this Court that the challenged ordinances do not violate the

U.S. Constitution will not dispose of the case, as Bullock and the captioned-

Plaintiffs will likely still prevail in having the ordinances declared invalid under

State law.  The only way to avoid piecemeal litigation in light of Defendants'

tactics would be if this Court were to declare all the challenged ordinances do

violate the U.S. Constitution.  It is indeed bizarre that Defendants seem to insist

that this Court either issue a ruling that may serve as nothing more than an

---

[14]  This question may not simply be illustrative of the burden on Bullock to the
extent the Court addresses Rule 60(b)(6) where Defendants would be required to
demonstrate that they would suffer an "extreme and unexpected hardship".  *See
Budget Blinds*, 536 F.3d at 255-56.  Moreover, in the context of Rule 60(b)(6)
analysis, it becomes even more difficult for Defendants to escape responsibility for
their tactical decisions.  *See id.* ("extraordinary circumstances rarely exist when a
party seeks relief from a judgment that resulted from the party's deliberate
choices").

academic exercise if it rules *for them* on the federal constitutional arguments, on the one hand, or which would constitute the broadest possible ruling *against them,* on the other hand.  It seems likely that the explanation for such a strange tactic is simply to delay both this Court and the State court from addressing the merits of the dispositive issues under "crystal clear" State law while hoping to exhaust Bullock and the captioned-Plaintiffs through a tangled set of procedural motions. The prejudice to Bullock is that the Defendants request judgment in his favor on the dispositive State law issues be vacated only to force him to litigate the federal constitutional issue.

     B.    *This Court Should Not Enjoin the State Court*

         1.    *The Anti-Injunction Act*

The first obstacle to any federal court issuing an injunction against a proceeding in State court is the Anti-Injunction Act, 28 U.S.C. § 2283, which Defendants do not even acknowledge.  That statute "is designed to prevent conflict between federal and state courts," *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 630 (1977), and because "the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions [enumerated in the Act] should not be enlarged by loose statutory construction," *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,*

398 U.S. 281, 286 (1970).  Even if this case fits within one of the three exceptions specified in the Act, that is only the first obstacle.

2. *Younger Abstention*

In *Younger v. Harris,* 401 U.S. 37 (1971), the Supreme Court recognized that principles of equity and comity required federal courts to abstain from enjoining State court proceedings independent of any consideration of the Anti-Injunction Act.  *Id.* at 54.  The Court explained: "Because our holding rests on the absence of the factors necessary under equitable principles to justify federal intervention, we have no occasion to consider whether 28 U.S.C. § 2283 . . . would in and of itself be controlling under the circumstances of this case.  *Id. Younger* itself was a case asserting a claim under 42 U.S.C. § 1983.  Nonetheless, the Supreme Court concluded that a federal court should not issue an injunction if there were State court proceedings available to ascertain the constitutionality of the State statute.

Academic criticism of *Younger* abstention tends to focus on the on-going harm to the federal court *plaintiff* during the pendency of State court proceedings. The concern is that when an individual being prosecuted under State law for engaging in political speech, for example, cannot secure an injunction from the federal court in a Section 1983 action, a later State court invalidation of the State law cannot restore the lost opportunities to speak.  That typical example illustrates

14

how far outside the norm the current case stands.  Here, it is the political

subdivision of a State and local officials who seek to invoke federal court

intervention rather than litigate in their own county court.  And here, it is Bullock

and the captioned-Plaintiffs who face on-going harm from the delaying tactics as

well as the added costs of responding to the seemingly-endless stream of motions.

Whatever critique some academics may have of the Supreme Court's abstention

doctrine is inapposite to a case in this posture.

Although the State court proceeding that the Supreme Court held should not

be enjoined in *Younger* was a criminal prosecution, subsequent cases make clear

that the doctrine is applicable in the context of civil cases pending in State court.[15]

The Supreme Court first extended *Younger* abstention to civil cases where

government officials are a party (as they would be in a criminal prosecution).  *See*

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604 (1975); *Trainor v. Hernandez,* 431

U.S. 434, 444 (1977).  Then the Court extended the doctrine to civil cases in which

---

[15]  The Supreme Court extended the doctrine in other directions as well, such as
generally prohibiting federal declaratory relief when *Younger* abstention would
preclude an injunction.  *See Samuels v. Mackell,* 401 U.S. 66, 72-73 (1971).   And,
even when no State proceedings were pending when a federal civil action was
commenced, the Supreme Court held that if a State prosecution was initiated
before the federal case was substantially completed, the federal court should
abstain.  *See Hicks v. Miranda,* 422 U.S. 332, 349 (1975).  Moreover, the doctrine
has been applied to require abstention due to pending administrative proceedings.
*See Ohio Civil Rights Commission v. Dayton Christian Schools,* 477U.S. 619, 625-
27 (1986).

there was no State or local government party but in which there was some

governmental interest.  *See Juidice v. Vail,* 430 U.S. 327, 335 (1977).  And,

ultimately, the Court advised:  "So long as those challenged statutes relate to

pending state proceedings, proper respect for the ability of state courts to resolve

federal questions presented in state court litigation mandate[] that the federal court

stay its hand."  *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 13 (1987).

Although the Supreme Court has recognized a few exceptions to *Younger*

abstention, Defendants do not[16] and cannot argue that any of them apply here.

Because Bullock is a private party and the case he filed in State court is the first

action he brought against these Defendants with respect to the ordinances at issue,

it is obvious that harassment through bad faith criminal prosecutions is not at issue.

*See Kugler v. Helfant,* 421 U.S. 117, 126 n.6 (1975).  Because, in the posture of

this case, it is Bullock (and the captioned-Plaintiffs) who challenge the

constitutionality of the ordinances, it is clear that permitting the issuance of an

injunction with respect to patently unconstitutional laws cannot benefit the

Defendants.[17]  *See Younger,* 401 U.S. at 53-54.  There can be no argument that "it

---

[16]  Defendants do not claim any exception to *Younger* abstention applies because
they completely ignored the issue as they did with regard to the Anti-Injunction
Act.

[17]  Indeed, the fact that the Court of Common Pleas of Dauphin County recently
enjoined the City of Harrisburg from enforcing several of the ordinances at issue in
this case finding, *inter alia,* that plaintiffs in that action are likely to prevail on the

plainly appears" that the State courts "would not afford adequate protection" of federal constitutional rights, *id.* at 45, as it is Bullock (and the captioned-Plaintiffs) who seek to vindicate their rights, not the Defendants in this action and, moreover, Pennsylvania's courts have repeatedly avoided even ruling on the federal constitutional issue when State law was dispositive.  And there can be no argument that Bullock (and the captioned-Plaintiffs) asserted the protection of *Younger* abstention in this case.[18]  *See Swisher v. Brady,* 438 U.S. 204, 213 n.11 (1978) (stating a court should not raise the issue *sua sponte*).

In a case such as this where Bullock's State court action was pending, the political subdivision of a State and local officials are parties to the action, and the State court action itself directly raises questions regarding the validity of conflicting State laws and their enforcement, it is difficult to conclude that *Younger* abstention does not preclude federal court intervention.

3.     *Additional Equitable Considerations*

This case does not present a merely hypothetical conflict between federal and State courts.  Only an exceptionally broad injunction involving parties not

---

merits of the argument those ordinances are preempted by State statute weighs heavily against granting Defendants any preliminary relief.  *See U.S. Law Shield v. Harrisburg,* No. 2015-cv-00255-EQ (Feb. 28, 2015) (Exhibit 6).

[18]  Plaintiffs raised the issue of *Younger* abstention in their first motion filed with this Court (Doc. 5, pp. 8-9) but Defendants have yet to address it except for mischaracterizing it as *Burford* abstention (Doc. 11, p. 15; Doc. 21, pp. 18-19).

before this Court would even purport to prohibit the State court from addressing the issues in this case.  As Plaintiffs observed as early as their Motion to Remand (Doc. 6, pp. 2, 10) , there are other cases pending in the same State court against the same Defendants challenging the same ordinances.  In the case brought by U.S. Law Shield, the State court has already issued a preliminary injunction against the City of Harrisburg after finding that the plaintiffs in that case were likely to prevail on the merits under exclusively State law theories.  *See* Exhibit 6, pp.  4-7.  The State court further determined that parties in the same posture as Bullock (and the captioned-Plaintiffs) suffer "immediate and irreparable harm" as a result of those ordinances and that "greater harm would result in refusing the [preliminary relief sought by the plaintiffs] than granting it."  *Id.,* p. 10.  In light of that development, enjoining the same State court from proceeding on Bullock's action would create an unnecessary conflict.  The City would be prohibited from enforcing its ordinances but the State court would simultaneously be prohibited from pressing forward to ensure a final injunction would be put in place unless the State court were enjoined from proceeding solely with respect to Bullock's claim.

It would further be inequitable to preclude Bullock from litigating his case while the State court addresses the very same issues in a case in which he is not a party.  Doing so merely serves to deny any opportunity to consolidate cases pending in State court for the benefit of judicial efficiency.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Honorable

Court deny Defendants' Motion to Vacate the State Default Judgment and Enjoin

State Court.

Respectfully Submitted,

PRINCE LAW OFFICES, P.C.

DATED: March 26, 2015

Joshua Prince, Esq.
PA ID 306521
*Attorney for Plaintiffs*

PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

## **Certification of Counsel**

Plaintiffs' counsel certifies that this brief is 4,707 words, exclusive of Cover Page, Tables of Contents and Authorities, Certificate of Service and this section.


_____
Joshua Prince, Esq.

Dated: March 26, 2015

## Certificate of Service

I, Joshua Prince, Esq., hereby certify that on March 26, 2015, I served a true and correct copy of Plaintiffs' *Memorandum in Opposition to Defendants' Motion to Vacate the State Default Judgment and Enjoin State Court* on the following parties via this Courts electronic filing system:

Frank J. Lavery, Esq.
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
flavery@laverylaw.com

Joshua M. Autry, Esq.
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
jautry@laverylaw.com
*Attorneys for Defendants*

                              Respectfully Submitted,


                              Joshua Prince, Esq.
                              PA Attorney Id. No. 306521
                              *Attorney for Plaintiffs*
                              PRINCE LAW OFFICES, P.C.
                              646 Lenape Road
                              Bechtelsville, PA 19505
                              (610) 845-3803 (t)
                              (610) 845-3903 (f)
                              Joshua@PrinceLaw.com