# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVNIA**

| | | |
|---|---|---|
| **FIREARM OWNERS AGAINST** | : | |
| **CRIME, KIM STOLFER, and** | : | |
| **JOSHUA FIRST,** | : | **Jury Trial Demanded** |
| Plaintiffs | : | |
| | : | |
| **v.** | : | **Judge Yvette Kane** |
| | : | |
| **CITY OF HARRISBURG,** | : | |
| **MAYOR ERIC PAPENFUSE,** | : | **Docket No. 1:15-cv-322-YK** |
| **and POLICE CHIEF THOMAS** | : | |
| **CARTER,** | : | |
| Defendants | : | |

## Declaration of Joshua Prince, Esq.

I, Joshua Prince, Esq., am competent to state and declare the following based on my personal knowledge:

1.     I represent the Plaintiffs, Firearm Owners Against Crime, Kim Stolfer and Joshua First, in the above-captioned matter, as well as Howard Bullock, the additional plaintiff in the State court action who was omitted from the Notice of Removal naming the Plaintiffs captioned above.

2.     Before filing the Plaintiffs' "Motion for Entry of Default" in the above-captioned matter, I examined the Court's ECF docketing system to determine what types of filings it permitted with regard to the request for the Entry of Default under Federal Rule of Civil Procedure 55(a).

3.     As evidenced by the screen shot of the ECF menu choices (attached hereto as Exhibit A), the only applicable choice is coded by the Court as a "Motion for Entry of Default".

4.     Accordingly, On February 27, 2015, I electronically filed it consistent with the applicable choices and it was entered as entry 8.

5.     On March 2, 2015, I was advised by the Clerk of Court to file a proposed order for the entry of default, notice of which is listed as Docket Annotation of March 2, 2015, in the docket.

6.     After not being able to determine an applicable category for filing a proposed order, I contacted the Clerk of Court and was directed to speak with Paula.

7.     Paula informed me that the system was not intuitive and somewhat restricted in these matters and that I should file it using a Social Security filing type.

8.     When I stated that I thought it was odd that the ECF system required that I file the Entry of Default as a Motion and did not have an application category, she laughed and said that there is a category related to Social Security filings for an Entry of Default, as well, but that a request for an entry of default is a request under either category and that if there was ever an issue with how

something was filed, the Clerk's Office would either reject the filing or send a notice, like the one regarding the proposed order, requesting that it be resubmitted.

8.     As such, immediately thereafter, I filed the proposed order, which is docketed as entry 9.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of April, 2015.


_____
Joshua Prince, Esq

# Exhibit 1A

**Motions**

default | Click your selection, or use arrows to highlight it and press Enter.

**Available Events** (click to select events)     **Selected Events** (click to remove events)

| |
|---|
| Default Judgment |
| Entry of Default |
| Set Aside Default |

[ Next ] [ Clear ]

# Exhibit 2

U.S. LAW SHIELD OF PENNSYLVANIA, LLC,          : IN THE COURT OF COMMON PLEAS
EX REL. TODD HOOVER;                           : DAUPHIN COUNTY, PENNSYLVANIA
JUSTIN J. MCSHANE, AN INDIVIDUAL,              :
      Plaintiffs                               :
                                   :
                                   :
               v.                                    : NO.  2015 CV 00255 EQ
                                   :
                                   :

CITY OF HARRISBURG;                            :
MAYOR ERIC PAPENFUSE;                          : CIVIL ACTION LAW
WANDA WILLIAMS,                                :
SANDRA REID,                                   :
BRAD KOPLINSKI,                                :
BEN ALATT,                                     :
JEFF BALTIMORE,                                :
SUSAN WILSON,                                  :
SHAMAINE DANIELS,                              :
HARRISBURG CITY COUNCIL MEMBERS;               :
AND THOMAS CARTER, CITY OF HARRISBURG          :
CHIEF OF POLICE,                               :
      Defendants                               :

2015 FEB 25  AM 11: 08
DAUPHIN COUNTY
PENNA

## OPINION

    Plaintiffs have filed a Motion for Preliminary Injunction seeking to enjoin the City of

Harrisburg *et al.* from enforcing five city ordinances dealing in one manner or another with

firearms.  The Plaintiffs assert these city ordinances violate the Uniform Firearms Act (18 Pa.C.S.A.

§ 6120) arguing that state law preempts the city ordinances with respect to firearms.  The issues

have been briefed and a hearing was held February 6, 2015.

The Uniform Firearms Act provides:

> (a) General Rule. – No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition, or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

18 Pa.C.S.A. § 6120(a).

The Uniform Firearms Act was amended by Act 192 of 2014 to add, among other

provisions:

> (a.2) Relief. – A person adversely affected by an ordinance, a resolution, a regulation, a rule, practice or any other action promulgated or enforced by a county, municipality or township prohibited under subsection(a) or 53 Pa.C.S. § 2962(g) (relating to limitation on municipal powers) may seek declaratory or injunctive relief and actual damages in an appropriate court.

> (b) Definitions.

> "Persons adversely affected." Any of the following:

> (1) A resident of this Commonwealth who may legally possess a firearm under federal and state law.
> (2) A person who otherwise has standing under the laws of this Commonwealth to bring an action under subsection (a.2).
> (3) A membership organization, in which a member is a person described under paragraph (1) or (2).

Act 192 of 2014.

Article 1, Section 21 of the Constitution of Pennsylvania provides: "The right of the citizens

to bear arms in defense of themselves and the State shall not be questioned." "Because the

ownership of firearms is constitutionally protected, its regulations are a matter of statewide

concern." Ortiz v. Commonwealth of Pennsylvania, 681 A.2d 152, 156 (Pa. 1996). The regulation

of firearms is a matter of concern in all of Pennsylvania and the General Assembly, not municipalities, is the proper forum for the imposition of such regulation.  Id.

The five city ordinances challenged are:  Parks – Hunting, firearms and fishing (§ 10-301.13) B, C [hereinafter, referred to as "Park Ordinance"][1]; Emergency measures  (§ 3-355.2) A(1), (2), (3), B (8) [hereinafter, referred to as "Emergency Ordinance"][2]; Possession of firearms by minors (§ 3-345.1) [hereinafter, referred to as "Minors Ordinance"][3]; Lost and Stolen Firearms (§ 3-345.4) [hereinafter, referred to as "Lost and Stolen Ordinance"][4]; and, Discharging weapons or firearms (§ 3-345.2) [hereinafter, referred to as "Discharge Ordinance"][5].

Under Act 192 the Plaintiffs have standing to challenge all five city ordinances.  Even absent Act 192, the Plaintiffs would have standing with respect to the Parks Ordinance.  See Dillon v. City of Erie, 83 A.3d 467 (Pa.Cmwlth. 2014); Nat'l Rifle Ass'n v. City of Philadelphia, 977 A.2d 78, 81 (Pa.Cmwlth. 2009).

The Defendants argue Act 192 is unconstitutional and that this Court should stay these proceedings pending the challenge to the constitutionality of Act 192 currently before the Commonwealth Court in Leach v. Com of Pa., 585 MD 2014.  This Court declines to decide the Act's constitutionality or stay the proceedings.  The Commonwealth Court is the appropriate forum to resolve this constitutional question.  The timing and effect of any decision by the Commonwealth Court and a final decision after appeal is uncertain.  Furthermore, the constitutionality of the added standing provisions are being challenged not the underlying pre-emption section of the Uniform Firearms Act.

3

We are guided by the principle that "acts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed." Pennsylvania State Ass'n of Jury Comm'rs v. Com., 64 A.3d 611, 618 (Pa. 2013). Thus, a statute will not be found unconstitutional "unless it is clearly, palpably, and plainly violates the Constitution." Id. If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality. Id.

The six essential prerequisites that a moving party must demonstrate to obtain a Preliminary Injunction are as follows:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate offending activity; and (6) the preliminary injunction would not adversely affect the public interest.

Seiu Healthcare Pennsylvania v. Commonwealth of Pennsylvania, 104 A.3d 495, 501-502 (Pa. 2014).

Plaintiffs must prove by preponderance of the evidence that they meet all six prerequisites to obtain a preliminary injunction enjoining the City of Harrisburg from enforcing these ordinances. The critical prerequisite Plaintiffs must prove is whether they have "a clear right to relief and likely to prevail on the merits." We begin our analysis there.

The Plaintiffs challenge the Parks Ordinance subsections B and C as it applies to firearms defined under the Uniform Firearms Act.  The City, by this ordinance regulates and prohibits the possession of firearms in parks.  The State already regulates this activity with respect to parks that the city ordinance also seeks to regulate.  See 34 Pa.S.C.A. § 2508 (Protection of institutions, parks and resorts); § 2507 (Restrictions on shooting); § 2505 (Safety zones).  These state laws regulate but do not prohibit firearms in parks.  In addition, state law under 18 Pa.C.S.A. § 6109 regulates licensure to carry a firearm.  The express language of the Uniforms Firearms Act clearly states that no municipality may in any manner regulate the ownership or possession of firearms.  The Court in Dillon v. City of Erie, 83 A.3d 461 (Pa.Cmwlth. 2014), prior to Act 192, struck down a similar City of Erie ordinance.

> As a result, the trial court erred in determining that Dillon failed to show that he has a clear right to relief because § 6120(a) preempts all firearm regulation thereby prohibiting the city from regulating the possession of firearms in parks.

Id. at 407.  Accordingly, Plaintiffs have sustained their burden in showing a clear right to relief with respect to the Parks Ordinance.

Next we examine the Emergency Ordinance.  The ordinance, which takes effect when the Mayor declares a state of emergency, prohibits the sale or transfer of possession of firearms and ammunition and the display and possession of a firearm in public.  In other words, a licensed gun owner, under these circumstances, cannot carry or possess a firearm in public.  The State regulates emergency measures during a state of emergency under 18 Pa.C.S.A. § 6107.  Section

5

6107 has an exception for licensed gun owners to possess a firearm during a state of emergency.

The express language of Uniform Firearms Act prohibits the municipality from regulating the

ownership, possession and transfer of firearms and ammunition.   Therefore, Plaintiffs have

established a clear right to relief that the Uniform Firearms Act preempts the Emergency

Ordinance.

Similarly, the City's Minors Ordinance, regulates the possession of firearms by minors,

which is regulated under state law.  See 18 Pa.C.S.A § 6110.1.  The City of Harrisburg prohibits a

minor from possessing a firearm, unless they are accompanied by an adult.  The State prohibits a

minor from possessing a firearm, unless they are accompanied by an authorized adult for an

authorized purpose or they are hunting or tapping. 18 Pa.C.S.A § 6110.1.  Accordingly, the Minors

Ordinance[3] is preempted by the Uniform Firearms Act.

The Defendants argue, that the Plaintiffs have not established a clear right to relief

because the ordinances do not regulate "lawful" ownership or possession ... of firearms but,

instead regulate the "unlawful" ownership or possession ... of firearms under the Uniform

Firearms Act.  The Defendants cite Minich v. County of Jefferson, 869 A.2d 1141 (Pa. Cmwlth.

2005) to support their position where the Court made that distinction.  Interestingly, the

Commonwealth Court, four years later, in Nat'l Rifle Ass'n v. City of Philadelphia, 977 A.2d 78 (Pa.

Cmwlth. 2009) with a similar panel of judges rejected that distinction.  In the Philadelphia case,

the municipality argued the General Assembly can only preclude local regulation of "lawful"

6

activity under the Uniform Firearms Act and not "unlawful" activity.  In response, the Court in

Philadelphia held:

> Unfortunately, with respect to matter before us, while we may agree with the City that preemption of 18 Pa.C.S. § 6120(a) appears to be limited to the lawful use of firearms by its very terms, we believe, however, that the crystal clear holding of our Supreme Court in *Ortiz*, that "the General Assembly has [through enactment of § 6120(a) ] denied all municipalities the power to regulate the ownership, possession, transfer or [transportation] of firearms," precludes our acceptance of the City's argument and the trial courts thoughtful analysis on this point.

Nat'l Rifle Ass'n v. City of Philadelphia, 977 A.2d at 82-83.

        This Court follows the more recent holding and reasoning by the Commonwealth Court in

Nat'l Rifle Ass'n v. City of Philadelphia.  Nonetheless, the three city ordinances discussed above,

are more restrictive than state law and therefore, regulate "lawful" conduct.   The Parks Ordinance

prohibits possession of a firearm, which State Law does not.  The Emergency Ordinance does not

contain an exception for self-defense or an exception for those licensed to carry a firearm as the

State Law specifically provides.  The Minors Ordinance does not contain an exception for those

hunting or trapping under Title 34.

        We next look at the city ordinance which places an additional duty on gun owners to

report lost and stolen firearms.   The Court is not persuaded by the Defendants' argument that the

Lost and Stolen Ordinance is not barred by Uniform Firearms Act because "someone who steals a

gun, does not lawfully possess it, and someone who loses a gun does not possess it at all."  This

city ordinance places a duty on the owner of the firearm not a possessor.  And, it is unlikely that one who steals a gun would report it stolen within 48 hours.

The inquiry is whether or not this duty to report lost or stolen firearms is a "regulation of ownership ... of firearms" under the Uniform Firearms Act.  Although these types of ordinances have been challenged in other jurisdictions, courts have not decided whether they violate the preemption section of the Uniform Firearms Act.  Courts have denied challenges based on standing.

In Nat'l Rifle Ass'n v. City of Pittsburgh, 999 A.2d 1256 (Pa. Cmwlth. 2010), the Commonwealth Court was analyzing whether the NRA had standing, prior to Act 192, to challenge a similar city ordinance requiring a gun owner to report lost or stolen firearms.  While the majority decision was that NRA lacked standing, the Court's language, at best dicta, suggests that this duty of a gun owner may not infringe on the right to bear arms or violate the Uniform Firearms Act. See Id. at 1260.  Judge Brobson, in a strong dissent to the majorities holding on standing, suggests that this type of ordinance requiring the reporting of lost or stolen firearms does regulate ownership of firearms under the Uniform Firearms Act and may interfere with the Second Amendment of the United State Constitution and the Pennsylvania Constitution's right to bear arms.

Here, we are not being asked to determine whether this ordinance interferes with the Second Amendment or the Pennsylvania Constitution's right to bear arms.  We are only tasked with determining whether the ordinance violates the Uniform Firearms Act.  There is no state law

8

that regulates lost or stolen firearms.   There is no clear appellate court guidance on point.

Preliminarily, therefore, the court must conclude that Plaintiffs have not proven that this duty

imposed on the owner of a firearm to report a lost or stolen firearm "regulate[s] the lawful

ownership ... of firearms" under the Uniform Firearms Act. 18. Pa.C.S.A. § 6120(a).

Consequently, this Court holds that Plaintiffs have not sustained their burden to show a clear right

to relief at this early stage of litigation.

The last city ordinance challenged is the general ordinance concerning the discharge of

weapons or firearms.   It is surmisable that the purpose of the Discharge Ordinance, enacted in

1971, was to protect public safety by prohibiting the indiscriminate shooting of firearms within the

City.   Target practice in the backyard or vertical discharge of firearms in celebration while safer in

rural portions of Dauphin County may be dangerous within the city limits of Harrisburg.

This Court is not persuaded by the Plaintiffs argument that the Discharge Ordinance

violates the Uniform Firearms Act because it does not contain exceptions for self-defense or for a

police officer discharging a firearm in the line of duty.  It would be illogical for the ordinance to be

interpreted this way or for such persons to be cited in either scenario.   The Court is charged with

deciding if an ordinance violates the Uniform Firearms Act not whether it is well written.  The City

of Harrisburg asserts these exceptions are not necessary to be written into the ordinance because,

obviously, they argue, it would not apply in self-defense or to a police officer.  Since both sides

appear to agree to situations when this ordinance would not and should not apply, perhaps the

parties could agree to amend the ordinance to be clarified and incorporate these exceptions.

Regardless of the wording or lack of wording in the ordinance, there is no state law that regulates this activity. To the contrary, there is a state law that specifically permits municipalities to regulate the discharge of guns. 53 Pa.C.S.A. § 37423 provides: "To the extent permitted by Federal and other State law, counsel may regulate, prohibit and prevent the discharge of guns ... ." See also, 53 Pa.C.S.A. § 3703. Therefore, with respect to the Discharge Ordinance, the Plaintiffs have not demonstrated a clear right to relief.

The Court will now discuss the remaining prerequisite that Plaintiffs must prove with respect to the three ordinances the Plaintiffs have established a clear right to relief. When a city ordinance violates constitutional statutory law, immediate and irreparable harm has been established. Seiu Health Pennsylvania v. Commonwealth of Pennsylvania, 104 A.3d 495, 508 (Pa. 2014). Where city ordinances violate state law, greater harm would result in refusing the injunction than granting it. By enjoining enforcement of these three city ordinances, the injunction properly restores the parties to the status that existed prior to the enactment of the unlawful city ordinances. Similarly, because the three city ordinances are unenforceable, the preliminary injunction is reasonably suited to abate the offending activity and will not adversely affect the public interest. "[W]hen the legislature declares particular conduct to be unlawful, it is tantamount to characterizing as injurious to the public." Id. at 509.

In summary, this Court will grant Plaintiffs Preliminary Injunction enjoining enforcement of three of the City of Harrisburg's Ordinances – the Parks Ordinance[1], the Emergency Ordinance[2] and the Minors Ordinance[3] as these ordinances unlawfully regulate firearms under the Uniform

Firearms Act. This Court denies Plaintiffs Preliminary Injunction with respect to the Lost and Stolen Ordinance[4] and the Discharge Ordinance[5].

Even if Act 192 is declared unconstitutional, it would only make it more difficult to challenge the city ordinances but not affect the underlying preemption section of the Uniform Firearms Act. The preemption section, enacted in 1974, is clearly constitutional and its constitutionality is not being challenged. Consequently, this Court finds the City of Harrisburg is in violation of State Law with three of their city ordinances.

We have set forth the issues presented to this Court for decision. In addition to other arguments, the City of Harrisburg has suggested that these ordinances are in the interest of public safety needed to reduce the epidemic of gun violence. This stated goal for the ordinances in question is indeed laudable as there is no more important function of government than the protection of its citizens. Gun violence is not unique to the City of Harrisburg but is a statewide concern necessitating uniform laws. The interest of public safety is protected by enforcing state law. Most of the criminal cases coming before this court concerning gun violence involve defendants who illegally obtain guns, do not have a license to carry a firearm and are persons prohibited by law from owning or possessing a firearm due to prior convictions of certain enumerated offenses. 18 Pa.C.S.A. §§ 6106, 6105. Those convicted of these offenses often receive lengthy state prison sentences.

Whether or not the city ordinances in question, that carry the stigma of only a summary offense, have any appreciable deterrents or effect on the epidemic of gun violence is not known.

11

The Minors Ordinance was passed in 1951; the Emergency Ordinance was passed in 1969; and, the Parks Ordinance was passed in 1991.  It would be difficult to argue with any degree of conviction that gun violence within the City of Harrisburg has decreased during that time. Perhaps an effective and targeted implementation of the City of Harrisburg's Community Policing Initiative could be one way to have an impact on gun violence.   Some analysis of gun violence suggest the causes are varied and complex and require the scrutiny to go beyond gun laws.  Instead, gun violence is associated with a confluence of many risk factors including mental health, decline in parenting and values, violence depicted in movies and videos and other sociocultural factors.

Although interesting, necessary and important, an examination of the root cause of gun violence and ways to effectively reduce this violence are not before the Court.  We are charged only with deciding whether city ordinances violate the Uniform Firearms Act which we do with the following Order:

| U.S. LAW SHIELD OF PENNSYLVANIA, LLC, | : IN THE COURT OF COMMON PLEAS |
|---|---|
| EX REL. TODD HOOVER; | : DAUPHIN COUNTY, PENNSYLVANIA |
| JUSTIN J. MCSHANE, AN INDIVIDUAL, | : |
|     Plaintiffs | : |

v.       : NO.  2015 CV 00255 EQ

CITY OF HARRISBURG;
MAYOR ERIC PAPENFUSE;       : CIVIL ACTION LAW
WANDA WILLIAMS,
SANDRA REID,
BRAD KOPLINSKI,
BEN ALATT,
JEFF BALTIMORE,
SUSAN WILSON,
SHAMAINE DANIELS,
HARRISBURG CITY COUNCIL MEMBERS;
AND THOMAS CARTER, CITY OF HARRISBURG
CHIEF OF POLICE,
    Defendants

## ORDER OF COURT

AND NOW this 25th day of February, 2015, upon consideration of Plaintiff's Motion for

Preliminary Injunction;

IT IS HEREBY ORDERED and DECREED that Plaintiffs' Motion is GRANTED in part and

DENIED in part.

13

The Plaintiffs' Motion is GRANTED and the City of Harrisburg is enjoined from enforcing ordinances § 10-301.13 B, C (Parks – Hunting, firearms and fishing); § 3-355.2 A (1), (2), (3), B (8) (Emergency measures); and § 3-345.1 (Possession of firearms by minors) as these ordinances apply to firearms under the Uniform Firearms Act.

Plaintiffs' motion is DENIED with respect to ordinances § 3-345.4 (Lost and stolen firearms) and § 3-345.2 (Discharging weapons or firearms).

BY THE COURT:

_____
Andrew H. Dowling, Judge

Distribution:

Justin J. McShane, Esquire, Michael A. Giaramita, Jr., Esquire, THE McSHANE FIRM LLC , 3601 Vartan Way, Second Floor, Harrisburg, PA  17110 (Counsel for Plaintiffs) (via e-mail, facsimile and U.S. First Class Mail)

Frank Lavery, Jr., Esquire, Joshua M. Autry, Esquire, Jessica S. Hosenpud, Esquire,  LAVERY FAHERTY PATTERSON, 225 Market Street, Suite 304, P.O. BOX 1245, Harrisburg, PA 17108-1245 (Counsel for Defendants) ) (via e-mail, facsimile and U.S. First Class Mail)

Lili Hagenbuch, Esquire, Deputy Court Administrator (Civil)

FEB 2 5 2015

I hereby certify that the foregoing is a true and correct copy of the original filed.

_____
Prothonotary

---

1. Chapter 10-301 Parks; §10-301.13 Hunting, firearms and fishing.
   B. No person shall use, carry or possess firearms of any description or air rifles, spring guns, bow and arrows, slings or any form of weapons potentially inimical to wild life and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.
   C. No person shall shoot or propel an object from any of the foregoing into park areas from beyond park boundaries or while in a park.

2. Chapter 3-355. State of Emergency; §3-355.2 Emergency measures
   A. Whenever the Mayor declares that of emergency exits, the following emergency prohibitions shall thereupon be in effect during the period o said emergency and throughout the City:
      (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.
      (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size of description.
      (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement office or person in military service acting in an official performance of his or her duty.
   B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

      (8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

3. Chapter 3-345. Weapons and Explosives; §3-345.1. Possession of firearms by minors.
   It shall be until of any minor under the age of 18 years to have in his or her possession, except in his or her place of residence, any firearm, flobert rifle, air gun, spring gun, or any implement which impels with force a metal pellet of any kind, unless said minor is accompanied by an adult.

4. Chapter 3-345. Weapons and Explosives; §3-345.4. Lost and Stolen Firearms
   A. Any person who is the owner of a firearm that is lost or stolen shall report the loss or theft of that firearm to an appropriate local law enforcement office within 48 hours after discovery of the loss or theft.
   B. For the purpose of this section, the term "firearm" shall be defined as any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt, or cylinder, whichever is applicable.

5. Chapter 3-345. Weapons and Explosives; §3-345.2 Discharging weapons or firearms.
   No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any kind within the city, except at supervised firing ranges and bona fide educational institutions accredited by the Pennsylvania Department of Education and the approval of the Mayor or chief of police, or at a firing range operated by Bureau of Police.