Joshua Prince, Esq.
Atty ID: 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville PA, 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

Attorney for Plaintiff

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime; | : | Jury Trial Demanded |
| Kim Stolfer; | : | |
| Joshua First; AND | : | |
| Howard Bullock | : | Judge Andrew H. Dowling |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| City of Harrisburg; | : | |
| Mayor Eric Papenfuse; AND | : | Docket No. 2015-CV-354-EQ |
| Police Chief Thomas Carter | : | |
| | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION TO OPEN OR STRIKE DEFAULT JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   A. *Defendants' Demurrers Are Inappropriate for a Motion to Strike* . . . . . . 6

   B. *This Court Had Jurisdiction to Enter the Default Judgment* . . . . . . . . . . 8

   C. *Defendants Did Not Demonstrate an Intention to Respond to Howard Bullock's Claims in the State Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   D. *Defendants Were Required, Under Pa.R.C.P. 1018, to Accurately Reflect All Plaintiffs in the Caption of All Legal Papers* . . . . . . . . . . . . . . . . . . . 9

   E. *There Were No "Technical Defects" Warranting the Striking of the Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   F. *Defendants Do Not Offer a Reasonable Excuse to Open the Judgment* . .14

   G. *Defendants Do Not Offer Meritorious Defenses to Open the Judgment* ..15

      i.   Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      ii.  Preemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      iii. Individual Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

         1. *Defendants Papenfuse and Carter have cause harm to Plaintiffs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

         2. *Defendants Papenfuse and Carter are not immune under high official immunity* . . . . . . . . . . . . . . . . . . . . . . . . . 19

         3. *Defendants Papenfuse and Carter violated a clearly defined right* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      iv.  Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**V.**    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Hydro No. 1 v. American Line Builders, Inc.,* 722 A.2d 189
(Pa. Super. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Barron v. William Penn Realty Co.,* 361 A.2d 805 (Pa. Super 1976) . . . . . . . . . . . . 8, 11

*Caba v. Weaknecht,* 64 A.3d 39 (Pa. Cmwlth. Ct. 2013) . . . . . . . . . . . . . . . . . . . . . 22

*City of Philadelphia Water Revenue Board v. Towanda Properties, Inc.,*
976 A.2d 1244 (Pa. Cmwlth. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of Erie v. Northwestern Pennsylvania Food Council,* 322 A.2d 407
(Pa.Cmwlth. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Clarke v. House of Representatives,* 957 a.2d 361 (Pa. Cmwlth. 2008) . . . . . . . . . . . 3, 16

*Commonwealth v. Ryan,* 327 A.2d 531 (Pa. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Commonwealth v. Spotz,* 99 A.3d 866 (Pa. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dillon v. City of Erie,* 83 A.3d 467 (Pa.Cmwlth. 2013) . . . . . . . . . . . . . 2, 15, 15 n.9, 16,
17, 19

*District of Columbia v. Heller,* 554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Drake v. Filko,* 724 F.3d 426 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 21 n.12

*Durham v. McElynn,* 72 A.2d 68 (Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jonnet v. Bodick,* 244 A.2d 751 (Pa. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kearney v. Hibner,* 2014 WL 1234527 (M.D.Pa. March 25, 2014) . . . . . . . . . . . . . . . 8, 9

*Lewis v. Erie Ins. Exchange,* 421 A.2d 1214 (Pa. Super. 1980) . . . . . . . . . . . . . . . . . . 12

*Lindner v. Mollan,* 677 A.2d 1194 (Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Matson v. Margiotti,* 88 A.2d 892 (Pa. 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Montgomery v. City of Philadelphia,* 140 A.2d 100 (Pa. 1958) . . . . . . . . . . . . . . . . . . 19

*Muscarello v. United States,* 524 U.S. 125 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*National Rifle Association v. Philadelphia*, 977 A.2d 78 (Pa. Cmwlth. 2009) . . . . . . 3, 16

*Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 17

*Peters Township Sanitary Auth. v. American Home and Land Dev. Co.*,
    696 A.2d 899 (Cmwlth. Ct. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schneck v. City of Philadelphia*, 373 A.2d 227 (Pa. Cmwlth. 1978) . . . . . . . . . . . . . . 16

*Schultz v. Erie Insurance Exchange*, 477 A.2d 471 (Pa. 1984) . . . . . . . . . . . . . . . . . 5 n.6

*U.S. Law Shield v. City of Harrisburg*, No. 2015-cv-255 (M.D.Pa. 2015) . . . 3, 15 n.9, 16

**Statutes**

*State*

18 Pa.C.S.A. § 5301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 Pa.C.S.A. § 6101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 Pa.C.S.A. § 6120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 22

53 P.S. § 41411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

53 P.S. § 41413 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Federal*

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Rules of Procedure**

Pa.R.C.P. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Pa.R.C.P. 237.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.6

Pa.R.C.P. 237.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 n.3, 3, 4, 5, 5 n.6, 7

Pa.R.C.P 1018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Pa.R.C.P. 1024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Joshua Prince, Esq.
Atty ID: 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville PA, 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

Attorney for Plaintiff

## IN THE COURT OF COMMON PLEAS OF
## DAUPHIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime; | : | Jury Trial Demanded |
| Kim Stolfer; | : | |
| Joshua First; AND | : | |
| Howard Bullock | : | Judge Andrew H. Dowling |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| City of Harrisburg; | : | |
| Mayor Eric Papenfuse; AND | : | Docket No. 2015-CV-354-EQ |
| Police Chief Thomas Carter | : | |
| | : | |
| Defendants | : | |

### BRIEF IN SUPPORT OF PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION TO OPEN OR STRIKE DEFAULT JUDGMENT

Plaintiffs Firearm Owners Against Crime, Kim Stolfer, Joshua First, and Howard

Bullock [collectively, "Plaintiffs"],[1] by and through their counsel, Joshua Prince, Esq.,

and Prince Law Offices, P.C., hereby submit this Brief in Support of their Answer to

Defendants' Motion to Open or Strike Default Judgment.

---

[1] Throughout Defendants' Petition to Open or Strike Default Judgment, they vacillate between Plaintiff, referring to Howard Bullock, and Plaintiffs referring to all the original Plaintiffs in this action. As the undersigned believes that it is undisputed that Firearm Owners Against Crime, Kim Stolfer and Joshua First were removed to U.S. District Court for the Middle District of Pennsylvania, Defendants' Petition should only be in reference to Plaintiff Howard Bullock. Nevertheless, given the vacillation in Defendants Petition, Plaintiff Bullock in submitting this brief will reference it as applicable to all Plaintiffs.

1

I.   **PROCEDURAL HISTORY**

Plaintiffs filed a verified Complaint on January 16, 2015 with this Court.[2]  The Complaint was served on Defendants on January 20, 2015.  Plaintiffs' counsel submitted a Praecipe to Substitute Verification on January 24, 2015, and properly served these on Defendants, pursuant to Pa.R.C.P. 440(a)(2)(i), since no attorney had entered his/her appearance at that time.  On January 28, 2015, current Defense Counsel entered its appearance, which was received by the undersigned on January 30, 2015.

On February 13, 2015, Defendants filed a Notice of Removal to Federal court. Defendants failed, however, to include Plaintiff Howard Bullock as a Plaintiff in the removed case.  Defendants admit that Mr. Bullock was excluded from the enumerated list of Plaintiffs on the caption of all filings, was not mentioned on any of the administrative paperwork, and was not mentioned by name in the body of any of the filings. *See*, Def. to Petition Open or Strike Default, ¶¶ 8, 10-12.

On February 19, 2015, Plaintiffs mailed the requisite 10-Day Notices to both Defendants and Defense Counsel.  Eight days later, on February 27, 2015, Defendants filed a Motion to Strike 10-Day Notices.  They did not file an Answer, nor did they file Preliminary Objections challenging the jurisdiction of this Court.  Because no responsive pleading had been filed, Plaintiffs filed a Praecipe for Default with this Court, which granted the default as to Howard Bullock on March 3, 2015.  Nine days after the entry of

---

[2] Kim Stolfer signed the verification on behalf of Firearm Owners Against Crime and himself, while Plaintiff's counsel, Joshua Prince, Esq., signed for Plaintiffs Joshua First and Howard Bullock, who were unavailable to sign, as stated in the verification.

default, on March 12, 2015, Defendants filed a Petition to Open or Strike Default

Judgment, with their proposed preliminary objections.[3]


## II.   FACTS

At the time this litigation began, Defendants had numerous ordinances[4] restricting

an individual's right to keep and bear arms. Article I, Section 21 of the Pennsylvania

Constitution, Title 18, Pa.C.S.A. § 6120, and the relevant case law interpreting them,

preempt local governments from promulgating or adopting *any* ordinances that regulate

the ownership, possession, transfer, or transportation of firearms, in *any* manner. *See*

*also, Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996); *Dillon v. City of Erie*, 83 A.3d

467 (Pa.Cmwlth. 2013); *National Rifle Association v. Philadelphia*, 977 A.2d 78 (Pa.

Cmwlth. 2009); *Clarke v. House of Representatives*, 957 A.2d 361 (Pa.Cmwlth. 2008).

In a separate action, *U.S. Law Shield v. Harrisburg*, No. 2015-cv-00255-EQ, in

which Defense Counsel also represents Defendants, this Court recently enjoined the City

of Harrisburg from enforcing Ordinances § 10-301.13(B) and (C) (Parks – Hunting,

firearms and fishing); § 3-355.2(A)(1), (2), (3), and (B)(8) (Emergency Measures); and §

3-345.1 (Possession of firearms by minors), finding, *inter alia*, that Plaintiffs in that

---

[3] Pursuant to Pa.R.C.P. 237.3, Defendants are prohibited from filing preliminary objections. They must file an Answer, which they also failed to attach to their Petition to Open or Strike Default Judgment, as required by Rule 237.3.

[4] Harrisburg's ordinances challenged here are as follows: 3-345.1 (Possession of firearms by minors); 3-345.2 (Discharging weapons or firearms); 3-345.4 (Lost and stolen firearms); 3-345.99 (Providing for penalties); 3-399 (Providing for penalties); 3-355.2 (Emergency measures); 10-301.13 (Hunting, firearms and fishing in city parks); 10-301.99 (Providing for penalties); 1-301.99 (Providing for penalties) (collectively "Ordinances")

action are likely to prevail on the merits of the argument those ordinances are preempted by Pennsylvania's Uniform Firearms Act (hereinafter "UFA").

Prior to filing this lawsuit, counsel for Plaintiffs submitted a letter to Defendant City informing it of the violations of the Uniform Firearms Act.  Defendant Papenfuse then stated to the media that Defendant City's "police department feels that [the laws] are in the public interest, and I do, too." [5]  Likewise, Defendant Carter stated that Harrisburg police officers regularly cite violations of the discharge ordinance and minor law. After Defendants refused to take action to repeal the ordinances, Plaintiffs filed suit.


III.   **QUESTIONS PRESENTED**

1.  Have Defendants complied with Pa.R.C.P. 237.3?

    **Suggested Answer: No**

2.  Have Defendants demonstrated that a fatal defect exists on the face of the record such that striking the default judgment is warranted?

    **Suggested Answer: No**

3.  Have Defendants demonstrated (1) reasonable excuse for failing to respond to Plaintiffs' Complaint and (2) a meritorious defense?

    **Suggested Answer: No**

---

[5] Defendant Papenfuse is quoted by PennLive's reporter Christine Vendel in "Harrisburg stands firm on gun regulations despite threat of lawsuit," January 13, 2015, available at http://www.pennlive.com/midstate/index.ssf/2014/12/harrisburg_gun_regulations_law.ht ml.

4

## IV.   **ARGUMENT**

In Defendants' Petition to Open or Strike Default Judgment ["Petition"], they fail

to attach an answer, as required by Pa.R.C.P. 237.3, instead attaching preliminary

objections. Rule 237.3 is exactingly clear that after a default judgment has been entered,

if the aggrieved party files a petition for relief within ten (10) days, the petition "shall

have attached thereto a verified copy of the complaint or <u>answer</u> which the petitioner

seeks leave to file." (Emphasis added). Furthermore, a court can only consider opening

the judgment if the "<u>answer</u> states a meritorious cause of action or defense." Illustration 5

to Rule 237.3, which reflects this matter's exact scenario, clearly reflects that Defendants

are precluded from filing preliminary objections.

> The defendant files the petition to open the judgment within ten days of the date
> on which the prothonotary enters the judgment on the docket and seeks leave to
> file the preliminary objections attached to the petition. <u>The defendant is not
> entitled to the benefit of Rule 237.3(b) because, although the petition is timely
> filed, the rule does not provide for preliminary objections to be attached to the
> petition.</u>[6] (Emphasis added).

---

[6] Plaintiffs acknowledge that the Illustration does go on to say that a Defendant can
request to file preliminary objections, if they comply with the standards set forth in
*Schultz v. Erie Insurance Exchange*, 505 Pa. 90, 477 A.2d 471 (1984). However,
Defendants have failed to request relief pursuant to *Schultz*. In *Schultz*, the Defendant's
attorney failed to file the requisite answer in 20 days. *Id.* at 472. The Court held that the
attorney's failure to "comprehend the applicable time limits and respond in a timely
fashion" was justification for not opening the default judgment. *Id.* In this matter,
Defense Counsel has similarly failed to explain how they did "not comprehend the
applicable time limits," even when 10-day Notices were sent out, and why they "did not
respond in a timely fashion."

Furthermore, as evidenced by the factual background, at the time the PA Supreme
Court decided *Schultz*, it appears that there was no 10-day notice requirement. Therefore,
it is questionable whether the *Schultz* decision has been overruled by the current versions
of Rules 237.1 and 237.3, and if not, whether the Court would rule similarly, when the
Defendant is provided an additional notification, in advance of a default judgment.

Furthermore, the Explanatory Comment – 2001 of Rule 237.3 goes on to explain

that the General Assembly specifically overruled the Commonwealth Court's prior

holding permitting preliminary objections to be filed:

> The amendment to the Note clarifies the procedure when a defendant, upon the
> opening of a default judgment, intends to file preliminary objections, a pleading
> not encompassed by this rule. Contrary to the holding of the Commonwealth
> Court in *Peters Township Sanitary Auth. v. American Home and Land Dev. Co.*,
> 696 A.2d 899 (Cmwlth. Ct. 1997), <u>preliminary objections are not an appropriate</u>
> <u>attachment to a petition to open a default judgment under Rule 237.3</u>. (Emphasis
> added).

In this matter, Defendants have failed to comply with the requirements of Rule

237.3, as they have failed to attach a verified answer to the Complaint. Accordingly, the

Court should dismiss their Petition for failure to comply with Rule 237.3. Furthermore,

Defendants are estopped from now seeking to amend their Petition or filing a new

Petition, because any such filing would be far beyond Rule 237.3's requirement that they

file a petition for relief within ten (10) days, as ten days ran on March 13, 2015.

Even if this Court were to consider their defective petition for relief, they raise

numerous issues that are inapplicable for a Petition to Strike. "To obtain relief from the

entry of a default judgment, the law provides two distinct remedies. An aggrieved party

may file a petition to strike a default judgment and/or a petition to open a default

judgment, but the remedies are not interchangeable." *City of Philadelphia Water*

*Revenue Board v. Towanda Properties, Inc.*, 976 A.2d 1244, 1247 (Pa. Cmwlth. 2009).

"A petition to strike a judgment may be granted only for a fatal defect or irregularity

appearing on the face of the record." *Id.* "As such, the court may only look to the facts

of record at the time the judgment was entered to decide if the record supports the

6

judgment." *Id.* "A petition to strike can only be granted if a fatal defect appears on the face of the record." *Id.*

In contrast, a petition to open the judgment is based on a contest of the facts averred in the Complaint. In order to open a default judgment, the petitioner must demonstrate that (1) the petition to open was promptly filed; (2) defendants have a meritorious defense; and (3) defendants have provided a reasonable excuse for the failure to file a responsive pleading. *Allegheny Hydro No. 1 v. American Line Builders, Inc.,* 722 A.2d 189, 191 (Pa. Super. 1998).

### A. *Defendants' Demurrers Are Inappropriate for a Motion to Strike*

In their Petition, Defendants aver five demurrers, along with six "Strike Judgment: Technical Defect" headings. Demurrer 1 seeks to strike based on the merits of the constitutional challenges. Demurrer 2 also seeks to strike based on the merits, challenging Plaintiffs' standing to bring suit. Demurrer 3 seeks to strike based on the merits of the State law preemption claims. Demurrer 4 seeks to strike based on the merits, as well, as it asserts the individual Defendants' immunity. Demurrer 5 both misrepresents Plaintiffs' Request for Relief and seeks to strike based on something other than a defect in the pleading.

Defendants then seek strike based on what they label "Technical Defects." They aver lack of jurisdiction; apparently Plaintiffs' failure to state a claim; a failure to demonstrate lack of response; improper verification; defects in the Praecipe for Judgment; and improper returns of service.

7

Defendant's demurrers are inapplicable here, as none suggests the pleadings were fatally defective. Rather, they attempt to include their preliminary objections within their Petition to Strike, which is an improper avenue of attacking the merits, especially when, pursuant to Pa.R.C.P. 237.3, Defendants are precluded from filing preliminary objections and were required to attach an answer to any petition for relief. The demurrers that Defendants suggest are all based entirely on the merits, rather than the face of the record. They argue that the constitutional claims and preemption claims do not state a claim for relief; they do not, however, allege that the Complaint, itself, was defective. In addition, they argue standing, which is not a fatal defect on the face of the record. Further, they allege the affirmative defense of immunity, which, again, does not go to the face of the Complaint. Likewise, the requested relief goes to whether a proper claim was stated, *not* to the face of the record. In addition, Defendants continue to aver that Plaintiffs requested monetary damages for the violations of the Pennsylvania Constitution. A cursory review of the pleadings, specifically the Request for Relief, indicates that only equitable relief was requested for the violations of the Pennsylvania Constitution.

**B.** *This Court Had Jurisdiction to Enter the Default Judgment*

First, Defendants argue that this Court had no jurisdiction to enter the judgment, as the entire action had been removed to federal court. However, "a court always has jurisdiction to decide questions of its own jurisdiction." *Commonwealth v. Ryan*, 327 A.2d 531, 357 (Pa. 1974). If Defendants wanted to argue jurisdiction, they could have done so before the default judgment was entered, when they had the right to file preliminary objections. "It is well established that failure to answer or appear resulting from strategy, rather than mistake, will not provide justification for the opening of a

8

default judgment." *Barron v. William Penn Realty Co.*, 361 A.2d 805, 807 n.4 (Pa. Super 1976). Nor, presumably, will it provide justification for striking a judgment.

Furthermore, Defendants try to argue the issue both ways in the same proceeding. If this Court has, indeed, lost all jurisdiction in the case, including over Howard Bullock's claims, as Defendants argue, then the Court is powerless to grant the relief Defendants request. If, on the other hand, this Court *can* strike the default judgment, then Defendants admit that the Court has jurisdiction and the issue is moot.

## C. *Defendants Did Not Demonstrate an Intention to Respond to Howard Bullock's Claims in the State Court*

Defendants argue that because they entered their appearance, they have indicated an intention to respond. The only authority they cite for this, however, is an *unreported* case from the Middle District of Pennsylvania, which understandably only interpreted the application of the Federal Rules of Civil Procedure. *See, Kearney v. Hibner,* 2014 WL 1234527 (M.D.Pa. March 25, 2014).[7] Thus, there is no applicability to Defendants' Petition in this Court, which of course utilizes the Pennsylvania Rules of Civil Procedure. Because Defendants offer no other authority for their proposition that their entry of appearance constitutes a response and intention to defend, and because it is their burden to demonstrate the defect in the record, the Court should deny their Petition on this ground.

In addition, the only responsive pleading filed by Defendants at all was their Motion to Dismiss, filed in the U.S. District Court for the Middle District of

---

[7] A copy of the unreported opinion is attached.

9

Pennsylvania. While the Motion was filed on February 20, 2015, the brief was not filed until March 6, 2015, three days after the default judgment.

**D.** *Defendants Were Required, Under Pa.R.C.P. 1018, to Accurately Reflect All Plaintiffs in the Caption of All Legal Papers*

Defendants argue that the Notice of Removal is not a pleading and that, pursuant to Pa.R.C.P. 1018, they were only required to accurately reflect the caption in a pleading. Thus, they conclude, they were not required to name all of the parties (although they later request that the Court open the judgment based on the caption on the returns of service). This is inaccurate, as a Notice of Removal *is* a pleading. *See, Commonwealth v. Spotz,* 99 A.3d 866, 886 (Pa. 2014) ("The second federal pleading . . . is the Notice of Removal"). Indeed, Defendants readily admit that the Notice of Removal is a pleading, for in ¶ 150 of their Petition, they aver that the Court may permit them to "amend the pleading."

Finally, Defendants are wrong when they attempt to argue that Rule 1018 does not require accurate captions. Rule 1018 requires that "in other pleadings it is sufficient to state the name of the first party on each side in the complaint *with an appropriate indication of the other parties.*" While it does not expressly require the enumeration of all parties, authorizing the use of "et al.," Rule 1018 does require "appropriate indication" of all of the parties.

Defendants, however, make *no* reference, in *any* pleading or filing prior to the default judgment, to Howard Bullock; there is no mention of him in the caption, civil cover sheet, dockets, or in the body of any of the filings. Rather, Defendants only

10

referred to "Plaintiffs" as a group in the body of their filings, and did not define

"Plaintiffs" outside of the caption omitting Howard Bullock. Moreover, Defendants admit

that they omitted Howard Bullock. See, Petition ¶¶ 8, 10-12.

Thus, contrary to Defendants' argument that the Rule excuses their "mistake,"

their reliance on the Rule actually demonstrates their intention to leave out Mr. Bullock.

If the Rule requires some reference to all parties, Defendants claim that they complied

with the Rule, and they made no reference to Mr. Bullock, then it can only be concluded

that Defendants intended, at the time of filing, to omit Mr. Bullock. Otherwise, they are

arguing that they did *not* comply with Rule 1018.

Defendants then argue that this Court should ignore the technical defect in the

Notice of Removal (while simultaneously strenuously arguing that six allegedly technical

defects on the part of Plaintiff allow this Court to strike the judgment). They argue that

Pa.R.C.P. 128 counsels against absurd or unworkable results. While Rule 128 does

discourage interpretations that would lead to these results, no such results would occur

here or otherwise, all default judgments would lead to such results. If the judgment

stands, the issues will still be resolved on their merits, as the Defendants and other

Plaintiffs will have the case heard in Federal court (or State court, if some claims are

remanded).

Furthermore, it is not absurd in the least to presume Defendants intended what

they repeatedly wrote. Nor is it absurd to presume that Defendants made a strategic

choice in utilizing their resources to defend against the claims in the Middle District,

believing that they would be successful in the State court without entering a responsive

pleading. Pennsylvania courts, however, do not relieve default judgments when they are

the result of a poor strategic choice. *See, Barron v. William Penn Realty Co.*, 361 A.2d 805, 807 n.4 (Pa. Super 1976).

      **E.**      *There Were No "Technical Defects" Warranting the Striking of the Judgment*

Defendants argue that the Plaintiffs' verifications were not properly made. To show this, they state that while Kim Stolfer verified on behalf of himself and Firearms Owners Against Crime, Plaintiffs' counsel signed for both Joshua First and Howard Bullock. Defendants argue that this is a violation of Pa.R.C.P. 1024. (Petition, ¶¶ 153-158).

Plaintiff's counsel stated in the verification that he was counsel for Plaintiffs Joshua First and Howard Bullock and that both were unavailable. Moreover, Defendants fail to establish that at the time of the verification Mr. Bullock was in the Court's jurisdiction and they declare that discovery is not necessary to resolve their petition. *See,* Petition ¶ 189. Even in the event this Court determines that the verification was not in compliance with Rule 1024(c), the fact that both Plaintiffs subsequently submitted verifications, before Defense Counsel even entered their appearance, corrects any deficiencies. *See, Lewis v. Erie Ins. Exchange*, 421 A.2d 1214, 1217 (Pa. Super. 1980) (Holding that it was abuse of discretion for trial court to dismiss a petition where plaintiff did not have opportunity to cure). Thus, because the alleged deficiencies with the verification were ultimately cured, Defendants suffered no prejudice and there is no cause to strike the judgment.

Defendants also state that the Praecipe to Substitute Verifications was not served on Defense Counsel. While this is true, it is because Defense Counsel had not entered their appearance at the time the Praecipe to Substitute was mailed. Plaintiffs mailed the Praecipe on January 24, 2015, pursuant to Pa.R.C.P. 440(a)(2)(i), but Defense Counsel did not enter their appearance until January 28, 2015 and the undersigned did not receive their entries of appearance until January 30, 2015. As established by the record in this matter, there is no deficiency and Defendants blatantly attempt to mislead this Court.

Defendants also take issue with Plaintiffs' Praecipe, alleging that it did not contain three inches of space on the top margin, was single spaced, and did not have Plaintiffs' counsel's information on the top left corner.[8] Even if this were true (although, importantly, the Prothonotary did not reject the filing for failure to conform to any rules), it hardly constitutes prejudice to the Defendants such that the judgment should be stricken. Indeed, there is no possible hardship or prejudice that Defendants may have faced due to any alleged deficiencies.

Defendants seem to desire to argue both sides of the same technicality coin. On the one side, they argue that *their* "technical defects" should not result in the default judgment. On the other hand, they argue that all of Plaintiffs' alleged "technical defects" should result in the judgment being stricken. Considering the magnitude of Defendants' error (omitting a plaintiff from the pleadings), compared with Plaintiffs' alleged technical defects (improper margins and formatting issues), and given that Defendants have the burden to show that the default was in error, this certainly seems bold.

---

[8] The Complaint, as filed of record, clearly indicates the undersigned's email address in the upper left-hand corner. Further, it should be noted that even the Sheriff's Returns, which are drafted and filed by the Dauphin County Sheriff's Office, do not have 3" of space at the top.

13

Finally, Defendants argue that the returns of service were incorrectly captioned and, as a result, the default should be stricken. As with Defendants' other arguments pertaining to Plaintiffs' alleged "technical defects," there is but harmless error (if any error at all) here, as well.

First, and foremost, the returns were not completed or filed by Plaintiffs, but by the Dauphin County Sheriff's Department. Moreover, the Dauphin County Sheriff's Office drafts and files the Sheriff Returns without direction or control from Plaintiffs. Second, the returns may not have had all Defendants listed on the caption, but the caption did include the docket number and expressly stated which Defendant had been served only three lines below the caption. Thus, there could be no confusion as to the Defendants and what action the Defendant was involved in.

It appears that Defendants are attempting to argue here that Plaintiffs, too, erred in the caption, somehow justifying Defendants' failure to name all Plaintiffs. However, failing to name a Plaintiff, and failing to refer to the individual Plaintiff *at all* in any of numerous filings (not merely in the captions, but in the bodies of the filings, themselves), is vastly different than a Sheriff's putative neglect to include all the Defendants, especially considering that the Defendant's name is stated, in capital letters, a mere three lines below the caption. If Defendants argue that the alleged errors in the returns of service are significant enough to justify striking the default, then surely they must agree that failing to include any mention of a party in filings to both the federal and state courts constitute grounds for granting the judgment in the first place.

Finally, Defendants were free to raise any issues with either the merits or the "technical defects" in a responsive pleading. They did not do so. Unlike the cases they

14

cite to support their failure to respond, this was not a scenario in which there was a change in counsel, or in which they did not receive the initial pleadings. Rather, they contend that any number of minor defects – such as improper margins or single-spacing – somehow prejudiced them from filing a response. This is not the type of defect that warrants striking a judgment and, as such, Defendants' Petition should be denied.

**F.** *Defendants Do Not Offer a Reasonable Excuse to Open the Judgment*

Critically, the only mistake Defendants admit is the supposedly mistaken omission of Howard Bullock from any of their filings. However, this was the reason for the default, not the reason for Defendants' failure to respond. This is a key distinction, for the only mistake that *may* authorize, at this Court's discretion, the opening of a judgment is a mistake resulting in the failure to respond. *Allegheny Hydro No. 1 v. American Line Builders, Inc.,* 722 A.2d 189, 191 (Pa. Super. 1998).

Defendants' "mistake" in omitting Howard Bullock was not – and is not alleged by Defendants – the cause of their failure to respond. Thus, whether the omission of Mr. Bullock was, at any point, a mistake is not relevant to the Court' determination as to whether to strike the judgment.

Defendants have offered no other mistake, reasonable or otherwise, to justify their lack of response. Therefore, they have not met all three requirements for the opening of the judgment and, as such, their Petition should be denied.

**G.** *Defendants Do Not Offer Meritorious Defenses to Open the Judgment*

Defendants claim that they present the following meritorious defenses in their preliminary objections, which they attached to their Petition: (1) Failure to State a Claim;

15

(2) Lack of jurisdiction; and (3) Failure to Conform to Rule or Law.  Plaintiffs argue that

the defenses are not meritorious out of an abundance of caution, as Plaintiffs maintain

that Defendants have demonstrated no good cause, *supra*.

### i. Standing

In *Dillon v. City of Erie*, 83 A.3d 467, 474 (Pa.Cmwlth. 2013), the

Commonwealth Court held that an individual is not required to undergo prosecution in

order to challenge a criminal ordinance.  Pennsylvania expressly permits a civil

challenge, including injunctive relief, against the enforcement of unlawful ordinances.

*Id.*  Because the Plaintiffs here would have been forced to face prosecution in order to

challenge Defendant City's unlawful ordinances, they have standing.[9]

### ii. Preemption

Section 6120 of 18 Pa.C.S.A. states that "[n]o county, municipality or township

may in any manner regulate the lawful ownership, possession, transfer or transportation

of firearms . . . when carried or transported for purposes not prohibited by the laws of this

Commonwealth."  Pennsylvania's courts have repeatedly declared ordinances similar to

the ones promulgated by Defendants to be preempted by the Uniform Firearms Act, 18

Pa.C.S.A. §§ 6101, *et seq.*  *See, Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996);

*Dillon v. City of Erie*, 83 A.3d 467 (Pa. Cmwlth. 2014); *National Rifle Association v.*

---

[9]Defendants have argued in other filings that Act 192's constitutionality bears on
Plaintiffs' standing.  It does not.  Act 192 does, in fact, grant looser standing
requirements, but the Commonwealth Court ruled that standing exists to any individual
who seeks to challenge an ordinance they would otherwise have to be prosecuted for
before suffering an injury.  *Dillon*, 83 A.3d at 474; *see also U.S. Law Shield v. City of
Harrisburg*, No. 2015-cv-255, slip op. at 3 (2105).  Thus, Act 192's constitutionality does
not affect Plaintiffs' standing here.

*Philadelphia*, 977 A.2d 78 (Pa. Cmwlth. 2009); *Clarke v. House of Representatives*, 957

a.2d 361 (Pa. Cmwlth. 2008); *Schneck v. City of Philadelphia*, 373 A.2d 227 (Pa.

Cmwlth. 1978).  Indeed, as late as this year, this Court determined that Defendants'

ordinances restricting the possession of firearms by minors, prohibiting firearms in City

parks, and prohibition of firearms in public during a declared emergency were preempted

by State law.  *U.S. Law Shield v. City of Harrisburg,* No. 2015-cv-255, slip op. at 3

(2015).

> Pennsylvania's courts have repeatedly stated that

>> Because the ownership of firearms is constitutionally
>> protected, its regulation is a matter of statewide concern.
>> The constitution does not provide that the right to bear arms
>> shall not be questioned in any part of the commonwealth
>> except Philadelphia or Pittsburgh, but that it shall not be
>> questioned in any part of the commonwealth.   Thus,
>> regulation of firearms is a matter of concern in all of
>> Pennsylvania, not merely in Philadelphia and Pittsburgh,
>> and the General Assembly, not city councils is the proper
>> forum for the imposition of such regulation. (Emphasis
>> Added).

> *Dillon v. City of Erie*, 83 A.3d 467, 472-73 (Pa.Cmwlth. 2013), *citing Ortiz v.*

*Commonwealth*, 681 A.2d 152, 155 (Pa. 1996).  Defendants here have sought to regulate

firearms and, as such, have legislated in an area preempted by the General Assembly.

> Furthermore, although Defendants seemingly attempt to argue in relation to

several of the ordinances that there exists an inherent self-defense exception, the U.S.

Supreme Court denied an identical argument by the District of Columbia in *D.C. v.*

*Heller*, 554 U.S. 570, 630 (2008).  In *Heller*, the District of Columbia contended that

although the statute did not provide for a self-defense exception, it was inherent in the

statute. *Id.* In refuting the argument and holding that the statute failed to include an

exception for self-defense, inherent or otherwise, the Court held that any such argument "is precluded by the unequivocal text." *Id.*

Thus, Defendants cannot present a meritorious defense and do not meet the requisite elements to open the judgment.

### iii.  Individual Liability

Defendants attach their Motion to Dismiss, filed in the federal court, and rely on its arguments for their contention that Defendants Papenfuse and Carter have immunity. Thus, the following section is in response to that argument, and as such, refers to Defendants' Motion to Dismiss filed in federal court.

Defendants argue that Defendants Papenfuse and Carter cannot be held liable because (a) they did not cause harm to the Plaintiffs (Def. Mem. at 20); (b) they violated no clear federal law (*Id.* at 20-21); and (c) they enjoy high official immunity, (*Id.*, at 21).

### 1.   *Defendants Papenfuse and Carter have caused harm to Plaintiffs.*

Title 18, Pa.C.S.A. § 5301 provides that a person acting in his official capacity commits a second degree misdemeanor if he "denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity." Article 1, Section 21 of the Pennsylvania Constitution provides that "[t]he right of the citizens to keep and bear arms *in defense of themselves* and the State shall not be questioned." Strengthening this provision, Article 1, Section 25 expressly "declare[s] that everything in this article is excepted out of the general powers of government and shall forever remain inviolate."

18

As Mayor, Defendant Papenfuse is the chief executive of Defendant City.[10]  53

P.S. § 41411 ("The executive power of the city shall be exercised by the mayor").  As

such, the "mayor shall enforce the charter and ordinances of the city . . ." 53 P.S. §

41413.  Thus, it is the duty of Defendant Papenfuse, mandated by Section 41413, to

enforce the ordinances of Defendant City.  Indeed, Defendant Papenfuse stated that "our

police department feels that [the laws] are in the public interest, and I do, too."[11]

Likewise, Defendant Carter stated that Harrisburg police officers regularly cite violations

of the discharge ordinance and minor law.

While none of the Plaintiffs here have been subjected to prosecution,

"Pennsylvania law does not require a person to be prosecuted to find that he has suffered

irreparable harm, and a litigant is relieved of demonstrating this prerequisite where, as

here, the only alternative available was prosecution . . ." *Dillon,* 83 A.3d at 474, *citing*

*City of Erie v. Northwestern Pennsylvania Food Council,* 322 A.2d 407, 412 (Pa.Cmwlth.

1974).  Both Defendants Papenfuse and Carter have indicated their intentions to enforce

the ordinances.  Defendant Carter has additionally stated that Defendant City already *has*

prosecuted individuals under these ordinances.

---

[10] This applies to Cities of the Third Class organized under the Optional Mayor-Council
Plan A.  According to the Harrisburg City Controller's website, Harrisburg is organized
as a Mayor-Council Plan A.  http://harrisburgcitycontroller.com/?page_id=232

[11] Defendant Papenfuse is quoted by PennLive's reporter Christine Vendel in "Harrisburg
stands firm on gun regulations despite threat of lawsuit," January 13, 2015, available at
http://www.pennlive.com/midstate/index.ssf/2014/12/harrisburg_gun_regulations_law.ht
ml.

### 2. *Defendants Papenfuse and Carter are not immune under high official immunity*

High official immunity "exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice," so long as the statements were made within the course of official action. *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952), *overturned on other grounds by Commonwealth v. Schab*, 383 A.2d 819 (Pa. 1978)(overturning *Matson's* holding that the Attorney General could supersede a District Attorney on his own motion); *see also Lindner v. Mollan*, 677 A.2d 1194, 1199 (Pa. 1996)(holding that mayor was immune from defamation suit while acting in official capacity); *Montgomery v. City of Philadelphia*, 140 A.2d 100, 105 (Pa. 1958)(holding that a deputy commissioner was immune from defamation suit); *Jonnet v. Bodick*, 244 A.2d 751, 753 (Pa. 1968)(finding that township Supervisors were immune from defamation suit).

Moreover, under Pennsylvania law, the "pivotal" consideration of whether an official is to be granted immunity is "the public interest in seeing that the official not be impeded in the performance of important duties." *Durham v. McElynn*, 72 A.2d 68, 70 (Pa. 2001). The Commonwealth Court stated in *Dillon* that it is *not* in the public interest to enforce unenforceable and unlawful ordinances. *Dillon*, 83 A.2d at 474 ("Moreover, 'the argument that a violation of law can be a benefit to the public is without merit"). It can hardly be said that enforcing an unlawful ordinance is a benefit to the public.

Finally, high officials are immune only from suits for damages and not from declaratory or injunctive relief. *Lindner*, 677 A.2d at 1195. Accordingly, Defendants cannot be entitled to immunity in relation to the claims for declaratory and injunctive relief. Thus, they are not immune under the high official immunity doctrine.

20

### 3. *Defendants Papenfuse and Carter violated a clearly defined right.*

Defendants claim that there is no clearly defined right to carry a firearm in public. (Doc 10, p. 27). Yet, the United States Supreme Court clearly held that one has a Second Amendment right to both keep *and* bear arms for the purpose of self-defense. *See, Heller,* 554 U.S. at 584-85.

The Supreme Court found that both the modern and founding-era term "bear arms" indicated "unambiguously" that it meant "the carrying of weapons outside of an organized militia." *Id.* at 584. The Court quoted its earlier precedent: "Surely a most familiar meaning is, as the Constitution's Second Amendment . . . indicates: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose of . . . being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584, *quoting Muscarello v. United States,* 524 U.S. 125, 143 (1998)(Emphasis added).

After a lengthy and detailed discussion of the history of the right to bear arms for one's self-defense, the Supreme Court concluded that "[t]here seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Heller,* 554 U.S. at 595. In fact, the "right to bear arms" was "a recognition of the natural right of self-defense of one's person or house – what [Justice James Wilson] called the law of self preservation." *Id.,* at 585. (Internal marks omitted).

Defendants cite to *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013), as evidence that the right to carry a firearm for self-defense is not "clearly defined." (Def. Mem. at 21).[12] Rather than holding that no right to bear arms existed outside the home, the Third Circuit held in *Drake* that New Jersey's firearms law requiring a justifiable need to obtain a permit to carry a concealed weapon for self-defense did not violate the Constitution. *Id.*, at 430. Thus, the Third Circuit *upheld* the core of the Second Amendment's guarantee – that of the right to bear arms for self-defense. While the Court wondered aloud just what the extent to the right was, *Id.*, at 431, there is no doubt that the ultimate decision in *Drake* allowed the carrying of firearms where an individual could demonstrate it was required *for self-defense.*

In contrast to New Jersey's regulatory scheme at issue in *Drake*, Defendants' discharge and emergency ordinances provide *no* ability to demonstrate a justifiable need. Nor does Defendants' prohibition on firearms in parks allow for any firearm to be possessed within a park, *even if* for the sole purpose of self-defense. Likewise, Defendants' prohibition on minors' possession of firearms fails to include any ability of a minor to possess a firearm solely for self-defense.

Because Defendant City's ordinances prohibit the carrying of firearms in self-defense (and the use of those firearms for self-defense), and because both the United States Supreme Court and Third Circuit have definitively held that a right to bear arms –

---

[12] Defendants do not expressly cite to *Drake* here, but the language "Plaintiffs cannot show that the Third Circuit, which still questions whether the Second Amendment applies outside the home *at all*, bar Harrisburg's reasonable time, place, and manner restrictions on public carrying," seems to refer to *Drake*, which Defendants cite at page 4 of their Brief. (Emphasis in original).

defined by the Supreme Court as the right to wear or carry on one's person – exists,

Defendants violated a clearly established law and limit Plaintiffs' right to self-defense.

Furthermore, the as the Pennsylvania Commonwealth Court observed in relation

to Article 1, Section 21, Pennsylvania has long interpreted the right preserved by the

State constitution broadly even when the scope of the Second Amendment seemed

unclear:

> Though the United States Supreme Court has only recently
> recognized "that individual self-defense is 'the central component'
> of the Second Amendment right," the right to bear arms in defense
> of self has never seriously been questioned in this Commonwealth.
> It is an enumerated right predating even the ratification of the
> Second Amendment.  Though our state constitution has changed
> throughout the history of this Commonwealth, the right to bear
> arms in defense of self has survived each iteration.  Today, the
> right is set forth in Section 21 of the Declaration of Rights in the
> Pennsylvania Constitution . . . .

*Caba v. Weaknecht,* 64 A.3d 39, 58 (Pa. Cmwlth. Ct.), *reconsideration denied*

(Mar. 27, 2013), *appeal denied,* 621 Pa. 697, 77 A.3d 1261 (2013) (citations omitted).

Accordingly, Defendants have additionally violated Article 1, Section 21, which is

clearly established, and limit Plaintiffs' right to self-defense.

### iv. Damages

Defendants continue to represent that Plaintiffs have requested monetary damages

for the violation of the Pennsylvania Constitution.  This is patently and demonstrably

false, as Plaintiffs' Request for Relief only includes monetary damages under Section

6120(a.1) and under 42 U.S.C. § 1983.  All other requested relief is injunctive.  Thus,

Plaintiffs will not burden the Court with further refutation of Defendants' representation

of this matter.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Honorable Court to

deny Defendants' Motion to Strike or Open Default Judgment.


Respectfully Submitted,

PRINCE LAW OFFICES, P.C.

Joshua Prince, Esq.
PA ID No. 306521

Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

24

**Kearney v. Hibner, Slip Copy (2014)**

2014 WL 1234527

2014 WL 1234527
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Richard Muliek KEARNEY and Marc Steven Dorce, Plaintiffs

v.

Gary HIBNER, Cpl. Charles E. Gliechman, Cpl. William D. Baker, Defendants.

Civil No. 1:13–CV–1892.   |   Signed March 25, 2014.

**Attorneys and Law Firms**

Richard Muliek Kearney, Houtzdale, PA, pro se.

Marc Steven Dorce, Bellefonte, PA, pro se.

Gregory R. Neuhauser, Office of Attorney General, Harrisburg, PA, for Defendants.

### *MEMORANDUM*

SYLVIA H. RAMBO, District Judge.

**\*1** In this Section 1983 civil rights action, Plaintiffs have sued several individuals asserting violations of their rights protected by the Fourth, Sixth, and Fourteenth Amendments. Presently before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) (Doc. 29) and a motion for involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b) (Doc. 48), each filed by Defendants. Because the court finds that the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars Plaintiffs' claims, it concludes that the motion to dismiss may be granted. Additionally, because the court finds that Plaintiffs have continually willfully disregarded court orders and the Federal Rules of Civil Procedure, it concludes that the motion for involuntary dismissal may be granted.

Although the court finds that dismissal may be warranted under either Rule 12(b)(1) and (6) or Rule 41(b), the court will address both motions for the sake of thoroughness and dismiss on the basis of Plaintiffs' failure to state a claim upon which relief can be granted. Nevertheless, the fact that the court reaches disposition of Defendants' motion to dismiss should not be interpreted as condoning Plaintiffs' repeated failures to comply with this court's orders despite being given ample time and instructions.

### I. *Motion For Involuntary Dismissal*
As the court's disposition of the motion for involuntary dismissal depends heavily on the history of this action, the court will recite the pertinent procedural events before addressing the facts underlying the action.

### A. *Procedural History*
Plaintiffs, state inmates acting pro se, initiated this action by filing a complaint on July 12, 2013, naming the following Defendants: Gary Hibner, a state police officer employed at the State Police Barracks in McConnellsburg, Pennsylvania; and Charles Gleichman and William Baker, both supervising corporals employed at the State Police Barracks in McConnellsburg, Pennsylvania. (Doc. 1, ¶¶ 5–7.) Plaintiffs asserted their claims against each of the named Defendants in both their official and individual capacities. (*Id.* at ¶ 8; Doc. 47, ¶ 1.)

2014 WL 1234527

Following several months of a cooperative effort by the court and the Clerk of Court to guide Plaintiffs' filings of the appropriate documents, the court granted Plaintiffs' motions for leave to proceed *in forma pauperis* and directed that a summons be prepared and issued on October 7, 2013 (Doc. 21). Defendants timely waived service. (Doc. 31.)

On November 22, 2013, Defendants filed a joint motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. 29.) Plaintiff Kearney filed a motion for entry of default three days thereafter (Doc. 30), which the court denied by memorandum and order on December 2, 2013 (Docs. 35 & 36). That same day, Defendants filed a brief in support of their motion to dismiss. (Doc. 34.) Over the course of the next month, Plaintiff Kearney filed a plethora of papers, requesting that the court give him guidance, duplicate copies of filings, and grant him the ability to file an amended complaint. (*See, e.g.,* Doc. 37, 38, 40 & 42.) Recognizing the difficulties facing a pro se plaintiff, the court provided direction to Plaintiffs regarding their options, instructing them that they may respond to the motion to dismiss or file a motion seeking leave to amend their complaint, and that the latter must include the proposed amended complaint as an attachment and must be signed by both parties. (Docs. 39 & 41.) Additionally, the court extended the deadline by which Plaintiffs could file their response and ordered that Plaintiffs' response be filed by January 12, 2014 (ten days after the Clerk of Court re-mailed Defendant's brief in support of their motion to dismiss). (Doc. 39.) On January 8, 2014, Plaintiff Kearney filed a motion seeking clarification of the court's previous order (Doc. 40), to which the court responded on January 9, 2014, restating Plaintiffs' options and again advising Plaintiffs of the requirement that all documents must be signed by both parties lest they be stricken for failure to comply with Rule 11 (Doc. 41). Additionally, the court extended the deadline by which Plaintiffs could respond to the pending motion to dismiss or file a motion for leave to file an amended complaint to January 15, 2014. (*Id.*)

**\*2** Despite the court's leniency, Plaintiffs failed to respond to the motion to dismiss or file a motion for leave to file an amended complaint. Rather, on January 28, 2014, nearly two weeks after the previous extended deadline had run, Plaintiff Kearney filed a motion requesting a stay of the proceedings due to extraordinary circumstances, in which he alleged that he had been placed —and remained—in a restricted housing unit and was unable to access the courts. (Doc. 43.) While expressing skepticism of Plaintiff Kearney's proffered reasons, the court granted in part the motion and extended the deadline by which Plaintiffs were to respond to February 14, 2014. (Doc. 44.) Significantly, the court again advised Plaintiffs that, pursuant to Local Rule 7.6, a party's failure to respond to a motion to dismiss shall be deemed not to oppose such a motion and indicated that Plaintiffs' continued failure to file an opposing brief indicates that Plaintiffs may have lost a genuine interest in prosecuting the lawsuit. (*Id.*).

Despite the court's continued leniency, on February 14, 2014, Plaintiff Kearney filed another motion for extension of time, wherein he again requested an extension of time due to his recently being transferred to the State Correctional Institution at Houtzdale. (Doc. 45.) The court, after again advising Plaintiff that the continued extensions demonstrate a lack of genuine interest in prosecuting the case and that no further extensions of time would be granted, granted in part the motion and extended the deadline by which Plaintiffs were required to respond to February 28, 2014. (Doc. 46.) On March 5, 2014, Plaintiff Kearney filed a document titled "Amended Complaint," which provided, in part, as follows:

1. Plaintiffs move to correct paragraph (8) eight of the *Third Section* of the original complaint titled "Defendants". The original complaint paragraph (8) eight states: "Each defendant is sued individually and his official capacity", Plaintiffs seek to "correct and amend to reflect as follows: Each defendant is sued *individually* and in their "official" and as well as their "individual" capacity. This complaint is AMENDED to reflect the correction.

2. Plaintiffs move to AMEND, the *FIFTH SECTION*, titled "LEGAL CLAIMS" of the original complaint to reflect as follows:

V. LEGAL CLAIMS

3. Plaintiffs reallege and incorporate by reference by the original complaint paragraphs 1–24.

(Doc. 47.) Despite being previously advised that the court's local rules require an amended complaint to be complete in and of itself, the proposed amended complaint as filed referenced and incorporated portions of the original complaint. (*See id.*)Thus, the amended complaint was inadequate and deserves to be stricken due to operation of Local Rule 15.1(a). Moreover, and, in

the court's view, more significantly, the amended complaint entirely disregarded the court's repeated forewarning that, because this was a multi-plaintiff action, any filings had to be filed by both plaintiffs. (*See, e.g.,* Docs. 39 & 41 (citing Federal Rule of Civil Procedure 11 and stating that "[a] pleading that purports to be filed on behalf of more than one party must be signed by each party").) Indeed, this amended pleading is entirely unsigned. (Doc. 47, pp. 10–11 of 12.) Lastly, the document is neither a motion for leave to amend nor a response to the motion to dismiss and, therefore, is unresponsive and inappropriate.

**\*3** On March 6, 2014, Defendants filed a motion for involuntary dismissal pursuant to Federal Rule of Civil procedure 41(b), which was accompanied by a brief in support. (Docs. 48 & 49.) In the motion, Defendants highlight the inadequacies of this filing and argue that: (1) the amended complaint is unsigned despite unambiguous language from the court directing Plaintiffs that each filing must be signed by both plaintiffs; (2) the filing does not comply with court orders inasmuch as it is neither a motion to amend the complaint nor a response to Defendants' motion to dismiss; and (3) the filing is untimely. (Doc. 48.) On March 14, 2014, Plaintiff Kearney filed an opposition to Defendants' motion, which provides, in part, as follows:

1. It appears that defendants had erroneously reviewed the record, and had asserted that Plaintiff Kearney and Dorce, who are Co–Plaintiffs in civil action *KEARNEY, et al,. [sic] V. HIBNER, et al., 1:13–cv1892 (2013),* due to an [sic] separation in [sic] January 2, 2014, as an [sic] result of Defendant's [sic] representatives informing *S.C.I. BENNER ADMINISTRATION,* of an order from Fulton County, which Fulton County "pro se" was not *enforcing themselves,* therefore, an [sic] reasonable inference could be drawn that "person(s)" other then [sic] than Fulton County who had an [sic] substantial "interest" in the separation of Co–Plaintiffs, had instigated the attention of *S.C.I. BENNER ADMINISTRATION,* to obtain the results that would follow which was the subsequent *separation of Plaintiffs,* in order to "handicap communications between Co–Plaintiffs.

\* \* \*

3. Plaintiff Kearney had exercise [sic] due diligence to obtain correspondence with Dorce since the separation of Co–Plaintiffs, which ultimately terminated communications between Co–Plaintiffs.

    4. Defendants assertion that Plaintiff *had not* complied with the deadline of February 28, 2014 is "erroneous" as any delay in this honorable court not receiving AMENDED COMPLAINTS, untimely is at no fault to Plaintiff, therefore the *PRISON MAILBOX RULE,* applies, and defendant's MOTION FOR INVOLUNTARY DISMISSAL *should be denied as "MOOT"* due to AMENDED COMPLAINTS being "TIMELY FILED".

(Doc. 50, ¶¶ 1, 3–4.) Thus, a fair reading of Plaintiff Kearney's submission demonstrates that: (1) he confirms that he and Dorce are both plaintiffs in this action; (2) he confirms that Dorce did not sign the complaint; (3) he represents that communication between he and Plaintiff Dorce has been terminated; (4) he believes that his filing is timely by operation of the prison mailbox rule; and (5) he alleges that Defendants' conspired to prevent him and Plaintiff Dorce from communicating. (*See* Doc. 50.) Such a reading is confirmed in Plaintiff Kearney's opposition, filed March 21, 2014. (Doc. 53.)

**B.** *Legal Standard 41(b)*

Defendants move to involuntarily dismiss the complaint pursuant to Rule 41(b) on the basis of Plaintiffs' repeated noncompliance with the Federal Rules of Civil Procedure, this court's orders, and local rules of court. Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."Fed.R.Civ.P. 41(b). The rule authorizing dismissal for failure to prosecute is applicable at the pleading stage. *See Ordnance Gauge Co. v. Jacquard Knitting Mach. Co.,* 265 F.2d 189, 194 (3d Cir.1959). When determining whether involuntary dismissal is appropriate, the court assesses the history of the case with the aid of the six factors enumerated in *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863 (3d Cir.1984). These factors are:

> **\*4** (1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary ...; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

*Id.* at 868 (emphasis in original). Whether to grant or deny a Rule 41(b) motion is in the informed discretion of the trial court. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) ("The question ... is not whether [the Supreme Court], or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.").

## C. Discussion

Initially, the court highlights Plaintiffs' multiple failures. First, Plaintiffs failed to comply with the January 9, 2014 order directing that they either respond to Defendants' motion to dismiss or file a motion for leave to file an amended complaint. Instead, Plaintiffs filed an amended complaint that was neither authorized by the Federal Rules of Civil Procedure nor by this court. Second, Plaintiffs failed to generally comply with requirements set forth in Local Rules and explained in multiple court orders, each of which instructed that any amended complaint, which was to be attached to the required motion for leave, must be complete in and of itself and not reference the former original complaint. Instead, Plaintiffs' amended complaint referenced paragraphs in the original complaint and was, consequentially, not an adequate stand-alone pleading. Third, in arguable mockery of the mandates of Rule 11 and the directions set forth by this court in its orders, the amended complaint is not signed by either Plaintiff Kearney or Plaintiff Dorce, a fact highlighted by Defendants in their motion that remains uncorrected. *See* Fed.R.Civ.P. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to ... the party's attention."). It is with these failures in mind that the court considers the *Poulis* factors.

### 1. Personal Responsibility

Despite Plaintiff Kearney's vague, baseless allegation of what can only be characterized as a conspiracy to separate Plaintiff Dorce and Plaintiff Kearney, Plaintiffs are personally responsible for the foregoing failures. No one other than Plaintiffs, who are proceeding pro se, could be responsible for their refusal to comply with this court's orders. Plaintiffs have requested, and the court has provided, clarification regarding their options and requirements of the court orders and applicable rules. Similar to previous occasions, when Plaintiff Kearney was allegedly unable to comply with the deadlines due to his placement in the restrictive housing unit and subsequent transference of institutions, it was Plaintiffs' personal responsibility to comply with the court's more-than-adequate directions. They alone failed to do so. Moreover, this is not a case where Plaintiff Dorce's lack of signature is the only shortcoming attributable to Plaintiffs. Accordingly, this factor weighs in favor of dismissal.[1]

### 2. Prejudice to Adverse Party

**\*5** Defendants have suffered minimal prejudice due to Plaintiffs' failures to comply with the court rules and orders. Evidence of prejudice to an adversary "bear[s] substantial weight in support of a dismissal." *Adams v. Trustees of N.J. Brewery Emps. Trust Fund,* 29 F.3d 863, 873–74 (3d Cir.1994). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Id* at 874. In the present case, Defendants argue that they have been prejudiced because "their motion to dismiss has yet to be ruled upon because of [P]laintiffs' repeated requests for enlargements of time culminating with a filing which neither complies with the court's order nor responds to the motion to dismiss." (Doc. 49, p. 4 of 7.) This alone, however, does not demonstrate that they suffered prejudice of the type that alone warrants involuntary dismissal. While the court finds that Defendants have suffered prejudice to some extent, inasmuch as they have been required to remain in a meritless lawsuit and have not been afforded the opportunity to have their motion to dismiss be addressed on the merits, the Third Circuit has recognized that "there are varying degrees of prejudice, and courts should consider the degree of prejudice that the defendant suffered." *Briscoe v. Klaus,* 538 F.3d 252, 260 n. 3 (3d Cir.2008).

Here, the prejudice suffered by Defendants is minimal. Indeed, although Defendants' motion has been pending for over 120 days, Defendants have not expended additional resources due to Plaintiffs' requests to extend deadlines, as Defendants have not been required to respond to any motion filed by Plaintiffs since the filing of their motion to dismiss. Accordingly, while the court recognizes the value of closure and that Defendants have suffered some prejudice, the court cannot conclude that this is the type of prejudice that weighs heavily in favor of dismissal. Thus, while this factor certainly does not weigh in favor of Plaintiffs, the court ultimately concludes that this factor is neutral.

### 3. *History of Dilatoriness*
The record unquestionably demonstrates Plaintiffs' history of dilatoriness. Conduct that occurs one or two times is insufficient to demonstrate a "history of dilatoriness." *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir.1984). However, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness."*Adams*, 29 F.3d at 874;*see also Emerson v. Thiell Coll.*, 296 F.3d 184, 191 (3d Cir.2002) (finding that a history of dilatory conduct existed because the "procedural history of this case reflects continuous dilatoriness" as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines). The court must evaluate "a party's problematic acts ... in light of its behavior over the life of the case."*Adams*, 29 F.3d at 875.

 **\*6** As demonstrated in the court's recitation of the procedural history, Plaintiffs have dodged the court's consideration of the motion to dismiss for several months. Plaintiff Kearney has frequently waited until the day before the response was due to send to the court an unresponsive document and has continually received the benefit of the rules favorable to pro se prisoner litigants. The court concludes, without hesitancy, that a history of dilatoriness exists and that it weighs heavily in favor of dismissal.

### 4. *Willfulness of Plaintiffs' Failures*
The court concludes Plaintiffs' failures are willful. Under this factor, the court considers whether the conduct was the "type of willful ... behavior which was characterized as 'flagrant bad faith.' " *Adams*, 29 F.3d at 875. Generally, "[w]illfulness involves intentional or self-serving behavior." *Id*. If the conduct is merely negligent or inadvertent, it does not qualify as contumacious. *See Poulis*, 747 F.2d at 868–69 (finding that the plaintiff's counsel's behavior was not willfully disobedient because, although he had missed deadlines, there was no suggestion that his delays were for any reason other than his and his wife's poor health).*But see Emerson*, 296 F.3d at 191 (finding willfulness because the conduct went beyond mere negligence).

Defendants argue that, because of the unambiguous nature of the court's directions, it can only be assumed that Plaintiffs' non-compliance is willful. The court is inclined to agree. The court continually explained Plaintiffs' options to respond to the motion to dismiss and the requirements to do so. Plaintiffs cannot genuinely argue that their noncompliance was justifiable or in good faith. Regardless of Plaintiffs' pro se status, every litigant must abide by the law and the rules, at least to the best of their ability. If Plaintiff Dorce's failure to sign the amended complaint was the only shortcoming, the court may reach a different conclusion regarding whether these errors were willful. However, this is clearly not the case. As stated, the March 5, 2014 filing is an inappropriate document considering the procedural posture of the case and is, moreover, an insufficient amended complaint even if the court was to accept that type of document as it is unsigned and incorporating the original complaint. Plaintiff Kearney has continually demonstrated his forethought by requesting that the court refrain from considering Defendants' motion to dismiss at the eleventh hour. This course of conduct must no longer be sanctioned. Thus, the court agrees that Plaintiffs' failure to comply was willful and concludes that this factor weighs in favor of dismissal.

### 5. *Alternative Sanctions*
Before dismissing a case with prejudice, a district court should consider alternative sanctions. *Poulis*, 747 F.2d at 869. Defendants argue that there are no effective alternative sanctions because Plaintiffs were granted *in forma pauperis* status. (Doc. 49, p. 5 of 7.) The court agrees with respect to the effectiveness of the alternative sanctions cited by Defendants but ultimately concludes that alternative sanctions are available. As stated, Plaintiffs are proceeding both pro se and *in forma pauperis.*Because

**Kearney v. Hibner, Slip Copy (2014)**

2014 WL 1234527

they are proceeding pro se, they have no attorney upon whom the court can impose the expenses for failing to comply with the court's orders. Moreover, both the fact that they are proceeding *in forma pauperis* and that they are currently incarcerated indicates that they would be unable to pay monetary sanctions. *See Briscoe,* 538 F.3d at 262–63. Nevertheless, the court is aware of the Third Circuit's suggestion that an alternative sanction may take the form of barring the filing of any response to the motion to dismiss and adjudicating the motion to dismiss on the merits. *See Hudson v. Coxon,* 149 F. App'x 118, 120 (3d Cir.2005).[2] That is the type of sanction that effectively will be imposed here. The court concludes, after considering alternative sanctions in light of Plaintiffs' repeated failures despite the court's repeated warnings, that dismissal of the action following a merits analysis would be more effective and in accordance with the court's preference of disposing of claims on the merits. Thus, the factor weighs in favor of a merits analysis rather than involuntary dismissal.

### 6. *Meritorious*

**\*7** Following an assessment of the merits of the action, the court concludes that Plaintiffs' claims are not meritorious. Generally, in determining whether a plaintiff's claim is meritorious, the court employs the familiar 12(b)(6) motion to dismiss for failure to state a claim standard. *Briscoe,* 538 F.3d at 263 (citing *Poulis,* 747 F.2d at 869–70). Thus, a claim or defense is deemed meritorious "when the allegations of the pleadings, if established at trial, would support recovery by [the] plaintiff or would constitute a complete defense."*Id.* at 263 (citing *Poulis,* 747 F.2d 870). However, whether the claim is meritorious is not determinative of a motion for involuntary dismissal. *Hudson,* 149 F. App'x at 120 n. 2 ("We have never held that *Poulis'* sixth factor is determinative. To do so would confuse Rule 12(b) (6) with Rule 41(b), which we refuse to do."). For the reasons set forth in Part II.C.2, *infra,* the court finds that the complaint lacks merit. Accordingly, this factor weighs in favor of dismissal.

### D. *Conclusion*

With regard to Defendants' motion for involuntary dismissal pursuant to Rule 41(b), the court concludes, after an analysis of the factors set forth in *Poulis,* that Plaintiffs had the personal responsibility of prosecuting their case and complying with this court's orders, that their failures to comply with this court's orders slightly prejudiced Defendants, that Plaintiffs had a significant history of dilatoriness, that Plaintiffs' noncompliance was willful, that alternative sanctions to involuntarily dismissal pursuant to Rule 41(b) are available, and that Plaintiffs' claim is without merit. The court makes these finding based on its assessment that Plaintiffs not only utterly failed to comply with court orders but, as is obvious from the court's recitation of the procedural history, was afforded a plethora of chances to remedy their shortcomings and never chose to properly do so. Nevertheless, although the court cannot stress enough that it does not condone Plaintiffs' arguably contumacious conduct, it will provide a merits analysis pursuant to Rule 12(b)(6) and dismiss Plaintiffs' complaint on that basis rather than as a sanction.

### II. *Motion To Dismiss*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997). Thus, for the purposes of the motion *sub judice,* the court only considers the allegations contained in the complaint and exhibits submitted in support thereof (Doc. 1; Doc. 47) and will accept as true all well-pleaded factual allegations contained in Plaintiffs' pleading. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). Due to Plaintiffs' pro se status and in light of the very accommodating nature of the court, the court will turn to the properly pleaded portions of Plaintiffs' amended complaint where needed, despite the fact that the document is not accepted by the court for Plaintiffs' failure to conform to the Federal Rules of Civil Procedure, Local Rules of Court, and unambiguous instructions set forth in prior orders.

### A. *Facts*

**\*8** Plaintiffs' constitutional claims involve the legal processes which led to their convictions in the Franklin County Court of Common Pleas for several weapons offenses, criminal coercion, unlawful restraint, false imprisonment, simple assault, recklessly endangering another person, indecent assault, and harassment, all arising from their actions on June 30, 2011. Plaintiffs allege that their identification, arrest, prosecution, detention, and conviction were illegal, not based upon probable

**Kearney v. Hibner, Slip Copy (2014)**

2014 WL 1234527

cause, and in violation of their constitutional rights. Specifically, Plaintiffs allege that Defendant Hibner included their names in his affidavit of probable cause, despite the failure of Tabitha Mellott ("Mellott"), a victim of the crimes for which Plaintiffs were convicted, to identify Plaintiffs by name during her interview with Defendant Hibner. (*See* Doc. 1, ¶¶ 11–13, 15.) Plaintiffs contend that Defendant Hibner's affidavit of probable cause was made with a "reckless disregard for the truth and [was] at worst, outright false."(*Id.* at ¶ 25; Doc. 47, ¶¶ 7–8.) Plaintiffs further allege that the photograph lineup presented to Mellott, allegedly by Defendant Baker, was unduly suggestive and was conducted without notice to their defense counsel. (Doc. 1, ¶¶ 20–23; Doc. 47, ¶ 19.) Plaintiffs included Defendants Baker and Gleichman as defendants in the action, arguing that they are liable due to their supervisory positions. (Doc. 1, ¶¶ 17, 19.) As relief for these and other alleged constitutional violations, Plaintiffs seek compensatory damages, punitive damages, and costs associated with expungement. (*Id.* at ¶¶ 34–35, 37.)

## B. *Legal Standards*

### 1. *Pro Se Pleadings*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."*Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Under the liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant, especially when the complainant is a pro se litigant. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir.2009). Although it leaves much to be desired, the instant complaint is relatively clear and concise considering that it was drafted by pro se litigants. Nevertheless, even liberally construing the factual averments contained therein, the complaint cannot withstand Defendants' motion to dismiss.

### 2. *Failure To State a Claim*

Defendants' motion challenges Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b) (6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted). While a complaint need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

**\*9** Thus, when adjudicating a motion to dismiss for failure to state a claim, the court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir.2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir.2005)). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir.2009) (directing that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. "The plausibility standard requires 'more than a sheer possibility' that a defendant is liable for the alleged misconduct."*Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir.2012) (citing *Iqbal*, 556 U.S. at 678). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts."*Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir.2011) (citing *Fowler*, 578 F.3d at 211)."[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (alterations in original) (quoting Fed.R.Civ.P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

To evaluate whether allegations in a complaint survive a Rule 12(b)(6) motion, the district court must initially "take note of the elements a plaintiff must plead to state a claim."*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010). Next,

**Kearney v. Hibner, Slip Copy (2014)**

2014 WL 1234527

the court should identify allegations that "are no more than conclusions" and thus "not entitled to the assumption of truth."*Id*. Lastly, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."*Id*.

"A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."*Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (citing *Twombly*, 550 U.S. at 588 n. 8). Rather, Rule 8"does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."*Id*. at 234.

Plaintiffs attached pages of exhibits to their pleading. The use of these exhibits by the court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. *Pryor v. National Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002) ("[C]ertain matters outside the body of the complaint itself, such as exhibits attached to the complaints and facts of which the court will take judicial notice, will not trigger the conversion of [a Rule] 12(b)(6) motion to dismiss to [a Rule] 56 motion for summary judgment.").

## C. Discussion

**\*10** The court interprets Plaintiffs' complaint as asserting a Section 1983 claim for false arrest/false imprisonment. Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. *See*42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be j subected, any citizen of the United States or othererson within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id*."Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."*Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D.Pa.2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)). To establish a claim under this section, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir.2005) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).

Plaintiffs claim that Defendant Hibner violated their Fourth Amendment right to be free from unreasonable seizures, which includes the right to be free from false arrest and false imprisonment. An arresting officer violates a person's Fourth Amendment rights when the officer arrests a person without probable cause. *See Hanks v. County of Delaware*, 518 F.Supp.2d 642, 648 (E.D.Pa.2007) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988)); *see also Pierson v. Ray*, 386 U.S. 547, 556–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (acknowledging that a plaintiff may recover civil damages for false arrest under Section 1983 if the plaintiff is able to establish the arresting officers lacked good faith and probable cause). When an officer does make an arrest without probable cause, the arrestee may also assert a Section 1983 false imprisonment claim based on any subsequent detention resulting from that arrest. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995).[3] Probable cause exists when the facts and circumstances within an arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Id*. at 634.

### 1. Favorable Termination Requirement

Defendants argue this action should be dismissed in accordance with *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The court agrees. In *Heck,* the Supreme Court held that "the hoary principle that civil tort actions are not

**Kearney v. Hibner, Slip Copy (2014)**

2014 WL 1234527

appropriate vehicles for challenging the validity of outstanding criminal judgments applies to [Section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction of confinement."*Id.* at 486.

**\*11** The essence of Plaintiffs' federal claims against Defendant Hibner in this case is that the events underlying the state criminal charges against them "did not happen" and that the affidavit of probable cause submitted for their arrests contained falsehoods. However, Plaintiffs admit, and the public records confirm, that they were convicted of the offenses with which they were charged in relation to their actions on June 30, 2011. The favorable termination rule of *Heck v. Humphrey* applies because Plaintiffs' federal lawsuit necessarily calls into question the validity of their convictions. Plaintiffs' convictions or sentences have not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck,* 512 U.S. at 487. Accordingly, the court will dismiss Plaintiffs' claims insofar as the complaint challenges Defendant Hibner's conduct during the investigation and prosecution of the crimes for which Plaintiffs were convicted.

Moreover, it is well established that the use of unreliable identification evidence obtained by police through unnecessarily suggestive procedures violates a defendant's right to due process. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). However, because judgment in favor of Plaintiffs on a claim arising from an allegedly tainted lineup would imply the invalidity of their convictions, Plaintiffs' claims related to the improper identification procedure are barred by *Heck.*Accordingly, the court will dismiss Plaintiffs' claims insofar as the complaint challenges the actions of Defendants Hibner and Baker regarding their use of unnecessarily suggestive procedures in the course of their investigation.

Despite the court's exclusion of the amended complaint for failure to conform, *see supra* Part I.C, the court will address Plaintiffs' argument contained therein to the extent that it can be interpreted as raising an argument in response to the motion to dismiss. In the amended complaint, Plaintiffs set forth conclusory allegations that *Heck*'s favorable termination requirement is inapplicable because of "the exceptions to perjury, fraud, and mistake of law."(Doc. 47, ¶ 11 (emphasis omitted).) Plaintiffs reason that the "false averments made by Hibner under oath satisfies the required element of 18 Pa. Cons.Stat. § 4903 false swearing, which affirmatively falls within the provisions of § 4902 Perjury."(*Id.* (emphasis omitted).) Accordingly, Plaintiffs argue that *Heck* is inapplicable. The court disagrees.

The essence of Plaintiffs' claims is that the fabrication of false criminal charges against them based on constitutionally infirm practices amounted to an unconstitutional conviction and imprisonment. Because success in establishing that Defendants falsely convicted Plaintiffs, by allegedly lying during the course of the criminal proceedings, committing perjury, and withholding exculpatory evidence, would necessarily render Plaintiffs' convictions or sentences invalid, *Heck*'s reasoning renders Plaintiffs' claims non-cognizable absent an invalidation of those convictions. *See Platts v. Buchanan,* Civ. No. 12–cv–1788, 2013 WL 4810486, \*6 (W.D.Pa. Sept.9, 2013) (citing *Abella v. Rubino,* 63 F.3d 1063, 1064–65 (11th Cir.1995) (holding that the plaintiff's argument that the defendants "knowingly and willfully ... convict[ed] him falsely by fabricating testimony and other evidence against him" was barred under *Heck* because "[j]udgment in favor of Abella on these claims 'would necessarily imply the invalidity of his conviction' "); *Zhai v. Cedar Grove Mun.,* 183 F. App'x 253, 255 (3d Cir.2006) ("[The plaintiff's civil rights claims] are based on her allegation that the officers, prosecutor, and judge conspired to bring false charges to secure a release for any civil liability resulting from the incident. However, these claims are barred, along with her challenges to the guilty plea itself, by *Heck v. Humphrey*"); *Perez v. Sifel,* 57 F.3d 503 (7th Cir.1995) (per curiam) ( [holding that] *Heck* barred Section 1983 action charging conspiracy to procure conviction through perjury, falsifying evidence, and withholding exculpatory evidence)). Because Plaintiffs' conclusory allegations of perjury continue to undermine the validity of their convictions, which have not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus, the claims remain barred by *Heck.*Accordingly, Plaintiffs' claims against Defendant Hibner will be dismissed.

**2. *Supervisor Liability***
**\*12** Additionally, Plaintiffs name Supervising Corporals Baker and Gleichman as defendants on the basis of these individuals' supervisory authority. Defendants contend that the facts alleged do not establish liability as to Defendants Gleichman and Baker.

**Kearney v. Hibner, Slip Copy (2014)**

2014 WL 1234527

For the following reasons, the court agrees with Defendants, and the claims predicated on Defendants Gleichman and Baker's supervisory status will be dismissed from the action.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation. *See Santiago*, 629 F.3d at 128–29; *Iqbal*, 556 U.S. at 693 ("[E]ach Government official ... is only liable for his or her own misconduct"). Accordingly, liability under Section 1983 may only be based on a defendant's personal involvement amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976)."Liability may not be imposed under Section 1983 on the principle of respondeat superior."*Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D.Pa.1995) (citing *Hampton*, 546 F.2d at 1082). Therefore, to survive a Rule 12(b)(6) motion, the complaint must contain averments establishing each defendant's involvement in the conduct that caused a violation of Plaintiff's constitutional rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Applicable to the matter *sub* judice, "a supervisor may be personally liable ... if he or she ..., as the person in charge, had knowledge of and acquiesced in his subordinates' violations."*Santiago*, 629 F.3d at 129 (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004)).

Plaintiffs have not alleged facts in their complaint from which it can reasonably be inferred that Defendants Baker and Gleichman's personal conduct violated their constitutional rights. Because the complaint does not allege facts sufficient to show that Plaintiffs have a "plausible claim for relief" for a Section 1983 claim against Defendants Baker and Gleichman on the basis of their personal involvement, any claim asserted against Defendant Baker and Gleichman on the basis of their personal involvement will be dismissed. Additionally, Plaintiffs' claims must fail to the extent that they attempt to assert claims against Defendants Baker and Gleichman for supervisor liability, *i.e.*, that they had knowledge of and acquiesced in Defendant Hibner's alleged violations of Plaintiffs' constitutional rights. As discussed *supra*, Part II.C.1, Plaintiffs cannot maintain an action where the success of that action would implicitly require the invalidation of Plaintiffs' criminal convictions. Thus, any claim that Defendants Baker and Gleichman knew of and acquiesced in Defendant Hibner's violations of Plaintiffs' constitutional rights necessarily includes as an element an actual violation at the hands of these supervisors' subordinates. Because such a violation cannot be shown, Plaintiffs cannot maintain an action on the basis of supervisory liability.

**D. Conclusion**

**\*13** Based on the foregoing, the court finds that a ruling in favor of Plaintiffs in this Section 1983 civil rights litigation would necessarily require the invalidation of Plaintiffs' convictions, which remain valid at this time. Thus, such claims are not cognizable due to the favorable termination requirement set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383. Accordingly, the court concludes that Plaintiffs' complaint fails to state a claim upon which relief can be granted. Plaintiffs' complaint will be dismissed in its entirety.

**III. Conclusion**

The court concludes that Plaintiffs' complaint may be dismissed pursuant to Federal Rules of Civil Procedure 12(b) or 41(b). With regard to Defendants' motion for involuntary dismissal, the court finds that Plaintiffs' conduct, in the face of this court's leniency and accommodating decisions with regard to enlargements of time and explanatory orders, demonstrates a genuine failure to prosecute the case and a willful disregard for this court's orders and rules of court and procedure. However, because Defendants have not been significantly prejudiced and because, based on the court's merits analysis pursuant to the pending motion to dismiss, alternative sanctions are available, the court declines to dismiss the lawsuit simply as a sanction. With regard to Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, the court finds that Plaintiffs' claims implicitly challenge the legitimacy of their convictions. Because it is undisputed that Plaintiffs cannot prove that the convictions or sentences have been overturned or otherwise invalidated by the state or federal courts, Plaintiffs' claims are not cognizable at this time. Accordingly, the court concludes that the favorable termination requirement bars Plaintiffs' claims that attack the constitutionality of the underlying convictions. For these reasons, the court will grant Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, and will dismiss the complaint in its entirety.

Kearney v. Hibner, Slip Copy (2014)

2014 WL 1234527

An appropriate order will issue.

Footnotes

1       The document filed by Plaintiff Kearney titled "Notification of S.C.I. Houtzdale Process in Obtaining Clearance for Inmate
        Correspondence Between Plaintiffs" (Doc. 51) does not lift the responsibility off Plaintiffs' shoulders. In the three-paragraph
        document, Plaintiff Kearney acknowledges the requirements of Rule 11 and attempts to justify his failure to comply with the Rule.
        In support thereof, Plaintiff Kearney attaches an inmate request, dated February 27, 2014, in which he requested permission to
        correspond with Plaintiff Dorce. This document is unpersuasive. Plaintiff Kearney was first put on notice that any paper filed must
        be signed by both plaintiffs in the court's January 2, 2013 order. (*See* Doc. 39.) Nevertheless, Plaintiff Kearney evidently waited until
        February 27, 2014, one day prior to the date Plaintiffs' response was due, to request to correspond with Plaintiff Dorce, which he
        knew he was prohibited from doing. Neither the rules nor case law excuse this delay. Indeed, despite the favorable treatment the
        courts lend to pro se prisoner litigants, it is unreasonable to imagine that clearance to communicate be given overnight and in time
        for Plaintiffs to comply with Rule 11. Litigants are required to abide by rules of court. While the court will pardon failures to do so
        made in good faith, it will not excuse a lack of diligence.

        Moreover, and significantly, as stated, the amended complaint was not signed by *either* party. Certainly Plaintiff Kearney cannot
        blame this noncompliance on his inability to communicate with Plaintiff Dorce. Additionally, the court notes the amended
        complaint is dated February 26, 2014, the day before Plaintiff Kearney made his inmate request. Thus, the court is convinced
        Plaintiff Kearney's February 27, 2014 document is evidence of a post hoc attempt to again be excused for his lack of diligence
        rather than of a good faith effort to comply with this court's directions.

2       Unlike the plaintiff in *Hudson,* Plaintiffs were warned that failure to adhere to rules of court would result in the striking of documents
        and that the failure to respond would result in dismissal of the matter without a merits analysis. Thus, Plaintiffs were on notice.

3       A Section 1983 false imprisonment claim arising from an arrest without probable cause is grounded in the Fourth Amendment
        guarantee against unreasonable seizures. *Groman,* 47 F.3d at 636. The law of the state where the arrest occurs controls whether the
        arrest is valid.*United States v. Myers,* 308 F.3d 251, 255 (3d Cir.2002) (citing *Ker v. California,* 374 U.S. 23, 37, 83 S.Ct. 1623, 10
        L.Ed.2d 726 (1963)). A claim for false arrest under Pennsylvania law is coextensive with one made under Section 1983. *Kokinda v.
        Breiner,* 557 F.Supp.2d 581, 592–93 (M.D.Pa.2008). To state a claim for false imprisonment, a plaintiff must establish that he was
        detained and that the detention was unlawful.*James v. City of Wilkes–Barre,* 700 F.3d 675, 682–83 (3d Cir.2012).

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**IN THE COURT OF COMMON PLEAS OF
DAUPHIN COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| Firearm Owners Against Crime; | : | Jury Trial Demanded |
| Kim Stolfer; | : | |
| Joshua First; AND | : | |
| Howard Bullock | : | Judge Andrew H. Dowling |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| | : | |
| City of Harrisburg; | : | |
| Mayor Eric Papenfuse; AND | : | Docket No. 2015-CV-354-EQ |
| Police Chief Thomas Carter | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this _____ day of _____, 2015, Defendants

Petition to Open or Strike Default Judgment is **DENIED**.


_____
Judge Andrew H. Dowling


Distribution:

Joshua Prince, Esq. (Joshua@PrinceLaw.com)
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505

Frank Lavery, Esq. (flavery@laverylaw.com)
Joshua Autry, Esq. (jautry@laverylaw.com)
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108