IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | 1:15-cv-322 |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | |
| Plaintiffs | : | (Judge Kane) |
| v. | : | |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | Jury Trial Demanded |

## Motion to Supplement

Harrisburg, Mayor Papenfuse, and Chief Carter (collectively Harrisburg) request to supplement the motion to dismiss briefing:

1. Since briefing closed in this case, counsel for Harrisburg has learned that they were mistaken about the original dates for certain ordinances and about the history of related statutes in Pennsylvania.

2. According, Harrisburg asks to file the brief attached hereto (ex. A) and exhibits 1-14 to the supplemental brief, which are all copies of relevant statutes and ordinances for this Court's convenience.

3. Some of the ordinances at issue are even older that once thought and less extensive than their statutory counterparts, including a 1751 statutory discharge ban within all settled towns and 1873 statutory gun ban specific to Harrisburg.

4.     Apparently, it has been illegal to discharge weapons in Harrisburg since this area was initially settled in the 1700s. In 1721, Pennsylvania banned discharge in Philadelphia. 53 P.S. §16581.[1] In 1751, Pennsylvania banned the discharge of weapons within any "built and settled" "town or borough." 18 P.S. §462.[2] In 1760, Pennsylvania prohibited any person from carrying a gun on the land of another without permission.[3] These provincial statutes remained in effect until repealed by the Crimes Code of 1972, as the General Assembly did not repeal them when it enacted the Penal Codes of 1860 or 1939.[4]

---

[1] Act of Aug. 21, 1721 (a copy of the statute is attached to the supplemental brief as ex. 1 for this Court's convenience) (also available online at books.google.com/books?id=i2sJAQAAMAAJ).

[2] Act of Feb. 9, 1751 (a copy of the statute attached to the supplemental brief as ex. 2 for this Court's convenience) (also available at books.google.com/books?id=iDlOAQAAIAAJ).

[3] Act of April 9, 1760, §6 (a copy of the statute is attached to the supplemental brief as ex. 3 for this Court's convenience) (also available online at books.google.com/books?id=iDlOAQAAIAAJ).

[4] *See* 1 Pa.C.S. §1503(b) (provincial laws enforceable until repealed); Act of Dec. 6, 1972, §5(a) (repealing 1721, 1751, and 1760 Acts); 18 P.S. § 5101 (1939 Penal Code) ("Every offense now punishable either by the statute or common law of this Commonwealth and not specifically provided for by this act, shall continue to be an offense punishable as heretofore."); 18 P.S. § 5201 (1939 Penal Code) (repealing other criminal statutes); *Homer v. Com.*, 106 Pa. 221, 226 (1884) (holding that the Acts of 1721 and 1751 still valid at time); Act of March 31, 1860, P.L. 382, p. 46 §178 ("Every felony, misdemeanor or offense whatever, not especially provided for by this act, may and shall be punished as heretofore."); *id.* p. 72 §78 (repealing unrelated part of 1760 Act, but not repealing any part of 1721 or 1751 Acts) (a copy of the relevant portion of the statute is attached to the supplemental brief as ex. 4

2

5. In 1791, the General Assembly incorporated the town of Harrisburg into a borough so that it "may contribute to the advantage of the inhabitants of the said town, as also to those who trade and resort there, and be of public utility, that nuisances, encroachments of all sorts, contentions, annoyances and inconveniences, in the said town and in its vicinity, should be prevented, and for the promoting of rule order, and the good government of said town."[5] In 1808, the General Assembly made clear that Harrisburg can "enact such other by-laws and make such rules regulations and ordinances, as shall be determined… necessary, to promote the peace, good order, benefit and advantage of the said borough…"[6]

6. The General Assembly named Harrisburg the state capital

---

for this Court's convenience) (also available online at books.google.com/books?id=T80xAQAAMAAJ). In 1915, the General Assembly included the 1751 and other sections within the 1760 statute in an omnibus repealer statute, but Governor Brumbaugh vetoed the bill. <u>Governor Vetoes 1915</u> p. 148, 224 (a copy of the veto is attached to the supplemental brief as ex. 5 for this Court's convenience) (also available online at books.google.com/books?id=ZTUbAQAAIAAJ).

[5] Act of April 13, 1791 (a copy of the statute is attached to the supplemental brief as ex. 6 for this Court's convenience) (also available online at www.palrb.us/statutesatlarge/17001799/1791/0/act/1570.pdf).

[6] Act of Feb. 1, 1808, §6 (a copy of the statute is attached to the supplemental brief as ex. 7 for this Court's convenience) (also available online at books.google.com/books?id=AizuAAAAMAAJ).

in 1812. Although the language has underwent various changes, since at least 1821, Harrisburg has banned discharge.[7] In 1859, the General Assembly created "Harris Park" on the riverfront, and authorized Harrisburg to "improve the said grounds for the purposes aforesaid and to make all reasonable rules and regulations for the improvement superintendence protection and management of the same."[8]

    7.    In 1860, the General Assembly incorporated Harrisburg as a city, and, in 1873, the General Assembly banned the carrying of any deadly weapon within Harrisburg, punishable by up to three months in jail.[9] That same year, the General Assembly adopted the Pennsylvania Constitution of 1874 (so-named by its effective date), including the provision of the right to bear arms as it exists to this day.

    8.    It appears that the 1873 statutory gun ban in Harrisburg is still law as it was not repealed by the 1939 Penal Code or the 1972

---

[7]Ordinance of May 2, 1821, §15 (a copy of the ordinance is attached to the supplemental brief as ex. 8 for this Court's convenience) (also available online at books.google.com/books?id=AizuAAAAMAAJ).
[8]Act of Mar. 13, 1859 (a copy of the statute is attached to the supplemental brief as ex. 9 for this Court's convenience) (also available online at books.google.com/books?id=7cIOAQAAMAAJ).
[9]Act of April 12, 1873 (a copy of the statute is attached to the supplemental brief as ex. 10 for this Court's convenience) (also available online at books.google.com/books?id=CzVOAQAAIAAJ).

Crimes Code.[10] In fact, the statute was enforced and upheld in 1922, *Com. v. Kreps*, 25 Dauphin Co. 335 (1922), and Purdon's recognized the statute as valid, noting the 1873 act under "Prior local provisions" and, under Notes of Decision, section 3, Repeal, that the 1873 act "was not repealed by" the 1875 statewide concealed carry ban and citing *Kreps* as authority for the 1873 act's continuing validity. A copy of the relevant Purdon's pages are attached to the supplemental brief as ex. 11 for this Court's convenience.

9. In 1889, the General Assembly authorized all third class cities "to regulate, prevent and punish the discharge of fire-arms" and "to prevent and punish the carrying of concealed deadly weapons."[11] As to parks, the General Assembly authorized third class cities "To establish and enforce suitable police regulations for the protection of persons and property at public squares, parks. Depots, depot grounds,

---

[10] *See* Act of Dec. 6, 1972, §5(a) (repealing other criminal statutes); 1 Pa.C.S. §1503(b) (laws enforceable until repealed); 18 P.S. § 5101 (1939 Penal Code) ("Every offense now punishable either by the statute or common law of this Commonwealth and not specifically provided for by this act, shall continue to be an offense punishable as heretofore."); 18 P.S. §5201 (1939 Penal Code) (repealing other criminal statutes); *Homer*, 106 Pa. at 226 (statutes valid whether enforced or not).
[11] Act of May 23, 1889 p. 2593 §109 (a copy of the relevant portion of the Third Class City Code is attached to the supplemental brief as ex. 12 for this Court's convenience) (also available online at books.google.com/books?id=33k0AQAAMAAJ).

5

and other places of public resort…"[12] The General Assembly also provided the general authority "To make regulations to secure the general health of the inhabitants and to remove and prevent nuisances."[13] These provisions were re-enacted in 1931 and 2014. *See* 53 Pa.C.S. §37423. The 1931 Third Class City Code further provided the Mayor discretion during declared emergencies to prohibit any activities dangerous to the public peace. 53 Pa.C.S. §36203(e)(3)(iv),(vi).

10.   In the meantime, Harrisburg banned guns in parks by at least 1905,[14] banned unsupervised children from carrying guns in 1951, gave the mayor discretion to ban the public carrying of guns during declared emergencies in 1969, and required reporting of lost and stolen guns in 2009. As mentioned, however, it appears that the General Assembly never repealed the 1873 statutory gun ban in Harrisburg. If so, then Plaintiffs cannot possibly suffer harm by Harrisburg's lesser-included ordinances.

---

[12] *Id.* §103.
[13] *Id.* at p. 2594 §116.
[14] Ordinance of 1905 §4(4). A copy of the ordinance is attached to the supplemental brief as ex. 13 for this Court's convenience (also available online at books.google.com/books?id=IWECAAAAYAAJ). Notably, the 1991 ordinance did nothing but ban fishing in Italian Lake. A copy of the ordinance is attached to the supplemental brief as ex. 14 for this Court's convenience.

11.     Harrisburg's supplemental brief sheds light on the true history of these ordinances. One of the factors in determining whether a gun restriction is permissible is its age, specifically whether the law is "longstanding." Accordingly, the fact that Harrisburg's discharge ban dates back to at least 1821, not 1971, and its park ban back to at least 1905, not 1990, is critical to this Court's Second Amendment analysis.

12.     Further, the statutory law is important as well. From 1751 until 1972, Pennsylvania banned discharge in all towns, including Harrisburg. More significantly, in 1873, the General Assembly banned the carrying of any gun in Harrisburg, and it appears has never repealed the statute. If so, then it is still illegal to carry guns in Harrisburg under state law, rendering all of the ordinances lesser-included than their statutory counterpart.

13.     In fact, this negates the challenge to Harrisburg's ordinances by the gun owners and their political action committee. Certainly, they must abide by state law, meaning they cannot have standing to challenge lesser-included ordinances and injunctive relief cannot help them.

7

14. Harrisburg has sought concurrence, and plaintiffs oppose this motion.

For these reasons, this Court should permit Harrisburg to supplement the briefing.

Respectfully submitted,

Lavery Law

s/ Frank J. Lavery
Pennsylvania Bar No. 42370

s/ Josh Autry
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245,
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Counsel for Harrisburg, Mayor
Papenfuse, and Chief Carter

Dated: September 1, 2015

## Certificate of Non-concurrence

    I certify that I sought concurrence from plaintiffs' counsel, and plaintiffs oppose this motion.

s/ Josh Autry

Dated: September 1, 2015

## Certificate of Service

      I certify that on this date, I served this filing through this Court's ECF to:

Joshua Prince, Esquire
*joshua@princelaw.com*

                                          s/ Josh Autry

Dated: September 1, 2015