## <u>Plaintiffs' Exhibit List</u>

**Exhibit A**: *The Elements of Case Management: A Pocket Guide for Judges*

**Exhibit B**: Brief of *Amici Curiae* Members of the General Assembly's

**Exhibit C**: Brief of *Amici Curiae* Pro-Act 192 Organizations

# EXHIBIT A

# The Elements of Case Management: A Pocket Guide for Judges

*Second Edition*

William W Schwarzer
Alan Hirsch

Federal Judicial Center
2006

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop and conduct education programs for judges and judicial branch employees. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

## The Rule 16 Conference

A judge's initial contact with the lawyers normally comes at the Rule 16 conference, sometimes called a preliminary pretrial conference, scheduling conference, or status conference. The purpose of the conference is to launch the case-management process. The specific rules or practices in each district will influence the precise nature and scope of the preliminary conference. Regardless of variations, however, each court should further the central principle underlying Rule 16: that a judicial officer take charge of the case early on and, together with the lawyers, establish a program appropriate for its just, speedy, and inexpensive resolution.

In some courts, that judicial officer will be the judge to whom the case is assigned. Becoming familiar with the case early helps the judge manage it effectively and, if necessary, try it more efficiently. In some courts, however, magistrate judges supervise the pretrial process. For this to work well, the magistrate judge needs the assigned district judge's backing. The district judge and magistrate judge should reach a general understanding about the management of the case at the outset and coordinate periodically. Lawyers should not get the impression that appealing the magistrate judge's case-management rulings is likely to be advantageous.

### *Timing and procedural matters*

Rule 16 requires the court to issue a scheduling order within 90 days after the appearance of a defendant or within 120 days after the complaint has been served on a defendant. It is advantageous to schedule the first conference as early as possible, before the lawyers become bogged down in discovery or motions. Though some cases obviously require less attention than others, it is well to schedule conferences in all cases with potential discovery and motion activity. Some types of cases, such as government collection cases or Social Security appeals, are so routine that no conference is needed.

Conferences should not be perfunctory scheduling exercises. Judges who use Rule 16 in that way miss out on its substantial benefits. The conference should be a moment of truth for the pleader and a thoughtful confrontation for all parties. The lawyers responsible for the case—not junior associates—should be there and should

3

# EXHIBIT B

Received 08/12/2015 Commonwealth Court of Pennsylvania

Filed 08/12/2015 Commonwealth Court of Pennsylvania
449 CD 2015

# IN THE
# COMMONWEALTH COURT
# OF PENNSYLVANIA

---

### 449 C.D. 2015

---

### CITY OF HARRISBURG, et al.
#### Appellants

### v.

### U.S. LAW SHIELD OF PENNSYLVANIA, LLC , et al.
#### Appellees

---

### BRIEF OF *AMICI CURIAE*, MEMBERS OF THE PENNSYLVANIA GENERAL ASSEMBLY, IN OPPOSITION TO APPELLANTS APPEAL FROM THE FEBRUARY 25, 2015 ORDER OF THE DAUPHIN COUNTY COURT OF COMMON PLEAS, DOCKET NO 2015-CV-255

---

**JOSHUA PRINCE, ESQUIRE**
**Attorney I.D. No. 306521**

**PRINCE LAW OFFICES**
**646 Lenape Road**
**Bechtelsville, PA 19505**
**Telephone: (610) 845-3803**
**Fax: (610) 845-3903**
**Joshua@PrinceLaw.com**



**Daryl Metcalfe**
12th Legislative District



**Bryan Cutler**
100th Legislative District



**Russ Diamond**
102nd Legislative District



**Matt Gabler**
75th Legislative District



**Seth Grove**
196th Legislative District



**David Hickernell**
98th Legislative District

**Rich Irvin**
81st Legislative District



**Rob Kauffman**
89th Legislative District

**Mark Keller**
86th Legislative District

**David Maloney**
130th Legislative District

John McGinnis
79th Legislative District

Carl Metzgar
69th Legislative District

David Millard
109th Legislative District

Tedd Nesbit
8th Legislative District

Donna Oberlander
63rd Legislative District

Kristin Phillips-Hill
93rd Legislative District

Kathy Rapp
65th Legislative District

Brad Roae
6th Legislative District

Rick Saccone
39th Legislative District

Paul Schemel
90th Legislative District

Judy Ward
80th Legislative District

Ryan Warner
52nd Legislative District

# TABLE OF CONTENTS

I.   STATEMENT OF INTEREST OF AMICUS CURIAE ..................... 1

II.  SUMMARY OF ARGUMENT ............................................... 2

III. ARGUMENT ..................................................................... 3

   A.   The *Leach* Decision is Stayed and Act 192 is in Full Force and
      Effect ............................................................................... 3

   B.   Constitutionality of Act 192 .............................................. 4

      1.  *Act 192 Passes the Test of Original Purpose Under Section 1* ....... 4

      2.  *Act 192 Passes the Single Subject Test Under Section 3* .............. 15

   C.   The General Assembly Has Preempted the Entire Field of Firearm
      and Ammunition Regulation ............................................ 23

      1.  *Express Preemption* ...................................................... 24

      2.  *Field Preemption* ......................................................... 26

      3.  *Third Class City Code Does Not Permit Appellants to Regulate
         Concealed Carry or Discharge* ...................................... 30

      4.  *The Appellants Enjoined Ordinances Violate the Second
         Amendment, Article 1, Section 21 and the Uniform Firearms
         Act* ............................................................................ 35

          i.   ***Minors***.................................................................. 37

          ii.  ***Parks*** ................................................................. 39

          iii. ***Emergencies*** ........................................................ 46

IV.  CONCLUSION .............................................................. 50

APPENDICES A - R................................................*starting on* 52

# TABLE OF AUTHORITIES

**Cases**

*Appeal of Gagliardi,* 401 Pa. 141, 163 A.2d 418 (1960) ............................ 24

*Board of Trustees of Philadelphia Museums v. Trustees of Univ. of*
   *Pennsylvania*, 251 Pa. 115, 96 A. 123 (1915).......................................... 45

*Caba v. Weaknecht*, 64 A.3d 39 (Pa. Cmwlth. Ct. 2013) ...................... 34, 49

*Christ King Manor v. Com., Dep't of Pub. Welfare*, 597 Pa. 217,
   951 A.2d 255 (2008) .................................................................................... 6

*Christ the King Manor v. Com., Dept. of Public Welfare*, 911 A.2d 624
   (Pa. Cmwlth. 2006) ............................................................................. 6, 8, 9

*City of Erie v. Northwestern Pennsylvania Food Council*,
   322 A.2d 407 (Pa. Cmwlth. 1974) ........................................................... 37

*City of New Castle v. Lawrence Cnty.*, 353 Pa. 175, 44 A.2d 589 (1945) ... 45

*City of Phila. v. Schweiker,* 579 Pa. 591, 858 A.2d 75 (2004) .................... 24

*City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566
   (2003) ......................................................................................... 7, 16, 18

*City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544,
   412 A.2d 1366 (1980) ............................................................................... 30

*Clarke v. House of Representatives*, 957 A.2d 361
   (Pa. Cmwlth. 2008) ..................................................................... 35, 36, 44, 48

*Com. v. Brooker*, 103 A.3d 325 (Pa. Super. 2014)...................................... 17

*Com. v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997) .............................. 44

*Com. v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013)....................................... 17

*Consumer Party v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986) ... 6, 7

*Denbow v. Borough of Leetsdale*, 556 Pa. 567, 721 A.2d 1113 (1999) ....... 42

*Department of Licenses and Inspections v. Weber*, 394 Pa. 466,

   147 A.2d 326 (1959) ................................................................ 37

*Dillon v. City of Erie*, 83 A.3d 467 (Pa. Cmwlth. Ct. 2014) ................ passim

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ...................... 33, 34, 49

*English v. Com*, 845 A.2d 999 (Pa. Cmwlth. 2004) ................................ 7, 14

*Fumo v. Pennsylvania Public Utility Commission*, 719 A.2d 10

   (Pa. Cmwlth. 1998) ............................................................... 10

*Girard Trust Co. v. Philadelphia*, 336 Pa. 433, 9 A.2d 883 (1939) ............. 37

*Harris-Walsh, Inc. v. Dickson City Borough*, 420 Pa. 259,

   216 A.2d 329 (1966) .......................................................... 29, 37

*Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*,

   600 Pa. 207, 964 A.2d 855 (2009) ..................................... passim

*In re Com., Dept. of Transportation*, 511 Pa. 620 (1986) ........................... 16

*In re Lancaster City Ordinance, No. 16-1952*, 374 Pa. 529, 98 A.2d 25

   (1953) ................................................................................ 16

*Kotch v. Middle Coal Field Poor District*, 329 Pa. 390, 197 A. 334

   (1938) ................................................................................ 16

*Leach v. Cmwlth.*, 2015 WL 3889262 (Pa. Cmwlth. June 25, 2015) .... passim

*Liverpool Township v. Stephens*, 900 A.2d 1030 (Pa. Cmwlth. 2006)

   ................................................................................... 27, 36

*Markovsky v. Crown Cork & Seal Co.*, 107 A.3d 749 (Pa. Super. 2014)

   ................................................................................... 18, 21

*Minich v. Cnty. of Jefferson*, 869 A.2d 1141 (Pa. Cmwlth. Ct. 2005).... 35, 37

*Nat'l Rifle Ass'n v. City of Philadelphia*, 977 A.2d 78

   (Pa. Cmwlth. 2009) ........................................... 27, 35, 36, 48

*Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401 (2007)............................. 29

*Ortiz v. Commonwealth*, 545 Pa. 279, 681 A.2d 152 (1996)................. passim

*Patterson v. Armco, Inc.*, 515 A.2d 657 (Pa. Cmwlth. Ct. 1986) .................. 3

*Payne v. School Dist. Of Coudersport Borough*, 31 A. 1072 (Pa. 1895) ..... 19

*Pennsylvania AFL-CIO by George v. Commonwealth*, 691 A.2d 1023
(Pa. Cmwlth. 1997) ................................................................... 7

*Pennsylvania Chiropractic Federation v. Foster*, 583 A.2d 844
(Pa. Cmwlth. 1990) ................................................................. 16

*Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364,
485 A.2d 732 (1984) ................................................................. 4

*Pennsylvania School Board Ass'n of School Administrators*, 569 Pa. 436,
805 A.2d 476 (2002) ................................................................. 6

*Pennsylvania School Boards Association, Inc. v. Commonwealth
Association of School Administrators*, 569 Pa. 436, 805 A.2d 476
(2002) ................................................................................... 4

*Pennsylvania State Lodge v. Com., Dept. of Labor and Industry*,
692 A.2d 609 (Pa. Cmwlth. 1997) ........................................... 15

*Pennsylvanians Against Gambling Expansion Fund, Inc.*, 583 Pa. 275, 877
A.2d 383 (2005) ............................................................... passim

*Ritter v. Commonwealth*, 548 A.2 1317 (Pa. Cmwlth. 1988) ................ 19, 20

*Schneck v. City of Philadelphia,* 383 A.2d 227 (Pa. Cmwlth. 1978) ........... 37

*Spahn v. Zoning Bd. Of Adjustment*, 602 Pa. 83, 977 A.2d 1132 (2009) 19, 21

*Stilp v. Com*, 588 Pa. 539, 905 A.2d 918 (2006) .......................... 5, 10, 14, 17

*United Tavern Owners of Phila. v. Philadelphia Sch. Dist.*, 441 Pa. 274,
272 A.2d 868 (1971) ............................................... 27, 32, 37, 42

*Washington v. Dept. of Public Welfare*, 71 A.3d 1070
(Pa. Cmwlth. 2013) ................................................... 5, 6, 16, 20

**Statutes**

1 Pa.C.S. § 1921 ........................................................................ 42

1 Pa.C.S. § 1933 ........................................................................ 42

18 Pa.C.S. § 106 ........................................................................ 21

18 Pa.C.S. § 3503, ................................................................. 9, 11

18 Pa.C.S. § 6102 ................................................................ 27, 38

18 Pa.C.S. § 6103 ..................................................................... 27

18 Pa.C.S. § 6104 ..................................................................... 27

18 Pa.C.S. § 6105 ..................................................................... 28

18 Pa.C.S. § 6106 ....................................................... 28, 32, 49

18 Pa.C.S. § 6106.1 ............................................................ 28, 33

18 Pa.C.S. § 6107 ....................................................... 28, 33, 47, 49

18 Pa.C.S. § 6108 ....................................................... 11, 12, 28, 32

18 Pa.C.S. § 6109 ............................................................... passim

18 Pa.C.S. § 6110.1 ........................................................... passim

18 Pa.C.S. § 6110.2 ................................................................. 28

18 Pa.C.S. § 6111 ..................................................................... 28

18 Pa.C.S. § 6111.1 ................................................... 9, 12, 28, 29

18 Pa.C.S. § 6111.2 ................................................................. 28

18 Pa.C.S. § 6111.3 ................................................................. 28

18 Pa.C.S. § 6111.4 ................................................................. 28

18 Pa.C.S. § 6111.5 ............................................................ 28, 29

18 Pa.C.S. § 6112 ..................................................................... 28

18 Pa.C.S. § 6113 ..................................................................... 28

18 Pa.C.S. § 6114 ..................................................................... 28

18 Pa.C.S. § 6115 ..................................................................... 28

18 Pa.C.S. § 6116 ....................................................................................... 28

18 Pa.C.S. § 6117 ....................................................................................... 28

18 Pa.C.S. § 6118 ....................................................................................... 28

18 Pa.C.S. § 6119 ................................................................................ 22, 28

18 Pa.C.S. § 6120 ............................................................................... passim

18 Pa.C.S. § 6121 ....................................................................................... 28

18 Pa.C.S. § 6122 ....................................................................................... 28

18 Pa.C.S. § 6123 ....................................................................................... 28

18 Pa.C.S. § 6124 ....................................................................................... 28

18 Pa.C.S. § 6125 ....................................................................................... 29

18 Pa.C.S. § 6127 ....................................................................................... 29

18 U.S.C. § 921(a)(20)(B) ......................................................................... 21

18 U.S.C. § 922(g)(1) ........................................................................... 21, 22

18 U.S.C. § 922(g)(4) ................................................................................. 22

26 U.S.C. § 5801 ........................................................................................ 39

52 P.S. § 681.20c ....................................................................................... 29

53 Pa.C.S. § 37423 .............................................................................. 31, 35

53 Pa.C.S. § 37435 .................................................................................... 41

**Rules**

Pa.R.A.P. 1736(b) ................................................................................ 2, 3, 4

**Regulations**

17 Pa.Code. § 11.215 ........................................................................... 42, 43

**Constitutional Provisions**

Article 1, Section 21 of the Pennsylvania Constitution ........................ passim

Article 1, Section 25 of the Pennsylvania Constitution ........................... 1, 25

Article 3, Section 1 of the Pennsylvania Constitution .......................... passim

Article 3, Section 3 of the Pennsylvania Constitution ........................... passim

Article 3, Section 4 of the Pennsylvania Constitution ................................... 6

Second Amendment to the U.S. Constitution ....................................... passim

## I.     STATEMENT OF INTEREST OF AMICUS CURIAE

*Amici Curiae*, those Members of the General Assembly, which voted for or support Act 192 and have endorsed their names to this brief, submit this brief in opposition to Appellant's Appeal from the February 25, 2015 Order of the Dauphin County Court of Common Pleas, docket no. 2015-cv-255.

The *Amici* are those Representatives that support and defend the Second Amendment to the U.S. Constitution and Article 1, Sections 21 and 25 of the Pennsylvania Constitution and protect freedom from transgression. The Representatives having endorsed their names to this brief are intimately familiar with the issues presented by Appellants and were involved with or otherwise support the process by which 18 Pa.C.S. § 6120 was enacted, including the recent amendment thereto – House Bill 80, Printer's No. 4318, Session of 2013, which became Act 2014-192 ("Act 192"). *See* HB 80, PN 4318, fully incorporated herein and a copy attached hereto as Appendix A.

For these reasons, the *Amici* believe this Honorable Court will benefit from their perspective.

## II.     SUMMARY OF ARGUMENT

In relation to Act 192, although this Court previously ruled in *Leach v. Cmwlth.*, 2015 WL 3889262 (Pa. Cmwlth. June 25, 2015) that Act 192 was unconstitutionally enacted, *Amici* believe that the Court was not sufficiently advised of the germaneness of the amendments and therefore seek to bring additional information to the Court's attention for its consideration. Further, as an appeal has been filed with the Pennsylvania Supreme Court in *Leach*, docketed as 61 MAP 2015, and which acts as a supersedeas, pursuant to Pa.R.A.P. 1736(b), *Amici* desire to ensure this Court first has opportunity to directly address all issues relating to the constitutionality of Act 192.

In relation to Appellants' Ordinances, the Ordinances violate the Second Amendment to the United States Constitution, Article 1, Section 21 of the Pennsylvania Constitution and 18 Pa.C.S. § 6120. As Article 1, Section 21 and Section 6120 provide explicit express preemption and the Uniform Firearms Act ("UFA") provides field preemption, Appellants are precluded from enacting any regulations, in any manner, regarding, *inter alia*, the ownership, possession and transport of firearms and ammunition. While this Court has previously held that even regulation *consistent* with the UFA is proscribed pursuant to Article 1, Section 21 and Section 6120, Appellants argue that they are entitled to regulate consistently with the UFA.

2

Even if, *arguendo*, Appellants were empowered to regulate consistently with the UFA, contrary to their assertions, the Ordinances seek to regulate the *lawful* ownership, possession and transport of firearms and ammunition, which is *inconsistent* with the UFA.

## III.    ARGUMENT

### A.    The *Leach* Decision is Stayed and Act 192 is in Full Force and Effect

On July 20, 2015, the Commonwealth filed a Notice of Appeal with this Court in relation to its decision in *Leach, et al. v. Commonwealth, et al.*, 585 M.D. 2014. A copy of the docket attached hereto and incorporated herein as Appendix B. On July 24, 2015, the Pennsylvania Supreme Court docketed the appeal as 61 MAP 2015.

Pursuant to Pa.R.A.P. 1736(b), the taking of an appeal by the Commonwealth or any officer thereof, operates as an automatic supersedeas in favor of the appellant, unless otherwise ordered. See generally, *Patterson v. Armco, Inc.*, 515 A.2d 657, 659 (Pa. Cmwlth. Ct. 1986). In 585 M.D. 2014, as the Commonwealth and officers thereof have appealed, and there does not exist any order directing otherwise, this Court's decision in *Leach* is stayed, leaving Act 192 in full force and effect, including its standing provisions in relation to Section 6120.

## B.   Constitutionality of Act 192[1]

It has been well settled by this honorable Court that a statute is presumed to be constitutional and not to be declared otherwise unless it "clearly, palpably, and plainly violates the Constitution." *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732, 735 (1984).   Upon challenging the constitutionality of a state statute, the challenging party bears a heavy burden of persuasion and all doubts must be resolved in favor of upholding the legislation in question. *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators,* 569 Pa. 436, 805 A.2d 476, 479 (2002).

### 1.   *Act 192 Passes the Test of Original Purpose Under Section 1*

Art. III, Section I of the Pennsylvania Constitution states –

> No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

---

[1] While it is acknowledged that this Honorable Court previously ruled that Act 192 was unconstitutionally enacted, *Leach v. Cmwlth.*, 2015 WL 3889262 (Pa. Cmwlth. June 25, 2015), as an appeal was filed with the Pennsylvania Supreme Court in relation to the *Leach* decision, 61 MAP 2015, which acts as a supersedeas pursuant to Pa.R.A.P. 1736(b), the *Amici* want to ensure that this Court has the first opportunity to directly address all issues relating to the constitutionality of Act 192.

*Amici* would welcome the Court to reconsider its decision in *Leach*, given the arguments made herein.

The Commonwealth Court and Supreme Courts of this State have, over time, dealt with a cavalcade of Constitutional challenges to legislation alleging violation of Section 1 – the "original purpose" requirement; such challenges have almost always failed.  The seminal case construing constitutional challenges under Section 1 and setting forth the current standards for such a constitutional challenge is *Pennsylvanians Against Gambling Expansion Fund, Inc.*, 583 Pa. 275, 877 A.2d 383, 393 (2005) (hereinafter "*PAGE*").  The Pennsylvania Supreme Court, in *PAGE*, set forth an instructive two-part test by which courts of the Commonwealth are to determine a legislated bill's constitutionality in the face of an Art. III, Section 1 challenge.

> 1) "…comparison between the original purpose and the final purpose of the bill."
>
> 2) "…whether the title and the content of the bill in final form were deceptive."

*Id.*, at 408.  A litany of other constitutional challenges brought under Section 1 have reiterated this two-part test as necessary and dispositive of this matter.  *See, Stilp v. Com*, 588 Pa. 539, 905 A.2d 918, 956-57 (2006); *Washington v. Dept. of Public Welfare*, 71 A.3d 1070, 1078-79 (Pa. Cmwlth. 2013); *Christ the King Manor v. Com., Dept. of Public Welfare*, 911 A.2d

624, 636 (Pa. Cmwlth. 2006) (aff'd sub nom. *Christ King Manor v. Com., Dep't of Pub. Welfare*, 597 Pa. 217, 951 A.2d 255 (2008)).

Significantly, the Supreme Court in *PAGE* held that the "original purpose" of legislation must be considered in "reasonably broad terms." *PAGE*, at 409.  In elaborating on what "reasonably broad terms" should mean for a court's consideration, the *PAGE* Court accounted for the customary multitude of amendments a bill often undergoes as part of normative legislative processes – "the legislative process…can involve significant changes to legislation in the hopes of a consensus."; "…legislation will be transformed during the enactment process." *Id*., ((citing *Consumer Party v. Commonwealth*, 510 Pa. 158, 507 A.2d 323, 334 (1986) (citing *Pennsylvania School Board Ass'n of School Administrators*, 569 Pa. 436, 805 A.2d 476, 489 (2002)).  In fact, not only are amendments a normal part of the legislative process, their need is expressly acknowledged by Art. III, Section 4 of the Constitution.  *Washington* 71 A.3d at 1080.  Concerning the permissible effects of amendments to legislation in a Section 1 analysis, courts have ruled that "[p]rovisions which are added to an original bill must either (1) assist in carrying out the bill's main objective or (2) be germane to the bill's subject as reflected in its title." *English v. Com*,

845 A.2d 999, 1002-03 (Pa. Cmwlth. 2004) (citing *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003)).

It is axiomatic that this State's judiciary "is normally loathe to substitute its judgment for that of the legislative branch under the guise of determining whether the constitutional 'purpose' of a bill has changed during the course of its passage through the legislative process." *Pennsylvania AFL-CIO by George v. Commonwealth*, 691 A.2d 1023, 1035 (Pa. Cmwlth. 1997) (quoting *Consumer Party*, at 335). Thus, the "reasonably broad terms" with which a court must consider the passage of legislation gives wide latitude to the General Assembly to make potentially significant changes to any given bill.

The Supreme Court's analysis of the first prong of the test in *PAGE* is informative. In *PAGE*, a constitutional challenge alleging, *inter alia,* violations of Sections 1 and 3 of the Constitution, was brought against a particular piece of legislation, the Gaming Act. The Gaming Act began as a one-page bill dealing exclusively with the role of the PA State Police vis-à-vis the State Harness and Horse Racing Commission. *Id.*, at 409. By the time of third consideration of the bill before the State Senate, the Gaming Act had been transformed into a 145 page bill, having *seven* chapters and *eighty-six* sections. *Id.*, at 392. The Gaming Act, nevertheless, survived all

7

constitutional challenges.  Specifically, the Supreme Court held that such expansion of a bill as part of a normal legislative process does not necessarily equate to a violation of the "original purpose" rule.

Similarly, in *Christ the King Manor*, a Section 1 and Section 3 constitutional challenge was brought against a bill, which amended the Public Welfare Code.  *Christ the King Manor*, 911 A.2d at 634-36.  The bill began its legislative life as a single page amendment to the Public Welfare Code.  By the time of its passage, the bill was over *one-thousand* lines long and amended *twenty-four* discrete sections of the Public Welfare Code; yet such was found to be constitutional and was later affirmed *Per Curiam* by the Pennsylvania Supreme Court. *Id*. at 631, 634-39.

Considering all the foregoing cases mentioned wherein constitutional challenges to legislation were brought and defeated, and the legislation reviewed in each, the amendments or other changes to Act 192 were relatively miniscule.  In fact, HB 80 – PN 4318, dealing with theft of "secondary metals" under the Crimes Code, began as a two-page bill having four sub-sections.  By the time of passage, 192 had only been expanded to have a total of seven pages with five sections.  *Amici* submit that if an expansion of legislation from one page to one-hundred-forty-five pages of the same title, as was the case in *PAGE*, or an expansion of legislation from

8

one page to thirty-four pages of the same title, as was the case in *Christ the King Manor*, were not deemed violative of the Constitution, then the minimal expansion at issue in Act 192, which also only amended the same title, is similarly constitutional.

In this vein, it is important to note that Act 192 amended only 18 Pa.C.S. §§ 3503, 6111.1, and 6120 – all within the Crimes Code. When compared with – for example – the *twenty-four* amendments to the Public Welfare Code upheld in *Christ the King Manor*, the Act 192 changes to Section 6120 were again minimal.

In turning to Act 192's stated purpose – "amending the Crimes Code" – it cannot be said to be overly broad based on the decision in *PAGE* and *Christ the King Manor.* Amici submit that such a stated purpose falls squarely within the ambit of "reasonable" and necessary broadness permitted to the course of legislation. To hold otherwise will open Pandora's box to challenges regarding previously enacted legislation and usurp the General Assembly's power to enact reasonably related amendments, to the same title, during the legislative process. In turn, that limitation may ossify existing statutory law as legislators are unable to make the necessary compromises to ensure majority support.

In relation to the second prong of the *PAGE* test – requisite deception – *Amici* submit that in the passage of Act 192, there was none, as the amendment was fully noticed and was the result of lively debate, including a vote on the constitutionality of the amendments, which was affirmed.

This particular prong is designed to ensure that those charged with representing the citizens of the Commonwealth know the type and contents of the legislation for which they are voting. *Fumo v. Pennsylvania Public Utility Commission*, 719 A.2d 10, 13 (Pa. Cmwlth. 1998). Put another way, the deception prong requires that laws passed in the Commonwealth place a reasonable person on notice of the general subject matter of the bill. *Stilp*, 905 A.2d at 957 (citing *PAGE*, at 406). *Amici* submit that not only were the citizens of the Commonwealth not deceived by Act 192, many of the same opponents of the Act, [2] by their own conduct during the legislative process, have demonstrated that neither were they deceived.

To prove a lack of deception, it is useful to take a close look at the legislative history of Act 192. Doing so reveals a timeline of significant

---

[2] See *Leach v. Commonwealth*, 585 M.D. 2014 – Petition for Review filed before this Court on November 10, 2014. Many of the complainants in that litigation are Commonwealth Senators and House Representatives who lost their challenge against Act 192 in the General Assembly and then, *post hoc*, mounted the legal challenge against the constitutional sufficiency of the Act.

events that all show a robust and informed consideration of HB 80, including all its amendments.

i.    On January 10, 2013, HB 80, PN 68 was referred to the Judiciary Committee of the House of Representatives.  *See* HB 80, PN 68, a copy of which is attached hereto and incorporated herein as Appendix C.

ii.    From June 10, 2013 to October 6, 2014, HB 80, PN 68 underwent several amendments and other minor changes.  *See* HB 80, PN 2066; HB 80, PN 3831; HB 80, PN 4248, copies of which are attached hereto and incorporated herein as Appendices D, E, and F, respectively.[3]

iii.    Senator Daylin Leach, the named petitioner in *Leach v. Commonwealth*, as part of the debate of Act 192, introduced his own proposed amendment to Section 6108 of the Crimes Code. *See* Leach Amendment No. A10492, a copy of which is attached hereto and incorporated herein as Appendix G.  Senator Leach's proposed amendment, "Limitation on the regulation of firearms and ammunition", failed in the Senate by a vote of 17-31.  *Id.*

---

[3] These three minor amendments defined the "theft of secondary metals" offense, and amended Section 3503 of the Crimes Code to include provisions relating to theft of secondary metals.

iv.  Senator Lawrence Farnesse, another petitioner in the *Leach* case,
proposed his own amendment to Section 6108, entitled "Carrying
Firearms on Public Streets or Public Property in Philadelphia."
*See* Farnesse Amendment No. A10461, a copy of which is attached
hereto and incorporated herein as Appendix H.  Senator Farnesse's
proposal was defeated by a vote of 22-26.  *Id*.

v.  Senator Alloway, again as all part of vigorous debate of HB 80,
introduced his own proposed amendment of HB 80.  *See* Alloway
Amendment No. A10397 (hereinafter "Alloway Amendment"), a
copy of which is attached hereto and incorporated herein as
Appendix I.  The "Alloway Amendment" sought to amend
Sections 6111.1 and 6120 of the Crimes Code, and was entitled
"Pennsylvania State Police".  *Id*.  The Alloway amendment passed
by a vote of 32-16.  *Id*.

vi.  On October 20, 2014, HB 80, PN 4318 was referred to the House
Rules Committee.  *See* Appendix A.  There, the bill was
particularly well debated before it was passed.  Cherelle L. Parker,
yet another petitioner in the *Leach* action, proposed several
amendments to the bill, as part of one motion.  *See* Parker
Amendments No. A10507, A10508, A10509; copies of which are

12

attached hereto and incorporated herein as Appendices J, K, and L, respectively.  Representative Parker's motion failed by a vote of 7-25.  *See* Roll Call for Parker Motion, a copy of which is attached hereto and incorporated herein as Appendix M.  A number of other Representatives attempted to amend HB 80 in the House Rules Committee; none of these attempts carried a majority vote.  *See e.g.* Waters Amendment No. A10515; Mundy Amendment No. A10512; Sturla Amendment No. A10510; copies of which are attached hereto and incorporated herein as Appendices N, O, and P, respectively.

vii.    On October 20, 2014, HB 80 was also strenuously debated on the House floor.  *See* Unofficial House Notes dated October 20, 2014; a copy of which is attached hereto and incorporated herein as Appendix Q. Again, several motions were made.  Again, as the foregoing paragraph (¶ vi) and Appendices referenced therein show, several motions questioning the constitutionality of the bill were made, considered, and defeated.  The bill was finally taken to vote and passed by a strong, bipartisan majority.  *See* House Roll Call No. 1818; a copy of which is attached hereto and incorporated herein as Appendix R.  It should be noted that 194 of 203 possible

votes were cast on either side – thus, virtually the entire House chose to vote on passage of HB 80.  *Id.*

It is therefore quite apparent that no credible argument about deception in or surrounding the legislation of HB 80, PN 4318 can be made. As to the lawmakers who voted for or against Act 192, there can be little doubt that their vote was informed and that they were all on notice of the contents of the bill.

In *Leach*, the Petitioners' brief and several of the amicus briefs supporting the Petitioners made much of the fact that Act 192 was passed relatively late in the legislative cycle.  However, it has been settled by the Pennsylvania Supreme Court that the passage of a law at a late point in the legislative cycle, by itself, is not tantamount to deception for purposes of a Section 1 challenge. *Stilp*, 905 A.2d at 957.

As Act 192 is *only* an amendment of the Crimes Code and considering that HB 80, PN 4318 was itself amended as part of its legislative passage, it is significant to point out that: 1) any amendment made to HB 80 did assist in carrying out the stated purpose of HB 80 and 2) any amendment or changes made to HB 80 was entirely germane to its subject as reflected by the title of the bill.  For an amendment to be valid, it need only accomplish one of the foregoing two, not both.  *English,* 845 A.2d at 1002-03.

The title of Act 192 states:

> AN ACT Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, IN BURGLARY AND OTHER CRIMINAL INTRUSION, FURTHER PROVIDING FOR THE OFFENSE OF CRIMINAL TRESPASS; defining the offense of theft of secondary metal; prescribing penalties; AND, IN FIREARMS AND OTHER DANGEROUS ARTICLES, FURTHER PROVIDING FOR PENNSYLVANIA STATE POLICE AND FOR LIMITATION ON THE REGULATION OF FIREARMS AND AMMUNITION.

Therefore, it is clear that the amendment effectuated by Act 192 is literally enumerated by its title. This is all that is required of a valid amendment; however, in exceeding requirements, *Amici* further submit that any amendments made to HB 80 also assisted in furthering the purpose of the bill as stated by its title.

### 2. *Act 192 Passes the Single Subject Test Under Section 3*

Art III, Section III of the Pennsylvania Constitution states –

> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

The rationale for Section 3, not dissimilarly from Section 1, is to ensure a measure of effectiveness and transparency in the legislative process by "prevent[ing] the passage of 'sneak' legislation." *Pennsylvania State Lodge v. Com., Dept. of Labor and Industry*, 692 A.2d 609, 615 (Pa. Cmwlth. 1997) (citing *Pennsylvania Chiropractic Federation v. Foster*, 583 A.2d

844, 847-48 (Pa. Cmwlth. 1990)).  Put another way, Section 3 prohibits

"secretive measures".  *See*, *In re Com., Dept. of Transportation*, 511 Pa.

620, 626 (1986) (citing *In re Lancaster City Ordinance, No. 16-1952*, 374

Pa. 529, 98 A.2d 25 (1953)).  Further, in this vein, courts have stated that

Section 3 was promulgated to "assure against the practice of the intentional

masking of acts with misleading or 'omnibus' titles." *Id.* (citing *Kotch v.*

*Middle Coal Field Poor District*, 329 Pa. 390, 197 A. 334 (1938)).  A bill

does *not* violate Section 3 even where the bill amends several statutes, unless

the amendments do *not* relate to the same subject. *Washington*, 71 A.3d at

1082 (citing *PAGE*, 877 A.2d at 395-96).  The Pennsylvania Supreme Court

in *City of Philadelphia v. Com.*, 838 A.2d 566, 588 (2003) set-forth a two-

part test, which a court must employ when assessing Section 3 challenges:

1) [T]he title of the bill must clearly express the substance of the
   proposed law; and

2) [T]he differing topics within the bill must be germane to each
   other.

The first prong, known as the "clear title" requirement, is to prevent

legislators from "intentionally disguising the real purpose of [a] bill by a

misleading title or by [a] comprehensive phrase." *Id.*, at 586.  It follows

then that, similar to the test of constitutionality under Section 1, much of the

inquiry to a Section 3 challenge revolves around evidence of deception.

Indeed, case law concerning this matter has traditionally applied what is substantially the same "deception test" from the second prong of Section 1 to the first prong of Section 3.[4]  That is, courts must look for evidence of deception in the title and/or contents of the bill.  *Com. v. Brooker*, 103 A.3d 325, 337 (Pa. Super. 2014) (citing *Com. v. Neiman*, 624 Pa. 53, 84 A.3d 603, 611-12 (2013)).  For this prong of a Section 3 analysis, deception or confusion on the part of the legislature and/or the public is strong evidence of unconstitutionality.  *Stilp*, 905 A.2d at 956.

No aspect of Act 192's legislative history should raise concerns under the first prong of the Section 3 test. The clear title of Act 192 precisely and completely articulates the purpose of that bill – "amending the Crimes Code".  As discussed *supra*, concerning Art. III, Sec. 1, there is no credible evidence that the legislators in enacting Act 192, in the House or Senate, were themselves deceived by the substance or titling of the law.[5]  *Stilp*, 905 A.2d at 956; *Brooker*, 103 A.3d at 337.  To the contrary, and as more fully

---

[4] *See PAGE*, 877 A.2d at 409: "Consistent with our finding above regarding the sufficiency of the title, we find that the final title was not deceptive. It placed reasonable persons on notice of the subject of the bill."  While discussing the deception aspect of Art. III, S. 1 (prohibiting deception in title or contents of a bill), the Supreme Court referred back to its earlier discussion concerning deception under the *clear title* prong of Art. III, S. 3.
[5] As discussed, the robust debates and vigorous challenges concerning and against passage of Act 192 and its antecedent legislation is all indicative of legislators' informed knowledge of the law.

set forth in the foregoing section, there is no aspect of Act 192, by its passage, which evidences any deceit of any form or kind. In fact, and as detailed in the foregoing, the entire General Assembly, inclusive of the House of Representatives and the Senate, participated in, or had full opportunity to participate in, the debate and vote on Act 192. Telling, Appellants, like Petitioners in *Leach*, bring forth no allegation or evidence suggesting that the public has somehow been deceived by Act 192's passage.

Furthermore, moving to the second prong of the Art. III, Section 3 test of constitutionality, there can be little doubt that all topics comprising Act 192 are germane to each other. More precisely, all topics comprising Act 192 effect changes to the Crimes Code. It should be underlined that in assessing this particular prong of Section 3, the Court should again give due deference and consider the *germaneness* in terms of a possibly "reasonably broad [general] subject" which each subtopic is relevant to. *City of Philadelphia v. Com.*, 838 A.2d at 588. Similarly, it has been held that Section 3 is satisfied where the various subjects touched-on by a bill can fairly be viewed as serving "a single unifying purpose." *Markovsky v. Crown Cork & Seal Co.*, 107 A.3d 749, 765 (Pa. Super. 2014), reargument denied (Feb. 26, 2015) (holding that subtopics which may appear unrelated

relative to each other may still be *germane* for purposes of Section 3 where they all regulate a single concern).

Indeed, as a general matter of legislation, it is usually not practically possible to pass laws without necessitating that bills be subdivided under several headings. *Payne v. School Dist. Of Coudersport Borough*, 31 A. 1072, 1074 (Pa. 1895). *Amici* submit that this Court should also be guided by the Pennsylvania Supreme Court's decision in *Spahn*, where a bill ultimately amending "one thing" – the Home Rule Act – was found to be fully constitutional, despite including multiple sub-sections, headings and sub-headings in effecting that amendment. *Spahn v. Zoning Bd. Of Adjustment*, 602 Pa. 83, 977 A.2d 1132, 1152 (2009).

In *Ritter v. Commonwealth*, the bill amended *five* distinct segments of the Crimes Code – (i) underage drinking; (ii) litigation with prisoners; (iii) penalties for drug trafficking to minors; (iv) penalties for the scattering of rubbish; and (b) regulations regarding the performance and funding of abortions. 548 A.2 1317, 1318 (Pa. Cmwlth. 1988) (aff'd, 521 Pa. 536, 557 A.2d 1064 (1989)). Significantly, in granting summary judgments to Respondents there, this Court held, and the Pennsylvania Supreme Court later affirmed, that those 5 (five) amendments *were* germane in that they all

served the overarching and unifying purpose of "amending the Penal Code".

*Id*.

> "[d]espite the disparity in the types of acts described [by Act 31], we have no problem in concluding that Act 31, as enacted, embraces a single subject – i.e., amendments to the Penal Code." *Id.*

Even assuming, *arguendo*, that this Court were to find that the topics of Act 192 are various and facially different from one another, even though all provisions amend the Crimes Code, this fact alone does not render Act 192 unconstitutional.  In fact, the *Leach* Petitioners' citation of *Washington*, for the proposition that a multi-faceted bill having the unifying purpose of amending the Crimes Code, is somehow (automatically) unconstitutional under Section 3, was misdirected.  Rather, a fair reading of that holding in *Washington* alongside this Court's holding in *Ritter* shows that: 1) having the multiple sections of a bill simply amend the Crimes Code does *not* automatically satisfy Section 3; *but also*, 2) having multiple sections of a bill simply amend the Crimes Code does *not* automatically render such bill unconstitutional.

Thus, it is apparent that a more sophisticated, case-by-case scrutiny of the bill(s) in question and how any sub-sections of such bill(s) practically relate to the overarching unifying purpose of the legislation is necessary. Doing so with Act 192 readily demonstrates that law's constitutionality.

Consistent with the bills upheld in *PAGE*, *Markovsky, Spahn*, et al., the three "subjects" of Act 192 – theft of secondary metals, standing to sue where municipalities violate certain criminal provision of the Uniform Firearms Act, and mental health records – are *germane* subtopics with a common nexus vis-à-vis the overarching Second Amendment/Article 1, Section 21 and Crimes Code concerns they address – 1) all directly relate to and directly affect individual rights to purchase, carry and bear arms; and 2) all amend the Crimes Code as relating to and/or potentially impactful upon an individual's right to purchase, carry and bear arms.

Although it appears to have been overlooked in the *Leach* matter, Act 192, regarding trespass in relation secondary metal theft, mandated the grading of an offense of that subsection as a misdemeanor of the first degree. Pursuant to 18 Pa.C.S. § 106, a misdemeanor of the first degree can be punished by a maximum of five years. Pursuant to 18 U.S.C. § 922(g)(1), which is defined by 18 U.S.C. § 921(a)(20)(B), a state law crime of a misdemeanor nature that *can be punished* by *more than* two years serves to restrict the firearms rights of the offender. Therefore, any individual who is convicted of secondary metal theft is prohibited from possessing, purchasing and carrying firearms and ammunition.

Similarly, in addition to a violation of 18 Pa.C.S. § 6120 being a misdemeanor of a first degree, pursuant to 18 Pa.C.S. § 6119, which would also prohibit any individual convicted of an offense under Section 6120 from possessing, purchasing and carrying firearms under Section 922(g)(1), Act 192 provided the ability of an individual to challenge an illegal ordinance, restricting his/her right to possess, purchase and carry firearms, in advance of being prosecuted for any such violation. The General Assembly, after seeing Mr. Justin Dillon unlawfully and illegally prosecuted for putatively carrying a firearm in a City of Erie park and the District Attorney not only failing to bring charges against the City officials responsible but also ratifying and condoning the prosecution, determined that it was immediately necessary to provide additional safeguards to protect individuals in similar situations. *Dillon v. City of Erie*, 83 A.3d 467, 474 (Pa. Cmwlth. Ct. 2014).

Lastly, pursuant to 18 U.S.C. § 922(g)(4), any individual who is committed to a mental institution – the records that Act 192 sought to provide to the Federal Bureau of Investigation – is prohibited from possessing, purchasing and carrying firearms and ammunition.

As reflected in the Brief of Respondents Mike Turzai, Speaker of the House of Representatives, and Joseph B. Scarnati, President Pro Tempore of

the Senate, at 34-35, in the *Leach* matter, Representative Bryan Cutler,

during the debate, specifically stated:

> HB 80 has a single subject. It deals with crimes and regulations which affect the ability to own firearms, which directly involves the Second Amendment. Within that subject, there are several subtopics including the creation of two new offense which can preclude the purchase or possession of firearms under Federal Law, because under Federal Law, a misdemeanor of the first degree or above can implicate you right to own a firearm. Providing firearms information is also included in this bill as it relates to mental health records. That is also an important distinction relating to the ownership of a firearm. That is something that this administration undertook in 2013 under the leadership of the gentleman from Montgomery County. And I think it is important that we recognize that that also deals with the ownership and the rights of those who can own firearms. And furthermore, it does provide for remedies for unauthorized local regulations of firearms.

Accordingly, the three "subjects" of Act 192 are germane subtopics

with a common nexus or single unifying subject relating to the possessing,

purchasing and carrying of firearms. Therefore, Amici respectfully invites

the Court to reconsider its decision in *Leach* and any decision issued in this

matter.

### C.   The General Assembly Has Preempted the Entire Field of Firearm and Ammunition Regulation

Contrary to the assertions of Appellants, and consistent with the

holding of the Pennsylvania Supreme Court in *Ortiz v. Commonwealth*, the

General Assembly has preempted the entire field of firearms and

ammunition regulation through both express and field preemption. 545 Pa. 279, 681 A.2d 152, 156 (1996).

### 1.   *Express Preemption*

In relation to expressed preemption, the Pennsylvania Supreme Court's decision in *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*, 600 Pa. 207, 964 A.2d 855 (2009), is extremely informative. The Court started out by emphasizing that

> Municipalities are creatures of the state and have no inherent powers of their own. Rather, they "possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect."

*Id*. at 862 (citing *City of Phila. v. Schweiker,* 579 Pa. 591, 858 A.2d 75, 84 (2004) (quoting *Appeal of Gagliardi,* 401 Pa. 141, 163 A.2d 418, 419 (1960)). The Court then turned to addressing the different types of preemption that exist and declared that express provisions are those "where the state enactment contains language specifically prohibiting local authority over the subject matter." *Id*. at 863.

Starting with the plain language of Article 1, Section 21, it provides, "The right of the citizens to bear arms in defense of themselves and the State shall not be questioned." In addressing and citing to Article 1, Section 21, the Pennsylvania Supreme Court in *Ortiz* declared:

> Because the <u>ownership of firearms is constitutionally protected</u>, its regulation is a matter of statewide concern. The constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia and Pittsburgh, where it may be abridged at will, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils, is the proper forum for the imposition of such regulation.

681 A.2d at 156. In this regard, when buttressed with Article 1, Section 25,[6] Article 1, Section 21, is exactingly clear that every citizen has an inalienable right to bear arms in defense of themselves. Through Article 1, Section 25, the People have reserved for themselves or otherwise expressly preempted the General Assembly from restricting this inviolate right. In this regard, if the General Assembly cannot even regulate, clearly a local government with "no inherent powers," as set forth by the Court's in *Huntley & Huntley*, cannot so regulate, *even with* the blessing of the General Assembly, as such is a power that even the General Assembly does not retain and therefore cannot grant.

In turning to the plain wording of Section 6120, it too evidences the General Assembly's intent to expressly preempt the field of firearm and ammunition regulation. Under the clear, unambiguous, text of Section 6120,

---

[6] Article 1, Section 25 provides, "**Reservation of powers in people**. To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

it cannot be disputed that the General Assembly has specifically prohibited all local government authority in relation to the ownership, possession, transfer and transportation of firearms and ammunition.

Therefore, as Article 1, Section 21 and Section 6120 expressly preempt any firearm and ammunition regulation, Appellants are prohibited from regulating, *in any manner*, firearms and ammunition.

## 2.    *Field Preemption*

Even if, *arguendo*, this Court was to find that the expressed preemption of Article 1, Section 21 and Section 6120 was insufficient in some regard in relation to the ordinances challenged in this matter, the UFA, 18 Pa.C.S. §§ 6101 – 6127, clearly provides for field preemption.

In relation to field preemption, the Pennsylvania Supreme Court's decision in *Huntley & Huntley* is again extremely instructive. The Court explained that "[p]reemption of local laws may be implicit, as where the state regulatory scheme so completely occupies the field that it appears the General Assembly did not intend for supplementation by local regulations." 964 A.2d at 864. Even more enlightening is the Court's holding that "[e]ven where the state has granted powers to act in a particular field, moreover, such powers do not exist if the Commonwealth preempts the field." *Id*. at 862 (citing *United Tavern Owners of Phila. v. Philadelphia Sch. Dist.*, 441

Pa. 274, 272 A.2d 868, 870 (1971)). In further explaining the field

preemption doctrine, the court declared that "local legislation cannot permit

what a state statute or regulation forbids or prohibit what state enactments

allow." *Id*. (citing *Liverpool Township v. Stephens*, 900 A.2d 1030, 1037

(Pa. Cmwlth. 2006)).

In relation to Article 1, Section 21 and Section 6120, the Pennsylvania

Supreme Court in *Ortiz* clearly held that "[b]ecause the ownership of

firearms is constitutionally protected, its regulation is a matter of statewide

concern ... Thus, regulation of firearms is a matter of concern in all of

Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General

Assembly, not city councils, is the proper forum for the imposition of such

regulation." 681 A.2d at 156 (emphasis added). Thereafter and consistent

therewith, this Honorable Court in *Nat'l Rifle Ass'n v. City of Philadelphia*,

citing to *Ortiz*, additionally held that the General Assembly has preempted

the entire field. 977 A.2d 78, 82 (Pa. Cmwlth. 2009).

In reviewing more generally the UFA, 18 Pa.C.S. §§ 6101 – 6127, it is

evident that the regulatory scheme completely occupies the field of firearm

and ammunition regulation that it cannot be argued that the General

Assembly intended for supplementation by local regulations – Section 6102

(definitions); Section 6103 (crimes committed with firearms); Section 6104

(evidence of intent); Section 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms); Section 6106 (firearms not to be carried without a license); Section 6106.1 (carrying loaded weapons other than firearms); Section 6107 (prohibited conduct during emergency); Section 6108 (carrying firearms on public streets or public property in Philadelphia); Section 6109 (licenses); Section 6110.1 (possession of firearm by minor); Section 6110.2 (possession of firearm with altered manufacturer's number); Section 6111 (sale or transfer of firearms); Section 6111.1 (Pennsylvania State Police); Section 6111.2 (firearm sales surcharges); Section 6111.3 (firearm records check fund); Section 6111.4 (registration of firearms); Section 6111.5 (rules and regulations); Section 6112 (retail dealer require to be licenses); Section 6113 (licensing dealers); Section 6114 (judicial review); Section 6115 (loans on, or lending or giving firearms prohibited); Section 6116 (false evidence of identity); Section 6117 (altering or obliterating marks of identification); Section 6118 (antique firearms); Section 6119 (violation penalty); Section 6120 (limitation on the Regulation of Firearms and Ammunition); Section 6121 (certain bullets prohibited); Section 6122 (proof of license and exception); Section 6123 (waiver of disability or pardons); Section 6124 (administrative regulations); Section

6125 (distribution of uniform firearm laws and firearm safety brochures); and Section 6127 (firearm tracing).

Furthermore, the General Assembly restricted the promulgation of rules and regulations relating to the UFA to the Pennsylvania State Police, pursuant to 18 Pa.C.S. § 6111.5, directed that the Pennsylvania State Police administer the Act, pursuant to 18 Pa.C.S. § 6111.1, and declared that the Pennsylvania State Police was responsible for the uniformity of the license to carry firearms applications in the Commonwealth, pursuant to 18 PA.C.S. § 6109(c). In this regard, these statutory provisions are substantially similar to the Anthracite Strip Mining and Conservation Act, 52 P.S. §§ 681.1–681.22, and its regulatory proscription, 52 P.S. § 681.20c, which the Pennsylvania Supreme Court found to result in field preemption in *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329, 336 (1966).

Although Appellants attempt to argue that since the Pennsylvania Supreme Court in *Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401, 414-15 (2007) failed to list the UFA as resulting in field preemption, the Court must not have "considered the field preempted," such ignores the fact that the Court had already found express preemption, *eleven years prior* in *Ortiz*. With express preemption already established, especially based on Article 1,

Section 21, there was no reason for the Court to additionally specify that UFA also constituted field preemption. Moreover, given the breadth of the UFA and holding in *Ortiz*, it is difficult to fathom how the UFA would not constitute the same-type of field preemption as the Pennsylvania Supreme Court found in relation to the Banking Code of 1965, 7 P.S. §§ 101–2204, in *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 412 A.2d 1366, 1369-70 (1980). Indeed, as the Supreme Court in Ortiz declared, "[b]ecause the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern… and the General Assembly, not city councils, is the proper forum for the imposition of such regulation." 681 A.2d at 156.

Therefore, even absent the express preemption of Article 1, Section 21 and Section 6120, the UFA completely occupies the field of firearm and ammunition regulation and therefore preempts the Appellants regulation, *in any manner*, of firearms and ammunition.

### 3.     *Third Class City Code Does Not Permit Appellants to Regulate Concealed Carry or Discharge*

While Appellants cite to the Third Class City Code for their putative power to regulate concealed carry and ban discharge, they noticeably ignore the Pennsylvania Supreme Court's dictate in *Huntley & Huntley* and fail to

advise this Court of the full text of 53 Pa.C.S. § 37423 and its legislative history.

In 1931, June 23, P.L. 932, No. 317, art. XXIV, § 2423, (codified as Section 37423), was enacted. At that time, the statutory language was:

> **Regulate guns, et cetera.–**To regulate, prohibit, and prevent the discharge of guns, rockets, powder, or any other dangerous instrument or combustible material within the city, and to prevent the carrying of concealed deadly weapons.

Thereafter, in 1974 and as more thoroughly explained in the foregoing sections, the General Assembly enacted Section 6120 prohibiting any local government from regulating, *in any manner*, firearms and ammunition. When the Third Class City Code was up for reenactment in 2014, the General Assembly was concerned, pursuant to 1 Pa.C.S. §§ 1933, 1936 and the recent decision in *Dillon*, 83 A.3d at 470, with the possibility of Section 37423 limiting the statewide applicability and restriction on local government regulation of firearms and ammunition (Section 6120) and the regulation of licenses to carry firearms (Section 6109).

Therefore, in reenacting the Third Class City Code, the General Assembly modified the language found in Section 37423, to include a prefatory clause of "[t]o the extent permitted by Federal and other State law," so to invalidate any arguments under Sections 1933 and 1936 that Section 37423 supersedes or otherwise limits Section 6120. (Emphasis

31

added). Furthermore, as discussed *supra*, the Pennsylvania Supreme Court

held in *Huntley & Huntley* that "[e]ven where the state has granted powers to

act in a particular field, moreover, such powers do not exist if the

Commonwealth preempts the field." 964 A.2d at 862 (citing *United Tavern*

*Owners of Phila. v. Philadelphia Sch. Dist.*, 441 Pa. 274, 272 A.2d 868, 870

(1971)).

In this matter, there exists both expressed and field preemption

enacted by the General Assembly preventing Appellants from regulating the

carrying, transportation and discharge of firearms. That preemption,

moreover, serves to protect the explicitly preserved constitutional right of

the people.

In relation to carrying and transporting firearms, the General

Assembly has set forth the criteria for an individual to obtain a license to

carry firearms, 18 Pa.C.S. § 6109, and has specified when and where

firearms may be carried and transported in the absence of a license to carry

firearm, 18 Pa.C.S. § 6106.  In fact, in relation to Philadelphia, as it is

exactingly clear that only the General Assembly can regulate the carrying

and transporting of firearms, the Legislature enacted 18 Pa.C.S. § 6108

prohibiting the "carrying firearms on public streets or public property in

Philadelphia," as the city lacked the power to so regulate. If local

governments had been provided the power to regulate the carrying and transporting of firearms, this provision would have been unnecessary, as the city could have simply enacted its own regulation.

Similarly, understanding that local governments are foreclosed from regulating firearms and ammunition, the General Assembly regulated the carrying of firearms during emergencies, 18 Pa.C.S. § 6107, the possession and transport of firearms by minors, 18 Pa.C.S. § 6110.1, and even the carrying of loaded weapons other than firearms, 18 Pa.C.S. § 6106.1.

More importantly, the U.S. Supreme Court in *District of Columbia v. Heller,* 554 U.S. 570, 584-85 (2008) specifically held that the definition of "bear arms" was to "wear, bear, or <u>carry … upon the person or in the clothing or in a pocket, for the purpose of . . . being armed and ready for offensive or defensive action in a case of conflict with another person.</u>" *(*quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998)(emphasis added)). Accordingly, the Second Amendment protects the carrying of a firearm in one's pocket for purpose of self-defense, a constitutional right that the Appellants seek to restrict, pursuant to their ordinances – §§ 3-355.2, 3-345.1, 3-345.2, and 10-301.13. While the U.S. Supreme Court's holding was in relation to the Second Amendment, this Court previously observed in relation to Article 1, Section 21, that

> Though the United States Supreme Court has only recently recognized "that individual self-defense is 'the central component' of the Second Amendment right," McDonald, —— U.S. at ——, 130 S.Ct. at 3036 (emphasis omitted) (quoting Heller, 554 U.S. at 599, 128 S.Ct. 2783), *the right to bear arms in defense of self has never seriously been questioned in this Commonwealth*.

*Caba v. Weaknecht*, 64 A.3d 39, 58 (Pa. Cmwlth. Ct.), reconsideration denied (Mar. 27, 2013), appeal denied, 621 Pa. 697, 77 A.3d 1261 (2013)(emphasis added). Therefore, this Court has already found that an individual has a similar, if not identical, right to self-defense in Article 1, Section 21, which would again prohibit Appellants from regulating, in any manner, the carrying and discharge of firearms for self-defense and hunting.

Of utmost importance, even if the Appellants' had the power to regulate the carrying and discharge of firearms, their provisions are absolute and fail to provide for any exception, including for self-defense or hunting; thereby, violating the holdings in *Heller* and *Caba*. While the decision of the Dauphin County Court of Common Pleas acknowledges the absence of such exceptions, it seems that the court was unaware of the U.S. Supreme Court's holding in *Heller*, where the Court, in response to the District's argument that there was an inherent exception, found that such an argument was "precluded by the unequivocal text" of the ordinance. *Heller*, 554 U.S. at 630. Moreover, as the text of ordinances §§ 3-345.1, 3-345.2, 10-301.13 evidences, where the Appellants desired to provide an exception, they knew

how to draft such. Therefore, Appellants are precluded from arguing that there exists an inherent exception.

Accordingly, as the Second Amendment, Article 1, Section 21 and the statutes clearly provide for express and field preemption, even ignoring Section 6120, and Section 37423 was explicit in only permitting regulation to the extent permitted by the laws of the U.S. Government and the Commonwealth, the Appellants are precluded from regulating the carrying, transporting and discharge of firearms.

> ### 4.   The Appellants' Enjoined Ordinances Violate the Second Amendment, Article 1, Section 21 and the Uniform Firearms Act

While this Court previously ruled in *Clarke v. House of Representatives*, 957 A.2d 361, 364 (Pa. Cmwlth. 2008) (*en banc*), and *Nat'l Rifle Ass'n v. City of Philadelphia*, 977 A.2d at 82 (*en banc*) that even regulation *consistent* with the Uniform Firearms Act was preempted, Appellants attempt to argue that their regulation is merely consistent regulation, based on *Minich v. Cnty. of Jefferson*, 869 A.2d 1141 (Pa. Cmwlth. Ct. 2005), while ignoring the maxim *expressio unius est exclusio alterius* and the Pennsylvania Supreme Court's holding in *Huntley & Huntley* that "local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow." 600 Pa at 220

(citing *Liverpool Township v. Stephens*, 900 A.2d 1030, 1037 (Pa. Cmwlth. 2006)).

As set forth *supra*, all of the challenged ordinances violate the Second Amendment and Article 1, Section 21, as they infringe upon the inviolate right to carry and use a firearm for purposes of self-defense. Even the lost and stolen ordinance is violative, as it has a chilling effect upon the lawful ownership of firearms.[7] In no other context does any level of government seek to re-victimize a victim of crime by prosecuting him/her for failing to report his/her victimization.

Even if the ordinances would survive the constitutional challenge and this Court were to ignore its prior precedent in *Clarke* and *Nat'l Rifle Ass'n* that municipalities many not regulate even the *unlawful* ownership, possession, carrying and transporting of firearms and ammunition, the Appellants seek to regulate the *lawful* ownership, possession, carrying and transporting of firearms and ammunition, which is specifically proscribed by

---

[7] Appellants' lost and stolen ordinance additionally violates Section 6120, as it regulates otherwise lawful conduct and this Court, *en banc*, previously held in *Clarke* that the City of Philadelphia's lost and stolen ordinance was violative of Section 6120. 957 A.2d at 364.

Section 6120 and this Court's prior holdings in *Minich*[8] and *Schneck v. City of Philadelphia,* 383 A.2d 227 (Pa. Cmwlth. 1978).[9]

### *i.   Minors*

Ordinance § 3-345.1 provides,

> It shall be unlawful for any minor under the age of 18 years to have in his or her possession, except in his or her place of residence, any firearm, flobert rifle, air gun, spring gun or any implement which impels with force a metal pellet of any kind, unless said minor is accompanied by an adult.

Yet, when one reviews 18 Pa.C.S. § 6110.1, the General Assembly has only regulated as unlawful the following:

> **(a) Firearm.--**Except as provided in subsection (b), a person under 18 years of age shall not possess or transport a firearm anywhere in this Commonwealth.

---

[8] In *Minich*, this Court held that "the County may not enact an ordinance which regulates firearm possession *if* the ordinance would make the otherwise lawful possession of a firearm unlawful." 869 A.2d at 1143 (emphasis in original).

[9] In *Schneck*, this Court held that "it is a well-established principle of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinances to the contrary are unenforceable." 383 A.2d at 229 (citing *United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 272 A.2d 868 (1971); *Harris-Walsh, Inc. v. Dickson City Borough*, 420 Pa. 259, 216 A.2d 329 (1966); *Department of Licenses and Inspections v. Weber*, 394 Pa. 466, 147 A.2d 326 (1959); *Girard Trust Co. v. Philadelphia*, 336 Pa. 433, 9 A.2d 883 (1939); *City of Erie v. Northwestern Pennsylvania Food Council*, 322 A.2d 407 (Pa. Cmwlth. 1974).

**(b) Exception.--**Subsection (a) shall not apply to a person under 18 years of age:

   (1) who is under the supervision of a parent, grandparent, legal guardian or an adult acting with the expressed consent of the minor's custodial parent or legal guardian and the minor is engaged in lawful activity, including safety training, lawful target shooting, engaging in an organized competition involving the use of a firearm or the firearm is unloaded and the minor is transporting it for a lawful purpose; or

   (2) who is lawfully hunting or trapping in accordance with 34 Pa.C.S. (relating to game).

**(c) Responsibility of adult.--**Any person who knowingly and intentionally delivers or provides to the minor a firearm in violation of subsection (a) commits a felony of the third degree.

**(d) Forfeiture.--**Any firearm in the possession of a person under 18 years of age in violation of this section shall be promptly seized by the arresting law enforcement officer and upon conviction or adjudication of delinquency shall be forfeited or, if stolen, returned to the lawful owner.

While, at first blush, it may seem like Section 6110.1 is more restrictive than Ordinance § 3-345.1, it is imperative to review the definition of a "firearm" as specified in 18 Pa.C.S. § 6102. The definition for a "firearm" is

Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

Accordingly, it immediately becomes apparent that possession of rifles and shotguns, unless they constitute a short-barreled rifle/shotgun under the National Firearms Act, 26 U.S.C. § 5801, *et seq.*, by minors *are not restricted*, in any manner, by Section 6110.1. Rather, unlike Ordinance § 3-345.1, which applies to all types of firearms including rifles and shotguns, Section 6110.1 only makes *unlawful* the possession, generally, of handguns by minors, unless one of the exemptions applies. Therefore, Appellants *are* regulating the *lawful* possession of rifles and shotguns by minors. Furthermore, unlike the Section 6110.1(b)(2)'s exemption, Ordinance § 3-345.1 regulates a minor's use of a handgun in relation to Title 34, which, again, is the regulation of a minor's *lawful* right to possess and transport handguns, rifles and shotgun in compliance with Title 34.

### ii.    Parks [10]

Ordinance § 10-301.13 – Hunting, firearms and fishing – provides,

A. No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.

B. No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to

---

[10] While Appellants label their section "Parks and Playgrounds," there is nothing in § 10-301.13 that addresses playgrounds.

human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.

C. No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.

D. No person shall fish in Italian Lake.

As discussed *supra*, while there do exist some statutory restrictions on carrying and discharging firearms in relation to hunting, there does not exist any statutory prohibition on the use, carry or possession of a firearm in a park. More importantly, this Court addressed this exact issue in *Dillon*, where the City of Erie had a parks ordinance, Section 955.06(b), which provided,

> No person shall use, carry or possess firearms of any descriptions, or air-rifles, spring guns, bow and arrows, slings, paint ball weapons or any other forms of weapons potentially inimical to wild life and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device. Shooting into park areas from beyond park boundaries is forbidden. 83 A.3d at 470.

In striking down the ordinance, this Court declared, "Section 6120(a) of the Act does preempt Section 955.06(b) by its own terms and by the case law and precludes the City from regulating the lawful possession of firearms" *Id*. at 473.

It must be noted that the language in Appellants' ordinance is almost verbatim the ordinance in *Dillon* and the operative text – the first eleven

words – is verbatim. Accordingly, this Court has already ruled that the text of this ordinance violates Section 6120.

While Appellants attempt to argue that they are entitled to regulate in parks, including open carrying, they (1) rely on statutory provisions that provide no such power, (2) cite to an irrelevant and unlawful DCNR regulation, and (3) ignore the Pennsylvania Supreme Court's dictate that open carrying is lawful in the Commonwealth.

First, Appellants relying on *dicta* from footnote nine of *Dillon*, argue that third class cities have a proprietary authority to manage their property, including prohibiting the open carrying of firearms. As Appellants concede, this Court did not address that issue in *Dillon*.

Regardless, Appellants rely on 53 P.S. § 37402.1(a) and 53 Pa.C.S. § 37435 for their proposition that they can regulate the open carrying of firearms – neither of which provide any specific power to so regulate and both of which specifically state that such power is limited. In fact, Section 37435 is explicitly clear that any regulation cannot be "inconsistent with or restrained by the Constitution of Pennsylvania and laws of this Commonwealth." Moreover, as discussed at length *supra*, as the Pennsylvania Supreme Court declared in *Huntley & Huntley*, "[e]ven where the state has granted powers to act in a particular field, moreover, such

powers do not exist if the Commonwealth preempts the field." 600 Pa. at 220 (citing *United Tavern Owners of Phila. v. Philadelphia Sch. Dist.*, 441 Pa. 274, 279, 272 A.2d 868, 870 (1971)). Therefore, even if Appellants were correct in their assertion, they would still be precluded by Article 1, Section 21 and Section 6120, as the General Assembly has preempted the field.

Furthermore, under the Statutory Construction Act, Appellants also miss the mark in their argument, as the particular controls the general, pursuant to 1 Pa.C.S. § 1933, and when the language in a statute is clear and free from all ambiguity, it must be given its explicit meaning, pursuant to 1 Pa.C.S. § 1921. In relation to Article 1, Section 21 and Section 6120, it cannot be disputed that they are the particular, which control the general. Moreover, even as acknowledged by the Court in *Ortiz*, Article 1, Section 21 and Section 6120 are exactingly clear and free from ambiguity. Additionally, the Pennsylvania Supreme Court has declared that "[a]ny fair, reasonable doubt as to the existence of power [in a municipality] is resolved by the courts against its existence." *Denbow v. Borough of Leetsdale*, 556 Pa. 567, 721 A.2d 1113, 1118 (1999).

Second, Appellants erroneously rely on 17 Pa.Code. § 11.215, an irrelevant and unlawful DCNR regulation, for support of their position that they are entitled to regulate open carry. While they acknowledge that 18

Pa.C.S. § 6109(m.2) prohibits DCNR from regulating concealed carry of a firearm, which was enacted by 2008, Oct. 17, P.L. 1628, No. 131, § 4, they ignore 18 Pa.C.S. § 6109(m.3), more recently enacted by 2011, June 28, P.L. 48, No. 10, § 6, which specifically provides that

> Nothing in this section shall be construed to:
> …
> (2) Authorize any Commonwealth agency to regulate the possession of firearms in any manner inconsistent with the provisions of this title.

While this Court mentioned in *dicta* in footnote nine of *Dillon* that 17 Pa.Code. § 11.215 may provide some basis in the law to support such regulation, if the City of Erie had raised this issue, the undersigned, who was counsel for the Appellant Justin Dillon, would have raised the unlawfulness of 17 Pa.Code. § 11.215 with the Court. As the City of Erie did not raise such issue, Appellant Justin Dillon had no opportunity to respond to DCNR's unlawful regulation, as he was not aware that such regulation was even being reviewed or considered by this Court. Of course, this problem with not subjecting a theory to adversarial briefing illustrates why *dicta* is entitled to little, if any, weight. Furthermore, even if DCNR, a Commonwealth agency, had the power to so regulate, it would be irrelevant and immaterial to whether a municipal government had the power to so regulate.

Third, Appellants also seemingly ignore, assuming *arguendo* that they have the power to regulate *unlawful* conduct,[11] the Pennsylvania Supreme Court's holdings in *Com. v. Hawkins*, 547 Pa. 652, 692 A.2d 1068, 1071 (1997) and *Ortiz,* 681 A.2d at 155, that it is *lawful* to open carry in the Commonwealth, with the exception of Philadelphia, absent a license to carry firearms.

If this Court were to agree with Appellants that they are entitled to regulate open carry or any other regulation in relation to firearms and ammunition, such regulation would eviscerate the purpose of Article 1, Section 21 and Section 6120, as local governments could enact a patchwork of laws across the Commonwealth that would ensnare law-abiding citizens, who have no intent to violate the law. It was to prevent any such patchwork that the Commonwealth originally enacted a *uniform* firearms act and why the General Assembly enacted Section 6120 in 1974.

Nevertheless, as Appellants are attempting to open Pandora's box by arguing that they have such right, if this Court is to seriously consider their argument, it must consider that any property in the possession of Appellants is held for *public*, not private, purposes, under the Public Trust doctrine; and therefore, they are precluded from regulating it as a private property owner.

---

[11] This Court's holdings in *Clarke* and *Nat'l Rifle Association v. City of Philadelphia* reject that premise.

In *Board of Trustees of Philadelphia Museums v. Trustees of Univ. of Pennsylvania*, 251 Pa. 115, 96 A. 123, 125 (1915), the Pennsylvania Supreme Court held that

> A nation, state, or municipality which dedicates land that it owns in the site of a town to <u>public use for the purpose of a park is as conclusively estopped as a private proprietor from revoking that dedication,</u> from selling the park, and from appropriating the land which it occupies to other purposes, after lots have been sold, after the town has been settled, and after the park has been improved with moneys raised by the taxation of its residents and taxpayers in reliance upon the grant and covenant which the dedication evidences. (emphasis added).

The Pennsylvania Supreme Court has also held that *only* if a municipal park is held for public purposes, is it immune from taxation. *City of New Castle v. Lawrence Cnty.*, 353 Pa. 175, 44 A.2d 589, 594 (1945)(holding that "[a] taxing authority must declare exempt any property within its taxing district *if it is public property used for public purposes* because the legislature has exempted such property, not because the city has selected the site for a public park.) As it is believed, and there is no evidence of record to the contrary of which *Amici* are aware, that the City of Harrisburg does not pay taxes in relation to its parks, it is estopped from arguing that the property is held privately, instead of publicly and used for public purposes.

It is therefore clear, Appellants do not have the power to regulate, in any manner, the possession, carrying, or transporting of firearms or ammunition.

### iii.    Emergencies

Ordinance § 3-355.2 – Emergency measures – provides,

A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:

(1) *The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.*

(2) *The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.*

(3) *The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.*

B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

(1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital

services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

(2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

(3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

(4) The closing of places of public assemblage with designated exceptions.

(5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

(6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

(7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

(8) *The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind*. (Emphasis added throughout)

Yet, in reviewing 18 Pa.C.S. § 6107, the General Assembly has only

regulated as unlawful the following:

**(a) General rule.--**No person shall carry a firearm upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive unless that person is:

> (1)     Actively engaged in a defense of that person's life or property from peril or threat.

> (2)     Licensed to carry firearms under section 6109 (relating to licenses) or is exempt from licensing under section 6106(b) (relating to firearms not to be carried without a license).

**(b) Seizure, taking and confiscation.--**Except as otherwise provided under subsection (a) and notwithstanding the provisions of 35 Pa.C.S. Ch. 73 (relating to Commonwealth services) or any other provision of law to the contrary, no firearm, accessory or ammunition may be seized, taken or confiscated during an emergency unless the seizure, taking or confiscation would be authorized absent the emergency.

**(c) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Accessory." Any scope, sight, bipod, sling, light, magazine, clip or other related item that is attached to or necessary for the operation of a firearm.

"Firearm." The term includes any weapon that is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any weapon.

As this Court previously held in *Clarke*, 957 A.2d at 364 (*en banc*),

and *Nat'l Rifle Ass'n v. City of Philadelphia*, 977 A.2d at 82 (*en banc*), even

regulation consistent with the Uniform Firearms Act is preempted under

Section 6120. Even if, *arguendo*, this Court were to reconsider its holdings

in *Clarke* and *Nat'l Rifle Ass'n* in relation to whether Section 6120 permits a

municipality to regulate consistent with the Uniform Firearms Act, Ordinance 3-355.2 would still be violative, as it regulates *lawful* activity.

In comparing Section 6107 to Ordinance 3-355.2, it is explicitly clear that in violation of the holding in *Heller* and this Court's declaration in *Caba*, unlike Section 6107, Ordinance 3-355.2 fails to provide any self-defense exception; yet, in Ordinance 3-355.2(A)(3), it reflects that Appellants were acutely aware of how to include and draft exceptions to the ordinance.

Further, unlike Section 6107, Ordinance 3-355.2 provides no exception for an individual who possess a valid license to carry firearms, pursuant to Section 6109, or is exempt, pursuant to Section 6106. Additionally, and again unlike Section 6107, Ordinance 3-355.2 restricts the sale, transfer and displaying of firearms and ammunition, which is perfectly lawful under Section 6107. The clear and unambiguous text of Section 6120 was to preempt this exact form of regulation.

Contrary to the assertion of Appellants that the Mayor has discretion in implementing these firearm and ammunition restrictions, Ordinance 3-355.2(A), unlike section 3-355.2(B), is explicitly clear that the Mayor lacks any discretion and that such regulations are effective immediately upon the declaration of a state of emergency by the Mayor. While the Mayor would

have discretion in relation to Ordinance 3-355.2(B)(8), such does not change the fact that Ordinance 3-355.2(B)(8) also violates Article 1, Section 21 and Section 6120, as at a minimum, it is the regulation of lawful activity, as discussed *supra*. Also, while Appellants stop short of stating that a state of emergency has never been declared by an acting Mayor of the City of Harrisburg, they also do not advise the Court that on September 7, 2011, as a result of massive flooding, Harrisburg Mayor Linda Thompson declared a state of emergency, which triggered the prohibitions of Ordinance 3-355.2(A).[12]

As all of Appellants ordinances violate the Second Amendment, Article 1, Section 21 and Section 6120, the ordinances must be enjoined. Even if, *arguendo*, this Court were to agree with Appellants that they may regulate consistent with the Uniform Firearms Act, as explained *supra*, all of the ordinances go far beyond the unlawful conduct specified in the Uniform Firearms Act and seek to regulate lawful activity.

## IV.   CONCLUSION

For all the foregoing reasons, *Amici* respectfully submit that Act 192 does *not* violate the Pennsylvania Constitution and that the Court should

---

[12] *See*,
http://www.pennlive.com/midstate/index.ssf/2011/09/harrisburg_mayor_declares_stat.html

uphold the February 25, 2015 Order of the Dauphin County Court of

Common Pleas, docket no. 2015-cv-255.

Respectfully Submitted,

_____
Joshua Prince, Esq.
Atty. Id. No. 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803 ext. 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

**_Counsel for Amici_**

## WORD COUNT CERTIFICATION

I certify that based on the word count of Microsoft Word that this

brief does not exceed 14,000 words, pursuant to PA.R.A.P. 2135.

_____
Joshua Prince, Esq.

# APPENDICES



SENATE AMENDED

PRIOR PRINTER'S NOS. 68, 2066, 3831,
4248                                          PRINTER'S NO. **4318**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

No. 80    Session of 2013

INTRODUCED BY METCALFE, CLYMER, D. COSTA, COX, GILLEN, GROVE,
C. HARRIS, HESS, KAUFFMAN, KORTZ, LONGIETTI, MILLARD,
O'NEILL, PASHINSKI, PETRI, READSHAW, ROCK, SAYLOR, SWANGER,
TOEPEL, WATSON, FREEMAN, R. MILLER, MULLERY, GABLER, FARRY,
EVANKOVICH, TOOHIL, MARSHALL AND CALTAGIRONE,
JANUARY 10, 2013

AS AMENDED ON THIRD CONSIDERATION, IN SENATE, OCTOBER 15, 2014

AN ACT

1   Amending Title 18 (Crimes and Offenses) of the Pennsylvania
2     Consolidated Statutes, IN BURGLARY AND OTHER CRIMINAL       <--
3     INTRUSION, FURTHER PROVIDING FOR THE OFFENSE OF CRIMINAL    <--
4     TRESPASS; defining the offense of theft of secondary metal;
5     ~~and~~ prescribing penalties; AND, IN FIREARMS AND OTHER    <--
6     DANGEROUS ARTICLES, FURTHER PROVIDING FOR PENNSYLVANIA STATE
7     POLICE AND FOR LIMITATION ON THE REGULATION OF FIREARMS AND
8     AMMUNITION.

9     The General Assembly of the Commonwealth of Pennsylvania

10   hereby enacts as follows:

11   ~~Section 1.   Title 18 of the Pennsylvania Consolidated~~     <--
12   ~~Statutes is amended by adding a section to read:~~

13   ~~SECTION 1.   SECTION 3503(B.1) OF TITLE 18 OF THE PENNSYLVANIA~~ <--
14   ~~CONSOLIDATED STATUTES IS AMENDED TO READ:~~

15       SECTION 1.   SECTION 3503(B.1) AND (D) OF TITLE 18 OF THE   <--
16   PENNSYLVANIA CONSOLIDATED STATUTES ARE AMENDED TO READ:

17   § 3503.   CRIMINAL TRESPASS.

18       * * *

1    (B.1)  SIMPLE TRESPASSER.--

2        (1)  A PERSON COMMITS AN OFFENSE IF, KNOWING THAT HE IS

3    NOT LICENSED OR PRIVILEGED TO DO SO, HE ENTERS OR REMAINS IN

4    ANY PLACE FOR THE PURPOSE OF:

5            (I)   THREATENING OR TERRORIZING THE OWNER OR OCCUPANT

6        OF THE PREMISES;

7            (II)  STARTING OR CAUSING TO BE STARTED ANY FIRE UPON

8        THE PREMISES; [OR]

9            (III)  DEFACING OR DAMAGING THE PREMISES[.]; OR

10           (IV)  UNLAWFULLY TAKING SECONDARY METAL FROM THE

11       PREMISES.

12       (2)  AN OFFENSE UNDER [THIS SUBSECTION] PARAGRAPH (1)(IV)

13   CONSTITUTES A FIRST DEGREE MISDEMEANOR. AN OFFENSE UNDER

14   PARAGRAPH (1)(I), (II) OR (III) CONSTITUTES A SUMMARY

15   OFFENSE.

16   * * *

17   (D)  [DEFINITION.--AS USED IN THIS SECTION, THE TERM "SCHOOL  <--

18   GROUNDS" MEANS ANY] DEFINITIONS.--AS USED IN THIS SECTION, THE

19   FOLLOWING WORDS AND PHRASES SHALL HAVE THE MEANINGS GIVEN TO

20   THEM IN THIS SUBSECTION:

21   "SCHOOL GROUNDS."  ANY BUILDING OF OR GROUNDS OF ANY

22   ELEMENTARY OR SECONDARY PUBLICLY FUNDED EDUCATIONAL INSTITUTION,

23   ANY ELEMENTARY OR SECONDARY PRIVATE SCHOOL LICENSED BY THE

24   DEPARTMENT OF EDUCATION, ANY ELEMENTARY OR SECONDARY PAROCHIAL

25   SCHOOL, ANY CERTIFIED DAY-CARE CENTER OR ANY LICENSED PRESCHOOL

26   PROGRAM.

27   "SECONDARY METAL."  AS DEFINED IN SECTION 3935 (RELATING TO

28   THEFT OF SECONDARY METAL).

29   SECTION 2.  TITLE 18 IS AMENDED BY ADDING A SECTION TO READ:

30   § 3935.  Theft of secondary metal.

1    (a)   Offense defined.--A person commits the offense of theft
2  of secondary metal if the person unlawfully takes or attempts to
3  take possession of, carries away or exercises unlawful control
4  over any secondary metal with intent to deprive the rightful
5  owner thereof.
6    (b)   Grading.--Except as set forth in subsection (c):
7      (1)   An offense under this section constitutes a
8  misdemeanor of the third degree when the value of the
9  secondary metal unlawfully obtained is less than $50.
10      (2)   When the value of the secondary metal unlawfully
11  obtained is $50 or more but less than $200 the offense
12  constitutes a misdemeanor of the second degree.
13      (3)   When the value of the secondary metal unlawfully
14  obtained is $200 or more but less than $1,000 the offense
15  constitutes a misdemeanor of the first degree.
16      (4)   When the value of the secondary metal unlawfully
17  obtained is $1,000 or more, the offense constitutes a felony
18  of the third degree.
19    (c)   Third or subsequent offenses.--An offense under this
20  section constitutes a felony of the third degree when the
21  offense is a third or subsequent offense, regardless of the
22  value of the secondary metal. For purposes of this subsection, a
23  first and second offense includes a conviction, acceptance of
24  Accelerated Rehabilitative Disposition or other form of
25  preliminary disposition before the sentencing on the present
26  violation for an offense under this section or an offense under
27  section 3921 (relating to theft by unlawful taking or
28  disposition).
29    (d)   Definition.--As used in this section, the term
30  "secondary metal" means wire, pipe or cable commonly used by

1    communications, gas and electrical utilities and railroads and

2    mass transit or commuter rail agencies, copper, aluminum or

3    other metal, or a combination of metals, that is valuable for

4    recycling or reuse as raw material.

5    SECTION 3.   SECTION 6111.1(F)(3) AND (G)(1) AND (3) OF TITLE   <--

6    18 ARE AMENDED TO READ:

7    § 6111.1.   PENNSYLVANIA STATE POLICE.

8    * * *

9    (F)   NOTIFICATION OF MENTAL HEALTH ADJUDICATION, TREATMENT,

10   COMMITMENT, DRUG USE OR ADDICTION.--

11   * * *

12   (3)   NOTWITHSTANDING ANY LAW TO THE CONTRARY, THE

13   PENNSYLVANIA STATE POLICE [MAY] SHALL, WITHIN 72 HOURS OF

14   RECEIPT, DISCLOSE, ELECTRONICALLY OR OTHERWISE, TO THE UNITED

15   STATES ATTORNEY GENERAL OR A DESIGNEE, ANY RECORD RELEVANT TO

16   A DETERMINATION OF WHETHER A PERSON IS DISQUALIFIED FROM

17   POSSESSING OR RECEIVING A FIREARM UNDER 18 U.S.C. § 922 (G)

18   (3) OR (4) OR AN APPLICABLE STATE STATUTE[.], AND ANY RECORD

19   RELEVANT TO A DETERMINATION OF WHETHER A PERSON IS NOT

20   DISQUALIFIED OR IS NO LONGER DISQUALIFIED FROM POSSESSING OR

21   RECEIVING A FIREARM UNDER 18 U.S.C. § 922(G)(3) OR (4) OR AN

22   APPLICABLE STATE STATUTE.

23   (G)   REVIEW BY COURT.--

24   (1)   UPON RECEIPT OF A COPY OF THE ORDER OF A COURT OF

25   COMPETENT JURISDICTION WHICH VACATES A FINAL ORDER OR AN

26   INVOLUNTARY CERTIFICATION ISSUED BY A MENTAL HEALTH REVIEW

27   OFFICER, THE PENNSYLVANIA STATE POLICE SHALL, AFTER

28   DISCLOSING RELEVANT RECORDS UNDER SUBSECTION (F)(3), EXPUNGE

29   ALL RECORDS OF THE INVOLUNTARY TREATMENT RECEIVED UNDER

30   SUBSECTION (F).

```
 1      * * *
 2          (3)   THE PENNSYLVANIA STATE POLICE, AFTER DISCLOSING
 3      RELEVANT RECORDS UNDER SUBSECTION (F)(3), SHALL EXPUNGE ALL
 4      RECORDS OF AN INVOLUNTARY COMMITMENT OF AN INDIVIDUAL WHO IS
 5      DISCHARGED FROM A MENTAL HEALTH FACILITY BASED UPON THE
 6      INITIAL REVIEW BY THE PHYSICIAN OCCURRING WITHIN TWO HOURS OF
 7      ARRIVAL UNDER SECTION 302(B) OF THE MENTAL HEALTH PROCEDURES
 8      ACT AND THE PHYSICIAN'S DETERMINATION THAT NO SEVERE MENTAL
 9      DISABILITY EXISTED PURSUANT TO SECTION 302(B) OF THE MENTAL
10      HEALTH PROCEDURES ACT. THE PHYSICIAN SHALL PROVIDE SIGNED
11      CONFIRMATION OF THE DETERMINATION OF THE LACK OF SEVERE
12      MENTAL DISABILITY FOLLOWING THE INITIAL EXAMINATION UNDER
13      SECTION 302(B) OF THE MENTAL HEALTH PROCEDURES ACT TO THE
14      PENNSYLVANIA STATE POLICE.
15      * * *
16      SECTION 4.   SECTION 6120(B) OF TITLE 18 IS AMENDED AND THE
17      SECTION IS AMENDED BY ADDING SUBSECTIONS TO READ:
18      § 6120.   LIMITATION ON THE REGULATION OF FIREARMS AND
19                AMMUNITION.
20      * * *
21      (A.2)   RELIEF.--A PERSON ADVERSELY AFFECTED BY AN ORDINANCE,
22      A RESOLUTION, REGULATION, RULE, PRACTICE OR ANY OTHER ACTION
23      PROMULGATED OR ENFORCED BY A COUNTY, MUNICIPALITY OR TOWNSHIP
24      PROHIBITED UNDER SUBSECTION (A) OR 53 PA.C.S. § 2962(G)
25      (RELATING TO LIMITATION ON MUNICIPAL POWERS) MAY SEEK
26      DECLARATORY OR INJUNCTIVE RELIEF AND ACTUAL DAMAGES IN AN
27      APPROPRIATE COURT.
28      (A.3)   REASONABLE EXPENSES.--A COURT SHALL AWARD REASONABLE
29      EXPENSES TO A PERSON ADVERSELY AFFECTED IN AN ACTION UNDER
30      SUBSECTION (A.2) FOR ANY OF THE FOLLOWING:
```

1    (1)  A FINAL DETERMINATION BY THE COURT IS GRANTED IN

2    FAVOR OF THE PERSON ADVERSELY AFFECTED.

3    (2)  THE REGULATION IN QUESTION IS RESCINDED, REPEALED OR

4    OTHERWISE ABROGATED AFTER SUIT HAS BEEN FILED UNDER

5    SUBSECTION (A.2) BUT BEFORE THE FINAL DETERMINATION BY THE

6    COURT.

7    (B)  DEFINITIONS.--AS USED IN THIS SECTION, THE FOLLOWING

8    WORDS AND PHRASES SHALL HAVE THE MEANINGS GIVEN TO THEM IN THIS

9    SUBSECTION:

10   "DEALER."  THE TERM SHALL INCLUDE ANY PERSON ENGAGED IN THE

11   BUSINESS OF SELLING AT WHOLESALE OR RETAIL A FIREARM OR

12   AMMUNITION.

13   "FIREARMS."  THIS TERM SHALL HAVE THE MEANING GIVEN TO IT IN

14   SECTION 5515 (RELATING TO PROHIBITING OF PARAMILITARY TRAINING)

15   BUT SHALL NOT INCLUDE AIR RIFLES AS THAT TERM IS DEFINED IN

16   SECTION 6304 (RELATING TO SALE AND USE OF AIR RIFLES).

17   "PERSON ADVERSELY AFFECTED."  ANY OF THE FOLLOWING:

18   (1)  A RESIDENT OF THIS COMMONWEALTH WHO MAY LEGALLY

19   POSSESS A FIREARM UNDER FEDERAL AND STATE LAW.

20   (2)  A PERSON WHO OTHERWISE HAS STANDING UNDER THE LAWS

21   OF THIS COMMONWEALTH TO BRING AN ACTION UNDER SUBSECTION

22   (A.2).

23   (3)  A MEMBERSHIP ORGANIZATION, IN WHICH A MEMBER IS A

24   PERSON DESCRIBED UNDER PARAGRAPH (1) OR (2).

25   "POLITICAL SUBDIVISION."  THE TERM SHALL INCLUDE ANY HOME

26   RULE CHARTER MUNICIPALITY, COUNTY, CITY, BOROUGH, INCORPORATED

27   TOWN, TOWNSHIP OR SCHOOL DISTRICT.

28   "REASONABLE EXPENSES."  THE TERM INCLUDES, BUT IS NOT LIMITED

29   TO, ATTORNEY FEES, EXPERT WITNESS FEES, COURT COSTS AND

30   COMPENSATION FOR LOSS OF INCOME.

1      Section 2 3 5.   This act shall take effect in 60 days.          <--



11:18 A.M.

### Supreme Court of Pennsylvania



**Appeal Docket Sheet**

**Docket Number: 61 MAP 2015**

**Page 1 of 4**

**August 4, 2015**

#### CAPTION

Daylin Leach, Minority Chairman of the Senate Judiciary Committee and Senator Representing the 17th Senatorial District, Vincent J. Hughes, Senator Representing the 7th Senatorial District, Lawrence M. Farnese, Senator Representing the 1st Senatorial District, Cherelle L. Parker, Representative for the 200th House District, Edward C. Gainey, Representative for the 24th House District, the City of Philadelphia, the City of Pittsburgh, and the City of Lancaster

v.

Commonwealth of Pennsylvania, Mike Turzai, Speaker of the House of Representatives, Joseph B. Scarnati, President Pro Tempore of the Senate, Michael J. Stack, III, Lieutenant Governor of the Commonwealth of Pennsylvania, and Tom Wolf, Governor of the Commonwealth of Pennsylvania

Appeal of: Mike Turzai, Speaker of the House of Representatives and Joseph B. Scarnati, President Pro Tempore of the Senate

#### CASE INFORMATION

| | |
|---|---|
| Initiating Document: | Notice of Appeal |
| Case Status: | Active |
| Journal Number: | |

| | | | |
|---|---|---|---|
| Case Category: | Administrative Agency | Case Type(s): | Other |

**CONSOLIDATED CASES**   **RELATED CASES**

#### COUNSEL INFORMATION

| | |
|---|---|
| Attorney: | Orloff, Nicholas Michael |
| | Raffaele & Puppio, L.L.P. |
| Address: | Raffaele & Puppio Llp |
| | 19 W Third St |
| | Media, PA 19063-2803 |
| Phone No: | (610) 891-6710 |
| Representing: | Mike Turzai and Joseph B. Scarnati, Appellant |
| Pro Se: | No |
| IFP Status: | |

| | |
|---|---|
| Attorney: | Hickey, James Patrick, III |
| | Raffaele & Puppio, L.L.P. |
| Address: | 19 W Third St |
| | Media, PA 19063 |
| Phone No: | (610) 891-6710 |
| Representing: | Mike Turzai and Joseph B. Scarnati, Appellant |
| Pro Se: | No |
| IFP Status: | |

11:18 A.M.

**Supreme Court of Pennsylvania**



**Appeal Docket Sheet**

**Docket Number:  61 MAP 2015**

**Page 2 of 4**

**August 4, 2015**

### COUNSEL INFORMATION

| | |
|---|---|
| Attorney: | Puppio, Michael Vincent, Jr. |
| | Raffaele & Puppio, L.L.P. |
| Address: | 19 W Third St |
| | Media, PA 19063 |
| Phone No: | (610) 891-6710 |
| Representing: | Mike Turzai and Joseph B. Scarnati, Appellant |
| Pro Se: | No |
| IFP Status: | |

| | |
|---|---|
| Attorney: | Black, Martin Jay |
| | Dechert LLP |
| Address: | Cira Centre |
| | 2929 Arch St |
| | Philadelphia, PA 19104 |
| Phone No: | (215) 994-2664 |
| Representing: | D. Leach, V. Hughes, L. Farnese, C. Parker, E. Gainey, City of PGH, City of Lancaster, Appellee |
| Pro Se: | No |
| IFP Status: | |

| | |
|---|---|
| Attorney: | Feder, Richard Gerson |
| | City of Philadelphia Law Department |
| Address: | 1515 Arch St 17th Fl |
| | Philadelphia, PA 19102-1595 |
| Phone No: | (215) 683-5013 |
| Representing: | City of Philadelphia, Appellee |
| Pro Se: | No |
| IFP Status: | |

| | |
|---|---|
| Attorney: | Ewing, Eleanor N. |
| | City of Philadelphia Law Department |
| Address: | 1515 Arch St 17th Fl |
| | Philadelphia, PA 19102-1595 |
| Phone No: | (215) 683-5012 |
| Representing: | City of Philadelphia, Appellee |
| Pro Se: | No |
| IFP Status: | |

| | |
|---|---|
| Attorney: | Masterson, Robert Louis |
| | Dechert LLP |
| Address: | Cira Centre |
| | 2929 Arch St |
| | Philadelphia, PA 19104-2808 |
| Phone No: | (215) 994-2311 |
| Representing: | D. Leach, V. Hughes, L. Farnese, C. Parker, E. Gainey, City of PGH, City of Lancaster, Appellee |
| Pro Se: | No |
| IFP Status: | |

11:18 A.M.

**Supreme Court of Pennsylvania**



**Appeal Docket Sheet**

**Docket Number:  61 MAP 2015**

**Page 3 of 4**

**August 4, 2015**

## SUPREME COURT INFORMATION

Appeal From:          the Order of the Commonwealth Court at No. 585 MD 2014 dated June 25, 2015.
Appeal Filed Below:   7/20/2015 12:00:00AM

Probable Jurisdiction Noted:                          Docketed Date:                    July 23, 2015

Allocatur/Miscellaneous Granted:                      Allocatur/Miscellaneous Docket No.:

Allocatur/Miscellaneous Grant Order:

## FEE INFORMATION

| Fee Dt | Fee Name | Fee Amt | Receipt Dt | Receipt No | Receipt Amt |
|--------|----------|---------|------------|------------|-------------|
| 07/20/2015 | Notice of Appeal | 85.50 | 07/31/2015 | 2015-SUP-M-001154 | 85.50 |

## INTERMEDIATE APPELLATE COURT INFORMATION

Court Name:                                           Docket Number:
Date of Order:                                        Rearg/Recon Disp Date:
                                                      Rearg/Recon Disposition:

Judge(s):
Intermediate Appellate Court Action:
Referring Court:

## AGENCY/TRIAL COURT INFORMATION

Court Below:          Commonwealth Court of Pennsylvania

County:                                               Division:  Commonwealth Court of Pennsylvania

Date of Agency/Trial Court Order:        June 25, 2015

Order Type:          Order

OTN(s):

Lower Ct Docket No(s):   585 MD 2014            585 MD 2014
                         585 MD 2014            585 MD 2014
                         585 MD 2014            585 MD 2014
                         585 MD 2014

Lower Ct Judge(s):       Covey, Anne E.          Leadbetter, Bonnie Brigance
                         Judge                   Judge

                         Leavitt, Mary Hannah    McCullough, Patricia A.
                         Judge                   Judge

                         McGinley, Bernard L.    Pellegrini, Dan
                         Judge                   President Judge

                         Simpson, Robert E.
                         Judge

## ORIGINAL RECORD CONTENT

| Original Record Item | Filed Date | Content/Description |
|----------------------|------------|---------------------|

**Record Remittal:**

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability
for inaccurate or delayed data, errors or omissions on the docket sheets.

11:18 A.M.

**Supreme Court of Pennsylvania**



**Appeal Docket Sheet**

**Docket Number: 61 MAP 2015**

**Page 4 of 4**

**August 4, 2015**

## DOCKET ENTRY

| Filed Date | Docket Entry / Representing | Participant Type | Filed By |
|---|---|---|---|
| **July 20, 2015** | **Notice of Appeal** | | |
| | | Appellant | Mike Turzai and Joseph B. Scarnati |
| **July 20, 2015** | **Jurisdictional Statement** | | |
| | | Appellant | Mike Turzai and Joseph B. Scarnati |
| **August 3, 2015** | **No Answer Letter to Notice of Appeal & Jurisdictional Statement** | | |
| | | Appellee | D. Leach, V. Hughes, L. Farnese, C. Parker, E. Gainey, City of PGH, City of Lancaster |

## CROSS COURT ACTIONS

Docket Number:                                                  585 MD 2014

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability
for inaccurate or delayed data, errors or omissions on the docket sheets.



PRINTER'S NO. **68**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

## No. 80   Session of 2013

INTRODUCED BY METCALFE, CLYMER, D. COSTA, COX, GILLEN, GROVE, C. HARRIS, HESS, KAUFFMAN, KORTZ, LONGIETTI, MILLARD, O'NEILL, PASHINSKI, PETRI, READSHAW, ROCK, SAYLOR, SWANGER, TOEPEL AND WATSON, JANUARY 10, 2013

REFERRED TO COMMITEE ON JUDICIARY, JANUARY 10, 2013

AN ACT

1  Amending Title 18 (Crimes and Offenses) of the Pennsylvania
2     Consolidated Statutes, defining the offense of theft of
3     secondary metal; and prescribing penalties.

4     The General Assembly of the Commonwealth of Pennsylvania

5  hereby enacts as follows:

6     Section 1.  Title 18 of the Pennsylvania Consolidated

7  Statutes is amended by adding a section to read:

8  § 3935.  Theft of secondary metal.

9     (a)  Offense defined.--A person commits the offense of theft

10 of secondary metal if the person unlawfully takes or attempts to

11 take possession of, carries away or exercises unlawful control

12 over any secondary metal with intent to deprive the rightful

13 owner thereof.

14     (b)  Grading.--Except as set forth in subsection (c):

15        (1)  An offense under this section constitutes a

16     misdemeanor of the third degree when the value of the

17     secondary metal unlawfully obtained is less than $50.

1      (2)  When the value of the secondary metal unlawfully

2  obtained is $50 or more but less than $200 the offense

3  constitutes a misdemeanor of the second degree.

4      (3)  When the value of the secondary metal unlawfully

5  obtained is $200 or more but less than $1,000 the offense

6  constitutes a misdemeanor of the first degree.

7      (4)  When the value of the secondary metal unlawfully

8  obtained is $1,000 or more, the offense constitutes a felony

9  of the third degree.

10  (c)  Third or subsequent offenses.--An offense under this

11  section constitutes a felony of the third degree when the

12  offense is a third or subsequent offense, regardless of the

13  value of the secondary metal. For purposes of this subsection, a

14  first offense includes a conviction, acceptance of Accelerated

15  Rehabilitative Disposition or other form of preliminary

16  disposition before the sentencing on the present violation for

17  an offense under this section or an offense substantially

18  similar to an offense under this section.

19  (d)  Definition.--As used in this section, the term

20  "secondary metal" means wire, pipe or cable commonly used by

21  communications, gas and electrical utilities and railroads and

22  mass transit or commuter rail agencies, copper, aluminum or

23  other metal, or a combination of metals, that is valuable for

24  recycling or reuse as raw material.

25    Section 2.  This act shall take effect in 60 days.



PRIOR PRINTER'S NO. 68                    PRINTER'S NO. **2066**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

## No. 80    Session of 2013

INTRODUCED BY METCALFE, CLYMER, D. COSTA, COX, GILLEN, GROVE,
C. HARRIS, HESS, KAUFFMAN, KORTZ, LONGIETTI, MILLARD,
O'NEILL, PASHINSKI, PETRI, READSHAW, ROCK, SAYLOR, SWANGER,
TOEPEL, WATSON, FREEMAN, R. MILLER, MULLERY, GABLER, FARRY,
EVANKOVICH, TOOHIL AND MARSHALL, JANUARY 10, 2013

AS REPORTED FROM COMMITTEE ON JUDICIARY, HOUSE OF
REPRESENTATIVES, AS AMENDED, JUNE 18, 2013

### AN ACT

1  Amending Title 18 (Crimes and Offenses) of the Pennsylvania
2  Consolidated Statutes, defining the offense of theft of
3  secondary metal; and prescribing penalties.

4  The General Assembly of the Commonwealth of Pennsylvania

5  hereby enacts as follows:

6  Section 1.  Title 18 of the Pennsylvania Consolidated

7  Statutes is amended by adding a section to read:

8  § 3935.  Theft of secondary metal.

9  (a)  Offense defined.--A person commits the offense of theft

10 of secondary metal if the person unlawfully takes or attempts to

11 take possession of, carries away or exercises unlawful control

12 over any secondary metal with intent to deprive the rightful

13 owner thereof.

14 (b)  Grading.--Except as set forth in subsection (c):

15     (1)  An offense under this section constitutes a

16 misdemeanor of the third degree when the value of the

1    secondary metal unlawfully obtained is less than $50.

2         (2)   When the value of the secondary metal unlawfully

3    obtained is $50 or more but less than $200 the offense

4    constitutes a misdemeanor of the second degree.

5         (3)   When the value of the secondary metal unlawfully

6    obtained is $200 or more but less than $1,000 the offense

7    constitutes a misdemeanor of the first degree.

8         (4)   When the value of the secondary metal unlawfully

9    obtained is $1,000 or more, the offense constitutes a felony

10   of the third degree.

11    (c)   Third or subsequent offenses.--An offense under this

12   section constitutes a felony of the third degree when the

13   offense is a third or subsequent offense, regardless of the

14   value of the secondary metal. For purposes of this subsection, a

15   first AND SECOND offense includes a conviction, acceptance of   <--

16   Accelerated Rehabilitative Disposition or other form of

17   preliminary disposition before the sentencing on the present

18   violation for an offense under this section or an offense

19   ~~substantially similar to an offense under this section~~ UNDER   <--

20   SECTION 3921 (RELATING TO THEFT BY UNLAWFUL TAKING OR

21   DISPOSITION).

22    (d)   Definition.--As used in this section, the term

23   "secondary metal" means wire, pipe or cable commonly used by

24   communications, gas and electrical utilities and railroads and

25   mass transit or commuter rail agencies, copper, aluminum or

26   other metal, or a combination of metals, that is valuable for

27   recycling or reuse as raw material.

28    Section 2.  This act shall take effect in 60 days.



SENATE AMENDED

PRIOR PRINTER'S NOS. 68, 2066          PRINTER'S NO. **3831**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

# No. 80    Session of 2013

INTRODUCED BY METCALFE, CLYMER, D. COSTA, COX, GILLEN, GROVE,
C. HARRIS, HESS, KAUFFMAN, KORTZ, LONGIETTI, MILLARD,
O'NEILL, PASHINSKI, PETRI, READSHAW, ROCK, SAYLOR, SWANGER,
TOEPEL, WATSON, FREEMAN, R. MILLER, MULLERY, GABLER, FARRY,
EVANKOVICH, TOOHIL, MARSHALL AND CALTAGIRONE,
JANUARY 10, 2013

SENATOR GREENLEAF, JUDICIARY, IN SENATE, AS AMENDED,
JUNE 24, 2014

### AN ACT

Amending Title 18 (Crimes and Offenses) of the Pennsylvania
Consolidated Statutes, FURTHER PROVIDING FOR THE OFFENSE OF
CRIMINAL TRESPASS; defining the offense of theft of secondary
metal; and prescribing penalties.

The General Assembly of the Commonwealth of Pennsylvania

hereby enacts as follows:

~~Section 1.   Title 18 of the Pennsylvania Consolidated~~

~~Statutes is amended by adding a section to read:~~

SECTION 1.   SECTION 3503(B.1) OF TITLE 18 OF THE PENNSYLVANIA

CONSOLIDATED STATUTES IS AMENDED TO READ:

§ 3503.   CRIMINAL TRESPASS.

* * *

(B.1)   SIMPLE TRESPASSER.--

(1)   A PERSON COMMITS AN OFFENSE IF, KNOWING THAT HE IS

NOT LICENSED OR PRIVILEGED TO DO SO, HE ENTERS OR REMAINS IN

ANY PLACE FOR THE PURPOSE OF:

    (I)   THREATENING OR TERRORIZING THE OWNER OR OCCUPANT OF THE PREMISES;

    (II)   STARTING OR CAUSING TO BE STARTED ANY FIRE UPON THE PREMISES; [OR]

    (III)   DEFACING OR DAMAGING THE PREMISES[.]; OR

    (IV)   UNLAWFULLY TAKING SECONDARY METAL FROM THE PREMISES.

    (2)   AN OFFENSE UNDER [THIS SUBSECTION] PARAGRAPH (1)(IV) CONSTITUTES A FIRST DEGREE MISDEMEANOR. AN OFFENSE UNDER PARAGRAPH (1)(I), (II) OR (III) CONSTITUTES A SUMMARY OFFENSE.

\* \* \*

SECTION 2.   TITLE 18 IS AMENDED BY ADDING A SECTION TO READ:

§ 3935.  Theft of secondary metal.

    (a)   Offense defined.--A person commits the offense of theft of secondary metal if the person unlawfully takes or attempts to take possession of, carries away or exercises unlawful control over any secondary metal with intent to deprive the rightful owner thereof.

    (b)   Grading.--Except as set forth in subsection (c):

    (1)   An offense under this section constitutes a misdemeanor of the third degree when the value of the secondary metal unlawfully obtained is less than $50.

    (2)   When the value of the secondary metal unlawfully obtained is $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree.

    (3)   When the value of the secondary metal unlawfully obtained is $200 or more but less than $1,000 the offense

constitutes a misdemeanor of the first degree.

(4)   When the value of the secondary metal unlawfully obtained is $1,000 or more, the offense constitutes a felony of the third degree.

(c)   Third or subsequent offenses.--An offense under this section constitutes a felony of the third degree when the offense is a third or subsequent offense, regardless of the value of the secondary metal. For purposes of this subsection, a first and second offense includes a conviction, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation for an offense under this section or an offense under section 3921 (relating to theft by unlawful taking or disposition).

(d)   Definition.--As used in this section, the term "secondary metal" means wire, pipe or cable commonly used by communications, gas and electrical utilities and railroads and mass transit or commuter rail agencies, copper, aluminum or other metal, or a combination of metals, that is valuable for recycling or reuse as raw material.

Section 2 3.   This act shall take effect in 60 days.



SENATE AMENDED

PRIOR PRINTER'S NOS. 68, 2066, 3831     PRINTER'S NO. **4248**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

## No. 80    Session of 2013

INTRODUCED BY METCALFE, CLYMER, D. COSTA, COX, GILLEN, GROVE,
    C. HARRIS, HESS, KAUFFMAN, KORTZ, LONGIETTI, MILLARD,
    O'NEILL, PASHINSKI, PETRI, READSHAW, ROCK, SAYLOR, SWANGER,
    TOEPEL, WATSON, FREEMAN, R. MILLER, MULLERY, GABLER, FARRY,
    EVANKOVICH, TOOHIL, MARSHALL AND CALTAGIRONE,
    JANUARY 10, 2013

AS AMENDED ON THIRD CONSIDERATION, IN SENATE, OCTOBER 6, 2014

### AN ACT

Amending Title 18 (Crimes and Offenses) of the Pennsylvania
    Consolidated Statutes, FURTHER PROVIDING FOR THE OFFENSE OF
    CRIMINAL TRESPASS; defining the offense of theft of secondary
    metal; and prescribing penalties.

The General Assembly of the Commonwealth of Pennsylvania

hereby enacts as follows:

~~Section 1.   Title 18 of the Pennsylvania Consolidated~~

~~Statutes is amended by adding a section to read:~~

~~SECTION 1.   SECTION 3503(B.1) OF TITLE 18 OF THE PENNSYLVANIA~~

~~CONSOLIDATED STATUTES IS AMENDED TO READ:~~

SECTION 1.   SECTION 3503(B.1) AND (D) OF TITLE 18 OF THE

PENNSYLVANIA CONSOLIDATED STATUTES ARE AMENDED TO READ:

§ 3503.  CRIMINAL TRESPASS.

    * * *

    (B.1)  SIMPLE TRESPASSER.--

        (1)  A PERSON COMMITS AN OFFENSE IF, KNOWING THAT HE IS

NOT LICENSED OR PRIVILEGED TO DO SO, HE ENTERS OR REMAINS IN
ANY PLACE FOR THE PURPOSE OF:

    (I)   THREATENING OR TERRORIZING THE OWNER OR OCCUPANT
OF THE PREMISES;

    (II)   STARTING OR CAUSING TO BE STARTED ANY FIRE UPON
THE PREMISES; [OR]

    (III)   DEFACING OR DAMAGING THE PREMISES[.]; OR

    (IV)   UNLAWFULLY TAKING SECONDARY METAL FROM THE
PREMISES.

    (2)  AN OFFENSE UNDER [THIS SUBSECTION] PARAGRAPH (1)(IV)
CONSTITUTES A FIRST DEGREE MISDEMEANOR. AN OFFENSE UNDER
PARAGRAPH (1)(I), (II) OR (III) CONSTITUTES A SUMMARY
OFFENSE.

    * * *

    (D)  [DEFINITION.--AS USED IN THIS SECTION, THE TERM "SCHOOL
GROUNDS" MEANS ANY] DEFINITIONS.--AS USED IN THIS SECTION, THE
FOLLOWING WORDS AND PHRASES SHALL HAVE THE MEANINGS GIVEN TO
THEM IN THIS SUBSECTION:

    "SCHOOL GROUNDS." ANY BUILDING OF OR GROUNDS OF ANY
ELEMENTARY OR SECONDARY PUBLICLY FUNDED EDUCATIONAL INSTITUTION,
ANY ELEMENTARY OR SECONDARY PRIVATE SCHOOL LICENSED BY THE
DEPARTMENT OF EDUCATION, ANY ELEMENTARY OR SECONDARY PAROCHIAL
SCHOOL, ANY CERTIFIED DAY-CARE CENTER OR ANY LICENSED PRESCHOOL
PROGRAM.

    "SECONDARY METAL." AS DEFINED IN SECTION 3935 (RELATING TO
THEFT OF SECONDARY METAL).

    SECTION 2.  TITLE 18 IS AMENDED BY ADDING A SECTION TO READ:
§ 3935.  Theft of secondary metal.

    (a)  Offense defined.--A person commits the offense of theft

of secondary metal if the person unlawfully takes or attempts to take possession of, carries away or exercises unlawful control over any secondary metal with intent to deprive the rightful owner thereof.

(b)  Grading.--Except as set forth in subsection (c):

(1)  An offense under this section constitutes a misdemeanor of the third degree when the value of the secondary metal unlawfully obtained is less than $50.

(2)  When the value of the secondary metal unlawfully obtained is $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree.

(3)  When the value of the secondary metal unlawfully obtained is $200 or more but less than $1,000 the offense constitutes a misdemeanor of the first degree.

(4)  When the value of the secondary metal unlawfully obtained is $1,000 or more, the offense constitutes a felony of the third degree.

(c)  Third or subsequent offenses.--An offense under this section constitutes a felony of the third degree when the offense is a third or subsequent offense, regardless of the value of the secondary metal. For purposes of this subsection, a first and second offense includes a conviction, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation for an offense under this section or an offense under section 3921 (relating to theft by unlawful taking or disposition).

(d)  Definition.--As used in this section, the term "secondary metal" means wire, pipe or cable commonly used by

communications, gas and electrical utilities and railroads and mass transit or commuter rail agencies, copper, aluminum or other metal, or a combination of metals, that is valuable for recycling or reuse as raw material.

Section 2 3.  This act shall take effect in 60 days.



ᴋCS# 811

**Senate of
Pennsylvania
2013-2014 Regular Session**

10/15/:

**HB 80        PN 4248**

**Leach Amendment No. A-10492**

**Yea: 17    Nay: 31**                    **FAILE**

Yea: 17

| Blake | Greenleaf | Stack |
|-------|-----------|-------|
| Boscola | Hughes | Tartaglione |
| Costa | Kitchen | Teplitz |
| Dinniman | Leach | Wiley |
| Farnese | Schwank | Williams |
| Fontana | Smith | |

Nay: 31

| Alloway | Gordner | Vance |
|---------|---------|-------|
| Argall | Hutchinson | Vogel |
| Baker | Kasunic | Vulakovich |
| Brewster | Mensch | Wagner |
| Browne | Pileggi | Ward |
| Brubaker | Rafferty | White |
| Corman | Robbins | Wozniak |
| Eichelberger | Scarnati | Yaw |
| Erickson | Smucker | Yudichak |
| Ferlo | Solobay | |
| Folmer | Tomlinson | |

Less than a majority of the Senators having voted "aye,"
the question was determined in the negative.



**Senate of Pennsylvania Roll Calls**
**Session of 2013 - 2014**

Details for RCS# 811

Wednesday Oct. 15, 2014
House Bill 80 PN 4248
A10492 LEACH AMENDMENT
NO. A-10492

**Summary**

| | |
|---|---|
| YEAS | 17 |
| NAYS | 31 |
| LVE | 0 |
| N/V | 2 |
| TOTAL | 50 |

**Prime Sponsor**

METCALFE

**Short Title**

An Act amending Title 18
(Crimes and Offenses) of
the Pennsylvania
Consolidated Statutes, in
burglary and other criminal
intrusion, further
providing ...

**Related floor votes**

Senate Floor Roll Call

House Floor Roll Call

**Related committee votes**

(S) JUDICIARY

(H) APPROPRIATIONS

(H) JUDICIARY

(H) RULES

| | | |
|---|---|---|
| N ALLOWAY | N GORDNER | Y STACK |
| N ARGALL | Y GREENLEAF | Y TARTAGLIONE |
| N BAKER | Y HUGHES | Y TEPLITZ |
| Y BLAKE | N HUTCHINSON | N TOMLINSON |
| Y BOSCOLA | N KASUNIC | N VANCE |
| N BREWSTER | Y KITCHEN | N VOGEL |
| N BROWNE | Y LEACH | N VULAKOVICH |
| N BRUBAKER | X MCILHINNEY | N WAGNER |
| N CORMAN | N MENSCH | N WARD |
| Y COSTA | N PILEGGI | X WASHINGTON |
| Y DINNIMAN | N RAFFERTY | N WHITE |
| N EICHELBERGER | N ROBBINS | Y WILEY |
| N ERICKSON | N SCARNATI | Y WILLIAMS |
| Y FARNESE | Y SCHWANK | N WOZNIAK |
| N FERLO | Y SMITH | N YAW |
| N FOLMER | N SMUCKER | N YUDICHAK |
| Y FONTANA | N SOLOBAY | |

H0080B4248A10492          SFL:JSL 10/15/14    #90          A10492

**LEGISLATIVE REFERENCE BUREAU**

AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: Leach

Printer's No. 4248

1     Amend Bill, page 1, line 1, by striking out "Title" and

2   inserting

3     Titles

4     Amend Bill, page 1, line 1, by inserting after "Offenses)"

5   and 23 (Domestic Relations)

6     Amend Bill, page 1, line 4, by inserting after "metal; "

7   in protection from abuse, further providing for relief; in

8     firearms and other dangerous articles, further providing for

9     limitation on the regulation of firearms and ammunition;

10     Amend Bill, page 4, by inserting between lines 2 and 3

11     Section 3.   Section 6120(a) of Title 18 is amended and the

12   section is amended by adding a subsection to read:

13   § 6120.  Limitation on the regulation of firearms and

14             ammunition.

15     (a)   General rule.--[No] Except as provided in subsection

16   (a.2), no county, municipality or township may in any manner

17   regulate the lawful ownership, possession, transfer or

18   transportation of firearms, ammunition or ammunition components

19   when carried or transported for purposes not prohibited by the

20   laws of this Commonwealth.

21     * * *

22     (a.2)  If a political subdivision that has enacted an

23   ordinance relating to lawful ownership, possession, transfer or

24   transportation of firearms, ammunition or ammunition pursuant to

25   its general authority granted by 53 Pa.C.S. (relating to

26   municipalities) and the municipality prevails in any action it

27   is entitled to reasonable expenses associated with the

28   litigation to defend the ordinance and damages the court finds

29   reasonably necessary.

30     * * *

31     Section 4.   Section 6108(a)(7) and (7.1) of Title 23 are

32   amended and the section is amended by adding a subsection to

33   read:

34   § 6108.  Relief.

1    (a)  General rule.--The court may grant any protection order
2  or approve any consent agreement to bring about a cessation of
3  abuse of the plaintiff or minor children. The order or agreement
4  may include:
5         * * *
6     [(7)  Ordering the defendant to temporarily relinquish to
7  the sheriff the defendant's other weapons and ammunition
8  which have been used or been threatened to be used in an
9  incident of abuse against the plaintiff or the minor children
10  and the defendant's firearms and prohibiting the defendant
11  from acquiring or possessing any firearm for the duration of
12  the order and requiring the defendant to relinquish to the
13  sheriff any firearm license issued under section 6108.3
14  (relating to relinquishment to third party for safekeeping)
15  or 18 Pa.C.S. § 6106 (relating to firearms not to be carried
16  without a license) or § 6109 (relating to licenses) the
17  defendant may possess. A copy of the court's order shall be
18  transmitted to the chief or head of the police force or
19  police department of the municipality and to the sheriff of
20  the county of which the defendant is a resident. When
21  relinquishment is ordered, the following shall apply:
22         (i)  (A)  The court's order shall require the
23         defendant to relinquish such firearms, other weapons,
24         ammunition and any firearm license pursuant to the
25         provisions of this chapter within 24 hours of service
26         of a temporary order or the entry of a final order or
27         the close of the next business day as necessary by
28         closure of the sheriffs' offices, except for cause
29         shown at the hearing, in which case the court shall
30         specify the time for relinquishment of any or all of
31         the defendant's firearms.
32         (B)  A defendant subject to a temporary order
33         requiring the relinquishment of firearms, other
34         weapons or ammunition shall, in lieu of relinquishing
35         specific firearms, other weapons or ammunition which
36         cannot reasonably be retrieved within the time for
37         relinquishment in clause (A) due to their current
38         location, provide the sheriff with an affidavit
39         listing the firearms, other weapons or ammunition and
40         their current location. If the defendant, within the
41         time for relinquishment in clause (A), fails to
42         provide the affidavit or fails to relinquish,
43         pursuant to this chapter, any firearms, other weapons
44         or ammunition ordered to be relinquished which are
45         not specified in the affidavit, the sheriff shall, at
46         a minimum, provide immediate notice to the court, the
47         plaintiff and appropriate law enforcement
48         authorities. The defendant shall not possess any
49         firearms, other weapons or ammunition specifically
50         listed in the affidavit provided to the sheriff
51         pursuant to this clause for the duration of the

1     temporary order.
2         (C)   As used in this subparagraph, the term
3     "cause" shall be limited to facts relating to the
4     inability of the defendant to retrieve a specific
5     firearm within 24 hours due to the current location
6     of the firearm.
7         (ii)   The court's order shall contain a list of any
8     firearm, other weapon or ammunition ordered relinquished.
9     Upon the entry of a final order, the defendant shall
10    inform the court in what manner the defendant is going to
11    relinquish any firearm, other weapon or ammunition
12    ordered relinquished. Relinquishment may occur pursuant
13    to section 6108.2 (relating to relinquishment for
14    consignment sale, lawful transfer or safekeeping) or
15    6108.3 or to the sheriff pursuant to this paragraph.
16    Where the sheriff is designated, the sheriff shall secure
17    custody of the defendant's firearms, other weapons or
18    ammunition and any firearm license listed in the court's
19    order for the duration of the order or until otherwise
20    directed by court order. In securing custody of the
21    defendant's relinquished firearms, the sheriff shall
22    comply with 18 Pa.C.S. § 6105(f)(4) (relating to persons
23    not to possess, use, manufacture, control, sell or
24    transfer firearms). In securing custody of the
25    defendant's other weapons and ammunition, the sheriff
26    shall provide the defendant with a signed and dated
27    written receipt which shall include a detailed
28    description of the other weapon or ammunition and its
29    condition.
30        (iii)   The sheriff shall provide the plaintiff with
31    the name of the person to which any firearm, other weapon
32    or ammunition was relinquished.
33        (iv)   Unless the defendant has complied with
34    subparagraph (i)(B) or section 6108.2 or 6108.3, if the
35    defendant fails to relinquish any firearm, other weapon,
36    ammunition or firearm license within 24 hours or upon the
37    close of the next business day due to closure of
38    sheriffs' offices or within the time ordered by the court
39    upon cause being shown at the hearing, the sheriff shall,
40    at a minimum, provide immediate notice to the court, the
41    plaintiff and appropriate law enforcement agencies.
42        (v)   Any portion of any order or any petition or
43    other paper which includes a list of any firearm, other
44    weapon or ammunition ordered relinquished shall be kept
45    in the files of the court as a permanent record thereof
46    and withheld from public inspection except:
47        (A)   upon an order of the court granted upon
48    cause shown;
49        (B)   as necessary, by law enforcement and court
50    personnel; or
51        (C)   after redaction of information listing any

```
 1              firearm, other weapon or ammunition.
 2              (vi)  As used in this paragraph, the term
 3         "defendant's firearms" shall, if the defendant is a
 4         licensed firearms dealer, only include firearms in the
 5         defendant's personal firearms collection pursuant to 27
 6         CFR § 478.125a (relating to personal firearms
 7         collection).
 8              (7.1)  If the defendant is a licensed firearms dealer,
 9         ordering the defendant to follow such restrictions as the
10         court may require concerning the conduct of his business,
11         which may include ordering the defendant to relinquish any
12         Federal or State license for the sale, manufacture or
13         importation of firearms as well as firearms in the
14         defendant's business inventory. In restricting the defendant
15         pursuant to this paragraph, the court shall make a reasonable
16         effort to preserve the financial assets of the defendant's
17         business while fulfilling the goals of this chapter.]
18              * * *
19         (a.1)  Relinquishing firearms.--Any protection order or
20    consent agreement to bring about a cessation of abuse of the
21    plaintiff or minor children under subsection (a) shall include
22    all of the following:
23              (1)  Ordering the defendant to temporarily relinquish to
24    the sheriff the defendant's other weapons and ammunition
25    which have been used or been threatened to be used in an
26    incident of abuse against the plaintiff or the minor children
27    and the defendant's firearms and prohibiting the defendant
28    from acquiring or possessing any firearm for the duration of
29    the order and requiring the defendant to relinquish to the
30    sheriff any firearm license issued under section 6108.3
31    (relating to relinquishment to third party for safekeeping)
32    or 18 Pa.C.S. § 6106 (relating to firearms not to be carried
33    without a license) or 6109 (relating to licenses) the
34    defendant may possess. A copy of the court's order shall be
35    transmitted to the chief or head of the police force or
36    police department of the municipality and to the sheriff of
37    the county of which the defendant is a resident. When
38    relinquishment is ordered, the following shall apply:
39              (i)  (A)  The court's order shall require the
40         defendant to relinquish such firearms, other weapons,
41         ammunition and any firearm license pursuant to the
42         provisions of this chapter within 24 hours of service
43         of a temporary order or the entry of a final order or
44         the close of the next business day as necessary by
45         closure of the sheriffs' offices, except for cause
46         shown at the hearing, in which case the court shall
47         specify the time for relinquishment of any or all of
48         the defendant's firearms.
49              (B)  A defendant subject to a temporary order
50         requiring the relinquishment of firearms, other
51         weapons or ammunition shall, in lieu of relinquishing
```

1  specific firearms, other weapons or ammunition which
2  cannot reasonably be retrieved within the time for
3  relinquishment in clause (A) due to their current
4  location, provide the sheriff with an affidavit
5  listing the firearms, other weapons or ammunition and
6  their current location. If the defendant, within the
7  time for relinquishment in clause (A), fails to
8  provide the affidavit or fails to relinquish,
9  pursuant to this chapter, any firearms, other weapons
10 or ammunition ordered to be relinquished which are
11 not specified in the affidavit, the sheriff shall, at
12 a minimum, provide immediate notice to the court, the
13 plaintiff and appropriate law enforcement
14 authorities. The defendant shall not possess any
15 firearms, other weapons or ammunition specifically
16 listed in the affidavit provided to the sheriff
17 pursuant to this clause for the duration of the
18 temporary order.
19      (C)  As used in this subparagraph, the term
20 "cause" shall be limited to facts relating to the
21 inability of the defendant to retrieve a specific
22 firearm within 24 hours due to the current location
23 of the firearm.
24      (ii)  The court's order shall contain a list of any
25 firearm, other weapon or ammunition ordered relinquished.
26 Upon the entry of a final order, the defendant shall
27 inform the court in what manner the defendant is going to
28 relinquish any firearm, other weapon or ammunition
29 ordered relinquished. Relinquishment may occur pursuant
30 to section 6108.2 (relating to relinquishment for
31 consignment sale, lawful transfer or safekeeping) or
32 6108.3 or to the sheriff pursuant to this paragraph.
33 Where the sheriff is designated, the sheriff shall secure
34 custody of the defendant's firearms, other weapons or
35 ammunition and any firearm license listed in the court's
36 order for the duration of the order or until otherwise
37 directed by court order. In securing custody of the
38 defendant's relinquished firearms, the sheriff shall
39 comply with 18 Pa.C.S. § 6105(f)(4) (relating to persons
40 not to possess, use, manufacture, control, sell or
41 transfer firearms). In securing custody of the
42 defendant's other weapons and ammunition, the sheriff
43 shall provide the defendant with a signed and dated
44 written receipt which shall include a detailed
45 description of the other weapon or ammunition and its
46 condition.
47      (iii)  The sheriff shall provide the plaintiff with
48 the name of the person to which any firearm, other weapon
49 or ammunition was relinquished.
50      (iv)  Unless the defendant has complied with
51 subparagraph (i)(B) or section 6108.2 or 6108.3, if the

1   defendant fails to relinquish any firearm, other weapon,
2   ammunition or firearm license within 24 hours or upon the
3   close of the next business day due to closure of
4   sheriffs' offices or within the time ordered by the court
5   upon cause being shown at the hearing, the sheriff shall,
6   at a minimum, provide immediate notice to the court, the
7   plaintiff and appropriate law enforcement agencies.
8       (v)  Any portion of any order or any petition or
9   other paper which includes a list of any firearm, other
10   weapon or ammunition ordered relinquished shall be kept
11   in the files of the court as a permanent record thereof
12   and withheld from public inspection except:
13       (A)  upon an order of the court granted upon
14   cause shown;
15       (B)  as necessary, by law enforcement and court
16   personnel; or
17       (C)  after redaction of information listing any
18   firearm, other weapon or ammunition.
19       (vi)  As used in this paragraph, the term
20   "defendant's firearms" shall, if the defendant is a
21   licensed firearms dealer, only include firearms in the
22   defendant's personal firearms collection pursuant to 27
23   CFR § 478.125a (relating to personal firearms
24   collection).
25       (2)  If the defendant is a licensed firearms dealer,
26   ordering the defendant to follow such restrictions as the
27   court may require concerning the conduct of his business,
28   which may include ordering the defendant to relinquish any
29   Federal or State license for the sale, manufacture or
30   importation of firearms as well as firearms in the
31   defendant's business inventory. In restricting the defendant
32   pursuant to this paragraph, the court shall make a reasonable
33   effort to preserve the financial assets of the defendant's
34   business while fulfilling the goals of this chapter.
35       * * *
36       Section 5.  Any statute that impairs the authority of a
37   municipality to enact an ordinance that pursuant to 53 Pa.C.S.,
38   or any other statute, shall not apply to an ordinance adopted by
39   a municipality prior to the effective date of this section and
40   such an ordinance shall continue in full force and effect.

41       Amend Bill, page 4, line 3, by striking out "3" and inserting

42       6



RCS# 812

**Senate of
Pennsylvania
2013-2014 Regular Session**

10/15/:

HB 80      PN 4248

Farnese Amendment No. A-10461

Yea: 22     Nay: 26

FAILE

**Yea: 22**

| | | |
|---|---|---|
| Blake | Hughes | Teplitz |
| Boscola | Kitchen | Tomlinson |
| Brewster | Leach | Wiley |
| Costa | Rafferty | Williams |
| Dinniman | Schwank | Wozniak |
| Farnese | Smith | Yudichak |
| Ferlo | Stack | |
| Fontana | Tartaglione | |

**Nay: 26**

| | | |
|---|---|---|
| Alloway | Gordner | Solobay |
| Argall | Greenleaf | Vance |
| Baker | Hutchinson | Vogel |
| Browne | Kasunic | Vulakovich |
| Brubaker | Mensch | Wagner |
| Corman | Pileggi | Ward |
| Eichelberger | Robbins | White |
| Erickson | Scarnati | Yaw |
| Folmer | Smucker | |

Less than a majority of the Senators having voted "aye,"
the question was determined in the negative.



### Senate of Pennsylvania Roll Calls
### Session of 2013 - 2014

**Details for RCS# 812**

Wednesday Oct. 15, 2014
House Bill 80 PN 4246
A10461 FARNESE AMENDMENT
NO. A-10461

**Summary**

| | |
|---|---|
| YEAS | 22 |
| NAYS | 26 |
| LVE | 0 |
| N/V | 2 |
| TOTAL | 50 |

**Prime Sponsor**

METCALFE

**Short Title**

An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, in burglary and other criminal intrusion, further providing ...

**Related floor votes**

Senate Floor Roll Call

House  Floor Roll Call

**Related committee votes**

(S) JUDICIARY

(H) APPROPRIATIONS

(H) JUDICIARY

(H) RULES

| | | |
|---|---|---|
| N ALLOWAY | N GORDNER | Y STACK |
| N ARGALL | N GREENLEAF | Y TARTAGLIONE |
| N BAKER | Y HUGHES | Y TEPLITZ |
| Y BLAKE | N HUTCHINSON | N TOMLINSON |
| Y BOSCOLA | N KASUNIC | N VANCE |
| Y BREWSTER | Y KITCHEN | N VOGEL |
| N BROWNE | Y LEACH | N VULAKOVICH |
| N BRUBAKER | Y MCILHINNEY | N WAGNER |
| N CORMAN | Y MENSCH | N WARD |
| Y COSTA | N PILEGGI | N WASHINGTON |
| Y DINNIMAN | Y RAFFERTY | N WHITE |
| N EICHELBERGER | N ROBBINS | Y WILEY |
| N ERICKSON | N SCARNATI | Y WILLIAMS |
| Y FARNESE | Y SCHWANK | Y WOZNIAK |
| Y FERLO | Y SMITH | N YAW |
| N FOLMER | N SMUCKER | Y YUDICHAK |
| Y FONTANA | N SOLOBAY | |

H0080B4248A10461      DMS:NLH 10/15/14      #90      A10461

*Defeated*
*10-15-14*
*22-26*

**LEGISLATIVE REFERENCE BUREAU**

*Amendments-
failed*

AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: FARNESE

Printer's No. 4248

1   Amend Bill, page 1, line 4, by inserting after "metal;"

2   further providing for the offense of carrying firearms on
3      public streets or public property in Philadelphia

4   Amend Bill, page 4, by inserting between lines 2 and 3

5      Section 3.  Section 6108 of Title 18 is amended to read:
6   § 6108.  Carrying firearms on public streets or public property
7      in Philadelphia.
8      (a)  General rule.--No person shall carry a firearm[, rifle
9   or shotgun] at any time upon the public streets or upon any
10  public property in a city of the first class unless:
11         (1)  [such] the person is licensed to carry a firearm; or
12         (2)  [such] the person is exempt from licensing under
13     section 6106(b) of this title (relating to firearms not to be
14     carried without a license).
15     (b)  Mandatory sentence.--
16         (1)  Notwithstanding any other provision of law, if the
17     person in possession of a firearm at the time of arrest for a
18     violation of this section is not the lawful owner of the
19     firearm, then the offense shall be graded as a felony of the
20     third degree and, upon conviction, the person shall be
21     sentenced to a minimum sentence of at least two years of
22     total confinement.
23         (2)  A person sentenced under this subsection shall not
24     be eligible for parole, probation, work release or furlough.
25         (3)  This subsection shall not apply to any person who is
26     otherwise eligible to possess a firearm under this chapter
27     and who is operating a motor vehicle which is registered in
28     the person's name or the name of a spouse or parent and which
29     contains a firearm for which a valid license has been issued
30     pursuant to section 6109 (relating to licenses) to the spouse
31     or parent owning the firearm.
32     (c)  Definition.--For the purposes of this section, the term
33  "firearm" shall include any weapon which is designed to or may
34  readily be converted to expel any projectile by the action of an
35  explosive or the frame or receiver of the weapon.

36   Amend Bill, page 4, line 3, by striking out "3" and inserting



RCS# 810

Senate of
Pennsylvania
2013-2014 Regular Session

10/15/

HB 80        PN 4248

Alloway Amendment No. A-10397

Yea: 32        Nay: 16                                      PASS

Yea: 32

| | | |
|---|---|---|
| Alloway | Folmer | Tomlinson |
| Argall | Gordner | Vance |
| Baker | Hutchinson | Vogel |
| Boscola | Kasunic | Vulakovich |
| Brewster | Mensch | Wagner |
| Browne | Pileggi | Ward |
| Brubaker | Rafferty | White |
| Corman | Robbins | Wozniak |
| Eichelberger | Scarnati | Yaw |
| Erickson | Smucker | Yudichak |
| Ferlo | Solobay | |

Nay: 16

| | | |
|---|---|---|
| Blake | Hughes | Tartaglione |
| Costa | Kitchen | Teplitz |
| Dinniman | Leach | Wiley |
| Farnese | Schwank | Williams |
| Fontana | Smith | |
| Greenleaf | Stack | |

A majority of the Senators having voted "aye,"
the question was determined in the affirmative.

**Senate of Pennsylvania Roll Calls**
**Session of 2013 - 2014**

**Details for RCS# 810**

Wednesday Oct. 15, 2014
House Bill 80 PN 4248
A10397 ALLOWAY
AMENDMENT NO. A-10397

**Summary**

| | |
|---|---|
| YEAS | 32 |
| NAYS | 16 |
| LVE | 0 |
| N/V | 2 |
| TOTAL | 50 |



**Prime Sponsor**

METCALFE

**Short Title**

An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, in burglary and other criminal intrusion, further providing ...

**Related floor votes**

Senate Floor Roll Call

House Floor Roll Call

**Related committee votes**

(S) JUDICIARY

(H) APPROPRIATIONS

(H) JUDICIARY

(H) RULES

| | | |
|---|---|---|
| Y ALLOWAY | Y GORDNER | N STACK |
| Y ARGALL | N GREENLEAF | N TARTAGLIONE |
| Y BAKER | N HUGHES | N TEPLITZ |
| N BLAKE | Y HUTCHINSON | Y TOMLINSON |
| Y BOSCOLA | Y KASUNIC | Y VANCE |
| Y BREWSTER | N KITCHEN | Y VOGEL |
| Y BROWNE | N LEACH | Y VULAKOVICH |
| Y BRUBAKER | X MCILHINNEY | Y WAGNER |
| Y CORMAN | Y MENSCH | Y WARD |
| N COSTA | Y PILEGGI | X WASHINGTON |
| N DINNIMAN | Y RAFFERTY | Y WHITE |
| Y EICHELBERGER | Y ROBBINS | N WILEY |
| Y ERICKSON | Y SCARNATI | N WILLIAMS |
| N FARNESE | N SCHWANK | Y WOZNIAK |
| Y FERLO | N SMITH | Y YAW |
| Y FOLMER | Y SMUCKER | Y YUDICHAK |
| N FONTANA | Y SOLOBAY | |

H0080B4248A10397        MSP:CMD 10/14/14    #90        A10397

Adopted
10-15-14
32-16
#1

RECEIVED

2014 OCT 15 PM 10: 07    AMENDMENTS TO HOUSE BILL NO. 80

SENATE OF PA                Sponsor: Alloway
SECRETARY'S OFFICE
                        Printer's No. 4248

1       Amend Bill, page 1, line 2, by inserting after "Statutes,"
2   in burglary and other criminal intrusion,

3       Amend Bill, page 1, line 4, by striking out "and"

4       Amend Bill, page 1, line 4, by inserting after "penalties"
5   ; and, in firearms and other dangerous articles, further
6       providing for Pennsylvania State Police and for limitation on
7       the regulation of firearms and ammunition

8       Amend Bill, page 4, by inserting between lines 2 and 3

9       Section 3.   Section 6111.1(f)(3) and (g)(1) and (3) of Title
10  18 are amended to read:
11  § 6111.1.  Pennsylvania State Police.
12      * * *
13      (f)  Notification of mental health adjudication, treatment,
14  commitment, drug use or addiction.--
15          * * *
16      (3)  Notwithstanding any law to the contrary, the
17  Pennsylvania State Police [may] shall, within 72 hours of
18  receipt, disclose, electronically or otherwise, to the United
19  States Attorney General or a designee, any record relevant to
20  a determination of whether a person is disqualified from
21  possessing or receiving a firearm under 18 U.S.C. § 922 (g)
22  (3) or (4) or an applicable state statute[.], and any record
23  relevant to a determination of whether a person is not
24  disqualified or is no longer disqualified from possessing or
25  receiving a firearm under 18 U.S.C. § 922(g)(3) or (4) or an
26  applicable state statute.
27      (g)  Review by court.--
28      (1)  Upon receipt of a copy of the order of a court of
29  competent jurisdiction which vacates a final order or an
30  involuntary certification issued by a mental health review
31  officer, the Pennsylvania State Police shall, after
32  disclosing relevant records under subsection (f)(3), expunge
33  all records of the involuntary treatment received under
34  subsection (f).
35      * * *

```
 1         (3)  The Pennsylvania State Police, after disclosing
 2    relevant records under subsection (f)(3), shall expunge all
 3    records of an involuntary commitment of an individual who is
 4    discharged from a mental health facility based upon the
 5    initial review by the physician occurring within two hours of
 6    arrival under section 302(b) of the Mental Health Procedures
 7    Act and the physician's determination that no severe mental
 8    disability existed pursuant to section 302(b) of the Mental
 9    Health Procedures Act. The physician shall provide signed
10    confirmation of the determination of the lack of severe
11    mental disability following the initial examination under
12    section 302(b) of the Mental Health Procedures Act to the
13    Pennsylvania State Police.
14    * * *
15    Section 4.  Section 6120(b) of Title 18 is amended and the
16    section is amended by adding subsections to read:
17    § 6120.  Limitation on the regulation of firearms and
18            ammunition.
19    * * *
20    (a.2)  Relief.---A person adversely affected by an ordinance,
21    a resolution, regulation, rule, practice or any other action
22    promulgated or enforced by a county, municipality or township
23    prohibited under subsection (a) or 53 Pa.C.S. § 2962(g)
24    (relating to limitation on municipal powers) may seek
25    declaratory or injunctive relief and actual damages in an
26    appropriate court.
27    (a.3)  Reasonable expenses.--A court shall award reasonable
28    expenses to a person adversely affected in an action under
29    subsection (a.2) for any of the following:
30         (1)  A final determination by the court is granted in
31    favor of the person adversely affected.
32         (2)  The regulation in question is rescinded, repealed or
33    otherwise abrogated after suit has been filed under
34    subsection (a.2) but before the final determination by the
35    court.
36    (b)  Definitions.--As used in this section, the following
37    words and phrases shall have the meanings given to them in this
38    subsection:
39    "Dealer."  The term shall include any person engaged in the
40    business of selling at wholesale or retail a firearm or
41    ammunition.
42    "Firearms."  This term shall have the meaning given to it in
43    section 5515 (relating to prohibiting of paramilitary training)
44    but shall not include air rifles as that term is defined in
45    section 6304 (relating to sale and use of air rifles).
46    "Person adversely affected."  Any of the following:
47         (1)  A resident of this Commonwealth who may legally
48    possess a firearm under Federal and State law.
49         (2)  A person who otherwise has standing under the laws
50    of this Commonwealth to bring an action under subsection
51    (a.2).
```

1     (3)  A membership organization, in which a member is a
2   person described under paragraphs (1) or (2).
3   "Political subdivision."  The term shall include any home
4  rule charter municipality, county, city, borough, incorporated
5  town, township or school district.
6   "Reasonable expenses."  The term includes, but is not limited
7  to, attorney fees, expert witness fees, court costs and
8  compensation for loss of income.

9   Amend Bill, page 4, line 3, by striking out "3" and inserting

10    5



HRC-AO o4

**HOUSE OF REPRESENTATIVES**
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

**Committee Roll Call**

Date  October 20, 2014

| Committee | Rules | | Date & Time | October 20, 2014 – 3:15PM |
|---|---|---|---|---|
| Bill or Resolution No. | HB 80 | | Type of Motion | Adopt A10507 |
| Sponsor of Motion | Parker | | Seconded by | Mundy |
| Brief Description | Includes mandatory reporting of lost and stolen weapons to schools and police and imposes civil liability. | | | |

Yeas  7   Nays  25   Not Voting  1   Passed      Failed   X

| MAJORITY MEMBERS | YEAS | NAYS | NV | MINORITY MEMBERS | YEAS | NAYS | NV |
|---|---|---|---|---|---|---|---|
| Turzai, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | X | | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | X | | |
| Christiana, Jim | | P | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | | X | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | | X | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | X | | | Mundy, Phyllis | X | | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | X | | |
| Mustio, Mark | | X | | Sabatina, John | X | | |
| Pickett, Tina | | X | | Sturla, Michael | X | | |
| Reese, Mike | | X | | Waters, Ron | | X | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

Majority Chairman

Minority Chairman

H0080B4318A10507          DMS:CMD 10/17/14      #90          A10507

LEGISLATIVE SERVICES
FLOOR AMENDMENTS

2014 OCT 20 AM 9: 16     AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: *Parker, 200th*

Printer's No. 4318

1     Amend Bill, page 1, line 5, by striking out "AND,"

2     Amend Bill, page 1, line 7, by striking out "AND" where it

3     occurs the first time and inserting

4     ; providing for duty to report lost or stolen weapon; and
5         further providing

6     Amend Bill, page 5, by inserting between lines 15 and 16

7     Section 4.  Title 18 is amended by adding a section to read:
8     § 6111.7.  Duty to report lost or stolen weapon.
9         (a)  Duty to designate.--A school entity and institution of
10    higher education shall designate a person or persons to whom a
11    lost or stolen weapon is to be reported as required by
12    subsection (b).
13        (b)  Duty to report.--If a weapon that the parent or guardian
14    owns, possesses or has custody or control over is lost or
15    stolen, the parent, guardian or other person having control or
16    charge of a student who is enrolled in a school entity or
17    institution of higher education shall report the loss or theft
18    to:
19            (1)  a person designated under subsection (a) at the
20    school entity or institution of higher education in which the
21    student is enrolled; and
22            (2)  the municipal police force or, if the municipality
23    does not have a police force, the Pennsylvania State Police.
24        (c)  Liability.--Notwithstanding the monetary limits of
25    liability specified in 23 Pa.C.S. § 5505 (relating to monetary
26    limits of liability), a parent, guardian or other person who has
27    control or charge of a student and who fails to report as
28    required by subsection (b) shall be liable, without monetary
29    limitation, for the injuries sustained by another student or a
30    professional or other employee of the school entity or
31    institution of higher education in which the student is enrolled
32    as a result of the failure to report if the student:
33            (1)  inflicted the injuries with the lost or stolen
34    weapon; or
35            (2)  permitted another person to inflict the injuries

1   with the lost or stolen weapon.
2   (d)  Applicability and presumption.--The following apply:
3       (1)  This section shall not apply to a parent, guardian
4   or other person having control or charge of a student
5   enrolled at an institution of higher education where the
6   student is emancipated from the parent, custodian or other
7   person.
8       (2)  It shall be presumed that a student is emancipated
9   from a parent if a court has issued an order or otherwise
10  determined that the parent is not responsible for the
11  postsecondary educational costs of the student under 23
12  Pa.C.S. § 4327 (relating to postsecondary educational costs).
13  (e)  Regulations.--The Secretary of Education shall
14  promulgate regulations to carry out the provisions of this
15  section.
16  (f)  Definitions.--As used in this section, the following
17  words and phrases shall have the meanings given to them in this
18  subsection unless the context clearly indicates otherwise:
19  "Institution of higher education."  As defined in section 118
20  of the act of March 10, 1949 (P.L.30, No.14), known as the
21  Public School Code of 1949.
22  "School entity."  As defined in section 1301-A of the Public
23  School Code of 1949.

24  Amend Bill, page 5, line 16, by striking out "4" and

25  inserting

26   5

27  Amend Bill, page 7, line 1, by striking out "5" and inserting

28   6



HRC-AOo4

**HOUSE OF REPRESENTATIVES**
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

**Committee Roll Call**

Date  **October 20, 2014**

| Committee | Rules | | | | Date & Time | October 20, 2014 – 3:15PM | | |
|---|---|---|---|---|---|---|---|---|
| Bill or Resolution No. | HB 80 | | | | Type of Motion | Adopt A10508 | | |
| Sponsor of Motion | Parker | | | | Seconded by | Frankel | | |
| Brief Description | Requires notice of limits on lending of firearms, mandates reporting of lost or stolen guns. | | | | | | | |

| Yeas | 8 | Nays | 24 | Not Voting | 1 | Passed | | Failed | X |
|---|---|---|---|---|---|---|---|---|---|

| MAJORITY MEMBERS | YEAS | NAYS | N-V | MINORITY MEMBERS | YEAS | NAYS | N-V |
|---|---|---|---|---|---|---|---|
| Turzai, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | X | | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | X | | |
| Christiana, Jim | | P | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | | X | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | | X | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | X | | | Mundy, Phyllis | X | | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | X | | |
| Mustio, Mark | | X | | Sabatina, John | X | | |
| Pickett, Tina | | X | | Sturla, Michael | X | | |
| Reese, Mike | | X | | Waters, Ron | X | | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

Majority Chairman

Minority Chairman

H0080B4318A10508          DMS:CMD 10/17/14      #90          A10508

LEGISLATIVE SERVICES
FLOOR AMENDMENTS

2014 OCT 20  AM 9: 15          AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: *Parker, 200th*

Printer's No. 4318

1      Amend Bill, page 1, line 5, by striking out "AND,"

2      Amend Bill, page 1, line 7, by striking out "AND" where it

3  occurs the first time and inserting

4  ; providing for notice of limits on lending or transferring a
5      firearm; further providing

6      Amend Bill, page 1, line 8, by inserting after "AMMUNITION"

7  ; and providing for reporting lost or stolen firearms

8      Amend Bill, page 4, line 5, by striking out "6111.1(F)(3)"

9  and inserting

10      6111.1(d), (f)(3)

11      Amend Bill, page 4, by inserting between lines 8 and 9

12      (d)   Distribution.--The Pennsylvania State Police shall
13  provide, without charge[,]:
14      (1)   summaries of uniform firearm laws and firearm safety
15  brochures pursuant to section 6125 (relating to distribution
16  of uniform firearm laws and firearm safety brochures)[.]; and
17      (2)   notices of limits pursuant to section 6111.6
18  (relating to notice of limits on lending or transferring a
19  firearm).
20  * * *

21      Amend Bill, page 5, by inserting between lines 15 and 16

22      Section 4.  Title 18 is amended by adding a section to read:
23  § 6111.6.  Notice of limits on lending or transferring a
24          firearm.
25      (a)   Duty of Pennsylvania State Police.--It shall be the duty
26  of the Pennsylvania State Police to distribute a notice about
27  lending or transferring a firearm to every licensed firearm
28  dealer in this Commonwealth. The notice shall be written by the
29  Pennsylvania State Police, shall be provided at no cost and
30  shall contain the following:
31                  NOTICE OF LIMITS ON LENDING

1  OR TRANSFERRING A FIREARM
2  As the owner of a firearm, you are required to comply
3  with the following legal obligations and restrictions:
4      (1)  You may not lend or give a firearm to any
5  person, except as provided in 18 Pa.C.S. § 6115(b).
6      (2)  You may not sell or transfer a firearm to
7  another person unless the sale or transfer occurs at a
8  licensed dealer or the office of the county sheriff.
9  Limited transfers between certain family members are
10  permissible. See 18 Pa.C.S. § 6111(c).
11      (3)  You must notify law enforcement within three
12  days of discovering that your firearm is lost or stolen.
13  See 18 Pa.C.S. § 6128(a).
14      (4)  You could be held criminally and civilly liable
15  for any crime committed with a firearm you purchase. See
16  18 Pa.C.S. § 6111(g).
17  (b)  Distribution without charge.--The notice or a copy
18  thereof shall be provided without charge to each purchaser of a
19  firearm.
20  (c)  Duty of firearms dealer.--It shall be the duty of the
21  firearms dealer:
22      (1)  to provide a copy of the notice and to review the
23  text of the notice with the buyer of the firearm; and
24      (2)  to prominently display a copy of the notice where
25  the purchaser of a firearm can read it.

26  Amend Bill, page 5, line 16, by striking out "4" and

27  inserting

28      5

29  Amend Bill, page 6, by inserting after line 30

30  Section 6.  Title 18 is amended by adding a section to read:
31  § 6128.  Reporting lost or stolen firearms.
32  (a)  Duty defined.--The owner of a firearm, upon discovering
33  that the firearm is lost or stolen, shall report the loss or
34  theft within three days to an appropriate law enforcement
35  official of the municipality in which the loss or theft
36  occurred, or if the municipality does not have a police force,
37  to the Pennsylvania State Police. If the owner of the firearm
38  does not know where the loss or theft occurred, the owner shall
39  report the loss or theft within three days to the municipality
40  where the owner resides or to the Pennsylvania State Police.
41  (b)  Penalties.--If, after an investigation by law
42  enforcement officials, it is determined that a firearm was
43  recovered during a criminal investigation, that the owner of
44  that firearm knew his firearm was lost or stolen and that the
45  owner failed to report the loss or theft of the firearm, that
46  person commits:
47      (1)  A summary offense for a first violation of this

1  section.
2      (2)  A misdemeanor of the first degree for a second
3  offense.
4      (3)  A felony of the third degree for a third or
5  subsequent offense.
6  (c)  Fingerprinting.--Prior to the commencement of trial or
7  entry of plea of a defendant accused of the summary offense of
8  reporting lost or stolen firearms, the issuing authority shall
9  order the defendant to submit within five days of such order for
10  fingerprinting by the municipal police of the jurisdiction in
11  which the offense allegedly was committed or the Pennsylvania
12  State Police. Fingerprints so obtained shall be forwarded
13  immediately to the Pennsylvania State Police for determination
14  as to whether or not the defendant previously has been convicted
15  of the offense of reporting lost or stolen firearms under this
16  section. The results of the determination shall be forwarded to
17  the police department obtaining the fingerprints if the
18  department is the prosecutor, or to the issuing authority if the
19  prosecutor is other than a police officer. The issuing authority
20  shall not proceed with the trial or plea in summary cases until
21  in receipt of the determination made by the Pennsylvania State
22  Police.

23    Amend Bill, page 7, line 1, by striking out "5" and inserting

24      7



HRC-AOc4

## HOUSE OF REPRESENTATIVES
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

**Committee Roll Call**

Date **October 20, 2014**

| | | | | |
|---|---|---|---|---|
| Committee | **Rules** | | Date & Time | **October 20, 2014 – 3:15PM** |
| Bill or Resolution No. | **HB 80** | | Type of Motion | **Adopt A10509** |
| Sponsor of Motion | **Parker** | | Seconded by | **Mundy** |
| Brief Description | | | Exempts existing Philly ordinances from new remedies for pre-emption violation. This does not change the underlying prohibition against such ordinances, just precludes remedies. | |

| Yeas | 6 | Nays | 26 | Not Voting | 1 | Passed | | Failed | X |
|---|---|---|---|---|---|---|---|---|---|

| MAJORITY MEMBERS | YEAS | NAYS | N-V | MINORITY MEMBERS | YEAS | NAYS | N-V |
|---|---|---|---|---|---|---|---|
| Turzai, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | | X | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | X | | |
| Christiana, Jim | | P | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | | X | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | | X | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | | X | | Mundy, Phyllis | X | | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | X | | |
| Mustio, Mark | | X | | Sabatina, John | X | | |
| Pickett, Tina | | X | | Sturla, Michael | X | | |
| Reese, Mike | | X | | Waters, Ron | X | | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

Majority Chairman

Minority Chairman

H0080B4318A10509        DMS:SRA 10/17/14     #90        A10509

LEGISLATIVE SERVICES
FLOOR AMENDMENTS

2014 OCT 20 AM 9:45 AMENDMENTS TO HOUSE BILL NO. 80

Sponsor:  *Parker, 200*th

Printer's No. 4318

1    Amend Bill, page 5, line 21, by striking out "<u>A</u>" and

2    inserting

3     <u>Except as provided in subsection (a.3), a</u>

4    Amend Bill, page 5, by inserting between lines 27 and 28

5    <u>(a.3)  Exception.--Subsection (a.2) shall not apply to an</u>
6    <u>ordinance, a resolution, regulation, rule, practice or any other</u>
7    <u>action promulgated or enforced by a city of the first class</u>
8    <u>before the effective date of this subsection.</u>

9    Amend Bill, page 5, line 28, by striking out "<u>(A.3)</u>" and

10   inserting

11    <u>(a.4)</u>



HRC-AOc4

### HOUSE OF REPRESENTATIVES
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

**Committee Roll Call**

Date  October 20, 2014

| Committee | Rules | | Date & Time | October 20, 2014 – 3:15PM |
|---|---|---|---|---|
| Bill or Resolution No. | HB 80 | | Type of Motion | Bill is not Constitutional |
| Sponsor of Motion | Parker | | Seconded by | Mundy |
| Brief Description | Bill is not constitutional | | | |

| Yeas | 7 | Nays | 25 | Not Voting | 1 | Passed | | Failed | X |
|---|---|---|---|---|---|---|---|---|---|

| MAJORITY MEMBERS | YEAS | NAYS | N-V | MINORITY MEMBERS | YEAS | NAYS | N-V |
|---|---|---|---|---|---|---|---|
| Turzai, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | | X | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | X | | |
| Christiana, Jim | | X | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | | X | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | X | | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | | X | | Mundy, Phyllis | X | | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | X | | |
| Mustio, Mark | | X | | Sabatina, John | X | | |
| Pickett, Tina | | X | | Sturla, Michael | X | | |
| Reese, Mike | | X | | Waters, Ron | X | | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

Majority Chairman

Minority Chairman



HRC-AO⁰4

## HOUSE OF REPRESENTATIVES
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

**Committee Roll Call**

Date October 20, 2014

| Committee | Rules | | | | Date & Time | October 20, 2014 – 3:15PM | | |
|---|---|---|---|---|---|---|---|---|
| Bill or Resolution No. | HB 80 | | | | Type of Motion | Adopt A10515 | | |
| Sponsor of Motion | Waters | | | | Seconded by | Parker | | |
| Brief Description | | Requires $1,000,000 firearm liability insurance to get a license to carry. | | | | | | |

| Yeas | 2 | Nays | 30 | Not Voting | 1 | Passed | | Failed | X |
|---|---|---|---|---|---|---|---|---|---|

| MAJORITY MEMBERS | YEAS | NAYS | N-V | MINORITY MEMBERS | YEAS | NAYS | N-V |
|---|---|---|---|---|---|---|---|
| Turzal, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | | X | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | | X | |
| Christiana, Jim | | P | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | | X | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | | X | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | | X | | Mundy, Phyllis | | X | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | X | | |
| Mustio, Mark | | X | / | Sabatina, John | | X | |
| Pickett, Tina | | X | | Sturla, Michael | | X | |
| Reese, Mike | | X | | Waters, Ron | X | | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

Mike Turzai
Majority Chairman

Minority Chairman

H0080B4318A10515          SFL:BTW 10/20/14      #90          A10515

LEGISLATIVE SERVICES
FLOOR AMENDMENTS

2014 OCT 20  AM 10: 06

## LEGISLATIVE REFERENCE BUREAU

AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: *Waters 191*

Printer's No. 4318

1     Amend Bill, page 1, line 6, by inserting after "FOR"

2    licenses, for

3     Amend Bill, page 4, by inserting between lines 4 and 5

4     Section 2.1.  Section 6109(e) of Title 18 is amended and the
5    section is amended by adding a subsection to read:
6    § 6109.  Licenses.
7     * * *
8     (e)  Issuance of license.--
9         (1)  A license to carry a firearm shall be for the
10   purpose of carrying a firearm concealed on or about one's
11   person or in a vehicle and shall be issued if, after an
12   investigation not to exceed 45 days, it appears that the
13   applicant is an individual concerning whom no good cause
14   exists to deny the license, and the applicant has obtained
15   firearm liability insurance as provided under subsection
16   (e.1). A license shall not be issued to any of the following:
17             (i)  An individual whose character and reputation is
18   such that the individual would be likely to act in a
19   manner dangerous to public safety.
20             (ii)  An individual who has been convicted of an
21   offense under the act of April 14, 1972 (P.L.233, No.64),
22   known as The Controlled Substance, Drug, Device and
23   Cosmetic Act.
24             (iii)  An individual convicted of a crime enumerated
25   in section 6105.
26             (iv)  An individual who, within the past ten years,
27   has been adjudicated delinquent for a crime enumerated in
28   section 6105 or for an offense under The Controlled
29   Substance, Drug, Device and Cosmetic Act.
30             (v)  An individual who is not of sound mind or who
31   has ever been committed to a mental institution.
32             (vi)  An individual who is addicted to or is an
33   unlawful user of marijuana or a stimulant, depressant or
34   narcotic drug.
35             (vii)  An individual who is a habitual drunkard.
36             (viii)  An individual who is charged with or has been
37   convicted of a crime punishable by imprisonment for a

term exceeding one year except as provided for in section
6123 (relating to waiver of disability or pardons).
    (ix)   A resident of another state who does not
possess a current license or permit or similar document
to carry a firearm issued by that state if a license is
provided for by the laws of that state, as published
annually in the Federal Register by the Bureau of
Alcohol, Tobacco and Firearms of the Department of the
Treasury under 18 U.S.C. § 921(a)(19) (relating to
definitions).
    (x)   An alien who is illegally in the United States.
    (xi)   An individual who has been discharged from the
armed forces of the United States under dishonorable
conditions.
    (xii)   An individual who is a fugitive from justice.
This subparagraph does not apply to an individual whose
fugitive status is based upon nonmoving or moving summary
offense under Title 75 (relating to vehicles).
    (xiii)   An individual who is otherwise prohibited
from possessing, using, manufacturing, controlling,
purchasing, selling or transferring a firearm as provided
by section 6105.
    (xiv)   An individual who is prohibited from
possessing or acquiring a firearm under the statutes of
the United States.
    <u>(xv)   An individual who has failed to obtain firearm
liability insurance as provided under subsection (e.1).</u>
  (3)   The license to carry a firearm shall be designed to
be uniform throughout this Commonwealth and shall be in a
form prescribed by the Pennsylvania State Police. The license
shall bear the following:
    (i)   The name, address, date of birth, race, sex,
citizenship, height, weight, color of hair, color of eyes
and signature of the licensee.
    (ii)   The signature of the sheriff issuing the
license.
    (iii)   A license number of which the first two
numbers shall be a county location code followed by
numbers issued in numerical sequence.
    (iv)   The point-of-contact telephone number
designated by the Pennsylvania State Police under
subsection (l).
    (v)   The reason for issuance.
    (vi)   The period of validation.
  (4)   The sheriff shall require a photograph of the
licensee on the license. The photograph shall be in a form
compatible with the Commonwealth Photo Imaging Network.
  (5)   The original license shall be issued to the
applicant. The first copy of the license shall be forwarded
to the Pennsylvania State Police within seven days of the
date of issue. The second copy shall be retained by the

1  issuing authority for a period of seven years. Except
2  pursuant to court order, both copies and the application
3  shall, at the end of the seven-year period, be destroyed
4  unless the license has been renewed within the seven-year
5  period.
6  <u>(e.1)  Liability insurance.--</u>
7  <u>(1)  No individual shall be issued a license under</u>
8  <u>subsection (e) without providing the licensing authority with</u>
9  <u>a certificate of liability insurance verifying that the</u>
10  <u>applicant has a valid insurance policy insuring against harm</u>
11  <u>or damage that may arise out of the use of a firearm covered</u>
12  <u>by the license.</u>
13  <u>(2)  The insurance policy shall meet all of the</u>
14  <u>following:</u>
15  <u>(i)  Be in an amount of at least $1,000,000.</u>
16  <u>(ii)  Satisfy any judgment for personal injuries or</u>
17  <u>property damages arising out of negligent or willful acts</u>
18  <u>involving the use of an insured firearm.</u>
19  <u>(iii)  May not cover any unlawful acts.</u>
20  <u>(3)  An insurer who has issued a contract of firearm</u>
21  <u>liability insurance, or any approved self-insurance entity,</u>
22  <u>shall do all the following:</u>
23  <u>(i)  Notify the licensing authority of the county in</u>
24  <u>which the insured resides if the firearm liability</u>
25  <u>insurance has been canceled or terminated. An insurer</u>
26  <u>shall provide a copy of the notice of cancellation or a</u>
27  <u>copy of the insurer's filing procedures with proof that</u>
28  <u>the notice was written in the normal course of business</u>
29  <u>and placed in the normal course of mailing.</u>
30  <u>(ii)  Provide insurance identification certificates</u>
31  <u>to the insured which shall be valid only for the period</u>
32  <u>for which coverage has been paid by the insured.</u>
33  <u>Insurance identification certificates must disclose the</u>
34  <u>period for which coverage has been paid by the insured.</u>
35  <u>If the insured has financed premiums through a premium</u>
36  <u>finance company or is on an insurer-sponsored or agency-</u>
37  <u>sponsored payment plan, insurance identification</u>
38  <u>certificates may be issued for periods of six months</u>
39  <u>notwithstanding that the payment by the insured may be</u>
40  <u>for a period of less than six months.</u>
41  <u>(4)  A licensing authority shall not be required to</u>
42  <u>produce proof that notice of termination, lapse or</u>
43  <u>cancellation was provided to the insured in order to revoke</u>
44  <u>the license to carry a firearm. A licensing authority shall</u>
45  <u>immediately revoke a licensee's license if the licensing</u>
46  <u>authority receives notice that a licensee's firearm liability</u>
47  <u>insurance has been canceled or terminated.</u>
48  <u>(5)  The insurer's insurance identification certificate</u>
49  <u>shall be carried simultaneously with the insured firearm and</u>
50  <u>shall be exhibited to any law enforcement officer upon demand</u>
51  <u>for inspection. Failure to produce the insurance</u>

1   identification certification shall result in the following:
2       (i)   The law enforcement officer shall confiscate the
3   firearm.
4       (ii)   The owner of the confiscated firearm shall be
5   provided with a signed and dated written receipt by the
6   law enforcement officer. This receipt shall include a
7   detailed identifying description indicating the serial
8   number and condition of the firearm.
9       (iii)   If, within ten days, the law enforcement
10  officer does not receive proof from the owner of the
11  confiscated firearm that the owner has a valid firearm
12  liability insurance policy, the law enforcement officer
13  shall notify the licensing authority of the county in
14  which the individual resides that proof of insurance was
15  not provided and the firearm was confiscated. Upon
16  receipt of the notification, the licensing authority
17  shall immediately revoke the licensee's license to carry
18  a firearm and immediately notify the law enforcement
19  officer of the revocation.
20      (iv)   A confiscated firearm shall be released to an
21  owner as follows:
22          (A)   after confirmation has been received that
23      the owner's license to carry has been revoked and the
24      law enforcement officer has notified the owner that
25      the license has been revoked and that the owner may
26      no longer carry the firearm in public; or
27          (B)   the law enforcement officer has received
28      proof from the owner of the confiscated firearm that
29      the owner has a valid firearm liability insurance
30      policy.
31      (6)   If a licensing authority revokes a licensee's
32  license to carry a firearm, the licensing authority may not
33  reissue the license to carry until the person furnishes proof
34  of insurance. The licensing authority shall charge a fee of
35  $50 to reissue a license to carry following a revocation.
36      (7)   An individual who is in this Commonwealth with a
37  concealed firearm and possesses a valid and lawfully issued
38  license or permit to carry that firearm which has been issued
39  under the laws of another state as provided under section
40  6106(b)(15) (relating to firearms not to be carried without a
41  license) shall be required to obtain firearm liability
42  insurance as provided in this section within 30 days of
43  arriving in this Commonwealth.
44      (8)   An individual who fails to maintain liability
45  insurance as provided under this subsection shall be subject
46  to the following:
47      (i)   For a first offense, the individual shall be
48  subject to a fine of at least $1,000.
49      (ii)   For a second offense, the individual shall be
50  subject to a fine of at least $5,000.
51      (iii)   For a third offense, the individual commits a

1    a misdemeanor of the third degree and shall be subject to
2    a fine of at least $10,000.
3           (iv)  For a fourth and subsequent offense, the
4    individual commits a misdemeanor of the second degree and
5    shall be subject to a fine of at least $15,000.
6    * * *



HRC-AOc4

## HOUSE OF REPRESENTATIVES
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

## Committee Roll Call

Date **October 20, 2014**

| Committee | **Rules** | | | | Date & Time | October 20, 2014 – 3:15PM | | |
|---|---|---|---|---|---|---|---|---|
| Bill or Resolution No. | **HB 80** | | | | Type of Motion | **Adopt A10512** | | |
| Sponsor of Motion | **Mundy** | | | | Seconded by | **Parker** | | |
| Brief Description | A shift from PA Instant Check System to Nation al Instant Check System. | | | | | | | |

| Yeas | 1 | Nays | 31 | Not Voting | 1 | Passed | | Failed | X |
|---|---|---|---|---|---|---|---|---|---|

| MAJORITY MEMBERS | YEAS | NAYS | N-V | MINORITY MEMBERS | YEAS | NAYS | N-V |
|---|---|---|---|---|---|---|---|
| Turzal, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | | X | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | | X | |
| Christiana, Jim | | P | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | X | | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | | X | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | | X | | Mundy, Phyllis | | X | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | | X | |
| Mustio, Mark | | X | | Sabatina, John | | X | |
| Pickett, Tina | | X | | Sturla, Michael | | X | |
| Reese, Mike | | X | | Waters, Ron | | X | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

Majority Chairman

Minority Chairman

H0080B4318A10512        AJB:SRA 10/17/14      #90        A10512

LEGISLATIVE SERVICES
FLOOR AMENDMENT LEGISLATIVE REFERENCE BUREAU

2014 OCT 20  AM 9:41

AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: *Mundy*

Printer's No. 4318

1    Amend Bill, page 1, line 5, by striking out "AND,"

2    Amend Bill, page 1, line 6, by inserting after "FOR "

3    definitions, for licenses, for sale or transfer of firearms and
4       for

5    Amend Bill, page 1, line 7, by striking out "AND" where it

6    occurs the first time and inserting

7    ; repealing provisions relating to firearms sales surcharge and
8       firearm records check fund; further providing for licensing
9       of dealers,

10   Amend Bill, page 1, line 8, by striking out the period after

11   "AMMUNITION" and inserting

12    and for administrative regulations; and repealing provisions
13       relating to Firearms Background Check Advisory Committee.

14   Amend Bill, page 4, by inserting between lines 4 and 5

15    Section 3.  Section 6102 of Title 18 is amended by adding a
16   definition to read:
17   § 6102.  Definitions.
18    Subject to additional definitions contained in subsequent
19   provisions of this subchapter which are applicable to specific
20   provisions of this subchapter, the following words and phrases,
21   when used in this subchapter shall have, unless the context
22   clearly indicates otherwise, the meanings given to them in this
23   section:
24    * * *
25    "NICS."  The National Instant Criminal Background Check
26   System maintained by the Federal Bureau of Investigation in
27   accordance with the Brady Handgun Violence Prevention Act
28   (Public Law 103-159, 107 Stat. 1536).
29    * * *

30   Amend Bill, page 4, line 5, by striking out "3" and inserting

31      4

1      Amend Bill, page 4, line 5, by striking out "SECTION

2    6111.1(F)(3) AND (G)(1) AND (3)" and inserting

3      Sections 6109(d)(5) and 6111(a), (b), (f), '(g)·(3) and (j)

4      Amend Bill, page 4, by inserting between lines 6 and 7

5    § 6109.  Licenses.

6      * * *

7      (d)   Sheriff to conduct investigation.--The sheriff to whom

8    the application is made shall:

9      * * *

10      (5)   [conduct a criminal background, juvenile delinquency

11    and mental health check following the procedures set forth in

12    section 6111 (relating to sale or transfer of firearms),

13    receive a unique approval number for that inquiry and record

14    the date and number on the application] contact the NICS and

15    comply with the requirements of 18 U.S.C. § 922(t) (relating

16    to unlawful acts).

17      * * *

18    § 6111.  Sale or transfer of firearms.

19      [(a)   Time and manner of delivery.--

20      (1)   Except as provided in paragraph (2), no seller shall

21    deliver a firearm to the purchaser or transferee thereof

22    until 48 hours shall have elapsed from the time of the

23    application for the purchase thereof, and, when delivered,

24    the firearm shall be securely wrapped and shall be unloaded.

25      (2)   Thirty days after publication in the Pennsylvania

26    Bulletin that the Instantaneous Criminal History Records

27    Check System has been established in accordance with the

28    Brady Handgun Violence Prevention Act (Public Law 103-159, 18

29    U.S.C. § 921 et seq.), no seller shall deliver a firearm to

30    the purchaser thereof until the provisions of this section

31    have been satisfied, and, when delivered, the firearm shall

32    be securely wrapped and shall be unloaded.]

33    (b)   Duty of seller.--No licensed importer, licensed

34    manufacturer or licensed dealer shall sell or deliver any

35    firearm to another person, other than a licensed importer,

36    licensed manufacturer, licensed dealer or licensed collector,

37    [until the conditions of subsection (a) have been satisfied and]

38    until he has:

39      [(1)   For purposes of a firearm as defined in section

40    6102 (relating to definitions), obtained a completed

41    application/record of sale from the potential buyer or

42    transferee to be filled out in triplicate, the original copy

43    to be sent to the Pennsylvania State Police, postmarked via

44    first class mail, within 14 days of the sale, one copy to be

45    retained by the licensed importer, licensed manufacturer or

46    licensed dealer for a period of 20 years and one copy to be

47    provided to the purchaser or transferee. The form of this

1   application/record of sale shall be no more than one page in
2   length and shall be promulgated by the Pennsylvania State
3   Police and provided by the licensed importer, licensed
4   manufacturer or licensed dealer. The application/record of
5   sale shall include the name, address, birthdate, gender,
6   race, physical description and Social Security number of the
7   purchaser or transferee, the date of the application and the
8   caliber, length of barrel, make, model and manufacturer's
9   number of the firearm to be purchased or transferred. The
10  application/record of sale shall also contain the following
11  question:
12      Are you the actual buyer of the firearm(s), as defined
13      under 18 Pa.C.S. § 6102 (relating to definitions), listed
14      on this application/record of sale? Warning: You are not
15      the actual buyer if you are acquiring the firearm(s) on
16      behalf of another person, unless you are legitimately
17      acquiring the firearm as a gift for any of the following
18      individuals who are legally eligible to own a firearm:
19          (1)  spouse;
20          (2)  parent;
21          (3)  child;
22          (4)  grandparent; or
23          (5)  grandchild.
24      (1.1)  On the date of publication in the Pennsylvania
25  Bulletin of a notice by the Pennsylvania State Police that
26  the instantaneous records check has been implemented, all of
27  the following shall apply:
28      (i)  In the event of an electronic failure under
29  section 6111.1(b)(2) (relating to Pennsylvania State
30  Police) for purposes of a firearm which exceeds the
31  barrel and related lengths set forth in section 6102,
32  obtained a completed application/record of sale from the
33  potential buyer or transferee to be filled out in
34  triplicate, the original copy to be sent to the
35  Pennsylvania State Police, postmarked via first class
36  mail, within 14 days of sale, one copy to be retained by
37  the licensed importer, licensed manufacturer or licensed
38  dealer for a period of 20 years and one copy to be
39  provided to the purchaser or transferee.
40      (ii)  The form of the application/record of sale
41  shall be no more than one page in length and shall be
42  promulgated by the Pennsylvania State Police and provided
43  by the licensed importer, licensed manufacturer or
44  licensed dealer.
45      (iii)  For purposes of conducting the criminal
46  history, juvenile delinquency and mental health records
47  background check which shall be completed within ten days
48  of receipt of the information from the dealer, the
49  application/record of sale shall include the name,
50  address, birthdate, gender, race, physical description
51  and Social Security number of the purchaser or transferee

```
 1        and the date of application.
 2             (iv)  No information regarding the type of firearm
 3        need be included other than an indication that the
 4        firearm exceeds the barrel lengths set forth in section
 5        6102.
 6             (v)  Unless it has been discovered pursuant to a
 7        criminal history, juvenile delinquency and mental health
 8        records background check that the potential purchaser or
 9        transferee is prohibited from possessing a firearm
10        pursuant to section 6105 (relating to persons not to
11        possess, use, manufacture, control, sell or transfer
12        firearms), no information on the application/record of
13        sale provided pursuant to this subsection shall be
14        retained as precluded by section 6111.4 (relating to
15        registration of firearms) by the Pennsylvania State
16        Police either through retention of the application/record
17        of sale or by entering the information onto a computer,
18        and, further, an application/record of sale received by
19        the Pennsylvania State Police pursuant to this subsection
20        shall be destroyed within 72 hours of the completion of
21        the criminal history, juvenile delinquency and mental
22        health records background check.
23        (1.2)  Fees collected under paragraph (3) and section
24   6111.2 (relating to firearm sales surcharge) shall be
25   transmitted to the Pennsylvania State Police within 14 days
26   of collection.]
27        (1)  (Reserved).
28        (1.1)  (Reserved).
29        (1.2)  (Reserved).
30        (1.3)  In addition to the criminal penalty under section
31   6119 (relating to violation penalty), any person who
32   knowingly and intentionally [maintains or fails to destroy
33   any information submitted to the Pennsylvania State Police
34   for purposes of a background check pursuant to paragraphs
35   (1.1) and (1.4) or] violates section 6111.4 shall be subject
36   to a civil penalty of $250 per violation_ [, entry or failure
37   to destroy.
38        (1.4)  Following implementation of the instantaneous
39   records check by the Pennsylvania State Police on or before
40   December 1, 1998, no application/record of sale shall be
41   completed for the purchase or transfer of a firearm which
42   exceeds the barrel lengths set forth in section 6102. A
43   statement shall be submitted by the dealer to the
44   Pennsylvania State Police, postmarked via first class mail,
45   within 14 days of the sale, containing the number of firearms
46   sold which exceed the barrel and related lengths set forth in
47   section 6102, the amount of surcharge and other fees remitted
48   and a list of the unique approval numbers given pursuant to
49   paragraph (4), together with a statement that the background
50   checks have been performed on the firearms contained in the
51   statement. The form of the statement relating to performance
```

```
 1   of background checks shall be promulgated by the Pennsylvania
 2   State Police.]
 3       (1.5)  Contacted the NICS and complied with the
 4   requirements of 18 U.S.C. § 922(t) (relating to unlawful
 5   acts).
 6       (2)  Inspected photoidentification of the potential
 7   purchaser or transferee, including, but not limited to, a
 8   driver's license, official Pennsylvania photoidentification
 9   card or official government photoidentification card. In the
10   case of a potential buyer or transferee who is a member of a
11   recognized religious sect or community whose tenets forbid or
12   discourage the taking of photographs of members of that sect
13   or community, a seller shall accept a valid-without-photo
14   driver's license or a combination of documents, as prescribed
15   by the Pennsylvania State Police, containing the applicant's
16   name, address, date of birth and the signature of the
17   applicant.
18       [(3)  Requested by means of a telephone call that the
19   Pennsylvania State Police conduct a criminal history,
20   juvenile delinquency history and a mental health record
21   check. The purchaser and the licensed dealer shall provide
22   such information as is necessary to accurately identify the
23   purchaser. The requester shall be charged a fee equivalent to
24   the cost of providing the service but not to exceed $2 per
25   buyer or transferee.
26       (4)  Received a unique approval number for that inquiry
27   from the Pennsylvania State Police and recorded the date and
28   the number on the application/record of sale form.
29       (5)  Issued a receipt containing the information from
30   paragraph (4), including the unique approval number of the
31   purchaser. This receipt shall be prima facie evidence of the
32   purchaser's or transferee's compliance with the provisions of
33   this section.
34       (6)  Unless it has been discovered pursuant to a criminal
35   history, juvenile delinquency and mental health records
36   background check that the potential purchaser or transferee
37   is prohibited from possessing a firearm pursuant to section
38   6105, no information received via telephone following the
39   implementation of the instantaneous background check system
40   from a purchaser or transferee who has received a unique
41   approval number shall be retained by the Pennsylvania State
42   Police.
43       (7)  For purposes of the enforcement of 18 U.S.C. §
44   922(d)(9), (g)(1) and (s)(1) (relating to unlawful acts), in
45   the event the criminal history or juvenile delinquency
46   background check indicates a conviction for a misdemeanor
47   that the Pennsylvania State Police cannot determine is or is
48   not related to an act of domestic violence, the Pennsylvania
49   State Police shall issue a temporary delay of the approval of
50   the purchase or transfer. During the temporary delay, the
51   Pennsylvania State Police shall conduct a review or
```

1    investigation of the conviction with courts, local police
2    departments, district attorneys and other law enforcement or
3    related institutions as necessary to determine whether or not
4    the misdemeanor conviction involved an act of domestic
5    violence. The Pennsylvania State Police shall conduct the
6    review or investigation as expeditiously as possible. No
7    firearm may be transferred by the dealer to the purchaser who
8    is the subject of the investigation during the temporary
9    delay. The Pennsylvania State Police shall notify the dealer
10   of the termination of the temporary delay and either deny the
11   sale or provide the unique approval number under paragraph
12   (4).]
13       * * *
14   (f)  Application of section.--
15       (1)  For the purposes of this section only, except as
16   provided by paragraph (2), "firearm" shall mean any weapon
17   which is designed to or may readily be converted to expel any
18   projectile by the action of an explosive or the frame or
19   receiver of any such weapon.
20       (2)  The provisions contained in [subsections (a) and]
21   subsection (c) shall only apply to pistols or revolvers with
22   a barrel length of less than 15 inches, any shotgun with a
23   barrel length of less than 18 inches, any rifle with a barrel
24   length of less than 16 inches or any firearm with an overall
25   length of less than 26 inches.
26       (3)  The provisions contained in subsection [(a)] (b)
27   (1.5) shall not apply to any law enforcement officer whose
28   current identification as a law enforcement officer shall be
29   construed as a valid license to carry a firearm or any person
30   who possesses a valid license to carry a firearm under
31   section 6109 (relating to licenses).
32       [(4)  (i)  The provisions of subsection (a) shall not
33       apply to any person who presents to the seller or
34       transferor a written statement issued by the official
35       described in subparagraph (iii) during the ten-day period
36       ending on the date of the most recent proposal of such
37       transfer or sale by the transferee or purchaser stating
38       that the transferee or purchaser requires access to a
39       firearm because of a threat to the life of the transferee
40       or purchaser or any member of the household of that
41       transferee or purchaser.
42           (ii)  The issuing official shall notify the
43       applicant's local police authority that such a statement
44       has been issued. In counties of the first class the chief
45       of police shall notify the police station or substation
46       closest to the applicant's residence.
47           (iii)  The statement issued under subparagraph (ii)
48       shall be issued by the district attorney, or his
49       designee, of the county of residence if the transferee or
50       purchaser resides in a municipality where there is no
51       chief of police. Otherwise, the statement shall be issued

1      by the chief of police in the municipality in which the
2      purchaser or transferee resides.]
3   (g)  Penalties.--
4      * * *
5      (3)  Any person, licensed dealer, licensed manufacturer
6   or licensed importer who knowingly and intentionally requests
7   a [criminal history, juvenile delinquency or mental health
8   record check or other confidential information from the
9   Pennsylvania State Police under this chapter] NICS check for
10  any purpose other than compliance with this chapter or
11  knowingly and intentionally disseminates any [criminal
12  history, juvenile delinquency or mental health record]
13  information obtained from a NICS check or other confidential
14  information to any person other than the subject of the
15  information commits a felony of the third degree.
16      * * *
17  (j)  Exemption.--
18      (1)  The provisions of [subsections (a) and] subsection
19  (b) shall not apply to:
20          (i)  sales between Federal firearms licensees; or
21          (ii)  the purchase of firearms by a chief law
22      enforcement officer or his designee, for the official use
23      of law enforcement officers.
24      (2)  For the purposes of this subsection, the term "chief
25  law enforcement officer" shall include the Commissioner of
26  the Pennsylvania State Police, the chief or head of a police
27  department, a county sheriff or any equivalent law
28  enforcement official.
29  Section 5.  Section 6111.1(b)(1), (2) and (3), (c), (e), (f)
30  (3), (g)(1) and (3), (i), (j.1), (j.2) and (j.3) of Title 18 are
31  amended and the section is amended by adding a subsection to
32  read:

33  Amend Bill, page 4, by inserting between lines 8 and 9

34  (b)  Duty of Pennsylvania State Police.--
35      [(1)  Upon receipt of a request for a criminal history,
36  juvenile delinquency history and mental health record check
37  of the potential purchaser or transferee, the Pennsylvania
38  State Police shall immediately during the licensee's call or
39  by return call forthwith:
40          (i)  review the Pennsylvania State Police criminal
41      history and fingerprint records to determine if the
42      potential purchaser or transferee is prohibited from
43      receipt or possession of a firearm under Federal or State
44      law;
45          (ii)  review the juvenile delinquency and mental
46      health records of the Pennsylvania State Police to
47      determine whether the potential purchaser or transferee
48      is prohibited from receipt or possession of a firearm
49      under Federal or State law; and

1     (iii)  inform the licensee making the inquiry either:
2                (A)  that the potential purchase or transfer is
3        prohibited; or
4                (B)  provide the licensee with a unique approval
5        number.
6        (2)  In the event of electronic failure, scheduled
7    computer downtime or similar event beyond the control of the
8    Pennsylvania State Police, the Pennsylvania State Police
9    shall immediately notify the requesting licensee of the
10   reason for and estimated length of the delay. If the failure
11   or event lasts for a period exceeding 48 hours, the dealer
12   shall not be subject to any penalty for completing a
13   transaction absent the completion of an instantaneous records
14   check for the remainder of the failure or similar event, but
15   the dealer shall obtain a completed application/record of
16   sale following the provisions of section 6111(b)(1) and (1.1)
17   (relating to sale or transfer of firearms) as if an
18   instantaneous records check has not been established for any
19   sale or transfer of a firearm for the purpose of a subsequent
20   background check.
21       (3)  The Pennsylvania State Police shall fully comply,
22   execute and enforce the directives of this section as
23   follows:
24                (i)  The instantaneous background check for firearms
25       as defined in section 6102 (relating to definitions)
26       shall begin on July 1, 1998.
27                (ii)  The instantaneous background check for firearms
28       that exceed the barrel lengths set forth in section 6102
29       shall begin on the later of:
30                (A)  the date of publication of the notice under
31       section 6111(a)(2); or
32                (B)  December 31, 1998.]
33       * * *
34   [(c)  Establish a telephone number.--The Pennsylvania State
35   Police shall establish a telephone number which shall be
36   operational seven days a week between the hours of 8 a.m. and 10
37   p.m. local time for purposes of responding to inquiries as
38   described in this section from licensed manufacturers, licensed
39   importers and licensed dealers. The Pennsylvania State Police
40   shall employ and train such personnel as are necessary to
41   administer expeditiously the provisions of this section.]
42       * * *
43   (e)  Challenge to records.--
44       (1)  Any person who is denied the right to receive, sell,
45   transfer, possess, carry, manufacture or purchase a firearm
46   as a result of the [procedures established by this section]
47   information recorded in a registry of the Pennsylvania State
48   Police may challenge the accuracy of that person's criminal
49   history, juvenile delinquency history or mental health record
50   [pursuant to a denial by the instantaneous records check] by
51   submitting a challenge to the Pennsylvania State Police

1   within 30 days from the date of the denial.
2       (2)  The Pennsylvania State Police shall conduct a review
3   of the accuracy of the information forming the basis for the
4   denial and shall have the burden of proving the accuracy of
5   the record. Within 20 days after receiving a challenge, the
6   Pennsylvania State Police shall notify the challenger of the
7   basis for the denial, including, but not limited to, the
8   jurisdiction and docket number of any relevant court decision
9   and provide the challenger an opportunity to provide
10  additional information for the purposes of the review. The
11  Pennsylvania State Police shall communicate its final
12  decision to the challenger within 60 days of the receipt of
13  the challenge. The decision of the Pennsylvania State Police
14  shall include all information which formed a basis for the
15  decision.
16      (3)  If the challenge is ruled invalid, the person shall
17  have the right to appeal the decision to the Attorney General
18  within 30 days of the decision. The Attorney General shall
19  conduct a hearing de novo in accordance with the
20  Administrative Agency Law. The burden of proof shall be upon
21  the Commonwealth.
22      (4)  The decision of the Attorney General may be appealed
23  to the Commonwealth Court by an aggrieved party.
24      (5)  Pursuant to the memorandum of understanding under
25  subsection (i.4), the Pennsylvania State Police shall report
26  to the National Instant Criminal Background Check System
27  Index, Denied Persons Files, the name, date of birth and
28  physical description of any person who successfully
29  challenges the accuracy of that person's criminal history,
30  juvenile delinquency history or mental health record under
31  this subsection.
32  * * *

33  Amend Bill, page 5, by inserting between lines 15 and 16

34  [(i)  Reports.--The Pennsylvania State Police shall annually
35  compile and report to the General Assembly, on or before
36  December 31, the following information for the previous year:
37      (1)  number of firearm sales, including the types of
38  firearms;
39      (2)  number of applications for sale of firearms denied,
40  number of challenges of the denials and number of final
41  reversals of initial denials;
42      (3)  summary of the Pennsylvania State Police's
43  activities, including the average time taken to complete a
44  criminal history, juvenile delinquency history or mental
45  health record check; and
46      (4)  uniform crime reporting statistics compiled by the
47  Pennsylvania State Police based on the National Incident-
48  based Reporting System.]
49  * * *

1    [(j.1)  Delinquency and mental health records.--The
2    provisions of this section which relate to juvenile delinquency
3    and mental health records checks shall be applicable when the
4    data has been made available to the Pennsylvania State Police
5    but not later than October 11, 1999.
6       (j.2)  Records check.--The provisions of this section which
7    relate to the instantaneous records check conducted by telephone
8    shall be applicable 30 days following notice by the Pennsylvania
9    State Police pursuant to section 6111(a)(2).]
10      (j.3)  Immunity.--[The Pennsylvania State Police and its
11   employees shall be immune from actions for damages for the use
12   of a firearm by a purchaser or for the unlawful transfer of a
13   firearm by a dealer unless the act of the Pennsylvania State
14   Police or its employees constitutes a crime, actual fraud,
15   actual malice or willful misconduct.] Unless the act of the
16   Pennsylvania State Police or its employees constitutes a crime,
17   actual fraud, actual malice or willful misconduct, the
18   Pennsylvania State Police and its employees shall be immune from
19   actions for damages for:
20        (1)  the use of a firearm by a purchaser or lawful owner;
21   or
22        (2)  the unlawful transfer of a firearm by a dealer.
23      (j.4)  Report to NICS.--The Pennsylvania State Police shall,
24   in accordance with Federal and State law regarding
25   confidentiality, enter into a memorandum of understanding with
26   the Federal Bureau of Investigation for the purpose of
27   implementing the NICS in this Commonwealth. As soon as
28   practicable after entering into the memorandum of understanding,
29   the Pennsylvania State Police shall forward a notice of same to
30   the Legislative Reference Bureau for publication in the
31   Pennsylvania Bulletin. The Pennsylvania State Police shall
32   report to the National Instant Criminal Background Check System
33   Index, Denied Persons Files, the name, date of birth and
34   physical description of any person who:
35        (1)  under section 6105, may not possess, use, control,
36   sell, transfer or manufacture a firearm in this Commonwealth;
37   or
38        (2)  was previously reported under paragraph (1) or any
39   predecessor statute or agreement and may currently possess,
40   use, control, sell, transfer or manufacture a firearm in this
41   Commonwealth.
42   * * *
43      Section 6.  Sections 6111.2 and 6111.3 of Title 18 are
44   repealed:
45   [§ 6111.2.  Firearm sales surcharge.
46      (a)  Surcharge imposed.--There is hereby imposed on each sale
47   of a firearm subject to tax under Article II of the act of March
48   4, 1971 (P.L.6, No.2), known as the Tax Reform Code of 1971, an
49   additional surcharge of $3. This shall be referred to as the
50   Firearm Sale Surcharge. All moneys received from this surcharge
51   shall be deposited in the Firearm Instant Records Check Fund.

1     (b)  Increases or decreases.--Five years from the effective
2  date of this subsection, and every five years thereafter, the
3  Pennsylvania State Police shall provide such information as
4  necessary to the Legislative Budget and Finance Committee for
5  the purpose of reviewing the need to increase or decrease the
6  instant check fee. The committee shall issue a report of its
7  findings and recommendations to the General Assembly for a
8  statutory change in the fee.
9     (c)  Revenue sources.--Funds received under the provisions of
10  this section and section 6111(b)(3) (relating to sale or
11  transfer of firearms), as estimated and certified by the
12  Secretary of Revenue, shall be deposited within five days of the
13  end of each quarter into the fund.
14     (d)  Definition.--As used in this section only, the term
15  "firearm" shall mean any weapon which is designed to or may
16  readily be converted to expel any projectile by the action of an
17  explosion or the frame or receiver of any such weapon.
18  § 6111.3.  Firearm Records Check Fund.
19     (a)  Establishment.--The Firearm Records Check Fund is hereby
20  established as a restricted account in the State Treasury,
21  separate and apart from all other public money or funds of the
22  Commonwealth, to be appropriated annually by the General
23  Assembly, for use in carrying out the provisions of section 6111
24  (relating to firearm ownership). The moneys in the fund on June
25  1, 1998, are hereby appropriated to the Pennsylvania State
26  Police.
27     (b)  Source.--The source of the fund shall be moneys
28  collected and transferred under section 6111.2 (relating to
29  firearm sales surcharge) and moneys collected and transferred
30  under section 6111(b)(3).]
31     Section 7.  Section 6113(a) of Title 18 is amended to read:
32  § 6113.  Licensing of dealers.
33     (a)  General rule.--The chief or head of any police force or
34  police department of a city, and, elsewhere, the sheriff of the
35  county, shall grant to reputable applicants licenses, in form
36  prescribed by the Pennsylvania State Police, effective for three
37  years from date of issue, permitting the licensee to sell
38  firearms direct to the consumer, subject to the following
39  conditions in addition to those specified in section 6111
40  (relating to sale or transfer of firearms), for breach of any of
41  which the license shall be forfeited and the licensee subject to
42  punishment as provided in this subchapter:
43     (1)  The business shall be carried on only upon the
44  premises designated in the license or at a lawful gun show or
45  meet.
46     (2)  The license, or a copy thereof, certified by the
47  issuing authority, shall be displayed on the premises where
48  it can easily be read.
49     (3)  No firearm shall be sold in violation of any
50  provision of this subchapter.
51     (4)  No firearm shall be sold under any circumstances

1    unless the purchaser is personally known to the seller or
2    shall present clear evidence of the purchaser's identity.
3        (5)   [A true record in triplicate shall be made of every
4    firearm sold, in a book kept for the purpose, the form of
5    which may be prescribed by the Pennsylvania State Police, and
6    shall be personally signed by the purchaser and by the person
7    effecting the sale, each in the presence of the other, and
8    shall contain the information required by section 6111. The
9    record shall be maintained by the licensee for a period of 20
10   years.] (Reserved).
11       (6)   No firearm as defined in section 6102 (relating to
12   definitions) shall be displayed in any part of any premises
13   where it can readily be seen from the outside. In the event
14   that the Commissioner of the Pennsylvania State Police shall
15   find a clear and present danger to public safety within this
16   Commonwealth or any area thereof, firearms shall be stored
17   and safeguarded pursuant to regulations to be established by
18   the Pennsylvania State Police by the licensee during the
19   hours when the licensee is closed for business.
20       (7)   The dealer shall possess all applicable current
21   revenue licenses.
22   * * *

23   Amend Bill, page 5, line 16, by striking out "4" and

24 inserting

25      8

26   Amend Bill, page 6, by inserting after line 30

27   Section 9.   Section 6124 of Title 18 is amended to read:
28 § 6124.   Administrative regulations.
29   The commissioner may establish form specifications and
30 regulations, consistent with section 6109(c) (relating to
31 licenses), with respect to uniform forms control, including the
32 following:
33           (1)   License to carry firearms.
34           (2)   Firearm registration.
35           (3)   Dealer's license.
36           [(4)   Application for purchase of a firearm.
37           (5)   Record of sale of firearms.]
38   Section 10.   Section 6126 of Title 18 is repealed:
39 [§ 6126.   Firearms Background Check Advisory Committee.
40       (a)   Establishment.--There is hereby established the Firearms
41 Background Check Advisory Committee which shall consist of six
42 members as follows:
43           (1)   The Governor or a designee.
44           (2)   The Attorney General or a designee.
45           (3)   The Majority Leader of the Senate or a designee.
46           (4)   The Minority Leader of the Senate or a designee.
47           (5)   The Majority Leader of the House of Representatives

1    or a designee.
2        (6)   The Minority Leader of the House of Representatives
3    or a designee.
4    (b)   Duties.--To facilitate compliance with this chapter and
5    the intent thereof, the Firearms Background Check Advisory
6    Committee shall, as follows:
7        (1)   Review the operations and procedures of the
8        Pennsylvania State Police relating to the implementation and
9        administration of the criminal history, juvenile delinquency
10       and mental health records background checks.
11       (2)   Advise the Pennsylvania State Police relating to the
12       development and maintenance of the instantaneous records
13       check system.
14       (3)   Provide annual reports to the Governor and the
15       General Assembly on the advisory committee's findings and
16       recommendations, including discussions concerning conformance
17       with the preamble of the act of June 13, 1995 (1st Sp.Sess.,
18       P.L.1024, No.17), entitled, "An act amending Titles 18
19       (Crimes and Offenses) and 42 (Judiciary and Judicial
20       Procedure) of the Pennsylvania Consolidated Statutes, further
21       providing for the possession of firearms; establishing a
22       selected Statewide juvenile offender registry; and making an
23       appropriation."
24   (c)   Terms.--Members or their designees shall serve a term of
25   office concurrent with the term of office for which the member
26   was elected. Any vacancy shall be filled by the appointing
27   authority.
28   (d)   Chairperson.--The Governor shall appoint the chairperson
29   of the advisory committee.
30   (e)   Expiration.--This section shall expire November 30,
31   2002.]

32   Amend Bill, page 7, line 1, by striking out "5" and inserting

33       11

34   Amend Bill, page 7, line 1, by striking out "in 60 days." and

35   inserting

36   as follows:
37       (1)   The following shall take effect 30 days after notice
38   is published in the Pennsylvania Bulletin that a memorandum
39   of understanding has been entered into under section
40   6111.1(j.4):
41           (i)   The amendment of 18 Pa.C.S. §§ 6109(d) and 6111.
42           (ii)  The repeal of 18 Pa.C.S. §§ 6111.2, 6111.3 and
43   6126.
44       (2)   The following shall take effect immediately:
45           (i)   This section.
46           (ii)  The amendment or addition of 18 Pa.C.S. §
47   6111.1(e)(5) and (j.4).

1        (3)    The remainder of this act shall take effect in 60
2    days.



HRC-AOo4

**HOUSE OF REPRESENTATIVES**
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE CHIEF CLERK

**Committee Roll Call**

Date __October 20, 2014__

| Committee | **Rules** | | | | Date & Time | October 20, 2014 – 3:15PM | | |
|---|---|---|---|---|---|---|---|---|
| Bill or Resolution No. | **HB 80** | | | | Type of Motion | **Adopt A10510** | | |
| Sponsor of Motion | **Sturla** | | | | Seconded by | **Mundy** | | |
| Brief Description | Exempts existing local ordinances from pre-emption remedies. This does not change the underlying prohibition against such ordinances, just precludes remedies. | | | | | | | |

Yes __7__  Nays __25__  Not Voting __1__  Passed          Failed  **X**

| MAJORITY MEMBERS | YEAS | NAYS | N-V | MINORITY MEMBERS | YEAS | NAYS | N-V |
|---|---|---|---|---|---|---|---|
| Turzal, Michael, Chairman | | X | | Dermody, Frank, Chairman | | X | |
| Adolph, William | X | | | Costa, Dom | | X | |
| Baker, Matthew | | X | | Frankel, Dan | X | | |
| Christiana, Jim | | P | | Goodman, Neal | | X | |
| Ellis, Brian | | X | | Hanna, Michael | | X | |
| Gingrich, Mauree | | X | | Kula, Deberah | | X | |
| Godshall, Robert | | X | | Markosek, Joseph | | X | |
| Grove, Seth | | X | | Matzie, Rob | | X | |
| Killion, Thomas | | X | | Mundy, Phyllis | X | | |
| Marsico, Ron | | X | | Neuman, Brandon | | X | |
| Masser, Kurt | | X | | Parker, Cherelle | X | | |
| Mustio, Mark | | X | | Sabatina, John | X | | |
| Pickett, Tina | | X | | Sturla, Michael | X | | |
| Reese, Mike | | X | | Waters, Ron | X | | |
| Saylor, Stan | | X | | Wheatley, Jake | | | X |
| Scavello, Mario | | X | | | | | |
| Smith, Samuel | | P | | | | | |
| Watson, Kathy | | X | | | | | |

*Mike Turza*
Majority Chairman

Minority Chairman

H0080B4318A10510          DMS:SRA 10/17/14      #90          A10510

LEGISLATIVE SERVICES
FLOOR AMENDMENTS

2014 OCT 20 AM 9: 18

AMENDMENTS TO HOUSE BILL NO. 80

Sponsor: *Sturla, 96 th*

Printer's No. 4318

1    Amend Bill, page 5, line 21, by striking out "A" where it

2    occurs the second time and inserting

3     Except as provided in subsection (a.3), a

4    Amend Bill, page 5, by inserting between lines 27 and 28

5    (a.3)  Exception.--Subsection (a.2) shall not apply to an
6    ordinance, a resolution, regulation, rule, practice or any other
7    action promulgated or enforced by a political subdivision before
8    the effective date of this subsection.

9    Amend Bill, page 5, line 28, by striking out "(a.3)" and

10   inserting

11    (a.4)



HB 80
10/20/2014

The House proceeded to consideration of concurrence in Senate amendments to **HB 80**, PN 4318, entitled:

On the question,
Will the House concur in Senate amendments?

The SPEAKER. Moved by the gentleman, Mr. Metcalfe, that the House concur in the amendments inserted by the Senate.

The Speaker recognizes the gentleman, Mr. Metcalfe, for a brief description of the Senate amendments.
Mr. METCALFE. Thank you, Mr. Speaker.

Mr. Speaker, the Senate amended the bill substantially. Those amendments include language to amend section 3503 of Title 18 relating to criminal trespass in order to add the offense of trespassing in order to steal a secondary medal. It also includes, and has been amended into it, the language from HB 1243, which the House passed 143-to-54 on October 6, 2014. That language does two things. First, it requires the State Police to send mental health data to the National Instant Criminal Background Check System, and it provides remedies for the unlawful regulation of firearms, Mr. Speaker.

Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?
On that question, the Speaker recognizes the gentleman from Allegheny County, Mr. Frankel.
Mr. FRANKEL. Thank you, Mr. Speaker.

I rise to oppose this bill because HB 80 contains a couple of very bad ideas. As it was amended in the Senate to incorporate a preemption of our local governments from being able to pass legislation that would provide the tools to their law enforcement agencies that they so desperately want to combat the scourge of illegal guns on their streets. Primarily, and I have said this before, it deals with the issue of local governments mandating that their citizens report the loss of a weapon or a weapon being stolen from their homes. A simple idea, a reasonable idea, a commonsense idea that is supported by so many of our municipalities across Pennsylvania because they believe that this tool will help them keep weapons from getting into the hands of felons and juveniles who use them to perpetrate crimes.

We should support those local governments because we have not been able to do it here. We have -- as I have said before, we have been trying for over a decade to pass this bill, to get this bill considered, to mandate the reporting of lost and stolen weapons. Other States have done that. We should do that. But if we are not going to do it, let us not handicap our local governments from being able to pass legislation that their law enforcement agencies want, and that quite frankly, the citizens of this State, when polled, want.

The other bad idea in this bill is that it gives standing to the NRA to bring lawsuits against those local governments. Many of those local governments who are struggling financially would have to defend and pay damages if the lawsuits by the NRA were successful. This is not a great idea. I mean since when does an organization have standing to sue a local government? This is a bad precedent that we are setting here. And particularly, because the NRA has been marketing this and walking around with this piece of legislation for months, it is their bill to give them standing in their enormous resources to go after our local governments. We should not allow that to happen. It is a bad precedent.

So I would ask my colleagues to take a reasonable approach here. I know what is likely to happen. We all have to represent our districts. But those of us who represent districts that are struggling to combat crime on our streets and illegal guns used to perpetrate those crimes, need some assistance. And if we are not going to provide it here, let us allow those governments to do what is in the best interest of the citizens of those municipalities.

I urge a "no" vote. Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?
On that question, the Speaker recognizes the gentleman from Philadelphia County, Mr. Thomas.
Mr. THOMAS. Thank you, Mr. Speaker.

Mr. Speaker, I rise to nonconcur on HB 80 for the following reasons. Number one, my colleague from Pittsburgh, Allegheny County, laid out a very credible argument dealing with the cost that will be borne by local municipalities if this bill becomes law. The way the bill is drafted, municipalities are going to have to put money out one way or the other, whether they win or lose. And so, Mr. Speaker, taxpayers in our local municipalities are already overburdened. This is a bad bill for the financial stability of our local communities.

Secondly, Mr. Speaker, there is this scripture, I believe in Galatians, which talks about the need for us to never engage in creating dissension amongst our brothers. This bill is going to create dissension between local officials and people in local communities because there are people in our local communities who want our local elected officials to do something about the scourge of gun violence in our communities.

Every poll that has been taken, every poll that has been taken, over 85 percent of the people that responded to those polls at the local level, have said that they are okay with reasonable restrictions on guns, reasonable restrictions, like lost and stolen, straw purchases, people who break in to commit a crime in order to get guns. Mr. Speaker, people have said that they are okay with some restrictions, and it will not be tantamount to an infringement on the Second Amendment.

So, Mr. Speaker, we have the financial consequences associated to this. We have the moral consequences associated with this. We are creating dissension at the local level. Thirdly, Mr. Speaker, we have to deal with this whole – this Second Amendment. The National Rifle Association has repeatedly said that we cannot tolerate any infringement on their right to access guns, as articulated or as interpreted by them of the Second Amendment.

So, Mr. Speaker, my primary concern, we have two colleagues who were faced with a very tragic situation last week. If one of my colleagues had not been legally armed, he and my other colleague would not be here today. But thankfully, they were legally carrying a weapon and were able to thwart their perpetrators. But, Mr. Speaker, my colleagues will tell you that if the mayor of Harrisburg, if the county commissioner of Dauphin County, if their hands were not tied and could do what was in the best interest of the people of Harrisburg, of Dauphin County, that 17-year-old punk would not have had a gun in his hand. That 17-year-old punk would not have had a gun in his hand because he possessed the gun illegally. He should not have had the gun. But because of all of the stolen guns that take place, all of the straw purchases that are being made, this young man was able to put his hand on a gun. And therefore, we should not tie the hands of the mayor of Harrisburg or the county commissioner or the elected officials of Dauphin County. They should be able to do what is reasonably necessary to bring an end to the scourge of gun violence in this community and people having access to guns.

Mr. Speaker, if I did not know any different, because I talked to a lot of these young people, young people who are able to get guns before they can even get a book. And, Mr. Speaker, the first thing that a 12-year-old— I had a teen summit last Saturday. Over 125 young people were out from 9 years old on up at 9 o'clock in the morning. And one of the things that I talked about with these young people, I asked a 12-year-old, a 12-year-old, I asked him why would you take a gun to settle a dispute that you have with a friend. You know what he told me? You know what he told me? He told me, because I have got a right under the Second Amendment of the Constitution. I have a right to use a gun to defend myself against other 10-years-olds that might be bullying him or might be trying to hurt him. He was never intended, he was never intended under the Second Amendment.

You and I know, a 10-year-old, 11-year-old, 12-year-old cannot go out here and buy a gun and get a permit like you and I. The other thing is, 10-, 11-, 12-year olds, they cannot get any training for the guns that they are able to get from friends and they are able to steal out of homes. Law-abiding members of this General Assembly, you teach your kids how to use weapons. Your kids are able to responsibly deal with guns that they have access to. This is not the case in many parts of Pennsylvania. Kids are getting guns and doing whatever they want with them because they think they have a right under the Second Amendment.

So, Mr. Speaker, I say today is the day to draw the line in the sand. Let us separate the bad people from the good people. The good people who have a right to guns under the Second Amendment, they should be protected, but these little 9-, 10-, 11-, 12-year-olds, folks who would beat their wives in domestic situations. Mr. Speaker, gun violence happens in our homes and in our communities. Give our local communities an opportunity to deal with this issue in our local communities. Let us not go home today and tie the hands of our local officials. Let us not go home today and put addition financial burdens on local municipalities. Let us not go home today and create dissension and an adversarial climate in our local communities. Let us not go home today, letting the bad people think that they have the same rights that you and I have. Let us send a clear message to the bad people that we are going to empower our local communities to do what they need to do to make sure that babies get books not guns, to make sure that bad people do not use guns to continue their bad habits.

Let us do that today. Nonconcur on HB 80, Mr. Speaker. Thank you.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Armstrong County, Mr. Pyle.

Mr. PYLE. Thank you, Mr. Speaker.

Mr. Speaker, I am not sure if this is a parliamentary inquiry or not, but I need to ask of the Speaker a definition.

The SPEAKER. The gentleman may state his parliamentary inquiry.

Mr. PYLE. Mr. Speaker, I am not sure I understand what exactly this phrase "illegal gun" means. The last I

checked, they are inanimate objects that cannot think for themselves and therefore incapable of creating actions by themselves.

The SPEAKER. The gentleman—  That would not be a parliamentary inquiry. The interpretation of the definition of words used in a bill would have to be defined by the bill. The interpretation of the definition of words used by members in a debate or in a public domain is subject to your own interpretation.

Mr. PYLE. Well, thank you very much for that explanation.

The SPEAKER. Is the gentleman seeking further recognition on the bill?

Mr. PYLE. May I speak on the bill, Mr. Speaker?

The SPEAKER. The gentleman is in order on the bill.

Mr. PYLE. Mr. Speaker, the point I was making is this. Quite simply, there is no such thing as an illegal gun. There are about as many illegal guns as there are illegal manhole covers. They are inanimate, incapable of creating their own thoughts or actions.

Mr. Speaker, I feel for the gentleman for the city of the first class. I understand they have a lot of problems we in the backwater countries do not really have. But here is my question toward this bill, if I leave Harrisburg today and I drive to my friend Tommy Killion's district in Delaware County, I will pass through 11 legislative districts. My question is, being somebody who is legally allowed to own guns, holds a concealed carry permit, and am federally empowered to cross county lines holding a firearm, at which point do I go from legal to illegal to legal to illegal to legal to illegal, not being privy to all the local firearm statutes in counties between here and New Jersey.

Mr. Speaker, we must vote concurrence on HB 80. To a crazy quilt of now you see it, now you do not going on across 300 miles east to west, 110 miles north to south, would turn criminals, well would turn law-abiding citizens unknowingly into criminals. And I know the old adage is, ignorance is not above the law. No, it is not. But in assessing the problems of the city of the first class, and of Squirrel Hill and of Pittsburgh, you know, it is funny, and I am happy that somebody brought up Squirrel Hill because I live about 20 miles from it. We do not have these issues with quote, unquote "illegal guns." We do not have them. Maybe it is because our population density is much less than the city of the second class. We are only a county of the sixth class.

But what I can tell you about where we are a little bit ahead of the curve, Mr. Speaker, is we respect people's rights. And if you think we are fighting hard for the second, you should hear us fight for the first. Because we feel freedom of speech and freedom of press and freedom to assemble and of religion are just as important. Mr. Speaker, we must concur with HB 80.

Mr. Speaker, I do have a parliamentary inquiry.

Mr. Speaker, not too long ago the Supreme Court of the land held down *Heller v. DC*, that said localities cannot make their own gun laws beyond that of the ruling home State. This is a moot conversation; I appreciate the gentleman from Cranberry making it. We must concur with HB 80. To do anything less would be unconstitutional.

Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the lady from Montgomery County, Mrs. Dean.

Mrs. DEAN. Thank you, Mr. Speaker.

I rise today in opposition to HB 80 yet again. Talk about some sausage making. HB 80 as we see it today is really a compilation, as you all know, of three earlier House bills. The first part: Theft of secondary metal and trespass is a concept I support in its promotion of public safety. The second part of this bill, directing that the State Police report mental health data to the National Instant Criminal Background Check System, (NICS), is another thing I support. Yet the third part of this bill, allowing membership organizations and other persons to sue municipalities to block or overturn local ordinances, I cannot support. And in the same breath, you would be able to, the membership organizations would be able to collect attorneys' fees and costs and expenses, and even lost income from employment.

This is a dangerous provision that threatens our municipalities' financial stability. And just as alarming, it will hamper our local towns and cities from taking action to protect their own citizens, where the State has failed to do that. My own township, Abington Township, has passed a lost and stolen ordinance like 48 other municipalities responding to the problem of illegal drugs, excuse me guns.

Our own State government task force on violence recommended, recommended lost and stolen legislation, but we failed to do it as a State. HB 80 puts our own citizens at risk, both in their pocketbooks when their municipalities need to defend themselves from litigation and also in their persons as important protective ordinances, as some of my colleagues have talked about, and laws will be put in jeopardy. In addition, the absurdly broad definition of "membership organization," as was revealed in House debate, in this bill, could force our local taxpayers' town or city to defend themselves from membership organizations such as the KKK (Ku Klux Klan) or the Aryan Nations or ISIS (Islamic State of Iraq and Syria), criminal gangs, the Mafia. Is that really the kind of

legislation we want to pass? Is that really the responsible thing for us to do here this last day of session? We know where this is coming from. One group has pushed this, has ushered this, has shuttled this around this Capitol. And soon, they will be suing a town near you.

Finally, since this is a compilation of three separate bills, I have serious concerns on how they are germane to each other. You have got to wonder about that. How do they meet the single-subject rule that we hold so dear? While all the provisions are contained within Title 18, it fails me to identify the unifying theme among them, among all three: Theft of metals, State Police disclosure of records, relief for persons – i.e. the NRA – adversely affected by an ordinance to protect our towns and cities from costly litigation and this special standing that I cannot understand, we have to point out the flaws of this legislation and I urge that we vote "no" in concurrence on HB 80.

Thank you very much, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the lady from Philadelphia County, Mrs. Parker.

Mrs. PARKER. Thank you, Mr. Speaker.

Mr. Speaker, in 2013, the city of Philadelphia witnessed 247 murders. When a murder occurred in the context of domestic violence, a gun was the most frequently used weapon, about 41 percent of the time. In addition to that, Mr. Speaker, that really does not say much compared to the 1,128 people who were actually wounded and/or killed by gunshots in 2013 in our great city. I rise to ask my colleagues to not concur with HB 80 because those alarming or what should be alarming statistics that I just shared with you about the unfortunate cases of violence that results in the loss of life, which includes use of an illegally-acquired firearm has not only impacted the city of Philadelphia, but it has impacted municipalities across the Commonwealth of Pennsylvania, which is why so many have passed laws commonly referred to as "the mandatory reporting requirement" for lost and stolen handguns in particular.

Now, Mr. Speaker, I was not going to reference this, but the gentlelady on my side of the aisle from Montgomery who spoke before I did, she referenced the Mafia during her remarks. And as she referenced the Mafia – I am somewhat of a movie buff – I could not help but to have a scene run through my mind from the movie called "The Godfather," in which someone responds that they are going to convince someone to act in a certain way because they are going to quote, unquote make them an offer that they cannot refuse.

Well today, Mr. Speaker, HB 80, as amended by the Senate, makes an offer that local municipalities across the Commonwealth will not be able to refuse because they cannot afford to pay the penalties, Mr. Speaker, the financial penalties, associated with HB 80 when in fact they are only attempting to respond to the crisis of public safety in their respective municipalities. I heard one of my colleagues on the other side of the aisle who spoke before me who talked about the importance of the First Amendment and the importance of the Second Amendment. And with all due respect, Mr. Speaker, I do not think that there are any in this 203-member body who do not firmly support our First and Second Amendment rights. Mr. Speaker, they are the very items that make our democracy, that make our country, that make others across the world hold us in such high esteem. But, Mr. Speaker, even those things had to be amended. They were not perfect. They did not get it right the first time around, which is why they had to make some adjustments as they went along in the process so that we can continue to make our democracy more perfect and in a way that our founders would have had it.

In addition, Mr. Speaker, I want to note that HB 80 does not make dollars and it does not make cents for municipalities across the Commonwealth. Why do I say this, Mr. Speaker? I do not know. It is an old adage from my grandmother. And I know I am pretty old-fashioned, but she would say that, "If an issue doesn't make dollars and it doesn't make cents, why would you even entertain it?" This bill does not make dollars and it does not make cents for cash-strapped municipalities, Mr. Speaker, who are attempting to address their own issues associated with public safety because we as a General Assembly have failed, and we have not been able to come together to reach some consensus agreement to help those municipalities who look to State government for their help.

So instead, Mr. Speaker, I want us to think about this offer that the local municipalities cannot refuse. A rise in costs in property taxes, they talked about education, the basic providing of services in municipalities across the Commonwealth of Pennsylvania. It is something that is of grave importance. And Philadelphia is not alone. Everywhere you go, municipalities are struggling to generate the revenue that they need to take care of their own house.

But now, but now, the most powerful lobby, Mr. Speaker, and I would not just say in the Commonwealth of Pennsylvania, but one of the most powerful lobbying groups in our nation, Mr. Speaker, has said to those municipalities, that you cannot, and if you do decide that in absence of the State responding to give you the power that you need to address the public violence and public safety crisis that you are actually feeling on a daily basis, if you attempt to use the legislative process to do that, we are going to make you pay and we are going to hit you where it hurts, and that is in the form of rare taxpayer dollars.

Finally, Mr. Speaker, I want to say to you, and I want to say to members of the listening audience that this is a perfect example of the majority having its way and the minority having its say, because when you are in the majority, Mr. Speaker, you do not have to stand up on the floor and give this explanation about why you should not concur in this bill because all we have to do is press a button and say, "yes." But what I want the public to know that when it comes to controlling the flow of illegal guns in the Commonwealth of Pennsylvania, this is not a partisan issue. No one can lay blame and say well this bill passed because of Republicans or this bill passed because of Democrats. We have some philosophical differences here, Mr. Speaker, and there will be bipartisan support for and there will be bipartisan support against, but if this bill does anything, Mr. Speaker, it should do what it has done for me. And I hope it motivates and inspires the electorate who are watching to – I do not care if it is rain, sleet, or snow, when they have the opportunity to exercise their right, they better make it to where it is going to count, to the polls on November the 4th because that is the only way that we are going to ensure that bills which I believe are unconstitutional, like HB 80, because it violates the single-subject rule – and I did make that motion in committee, but again because I am part of the minority, it failed.

Democracy works when people participate, when people are active. I hope the people of the Commonwealth of Pennsylvania, particularly in those municipalities where they have passed some version of the lost and stolen gun reporting requirement, I hope they are paying attention to these votes. I hope they are paying attention to what we are doing here today and that they go and give us our response where it matters most, and that is on November the 4th in the election.

Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate? On that question, the Speaker recognizes the gentleman from Allegheny County, Mr. Saccone.

Mr. SACCONE. Thank you, Mr. Speaker.

I rise in support of HB 80. I would like to add some perspective to some of the comments I have heard by my colleagues on this bill. The last time we debated this bill and this time -- I have heard it many, many times now today – the repeated objection to membership organizations having standing. No, I stand corrected. I have heard the repeated objection to the NRA having standing to be able to sue municipalities in these cases. And I say, "oh really, is that right? That is your objection?" Sounds really peculiar to me because when it is the ACLU (American Civil Liberties Union) or the Sierra Club or the Freedom from Religion Foundation, all the way from Wisconsin coming in here and intimidating and suing municipalities, I hear an eerie silence from the left in those cases. You know, Mr. Speaker, the well-funded antigun lobby and its minions, their solution to gun violence is to disarm law-abiding citizens by adding these local hurdles to their ability to keep and bear harms.

Mr. Speaker, I just want to say to all my colleagues and the antigun lobby, we are not the problem. Law-abiding citizens carrying their weapon are not the problem. Quit directing your solutions at us. What we need to do is stop excusing the criminals and start prosecuting them. Mr. Speaker, not one of the 247 homicides committed in Philadelphia last year was committed with a lawfully-purchased gun. Disarming responsible citizens merely makes them targets and victims. We have a right to defend ourselves and our families. As I said, we are not the problem. Most Pennsylvanians understand this. And we saw that represented in the vote we took two weeks ago. So I say let us pass this bill finally and stop local municipalities from infringing on our constitutional rights.

Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate? On that question, the Speaker recognizes the gentleman from Philadelphia County, Mr. Jordan Harris.

Mr. J. HARRIS. Thank you, Mr. Speaker.

Mr. Speaker, will the maker of the bill please stand for brief interrogation?

The SPEAKER. The gentleman, Mr. Metcalfe, indicates he will stand for interrogation. You may proceed.

Mr. J. HARRIS. Thank you, Mr. Speaker.

Mr. Speaker, I wanted to know, does the Attorney General of our Commonwealth currently have standing to sue local governments over gun laws that they believe to be unconstitutional?

Mr. METCALFE. Our legal counsel is telling me that we are not aware that she has that standing or has the ability to do that.

Mr. J. HARRIS. Really. Thank you, Mr. Speaker.

Mr. Speaker, would you please explain the clause that gives organizations standing to sue local governments.

Mr. METCALFE. So as long as the organization, as long as the membership organization, has a member in its organization that could sue, then the membership organization is allowed to sue.

Mr. J. HARRIS. Okay. Mr. Speaker, could you give me an example of a few organizations that would meet that qualification?

Mr. METCALFE. Well Allegheny County Sportsmen's League is one of the organizations that has brought a suit in the past related to the illegal firearms registry that is currently being kept by our State Police. And of course the court's harsh words and split hairs and claimed the registry was not a registry because it was not fully inclusive. That is one organization I am aware of that has brought a suit in the past.

Mr. J. HARRIS. Okay. Thank you, Mr. Speaker.

I know this, I believe this question was asked before and was a little inflammatory, but I am going to ask again. Could the Ku Klux Klan sue if they had a member who was harmed by this law?

Mr. METCALFE. No, they are a terrorist organization, do not have standing. But related to the membership organization question, this is no different than what we have currently for Wage Payment and Collection Law, which allows a civil action to be commenced by a labor organization. So it recognizes associational standing in a particular situation that is not a new concept to the law. So your labor unions are already able to do this. So this is just adding into another section of law.

Mr. J. HARRIS. Great. Thank you.

Mr. Speaker, also, do local governments have the opportunity to repeal these laws that they may have on the books before being sued?

Mr. METCALFE. Yes, they do. They would have 60 days.

Mr. J. HARRIS. Okay. Thank you, Mr. Speaker.

That concludes my interrogation.

Mr. METCALFE. Thank you.

Mr. J. HARRIS. On the bill, Mr. Speaker.

The SPEAKER. The gentleman is in order on the question, which is concurrence in Senate amendments.

Mr. J. HARRIS. Mr. Speaker, today I came to Harrisburg with a sense of excitement. As a freshman, today would be one of the last session days of my freshman term. And as an unopposed freshman, it would seem as though I would go onto a second term come January. It was a day of excitement for me, Mr. Speaker, to come to the Capitol to close out what has definitely been 2 of the best years of my life. That excitement quickly turned to sadness as we began to talk about the last-minute movements that have happened to HB 80.

Mr. Speaker, I own a firearm. So this is not for me about the Second Amendment. I legally own a firearm in this Commonwealth and understand, on both sides of the aisles, folks' desire to legally own firearms. That is not what this argument is about, Mr. Speaker. What we are opposed to do today is to allow membership organizations to sue local governments, local governments who all they have tried to do is to protect their citizens. So let us remove the Second Amendment, let us remove the pro-gun lobby and the antigun lobby from the conversation because that is not what the conversation is about. Nobody is saying that you should not have a right to own a gun. I think you should have that right. But what I do not think we should be doing is giving outside organizations the opportunity to sue our local governments. We have an Attorney General here, Mr. Speaker, and if we were really concerned about local governments adhering to State law, we could give the Attorney General the authority to make municipalities conform to the State law. We do not need this legislation to give outside organizations the opportunity to sue our local governments.

Mr. Speaker, what we are doing today, we will draw back on services that many of our young people receive from different departments of human services throughout this Commonwealth. In Philadelphia County, many young people who are in custody of the city will no longer have certain services because if our city is sued and found guilty, there will be financial ramifications. Not only will there be financial ramifications, but, Mr. Speaker, the city could be sued to pay the legal costs of the petitioner.

I said it once before, and I will say it again. This legislation is not bad, it is morally bankrupt. It is morally bankrupt as we try to bankrupt our local governments. Mr. Speaker, on my last day as a freshman in this chamber, I did not expect for us to look for ways to bankrupt our local governments. I did not expect for us to look for ways to revert and shift money from our local government coffers to the coffers of these membership organizations. I did not expect us to do this. I did not expect for us to take the most valuable resources that we have, the rare resources that we have in a local government and diverting them to these membership organizations.

![AMOTION TO TABLE!]A

Mr. J. HARRIS. And since I did not expect to do that, Mr. Speaker, I now make a motion, Mr. Speaker, that we table this bill.

The SPEAKER. The gentleman from Philadelphia, Mr. Harris, has moved to table HB 80, PN 4318.

On the question,
Will the House agree to the motion?

The SPEAKER. The only people eligible to debate the motion to table are the two floor leaders, the maker of the motion, and the maker of the bill.

The practice of the House is to allow someone to stand in for the majority leader or the minority leader. With that, I recognize the gentleman from Montgomery County, Mr. Vereb, on the motion to table.

Mr. VEREB, Mr. Speaker, I respectfully request that we oppose the motion to table.

Thank you.

![ALEAVE OF ABSENCE!]A

The SPEAKER. The Speaker turns to leaves of absence and recognizes the minority whip, who requests a leave of absence for the gentleman from Fayette County, Mr. MAHONEY, for the remainder of the day. Without objection, the leave will be granted.

![ACONSIDERATION OF HB 80 CONINTUED!]A

On the question recurring,

Will the House agree to the motion?

The SPEAKER. On the motion to table, again, the same thing applies.

I will recognize the gentleman, Mr. Frankel, from Allegheny County instead of the minority leader.

The gentleman is in order on the motion.

Mr. FRANKEL. Thank you, Mr. Speaker.

I rise to support the gentleman's motion. I think it is reasonable. I think some of what we have heard today in terms of this debate reflects the deep concerns our municipal governments have with respect to having to defend actions in an unprecedented move by empowering an organization. And I should say, in response to an earlier comment, those other, the ACLUs and others of this world bring an individual plaintiff. They do not do it as an organization.

This is unprecedented. I think we ought to be careful in terms of discussing this and it should be tabled to be considered in the next session of the legislature. Thank you very much.

On the question recurring,

Will the House agree to the motion?

The following roll call was recorded:

RC: 54 — 141

On the question recurring,

Will the House concur in Senate amendments?

The SPEAKER. Is the gentleman seeking further recognition on the question?

Mr. J. HARRIS. Yes, Mr. Speaker.

The SPEAKER. The gentleman is in order and may proceed.

![AMOTION TO REVERT

TO PRIOR PRINTER'S NUMBER!]A

Mr. J. HARRIS. Mr. Speaker, I would like to make a motion to suspend the rules to revert to the prior printer's number.

The SPEAKER. Will the gentleman state the prior printer's number, which he would seek to refer to.

Mr. J. HARRIS. One second; 2248. Say it again; 4248.

The SPEAKER. The gentleman from Philadelphia, Mr. Harris, moves to suspend the rules to seek to revert HB 80 to PN 4248.

On the question,

Will the House agree to the motion?

The SPEAKER. On the question of suspending the rules— On the question of suspension of the rules, the Speaker recognizes the gentleman from Allegheny County, Mr. Turzai.

Mr. TURZAI. Thank you very much, Mr. Speaker.

I would ask the members to oppose the motion to revert to a prior printer's number. This legislation has come over from the Senate. There is a strong consensus within the chamber to pass the legislation and get it to the Governor's desk. And I would ask the members to please vote against the motion, with all due respect to the good

member from Philadelphia.

The SPEAKER. On the motion to suspend the rules, the Speaker recognizes the gentleman from Allegheny County, Mr. Frankel.

Mr. FRANKEL. Thank you, Mr. Speaker.

I respectfully urge my colleagues to support the gentleman's motion to suspend.

This bill, HB 80, is far afield from its original intent. The amendments in the Senate are insignificant, I think conflict with what the original intent of this legislation was. Reverting to HB 80 in its original form would give us a clean vote to deal with the whole committee process that went into this bill. We should support the motion to revert to a prior printer's number.

Thank you, Mr. Speaker.

On the question recurring,
Will the House agree to the motion?

The following roll call was recorded:
RC: 51 — 144

On the question recurring,
Will the House concur in Senate amendments?

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?
On that question, the Speaker recognizes the gentleman from Bucks County, Mr. Santarsiero.
Mr. SANTARSIERO. Thank you, Mr. Speaker.

Mr. Speaker, there is no other area of policy where a constitutional right that receives an absolutist approach as we often hear with respect to the Second Amendment. Mr. Speaker, I support the Second Amendment. I support the Third Amendment. I support all of the Bill of Rights. But, Mr. Speaker, we recognize as a nation, and our courts have held repeatedly over time that the rights enumerated in our Constitution, both at the Federal and State level, have limitations. And when I hear our colleagues rise on the floor of the House and repeatedly tell us that because a city or town in this Commonwealth passes a law to require that gun owners report to the police if their firearm is lost or stolen that that somehow infringes upon that gun owner's Second Amendment rights, I am bewildered. How in fact does that infringe on anyone's rights?

It is a public safety issue, Mr. Speaker, no less than prohibiting someone from yelling "fire" in a crowded theater, the famous example used to illustrate the fact that our First Amendment speech rights in fact do have limitations, no less so with the Second Amendment.

Requiring that kind of public safety in those towns and cities across the Commonwealth that choose to do so does not infringe on anyone's rights. And yet we are poised today, Mr. Speaker, we are poised to allow the National Rifle Association to sue those towns and cities that have the courage to act on behalf of their citizens in the absence of action by this legislature and our Governor here in Harrisburg.

Mr. Speaker, it is wrong. And we should not be supporting a bill that does that. But there is a more fundamental problem with this particular bill, Mr. Speaker. And that more fundamental problem is the way in which this particular vehicle, this particular bill, was amended in the Senate. This bill started out life as many of the previous speakers have noted, as a bill that dealt with the crime of theft of secondary metals. And now suddenly, Mr. Speaker, it includes provisions dealing with the ability of an organization like the NRA to sue towns and other and cities throughout the Commonwealth that choose to pass reasonable gun safety legislation. Moreover, the title of this bill, Mr. Speaker, has nothing to do with that ability to go and sue our towns and cities.

![ACONSTITUTIONAL POINT OF ORDER!]A

Mr. SANTARSIERO. So, Mr. Speaker, it is clear to me, and I trust if this bill passes today it will be clear to the courts in Pennsylvania, that this bill as currently composed violates Article 1, section 3, of the Pennsylvania Constitution, the single-subject rule, and as a consequence, is unconstitutional.

And so, Mr. Speaker, I move that under Article 1, section 3, of the Pennsylvania Constitution that HB 80 is in fact unconstitutional.

The SPEAKER. The gentleman, Mr. Santarsiero, raises the point of order that HB 80, PN 4318, is unconstitutional.

The Speaker, under rule 4, is required to submit the question affecting the constitutionality of a bill to the House for decision, which the Chair now does.

On the question,
Will the House sustain the constitutionality of the Senate amendments?

The SPEAKER. The Speaker recognizes the gentleman, Mr. Santarsiero, on the question of constitutionality.

Mr. SANTARSIERO. Thank you, Mr. Speaker.

As I just said a moment ago, there are two prongs to the test of the single-subject rule under Article 1, section 3, of the Pennsylvania Constitution. The first one is that all the subject matters contained in the particular piece of legislation are germane to one another. Mr. Speaker, there is no question that the proposal to allow organizations like the NRA to sue our municipalities because they pass gun safety legislation is not germane to the provision, the original provision of the bill, regarding the theft of secondary metals.

The second prong, Mr. Speaker, has to do with whether the title of the original bill has anything to do with that new subject matter. And there is nothing in the title of HB 80, Mr. Speaker, that has anything to do with allowing organizations like the NRA to sue our municipalities that pass gun safety legislation.

So for both of those reasons, Mr. Speaker, this bill, as currently composed, fails the single-subject test and is in fact unconstitutional under Article 1, section 3, of the Pennsylvania Constitution.

The SPEAKER. On the question of constitutionality, the Speaker recognizes the gentleman from Lancaster County, Mr. Cutler.

Mr. CUTLER. Thank you, Mr. Speaker.

Mr. Speaker, the gentleman raises the issue of constitutionality. And I would like to highlight some of the already-existing case law to this point. Mr. Speaker, in Pennsylvanians Against Gambling Expansion, also known as the PAGE case, the Pennsylvania Supreme Court found that the subject of gaming, with several minor exceptions complied with the single-subject rule. In other words, does it have a single unifying theme? And I would answer that it does.



Furthermore, and more recently, in Washington versus the Department of Public Welfare, the theme of improving the effectiveness and efficiency of delivery of human service programs to people in need was determined to be a single subject. And the Commonwealth Court went on to explain that the subject – and this is very important – that the subject should not be confused with the content of the underlying issues.

A single subject can in fact encompass many subtopics. And, Mr. Speaker, we have one of those cases before us in this bill. HB 80 has a single subject. It deals with crimes and regulations which affect the ability to own firearms, which directly involves the Second Amendment. Within that subject, there are several subtopics including the creation of two new offenses which can preclude the purchase or possession of firearms under Federal law, because under Federal law, a misdemeanor of the first degree or above can implicate your right to own a firearm.

Providing firearms information is also included in this bill as it relates to mental health records. That is also an important distinction relating to the ownership of a firearm. That is something that this administration undertook in 2013 under the leadership of the gentleman from Montgomery County. And I think it is important that we recognize that that also deals with the ownership and the rights of those who can own firearms. And furthermore, it does provide remedies for unauthorized local regulations of firearms.

If we look at the Washington versus the Department of Welfare case, I believe that they do a very good job of summing it up. "To satisfy the single subject rule, a bill may amend several statutes so long as the amendments pertain to the same subject,..." and they reference the PAGE case. "...On the other hand, having all amendments apply to a single codified statute does not, in and of itself, satisfy the single subject rule...." That is the test that we have before us, and in that particular case, "...Act 80 did not confine its statutory changes solely to the Public Welfare Code. What matters," again quoting from the court, "what matters, however, is whether a single unifying theme can be found. Our job," this is the Court speaking, "our job is not to micromanage the legislature but to give effect, if possible, to the presumption of constitutionality" that is "enjoyed by Act 80." Mr. Speaker, what we are dealing with here is precisely that. It is a conglomeration of several ideas all dealing with the ownership of firearms, and for that reason this motion should be defeated.

Furthermore, I think it is worth highlighting but in the Spawn versus Zoning Board of Adjustment case, they explained the subject should not be confused with content and any single subject can encompass many subtopics. That is precisely what this case does and precisely why the bill is in order and should be supported. Thank you, Mr. Speaker.

The SPEAKER. On the question of constitutionality, the Speaker recognizes the gentleman from Lancaster County, Mr. Sturla.

Mr. STURLA. Thank you, Mr. Speaker.

Mr. Speaker, would the majority leader rise for a brief interrogation because he also made this same

argument about Constitutionality in the Rules Committee, and I would like to get something verified on the record.

The SPEAKER. Will the gentleman state, whom are you asking to interrogate?

Mr. STURLA. The majority leader.

The SPEAKER. The gentleman, Mr. Turzai, indicates he will stand for interrogation. You may proceed.

Mr. STURLA. Thank you.

Mr. Speaker, in the Rules Committee today, you made the same argument as to why you thought this did not violate the single-subject rule as was just made from the gentleman from Lancaster County. And I guess what I want for a clarification standpoint so that, you know, I also believe that the courts will find that this does violate the single-subject rule. However, in the event that they do not, as we move forward with future proceedings in the House, would it be my understanding that because of the way you interpret this as to say that because the initial bill, even though I do not believe its purpose was to restrict gun ownership by amending the scrap metal bill but because it did increase penalties, therefore it could affect gun ownership therefore the unifying theme was that an increased penalty was the single subject. Is that correct? Is that my interpretation of what is being said?

Mr. TURZAI. Sir, we concur in the remarks put on the record by the good gentleman from Lancaster County.

Mr. STURLA. So then I guess my question is, if increased penalties affect, say, someone's ability to stand for office, that then Election Code bills would in fact be a part or would be fair game or would have, had they been introduced in an appropriate and timely manner, would have been able to be included in this bill and still be part of a single subject because after all the increased penalty affects someone's ability to stand for elected office?

Mr. TURZAI. Sir, we do not engage in hypotheticals or in speculation. Before us is HB 80, and in speaking to the specifics of HB 80, we would concur in the remarks by the good gentleman from Lancaster County that has already spoken on constitutionality.

Mr. STURLA. Thank you, Mr. Speaker.

If I could, on the bill.

The SPEAKER. The gentleman is in order on the question of Constitutionality.

Mr. STURLA. Thank you, Mr. Speaker.

Mr. Speaker, as I said before, I believe that the courts will find that this does violate the single-subject rule, because the premise here, at least as it was described, was that simply the fact that there is an increased penalty constitutes the single subject of therefore you cannot own a gun, therefore gun laws come into play here. It also would affect Election Code bills, because you cannot stand for office if you have certain offenses against you. It would also open up the ability to talk about daycare laws in legislation like this because you cannot become a daycare worker if you have certain offenses against you. Mr. Speaker, it is at best a far, far stretch to claim that this is a single subject. And it also implies that the original intent of the secondary metals bill was to preclude someone from owning a weapon by increasing the offense. I will contend that that was never a discussion when we discussed that bill originally, that it was never a discussion or listed as an intent in the legislation itself when it was never discussed or listed as an intent in the cosponsorship memo that got circulated. You know, if in fact that was the intent, then it should have been expressed as an intent as to why the secondary metals bill was being amended in that fashion. I believe it was to prevent the theft of secondary metals and that that was the intent of that initial bill. I am not sure that passing laws about guns necessarily affect the intent to steal secondary metals.

So for that reason I believe that this bill does violate the single-subject rule, but I also think that if in fact we contend that it does not, that we set a rather scary precedent around here about what does and does not violate the single-subject rule, because I think you can, as was pointed out here, make sure that just about anything would meet the standard that is being held up here today as not violating the single-subject rule.

![APARLIAMENTARY INQUIRY!]A

Mr. STURLA. I encourage a— Would it be a "yes" or a "no" vote to say that this is not constitutional? Mr. Speaker, a parliamentary inquiry. Would a "yes" or "no" vote—

The SPEAKER. Those voting "aye"— The way I will read the question is, those voting "aye" will vote to declare the bill to be constitutional; those voting "no" will vote to declare the bill to be unconstitutional.

Mr. STURLA. Okay. Thank you, Mr. Speaker.

Then in that case I encourage a "no" vote. Thank you, Mr. Speaker.

The SPEAKER. On the question of constitutionality, the Speaker recognizes the gentleman from Philadelphia County, Mr. Cohen.

Mr. COHEN. Mr. Speaker, I also urge a "no" vote on the constitutionality of this. It is a violation of the single-subject law. It is certainly possible the court can do anything, but if the single-subject rule is to mean anything, then the court will have no choice but to rule it unconstitutional.

For the life of me I do not understand why the solid pro-NRA majority in this House and the State Senate gave people the opportunity to raise the single-subject rule here. Obviously, this is going to be well litigated. I would think that the best course of action for those people who support this legislation will be to join with those of us who oppose it and rule this version of this bill unconstitutional. There will be plenty of time the next session to pass a constitutional version of the legislation if you desire to pass.

Again, I would urge a "no" vote on constitutionality.

The SPEAKER. On the question of constitutionality, the Speaker recognizes the gentleman from Cumberland County, Mr. Bloom.

Mr. BLOOM. Thank you, Mr. Speaker.

I rise to oppose the motion to find the bill unconstitutional, and I simply wanted to point out that the maker of the motion indicated that perhaps the bill in its current form would violate the clear title provision of the Constitution that requires that the subject be clearly expressed in the title of the bill, and I just wanted to briefly go over the requirements for clear title.

Under the PAGE case that was cited earlier by the gentleman from Lancaster County, Mr. Cutler, the purpose of the clear title requirement is to put the members of the assembly and others on notice by the title of the bill so that they might vote on it with circumspection. Only reasonable notice is required. It is not required to be an index or a synopsis of the bill. And in order to violate the clear title provisions of the Constitution, a party would have to demonstrate that either the legislators or the public were actually deceived as to the bill's contents or the title would have to be so deficient that no reasonable person would have been on notice as to the bill's contents.

Mr. Speaker, the title of the bill now as it is stated in its current printer's number states, "Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, IN BURGLARY AND OTHER CRIMINAL INTRUSION, FURTHER PROVIDING FOR THE OFFENSE OF CRIMINAL TRESPASS, defining the offense of theft of secondary metal...prescribing penalties; AND, IN FIREARMS AND OTHER DANGEROUS ARTICLES, FURTHER PROVIDING FOR PENNSYLVANIA STATE POLICE AND FOR LIMITATION ON THE REGULATION OF FIREARMS AND AMMUNITION." Mr. Speaker, clearly this provides adequate notice that there would be no deception as to what the contents of this bill are and there would be no deficiency in the ability of a reasonable person to be on notice as to the bill's contents.

Therefore, I would urge a "no" vote on the motion to declare the bill unconstitutional. Thank you, Mr. Speaker.

The SPEAKER. On the question of constitutionality, those voting "aye" will vote to declare the bill to be constitutional; those voting "no" will vote to declare the bill to be unconstitutional.

On the question recurring,
Will the House sustain the constitutionality of the bill?

The following roll call was recorded:
(141--54)

On the question recurring,
Will the House concur in Senate amendments?
![ACONSTITUTIONAL POINT OF ORDER!]A

The SPEAKER. Is the gentleman from Bucks County, Mr. Santarsiero, seeking further recognition on the question?

Mr. SANTARSIERO. I am, Mr. Speaker. Thank you.

The SPEAKER. The gentleman is in order and may proceed.

Mr. SANTARSIERO. Thank you, Mr. Speaker.

Notwithstanding that vote, Mr. Speaker, I know I feel very strongly will be vindicated in the courts as we were with Act 13. It is not the first time that this legislature, unfortunately, in the last 4 years has passed unconstitutional legislation as we are poised to do tonight, but there is yet another basis for finding that this proposed piece of legislation is unconstitutional.

In addition to the one we just debated under Article III, section 3, under Article III, section 1, the original purpose of HB 80 has been changed by the additional language that was inserted in the Senate with respect to the ability to sue our municipalities for passing reasonable gun safety legislation.

And so, therefore, I move to find HB 80 unconstitutional under Article III, section 1, of the Pennsylvania Constitution.

The SPEAKER. The gentleman from Bucks County, Mr. Santarsiero, raises an additional point of order

that HB 80, PN 4318, is unconstitutional.

The Speaker, under rule 4, is required to submit questions affecting the constitutionality of a bill to the House for decision, which the Chair now does.

On the question,
Will the House sustain the constitutionality of the bill?

The SPEAKER. Is the gentleman seeking recognition?

On the question of constitutionality, the Speaker recognizes the gentleman from Lancaster County, Mr. Cutler.

Mr. CUTLER. Thank you, Mr. Speaker.

For those of us here in the chamber tonight and those who are listening will recognize that the arguments are very similar. Mr. Speaker, any time that we deal with the idea of single subject or clear title and, in this case, original purpose, the arguments are essentially the same.

The bill as amended conforms with the original purpose of the bill as it was introduced. Both the original bill as well as the subsequent amendments deal with an address crimes and regulations which affect the ability to own a firearm, which also affects the Second Amendment or Article I, section 21, of our own Constitution.

It established, the original bill established the theft of secondary metals, graded the offense as a misdemeanor of the first degree, $200 to $1,000 fine or a felony, $1,000 or more for third or subsequent offenses, and these penalties in and of themselves by definition under Federal law preclude firearm ownership.

Currently the bill contains language concerning the theft of secondary metals and also contains a provision regarding the trespass with the intent to steal secondary metals, which is a misdemeanor of the first degree, which also precludes firearm ownership under Federal law as well as language requiring firearms information be provided to the Federal government regarding mental health records, which also precludes firearm ownership and it does provide remedies for unauthorized local regulation of firearms.

Mr. Speaker, it is very clear, just as the House previously voted, for the bill did not violate the single subject or the clear title. I would also urge that we oppose this motion and uphold the original purpose of the bill. Thank you.

The SPEAKER. On the question of constitutionality, the Speaker recognizes the gentleman from Bucks County, Mr. Santarsiero.

Mr. SANTARSIERO. Thank you, Mr. Speaker.

Mr. Speaker, it is tortured logic to argue that a bill dealing with the theft of secondary metals has anything to do with firearm ownership, and it is completely circular to come back and say, well, we also amended HB 80 from its original form to include a provision with respect to providing mental-health records with respect to firearm ownership and therefore it is all the same. HB 80 did not have that provision in it either, Mr. Speaker, so that cannot be used as the basis for arguing that in fact the subject matter has not been changed.

Mr. Speaker, this bill as written is clearly unconstitutional as the gentleman from Philadelphia argued earlier. If those who are seeking to have the prohibition for municipalities to pass gun safety legislation enacted in law in Pennsylvania, what was previously HB 2011, then they should wait until the next session and do it then without proposing a constitutionally infirm bill.

I urge the members to recognize the constitutional problems in this bill and vote "no" that it is not constitutional, but I am confident that if we are not successful tonight on that vote, that Pennsylvania courts will reach that conclusion. Thank you.

The SPEAKER. On the question of constitutionality, those voting "aye" will vote to declare the bill to be constitutional; those voting "no" will vote to declare the bill to be unconstitutional.

On the question recurring,
Will the House sustain the constitutionality of the bill?

The following roll call was recorded:

(140–55)

On the question recurring,
Will the House concur in Senate amendments?

The SPEAKER. On that question, the Speaker recognizes the lady from Philadelphia County, Ms.

DeLissio.

Ms. DeLISSIO. Thank you, Mr. Speaker.

Mr. Speaker, on the bill?

The SPEAKER. The lady is in order on the question of concurrence in Senate amendments.

Ms. DeLISSIO. Correct, Mr. Speaker. Thank you.

On concurrence.

The SPEAKER. Correct.

Ms. DeLISSIO. Mr. Speaker, one argument I hear often is that if we simply enforce the State laws that are on the books, we would not have this problem, and I maintain, Mr. Speaker, that this problem is not that simple. That statement really oversimplifies this because if indeed by just enforcing what was already State law, none of the local municipalities – and I understand there are several dozen of them – would have taken the actions that they have taken over the past years in order to put local ordinances on their books as it pertains to public safety of their citizens. So, Mr. Speaker, that is the first point that I would like to make. This argument is not that simple.

Number two, the Commonwealth, Mr. Speaker, has the obligation to protect all of its citizens, and to that end, Mr. Speaker, I maintain that there is nobody being adversely impacted by these local ordinances that are on the books for the reasons of public safety, but most definitely, Mr. Speaker, we can point to many, many, many instances of our citizens who have been hurt by illegal guns in particular, and since it is our obligation to ensure the safety of all of our citizens, we are favoring one set of citizens over the other. So I maintain that clearly one group has been harmed when in fact the other group really has not because nobody's second amendment rights have been violated even though that is a refrain that is made consistently but with no real evidence of what that harm has been.

And number three, Mr. Speaker, if this is indeed about standing, when this was originally HB 1243 and I asked the question about why we were allowing a private membership organization to have standing, as you may recall, I got sort of not a great answer but subsequently got maybe a little bit of a better answer, and if this is indeed about giving somebody standing so they can file suit, I do not understand, Mr. Speaker, and I have really tried to understand how we would award that standing to a third party, private membership organization versus a government entity, something like the Attorneys General Office, because indeed then a government entity has the responsibility of ensuring that all of our citizens, the welfare of all of our citizens is taken into consideration. And for those three reasons, Mr. Speaker, I am a "no" vote on concurrence and sincerely hope that the majority of my colleagues will vote similarly.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate? On that question, the Speaker recognizes the gentleman from Philadelphia County, Mr. Cohen.

Mr. COHEN. Thank you, Mr. Speaker.

Mr. Speaker, one of the best statements on the folly of this bill was made by Mayor Michael Nutter, and it was sent to the members of the Philadelphia delegation. Mayor Nutter ran for office on a pledge to reduce crime, and certainly crime has gone down in his administration. He is very focused on this subject. Mayor Nutter writes, "I am writing to express profound disturbance at the provisions added in the Senate to HB 80 regarding standing and various monetary costs in lawsuits to invalidate firearms ordinances believed by plaintiffs to violate preemption provisions in 53 Pa...." Commonwealth statutes "...2962(g). This Bill is now before the House.... Respectfully, but in the strongest possible terms, I urge the House not to concur in these amendments.

"Gun violence represents a particularly tragic epidemic in poorer communities in cities like Philadelphia. Of the 247 murders Philadelphia witnessed in 2013, 201 of them, (81.4) percent were by gunshot. And among all murders, 191 of the victims were black, 224 were male, and 160 were under age 34. Where a murder occurred in the domestic violence context, a gun was the most frequently-used weapon, used about 41% of the time. And this says nothing of the overall terror wrought on our communities by gunfire; in 2013, there were a total of 1,128 people wounded or killed by gunshots.

"Parents, family members, and leaders are naturally compelled by their concern for their children, loved ones, and fellow community members to do everything in their power to combat some of the shootings that destroy lives and hollow out communities. It is squarely at some of these responses by the community that HB 80 is now aimed. The standing and attorneys' fees provision of HB 80 simply raises stakes for local governments, and the communities they serve, for trying to do something about illegal gun violence.

"In Philadelphia, we have implemented ordinances and policies such as requirements regarding lost or stolen firearms, and possession of firearms in City properties, that addressed the issue of proliferation of unlawful guns, while, we believe, staying within the statutory framework set out by the General Assembly. While any law can be conducted in court, no one, much less resource-strapped municipalities and their taxpayers should be singled out to bear markedly increased risk for trying to protect human life. Indeed, under HB 80, it will be riskier for the city to act on matters of unlawful gun possession and violence than to act on zoning. No one would reasonably argue that

human life should be riskier to defend than a setback" in zoning.

"All must concede that there is a balance to be struck between the right of law-abiding citizens to keep and bear arms and reducing the proliferation of illegal firearms and the deaths that they cause. The General Assembly should not facilitate lawsuits against local governments simply to thwart their modest attempts at striking a balance that may save lives. Article I, Section II of the Constitution of Pennsylvania provides that a court shall be open to all and provides the remedies in due course of the law. No more is necessary to settle disputes about the validity of ordinances and yet this bill would give certain litigants special treatment, and impose new costs on taxpayers. And it seeks to do so where our local communities have acted only to protect their sons and daughters.

"I therefore respectfully urge the House not pass HB 80 with these onerous provisions in it."

Mr. Speaker, Mayor Nutter is certainly an expert witness on crime. He has been in city government for about 30 years now. His administration has done everything it can to reduce crime. I would argue that his words be heeded and that all members carefully consider their actions and that hopefully more people will vote "no" on HB 80. Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Lancaster County, Mr. Cutler.

Mr. CUTLER. Thank you, Mr. Speaker.

Mr. Speaker, one of the previous speakers spoke regarding the limitations on constitutional rights and specifically used the example of whether or not you can yell "fire" in a theater. I believe that is an excellent example, because in that particular case we punish the offender, we punish the individual who screams fire by having laws in place that discourage that conduct, and I would offer that we should attack the issue of gun violence in the same way. Those individuals who break the law using firearms should be punished to the fullest extent of the law.

Mr. Speaker, while it is accurate that there are limitations on constitutional rights in some cases, we overwhelmingly seek to encourage individuals through punishment not to engage in that activity. We do not adversely impact the rights of every other individual in the room.

Furthermore, I think that there is an important piece of this debate that has been missed. Up until this point there has been failure to recognize the limitations that have been placed on municipalities by this General Assembly regarding the breadth of their authority. Furthermore, we are failing to recognize those instances or ordinances such as are being argued for today are in fact already declared unconstitutional. The gentleman from Armstrong County referenced the Heller case, which was a United States Supreme Court case, and I think it is important again to revisit the current status of the law.

Mr. Speaker, this bill as proposed would amend the Uniform Firearms Act to require that the Pennsylvania State Police transmit the mental health data within 72 hours of receipt. I think it is an excellent improvement. Currently the State Police only may share, it is not a shall, it is a may, and it is not required. Until recently this data was not even shared. In early 2013, at the encouragement of our colleague from Montgomery County and through his efforts, this information is now being uploaded. It is important that we codify this so that future administrations do not again neglect this important duty.

Furthermore, the bill amends section 6120 of the Uniform Firearms Act to provide a remedy if the party prevails in a civil action against a municipality that has unlawfully promulgated local firearm regulations. Mr. Speaker, right now under existing law these municipalities cannot promulgate these ordinances. They have been prohibited to do such since 1974, and this bill does not in any way modify the scope of preemption that already exists under existing law.

Mr. Speaker, municipalities have limitations to their authority and this is one of them, but this preemption is not self-enforcing. In fact, many of us have heard the statement you cannot fight city hall because they have the mass resources of the taxpayers behind it. Mr. Speaker, in this case citizens can already challenge unconstitutional ordinances based on their constitutionality if these ordinances are enforced at the local level. That remedy is also already available to each and every one of us as a citizen, but what this bill does change is it provides a remedy for the high cost involved in pursuing litigation, those very same high costs that the opponents of the bill have been arguing will bankrupt their communities.

Mr. Speaker, we as citizens must safeguard our constitutional rights particularly against those municipalities which knowingly and purposely violate the current statutory preemption. Mr. Speaker, this is not my own personal opinion, this is the opinion of our own Supreme Court. Quoting from the Ortiz case, Ortiz versus Commonwealth, they said in 1996 "Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern, The Constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except for Philadelphia and Pittsburgh, where it may be abridged at will, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of

Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils, is the proper forum for the imposition of such regulation." Mr. Speaker, this is the forum where these issues should be decided. We are the ones who will vote on that just as we have tonight.

And if you look a little further back in the Marbury versus Madison, which is, for many of us that went to law school, one of the first cases that we learned about, Justice Marshall said very clearly, "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of laws, whenever he receives an injury. One of the first duties of government is to afford that protection." This bill will provide that. "In Great Britain the king himself is sued in the respectful form of a petition and he never fails to comply with the judgment of his court." Justice Marshall later went on to explain, "The government of the United States has been emphatically termed the government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." This is precisely what this bill does. It empowers us as individuals to challenge those ordinances which are unconstitutional, and, Mr. Speaker, for me, it highlights a more troubling trend, that in which public officials choose which laws they wish to enforce and not enforce.

Mr. Speaker, lastly and in closing, it has been raised that issue of attorneys' fees is inappropriate, but I think that the case law and existing laws that we already have on the books as interpreted by the courts clearly show that we as individuals have rights. It is not unheard of to offer attorneys' fees in cases involving constitutional rights. We already do that with the Americans With Disabilities Act and we already do that with the Civil Rights Act, to empower those individuals to go find legal representation so that they can adequately defend their rights in court.

For all of those reasons, I urge a concurrence vote on HB 80 and I ask for the support of the underlying bill and the protections of our liberties. Thank you.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Allegheny County, Mr. Gainey.

Mr. GAINEY. Thank you, Mr. Speaker.

I rise today to oppose HB 80, and I rise for a couple of different reasons, but the number one reason is that we are asking – we are trying to do something to the local that we ask the Federal not to do to us and that is preempt laws. We always talk about State laws. When we talk about the health-care bill, we talk about the Federal government not preempting State laws and allowing us to do what we want to do in regards to health care. But today as I stand here, we want to preempt local laws for gun rights that do not make sense, that we are not even sure it is constitutional. We are in a situation right now where we know that the killings that are happening in Philadelphia and Pittsburgh and some of you all might think, just lock them up and throw away the key. It is not that easy. We have a situation where we can table this, as my other colleagues have said, and work on a bill that is beneficial to the people of Pennsylvania. We should not preempt local governments when we do not want the Federal government to preempt State rights. We have an opportunity to do something that is good for the people. We see what is going on, but we continue to serve big business instead of serving the people of Pennsylvania. We continue to look on the news and see no matter what happened, people are getting killed and we continue to do the same old same old because we want to serve a group. Give them the right to sue municipalities as if they know what is right for public safety and we know they have no clue, they have no clue to what they are talking about. And we as a General Assembly, we have the obligation to do what is right for the people of Pennsylvania. Let us not be hypocritical. If we do not want the Federal government to do that to us, let us not let us do that to local authorities. Give us the opportunity to protect our citizens. Give us the opportunity for public safety. If we are not sure if this is even Constitutional, let us go back to the table and work on something that will work for the people of Pennsylvania and not for big business, because if big business was for the people, they would make sure they do something that is not about death but about life. They would not call it God, guns, and glory. They will call it God, guns, and life. So let us get it correct. Let us do something for the people and vote "no" to HB 80.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Montgomery County, Mr. Bradford.

Mr. BRADFORD. Thank you, Mr. Speaker.

I rise also in opposition to HB 80 and just want to make one clarifying point. I know the gentleman from Lancaster spoke eloquently going back through the judicial history of judicial review to Marbury versus Madison, and he talks about there is already a preemption law, but a law without recourse is no law at all. And that would be a good point except obviously there is the right of any individual who is an aggrieved individual to go into court. That exists today. That has existed since the existence of the preemption law in Pennsylvania. What is different about this bill, what is so insulting, what is so incendiary, what is so disrespectful to the communities like those that I represent that have these bills on the books is this is not about an individual citizen of that community coming forth who has been aggrieved, who has been wronged by, as the gentleman says, the sovereign or the king going back to old English law. This is not about old English law. This is about the reality of what is happening in our communities and

our cities and about gun violence. This is about communities trying to do the right thing. But the gentleman's description of the standing doctrine is so misguided, and again, I respect him deeply and tremendously and I think he is astute and knowledgeable, but I think he does understand that any aggrieved individual has the right to seek judicial review for a wrong and to have that wrong addressed. But what this bill does and again what is so incendiary is it allows third parties – and let us be clear, we all know who that third party is, and that is not questioning anyone's motives. It is as obvious as can be, it is big money special interests. Those interests who would gladly hammer our little municipalities who are trying to do right by their citizens and go in and seek attorneys' fees and court costs and so forth in order to scare them in order to doing what they feel is appropriate and right.

Now, there is recourse, but it is not recourse for the NRA, and that is what this is about. This is a special gift, a favor. This is a wrap it up in a bow on our final day of session and send it to our friends at the NRA and tell them you can sue any municipality in Pennsylvania and you can make that municipality pay. That is not just bad public policy, it is disgraceful, and for that reason, Mr. Speaker, I ask for a "no" vote on HB 80. Thank you so much.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Delaware County, Mr. Kirkland.

Mr. KIRKLAND. Thank you, Mr. Speaker.

Mr. Speaker, I was not going to speak on this, but as I sat there and listened, what came to my mind was my 11 grandchildren.

Mr. Speaker, I rise in opposition to HB 80 on concurrence and this is the reason why. Mr. Speaker, I have lived in the city of Chester all my life. I have raised my family there. As a matter of fact, my sister continues to live in the House that we grew up in and I live right around the corner from her.

Many of you may or may not have heard in the latest news that the city in which I reside, Chester, Pennsylvania, was dubbed the most violent crime-ridden city per capita in the Commonwealth of Pennsylvania. Now, that is not a proud distinction that I like to wear. The fact of the matter is, Mr. Speaker, years ago, years ago in the city of 37,000 maybe 35,000 people that was not the case. Years ago I could walk the streets and my grandkids could walk the streets and you would see persons on their porches playing and playing jump rope and everything else, but that is not the case now, unfortunately. And many a time my family has asked me, why do you stay? Why do you stay in a city that has become so violent? And I tell them I stay because it was an inheritance given to me by my parents, an inheritance that I plan on keeping and restoring some calm to. And one of the ways that we can do that is when we work with our local governments and give them the tools that are needed so we can bring some peace to our communities.

Mr. Speaker, in my very community I have had the undesirable task of witnessing young men murdered on the streets and just recently a young lady by the age of 25, at the age of 25 gunned down on the streets.

Now, I heard one of my colleagues on the other side say there is no such thing as an illegal gun. Well, maybe when you purchase them in your part of the Commonwealth, it is not illegal, but when you put it in your car or put it in someone else's car and drive it to my city, in my county, and sell them out of that same car to young people 13, 14, 15, 16 years old, it is now illegal.

Mr. Speaker, I have been here 22 years, 22 years, and I heard my colleague from Philadelphia say that he thought that this would be his proudest day standing here behind the microphone being able to celebrate 2 years and saying, you know, he has had an excellent time and things were moving forward, but I concur with him when he says this is a sad day in the Commonwealth of Pennsylvania. And I am not trying to appeal to your political side. I am not trying to appeal to any of those sides. I am trying to appeal to your heart side. We are losing young people each and every day. Someone once said to me— Mr. Speaker, they need to hear this one right here, because I have got to say this. Could I get a little more quiet, Mr. Speaker?

The SPEAKER. Okay.

Mr. KIRKLAND. Thank you.

Someone once said to me, a legislator in this House some years ago, a Republican colleague of mine, said that if the shoe was on the other foot, if this were, if these were white children being gunned down on the streets, that this would be a national movement, a national issue. That is what one of my colleagues on the other side said to me. And guess what? I agree.

Mr. Speaker, this is wrong. This is bad for Pennsylvania. We are taking, we are taking the opportunity for our community such as Chester to right itself, to put in place laws that will disallow illegal guns to be purchased and handed out in our community, put in place laws that will stop the killing, and this body is saying no. Mr. Speaker, this is wrong. So I am not speaking to your political sense. I am hoping you have got some moral sense and vote "no" on HB 80 on concurrence.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Philadelphia County, Mr. Thomas, for the

second time.

Mr. THOMAS. Mr. Speaker, I just stand to concur with my colleague from Delaware County, and this is not the way we want to close this session out. This is not the way we want to do it.

We all have to go back to our communities. I do not want to have to talk to another family this evening about his or her daughter or mom being gunned down on the street, and I know that in other parts of the State things are different, but, Mr. Speaker, I guess as Thomas Jefferson used to say it very eloquently, our primary role is the preservation of life not the destruction of life. And it should be possible suburban, rural, and urban Pennsylvania come together in a way that preserves life rather than results in the destruction of life, and if we move forward on HB 80 tonight, we will in effect create a climate of destruction in our local communities.

And, Mr. Speaker, this whole issue about constitutionality, we know if you look at your laptops and look at the thing, the subject of this bill, there is nothing in this subject, nothing in this subject about whether or not municipalities are complying with the uniform firearms law and scrap metal. That is not in there. And so we can just kind of realize that we made a mistake and it is possible to correct it before we leave here this evening. Let the people of Pennsylvania know that this General Assembly, whether you come from north, south, east, or west, whether you come from rural, urban, or suburban Pennsylvania, whether you are White, Black, yellow, brown, or green, let the people of Pennsylvania know that because my mama was not shot down or because I do not know of a baby that is dead today because of illegal guns – and somebody mentioned that there are laws that deal with illegal possession. Well, for those of you that do not know, in Pennsylvania if you are out on the street with a gun illegally and not involved in any other crime, do you know it is no more than a second-degree misdemeanor? It is no more than a second-degree misdemeanor in Pennsylvania. So there is no real key in the law about walking down the streets with an illegal gun.

But be it as it may, Mr. Speaker, let us close this term out with letting the people of Pennsylvania know that we care about the hardworking law officers, police officers, mayors, township managers, borough managers, county commissioners, let them know that we care about what they are trying to do in their communities because there are too many communities that are on fire right now as a result of gun violence. Do not leave here tonight saying to them that we do not care about what they are trying to do at the local level, and as soon as the next term starts, let them know that we are going to be a partner in helping to bring an end to the senseless gun violence that exists in the Commonwealth of Pennsylvania. But let us not close the night out by saying to the mayors and to these other leaders that they are not doing the right thing in trying to bring an end to senseless gun violence in their particular communities. Thank you, Mr. Speaker.

The SPEAKER. The question is, will the House concur in the amendments inserted by the Senate?

On that question, the Speaker recognizes the gentleman from Butler County, Mr. Metcalfe.

Mr. METCALFE. Thank you, Mr. Speaker.

Based on the body language of the chamber, I just ask for a "yes" vote. Thank you, Mr. Speaker.

On the question recurring,

Will the House concur in Senate amendments?

The SPEAKER. Agreeable to the provisions of the Constitution, the yeas and nays will now be taken.

(Members proceeded to vote.)

![ALEAVE OF ABSENCE!]A

The SPEAKER. The Speaker turns to leaves of absence and recognizes the majority whip, who requests a leave of absence for the gentleman from Bucks County, Mr. FARRY, for the remainder of the day. Without objection, the leave will be granted.

![ACONSIDERATION OF HB80 CONTINUED!]A

On the question recurring,

Will the House concur in Senate amendments?

The following roll call was recorded:

(138--56)



Roll Calls

## Pennsylvania House of Representatives Roll Calls
## Session of 2013 - 2014

**Details for RCS# 1818**

Monday Oct. 20, 2014
6:25PM
House Bill 80 PN 4318
CONCUR

**Summary**

| | |
|---|---|
| YEAS | 138 |
| NAYS | 56 |
| LVE | 8 |
| N/V | 0 |
| TOTAL | 202 |



**Prime Sponsor**

METCALFE

**Short Title**

An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, in burglary and other criminal intrusion, further providing ...

**Related floor votes**

House Floor Roll Call

Senate Floor Roll Call

**Related committee votes**

(H) APPROPRIATIONS

(H) JUDICIARY

(H) RULES

(S) JUDICIARY

| | | | | | |
|---|---|---|---|---|---|
| N | ADOLPH | N | KILLION | Y | TAYLOR | Y | HARHAI |
| Y | AUMENT | Y | KNOWLES | Y | TOBASH | N | HARKINS |
| Y | BAKER | Y | KRIEGER | Y | TOEPEL | N | HARRIS, J. |
| Y | BARRAR | Y | LAWRENCE | Y | TOOHIL | Y | KAVULICH |
| Y | BENNINGHOFF | Y | LUCAS | Y | TOPPER | N | KELLER, W. |
| Y | BLOOM | N | MACKENZIE | Y | TRUITT | N | KIM |
| E | BOBACK | Y | MAHER | Y | TURZAI | N | KINSEY |
| Y | BROOKS | Y | MAJOR | Y | VEREB | N | KIRKLAND |
| Y | BROWN, R. | N | MALONEY | Y | WATSON | Y | KORTZ |
| Y | CAUSER | Y | MARSHALL | Y | BARBIN | Y | KOTIK |
| Y | CHRISTIANA | Y | MARSICO | N | BISHOP | Y | KULA |
| Y | CLYMER | Y | MASSER | Y | BIZZARRO | Y | LONGIETTI |
| Y | CORBIN | N | MCGINNIS | N | BOYLE, B. | E | MAHONEY |
| Y | COX | N | MENTZER | N | BOYLE, K. | Y | MARKOSEK |
| Y | CULVER | Y | METCALFE | N | BRADFORD | N | MATZIE |
| Y | CUTLER | Y | METZGAR | N | BRIGGS | N | MCCARTER |
| Y | DAY | Y | MICCARELLI | N | BROWN, V. | E | MCGEEHAN |
| Y | DELOZIER | E | MICOZZIE | N | BROWNLEE | N | MCNEILL |
| Y | DENLINGER | Y | MILLARD | Y | BURNS | N | MILLER, D. |
| Y | DIGIROLAMO | N | MILLER, R. | N | CALTAGIRONE | N | MIRABITO |
| Y | DUNBAR | Y | MILNE | Y | CARROLL | N | MIRANDA |
| Y | ELLIS | N | MOUL | N | CLAY | N | MOLCHANY |
| Y | EMRICK | Y | MURT | N | COHEN | N | MULLERY |
| Y | ENGLISH | Y | MUSTIO | N | CONKLIN | N | MUNDY |
| Y | EVANKOVICH | N | O'NEILL | N | COSTA, D. | N | NEUMAN |
| E | EVERETT | Y | OBERLANDER | N | COSTA, P. | N | O'BRIEN |
| E | FARRY | Y | PAYNE | N | CRUZ | N | PAINTER |
| Y | FEE | Y | PEIFER | N | DALEY, M. | N | PARKER |
| Y | FLECK | Y | PETRI | N | DALEY, P. | N | PASHINSKI |
| Y | GABLER | Y | PICKETT | N | DAVIDSON | N | PETRARCA |
| Y | GILLEN | Y | PYLE | N | DAVIS | Y | RAVENSTAHL |
| Y | GILLESPIE | Y | QUINN | N | DEAN | Y | READSHAW |
| Y | GINGRICH | Y | RAPP | N | DEASY | N | ROEBUCK |
| Y | GODSHALL | Y | REED | N | DELISSIO | Y | ROZZI |
| Y | GREINER | Y | REESE | E | DELUCA | Y | SABATINA |
| Y | GRELL | Y | REGAN | N | DERMODY | Y | SAINATO |
| Y | GROVE | Y | ROAE | N | DONATUCCI | N | SAMUELSON |
| Y | HACKETT | Y | ROCK | N | EVANS | N | SANTARSIERO |
| Y | HAHN | N | ROSS | Y | FABRIZIO | N | SCHLOSSBERG |
| Y | HARHART | Y | SACCONE | N | FARINA | N | SCHREIBER |
| N | HARPER | Y | SANKEY | Y | FLYNN | N | SIMS |
| Y | HARRIS, A. | Y | SAYLOR | N | FRANKEL | N | SNYDER |
| Y | HEFFLEY | Y | SCAVELLO | N | FREEMAN | N | STURLA |
| Y | HELM | Y | SIMMONS | N | GAINEY | N | THOMAS |
| Y | HENNESSEY | Y | SMITH | E | GALLOWAY | N | VITALI |
| Y | HICKERNELL | Y | SONNEY | Y | GERGELY | Y | WATERS |
| Y | JAMES | Y | STEPHENS | Y | GIBBONS | N | WHEATLEY |
| N | KAMPF | Y | STERN | N | GOODMAN | Y | WHITE |
| Y | KAUFFMAN | Y | STEVENSON | N | HAGGERTY | Y | YOUNGBLOOD |
| Y | KELLER, F. | Y | SWANGER | N | HALUSKA | | |
| Y | KELLER, M.K. | Y | TALLMAN | Y | HANNA | | |

# EXHIBIT C

Filed 08/14/2015 Commonwealth Court of Pennsylvania

Filed 08/14/2015 Commonwealth Court of Pennsylvania
449 CD 2015

# IN THE

# COMMONWEALTH COURT OF PENNSYLVANIA

---

### 449 C.D. 2015

---

### CITY OF HARRISBURG, et al.
#### Appellants

### v.

### U.S. LAW SHIELD OF PENNSYLVANIA, LLC, et al.
#### Appellees

---

### BRIEF OF *AMICI CURIAE* – ALLEGHENY COUNTY SPORTSMEN'S LEAGUE, AMERICAN GUN OWNERS ALLIANCE, FIREARM OWNERS AGAINST CRIME, GUN OWNERS OF AMERICA/GUN OWNERS FOUNDATION, LEHIGH VALLEY TEA PARTY, PENNSYLVANIA FEDERATION OF SPORTSMEN'S CLUBS, PENNSYLVANIANS FOR SELF PROTECTION, PENNSYLVANIA STATE FISH & GAME PROTECTIVE ASSOCIATION, and UNIFIED SPORTSMEN OF PENNSYLVANIA – IN OPPOSITION TO APPELLANTS' APPEAL FROM THE FEBRUARY 25, 2015 ORDER OF THE DAUPHIN COUNTY COURT OF COMMON PLEAS, DOCKET NO 2015-CV-255

---

**JAMES SMITH, ESQUIRE**
**Attorney I.D. No. 82124**
**SMITH LAW GROUP, LLC**
**14133 Kutztown Road**
**P.O. Box 626**
**Fleetwood, PA 19522**
**610-944-8406**
**JSmith@SmithLawGrp.com**

# TABLE OF CONTENTS

**I.  STATEMENT OF INTEREST OF AMICI CURIAE** ......................... 1

**II.  SUMMARY OF ARGUMENT** ............................................................. 6

**III.  ARGUMENT** ....................................................................................... 6

    A.  *Amici* Join in, Ratify and Incorporate all Arguments Raised by
        *Amici* Members of the General Assembly ........................................ 6

    B.  The General Assembly Has Preempted the Entire Field of
        Firearm and Ammunition Regulation Including Discharge .............. 7

    C.  Pre- and Post-Act 192, a Violation of Section 6120 is Criminal
        and Constitutes Official Oppression ............................................... 12

    D.  Appellants Have Unclean Hands ..................................................... 16

**IV.  CONCLUSION** .................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*City of Harrisburg v. Joshua Prince*, Dauphin County Court of
   Common Pleas, 2015-CV-4163-MP (2015) ............................................. 14

*City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544
   (1980) ................................................................................................... 10

*D'Errico v. DeFazio*, 763 A.2d 424 (Pa. Super. Ct. 2000) ........................... 13

*Dillon v. City of Erie*, 83 A.3d 467 (Pa. Cmwlth. Ct. 2014) ........................ 17

*Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*,
   600 Pa. 207 (2009) ............................................................................. 7, 11

*In re Estate of Pedrick*, 505 Pa. 530 (1984) ................................................. 17

*In re Vincent J. Fumo Irrevocable Children's Trust*; 104 A.3d 535
   (Pa. Super. 2014) ................................................................................... 18

*Keystone Commercial Properties, Inc. v. City of Pittsburgh*,
   464 Pa. 607 (1975) ................................................................................ 17

*Liverpool Township v. Stephens*, 900 A.2d 1030 (Pa. Cmwlth. 2006) .......... 7

*Nat'l Rifle Ass'n v. City of Philadelphia*, 977 A.2d 78
   (Pa. Cmwlth. 2009) ................................................................................. 8

*Ortiz v. Commonwealth,* 545 Pa. 279 (1996) ......................................... 8, 10

*Shapiro v. Shapiro*, 415 Pa. 503 (1964) ....................................................... 17

*Stauffer v. Stauffer*, 465 Pa. 558 (1976) ...................................................... 17

*United Tavern Owners of Phila. v. Philadelphia Sch. Dist.*,
   441 Pa. 274 (1971) ............................................................................. 7, 11

## Statutes

18 Pa.C.S § 6120........................................................................................... passim

18 Pa.C.S. § 2707.1 ............................................................................................. 9

18 Pa.C.S. § 3051 ............................................................................................... 16

18 Pa.C.S. § 3213 ............................................................................................... 16

18 Pa.C.S. § 3216 ............................................................................................... 16

18 Pa.C.S. § 3217 ............................................................................................... 16

18 Pa.C.S. § 5111 ............................................................................................... 16

18 Pa.C.S. § 5301 ............................................................................................... 13

18 Pa.C.S. § 6101 ................................................................................................. 7

18 Pa.C.S. § 6102 ................................................................................................. 8

18 Pa.C.S. § 6103 ................................................................................................. 8

18 Pa.C.S. § 6104 ................................................................................................. 8

18 Pa.C.S. § 6105 ................................................................................................. 8

18 Pa.C.S. § 6106 ................................................................................................. 8

18 Pa.C.S. § 6106.1 .............................................................................................. 8

18 Pa.C.S. § 6107 ................................................................................................. 8

18 Pa.C.S. § 6108 ................................................................................................. 8

18 Pa.C.S. § 6109 ................................................................................................. 8

18 Pa.C.S. § 6110.1 .............................................................................................. 8

18 Pa.C.S. § 6110.2 .............................................................................................. 8

18 Pa.C.S. § 6111 ........................................................................................... 8, 15

18 Pa.C.S. § 6111.1 .............................................................................................. 8

18 Pa.C.S. § 6111.2 .............................................................................................. 8

18 Pa.C.S. § 6111.3 .............................................................................................. 8

18 Pa.C.S. § 6111.4 .............................................................................................. 8

18 Pa.C.S. § 6111.5 .............................................................................................. 9

18 Pa.C.S. § 6112 ......................................................................................... 9

18 Pa.C.S. § 6113 ......................................................................................... 9

18 Pa.C.S. § 6114 ......................................................................................... 9

18 Pa.C.S. § 6115 ......................................................................................... 9

18 Pa.C.S. § 6116 ......................................................................................... 9

18 Pa.C.S. § 6117 ......................................................................................... 9

18 Pa.C.S. § 6118 ......................................................................................... 9

18 Pa.C.S. § 6119 ................................................................. 6, 9, 12, 13, 15, 16

18 Pa.C.S. § 6121 ......................................................................................... 9

18 Pa.C.S. § 6122 ......................................................................................... 9

18 Pa.C.S. § 6123 ......................................................................................... 9

18 Pa.C.S. § 6124 ......................................................................................... 9

18 Pa.C.S. § 6125 ......................................................................................... 9

18 Pa.C.S. § 6127 ......................................................................................... 9

18 Pa.C.S. § 7516 ....................................................................................... 16

34 Pa.C.S. § 2505 ......................................................................................... 9

34 Pa.C.S. § 2506 .................................................................................... 9, 10

34 Pa.C.S. § 2507 ....................................................................................... 10

35 P.S. § 4501 ............................................................................................ 10

35 P.S. § 4502 ............................................................................................ 10

53 Pa.C.S. § 37423 ..................................................................................... 11

7 P.S. § 101 ................................................................................................. 9

## Constitutional Provisions

Article 1, Section 21 of the Pennsylvania Constitution ......................... *passim*

## I.  STATEMENT OF INTEREST OF AMICI CURIAE

*Amici Curiae* – Allegheny County Sportsmen's League, American Gun Owners Alliance, Firearm Owners Against Crime, Gun Owners of America/Gun Owners Foundation, Lehigh Valley Tea Party, Pennsylvania Federation of Sportsmen's Clubs, Pennsylvanians For Self Protection, Pennsylvania State Fish & Game Protective Association, and Unified Sportsmen of Pennsylvania – submit this brief in opposition to Appellant's Appeal from the February 25, 2015 Order of the Dauphin County Court of Common Pleas, Docket No. 2015-cv-255.

Allegheny County Sportsmen's League's ("ACSL") purposes and objectives are:  To promote and foster, by all lawful means, the protection and conservation of our renewable wildlife resources through hunting and fishing, together with all pertinent natural resources and to promote the improvement of hunting, fishing, and competitive shooting.  In this vein, the ACSL makes every effort to work in cooperation with the respective federal and state wildlife agencies, competitive shooting organizations and its member clubs to comply with this objective and policies as defined by the delegates of the member clubs. ACSL further encourages among its members and among organizations with like or kindred objectives good

fellowship and cordial cooperation toward achieving these ends.  Lastly, and of utmost importance, ACSL defends and protects, by means of educating public officials and the general public, the Constitutions of the United States and the Commonwealth of Pennsylvania, especially the Second Amendment and Article 1, Section 21, respectively.

American Gun Owners Alliance ("AMGOA") is a non-partisan, national, member-based gun rights organization based in Pennsylvania having members in all 50 states as well as Puerto Rico.  AMGOA strives to keep its member base informed of challenges to their rights under the Second Amendment to the United States Constitution and their respective state constitutions.  Having over 500 Pennsylvania members, the question before this Court and the decision of this Court is of significant importance to both AMGOA and its membership.

Firearms Owners Against Crime ("FOAC") is a non-partisan, non-connected Political Action Committee organized to empower all gun owners, outdoors enthusiasts and supporters of the Second Amendment to the U.S. Constitution and Article 1, Sections 21 and 25 of the Pennsylvania Constitution with the tools and information necessary to protect freedom from transgression.  FOAC is a member-driven organization with more than 1600 members within the Commonwealth.  Its members are active and well-

informed on political issues at both the state and federal level.  As a Pennsylvania organization with members being citizens of the Commonwealth, the questions before this Court and the decision this Court has been tasked to render, are of great significance to FOAC and its members.

Gun Owners of America/Gun Owners Foundation ("GOA") are nonprofit organizations, exempt from federal taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code, and are dedicated, *inter alia*, to the correct construction, interpretation, and application of law.  Both *amici* represent more than a million gun owners nationwide, many of whom are residents of Pennsylvania and have a keen interest in the outcome of this case.  Both *amici* have filed amicus curiae briefs in other firearms-related and Second Amendment cases before the United States Supreme Court.

Lehigh Valley Tea Party ("LVTP") is a non-profit 501(c)4 membership organization which was organized in 2009 for the purpose of promoting the general welfare of the community by educating the citizenry of the importance of individual rights and other issues, and as such maintains roughly 2000 individuals within its ranks of which roughly ten percent are voting members, and which upon its organization duly authorized the assembly of a Second Amendment Committee that is charged with

protecting the Right to Keep and Bear Arms within the Lehigh Valley and therefore, has a direct interest in the decision of this Court in this matter.

Pennsylvania Federation of Sportsmen's Clubs ("PFSC") is a statewide, united voice for the concerns of all sportsmen and conservationists, established to ensure their rights and interests are protected, and to protect and enhance the environment and our natural resources. The PFSC is a 501(c)4 Non-profit organization.

Pennsylvania State Fish & Game Protective Association ("PSF&GPA") is a non-partisan, non-connected membership organization, organized in 1854 to promote the interests of its members and the general welfare of society, with a particular interest in the promotion and protection of traditional outdoor sports and emphasizing the promotion of responsible fish and game management and the laws which protect its members. As a Pennsylvania organization with members who are citizens of the Commonwealth, the questions before this Court and the decision this Court has been tasked to render is of great significance to PSF&GPA and its members.

Pennsylvanians For Self Protection ("PA4SP") began as an organization in the summer of 2013 following the shootings in Newtown, Connecticut, to prevent further erosion of the right of self-defense

guaranteed in the Second Amendment to the U.S. Constitution and Article 1,

Section 21 of the Pennsylvania Constitution.  Recognizing that success will

ultimately be determined at the ballot box, the mission of PA4SP is to

develop grassroots support for the rights outlined in the United States and

Pennsylvania Constitutions, work with elected officials to ensure effective

legislative outcomes, and educate the general public on the importance of

personal responsibility in self-defense.  PA4SP realizes that there will be

times when involvement in the courts becomes necessary and recognizes

that the questions before this Court will have significant impact on the

intended goals of PA4SP, its members, and the rights of the citizens of

Pennsylvania.  As such, PA4SP has a vested interest in the outcome of this

case.

Unified Sportsmen for Pennsylvania's ("USP") mission is to bring

attention to important issues relating to hunting, fishing, trapping and

shooting; to promote and maintain high standards in conservation of our

natural resources; to cooperate with State and Federal agencies and all

sportsmen organizations to protect and achieve needs of both wildlife and

sportsmen; to defend our heritage right to hunt, fish, trap, and to protect our

Constitutional Right to keep and bear arms; and to promote programs to

educate the public about hunting, fishing, trapping and shooting for all future generations.

For these reasons, *Amici* believe this Honorable Court will benefit from their perspective.

## II.   SUMMARY OF ARGUMENT

*Amici* join in, ratify and incorporate all arguments raised by *Amici* Members of the General Assembly but do not reargue those issues herein, so as not to burden the Court.  Rather, *Amici* raise several additional arguments for the Court's consideration.  Specifically, Amici contend that (1) field preemption preempts all forms of regulation, including discharge; (2) all of Appellants' enacted Ordinances are a violation of the Crimes Code, pursuant to 18 Pa.C.S. §§ 6119, 6120; and (3) the Appellants are foreclosed in this appeal, pursuant to the doctrine of Unclean Hands.

## III.   ARGUMENT

### A.   *Amici* **Join in, Ratify and Incorporate all Arguments Raised by** *Amici* **Members of the General Assembly**

For the sake of brevity and not for lack of agreement, *Amici* join in, ratify and incorporate, as if set forth at length herein, the arguments of *Amici* Members of the General Assembly.

### B.      The General Assembly Has Preempted the Entire Field of Firearm and Ammunition Regulation Including Discharge

*Amici* Members of the General Assembly set forth a cogent argument in their brief that both express preemption—pursuant to Article 1, Section 21 of the Pennsylvania Constitution, and Section 6120 of the Pennsylvania Crimes Code—and field preemption—pursuant to the Uniform Firearms Act, 18 Pa.C.S. § 6101, *et seq.* (hereinafter, "UFA")—preempt municipalities, including Appellants, from regulating, in any manner, firearms and ammunition.

In *Huntley & Huntley* our Supreme Court explained that "[p]reemption of local laws may be implicit, as where the state regulatory scheme so completely occupies the field that it appears the General Assembly did not intend for supplementation by local regulations." 964 A.2d at 864.  In *Huntley*, the Court held that "[e]ven where the state has granted powers to act in a particular field, moreover, such powers do not exist if the Commonwealth preempts the field." *Id*. at 862 (citing *United Tavern Owners of Phila. v. Philadelphia Sch. Dist.*, 441 Pa. 274, 272 A.2d 868, 870 (1971)).  "[L]ocal legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow." *Id*.  (citing *Liverpool Township v. Stephens*, 900 A.2d 1030, 1037 Pa. Cmwlth. 2006)).

Our Supreme Court, citing Article 1, Section 21 of the Pennsylvania

Constitution, has also held that "[b]ecause the ownership of firearms is

constitutionally protected, its regulation ***is a matter of statewide concern*** …

Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not

merely in Philadelphia and Pittsburgh, and the General Assembly, not city

councils, is the proper forum for the imposition of such regulation." *Ortiz v.*

*Commonwealth*, 681 A.2d 152, at 156 (Pa. 1996) (emphasis added).

Thereafter, and consistent therewith, this Honorable Court in *Nat'l Rifle*

*Ass'n v. City of Philadelphia*, 977 A.2d 78, 82 (Pa. Cmwlth. 2009), citing to

*Ortiz*, additionally held that the General Assembly has preempted the entire

field.

*Amici* here submit that while the breadth of scope of the UFA alone

supports the conclusion that the UFA has occupied the entire field of

regulations of firearms[1], other legislation joins the UFA in addressing

---

[1] See Section 6102 (definitions); Section 6103 (crimes committed with firearms); Section 6104 (evidence of intent); Section 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms); Section 6106 (firearms not to be carried without a license); Section 6106.1 (carrying loaded weapons other than firearms); Section 6107 (prohibited conduct during emergency); Section 6108 (carrying firearms on public streets or public property in Philadelphia); Section 6109 (licenses); Section 6110.1 (possession of firearm by minor); Section 6110.2 (possession of firearm with altered manufacturer's number); Section 6111 (sale or transfer of firearms); Section 6111.1 (Pennsylvania State Police); Section 6111.2 (firearm sales surcharges); Section 6111.3 (firearm records check fund); Section 6111.4

regulations specific to the discharge of firearms, including the Pennsylvania

Crimes Code, 18 Pa.C.S.A. § 101, *et seq*., the Pennsylvania Game and

Wildlife Code, 34 Pa.C.S.A. § 101, *et seq.*, and Pennsylvania's Noise

Pollution Exemption for Shooting Ranges, 35 P.S. Ch. 23A.  In doing so, the

General Assembly has clearly occupied the entire field of regulations,

including those seeking to control the discharge of firearms.

The General Assembly has specifically criminalized the wrongful

discharge of firearms in 18 Pa.C.S. § 2707.1 (Discharge of a firearm into an

occupied structure).

The General Assembly has specifically addressed the discharge of

firearms in the Game and Wildlife Code, 34 Pa.C.S.A. § 101, *et seq*.:

Section 2505 sets forth safety zones in relation to discharge, 34 Pa.C.S. §

2505; Section 2506 restricts discharge within any cemetery or burial ground,

---

(registration of firearms); Section 6111.5 (rules and regulations); Section
6112 (retail dealer require to be licenses); Section 6113 (licensing dealers);
Section 6114 (judicial review); Section 6115 (loans on, or lending or giving
firearms prohibited); Section 6116 (false evidence of identity); Section 6117
(altering or obliterating marks of identification); Section 6118 (antique
firearms); Section 6119 (violation penalty); Section 6120 (limitation on the
Regulation of Firearms and Ammunition); Section 6121 (certain bullets
prohibited); Section 6122 (proof of license and exception); Section 6123
(waiver of disability or pardons); Section 6124 (administrative regulations);
Section 6125 (distribution of uniform firearm laws and firearm safety
brochures); and Section 6127 (firearm tracing).

34 Pa.C.S. § 2506; and Section 2507 restricts the discharge of firearms in numerous ways and at numerous times, 34 Pa.C.S. § 2507.

And the General Assembly, in Title 35, Chapter 23A, Noise Pollution Exemption for Shooting Ranges, has provided for immunity from suit regarding noise related to discharge of firearms in certain situations. 35 P.S. §§ 4501, 4502.

Given the extensive breadth of the UFA, together with the Pennsylvania Crimes Code, Game and Wildlife Code, the Noise Pollution Exemption for Shooting Ranges and the holding in *Ortiz*, not to mention Article 1, Section 21 of the Pennsylvania Constitution, it is difficult to fathom how this statewide regulation would not constitute the same type of field preemption as the Pennsylvania Supreme Court found in relation to the Banking Code of 1965, 7 P.S. §§ 101–2204, in *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 551, (1980).  As the *Ortiz* Court declared, "[b]ecause the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern… and the General Assembly, not city councils, is the proper forum for the imposition of such regulation."  Clearly, local government is preempted from regulating, in any manner, firearms and ammunition, including discharge.  *Ortiz,* 545 Pa. at 287.

Appellants attempt to argue that they are entitled to regulate discharge pursuant to 53 Pa.C.S. § 37423.  Their argument, however, ignores the holding of the Pennsylvania Supreme Court in *Huntley & Huntley* that "[e]ven where the state has granted powers to act in a particular field, moreover, such powers do not exist if the Commonwealth preempts the field."  600 Pa. at 220 (citing *United Tavern Owners of Phila. v. Philadelphia Sch. Dist.*, 441 Pa. 274, 279 (1971)).  Appellants' argument also fails to recognize the plain language in Section 37423 that specifically limits any power to regulate to that "permitted by Federal and other State law."  If this Court were to agree with Appellants, local government could effectively deny the explicitly preserved constitutional right of the people to "bear arms in defense of themselves," pursuant to Article 1, Section 21 of the Pennsylvania Constitution, by denying individuals the ability to ever discharge their firearms, even in a case of lawful self-defense.

Accordingly, the General Assembly has clearly preempted local governments from regulating, in any manner, firearms and ammunition, including discharge related thereto, by occupying the entire field of regulations on the subject of firearms and ammunition, including discharge.

**C.      Pre- and Post-Act 192, a Violation of Section 6120 is Criminal and Constitutes Official Oppression**

Appellants are either unaware or unconcerned by the fact that a violation of 18 Pa.C.S. § 6120 has been, and continues to be, a misdemeanor of the first degree, since enacted in 1974.  18 Pa.C.S.A. § 6119[2].

In 1972, 18 Pa.C.S. § 6119 was enacted and became effective June 6, 1973.  1972, Dec. 6, P.L. 1482, No. 334, § 1.  At that time, all violations of the UFA were graded as misdemeanors of the first degree, pursuant to Section 6119.  In 1989, Section 6119 was modified to add "[e]xcept as otherwise specifically provided" at the beginning of the text.  1989, Dec. 7, P.L. 607, No. 68, § 2.

In 1974, Section 6120 became effective immediately and a violation of it was, and is still, governed by Section 6119.  1974, Oct. 18, P.L. 768, No. 260, § 2.  While it originally only encompassed firearms, in 1998, it was amended to additionally cover ammunition and ammunition components.  1988, Dec. 19, P.L. 1275, No. 158, § 1.  Then, in 1994, Section 6120 was again amended but this time to modify the definition of "firearm."  1994,

---

[2] "Except as otherwise specifically provided, an offense under this subchapter constitutes a misdemeanor of the first degree." 18 Pa.C.S.A. § 6119.

Oct. 4, P.L. 571, No. 84, § 1.  The last amendment, prior to Act 192, was in 1999, which added provision precluding political subdivisions from bringing actions against, *inter alia*, gun and ammunition manufacturers and dealers. 1999, Dec. 15, P.L. 915, No. 59, § 7.

Therefore, Section 6119 continues to set forth criminal penalties for violating Section 6120.

Furthermore, and pursuant to 18 Pa.C.S. § 5301, a person acting in official capacity, who subjects another to, *inter alia*, infringement of a personal right or "impedes another in the exercise or enjoyment of any right, privilege or immunity" is guilty of Official Oppression, which is graded as a misdemeanor of the second degree.  The Superior Court has found that the Official Oppression statute "is intended to protect the public from an abuse of power by public officials, and to punish those officials for such abuse." *D'Errico v. DeFazio*, 763 A.2d 424, 430 (Pa.Super. 2000).

In this matter, Appellants have violated Article 1, Section 21 of the Pennsylvania Constitution, and Section 6120 of the Pennsylvania Crimes Code[3] in order to impede citizens of their exercise and enjoyment of the right to bear arms in defense of themselves and the State, and have made

---

[3] *See*, *Amici* Brief of the Members of the General Assembly, section III., B.

public statements their intention to continue to do so.[4]  *See*,

http://www.pennlive.com/midstate/index.ssf/2014/12/harrisburg_gun_regula

tions_law.html.  In fact, Mayor Papenfuse stated that he would not repeal the

Ordinances "because our police department feels that they are in the public

interest, and I do too," and Police Chief Carter declared that "officers

regularly cite violators for reckless discharge of guns in the city and when

minors are caught in possession of firearms."  *Id.*  Mayor Papenfuse later

reportedly stated, "Police do cite people for [the discharge ordinance] on a

regular basis.  That is a sensible measure." *See*,

http://abc27.com/2015/01/05/harrisburg-mayor-fires-back-against-gun-

ordinance-legal-threat.

Although Appellants do not address this issue in their brief, in *City of

Harrisburg v. Joshua Prince*, Dauphin County Court of Common Pleas,

2015-CV-4163-MP (2015), they raised the argument that Section 6120 is a

civil statute, without any criminal penalties.[5]  As explained *supra*, since the

_____

[4] Additionally, Appellants admit in their Brief that Harrisburg enacted three of their firearm ordinances post-enactment of Section 6120. *Brief in Supp*. at 9.

[5] This case involves a decision by the Office of Open Records that the City is required to turn over donor information relating to donations to the City's legal defense fund, which was established to defend their unlawful ordinances. *See*, http://harrisburgpa.gov/protectharrisburg. As some of the

enactment of Section 6120, it has constituted a criminal offense and has been subject to the grading of Section 6119, and Appellants' abandonment of this argument is telling.

Furthermore, there is nothing within the UFA that supports the conclusion that a violation of Section 6120 results in civil, instead of criminal, penalties. Unlike other sections of law in the Crimes Code, where the General Assembly specifically provided for civil penalties, Section 6120 contains no such language.

In no better point of fact, pursuant to 18 Pa.C.S. § 6111(i), which is contained within the UFA, when the General Assembly desired to impose civil, as compared to criminal, penalties, it specifically included language referencing the fact that such penalty would be civil in nature:

> In addition to any other sanction or penalty imposed by this chapter, any person, licensed dealer, State or local governmental agency or department that violates this subsection shall be liable *in civil damages* in the amount of $1,000 per occurrence or three times the actual damages incurred as a result of the violation, whichever is greater, as well as reasonable attorney fees.

18 Pa.C.S.A. § 6111(i) (emphasis added).

---

Appellants have raised the issue in that proceeding, it is anticipated that they will raise the same argument in response.

Additionally, while outside of the UFA but contained within the Crimes Code, the General Assembly has provided for civil penalties in relation to the following:  human trafficking, 18 Pa.C.S. § 3051; physicians who violate provisions of the Abortion Control Act, 18 Pa.C.S. §§ 3213(d), 3216(b)(6), 3217; dealing in proceeds of unlawful activities, 18 Pa.C.S. § 5111(c); and greyhound racing and simulcasting, 18 Pa.C.S. § 7516.

Clearly, the General Assembly is acutely aware of how to draft civil penalties within the Crimes Code, when it intends to do so.  In this instance, no such language exists within Section 6120 and the explicit language of Section 6119 results in a violation of Section 6120 being a misdemeanor of the first degree.

### D.   Appellants Have Unclean Hands

As all of Appellants' Ordinances violate Article 1, Section 2 of the Pennsylvania Constitution and Section 6120 of the UFA, as more thoroughly explained in the *Amici* Brief of the Members of the General Assembly, *Amici* respectfully suggest that this Court consider whether Appellants should be estopped in this matter from arguing in defense of their unlawful ordinances, pursuant to the Unclean Hands doctrine.[6]

---

[6] As explained *supra*, a violation of Section 6120 is a misdemeanor of the first degree, pursuant to Section 6119, and constitutes Official Oppression.

The Pennsylvania Supreme Court has explained the doctrine as being

> derived from the unwillingness of a court to give relief to a suitor who has so conducted himself as to shock the moral sensibilities of the judge and it has nothing to do with the rights or liabilities of the parties. Public policy not only makes it obligatory for the court to deny relief, once a party's unclean hands are established, but to refuse the case.

*In re Estate of Pedrick*, 505 Pa. 530, 544 (1984)(citation omitted). Further, "the doctrine only applies where the wrongdoing directly affects the relationship subsisting between the parties and is directly connected with the matter in controversy …. It does not apply to collateral matters not directly affecting the equitable relations which exist between the parties." *Id*. (citing *Stauffer v. Stauffer,* 465 Pa. 558 (1976); *Shapiro v. Shapiro,* 415 Pa. 503 (1964)). Additionally, a court is empowered to raise the Doctrine *sua sponte*. *Stauffer*, 465 Pa. at 575.

While *Amici* acknowledge that the doctrine is generally imposed against a Plaintiff, the Pennsylvania Supreme Court has held that the doctrine applies equally to all parties and is a basis for a court to refuse affirmative relief. *Keystone Commercial Properties, Inc. v. City of*

---

As discussed in the *Amici* Brief of the Members of the General Assembly, the Ordinances violate, at a minimum, Article 1, Section 21 of the Pennsylvania Constitution and Section 6120 of the Pennsylvania Crimes Code. Of particular note, in relation to the parks Ordinance, the operative language of the ordinance is the *verbatim* text of the ordinance this Court previously found unlawful in *Dillon v. City of Erie*, 83 A.3d 467, 470-74 (Pa.Cmwlth. 2014).

*Pittsburgh*, 464 Pa. 607, 611-12 (1975) (holding that the "doctrine is a basis for a court of equity *to refuse affirmative relief to either a petitioner or respondent*.  It is not a basis for a court of equity to grant affirmative relief.") (citations omitted) (emphasis added); see also, *In re Vincent J. Fumo Irrevocable Children's Trust*; 104 A.3d 535, 554 fn. 70 (Pa. Super. 2014)(holding that "[d]efendants who act unconscionably in equity matters are subject to the unclean hands doctrine as well as plaintiffs.")

In this matter, Appellants admit in their brief that Harrisburg enacted three firearm ordinances post-enactment of Section 6120 (*Brief in Supp*. at 9) and all five of Appellants' ordinances regulate the possession and transports of firearms and ammunition, in violation of Article 1, Section 21 of the Pennsylvania Constitution and Section 6120 of the UFA.

Therefore, the Court should consider, pursuant to the Unclean Hands doctrine, whether Appellants are even entitled to review of this matter.

## IV.   CONCLUSION

For all the foregoing reasons, *Amici* respectfully submit that this Court should uphold the February 25, 2015 Order of the Dauphin County Court of Common Pleas, Docket No. 2015-cv-255.

Respectfully Submitted,

Dated: 8/14/15                                         /s/ James M. Smith
                                                      James Smith, Esquire
                                                      Attorney I.D. No. 82124
                                                      SMITH LAW GROUP, LLC
                                                      14133 Kutztown Road
                                                      P.O. Box 626
                                                      Fleetwood, PA 19522
                                                      610-944-8406
                                                      JSmith@SmithLawGrp.com
                                                      **_Counsel for Amici_**