IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Firearm Owners Against Crime, | : | 1:15-cv-322 |
| Kim Stolfer, Joshua First, and | : | |
| Howard Bullock, | : | |
| Plaintiffs | : | (Judge Kane) |
| v. | : | |
| City of Harrisburg, | : | |
| Mayor Eric Papenfuse, and | : | |
| Police Chief Thomas Carter, | : | |
| Defendants | : | Jury Trial Demanded |

## Reply Brief in Support of Motion to Supplement

### I.   This Court has discretion.

Plaintiffs initially argue that his Court lacks discretion to permit additional briefing. Setting up a red herring, plaintiffs point to FRCP 15, which addresses amendment of pleadings. Plaintiffs then argue that FRCP 15 doesn't apply to briefs, and thus this Court cannot permit additional briefing. Plaintiffs' argument is both fallacious and frivolous and deserves little, if any, attention.

Because no federal rule forbids or allows supplemental briefing, this Court enacted Local Rule 7.7 that allows additional briefing with

leave of court.[1] *See* FRCP 83(a)(1) (courts can adopt local rules that are not inconsistent with federal rules). In fact, in footnote 4, plaintiffs admit that Local Rule 7.7 allows this Court to permit additional briefing. This Court has repeatedly recognized its discretion to do so,[2] even where parties do not seek leave of Court.[3] In this case, Harrisburg has sought leave of Court, and this Court clearly has discretion to consider additional briefing.

## II.   This Court should consider Harrisburg's supplemental brief.

Plaintiffs do not point to any prejudice. Plaintiffs simply argue that Harrisburg's brief is untimely. Harrisburg agrees, which is why it seeks leave of Court. Since briefing has closed, Harrisburg has realized that the discharge and parks ordinances are much older than once thought by Harrisburg as well as plaintiffs in both gun cases—a fact that plaintiffs in both cases concede. Harrisburg and its counsel have a

---

[1]The only rule to address briefing at all is FRCP 78(b), which simply allows this Court to rule upon motions based upon briefs in lieu of oral argument.

[2]*See US v. Nagle*, 2013 WL 3894841, at *40 (M.D. Pa. July 26, 2013); *Iseley v. Beard*, 2010 WL 1329995, at *3 (M.D. Pa. Mar. 30, 2010); *Smith v. Johnson*, 862 F. Supp. 1287, 1289 (M.D. Pa. 1994).

[3]*See B & E Dimensional Stoneworks v. Wicki Wholesale Stone*, 2012 WL 511519, at n.2 (M.D. Pa. Feb. 15, 2012); *Harrell v. Duran*, 2010 WL 5572810, at n.3 (M.D. Pa. Dec. 13, 2010) *report and recommendation adopted*, 2011 WL 98811 (Jan. 12, 2011); *Hults v. Allstate Septic Sys.*, 2007 WL 2253509, at n.2 (M.D. Pa. Aug. 3, 2007).

duty of candor to this Court and an obligation to bring the parties' error

to this Court's attention, which Harrisburg has done in this case and

the *USLS* case.

## III.   Harrisburg does not oppose consideration of related briefs.

Perhaps recognizing that they should not hang their hat on the

procedural argument, plaintiffs ask this Court to additionally consider

amici briefs from the *USLS* appeal, namely an "eloquent[]" brief filed

by, inter alia, FOAC and a brief written by Joshua Prince, plaintiffs'

counsel.[4] Harrisburg does not oppose consideration of the amici briefs

---

[4]     Amici assert that enactment of the ordinances in question was criminal
under 18 Pa.C.S. §5301 (official oppression) and §6119 (grading firearm offenses).
Amici rely upon the defamatory allegation by plaintiffs' attorney Joshua Prince that
donors for Harrisburg's legal defense are criminals in an OOR appeal seeking donor
identities. *See Prince v. Harrisburg*, Dauphin County no. 2015-4163. By Prince's
faulty logic, every mother who pays her son's criminal defense attorney joins in his
criminal enterprise; indeed, counsel for plaintiffs and amici—all criminal defense
attorneys—would be equally culpable with the criminal defendants they represent.
     Further, §5301 only applies where an official "<u>know[s] that his conduct is
illegal</u>" and "obviously" requires proof of "bad faith" *Com. v. Eisemann*, 453 A.2d
1045, 1048 (Pa. Super. 1982). Harrisburg has only adopted the reporting ordinance
since any of these statutes became law, and, even in 2009, no court had ever
addressed the scope of authority under the Third Class City Code vis-à-vis the UFA.
     As to §6119, this is merely a <u>grading</u> provision—that predates §6120—for
firearm crimes; it does not convert non-criminal provisions into crimes. Nothing in
§6120 creates a crime for officials. In the 40 years since its passage, not one court
has held or even implied that adopting a preempted ordinance is criminal.
Pennsylvania has more than 2,600 municipalities, yet no judicial decision reflects a
single prosecution of an official. This is no surprise as the statute does not mention
officials, only government bodies. Highlighting the absurdity of the interpretation of

and attaches its reply brief to amici as exhibit B in case this Court considers the amici briefs.[5]

In its reply, Harrisburg responds to amici, explaining how Pennsylvania preemption decisions in other contexts reinforce Harrisburg's proprietary authority to regulate guns, particularly on its own property. *See* Commonwealth Court Reply (ex. B) p. 6-17 (citing *Hoffman Min. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587 (Pa. 2011) (surface mining preempted, but municipality can regulate location of mines); *Huntley & Huntley v. Borough Council of Borough of Oakmont*, 964 A.2d 855 (Pa. 2009) (unanimous) (same conclusion for oil and gas); *Wolfe v. Twp. of Salisbury*, 880 A.2d 62 (Pa. Commw. 2005) (hunting preempted, but municipality can regulate hunting on its own property)). Harrisburg's reply to amici also cites a number of persuasive decisions from outside Pennsylvania that reach the same conclusion for

---

§6119 by plaintiffs and amici, local officials would commit crimes if they misstep under one of the UFA's many procedural sections as well, not just §6120, as would judges if they improperly review firearm matters under the UFA. *See* 18 Pa.C.S. §6101 et seq.

[5]Harrisburg attached its proposed supplemental brief as exhibit A, with attachments 1-14 for the brief, to its motion for leave to file the brief. The Commonwealth Court reply brief uses the exact same 14 exhibits.

gun regulation on municipal property. *Id.* p. 17-23.[6]

Harrisburg, like any property owner, can decide what takes place

on its land. Does a playground have to allow guns simply because it's

publicly owned? The logic of plaintiffs and amici would apply to any

locally owned zoo, library, nursing home, hospital, airport, pool,

---

[6]*See Calguns Found. v. Cnty. of San Mateo*, 218 Cal. App. 4th 661, 676-77, *review denied* (Cal. 2013) (park gun ban not preempted, in part, because it is a "very narrow" "land use regulation" that "pertains only to specific areas within the county, and areas patently subject to the governance of the County Board of Supervisors, *i.e.*, its parks and recreation areas.") (citing *Nordyke v. King*, 44 P.3d 133, 138 (Cal. 2002), and *Great W. Shows v. Cnty. of L.A.*, 44 P.3d 120, 127-28 (Cal. 2002) (county can ban guns on its property)); *Hunters, Anglers & Trappers v. Winooski Valley Park*, 913 A.2d 391, 398, 400 (Vt. 2006) ("It is consistent for the Legislature to prohibit direct regulation of hunting…, but also entitle municipalities to manage their own lands in the interests of recreation and conservation…. [T]he District was within its rights to place conditions on the use of its lands, which the Legislature has explicitly authorized the District to manage in the interest of conservation, among other interests."); *Peter Garrett Gunsmith v. City of Dayton*, 98 S.W.3d 517, 520-21 (Ky. App. 2002), *review denied* (Ky. 2003) ("Without the power to control the location of gun shops and firearm dealers, a city could find itself at the mercy of the firearms businesses that could begin operating wherever they choose, for example, in the heart of a community surrounded by single-family homes."); *McMann v. City of Tucson*, 47 P.3d 672, 677 (Ariz. App.), *review denied* (Ariz. 2002) ("[T]he legislature's primary concern, according to the only legislative history of which we are aware, was to ensure that conduct legal in one municipality is not illegal in another and that citizens have access to firearms for protection, not to prevent cities from determining how to use their commercial property."); *see also id.* at 678 (distinguishing *Schneck* and other decision because the "cases involved ordinances regulating firearms throughout the respective local jurisdictions."); *Kaluszka v. Town of E. Hartford*, 760 A.2d 1282, 1286 n. 1 (Conn. Super. 1999) *aff'd*, 760 A.2d 1269 (Conn. App. 2000) ("Of course, the town, as owner, could restrict hunting on municipally owned property."); *City of Tucson v. Rineer*, 971 P.2d 207, 211 (Ariz. App. 1998), *review denied* (Ariz. 1999) (park gun ban "govern[s] conduct only within the city's parks and prohibits firearms solely within those boundaries, a legitimate and narrow local concern.")).

daycare, ball park, museum, police department, etc. Cannot a city council choose to restrict guns at its sessions as the General Assembly has? In the view of plaintiffs and amici, county courts, district attorney offices, and parole departments had to allow guns until 1995 when the General Assembly banned guns in courthouses. 18 Pa.C.S. §913.[7]

There is no statewide ban for city buildings or any other property such as parks and playgrounds. Accordingly, county commissioners who meet in administrative buildings other than courthouses must permit guns at their meetings under the view of plaintiffs and amici. Likewise, a person carrying a gun could attend a heated city council debate while they would be prohibited from doing so at a heated General Assembly debate. The General Assembly never intended such an absurd result.

Harrisburg's proprietary authority like a property owner is like its authority as an employer. Harrisburg can certainly tell employees not to carry or discharge guns on the job. So too can Harrisburg regulate

---

[7]And, according to plaintiffs and amici, judges, sheriffs, and commissioners that banned guns committed <u>crimes</u>. *See* discussion in footnote 4, above. In fact, plaintiffs and amici believe that judges, sheriffs, and commissioners who ban guns <u>now</u>—and schools for that matter—commit crimes because (according to Plaintiffs and amici) the UFA even preempts regulation of otherwise unlawful conduct. Amici and plaintiffs' position would make any school or prison officially culpable of criminal conduct for passing gun bans for the same reason.

guns on its land just like any other property owner.

Comparison to other areas confirm Harrisburg's authority to do so. Alcohol, mining, and banking are all preempted fields; but must Harrisburg permit all three on its land? Surely, Harrisburg can prohibit drinking at council meetings and mining in Italian Lake. Likewise, Harrisburg can tell its police officers not to drink, mine, and bank while on the clock.

Harrisburg should not be the only property owner within its city limits that must permit guns on its land. Harrisburg wisely avoids the pandemonium that would result if it allowed the open carrying of pistols and shotguns at playgrounds and the Fourth of July celebration. No doubt the General Assembly shares these concerns as it bans guns on capitol grounds.

## IV.   The 1873 gun ban in Harrisburg is consistent with the UFA.

Plaintiffs argue that the UFA implicitly repealed the 1873 statutory gun ban in Harrisburg. However, there is nothing inconsistent between the local provision and the UFA ban on unlicensed concealed carry.

7

The General Assembly has passed numerous location-specific gun bans, such as in courthouses, prisons, and schools, and an open carry ban in Philadelphia. The General Assembly also bans guns on capitol grounds. Like these location specific statutes, a statutory carry ban is Harrisburg does not conflict with the statewide ban on unlicensed concealed carry.

It is also not difficult to see differences between Harrisburg and the rest of the state that may have led the General Assembly to ban carrying in Harrisburg. For one thing, Harrisburg is particularly prone to the unrest that can come from flooding. More importantly, destabilization in Harrisburg jeopardizes the governance and well-being of the entire Commonwealth. In fact, in March of 1873, just a month before the General Assembly banned guns in Harrisburg, a paramilitary force defeated Louisiana's militia to take control of the state house, armory, and police stations, which it held for three days until federal troops arrived.[8] The law also came amidst economic unrest that ultimately led to the 1877 railroad riot in Harrisburg.

---

[8] https://en.wikipedia.org/wiki/Colfax_massacre#cite_note-Eric_Foner_1989.2C_p._550-3

The General Assembly obviously still has concerns about guns near its footsteps as it continues to ban guns on capitol grounds while generally not banning guns statewide. There is nothing inconsistent about such location-specific measures.

Respectfully submitted,

Lavery Law

s/ Frank J. Lavery
Pennsylvania Bar No. 42370

s/ Josh Autry
Pennsylvania Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245,
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
jautry@laverylaw.com
Counsel for Harrisburg, Mayor
Dated: September 21, 2015      Papenfuse, and Chief Carter

9

<u>Certificate of Service</u>

I certify that on this date, I served this filing through this Court's ECF to:

Joshua Prince, Esquire
*joshua@princelaw.com*

<u>s/ Josh Autry</u>

Dated: September 21, 2015