**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FIREARM OWNERS AGAINST** | : | |
| **CRIME, et al.,** | : | |
|     **Plaintiffs** | : | **No. 1:15-cv-0322** |
| | : | |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CITY OF HARRISBURG, et al.,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

Before the Court are four motions: Defendants' motion to dismiss for failure to state a claim (Doc. No. 4), Plaintiffs' motion to remand to state court (Doc. No. 5), Plaintiffs' motion for leave to file an amended complaint (Doc. No. 37), and Defendants' motion to file a supplemental brief (Doc. No. 45). The motions are briefed and ripe for disposition. For the reasons that follow, the Court finds that Plaintiffs lack standing under federal law to challenge the ordinances in question. As such, the Court will grant Defendants' motion to dismiss in part.

## I.  BACKGROUND

Plaintiffs are three individual citizens and an organization, the Firearm Owners Against Crime political action committee ("FOAC"), a statewide non-partisan organization that "actively works to defend, preserve, and protect the constitutional and statutory rights of lawful firearm owners[.]" (Id. ¶ 1.)  Defendants are the City of Harrisburg, Pennsylvania, and its Mayor Eric Papenfuse and Chief of Police Thomas Carter.  Plaintiffs bring claims challenging five of Defendant City of Harrisburg's municipal firearm ordinances.[1]  (Doc. No. 1-1 ¶¶ 3-6.)  The

---

[1] FOAC's co-plaintiff individual members allege that they may lawfully possess firearms in Pennsylvania.  (Id. ¶¶ 4-6.)  Plaintiff Kim Stolfer is a resident of Allegheny County, Pennsylvania, who travels to Harrisburg in his capacity as president of FOAC.  (Id. ¶ 4.)

individual plaintiffs hold licenses to carry concealed firearms, and each fears prosecution under

the municipal ordinances Plaintiffs challenge in this lawsuit.  (Id. ¶¶ 63, 69, 74, 85.)  In addition,

FOAC "has over a half-dozen members, under the age of 18, who, under information and belief,"

may legally possess firearms, and one of those minors is alleged to be a resident of Harrisburg.

(Id. ¶¶ 59-60.)  Plaintiffs profess to use their firearms for "self-defense, hunting, firearms

training/education, and target shooting."  (Id. ¶ 83.)

　　　　The first of these ordinances makes it "unlawful for any minor under the age of 18 years

to [possess firearms], except in his or her place of residence . . . unless said minor is

accompanied by an adult."[2]  Harrisburg, Pa., Code § 3-345.1.  The second challenged ordinance

requires that a firearm owner must report the loss or theft of stolen firearms to "an appropriate

local law enforcement official" within forty-eight hours "after discovery of the loss or theft."[3]

─────────────────

Plaintiff Joshua First is an adult who resides in the city of Harrisburg.  (Id. ¶ 5.)  Plaintiff
Howard Bullock is a resident of Lower Paxton Township in Dauphin County, Pennsylvania, who
commutes into the city of Harrisburg for work.  (Id. ¶ 5.)

　　[2] In full, the challenged section reads: "It shall be unlawful for any minor under the age of 18
years to have in his or her possession, except in his or her place of residence, any firearm,
flobert rifle, air gun, spring gun or any implement which impels with force a metal pellet of any
kind, unless said minor is accompanied by an adult."  Harrisburg, Pa., Code § 3-345.1.

　　[3] In full, the challenged section reads:

(A)　　　　Any person who is the owner of a firearm that is lost or stolen shall report the loss
or theft of that firearm to an appropriate local law enforcement official within 48
hours after discovery of the loss or theft;

(B)　　　　For the purpose of this section, the term "firearm" shall be defined as any pistol or
revolver with a barrel length less than 15 inches, any shotgun with a barrel length
less than 18 inches or any rifle with a barrel length less than 16 inches, or any
pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The
barrel length of a firearm shall be determined by measuring from the muzzle of
the barrel to the face of the closed action, bolt, or cylinder, whichever is
applicable.

Harrisburg, Pa., Code § 3-345.4.

The third ordinance empowers the Mayor of Harrisburg to declare a state of emergency when he or she determines that "there has been an act of violence or a flagrant and substantial defiance of or resistance to a lawful exercise of public authority," and as a result, there is "a clear and present danger of a riot, civil disorder . . . widespread disobedience of the law and substantial injury to persons or property."  Harrisburg, Pa., Code § 3-355.1.  When the mayor acts under § 3-355 to declare a state of emergency, three provisions of the ordinance are automatically triggered: (1) firearms and ammunition may not be bought, sold, or given; (2) shops may not display firearms or ammunition; and (3) private citizens may not possess rifles or shotguns in public.  Harrisburg, Pa., Code § 3-355.2(A)(1-3).  In addition, if the Mayor deems it appropriate, he or she may order additional emergency measures to take effect.  Harrisburg, Pa., Code § 3-355.2(B).  These include establishing curfews, prohibiting the sale of alcoholic beverages, and prohibiting the possession in public of all weapons, including knives, clubs, and firearms.  Harrisburg, Pa., Code § 3-355.2(B)(1-8).  The ordinance limits a declared state of emergency to five days, unless the Mayor acts to renew.[4]

---

Harrisburg, Pa., Code § 3-345.4.

[4] The states of emergency ordinance spans several sections, but the section Plaintiffs specifically challenge reads, in full:

(A)     Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:
        (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.
        (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.

3

Harrisburg, Pa., Code § 3-355.4.

————————————————

                        (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.

(B)    The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:

                        (1) The establishment of curfews, including but not limited to the prohibition of or restrictions on pedestrian and vehicular movement, standing and parked, except for the provision of designated essential services such as fire, police and hospital services, including the transportation of patients thereto, utility emergency repairs and emergency calls by physicians.

                        (2) The prohibition of the sale of any alcoholic beverage as defined in the Liquor Code.

                        (3) The prohibition of the possession on the person in a public place of any portable container containing any alcoholic beverage.

                        (4) The closing of places of public assemblage with designated exceptions.

                        (5) The prohibition of the sale or transfer of possession, with or without consideration, of gasoline or any other flammable or combustible liquid, except by delivery into a tank properly affixed to an operative motor-driven vehicle, bike, scooter, or boat and necessary for the propulsion thereof.

                        (6) The prohibition of the possession in a public place of any portable container containing gasoline or any other flammable or combustible liquid.

                        (7) The prohibition or limitation of the number of persons who may gather or congregate upon the public highways or public sidewalks or in any other public place, except only persons who are awaiting transportation, engaging in recreational activities at a usual and customary place or peaceably entering or leaving buildings.

                        (8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

Harrisburg, Pa., Code § 3-355.2.

The fourth challenged ordinance pertains to public parks.  Harrisburg, Pa., Code § 10-301.  The ordinance applies in any "park, reservation, playground, recreation center or any other area in [Harrisburg] owned or used by the City and devoted to active or passive recreation or leisure activity."  Harrisburg, Pa., Code § 10-301.1.  Within those parks, the ordinance bans the use, carrying, possession, and discharge of firearms and other weapons "potentially inimical to wildlife and dangerous to human safety[.]"[5]  Harrisburg, Pa., Code § 10-301.13.  The fifth and final ordinance proscribes firing or discharging firearms within the city limits except at certain firing ranges.[6]  Harrisburg, Pa., Code § 3-345.2.

In their complaint, Plaintiffs include statements made by Defendants to members of the press regarding the challenged ordinances.  (See e.g., Doc. No. 1-1 ¶ 89.)  As outlined by

---

[5] The parks ordinance spans several sections, but the section Plaintiffs specifically challenge reads, in full:

(A) No person shall hunt, trap or pursue wildlife in any park at any time, except in connection with bona fide recreational activities and with the approval of the Director by general or special order or rules or regulations.
(B) No person shall use, carry or possess firearms of any description, or air rifles, spring guns, bow and arrows, slings or any other form of weapons potentially inimical to wildlife and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device in any park.
(C) No person shall shoot or propel any object from any of the foregoing into park areas from beyond park boundaries or while in a park.
(D) No person shall fish in Italian Lake.

Harrisburg, Pa., Code § 10-301.13.

[6] In full, the challenged section reads:

"No person shall fire any cannon, gun, rifle, pistol, toy pistol, or firearms of any kind within the City, except at supervised firing ranges in bona fide educational institutions accredited by the Pennsylvania Department of Education and with the approval of the Mayor or Chief of Police, or at a firing range operated by the Bureau of Police."

Harrisburg, Pa., Code § 3-345.2.

Plaintiffs, Defendant Mayor Papenfuse stated that "[t]he city's not going to repeal its ordinances, because our police department feels that they are in the public interest, and I do, too." (Id. ¶ 90.) In addition, Defendant Chief Carter stated that "officers regularly cite violators for reckless discharge of guns in the city and when minors are caught in possession of firearms." (Id. ¶ 90.)

Plaintiff first challenged the ordinance through an action in the Dauphin County Court of Common Pleas pursuant to 18 Pa. Stat. § 6120.[7] Defendants timely removed the action to this Court, invoking federal question jurisdiction based on Plaintiffs' challenge under the Second Amendment to the United States Constitution. (See Doc. Nos. 1, 1-1.)

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them,

_____

[7] 18 Pa. Stat. § 6120, limits the authority of municipalities to adopt ordinances that regulate weapons in a manner more stringent than state law. The statute confers standing to any individual or entity "adversely affected" by municipal ordinances. In Leach, the Commonwealth Court struck down the statute as unconstitutional. Leach v. Commonwealth, 118 A.3d 1271, 1274-75 n.3 (Commw. Ct. Pa. 2015). The Leach holding has been appealed to the Pennsylvania Supreme Court, and that court conducted oral argument on the appeal on March 9, 2016.

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly

and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following

steps a district court must take when determining the sufficiency of a complaint under Rule

12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and

(3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement for relief."  See Santiago v. Warminster Twp., 629 F.3d

121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.    DISCUSSION

### A.     Law of standing

Defendants argue that Plaintiffs' complaint must be dismissed because Plaintiffs lack

standing to challenge the ordinances.  This Court must agree.  The doctrine of standing limits the

authority of federal courts to hear only "those disputes which are appropriately resolved through

the judicial process," thereby safeguarding the intended allocation of power between the

judiciary and the political branches.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

"[N]o principle is more fundamental to the judiciary's proper role in our system of government

than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."
Clapper v. Amnesty Int'l USA, 133 S.Ct. 1138, 1146 (2013) (quoting DaimlerChrysler Corp. v.
Cuno, 547 U.S. 332, 341 (2006)).  It is "presume[d] that federal courts lack jurisdiction unless
the contrary appears affirmatively from the record,'" and the party claiming standing has the
burden of establishing it.  DaimlerChrysler, 547 U.S. at 342 n.3 (quoting Renne v. Geary, 501
U.S. 312, 316 (1991)).  Standing is a question of federal constitutional law, and state laws may
not extend standing to parties who would otherwise lack it.[8]  Hollingsworth v. Perry, 133 S.Ct.
2652, 2667 (2013).

Consistently, the U.S. Supreme Court has recognized three "irreducible constitutional
minimum" elements to standing: (1) an "injury in fact – an invasion of a legally protected
interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or
hypothetical," Lujan, 504 U.S. at 560 (quotations omitted); (2) that the injury be "fairly
traceable" to the adverse party's conduct, Clapper, 133 S.Ct. at 1147; and (3) that the injury be
"redressable by a favorable ruling" from the federal court,[9] id. (quoting Monsanto Co. v.
Geertson Seed Farms, 561 U.S. 139, 149 (2010)).

To satisfy the injury requirement, a litigant must establish an interest that is safeguarded

---

[8]  A state statute may, of course, create or expand substantive rights, the violations of
which could form the subject matter of a suit falling under federal jurisdiction through diversity
or supplemental jurisdiction, but an enactment like Section 6120 purporting to expand the notion
of standing itself has no effect on federal courts.  Compare 43 Pa. Stat. § 953 (defining
substantive right to be free from certain types of discrimination in employment), with 18 Pa.
Stat. § 6120 (expanding standing to sue over-restrictive municipalities to any "person adversely
affected").

[9]  The Court observes that Plaintiffs may not bring overbreadth challenges under the
Second Amendment, so their challenges must be predicated on the ordinances as they would be
applied to Plaintiffs.  See United States v. Barton, 633 F.3d 168, 172 n.3 (3d Cir. 2011).

by a constitutional provision or by a specific statute.  Warth v. Seldin, 422 U.S. 490, 512-514 and 514 n.22 (1975).  The injury must be particularized to the litigant, so the "generalized interest of all citizens in constitutional governance" is too abstract to be judicially cognizable.  Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 217 (1974).  And while the injury in fact requirement may be satisfied by threatened future harm, like the threat of prosecution, the Supreme Court requires that "threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient."  Clapper, 133 S.Ct. at 1147 (emphasis in original) (quotations omitted).  Where the alleged injury is threatened future prosecution under a challenged statute, challengers need not engage in prohibited conduct and expose themselves to prosecution to establish an injury, so long as they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute, and there exists a credible threat of prosecution thereunder."  Susan B. Anthony List, 134 S.Ct. at 2342.

The traceability inquiry is answered by asking whether "the line of causation between the illegal conduct and injury [is] too attenuated."  Allen v. Wright, 468 U.S. 737, 752 (1984) abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014).   An injury is not "fairly traceable" to a government enactment if the exact harm alleged could separately result from other lawful enactments.  Clapper, 133 S.Ct. at 1149 (finding that plaintiffs' injury – the interception of private communications – was not fairly traceable to challenged provision where other provisions not before the court separately authorized the interception).

In order to be redressable, an injury must be susceptible to amelioration through court

order.  Clapper, 133 S.Ct. at 1147.  Redressability is related to traceability, and in any particular

case, the presence of traceability suggests that redressability will also be present.  See

Constitution Party of Pa. v. Aichele, 757 F.3d 347, 368 (3d Cir. 2014) ("Redressability here

follows the rest of the standing analysis primarily because, by establishing causation, [plaintiffs]

have also established redressability.").  In addition, as is the case with traceability, the existence

of a separate lawful enactment that would prohibit the same conduct precludes a finding of

redressability.  See Nittany Outdoor Adver., LLC v. College Twp., 22 F. Supp. 3d 392, 402

(M.D. Pa. 2014) (quoting Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 801-

02 (8th Cir. 2006)).  This is so because even absent the challenged ordinance, challengers could

still not engage in their proposed conduct.  See Advantage Media, 456 F.3d at 801-02 (finding

no redressability where "even in victory [plaintiffs] would be no closer to" redress from their

alleged harm – economic injury caused by prohibitive signage ordinances – because "other

unchallenged provisions of the sign code" also prohibited their proposed billboard).

B.      **Application to Plaintiffs**

Defendants have alleged that the Complaint fails to satisfy each of the three prerequisites

for standing.  (Doc. No. 4 ¶¶ 7-9.)  According to Defendants, "Plaintiffs do not show an injury

that is concrete, particularized, fairly traceable to Harrisburg's ordinances, and redressable by a

favorable ruling."  (Doc. No. 10 at 18.)  Defendants characterize Plaintiffs' theory of future

injury as speculative "and not certainly impending," and they argue that "[m]ost or all of the

activities Plaintiffs wish to engage in are [separately] illegal under state law."  (Id.)  Plaintiffs

assert standing, arguing that they "would have been forced to face prosecution in order to

challenge Defendant City's unlawful ordinances[.]"  (Doc. No. 23 at 19.)

### 1.      Legally protected interest

Plaintiffs allege that the challenged ordinances unconstitutionally abridge their rights under the Second Amendment to the United States Constitution to keep and bear arms.  (See Doc. No. 1-1 ¶ 20.)  As Defendants point out, it is not at all clear that Plaintiff's Second Amendment rights extend to conduct the ordinances prohibit.  In District of Columbia v. Heller, 554 U.S. 570 (2008), relied upon by Plaintiffs, the Supreme Court addressed and upheld an individual right that precluded "the absolute prohibition of handguns held and used for self-defense in the home."  544 U.S. at 636.  While the right may extend beyond the prohibition announced in Heller, with few exceptions, the contours of an individual's right to bear arms remain underdeveloped.[10]  See Drake v. Filko, 724 F.3d 426, 430-33 (3d Cir. 2013) ("[W]e decline to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home, the 'core' of the right as identified by Heller.  We do, however, recognize that the Second Amendment's individual right to bear arms may have some application beyond the home.") (emphasis in original).

Because the Court finds that Plaintiffs otherwise lack standing, the Court will assume without deciding that Plaintiffs' Second Amendment rights may be implicated by the municipal ordinances at issue in this case.  For that reason, the Court defers the first prong of the standing analysis: whether Plaintiffs have alleged a "legally protected interest" in activities prohibited by the challenged ordinances.  See Warth, 422 U.S. at 512-514.  The Court will conduct the balance of the standing analysis as to each challenged ordinance in turn.  As to each, the Court

---

[10] For example, in Hunters United for Sunday Hunting v. Pennsylvania Game Commission, this Court declined to definitively find that the Second Amendment affords any protection to recreational hunting.  28 F. Supp. 3d 340, 346 (M.D. Pa. 2014) (Kane, J.).

determines that Plaintiffs' allegations of future harm are too speculative and the threatened prosecutions insufficiently imminent to support a finding of standing.

### 2.    Minors

Defendants argue that because Pennsylvania law separately prohibits the possession by minors of firearms, Plaintiffs lack standing to challenge Harrisburg's ordinance limiting the possession of firearms by minors.  (Doc. No. 10 at 11, 17) (citing 18 Pa. Stat. § 6110.1.)

As Plaintiffs acknowledge (Doc. No. 23 at 16), Pennsylvania law does, in fact, prohibit the possession of firearms by minors.  18 Pa. Stat. § 6110.1.  The state statute contains an exception for minors supervised by adults and for minors "lawfully hunting or trapping."  Id. § 6110.1(b)(1-2).  Plaintiffs do not contest that hunting in Harrisburg City is separately illegal, except with regard to duck hunting.  (Doc. No. 10 at 9 n.3.)   Plaintiffs' allegations regarding minors are limited.  Plaintiffs allege only that FOAC has a half-dozen minor members who "may otherwise lawfully possess firearms, and one of them resides in Harrisburg."  These allegations fall far short of meeting Plaintiffs' burden on this issue.

Rather, Plaintiffs must allege "an intention to engage in a course of conduct" that violates the ordinance, and must articulate a "credible threat of prosecution thereunder."  See Susan B. Anthony List v. Driehaus, 134 S.Ct. 2334, 2342 (2014).  Plaintiffs have not done so here. Plaintiffs have not alleged that a Plaintiff is (1) a minor member of FOAC, with (2) concrete plans to possess a firearm in Harrisburg outside his or her home and unsupervised; (3) that local law enforcement would address the conduct; and (4) that the municipal authorities would prosecute that member for that conduct.  See id.  There is no suggestion that this ordinance has been or would be enforced against minors who are members of FOAC or those like them

engaged in otherwise lawful possession.  See Clapper, 133 S.Ct. at 1149.  Moreover even were

Plaintiffs to plausibly allege such injury, because state law separately prohibits possession of

firearms by minors as discussed above, the Court finds that Plaintiffs have not and cannot show a

future harm with the requisite imminence necessary to invoke federal jurisdiction.  See id. at

1148.

### 3.     Reporting lost or stolen firearms

Plaintiffs have also failed to allege facts sufficient to support standing to challenge

Harrisburg's reporting ordinance, requiring owners or possessors of firearms to report the loss or

theft of those firearms within forty-eight hours of discovering the loss or theft.  Harrisburg, Pa.,

Code § 3-345.4.  Plaintiffs do not allege that they or anyone else has ever been prosecuted under

this ordinance, nor do they allege that they intend to engage in otherwise lawful conduct that

would violate the ordinance.  Rather, Plaintiffs allege only that the ordinance has a "chilling

effect" on Plaintiffs' rights under the Second Amendment.  (See e.g., Doc. No. 1-1 at 302.)

Plaintiffs offer no legal support for application of the concept of "chilling effect" from First

Amendment jurisprudence to the instant case.  United States v. Barton, 633 F.3d 168, 172 n.3

(3d Cir. 2011); see also United States v. Chester, 628 F.3d 673, 688 (4th Cir. 2010) (rejecting

"chilling effect" overbreadth argument because importing this "extraordinary exception to . . .

standing requirements into the Second Amendment context would be inappropriate.").

Similarly, Plaintiffs have failed to allege imminent harm.  The challenged reporting

ordinance takes effect only after a firearm has been stolen.  Thus, standing requires an allegation

that Plaintiffs intend to violate the ordinance by refusing to report a stolen firearm, even

assuming that there is a likelihood that Plaintiffs will be the victims of firearm theft.  Plaintiffs

would additionally need to show that their certain violation of the ordinance would credibly invite the knowledge of the authorities and prosecution for non-reporting.  Clapper, 133 S.Ct. at 1148.

The unique factual problems in challenging reporting ordinances are illustrated by similar challenges in state court.  Pennsylvania state courts have found that without a more immediate threat of prosecution, any alleged injuries caused by reporting ordinances like this one are too speculative to confer standing.  See Nat'l Rifle Ass'n v. City of Pittsburgh, 999 A.2d 1256, 1259 (Pa. Commw. Ct. 2010) (applying Nat'l Rifle Ass'n v. City of Philadelphia, 2008 WL 3819269 (Pa. Com. Pl. July 1, 2008)); see also id. ("The only difference between the facts in Philadelphia and the pleadings in this case are that three of the [appellants] have pled that they live in areas where residential burglaries are common, and one has pled that a gun of his was stolen in the past. These differences are insufficient to confer standing.").

Plaintiffs submit only that 18 Pa. Stat. § 6120 expanded standing to anyone adversely affected by the ordinances, so "an actual controversy need not exist" to support their standing. (Doc. No. 1-1 ¶¶ 107, 107 n.3).  Plaintiffs' argument must fail for two obvious reasons.  First, as noted previously, 18 Pa. Stat. § 6120, has been held unconstitutional by a Pennsylvania court, with an appeal currently pending before the Pennsylvania Supreme Court.  More fundamentally, standing is determined by federal, not state law.   Hollingsworth v. Perry, 133 S.Ct. 2652, 2667 (2013); see also Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537 (3d Cir. 1994) ("[W]e apply federal law in determining [the plaintiff's] standing because standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court.") (quotations omitted).

14

In sum, "a highly attenuated chain of possibilities[] does not satisfy the requirement that a threatened injury must be certainly impending." Clapper, 133 S.Ct. at 1148. As a result, the circumstances that could give rise to standing to challenge the reporting requirement are not present here, and the Court finds that Plaintiffs lack standing to challenge the reporting ordinance.

### 4.      Emergency measures

Plaintiffs' allegations of standing to challenge the emergency ordinance fail for the same reasons as Plaintiffs' standing allegations with respect to the reporting requirements. The emergency ordinance takes effect only after the Mayor declares an emergency in circumstances of civil unrest. Harrisburg, Pa., Code § 3-355.1. After the emergency is declared, certain restrictions on the sale and display of firearms automatically take effect, while another restriction on the public carrying of all weapons becomes effective only at the Mayor's discretion and upon a finding of necessity. Id. § 3-355.2.

As Defendants point out, a state law imposes conditions similar to those contained in the municipal ordinance. (Doc. No. 10 at 26.) Pennsylvania law makes it unlawful for anyone to "carry a firearm upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive[.]" 18 Pa. Stat. § 6107. Exceptions to the law allow the carrying of weapons by those "[a]ctively engaged in a defense of that person's life or property from peril or threat[,]" and those who are licensed to carry concealed weapons. Id. § 6107(a)(1-2).

Plaintiffs do not allege imminent prosecution for violation of the statute. Instead, Plaintiffs again argue that the ordinance causes a "chilling effect" on Second Amendment rights.

(<u>See</u> <u>e.g.</u>, Doc. No. 1-1 ¶¶ 327, 338.)  As detailed above, allegations of "chilling effects" are insufficient to demonstrate standing.  Plaintiffs also reassert their contention that Section 6120 expanded standing under Pennsylvania law, so a factual showing of an active controversy is not required.  (<u>Id.</u> ¶ 326.)  As set forth above, Section 6120 cannot operate to confer constitutional standing in federal court where none otherwise exists.

As with Plaintiffs' standing to challenge the reporting ordinance, the Court finds that Plaintiffs could not demonstrate standing to challenge this ordinance absent a more imminent threat of prosecution.  The emergency ordinance takes effect only after the Mayor declares a state of emergency.  In such an event, Plaintiffs would need to allege that they concretely intended to violate the emergency ordinance, that they have an arguably protected interest in conduct that violates the emergency ordinance, and that their proposed conduct would not violate 18 Pa. Stat. § 6107 or any unchallenged provision of federal, state, or local law (<u>i.e.</u>, that the injury would be fairly traceable and redressable).  <u>See</u> <u>Clapper</u>, 133 S.Ct. at 1148.  Plaintiffs would also need to show that law enforcement would learn of and address their conduct and that municipal authorities would credibly bring prosecution under the challenged ordinance.  <u>See</u> <u>Susan B. Anthony List</u>, 134 S.Ct. at 2342.  For these reasons, the Court finds that Plaintiffs have not and cannot establish standing to challenge Harrisburg's emergency ordinance.

For the above three ordinances, the Court is satisfied that Plaintiffs cannot plead facts sufficient for standing.  First, because the threat of prosecution depends on "a highly attenuated chain of possibilities," Plaintiffs cannot show injury.  <u>See</u> <u>Clapper</u>, 133 S.Ct. at 1148.  Second, as to the emergency and minors ordinances, even if Plaintiffs <u>could</u> plead injury, the threat of prosecution would not be traceable or redressable because the same conduct could largely be

prosecuted under other laws.  Thus, amendment to the complaint to address its deficiencies would be futile as to these three ordinances.

### 5.    Parks

Plaintiffs have also failed to plead facts sufficient to allege standing to challenge Harrisburg's parks ordinance, which prohibits the possession and discharge of firearms while in city parks or playgrounds.  Harrisburg, Pa., Code § 10-301.13.

Again, Plaintiffs rely on the alleged "chilling effects" of the ordinance and on Section 6120's broadening of standing to support their allegations of standing.  (See e.g., Doc. No. 1-1 ¶¶ 407, 416.)  As discussed above, "chilling effects" do not apply in this context and Section 6120, even if valid, cannot confer standing to Plaintiffs in federal court.

Defendants point to a state regulation that bans the possession of firearms in state parks except for lawful hunting and target practice, and aver that because Harrisburg accepts state money for its parks, the city is obliged to apply state regulations.  (Doc. No. 10 at 8) (citing 17 Pa. Code § 11.215).  At this juncture, the Court need not consider the potential import of state natural resources regulations on Harrisburg's parks and playgrounds.

Plaintiffs have not made a showing regarding standing as it relates to their challenge to Harrisburg's parks ordinance.  Because the Court cannot find that Plaintiffs could never plead facts sufficient to support their standing as to the parks ordinance, Plaintiffs will be afforded an opportunity to amend their complaint as to this ordinance.

### 6.    Public firearms discharge

Plaintiffs' challenges to the discharge ordinance lack allegations of imminence and particularity necessary to confer standing.  While the parties cite a state law that, rather than

regulating the discharge of firearms, explicitly devolves the authority for doing so to municipalities, 53 Pa. Stat. § 37423, Plaintiffs fail to allege that the threat of prosecution is imminent.

In their complaint, Plaintiffs do not articulate specific proposed conduct with any concreteness, alleging only that Plaintiffs use their firearms for "self-defense, hunting, firearms training/education, and target shooting."  (Doc. No. 1-1 ¶ 83.)  These allegations fail to set forth, as Plaintiffs must, that (1) an individual plaintiff or another particular FOAC member; (2) has a concrete plan to discharge a weapon within the City of Harrisburg in a manner that is otherwise lawful; (3) that law enforcement would address the conduct; and (4) that municipal authorities would initiate prosecution under the challenged ordinance.  Indeed, Defendants point anecdotally to at least one instance where conduct that technically violated the city ordinance did not result in prosecution, even though the event was widely reported.  (Doc. No. 10 at 13 n.5.)  In addition, as the Commonwealth Court noted in similar litigation, there is no suggestion that the city would enforce the ordinance against an individual who discharged a firearm in the course of self-defense.  (Doc. No. 10-3 at 10-12.)

The Court reiterates that in evaluating standing, the Court has deferred ruling on the issue of whether Plaintiffs have articulated a protected interest in the activities the ordinances prohibit. The Court cannot find that Plaintiffs would never be able to plead facts sufficient to support standing as to this ordinance, so Plaintiffs will be afforded an opportunity to amend their pleading as to Harrisburg's discharge ordinance.  Should Plaintiffs elect to amend the complaint, Plaintiffs must allege a legally protected interest in the prohibited conduct in addition to the other pleading deficiencies identified herein.

III.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have failed to allege standing to challenge Harrisburg's ordinances.  Accordingly, the Court will grant Defendants' motion in part.[11, 12]  An order consistent with this memorandum follows.

---

[11] Plaintiffs have also moved to amend their complaint to rectify representations made as to the nature of relief sought.  (Doc. No. 37.)  Because the proposed amendment is immaterial to the Court's reasoning and disposition here, the motion will be denied as moot.  Plaintiffs may clarify their prayer for relief in the amended filing provided for in the accompanying order.

[12] Finally, given the Court's reasoning and disposition, Plaintiffs' motion to remand to state court (Doc. No. 5) and Defendants' motion for leave to file a supplemental brief (Doc. No. 45), will be denied as moot.  Plaintiffs may renew their motion to remand at a later time.